UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| IN RE TREMONT SECURITIES LAW, | : | Master File No.: |
| STATE LAW, and INSURANCE | : | 08 Civ. 11117 (TPG) |
| LITIGATION | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| This Document Relates to:  State Law Actions | : | ECF CASE |
| 08 Civ. 11183 (TPG) | : | Electronically Filed |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## THE TREMONT DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

Seth M. Schwartz
Susan L. Saltzstein
Michael H. Gruenglas
Jason C. Vigna
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Tremont Partners, Inc.,
Tremont Group Holdings, Inc.,
Robert Schulman, Harry Hodges
and Jim Mitchell

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................... 1

SUMMARY OF ALLEGATIONS .................................................................................. 2

ARGUMENT .................................................................................................................. 7

I.      ALL OF PLAINTIFFS' CLAIMS ARE BARRED BY THE EXCULPATION
        PROVISIONS OF THE PARTNERSHIP AGREEMENTS ............................................ 7

II.     ALL OF PLAINTIFFS' CLAIMS OTHER THAN BREACH OF CONTRACT ARE
        BARRED BY THE MARTIN ACT ............................................................................ 10

III.    ALL OF PLAINTIFFS' CLASS ACTION CLAIMS ARE BARRED BY SLUSA ......... 11

IV.     PLAINTIFFS LACK STANDING TO ASSERT DERIVATIVE CLAIMS ................... 12

        A.      The Class Action Plaintiffs' "Direct" Claims Are Actually Derivative In
                Nature ............................................................................................................. 12

        B.      Plaintiffs Have Not Established Standing To Assert Derivative Claims .............. 14

                1.      Delaware Does Not Recognize "Double-Derivative" Claims Of The
                        Sort Asserted Here ................................................................................. 14

                2.      Plaintiffs Did Not Make Demand Or Allege Particularized Facts
                        Excusing Their Failure To Do So ........................................................ 15

V.      ALL OF PLAINTIFFS' CLAIMS ARE OTHERWISE LEGALLY DEFICIENT .......... 18

        A.      Madoff's Intentional Criminal Act Was A Supervening Cause, Cutting Off
                Tremont's Potential Liability .......................................................................... 18

        B.      The Complaint Fails To State A Claim Of Breach Of Fiduciary Duty ................ 19

                1.      TGH, Schulman, Mitchell And Hodges Owed No Plenary Fiduciary
                        Duty To Plaintiffs ................................................................................. 19

                2.      TPI Did Not Owe Plaintiffs A Duty To Conduct Due Diligence And,
                        In Any Event, It Is Protected By The Business Judgment Rule .............. 20

                3.      Plaintiffs Do Not Adequately Plead A Failure To Monitor ...................... 22

C.    Plaintiffs' Breach Of Contract Claim Should Be Dismissed Because Plaintiffs Fail To Identify The Breach Of Any Contractual Duty ........................................23

D.    The LPAs And Advisory Agreements Preclude Plaintiffs' Unjust Enrichment Claims .............................................................................................................24

CONCLUSION....................................................................................................................25

## TABLE OF AUTHORITIES

### CASES

Aboushanab v. Janay,
    No. 06 Civ. 13472, 2007 WL 2789511 (S.D.N.Y. Sept. 26, 2007) ................................ 14

Adamski v. Lama,
    869 N.Y.S.2d 256 (N.Y. App. Div. 2008) ...................................................................... 18

Albert v. Alex. Brown Management Services, Inc.,
    No. 762, 2005 WL 2130607 (Del. Ch. Aug. 26, 2005) ................................................... 20

Anglo American Security Fund, L.P. v. S.R. Global International Fund, L.P.,
    No. Civ.A. 20066-N, 2006 WL 1494360 (Del. Ch. May 24, 2006) ................................ 18

Aronson v. Lewis,
    473 A.2d 805 (Del. 1984) ............................................................................................... 16

Atuahene v. City of Hartford,
    10 F. App'x 33 (2d Cir. 2001) ........................................................................................... 9

Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.,
    No. 03-1537, 2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003) ................................... 24, 25

In re Bayou Hedge Fund Litigation,
    534 F. Supp. 2d 405 (S.D.N.Y. 2007) ................................................. 9, 10, 11, 20, 22, 23

Bello v. New England Financial,
    3 Misc.3d 1109(A) (Table), 2004 WL 1305515
    (Sup. Ct. N.Y. County May 20, 2004) ............................................................................. 25

Brehm v. Eisner,
    746 A.2d 244 (Del. 2000) .......................................................................................... 16, 17

CPC International Inc. v. McKesson Corp.,
    514 N.E.2d 116 (N.Y. 1987) ........................................................................................... 10

Campbell v. DiSabatino,
    947 A.2d 1116 (Del. 2008) .............................................................................................. 18

Caraballo v. United States,
    830 F.2d 19 (2d Cir. 1987) .............................................................................................. 19

In re Caremark International, Inc. Derivative Litigation,
    698 A.2d 959 (Del. Ch. 1996) ......................................................................................... 23

iii

Carfagno v. Schnitzer,
    591 F. Supp. 2d 630 (S.D.N.Y. 2008) ................................................................................. 14

Cincinnati Bell Cellular System Co. v. Ameritech Mobile Phone Service of Cincinnati, Inc.,
    No. 13389, 1996 WL 506906 (Del. Ch. Sept. 3, 1996) ................................................ 8, 14

In re Citigroup Inc. Shareholder Derivative Litigation,
    964 A.2d 106 (Del. Ch. 2009) ................................................................ 8, 9, 10, 21, 22, 23

Druck Corp. v. Macro Fund Ltd.,
    290 F. App'x 441 (2d Cir. 2008) ................................................................................. 13, 19

EOS Partners SBIC, L.P. v. Levine,
    839 N.Y.S.2d 729 (1st Dep't 2007) ....................................................................................13

In re Eaton Vance Mutual Funds Fee Litigation,
    380 F. Supp. 2d 222 (S.D.N.Y 2005) ................................................................................. 11

Feiner Family Trust v. VBI Corp.,
    No. 07 Civ. 1914, 2007 WL 2615448 (S.D.N.Y. Sept. 11, 2007) ..................................... 17

Feldman v. Cutaia,
    951 A.2d 727 (Del. 2008) ............................................................................................. 13, 14

Fink v. Komansky,
    No. 03 CV 0388, 2004 WL 2813166 (S.D.N.Y. Dec. 8, 2004) ..........................................23

Furst v. Feinberg,
    54 Fed. App'x 94 (3d Cir. 2002) ........................................................................................ 13

Gaines-Tabb v. ICI Explosives, USA, Inc.,
    160 F.3d 613 (10th Cir. 1998) ........................................................................................... 19

GlobalNet Financial.com, Inc. v. Frank Crystal & Co.,
    449 F.3d 377 (2d Cir. 2006) ...............................................................................................24

Globis Partners, L.P. v. Plumtree Software, Inc.,
    No. 1577, 2007 WL 4292024 (Del. Ch. Nov. 30, 2007) ...................................................22

Goldman v. Metropolitan Life Insurance Co.,
    841 N.E.2d 742 (N.Y. 2005) ...............................................................................................24

Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.,
    No. Civ. A. 1574, 1998 WL 832631 (Del. Ch. Nov. 10, 1998) ........................................ 16

Greenwald v. Orb Communications & Marketing, Inc.,
    No. 00 Civ.1939 LTSHBP, 2003 WL 660844 (S.D.N.Y. 2003) ...................................... 18

iv

Grobow v. Perot,
        539 A.2d 180 (Del. 1988) ......................................................................................17

Guttman v. Huang,
        823 A.2d 492 (Del. Ch. 2003).............................................................. 16, 17, 23

Haber v. Bell,
        465 A.2d 353 (Del. Ch. 1983) ............................................................................16

Heller v. Goldin Restructuring Fund, L.P.,
        590 F. Supp. 2d 603 (S.D.N.Y. 2008) ..............................................................11

Henry v. Merck & Co.,
        877 F.2d 1489 (10th Cir. 1989)...........................................................................18

Hercules Powder Co. v. DiSabatino,
        88 A.2d 529 (Del. 1963) ......................................................................................19

Horattas v. Citigroup Financial Markets Inc.,
        532 F. Supp. 2d 891 (W.D. Mich. 2007) .........................................................12

Industrial Risk Insurers v. Port Authority of New York & New Jersey,
        387 F. Supp. 2d 299 (S.D.N.Y. 2005) ................................................................9

Ingrassia v. Lividikos,
        54 A.D.3d 721 (2d Dep't 2008) ..........................................................................19

Instituto de Prevision Militar v. Merrill Lynch,
        546 F.3d 1340 (11th Cir. 2008)...........................................................................12

In re J.P. Stevens & Co. Shareholders Litigation,
        542 A.2d 770 (Del. Ch. 1988)..............................................................................21

Jacobs v. Yang,
        No. Civ.A. 206-N, 2004 WL 1728521 (Del. Ch. Aug. 2, 2004).....................16

James v. Meow Media, Inc.,
        300 F.3d 683 (6th Cir. 2002)...............................................................................19

Jana Master Fund, Ltd. v. JPMorgan Chase & Co.,
        859 N.Y.S2d 903(Table), 2008 WL 746540 (Sup. Ct. N.Y. County Mar. 12, 2008).......10

Kamen v. Kemper Financial Services, Inc.,
        500 U.S. 90 (1991) ...............................................................................................13

Laties v. Wise,
    No. Civ. A. 1280, 2005 WL 3501709 (Del. Ch. Dec. 14, 2005) ....................................15

In re Lear Corp. Shareholder Litigation,
    967 A.2d 640 (Del. Ch. 2008)...........................................................................................8

