UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ x

IN RE TREMONT SECURITIES LAW,  :
STATE LAW AND INSURANCE  :  Master File No.:
LITIGATION  :  08 Civ. 11117 (TPG)
  :
------------------------------------------------------ x  **JURY TRIAL DEMANDED**

This Document Relates to:  State Law Actions  :
08 Civ. 11183 (TPG)  :  "ECF Case"
------------------------------------------------------ x

---

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
## TO THE TREMONT DEFENDANTS' MOTION TO DISMISS

---

**ENTWISTLE & CAPPUCCI LLP**

280 Park Avenue
26th Floor West
New York, New York 10017
(212) 894-7200

*Counsel for Plaintiffs Arthur E. Lange*
*Revocable Trust and Arthur C. Lange*

**HAGENS BERMAN SOBOL SHAPIRO LLP**

715 Hearst Avenue, Suite 202
Berkeley, California 94710
(510) 725-3000

*Counsel for Plaintiffs Eastham Capital*
*Appreciation Fund LP, NPV Positive Corp.,*
*John Dennis, Daniel Jackson, Laborers*
*Local Pension Plan 17 and Richard Peshkin*

Co-Lead Counsel for Plaintiffs

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ........................................................................................................................... 4

POINT I.

THE COMPLAINT SETS FORTH PLAUSIBLE CLAIMS
FOR RELIEF AGAINST THE TREMONT DEFENDANTS .......................................... 4

POINT II.

THE EXCULPATION PROVISIONS DO NOT SHIELD
THE TREMONT DEFENDANTS FROM LIABILITY ................................................... 5

POINT III.

THE MARTIN ACT DOES NOT
PREEMPT PLAINTIFFS' CLAIMS ............................................................................... 7

POINT IV.

SLUSA DOES NOT BAR PLAINTIFFS' CLAIMS ....................................................... 9

POINT V.

CLASS PLAINTIFFS HAVE STANDING
TO ASSERT THEIR CLAIMS DIRECTLY .................................................................... 9

    A.    The Rye Funds Are
         Dormant Limited Partnerships ................................................................... 10

    B.    Class Plaintiffs Sustained Direct Injuries and
         Have Standing to Pursue Their Claims ..................................................... 12

POINT VI.

MADOFF'S CRIMINAL ACTS DO NOT INSULATE
THE TREMONT DEFENDANTS FROM LIABILITY ................................................. 17

POINT VII.

ALL OF THE TREMONT DEFENDANTS
OWED FIDUCIARY DUTIES TO PLAINTIFFS ........................................................ 18

i

      A.     The Tremont Defendants
Owed Fiduciary Duties ................................................................................19

      B.     The Business Judgment Rule
Affords No Protection Here ........................................................................20

POINT VIII.

PLAINTIFFS HAVE ALLEGED A
VIABLE BREACH OF CONTRACT CLAIM ............................................................... 21

POINT IX.

PLAINTIFFS STATE A VIABLE
UNJUST ENRICHMENT CLAIM...................................................................................... 23

CONCLUSION...................................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

Anglo America Security Fund, L.P. v. S.R. Global International Fund, L.P.,
  829 A.2d 143 (Del. Ch. 2003) .......................................................................................10, 15, 16

Ashcroft v. Iqbal,
  129 S. Ct. 1937 (2009) ...........................................................................................................4, 5

In re Bayou Hedge Fund Litigation,
  534 F. Supp. 2d 405 (S.D.N.Y. 2007) .......................................................................................7

Bell Atlantic Corp. v. Twombly,
  550 U.S. 544 (2007) ................................................................................................................4, 5

Bell v. Board of Education of City of New York,
  90 N.Y.2d 944, 687 N.E.2d 1325, 665 N.Y.S.2d 42 (1997) ....................................................18

Bello v. New England Financial,
  2004 WL 1305515 (Sup. Ct. Nassau Co. May 20, 2004)..........................................................24

In re Cencom Cable Income Partners, L.P. Litigation,
  2000 WL 130629 (Del. Ch. Jan. 27, 2000) ..................................................................... passim

Christiana Marine Service Corp. v. Texaco Fuel & Marine Marketing, Inc.,
  2002 WL 1335360 (Del. Super. June 13, 2002).......................................................................22

Cincinnati Bell Cellular Systems Co. v.
  Ameritech Mobile Phone Service of Cincinnati, Inc.,
  1996 WL 506906 (Del. Ch. Sept. 3, 1996), aff'd, 692 A.2d 411 (Del. 1997) .........................16

Crimi v. Barnholt,
  2008 WL 4287566 (N.D. Cal. Sept. 17, 2008)...........................................................................9

Derdiarian v. Felix Contracting Corp.,
  51 N.Y.2d 308, 414 N.E.2d 666, 434 N.Y.S.2d 166 (1980) ...............................................17, 18

Duphily v. Delaware Electric Cooperative, Inc.,
  662 A.2d 821 (Del. 1995).........................................................................................................17

Fitzgerald v. Cantor,
  1998 WL 842315 (Del. Ch. Nov. 6, 1998)...............................................................................21

Forsythe v. ESC Fund Management Co.,
  2007 WL 2982247 (Del. Ch. Oct. 9, 2007)........................................................................19, 20

Gantler v. Stephens,
　　965 A.2d 695 (Del. 2009)...........................................................................20

Grigsby & Associates, Inc. v. Rice Derivative Holdings, L.P.,
　　2001 WL 1135620 (S.D.N.Y. Sept. 26, 2001) ..........................................16

Knudsen v. Quebecor Printing (U.S.A.) Inc.,
　　792 F. Supp. 234 (S.D.N.Y. 1992) .............................................................23

Kush v. City of Buffalo,
　　59 N.Y.2d 26, 449 N.E.2d 725, 462 N.Y.S.2d 831 (1983) .................17, 18

Louros v. Kreicas,
　　367 F. Supp. 2d 572 (S.D.N.Y. 2005) ......................................................8, 9

MDCM Holdings, Inc. v. Credit Suisse First Boston Corp.,
　　216 F. Supp. 2d 251 (S.D.N.Y. 2002) ........................................................23

In re Musicland Holding Corp.,
　　398 B.R. 761 (Bankr. S.D.N.Y. 2008) .......................................................20

National City Commercial Capital Co. v. Global Golf, Inc.,
　　2009 WL 1437620 (E.D.N.Y. May 20, 2009).............................................23

Oei v. Citibank, N.A.,
　　957 F. Supp. 492 (S.D.N.Y. 1997) .............................................................18

