UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

IN RE TREMONT SECURITIES LAW,
STATE LAW AND INSURANCE
LITIGATION

This Document Relates to:  State Law Actions
08 Civ. 11183 (TPG)

-------------------------------------------------------- x

Master File No.:
08 Civ. 11117 (TPG)

**JURY TRIAL DEMANDED**

"ECF Case"

---

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
## TO THE MASSMUTUAL DEFENDANTS' MOTION TO DISMISS

---

**ENTWISTLE & CAPPUCCI LLP**
280 Park Avenue
26th Floor West
New York, New York 10017
(212) 894-7200

*Counsel for Plaintiffs Arthur E. Lange
Revocable Trust and Arthur C. Lange*

**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, California 94710
(510) 725-3000

*Counsel for Plaintiffs Eastham Capital
Appreciation Fund LP, NPV Positive Corp.,
John Dennis, Daniel Jackson, Laborers
Local Pension Plan 17 and Richard Peshkin*

Co-Lead Counsel for Plaintiffs

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT .................................................................................................................. 4

POINT I.

THE COMPLAINT SETS FORTH PLAUSIBLE CLAIMS
FOR RELIEF AGAINST THE MASSMUTUAL DEFENDANTS.................................. 4

POINT II.

CLASS PLAINTIFFS HAVE ASSERTED A
VIABLE AIDING AND ABETTING CLAIM ............................................................... 5

    A.    The MassMutual Defendants Knew of the
           Underlying Breaches of Fiduciary Duties...................................................6

    B.    The MassMutual Defendants
           Assisted the Tremont Defendants ...............................................................8

POINT III.

PLAINTIFFS STATE A VIABLE
UNJUST ENRICHMENT CLAIM................................................................................. 11

POINT IV.

SLUSA DOES NOT PREEMPT THE CLASS CLAIMS ............................................... 12

    A.    The Class Claims Do Not Sound in Fraud.................................................13

           1.    Breach of Fiduciary Duty Claim................................................... 16

           2.    Aiding and Abetting Claim............................................................ 16

           3.    Unjust Enrichment Claim .............................................................. 17

           4.    Breach of Contract Claim .............................................................. 17

           5.    The Defendants Point to No Allegations of Fraud........................ 18

    B.    Defendants' Misconduct Was Not Carried Out
           "in Connection with" a "Covered Security" ..............................................20

EC.22250.5

POINT V.

    THE MARTIN ACT DOES NOT
    PREEMPT PLAINTIFFS' CLAIMS ............................................................... 22

CONCLUSION ............................................................................................................ 25

EC.22250.5

# TABLE OF AUTHORITIES

## Cases

Ashcroft v. Iqbal,
   129 S. Ct. 1937 (2009)................................................................................4, 5

Bell Atlantic Corp. v. Twombly,
   550 U.S. 544 (2007)...................................................................................4, 5

Buckley v. Deloitte & Touche USA LLP,
   2007 WL 1491403 (S.D.N.Y. May 22, 2007) ...............................................6

Chemical Bank v. Arthur Andersen & Co.,
   726 F.2d 930 (2d Cir.), cert. denied, 469 U.S. 884 (1984) .........................21

Gavin v. AT&T Corp.,
   464 F.3d 634 (7th Cir. 2006), cert. denied, 549 U.S. 1274 (2007) .............21

Higgins v. New York Stock Exchange, Inc.,
   10 Misc. 3d 257, 806 N.Y.S.2d 339 (Sup. Ct. N.Y. Co. 2005) ...................10

Jackson National Life Insurance Co. v. Kennedy,
   741 A.2d 377 (Del. Ch. 1999).......................................................................6

Kaufman v. Cohen,
   307 A.D.2d 113, 760 N.Y.S.2d 157 (1st Dep't 2003) ................................10

Knudsen v. Quebecor Printing (U.S.A.) Inc.,
   792 F. Supp. 234 (S.D.N.Y. 1992)...............................................................11

LaSala v. Bank of Cyprus Public Co.,
   510 F. Supp. 2d 246 (S.D.N.Y. 2007)............................................13, 15, 19

LaSala v. UBS, AG,
   510 F. Supp. 2d 213 (S.D.N.Y. 2007)....................................................21, 22

Lou v. Belzberg,
   728 F. Supp. 1010 (S.D.N.Y. 1990)...............................................................6

Louros v. Kreicas,
   367 F. Supp. 2d 572 (S.D.N.Y. 2005)..........................................................24

MDCM Holdings, Inc. v. Credit Suisse First Boston Corp.,
   216 F. Supp. 2d 251 (S.D.N.Y. 2002)..............................................12, 15, 18

EC.22250.5

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,
    547 U.S. 71 (2006).................................................................21

National City Commercial Capital Co. v. Global Golf, Inc.,
    2009 WL 1437620 (E.D.N.Y. May 20, 2009) ...................................11, 12

Newman & Schwartz v. Asplundh Tree Expert Co.,
    102 F.3d 660 (2d Cir. 1996)........................................................11

Norman v. Salomon Smith Barney Inc.,
    350 F. Supp. 2d 382 (S.D.N.Y. 2004).................................14, 15, 16, 17

Palkovic v. Johnson,
    281 Fed. Appx. 63 (2d Cir. 2008) ...................................................4

Paru v. Mutual of America Life Insurance Co.,
    2006 WL 1292828 (S.D.N.Y. May 11, 2006) ...................................14, 16

Pension Committee of the University of Montreal Pension Plan v.
    Banc of America Securities LLC,
    568 F.3d 374 (2d Cir. 2009)..........................................................4

In re Santa Fe Pacific Shareholder Litigation,
    669 A.2d 59 (Del. 1995) ............................................................10

Webster v. New York Life Insurance & Annuity Corp.,
    386 F. Supp. 2d 438 (S.D.N.Y. 2005)..........................................14, 18

Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.,
    341 F. Supp. 2d 258 (S.D.N.Y. 2004)...............................15, 16, 17, 18

Yuko Ito v. Suzuki,
    57 A.D.3d 205, 869 N.Y.S.2d 28 (1st Dep't 2008) ....................................6

## Statutes

Martin Act, N.Y. Gen. Bus. L. § 352-c..........................................................23

Securities Litigation Uniform Standards Act, 15 U.S.C. §§ 77p, 77r, 78bb............................12, 20

EC.22250.5

## Rules

Fed. R. Civ. P. 8....................................................................................................................11

Fed. R. Civ. P. 12(b)(6)........................................................................................................4

