UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
IN RE TREMONT SECURITIES LAW, :
STATE LAW AND INSURANCE : Master File No.:
LITIGATION : 08 Civ. 11117 (TPG)
 :
-------------------------------------------------------- x **JURY TRIAL DEMANDED**
This Document Relates to: State Law Actions :
08 Civ. 11183 (TPG) : "ECF Case"
-------------------------------------------------------- X

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
# TO THE RYE FUND NOMINAL DEFENDANTS' MOTION TO DISMISS

**ENTWISTLE & CAPPUCCI LLP**
280 Park Avenue
26th Floor West
New York, New York 10017
(212) 894-7200

*Counsel for Plaintiffs Arthur E. Lange*
*Revocable Trust and Arthur C. Lange*

**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, California 94710
(510) 725-3000

*Counsel for Plaintiffs Eastham Capital*
*Appreciation Fund LP, NPV Positive Corp.,*
*John Dennis, Daniel Jackson, Laborers*
*Local Pension Plan 17 and Richard Peshkin*

Co-Lead Counsel for Plaintiffs

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT ............................................................................................................................... 1

I. THE DERIVATIVE PLAINTIFFS HAVE STANDING TO ASSERT DERIVATIVE CLAIMS ON BEHALF OF THE NOMINAL DEFENDANTS ........................... 1

A. Double Derivative Standing Is Proper In The Partnership Context Just As It Is In The Corporate Context ............................................................................................................. 1

B. Plaintiffs Have Adequately Pled Demand Futility ............................................................. 3

II. THE NOMINAL DEFENDANTS' RELIANCE ON MOTIONS TO DISMISS FILED BY OTHER DEFENDANTS SHOULD FAIL FOR THE SAME REASONS SET FORTH IN PLAINTIFFS' OPPOSITIONS TO THOSE MOTIONS ............................................ 9

CONCLUSION ............................................................................................................................ 9

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Goldstein v. Groesbeck*, 142 F.2d 422 (2nd Cir. 1944) ..................................................................1

## STATE CASES

*Bakerman v. Sidney Frank Importing Co.*,
    2006 Del. Ch. LEXIS 180 (Del. Ch. 2006)..........................................................................6, 7

*In re Cencom Cable Income Partners, L.P. Litigation*,
    2000 Del. Ch. LEXIS 10 (Del. Ch. 2000)............................................................................3, 4

*In Re: E-Bay, Inc. S'holders Litigation*,
    2004 Del. Ch. LEXIS 4 (2004) ................................................................................................5

*Forsythe v. ESC Fund Management Co. (U.S.)*,
    2007 Del. Ch. LEXIS 140 (Del. Ch. 2007)................................................................3, 4, 6, 7

*J. Simpson Dean, Jr. v. Robert Dick III*,
    999 Del. Ch. LEXIS 121 (Del. Ch. 1999)............................................................................2, 4

*Rales v. Blasband*,
    634 A.2d 927 (Del. 1993) ....................................................................................................2, 4

*Seaford Funding Ltd. Ptnr. v. M & M Associates II, L.P.*,
    72 A.2d 66 (Del. Ch. 1995)......................................................................................................2

*Sol A. Dann v. Chrysler Corp.*,
    40 Del. Ch. 103 (Del. Ch. 1961) ..........................................................................................4, 5

*Weiss v. Swanson, Jr.*,
    948 A.2d 433 (Del. Ch. 2008) ..........................................................................................3, 5, 8

## STATE STATUTES

Del. Code Ann. Tit. 6, §17-1001 ......................................................................................................3

Del. Code Ann. Tit. 6, §17-1003 ..................................................................................................2, 3

**PRELIMINARY STATEMENT**

Plaintiffs Richard Peshkin, John Dennis, Daniel Jackson and Laborers Local Pension Plan 17 (collectively, "Derivative Plaintiffs") respectfully submit this memorandum of law in opposition to the Nominal Defendant Rye Funds' motion to dismiss the First Consolidated and Amended Class Action and Verified Derivative Complaint ("Complaint").[1]

**ARGUMENT**

**I. THE DERIVATIVE PLAINTIFFS HAVE STANDING TO ASSERT DERIVATIVE CLAIMS ON BEHALF OF THE NOMINAL DEFENDANTS**

**A. Double Derivative Standing Is Proper In The Partnership Context Just As It Is In The Corporate Context**

Defendants question whether double derivative standing exists in the partnership context as it does in the corporate context. Yet, there is no logical reason why double derivative standing would not apply in the partnership context. Long ago, the Second Circuit explained double derivative standing in general terms:

