**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ———————————————— x | | |
| IN RE TREMONT SECURITIES LAW, | : | Master File No. 08-Civ-11117 (TPG) |
| STATE LAW AND INSURANCE | : | |
| LITIGATION | : | |
| ———————————————— | : | |
| | : | <u>CLASS ACTION</u> |
| This Document Relates To: | : | |
| | : | |
| INSURANCE ACTION, 09-Civ-557 | : | |
| ———————————————— x | | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**CERTIFICATION OF THE SETTLEMENT CLASS AND**
<u>**FINAL APPROVAL OF PARTIAL SETTLEMENT**</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii

I.      INTRODUCTION ............................................................................................................ 1

II.     RELEVANT BACKGROUND ......................................................................................... 6

III.    ARGUMENT .................................................................................................................. 11

        A.      The Court Should Make Final Its Determination That The Action Is
                Certified As A Class Action Pursuant To Rule 23 ............................................. 11

                1.      The Standards of Rule 23(a) are Met ...................................................... 12

                2.      Rule 23(b)(3) is Satisfied ........................................................................ 14

        B.      The Proposed Settlement is Fair, Reasonable and Adequate ............................... 15

                1.      Standards for Approval of a Class Action Settlement ............................. 15

                2.      Consideration Of The Relevant *Grinnell* Factors Weighs
                        In Favor Of The Settlement ..................................................................... 16

                        a)      The Complexity, Expense and Likely Duration of
                                the Litigation Would Be Considerable If the Action
                                Continued ...................................................................................... 16

                        b)      Adequate Notice and Reaction of the Class................................. 17

                        c)      Stage of Proceedings................................................................... 18

                        d)      The Risks of Establishing Jurisdiction, Liability and
                                Damages Are Substantial.............................................................. 19

                                (1)     Difficulty in Establishing Jurisdiction ............................ 19

                                (2)     Difficulty in Establishing Liability .................................. 19

                                (3)     The Risks of Establishing Damages ................................. 20

                        e)      The Ability of the Argus Defendants to Withstand a
                                Greater Judgment ........................................................................ 21

f)     The Settlement is Within the Range Of Reasonableness
Both in Light the Best Possible Recovery and in Light
of All Risks ................................................................................. 22

g)     The Settlement Resulted From Arm's-Length Negotiations ........ 24

IV.     CONCLUSION ............................................................................................. 24

# TABLE OF AUTHORITIES

**CASES**                                                                                                    **Page(s)**

In "Agent Orange" Product Liability Litigation,
    611 F. Supp. 1396 (E.D.N.Y. 1985) ..............................................................................24

Amchem Products, Inc. v. Windsor,
    521 U.S. 591 (1997)..................................................................................................14

In re American Bank Note Holographics, Inc., Securities Litigation,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)......................................................................21

In re Ashanti Goldfields Securities Litigation,
    No. CV 00-0717 (DGT), 2004 U.S. Dist. LEXIS 5165 (E.D.N.Y. Mar. 30, 2004) .......13

In re Auction Houses Antitrust Litigation,
    193 F.R.D. 162 (S.D.N.Y. 2000) ...............................................................................13

Bresson v. Thomson McKinnon Securities, Inc.,
    118 F.R.D. 339 (S.D.N.Y. 1988) ...............................................................................13

In re Chase Manhattan Corp. Securities Litigation,
    No. 90 Civ. 6092 (LJF), 1992 WL 110743 (S.D.N.Y. May 13, 1992)..........................13

City of Detroit v. Grinnell Corp.,
    495 F.2d 448 (2d Cir. 1974)................................................................................16, 17

In re Drexel Burnham Lambert Group, Inc.,
    960 F.2d 285 (2d Cir. 1992).......................................................................................14

Dura-Bitt Corp. v. Chase Manhattan Corp.,
    89 F.R.D. 87, 93 (S.D.N.Y. 1981) .............................................................................14

Elliot Associates L.P. v. Hayes,
    141 F. Supp. 2d 344 (S.D.N.Y. 2000)........................................................................20

Eisen v. Carlisle & Jacqueline,
    417 U.S. 156 (1974)..................................................................................................10

In re EVCI Career Colleges Holding Corp. Securities Litigation,
    05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................................15

First State Orthopaedics v. Concentra, Inc.,
    534 F. Supp. 500 (E.D. Pa. 2007) .............................................................................23

*Ganino v. Citizens Utilities Co.*,
    228 F.3d 154 (2d Cir. 2000)........................................................................19

*In re Gulf/Oil Cities Service Tender Offer Litigation*,
    142 F.R.D. 588 (S.D.N.Y. 1992) ...............................................................19

*In re IKON Office Solutions, Inc. Securities Litigation*,
    209 F.R.D. 94 (E.D. Pa. 2002)...................................................................23

*In re Independent Energy Holdings PLC Securities Litigation*,
    210 F.R.D. 476 (S.D.N.Y. 2002) ...............................................................14

*In re Initial Public Offering Securities Litigation*,
    226 F.R.D. 186 (S.D.N.Y. 2005) ..........................................................22, 23

*Lewis v. Newman*,
    59 F.R.D. 525 (S.D.N.Y. 1973) .................................................................16

*Maywalt v. Parker & Parsley Petroleum Co.*,
    67 F.3d 1072 (2d Cir. 1995).......................................................................15

*In re NASDAQ Market-Makers Antitrust Litigation*,
    172 F.R.D. 119 (S.D.N.Y. 1997) ...............................................................13

*In re NASDAQ Market-Makers Antitrust Litigation*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ...............................................................17

*Newby v. Enron Corp.*,
    394 F.3d 296 (5th Cir. 2004) .....................................................................19

*Olden v. LaFarge Corp.*,
    472 F. Supp. 2d 922 (E.D. Mich. 2007).....................................................17

*In re PaineWebber Ltd. Partnerships Litigation*,
    171 F.R.D. 104 (S.D.N.Y. 1997),
    *affirmed*, 117 F.3d 721 (2d Cir. 1997)..................................................21, 22

*In re Revco Securities Litigation*,
    142 F.R.D. 659 (N.D. Ohio 1992) ..............................................................12

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)........................................................................12

*Slomovics v. All For A Dollar, Inc.,*
   906 F. Supp. 146 (E.D.N.Y. 1995) ..............................................................17

*Struogo v. Bassini,*
   258 F. Supp. 2d 254 (S.D.N.Y. 2003)..........................................................17

*In re Sumitomo Copper Litigation,*
   189 F.R.D. 274 (S.D.N.Y. 1999) ..................................................................24

