UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
IN RE TREMONT SECURITIES LAW,         :
STATE LAW AND INSURANCE               :   Master File No.:
LITIGATION                            :   08 Civ. 11117 (TPG)
                                      :
-------------------------------------------------------- x   **JURY TRIAL DEMANDED**
This Document Relates to:             :
State Law Actions, 08 Civ. 11183 (TPG) :   "**ECF Case**"
                                      :
                                      :

-------------------------------------------------------- X


**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO NOMINAL DEFENDANT
FUTURESELECT PRIME ADVISOR II LLC'S LATE-FILED MOTION TO DISMISS
DERIVATIVE CLAIMS**


**ENTWISTLE & CAPPUCCI LLP**
280 Park Avenue
26th Floor West
New York, New York 10017
(212) 894-7200

*Counsel for Plaintiffs Arthur E. Lange
Revocable Trust and Arthur C. Lange*

**HAGENS BERMAN SOBOL SHAPIRO LLP**
700 South Flower Street
Suite 2940
Los Angeles, CA 90017
(213) 330-7150

*Counsel for Plaintiffs Eastham Capital
Appreciation Fund LP, NPV Positive Corp.,
John Dennis, Daniel Jackson, Laborers
Local Pension Plan 17 and Richard Peshkin*

Co-Lead Counsel for Plaintiffs

## **PRELIMINARY STATEMENT**

Without seeking leave of court, and more than *14 months after responsive pleadings were due*, FutureSelect Prime Advisor II, L.L.C. ("FutureSelect Prime" or the "Fund") now files a Motion to Dismiss the derivative claims of Plaintiff John Dennis against the Tremont Defendants, pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1) (the "Motion"). The Motion is untimely under Rule 12(b); it also violates Federal Rule of Civil Procedure 6(b). To be sure, the Fund's Manager and its principal Ronald Ward are engaged in transparent gamesmanship designed to reduce Ward's personal liability. After watching this litigation and settlement discussions proceed for more than a year, he suddenly causes the Fund to file an untimely motion to dismiss concurrent with his filing of a new state court action which conveniently fails to name Ward or his management company as defendants.

In any event, this is a putative class action subject to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d). The Court plainly has supplemental jurisdiction over the derivative claims pursuant to 28 U.S.C. §1367(a). Moreover, since FutureSelect Prime acquiesced to this litigation for more than a year, it cannot fairly contest the exercise of supplemental jurisdiction at this juncture.

In its untimely Motion, FutureSelect Prime also argues that Plaintiff Dennis' derivative claims should be dismissed because he failed to make a demand on the Fund's operating manager, FutureSelect Portfolio Management, Inc. ("FutureSelect P.M." or the "Manager"). The argument misses the mark. Under Delaware Law, demand was excused for at least two reasons. *First*, the Manager acquiesced to this litigation long ago. *Second*, demand would be futile. The Manager of this now defunct Fund (through its principal Ronald Ward) faces substantial

conflicts of interest arising from its wrongful collection of hefty fees based on bogus profits, and its protracted efforts to evade a substantial likelihood of personal liability.

## LEGAL ARGUMENT

### I. FutureSelect Prime's Motion to Dismiss Is Untimely.

"A defendant filing a pre-answer motion under Federal Rule of Civil Procedure 12(b) must do so before his answer is due." *McMillian v. District of Columbia*, 233 F.R.D. 179, 182 (D.D.C. 2005) (denying Rule 12(b) motion to dismiss as untimely where the defendant filed his motion nearly 3 months after the answer was due). In this case, FutureSelect Prime's Motion to Dismiss pursuant to Rule 12(b) should have been filed by June 25, 2009—i.e., 21 days after service of the summons and Complaint.[1] Nevertheless, FutureSelect Prime now files a Motion to Dismiss **more than 14 months** after the responsive pleadings were due, with no answer on file. On its face, the pending Motion is grossly delinquent, and FutureSelect Prime did not seek leave of Court for an extension permitting it to file a late Rule 12(b) motion. *See McMillian*, 233 F.R.D. at 182 (without requesting an extension, the court "will not entertain the substance of the improperly-filed motion"); *see also* Fed. R. Civ. P. 6(b)(1)(B) (for *good cause*, on a party's motion for an extension, the court may permit the party to complete a filing after the time has expired due to *excusable neglect*). The Motion is also a transparent tactic calculated to delay the pending consolidated litigation and to promote the Manager's new state court action that omits all allegations of the Manager's own wrongdoing. Significantly, consideration of the Motion will not expedite disposition of this case on the merits.

