ADAM D. WHITE (N.Y. Bar No. 2390599)
LAW OFFICE OF ADAM D. WHITE
The Transportation Building
225 Broadway, Suite 2000
New York, NY 10007
Tel: (212) 577-9710
Fax: (212) 577-9715

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | Master File No.: 08 Civ. 11117 (TPG) |
| This Document Relates to: State Law Action, No. 08 Civ. 11183 (TPG) | |

**PLAINTIFF LAKEVIEW INVESTMENTS, LP'S MEMORANDUM IN SUPPORT OF CORRECTED MOTION FOR REMAND OR PARTIAL REMAND PURSUANT TO 28 U.S.C. §1447(c) AND 15 U.S.C. §77p(d)(4) AND RELATED RELIEF**

**MEMORANDUM IN SUPPORT OF MOTION FOR REMAND**

I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Lakeview Investments, LP ("Plaintiff" or "Lakeview") purchased interests in two limited partnerships that were unregistered under the federal securities laws, almost $24 million in Rye Select Broad Market XL Fund, L.P. (the "XL Fund") and $1.2 million more in Rye Select Broad Market Fund, L.P. (the "Market Fund"). To redress its injuries resulting from defendants' state law violations with respect to each of the two Funds, Plaintiff commenced a civil case in the California Superior Court for Marin County. In Plaintiff's Verified Complaint for Violations of California Law ("Complaint" or "Compl."), Plaintiff exercised its discretion under the procedural rules of California to join in one suit its separate but related state-law claims concerning the two Funds. With respect to its investment in each Fund, Plaintiff alleged four individual causes of action based solely upon California law. Plaintiff also alleged identical California law claims on behalf of two distinct putative classes comprised of California investors in the XL Fund and the Market Fund, respectively.

Although the claims in the Complaint involve only California law claims asserted individually and on behalf of two separate groups of California investors in two limited partnerships whose securities were not listed or approved for listing on any national securities exchange, defendants removed the state court action to federal court, citing the Securities Litigation Uniform Standard Act of 1998 ("SLUSA"). *See* Notice of Removal of Action under 28 U.S.C. §§1441, 1446 ("Notice of Removal"), ¶¶7-15. Under SLUSA, a state court action is removable if: (1) it is a "covered class action"; (2) it alleges that the defendant(s) made "an untrue statement or omission of a material fact," or that the defendant(s) "used or employed any manipulative or deceptive device"; and (3) the alleged misstatement, omission, manipulation, and/or deceptive device occurred "in connection with" the plaintiff's "purchase or sale of a covered security." *See* 15 U.S.C. §§77p(b), (c).

In support of their Notice of Removal, Defendants make various allegations in an effort to justify removal of this action under SLUSA. Most of those allegations are purely conclusory and unsubstantiated and, while they "parrot" SLUSA's statutory requirements for removal, defendants fail to allege facts to satisfy those requirements. "[T]he burden falls squarely upon the removing party to establish its right to a federal forum by 'competent proof.'" *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir.1979). No such proof exists in this case.

<u>First</u>, Plaintiff did not purchase or sell a "covered security" in connection with any misrepresentation or omission, or any manipulative or deceptive device, alleged in the Complaint. Instead, Plaintiff acquired limited partnership interests that were not listed, or approved for listing, on any national exchange and that were not issued by a registered investment company. Because Plaintiff never bought or sold a "covered security" in connection with the misconduct alleged in the Complaint, one threshold requirement for the application of SLUSA has not been satisfied.

<u>Second</u>, to avoid the plain language and intent of SLUSA's "covered security" purchase/sale requirement, defendants argue in their removal papers that Plaintiff's investment in each Fund was made "in connection with" the Fund's anticipated re-investment in "covered securities." Despite its superficial allure, this argument has no merit and, indeed, no facts to support it. The subsequent investment of funds by limited partnership defendants has nothing to do with the initial private purchase of limited partnership interests (*i.e.*, **not** "covered securities") by Plaintiff and the putative class members. On the contrary, XL Fund told Plaintiff that proceeds from the private offering and sale of its limited partnership ("LP") interests would be used to finance a swap transaction; swaps, of course, are not "securities" under federal law. In addition, as to the separate investment in the Market Fund, Plaintiff was told those proceeds would be placed in an account at a different fund which itself did not issue any securities, much less "covered securities" under SLUSA. Thus, even if the Court thought it prudent to consider how the Funds used Plaintiffs' money after transferring

it in exchange for LP interests in those two funds, there still was no purchase or sale "in connection with" a "covered security" in any event. Moreover, there were no such representations in connection with Plaintiff's purchase of LP interests during the XL Fund's private securities offering.

