IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | : | MASTER FILE NO.: 08 CIV. 11117 (TPG) |
| This Document Relates To: | : | |
| All Actions | : | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF SETTLING CLASS PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PARTIAL SETTLEMENT, CLASS CERTIFICATION AND DERIVATIVE FINDINGS**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

ARGUMENT ........................................................................................................... 2

I.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND
     ADEQUATE, AND SHOULD BE APPROVED BY THE COURT ............................... 2

     A.    The Settlement Is Procedurally and Presumptively Fair ......................... 2

          1.    Lakeview's Objection Should Be Overview .............................. 2

          2.    The Swap Counterparty Objections ........................................ 4

          3.    The FutureSelect Objection Is Moot ...................................... 4

          4.    The Haines Objections Should Be Overview .......................... 5

     B.    The Settlement Is Substantively Fair In Light Of The Second Circuit's
          Grinnell Factors ....................................................................................... 7

          1.    The Complexity, Expense And Likely Duration Of The Litigation
               Justifies The Settlement ........................................................... 7

          2.    The Reaction Of The Class To The Settlement ........................ 8

          3.    The Stage Of The Proceedings And Discovery Completed ...... 8

          4.    The Risk Of Establishing Liability And Damages ................... 9

          5.    The Risk Of Maintaining The Class Action Through Trial ....... 9

          6.    The Ability Of The Settling Defendants To Withstand A Greater
               Judgment ................................................................................. 9

          7.    The Range Of Reasonableness Of The Settlement In Light Of The
               Best Possible Recovery And The Attendant Risks Of Litigation ............ 10

II.    CLASS MEMBERS HAVE BEEN GIVEN ADEQUATE NOTICE OF THE
     PROPOSED SETTLEMENT ........................................................................ 11

III.   THE REQUIREMENTS FOR CERTIFICATION of THE SETTLEMENT
     CLASS HAVE BEEN SATISFIED ................................................................. 11

IV.   THE SCOPE OF THE SETTLEMENT RELEASE IS PROPER ........................... 13

CONCLUSION ....................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. Inc. v. Windsor,*
  521 U.S. 591 (1997)...................................................................................... 12

*Bennett Silvershein Assoc. v. Furman,*
  776 F. Supp. 800 (S.D.N.Y. 1991) .................................................................. 5

*Bertozzi v. King Louie Int'l, Inc.,*
  420 F. Supp. 1166 (D.R.I. 1976) ..................................................................... 4

*Bowens v. Atl. Maint. Corp.,*
  546 F. Supp. 2d 55 (E.D.N.Y. 2008) ............................................................... 5

City of Detroit v. Grinnell Corp.,
  495 F.2d 448 (2d Cir.1974) .......................................................................... 6, 7

*City P'ship Co. v. Jones Intercable, Inc.,*
  213 F.R.D. 576 (D. Colo. 2002) ...................................................................... 4

*Collins v. Olin Corp.,*
  No. 03-cv-945 (CFD), 2010 WL 1677764 (D. Conn. Apr. 21, 2010) ............ 2, 8, 10

*County of Suffolk v. Long Island Lighting Co.,*
  907 F.2d 1295 (2d Cir. 1990) .......................................................................... 8

*D'Amato v. Deutsche Bank,*
  236 F.3d 78 (2d Cir. 2001) .............................................................................. 2

*Evans v. Artek Sys. Corp.,*
  715 F.2d 788 (2d Cir. N.Y. 1983) .................................................................... 5

*Farinella v. PayPal, Inc.,*
  611 F. Supp. 2d 250 (E.D.N.Y. 2009) ............................................................. 8

*Grant v. Bethlehem Steel Corp.,*
  823 F.2d 20 (2d Cir. 1987) .............................................................................. 8

*Heilbrunn v. Hanover Equities Corp.,*
  259 F. Supp. 936 (S.D.N.Y. 1966) .................................................................. 4

*In re Agent Orange Prod. Liab. Litig.,*
  800 F. 2d 14 (2d Cir. 1986) ............................................................................. 5

*In re AOL Time Warner ERISA Litig.,*
  No. 02 CIV. 8853 SWK, 2006 WL 2789862 (S.D.N.Y. Sept. 27, 2006)............ 6

*In re Austrian and German Bank Holocaust Litigation,*
  80 F. Supp. 2d at 178 (S.D.N.Y. 2000)
  *aff'd sub nom. D'Amato v. Deutsche Bank,* 236 F.3d 78 (2d Cir. 2001) ............ 2, 10

*In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.,*
  607 F. Supp. 1312 (S.D.N.Y. 1985) ................................................................ 3

*In re BearingPoint, Inc. Sec. Litig.*,
   232 F.R.D. 534 (E.D. Va. 2006) ............................................................. 5

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ................................................................. 5

*In re Chicken Antitrust Ltig. Am. Poultry*,
   669 F.2d 228 (5th Cir. 1982) ................................................................. 5

*In re Corrugated Container Antitrust Litig.*,
   752 F.2d 137 (5th Cir. 1985) ................................................................. 7

*In re Dayco Corp. Derivative Sec. Litig.*,
   102 F.R.D. 624 (S.D. Ohio 1984) .......................................................... 4

*In re General Electric Capital Corp.*,
   MDL 1192, 2000 U.S. Dist. LEXIS 4808 (N.D. Ill. March 13, 2000) .................... 11

*In re IGI Sec. Litig.*,
   122 F.R.D. 451 (D.N.J. 1988) ............................................................... 12

*In re Indep. Energy Holdings PLC Secs. Litig.*,
   302 F. Supp. 2d 180 (S.D.N.Y. 2003) ..................................................... 5

