IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION<br><br>This Document Relates To:<br><br>All Actions | MASTER FILE NO.:<br>08 CIV. 11117 (TPG) |

## JOINT DECLARATION OF ANDREW J. ENTWISTLE, REED R. KATHREIN AND JEFFREY M. HABER IN FURTHER SUPPORT OF PARTIAL SETTLEMENT, CLASS CERTIFICATION, AND DERIVATIVE FINDINGS

### (The "State and Securities Actions Settlement Reply Declaration")

Andrew J. Entwistle and Jeffrey M. Haber, admitted to practice law in the State of New York and this Court, and Reed R. Kathrein, admitted to practice pro hac vice in this action, hereby declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1.      Andrew J. Entwistle is a partner in the law firm of Entwistle & Cappucci LLP, co-lead counsel along with Hagens Berman Sobol Shapiro LLP for the plaintiffs in the consolidated State Law Actions.[1]

2.      Reed R. Kathrein is a partner in the law firm of Hagens Berman Sobol Shapiro LLP, co-lead counsel along with Entwistle & Cappucci LLP for the plaintiffs in the consolidated State Law Actions.

---

[1]  Defined terms have the same meaning as set forth in the Stipulation of Partial Settlement dated February 25, 2011 (the "Stipulation").

3.      Jeffrey M. Haber is a partner in the law firm of Bernstein Liebhard LLP, lead counsel for the plaintiffs in the consolidated Securities Actions.

4.      We respectfully submit this joint declaration in further support of Settling Class Plaintiffs' motion for final approval of the Partial Settlement, Class Certification, and Derivative Findings (the "State and Securities Actions Settlement Reply Declaration"). We have personal knowledge of the matters pertaining to the actions for which we serve as lead counsel described herein and are competent to testify with respect thereto.

5.      We believe the Settlement represents an excellent recovery, is fair, reasonable and adequate, and should be approved by the Court. Our belief in the Settlement is manifested by the reaction of the Class and limited partners of the Settling Funds. Nearly 4,800 notice packets were mailed to these investors and only two groups of objectors have objected to the Settlement itself. No member of the Insurance Subclass has objected to the Settlement.

6.      The Settlement is the result of hard fought, non-collusive, arm's-length negotiations, which included two days of mediation before retired federal district court judge Layn Phillips. At the conclusion of the second day of the mediation, the Settling Parties entered into a Memorandum of Understanding ("MOU") setting forth the principal terms of the Settlement. Only after the Settling Parties agreed on the substantive terms of the agreement-in-principle on the second day of mediation, did they negotiate the so-called "quick-pay" provision. No other terms relating to attorneys' fees were discussed.

7.      We believe the Settlement reflected in the Stipulation marks a significant recovery for the Settlement Class, as well as current limited partners and/or shareholders of the Settling Funds, particularly in light of the risks and costs of continued litigation. The proposed Settlement offers an immediate, substantial, and tangible recovery of lost investment monies. In

the words of Judge Layn R. Phillips (retired), who acted as mediator, "the proposed Settlement is not only fair and reasonable, but an excellent result for Settlement Class Members....I believe that the Settlement and allocation were negotiated by the parties at arm's-length, carefully and in good faith, and that the negotiations were hard-fought and resulted in the best possible recovery and allocation under the circumstances." Declaration of Layn R. Philips in Support of Final Approval of Settlement (attached hereto as Exhibit B). ¶ 10.

8.     Although the Settling Parties reached an agreement in principle to settle the Actions during the pendency of Defendants' motions to dismiss the State Law and Securities Actions, the Settling Parties were well informed of the strengths and weaknesses of their respective positions. For more than a year, we conducted an extensive investigation of the facts and circumstances that formed the underlying basis for the claims asserted in our respective actions, and reviewed the papers and pleadings in various related actions, including the SIPC and Madoff Trustee Proceedings. After executing the MOU, we continued our investigations, continued to review the papers and pleadings in the related actions, including the SIPC and Madoff Trustee Proceedings, and engaged in extensive confirmatory discovery concerning the claims and defenses asserted in the Actions and developing the merits of potential assigned claims. We believe that our pre- and post-MOU efforts were, and are, sufficient to evaluate the merit and magnitude of the Settled Claims, and the risks of continued litigation of the Actions.

