IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION<br><br>This Document Relates To:<br><br>All Actions | MASTER FILE NO.:<br>08 CIV. 11117 (TPG) |

**MEMORANDUM OF LAW IN OPPOSITION TO OBJECTION OF ROYAL BANK OF SCOTLAND NV AND IN FURTHER SUPPORT OF SETTLEMENT**

EC.45357.1

## INTRODUCTION

As reflected in the prior submissions to the Court, the Parties are currently negotiating a withdrawal of the Swap Counterparties' objections. We are pleased to report that those negotiations were successful as to HSBC Bank PLC and HSBC USA Inc. (collectively, "HSBC") and ABN Bank (Ireland) Ltd. ("ABN AMRO"), but unfortunately Royal Bank of Scotland NV ("RBS") has not yet agreed to withdraw its objection. Accordingly, this memorandum of law and accompanying declaration address RBS' objection. Submitted with the hope that it will be resolved prior to the hearing.

## I. THE NEGOTIATED RESOLUTION WITH HSBC & ABN AMRO

Swap Counterparties HSBC and ABN AMRO negotiated certain clarifications and agreements with Plaintiffs' Settlement Class Counsel which are reflected in ¶ 4 of the Proposed Order approving the Plans of Allocation in exchange for withdrawing their objections (essentially agreeing) to, among other things, the 99% reduction in their allocation under the Net Settlement Fund distribution, leaving only the objection of RBS to the Settlement, the Plans of Allocation and the 3% fee requested by Plaintiffs' Settlement Class Counsel.[1]

## II. RBS' REQUEST FOR A SUBCLASS SHOULD BE DENIED

RBS argues that, since the Representative Plaintiffs have assigned the Swap Counterparties only a small distribution from the Net Settlement Fund, they need to be treated as

---

[1] We would expect RBS to make some argument that the fact that they are "excepted" from the language for which HSBC and ABN AMRO negotiated somehow creates a further detriment to it. RBS is wrong. Excepting it from the relief that HSBC and ABN AMRO bargained for in exchange for the withdrawal of their objection simply leaves RBS in the same position it has always been in. Having failed to reach a compromise, RBS should, of course, receive no benefit.

their own subclass with their own class representative who can adequately represent their individual interests. RBS Objection, at 2. RBS' argument is misplaced:

> Fracturing the class into subclasses whenever groups receive different treatment under a plan of distribution would place undesirable obstacles in the way of class action settlements, and is unnecessary as a matter of law. "[T]here is no rule that settlements benefit all class members equally . . . ."

*Metlife*, 689 F. Supp. 2d at 351 (citing *In re Veeco Instruments Inc. Sec. Litig.*, No. 05-MDL-01695CM, 2007 WL 4115808, at *13 (S.D.N.Y. Nov. 7, 2007) (quoting *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1148 (11th Cir.1983)).

The Investigation and Analysis by Settlement Class Counsel supports the allocation. Settlement Class Counsel reviewed the voluminous swap agreements, interviewed witnesses, reviewed documents and analyzed the claims and potential defenses of the Class as a whole and as to RBS in particular because of the unique manner in which it obtained its interests, which included extensive due diligence and negotiation. These issues are well summarized by the complaint filed by the Madoff Trustee against RBS. *See* Joint Declaration of Andrew J. Entwistle, Reed R. Kathrein and Jeffrey M. Haber in Response to Objection of Royal Bank of Scotland NV and in Further Support of Partial Settlement, Class Certification and Derivative Findings ("Joint RBS Dec."), Ex. 1. However, while the presence of unique and substantial defenses means that RBS is not entitled to the same recovery as other claimants, it does not mean that it was entitled to be separately represented as it now suggests or that a separate subclass should have been created.[2] Indeed, fracturing the class into subclasses whenever groups receive different treatment under a plan of allocation would place undesirable obstacles in the way of

---

[2] This is especially true where, as here, the subclass would consist of only four entities. It goes without saying that the Court could not certify a subclass comprised of only *four* entities even if it otherwise made sense to do so (and it does not make sense). *See* F.R.C.P. Rule 23(a).

3

EC.45357.1

class action settlements, and is unnecessary as a matter of law. *MetLife*, 689 F. Supp. 2d at 351; *see also Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002) (the fact that two groups of class members will receive different compensation does not require separate representation or make the settlement unfair); *In re Ins. Brokerage Antitrust Litig.*, No. 04-5184GEB, 2009 WL 4796662 (D.N.J. Dec 09, 2009) "There is no rule that settlements benefit all class members equally." *Veeco*, 2007 WL 4115809, at *13 (*quoting Holmes*, 706 F.2d at 148).[3]

### III. DIFFERENCES IN ALLOCATION DO NOT CREATE "DISABLING" CONFLICTS

RBS has separate counsel in Allen and Overy LLP and in making an objection here, it had the ability to change the allocation or file a separate objection related to the amount of the allocation. However, in making its objection, RBS chose to argue that it required its own subclass rather than seek an adjustment to the allocation itself. RBS' failure to seek an adjustment in the amount of the allocation, constitutes a waiver on that basis. Thus, RBS has waived any right to challenge the amount of the allocation. In fact, to the extent RBS already believed it was not properly represented, the remedy was to have outside counsel contest the amount of the allocation, not the question of representation. RBS was separately represented and had the opportunity to do so.

