UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE  TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | MDL Docket No:  09-md-02052 (TPG) Master Docket No:  08 Civ. 11117 (TPG) |
| This Document Relates to: All Actions:  08 Civ. 11117 (TPG) 09-md-02052 (TPG) | |

**REPLY DECLARATION OF VINCENT T. GRESHAM IN SUPPORT OF
THE HAINES PLAINTIFFS' MOTION FOR RELIEF
FROM MEDIATION AND SETTLEMENT CONFIDENTIALITY PROVISIONS**

I, Vincent T. Gresham, declare under penalty of perjury, as follows:

1.  I am counsel for Plaintiffs Madelyn Haines and Paul Zamrowski in the action styled *Haines v. Massachusetts Mutual Life Ins. Co.*, No. 09-10182-RWZ (D. Mass.) (the "*Haines* Action").  The *Haines* Action was transferred to this Court by the Judicial Panel for Multidistrict Litigation on June 11, 2009 and pursuant to the Court's September 25, 2009 Order, was consolidated with this action.  I was admitted pro hac vice in this case at the consolidation hearing on September 24, 2009.  I make this declaration voluntarily based on my own personal knowledge and, if called upon to do so, would testify competently thereto.

2.  Attached as Exhibit 1 is a true and correct copy of the *First Supplemental Declaration of Vincent T. Gresham in Support of the Haines Plaintiffs' Objections and Addressing Material False Statements of Fact in Lead Counsels' Declarations and*

1

*Pleadings of May 25, 2011* that was filed with the Court in connection with Haines' May 30, 2011 supplement to objection.

       I declare under penalty of perjury, under the laws of the United States, that the foregoing information is true and correct.  Executed in Atlanta, Georgia on June 15, 2011.

                                /s/  Vincent T. Gresham

                                _____

                                Vincent T. Gresham

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE  TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | MDL Docket No:  09-md-02052 (TPG) Master Docket No:  08 Civ. 11117  (TPG) |
| This Document Relates to: All Actions:  08 Civ. 11117 (TPG) 09-md-02052 (TPG) | |

**FIRST SUPPLEMENTAL DECLARATION OF VINCENT T. GRESHAM
IN SUPPORT OF THE HAINES PLAINTIFFS' OBJECTIONS AND
ADDRESSING MATERIAL FALSE STATEMENTS OF FACT IN
LEAD COUNSELS' DECLARATIONS AND PLEADINGS OF MAY 25, 2011**

I, Vincent T. Gresham, declare under penalty of perjury, as follows:

1.  I am counsel for Plaintiffs Madelyn Haines and Paul Zamrowski in the action

styled *Haines v. Massachusetts Mutual Life Ins. Co.*, No. 09-10182-RWZ (D. Mass.) (the

"*Haines* Action").  The *Haines* Action was transferred to this Court by the Judicial Panel

for Multidistrict Litigation on June 11, 2009 and pursuant to the Court's September 25,

2009 Order, was consolidated with this action.  I was admitted pro hac vice in this case at

the consolidation hearing on September 24, 2009.  I make this declaration voluntarily

based on my own personal knowledge and, if called upon to do so, would testify

competently thereto.

2.  Below I respond to the new declarations and memoranda filed by Lead

Counsel ("LC") on 5/25/2011 which "evidence" did not exist at the time the Haines

Objections and my previous declarations were filed.

1

**WOLF CANNOT SOLVE ONE VIOLATION OF THE NY RULES OF PROFESSIONAL CONDUCT BY KNOWINGLY VIOLATING OTHER RULES**

3.   One of the key points in the Haines Plaintiffs' objections was that Wolf and their clients had a severe conflict of interest that, among other things, precluded class certification (See, Objection to Certification §V), conflicted some lead counsel and representatives and called into question the adequacy representation, and rendered the results of the August, 2010 allocation mediation fundamentally unfair to the class (See, Objection to Certain Aspects of Settlement, §II.C.).

