UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------- x

IN RE TREMONT SECURITIES LAW, : Master File No.:
STATE LAW, and INSURANCE : 08 Civ. 11117 (TPG)
LITIGATION :
 :
------------------------------- x
This Document Relates to: All Actions : ECF CASE
 : Electronically Filed
 :
------------------------------- x

# THE TREMONT DEFENDANTS' MEMORANDUM
## CONCERNING THE POLICYHOLDERS OF AGL LIFE ASSURANCE

Seth M. Schwartz
Jason C. Vigna
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Defendants
Tremont Partners, Inc.,
Tremont Group Holdings, Inc.,
Tremont (Bermuda) Limited,
Tremont Capital Management, Inc.,
Rye Investment Management,
Robert I. Schulman, Rupert A. Allan,
Harry Hodges, James Mitchell,
Lynn O. Keeshan, Patrick Kelly,
Stephen Thomas Clayton, Stuart Pologe
and Cynthia J. Nicoll

## Preliminary Statement

The Tremont Defendants[1] respectfully submit this memorandum regarding the policyholders who purchased annuities or life insurance policies (the "Policies") from AGL Life Assurance Company ("AGL"),[2] and then asked AGL to invest Policy premiums in Tremont Opportunity Fund III, L.P. (the "Opportunity Fund" or "Fund").[3] The Opportunity Fund is one of the Tremont-managed hedge funds that invested a portion of its capital with Bernard Madoff.

## Introduction

At the June 1, 2011 hearing held by this Court on the proposed partial settlement of this litigation, the Court requested "more information about the handling of the people [the policyholders] who invested through AGL . . . because if they were in effect investors in Tremont or in a Rye fund, if they were in effect individually investors, then I want to know that."[4] As demonstrated below, the AGL policyholders were not investors. Indeed, they were prohibited from investing in the Fund under the terms of their Policies and applicable law.

AGL is an insurance company that creates and sells insurance products to ultra high net worth individuals. The Policies at issue are variable life insurance policies or annuities that offered a number of investment options, including an investment in the Opportunity Fund. Under applicable state law, in order to offer these investments through the Policies, AGL was required to

---

[1] The Tremont Defendants (also referred to herein as "Tremont") are: Tremont Partners, Inc., Tremont Group Holdings, Inc., Tremont (Bermuda) Limited, Tremont Capital Management, Inc., Rye Investment Management, Robert I. Schulman, Rupert A. Allan, Harry Hodges, James Mitchell, Lynn O. Keeshan, Patrick Kelly, Stephen Thomas Clayton, Stuart Pologe and Cynthia J. Nicoll. Except as set forth herein, all capitalized terms used in this memorandum have the same meanings as in the Settling Parties' Stipulation of Partial Settlement (Dkt. No. 392-1).

[2] AGL is now known as Philadelphia Financial Life Assurance Company.

[3] Opportunity Fund formerly was known as American Masters Opportunity Insurance Fund, L.P. and Tremont Opportunity Insurance Fund, L.P.

[4] (Tr. of 6/1/11 Hearing at 18.)

establish a "separate account" or accounts for the purpose of making and holding the investments (the "Accounts" or "Separate Accounts"). 31 Pa. Code § 82.24(5). In addition, all assets allocated to the Separate Accounts for investment had to be owned exclusively by AGL. See 40 Pa. Cons. Stat. § 506.2(a)(5). Thus, although the Policies were issued to and held by AGL's customers, AGL owned and controlled all investments authorized by the Policies and owned and controlled the Separate Accounts through which the investments were made. By structuring the Policies this way, AGL not only satisfied the requirements of state insurance law, but also enabled its policyholders to secure favorable tax treatment – namely, deferral of federal income tax. This favorable tax treatment is a material benefit unavailable to U.S. citizens who, unlike AGL's policyholders, actually were investors in the Fund. (See discussion, infra.)

In short, AGL carefully structured the Policies to ensure that its policyholders would *not* be deemed investors in the Opportunity Fund. Because they are not investors, AGL's policyholders fall outside the definition of the class that has been tentatively certified by this Court in connection with the proposed settlement of this case. Consequently, the policyholders are not members of the class, they cannot be bound by the proposed settlement and they are not releasing any claims in connection with the settlement. Accordingly, while Tremont believes that the policyholders can state no claim against any of the Settling Defendants, they may elect, if they so choose, to pursue their own claims, if any, arising out of AGL's investments in the Fund. Under the circumstances, AGL's contention that the policyholders are "investors" is not only wrong as a matter of fact and law, but is also beside the point given that the settlement, by its terms, does not apply to or otherwise affect them. AGL's objection to the settlement therefore should be overruled.