Leather v. U.S. Trust Co. of New York,
    720 N.Y.S.2d 448 (1st Dep't 2001) ..................................................................................9

Levine v. Smith,
    591 A.2d 194 (Del. 1991) ................................................................................................16

Litman v. Prudential-Bache Properties, Inc.,
    No. 12137, 1993 WL 5922 (Del. Ch. Jan. 4, 1993) ..................................................16, 17

Litt v. Wycoff,
    No. Civ.A. 19083-NC, 2003 WL 1794724 (Del. Ch. Mar. 28, 2003).............................21

Lyondell Chemical Co. v. Ryan,
    No. 401,2008, 2009 WL 1024764 (Del. Mar. 25, 2009) ...................................................8

Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,
    547 U.S. 71 (2006) ..........................................................................................................11

Moore Business Forms, Inc. v. Cordant Holdings Corp.,
    No. 13911, 1995 WL 662685 (Del. Ch. Nov. 2, 1995) ...................................................24

Official Committee of the Unsecured Creditors of Color Tile, Inc. v. Investcorp S.A., 137 F.
    Supp. 2d 502 (S.D.N.Y. 2001)...........................................................................................8

Panama v. American Tobacco Co.,
    C.A. No. 05C-07-181, 2006 WL 1933740 (Del. Super. Ct. July 13, 2006) ....................18

People v. Federated Radio Corp.,
    154 N.E. 655 (N.Y. 1926)................................................................................................10

Pogostin v. Rice,
    480 A.2d 619 (Del. 1984) ................................................................................................17

Port Authority of New York & New Jersey v. Arcadian Corp.,
    189 F.3d 305 (3d Cir. 1999)........................................................................................18, 19

Potter v. Janus Investment Fund,
    483 F. Supp. 2d 692 (S.D. Ill. 2007) ...............................................................................11

Pro Bono Investments, Inc. v. Gerry,
    No. 03 Civ. 4347, 2005 WL 2429787 (S.D.N.Y. Sept. 30, 2005) ...................................11

Rabin v. JPMorgan Chase Bank, N.A.,
No. 06 C 5452, 2007 WL 2295795 (N.D. Ill. Aug. 3, 2007)...........................................12

Rales v. Blasband,
634 A.2d 927 (Del. 1993) ...................................................................................16, 17

Rattner v. Bidzos,
No. Civ. A. 19700, 2003 WL 22284323 (Del. Ch. Sept. 30, 2003)................................23

Rogers v. Grimaldi,
875 F.2d 994 (2d Cir. 1989).................................................................................19

In re Salomon Smith Barney Mutual Fund Fees Litigation,
441 F. Supp. 2d 579 (S.D.N.Y. 2006) .........................................................................11

Schnorr v. Schubert,
No. 05-303, 2005 WL 2019878 (W.D. Okla. Aug. 18, 2005) ........................................12

Sedona Corp. v. Ladenburg Thalmann & Co.,
No. 03 Civ. 3120, 2005 WL 1902780 (S.D.N.Y. Aug. 9, 2005) ..............................10, 11

Seminaris v. Landa,
662 A.2d 1350 (Del. Ch. 1995)...............................................................................17

Seybold v. Groenink,
No. 06 Civ. 772, 2007 WL 737502 (S.D.N.Y. Mar. 12, 2007)......................................13

Siepel v. Bank of America, N.A.,
526 F.3d 1122 (8th Cir. 2008)...............................................................................12

State of Sao Paulo, Brazil v. American Tobacco Co.,
919 A.2d 1116 (Del. 2007) ...................................................................................18

Stegall v. Ladner,
394 F. Supp. 2d 358 (D. Mass. 2005)...........................................................................7

Sternberg v. O'Neil,
550 A.2d 1105 (Del. 1988) ...................................................................................15

Stone v. Ritter,
911 A.2d 362 (Del. 2006) ....................................................................................23

TIFD III-X LLC v. Fruehauf Production Co., L.L.C.,
883 A.2d 854 (Del. Ch. 2004)..................................................................................14

Thorpe by Castleman v. CERBCO, Inc.,
       676 A.2d 436 (Del. 1996) ............................................................................18

Trenwick American Litigation Trust v. Ernst & Young, L.L.P.,
       906 A.2d 168 (Del. Ch. 2006) ....................................................................20

United States v. Madoff,
       No. 09 Cr. 00213 (S.D.N.Y. Mar. 10, 2009) ...............................................6

United States Mortgage, Inc. v. Saxton,
       494 F.3d 833 (9th Cir. 2007) ......................................................................12

Ventricelli v. Kinney System Rent a Car, Inc.,
       45 N.Y.2d 950 (N.Y. 1978) ................................................................. 18, 19

Wallace ex rel. Cencom Cable Income Partners II, L.P. v. Wood,
       752 A.2d 1175 (Del. Ch. 1999) ..................................................................19

In re Walt Disney Co. Deriv. Litigation,
       906 A.2d 27 (Del. 2006) ...............................................................................8

Ward v. State,
       81 Misc. 2d 583 (N.Y. Ct. Cl. 1975) .........................................................18

White v. Panic,
       793 A.2d 356 (Del. Ch. 2000) ............................................................. 17, 21

Wood v. Baum,
       953 A.2d 136 (Del. 2008) .............................................................................8

Zoren v. Genesis Energy, L.P.,
       836 A.2d 521 (Del. Ch. 2003) ....................................................................21

## STATUTES

15 U.S.C. § 78bb(f)(1) .........................................................................................11

15 U.S.C. § 78bb(f)(5)(B) ....................................................................................12

Del. Code Ann. Tit. 6, § 17-1003 (2006) .............................................................15

Del. Code Ann. Tit. 6, § 17-1101(f) (2006) ...........................................................7

N.Y. General Business Law §§ 352 et seq. (McKinney 2009)..............................10

N.Y. Partnership Law § 121-901 (McKinney 2005) ...............................................7

OTHER

57A Am. Jur. 2d <u>Negligence</u> § 636 (2008) ................................................................................19

Defendants Tremont Partners, Inc. ("TPI"), Tremont Group Holdings, Inc. ("TGH"), Robert Schulman, Harry Hodges and Jim Mitchell (collectively, the "Tremont Defendants" or "Tremont") respectfully submit this memorandum of law in support of their motion for an Order, pursuant to Rules 12(b)(1), 12(b)(6) and 23.1 of the Federal Rules of Civil Procedure, dismissing the First Consolidated and Amended Class Action and Verified Derivative Complaint in this action (the "Complaint") as against the Tremont Defendants.

## PRELIMINARY STATEMENT

Plaintiffs claim to be direct or indirect investors in one or more hedge funds (collectively, the "Funds") managed by defendant TPI, which invested the Funds' assets with Bernard L. Madoff ("Madoff"). As the world recently learned, Madoff stole the Funds' assets, leaving the Funds with next to nothing.

In their Complaint, plaintiffs seek to recover the assets Madoff stole by blaming the Tremont Defendants for Madoff's fraud. To that end, plaintiffs allege a variety of state law claims—some direct, some derivative—premised on the theory that TPI failed to conduct due diligence on Madoff. In reality, TPI took every reasonable precaution—and then some—in monitoring and evaluating Madoff's operations, strategies and investments. It also took considerable comfort from its knowledge of the investigations and audits conducted by the SEC and NASD, respectively, which produced no finding of impropriety, much less massive fraud, on the part of Madoff or his firm, Bernard L. Madoff Investment Securities, LLC ("BLMIS").

In seeking to make Tremont the scapegoat for Madoff's sophisticated and well-concealed scheme, plaintiffs have manufactured claims that not only have no basis in fact, but also are defective as a matter of law. All of the claims should be dismissed as against the Tremont Defendants because, as shown below:

- The claims are all barred by contracts exculpating the Tremont Defendants from liability for decisions made in good faith, such as investing with Madoff;

- The claims are preempted by the Martin Act;

- The claims brought directly on behalf of a putative class of fund investors are all barred by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA");

- To the extent plaintiffs' claims are derivative in nature, plaintiffs lack standing to assert them because plaintiffs have not complied with the requirements for bringing those claims; and

- Plaintiffs' allegations otherwise fail to state a claim.

## SUMMARY OF ALLEGATIONS

### The Funds and the Tremont Defendants

Rye Select Broad Market Fund, L.P. (the "Market Fund"), Rye Select Broad Market Prime Fund L.P. (the "Prime Fund") and Rye Select Broad Market XL Fund, L.P. (the "XL Fund") (collectively, the "On-shore Funds") are hedge funds organized under Delaware law as limited partnerships.  (Compl. ¶¶ 48-50.)  TPI, a Connecticut corporation headquartered in Rye, New York, is the general partner of the On-shore Funds.  (Id.)  It manages those Funds pursuant to limited partnership agreements ("LPAs") that authorize TPI, among other things, to delegate management of the Funds' assets to a manager chosen in TPI's sole discretion.[1]  Pursuant to that authority, TPI selected Madoff as the sole asset manager of the On-shore Funds.  (Id. ¶¶ 82, 89, 97.)  The On-shore Funds compensated TPI for its services through payment of monthly management fees and administrative fees as authorized by the LPAs.[2]

Rye Select Broad Market Portfolio Limited (the "Market Portfolio Fund") and Rye Select Broad Market XL Portfolio Limited (the "XL Portfolio Fund") (collectively, the "Off-shore Funds")

---

[1]      (Compl. ¶¶ 78, 83, 94; Rye Select Broad Market Fund, L.P. Am. and Restated Ltd. P'ship Agreement ("Market Fund LPA"), attached to Transmittal Decl. of Jason C. Vigna in Supp. of the Tremont Defendants' Mot. to Dismiss ("Trans. Decl.") as Ex. A, § 2.06(ix); Rye Select Broad Market Prime Fund, L.P. Am. and Restated Ltd. P'ship Agreement ("Prime Fund LPA"), attached to the Trans. Decl. as Ex. B, §§ 1.4(a), 2.2; Rye Select Broad Market XL Fund, L.P. Am. and Restated Ltd. P'ship Agreement ("XL Fund LPA"), attached to the Trans Decl. as Ex. C, §§ 1.4(b), 2.2.)