Palkovic v. Johnson,
　　281 Fed. Appx. 63 (2d Cir. 2008) ................................................................4

Pension Committee of the University of Montreal
　　Pension Plan v. Banc of America Securities LLC,
　　568 F.3d 374 (2d Cir. 2009) .........................................................................4

Sergeants Benevolent Association Annuity Fund v. Renck,
　　19 A.D.3d 107, 796 N.Y.S.2d 77 (1st Dep't 2005)....................................20

TIFD III-X LLC v. Fruehauf Production Co.,
　　883 A.2d 854 (Del. Ch. 2004) ...............................................................16, 17

Tooley v. Donaldson, Lufkin & Jenrette, Inc.,
　　845 A.2d 1031 (Del. 2004)..........................................................................12

EC.21490.5

<u>In re Tower Air, Inc.</u>,
   416 F.3d 229 (3d Cir. 2005) .................................................................................21

**<u>Statutes</u>**

Delaware Revised Uniform Limited Partnership Act, 6 Del. C. § 17-1101(d) ...........................19

Martin Act, N.Y. Gen. Bus. L. § 352-c...........................................................................8

Securities Litigation Uniform Standards Act, 15 U.S.C. §§ 77p, 78bb...........................................9

**<u>Rules</u>**

Fed. R. Civ. P. 8.................................................................................................23

Fed. R. Civ. P. 12(b)(6)...........................................................................................4

EC.21490.5

## PRELIMINARY STATEMENT

Plaintiffs the Arthur E. Lange Revocable Trust, Arthur C. Lange, Eastham Capital Appreciation Fund LP and NPV Positive Corp. (collectively, "Class Plaintiffs"), and Eastham Capital Appreciation Fund LP, NPV Positive Corp., John Dennis, Daniel Jackson, Laborers Local Pension Plan 17 and Richard Peshkin (collectively, "Derivative Plaintiffs") (Class Plaintiffs and Derivative Plaintiffs sometimes referred to collectively herein, "Plaintiffs"), respectfully submit this memorandum of law in opposition to the motion of defendants Tremont Partners, Inc., Tremont Group Holdings, Inc., Robert Schulman, Harry Hodges and Jim Mitchell ("Tremont Defendants") to dismiss the First Consolidated and Amended Class Action and Verified Derivative Complaint ("Complaint").[1]

This action arises out of the crushing financial losses flowing from the $50 billion Ponzi scheme orchestrated by convicted swindler Bernard L. Madoff. The majority of investors who fell prey to Madoff's scheme invested indirectly with him through an extensive network of "feeder funds" that marshaled investor assets and then channeled them into the black hole that was Madoff's scam. One of the largest family of Madoff feeder funds was the so-called Rye family of funds ("Rye Funds") through more than $5 billion was channeled to -- and then plundered by -- Madoff.

The Tremont Defendants organized, managed and operated the Rye Funds. As alleged in the Complaint, the Tremont Defendants knew of gross irregularities in Madoff's operations but turned a blind eye to those suspect operations so as to continue reaping hundreds of millions of dollars in fees from investors drawn to the Rye Funds. Motivated by unchecked greed, the Tremont Defendants abdicated any notion of fiduciary responsibility and funneled

---

[1]   Capitalized terms used herein shall have the same meanings attributed to them in the Complaint.

billions of dollars into a highly suspect operation they were loathe to investigate for fear of jeopardizing their extraordinarily lucrative relationship with Madoff. Disinclined to forfeit their place front-and-center at the trough, the Tremont Defendants did absolutely nothing to protect the limited partner investors in the Rye Funds despite their knowledge of both "red flag" warnings regarding Madoff's operations and growing suspicions among other sophisticated corporate entities that those operations were not legitimate.

Plaintiffs bring this action on behalf of themselves and the class of investors in the Rye Funds who had not redeemed their interests in those limited partnerships as of December 11, 2008 -- i.e., the day Madoff's scheme was exposed to the general public. They also bring this action derivatively on behalf of the Rye Funds.

The Complaint sets forth six straightforward state law claims against the Tremont Defendants, with each claim supported by detailed factual allegations. In Count I, Class Plaintiffs allege that the Tremont Defendants breached their fiduciary duties to the limited partner investors in the Rye Funds in that they were aware of gross irregularities in Madoff's operations and did nothing to protect their investors from those highly suspect operations. In Count III, Class Plaintiffs allege that the Tremont Defendants were unjustly enriched by the astronomical fees the Rye Funds' investors paid for due diligence and monitoring of Madoff's operations that was conducted -- if, indeed, it was conducted at all -- in a shamefully reckless manner. In Count IV, the corporate Tremont Defendants are alleged to have breached their contractual obligations to the limited partners by failing to conduct adequate due diligence or monitoring Madoff's operations. Derivative Plaintiffs also assert three claims with respect to the Tremont Defendants: a breach of fiduciary duty claim in Count VIII, a professional negligence claim in Count X and an unjust enrichment claim in Count XIII.

2

Throughout their motion, the Tremont Defendants strain to recast the Complaint as something it is not.  In essence, they challenge the pleading they wish had been filed against them rather than the Complaint that is actually before the Court.  They do not have that luxury.  Notwithstanding the Tremont Defendants' heavy-handed attempts at obfuscation, a review of the Complaint makes plain what this case is and is not.  This is <u>not</u> a securities fraud case.  Indeed, it is not a fraud case of <u>any</u> kind.  It is <u>not</u> a case pegged in any way to allegations of deceit, deception, misrepresentations or material omissions.  This case does <u>not</u> mirror the related securities law action before this Court that, by definition, <u>is</u> a case founded upon allegations of fraud, deceit and deception.

What this case is, instead, is an action involving six plain-vanilla state law claims.  The legal viability of those claims is not dependent on allegations of fraud, deceit, deception, misrepresentations, material omissions or anything of the kind.  Those causes of action are supported by voluminous factual allegations that make them both colorable under controlling law and plausible as a matter of common sense.  As detailed below, the Tremont Defendants' arguments to the contrary have everything to do with a desperate scramble to avoid discovery into their complete failure to protect their investors from the Madoff debacle and nothing whatsoever to do with any genuine pleading deficiencies to be found in the Complaint.  Although the Tremont Defendants are rightfully fearful of what will be revealed by an inquiry into their failure to take adequate steps to protect their investors from Madoff's operations, the allegations of the Complaint open the door to such discovery and Plaintiffs are entitled to pursue it in order to develop further evidence supporting their well-pled claims.