EC.22250.5

## PRELIMINARY STATEMENT

Plaintiffs the Arthur E. Lange Revocable Trust, Arthur C. Lange, Eastham Capital Appreciation Fund LP and NPV Positive Corp. (collectively, "Class Plaintiffs") respectfully submit this memorandum of law in opposition to the motion of defendants Massachusetts Mutual Life Insurance Company and MassMutual Holding LLC ("MassMutual Defendants") to dismiss the First Consolidated and Amended Class Action and Verified Complaint ("Complaint").[1]

This action arises out of the ruinous financial losses flowing from the $50 billion Ponzi scheme orchestrated by convicted swindler Bernard L. Madoff. The majority of investors who fell prey to Madoff's scheme invested indirectly with him through an extensive network of "feeder funds" that marshaled investor assets and then channeled them into the black hole that was Madoff's scam. One of the largest family of Madoff feeder funds was the so-called Rye family of funds ("Rye Funds") through which more than $5 billion was recklessly channeled to -- and then plundered by -- Madoff.

The Rye Funds were managed and operated by the Tremont Defendants. The Tremont Defendants, in turn, were owned and/or controlled by the MassMutual Defendants and other members of the MassMutual Financial Group. In fact, the MassMutual Financial Group specifically targeted the Rye Funds for acquisition in 2001 as part of its overall strategy to break into the then-booming hedge fund business and capitalize on the lucrative fees flowing from the Tremont Defendants' relationship with Madoff.

As alleged in the Complaint, the Tremont Defendants, along with the MassMutual Defendants and others in the MassMutual corporate food chain, knew of gross irregularities in Madoff's operations but turned a blind eye to those suspect operations so as to continue reaping

---

[1]  Capitalized terms used herein shall have the same meanings attributed to them in the Complaint.

hundreds of millions of dollars in fees from investors drawn to the Rye Funds. Motivated by unchecked greed, these entities funneled billions of dollars into a highly suspect operation they were loathe to investigate for fear of jeopardizing their extraordinarily lucrative relationship with Madoff. Disinclined to forfeit their place front-and-center at the trough, these entities did absolutely nothing to protect the limited partner investors in the Rye Funds despite their knowledge of both "red flag" warnings regarding Madoff's operations and growing suspicions among other sophisticated corporate entities that those operations were not legitimate.

Class Plaintiffs bring this action on behalf of themselves and the class of Rye Funds investors who had not redeemed their interests in those limited partnerships as of December 11, 2008 -- i.e., the day Madoff's scheme was exposed to the general public. They assert two straightforward state law claims against the MassMutual Defendants. Both of those claims are supported by detailed factual allegations.

First, in Count II the MassMutual Defendants are alleged to have aided and abetted the Tremont Defendants in breaching their fiduciary duties to the limited partner investors in the Rye Funds in that they were aware of gross irregularities in Madoff's operations; knew the Tremont Defendants were doing nothing to protect their investors from those suspect operations; and nonetheless assisted the Tremont Defendants in breaching those duties in order to preserve the upstream financial benefits realized from the Madoff relationship. Second, Class Plaintiffs allege in Count III that the MassMutual Defendants were unjustly enriched by the upstream benefit they received from the fees that the Rye Funds' investors paid to the Tremont Defendants for due diligence and monitoring of Madoff's operations that was conducted -- if, indeed, it was ever conducted at all -- in a shamefully reckless manner.

In challenging these claims, the MassMutual Defendants strain to recast the Complaint as something it is not. In essence, they challenge the pleading they wish had been filed against them rather than the Complaint that is actually before the Court. They do not have that luxury. Notwithstanding the MassMutual Defendants' heavy-handed strategy of obfuscation, a review of the Complaint makes plain what this case is and is not. This is <u>not</u> a securities fraud case. Indeed, it is not a fraud case of <u>any</u> kind. It is <u>not</u> a case pegged to allegations of deceit, deception, misrepresentations or material omissions. This case does <u>not</u> mirror the related securities law action before this Court that, by definition, <u>is</u> a case founded upon allegations of fraud, deceit and deception.

What this case is, instead, is an action involving two plain-vanilla state law claims. The legal viability of those claims is not dependent on allegations of fraud, deceit, deception, misrepresentations, material omissions or anything of the kind. Those causes of action are supported by voluminous factual allegations that make them both colorable under controlling law and plausible as a matter of common sense. As detailed below, the MassMutual Defendants' arguments to the contrary have everything to do with a desperate scramble to avoid discovery into their role in the Tremont Defendants' complete failure to protect their investors from the Madoff debacle and nothing whatsoever to do with any genuine pleading deficiencies to be found in the Complaint. Although the MassMutual Defendants are rightfully fearful of what will be revealed by an inquiry into their role in the Tremont Defendants' failure to take adequate steps to protect their investors from Madoff's operations, the allegations of the Complaint open the door to such discovery and Class Plaintiffs are entitled to pursue it in order to develop further evidence supporting their well-pled claims.

EC.22250.5

## ARGUMENT

## POINT I.

## THE COMPLAINT SETS FORTH PLAUSIBLE CLAIMS
## FOR RELIEF AGAINST THE MASSMUTUAL DEFENDANTS

A complaint challenged under Rule 12(b)(6) "does not need detailed factual allegations" to survive. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The challenged complaint need only make a "`showing´" of the plaintiff's "entitlement to relief." Id. at 555 n.3. The Complaint here plainly does so.

As the Supreme Court has instructed, on a motion to dismiss, "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id. at 570. Plausibility in this context, the Court has cautioned, "is not akin to a `probability requirement[.]´" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Determining whether a complaint makes out a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. In making that determination, a court "construe[s] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in Plaintiffs' favor." Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC, 568 F.3d 374, 381 (2d Cir. 2009). Ultimately, the inquiry is not whether a plaintiff is likely to prevail on its claims, but whether it is entitled under the circumstances to develop and offer evidence to support those claims. See Palkovic v. Johnson, 281 Fed. Appx. 63, 66 (2d Cir. 2008).

The Complaint more than adequately details the factual basis for the claims asserted against the MassMutual Defendants. Class Plaintiffs plainly have done much more than file "an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949. The Complaint certainly offers more than mere "`labels and conclusions´ or a `formulaic

recitation of the elements'" of Plaintiffs' claims.  Id.  It clearly reaches well beyond the "'naked assertion[s]´ devoid of `further factual enhancement.'"  Id.