> Initially, we think it clear that a stockholder can maintain a double derivative action in the federal courts. . . . A shareholder's suit in essence is nothing more than a suit by a beneficiary of a fiduciary to enforce a right running to the fiduciary as such; <u>a double derivative suit is one in which the beneficiary is in his turn a fiduciary, and as such refuses to enforce the right which is his as beneficiary of the first fiduciary.</u>

Goldstein v. Groesbeck, 142 F.2d 422, 425 (2nd Cir. 1944) (emphasis added).

In this case, the general partner ("Tremont Partners") of the Rye Funds is a fiduciary to the limited partners. Since Defendant Tremont Partners is unable adequately to

---

[1] Capitalized terms used herein shall have the same meanings attributed to them in the Complaint.

1

enforce the rights of the Rye Funds,[2] the limited partners—including feeder funds (or sub-feeder funds)—would have simple derivative standing to enforce these rights. The general partners and operations managers (SSP, FPM, and Austin) of the feeder funds are fiduciaries to their own limited partners and members. Since these fiduciaries are unable adequately to enforce the rights of their respective feeder funds,[3] the limited partners or members of the feeder funds must have double derivative standing to enforce these rights.

    Delaware courts recognize derivative standing in the partnership context. See J. Simpson Dean, Jr. v. Robert Dick III, 1999 Del. Ch. LEXIS 121, *7 (Del. Ch. 1999) ("[C]orporate case law concerning demand futility is applicable in the limited partner setting"); see also Seaford Funding Ltd. Ptnr. v. M & M Assocs. II, L.P., 672 A.2d 66, 70 (Del. Ch. 1995) ("The statutory test for derivative actions in the partnership context is nearly identical to corporation case law"); Del. Code Ann. Tit. 6, § 17-1003. Likewise, Delaware courts broadly recognize double derivative standing. See Rales v. Blasband, 634 A.2d 927, 930 (Del. 1993). It makes little difference whether or not courts elect to use the same terminology in the corporate setting—e.g., a "double derivative suit"—as in the partnership setting. On the other hand, it would offend all notions of common sense and fairness for courts, applying Delaware law, to bar double derivative standing in the partnership setting.[4]

---

[2] See Complaint, ¶¶ 2, 4, 6, 7, 11, 33, 48-50, 53, 78, 82, 85, 89-95, 97, 236-237, 241-322, 422-428, 431-432, 502-506, 514-518, 536-542.

[3] See Complaint, ¶¶44-46, 55-56, 390-416, 422-428, 431-432, 497-500, 507-512.

[4] To the extent Count V-Count XIII in the Complaint refer to the off-shore Rye Funds (e.g., the Rye Select Broad Market Portfolio Limited Fund), Derivative Plaintiffs disclaim any derivative claims with respect to the off-shore funds. Only class claims are asserted with respect to the off-shore Rye Funds.

2

B.      **Plaintiffs Have Adequately Pled Demand Futility.**

Under Delaware law, a limited partner may bring an action to recover a judgment in favor of the partnership if general partners have refused to do so "or if an effort to cause those general partners to bring the action is not likely to succeed." Del. Code Ann. Tit. 6, §17-1001. The complaint should set forth with particularity the effort, if any, of the plaintiff to secure initiation of the action by a general partner or the reasons for not making the effort. Del. Code Ann. Tit. 6, §17-1003. This demand requirement is actually irrelevant where, as here, the ongoing enterprise effectively ends. In re Cencom Cable Income Partners, L.P. Litig., 2000 Del. Ch. LEXIS 10, *18 (Del. Ch. 2000); see, generally, Plaintiffs' Brief in Opposition to Tremont Defendants' Motion to Dismiss.

If the demand requirement were relevant here, Courts would apply a two-part test under Delaware law to determine whether demand is excused. The first step would be to determine whether, under the particular facts alleged, a reasonable doubt is created as to whether the general partner is disinterested and independent. The second step would be to determine whether the pleading creates a reasonable doubt that the challenged transaction was otherwise the product of a valid exercise of business judgment. See Forsythe v. ESC Fund Mgmt. Co. (U.S.), 2007 Del. Ch. LEXIS 140 (Del. Ch. 2007).[5] Demand is excused where the plaintiffs plead allegations supporting reasonable doubt as to either prong of the demand test. See Weiss v. Swanson, Jr., 948 A.2d 433, 441(Del. Ch. 2008).