*Trief v. Dun & Bradstreet Corp.,*
   840 F. Supp. 277 (S.D.N.Y. 1993)...............................................................15

*In re Union Carbide Corp. Consumer Products Business Securities Litigation,*
   718 F. Supp. 1099 (S.D.N.Y. 1989)..............................................................22

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
   396 F.3d 96 (2d Cir. 2005)................................................................15, 16, 24

*In re Warner Communications Securities Litigation,*
   618 F. Supp. 735 (S.D.N.Y 1985)
   *affirmed,* 798 2d. 35 (2d Cir. 1986) ........................................................16, 19

*Weinberger v. Kendrick,*
   698 F.2d 61 (2d Cir. 1982)...........................................................................15

## STATUTES & RULES

Federal Rules of Civil Procedure 23 ........................................................ *passim*

## OTHER AUTHORITIES

1 Newberg on Class Actions § 3.05 (2d ed. 1985) ....................................12, 14
4 Newberg on Class Actions § 11.41 (4th ed. 2002) .......................................24

Plaintiffs Chateau Fiduciaire S.A., as Trustee of The Map Trust, The Geoffrey Rabie Credit Shelter Trust, The Joanne Brenda Rabie Credit Shelter Trust, The Harriet Rutter Klein Revocable Trust, and the Matthew L. Klein Irrevocable Family Trust (collectively, "Plaintiffs") respectfully submit this Memorandum of Law in Support of Their Motion for Certification of the Settlement Class and Final Approval of Partial Settlement (the "Motion").

## I.   INTRODUCTION

Plaintiffs in this consolidated action (the "Action") have reached a partial settlement (the "Settlement") with defendants Argus Group Holdings Limited ("Argus Group"), a company registered and located in Bermuda; Argus International Life Bermuda Limited ("Argus International"), a company incorporated and located in Bermuda; and Tremont International Insurance Limited ("TIIL"[1] and, collectively with Argus Group and Argus International, the "Argus Defendants").[2]   The terms of the Settlement[3] are set forth in the Stipulation of Partial

---

[1] The Argus Defendants and an affiliated entity, Bermuda Life Insurance Company Limited ("Bermuda Life"), purchased TIIL from Tremont Group Holdings, Inc. and Tremont (Bermuda) Limited, in December 2006. *See* Declaration of Demet Basar in Support of: (1) Plaintiffs' Motion for Certification of the Settlement Class, and Final Approval of Partial Settlement; and (2) Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses ("Basar Dec."), ¶¶ 47, 66.

[2] The Action will continue against the other named defendant who are not part of this Settlement: Tremont Group Holdings, Inc.; Tremont Capital Management Inc.; Tremont (Bermuda) Ltd.; Tremont Partners, Inc.; Rye Investment Management, Inc.; Rye Select Broad Market Fund L.P.; Rye Select Broad Market Insurance Portfolio, LDC; Sandra L. Manzke; Robert Schulman; Oppenheimer Acquisition Corporation; MassMutual Holding LLC; Massachusetts Mutual Life Insurance Co.; Ernst & Young; and KPMG (collectively, the "Non-Settling Defendants"). Basar Dec., ¶ 3.

[3] The Settlement also includes the "Individual Settling Parties" who are entitled to the same benefits as Plaintiffs under the Settlement.   The "Individual Settling Parties," represented by Berger & Montague, P.C., are a group of 29 trusts that hold 32 Policies, and are identified by policy number in Exhibit C to the Stipulation. Basar Dec., ¶ 20.

Settlement dated July 21, 2009 (the "Stipulation"),[4] and the First Amendment to the Stipulation of Partial Settlement dated September 29, 2009 ("Amendment").[5]

This Settlement, which was the culmination of over nearly five months of arduous negotiations,[6] is the first settlement in the *In re Tremont Securities Law, State Law and Insurance Litigation* that seeks to redress the harm caused by the exposure of plaintiffs' funds to Bernard L. Madoff's Ponzi scheme. The "Settlement Class" in this Action consists of all persons and entities that purchased and/or held variable universal life ("VUL") insurance or deferred variable annuity ("DVA") policies (the "Policies") issued by TIIL or Argus International from May 10, 1994 through December 11, 2008 (the "Class Period"). Basar Dec., ¶ 4.[7] All of the Policies had investment accounts which, via TIIL or Argus International, were invested in certain Rye Select Funds,[8] and lost all or some of their value on December 11, 2008, when Madoff, who

---

[4] A copy of the Stipulation is attached as Exhibit 1 to the Basar Declaration. *See* Basar Dec., ¶ 1.

[5] The Amendment supplements and amends certain provisions in the Stipulation relating to the bar order in the proposed Final Approval Order and Judgment. Basar Dec., ¶ 24 (attached as Exhibit 2). Because the Amendment does not otherwise affect the terms of the Settlement, further references to the "Settlement" and "Stipulation" are deemed to include the Amendment.

[6] Moreover, the negotiations over many aspects of the Settlement, including the drafting of numerous documents necessary for the implementation of the Settlement, continued for months after the Stipulation was executed on July 21, 2009 (the "Execution Date"). Basar Dec., ¶ 8.

[7] The Settlement Class members are identified by policy number in Exhibit B to the Stipulation. Basar Dec., ¶ 4. Excluded from the Settlement Class are: the Individual Settling Parties and the Argus Defendants, and any entity in which the Argus Defendants have a controlling interest, and the officers, directors, affiliates, legal representatives, heirs, successors, subsidiaries, and/or assigns of any such individual or entity. Also excluded from the Settlement Class are any putative Settlement Class members who have requested exclusion from the Settlement Class (*see* discussion *infra*).

[8] The "Rye Select Funds" are the Rye Select Broad Market Insurance Portfolio LDC and Rye Select Broad Market XL Portfolio Ltd., any of their predecessors, and any other fund managed or sub-managed by Tremont Capital Management, Tremont (Bermuda) Ltd. or Rye Investment Management, in which the investment accounts of the Policies were indirectly invested. Stip., ¶ 1.25. The investment accounts of some of the Policies were invested in the SHL Multi Strategy Insurance Dedicated Fund ("SHL Fund"). *Id.,* ¶ 1.27.

was the ultimate manager of the assets of the Rye Select Funds, admitted that he was running a massive Ponzi scheme. Without the income from the investment accounts, which was used to pay premiums and other costs under the Policies, a number of VUL Policies were threatened with lapsing, thereby putting at risk the often sizable death benefits available under the Policies. Other VUL Policies now required monthly premium payments to keep the Policies from lapsing. Premiums under the VUL Policies are substantially higher than most other life insurance products. The DVA policyholders whose investment accounts were exposed to Madoff also suffered damages. *Id.*, ¶ 5.