---

[1] The First Consolidated and Amended Class Action and Verified Derivative Complaint (including Plaintiff Dennis' claims) was filed April 20, 2009. The Summons and Complaint were served on FutureSelect Prime on June 4, 2009. (*See* Declaration of Lee M. Gordon in Opposition to FutureSelect Prime's Motion to Dismiss ["Gordon Decl."], Ex. B.)

2

In short, FutureSelect Prime's Motion to Dismiss the derivative claims of Plaintiff John Dennis should be denied as untimely and improperly filed.[2]

## II. The Court Has Supplemental Jurisdiction.

Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the derivative claims. Where the supplemental claims derive from a common nucleus of operative facts, *or* when the claims would normally be expected to be tried in a single judicial proceeding, the court's exercise of supplemental jurisdiction would be "a favored and normal course of action." *Promisel v. First American Artificial Flowers, Inc.*, 943 F.2d 251, 254 (2d Cir. 1991), *cert. denied*, 502 U.S. 1060, 117 L. Ed. 2d 110, 112 S. Ct. 939 (1992); *see also In re Bank of Am. Corp. Secs*, No. 09-md-2058, 2010 U.S. Dist. LEXIS 89199, *209 (S.D.N.Y. Aug. 27, 2010) (exercising supplemental jurisdiction over derivative claims); *see also Geer v. Cox*, 216 F.R.D. 677, 678-679 (D. Kan. 2003) (exercising supplemental jurisdiction where class claims and derivative claims were part of the same case or controversy); *Bodner v. Banque Paribas*, 114 F. Supp. 2d 117, 127 (S.D.N.Y. 2000) (fact that claims were part of the same controversy, as well as considerations of judicial economy, warranted assertion of supplemental jurisdiction).

Here, the State Law Actions are putative class actions, and most of the lead plaintiffs are putative class representatives. CAFA jurisdiction undeniably exists under 28 U.S.C. § 1332(d) with respect to each of the Class claims.[3] There is no genuine dispute that the derivative claims

---

[2] Nor is this a case in which an untimely Rule 12(b) motion should be construed as if it were a Rule 12(c) motion, given that the moving defendant has not filed an answer. *See Mull v. Colt Co.*, 31 F.R.D. 154, 156 n.1 (S.D.N.Y. 1962) ("From the plain language of Rule 12(c), it is apparent that the motion for judgment on the pleadings is available when the pleadings are closed. Since the moving defendants have not served their answers to the amended complaint the Rule 12(c) motion is inappropriate").

[3] Moreover, supplemental jurisdiction is proper here because federal question jurisdiction exists under 28 U.S.C. § 1331 with respect to the securities law claims asserted in the consolidated Securities Actions, and arising from the same controversy. *See In re Bristol-Myers Squibb*

form part of the same case or controversy as the Class claims.  Likewise, the Class claims and derivative claims challenge the same misconduct.  They should be tried in a single proceeding in the interests of judicial economy.  Indeed, that is precisely why they were consolidated in this MDL.

Further, the Manager, its Principal Ronald Ward, and the Fund allowed more than a year of litigation and settlement discussions to proceed without acting in any manner.  The inexcusable delay threatens to upset the settlement negotiations and the orderly progression of this complex consolidated litigation.  While the basis for supplemental jurisdiction is strong in any event, the Manager effectively acquiesced to supplemental jurisdiction over Dennis' derivative claims against the Tremont Defendants and cannot now be heard to argue against it. *See Promisel*, 943 F.2d at 254 (courts commonly will exercise supplemental jurisdiction if considerations of judicial economy and fairness to litigants weigh in favor of hearing the claims at the same time).

Each of these factors heavily supports the Court's exercise of supplemental jurisdiction over Dennis' derivative claims.[4]

### III.  The Demand Requirement Was Excused as to FutureSelect P.M.

#### A. Demand on FutureSelect P.M. was excused because the Manager acquiesced to this litigation long ago.

"Because of the inherent nature of the derivative action, a corporation's failure to object to a suit brought on its behalf must be viewed as an approval for the shareholders' capacity to sue derivatively.  We hold, therefore, that when a corporation chooses to take a position in regards to

---

*Derivative Litig.*, No. 02 Civ. 8571, 2007 U.S. Dist. LEXIS 25255, ** 19-20 (S.D.N.Y. 2007).