Third, Plaintiff's case does not involve a "covered class action." Under SLUSA, a case is a "covered class action" only if "damages are sought on behalf of more than 50 persons or prospective class members." 15 U.S.C. §78bb(f)(5)(B). In their Notice of Removal, Defendants allege that Plaintiff seeks damages "on behalf of more than 50 persons." *See* Notice of Removal, at ¶10. However, Defendants offer no evidence that more than 50 California residents actually invested in either the XL Fund or the Market Fund. From Defendants' publicly available filings, the actual number of California investors in each Fund (and, thus, the number of potential members of each class for SLUSA purposes) is substantially less than 50.

Fourth, regardless of whether one or both of Plaintiff's putative class actions are precluded by SLUSA, Plaintiff's *individual* claims must be remanded. Pursuant to 15 U.S.C. §77p(d)(4), this Court may not exercise ancillary jurisdiction over non-precluded claims. Likewise, if the Court finds that only one of the two putative class actions is precluded by SLUSA, the Court should dismiss the precluded class action and remand the other.

Finally, because Defendants had no reasonable basis for removal, defendants should be required pursuant to 28 U.S.C. §1447(c) to pay the attorney's fees and costs incurred by Plaintiff and Plaintiff's counsel as a result of the improper removal.

## II. PROCEDURAL HISTORY

On December 10, 2010, after sustaining substantial losses resulting from the misconduct of the managing partner of the XL Fund and the Market Fund, Plaintiff filed its Complaint against defendant Tremont Partners, Inc. ("Tremont") and other defendants in the California Superior Court for the County of Marin (the "California Action"). Each cause of action in the Complaint is based solely upon California law,

and Plaintiff seeks compensatory damages and other relief for investments in each of the two named Funds, for itself individually and, separately, for all similarly situated California investors. *See, e.g.*, Compl. ¶69.

The First Cause of Action is for declaratory relief under California Code of Civil Procedure ("C.C.P.") §1060 *et seq.* seeking, *inter alia*, a declaration that under California law the defendants owed limited partners like Plaintiff certain fiduciary duties "before and after plaintiff made any capital contributions into either of the Partnerships." *See* Compl. ¶¶79-82. The Second Cause of Action is against the Partnerships for violations of California Corporations Code §§25401 *et seq. See* Compl. ¶¶83-89. The Third Cause of Action are against the non-Partnership Defendants for violations of California Corporations Code §§25401 *et seq.* related to the XL Fund. *Id.* at ¶¶90-96. The Fourth Cause of Action is against the non-Partnership Defendants for violations of California Corporations Code §§25401 *et seq.* related to the Market Fund. *Id.* at ¶¶97-103. Plaintiff alleges misleading statements and omissions by defendants in the private placement offering materials and in deceptive annual and interim financial statements for the partnership funds. *See, e.g.*, Compl. ¶¶44-45, 48-49, 54, 58-59. Those allegations are sufficient to state a cause of action under California law.

On March 4, 2011, Defendants filed the Notice of Removal, removing the California Action to the U.S. District Court for the Northern District of California under 28 U.S.C. §1441(b), asserting that "all of Lakeview's claims are precluded by [SLUSA]." *See* Notice of Removal at ¶¶10, 13-14. Defendants based their removal on the purported grounds that the limited partnership interests in the XL Fund and the Market Fund are "covered securities" as defined in SLUSA, that the classes alleged in the Complaint were "covered class actions" as defined in SLUSA and that the misrepresentations and omissions alleged in the Complaint were made "in connection with" the purchase or sale of "covered securities." *Id.*

Also on March 4, 2011, counsel for Tremont Partners, Inc., Tremont Group Holdings, Inc., Robert Schulman, James V. Mitchell, Harry Hodges, and Darren Johnston (the "Tremont Defendants") filed a Notice of Pendency asserting that the California Action alleges the same "breaches of fiduciary duty and negligent misrepresentation" as alleged in a separate action pending in the U.S. District Court for the Southern District of New York against the same defendants. *See* Notice of Pendency, at 1-2.