*In re Indus. Diamonds Antitrust Litig.*,
   167 F.R.D. 374 (S.D.N.Y. 1996) ............................................................ 3

*In re Initial Pub. Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009) ............................................... 10, 11

*In re MetLife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ..................................................... 3

*In re Michael Milken and Associates Sec. Litig.*,
   150 F.R.D. 57 (S.D.N.Y. 1993) ............................................................ 10

*In re Pet Food Prod. Liab. Litig.*,
   629 F.3d 333 (3d Cir. 2010) ................................................................. 3

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
   148 F.3d 283 (3d Cir. 1998) ............................................................ 12, 13

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ..................................................... 2

*In re UnitedHealth Group S'holder Derivative Litig.*,
   631 F.3d 913 (8th Cir. Minn. 2011) ...................................................... 11

*Lazy Oil v. Witco Corp.*,
   166 F. 3d 581 (3d Cir. 1999) ................................................................. 5

*Malchman v. Davis*,
   588 F. Supp. 1047 (S.D.N.Y. 1984) ....................................................... 7

*Meetings & Expositions, Inc. v. Tandy Corp.*,
   490 F.2d 714 (2d Cir.1974) .................................................................. 7

*Menkes v. Stolt-Nielsen S.A.*,
    270 F.R.D. 80 (D. Conn. 2010) ................................................................. 4

*National Super Spuds v. New York Mercantile Exchange*,
    660 F.2d 9 (2d Cir. 1981) ..................................................................... 13

*Nuanes v. Insignia Financial Group, Inc.*,
    2008 WL 444951 (Court of Appeal, 1st Dist., Div. 3, Cal. Feb. 20, 2008).............................. 14

*Ortiz v. v. Fibreboard Corp.*,
    527 U.S. 815 (1999).......................................................................... 12

*Palmer v. Hosp. Auth. of Randolph County*,
    22 F.3d 1559 (11th Cir. 1994) ................................................................ 12

*Plummer v. Chem. Bank*,
    668 F.2d 654 (2d Cir. 1982) ................................................................... 6

*Powell v. Omnicom*,
    497 F.3d 124 (2d Cir. 2007) ................................................................... 7

*Robinson v. Metro-North Commuter R.R. Co.*,
    267 F.3d 147 (2d Cir. 2001) ................................................................... 3

*Taft v. Ackermans*,
    No. 02-7951 (PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007)........................... 9, 13

*TBK Partners, Ltd. v. Western Union Corp.*,
    675 F.2d 456 (2d Cir. 1987) ............................................................ 8, 13, 14

*Tow v. Rigas (In re Adelphia Commun. Corp. Sec. & Litig.)*,
    272 Fed. Appx. 9 (2d Cir. 2008)......................................................... 13, 14

*Viterbi v. Wasserman*,
    191 Cal. App. 4th 927 (Cal. App. 4th Dist. 2011) ................................................ 3

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. N.Y. 2005)........................................................ 11, 13

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) ................................................................. 2, 6

*Wolf v. Barkes*,
    348 F.2d 994 (2d Cir. 1965) ................................................................. 13

# INTRODUCTION[1]

Settling Class Plaintiffs respectfully submit this Reply Memorandum in further support of their Motion for Final Approval of Partial Settlement. The Settlement represents an excellent recovery, is fair, reasonable and adequate, and should be approved by the Court. Investors in the Settling Funds firmly support the Settlement as do the Settling Funds themselves. Nearly 4,800 notices were mailed. No member of the Insurance Subclass has objected to the Settlement. *See* St. and Sec. Settlement Decl. ¶ 5. The overall response has been very positive. Only two groups of objectors, each with special interests, have objected to the Settlement itself. The Haines Objectors (i.e., Madelyn Haines and Paul Zamrowski) are represented by attorney Vincent T. Gresham who actually attended the mediation and previously endorsed the Settlement in open court. The Lakeview Objectors[2] (represented by Benjamin Rozwood) have been litigating related cases in other forums and/or have been bitterly contesting consolidation lack standing insofar as they also seek exclusion from the Settlement. In any event, the objections themselves are misguided and should be rejected for the reasons discussed below.[3]

---

[1] With the Court's indulgence, rather than submit two separate reply briefs in support of the Settlement, the State and Securities Law Plaintiffs and the Insurance Law Plaintiffs are submitting a single joint brief of less than 20 pages rather than two 10 page reply memoranda to avoid repetition. Accompanying this memorandum is the Joint Declaration of Andrew J. Entwistle, Reed R. Kathrein and Jeffrey M. Haber in Further Support of Settlement ("State and Securities Actions Settlement Reply Declaration" or "St. and Sec. Settlement Reply Decl.").

[2] The Lakeview Objectors include: Lakeview Investments, LP, joined by Tomchin Family Charitable Trust, Edward L. White, and Rigdon O. Dees III. In this regard, we also note that no objector to the derivative aspects of the settlement has standing to make an objection as to the derivative settlement by any fund.

[3] Future Select made a partial objection to the settlement which has since been withdrawn.

# ARGUMENT

## I.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE, AND SHOULD BE APPROVED BY THE COURT

### A.   The Settlement Is Procedurally and Presumptively Fair

A proposed settlement is procedurally fair where as here, there are non-collusive, arms'-length negotiations. *See Collins v. Olin Corp.*, No. 03-cv-945 (CFD), 2010 WL 1677764, at *3-*4 (D. Conn. Apr. 21, 2010); *see also Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). As set forth in the State and Securities Actions Settlement Reply Declaration, there is no collusion and there are no disabling conflicts of interest; therefore, the proposed settlement is procedurally fair, and its terms are fair, reasonable, and adequate.[4]

### 1.   Lakeview's Objection Should Be Overview

- **Lakeview Does Not Have Standing:** Lakeview purports in its papers to exclude itself. Lakeview Obj. at __. To the extent the Court finds that Lakeview has done so, it lacks standing to object here and its efforts to mischaracterize its general objections as objections to the Fund Distribution Plan of Allocation or to derivative standing are unavailing.