9.     Our confidence in the fairness and reasonableness of the Settlement is supported by the absence of any analysis, let alone discussion, of the *Grinnell* factors by the objectors. Indeed, *none* of the objectors even *discuss* the *Grinnell* factors (discussed at length in the opening papers and accompanying declaration), which this Court must consider in assessing whether the Settlement is fair, reasonable and adequate.

a. The Complexity, Expense And Likely Duration Of The Litigation Justifies The Settlement

10.    As we explained in our opening papers, these actions are complex, difficult to litigate, and expensive to take to trial.  No objector to the Settlement denies the complexity, expense, or potential for protracted litigation if this case were to proceed to trial.

b. The Reaction Of The Class To The Settlement

11.    Pursuant to the Court's Notice Order, notice has been provided to Members of the Class and limited partners and/or shareholders of the Settling Funds. Only two objector groups object to the proposed Settlement (apart from the plans of allocation and motion for attorneys' fees). The limited number of objections from Class Members coupled with the positive response from Claimants demonstrates that Class Members and limited partners and/or shareholders of the Settling Funds approve of the Settlement.  In fact, several objections have been withdrawn.  With limited exception, the remaining objectors lack standing to object to any aspect of the Settlement other than the settlement of derivative claims and the corresponding distributions to be made through the Fund Distribution Plan of Allocation – and those arguments have either previously been adjudicated or they fail to substantiate any of the perceived deficiencies.  We believe that the modest number of objections supports the reasonableness of the proposed Settlement.

c. The Stage Of The Proceedings And Discovery Completed

Ignoring the investigation and development of facts through this and related proceedings, as well as through the SEC, Bankruptcy and Trustee proceedings, some objectors criticize the Settlement process as lacking "adversarial" discovery.   As we note in the Reply Settlement Memorandum, there is no magic to formal discovery, rather the courts have long recognized the value of extensive confirmatory discovery.  As noted, we conducted an extensive investigation and substantial confirmatory discovery spanning two-years, including interviewing a dozen

witnesses in confirmatory discovery and scores more during our ongoing investigation, and reviewing more than two million pages of documents.  Such investigation and confirmatory discovery confirmed our view of the strengths and weaknesses of the Actions and provided the Representative Plaintiffs with solid grounds to evaluate their claims and the adequacy of the Settlement.

>   d.  The Risk Of Establishing Liability And Damages

12.     None of the objectors raise any doubt as to the substantial risks of establishing liability and damages.

>   e.   The Risk Of Maintaining The Class Action Through Trial

13.     None of the objectors dispute the substantial risk of maintaining the Class Action through trial – particularly in light of the various dismissals of similar cases in this and other courts.

14.     As fully discussed in the Joint Declaration of Andrew J. Entwistle, Reed R. Kathrein and Jeffrey M. Haber in Support of Settlement ("Opening Settlement Dec.") (Docket No. 438), we believe the Settlement was fairly and aggressively negotiated (Opening Settlement Dec. ¶¶ 62-63); that significant litigation risks underscore the fairness of the Settlement (*Id.* ¶¶ 64-84); and that the Settlement recovers the maximum recovery possible for the Class (*Id.* ¶¶ 92-94).

15.     In addition to the accompanying Reply Settlement Memorandum, we address the objections below.

## I.     THE LAKEVIEW OBJECTIONS

16.     On December 10, 2010, Lakeview Investments, LP ("Lakeview") filed a complaint in California state court asserting claims under California corporate securities law (Sections 25401, 25501, and 25504).  (Lakeview Obj. at 3.)  Lakeview's state court action was

removed to federal court pursuant to SLUSA, then transferred by the Judicial Panel on Multidistrict Litigation to the Southern District of New York and consolidated with the State Law Action on April 13, 2011. (Id. at 3-4.) Lakeview is bitterly opposing removal and seeking remand to state court.