In any event, an unequal allocation of the Net Settlement Fund does not establish a disabling "conflict" between Class Members. Rather, the difference in allocation reflects the

---

[3] *See also In re Enron Sec., Derivative & "ERISA" Litig.*, No. H-01-36242008, WL 4178151, at *2 (S.D. Tex. Sep. 8, 2008) ("[A] class action settlement need not necessarily treat all class members equally."); *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 252 (D.N.J. 2000), *aff'd* 264 F.3d 201 (3d Cir. 2001) ("[U]nless the court reviewing settlement finds . . . 'stark conflicts of interest . . . ,' a settlement which contains class members who may recover different amounts is acceptable." (*quoting Petrovic v. Amoco Oil Corp.*, 200 F.3d 1140, 1146 (8th Cir.1999)).

limited extent of the injury that the Swap Counterparties incurred. *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 272 (3d Cir. 2009) (rejecting the objectors' argument that an unequal allocation of the settlement fund demonstrated a conflict between class member groups, finding the difference in allocations was "simply a reflection of the extent of the injury that certain class members incurred"); *see also In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 492 (S.D.N.Y. 2009) ("Because those individuals who were not damaged by defendants' alleged misconduct have no viable claims, certification of a class that included such individuals and releasing their claims would have no practical significance"); *cf. Grinnell*, 495 F.2d at 455 & 455 n.2 ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery").[4]

## IV. RBS IS SUBJECT TO UNIQUE DEFENSES

RBS' class claims are subject to defenses that do not apply to other claimants. The difference in allocation, therefore, properly reflects the limited extent of the injury that RBS incurred.[5] *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 272 (3d Cir. 2009); *see also In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 492 (S.D.N.Y. 2009) ("Because those individuals who were not damaged by defendants' alleged misconduct have no viable claims, certification of a class that included such individuals and releasing their claims would have no

---

[4] It is not unusual at all for some investors to receive a steeply discounted recovery, particularly where, as here, the investors acquire their shares in circumstances indicating such shares were acquired after special due diligence (by acquisition) or after a substantial portion of the truth has been disclosed to the marketplace.

[5] RBS admits that the unequal allocation might be warranted here if, for example, it had made its investments in the Settling Funds after "disclosure" of relevant facts. RBS Objection, at 11. In effect, it did just that. RBS had contractual obligations with respect to their swap transactions, and it was responsible for conducting, and did conduct, its own due diligence into Madoff's operations. Joint RBS Dec., ¶ 5. RBS was in no position to claim reliance on Tremont's due diligence or on Tremont's representations about how Madoff was managing the Settling Funds. *Id.*

practical significance").

## V. RBS' OBJECTION TO THE 3% FEE SHOULD BE OVERRULED

RBS also objects to the 3% fee requested by Plaintiffs' Settlement Class Counsel which is not surprising because RBS has an incentive to restrict class counsel's ability to fully prosecute claims against it. As such, this self-serving objection should be overruled.

### CONCLUSION

For the foregoing reasons, RBS' objection should be overruled and the Settlement should be approved.

Dated: May 27, 2011
       New York, New York

BERNSTEIN LIEBHARD LLP

_/s/ Jeffrey Haber_

Stanley D. Bernstein
Jeffrey M. Haber
Stephanie M. Beige
Jeffrey D. Lerner
10 East 40th Street, 22nd Floor
New York, NY  10016
(212) 779-1414
(212) 779-3218 (fax)
bernstein@bernlieb.com

*Lead Counsel for the Securities Actions*

ENTWISTLE & CAPPUCCI LLP

_/s/ Andrew J. Entwistle_

Andrew J. Entwistle
Robert N. Cappucci
280 Park Avenue, 26th Floor West
New York, NY  10017
(212) 894-7200
(212) 894-7272 (fax)
aentwistle@entwistle-law.com

6

HAGENS BERMAN SOBOL SHAPIRO LLP

*signature*

Reed R. Kathrein
Lee Gordon
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
(510) 725-3000
(510) 725-3001 (fax)
reed@hbsslaw.com
lee@hbsslaw.com

*Co-Lead Counsel for the State Law Actions*

ROBBINS GELLER RUDMAN & DOWD LLP

*signature*

David A. Rosenfeld
Edward Y. Kroub
58 South Service Road, Suite 200
Melville, NY 11747
(631) 367-7100
(631) 367-1173 (fax)
drosenfeld@rgrdlaw.com

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

*signature*

Daniel W. Krasner
Demet Basar
270 Madison Avenue
New York, NY 10016
(212) 545-4600
(212) 545-4653 (fax)
basar@whafh.com

*Co-Lead Counsel for the Insurance Actions*

EC.45357.1