4.   In response to the Haines Plaintiffs' objections to Wolf's unethical simultaneous representation of adverse clients, Wolf now claims that it didn't represent Ms. Finkelstein as Lead Plaintiff:

- "Berstein Liebhard is sole Lead Counsel and therefore represents Ms. Finkelstein in her capacity as Lead Plaintiff in the Securities Actions." "Basar-Decl" at ¶9.[1]

- "Wolf Haldenstein was not involved in the Securities Actions in connection with any allocation related issues…"  Basar-Decl.-¶13.

- "Wolf Haldenstein was Co-Lead Counsel in the Insurance Action and its individual client, Ms. Finkelstein, was represented by Bernstein Liebhard in her role as Lead Plaintiff in the Securities Action."  Basar-Decl-¶15.

5.   That Wolf did <u>in fact</u> represent Ms. Finkelstein at all times and on all issues— including allocations to the competing Insurance Class Wolf <u>also</u> represented--is proven by Ms. Finkelstein's own declaration (attached as <u>Exhibit A</u>, and at Dkt.#452-10 starting at page 40).  In her declaration she demonstrated that Wolf represented her at all times and advised her about allocation issues and all other issues:

---

[1] The *Declaration of Demet Basar in Further Support of Insurance Class Counsel's Motion For an Award Of Attorneys' Fees and Expenses* (Basar-Decl, Dkt#516) was signed by Demet Basar "under penalty of perjury."

- "**I am represented by Wolf Haldenstein** Adler Freeman & Herz LLP ("Wolf Haldenstein").  **I,** along with my husband Jacob, both **worked with Wolf** Haldenstein **in connection with my role as Lead Plaintiff in the Securities Actions.**"  (emphasis added in all quotations) Finkelstein Decl.-¶2.

- "**In connection with my role as Lead Plaintiff, I …. regularly communicated with Wolf Haldenstein throughout the litigation and were kept abreast of all** pleadings, motion practice and the proposed settlement…."  Finkelstein Decl.-¶3.

-  I knew that Wolf Haldenstein was also lead counsel in the Insurance Actions. **I was also kept abreast of the negotiations concerning the allocation of the settlement proceeds among the Securities Actions, the State Law Actions and the Insurance Actions**…"  Finkelstein Decl.-¶3.

- "**Because of** my involvement with the litigation through review of documents and **discussions with Wolf Haldenstein, I believe Wolf Haldenstein was well-positioned to evaluate the reasonableness and adequacy of the** proposed partial settlement on behalf of the Class and **allocation of the settlement proceeds with the Insurance Actions.**"  Finkelstein Decl.-¶4.

- **Based on Wolf Haldenstein's advice** concerning the risks associated with continued prosecution of the Securities Actions, **I strongly endorse the proposed partial settlement…**"  Finkelstein Decl.-¶5.

- "**In connection with my duties and responsibilities as Lead Plaintiff and proposed Class representative in the Securities Actions, I have** diligently, and at the direction of the Court, performed the duties listed below.  **\*\*\*** had meetings and **discussions with Wolf Haldenstein attorneys…  conferred regularly and at length with counsel….  conferred with counsel regarding the mediation concerning the allocation of the settlement proceeds**…" Finkelstein Decl.-¶8.

6.  Ms. Finkelstein's affidavit makes clear that Wolf, and not Bernstein Liebhard, was her counsel at all times and for all issues including "allocation of the settlement proceeds with the Insurance actions" and that her approval was "[b]ased on Wolf Haldenstein's advice…"  Accordingly, the representations made at Basar-Decl-¶9 and ¶13 that Ms. Finkelstein, was represented by Bernstein Liebhard were both absolutely false and known to be false by Ms. Basar at the time she signed her declaration.

7.   Because Wolf specifically advised Ms. Finkelstein as to "the reasonableness and adequacy of the…allocation of the settlement proceeds with the Insurance Actions," (Finkelstein-Decl.-¶4) it is also clear that the representation made at Basar-Decl.-¶13 that "Wolf Haldenstein was not involved in the Securities Actions in connection with any allocation related issues…" was false and was known to be false at the time it was made. Wolf was "involved" in advising their client on the specific allocation issue and Ms. Finkelstein's declaration makes clear that her approval of it was "[b]ased on Wolf Haldenstein's advice…"  (Finkelstein-Decl.-¶5)

8.   In Wolf's *Reply Memorandum In Further Support Of Their Motion For An Award Of Attorneys' Fees* (Dkt.#515), Wolf utilizes Ms. Basar's false testimony to attempt to mislead this Court into awarding it millions in attorney fees:  "Wolf Haldenstein did not represent Ms. Finkelstein in her capacity as lead plaintiff in the Securities Action; Bernstein Liebhard did," citing the Basar-Decl.  (Dkt.#515 Wolf-Fee-Reply-p.5).