## ARGUMENT

### I. BECAUSE THE POLICYHOLDERS ARE NOT MEMBERS OF THE CLASS, THEY HAVE NO RIGHT TO PARTICIPATE IN THE SETTLEMENT AND THEY ARE NOT BARRED FROM PURSUING THEIR CLAIMS, IF ANY

It is undisputed that AGL's policyholders are not limited partners of any Tremont or Rye Fund. (See generally Supplemental Obj. of Phila. Fin. Life Assur. Co. ("AGL Supp. Obj.," Dkt. No. 560) at 5 (acknowledging that AGL "is the record holder of every investment").) Accordingly, by definition, they are not members of the class sought to be certified for settlement purposes. (See Stipulation of Partial Settlement (Dkt. No. 392-1) (defining Settlement Class as "all Persons other than the Settling Defendants who were *holders of limited partnership interests* in or shares of the Rye Funds . . . or the Tremont Funds as of December 11, 2008, and who sustained net losses thereby" (emphasis added)).) The settlement therefore will not affect their rights in any way. Accordingly, if plaintiffs so choose, they may bring their own actions to pursue any claims they may have against Tremont or any other person arising out of investments made by AGL in the Fund. See, e.g., Yale M. Fishman 1998 Ins. Trust v. AGL Life Assurance Co., 11 CV 1283 (TPG) (suit initiated by AGL policyholder Yale Fishman against Tremont and other defendants).

In the supplemental objection it filed with this Court (Dkt. No. 560), AGL has represented that it "is prepared to assign its *interests* in the pertinent Tremont funds to the holders of the [Policies] for whose benefit these [Fund] investments were made." (AGL Supp. Obj. at 12 (emphasis added).) Presumably, AGL is referring to an intention to assign its *claims* against the Tremont Defendants, as opposed to its interests in the Fund, given that AGL cannot assign its interests without Tremont's prior written consent and (as shown below) natural persons are barred from holding such interests. As to the assignment of its purported claims, AGL is, of course, free to do so, although those "claims" are nonexistent considering that AGL is a "net winner," i.e.,

3

AGL has suffered no loss on its investment because it withdrew more from the Tremont Funds than it invested. The issue is irrelevant in all events because neither the policyholders nor AGL is a member of the settlement class, neither is a party to or impacted by the proposed settlement, and neither has standing to object to the settlement.

## II. AGL EXCLUSIVELY OWNS AND CONTROLS THE LIMITED PARTNERSHIP INTERESTS IT PURCHASED FROM THE OPPORTUNITY FUND

AGL's policyholders are not members of the settlement class precisely because they are not investors in any Tremont or Rye Fund. With respect to insurance-dedicated hedge fund products such as the Opportunity Fund, all of the pertinent documents show that only insurance carriers such as AGL were permitted to become investors in those hedge funds and were granted the exclusive right to control the investment. In that connection, consistent with the Policies and applicable law, the contracts and offering materials governing all investments in the Opportunity Fund confirm that AGL, *not* any of its policyholders, was the limited partner and investor of record. For example, the Opportunity Fund's Amended and Restated Confidential Private Placement Memorandum (the "PPM," attached hereto as Exhibit A) expressly disclosed that limited partnership interests (the "Interests") could be purchased from the Fund only by insurance *companies* that sold variable life insurance and/or variable annuity contracts:

> This Amended and Restated Confidential Private Placement Memorandum (the "Memorandum") relates to an offering of limited partnership interests ("Interests") in the Partnership. The Interests described herein are currently being offered only to *(a) U.S. life insurance company investors (the "Companies")* . . . .

(Id. at overleaf (emphasis added).) For avoidance of doubt, the PPM stated in bold, "**It should be emphasized that the Companies, and not the owners of the Contracts[5] will be the Limited Partners in the Partnership.**" (Id. at 30 (emphasis in original).)

---

[5] The governing documents define insurance policyholders as "Contract Owners" and "Contract Persons."