[2]      (Compl. ¶¶ 81, 85, 95; Broad Market LPA (Trans. Decl. Ex. A) § 3.13; Prime Fund LPA (Trans. Decl. Ex. B) § 2.3; XL Fund LPA (Trans. Decl. Ex. C) § 2.3.)

are corporations organized under the laws of the Cayman Islands.  (Compl. ¶¶ 51-52.)  Pursuant to

investment management agreements with the Off-shore Funds, TPI acts as investment adviser to

those Funds[3] and is entitled to monthly management and administrative fees for its services in that

capacity.[4]  At the direction of TPI, the Off-shore Funds invested substantially all of their assets with

Madoff.  (Compl. ¶ 101.)

Defendant TGH is a holding company organized under Delaware law.  (Compl. ¶ 33.)  It is

headquartered in Rye, New York and is the parent company of TPI, among other companies.  (Id.)

Plaintiffs allege that defendant Robert Schulman was president, Chief Executive Officer and

Chairman of TGH's Board through 2006, and became president and CEO of Rye Investment

Management, an unincorporated division of TGH, in 2007.  (Id. ¶ 34.)  According to the Complaint,

defendant Jim Mitchell has been president and CEO of Rye Investment Management since July

2008.  (Id. ¶ 35.)  Plaintiffs allege defendant Harry Hodges is vice president of investor services at

Rye Investment Management.  (Id. ¶ 32.)

**The Private Placement Memoranda**

The On-shore Funds sold limited partnership interests and the Off-shore Funds sold shares

of stock to qualified investors pursuant to private placement memoranda (the "PPMs") disclosing

the material terms and risks of an investment with the Funds.  The PPMs disclosed that each Fund

was "a single advisor fund" that custodied its assets with a broker-dealer that had only one

principal—the Fund's asset manager—and that the asset manager intended to invest "primarily in

---

[3]      (Compl. ¶¶ 98, 103; Rye Select Broad Market Portfolio Limited Am. and Restated Prospectus
("Market Portfolio Fund PPM"), attached to the Trans. Decl. as Ex. D, at 5; Rye Select Broad Market XL
Portfolio Limited Am. and Restated Information Mem. ("XL Portfolio Fund PPM"), attached to the Trans.
Decl. as Ex. E, at 6.)

[4]      (Market Portfolio Fund PPM (Trans. Decl. Ex. D) at 10; XL Portfolio Fund PPM (Trans. Decl. Ex. E)
at 9.)

securities."[5]  The PPMs warned that "the [Fund] will not have direct control of the [Fund's] assets once they are allocated among the Managers" and that "the overall success of the [Fund] depends on the ability of [an asset manager] to be successful in its own strategy."[6]  The PPMs further warned that:

> [TPI] may not always be provided with detailed information regarding all the investments made by the Managers because certain of this information may be considered proprietary information by the Managers.  *This lack of access to information may make it more difficult for [TPI] to select, allocate among and evaluate the Managers.*[7]

Because of the significant risks associated with the Funds, investors were required to meet stringent standards of sophistication established by the SEC before TPI could accept their subscriptions for shares or limited partnership interests.[8]  Investors were also warned that the Funds were suitable only for those willing "to bear the potential loss of their entire investment."[9]

---

[5]     (Compl. ¶¶ 66-68, 78-79, 83-84, 90, 112, 230, 233; Rye Select Broad Market Fund, L.P. Am. and Restated Confidential Private Placement Mem. ("Market PPM"), attached to the Trans. Decl. as Ex. F, at 1, 2, 18; see also Rye Select Broad Market Prime Fund, L.P. Am. and Restated Confidential Private Placement Mem. ("Prime Fund PPM"), attached to the Trans. Decl. as Ex. G, at ii, 1-2, 12; Rye Select Broad Market XL Fund, L.P. Am. and Restated Confidential Private Placement Mem. ("XL Fund PPM"), attached to the Trans. Decl. as Ex. H, at 3, 7; Market Portfolio Fund PPM (Trans. Decl. Ex. D) at 2, 7-8; XL Portfolio Fund PPM (Trans. Decl. Ex. E) at 3, 8.).)

[6]     (Broad Market PPM (Trans. Decl. Ex. E) at 2, 32; Prime Fund PPM (Trans. Decl. Ex. F) at x, 2, 27, 28, 36; XL Fund PPM (Trans. Decl. Ex. G) at 25; Market Portfolio Fund PPM (Trans. Decl. Ex. D) at 20; XL Portfolio Fund PPM (Trans. Decl. Ex. E) at 22.)

[7]     (Market PPM (Trans. Decl. Ex. F) at 33; Prime Fund PPM (Trans. Decl. Ex. G) at 28; XL Fund PPM (Trans. Decl. Ex. H) at 19; Market Portfolio Fund PPM (Trans. Decl. Ex. D) at 20; XL Portfolio Fund PPM (Trans. Decl. Ex. E) at 17) (emphasis added).)

[8]     For example, before they could be permitted to invest in the Market Fund, individuals and institutions  needed to establish that they were (i) "accredited investors" within the meaning of Regulation D promulgated under the Securities Act of 1933, (ii) "qualified clients" within the meaning of the Investment Advisors Act of 1940, as amended and (iii) "qualified purchasers" as defined in the Investment Company Act of 1940, as amended.  (Market PPM (Trans. Decl. Ex. F) at 25-30; see also Prime Fund PPM (Trans. Decl. Ex. G) at 21-27; XL Fund PPM (Trans. Decl. Ex. H) at 10-15; Market Portfolio Fund PPM (Trans. Decl. Ex. D) at x; XL Portfolio Fund PPM (Trans. Decl. Ex. E) at vi.)

[9]     (Market PPM (Trans. Decl. Ex. F) at 25; Prime Fund PPM (Trans. Decl. Ex. G) at 21-22; XL Fund PPM (Trans. Decl. Ex. H) at 10; Market Portfolio Fund PPM (Trans. Decl. Ex. D) at iii; XL Portfolio Fund PPM (Trans. Decl. Ex. E) at 16.)

### Other Service Providers

TPI did not manage the Funds alone; it obtained the assistance of a number of independent service providers.  As noted in the Complaint, Bank of New York – Alternative Investment Services, Inc. ("BNY") provided fund administration, valuation and custodial services to the Funds, including "monthly calculation of the Net Asset Value for certain Rye Funds, independent portfolio monitoring, . . . [and] reconciliation of trading activities[.]"  (Compl. ¶¶ 367-68.)  TPI also obtained assistance from SS&C Fund Services ("SS&C"), an unaffiliated fund administrator.  (Id. ¶ 381.)  TPI also retained two "Big Four" accounting firms, Ernst & Young LLP ("E&Y") and KPMG LLP ("KPMG"), to audit the Funds annually.  (Id. ¶¶ 323-29.)

### Plaintiffs' Investments In The Funds

Plaintiffs Arthur E. Lange Revocable Trust ("Lange Trust"), Arthur Lange, Eastham Capital Appreciation Fund LP ("Eastham Capital") and NPV Positive Corp. ("NPV Positive") purport to assert direct claims on behalf of a putative class of investors in all of the Funds (the "Class Action Plaintiffs").  Lange Trust, Lange and Eastham Capital allegedly invested in the Prime Fund. (Compl. ¶¶ 86-88, 429.)  Lange Trust also claims it invested in the XL Fund and plaintiff NVP Positive claims it invested in the Market Portfolio Fund.  (Id. ¶¶ 96, 100, 430.)  The account statements sent to the Class Action Plaintiffs disclosed that all Fund assets "have been and will continue to be custodied for the benefit of the [Funds] at Bernard L. Madoff Investment Securities LLC, 885 Third Avenue, New York, NY 10022."  (See, e.g., Jan. 2008 Lange Trust account statement, attached to the Trans. Decl. as Ex. I.)

Plaintiffs Richard Peshkin, John Dennis, Daniel Jackson, Laborers Local Pension Plan 17 ("Laborers Pension Plan"), Eastham Capital and NPV Positive purport to assert derivative claims on behalf of the Funds (the "Derivative Plaintiffs").  By their own admission, plaintiffs Peshkin, Dennis, Jackson and Laborers Pension Plan did not invest directly in any of the Funds and thus are

not limited partners of the On-shore Funds.  Rather, they allegedly placed their own capital directly into hedge funds unaffiliated with Tremont.  Those unaffiliated funds, in turn, invested their own assets in "the Market Fund, Prime Fund, *and/or* XL Fund."  ((Id. ¶¶ 2, 422-28) (emphasis added).)[10]

**Plaintiffs' Claims**

On December 11, 2008, the world first learned that Madoff had not followed his disclosed strategy of investing Fund assets in "a basket of 35 to 50 common stocks within the Standard & Poor's 100 Index" (Compl. ¶¶ 66-68, 230, 233), but had instead orchestrated a longstanding and far reaching Ponzi scheme.  (Id. ¶¶ 218-234.)  Plaintiffs acknowledge that "Madoff had created 'a broad infrastructure at [BLMIS] to generate the impression . . . that [BLMIS] was operating a legitimate investment advisory business in which client funds actively traded as he had promised[.]"  (Id. ¶ 226.)  To that end, "Madoff 'hired numerous employees . . . to serve as a 'back office' . . . [to] generate 'false and fraudulent documents' relating to BLMIS's activities.'"  (Id. ¶¶ 227-28.)