# ARGUMENT

## POINT I.

### THE COMPLAINT SETS FORTH PLAUSIBLE CLAIMS FOR RELIEF AGAINST THE TREMONT DEFENDANTS

A complaint challenged under Rule 12(b)(6) "does not need detailed factual allegations" to survive. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The challenged complaint need only make a "`showing´" of the plaintiff's "entitlement to relief." Id. at 555 n.3. The Complaint here plainly does so.

As the Supreme Court has instructed, on a motion to dismiss, "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id. at 570. Plausibility in this context, the Court has cautioned, "is not akin to a `probability requirement[.]´" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Determining whether a complaint makes out a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. In making that determination, a court "construe[s] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in Plaintiffs' favor." Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC, 568 F.3d 374, 381 (2d Cir. 2009). Ultimately, the inquiry is not whether a plaintiff is likely to prevail on its claims, but whether it is entitled under the circumstances to develop and offer evidence to support those claims. See Palkovic v. Johnson, 281 Fed. Appx. 63, 66 (2d Cir. 2008).

The Complaint more than adequately details the factual basis for the claims asserted against the Tremont Defendants. Plaintiffs plainly have done much more than file "an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949. The Complaint certainly offers more than mere "`labels and conclusions´ or a `formulaic recitation of

the elements"' of Plaintiffs' claims.  <u>Id.</u>  It clearly reaches well beyond the "`naked assertion[s]´ devoid of `further factual enhancement.´"  <u>Id.</u>

Plaintiffs submit that the facts and circumstances detailed in the Complaint have "nudged their claims across the line from conceivable to plausible[.]"  <u>Twombly</u>, 550 U.S. at 570.  The 115-page, 547-paragraph Complaint plainly possesses "enough heft `to sho[w] that the pleader is entitled to relief´" and sets forth "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" further supporting these claims.  <u>Id.</u> at 556-57.  For the reasons set forth below, Plaintiffs respectfully request that the Court deny the Tremont Defendants' motion in its entirety and direct that discovery proceed forthwith.

## POINT II.

### THE EXCULPATION PROVISIONS DO NOT SHIELD THE TREMONT DEFENDANTS FROM LIABILITY

The Tremont Defendants' desperation to avoid discovery is evident from the very outset of their brief, where they lead with the baseless argument that the exculpation provisions of the limited partnership agreements shield them from liability for Class Plaintiffs' catastrophic losses.  <u>See</u> Tremont Defendants' Brief at 7-9.  The premise of this argument -- that Plaintiffs have attributed to the Tremont Defendants nothing more than negligent conduct that falls within the scope of the exculpation clauses -- fails the straight-face test.

The Complaint is replete with detailed allegations of the Tremont Defendants' gross negligence, recklessness and conscious disregard for their legal obligations.  To equate this level of misconduct with "simple negligence," as the Tremont Defendants do here, is nonsense.  <u>See</u> Tremont Defendants' Brief at 9.  The Complaint speaks for itself on this point.  There, Plaintiffs allege that the Tremont Defendants:

- "blindly channeled plaintiffs' assets into the hands of one of history's most reviled confidence men," <u>see</u> Complaint, ¶ 2;

- "turned a blind eye to Madoff's nefarious operations" and that, "motivated by unchecked greed," they "abdicated any notion of fiduciary responsibility," <u>id.</u>, ¶ 4;

- "either recklessly overlooked or disregarded" the red flags that alerted others to Madoff's scheme, <u>id.</u>, ¶ 6;

- did "absolutely nothing to shield" plaintiffs from Madoff's criminal scheme while they "gorg[ed] on fees," <u>id.</u>;

- were "deeply incentivized to either look the other way or ignore" the red flags other sophisticated investment professionals spotted and acted upon, <u>id.</u>, ¶ 243;

- "ignore[d] clear warnings of Madoff's criminal enterprise for fear of jeopardizing the rich flow of fees their relationship with Madoff had generated for years," <u>id.</u>, ¶ 245;

- could not possibly have missed the warning signs of Madoff's criminality "had they only made a good faith effort to protect their clients' interests rather than advance their own self-interests," <u>id.</u>, ¶ 246;

- "either recklessly failed to detect" the red flags spotted by so many other investment professionals "or simply chose to ignore [them]," <u>id.</u>, ¶¶ 250, 259, 262, 266, 269, 272, 279, 283, 291, 294; and,

- "recklessly" chose not to conduct due diligence; engaged in "recklessly ineffective" due diligence; or "had strong suspicions" of Madoff's scheme "and simply looked the other way," <u>id.</u>, ¶ 320.

These allegations reflect precisely the level of recklessness that the Tremont

Defendants concede falls beyond the scope of the exculpation clauses upon which they rely.  <u>See</u>

Tremont Defendants' Brief at 7-8.  Accordingly, the exculpation clauses provide them with no shelter here.[2]

### POINT III.

### THE MARTIN ACT DOES NOT
### PREEMPT PLAINTIFFS' CLAIMS

The Tremont Defendants next argue that New York's Martin Act preempts the claims asserted against them.  See Tremont Defendants' Brief at 10-11.  As discussed in greater detail at pages 5-13 of Plaintiffs' brief in opposition to the Oppenheimer Defendants' motion, this argument fails on three fronts.  First, the Tremont Defendants have made no showing that New York law governs and thus there is no basis for applying the Martin Act here.  See Plaintiffs' Brief in Opposition to Oppenheimer Defendants' Motion to Dismiss ("Oppenheimer Opposition Brief") at 5-7.

Second, there is no authority compelling the conclusion that, in enacting the Martin Act, the New York Legislature intended to preempt all common-law claims arising out of facts that would provide the New York Attorney General with grounds to commence an action under that statutory scheme.  Id. at 7-9.

Third, even assuming that the Martin Act applies and was intended to preempt common-law claims, it still would not preempt the claims asserted here.  The Martin Act prohibits fraudulent and deceitful conduct in the advertisement, distribution, exchange, transfer,

---

[2]    The fact that the Complaint alleges a level of misconduct far exceeding simple negligence is what renders inapposite the case upon which the Tremont Defendants rely so heavily throughout their brief, In re Bayou Hedge Fund Litigation, 534 F. Supp. 2d 405 (S.D.N.Y. 2007).  The Tremont Defendants strive mightily to portray themselves as standing in the same shoes as the fund managers who dodged liability for the Ponzi scheme at issue in In re Bayou Hedge Fund. Here, however, Plaintiffs accuse the Tremont Defendants of engaging in precisely the sort of conduct Judge McMahon in In re Bayou Hedge Fund correctly observed is actionable -- the "knowing of or closing one's eyes to a known `danger´[.]"  Id. at 417.