Class Plaintiffs submit that the facts and circumstances detailed in the Complaint have "nudged their claims across the line from conceivable to plausible[.]"  Twombly, 550 U.S. at 570.  The 115-page, 547-paragraph Complaint possesses "enough heft `to sho[w] that the pleader is entitled to relief'" and sets forth "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" further supporting these claims.  Id. at 556-57.  For the reasons set forth below, Class Plaintiffs respectfully request that the Court deny the MassMutual Defendants' motion in its entirety and direct that discovery proceed forthwith.

## POINT II.

## CLASS PLAINTIFFS HAVE ASSERTED A VIABLE AIDING AND ABETTING CLAIM

The MassMutual Defendants' lead argument that the aiding and abetting claim (Count II) is based on nothing more than conclusory assertions simply ignores the detailed factual allegations of the Complaint and the reasonable inferences to be drawn from those allegations.  See MassMutual Defendants' Brief at 7-12.  Those allegations are more than adequate at the pleadings stage to render plausible the claim that the MassMutual Defendants knew of the Tremont Defendants' breach of their fiduciary duties and assisted the Tremont Defendants in breaching those duties in order to preserve the significant revenue stream the Madoff relationship was generating.

The gist of the underlying fiduciary duty claim is that the Tremont Defendants knew of gross irregularities in Madoff's operations; failed to conduct adequate due diligence or monitoring of Madoff's highly suspect operations; failed to take adequate steps to protect Class Plaintiffs from those suspect operations; and, while abdicating their fiduciary responsibilities,

5

they gorged themselves on the astronomical fees generated by their relationship with Madoff. See Complaint, ¶¶ 440-445.

As detailed below, the MassMutual Defendants aided and abetted those breaches in that they knew of gross irregularities in Madoff's operations; knew the Tremont Defendants had failed to take any steps to protect investors from Madoff's highly suspect operations; and -- while aware that the Tremont Defendants were doing nothing to protect investors -- substantially assisted the Tremont Defendants in breaching their fiduciary obligations so that the MassMutual Defendants and others could continue to reap the enormous upstream financial benefits flowing from the Tremont Defendants' lucrative relationship with Madoff. Those allegations, Class Plaintiffs respectfully submit, are sufficient to state a claim for aiding and abetting. See Jackson Nat'l Life Ins. Co. v. Kennedy, 741 A.2d 377, 386 (Del. Ch. 1999) (elements of an aiding and abetting claim under Delaware law are the existence of a fiduciary relationship; the fiduciary's breach of its duty; a non-fiduciary's knowing participation in that breach; and resulting in damages).[2]

### A. The MassMutual Defendants Knew of the Underlying Breaches of Fiduciary Duties

The MassMutual Defendants contend that the Complaint fails to adequately allege that they had actual knowledge of the Tremont Defendants' breaches of their fiduciary duties.

---

[2]   Class Plaintiffs respectfully submit that Delaware law controls in that the aiding and abetting claim relates to the internal affairs of the domestic Rye Funds, three Delaware limited partnerships. See Buckley v. Deloitte & Touche USA LLP, 2007 WL 1491403, at *13 (S.D.N.Y. May 22, 2007); Lou v. Belzberg, 728 F. Supp. 1010, 1023 (S.D.N.Y. 1990). The MassMutual Defendants urge the Court to apply New York law but acknowledge that Delaware law might govern. See MassMutual Defendants' Brief at 7 n.7. Under New York law, to plead an aiding and abetting claim one must allege a breach of fiduciary duty; that the defendant knowingly induced or participated in the breach; and damages resulting therefrom. See Yuko Ito v. Suzuki, 57 A.D.3d 205, 208, 869 N.Y.S.2d 28, 31 (1st Dep't 2008). Class Plaintiffs submit that, as set forth above, the allegations of the Complaint are sufficient to state a claim under either New York or Delaware law.

EC.22250.5

This assertion is belied by the allegations of the Complaint. Those detailed factual allegations, and the reasonable inferences that flow from them, demonstrate that:

- the MassMutual Defendants set the acquisition of Tremont Advisers in motion as part of an overall strategy to push into the extraordinarily lucrative hedge fund arena; defendant OAC was the MassMutual subsidiary selected to lead that charge, <u>see</u> Complaint, ¶¶ 105-08, 110;

- OAC conducted extensive due diligence relating to the Tremont Advisers' acquisition and, as a result, knew of the Tremont Defendants' close and highly lucrative relationship with Madoff and the importance of that single relationship to the overall success of the Tremont Defendants' operations, <u>id.</u>, ¶¶ 111-12, 121-25, 127-28, 130-33;

- the MassMutual Defendants had total control and influence over defendants OAC and Oppenheimer Funds, <u>id.</u>, ¶¶ 26-30, 155-197;

- the MassMutual Defendants, through OAC, knew of the Tremont Defendants' highly lucrative relationship with Madoff, and the importance of that single relationship to the overall success of the Tremont Defendants' operations, <u>id.</u>, ¶¶ 123-125, 131;

- as a result of due diligence performed in acquiring Tremont Advisers, the MassMutual Defendants knew of numerous "red flag" indicators of gross irregularities in Madoff's operations, and were aware that the Tremont Defendants had not taken adequate steps to protect their investors for fear of interrupting the lucrative fees flowing from the Madoff relationship, <u>id.</u>, ¶¶ 130-33, 321-22, 449-53;

- the MassMutual Defendants knew of articles in the business press noting growing skepticism in the investment community regarding the legitimacy of Madoff's operations, and were aware that the Tremont Defendants had not taken adequate steps to protect their investors for fear of interrupting the lucrative business arrangement with Madoff, <u>id.</u>, ¶¶ 133-40, 260-62, 449-53;

- as sophisticated financial institutions, the MassMutual Defendants were aware that a growing number of their peers in the investment community were refusing to deal

with Madoff based on their suspicions regarding the legitimacy of his operations, and at the same time they knew that the Tremont Defendants were not taking adequate steps to protect their investors for fear of interrupting the Madoff relationship, id., ¶¶ 295-309, 322, 449-53; and,

- given the extensive degree of control and influence they had over the Oppenheimer Defendants and Tremont Defendants, id., ¶¶ 26-31, 155-197, the MassMutual Defendants were privy to the Tremont Defendants' knowledge of the "red flags" regarding potential criminality and gross irregularities in Madoff's operations, id., ¶¶ 242-294, 310-322, and knew of the Tremont Defendants' failure to take adequate steps to protect their investors for fear of upsetting the historically lucrative business arrangement with Madoff, id., ¶¶ 449-53.