While the mere threat of personal liability may be insufficient to excuse demand, demand *is* excused where a general partner is 100% owned by one party and the general partner

---

[5] Where the complaint challenges a general partner's failure to exercise business judgment, the court determines whether or not the particular allegations create a reasonable doubt that the general partner could properly exercise its independent and disinterested business judgment in responding to a demand. See id. at *18.

3

would be suing that party. See Dean, 1999 Del. Ch. Lexis at *8. In addition, demand is excused where the factual allegations show a substantial likelihood that the general partner faces potential liability, or where a decision by the general partner to bring suit could have potentially significant financial consequences for the general partner. See Forsythe, 2007 Del. Ch. LEXIS at *19; see also In re Cencom, 2000 Del. Ch. LEXIS at *18 ("[A]s the general partner obviously opposes all of the claims in this litigation, it is difficult for any reasonable person to expect that demand could be made with any hope of success"); see also Rales, 634 A.2d at 936 (Board members have a disqualifying financial interest where a suit against them could have potentially significant financial consequences); Sol A. Dann v. Chrysler Corp., 40 Del. Ch. 103, 108 (Del. Ch. 1961) (It is not normally to be expected that those charged with gross negligence would be amenable to a request that they take action against themselves). In such cases, reasonable doubts obviously exist as to whether the general partners are disinterested and independent. See Rales, 634 A.2d at 930.

Here, the general partner of the Rye Funds, Defendant Tremont Partners, is 100% owned by Defendant Tremont Holdings, Inc. In responding to a demand to bring this suit, Tremont Partners would need to sue itself and its parent company (among other affiliated entities). Moreover, the factual allegations in the Consolidated Amended Complaint, taken as true at this stage, establish a substantial likelihood that Tremont Partners faces serious potential liability.[6] There can be no genuine dispute that this suit will have significant financial

---

[6] See, e.g., Complaint, ¶ 2, ¶ 4 (The Tremont Defendants pocketed hundreds of millions of dollars in management fees as compensation for serving as investment fiduciaries, but they blindly channeled virtually all of their clients capital into Madoff's Ponzi scheme. The Tremont Defendants abdicated any notion of fiduciary responsibility to their clients and funneled billions of dollars into a scam they should have detected had they made even a modestly diligent effort to do so); ¶ 6 (The Tremont Defendants failed to investigate Madoff or monitor what he was doing with their clients' assets. The Tremont Defendants did absolutely nothing to shield limited

4

consequences for Tremont Partners, which openly opposes the claims in this litigation. Under the circumstances, there surely is reason to doubt that Tremont Partners is disinterested and independent. Demand upon Defendant Tremont Partners could not have been accomplished with any real hope of success. Simply put, this is a clear case of demand futility.

Demand is also excused where the general partner is alleged to have profited— passively or otherwise—as a result of unlawful or challenged acts. When the general partner materially profits from challenged transactions, a reasonable doubt exists as to whether that general partner would be disinterested and independent in deciding whether to bring suit. See Weiss, 948 A.2d at 448 (demand excused where allegations support an inference that granting options was a breach of fiduciary duty and where Board members received at least some of the challenged option grants); see also In Re: E-Bay, Inc. S'holders Litig., 2004 Del. Ch. LEXIS 4, *6 (2004) (finding demand futility where directors had received large financial benefits via the challenged IPO allocations—such directors "are clearly interested"); Chrysler Corp., 40 Del. Ch. at 108 (allegations that defendant received profits that came from an unlawful scheme were sufficient to excuse demand). Standing alone, the receipt of millions of dollars from challenged transactions would clearly be significant enough to raise a reasonable doubt that board members (or general partners) could perform their fiduciary duties independently and without being