This Settlement is specifically tailored to address the immediate risk to Settlement Class members who were in danger of losing their VUL Policies and associated death benefits and provides economic benefits to VUL Policyholders. Moreover, the Settlement gives the Settlement Class members an additional benefit by virtue of Argus International's assignment of certain claims to the Settlement Class and the Individual Settling Parties, and its agreement to provide cooperation that Plaintiffs believe will enable them to more effectively prosecute claims against the Non-Settling Defendants (and other potential wrongdoers) in order to maximize recovery for the damages suffered by the Settlement Class.[9]

**First,** under the terms of the Settlement, the Argus Defendants have agreed to provide the injunctive relief sought by Plaintiffs in their initial complaints and the Consolidated Amended Class Action Complaint (the "Complaint"), dated April 20, 2009, by not terminating the VUL Policies that were at risk of lapsing. Argus International extended the grace period on such

---

[9] Since the Settlement includes, *inter alia*, an assignment of claims and cooperation by Argus International, Plaintiffs intend to file an amended complaint that includes the assigned claims and additional information upon final approval of this partial Settlement. Basar Dec., ¶ 19.

Policies and the Argus Defendants advanced all premiums and other costs due under the Policies beginning December 1, 2008. This had the effect of keeping the Policies in force. Basar Dec., ¶¶ 4, 40. To enable Settlement Class members to continue to maintain their Policies in the future, and retain the death benefits for Policy beneficiaries, Argus International has also agreed to provide "Premium Payment Loans" at substantially below market interest rates (2.5%) for a period of up to four years or longer on mutual consent. *Id.*, ¶¶ 36, 42; Stip., ¶ 5.2. Interim Co-Lead Counsel[10] personally contacted all Settlement Class members whose VUL Policies were at risk of lapsing and informed them of the availability of the Premium Payment Loans. Basar Dec., ¶ 41.

Premium Payment Loans are also available for Settlement Class members whose Policies were not threatened with lapsing after Madoff admitted his fraud, but may become threatened with lapsing during the four-year period commencing on the Execution Date of the Settlement. Stip., ¶ 5.5(v). In addition, under the terms of the Settlement, beginning on the Execution Date, Settlement Class members who have sufficient value in their Policies are entitled to take out "Special Policy Loans" on enhanced terms (including the 2.5% interest rate). *Id.*, ¶ 5.5; Basar Dec., ¶ 42.

***Second*,** the Settlement provides economic benefits by relieving Settlement Class members of their obligation to pay premiums and other Policy costs in certain circumstances. For example, Settlement Class members whose VUL Policies were at risk of lapsing and who avail themselves of a Premium Payment Loan do not incur any obligation to pay for any

---

[10] Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") and Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") were appointed "Interim Co-Lead Counsel" by Order of the Court dated March 26, 2009 (the "Consolidation Order"). Basar Dec., ¶ 14.

premiums advanced by the Argus Defendants on behalf of such Policyholders between December 1, 2008 and March 31, 2009.[11] Stip., ¶ 5.2(iii); Basar Dec., ¶ 35. Correspondingly, Policyholders whose VUL Policies are not at risk of lapsing, receive a credit to their accounts for premiums and other costs paid between December 1, 2008 and March 31, 2009. Stip., ¶ 5.6; Basar Dec., ¶ 43. In addition, Policyholders who allow their Policies to lapse on or before fifteen (15) days after the Execution Date are not liable for premiums and other costs accrued under their Polices since December 1, 2008. Stip., ¶ 5.3; Basar Dec., ¶ 39. These are concrete economic benefits to Policyholders regardless of whether they want to maintain their VUL Policies (and death benefits), or want their Policies to lapse.

*Third*, under the Settlement, Argus International has agreed to assign to a "Litigation Trust," created for the benefit of the Settlement Class and the Individual Settling Parties, certain claims only it, as an insurance company, has as a shareholder in the Rye Select Funds formed specifically for insurance companies.[12] The assignment will enable Plaintiffs, who only participated in Argus International's investment, to assert Argus International's direct claims against the other Non-Settling Defendants, which they otherwise would lack standing to assert. Basar Dec., ¶¶ 44-46. The Argus Defendants have also agreed to give Settlement Class members an interest in a claim asserted in an action they commenced in Bermuda against certain Tremont

---

[11] These are referred to as "Option Two" Premium Payment Loans in the Stipulation, Stip., ¶ 5.2. While the Stipulation also provides for an "Option One" Premium Payment Loan, which does not relieve Policyholders from the obligation to pay premiums from December 1, 2008 and March 31, 3009 (*id.*, ¶ 5.1), all Settlement Class members whose VUL Polices were at risk were given the opportunity to take out an Option Two Premium Payment Loan. Basar Dec., ¶ 38.

[12] Commonly, the investment accounts of VUL Policies are invested by insurance companies in funds open only to insurance companies so that any income is deferred until the death of the insured at the termination of the Policy.

entities in connection with their 2006 purchase of TIIL (the "Argus Group Action"). *Id.*, ¶ 47. Any recovery on these claims, after deduction of appropriate fees and costs, will be distributed *pro rata* to the Settlement Class and the Individual Settling Parties based on their investment losses as of November 30, 2008, *i.e.*, the last statement prior to Madoff's arrest. *Id.*, ¶ 48.

*Fourth*, under the Settlement, Argus International has agreed to provide internal documents and information, subject to certain confidentiality restrictions, relating to the assigned and other claims that may be pursued for the benefit of the Litigation Trust, which include documents and information concerning the 2006 acquisition of TIIL. *Id.*, ¶ 52. Plaintiffs believe access to this non-public information will bolster allegations against the Non-Settling Defendants and other potential wrongdoers, and may lead to the discovery of other sources of recovery.

For these and the other benefits of the Settlement discussed below, Plaintiffs and their Interim Co-Lead Counsel believe that the Settlement is fair, reasonable and adequate, and is in the best interests of the Settlement Class. Further attesting to the fairness of the Settlement, the Individual Settling Parties, a group of 29 trusts that hold 32 Policies, have joined the Settlement, and no Settlement Class member has filed an objection to the Settlement. Accordingly, Plaintiffs respectfully submit that the Settlement should be approved by the Court.