[4] If the Court declines to exercise supplemental jurisdiction over Dennis' derivative claims, Plaintiffs request that the Court permit them, under Fed. R. Civ. P. 15(a), to add other investors as derivative plaintiffs in the Complaint.

a derivative action asserted on its behalf, it must affirmatively object to or support the continuation of the litigation." *Kaplan v. Peat, Marwick, Mitchell & Co.*, 540 A.2d 726, 731 (Del. 1988). The Fund's silence for over a year must be viewed as "tacit approval for the continuation of the litigation," which excuses the plaintiff's failure to make a demand. *Id.*

Moreover, on February 27, 2009, FutureSelect P.M. wrote to the Fund's investors stating: "The Fund will be able to share in recovery from the pending class action lawsuits. For this reason we do not believe it would be worthwhile to initiate our own lawsuit at this time." (Gordon Decl., Ex. A.) In other words, FutureSelect P.M. assumed a passive role and tacitly acquiesced to the litigation *without objection for the past 14 months*.[5] Thus, the policies behind the demand requirement under Delaware law—i.e., safeguarding the Manager's ability to manage the affairs of the company—were not implicated here. *See Kaplan*, 540 A.2d at 731.

In sum, the Manager's failure to object to continuation of the litigation necessarily excused the demand requirement.

### B. Demand on FutureSelect P.M. would be futile.

The operative Complaint adequately pleads that demand on FutureSelect P.M. would be futile. Case law governing corporate derivative suits is equally applicable to suits on behalf of an LLC. *Kahn v. Portnoy*, No. 3515, 2008 Del. Ch. LEXIS 184, **34-35 (Del. Ch. 2008). An investing LLC member may bring an action on behalf of the company to recover a judgment in its favor if managers or members with authority to do so have refused to bring the action "or if

---

[5] Notably, the Fund's Manager did not object to the derivative claims against the Tremont Defendants in its own responsive pleadings filed on or about June 24, 2009. (Gordon Decl., ¶ 7.) That failure also constitutes acquiescence to the derivative claims.

5

an effort to cause those managers or members to bring the action is not likely to succeed." Del. Code Ann. Tit. 6, §18-1001.[6]

"[I]t is futile to demand that a person take action where that person has clearly and in advance declined to do so." *Haseotes v. Bentas*, No. 19155, 2002 Del. Ch. LEXIS 106, \*\*2, 19-20 (2002). In such cases, requesting that the person take action "is not likely to succeed." *See* Del. Code Ann. Tit. 6, §18-1001. Here, FutureSelect P.M. *expressly declined* to file claims on behalf of the Fund because it hoped instead to share passively in any recovery from the pending class actions. (Gordon Decl., Ex. A.) Therefore, it would have been futile to demand that FutureSelect P.M. file such claims.

Beyond this, courts can apply a two-part test under Delaware law to assess whether demand would be futile. The first step would be to determine whether, under the particular facts alleged, a reasonable doubt is created as to whether a manager is disinterested and independent. The second step would be to determine whether the pleading creates a reasonable doubt that the challenged transaction was otherwise the product of a valid exercise of business judgment. *See Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984) (*overruled in part on other grounds* by *Brehm v. Eisner*, 746 A.2d 244, 253-55 (Del. 2000)); *Kahn*, 2008 Del. Ch. LEXIS at \*\*34-35. Demand is excused where the allegations create a reasonable doubt as to *either* prong of the demand test. *Weiss v. Swanson, Jr.*, 948 A.2d 433, 441 (Del. Ch. 2008).

Additionally, while the mere threat of personal liability might not excuse demand, demand should be excused in cases where the operating manager is owned or controlled by one

---

[6] The demand requirement is largely "irrelevant" where the enterprise in question effectively ceases operations. *See In re Cencom Cable Income Partners, L.P. Litig.*, No. 14634, 2000 Del. Ch. LEXIS 10, \*18 (Del. Ch. 2000). Notably, FutureSelect Prime is no longer operating as an investment Fund given that virtually of its capital was lost in the Madoff scandal. (Gordon Decl., Ex. C).