On or about March 7, 2011, defendants filed a Notice of Tag-Along Action with the Judicial Panel on Multidistrict Litigation ("MDL Panel") in *In re Tremont Group Holdings, Inc. Securities Litig.*, Case MDL No. 2052 (the "SDNY Actions"). *See* Case MDL No. 2052, Document 85; Document 85-2 (containing California Action complaint); Document 85-4 (containing Notice of Removal).

On March 10, 2011, the Court entered an order based on a stipulation entered into by the parties setting forth a proposed briefing and hearing schedule for Lakeview's motion for remand and related relief (the "March 10 Order"). *See* Document No. 16, Case 1:11-cv-01851-TPG. Pursuant to the schedule established in that March 10 Order, Plaintiff is to file its motion for remand and related papers on April 11, 2011. Subsequently, on or about March 17, 2011, the Clerk of the MDL Panel issued an order conditionally transferring the California Action to the United States District Court for the Southern District of New York and assigning it to the Honorable Thomas P. Griesa.

III.  APPLICABLE LEGAL STANDARDS

On a motion for remand, the party opposing remand bears the burden of establishing to a "reasonable probability" that removal was proper. *See Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 58 (2d Cir.2006); *CalPERS v. WorldCom, Inc.*, 368 F.3d 86, 100-101 (2d Cir.2004) ("the defendant bears the burden of demonstrating the propriety of removal"); *United Food & Comm. Workers Union v. CenterMark Prop. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir.1994) ("the defendant has the burden

of establishing that removal is proper"). When the removal of an action to federal court is contested, "the burden falls squarely upon the removing party to establish its right to a federal forum by 'competent proof.'" *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir.1979). Out of respect for the independence of state courts, and in order to control the federal docket, "federal courts construe the removal statute narrowly, resolving any doubts against removability." *Somlyo v. J. Lu-Rob Enterp., Inc.*, 932 F.2d 1043, 1045-1046 (2d Cir.1991).

Removal attempts under SLUSA are no exception. "The SLUSA removal provision, §78bb(f)(2), is jurisdictional." *Rowinski v. Salomon Smith Barney Inc.*, 398 F. 3d 294, 297-298 (3d Cir.2005). "The jurisdictional inquiry under SLUSA tracks the plain language of the statute." *Id.* at 298. The removing party bears the burden of establishing these elements. *DiFelice v. Aetna U.S. Healthcare*, 346 F.3d 442, 445 (3d Cir.2003); *see also Green v. Ameritrade, Inc.*, 279 F.3d 590, 597 (8th Cir.2002) ("The burden is on defendants to demonstrate that the requirements of SLUSA are met"). SLUSA only precludes a claim, and warrants removal, "where four conditions are met: (1) the underlying suit involves a "covered class action"; (2) the claim is based on state law; (3) the claim concerns a "covered security"; and (4) the plaintiff alleges "a misrepresentation or omission of material fact," or "a manipulative or deceptive device or contrivance, in connection with the purchase or sale of a covered security." *See* 15 U.S.C. §78bb(f)(1).

Despite its apparently broad reach, SLUSA does not completely preempt all state law securities claims. *Green v. Ameritrade,* 279 F.3d 590, 596 (8th Cir.2001); *see also Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003) (distinguishing between removal of state law claims "when Congress expressly so provides" and removal of such claims "when a federal statute wholly displaces the state-law cause of action through complete pre-emption"). "SLUSA was enacted in 1998 to prevent class action plaintiffs from circumventing the PSLRA's heightened pleading requirements through artful pleading." *Ring v. AXA Financial, Inc.,* 483 F.3d 95,