- **The Representative Plaintiffs Are Adequately Representing the State Law Subclass:** Lakeview's Rule 23.1 standing objection has previously been addressed by the Court at the time of consolidation and more recently. In any event, the Langes are more than adequate representative plaintiffs.

- **Differences in State Law Do Not Create "Disabling" Conflicts of Interest:** The Third Circuit has recently rejected much the same argument Lakeview makes here, rejecting the assertion that differences in state law create disabling conflicts among class members that preclude a finding of adequate representation or procedural fairness. *In re Pet Food Prod. Liab.*

---

[4] Notwithstanding the Haines Objectors' counsels' open court endorsement of the Settlement, the Haines Objectors now find issues with its fairness. The Haines Objectors dispute the procedural fairness of the Settlement, proffering three factually and legally distinguishable reasons for their objection (Haines Obj. to Settlement Proc. at 1-4): (1) discovery must occur prior to negotiations (*but see In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 591 (S.D.N.Y. 2008) (confirmatory discovery occurring after settlement negotiations is proper to confirm the adequacy of the settlement)); (2) Plaintiffs' Class Counsel had insufficient knowledge to negotiate the Settlement (factually incorrect *see also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) (must have engaged in sufficient investigation to enable court to make intelligent appraisal of case)); and (3) Plaintiffs' Counsel simultaneously negotiate their fees alongside the substantive terms of the Settlement.

*Litig.*, 629 F.3d 333, 349 (3d Cir. 2010) ("We . . . find no merit in objectors' argument that state law differences created conflicts among class members that defeat adequacy of representation and preclude certification of a nationwide class"). *See In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 351 (E.D.N.Y. 2010); *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.*, 607 F. Supp. 1312, 1325 (S.D.N.Y. 1985) (finding that the litigation value of the released state law claims did not so significantly outweigh the value of the proposed settlement as to justify rejection of the settlement). Lakeview's failure to cite authority to the contrary is not surprising. State Law and Securities Plaintiffs were damaged as a result of the Settling Defendants' alleged misconduct. The same core nucleus of facts required to establish liability by State Law and Securities Plaintiffs are needed by absent Class Members – including California residents – to do the same. Therefore, the interests of State Law and Securities Plaintiffs are aligned with those of other Class Members. Lakeview's argument that the Representative Plaintiffs are inadequate representatives of California residents is similarly unsupported.

•    **Lakeview Fails to Demonstrate the Relative Strength of California-Based Claims:** Lakeview's contention that its state securities claims under Sections 25401, 25501, and 25504 of the California Corporate Securities Law, are stronger than all other claims is speculative at best. Lakeview's action was removed to federal court pursuant to SLUSA, and if it is not remanded, it may be preempted by federal law. Moreover, even if Lakeview's claims were not preempted, the "privity" requirements under California securities law impose substantial limitations on those claims. *See Viterbi v. Wasserman*, 191 Cal. App. 4th 927, 941 (Cal. App. 4th Dist. 2011) (no rescission can be had under California law against control persons, aiders, or abettors, without privity of contract).[5] Even assuming that Lakeview's California law claims are stronger than all other claims, Lakeview fails "to articulate how differences in the relative strength of the different claims would lead to conflicts of interest in class representation." *Pet Food*, 629 F.3d at 348.[6]

•    **Settlement of the Class Claims and Derivative Claims is Proper:** Lakeview's objection that settling both the class claims and derivative claims creates a disabling conflict is similarly misplaced.[7] "[T]he case law is virtually unanimous in holding that one counsel can

---

[5] State and Securities Law Class Counsel evaluated California corporate securities law claims (such as those advanced by Lakeview). State and Securities Law Class Counsel remain of the opinion that—in the case at hand—the incremental litigation value of California securities claims is low. (*Id.*)

[6] All claimants need not receive the same recoveries to be part of the same Class to be deemed typical under Rule 23(a)(3). Typicality is satisfied where the claims of the proposed class representatives arise from the same course of conduct that gives rise to the claims of the other class members, and where the claims are based on the same legal theory. *See Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001). The claims need not be identical on every issue; it is enough that significant common questions exist. *See In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374, 379 (S.D.N.Y. 1996). There is no dispute here that the claims of the Representative Plaintiffs arise from the same course of conduct that gives rise to the claims of the other Class Members, and that the Representative Plaintiffs' claims are based on the same legal theory as other Class Members. Consequently, the "typicality" requirement is satisfied.

[7] The class claims and derivative claims were filed separately and were later consolidated by this Court. "[T]he asserted 'antagonism' between the primary and derivative actions pressed herein is no more than a 'surface duality'. Since Plaintiffs' success as to either action is equally contingent upon the proof of the same nucleus of facts, they

3

represent a stockholder bringing *both* an individual *and* a derivative action." *In re Dayco Corp. Derivative Sec. Litig.*, 102 F.R.D. 624, 630 (S.D. Ohio 1984); *see also Heilbrunn v. Hanover Equities Corp.*, 259 F. Supp. 936, 939 (S.D.N.Y. 1966) ("As to the role of plaintiffs as both 'friend' and 'enemy' to the corporation, this surface duality is in fact a routine matter in the courts"); *City P'ship Co. v. Jones Intercable, Inc.*, 213 F.R.D. 576, 589 (D. Colo. 2002) ("[I]t is not unusual for a court to allow these claims to proceed by class action and derivatively at the same time"); *cf. Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 103 (D. Conn. 2010) (approving settlement with joint release of class claims and derivative claims).[8]

- White and Dees (represented by the same counsel as Lakeview have also sought to exclude themselves and lack standing. In any event, they make the same objections that Lakeview does and their objections should be similarly disposed of.