17.    Lakeview is also opposing consolidation with the State Law Action. On April 15, 2011, Lakeview filed a brief with this Court arguing against consolidation, stating, among other reasons, that "Plaintiffs in the State [Law] Action seek to represent class members for whom they have no standing to represent, and they are asserting claims that they themselves do not possess and that they, therefore, lack standing to pursue on behalf of others." (08-11117 Docket No. 424). Lakeview remains consolidated with the State Law Action.

18.    We believe that Lakeview's objections should be considered against this background.

19.    On or about May 11, 2011, Lakeview filed its *request for exclusion* from the settlement. At the same time, Lakeview filed its *objections* to the Settlement. Lakeview is "joined" in part by three other opt-out investors: Tomchin Family Charitable Trust, Edward L. White, and Rigdon O. Dees III. The Lakeview objectors do not have standing to object to the terms of the Settlement insofar as they have excluded themselves from the Settlement Class. The Lakeview objections should be limited to the derivative interests affecting all investors (i.e., the Fund Distribution Account Plan of Allocation).

20.    Among Lakeview's objections is a belief that the Net Settlement Fund Plan of Allocation ("NSF POA") fails to recognize the purported relative strength of Lakeview's California securities claims. We have considered the relative strength of claims that could be

asserted by Members of the Class, but rejected a plan of allocation for the Net Settlement Fund based various Class Members' legal claims under different state laws.

21.    One week prior to filing its objection, Lakeview requested access to confirmatory discovery, as part of its effort to prevent approval of the Settlement. In a telephonic conference held on May 5, 2011, the request was denied by this Court.

22.    Lakeview purchased limited partnership interests in the Rye Select Broad Market Fund, L.P. and Rye Select Broad Market XL Fund, L.P. Lakeview does not contend that Settling Plaintiffs lack standing with respect to either of these funds. (Lakeview Obj. at 1, 10.) To the extent Lakeview objects to the settlement of claims against funds in which Lakeview was not invested, Lakeview lacks standing to do so.

23.    We note that only the Rye Funds were direct investors with Madoff. The Tremont Funds (i.e., the funds of funds) were only exposed to Madoff indirectly through their investments in one or more of the Rye Funds. In this regard, the Tremont Funds are investors in the Rye Funds.

24.    Notwithstanding Lakeview's objections, we believe that there are no derivative standing issues. Each of the Settling Funds has consented to the Partial Settlement; to the derivative relief; and to the winding up of the Settling Funds under the supervision of Plaintiffs Class Counsel and this Court all pursuant to the Partial Settlement, relevant orders of the Court, the Fund operating documents and the Fund Distribution POA. The same is true for the representative derivative plaintiffs.

25.    Lakeview's arguments aside, the Settlement does not release claims on behalf of the Settling Funds against independent third parties.

26.     To the extent Lakeview comments in passing that purported conflicts between class members prevent any finding of commonality or predominance under Rule 23(a)(2) or (b)(3), the comment is baseless.  The Settling parties have identified common issues for settlement purposes that predominate over individual issues; satisfaction of the predominance criteria is laid out in the moving papers.  Ironically, despite Lakeview's position that the Settlement should be rejected because Settlement Class Counsel cannot adequately represent investors in different funds, Lakeview's counsel purports to represent investors in different funds as well.