9.   In the Insurance Action Wolf is urging this Court to approve a fee award of approximately $1 million (Insurance Fee Memorandum Dkt#446).  In the Securities Action Wolf claims a lodestar of over $1.34 million (Dkt#451-6).  According to the Securities/State Fee Memorandum the lodestar multiplier is 1.75 (see, Dkt#448 at page 13 of 34.).  Thus the Wolf fees demanded in the Securities action could amount approximately $2.345 million.  In short, Wolf is claiming over $3 million in fees all of which will be paid out of the Class Members' pockets.

10.   On the same page of the Wolf Fee Reply that Wolf's false statement appears Wolf threatens myself and my clients with Rule 11 sanctions, see fn.6.  Wolf

characterizes our attempt to require that this important class action case be conducted with integrity and in accordance with fundamental ethical standards as "baseless and inflammatory." Wolf closes with this statement: "Wolf Haldenstein and its clients reserve the right to seek Rule 11 sanctions against the Haines Plaintiffs and their counsel."

11.  In accordance with Wolf's wishes, I too request that this Court schedule a hearing to address Rule 11,[2] and other ethical issues surrounding the May 25, 2011 reply declarations and memoranda. At such time this Court could, after an evidentiary hearing, award sanctions and make appropriate referrals to state bars and law enforcement agencies as this Court deems fit. However, I do believe that if the Court finds that Wolf used perjury to obtain under false pretenses a sum of over $3 million, thus re-victimizing a class of investors and insurance policy owners who have already been devastated by fraud is, then this matter should be referred to appropriate law enforcement agencies.

### LEAD COUNSEL FOR THE STATE AND SECURITIES SUBCLASSES USED WOLF'S FALSE TESTIMONY IN THEIR ATTEMPT TO OBTAIN SETTLEMENT APPROVAL AND $30+ MILLION IN FEES

12.  In urging this Court to reject the Haines Objections to Class Certification, the POAs and Attorneys Fees Lead Counsel ("LC") affirmatively state:

- "**Bernstein Liebhard (not Wolf Haldenstein) represents Mrs. Finkelstein** in her capacity as Lead Plaintiff."

- "**Mrs. Finkelstein is represented by Bernstein Liebhard** in her capacity as a representative of the Securities Subclass."

---

[2]As the Haines Objectors noted in their objections such a hearing is <u>required</u> under the PSLRA and in no even should this Court sign the proposed orders submitted as part of LC's 263 page filing circulated to objector Friday night, May 27, 2011, at 7:43 pm which includes a finding (now conclusively refuted) to the effect that there are no Rule 11 issues. In fact, there are numerous Rule 11 and other ethical issues.

(emphasis added)  Dkt.#520 LC-Reply-Settlement-p.5.  LC's declaration, under penalty of perjury, states:

- "The Haines Objectors' claim the Notice is supposedly insufficient because it does not 'mention' **Wolf Haldenstein's alleged conflict assumes the existence of a conflict where none exists."**

(emphasis added)  Dkt.#520  LC-Reply-Settlement-Decl.-page 16, fn. 2.

- "**The work the Wolf Haldenstein firm did** relative to the securities claims was done at Bernstein Liebhard's direction and **did not extend to allocation**."

(emphasis added)  Dkt.#518  LC-Reply-Fees-Memo-pp.7-8).

13.   The declarations and memoranda referenced above were all signed by all three of Mssrs. Haber, Entwistle and Katherein and were all designed to persuade this Court to approve the Settlement, POAs and over $30 million in attorney fees.  All of the above statements were false at the time they were made.  As Ms. Finkelstein makes clear in her declaration Wolf's role in allocation was (just as the Haines Plaintiffs warned, see ¶17, below) the all-important role of <u>advising</u> Ms. Finkelstein and conferring with her "regarding the mediation concerning the allocation of the settlement proceeds."  She relied on Wolf's advice.