4

Consistent with the foregoing disclosures, AGL invested in the Opportunity Fund pursuant to the terms of a Participation Agreement between AGL and the Fund dated February 27, 2001 (the "Participation Agreement" or "Agreement," Dkt. No. 560-9). That Agreement confirms that AGL – not any of its policyholders – became a limited partner of the Fund. Indeed, the Participation Agreement expressly provides that the "*Insurer . . . will be a limited partner in the Partnership*" and defines the "Insurer" as AGL Life Assurance Company. (Id. Arts. 1.12, 8.1 (emphasis added).) The Participation Agreement further provides that AGL, not its policyholders, has the exclusive right of ownership of the Interests purchased from the Fund: "*the Insurer is the owner of the Interest with an absolute right thereto.*" (Id. Art. 2.2 (emphasis added).) While the Agreement also recites that the "Insurer purchases an Interest on behalf of the Account," id., this does not mean that AGL purchased Interests on behalf of policyholders. Rather, as the Participation Agreement, the Policies and applicable law specifically provide, the Accounts are, by definition, the "separate accounts of *the Insurer*," which AGL created for the purpose of making its investments in the Fund.[6] (Id. Art. 1.1 (emphasis added).) Contrary to the impression AGL seeks to create, a Separate Account is not a separate entity or person. Rather, it is a bookkeeping entry that appears in the financial statements and other records created by AGL. Consequently, when AGL identifies a Separate Account with the name "AGL Separate Account VA89 f/b/o VA1234567," for example, it does so for its own administrative convenience. (AGL Supp. Obj. at 6, 9.) AGL's creation and maintenance of Separate Accounts does not confer investor status on any of its policyholders.

---

[6] (See also Flexible Premium Variable Life Insurance Contract (Dkt. No. 560-1) at 13 ("We [AGL] own the assets of the Investment Accounts."); Flexible Premium Deferred Variable Annuity (Dkt. No. 560-2) at 7 ("[W]e [AGL] own the assets in the Variable Account[.]").)

5

Consistent with AGL's status as exclusive owner of the Fund Interests it purchased, the Participation Agreement acknowledges that neither the Fund nor Tremont has any relationship with or owes any duty to the policyholders. For example, the Agreement flatly bars Tremont, as manager and general partner of the Fund, from having any contact whatsoever with the policyholders:

> The General Partner shall, and shall cause its Affiliates to, refrain from contacting directly or indirectly or accepting any communications from any Contract Person . . ., or agent or representative of such Contract Person, concerning the Interests in the [Fund's] assets held by the Participating Insurers[7] in their Accounts.

(Participation Agreement (Dkt. No. 560-9), Art. 3.2(f).)

In the same vein, the Participation Agreement stipulates that the policyholders will have no rights whatsoever with respect to Tremont's management and investment of the Fund's assets:

> During the term of this Agreement, no Contract Owner, the beneficiaries of any Contract or the grantor or beneficiaries of any trust that is a Contract Owner (any of such individuals being referred to hereinafter as a "Contract Person"), will have any legally binding right to require the [Fund] to acquire or dispose of any particular asset or incur or pay any particular liability; there is not, nor will there be, any prearranged plan between the General Partner and any Contract Person to invest any assets of the [Fund] in any particular asset. Pursuant to the Limited Partnership Agreement [of the Fund], the General Partner will not consult with or receive, require or rely on the advice of any person which the General Partner knows or should know is a Contract Person, with regard to the management of the assets of the [Fund].

(Participation Agreement (Dkt. No. 560-9) Art. 3.2 (g).)

---

[7] The Participation Agreement defines "Participating Insurers" to mean AGL and the other insurance companies that "*are the owners of Interests* for the purpose of supporting contracts issued by such Participating Insurers which qualify as life insurance contracts and annuity contracts, respectively, under the [Internal Revenue] Code and which execute participation agreements with the [Opportunity Fund] in the form hereof. *Natural persons are not eligible to be Participating Insurers.*" (Participation Agreement (Dkt. No. 560-9), Art. 1.17 (emphases added).)

6

Nothing in any of the governing contracts or Fund disclosure documents indicates, much less establishes, that the policyholders would or should be deemed Fund investors. To the contrary, these documents plainly indicate that policyholders are *not* investors, which explains why they fall outside the definitions of the proposed settlement class.

## III. AGL CAREFULLY STRUCTURED ITS POLICIES TO ENABLE POLICYHOLDERS TO OBTAIN VALUABLE TAX BENEFITS

AGL became the exclusive owner of Interests not only to comply with the requirements of applicable state insurance law, but also to enable policyholders to receive favorable tax treatment, thereby making the Policies more attractive to potential customers. In that connection, the Policies were carefully structured to enable policyholders to defer payment of federal income tax on investment gains such that "increments in the cash value of a contract . . . – the 'inside buildup' – are generally not taxable until distributed from the contract."[8] Policyholders cannot qualify for this favorable tax treatment, however, unless the terms of the Policies strictly adhere to regulations established by the IRS.

Generally, to obtain favorable tax treatment, "the separate account assets underlying the contract *must be considered the assets of the life insurance company that issues the contract and not the property of the policyholder*. This rule is often expressed as a requirement that the owner of the contract not possess 'investor control' over the assets underlying the contract."[9] (Emphasis added.)