Plaintiffs conclusorily assert that TPI's failure to detect Madoff's fraud prior to December 11 demonstrates that it did not conduct due diligence on Madoff or monitor the Funds' investments. (Compl. ¶¶ 313, 320.)  Nonetheless, plaintiffs concede that the Securities and Exchange Commission ("SEC") failed to uncover Madoff's alleged fraud, despite investigating Madoff after being advised in 2005 of twenty-nine "red flags" purportedly indicating that Madoff was operating a Ponzi scheme.  (Id. ¶¶ 297-98; Information, Docket Entry No. 38, United States v. Madoff, No. 09 Cr. 00213 (S.D.N.Y. Mar. 10, 2009) (the "Madoff Information"), attached to the Trans. Decl. as Ex. J, at ¶ 37; SEC Division of Enforcement Case Closing Recommendation in Case No. NY-07563 (the "SEC Case Closing"), attached to the Trans. Decl. as Ex. K.)

---

[10]     No plaintiff claims to have invested in the XL Portfolio Fund, either directly or indirectly, and no plaintiff affirmatively alleges that he or it directly or indirectly invested in the Market Fund.

Based on the false premise that any due diligence would have revealed Madoff's fraud, the Class Action Plaintiffs have asserted:  (i) a direct claim of breach of fiduciary duty (Compl. ¶¶ 433-45); (ii) a direct claim of unjust enrichment (against TGH only) (id. ¶¶ 460-70); and (iii) a direct claim of breach of contract (against TGH and TPI only) (id. ¶¶ 471-80).  The Derivative Plaintiffs have asserted (iv) a derivative claim of breach of fiduciary duty (id. ¶¶ 501-506); (v) a derivative claim of malpractice and professional negligence (id. ¶¶ 513-18); and (vi) a derivative claim of unjust enrichment (id. ¶¶ 535-42).

<u>ARGUMENT</u>

I.    **ALL OF PLAINTIFFS' CLAIMS ARE BARRED BY THE EXCULPATION PROVISIONS OF THE PARTNERSHIP AGREEMENTS**

Plaintiffs' claims should be dismissed because they are barred by exculpation provisions of the LPAs, which expressly limit the scope of the Tremont Defendants' potential liability to both the Funds and limited partners such as plaintiffs.[11]  In accordance with applicable Delaware law,[12] the XL Fund and Prime Fund LPAs contain an exculpation provision providing that:

> Neither the General Partner nor any Affiliate shall be liable to any Limited Partner or the Partnership for errors of judgment or for action or inaction, whether or not disclosed, which said party reasonably believed to be in the best interests of the Partnership[.]

(Ex. C, § 2.6; Ex. B § 2.7.)  Section 3.09 of the Market Fund LPA (Ex. A) provides:

---

[11]    The Class Action and Derivative Plaintiffs assert claims on behalf of the Market Fund and XL Portfolio Fund and investors in those Funds.  *All* of these claims should be dismissed because the plaintiffs never invested in either fund and therefore lack standing to assert claims based on any transactions involving those funds.  <u>See, e.g.</u>, <u>Stegall v. Ladner</u>, 394 F. Supp. 2d 358, 362-63 (D. Mass. 2005) (plaintiff who invested in a mutual fund lacked standing to assert claims involving other funds in the same family sharing a common investment adviser).

[12]    The laws of Delaware govern the organization and internal affairs of the On-shore Funds.  <u>See</u> N.Y. Partnership Law § 121-901 (McKinney 2005).  "A partnership agreement may provide for the limitation or elimination of any and all liabilities for breach of contract and breach of duties (including fiduciary duties) of a partner or other person . . . ."  Del. Code Ann. Tit. 6, § 17-1101(f) (2006).

> The General Partner shall not be liable, responsible or accountable in damages or otherwise to any Limited Partners or the Partnership for any act of omission of such General Partner, except for acts or omissions constituting willful misfeasance, bad faith, gross negligence or a reckless disregard of duty. [13]

The XL Fund and Prime Fund LPAs track the language of Del. Code Tit. 6, § 145 and preclude liability for acts other than those *consciously taken in bad faith*.[14]  See In re Walt Disney Co. Deriv. Litig., 906 A.2d 27, 65-66 (Del. 2006) (finding that nearly identical language eliminates liability for acts other than "a violation of the duty to act in good faith").  Bad faith generally may be shown only where a fiduciary:  (i) intends to harm the corporation; (ii) intends to violate positive law; or (iii) "intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties." Id. at 67 (citation omitted); see also In re Citigroup Inc. S'holder Deriv. Litig., 964 A.2d 106, 124 (Del. Ch. 2009).[15]  Accordingly, "[w]here, as here, directors are exculpated from liability except for claims based on . . . 'bad faith' conduct, a plaintiff must . . . plead . . . facts that demonstrate that the [defendants] acted with *scienter*, i.e., that they had actual or constructive knowledge that their conduct was legally improper." Wood v. Baum, 953 A.2d 136, 141 (Del. 2008) (citation omitted) (emphasis added).

Even the least stringent standard for liability created under the LPAs—gross negligence (included only in the Broad Market Fund LPA)—is itself "extremely stringent." In re Lear Corp. S'holder Litig., 967 A.2d 640, 652 (Del. Ch. 2008).  "Gross negligence means reckless indifference

---

[13]     While TGH and the individual Tremont Defendants are not specifically mentioned in the Market Fund's exculpation provision, they may invoke its protections because plaintiffs seek to impose liability on them for the alleged action or inaction of TPI.  See Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Investcorp S.A., 137 F. Supp. 2d 502, 514-15 (S.D.N.Y. 2001).

[14]     Delaware courts "tend to use the terms 'bad faith' and 'failure to act in good faith' interchangeably[.]" Lyondell Chem. Co. v. Ryan, No. 401,2008, 2009 WL 1024764, at *3 n.8 (Del. Mar. 25, 2009).

[15]     Though these definitions were developed in the corporate context, they are equally "applicable in the context of this limited partnership." Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv. of Cincinnati, Inc., No. 13389, 1996 WL 506906, at *1 (Del. Ch. Sept. 3, 1996) aff'd, 692 A.2d 411 (Del. 1997).

to or a deliberate disregard of the whole body of stockholders or actions which are without the bounds of reason." Id. at 652, n.45 (citation omitted).  As one Delaware court has explained, "the definition is so strict that it imports the concept of recklessness into the gross negligence standard, thus conflating two standards that are distinct when used in the criminal law [context]." Id.

Plaintiffs' allegations are insufficient to plead gross negligence, much less legal bad faith.[16]  Plaintiffs claim that TPI "*should have known* of the criminality and/or gross irregularities in Madoff's operations."[17]  (Compl. ¶ 242 (emphasis added); see also id. ¶¶ 4, 506.)  This is nothing more than an allegation of simple negligence—an exculpated violation of the duty of care.  See Lyondell Chem., 2009 WL 1024764, at *7.  It is *not* an allegation of reckless or deliberate indifference.  As Judge McMahon held in dismissing similar claims against a hedge fund manager that allegedly overlooked red flags of a Ponzi scheme, a "failure to conduct due diligence is not the same thing as knowing of or closing one's eyes to a known 'danger[.]'" In re Bayou Hedge Fund Litig., 534 F. Supp. 2d 405, 417 (S.D.N.Y. 2007); In re Citigroup, 964 A.2d at 128 ("The warning signs alleged . . . are not evidence that [defendants] consciously disregarded their duties[.]").[18]

---

[16]     Simply invoking the terms "reckless" (Compl. ¶¶ 6, 242, 245, 262, 320) and "knowing" violation (id. ¶ 242) is insufficient as a matter of law to avoid the application of an exculpation provision.  See, e.g., Indus. Risk Insurers v. Port Auth. of N.Y. & N.J., 387 F. Supp. 2d 299, 307 (S.D.N.Y. 2005) (explaining that allowing such liberal pleading would "[strip] contracting parties . . . of the substantial benefit of their bargain, that is, avoiding the expense of lengthy litigation").

[17]     While plaintiffs make this assertion against all "Tremont Defendants," such "lumping" cannot be used to impose liability on defendants such as TGH, Schulman, Mitchell and Hodges as to whom few, if any, specific allegations are made.  See Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, Atuahene's complaint failed to satisfy [Fed. R. Civ. P. 8's] minimum standard[.]").

[18]     The exculpation provisions bar plaintiffs' malpractice and professional negligence claim (Compl. ¶¶ 513-18), which is grounded in allegations of simple negligence.  In any event, plaintiffs can not state a *professional* negligence or malpractice claim because the Tremont Defendants are not "professionals." See Leather v. U.S. Trust Co. of New York, 720 N.Y.S.2d 448, 449 (1st Dep't 2001).

## II.   ALL OF PLAINTIFFS' CLAIMS OTHER THAN
##        <u>BREACH OF CONTRACT ARE BARRED BY THE MARTIN ACT</u>

Plaintiffs' breach of fiduciary duty, unjust enrichment and malpractice and professional negligence claims against the Tremont Defendants are all barred by the Martin Act, N.Y. Gen. Bus. Law art. 23-A, §§ 352, *et seq.* (McKinney 2009).  The Martin Act is New York's "Blue Sky law," which grants New York's Attorney General the exclusive power to investigate and prosecute alleged securities law violations within or from the State of New York.  Id.; see also CPC Int'l Inc. v. McKesson Corp., 514 N.E.2d 116, 118-19 (N.Y. 1987); Sedona Corp. v. Ladenburg Thalmann & Co., No. 03 Civ. 3120, 2005 WL 1902780, at *22 (S.D.N.Y. Aug. 9, 2005).  The Martin Act covers all acts short of fraud that (a) "arise[] in the securities context," In re Bayou Hedge Fund, 534 F. Supp. 2d at 422, and (b) may "deceive or mislead the purchasing public[.]"  People v. Federated Radio Corp., 154 N.E. 655, 657 (N.Y. 1926); see also Jana Master Fund, Ltd. v. JPMorgan Chase & Co., 859 N.Y.S2d 903(Table), 2008 WL 746540, at *5 (Sup. Ct. N.Y. County Mar. 12, 2008).