7

sale and purchase of securities.  <u>See</u> N.Y. Gen. Bus. L. § 352-c.  Plaintiffs' claims do not fall

within the scope of the Martin Act because those claims simply are not pegged to allegations of

deceit or deception.  <u>Id.</u> at 9-13.

On this third point, the Tremont Defendants maintain that the claims asserted

against them allege "deceit" and direct the Court's attention to just three of the Complaint's 547

paragraphs.  <u>See</u> Tremont Defendants' Brief at 10.  None of those paragraphs even remotely

supports the Tremont Defendants' position.  To the contrary, those three snippets from the

Complaint -- paragraphs 78-80 -- merely refer to the contents of certain promotional materials

relating to one of the Rye Funds.  Those paragraphs contain no express or implied allegation of

deceit or deception, and nowhere else in the Complaint do Plaintiffs allege that those materials

reflect any misrepresentation or material omission.  In short, this is <u>not</u> a fraud case or one

pegged to deceitful conduct.  The Tremont Defendants' thin assertion to the contrary is not

credible.

The claims asserted in the Complaint are analogous to the breach of fiduciary

duty claim sustained against a Martin Act preemption challenge in <u>Louros v. Kreicas</u>, 367 F.

Supp. 2d 572 (S.D.N.Y. 2005).  <u>See</u> Oppenheimer Opposition Brief at 11-12.  There, Judge

Kaplan cautioned against a reflexively over-expansive application of the Martin Act to preclude

<u>all</u> claims for breach of fiduciary duty.  <u>Louros</u>, 367 F. Supp. 2d at 595-96.  On a summary

judgment motion, Judge Kaplan declined to dismiss the fiduciary duty claim.  He held that

plaintiff "simply alleges that [defendant] breached a fiduciary duty owed to [plaintiff] to manage

his accounts in a way that comported with his needs and to keep him informed about the market

and the trades in his account.  This count does not allege deception, deliberate or otherwise." <u>Id.</u>

at 596.

As in Louros, the claims asserted against the Tremont Defendants are free of allegations of deceit. As much as the Tremont Defendants would prefer that the Court equate the claims asserted here with those asserted in the related securities law action before this Court, they are two fundamentally different cases. The related securities action by definition is one based on deceitful conduct[3]; this case is not, and for that reason the Tremont Defendants' Martin Act argument must fail.

## POINT IV.

## SLUSA DOES NOT BAR PLAINTIFFS' CLAIMS

The Tremont Defendants' argument that the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. §§ 77p, 78bb(f), preempts the class claims asserted against them in Counts I, III and IV is without merit. See Tremont Defendants' Brief at 11-12. They give this argument short shrift, and for good reason. The SLUSA argument fails for the reasons discussed at pages 12-22 of Plaintiffs' brief in opposition to the MassMutual Defendants' motion. Moreover, SLUSA plainly does not affect the claims asserted in Counts V through XIII. Those claims are brought derivatively and not on behalf of any class. SLUSA's limitations apply only to covered "class actions." See U.S.C. §§ 77p(b); 78bb(f)(1); see also Crimi v. Barnholt, 2008 WL 4287566, at *5 (N.D. Cal. Sept. 17, 2008) (derivative claims not subject to SLUSA).

## POINT V.

## CLASS PLAINTIFFS HAVE STANDING
## TO ASSERT THEIR CLAIMS DIRECTLY

Nowhere is the Tremont Defendants' motion more offensive than where, in arguing that Class Plaintiffs lack standing to bring their claims, they maintain that the

---

[3] See, e.g., Consolidated and Amended Class Action Complaint in Securities Action at ¶¶ 2, 3, 57-58, 83-115, 199-200, 210-211. For the Court's convenience, a copy of this complaint is attached as Exhibit A to the accompanying Declaration of Richard W. Gonnello, Esq.

devastating losses giving rise to those claims were only "incidentally" suffered by investors in the Rye Funds.  See Tremont Defendants' Brief at 12.  The losses, the Tremont Defendants maintain, were "directly" suffered by the Rye Funds themselves -- i.e., the limited partnerships the Tremont Defendants controlled and through which they recklessly funneled billions of dollars into Madoff's Ponzi scheme.

This distorted view of who was directly victimized here surely would be of interest to those Rye Funds' investors who have "incidentally" lost their life savings or suffered similar financial ruin as a result of the Madoff debacle.  The Tremont Defendants' standing argument is a contrivance.  It fails as a matter of both law and logic.  The Tremont Defendants rely on a rigid application of the analysis of the distinction between direct and derivative claims in the context of ongoing corporations.  That analysis has little real-world relevance to the unique -- indeed, unprecedented -- circumstances giving rise to this litigation.[4]

### A.     The Rye Funds Are Dormant Limited Partnerships

The Delaware courts recognize that the standard direct/derivative analysis applicable in the context of ongoing corporations is ill-suited to disputes, such as this one, involving limited partnerships -- particularly where, as here, the limited partnerships are no longer going concerns.  See Anglo Am. Sec. Fund, L.P. v. S.R. Global Int'l Fund, L.P., 829 A.2d 143 (Del. Ch. 2003); In re Cencom Cable Income Partners, L.P. Litig., 2000 WL 130629 (Del.

---

[4]   The Tremont Defendants argue in their opening brief that Class Plaintiffs lack standing to assert claims on behalf of investors in the Market Fund because none of the Class Plaintiffs identified in the Complaint invested directly in that fund.  This issue is now moot.  On July 10, 2009, a stipulation was submitted to the Court reflecting the defendants' consent to adding Neal Polan -- a direct investor in the Market Fund -- as a Class Plaintiff.  Further, for the reasons set forth in Plaintiffs' brief in opposition to the Rye Funds' motion to dismiss, Derivative Plaintiffs have standing to assert their claims and the Complaint sets forth adequate demand futility allegations.

Ch. Jan. 27, 2000).  As discussed below, these courts have observed that the direct/derivative analysis most appropriately applied in disputes involving such "alternative business entities" is both flexible and pragmatic.

Applied here, this analysis compels the conclusion that it was the limited partners (i.e., Class Plaintiffs) who were directly harmed, not the limited partnerships (i.e., the Rye Funds).  Further, it compels the conclusion that recovery on the class claims should flow not to the limited partnerships -- essentially dormant, asset-less investment vehicles under the exclusive control of the bad actors here -- but directly to the limited partners.  Any conclusion to the contrary, Class Plaintiffs submit, elevates form over reality and ultimately undermines efforts to afford the truly injured parties an expeditious and equitable remedy.