Class Plaintiffs respectfully submit that these detailed allegations are sufficient to satisfy the knowledge element of the aiding and abetting claim.

**B.  The MassMutual Defendants
    Assisted the Tremont Defendants**

The MassMutual Defendants further argue that the aiding and abetting claim fails because the Complaint does not adequately allege that they assisted the Tremont Defendants in breaching their fiduciary duties.  Again, this assertion cannot be squared with the allegations of the Complaint.  Those detailed allegations, and the reasonable inferences that flow from them, demonstrate that:

- as part of an overall corporate strategy of the MassMutual Financial Group, Tremont Advisers was targeted for acquisition as part of a push into the lucrative hedge fund arena and in an effort to tap into the "robust and growing revenue stream" generated by the Tremont Defendants' relationship with Madoff, id., ¶¶ 105-22;

- following the acquisition of Tremont Advisers, the MassMutual Defendants, while aware of the Tremont Defendants' breaches of their fiduciary duties, commenced a marketing campaign touting the Tremont Defendants' capabilities and promoting the Tremont Defendants as

8

being part of the network of subsidiaries and affiliates that comprise the MassMutual Financial Group, id., ¶¶ 145-54, 198-212, 455, 457;

- being folded into the MassMutual Financial Group provided the Tremont Defendants with the opportunity to attract larger numbers of investors through MassMutual's extensive global distribution network, id., ¶¶ 119, 148, 151-54, 457;

- being brought into the fold of the MassMutual Financial Group permitted the Tremont Defendants -- a relative newcomer to the investment community -- to enhance its credibility among potential investors by operating alongside and with the imprimatur of such familiar, well-established and trusted entities as MassMutual, id., ¶¶ 120, 458; and

- the MassMutual Defendants provided this assistance while aware of the underlying breaches of fiduciary duties and with the expectation that the historically rich revenue stream flowing from the Madoff relationship that prompted them to acquire the Rye Funds in the first place would continue into the future, id., ¶¶ 320-22, 454.

In short, the MassMutual Defendants' formidable marketing and distribution infrastructure enabled the Tremont Defendants to cast an extraordinarily wide net to attract investors to the Rye Funds. The Tremont Defendants' reach was nowhere near as extensive prior to the 2001 acquisition that brought the Tremont Advisers into the MassMutual corporate family. This expanded reach afforded by the MassMutual Defendants -- at a time when they knew the Tremont Defendants were breaching their fiduciary duties -- allowed the Tremont Defendants to continue funneling to Madoff the increasingly larger levels of assets necessary to keep his scheme afloat until it crashed in December 2008. The fees realized from this flood of assets into Madoff's operations benefitted not just the Tremont Defendants, but also the MassMutual Defendants and others up and down the corporate food chain.

*   *   *   *

9

Class Plaintiffs respectfully submit that the aiding and abetting claim finds more than adequate support in the Complaint's detailed factual allegations and the inferences reasonably drawn from those allegations. Nonetheless, the MassMutual Defendants insist that more particularized allegations are required at this juncture. This contention is as predictable as it is meritless. Given the reality that more detailed information regarding the MassMutual Defendants' knowledge of and involvement in the Tremont Defendants' breaching conduct necessarily is within the MassMutual Defendants' exclusive control, those issues ultimately are matters to be developed in discovery and resolved at a later phase in the litigation. See Higgins v. New York Stock Exch., Inc., 10 Misc. 3d 257, 290, 806 N.Y.S.2d 339, 366 (Sup. Ct. N.Y. Co. 2005) (sustaining aiding and abetting claim on a motion to dismiss, court observed that "[t]o the extent that Goldman's knowledge of the breadth of the [New York Stock Exchange] defendants' alleged breach has not been alleged by particularized facts, its knowledge, ultimately, is a matter for discovery, as much of that information is necessarily in Goldman's control"). Of course, it is precisely such an inquiry that the MassMutual Defendants are scrambling to avoid here.[3]

---

[3] The decisions on which the MassMutual Defendants rely in arguing that the aiding and abetting claim is legally deficient do not support that conclusion. Indeed, those decisions illustrate the distinction between the detailed factual allegations set forth in the Complaint and the truly conclusory allegations found inadequate in those cases. For example, in In re Santa Fe Pacific Shareholder Litigation, 669 A.2d 59 (Del. 1995), plaintiffs attempted to base an aiding and abetting claim on a single and patently conclusory allegation that the defendant "had knowledge" of the underlying fiduciary duties and "knowingly and substantially participated and assisted" the fiduciaries in breaching those duties. Id. at 72. Affirming the dismissal of the claim, the court noted that "[o]ther than this statement, Plaintiffs have alleged no facts from which a claim for aiding and abetting breaches of fiduciary duty could be stated." Id.; see also Kaufman v. Cohen, 307 A.D.2d 113, 125, 760 N.Y.S.2d 157, 169-70 (1st Dep't 2003) (dismissing aiding and abetting claim pegged to a single conclusory allegation -- asserted on information and belief, no less -- that defendants had knowledge of the underlying breach). The allegations supporting the aiding and abetting claim in those cases plainly were conclusory. The same cannot be said of the Complaint here.

10

# POINT III.

## PLAINTIFFS STATE A VIABLE
## UNJUST ENRICHMENT CLAIM

The MassMutual Defendants' contention that the breach of contract claim (Count IV) is fatal to the unjust enrichment claim (Count III) overlooks a reality of federal practice:  At the pleadings stage, a plaintiff is free to assert inconsistent claims for relief.  <u>See</u> MassMutual Defendants' Brief at 12-15.  Rule 8 allows a party to "set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."  <u>See</u> Fed. R. Civ. P. 8(d)(2).  Furthermore, "[a] party may state as many separate claims or defenses as it has, regardless of consistency."  <u>See</u> Fed. R. Civ. P. 8(d)(3).

Rule 8 is construed so as to "'permit plaintiffs to sue on a contract and at the same time alternatively repudiate the agreement and seek recovery on a quantum meruit claim[.]'"  <u>Knudsen v. Quebecor Printing (U.S.A.) Inc.</u>, 792 F. Supp. 234, 237 (S.D.N.Y. 1992).  Applying this well-settled principle in <u>Newman & Schwartz v. Asplundh Tree Expert Co.</u>, 102 F.3d 660 (2d Cir. 1996), the Second Circuit reversed the grant of a motion to dismiss claims for quantum meruit and unjust enrichment, reasoning that the quasi-contract claims "were properly pleaded as such in the alternative to the contractual claim[.]"  <u>Id.</u> at 663.