---

partners from Madoff's criminal enterprise); ¶ 53 (The Rye Funds were dedicated Madoff feeder fund through which plaintiffs' investments were funneled to Madoff); ¶ 236 (The capital entrusted to the Tremont Defendants through the domestic Rye Funds, reportedly in excess of $3 billion, was wiped out) ¶¶ 241-322 (detailed allegations of how the Tremont Defendants recklessly overlooked or ignored the red flag warnings regarding Madoff's fraudulent scheme), ¶¶ 504-505 (The Tremont Defendants failed to perform proper due diligence, failed to select between investment opportunities, and failed to oversee the Rye Funds), ¶¶ 538-540 (The Tremont Defendants knew they received substantial investment management fees that were taken from their clients for services that were not duly performed, and they continue to retain these monies despite devastating financial losses incurred by their clients).

influenced by their overriding personal interests. See Bakerman v. Sidney Frank Importing Co., 2006 Del. Ch. Lexis 180, *22 (Del. Ch. 2006).

The detailed allegations in the Complaint support inferences that: (i) the Tremont Defendants breached their fiduciary and professional duties to the limited partners of the Rye Funds through mismanagement and failure to oversee the capital entrusted to them; *and* (ii) these Defendants claimed and received huge management fees from the limited partners as a result of investing all of the Rye Fund capital in the Madoff Ponzi scheme.[7] These allegations raise serious doubts—and certainly more than a reasonable doubt—as to whether the general partner (Tremont Partners) could bring this action independently and without being influenced by its overriding self-interests. Demand, therefore, is excused.

The Forsythe case provides a recent example in which demand on a general partner was excused. 2007 Del. Ch. Lexis 140. In that case, the complaint alleged that the general partner failed to scrutinize the investment decisions of those to whom it delegated such decision making authority. The complaint further alleged that the general partner failed to examine materials in support of the investment decisions, and failed to implement policies to manage potential conflicts. The complaint also alleged that the general partner abdicated its fiduciary duties in order to garner more business from a client, and that the fund in question lost most of its value shortly after inception. See id. at **10-11. The court observed that the precipitous decline in value, considered with the rest of the plaintiffs' allegations, supported an inference of mismanagement:

> The General Partner was required to make at least some effort to oversee the Fund in order to properly discharge its duties. The facts alleged in the complaint are sufficient to support an inference that the General Partner exercised no oversight, and create a substantial

---

[7] See Complaint, ¶¶ 2, 4, 502-506, 514-518, 536-542.

6

> likelihood of the General Partner's liability for gross negligence in discharging its oversight duty, or material breach of the Partnership Agreement. For these reasons, demand will be excused.

Id. at **29-30.[8]

In the State Law Actions at hand, the allegations in the Complaint are at least as particularized as those in the Forsythe complaint. By way of example only, the Complaint includes the following factual allegations relevant to the general partner's breaches of fiduciary duty and professional negligence: (i) the Tremont Defendants made grossly inadequate efforts to vet, monitor, verify, and oversee Madoff's investment activities, despite receiving hundreds of millions of dollars in compensation to do so; (ii) the Tremont Defendants had a motive to abdicate their oversight duties, namely, collecting huge fees from inflated returns and protecting their lucrative relationship with Madoff; (iii) the Tremont Defendants ignored numerous red flags with respect to Madoff's investment activities; consequently, as of December 11, 2008, (iv) virtually all of the Rye Fund capital had been lost in Madoff's Ponzi scheme.[9] These allegations are more than sufficient to support an inference of mismanagement and lack of oversight by the general partner of the Rye Funds (Tremont Partners). Thus, demand on the general partner is excused.

The same inevitably holds true as to the sub-feeder fund Nominal Defendants Spectrum and FutureSelect Prime. SSP is the general partner and fund investment manager of the Spectrum Fund. SSP was responsible for managing and supervising Spectrum's investments, and exercised its exclusive control by funneling substantially all of the Spectrum Fund's capital

---

[8] The court explained that the duty of oversight should be understood as imposing on the general partner an active obligation, at a minimum, to take steps to satisfy itself that the delegatees were performing in a manner loyal to the partnership. See id. at **24-25.

[9] See Complaint, ¶¶ 2, 4, 6, 7, 11, 33, 48-50, 53, 78, 82, 85, 89-95, 97, 236-237, 241-322, 422-428, 431-432, 502-506, 514-518, 536-542.