## II.    RELEVANT BACKGROUND

Plaintiffs respectfully refer the Court to the concurrently-filed Basar Declaration for a more detailed description of the facts underlying the Action and the Settlement. The facts relevant to this Motion are summarized below:

On April 20, 2009, Plaintiffs filed the Complaint, on behalf of themselves and all persons or entities that purchased and/or held VUL Policies or DVA Policies issued by TIIL or Argus International and managed by Tremont Capital Management or Rye Investment Management

during the Class Period. Basar Dec., ¶ 4. The Complaint alleges claims against the Argus Defendants for violations of common law fraud, breach of fiduciary duty, gross negligence, unjust enrichment, injunctive relief, promissory estoppel and violations of New York General Business Law Section 349 relating to the Policies in connection with their exposure to Madoff and/or Bernard L. Madoff Investment Securities ("BLMIS") and its affiliates. *Id.*, ¶ 15. The Complaint also alleges fraud and other state law claims against the Tremont Defendants, the Individual Defendants, and the Auditor Defendants, as well as unjust enrichment and aiding and abetting claims against the Controlling Defendants. *Id.*, ¶¶ 3 (defining each), 15. The investment accounts of most of the Policies were invested by TIIL or Argus International in Rye or Tremont insurance funds that were managed by one or more of the Tremont Defendants who, in turn, invested fund assets with Madoff. *Id.,* ¶ 5.

Plaintiffs allege that the Argus Defendants wrongfully permitted the Policies' investment accounts to be ultimately invested with Madoff, and that the Policies contained false and misleading statements concerning the Argus Defendants' discretion to deem investments inappropriate. Plaintiffs also allege that the Tremont Defendants failed to conduct adequate due diligence and failed to monitor fund assets that they invested with Madoff, and that the offering materials for the funds contained false and misleading statements. Plaintiffs are continuing the claims against the Non-Settling Defendants. *Id.,* ¶ 16.

Interim Co-Lead Counsel conducted an exhaustive factual investigation into the conduct of the Argus Defendants, as well as extensive legal research and analysis concerning potential claims, prior to filing the Complaint. *Id.,* ¶ 7. After testing Plaintiffs' claims and conducting an in-depth analysis of the likelihood of establishing jurisdiction over the Bermuda-based Argus Defendants, and, even if jurisdiction were established, proving their liability and recovering

damages at trial, Plaintiffs concluded that entering into the Settlement best served the interests of the Settlement Class. *Id.,* ¶ 7.

As explained in further detail in the Basar Declaration, Interim Co-Lead Counsel has worked relentlessly to ensure that the Settlement confers clear and significant benefits to the Settlement Class. *Id.,* ¶ 31. The Settlement is the first of its kind relating to the Madoff Ponzi scheme in these consolidated actions, and puts the Settlement Class in a considerably advantageous position by virtue of its terms, the most significant of which are detailed below:

(i) ***Premium Payment Loans For Settlement Class Members Whose VUL Policies and Death Benefits Are At Risk Of Lapsing.*** The Premium Payment Loans have a fixed interest rate of 2.5% as long as the loan is outstanding, and are available for up to four years from the Execution Date or longer on mutual consent. Policyholders may take out a Premium Payment Loan at any time during the four-year period if their Policy is in effect, and for less than the full premium amount so long as the full premium is paid. The principal of the loans include premiums advanced by the Argus Defendants since April 1, 2009 only, *i.e.*, policyholders have no obligation to pay premiums advanced by Argus until March 31, 2009 to keep the Policies from lapsing. At the end of the term of the loans, Policyholders are required to pay only the interest then due and, so long as the Policy is still in force, the principal of the loan may be paid out of the death benefit or by the borrower. Policyholders whose Policies become at risk of lapsing during the four-year period starting on the Execution Date are also eligible to participate in the Premium Payment Loan. Basar Dec., ¶¶ 34-41;

(ii) ***Relief For Policyholders Who Terminate Or Allow Their Policies To Lapse.*** Policyholders in this category are not liable for any premiums and other costs accrued under their Policies between December 1, 2008 through the Execution Date. *Id.*, ¶ 39;

(iii) ***Special Policy Loans On Enhanced Terms For VUL Policyholders Whose Policies Are Not At Risk Of Lapsing.*** Special Policy Loans, like the Premium Payment Loans, have a fixed interest rate of 2.5% so long as the loans are outstanding, and Policyholders may borrow up to 90% of the cash value of their Policies, which are more favorable terms than those for loans currently available under the Policies. Special Policy Loans are available at any time during the 4-year period beginning on the Execution Date, and the term of the loan can be extended beyond 4 years by mutual consent. *Id.*, ¶¶ 42-43;

(iv) ***Assignment Of Claims By Argus International To The Litigation Trust.*** Argus International has agreed to assign to the Litigation Trust certain "Shareholder Claims" it has as an investor in the Rye Select Funds, against: (i) the Tremont and Controlling Defendants including for fraud, negligent misrepresentation (in offering materials and investment account value statements), breach of fiduciary duty, unjust enrichment and others (Stip., ¶ 6.2(a)(i)); (ii) the Auditor Defendants for, among other claims, fraud based on audit opinions and audited financial statements regarding the Rye Select Funds; and (iii) Bank of New York Mellon for certain claims in connection with its role as the custodian and administrator of the Rye Select Funds. (Argus International has agreed to assign similar claims as a shareholder in the SHL Fund). Argus International has also agreed to assign certain claims it has against Tremont Bermuda Ltd., its investment advisor, in connection with Tremont Bermuda's recommendation that the Rye Select Funds be offered as an investment option to policyholders. Basar Dec., ¶¶ 44-46;

(v) ***An Interest In Suit By Argus International***. In May 2009, the Argus Defendants commenced the Argus Group Action in Bermuda asserting two claims against Tremont Life Holdings, Inc. and Tremont Group Holdings, Inc.: (i) breach of the purchase and sale agreement in the Argus Group's purchase of TIIL in 2006 (the "Purchase Price Recovery Claim"), and (ii) breach of the Tremont entities' representations concerning financial statements relating to investment account values (the "Investment Account Value Claim"). Stip, Ex. I. Any recovery on the Investment Account Value Claim, after deduction of reasonable fees and expenses, is to be shared by members of the Settlement Class and the Individual Settling Parties *pro rata*. *Id.*, ¶¶ 47-49;

(vi) ***The Plaintiffs' Executive Committee's Right To Consult With The Argus Defendants.*** Under the Settlement, the Plaintiffs' Executive Committee, comprised of Interim Co-Lead Counsel and counsel for the Individual Settling Parties, have the right to consult with the Argus Defendants with respect to the Investment Value Claim (subject to certain confidentiality restrictions) (*Id.*, ¶ 49), and in connection with the liquidation and winding up of two Rye Select Funds in the Cayman Islands, which was initiated by the Argus Defendants on January 30, 2009. *Id.*, ¶¶ 50-51; and