individual and the manager would be suing that individual.  *See Dean v. Dick*, No. 16566, 1999 Del. Ch. LEXIS 121, *9 (Del. Ch. June 10, 1999).  Alternatively, demand is excused where the factual allegations show a substantial likelihood that the manager faces potential liability, where a decision by the manager to bring suit could have significant financial consequences for the manager, or where the manager directly profits from the challenged transactions.  *See Forsythe v. ESC Fund Mgmt. Co. (U.S.)*, No. 1091, 2007 Del. Ch. LEXIS 140, **10-11, 19, 24-25 (Del. Ch. 2007) (demand was excused where general partner failed to oversee investment decisions of those to whom it delegated authority, and the fund in question lost most of its value); *see also Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993) (Board members have a disqualifying financial interest where a suit against them could have significant financial consequences); *Bakerman v. Sidney Frank Importing Co.*, No. 1844-N, 2006 Del. Ch. LEXIS 180, *22 (Del. Ch. 2006) (manager's receipt of millions of dollars from challenged transactions raises a reasonable doubt as to whether the manager would be disinterested in deciding whether to bring suit challenging those transactions); *In Re: E-Bay, Inc. S'holders Litig.*, No. 19988, 2004 Del. Ch. LEXIS 4, *6 (Del Ch. 2004); *Sol A. Dann v. Chrysler Corp.*, 40 Del. Ch. 103, 108 (Del. Ch. 1961) (It is not normally to be expected that those charged with gross negligence would be amenable to a request that they take action against themselves; alternatively, allegations that the defendant received profits from an unlawful scheme were sufficient to excuse demand).  In such cases, reasonable doubts obviously exist as to whether the managing partners are disinterested and independent.  *See Rales*, 634 A.2d at 930.

In this case, Ronald Ward controlled FutureSelect P.M., the Manager of the Fund.  Complaint at ¶¶ 45-46.  The Manager was responsible for managing and overseeing the Fund's investments.  *Id.* at ¶ 392.  The Manager funneled substantially all of the Fund's capital into

7

Madoff's hands. *Id.* at ¶¶ 390-395. In particular, the Complaint alleges that FutureSelect P.M.: (a) was controlled by Ronald Ward; (b) substantially and wrongfully profited from investing in the Madoff scheme at the expense of the Fund's members; (c) utterly failed to perform due diligence or to safeguard plaintiffs' investments in the Fund from excessive risks of loss; (d) lost virtually all of the Fund's capital, and (e) caused injuries to the members as a result of its own gross negligence. *Id.* at ¶¶ 45-46, 390-395, 497-500, 507-512. These allegations raise more than a reasonable doubt as to whether FutureSelect P.M. (and its principal Ronald Ward) could bring suit for the Fund independently and without being influenced by overriding self-interests.

After more than 14 months of sitting on the sidelines, FutureSelect P.M. now purports to bring an action in a Washington state court against the Tremont Defendants without asserting claims against FutureSelect P.M. or Ronald Ward. (Gordon Decl., Ex. C.) This alone raises a reasonable doubt as to FutureSelect P.M.'s conflicting interests. *Cf. Weiss*, 948 A. 2d at 448 (directors did not appear to be disinterested where their own investigation found no evidence of any misconduct by the Board, despite contrary inferences arising from the complaint). Furthermore, the facts that Ward controls FutureSelect P.M., and that Ward evaded service of process for months, further demonstrate that FutureSelect P.M. suffers from serious conflicts of interest. (Gordon Decl., ¶ 5). Conflicts arise from the underlying transactions wherein Ward— as principal of FutureSelect P.M.—collected huge management fees based on bogus profits, at the expense of Fund investors. Additional conflicts arise from Ward's decision about whether to sue himself (predictably, Ward decided not to sue himself).

Demand was excused under these circumstances.

///

///

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny FutureSelect Prime Advisor's Motion to Dismiss Plaintiff Dennis' derivative claims.

Dated:  September 10, 2010

                HAGENS BERMAN SOBOL SHAPIRO LLP

                By: _____
                      LEE M. GORDON

                700 South Flower Street, Suite 2940
                Los Angeles, CA 90017
                Telephone: (213) 330-7150
                Facsimile: (213) 330-7152
                Admitted Pro Hac Vice

*Counsel for Plaintiffs Eastham Capital Appreciation Fund LP, NPV Positive Corp., John Dennis, and Richard Peshkin*

Co-Lead Counsel for Plaintiffs


                ENTWISTLE & CAPPUCCI LLP

                By: _____
                      RICHARD GONNELLO

                280 Park Avenue
                26th Floor West
                New York, New York 10017
                Telephone:  (212) 894-7200

*Counsel for Plaintiffs Arthur E. Lange Revocable Trust and Arthur C. Lange*

Co-Lead Counsel for Plaintiffs