97-98 (2d Cir.2007).  Accordingly, "SLUSA only converts into federal claims those state claims that fall within its clear preemptive scope, thereby confining federal question jurisdiction under this statutory regime to a subset of securities fraud cases." *Spielman v. Merrill Lynch, Pierce, Fenner & Smith*, 332 F.3d 116, 124 (2d Cir.2002). "Congress was mindful to preserve the balance between establishing and maintaining 'national standards for securities class action lawsuits involving ***nationally traded securities***' and 'preserving the appropriate enforcement powers of State securities regulators.'" *Id*. (emphasis added).  "SLUSA does not … preclude all state enforcement or private causes of action in securities fraud cases." *Id*.  Moreover, "the fact that SLUSA preempts *some* causes of action in a complaint does not entitle a defendant to broadly invoke federal preemption against the entire complaint."  *Gray v. Seaboard Sec., Inc.*, 241 F. Supp. 2d 213, 219 (N.D.N.Y. 2003); *see also Winne v. Equitable Life Assur.  Soc. of U.S.*, 315 F. Supp. 2d 404, 416 (S.D.N.Y. 2003) ("If a non-preempted state-law claim is appended to a claim preempted under SLUSA, … only the preempted claim would be dismissed on the merits; the pendent claims could then be adjudicated or remanded to state court").

IV. LEGAL ARGUMENT

    A. <u>The Limited Partnership Interests At Issue Are Not "Covered Securities"</u>

Under SLUSA, a threshold inquiry is whether Plaintiff has alleged a misrepresentation or omission of material fact in connection with the purchase or sale of a "covered security."  *See* 15 U.S.C. §78bb(f)(1).  Because the limited partnership interests involved in this case are not "covered securities," SLUSA does not apply.

"Under the test whether an investment contract is a security established in *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 301(1946), a limited partnership interest generally is a security because such an interest involves investment 'in a common enterprise with profits to come solely from the efforts of others.'" *Mayer v. Oil Field Systems Corp.*, 721 F.2d 59, 65 (2d Cir.1983).  But that does not end the inquiry. A "covered security" is defined as "a security that satisfies the standards for a covered

security specified in paragraph (1) or (2) of section 77r(b) of [Title 15], at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred...." 15 U.S.C. §77p(f)(3).  Under 15 U.S.C. §77r(b)(1), "a 'covered security' is one traded nationally and listed on a regulated national exchange." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 83-84 (2006).  Under 15 U.S.C. §77r(b)(2), "a security issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940" is also a "covered security."

Neither the XL Fund nor the Market Fund was a registered investment company, and the limited partnership interests they issued to California residents in private placement were not "covered securities."  The LP interests were not publicly traded, they were not approved for listing on any national exchange, and they were not even registered pursuant to the requirements of the Securities Act of 1933.  There is no dispute about that; Defendants filed papers with the U.S. Securities and Exchange Commission purporting to rely on an exemption from registration requirements under federal securities laws provided by 17 CFR §230.501 *et seq.* ("Regulation D").  *See, e.g.*, concurrently filed Declaration of S. Benjamin Rozwood in Support of Motion for Remand and Related Relief ("Rozwood Dec."); Ex. 1 (Form D for XL Fund) and Ex. 2 (Form D for Market Fund).

Although it is clear that the LP interests at issue are not "covered securities," defendants argue that "the 'covered' security prong is satisfied" because defendants subsequently employed an investment strategy that involved the purchase and sale of "covered securities."  *See* Notice of Removal, ¶13 at 6.  Superficially, this argument has some appeal.  A few unreported district court decisions interpret SLUSA to preclude state court claims where plaintiffs purchased interests in non-covered securities in reliance upon misstatements made in connection with defendants' proposed use of those funds to purchase of covered securities.  All of those cases, however, are distinguishable.  In each of those cases, plaintiffs purchased non-covered

securities in reliance upon misstatements made about using those proceeds to invest in covered securities.  Hence, in those cases, the specific misleading statements at issue were made directly "in connection with" the purchase of covered securities.[1]

In contrast, Plaintiff's California-state-law claims in this case are predicated on misrepresentations and omissions made about the *limited partnership interests* themselves, which clearly are not "covered securities."  Plaintiff alleges misleading statements and omissions by Defendants regarding: the deceptive monthly reports on the Capital Accounts showing that "investors were receiving a steady return on their investment with low volatility," when they were not, and the deceptive annual and interim financial statements for the partnership funds.  *See, e.g.*, Compl. ¶¶54, 58-59.  None of these allegations, which collectively group actionable misconduct occurring "in connection with" Plaintiff's purchase of LP interests in either XL Fund or Market Fund, concerns any "covered security."  Thus, SLUSA does not apply.  *Compare Ring*, 483 F.3d at 101 ("we should not preempt and dismiss a suit that alleges fraud