## 2. The Swap Counterparty Objections[9]

- Withdrawal of the Swap Counterparties Objector to the Settlement is under negotiation and the Parties have agreed no response is necessary at this time.

## 3. The FutureSelect Objection Is Moot

FutureSelect's only objection regarding the Settlement concerns the inclusion of

Plaintiff John Dennis, who is no longer a representative party. Accordingly, this objection is

now moot.

---

and their counsel can be expected to attack all fronts with equal vigor." *Bertozzi v. King Louie Int'l, Inc.*, 420 F. Supp. 1166, 1180 (D.R.I. 1976).

[8] Lakeview's argument that the Settlement releases potentially valuable claims against the Swap Counterparties and/or others is misguided. All of the Settling Funds' claims against third parties are preserved and available for assignment to Settlement Class Counsel as warranted. Issues related to the Swap Counterparties and other Third Parties will be addressed in the ordinary course of the winding-up of the Settling Funds which winding up will be done pursuant to the terms of the Partial Settlement, the relevant fund agreements and the Plan of Allocation for the Fund Distribution Account. No rights are waived and, in fact, the winding up of the Funds in this fashion is judicially efficient in all respects. *Id.*

[9] The Objecting Swap Counterparties are: ABN Amro Bank (Ireland) Ltd., HSBC Bank PLC, HSBC USA Inc., and the Royal Bank of Scotland, N.V., hereinafter, the "Swap Objectors").

### 4.    The Haines Objections Should Be Overview[10]

•       **Bernstein Liebhard LLP is Sole Lead Counsel in the Securities Action:** There is no basis in fact or law for the Haines Objectors' challenge to adequacy on the grounds Insurance Class Counsel Wolf Haldenstein was conflicted because it is personal counsel to Securities Lead Plaintiff, Yvette Finkelstein.  The Court appointed Bernstein Liebhard lead counsel in the Securities Action, and as such, Bernstein Leibhard (not Wolf Haldenstein) represents Mr. Finkelstein in her capacity as a Lead Plaintiff.  *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 186 (S.D.N.Y. 2003).  ("Once lead counsel is appointed, its obligations run to the class and the class alone.  If counsel other than lead counsel wants to keep abreast of the litigation, it must do so through its own efforts.")  *See also In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 541 (E.D. Va. 2006). (where, as here, there is no evidence of any actual conflict, "courts sensibly hold that speculative conflicts of interest do not preclude a finding that class counsel is adequate.")[11]

•       **Disqualification is Improper and Not Warranted:** The Haines Objectors cannot succeed in their procedurally improper "request" to disqualify Mrs. Finkelstein and Wolf Haldenstein.  Disqualification motions in the Second Circuit are given "'fairly strict scrutiny and that they are generally disfavored.'" *Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 86 (E.D.N.Y. 2008) (compiling cases).  The reason is, because, as is the case here, such motions are "interposed for tactical reasons and result in unnecessary delay." *Bennett Silvershein Assoc. v. Furman*, 776 F. Supp. 800, 802 (S.D.N.Y. 1991) (internal quotation omitted).  A party seeking disqualification "bear[s] the heavy burden of proving facts required" therefor. *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 794 (2d Cir. N.Y. 1983). The Haines Plaintiffs cannot meet their heavy burden.  Mrs. Finkelstein is represented by Bernstein Liebhard in her capacity as a representative of the Securities Subclass.  Ms. Finkelstein's choice of personal counsel has no bearing on her adequacy as class representative. *See In re Cavanaugh*, 306 F.3d 726, 739 n.22 (9th Cir. 2002). In any case, any challenge to the adequacy of representation must fail because the Haines Plaintiffs cannot demonstrate any resulting prejudice.[12] *See In re Chicken Antitrust Ltig. Am. Poultry*, 669 F.2d 228 (5th Cir. 1982); *Lazy Oil v. Witco Corp.*, 166 F. 3d 581, 590 (3d Cir. 1999); see also *"Agent Orange" Prod. Liab. Litig.*, 800 F. 2d at 19. *See also In re Agent Orange Prod. Liab. Litig.*, 800 F. 2d 14, 19-20 (2d Cir. 1986)

---

[10] The Haines Objections must be viewed in context. Counsel for the Haines Objectors (Vincent T. Gresham) never wanted to be part of the Securities Actions and fought bitterly against being transferred to this Court.  Although the Haines Objectors are members of the Securities Subclass, they knew that they did not have a large enough financial interest in the then-pending actions to secure a lead plaintiff position.  Knowing this, in an attempt to preserve a leadership position for himself, Gresham purposely filed the Haines Action in Massachusetts after lead plaintiff applications had already been made in this Court.  Gresham then opposed the Tremont Defendants' motion to the JPMDL to transfer the Haines Action to this Court, and after losing that battle, bitterly fought against consolidation with the Securities Action in this Court.  Despite his Herculean efforts, Gresham lost that motion and the Haines Action was appropriately consolidated with the Securities Action. *Id.*

[11] Significantly, not only was Wolf Haldenstein's personal representation of Ms. Finkelstein fully disclosed to the Court during the lead plaintiff proceedings, but the Court specifically rejected this very argument made by another Lead Plaintiff movant  See Supp. Fee Decl., ¶¶ 12-17.  There is no reason to re-litigate it again here.