## II.     THE HAINES OBJECTIONS

### A.     Procedural History

27.     On March 26, 2009, the Court entered a consolidation order (the "Consolidation Order") that, among other things, created three separate groups of consolidated actions:  the Securities Actions, the State Law Actions, and the Insurance Actions.  Bernstein Liebhard was appointed sole Lead Counsel of the Securities Actions; Entwistle & Cappucci and Hagens Berman were appointed Co-Lead Counsel of the State Law Actions; and Robbins Geller and Wolf Haldenstein were appointed Co-Lead Counsel of the Insurance Actions.  As discussed in more detail in the accompanying Reply Fee Declaration, the Court appointed Wolf Haldenstein Co-lead Counsel of the Insurance Actions notwithstanding the fact that Wolf Haldenstein acted as personal counsel to Yvette Finkelstein, one of the three Court-appointed Co-Lead Plaintiffs in the Securities Action.  This fact was stated by Wolf Haldenstein in open court during the consolidation hearing.

28.     On June 11, 2009, the Judicial Panel on Multidistrict Litigation transferred to the Court for consolidated or coordinated pre-trial proceedings two related actions originally filed in

the United States District Court for the District of Massachusetts, captioned *Haines v. Mass. Mut. Life Ins. Co.*, et al., Civil Action No. 09-10182-RWZ (the "Haines Action").

29.     On September 25, 2009, following substantial briefing and argument by Plaintiffs' State and Securities Law Settlement Class Counsel and a bench ruling at the hearing, the Court issued an order consolidating the Haines Action with the Securities Actions.

30.     The Haines Objectors and their counsel bitterly opposed transfer by the JPMDL and consolidation of their action with the Securities Action.  They did so notwithstanding the commonality of claims, witnesses and locus of evidence in this District.  The vitriol and purple prose that form the core of the Haines Objectors' opposition to transfer and consolidation are repeated here in their objections.

31.     As discussed above, an agreement in principle to partially settle the Actions was reached after a two-day mediation session on March 17 and 18, 2010.  Counsel for the Haines Objectors, Vincent T. Gresham, attended both days of the mediation session.  At the time that the Settling Parties signed the memorandum of understanding, which memorialized the substantive terms of the Settlement, Gresham did not object to any of the terms.

32.     Gresham filed papers with the Court objecting to a settlement that had not yet been fully papered and an as-yet-undrafted plan of allocation.  On September 13, 2010, Gresham represented to the Court that "[his] clients support the settlement."

**B.     The Haines Objectors' Notice Objections**

33.     On April 5, 2011, the Court approved the Notice Order, pursuant to which over 4,800 notice packets were mailed to Class Members and limited partners and/or shareholders of the Settling Funds.  The Notice provides all necessary information, including a description of the Settlement and the release, describes the litigation, alerts investors to the proposed Settlement, summarizes the terms and procedures of the Settlement, tells investors about the procedures and

9

deadlines for submitting objections, requests for exclusions, and claims, includes a copy of the

Proof of Claim Form and Release, informs investors about the date, time, and place of the final

fairness hearing, identifies Plaintiffs' counsel, and tells recipients how to obtain more

information, by mailed request, by telephone, by-email, by Settlement Class Counsel, or by

visiting a website created for the Settlement, which includes copies of the Notice, Stipulation of

Partial Settlement, Plans of Allocation, Claim Forms, and a summary of important dates and

provides a toll-free phone number, e-mail, and mail address for investor questions.

    34.    The Notice was drafted to ensure Class Members and current limited partners

and/or shareholders would have more than sufficient information to make an informed decision

about the Settlement and their options.  In doing so, we recognized that there are a number of

unresolved factors that could affect the amount in the Fund Distribution Account.  One of the

factors is the result in the Madoff Trustee Proceedings.  The Notice reflects this.  There is

nothing in the Notice stating that there will be immediate payment from the Madoff Trustee

Proceedings.

    35.    The Notice includes a discussion of the plans of allocation and attaches the plans

for Class Members and limited partners and/or shareholders to read.

    36.    We believe that the Net Settlement Fund POA treats all Class Members (other

than the sophisticated swap counterparties) equally.  Allocating based on (state vs. federal or

state vs. state) legal claims was inappropriate here where success on each of the claims was far

from assured.  In fact, the likelihood of proving culpable participation against, or piercing the

corporate veil as to, MassMutual/Oppenheimer was always a risk in this case, a reality which

confirmatory discovery validated.