14.   The statements made by LC were clearly false and either were or should have been known to be so.  This raises the question of the state of knowledge of Mssrs. Haber, Entwistle and Katherein at the time they made these false statements.

15.   With respect to the knowledge of Mr. Haber and Bernstein Liebhard there are several factors which I believe demonstrate that they knew the above statements were false at the time they were made.

- The Finkelstein Declaration which contradicts the statements set forth above was filed as an exhibit to Bernstein Liebhard attorney Jeffery Haber's own declaration as Exhibit E, Part 4 (see Dkt.#452-10 page 1).  Thus, Bernstein

Liebhard and Mr. Haber had actual possession of Ms. Finkelstien's contradictory declaration--at the same time Bernstein Liebhard and Mr. Haber adopted and utilized Wolf's perjured statements in its own Declaration and filings.

- Mr. Haber was copied on an e-mail, in which the same Ms. Basar directly refuted her current testimony at the time the conflict issue was first raised. On 4/22/2010 in the attached e-mail Ms. Basar responded to my raising of the issue of conflicts by saying "**if the terms of the settlement, including allocation to the securities class, are acceptable to my client, we will advise our client to approve the settlement."** (emphasis added, e-mail exchange attached as <u>Exhibit B</u>.) Thus, Bernstein Liebhard knew that Wolf had every intention continuing to <u>advise</u> Ms. Finkelstein on all issues including whether the "allocation to the securities class" was "acceptable." (This is in fact exactly what happened, see Finkelstein Decl.)

- Finally, Bernstein Liebhard almost certainly had to have had personal knowledge that (contrary to the various representations made by Wolf) they had <u>not</u> in fact been advising Ms. Finkelstein. Her declaration does not reflect any communications with Bernstein Liebhard, but rather she states that it was Wolf who advised her on all issues.

For these reasons I believe that Mr. Haber and Bernstein Liebhard knowingly made material false statements of fact to this Court in an attempt to, among other things, refute and discredit the Haines Objectors, and to obtain approval of the Settlement, POAs and $30 million in fees.

16. Just as with Wolf's conduct, I request that this Court schedule a hearing to address Rule 11, and other ethical issues concerning Bernstein Liebhard's conduct, after which this Court could, after an evidentiary hearing, award sanctions and make appropriate referrals to state bars and law enforcement agencies as this Court deems fit. Just as with Wolf, I believe that if the Court finds that Bernstein Liebhard used perjury to obtain under false pretenses a sum of over $30 million, thus re-victimizing a class of investors who have already been devastated by fraud, then this matter should be referred to the appropriate law enforcement agencies.

17. Attorneys Entwistle and Katherein clearly possessed documents and information that placed them on notice of these ethical issues concerning Wolf.[3]  There was extensive documentation in the Haines Objection about the Wolf's unethical conflict, see Haines Objection to Certification at §V.  In fact, Entwistle and Katherein were on notice of these issues as of July 31, 2010 when the Haines Plaintiffs first raised these issues with this Court.  See *Declaration of Vincent T. Gresham in Support of the Haines Plaintiffs' Certification Objections*, Exhibit 1 consisting of the Haines Plaintiffs' 7/31/2010 submission to this Court, specifically the *Memorandum of Law in Support of the Haines Plaintiffs' Motion to Cure Inadequate Representation* at 2, 6, 18-21.  For example, this July, 2010 submission included the following:

- "Wolf's Securities and Insurance lead plaintiff clients are on opposite sides of this allocation dispute."  p.6

- "Wolf owes fiduciary duties and ethical obligations to both Securities and Insurance lead plaintiffs who themselves represent two different classes who are not directly fighting over one common pot of consideration.  Accordingly, Wolf cannot adequately or ethically serve either."  p.19.

- "Due to conflicts Wolf cannot deliver the ethically required 'undivided loyalty as… advocate and champion' to Securities lead plaintiff Finkelstein.  As she can be expected to be influenced by here attorneys, Wolf's conflict prevents Securities lead plaintiff Finkelstein from in turn delivering 'undivided loyalty as … advocate and champion' for the Securities class she represents.  Accordingly she is inadequate and must be removed."  P.19.