---

[8] John T. Adney & Joseph F. McKeever III, *Tax Treatment of Variable Contracts*, in VARIABLE ANNUITIES AND VARIABLE LIFE INSURANCE REGULATION, § 4:3.1[A](1) (Clifford E. Kirsch ed. 2006); see also id. § 4:3.1[B](1).

[9] Adney & McKeever, supra, § 4:3.2[B]. An individual who controls the enjoyment and disposition of property is viewed as owning the property for federal tax purposes. See id.

7

In that connection, regulations and revenue rulings promulgated by the IRS require policyholders to relinquish control of the investment to the insurance carrier to defer tax liability on current gains achieved through the carrier's investments. See, e.g., Rev. Rul. 2003-92 (Aug. 18, 2003). And, to comply with those regulations and defer any federal income tax liability, AGL's policyholders expressly agreed to relinquish such control to AGL. (See, e.g., Flexible Premium Variable Life Insurance Contract (Dkt. No. 560-1) at 13 (assigning AGL "the right to substitute a new portfolio for the portfolio in which the Investment Account invests, to substitute new Investment Accounts, to combine two or more Investment Accounts, . . . to eliminate any existing Investment Accounts or any other Investment option [and] to transfer assets of an Investment Account to another Investment Account that [AGL] determine[s] to be associated with the class of contracts to which the Contract belongs").)

To be sure, as AGL observes, AGL policyholders were granted the right under the Policies to allocate premiums to one or more investment options. (See AGL Supp. Obj. at 3.) But as the IRS has ruled, a policyholder's contractual right to select investment options does not necessarily give the policyholder "control" over the selected investment. Rev. Rul. 2003-92.[10] And notwithstanding the policyholders' ability to select among investment options offered by AGL, policyholders nevertheless were required to relinquish and did relinquish all other aspects of control to AGL to obtain favorable tax treatment. Their agreement to relinquish control distinguishes the policyholders from the individuals and entities that actually were investors in the Fund. And, perhaps most importantly, having relinquished control, AGL's policyholders secured a material benefit that no U.S. investor in the Fund enjoyed – namely, the right to defer payment of

---

[10] A policyholder's right to select investments usually does establish that the policyholder is the owner of the investments he selects. See Rev. Rul. 2003-92. There is an exception, however, where, as here, the investment option is a product made available solely to insurance carriers such as AGL that sell variable life insurance policies and annuities. See id.

8

federal income tax on any gains realized or reported by the Fund. Thus, contrary to AGL's contention, AGL's policyholders stand in a very "different position" from the members of the settlement class who, as investors in the Fund, paid taxes on their investments. (Cf. AGL Supp. Obj. at 9.)

## IV. THE SEPARATE ACCOUNTS CREATED BY AGL WERE NOT LIMITED PARTNERS OF THE FUND

During the June 1 hearing, counsel for AGL argued that "each individual account" created by AGL "was the limited partner" of the Opportunity Fund. But as the foregoing establishes, AGL's contention is plainly erroneous. As a matter of law and contract, only AGL, not the Separate Accounts it created (and certainly not its policyholders), became a limited partner of the Fund, and AGL owns all of the assets it deposited into the Separate Accounts it established to make Fund investments.

AGL alone decided how many Separate Accounts to create. And regardless of the number of Accounts created, AGL remained the owner of each and every Account as required under the Policies and applicable law. No AGL policyholder applied to become or was accepted as a limited partner of the Fund. Thus, AGL's creation of Separate Accounts and its use of account numbers for bookkeeping purposes does nothing to alter the conclusion that AGL was and remains the only relevant limited partner of and investor in the Fund, not its policyholders.

## CONCLUSION

For the foregoing reasons, the Tremont Defendants respectfully request that the

Court overrule AGL's objection to the proposed partial settlement of this litigation.

Dated: New York, New York
August 1, 2011

Respectfully submitted,

/s Seth M. Schwartz
Seth M. Schwartz (Seth.Schwartz@Skadden.com)
Jason C. Vigna (Jason.Vigna@Skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Defendants
Tremont Partners, Inc.,
Tremont Group Holdings, Inc.,
Tremont (Bermuda) Limited,
Tremont Capital Management, Inc.,
Rye Investment Management,
Robert I. Schulman, Rupert A. Allan,
Harry Hodges, James Mitchell,
Lynn O. Keeshan, Patrick Kelly,
Stephen Thomas Clayton, Stuart Pologe
and Cynthia J. Nicoll