Plaintiffs' allegations fall squarely within the Martin Act's preemptive scope.  Specifically, plaintiffs assert (i) deceit (Compl. ¶¶ 78-80); (ii) in connection with the purchase of securities, limited partnership interests (id. ¶¶ 66-68, 230-33); (iii) within and from the State of New York (id. ¶¶ 14, 31-35).  See Sedona, 2005 WL 1902780, at *21-23 (identifying elements of Martin Act-preempted claims).

Courts routinely dismiss breach of fiduciary duty, professional negligence/malpractice and unjust enrichment claims, such as those alleged here, as preempted by the Martin Act.  Indeed, in In re Bayou Hedge Fund, the court dismissed nearly identical claims based on a hedge fund manager's alleged failure to detect a Ponzi scheme, finding that they were preempted by the statute.  See 534 F.

Supp. 2d at 420-22.  The same result is warranted here.[19]

## III.    ALL OF PLAINTIFFS' CLASS
##         ACTION CLAIMS ARE BARRED BY SLUSA

All of the Class Action Plaintiffs' claims should be dismissed because each is barred by

SLUSA.[20]  Title I of SLUSA provides that:

> No covered class action based upon the statutory or common law of any State . . .
> may be maintained in any State or Federal Court by any private party alleging—(A)
> a misrepresentation or omission of a material fact in connection with the purchase or
> sale of a covered security; or (B) that the defendant used or employed any
> manipulative or deceptive device or contrivance in connection with the purchase or
> sale of a covered security.

15 U.S.C. § 78bb(f)(1).

In Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 85 (2006), the Supreme

Court adopted a "broad construction" of SLUSA.  The Court explained that while "one might have

concluded that an alleged fraud is 'in connection with' a purchase or sale of securities only when the

plaintiff himself was defrauded into purchasing or selling particular securities[, . . . u]nder our

precedents, it is enough that the fraud alleged 'coincide' with a securities transaction—whether by

the plaintiff or by someone else."  Id. (citations omitted).  The Court also held that claims based on

the alleged *failure* to buy or sell covered securities fall squarely within SLUSA's ambit.  See id. at

---

[19]    See Heller v. Goldin Restructuring Fund, L.P., 590 F. Supp. 2d 603, 610-12 (S.D.N.Y. 2008)
(dismissing breach of fiduciary duty claims against New York general partner of Delaware investment fund);
In re Bayou Hedge Fund, 534 F. Supp. 2d at 421 (finding claims relating to "'investment advice' have been
deemed activities within the Martin Act's purview") (citation omitted); Pro Bono Invs., Inc. v. Gerry, No. 03
Civ. 4347, 2005 WL 2429787, at *16 (S.D.N.Y. Sept. 30, 2005) (dismissing breach of fiduciary duty and
unjust enrichment claims); Sedona, 2005 WL 1902780, at *21-23 (dismissing claims that defendant
"breached its duty to provide the investment and financial advisor services" as allegedly agreed).

[20]    These claims are preempted by SLUSA even though, as discussed in Section IV.A, infra, they are
actually derivative in nature.  See Potter v. Janus Inv. Fund, 483 F. Supp. 2d 692, 700 (S.D. Ill.
2007)  ("[T]hese claims, being derivative, are within the scope of SLUSA unless brought derivatively on
behalf of the funds after a demand by shareholders on corporate officers."); accord In re Salomon Smith
Barney Mut. Fund Fees Litig., 441 F. Supp. 2d 579, 594 n.15 (S.D.N.Y. 2006); In re Eaton Vance Mut.
Funds Fee Litig., 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) ("Counts Seven through Ten were improperly
pleaded as direct rather than derivative claims and all of the state law claims are preempted under SLUSA.").

88-89; <u>see also</u> <u>Instituto de Prevision Militar v. Merrill Lynch</u>, 546 F.3d 1340, 1348-50 (11th Cir.

2008); <u>Schnorr v. Schubert</u>, No. 05-303, 2005 WL 2019878, at *5-6 (W.D. Okla. Aug. 18, 2005).

Every element of SLUSA preclusion is satisfied here. Plaintiffs (i) seek to represent a

covered class, 15 U.S.C. § 78bb(f)(5)(B), of more than fifty people and/or consisting of themselves

and unnamed parties similarly situated (Compl. ¶¶ 417-21); (ii) assert direct state law claims (<u>id.</u> ¶¶

433-80); (iii) assert that defendants deceived them and made material misstatements (<u>id.</u> ¶¶ 78-80,

83-84, 90-92, 103-04, 228-34, 243, 246, 314-20, 435-38, 464, 466, 473-74); and (iv) assert that

defendants did so in connection with Madoff's misrepresented purchase and sale of "a basket of 35

to 50 common stocks within the Standard & Poor's 100 Index (the "S&P 100")" (<u>id.</u> ¶¶ 66-68, 230,

233), which are "covered securities," 15 U.S.C. § 78bb(f)(5)(E). Accordingly, plaintiffs' putative

class claims are barred by SLUSA and should be dismissed. <u>See</u> <u>Schnorr</u>, 2005 WL 2019878, at

*5-7 (claims that defendants failed to prevent Ponzi scheme barred by SLUSA).[21]

## IV.   PLAINTIFFS LACK STANDING TO ASSERT DERIVATIVE CLAIMS

### A.   The Class Action Plaintiffs' "Direct" Claims Are Actually Derivative In Nature

All of plaintiffs' claims, including those they purport to assert directly in an individual

capacity, are premised on allegations of injury suffered *directly by the Funds—i.e.*, the loss of Fund

assets—and only *incidentally* by plaintiffs and the Funds' other limited partners. The Complaint

nowhere alleges any unique injury suffered directly by any plaintiff. All of the claims therefore are

derivative in nature. Such claims may be pursued, if at all, solely by or on behalf of the Fund, and

*not* by plaintiffs directly, as they seek to do here.

---

[21]    <u>See also</u> <u>Siepel v. Bank of America, N.A.</u>, 526 F.3d 1122, 1126-27 (8th Cir. 2008) (trust
beneficiaries' claims barred by SLUSA); <u>U.S. Mortgage, Inc. v. Saxton</u>, 494 F.3d 833, 845 (9th Cir. 2007)
(SLUSA precludes claims by plaintiffs who lent money to defendant but did not themselves purchase
securities); <u>Horattas v. Citigroup Fin. Mkts. Inc.</u>, 532 F. Supp. 2d 891, 897-99, 902-03 (W.D. Mich. 2007)
(property owners' claims that defendants mismanaged or stole upkeep endowment precluded by SLUSA);
<u>Rabin v. JPMorgan Chase Bank, N.A.</u>, No. 06 C 5452, 2007 WL 2295795, at *7 (N.D. Ill. Aug. 3, 2007)
(trust beneficiaries' claims barred by SLUSA).

Under the law of Delaware and the Cayman Islands,[22] where, as here, "all of a [company's members] are harmed and would recover *pro rata* in proportion with their ownership of the [company] solely because they are [members], then the claim is derivative in nature."  Feldman v. Cutaia, 951 A.2d 727, 733 (Del. 2008); Druck Corp. v. Macro Fund Ltd., 290 F. App'x 441, 443-44 (2d Cir. 2008) (finding that where a plaintiff cannot prevail "without showing injury to the [Fund] itself," its claim is derivative under Cayman Islands law).  See also May 20, 2009 Decl. of William James Tyre Bagnall ("Bagnall Decl.") ¶¶ 15.1-15.3 (under Cayman law, a shareholder cannot recover if the loss he allegedly suffered "is the diminution of the value of his shares in the company, because this loss is merely a reflection of the loss suffered by the company").

In contrast, a claim is direct only where plaintiffs "suffered some individualized harm not suffered by all of the stockholders at large."  Feldman, 951 A.2d at 733.  When determining whether a claim is derivative or direct, courts "look to the nature of the wrongs alleged . . . not to the plaintiff's designation or stated intention."  Furst v. Feinberg, 54 Fed. App'x 94, 98 (3d Cir. 2002) (applying Delaware law) (quotation omitted).