The Tremont Defendants apply the direct/derivative analysis in a vacuum and ignore the extraordinary circumstances surrounding this litigation.  Shortly after the implosion of Madoff's Ponzi scheme in December 2008, the Tremont Defendants permanently suspended the Rye Funds' operations.  See Complaint, ¶ 240.  Since that time, the Rye Funds as a practical matter have been dormant entities no longer engaged in their sole business purpose of investing limited partners' assets.  The reason why the Rye Funds are no longer engaged in that business is clear enough:  having been plundered by Madoff, there are no assets left to be invested; the sole manager to whom those assets had been recklessly channeled is himself permanently out of business and serving a 150-year prison sentence; and the Tremont Defendants would be hard-pressed to find any investor foolish enough to pump fresh assets into the Rye Funds given their disgraceful track record as detailed in the Complaint.  Other than their role in the Tremont Defendants' scramble to avoid liability for this historic fiasco, the Rye Funds essentially are out

11

of business.  These facts and circumstances are of critical importance to the direct/derivative analysis.

**B.      Class Plaintiffs Sustained Direct Injuries and
        Have Standing to Pursue Their Claims_____**

The standard analysis of whether a claim is direct or derivative looks to who suffered the alleged harm (the corporation or the suing stockholders, individually) and who would receive the benefit of any recovery (the corporation or the stockholders, individually). See Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1033 (Del. 2004).  However, in In re Cencom Cable Income Partners, L.P. Litigation, 2000 WL 130629 (Del. Ch. Jan. 27, 2000), Vice Chancellor Steele (now Chief Judge of the Delaware Supreme Court) underscored the need for a flexible and pragmatic application of this standard where, as here, the dispute involves a limited partnership rather than a corporation.

In Cencom, limited partners brought claims against the general partner alleged to have breached certain fiduciary and contractual obligations.  The limited partnership's business was completed and, in fact, it was in dissolution.  Id. at *1.  The Cencom court observed that the direct/derivative analysis is not a one-size-fits-all concept; instead, the appropriate analysis depends, in part, on the nature of the business enterprise at issue.  The court cautioned that the "highly developed body of common law" governing the analysis in the corporate context should not be "mechanistically" applied to disputes involving limited partnerships whose structure and operations are materially different from corporations:

> In cases like the present one involving alternative business entities [i.e., limited partnerships], the Court looks at corporate law precedent but, while doing so, recognizes the need for flexibility in determining its applicability.

Id. at *2.

In determining whether the claims in <u>Cencom</u> were direct or derivative, the court observed that a "direct claim seeks relief for injuries that fall distinctly upon the individual participants in the business association or involve the participants' contractual rights." <u>Id.</u> at *3. Certain of the claims brought in <u>Cencom</u> arose out of the general partners' breaches of the underlying partnership agreement. The court concluded that these were direct, not derivative, claims because the resulting injury affected only a "distinct class within the partnership[.]" <u>Id.</u> In other words, the court concluded, it is not the limited partnership as a cohesive whole but "the limited partners alone that allegedly suffer injury here based upon the general partner's" breach. <u>Id.</u>

Here, as in <u>Cencom</u>, the claims are based in substantial part on Tremont Partners' contractual and fiduciary obligations as general partner of the Rye Funds. Those duties were owed to the limited partners. It is the limited partners who have been injured by the breach of those obligations that resulted in the loss of their investments channeled through the Rye Funds to Madoff. As mere pass-through investment vehicles for those assets, the Rye Funds themselves were not in any practical sense injured by Tremont Partners' acts and omissions. Thus, the Tremont Defendants have it precisely backwards in arguing that the limited partners were only "incidentally" injured. It was the Rye Funds who were incidentally -- indeed, merely technically -- harmed. The real losses were instantaneously realized by the Class Plaintiffs, with devastating results.

With respect to the limited partners' remaining claims in <u>Cencom</u>, the court emphasized that they did not involve any ongoing conduct by the general partner. Given that the limited partnership's "business is complete" and the general partner (as a defendant in the action) obviously was adverse to the limited partners, the court concluded that "imposing derivative

requirements . . . would only set up a legal artifice that has no justification and, therefore, put plainly, makes no sense." Id. at *4.

These same factors militate in favor of classifying the class claims here as direct. The Rye Funds are dormant business entities. Class Plaintiffs' claims relate not to ongoing operations at the Rye Funds (as there are none) but on past conduct of the parties who grossly mismanaged those operations. The claims, in part, target the general partner, Tremont Partners, and that general partner's interests obviously are adverse to the limited partners' interest in this litigation. Under these circumstances, imposing derivative requirements would amount to little more than an "artifice" lacking any practical justification. Id. Classifying these claims as derivative would accomplish nothing and benefit no one (other than, of course, the Tremont Defendants).

Further, the Cencom court reasoned that classifying the limited partners' claims as derivative would advance neither of the two rationales justifying the derivative mechanism. First, the court found that proceeding derivatively would not advance the objective of ensuring "that injury to a whole association is adjudicated on behalf of that whole and not just for the benefit of the individuals" who brought the claims. Id. The court again emphasized that "the only injured party that may recover on these claims is in fact a class of all limited partners":

> It is an elementary principle of equity that
> defendants found liable for breaches of either
> fiduciary duties or contractual arrangements should
> not benefit from any remedy for these breaches.
> The practical effect of this is to exclude the
> defendant from the group of those that may
> potentially recover.

Id. The limited scope of the group of claimants who sought relief and could recover on the claims at issue, the court concluded, "justifies labeling these claims as direct." Id. at *5. This reasoning is equally compelling in this case.

14

Second, the court concluded that proceeding derivatively would not advance the objective of "galvanizing a governing entity within the business association into taking action to redress injury on behalf of the business." Id. at *4. The court noted that the general partner in that case, as a defendant, "obviously opposes all of the claims in this litigation," thus rendering it unreasonable "to expect that demand could be made with any hope of success." Id. at *5. For the Cencom court, application of the demand rule under these circumstances "evoke[d] vestiges of arcane medieval canon law." Id. This reasoning applies with equal force here.

The flexible analysis of the direct/derivative issue in Anglo American Security Fund, L.P. v. S.R. Global International Fund, L.P., 829 A.2d 143 (Del. Ch. 2003), is also instructive. There, limited partners alleged that the general partner overdrew its capital account, thus breaching certain contractual and fiduciary obligations. Defendants maintained that the claims were derivative. The court disagreed, reasoning that while the claims in question might have been derivative in the typical corporate context, material differences in the limited partnership form -- particularly its contractual nature -- compelled a different conclusion. Id. at 150-52.