It is well settled that at the pleadings stage, a breach of contract claim will preclude a quantum meruit claim only where -- unlike here -- it is clear on the face of the complaint itself that there exists an express contract that covers in its entirety the subject matter of the parties' dispute.  <u>Knudsen</u>, 792 F. Supp. at 237.  The courts consistently have recognized that the determination of whether an express contract occupies the field so as to rule out an unjust enrichment claim can, as here, involve factual issues not properly resolved at the pleadings stage.  In <u>National City Commercial Capital Co. v. Global Golf, Inc.</u>, 2009 WL

11

1437620 (E.D.N.Y. May 20, 2009), for example, plaintiff was permitted to proceed alternatively with a claim for breach of an express contract and a claim for unjust enrichment. Denying a motion to dismiss, the court concluded that "there is no basis to dismiss these claims at this juncture because they assert plausible alternative theories of liability[.]" Id. at *1. The court sustained the unjust enrichment claim despite "recognize[ing] that, as to plaintiff's quasi-contract claim, it may only be asserted in the absence of an agreement between the parties -- be it oral, written or implied-in-fact." Id. The existence or absence of a contract controlling the subject matter of the parties' dispute, the court concluded, was a factual issue to be resolved at a later stage in the litigation. Id.; see also MDCM Holdings, Inc. v. Credit Suisse First Boston Corp., 216 F. Supp. 2d 251, 261 (S.D.N.Y 2002).

Here, the Tremont Defendants acknowledge that the express contracts between Tremont Partners and Class Plaintiffs do not cover the entirety of the dispute between the parties. See Plaintiffs' Brief in Opposition to Tremont Defendants' Motion to Dismiss at 23-24. Thus, there is no basis to conclude on the face of the Complaint that the limited partnership and subscription agreements control the entire subject matter of the parties' dispute. They plainly do not. At a minimum, factual issues exist as to whether the express contracts to which the breach of contract claim is pegged govern the totality of the dispute between the parties. As a result, the contract claim is not fatal to the unjust enrichment claim.

## POINT IV.

## SLUSA DOES NOT PREEMPT THE CLASS CLAIMS

The MassMutual Defendants' argument that the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. §§ 77p, 78bb(f), preempts the class claims in Counts I through IV is without merit. See MassMutual Defendants' Brief at 15-19. To secure dismissal under SLUSA, the MassMutual Defendants must demonstrate that this is (1) a covered class

12

action, (2) based on state law, (3) in which Plaintiffs allege a misrepresentation or omission of material fact, <u>and</u> (4) that misrepresentation or omission is alleged to have been made "in connection with" the purchase or sale of a "covered security." <u>Id.</u>, § 77p(b). This analysis is applied separately to each claim contained in a pleading, rather than the pleading as a whole, to determine if preemption is justified. <u>LaSala v. Bank of Cyprus Public Co.</u>, 510 F. Supp. 2d 246, 274-75 (S.D.N.Y. 2007). The MassMutual Defendants cannot satisfy either the third or fourth prong of this test with respect to any of the claims asserted in the Complaint.

A.    <u>The Class Claims Do Not Sound in Fraud</u>

Straining to drag this action within SLUSA's reach, the MassMutual Defendants grossly mischaracterize the nature of the class claims. Those class claims, the MassMutual Defendants contend, are based upon the allegation "that defendants made misrepresentations or omissions[.]" <u>See</u> MassMutual Defendants' Brief at 16. They do not and cannot point to a single allegation in the Complaint that would support this distortion.[4]

A review of the class claims and the allegations of the Complaint as a whole proves this assertion to be without foundation. The claims for breach of contract, breach of fiduciary duty, unjust enrichment and aiding and abetting plainly are not tied to any alleged misrepresentations or omissions. Class Plaintiffs need not prove any misrepresentation or omission to succeed on these claims. Nowhere in the Complaint do Class Plaintiffs attribute to any of these defendants any fraudulent intent, nor do they allege that they relied on any misrepresentation or omissions by those defendants.

---

[4]   This inability to identify any allegation of deceptive conduct in the Complaint is also fatal to the MassMutual Defendants' Martin Act preemption argument, as discussed below at pages 22-25.

In short, the notion that the class claims are pegged to allegations of misrepresentations and omissions is made up out of whole cloth. As the MassMutual Defendants well know, the fraud claims against them are asserted not here but in the related securities law action before this Court. The claims asserted in the related securities law action are, by definition, fraud-based claims tied to allegations of misrepresentations and omissions.[5] The same cannot be said of the class claims asserted here. This action and the securities law action are based on fundamentally different legal theories and litigation strategies. This is evidenced by the Court's decision to organize this litigation into separate groupings of cases, with each group reflecting distinct theories of recovery. See Order of Consolidation dated March 26, 2009 (setting forth tripartite "securities law actions," "state law actions" and "insurance actions" case structure).

By recasting the Complaint as something it is not, the MassMutual Defendants engage in a familiar tactic the courts have noted with disfavor. See, e.g., Paru v. Mutual of Am. Life Ins. Co., 2006 WL 1292828, at *3 (S.D.N.Y. May 11, 2006) ("Court is . . . mindful that defendant may not recast plaintiff's Complaint as a securities fraud class action so as to have it preempted by SLUSA"); Webster v. New York Life Ins. & Annuity Corp., 386 F. Supp. 2d 438, 441 (S.D.N.Y. 2005) (defendants may not avoid every possible state law claim by invoking SLUSA and simply recasting the lawsuit as one for securities fraud); Norman v. Salomon Smith Barney Inc., 350 F. Supp. 2d 382, 386 (S.D.N.Y. 2004) ("'courts should be wary of a defendant's attempts to recast the plaintiff's complaint as a securities lawsuit in order to have it

---

[5] See, e.g., Consolidated and Amended Class Action Complaint in Securities Law Action ("Securities Law Complaint") at ¶¶ 2, 3, 57-58, 83-115, 199-200, 210-211. For the Court's convenience, a copy of the Securities Law Complaint is attached as Exhibit A to the accompanying Declaration of Richard W. Gonnello, Esq. ("Gonnello Declaration").

pre-empted by SLUSA&#39;&#39;&#39;); <u>MDCM Holdings</u>, 216 F. Supp. 2d 257 n.12 (same).  As Judge

Scheindlin has observed in the SLUSA context:

> Simply because the operative facts of a complaint <u>can</u> give rise to a claim of fraud does not mean that the complaint <u>must</u> be read as alleging fraud.  To the contrary, a plaintiff is ordinarily free to choose the legal theories upon which she relies and to discard others . . . . The choice of legal theories is a strategic choice to be made by plaintiff, and neither the court nor the defendant is permitted to override that choice.