7

into the Rye Funds. The Complaint further alleges that SSP: (a) substantially profited from investing in the Madoff scheme at the expense of Spectrum's limited partners (indeed, SSP's fees were based upon the value of capital accounts, plus appreciation); (b) failed to perform due diligence or to safeguard plaintiffs' investments in the Spectrum Fund from excessive risks of loss; (c) lost all of the Spectrum fund's capital, and (d) caused injuries to the limited partners as a result of its own gross negligence.[10] These facts (as alleged more fully in the Complaint) create a reasonable doubt that Defendant SSP is disinterested and independent. Accordingly, demand is excused.[11]

Defendant FPM was the operating manager for the FutureSelect Prime Fund, and FPM alone was responsible for managing the Fund. FPM channeled all of the FutureSelect Prime Fund's capital into the Rye Funds. Doing so enabled FPM to claim and collect annual management fees of at least 1.5% of the Fund's net assets. The Complaint alleges that FPM made grossly inadequate efforts to investigate and/or monitor the use of the FutureSelect Prime Fund's capital, and that as a result, FPM lost all of the Fund's capital.[12] Again, the allegations in the Complaint create at least a reasonable doubt as to whether FPM is disinterested and independent. Therefore, under Delaware law, demand on FPM is excused.[13]

---

[10] See Complaint, ¶¶ 411-416, 422, 425, 426, 431-432, 498-500, 508-512.

[11] Even now, the Spectrum Manager purports to bring an action against the Tremont Defendants without asserting claims against itself. This alone raises a reasonable doubt as to whether the Spectrum Manager is disinterested and independent. See Weiss, 948 A. 2d at 448 (directors did not appear to be disinterested where their own investigation found no evidence of any misconduct by the Board, despite contrary inferences arising from the complaint).

[12] See Complaint, ¶¶ 391-395, 423, 425, 427, 431-432, 498-500, 508-512.

[13] The facts that Defendant FPM is controlled by Defendant Ward, and that Ward evaded service of process for months, further demonstrate that FPM is neither disinterested nor independent for purposes of this litigation. The Austin Defendants have answered the Complaint; they have not filed a motion to dismiss the Complaint and have not alleged that demand was futile here.

8

## II. THE NOMINAL DEFENDANTS' RELIANCE ON MOTIONS TO DISMISS FILED BY OTHER DEFENDANTS SHOULD FAIL FOR THE SAME REASONS SET FORTH IN PLAINTIFFS' OPPOSITIONS TO THOSE MOTIONS

The Nominal Defendant Rye Funds purportedly seek dismissal of the Complaint "for the reasons articulated by the Tremont Defendants" in the memorandum submitted in support of their motion to dismiss, filed with the Court on May 20, 2009. The Nominal Defendants' request for dismissal fails for the reasons set forth in Plaintiffs' briefs submitted in Opposition to: (i) the Tremont Defendants' Motion to Dismiss, (ii) Defendants Oppenheimer Acquisition Corp. and OppenheimerFunds, Inc.'s Motion to Dismiss, and (iii) Defendants Massachusetts Mutual Life Insurance Company and Massachusetts Holding LLC's Motion to Dismiss. These three Opposition briefs have been filed concurrently with this Opposition brief.

## CONCLUSION

For the foregoing reasons, Derivative Plaintiffs respectfully request that the Court enter an Order denying in its entirety the Rye Fund Nominal Defendants' motion to dismiss the Complaint. In the event that the Nominal Defendants' motion to dismiss the Complaint is granted in whole or in part, or in the event that any of the underlying motions to dismiss the Complaint are granted in whole or in part, Plaintiffs request leave of court to amend the Complaint to cure any defects.

Dated: New York, New York
       July 14, 2009

                      ENTWISTLE & CAPPUCCI LLP

                      By: _____/s/ Andrew J. Entwistle_____
                            ANDREW J. ENTWISTLE

280 Park Avenue
26th Floor West
New York, New York 10017
Telephone: (212) 894-7200

*Counsel for Plaintiffs Arthur E. Lange*
*Revocable Trust and Arthur C. Lange*

HAGENS BERMAN SOBOL SHAPIRO LLP


By: \_\_\_\_/s/ Reed Kathrein_____
     REED KATHREIN

715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (501) 725-3001
Admitted Pro Hac Vice

*Counsel for Plaintiffs Eastham Capital Appreciation Fund*
*LP, NPV Positive Corp., John Dennis, Daniel Jackson,*
*Laborers Local Pension Plan 17 and Richard Peshkin*

Co-Lead Counsel for Plaintiffs