(vii) ***Cooperation By The Argus Defendants.*** In the Settlement, Argus International has agreed to reasonably cooperate with the Plaintiffs' Executive Committee to provide documents and other information, including documents with respect to the TIIL acquisition, relating to, among other things, the claims in

this Action, the assigned claims, and the pursuit of claims against third parties relating to the allegations in the Complaint and the Policies. *Id*., ¶ 52.[13]

On October 15 2009, this Court entered the preliminary approval order (the "Preliminary Approval Order"),[14] which, among other things, granted preliminary approval of the Settlement, and directed notice of the Settlement ("Notice") to be provided to all Settlement Class members. *Id.*, ¶ 70. The Notice informed potential Settlement Class members, *inter alia*, that the Final Fairness Hearing was scheduled for December 11, 2009 at 11:00 a.m.,[15] and that the deadline to select the Premium Payment Loan or to request exclusion from the Settlement was November 26, 2009, and to object to the Settlement was December 1, 2009. *Id.*, ¶ 71. On October 9, 2009, the Argus Defendants provided to Interim Co-Lead Counsel a list, in electronic form, containing Argus International's most current contact information for Settlement Class members. *Id.*, ¶ 72. By October 22, 2009, Interim Co-Lead Counsel, through personal notice, and, where possible, through e-mail, provided the Notice to the Settlement Class members of record. *Id.*, ¶ 73.[16]

Not a single Settlement Class member filed an objection by the December 1, 2009 deadline. *Id.*, ¶ 74. The absence of any objections is especially noteworthy in today's era of

---

[13] In addition, subject to Court approval, the Argus Defendants and the Individual Settling Parties have agreed to pay Interim Co-Lead Counsel attorneys' fees and expenses in the aggregate amount of $600,000, and up to an additional $30,000 in out-of-pocket expenses. *See* Basar Dec., ¶ 53; *see also generally* Fee Petition, submitted contemporaneously herewith.

[14] A copy of the Preliminary Approval Order is attached as Exhibit 5 to the Basar Declaration.

[15] By order dated December 8, 2009, the date of the Final Fairness Hearing was reset to December 23, 2009 at 11:00 a.m. Basar Dec., ¶ 70.

[16] Fed. R. Civ. P. 23(c)(2), requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974) (emphasis and quotation omitted) (class notice designed to fulfill due process requirements). In the Preliminary Approval Order, this Court approved the form of Notice to the Settlement Class and the procedures to be followed in providing the Notice to the Settlement Class. Individual Notice was mailed and or e-mailed to all Settlement Class members in accordance with the Preliminary Approval Order. Consequently, Rule 23(c)(2) is satisfied. Basar Dec., ¶ 86.

increased shareholder activism, and strongly favors the approval of the Settlement. Although thirteen Settlement Class members have requested exclusion from the Settlement, the benefits still weigh in favor of approving the Settlement for those remaining Settlement Class members who have chosen to participate. *Id.*, ¶ 74.

The Settlement is the culmination of nearly five months of arm's-length negotiations and is an excellent resolution of a case of substantial complexity. This Settlement was reached after a rigorous analysis of the strengths and weaknesses of the claims and defenses in this Action, and an investigation of the relevant facts. As a result of these efforts, Plaintiffs, on advice of their counsel, have concluded that the proposed Settlement is eminently fair, reasonable and adequate to the Settlement Class. *Id.*, ¶ 17. Plaintiffs therefore request that the Court: (a) certify the Settlement Class under Federal Rule of Civil Procedure 23(b)(3) solely for purposes of the Settlement; and (b) grant final approval of the proposed Settlement.

## III. ARGUMENT

### A. The Court Should Make Final Its Determination That The Action Is Certified As A Class Action Pursuant To Rule 23

In the Preliminary Approval Order, this Court, pursuant to Federal Rule of Civil Procedure 23, and for the sole purpose of implementation, approval, and consummation of the Settlement, preliminarily approved Plaintiffs as representatives of the Settlement Class, represented by Interim Co-Lead Counsel, and conditionally certified the Settlement Class. Basar Dec., ¶ 75. Moreover, the Argus Defendants did not dispute that the Action meets the numerosity, commonality, typicality and adequacy requirements of Rule 23(a). *Id.,* ¶ 77. Plaintiffs now

request that the Court make this determination final so that the parties can implement the terms of the Settlement.[17]

### 1. The Standards of Rule 23(a) are Met

*Numerosity.* The Settlement Class is so numerous that joinder of all members is impracticable. With forty-one policyholders comprising the Settlement Class (minus those who have requested to be excluded), made up of class members scattered throughout the United States and in Europe,[18] the numerosity requirement of Rule 23(a)(1) is met here. Basar Dec., ¶ 81. *See Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993) ("the difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable") (quoting 1 Newberg on Class Actions § 3.05, at 11-42 (2d ed. 1985)).

*Commonality.* There is little question that there are common issues of law and fact or that common issues of law and fact predominate. The allegations of the Complaint revolve around a "common nucleus," which is the hallmark of a class action. Among the questions of law or fact common to the Settlement Class are, for example, whether certain of the Defendants made false and misleading statements concerning the due diligence they would conduct on outside managers, or breached their fiduciary duties to the Settlement Class by allowing their investments to be ultimately managed by Madoff and recklessly failing to uncover or ignoring red flags that would have alerted them that doing so would place the assets of class members at risk. Basar Dec., ¶ 82. Virtually identical common questions have been found to be sufficient. *See, e.g., In re Revco Sec. Litig.*, 142 F.R.D. 659, 660 (N.D. Ohio 1992) (whether defendants

---

[17] Nothing has occurred subsequent to the Preliminary Approval Order to cast doubt on the Court's preliminary Rule 23 findings. Basar Dec., ¶ 78.

[18] Many of the Policies were purchased by Trusts whose trustees are located in Europe.

acted without due diligence in omitting or misrepresenting material facts satisfied commonality requirement); *Bresson v. Thomson McKinnon Sec., Inc.,* 118 F.R.D. 339 (S.D.N.Y. 1988) (commonality is present where the putative class is alleged to have received misleading materials).

*Typicality.* Typicality is satisfied when the claims of the representative plaintiff "arise from the same course of conduct that gives rise to the claims of the other Class members." *In re NASDAQ Market-Makers Antitrust Litig.,* 172 F.R.D. 119, 126-27 (S.D.N.Y. 1997). Here, the claims of the Plaintiffs (and the defenses thereto) are undeniably typical of the claims of the Settlement Class members (and the defenses thereto) in that they arise out of the same uniform pattern of wrongful conduct. Plaintiffs stand in the same position as do other Class members who purchased or otherwise acquired VUL or DVA Policies issued by TIIL or Argus International during the Class Period. Basar Dec., ¶ 83.