---

[1] *See, e.g.*, *Schnorr v. Schubert*, No. Civ-050303-M, 2005 WL 2019878, *5 (W.D. Okla. Aug. 18, 2005) (plaintiff alleged that defendants "promised to invest Plaintiff's and the putative class's money in covered securities but never did"); *Ring*, 251 F.3d at 109 (noting that "the only and entire product at issue in *Lander* was a covered security"); *Ring*, 483 F.3d at 99, explaining that "[t]he assets in variable annuity contracts are segregated into 'separate accounts' and typically invested in the owners' choice of one of a number of funds, which funds in turn invest in a portfolio of securities"); *Barron v. Igolnikov*, No. 09 Civ. 4471, 2010 WL 882890, at *5 (S.D.N.Y. Mar. 10, 2010) ("plaintiff and members of the putative class purchased limited partnership interests in the UBP Funds-*which in turn invested in covered securities*") (emphasis added).  Similarly, the only securities at issue in *Merrill Lynch v. Dabit*, 547 U.S. 71 (2006), were publicly traded on a national exchange and, thus, fell within the definition of "covered" under SLUSA.  *See, supra*, *Pension Committee*, 2010 WL 546964, *2 n.24 ("both parties in *Dabit* conceded that the securities at issue were covered"); *Instituto De Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1345-47 (11th Cir. 2008) ("Retirement trust accounts" marketed to administrator of pension funds by investment advisor qualified as "covered securities" within meaning of SLUSA where the accounts included a mutual fund component, notwithstanding they also included a life insurance component that did not qualify as a "covered security").

occurred in connection only with a promise in a contract that does not relate to a 'covered security' even where another promise in the same contract does concern a 'covered security'").

In a nearly identical case in this Court, *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, --- F. Supp. 2d ---, 2010 WL 546964, Fed. Sec. L. Rep. P 95,605 (S.D.N.Y. Feb. 16, 2010), District Judge Scheindlin held that SLUSA preclusion does not apply "where plaintiffs purchased, sold, or held shares in hedge funds that are not covered securities under SLUSA but that maintain a portfolio that include covered securities" because to hold otherwise would impermissibly "extend the reach of SLUSA to any investment vehicle with covered securities in its portfolio." 2010 WL 546964, at *1. As in this case, the removing defendants in the *Montreal Pension* case "argue[d] for SLUSA preemption on the ground that a portion of the Funds' portfolios included, or purported to include, covered securities." *Id*. Finding that "[o]nly the alleged misrepresentations by the [Fund defendants] [were] relevant for an analysis of SLUSA preemption," Judge Scheindlin ruled that SLUSA did not apply "[b]ecause the [Fund defendants'] alleged untrue statements concern[ed] only the valuation of the *Funds* and their restricted shares and warrants" and, therefore, "those statements were not made 'in connection with' the purchase and sale of covered securities." *Id*. at *2 (emphasis in original). "Because plaintiffs purchased shares in hedge funds, rather than covered securities, SLUSA does not preempt plaintiffs' state-law claims." *Id*. The same reasoning applies here.

Judge Scheindlin rejected the Fund defendants' argument that *Merrill Lynch, Pierce, Fenner & Smith v. Dabit*, 547 U.S. 71 (2006), compelled a different ruling. As District Judge Scheindlin explained:

> The interpretation of SLUSA urged by the [Fund defendants] stretches the statute beyond its plain meaning. There are no grounds on which to justify applying *Dabit* to statements made by the [Fund defendants] concerning uncovered hedge funds — even when a portion of the assets in those funds include covered securities. This outcome is required because the alleged fraud relates to those hedge funds rather than to the covered securities in the portfolios.