5

• **The Haines Objectors Fail to Demonstrate How the Securities Claims are Stronger than the State Law Claims:** The Haines Objectors charge that an intra-class conflict exists because the Net Settlement Fund POA subordinates the value of the securities claims alleged in the Securities Action in favor of the state law claims alleged in the same action. The charge is misplaced.[13] The overlap of investors with state law claims with investors with securities law claims is so substantial as to be nearly coincident, rendering completely moot any suggestion that one type of claim be valued over another. By the same token, the securities law claims do not become stronger than the state law claims simply because MassMutual, a deep pocket, purchased Tremont in 2001 or because some of the "red flags" warning that Madoff was a fraud risk were not available until later in the Class Period (within the five year statute of repose). For the reasons discussed above in response to Lakeview's objections, the claims at hand stem from the same core conduct and any purported differences in the relative strength of the state law and securities law claims—or differences in direct and derivative claims—are insufficient to establish a disabling conflict.[14]

• **The Settlement Treats Investors in All of the Funds Similarly:** The Haines Objectors' contention that inclusion of the Tremont Funds (ironically other than the Market Neutral Funds they invested in) in the Settlement improperly disenfranchises the investors in those funds because they did not have representation in the Settlement. These objectors lack standing to raise such an objection because they did not invest in those funds, and even if they had such standing, all Tremont Fund investors in the Rye Funds are able to participate in the Settlement on the same basis as all other investors.

• **Settlement Hearing Should Not be a Trial on the Merits:** The Haines Objectors' discovery requests should be rejected for the same reasons that Lakeview's similar requests were denied by the Court during the May 5, 2011 telephonic hearing. *Plummer v. Chem. Bank*, 668 F.2d 654, 659 (2d Cir. 1982) ("district judges [should not] convert settlement hearings into trials on the merits."); *see also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir.1974) (courts must "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case"); *In re AOL Time Warner ERISA Litig.*, No. 02 CIV. 8853 SWK, 2006 WL 2789862 (S.D.N.Y. Sept. 27, 2006) (same). Indeed the Second Circuit has held that "parties' affidavits bearing on litigation history and evidence, discovery materials, and bankruptcy opinions provided satisfactory record." *Weinberger*, 698 F. 2d at 74. As demonstrated herein and in the previously submitted declaration and accompanying reply declaration, the Court has ample facts and evidence before it to evaluate the terms of the

---

[13] In doing so, the Haines Objectors repeat a previously-rejected argument that the Brainson Group was appointed solely to prosecute federal securities claims. As with their PSLRA based arguments, the Haines Objectors now argue that an "intra-class conflict" was created as early as the inception of the Actions, consolidation and lead plaintiff proceedings and consolidation of the Haines action. This, too, is a rehash of rejected arguments that were briefed and considered by the Court. As such, Plaintiffs' Settlement Class Counsel will not litigate them again.

[14] The Haines Objectors conveniently omit this procedural history in arguing that the rights of current limited partners and/or shareholders "have been unrepresented." Haines Class Cert. Obj. at 55-56. As shown in the St and Sec. Law Settlement Reply Declaration, derivative claims were alleged in the amended state law complaint. These claims were not "concocted" for purposes of settlement or asserted for a "fee grab". (Haines Class Cert. Obj. at 55-56.) Rather, these claims and the relief provided therefore (e.g., the Remaining Fund Proceeds) are properly included in the Settlement as claims that were brought and that will be released upon the Effective Date.

Settlement, the creation of the plans of allocation and the allocation of settlement proceeds to the insurance action and the Haines objectors offer no basis in law or fact to warrant an evidentiary hearing here. *See generally*, St. and Sec. POA Decl.; *see also Malchman v. Davis*, 588 F. Supp. 1047, 1061 (S.D.N.Y. 1984), *aff'd*, 761 F.2d 893 (2d Cir. 1985).[15] Therefore, the Haines Objectors' request for discovery and an evidentiary hearing should be denied.[16]

- **The Stipulation Preserves the Rights of the Settling Funds:** The Haines Objectors contend that the Remaining Funds are subject to the whims of the Settling Defendants and, therefore not safe from depletion. (Haines POA Obj. at 2). However, the Stipulation preserves the rights of the Settling Funds and by assignment or otherwise empowers Plaintiffs' Class Counsel to see to the orderly liquidation of the Settling Funds and the prosecution of any right necessary thereto and the Court has continuing jurisdiction over the Stipulation and its enforcement. *See Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir.1974) (court has duty to enforce settlement it approved); *In re Corrugated Container Antitrust Litig.*, 752 F.2d 137, 141 (5th Cir.) ("In a class action, the district court has a duty to see that any settlement it approves is completed, and not merely to approve a promise . . . ."), To argue as the Haines Objectors do, that the Settling Defendants will breach their obligations under the Stipulation (*Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir.2007) (citation omitted)) and somehow thwart Plaintiffs' Class Counsel and this Court in enforcement of the Settlement goes beyond the hypothetical to the absurd and should be rejected out-of-hand.

**B.    The Settlement Is Substantively Fair In Light Of The Second Circuit's Grinnell Factors**

Tellingly, while certain objectors take issue with random provisions of the Settlement, ***none*** of the objectors even ***discuss*** the *Grinnell* Factors (discussed at length in the moving papers and in the Declaration) which this Court must consider in assessing whether this settlement is fair, reasonable and adequate. *Grinnell*, 495 F.2d 448. This failure is by itself fatal to the efforts of objectors to undo the proposed Settlement.

**1.    The Complexity, Expense And Likely Duration Of The Litigation Justifies The Settlement**

No objector to the Settlement genuinely denies the high complexity, expense, or potential for protracted litigation if this case were to proceed to trial.