37.    The Notice informs Class Members about the Net Settlement Fund POA.  For example, the Notice, at Question 10, specifically explains the factors that will affect the amount of recovery under the Net Settlement Fund POA:  "Your share of the Net Settlement Fund will depend on many things, including: (a) the amount you invested (i.e., purchased) in limited partnership interests in or shares of the Settling Funds; (b) whether you redeemed all or a portion of your investment in limited partnership interests or shares in the Settling Funds; (c) the percentage of your fund's assets that were invested with Madoff; and (d) the amount of the recognized losses of other State Law Subclass Members and Securities Subclass Members."

38.    In the Notice, the "Statement of Plaintiffs' Recovery explains that the average recovery under the Net Settlement Fund is 5.7% of actual losses.  This number relates only to the up-front cash position of the partial settlement which may be substantially augmented by any recovery in the Fidelity Bond Litigation, the litigation of the Assigned Claims (including claims against KPMG), the recovery of all post-liquidation Tremont corporate assets and the net proceeds of the Trustee Proceedings.  The Notice does not state or imply "that just 5.7% was all they could ever recover even if plaintiffs 'prevailed on each claim asserted.'" (Haines Notice Obj. at 8.)

39.    We note that recently, MassMutual and the other plaintiffs in the Fidelity Bond Litigation successfully defeated the defendants' motion to dismiss.  Recognizing that litigation is risky and that today's success does not assure a later recovery, we are nonetheless encouraged by the progress of that litigation which we are actively supporting.

40.    The Notice identifies the Swap Counterparties as Class Members entitled to receive a recovery under the plans of allocation.  The Notice advises Class Members of the parties responsible for creating the Net Settlement Plan of Allocation: Settling Plaintiffs and their

11

damages expert. (Notice at 3.)  The Swap Counterparties are not identified.  As such, there is no

reason to state that the Swap Counterparties did not agree to the discounted recovery.

41.    As noted above, the Notice provides Class Members and limited partners and/or

shareholders of the Settling Funds with all salient and required information for them to make

informed decisions about the Settlement and their rights thereunder.  Notwithstanding, the

Haines Objectors maintain that the Notice omits important information about attorneys' fees.

The Notice and the Stipulation, to which the Notice directs Class members and limited partners

and/or shareholders, fully discuss all relevant information about attorneys' fees.

42.    On the first page of the Notice, Class Members are advised that they can review

"[e]ach and all of the documents related to the Settlement ... at the offices of Plaintiffs'

Settlement Class Counsel ..." or "on the Settlement website set up by the Notice and Claims

Administrator ...."  The Notice later advises Class Members that they can obtain "more details"

about the Settlement "in the Stipulation."  Notice at Question 27.  The Stipulation further

describes the customary quick-pay provision and statement that the Settling Defendants will

"take no position" with respect to any matter related to attorneys' fees and expenses.  Thus, no

information about fees were withheld or omitted from Class Members.

43.    We note that the quick-pay provision was not discussed and agreed upon until the

second day of mediation, after the Settling Parties agreed on the substantive terms of the

agreement-in-principle.  No other terms relating to attorneys' fees were discussed.  As noted, the

MOU, which the Settling Defendants drafted, memorialized the agreed-upon terms.  Attorney

Gresham did not oppose or object to any of these terms, including the quick-pay provision.

44.    We also note that the "take no position" provision, in which the Settling

Defendants agreed not to take a position with regard to our application for fees and

reimbursement of expenses, was not agreed upon until the Settling Parties drafted the Stipulation – well after the substantive terms of the Settlement had been reached.