Because the pernicious influence of the conflicted Wolf that the Haines Plaintiffs warned about in July, 2010 is <u>exactly</u> what occurred (Finkelstein's declaration makes clear she

---

[3] The Haines Objectors believed that State LC were largely irrelevant when filing their original objections.  See, Haines Objection to Certification at fn. 10.  For this reason, the Haines Objectors did not raise or address certain troubling questions about State LC, and will not do so for the first time here shortly before the Final Approval hearing, but such issues should be included in any subsequent hearing on Rule 11 and ethical issues.

relied on Wolf's advice and was advised by Wolf on the exact allocation issues in conflict), Mssrs. Entwistle and Katherein clearly had sufficient notice to alert them of this issue 10 months ago.

18.  At the time Mssrs. Entwistle and Katherein signed their joint filings and declarations which utilized the testimony at issue, they also had access to both Ms. Finkelstein's declaration and Wolf's contradictory declaration.  In addition, they willingly co-signed joint declarations and joint filings with Bernstein Liebhard and Mr. Haber, who as noted above had actual knowledge.  Finally, in their declarations Mssrs. Entwistle and Katherein both proclaimed to have "personal knowledge"  (Statement in all declarations at ¶4).

19.  I believe this Court should investigate whether Mssrs. Entwistle and Katherein violated Rule 11, committed perjury, subornation, false testimony or other unethical conduct in an attempt to personally enrich themselves through an award of $30 million in attorney fees.

20.  In addition to the conduct addressed herein, LC's declarations and reply memoranda filed May 25, 2011 are rife with numerous other inaccurate statements of fact covering many aspects of the Settlement, POAs and attorneys fees that are the subject of the June 1, 2011 fairness hearing.  Since the May 25, 2011 filing I have been gathering documents and evidence so as to be able to prove at or by the fairness hearing through cross-examination of Mssrs. Haber, Entwistle and Katherein and Ms. Basar, or otherwise that, among other things, material factual statements that LC made in their May 25, 2011 filing in connection with (a) the work they claim justifies their 3% FDA fee, (b) their knowledge of the Settling Funds at the time of settlement negotiations, (c) what occurred

during the March, 2010 mediation, (d) the benefits of the Settlement, (e) their denial of simultaneous negotiation of their clear-sailing agreement, (f) the content and accuracy of the Class Notice, (g) the stripping away of rights of the limited partners, (h) the "operative complaint" during the March, 2010 settlement negotiations, and (i) their representations about myself and my clients, that were both material and false and that some or all LC acted with knowledge of their falsity in an effort to induce this Court to approve the Settlement, POAs and over $30 million in attorney fees.

I declare under penalty of perjury, under the laws of the United States, that the foregoing information is true and correct. Executed in Atlanta, Georgia on May 30, 2011.

_____
Vincent T. Gresham

10

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION<br><br>This Document Relates To:<br><br>All Actions | MASTER FILE NO.:<br>08 CIV. 11117 (TPG) |

DECLARATION OF
YVETTE FINKELSTEIN IN SUPPORT OF FINAL APPROVAL OF THE
SETTLEMENT, AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF
EXPENSES, AND REIMBURSEMENT OF REASONABLE COSTS AND
EXPENSES INCURRED IN REPRESENTATION OF THE CLASS PURSUANT
TO THE PSLRA

I, Yvette Finkelstein, hereby declare under the penalty of perjury as follows:

1.      I submit this Declaration in support of the final approval of:  (i) the

proposed partial settlement; (ii) an award of Counsels' attorneys' fees and reimbursement

of expenses; and (iii) my request for reimbursement of the reasonable costs and expenses

incurred in connection with my representation of the Class as authorized by the Private

Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §78u-4(a)(4).  The statements

contained herein are based upon my personal knowledge and upon information made

available to me.