The Class Action Plaintiffs purport to assert direct claims for breach of fiduciary duty, unjust enrichment and breach of contract.  (Compl. ¶¶ 433-45, 460-70, 471-80.)  The gravamen of these claims, however, is that defendants mismanaged the Funds' assets, resulting in the loss of those assets to Madoff's Ponzi scheme.  Despite the "direct" label the Class Action Plaintiffs have attached to the claims, the claims are "clearly derivative in nature [because] [d]amages for the general partners' [alleged wrongdoing] . . . would fall on the Partnership and all its partners[,]" and

---

[22]    "[T]he specific question of . . . standing to bring a derivative suit," including whether claims are derivative or direct and whether plaintiff has satisfied the requirements for bringing a derivative suit, is governed by the state of organization.  Seybold v. Groenink, No. 06 Civ. 772, 2007 WL 737502, at *5 (S.D.N.Y. Mar. 12, 2007); see also Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 108-09 (1991); EOS Partners SBIC, L.P. v. Levine, 839 N.Y.S.2d 729, 730 (1st Dep't 2007).

plaintiffs would recover only *pro rata* in proportion with their ownership interest in the Funds. Cincinnati Bell, 1996 WL 506906, at *19.[23]

Because the claims are derivative, they may be maintained, if at all, by or on behalf of the Funds, *not* by the Class Action Plaintiffs in their individual capacities. Having "failed to allege their claims . . . derivatively, in the name of the [Funds]," the Class Action Plaintiffs' "direct" claims should be dismissed as against the Tremont Defendants. Aboushanab v. Janay, No. 06 Civ. 13472, 2007 WL 2789511, at *6 (S.D.N.Y. Sept. 26, 2007); Feldman, 951 A.2d at 733 (dismissing direct claim because the "damages allegedly flowing from the purportedly direct claim . . . are exactly the same as those suffered by the corporation in the underlying derivative claim") (citation omitted). See also Bagnall Decl. ¶ 15.1 ("[W]here a company suffers loss as a result of an actionable wrong done to it, the cause of action is vested in the company and the company alone can sue.").

**B.      Plaintiffs Have Not Established Standing To Assert Derivative Claims**

**1.      Delaware Does Not Recognize "Double-Derivative" Claims Of The Sort Asserted Here**

In contrast to the Class Action Plaintiffs, the Derivative Plaintiffs purport to sue derivatively on behalf of the Funds. As to two of the Funds, however—the Market Fund and the XL Fund—no plaintiff has standing to sue on their behalf because none has ever made a direct investment in either Fund. Although four of the Derivative Plaintiffs, namely, Peshkin, Dennis, Jackson and Laborers Pension Plan, claim to have an interest in those Funds, their interest is only indirect. It is indirect because it stems from their investments in other hedge funds unaffiliated with Tremont (the "Feeder Funds"). These Feeder Funds were the actual limited partners who invested directly in the Market Fund and/or the XL Fund. (Compl. ¶¶ 422-424; 482 n.1).

---

[23]      See also Carfagno v. Schnitzer, 591 F. Supp. 2d 630, 636-37 (S.D.N.Y. 2008) (unjust enrichment claims are derivative) (applying Delaware law); TIFD III-X LLC v. Fruehauf Prod. Co., L.L.C., 883 A.2d 854, 859 (Del. Ch. 2004) (claims for breach of limited partnership agreement are derivative).

Because no Derivative Plaintiff is a limited partner of the Market Fund or the XL Fund, it appears that one or more of them is attempting to maintain a derivative claim in a "double derivative" capacity on behalf of both the Feeder Funds *and* the Market and XL Funds.  As a mater of law, they lack standing to do so.  In a traditional "double-derivative" suit, the shareholders of a parent corporation bring derivative suits against directors of a wholly-owned subsidiary.  <u>See</u> <u>Sternberg v. O'Neil</u>, 550 A.2d 1105, 1107 n.1 (Del. 1988).  Defendants are aware of no case in which a court imported this *corporate* concept into the *limited partnership* context.  In addition, double-derivative suits are brought by shareholders of parent companies on behalf of the parent's wholly-owned subsidiaries.  <u>See</u> <u>Sternberg</u>, 550 A.2d at 1124.  The Market Fund and XL Fund, however, are not owned or controlled by *any* entity—and certainly not by the unaffiliated Feeder Funds.  Therefore, no Derivative Plaintiff has standing to assert claims in an indirect double-derivative capacity on behalf of the Market Fund or XL Fund.

### 2.    Plaintiffs Did Not Make Demand Or Allege <u>Particularized Facts Excusing Their Failure To Do So</u>

As to the Funds in which plaintiffs invested directly, plaintiffs must make demand on the Funds' general partner or directors before commencing suit.  Because a "derivative claim belongs to the corporation," a shareholder lacks standing under Delaware law to maintain such a claim unless he "first exhausts all intracorporate remedies by making a demand on the board of directors to obtain the action desired, or by pleading *with particularity* why demand should be excused."  <u>Laties</u> <u>v. Wise</u>, No. Civ.A. 1280, 2005 WL 3501709, at *1 (Del. Ch. Dec. 14, 2005) (emphasis added); Del. Code Ann. Tit. 6, § 17-1003 (2006) (applying these requirements to limited partnerships).

Plaintiffs acknowledge in their Complaint that they made no presuit demand on TPI, the general partner of the On-shore Funds.  They therefore must establish that demand is futile, which requires allegations of particularized fact creating a reasonable doubt that (1) the general partner is

disinterested and independent[24] or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment. Aronson v. Lewis, 473 A.2d 805, 814, 815 (Del. 1984), overruled in part on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000).[25]  Where plaintiffs complain of inaction, such as a lack of oversight or failure to monitor, plaintiffs must plead particularized facts creating "'a reasonable doubt that, as of the time the complaint is filed, the [general partner] could have properly exercised its independent and disinterested business judgment in responding to a demand.'"  Guttman v. Huang, 823 A.2d 492, 501 (Del. Ch. 2003) (quoting Rales v. Blasband, 634 A.2d 927, 934 (Del. 1993)).

The demand requirements of Delaware law are "a substantive right—not simply a technical rule of pleading." Haber v. Bell, 465 A.2d 353, 357 (Del. Ch. 1983).  Moreover, a "[p]laintiff's pleading burden [in the demand context] is . . . more onerous than that required to withstand a Rule 12(b)(6) motion." Levine v. Smith, 591 A.2d 194, 207 (Del. 1991).  Conclusory allegations are not enough. See Brehm, 746 A.2d at 254.  Thus, absent demand or particularized allegations of why demand would be futile, the complaint must be dismissed. See id.; Aronson, 473 A.2d at 808.

Here, plaintiffs allege that demand should be excused because TPI "cannot be expected to prosecute claims against itself . . . while it faces substantial exposure to liabilities." (Compl. ¶ 432(g).)[26]  Courts in Delaware, however, consistently have held that demand is not excused "merely because [the general partner] would be suing [itself]." Jacobs v. Yang, No. Civ.A. 206-N,

---

[24]    The court in Gotham Partners, L.P. v. Hallwood Realty Partners, L.P., No. Civ. A. 1574, 1998 WL 832631 (Del. Ch. Nov. 10, 1998) held that where the general partner is itself a corporation, the court will look at whether the corporate entity itself is independent, not "the entity's internal decision-making individuals." Id. at *5.

[25]    Whether a plaintiff has met its heavy burden to plead demand futility is determined by reference to the requirements developed in court decisions involving derivative actions on behalf of corporations. See Litman v. Prudential-Bache Props., Inc., No. 12137, 1993 WL 5922 at *2-3 (Del. Ch. Jan. 4, 1993).

[26]    Plaintiffs nowhere allege, as they must, particularized facts sufficient to show that TPI faces a disabling conflict in considering whether to sue *other* entities or individuals, including TGH and the individual Tremont Defendants. See Aronson, 473 A.2d 805.

2004 WL 1728521, at *6 n.31 (Del. Ch. Aug. 2, 2004), aff'd, 867 A.2d 902 (Del. 2005); see also Pogostin v. Rice, 480 A.2d 619 (Del. 1984).  Rather, plaintiffs must plead particularized facts establishing that the case is a "rare" instance where the decision-maker engaged in such "egregious" misconduct that a "substantial likelihood of liability . . . exists."  Seminaris v. Landa, 662 A.2d 1350, 1354 (Del. Ch. 1995); see also Rales, 634 A.2d at 936; Guttman, 823 A.2d at 502-03.  As demonstrated below, plaintiffs fail to plead facts that satisfy even the liberal standards of Rule 8, much less the requisite particularized facts showing that a "substantial likelihood of liability exists" for TPI.  Therefore, their derivative claims should be dismissed.[27]  See Litman, 1993 WL 5922, at *2-3; see also, Brehm, 746 A.2d at 254.

In the same vein, under the law of the Cayman Islands, a plaintiff holding a minority stake in a corporation may assert derivative claims only where (1) the wrong done to a company amounts to a misappropriation of company property or an improper benefit to the wrongdoers at the expense of the company, and (2) the wrongdoers are "in control of the company and accordingly able to prevent the company from suing."  (Bagnall Decl. ¶¶ 16.2-16.4.)  Plaintiffs have made no such allegations.  (Id. ¶ 16.9.)  Accordingly, plaintiffs lack standing to assert claims related to the Off-shore Funds.  See Feiner Family Trust v. VBI Corp., No. 07 Civ. 1914(RPP), 2007 WL 2615448, at *5-6 (S.D.N.Y. Sept. 11, 2007) (dismissing derivative claims where plaintiffs failed to meet necessary requirements for bringing a derivative action under Cayman and English law.)

---

[27]    Plaintiffs' allegations that TPI suffers a debilitating financial conflict because it "*may* [face] . . . uncertain tax consequences of litigating as a named plaintiff, and due to its acceptance of fees," (Compl. ¶ 432(h) (emphasis added)), are insufficient on their face to excuse demand.  See White v. Panic, 793 A.2d 356, 368 (Del. Ch. 2000) ("Mere speculation . . . [is] wholly insufficient to establish a case of demand excusal"); Grobow v. Perot, 539 A.2d 180, 188 (Del. 1988) (stating allegations that the directors received fees "without more, do not establish any financial interest" sufficient to find the directors lacked independence), aff'd, 783 A.2d 543 (Del. 2001).