Focusing closely on the contractual relationship between the limited partnership, limited partners and general partner, the Anglo American court concluded that "the operation and function of the Fund as specified in the Agreement diverge so radically from the traditional corporate model that the claims made in the complaint must be brought as direct claims." Id. at 152. The court explained:

> [T]he limited partners' interests in the Fund are not freely transferable or tradable; the liquidity of the limited partners' investment is somewhat restricted and, perhaps, most importantly for purposes of this motion to dismiss, the Fund exists solely to utilize "the assets of its Partners" in various investment

> vehicles and maintains its books to account
> separately for the value of each partner's assets at
> all times. The Fund operates more like a bank with
> the individual partners each having accounts. . . .

Id. at 154. As a result of this structure, "injuries that result in a direct reduction of the Fund's assets will effect an almost immediate reduction in the capital accounts of each of the existing partners. Such losses confer only a fleeting injury to the Fund, one that is immediately and irrevocably passed through to the partners." Id. at 152 (emphasis supplied).

The partnership structure deemed dispositive in Anglo American closely tracks the structure of the Rye Funds as reflected in the limited partnership agreements. Here, too, the Rye Funds' only real assets were in the capital accounts of the limited partners. Any losses technically sustained by the Rye Funds were, as in Anglo American, fleeting at best. The true devastation wrought by the Tremont Defendants' acts and omissions, as measured by the total losses absorbed in those capital accounts, was immediately passed through to and realized by the limited partners. The Tremont Defendants' assertion to the contrary simply cannot be squared with reality.

Class Plaintiffs respectfully submit that the sound and pragmatic reasoning reflected in the Cencom and Anglo American decisions compels the conclusion that they should be permitted to proceed directly with their claims against the Tremont Defendants. See Grigsby & Assocs., Inc. v. Rice Derivative Holdings, L.P., 2001 WL 1135620, at *2 (S.D.N.Y. Sept. 26, 2001) (applying Cencom analysis in dispute relating to Delaware limited partnership).[5]

---

[5]    Only two of the decisions cited by the Tremont Defendants in their direct/derivative argument involved Delaware limited partnerships. Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv. of Cincinnati, Inc., 1996 WL 506906 (Del. Ch. Sept. 3, 1996), aff'd, 692 A.2d 411 (Del. 1997), predates the Cencom and Anglo American decisions discussed above and, in any event, involved a going concern. TIFD III-X LLC v. Fruehauf Prod. Co., 883 A.2d 854 (Del. Ch. 2004), while decided after Cencom and Anglo American, inexplicably makes no reference to those decisions and turned more on the timeliness of the claims than whether they were direct or

**POINT VI.**

**MADOFF'S CRIMINAL ACTS DO NOT INSULATE
THE TREMONT DEFENDANTS FROM LIABILITY**

The Tremont Defendants' assertion that Madoff's criminal conduct somehow breaks the causal chain and absolves them of liability for their tortious conduct is preposterous. See Tremont Defendants' Brief at 18-19. There is no basis in law, logic, equity or common sense for the proposition that the Tremont Defendants should get a free pass simply because the person to whom they recklessly funneled billions of dollars of Class Plaintiffs' assets proved to be a criminal.

The Tremont Defendants would have the court assume that every intervening intentional or criminal act necessarily is a superseding cause that shields a tortfeasor from liability. This is not the law. See Duphily v. Delaware Elec. Coop., Inc., 662 A.2d 821, 829 (Del. 1995); Derdiarian v. Felix Contracting Corp., 51 N.Y.2d 308, 315-17, 414 N.E.2d 666, 670-671, 434 N.Y.S.2d 166, 169-70 (1980). To break the causal chain, the intervening cause must have been neither anticipated nor reasonably foreseeable. Duphily, 662 A.2d at 829; Kush v. City of Buffalo, 59 N.Y.2d 26, 33, 449 N.E.2d 725, 729, 462 N.Y.S.2d 831, 835 (1983).

The foreseeability of the consequences of a tortfeasor's conduct is a textbook example of a factual issue not appropriately resolved even on a summary judgment motion after full discovery, much less a motion to dismiss. For purposes of this motion, what matters is that the Complaint contains detailed allegations that Madoff's criminal conduct was not only foreseeable, see Complaint, ¶¶ 246-294, but actually foreseen by many of the Tremont Defendants' peers in the investment community. Id. Indeed, Class Plaintiffs go one step further.

---

derivative. Class Plaintiffs submit that, in the end, the courts' analysis in Cencom and Anglo American presents a better-reasoned approach to the circumstances presented here than that followed in TIFD III-X LLC.

They allege that the Tremont Defendants must have detected the red flag warnings of gross irregularities in Madoff's operations and thus must have foreseen the consequences of their tortious conduct. Id., ¶¶ 313-322.

Furthermore, a long line of cases holds that the subsequent intentional or criminal conduct of a third party will not relieve a defendant of liability where the harm ultimately caused by the subsequent conduct is the very harm the defendant was duty-bound to help avoid. See Oei v. Citibank, N.A., 957 F. Supp. 492, 509 (S.D.N.Y. 1997); Bell v. Board of Educ. of City of N.Y., 90 N.Y.2d 944, 946-47, 687 N.E.2d 1325, 1326-27, 665 N.Y.S.2d 42, 43-44 (1997); Kush, 59 N.Y.2d at 33, 449 N.E.2d at 729, 462 N.Y.S.2d at 835; Derdiarian, 51 N.Y.S.2d at 316, 414 N.E.2d at 671, 434 N.Y.S.2d at 170. Here, one of the principal reasons Class Plaintiffs paid astronomical fees to the Tremont Defendants was to ensure that the manager to whom their assets were funneled -- i.e., Madoff -- was adequately vetted and monitored. See Complaint, ¶¶ 463-464. The foreseeable risk flowing from any failure by the Tremont Defendants to conduct adequate due diligence and monitoring was precisely the catastrophe that has unfolded here -- i.e., unencumbered by any meaningful level of transparency, due diligence or oversight, the manager they selected misappropriated the assets entrusted to him. To deny the foreseeability of such criminal conduct under the circumstances alleged in the Complaint is, sadly, to ignore human nature and the raft of fund managers who have looted assets entrusted to them in Ponzi schemes both large and small over the years.