<u>Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.</u>, 341 F. Supp. 2d 258, 268

(S.D.N.Y. 2004); <u>see also</u> <u>Norman</u>, 350 F. Supp. 2d at 387; <u>MDCM Holdings</u>, 216 F. Supp. 2d at

257 n.12.

In determining if a claim falls within the scope of SLUSA, the courts of this

District have developed a pragmatic test that looks to whether fraud is a "necessary component"

of the claim in question.  <u>See</u> <u>Xpedior</u>, 341 F. Supp. 2d at 266 (articulating the analysis); <u>LaSala</u>,

510 F. Supp. 2d at 272 (applying analysis).  Under the "necessary component" test, a claim is

preempted under SLUSA in one of two scenarios.  First, an explicit claim of fraud or

misrepresentation obviously will be preempted.  Second, SLUSA will preempt state law claims

that, although not labeled as fraud claims, nonetheless "sound in fraud."  <u>Id.</u>; <u>Xpedior</u>, 341 F.

Supp. 2d at 266.

Clearly, Class Plaintiffs do not assert explicit claims for fraud or

misrepresentation.  The question, then, is whether Counts I through IV "sound in fraud."  This

determination turns on "the simple inquiry [of] whether plaintiff is pleading fraud in words or

substance."  <u>Xpedior</u>, 341 F. Supp. 2d at 268.  A claim "sounds in fraud" for purposes of a

SLUSA preemption analysis when the plaintiff "alleges fraud as an integral part of the conduct

15

giving rise to the claim." Id. at 269. As demonstrated below, the SLUSA preemption argument

fails with respect to all four of the class claims.

### 1. Breach of Fiduciary Duty Claim

In Count I, Class Plaintiffs allege that the Tremont Defendants breached their

fiduciary duties by failing to adequately vet and monitor Madoff's operations. See Complaint,

¶¶ 433-45. This claim does not sound in fraud because the alleged conduct giving rise to the

claim does not involve deception, fraud, misrepresentations or omissions. As the Tremont

Defendants themselves concede, the "gravamen" of this claim is that they "mismanaged the

Funds' assets, resulting in the loss of those assets to Madoff's Ponzi scheme." See Tremont

Defendants' Brief at 13 (emphasis supplied). Stated differently, the gravamen of the claim is not

that the defendants engaged in fraudulent conduct. SLUSA does not preempt this claim. See

Norman, 350 F. Supp. 2d at 387 (sustaining breach of fiduciary duty claim, court reasons that

"[r]egardless of the factual merits of these claims, they are not securities fraud claims, nor claims

that depend on establishing material misrepresentations or omissions in connection with the

purchase or sale of securities, within the meaning of SLUSA"); Paru, 2006 WL 1292828, at *3-5

(breach of fiduciary duty claim not preempted under SLUSA); Xpedior, 341 F. Supp. 2d at 269

(same).

### 2. Aiding and Abetting Claim

In Count II, Class Plaintiffs allege that the MassMutual Defendants aided and

abetted the Tremont Defendants in breaching their fiduciary duties. See Complaint, ¶¶ 446-459.

As noted above, the underlying breach of fiduciary duty claim is not dependent upon any alleged

misrepresentation or omission. The same is true of the aiding and abetting claim. That claim

stands or falls solely on allegations that the MassMutual and Oppenheimer Defendants knew of

the underlying breaching conduct and assisted the Tremont Defendants in breaching their duties.

16

The MassMutual Defendants' conduct in aiding and abetting those breaches certainly was wrongful, but nowhere do Class Plaintiffs allege that it was fraudulent. Fraudulent conduct simply is not an element of this claim and no such conduct has been alleged in support of this cause of action. SLUSA does not preempt this claim.

### 3. Unjust Enrichment Claim

In Count III, Class Plaintiffs assert an unjust enrichment claim. Id. ¶¶ 460-70. There, the defendants are alleged to have been unjustly enriched by the astronomical fees Class Plaintiffs paid for vetting and monitoring services that either were not performed or were performed recklessly. Allegations of misrepresentations or omissions are wholly irrelevant to an unjust enrichment claim, and certainly none are made in connection with Count III. SLUSA does not preempt this claim. See Xpedior, 341 F. Supp. 2d at 269 (unjust enrichment claim not preempted under SLUSA).

### 4. Breach of Contract Claim

Finally, in Count IV, the Tremont Defendants are alleged to have breached their contractual obligations to adequately vet and monitor Madoff's operations. See Complaint, ¶¶ 471-80. Again, this claim is entirely free and clear of any allegations of misrepresentations or omissions. Here, as in Norman, the gravamen of the claim is "a straightforward breach [of contract] claim" in which Class Plaintiffs allege that they paid for certain services pursuant to a contract but "did not receive the full range of services paid for[.]" Norman, 350 F. Supp. 2d at 387. As Judge Lynch concluded in Norman, this simply is not the stuff of a fraud claim, nor is the claim dependent "on establishing material misrepresentations or omissions[.]" Id.

The breach of contract claim alleges no more than that the Tremont Defendants owed certain duties to Class Plaintiffs and then conducted themselves in a manner contrary to those obligations. There is no allegation that the Tremont Defendants misrepresented or

concealed their intentions regarding those contractual obligations.  As Judge Scheindlin reasoned in finding no SLUSA preemption of a contract claim in <u>Xpedior</u>, the fact that the breaching party "might, in fact, never have intended to perform under the terms of the contract is irrelevant[.]" <u>Xpedior</u>, 341 F. Supp. 2d at 269; <u>see also</u> <u>Webster</u>, 386 F. Supp. 2d at 441-42 (breach of contract claim not preempted under SLUSA); <u>MDCM Holdings</u>, 216 F. Supp. 2d at 258-59 (same).

## 5.     <u>The Defendants Point to No Allegations of Fraud</u>

To see just how flimsy the SLUSA preemption argument is, one need only look at the paragraphs of the Complaint that the MassMutual Defendants contend reflect allegations of misrepresentations or omissions.  <u>See</u> MassMutual Defendants' Brief at 17-18.  Those paragraphs reflect nothing of the kind.