*Adequacy.* Here, Plaintiffs and their Interim Co-Lead Counsel have fairly and adequately protected the interests of the Settlement Class members in this Action. Fed. R. Civ. P. 23(a)(4); *In re Ashanti Goldfields Sec. Litig.,* No. CV 00-0717 (DGT), 2004 U.S. Dist. LEXIS 5165, at *44 (E.D.N.Y. Mar. 30, 2004). Plaintiffs have been damaged in the same manner as other Settlement Class members, are not subject to any unique defenses, and have vigorously prosecuted these claims in order to recover the damages suffered by the Settlement Class. Basar Dec., ¶ 84. *See also In Re Chase Manhattan Corp. Sec. Litig.,* No. 90 Civ. 6092 (LJF), 1992 WL 110743, at *2 (S.D.N.Y. May 13, 1992). Moreover, the adequacy of representation requirement is amply satisfied because Interim Co-Lead Counsel has extensive experience and expertise in class action litigation and are capable of "competently and vigorously prosecuting the litigation." *In re Auction Houses Antitrust Litig.,* 193 F.R.D. 162, 165 (S.D.N.Y. 2000). Interim Co-Lead

Counsel has effectively prosecuted this Action on behalf of the Settlement Class, which culminated in this Settlement. Basar Dec., ¶ 84. Consequently, the adequacy requirement is clearly met. In sum, the Settlement Class here meets all of the requirements of Rule 23 and should be finally certified for purposes of Settlement.

### 2. Rule 23(b)(3) Is Satisfied

When "determining whether common questions of fact predominate [for purposes of Rule 23(b)(3)], a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class." *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 486 (S.D.N.Y. 2002). Further, "Rule 23(b)(3) does not require that all questions of law or fact be common; it only requires that the common questions predominate over individual questions." *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981). Defendants' liability would have to be established or defeated on a class-wide basis, and, accordingly, class issues predominate over individual issues.

When considering whether a proposed class is superior for purposes of settlement, the court "need not inquire whether the case, if tried, would present intractable management problems … or the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Here, as this Court preliminarily held, under Rule 23(b)(3)(B), the Action, as a class action, is superior to all other available methods for fairly and efficiently resolving this Action. This is particularly so because the Settlement Class is geographically dispersed, with Class members residing in different cities within the United States and abroad. Basar Dec., ¶ 85.

For the same reason, the requirements of Rule 23(g) are also satisfied here. *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) (class counsel must be "qualified, experienced and generally able to conduct the litigation."). Basar Dec., ¶ 86.

### B. The Proposed Settlement is Fair, Reasonable and Adequate

#### 1. Standards for Approval of a Class Action Settlement

As a matter of public policy, courts strongly favor the settlement of lawsuits. *Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir. 1982). This is particularly true in connection with complex class action litigation. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). When evaluating a proposed settlement under Fed. R. Civ. P. 23(e), a court must determine whether the settlement, taken as a whole, is fair, reasonable and adequate, and was not the product of collusion. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995). A proposed class action settlement enjoys a presumption of fairness where, as here, it was the product of arm's-length negotiations conducted by capable counsel who are well-experienced in class action litigation. *See, e.g., In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007). Indeed, "absent evidence of fraud or overreaching, [courts] consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel." *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993) (citation omitted).

The principal factors in evaluating the fairness of a proposed settlement in the Second Circuit are well-settled:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

15

*Wal-Mart*, 396 F.3d at 117 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (the "*Grinnell* factors"). In weighing the *Grinnell* factors, courts recognize that settlements usually involve a significant amount of give and take between the negotiating parties; therefore courts do not attempt to rewrite settlement agreements or try to resolve issues that are left undecided as a result of the parties' compromise. *See, e.g., In re Warner Commc'ns. Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y 1985), *aff'd* 798 F.2d 35, 37 (2d Cir. 1986) ("It is not a district judge's job to dictate the terms of a class settlement.").

### 2. Consideration Of The Relevant *Grinnell* Factors Weighs In Favor Of The Settlement

#### a) The Complexity, Expense and Likely Duration of the Litigation Would Be Considerable If the Action Continued

Class actions are particularly "difficult and notoriously uncertain" on both liability and damages issues. *See Lewis v. Newman,* 59 F.R.D. 525, 528 (S.D.N.Y 1973). This case is no exception. The complexity of Plaintiffs' claims weigh in favor of the Settlement.

The Complaint alleges a mosaic of wrongdoing against the Argus Defendants in connection with the loss of most, if not all, of the value of the Settlement Class members' investment accounts caused by the exposure of the Policies to Madoff's fraud. *Id.*, ¶¶ 22-30. Therefore, further litigation relating to these allegations would require, among other things, an in-depth analysis of the Policies and duties of insurers under Cayman Islands law (the law governing the Policies); which would likely require the retention of local counsel, and an understanding of both Bermudian or the Cayman Islands law, one of which likely governs the investment advisory contract between Argus International and Bermuda Life; and discovery concerning Argus Group's acts and its purchase of TIIL, most of which likely would have to be in Bermuda. Plaintiffs would likely have to retain experts, prove the Argus Defendants' liability,

including causation, and possibly endure a lengthy and costly trial. Even a favorable judgment for Plaintiffs would unquestionably be the subject of post-trial motions and appeals, delaying any payment to Settlement Class members even if Plaintiffs were to prevail at trial and then on appeal. *Id.*, ¶¶ 57-58. *See also Slomovics v. All For A Dollar, Inc.*, 906 F. Supp. 146, 149 (E.D.N.Y. 1995) ("The potential for this litigation to result in great expense and to continue for a long time suggests that settlement is in the best interests of the Class."). Any additional litigation would simply jeopardize the forms of relief made available to the Settlement Class members as a result of the settlement.

### b) Adequate Notice and Reaction of the Class

Courts have been repeatedly held that "one indication of the fairness of a settlement is the lack of or small number of objections." *Strougo v. Bassini*, 258 F. Supp. 2d  254, 258 (citing *Hammon v. Barry*, 752 F. Supp. 1087, 1093 (D.D.C. 1990)). *See also In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 478-80 (S.D.N.Y. 1998) (approving settlement where "minuscule" percentage of the class objected); *Grinnell,* 495 F.2d at 462 (approving settlement where 20 objectors appeared from group of 14,156 claimants); *Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922 (E.D. Mich. 2007) (approving settlement where 80 objectors appeared from a class of 11,000 people). Here, the time to submit an objection to the Settlement has come and passed and no Settlement Class member has come forward to object to any aspect of the settlement, the Notice or Interim Co-Lead Counsels' request for attorneys' fees and reimbursement of expenses.