-10-

2010 WL 546964, at *2.

An even closer case factually is *Anwar v. Fairfield Greenwich Ltd*, 728 F. Supp. 2d 372 (S.D.N.Y. 2010), in which District Judge Marrero "follow[ed] the path struck in *Pension Committee*" to find that state law claims arising from plaintiffs' investment in a Madoff-feeder-fund were not subject to SLUSA because "the securities 'at the heart of [the] case' are non-covered interests in the Funds." *Id*. at 399 n.6. District Judge Marrero's reasoning is particularly apt:

> The Court finds that the "in connection with" requirement is not met here. The allegations in this case present multiple layers of separation between whatever phantom securities Madoff purported to be purchasing and the financial interests Plaintiffs actually purchased. First, Plaintiffs invested their money in the Funds, with one of the [Fund defendants] receiving the actual deposits. The [Fund defendants] then placed this money with Madoff, a transaction which Plaintiffs allege did not occur instantaneously; the Funds were not a cursory, pass-through entity. The Funds also placed up to 5 percent of their assets in non-Madoff investments, a relatively small portion overall but representing many millions of dollars. Madoff, when and if he received Plaintiffs' investments from the Funds, then represented he was investing this money in a manner intended to "highly correlate to the S & P 100 Index…." But sometimes Madoff claimed he also invested this money in Treasury Bills. Though the Court must broadly construe SLUSA's "in connection with" phrasing, stretching SLUSA to cover this chain of investment–from Plaintiffs' initial investment in the Funds, the Funds' reinvestment with Madoff, Madoff's supposed purchases of covered securities, to Madoff's sale of those securities and purchases of Treasury bills–snaps even the most flexible rubber band.

*Id*. at 398-399; *see also In re Banco Santander Sec.-Optimal Litig.,* 732 F. Supp. 2d 1305, 1316-19, 2010 WL 3036990, at *5-*7 (S.D. Fla. July 30, 2010) (rejecting §10(b) claims against Bahamian investment fund when all activity relating to purchases of securities occurred off-shore even though plaintiffs alleged they were aware the funds would be invested with Madoff).

/
/
/
/
/

B.     No Transaction Occurred "In Connection With" A "Covered Security"

As in *Pension Committee* and *Anwar*, the misrepresentations alleged in the Complaint here occurred in connection with the purchase of non-covered securities. Defendants nevertheless argue, without any substantiation, that because the managers of the two Funds might have invested in "covered securities," the fraudulent conduct alleged in the Complaint occurred in connection with covered securities. These bare allegations do not satisfy their burden of proof in this issue. Capital invested in the XL Fund was used to finance and enter into swap agreements, which are not "securities" under federal law. *See* Rozwood Dec., Ex. 3 (XL Fund PPM). Market Fund placed its capital in accounts with a different fund, which were not "covered securities" either. Because neither of these transactions occurred in connection with a "covered security," SLUSA does not apply.

Defendants allege in their removal papers that capital placed with the XL Fund was delivered to a third-party adviser who purchased and sold "covered securities," *see* Notice of Removal ¶14 at 8; however, no evidence supports this bare allegation. According to the "Investment Objective and Strategy" stated in its PPM, XL Fund sought "to provide investors with long-term capital growth … by entering into a total return swap transaction with one or more designated counterparties … on a leveraged basis." *See* Rozwood Dec., Ex. 3, at viii. Swap transactions, of course, are not "covered securities." In fact, they are not securities at all. *See* 15 U.S.C. §78c–1 (Swap agreements) ("[T]he definition of 'security' in section 78c(a)(10) of [Title 15] does not include any non-security-based swap agreement or any security-based swap agreement."). Because the swap transactions marketed by the XL Fund were not securities under federal law, it follows that the private sale of LP interests by XL Fund did not occur "in connection with" a "covered security" under SLUSA.

Likewise, Market Fund assets were not reinvested in "covered securities." Rather, money in the Market Fund was subsequently moved into Tremont Defendant accounts with Bernard L. Madoff Investment Securities ("BLMIS"). BLMIS was not

registered under the Investment Company Act of 1940, and the BLMIS accounts at issue were not securities, much less securities listed or approved for listing on a national exchange, and did not constitute "covered securities."[2]  Hence, purchases of LP interests in the Market Fund did not occur "in connection with" a covered security.