---

[15] This Court previously rejected the Lakeview objectors' request for similar discovery for the same reasons during the May 5, 2011 telephonic hearing.

[16] Similarly, since it is the Court that must act as fiduciary for the Class – not counsel for the Haines Objectors – their request for all communications to and from the Court concerning the Settlement that do not appear on ECF should also be denied. (Haines Sett. Proc. Obj. at 9).

### 2.   The Reaction Of The Class To The Settlement

The limited number of objections from Class Members coupled with the positive response from claimants demonstrates that Class Members approve of the Settlement. Notice has been provided in accordance with the Court's Notice Order; yet, only two objector groups object to the proposed Settlement (apart from the plans of allocation and motion for attorneys' fees). In fact, several other objections have been withdrawn. With limited exception, the remaining objectors lack standing to object to any aspect of the Settlement other than the settlement of derivative claims and the corresponding distributions to be made through the Fund Distribution Plan of Allocation – and those arguments have either previously been adjudicated or they fail to substantiate any of the perceived deficiencies. The modest number of objections supports the reasonableness of the proposed settlements. *Collins*, 2010 WL 1677764, at *4 (affirming approval of settlement where less than twelve percent of the class members objected to the proposed settlement).[17]

### 3.   The Stage Of The Proceedings And Discovery Completed

Ignoring the investigation and development of facts through this and related proceedings, as well as through the SEC, Bankruptcy and Trustee proceedings, Lakeview criticizes the Settlement process as lacking "adversarial" discovery. There is no magic to the adversarial process in discovery, rather the courts have long recognized the value of extensive confirmatory discovery. *Farinella v. PayPal, Inc.*, 611 F. Supp. 2d 250, 266 (E.D.N.Y. 2009) ("thousands of pages of key internal documents" in the course of mediation, "formed an adequate basis for the

---

[17] The Court could approve the proposed Settlement even if substantial portions of the Class had objected. *See, e.g. TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 462 (2d Cir. 1987) (affirming approval of settlement where between fifty-four and fifty-eight percent of class members objected); *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1325 (2d Cir. 1990) (affirming approval of settlement where "a majority" of class members objected); *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 23 (2d Cir. 1987) (affirming approval of settlement where between thirty-six percent and forty-eight percent of the total class may have objected).

plaintiffs to assess their claims."); *Taft v. Ackermans*, No. 02-7951 (PKL), 2007 WL 414493, at

*17-*19 (S.D.N.Y. Jan. 31, 2007) (Griesa, J.) (confirmatory discovery consisting of a six month

investigation, witness interviews, and a review of 1.8 million pages of documents provided the

plaintiffs with a clear view of the strengths and weaknesses of their cases and of the adequacy of

the settlement).  Co-Lead Counsel for the State Law Actions and Lead Counsel for the Securities

Actions conducted an investigation and confirmatory discovery spanning two-years, including a

dozen witness interviews, and a review of more than two million pages of documents.  Such

confirmatory discovery confirmed the evaluation that had already been independently developed

by Settlement Class Counsel and provided the Representative Plaintiffs with solid grounds to

evaluate their claims and the adequacy of the Settlement.[18]

### 4.     The Risk Of Establishing Liability And Damages

Objectors do not raise a serious doubt as to the high risks of establishing liability and

damages.  This factor strongly favors the proposed Settlement.

### 5.     The Risk Of Maintaining The Class Action Through Trial

No objector disputes the serious risk of maintaining the Class Action through trial –

particularly in light of the various dismissals of similar cases in this and other courts.

Accordingly, this factor also favors the proposed Settlement.

### 6.     The Ability Of The Settling Defendants To Withstand A Greater Judgment

Objectors effectively concede that the Tremont corporate entities cannot withstand a

greater judgment.  While Tremont's parent companies could withstand a greater judgment, the

---

[18] Lakeview draws the Court's attention to the Madoff Bankruptcy Trustee's lawsuit against Tremont.  However, "the possibility that more information may become available in the future [i.e., via formal investigation into claims against defendants] is not determinative--the Court's inquiry is into whether the plaintiffs have sufficient information to evaluate the adequacy of the proposed settlement, not whether they have availed themselves of all possible information." *Taft*, 2007 WL 414493, at *6.

likelihood of establishing liability on the part of the parent companies is commensurately lower.

> **7.     The Range Of Reasonableness Of The Settlement In Light Of
> The Best Possible Recovery And The Attendant Risks Of
> Litigation**

The Court's inquiry into whether the proposed settlement falls within the range of

reasonableness "is not susceptible of a mathematical equation yielding a particularized sum," *In*

*re Michael Milken and Associates Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993), but rather

"must be judged in light of the strengths and weaknesses of the plaintiff[s'] case." *In re Austrian*

*& German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 (internal quotation marks omitted).  As

discussed in Plaintiffs' opening papers and above, Plaintiffs face several significant obstacles in

surviving dispositive motions, establishing and maintaining a certified class, piercing the

corporate veils of Oppenheimer and Mass Mutual and proving Settling Defendants' liability and

damages.  *See Collins*, 2010 WL 1677764.  Moreover, recovery of investor losses would be

based largely on assumptions, "any of which, if wrong, could doom any recovery at all or

certainly drastically reduce any recovery even if successful at trial." *Initial Pub. Offering*, 671 F.

Supp. 2d 467 at 483-484.