45.    The Notice advises Class Members that 8.2% of the Settlement proceeds are to be allocated to the Insurance Actions pursuant to "a mediation conducted under the auspices of an independent mediator ... ." The purpose of this mediation was "to resolve allocation differences between the State Law Actions [and] the Securities Actions and the Insurance Actions." Notice at 9-10. The Stipulation also discusses the fact and purpose for the mediation with counsel for the Insurance Plaintiffs. § 1 at 6. The mediation was conducted on August 13, 2010 before Judge Phillips and Judge Brett (as arbitrator). We prepared the mediation statements as lead counsel in our respective actions. The mediation was negotiated by us, on the one hand, and Insurance counsel, on the other hand, at arm's length and in good faith. Wolf Haldenstein, co-lead counsel for the Insurance class and personal counsel to Yvette Finkelstein, had no role in the preparation of the mediation statements, presentations made during the mediation, or decisions made on behalf of the Securities Subclass or the State Law Subclass. The negotiations were hard fought and resulted in an allocation that we believe is fair and reasonable. The participation of Judges Phillips and Brett provided structural assurance that the allocation was determined in a fair and reasonable way. See Declaration of Layn R. Philips in Support of Final Approval of Settlement at ¶ 10, attached hereto as Exhibit B.

46.    The Notice accurately informs Class Members of their right to object to any aspect of the Settlement. This includes the right to object to: the 8.2% allocation of the Net Settlement Fund to the Insurance Subclass; the settlement of derivative claims; the FDA POA, including limited partners who opt out of the Class; and counsel's request for a fee award based

on 3% of the Rye Funds' portion of the FDA. The Notice also informs Class Members of their right to request exclusion; and Limited Partners of their right to object.

47.     The Notice states that when objecting, a Member can tell the Court that he wants the Court to, among other things, "disapprove the Settlement." The Notice does not state or imply that objecting to one or more aspects of the Settlement is the equivalent of telling the Court to disapprove the entire Settlement.

48.     The Notice explains that the "Remaining Fund Proceeds," which is a component of the Fund Distribution Account, means the funds that remain after resolution of the claims by the Tremont Defendants in the Madoff Trustee Proceedings (also a defined term that means all proceedings, such as the one against the Tremont Funds, initiated by Irving Picard, the Madoff Trustee). The term is defined in the Stipulation and incorporated into the Notice. Therefore, Partners and limited partners and/or shareholders are informed that the Tremont Defendants are parties in the Madoff Trustee Proceedings. Class Members interested in learning more about the Madoff Trustee Proceedings can review the publicly available filings.

49.     The potential outcomes of other pending actions against the Settling Defendants – and their potential impact on the Settlement – are speculative, and thus a discussion of such actions were not included in the Notice. (Haines POA Obj. at 3). The Stipulation provides that the claims in these other actions are being released upon entry of the Final Judgment.

50.     The Notice describes that the Settlement includes Assigned Claims from the Settling Defendants. The Assigned Claims belong to the Settling Defendants, including the Settling Funds. Plaintiffs will stand in the shoes of the Settling Funds. The elements of those claims are different than the federal securities claims that investors brought against the Non-Settling Auditor Defendants. In addition, the Assigned Claims include claims against Bank of

14

New York.  The Notice does not include a discussion of Plaintiffs' claims against non-settling defendants, as Class Members and limited partners can inform themselves of such claims by going to court, via ECF/PACER, or at Settling Plaintiffs' Counsel's offices.  For these reasons, we did not include information that was publicly available and that does not affect the fairness, reasonableness, or adequacy of the Settlement.

51.     The Stipulation clearly informs limited partners and/or shareholders that a component of the Fund Distribution Account is the Remaining Funds.  Aside from the title itself, the definition, as noted, makes it clear that monies are those that remain after resolution of the Madoff Trustee Proceedings.  Nowhere does the definition or the Notice state or imply that the Remaining Funds will be "created" by counsel.

52.     The Haines Objectors object to various aspects of the Notice as it relates to the Fund Distribution Account and the Fund Distribution Account Plan of Allocation ("Fund Distribution POA").  We believe that the Notice accurately and adequately provides limited partners and/or shareholders the information they need to make an informed decision about whether to object or not.