**A.      The Partial Settlement is Fair and Reasonable**

2.      By order dated March 26, 2009, I, along with Arthur M. Brainson (on

behalf of the Arthur M. Brainson IRA R/O), and Group Defined Pension Plan & Trust,

was appointed a Lead Plaintiff in the above-captioned consolidated action designated the

"Securities Actions." Bernstein Liebhard LLP was appointed Lead Counsel in the Securities Actions. I am represented by Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein"). I, along with my husband Jacob, both worked with Wolf Haldenstein in connection with my role as Lead Plaintiff in the Securities Actions. While the investment in the Rye Select Broad Market Prime Fund was in my name, the money invested belonged to us both and we both received and reviewed account statements and other documents relating to the investment.

3.    In connection with my role as Lead Plaintiff, I and my husband, who assisted me in performing my duties as lead plaintiff, regularly communicated with Wolf Haldenstein throughout the litigation and were kept abreast of all pleadings, motion practice and the proposed settlement resulting from the mediation held on March 17 and 18, 2010. I knew that Wolf Haldenstein was also lead counsel in the Insurance Actions. I was also kept abreast of the negotiations concerning the allocation of the settlement proceeds among the Securities Actions, the State Law Actions and the Insurance Actions, and understood that Bernstein Liebhard, as Lead Counsel in the Securities Actions, was conducting the negotiations on behalf of the Securities Subclass in the mediation concerning allocation and was negotiating the settlement documents on behalf of the Class.

4.    Because of my involvement with the litigation through review of documents and discussions with Wolf Haldenstein, I believe Wolf Haldenstein was well-positioned to evaluate the reasonableness and adequacy of the proposed partial settlement on behalf of the Class and allocation of the settlement proceeds with the Insurance Actions.

657825v3                        2

5.      Based on Wolf Haldenstein's advice concerning the risks associated with continued prosecution of the Securities Actions, I strongly endorse the proposed partial settlement because I believe the proposed resolution outweighs the risks of continued litigation, and that the proposed Settlement provides an excellent result for the Class.

**B.      Plaintiffs' Settlement Class Counsels' Fee Request is Reasonable**

6.      I endorse the application for attorneys' fees by Wolf Haldenstein which worked under the direction of Bernstein Liebhard in representing the interests of the Class. I believe this requested payment represents fair and reasonable compensation to counsel for counsel's efforts, for the excellent result achieved, and the substantial risks undertaken in this litigation. I understand that any fee payment approved by the Court will cover Lead Counsel Bernstein Liebhard and other counsel who contributed to the prosecution of the Securities Actions. I believe that such approval is warranted as the payment represents a fair and reasonable fee to plaintiffs' counsel for their efforts in prosecuting the actions.

7.      I also reviewed Wolf Haldenstein's litigation expenses in the Securities Actions, including, among others, all litigation support fees, and I am aware of the litigation expenses incurred by Bernstein Liebhard, and other counsel. Based on these reviews, I believe that the litigation expenses being requested for reimbursement are reasonable and necessary for the prosecution and successful resolution of the actions.

**C.      Request for Reimbursement Pursuant to the PSLRA**

8.      In connection with my duties and responsibilities as Lead Plaintiff and proposed Class representative in the Securities Actions, I have diligently, and at the direction of the Court, performed the duties listed below. As set forth above, these tasks

were performed by me individually or with the assistance of my husband, depending on

the task. For example, while my husband and I often met with counsel together, one or

the other of us would have telephone conversations with counsel or exchange e-mail

messages with counsel. Other tasks my husband and I would perform together, such as

looking for records, or reviewing certain documents. Among other things, I individually

or with the assistance of my husband:

- had meetings and discussions with Wolf Haldenstein attorneys concerning the advisability of commencing a lawsuit against the defendants, and the duties and responsibilities of being appointed a lead plaintiff;

- researched and sent multiple documents to counsel, including documents relating to our investments in the Rye fund, statements, and documents relevant to the action, dating back to 2003;

- reviewed drafts of the original complaint and provided input;

- conferred with counsel concerning lead plaintiff applications and consolidation of the cases;

- reviewed all major pleadings;

- conferred regularly and at length with counsel about the case and claims;

- conferred with counsel regarding the mediation with the Tremont and MassMutual/Oppenheimer Defendants;

- conferred with counsel regarding the mediation concerning the allocation of the settlement proceeds;

- reviewed documents relating to the partial settlement with the Tremont and MassMutual/Oppenheimer Defendants; and

- researched and reviewed press and other public documents in order to evaluate the progress of the litigation, including the adequacy of the proposed settlement.