## V.   ALL OF PLAINTIFFS' CLAIMS ARE OTHERWISE LEGALLY DEFICIENT

### A.   Madoff's Intentional Criminal Act Was A Supervening Cause, Cutting Off Tremont's Potential Liability

For each claim asserted against the Tremont Defendants, plaintiffs must adequately allege that defendants' purported misconduct was the direct and proximate cause of their alleged losses.[28] Proximate cause exists if "a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred." Panama v. Am. Tobacco Co., C.A. No. 05C-07-181, 2006 WL 1933740, at *5 (Del. Super. Ct. July 13, 2006) (citation omitted), aff'd sub nom. State of Sao Paulo, Brazil v. Am. Tobacco Co., 919 A.2d 1116 (Del. 2007).  Stated alternatively, it is the "immediately effective cause of plaintiff's injuries," Ventricelli v. Kinney Sys. Rent a Car, Inc., 45 N.Y.2d 950, 952, 383 N.E.2d 1149, 1150 (1978), the cause that "directly produces the harm." Panama, 2006 WL 1933740, at *5.

Here, plaintiffs concede that the immediately effective cause of their losses was Madoff's theft of the assets entrusted to him.  (Compl. ¶¶ 1, 215-225.)  That intentional criminal act was a "superseding and intervening event[] breaking [any alleged] chain of causation" between the Tremont Defendants and plaintiffs' losses. Port Auth. of N.Y. & N.J. v. Arcadian Corp., 189 F.3d 305, 319 (3d Cir. 1999) (applying New York law).  "The general rule is that, absent special circumstances, no duty is imposed on a party to anticipate and prevent the intentional or criminal acts of a third party[.]" Henry v. Merck & Co., 877 F.2d 1489, 1492 (10th Cir. 1989); accord Ward v. State, 81 Misc.2d 583, 588, 366 N.Y.S.2d 800, 807 (Ct. Cl. 1975).  Indeed, a defendant may be held liable for failing to prevent the intentional criminal act of another only when that act was a

---

[28]     See Greenwald v. Orb Commcn's & Mktg., Inc., No. 00 Civ.1939 LTSHBP, 2003 WL 660844, at * 2 (S.D.N.Y. 2003) (breach of contract, unjust enrichment); Adamski v. Lama, 869 N.Y.S.2d 256, 257 (N.Y. App. Div. 2008) (negligence); see also Campbell v. DiSabatino, 947 A.2d 1116, 1117 (Del. 2008) (negligence); Thorpe by Castleman v. CERBCO, Inc., 676 A.2d 436, 444 (Del. 1996) (breach of fiduciary duty); Anglo Am. Sec. Fund, L.P. v. S.R. Global Int'l Fund, L.P., No. Civ.A. 20066-N, 2006 WL 1494360, at *2 (Del. Ch. May 24, 2006) (breach of contract).

"normal and foreseeable consequence" of defendant's own actions.[29]  Caraballo v. United States,

830 F.2d 19, 22 (2d Cir. 1987); James v. Meow Media, Inc., 300 F.3d 683, 693 (6th Cir. 2002).

Under Section 448 of the Restatement (Second) of Torts—which is the law in both New

York and Delaware, see Ventricelli, 45 N.Y.2d at 952, 383 N.E.2d at 1150; Hercules Powder, Co. v.

DiSabatino, 188 A.2d 529, 534-35 (Del. 1963)—a crime is a normal and foreseeable consequence

of a defendant's own actions only where "(1) the situation [created by the defendant's actions]

provides a temptation to which a 'recognizable percentage' of persons would yield, or (2) the

temptation is created at a place where 'persons of a peculiarly vicious type are likely to be.'"

Gaines-Tabb v. ICI Explosives, USA, Inc., 160 F.3d 613, 621 (10th Cir. 1998) (quoting

Restatement (Second) of Torts § 448 cmt. B (1965)).  Neither requirement is plausibly implicated

here, and neither has been alleged in the Complaint.  Consequently, all of plaintiffs' claims should

be dismissed.  See id. at 621; see also Port Auth., 189 F.3d at 319; Ingrassia v. Lividikos, 54 A.D.3d

721, 724 (2d Dep't 2008).

### B.    The Complaint Fails To State A Claim Of Breach Of Fiduciary Duty

#### 1.    TGH, Schulman, Mitchell And Hodges Owed No Plenary Fiduciary Duty To Plaintiffs

Under Delaware law,[30] both the parent of TPI and the directors of TPI—the On-shore Funds'

general partner—owed the Funds at most only a narrowly circumscribed duty, namely the limited

duty "not to use [alleged] control over the partnership's property to [its] advantage . . . at the

expense of the partnership."  Wallace ex rel. Cencom Cable Income Partners II, L.P. v. Wood, 752

---

[29]     Many courts find that liability may not be attached even in that situation.  See 57A Am. Jur. 2d Negligence § 636 (2008) (collecting cases).

[30]     "A federal court . . . adjudicating state law claims that are pendent to a federal claim must apply the choice of law rules of the forum state."  Rogers v. Grimaldi, 875 F.2d 994, 1002 (2d Cir. 1989).  Under New York law, "breach of fiduciary duty claims are governed by the place of incorporation[;]" here, Delaware and the Cayman Islands.  Druck Corp. v. Macro Fund (U.S.) Ltd., No. 02 Civ. 6164, 2007 WL 258177, at *2 (S.D.N.Y. Jan. 29, 2007), aff'd, 290 F. App'x 441 (2d Cir. 2008).

A.2d 1175, 1180 (Del. Ch. 1999) (citation omitted). Because the Complaint nowhere alleges that TGH, Schulman, Mitchell or Hodges breached this limited fiduciary duty as to the Funds, the Complaint fails to state a breach of fiduciary duty claim against them. In addition, directors and employees of TGH, like Schulman, Mitchell and Hodges (Compl. ¶¶ 32-35) owed plaintiffs and the other limited partners of the Funds no duties at all. See, e.g., Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P., 906 A.2d 168, 191 (Del. Ch. 2006) (stating that the notion directors of a parent corporation owe duties to shareholders of a wholly-owned subsidiary "is at odds with our state's law"). And under Cayman Islands law, neither the controlling stockholder nor employees of an investment adviser such as TPI owe duties to shareholders of corporations such as the Off-shore Funds, which are clients of the investment adviser. (See Bagnall Decl. ¶ 12.4 ("TGH, if it is the controlling shareholder of Tremont Partners . . . would not owe fiduciary duties . . . by reason only of being such a controlling shareholder"); id. ¶ 12.5.)

### 2.    TPI Did Not Owe Plaintiffs A Duty To Conduct Due Diligence And, In Any Event, It Is Protected By The Business Judgment Rule

Plaintiffs allege that TPI breached its fiduciary duties of care and loyalty by failing, through negligence or bad faith, to "conduct . . . due diligence of Madoff's operations" before selecting him as the Funds' asset manager. (Compl. ¶¶ 313, 320.) These allegations fail to state a claim for breach of fiduciary duty. First, TPI owed plaintiffs no fiduciary duty to follow specific due diligence procedures TPI allegedly promised to perform. (See id. ¶¶ 314-19). See In re Bayou Hedge Fund, 534 F. Supp. 2d at 416-17 (noting that promises by a general partner to conduct a five-step due diligence process before selecting a hedge fund for investment was a "professionals' self-imposed standard[]"); accord Albert v. Alex. Brown Mgmt. Servs., Inc. No. 762, 763, 2005 WL 2130607, at *4 (Del. Ch. Aug. 26, 2005) (dismissing breach of fiduciary duty claim premised on a contractual duty). Regardless, plaintiffs' allegations are legally insufficient to show TPI's selection

20

of Madoff as the Funds' asset manager breached any duty of care or loyalty.[31]

Under Delaware law, the decision to invest with Madoff is protected by the business judgment rule.  See Zoren v. Genesis Energy, L.P., 836 A.2d 521, 528 (Del. Ch. 2003) (applying the business judgment rule in the partnership context).  The rule "affords the general partners a presumption that they acted on an informed basis and in the honest belief that they acted in the best interests of the partnership and the limited partners."  Id.  To rebut the presumptions of the business judgment rule, plaintiffs bear the "heavy burden" of pleading "*particularized* facts" showing the defendants' actions (i) were not taken in good faith or (ii) were inadequately informed.[32]  White v. Panic, 793 A.2d at 367; Litt v. Wycoff, No. Civ.A. 19083-NC, 2003 WL 1794724, at *6 (Del. Ch. Mar. 28, 2003) (emphasis added).  A court may review the substance of a business decision only for the "limited purpose" of determining whether the decision was made in bad faith.  In re J.P. Stevens & Co. S'holders Litig., 542 A.2d 770, 780-81 (Del. Ch. 1988). This analysis properly focuses the Court's attention "on the decision-making process rather than on a substantive evaluation of the merits of the decision."  In re Citigroup, 964 A.2d at 124.

Plaintiffs have not pled facts showing bad faith or gross negligence.  Instead, plaintiffs circularly allege that the revelation of Madoff's fraud proves that TPI acted recklessly or in bad faith. (Compl. ¶¶ 313, 320.)  This is precisely the type of conclusory allegation that courts uniformly find insufficient to rebut the presumptions of the business judgment rule or show that TPI's acts were so

---

[31]    The direct claims asserted by the Class Action Plaintiffs against TPI in its capacity as an investment adviser to the Off-shore Funds should be dismissed because, under Cayman law, investment advisers do not owe duties to shareholders of corporations such as the Off-shore Funds, who are clients of the investment adviser.  (See Bagnall Decl. ¶11.5)  (stating such duties do not exist "in the absence of separate fiduciary relationships (and, in my opinion, the facts pled in the Complaints are insufficient to establish the existence of such separate fiduciary relationships)").  Moreover, fiduciaries under Cayman law owe only the duty of loyalty.  (See id. at ¶ 10.2-10.6.)  Plaintiffs' allegations implicate only TPI's duties of "competence and prudence," which, under Cayman law, "do not constitute fiduciary duties at all."  (Id. at ¶¶ 13.2 ,13.4.)