**POINT VII.**

**ALL OF THE TREMONT DEFENDANTS
OWED FIDUCIARY DUTIES TO PLAINTIFFS**

The Tremont Defendants argue that the breach of fiduciary duty claim (Count I) fails because none of them owed a fiduciary duty to the Class Plaintiffs. See Tremont

Defendants' Brief at 19-23.  As the Tremont Defendants apparently see it, having encouraged investors to entrust them with billions of dollars, they were free to conduct themselves without regard to those investors' best interests.  This, of course, is not so.  In fact, each of the Tremont Defendants owed contractual and/or common-law fiduciary duties to the Class Plaintiffs. Moreover, the business judgment rule provides them with no protection from the consequences of having breached those duties.

### A.   The Tremont Defendants Owed Fiduciary Duties

Where the members of a limited partnership have memorialized their respective rights and duties in an agreement, that agreement stands as the measure for determining any breach of duty.  Forsythe v. ESC Fund Mgmt. Co., 2007 WL 2982247, at *6, 10 (Del. Ch. Oct. 9, 2007); see also Delaware Revised Uniform Limited Partnership Act, 6 Del. C. § 17-1101(d) (fiduciary duties of a partner or other person are governed by the terms of the partnership agreement).

As the Tremont Defendants concede, the scope of their fiduciary duties is set forth in the exculpation provisions of the limited partnership agreements.[6]  See Declaration of Jason C. Vigna in Support of Tremont Defendants' Motion to Dismiss ("Vigna Decl."), Ex. A at § 3.09; id., Ex. B at § 2.7; id., Ex. C at § 2.6; see also Forsythe, 2007 WL 2982247, at *6-7, 10 (exculpation provision of the limited partnership agreement governed the scope of the fiduciary duties of the general partner and the investment advisor).  The limited partnership agreements for the Prime Fund and the XL Fund expressly govern the fiduciary duties of the Tremont Defendants in nearly identical clauses.  See Vigna Decl., Ex. B at § 2.7; id., Ex. C at § 2.6.

---

[6]   See Tremont Defendants' Brief at 7 n.12 (arguing that, under Delaware law, the limited partnership agreements limit the scope of the Tremont Defendants' fiduciary duties).

EC.21490.5

The Broad Market Fund's limited partnership agreement, on the other hand, only governs the fiduciary duties of Tremont Partners.  Id., Ex. A at § 3.09.  Nonetheless, Tremont Group and the individual Tremont Defendants owed fiduciary duties to investors in the Broad Market Fund based on their common-law duties as investment advisors.  These defendants encouraged clients of Tremont Group to invest and maintain their assets in the Rye Funds, and stated that they possessed the necessary sophistication and expertise to select a competent and appropriate "single manager" to whom investments in the domestic Rye Funds would be channeled.  See Complaint, ¶¶ 5-6, 8, 11, 32, 34-35, 74-76, 241-94, 433-445.  Under such circumstances, investment advisors owe common-law fiduciary duties.  See Sergeants Benevolent Ass'n Annuity Fund v. Renck, 19 A.D.3d 107, 109-10, 796 N.Y.S.2d 77, 79 (1st Dep't 2005); Forsythe, 2007 WL 2982247, at *10-11.

**B.      The Business Judgment Rule**
         **Affords No Protection Here**

Tremont Partners' reliance on the business judgment rule to avoid answering for its role in the Madoff debacle is grossly misplaced.  See Tremont Defendants' Brief at 20-22. Class Plaintiffs may rebut the presumption underlying the business judgment rule by alleging facts sufficient to render plausible the proposition that Tremont Partners' decisions relating to Class Plaintiffs' assets were not made on an informed basis, and that it did not in good faith believe those decisions to be in the investors' best interests.  See In re Musicland Holding Corp., 398 B.R. 761, 787-89 (Bankr. S.D.N.Y. 2008).  The allegations of the Complaint are sufficient to rebut the presumption.

It is well settled that the business judgment rule does not protect corporate decision-makers whose decisions reflect gross negligence, recklessness or bad faith.  See Gantler v. Stephens, 965 A.2d 695, 705-06 (Del. 2009).  As outlined above at pages 5-6, Class Plaintiffs

have alleged facts reflecting an extraordinary degree of bad faith, recklessness and gross negligence on the part of Tremont Partners. Given the conduct attributed to them in the Complaint, none of the Tremont Defendants is entitled to the shelter of the business judgment rule.[7]

## POINT VIII.

### PLAINTIFFS HAVE ALLEGED A
### VIABLE BREACH OF CONTRACT CLAIM

The Tremont Defendants' contention that Class Plaintiffs fail to allege a colorable breach of contract claim (Count IV) is without merit. See Tremont Defendants' Brief at 23-24. To state a viable breach of contract claim, Class Plaintiffs simply must allege a contractual obligation, a breach of that obligation and damages resulting from that breach. See Fitzgerald v. Cantor, 1998 WL 842315, at *1 (Del. Ch. Nov. 6, 1998). These familiar elements are set forth clearly, concisely and sufficiently in the Complaint.

Specifically, Class Plaintiffs allege that Tremont Partners and Tremont Group each breached their contractual obligations by failing to conduct adequate due diligence and monitoring of Madoff's operations, and that these failures resulted in substantial economic damage. See Complaint, ¶¶ 471-480. The Tremont Defendants concede that Tremont Partners entered into written contractual agreements with Class Plaintiffs. See Tremont Defendants'

---

[7]    The Tremont Defendants conveniently -- and incorrectly -- rely on Delaware state court decisions in contending that Class Plaintiffs bear a "`heavy burden´" in attempting to overcome the business judgment rule and must plead "`particularized facts´ showing the defendants' actions (i) were not taken in good faith or (ii) were inadequately informed." See Tremont Defendants' Brief at 21. Federal pleading standards control on this motion, not Delaware standards. See In re Tower Air, Inc., 416 F.3d 229, 236-37 (3d Cir. 2005). Thus, Class Plaintiffs need only rebut the business judgment rule presumption in a manner consistent with Twombly and its progeny discussed above at pages 4-5. They have done so.