Paragraphs 78, 79 and 84 of the Complaint, for example, merely address certain marketing materials relating to the Rye Funds.  Class Plaintiffs do not allege in those paragraphs (or anywhere else) that the representations made in those materials were false when made, nor do they allege that the marketing documents omitted material information.  All these allegations do is provide background information on the Rye Funds.

Similarly unavailing are paragraphs 241-242 of the Complaint.  Therein, Class Plaintiffs expressly allege reckless conduct, not fraudulent conduct.  Paragraphs 11 and 66 say nothing whatsoever about misrepresentations or omissions.  The same is true of paragraph 71.  It merely sets forth the indisputable fact that word of Madoff's investing track record attracted the attention of a broad array of investors.  Again, this allegation merely contains background information regarding Madoff's operations.  It has nothing to do with express or implied fraud claims asserted against the defendants in this action.

Finally, paragraphs 2, 7 and 419 merely assert facts central to the viability of the breach of fiduciary duty claim -- i.e., that Class Plaintiffs reposed in the Tremont Defendants "a

high degree of confidence and trust and relied on their superior expertise in investment matters." See Complaint, ¶ 435. Reliance on and trust in the fiduciary's expertise is a core element of the breach of fiduciary duty claim. The MassMutual Defendants attempt to recast that allegation of reliance into the reliance element of a fraud claim, but it is Class Plaintiffs -- not the defendants -- who elect to plead which element of what claim for relief.

In the end, the <u>only</u> fraudulent conduct referenced in the Complaint is attributed to Madoff. Class Plaintiffs have <u>not</u> alleged that the defendants in this action were direct participants in Madoff's fraudulent scheme. As Judge Haight has observed, it is the <u>defendant's</u> conduct that is central to the SLUSA preemption analysis. <u>LaSala</u>, 510 F. Supp. 2d at 271. SLUSA's scope was not intended to be so expansive "as to cut off any claim where the plaintiff happens to reference a misrepresentation in the complaint -- regardless of whether it was central to the `misconduct of which respondent complains´ on the part of the defendant in the action." <u>Id.</u> at 272. The defendant's conduct remains a "critical component" of SLUSA's preemption analysis. <u>Id.</u> The claim said to be preempted under SLUSA must sound in fraud and, Judge Haight reasoned, "merely making allegations of fraud somewhere in the complaint" is not enough. <u>Id.</u> at 272-73.

Here, references to Madoff's fraudulent conduct provides the <u>context</u> for the non-fraud claims asserted against these defendants, not the basis for any claim against them sounding in fraud. Those contextual allegations do not taint the non-fraud allegations against these defendants and open those claims to SLUSA preemption. The MassMutual Defendants provided no authority for such a result, and there is none.

## B. Defendants' Misconduct Was Not Carried Out "in Connection with" a "Covered Security"

The SLUSA preemption argument also fails because the MassMutual Defendants cannot demonstrate that the Complaint alleges any deceptive conduct occurring "in connection with the purchase or sale of a covered security." 15 U.S.C. § 77p(b). SLUSA defines "covered securities" to include securities that are listed on a national securities exchange, as well as securities issued by investment companies registered with the SEC. 15 U.S.C. §§ 77r(b)(1), (2); 78bb(f)(5)(E).

The MassMutual Defendants do not dispute that the privately held limited partnership interests in the Rye Funds purchased by Plaintiffs are not covered securities. Instead, they contort the Complaint to argue that what Class Plaintiffs are really alleging here is that the Tremont Defendants' made misrepresentations and omissions not regarding those limited partnership interests, but instead, in connection with the covered securities Madoff may or may not have purchased and sold -- i.e., the basket of 35 to 50 common stocks within the Standard & Poor's 100 Index. See MassMutual Defendants' Brief at 16-17.

Of course, this is _not_ what Class Plaintiffs allege. Under no fair reading of the Complaint can it be said that Class Plaintiffs have alleged that the Tremont Defendants deceived their investors regarding Madoff's criminal activities. Even if they did, the nexus between the securities Class Plaintiffs did purchase (the limited partnership interests) and the non-covered securities Madoff may or may not have purchased and sold (common stocks) is too attenuated to justify SLUSA preemption. The Second Circuit has held that "'misrepresentations or omissions involved in a securities transaction but not pertaining to the securities themselves'" do not form the basis of a Section 10(b) violation because they are not made "in connection with" a purchase

of a security.  See Chemical Bank v. Arthur Andersen & Co., 726 F.2d 930, 943 (2d Cir.), cert. denied, 469 U.S. 884 (1984).

Although the defendants cite to numerous authorities in support of their position, those cases are inapposite because they involved fraudulent conduct relating directly to what indisputably was a covered security.  Here the alleged conduct involved securities falling outside of SLUSA's scope (privately held limited partnership interests) and only tangentially relating to covered securities (the securities Madoff may or may not have purchased and sold).

The defendants rely most heavily on Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71 (2006), for the proposition that SLUSA's "in connection with" requirement is satisfied if misrepresentations or omissions coincide with a scheme to buy or sell securities, even if the fraud alleged coincides with a securities transaction by the plaintiff or someone else. See MassMutual Defendants' Brief at 18.  In Dabit, however, the Court merely held that plaintiffs' state law claims were preempted because defendants' alleged misrepresentations concerned the very securities at the heart of plaintiffs' claims.  See Dabit, 547 U.S. at 88-89. The courts have recognized that the expansive view of the "in connection with" requirements reflected in Dabit is not without limitation.  See Gavin v. AT&T Corp., 464 F.3d 634, 639 (7th Cir. 2006) (Posner, J.) (holding that alleged fraud was not "in connection with" a covered securities transaction for SLUSA purposes, court noted that the nexus must be more than tangential because in a "literal sense . . . the fraud is connected to the Big Bang"), cert. denied, 549 U.S. 1274 (2007).

In a recent case in this District applying Dabit, for example, the court held that where, as here, "the alleged conduct giving rise to the claim is too far removed from a [covered] securities transaction, the `in connection with´ requirement [of SLUSA] is not met."  LaSala v.