Basar Dec., ¶¶ 61, 74, 78. The lack of objections to the Settlement strongly favors approval of the Settlement.[19]

c) <u>**Stage of Proceedings**</u>

Though this Settlement was entered into after only seven months of litigation, during this relatively short time, a great undertaking was assumed by Interim Co-Lead Counsel, including, *inter alia*: (i) conducting an extensive factual investigation into the events and circumstances underlying the claims in the Complaint; (ii) obtaining and reviewing relevant regulatory filings, press releases and other news reports; (iii) thoroughly researching and analyzing the law regarding the claims brought against the Argus Defendants and the potential defenses thereto; (iv) evaluating the difficulty of establishing jurisdiction over the Bermuda-based Argus Defendants; (v) negotiating with the Argus Defendants, including at in person meetings and telephonically, concerning every aspect of this complex Settlement, which included exchanging countless drafts of the Stipulation before the parties reached final agreement on the Execution Date; and (vi) working relentlessly to ensure that the terms of the loan packages offered, the assignments of certain of the Argus Defendants' claims to the Litigation Trust, and the cooperation by the Argus Defendants, would confer a benefit to the Settlement Class. *Id.*, ¶ 63. As a result, prior to entering into the Settlement, Interim Co-Lead Counsel had a comprehensive understanding of the strengths and weaknesses of Plaintiffs' case. *Id.*

---

[19] As noted above, thirteen Settlement Class members who have requested exclusion from the settlement. Basar Dec., ¶¶ 62, 74, 79.

**d)** **The Risks of Establishing Jurisdiction, Liability and Damages Are Substantial**

In assessing the Settlement, the Court should balance the immediacy and certainty of a recovery for the class against the continuing risks of litigation. *See In re Gulf/Oil Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 591-92 (S.D.N.Y. 1992); *In re Warner*, 618 F. Supp. at 741. While the claims asserted in this Action were brought in good faith and Plaintiffs believe they have merit, there are always some risks in achieving a better result for the Settlement Class through continued litigation. Basar Dec., ¶ 64.

**(1)** **Difficulty in Establishing Jurisdiction**

Potentially one of the biggest risks of continued litigation is the difficulty of establishing jurisdiction over the Argus Defendants, who entered a special appearance in this Action without conceding jurisdiction. The Bermuda-based Argus Defendants are sure to argue that Plaintiffs cannot establish jurisdiction over them in any U.S. court. *Id.*, ¶ 65. In considering whether or not to approve a settlement, courts have considered whether significant jurisdictional obstacles to recovery existed. *See, e.g., Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004) (affirming the approval of partial settlement against foreign defendants in a securities class action, where the court found, *inter alia*, there were significant jurisdictional obstacles to recovery). These Bermuda-based Argus Defendants were formed and operated principally under the laws of a foreign jurisdiction, thereby rendering the prospect of satisfying personal jurisdiction requirements a daunting one. Basar Dec., ¶ 65.

**(2)** **Difficulty in Establishing Liability**

Potentially one of the most difficult challenges in this case would be the burden of proving scienter at trial, which would require Lead Plaintiff to prove "intent to deceive, manipulate or defraud." *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 168 (2d Cir. 2000). Here,

in the absence of insider selling by the Argus Defendants, Plaintiffs would have to prove scienter by establishing facts constituting strong circumstantial evidence of their conscious misbehavior or recklessness. *See Elliot Assocs. L.P. v. Hayes*, 141 F. Supp. 2d 344, 357 (S.D.N.Y. 2000).

The Argus Defendants would argue that they reasonably believed that the Policies' assets were appropriately invested, that the Policies did not contain known false and misleading statements, and that Plaintiffs' allegations are not sufficient to establish scienter or any breach of duties. Compounding the difficulties in establishing liability is the fact that the Argus Group acquired TIIL in December 2006, significantly after TIIL, which is a Tremont affiliate, began offering the Policies in 1994. The Argus Defendants would likely argue they had no reason to believe anything was amiss; otherwise they would not have acquired TIIL from the selling Tremont entities. They would argue they reasonably relied on the warranties and representations of the Tremont entities in the purchase and sale agreement, and would point to the Argus Action as evidence of their innocence. Further, they would argue that any harm suffered by the Settlement Class was not the result of their wrongdoing, but that of the Tremont Defendants who invested Argus International's assets with Madoff. Basar Dec., ¶ 66. Thus, a very real risk exists that a jury would find that the Argus Defendants not only did not act with scienter, but did not breach any duties owed to the Settlement Class members.

### (3)    The Risks of Establishing Damages

Plaintiffs also faced the risk of establishing the proper measure and amount of damages. Proof of damages is always difficult and invariably requires highly technical expert testimony. The experts retained by Plaintiffs and Defendants no doubt would have widely divergent views as to the range of recoverable damages at trial. *Id.*, ¶ 67. Where it is impossible to predict which expert's testimony or methodology would be accepted by the jury, courts have recognized the

need for compromise. *See generally In re Am. Bank Note Holographics, Inc., Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) (stating that "[i]n such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount of Plaintiffs' losses").

> **e)**      **The Ability of the Argus Defendants to Withstand a Greater Judgment**

Given the liability and damages issues discussed above, the possibility of greater recovery than provided by the Settlement is uncertain at best. *See, e.g., In re Am. Bank Note*, 127 F. Supp. 2d at 427. Moreover, "the fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Interim Co-Lead Counsel has analyzed the range of possible recovery against the probability of success and the determination of a reasonable settlement, and has concluded it is not susceptible to a mathematical equation yielding a particularized sum. Basar Dec., ¶ 68. The prospects of securing speculative proceeds from certain of the Argus Defendants could take many years and result in no recovery to Settlement Class members, whereas the Settlement, if approved, will confer concrete and substantial benefits to the Class. Settlement at this time, however, avoids those risks and further costly litigation, and, moreover, provides Settlement Class members with the opportunity to immediately benefit by avoiding Policy lapses for Class members at risk, providing economic benefit, and the added advantage of the assigned claims and cooperation and information disclosure. *Id.*

f)     **The Settlement is Within the Range Of Reasonableness Both in Light the Best Possible Recovery and in Light of All Risks**

Courts agree that the determination of a "reasonable" settlement is not susceptible to a single mathematical equation yielding a particularized sum. *PaineWebber*, 171 F.R.D. at 130; *see also In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989). Here, as explained in further detail in the Basar Declaration, Interim Co-Lead Counsel worked relentlessly to ensure that the relief proposed by this Settlement confers a clear and significant benefit to the Settlement Class.