### C. Plaintiff's Lawsuit Is Not a "Covered Class Action"

Defendants know very well that the "more than 50 persons" requirement is one of "five prerequisites" which must be satisfied before SLUSA may be applied here. *See* Notice of Removal, ¶9.  Moreover, defendants have all the records necessary to determine how many California residents purchased LP interests in XL Fund.  The same is true for Market Fund.  Yet nowhere in their removal papers do defendants provide any proof that either of the two classes alleged in the Complaint[3] consists of more than 50 persons.  *See* Notice of Removal, ¶10 (citing only Plaintiff's general allegations in ¶69 and ¶71 of the Complaint that the number of California residents who invested in these two funds "are so numerous that joinder of all its members is impractical").  Thus, defendants deliberately failed to establish a known essential

---

[2]  This is an important distinction.  For example, investments made by BLMIS customers directly are protected under the Securities Investment Protection Act ("SIPA"). Only BLMIS customers are permitted to submit SIPA claims related to their own BLMIS accounts.  Unfortunately for Lakeview, since XL Fund and Market Fund are not registered broker-dealers, Lakeview's investments with those funds are not protected under SIPA.  The money it used to purchase LP interests in XL Fund and Market Fund is not protected under SIPA, and Lakeview has no standing to submit SIPA claims, despite the fact that Market Fund assets may have been placed in Tremont's customer accounts with BLMIS.

[3]  Plaintiff alleges two distinct classes, as follows:  "Plaintiff brings this action: (i) for itself and on behalf of all other California residents that invested in the XL Fund (the "XL Class") which have been or will be harmed by the conduct described herein; and (ii) for itself and on behalf of all other California residents that invested in the Market Fund which have been or will be harmed by the conduct described herein (the "Market Class") (collectively, the "Classes")."  *See* Complaint, ¶69; *see also id.* at ¶¶72-73 (making separate allegations concerning each of the two classes).

-13-

1  element of their asserted basis for removal, as it is their burden to do.  *See Green*, 279
2  F.3d at 597 ("The burden is on defendants to demonstrate that the requirements of
3  SLUSA are met."); *see also Leonard v. Enterprise Rent a Car*, 279 F.3d 967 (11th
4  Cir.2002) (where removing defendant alleges that a jurisdictional minimum amount
5  has been exceeded, the defendant must prove it a "preponderance of the evidence").

6  According to a Form D filed by Market Fund, it had only 210 total investors as
7  of July 17, 2008 (*see* Rozwood Dec., Ex. 2 at 4, Item 2), only a few months before
8  Plaintiff's losses were revealed on December 11, 2008.  *See* Compl. ¶66.  Because
9  the two classes alleged in ¶69 of the Complaint consist of California residents only,
10  Defendants have the burden to show that more than 50 of the 210 limited partners in
11  Market Fund were residents of California.  The fact that Defendants did not do so in
12  their removal papers, although they had the information required to do so, suggests
13  that they are unable to in any event.

14  XL Fund had even fewer limited partners than Market Fund.  According to its
15  Form D dated April 11, 2008, XL Fund had 137 limited partners as of March 4, 2008.
16  *See* Rozwood Dec., Ex. 1 at 4, Item 2.  Of those limited partners, only five were
17  residents of California.  *Id.* at 7.  Moreover, the XL Fund's private placement
18  memorandum ("PPM") dated February 1, 2007, states that "it will be necessary to
19  limit the number of Limited Partners and the percentage interest in the Partnership that
20  may be held by certain investors" in order to avoid the registration requirements under
21  the Investment Company Act of 1940.  *See* Rozwood Dec., Ex. 3 (PPM), at 48.

22  Moreover, each of the two classes alleged in ¶69 of the Complaint must be
23  evaluated separately.  In *S.E.C. v. United Benefit Life Ins. Co.*, 387 U.S. 202, 206-07
24  (1967), the Supreme Court held that an aggregation was not appropriate because the
25  Flexible Fund contract made "[t]wo entirely distinct promises" whose "operation is
26  separated at a fixed point in time."  The Supreme Court "conclude[d] that [it]
27  must assess independently the operation of the 'Flexible Fund' contract during the
28  [pre-maturity] period to determine whether that separable portion of the contract falls

within the class of exempted by Congress from the requirements of the Securities Act, and, if not, whether the contract constitutes a 'security.'"

If one of the two classes has more than 50 members, and the other does not, SLUSA would apply only to the former class because the latter would not be a "covered class action" under SLUSA. "[T]he fact that SLUSA preempts *some* causes of action in a complaint does not entitle a defendant to broadly invoke federal preemption against the entire complaint"; rather, the Court must "analyze the material allegations related to each of Plaintiffs' state law causes of action in assessing whether SLUSA preemption applies." *Gray*, 241 F. Supp. 2d at 219. In any event, Defendants have not shown that more than 50 California residents were limited partners in either Fund. As a result, because Defendants are unable to demonstrate that the lawsuit is a "covered class action" under SLUSA, remand is required.