Those difficulties aside, among other things, the Settlement:

- Recovers all assets from the Tremont Corporate entities post the wind up of the Settling Funds;

- Obtains a $100 million upfront cash payment;

- Obtains a 50% net interest in a Fidelity Bond litigation coverage (with a potential aggregate of $200 million);

- Provides for the preservation (and assignment as warranted) of all Settling Fund claims against third parties;

- Obtains the waiver of management fees;

- Obtains the exclusion of defendants and their families;

- Provides for the efficient winding up of the Funds (and maximizing the value of all Funds' claims, including the Trustee and Bankruptcy claims.).

Given these difficulties, as well as the other factors discussed above, the proposed Settlement falls well within the range of reasonableness.[19]

## II. CLASS MEMBERS HAVE BEEN GIVEN ADEQUATE NOTICE OF THE PROPOSED SETTLEMENT

The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 113-116 (2d Cir. N.Y. 2005). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements." *Id.* "Due process and Rule 23 merely require good faith compliance with the presumptively valid notice procedures ordered by the court." *In re General Electric Capital Corp.*, MDL 1192, 2000 U.S. Dist. LEXIS 4808 (N.D. Ill. March 13, 2000). Moreover, "the rule governing derivative actions requires only that notice be given to shareholders in 'the manner that the court orders.' Fed. R. Civ. P. 23.1(c)." *In re UnitedHealth Group S'holder Derivative Litig.*, 631 F.3d 913, 917 (8th Cir. Minn. 2011).

The Court ordered the notice plan at issue here, making all findings necessary under Rules 23 and 23.1 to cause the summary notice and Notice to be disseminated to limited partners and shareholders of the Settling Funds. Notice was provided pursuant to the Court's Order.[20]

## III. THE REQUIREMENTS FOR CERTIFICATION OF THE SETTLEMENT CLASS HAVE BEEN SATISFIED

Certification of the Settlement Class with the State Law and Securities Plaintiffs as class

---

[19] Notably, the Swap Objectors concede that the Representative Plaintiffs "negotiated a lucrative Settlement," putting individual allocation issues aside.

[20] The Lange Representative Parties invested in the same funds as Lakeview rendering Lakeview's standing and due process related objections moot and properly overviewed. The Notice-related objections by the Lakeview and the Haines Objectors are not even remotely supported by the facts and should similarly be overviewed. *See, e.g., Initial Pub. Offering*, 671 F. Supp. 2d at 485-486.

representatives enjoys broad support from the proposed Class. Only two objections – filed by the Haines Objectors and the Lakeview Objectors remain. Significantly, Lakeview's has no standing because it seeks exclusion but has no standing even if it did have standing its objections each relate to the existence of a Representative Party with standing for the fund it invested in and should be overviewed.

Lakeview and Haines Objectors' suggestions to the contrary, the Settlement Class is a cohesive one that has none of the structural defects that the Supreme Court identified in *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997), and *Ortiz v. v. Fibreboard Corp.*, 527 U.S. 815, 824-27 (1999). As this court observed in the Consolidation Order, all Class Members assert claims using the same common core of operative facts. *See also* JPMDL Order of June 11, 2010, at 1-2 ("[a]ll actions share factual questions relating to whether Tremont and its Rye division performed adequate due diligence before investing Tremont or Rye fund assets with [Madoff and BLMIS]."). Given the commonality, there is complete congruity between the claims asserted,[21] the release given, and the entitlement to compensation.

In fact, as discussed in the opening papers, the Class here meets all of the elements of numerosity, commonality, predominance, adequacy of representation and typicality required by Rule 23(a) and (c) and Rule 23.1 such that the Settlement Class here is properly certified by the Court.[22]

---

[21] *See Palmer v. Hosp. Auth. of Randolph County*, 22 F.3d 1559, 1563-64 (11th Cir. 1994); *In re IGI Sec. Litig.*, 122 F.R.D. 451, 461 (D.N.J. 1988) (pendent state law negligent misrepresentation claim certified when claims presented essentially same issues asserted by federal securities law claims). *See also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 313 (3d Cir. 1998) (holding that availability of "other" claims to certain Class members did not render certification improper where the crux of the claims were the same - that is, a common scheme to defraud).

[22] The claims of all of the Rye and Tremont Funds arise out of a common nucleus of operative facts. The Tremont Funds were exposed to Madoff by their investments in various Rye Funds, all of the Settling Funds have approved the Settlement in all respects including the plan for the Court supervised wind up of the Settling Funds by Plaintiffs Class Counsel in accord with various Settling Fund documents and the Fund Distribution Plan of Allocation, and thus both Rule 23(a) and Rule 23.1 are plainly satisfied here. In any event, the Settling funds themselves have the

## IV.    THE SCOPE OF THE SETTLEMENT RELEASE IS PROPER

Not surprisingly, in settling the many cases against it, the Settling Defendants bargained

for and obtained a broad release of claims with respect to Madoff-related investment losses.

Contrary to the suggestion of certain objectors, this is fully permissible.[23]

Some objectors mistakenly expressed concern that the Settlement may release certain

potentially-culpable third parties or had other questions they believed required clarification.[24]

Those requests for clarification have been accommodated to the extent possible and the

objections gave been withdrawn.  The proposed Settlement releases the Corporate Settling

Defendants, Settling Funds, and Individual Settling Defendants.  Naturally, the release also

covers various related parties, including affiliates and agents of the Corporate Settling

Defendants, but "in each instance only in their capacity as such."[25]  But to be clear, the Settling

---

absolute power to release the derivative claims, regardless of whether the derivative plaintiffs have standing, particularly in light of Judge Friendly's decisions in *National Super Spuds v. New York Mercantile Exchange*, 660 F.2d 9, 19 (2d Cir. 1981) ("The corporation has the power to release its claims whether asserted in the complaint or not"), and *Wolf v. Barkes*, 348 F.2d 994 (2d Cir. 1965) ("we conclude that the corporation''s power to make its own out-of-court settlements, subject to normal shareholder redress, is not abolished by a procedural rule that does not embrace these either in its language or in its primary rationale"). While Lakeview cites *Superspuds*, it fails to recognize that the court in that case found the subject entity did, in fact, have the ability to release the derivative claims at issue.