53.     The Notice accurately provides that payments under the Fund Distribution Account will be made "*through the claims administration process* only if the Court approves the Settlement ...."  (Emphasis added.)  Clearly, if the Settlement is not approved, the Remaining Fund Proceeds will not be run through the claims administration process.  The Notice does not state or imply that if the Settlement is not approved, then the Remaining Fund Proceeds will not be paid; in that event, the monies would likely be disbursed pursuant to the limited partnership agreements in the context of a liquidation or winding-up of the funds.

54.     The Notice also accurately describes how recovery under the FDA POA will affect a Class Member's total recovery of losses, including that "Class members ... may receive a substantially higher or lower percentage of their respective losses based upon the [Fund Distribution Account] plan of allocation ..." (p.3)

55.     Similarly, though the Notice refers to "recognized losses" in describing some of the factors affecting recovery under the FDA POA (Haines Notice Obj, at 7), the plan itself, which limited partners and/or shareholders are directed to read and which is attached as an exhibit to the Notice, clearly explains the calculation of a Recognized Claim thereunder.  FDA-POA, Exh. 2.[2]

**C.     The Haines Objectors' Release Objections**

56.     The Notice provides that in exchange for the Settlement benefits, limited partners and/or shareholders "will be prohibited from bringing a lawsuit against any of the Settling Defendants based on allegations relating to the Released Claims."  Notice at Question 14. Limited Partners and/or shareholders are then advised that "[t]he terms of the release are included in the Proof of Claim that is enclosed."  *Id.*

57.     The release (in the proof of claim) provides in more detail, what the Notice stated, namely, that any and all claims or causes of action that "arise out of, or are based upon, or related to, the allegations ... set forth ... in the Complaints filed in the Actions, or that relate to the management or administration of the Settling Funds, the purchase of limited partnership interests in or shares of the Settling Funds or the Settling Funds' investments with Madoff" are released by the Settlement.  We believe the release language is not too complex to understand.

---

[2] The Haines Objectors' claim the Notice is supposedly insufficient because it does not "mention" Wolf Haldenstein's alleged conflict assumes the existence of a conflict where none exists.  *See* Fee Reply Dec., ¶¶ 12-17; Final Approval Brief (addressing his objections).

58.     The Notice clearly and unambiguously advises Class Members, including Swap Counterparties, that they can object to any aspect of the Settlement. Since the Swap Counterparties can object to the Net Settlement Fund POA, if they were to succeed on an objection (which they should not), then the average percentage recovery to other Class Members will decline.

### D.     The Swap Counterparties' Objections

59.     The parties and the Swap Counterparties are currently in negotiations regarding the withdrawal of their objections. As a result, they have agreed that no response needs to be made until they reach an impasse in those negotiations.

60.     We reviewed voluminous swap agreements, interviewed witnesses, reviewed documents and analyzed the claims and potential defenses of the Class as a whole and as to the Swap Counterparties in particular because of the unique manner in which the Swap Counterparties obtained their interests. Notably, the Swap Objectors concede that the Representative Plaintiffs "negotiated a lucrative Settlement," putting individual allocation issues aside. However, while the presence of unique and substantial defenses mean that the Swap Objectors are not entitled to the same recovery as other claimants, it does not mean that they were entitled to be a separately represented subclass as they now suggest. This is especially true where, as here, the subclass would consist of only four entities. Additionally, the four Swap Objectors already have their own counsel representing their individual interests.

## III.    CONCLUSION

61.    Plaintiffs' State and Securities Law Settlement Class Counsel submit that, based on an understanding of the facts and circumstances of the Actions, the applicable legal principles, the procedural posture of this case and the risks of continued litigation, the Settlement and Plans of Allocation are in the best interests of the Settlement Class and current limited partners and/or shareholders of the Settling Funds, and should be approved by this Court.

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED this 25th day of May, 2011.

Andrew J. Entwistle

EXECUTED this 25th day of May, 2011.

Reed R. Kathrein

EXECUTED this 25th day of May, 2011.

Jeffrey M. Haber