9.     In connection with my service as a Lead Plaintiff and proposed Class

representative, I spent considerable time directly related to my representation of the

Class. In total, I along with my husband, who assisted me in my duties, spent approximately 30 hours on matters in connection with my representation of the Class.

10.     I am the director of recruitment at Yeshiva University High School for Girls, and work on a salary basis. I have an MS degree from Fordham University in psychology and counseling. I have been practicing in my field for 15 years and have been at my current job for 2 years. When I last billed on an hourly basis, my billing rate was $125 per hour. Jacob, my husband, is a medical doctor specializing in breast cancer surgery and practices as part of a medical group. He has been a doctor for nearly 50 years. He currently charges an hourly rate of $450 for his services.

11.     I estimate that I spent about 10 hours and my husband spent about 20 hours on the litigation. Accordingly, I value the reasonable costs of lost time at $10,250, though I am only asking for $10,000 as set forth in the Notice.

12.     In light of the work performed in fulfilling my fiduciary obligations as Lead Plaintiff and proposed class representative, I believe that the costs and expense payment is fair and reasonable and warrants this Court's approval.

## CONCLUSION

13.     Accordingly, I respectfully request that the Court approve:  (i) the partial settlement; (ii) the attorneys' fee and litigation expense reimbursement application; and (iii) my request for reimbursement of the reasonable costs and expenses incurred in prosecuting the Securities Actions on half of the Class in the amount of $10,000.

I declare under penalty of perjury that the foregoing statements are true and correct.

EXECUTED this 4th day of MAY, 2011.

_Yvette Finkelstein_
Yvette Finkelstein

From: "Basar, Demet" <basar@whafh.com>
Subject: **RE: tremont**
Date: April 22, 2010 2:23:57 PM EDT
To: "Basar, Demet" <basar@whafh.com>, "vgapp" <gresham05@comcast.net>
Cc: "Jeffrey Haber" <Haber@bernlieb.com>, "Jeffrey Lerner" <Lerner@bernlieb.com>, "Larry Berman" <LBerman@lfsblaw.com>, "David Pastor" <dpastor@GilmanPastor.com>, "Kenneth Gilman" <kgilman@GilmanPastor.com>

I apologize.  I should have copied all counsel on this e-mail.

---

**From:** Basar, Demet
**Sent:** Thursday, April 22, 2010 2:19 PM
**To:** 'vgapp'
**Subject:** RE: tremont

Vince,

Let me begin by apologizing for not responding sooner.  I would have but for having a huge filing in another case, two mediations, and other work-related matters to attend to since receiving your e-mail.

I am professionally offended by your e-mail to the extent you are suggesting that I have anything but the best interests of my client, who is a court-appointed lead plaintiff in this case, at heart in connection with this settlement.  While you seem to be prematurely concerned about allocation issues, the task at hand is to document the settlement that all plaintiffs have reached with defendants.  If and when allocation issues arise, I will be guided by lead counsel in this case, and, if the terms of the settlement, including allocation to the securities class, are acceptable to my client, we will advise our client to approve the settlement. In the meantime, my firm is entitled to see and approve all matters involving our client.

Demet


-----Original Message-----
From: vgapp [mailto:gresham05@comcast.net]
Sent: Friday, April 16, 2010 3:40 PM
To: Basar, Demet; Vince Gresham
Subject: tremont

Demet,


As per Jeff H's suggestion I am sending you 99.9% of my comments on the stip.  I only took out a couple of comments which might be relevant to the upcoming allocation fight as between the Insurance plaintiffs and Securities/State law plaintiffs.  For the reasons stated on page 3 of my comments, I believe it imprudent to disclose or discuss issues relevant to insurance vs. securities/state allocations in light of the fact that you have a foot in both camps.

Exhibit B

This is not a personal slur based upon anything about you, but rather an
acknowledgement of a conflicted status that would raise my concerns no matter who was
in that position.  If there are ameliorating factors with respect to the conflict issue
I am concerned about, please let me know so I can quit worrying about it.  Otherwise,
please accept these delayed comments.


Have a nice weekend,



Vince