[32]    The standard for determining whether a general partner was adequately informed is the strict standard of gross negligence.  In re Citigroup, 964 A.2d at 124 & n.53.

"egregious" as to establish that a "substantial likelihood of liability exists."  <u>See</u> <u>Globis Partners, L.P.</u>

<u>v. Plumtree Software, Inc.</u>, No. 1577, 2007 WL 4292024, at *6 (Del. Ch. Nov. 30, 2007) (rejecting

allegations that "if the directors did not know about problems that ultimately resulted in a $20

million reduction in the price of Plumtree, then the inference is clear that they were grossly

negligent"); <u>In re Citigroup</u>, 964 A.2d at 128 ("The warning signs alleged . . . are not evidence that

the directors consciously disregarded their duties or otherwise acted in bad faith[.]").

 To be sure, plaintiffs allege a litany of "red flags" that purportedly should have alerted TPI

to Madoff's fraud.  But the facts alleged in the Complaint fail to support this bald legal conclusion.

For example, the Complaint acknowledges that forensic accountant Harry Markopolos sent the SEC

a letter in 2005 noting twenty-nine "red flags" that Madoff was operating a Ponzi scheme, and that

the SEC did not uncover the fraud despite investigating every one of those "red flags."  (<u>See</u> Compl.

¶ 297; Madoff Information (Trans. Decl. Ex. I) at ¶¶ 35-37; SEC Case Closing (Trans. Decl. Ex. J).)

The Complaint also acknowledges that defendants hired BNY, SS&C, E&Y and KPMG to perform

reviews of, among other things, Madoff's trading—yet these independent services providers also did

not detect Madoff's fraud.  (Compl. ¶ 367-89.)  What these facts show, if anything, is that the "red

flags" by themselves failed to provide sufficient grounds for concluding that Madoff was a fraud.

As the court held in <u>In re Bayou Hedge Fund</u>:

> The Complaint alleges that Bayou concealed the fraud from investors, the public,
> investment advisers, other industry professionals and regulators—including the
> SEC—for *nine years*.  Given that Israel and Marino managed to deceive the entire
> investing community for nearly a decade, South Cherry's allegation that Hennessee
> Group would necessarily have uncovered the fraud had it conducted the due
> diligence it promised is far from compelling.

534 F. Supp. 2d at 418 (emphasis in original).

### 3. <u>Plaintiffs Do Not Adequately Plead A Failure To Monitor</u>

Plaintiffs baldly assert that *after* deciding to invest with Madoff, TPI breached its fiduciary

duties by "abandoning oversight" and "failing to adequately monitor Madoff's operations." (Compl. ¶¶ 443, 505.) As with their claim that TPI failed to conduct due diligence *before* investing with Madoff, plaintiffs make no attempt to allege specific facts regarding defendants' monitoring activities. Rather, plaintiffs assume that defendants' ignorance of Madoff's fraud somehow proves that no monitoring occurred. These conclusory allegations, which are governed by In re Caremark International, Inc. Derivative Litigation, 698 A.2d 959, 971 (Del. Ch. 1996),[33] are precisely the type courts routinely reject as too conclusory to state a claim. See In re Citigroup, 964 A.2d at 130 (dismissing claims where plaintiffs alleged "since the Company suffered large losses, and since a properly functioning risk management system would have avoided such losses, the directors must have breached their fiduciary duties").[34]

### C.   Plaintiffs' Breach Of Contract Claim Should Be Dismissed Because Plaintiffs Fail To Identify The Breach Of Any Contractual Duty

The Class Action Plaintiffs assert that TPI and TGH breached an unspecified agreement to "conduct adequate due diligence" and "adequately monitor the operations of the 'single manager.'" (Compl. ¶¶ 473-74). The only contracts the Class Action Plaintiffs have with any Tremont Defendant are the LPAs and the Subscription Agreements, and these are between plaintiffs and TPI,

---

[33]     Caremark is "the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." Id. at 967. To state a claim, plaintiffs must "show[] that the [defendants] knew that they were not discharging their fiduciary obligations." Stone v. Ritter, 911 A.2d 362, 370 (Del. 2006). "[O]nly a sustained or systematic failure . . . to exercise oversight—such as an utter failure to attempt to assure a reasonable information and reporting system exists—will establish . . . liability." Id. at 369.

[34]     See also, Fink v. Komansky, No. 03 0388, 2004 WL 2813166, at *4 (S.D.N.Y. Dec. 8, 2004) (dismissing oversight claims where plaintiff "base[d] his claim 'on a presumption that employee wrongdoing would not occur if directors performed their duty properly'"); Rattner v. Bidzos, No. Civ. A. 19700, 2003 WL 22284323, at *12 (Del. Ch. Sept. 30, 2003) (dismissing complaint that failed to allege particularized facts "regarding the Company's internal financial controls during the Relevant Period"); Guttman, 823 A.2d at 506-507 (finding that plaintiffs had "not come close to pleading a Caremark claim" where the complaint did not allege how often or long audit committee met or who advised the committee).

*not* TGH.[35]  Neither contract purports to impose on TPI any duty to conduct due diligence.

Accordingly, the Class Action Plaintiffs' breach of contract claim fails to state a claim for relief.

See, e.g. Moore Bus. Forms, Inc. v. Cordant Holdings Corp., No. 13911, 1995 WL 662685, at *7

(Del. Ch. Nov. 2, 1995) (dismissing breach of contract claim because plaintiff did not allege that the

defendant "failed to comply with any of [the contract's] express provisions").

**D.    The LPAs And Advisory Agreements**
**Preclude Plaintiffs' Unjust Enrichment Claims**

In Count XIII of the Complaint, plaintiffs allege that TPI was "unjustly enriched" by fees

and other payments it received from the Funds.[36]  This claim is foreclosed, however, by the

existence of express contractual provisions in the LPAs and the advisory contracts governing the

fees at issue.[37]  Unjust enrichment is "a quasi-contract claim.  It is an obligation the law creates in

the *absence* of any agreement."  Goldman v. Metro. Life Ins. Co., 841 N.E.2d 742, 746 (N.Y. 2005)

(emphasis added). Accordingly, "[t]he existence of a valid and enforceable written contract

governing a particular subject matter . . . precludes recovery in quasi contract for events arising out

of the same subject matter."  Id. (quotation omitted); Banco Espirito Santo de Investimento, S.A. v.

Citibank, N.A., No. 03-1537, 2003 WL 23018888, at *17-18 (S.D.N.Y. Dec. 22, 2003), aff'd, 110 F.

---

[35]    (Rye Select Broad Market Prime Fund, L.P. Subscription Agreement signed by Arthur C. Lange ("Lange Prime Fund Agreement"), attached to the Trans. Decl. as Ex. L; Rye Select Broad Market Prime Fund, L.P. Subscription Agreement signed by Arthur E. Lange Revocable Trust ("Lange Trust Prime Fund Agreement"), attached to the Trans. Decl. as Ex. M; Rye Select Broad Market Prime Fund, L.P. Subscription Agreement signed by Eastham Capital Appreciation Fund LP ("Eastham Prime Fund Agreement"), attached to the Trans. Decl. as Ex. N; Rye Select Broad Market Portfolio Limited Subscription Agreement signed by NPV Positive ("NPV Market Portfolio Fund Agreement"), attached to the Trans. Decl. as Ex. O.)

[36]    New York law, the site of the torts alleged in the Complaint, governs plaintiffs' claims for unjust enrichment and malpractice and professional negligence.  See GlobalNet Financial.com, Inc. v. Frank Crystal & Co., 449 F.3d 377, 385 (2d Cir. 2006).

[37]    (Compl. ¶¶ 81, 85, 95; Broad Market LPA (Trans. Decl. Ex. A) § 3.13; Prime Fund LPA (Trans. Decl. Ex. B) § 2.3; XL Fund LPA (Trans. Decl. Ex. C) § 2.3.; Market Portfolio Fund PPM (Trans. Decl. Ex. D) at 10; XL Portfolio Fund PPM (Trans. Decl. Ex. E) at 9.)

App'x 191 (2d Cir. 2004).  Because plaintiffs cannot allege that TPI's receipt of fees breached the contract provisions authorizing their payment, they have stated no claim with respect to those fees.

The LPAs also foreclose plaintiffs' claim that the other Tremont Defendants (Compl. ¶¶ 460-70, 535-42) were unjustly enriched by payments TPI allegedly made to them.  See Banco Espirito Santo, 2003 WL 23018888, at *17 (contracts governing payments preclude unjust enrichment claims against even those with whom plaintiffs did not personally contract); Bello v. New Eng. Fin., 3 Misc.3d 1109(A)(Table), 2004 WL 1305515, at *7 (Sup. Ct. N.Y. County May 20, 2004) (holding that unjust enrichment requires privity between the plaintiff and defendant).

## CONCLUSION

For all of the foregoing reasons, the Tremont Defendants' motion to dismiss should be granted in all respects.

Dated: New York, New York
       May 20, 2009

Respectfully submitted,

 /s/ Seth M. Schwartz
Seth M. Schwartz (Seth.Schwartz@Skadden.com)
Susan L. Saltzstein (Susan.Saltzstein@Skadden.com)
Michael H. Gruenglas (Michael.Gruenglas@Skadden.com)
Jason C. Vigna (Jason.Vigna@Skadden.com)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Tremont Partners, Inc.,
Tremont Group Holdings, Inc., Robert Schulman,
Harry Hodges and Jim Mitchell