Brief at 23. Those written contracts abound with express terms the breach of which would support the contract claim asserted against Tremont Partners.[8]

With respect to Tremont Group, the absence of a written contract is not fatal to the contract claim against that defendant at this early juncture. Class Plaintiffs may base their claim on the allegation that Tremont Group orally obligated itself to ensure that adequate due diligence and monitoring was conducted and failed to do so. Class Plaintiffs' initial point of contact was with representatives of Tremont Group, whose Rye Investment Management Group division was the conduit through which Class Plaintiffs' funds flowed first to the Rye Funds and then to Madoff. See Complaint, ¶¶ 76, 86-89, 96-97. The allegation that, during its dealings with Class Plaintiffs, Tremont Group orally obligated itself to vet and monitor Madoff's operations is consistent with statements Tremont Group and its predecessor entities made in public filings and elsewhere. Id., ¶¶ 313-319. While the Tremont Defendants may dispute that such an oral contract existed, that is a question for the jury and not one to be resolved on this motion. See Christiana Marine Serv. Corp. v. Texaco Fuel & Marine Mktg., Inc., 2002 WL 1335360, at *4 (Del. Super. June 13, 2002).

---

[8] See, e.g., Declaration of Jason C. Vigna in Support of Tremont Defendants' Motion to Dismiss, Ex. F at 6,17 (Tremont Partners "has primary responsibility for monitoring [Madoff's] ongoing activities"; "reviews the confirmations of the Partnership's trading activity for purposes of tracking the current status of the Partnership's accounts"; "has sole responsibility for contacting [Madoff] regarding trading activity"); id., Ex. F at 17 (same); id., Ex. G at xiii and 11 (same); id., Ex. F at 10 (listing "general criteria" which "guide[s]" Tremont Partners in selecting a particular "Investment Advisor to which the Partnership allocated assets"); id., Ex. G at 2 (same); id., Ex. F at 11 (Tremont Partners "will review the Partnership's holdings with [Madoff] not less frequently than quarterly to assess . . . investment performance"); id., Ex. F at 32 (Tremont Partners believes "it will be able to obtain sufficient information about potential Managers to select them effectively"); id., Ex. F at 33 (Tremont Partners "will request detailed information on a continuing basis from [Madoff] regarding [his] historical performance and investment strategies"); id., Ex. G at 28 (same).

EC.21490.5

## POINT IX.

### PLAINTIFFS STATE A VIABLE
### <u>UNJUST ENRICHMENT CLAIM</u>

Finally, the Tremont Defendants contend that the unjust enrichment claim in Count III is "foreclosed" by the express contract that forms the basis for the breach of contract claim in Count IV. <u>See</u> Tremont Defendants' Brief at 24-25. This argument ignores the reality that, at the pleadings stage, Rule 8 permits a plaintiff to assert inconsistent claims for relief. <u>See</u> Plaintiffs' Brief in Opposition to MassMutual Defendants' Motion to Dismiss at 11-12.

It is well settled that at the pleadings stage, a cause of action for breach of contract is fatal to a quantum meruit claim only where -- unlike here -- it is clear on the face of the complaint itself that there exists an express contract that covers in its entirety the subject matter of the parties' dispute. <u>Knudsen v. Quebecor Printing (U.S.A.) Inc.</u>, 792 F. Supp. 234, 237 (S.D.N.Y. 1992). The courts consistently have recognized that the determination of whether an express contract occupies the field so as to preclude an unjust enrichment claim can, as here, involve factual issues not properly resolved at the pleadings stage. <u>See, e.g.</u>, <u>National City Commercial Capital Co. v. Global Golf, Inc.</u>, 2009 WL 1437620, at *1 (E.D.N.Y. May 20, 2009); <u>MDCM Holdings, Inc. v. Credit Suisse First Boston Corp.</u>, 216 F. Supp. 2d 251, 261 (S.D.N.Y. 2002).

Here, the Tremont Defendants acknowledge that the express contracts between Tremont Partners and Class Plaintiffs do not cover the entirety of the dispute between the parties. In their breach of express contract claim, Class Plaintiffs allege Tremont Partners and Tremont Group were contractually obligated to closely vet and monitor Madoff's operations. <u>See</u> Complaint, ¶¶ 473-74. In response, the Tremont Defendants argue that the only contracts the Class Plaintiffs had with any of the Tremont Defendants were the limited partnership agreements

and the subscription agreements with Tremont Partners (not Tremont Group).  Further, the

Tremont Defendants argue that neither of those express contracts impose on Tremont Partners

any duty to conduct due diligence.  Tremont Group, the Tremont Defendants maintain, had no

express contractual obligation of any kind to Class Plaintiffs.  <u>See</u> Tremont Defendants' Brief at

23-24.

The obligations to conduct adequate due diligence and monitoring which the

Tremont Defendants contend are <u>not</u> covered in the express contracts are the <u>same</u> obligations at

the heart of the unjust enrichment claim.  <u>See</u> Complaint, ¶¶ 464-66.  Thus, there is no basis to

conclude on the face of the Complaint that the limited partnership and subscription agreements

control the entire subject matter of the parties' dispute.  They plainly do not.  At a minimum, a

factual issue exists as to whether the express contracts to which the breach of contract claim is

pegged govern the totality of the parties' dispute.  As a result, the contract claim is not fatal to

the unjust enrichment claim, and Class Plaintiffs may pursue both claims in the alternative.[9]

---

[9]   The Tremont Defendants incorrectly argue that "unjust enrichment requires privity between
the plaintiff and defendant."  <u>See</u> Tremont Defendants' Brief at 25.  In fact, the case they cite for
that proposition stands for the opposite, i.e., that an unjust enrichment claim requires only that
defendant receive a benefit from plaintiff "that in equity and good conscience [it] should not be
permitted to retain[.]" <u>Bello v. New England Fin.</u>, 2004 WL 1305515, *7 (Sup. Ct. Nassau Co.
May 20, 2004).  That is precisely what the Class Plaintiffs allege here.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court enter

an Order denying in its entirety the Tremont Defendants' motion to dismiss the Complaint.

Dated: New York, New York
      July 14, 2009

ENTWISTLE & CAPPUCCI LLP


By:   /s/ Andrew J. Entwistle
      ANDREW J. ENTWISTLE

280 Park Avenue
26th Floor West
New York, New York 10017
Telephone: (212) 894-7200

*Counsel for Plaintiffs Arthur E. Lange*
*Revocable Trust and Arthur C. Lange*

HAGENS BERMAN SOBOL SHAPIRO LLP


By:   /s/ Reed Kathrein
      REED KATHREIN

715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (501) 725-3001
Admitted Pro Hac Vice

*Counsel for Plaintiffs Eastham Capital Appreciation Fund*
*LP, NPV Positive Corp., John Dennis, Daniel Jackson,*
*Laborers Local Pension Plan 17 and Richard Peshkin*

Co-Lead Counsel for Plaintiffs

EC.21490.5