UBS, AG, 510 F. Supp. 2d 213, 240 (S.D.N.Y. 2007). LaSala involved shareholder claims that a

bank aided and abetted a company's owners to fraudulently pump up their stock. The bank

knowingly received the ill-gotten gains that were the result of the fraud. Despite the fact that the

stock at issue was a covered security and the company's officers made misrepresentations about

it, the court found that the conduct in which the Bank was implicated was "too far removed from

a securities transaction to be said to have `coincided´ with it" for purposes of SLUSA

preemption. Id. at 243-44. Here, as in LaSala, the wrongful conduct attributed to the defendants

with regard to the Rye Funds is simply too far removed from Madoff's covered securities

transactions to warrant SLUSA preemption.

## POINT V.

## THE MARTIN ACT DOES NOT
## PREEMPT PLAINTIFFS' CLAIMS

        Finally, the MassMutual Defendants argue that New York's Martin Act preempts

the claims asserted against them. See MassMutual Defendants' Brief at 20-22. As discussed in

greater detail at pages 5-13 of Plaintiffs' brief in opposition to the Oppenheimer Defendants'

motion, this contention fails on three fronts. As a threshold matter, the MassMutual Defendants

have made no showing that New York law governs and thus there is no basis for applying the

Martin Act. See Oppenheimer Opposition Brief at 5-7.

        Second, there is no authority compelling the conclusion that in enacting the

Martin Act, the New York Legislature intended to preempt certain common-law claims arising

out of facts that otherwise would provide the New York Attorney General with grounds to

commence an action under that statutory scheme. Id. at 7-9.

        Third, assuming that the Martin Act applies and was intended to preempt certain

common-law claims, it still would not preempt the claims asserted here. The Martin Act

22

prohibits a broad range of fraudulent and deceitful conduct in the advertisement, distribution, exchange, transfer, sale and purchase of securities. See N.Y. Gen. Bus. L. § 352-c. Plaintiffs' claims do not fall within the scope of the Martin Act because those claims do not rest on allegations of fraudulent or deceitful conduct. See Oppenheimer Opposition Brief at 9-13.

Nonetheless, the MassMutual Defendants contend that the claims asserted against them "arise[e] from deceitful practices -- the alleged misrepresentations about and failures to conduct diligence[.]" See MassMutual Defendants' Brief at 21. This grossly mischaracterizes the nature of this action. Indeed, the Court will search the Complaint in vain for any allegation of deceitful conduct or misrepresentations attributed to the MassMutual Defendants or any other defendants.[6]

None of the paragraphs on which the MassMutual Defendants rely supports the notion that this action rests upon allegations of deceitful conduct. Nowhere in paragraph 7, for example, do Class Plaintiffs reference any fraudulent or deceitful misrepresentations of any kind. Moreover, as noted above at pages 12-19 in connection with the SLUSA preemption argument, the reliance referenced in this paragraph relates to the breach of fiduciary duty claim, not any unpled fraud claim.

In paragraphs 449 and 451, wrenched from the Complaint's aiding and abetting claim, Class Plaintiffs allege reckless conduct, not deceitful conduct. Paragraph 466, culled from the unjust enrichment claim, says nothing whatsoever of deceitful conduct. To the contrary, it merely alleges that the Tremont Defendants did not adequately vet or monitor Madoff's operations -- a far cry from deceitful conduct.

---

[6]   This inability to identify any allegation of deceitful conduct is also fatal to the MassMutual Defendants' SLUSA preemption argument, as discussed above at pages 12-19.

Finally, paragraph 456 merely bolsters the allegation that the MassMutual Defendants aided and abetted the Tremont Defendants' in breaching their fiduciary duties. The reality is that fiduciaries who breach their duties are not in the habit of broadcasting their breaching conduct, and their disinclination to not broadcast those breaches certainly does not of itself transform their breaching conduct into fraudulent or deceitful conduct. The same is true of those who aid and abet them. An allegation that an aider and abettor assisted a fiduciary in its efforts to avoid discovery of its breaching conduct is not enough to convert the aiding and abetting claim to a fraud claim.

In short, this is <u>not</u> a fraud case. It is <u>not</u> a case tied to deceitful conduct. Instead, the claims asserted in the Complaint are analogous to the breach of fiduciary duty claim sustained against a Martin Act preemption challenge in <u>Louros v. Kreicas</u>, 367 F. Supp. 2d 572 (S.D.N.Y. 2005). <u>See</u> Oppenheimer Opposition Brief at 11-12. There, Judge Kaplan cautioned against a reflexively over-expansive application of the Martin Act to preclude <u>all</u> claims for breach of fiduciary duty. <u>Louros</u>, 367 F. Supp. 2d at 595-96. On a summary judgment motion, Judge Kaplan declined to dismiss the fiduciary duty claim. He held that plaintiff "simply alleges that [defendant] breached a fiduciary duty owed to [plaintiff] to manage his accounts in a way that comported with his needs and to keep him informed about the market and the trades in his account. This count does not allege deception, deliberate or otherwise." <u>Id.</u> at 596.

The claims asserted in the Complaint are free of any such allegations of deceit and therefore are not preempted by the Martin Act. As much as the MassMutual Defendants would prefer for the Court to equate the claims asserted here with those asserted in the related securities law action, they are two fundamentally different cases. The related securities action before this

Court is by definition one based on deceitful conduct[7]; this case is not, and for that reason the

MassMutual Defendants' Martin Act argument must fail.

## <u>CONCLUSION</u>

For the reasons set forth above, Class Plaintiffs respectfully request that the Court

enter an Order denying in its entirety MassMutual Defendants' motion to dismiss the Complaint.

Dated:  New York, New York
      July 14, 2009

ENTWISTLE & CAPPUCCI LLP


By:    /s/ Andrew J. Entwistle
        ANDREW J. ENTWISTLE

280 Park Avenue
26th Floor West
New York, New York 10017
Telephone:  (212) 894-7200

*Counsel for Plaintiffs Arthur E. Lange*
*Revocable Trust and Arthur C. Lange*

HAGENS BERMAN SOBOL SHAPIRO LLP


By:    /s/ Reed Kathrein
        REED KATHREIN

715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (501) 725-3001
Admitted <u>Pro</u> <u>Hac</u> <u>Vice</u>

*Counsel for Plaintiffs Eastham Capital Appreciation Fund*
*LP, NPV Positive Corp., John Dennis, Daniel Jackson,*
*Laborers Local Pension Plan 17 and Richard Peshkin*

Co-Lead Counsel for Plaintiffs

---

[7]   <u>See, e.g.</u>, Gonnello Declaration, Ex. A at ¶¶ 2, 3, 57-58, 83-115, 199-200, 210-211.

25