The terms of the Settlement are fair, reasonable and adequate in light of the uncertain prospects and risks faced by Plaintiffs and the Settlement Class. *First*, despite the Argus Defendants' refusal to consider a monetary settlement, Plaintiffs were able to convince the Argus Defendants to provide economic relief to Settlement Class members by waiving premiums and other costs of insurance regardless of whether Settlement Class members wanted to retain or terminate their VUL Policies. Moreover, Policyholders who take out Premium Payment Loans are not responsible for premiums advanced by the Argus Defendants between December 1, 2008 and March 31, 2009, and Policyholders who want to maintain their Policies without taking out loans get a credit for premiums paid during the same four-month period. Policyholders who terminate or allow their Policies to lapse before 15 days after the Execution Date are not responsible for any premiums and other costs accrued since December 1, 2008. In addition, under the enhanced terms of the Special Policy Loans, Argus International will charge a lower interest rate than under the Policies. Basar Dec., ¶ 32. While the Settlement does not provide for a common fund, it is tantamount to a monetary recovery in that it confers direct economic benefits to the Class. *See In re Initial Public Offering Secs. Litig.* ("*IPO*"), 226 F.R.D. 186, 198-200 (S.D.N.Y. 2005) (assignment of claims and cooperation of issuers against underwriters are

themselves valuable). Moreover, unlike in the case of a common fund, these economic benefits cannot be reduced by any award of attorneys' fees and expenses.

*Second*, the Settlement confers concrete important non-monetary relief to the Settlement Class. For example, in the Complaint, Plaintiffs sought injunctive relief to prevent lapses in VUL Policies, as some of these Policies were at severe risk of lapsing. By this provision of the Settlement, Plaintiffs have essentially obtained this same protection by virtue of the Policy Premium Loans, thwarting any risk of lapsing. Basar Dec., ¶ 40. Also, since Argus International is the direct investor in the Rye Select Funds, an assignment of its claim against the Tremont and other Defendants puts the Settlement Class members in a better position to successfully pursue recovery for their losses. Basar Dec., ¶ 49. Moreover, giving the Litigation Trust an interest in the Argus Group Action, which is being prosecuted by the Argus Defendants, results in a substantial benefit for the Class without the cost of funding the litigation. *Id.*, ¶ 44.[20]

Moreover, the Settlement provides for benefits to Settlement Class members, without delay, in lieu of some wholly speculative payment amount years down the road. Basar Dec., ¶

---

[20] Courts have approved such class action settlements that provide for similar non-monetary relief. *See, e.g.*, *IPO*, 226 F.R.D. at 197 (quoting *In re Clark Oil & Ref. Corp. Antitrust Litig.*, 422 F. Supp. 503, 511 (E.D. Wis. 1976) ("It is, however, the nonmonetary features of the settlement agreement which plaintiffs' counsel urge to be the most valuable benefits included in the agreement.... Although these nonmonetary provisions are not susceptible of valuation in conventional terms, the Court is convinced that they confer real and substantial benefits upon members of the class.")); *First State Orthopaedics v. Concentra, Inc.*, 534 F. Supp. 2d 500, 521 (E.D. Pa. 2007) (granting final approval in breach of contract class action to settlement providing solely non-monetary relief, finding that, "[t]he plaintiff class faces substantial obstacles to establishing liability for money damages. This is a legitimate consideration of counsel when assessing the appropriateness of a non-cash settlement."); *In re IKON Office Solutions, Inc. Sec. Litig.*, 209 F.R.D. 94, 109 (E.D. Pa. 2002) (granting final approval to class action non-monetary settlement, finding that "this settlement is, indeed, fair adequate and reasonable, despite the fact that it does not include any monetary payment.").

58.    Much of the value of a settlement lies in the ability to make the benefits available immediately.  *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985).   Given the obstacles and uncertainties attendant to this complex litigation, Plaintiffs submit that the Settlement is well within the range of reasonableness, and is unquestionably better than the possibility of no recovery at all.

Lastly, it should be noted, this is only a partial Settlement and claims against the other defendants are continuing.

### g)    The Settlement Resulted From Arm's-Length Negotiations

The experience and reputation of the parties' counsel and the arm's-length nature of the negotiations is entitled to great weight. Basar Dec., ¶¶ 55, 88. *See also, e.g., Wal-Mart*, 396 F.3d at 116.  Here, the record of the case demonstrates the procedural fairness of the Settlement.  The Settlement was the result of lengthy negotiations between Interim Co-Lead Counsel and the Argus Defendants' counsel over nearly five months of difficult negotiations.  Basar Dec., ¶¶ 8, 17.  The attorneys on both sides are experienced and thoroughly familiar with the factual and legal issues, and Interim Co-Lead Counsel believe the Settlement is fair and in the best interests of the Class.  *See In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280 (S.D.N.Y. 1999) ("when settlement negotiations are conducted at arm's length, "great weight" is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation") (internal quotation omitted); 4 *Newberg on Class Actions* § 11.41, at 87-89 (4th ed. 2002).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (i) grant final approval of the Settlement as fair, reasonable, and adequate, (ii) certify the Settlement Class

under Federal Rule of Civil Procedure 23, solely for purposes of the Settlement, and (iii) issue the proposed Final Approval Order In Connection With Partial Settlement Proceedings submitted herewith.

Dated: December 17, 2009

> **WOLF HALDENSTEIN ADLER**
> **FREEMAN & HERZ LLP**
>
> By: \_\_\_\_/s/ Demet Basar_____
> DANIEL W. KRASNER (DK-6381)
> DEMET BASAR (DB-6821)
> PAULETTE S. FOX (PF-2145)
> 270 Madison Avenue
> New York, New York 10016
> Telephone: (212) 545-4600
> Facsimile: (212) 545-4653
>
> **COUGHLIN STOIA GELLER**
> **RUDMAN & ROBBINS LLP**
> SAMUEL H. RUDMAN
> DAVID A. ROSENFELD
> EDWARD Y. KROUB
> 58 South Service Road, Suite 200
> Melville, NY 11747
> Telephone: (631) 367-7100
> Facsimile: (631) 367-1173
>
> **PLAINTIFFS' INTERIM**
> **CO-LEAD COUNSEL**

/563729