### D. Even If SLUSA Applies, A Partial Remand Is Required

Finally, individual state law claims are not "covered class claims" precluded under SLUSA. Hence, Plaintiff's individual state law claims must be remanded even if the Court concludes that the class claims are "covered" under and precluded by SLUSA. *See In re Lord Abbett Mut. Funds Fee Litig.*, 553 F.3d 248, 256 (3d Cir. 2009) ("SLUSA does not mandate dismissal of an action in its entirety where the action includes only some pre-empted claims"); *Winne*, 315 F. Supp. 2d at 416. Accordingly, even if the Court were to find that SLUSA precludes the class action claims in the Complaint, the Court may not dismiss the individual claims remaining in the case under SLUSA and, instead, must remand them to the state court in which they were filed. *See also* 15 U.S.C. §78bb(f)(3)(d) ("if the Federal Court determines that the action may be maintained in State court pursuant to this subsection, the Federal court *shall* remand such action to such State court") (emphasis added).

Likewise, if the Court determines that the putative class claims pertaining to Plaintiff's investment in one Fund are precluded, but that Plaintiff's putative class claims pertaining to Plaintiff's investment in the other Fund are not, then the Court

-15-

should dismiss the precluded class claims and remand the class claims that are not precluded.  *See Lord Abbett*, 553 F.3d at 256; *Winne*, 315 F. Supp. 2d at 416.

### E. Defendants Should Pay Plaintiff's Attorney's Fees and Costs.

Defendants had no reasonable basis for removing this action to federal court. The decisions in *Pension Committee* and *Anwar* made clear that investments similar to the limited partnership interests purchased by Plaintiff did not occur "in connection with" the purchase or sale of any "covered security." Plaintiffs respectfully request that the Court enter an order under 28 U.S.C. §1447(c) directing defendants to pay their attorney's fees and costs incurred as a result of this improper removal.  A party opposing removal may seek attorney fees and costs where the removal, as here, "lacked an objectively reasonable basis." *Martin v. Franklin Capital Corp*., 546 U.S. 132, 141 (2005); *see also Patel v. Del Taco, Inc.*, 446 F.3d 996 (9th Cir. 2006) (no reasonable basis for removing complaint containing only state causes of action); *Ansley v. Ameriquest Mortgage Co*., 340 F.3d 858, 864-865 (9th Cir. 2003) (affirming district court's award of attorney fees where removing party failed to provide any authority in support of its argument that federal law preempted California law to justify removal); *Ehrlich v. Oxford Ins. Co*., 700 F. Supp. 495, 498 (N.D. Cal. 1988) (awarding attorney fees where removing party did not assert any "colorable ground supporting removal"); *cf. Lussier v. Dollar Tree Stores, Inc*., 518 F.3d 1062 (9th Cir. 2008) (purported basis for removal held not clearly unreasonable where asserted removal grounds involved interpretation of statutory provision of recently enacted Class Action Fairness Act legislation not at issue here); *DPCC, Inc., v. Cedar Fair, L.P.*, 21 F. Supp. 2d 488, 492 (E.D. Pa 1998) (awarding plaintiff attorney fees and costs incurred as a result of the removal because the defendants did "'not even [come] close' to raising a colorable argument supporting removal") (citation omitted).

/

/

/

VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order remanding the entire action to California state court, including both individual and class claims, and ordering Defendants to pay fees and costs incurred by Plaintiff in connection with removal and remand issues. If, however, the Court finds that some or all of the class claims are precluded by SLUSA, the Court should immediately dismiss the precluded claims and remand the individual claims and any non-precluded class claims to California state court. In the alternative, the Court should permit amendment of the Complaint to clarify the inapplicability of SLUSA to this action.

Dated: April 14, 2011

Respectfully submitted,

LAW OFFICE OF ADAM D. WHITE

By: /s/ Adam D. White
ADAM D. WHITE
The Transportation Building
225 Broadway, Suite 2000
New York, NY 10007
Tel: (212) 577-9710
Fax: (212) 577-9715

Attorneys for Plaintiff