[23] Refusing to grant a broad settlement release would undermine multi-district class settlements because defendants would be concerned that their exposure to liability would be too great. *Prudential*, 261 F.3d at 366-67.

[24] *See* objection of KPMG and E&Y and the objection by the Annuity Insurers both of which are now withdrawn.

[25] Lakeview argues that Plaintiffs may not release claims under California securities statutes in the absence of a separately represented subclass. To the contrary, the law is well established in this Circuit and others that class action releases may include claims not presented *and even those which could not have been presented* as long as the released conduct arises out of the identical factual predicate as the settled conduct. *Tow v. Rigas (In re Adelphia Commun. Corp. Sec. & Litig.)*, 272 Fed. Appx. 9, 13-14 (2d Cir. 2008); *see also Wal-Mart*, 396 F.3d at 106-107; *TBK Partners*, 675 F.2d at 460; *Taft*, 2007 WL 414493, at *8 (Overruling objections that the settlement release would encompass claims that might otherwise be brought in other jurisdictions; "That the release is not limited to claims brought under the laws of the United States of America or brought in American forums does not inform the Court's analysis"). The interests of class members need only be substantially similar, not identical. *See Tow*, 272 Fed. Appx. at 13-14. Here, the released conduct arises out of the same factual predicate as the settled conduct (i.e., Defendants' alleged misrepresentations or lack of due diligence concerning the Madoff Ponzi scheme). This common nucleus of facts supported the Judicial Panel on Multi-District Litigation's decision to transfer the Lakeview case to this Court for consolidation with the pending Actions. Moreover, both Lakeview and the Representative Plaintiffs share a common interest in maximizing their recovery for losses attributable to the alleged misconduct. And, of course, the Settling Funds have the power to release their own claims whether asserted in the complaint or not. Thus, the Settlement may release state law claims (including claims under California securities

13

Parties did not negotiate to release, nor does the proposed Settlement purport to release, actual or potential claims against Swap Counterparties (like ABN Amro Bank), or claims against sub-feeder funds (like Meridian or Foredestine), or claims against auditors (like KPMG and EY).[26]

---

statutes) whether or not those claims could have been presented in the underlying actions.  White, Dees and Tomchin join in Lakeview's objection and can be dealt with in the same manner.

[26] The Haines Objectors' suggestion that the term "Released Claims" can include any claim, whether related or unrelated to Madoff, that "relate[s] to the management or administration of the Settling Funds." (Haines POA Obj. at 3.)  Even a cursory review of the term "Released Claims" shows that only claims concerning the same operative facts and circumstances as the Class claims are being released.  In *Nuanes v. Insignia Financial Group, Inc.*, No. A115240, 2008 WL 444951, at *7 & n.10 (Court of Appeal, 1st Dist., Div. 3, Cal. Feb. 20, 2008), the court rejected a similar objection asserted by Vincent T. Gresham, the Haines Objectors' counsel, finding that the "objection has no merit."  The court noted that the parties entered into a stipulation to make it "abundantly clear", "reinforce[e] the plain language" of the release, and remove "any possible confusion over the meaning of the release ..." that "the parties intend to release defendants only for wrongs committed up to the date of the settlement agreement and not beyond."  *Id.*  State Law and Securities Plaintiffs see no need to reinforce what is "abundantly clear" on its face.  *See also TBK Partners,* 675 F.2d at 460-61.  Such a reading is obvious, belies the effort to persuade otherwise, and should be rejected.

## CONCLUSION

For the foregoing reasons and those set forth in Plaintiffs' opening briefs, Settlement Class Counsel and the Representative Plaintiffs respectfully request that the Court grant final approval to the proposed Settlement, Class Certification, and Derivative Findings.


Dated: May 25, 2011
      New York, New York


BERNSTEIN LIEBHARD LLP

Stanley D. Bernstein
Jeffrey M. Haber
Stephanie M. Beige
Jeffrey D. Lerner
10 East 40th Street, 22nd Floor
New York, NY 10016
(212) 779-1414
(212) 779-3218 (fax)
bernstein@bernlieb.com

*Lead Counsel for the Securities Actions*


ENTWISTLE & CAPPUCCI LLP

Andrew J. Entwistle
Robert N. Cappucci
280 Park Avenue, 26th Floor West
New York, NY 10017
(212) 894-7200
(212) 894-7272 (fax)
aentwistle@entwistle-law.com

*Interim Co-Lead Counsel for the State Law Actions*

HAGENS BERMAN SOBOL SHAPIRO LLP

Reed R. Kathrein
Lee Gordon
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
(510) 725-3000
(510) 725-3001 (fax)
reed@hbsslaw.com
lee@hbsslaw.com

ROBBINS GELLER RUDMAN & DOWD LLP

David A. Rosenfeld
Edward Y. Kroub
58 South Service Road, Suite 200
Melville, NY  11747
(631) 367-7100
(631) 367-1173 (fax)
drosenfeld@rgrdlaw.com


WOLF HALDENSTEIN ADLER FREEMAN &
HERZ LLP

Daniel W. Krasner
Demet Basar
270 Madison Avenue
New York, NY  10016
(212) 545-4600
(212) 545-4653 (fax)
basar@whafh.com

*Interim Co-Lead Counsel for the Insurance
Actions*

16