UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION<br><br>This Document Relates to:<br><br>All Actions | Master File No.:<br>08 Civ. 11117 (TPG) |

**JOINT REPLY OF LAKEVIEW INVESTMENT, LP AND PHOENIX LAKE PARTNERS, L.P., TO PLAINTIFF ARTHUR E. LANGE FAMILY TRUST'S RESPONSE TO LAKEVIEW' FURTHER OBJECTIONS**

Plaintiff Lakeview Investment, LP ("Lakeview") and Opt-Out Plaintiff and Intervenor Phoenix Lake Partners, L.P. ("Phoenix Lake") submit this joint reply to the response of Arthur E. Lange Family Trust ("Lange") (Doc. 571) to (i) Lakeview's Further Objections (Doc. 462-463) and (ii) Phoenix Lake's Motion to Intervene (Doc. 464-465). Lange's response contains eight arguments. This responds to all of them.

<u>Timeliness</u>.  Lakeview's Further Objections were not late.  The Supplemental Notice of Pendency, page 2, set a deadline for class members who "have not already filed an objection" to file an objection to the proposed settlement.  The Supplemental Notice did not restrict the ability of existing objectors to supplement their earlier submissions, just as it did not preclude class counsel's submission yesterday of materials pertaining to the settlement.  *See* Letter dated August 4, 2011 from Andrew Entwistle to Hon. Thomas P. Griesa, with Ex. A-G ("Entwistle Letter").

<u>Rule 23.1 Standing</u>.  Lange claims that it has standing to assert derivative claims on behalf of XL Fund members based upon his belated verification.  Although the belated verification shows that Lange is currently a limited partner of XL Fund, it also shows that Lange does not satisfy one of the core requirements for standing

to assert claims derivatively on behalf of XL Fund; Lange was <u>not</u> a limited partner "at the time of the transaction[s] complained of." Fed. R. Civ. P. 23.1(b)(1). Based on statements showing the swap counterparties' purchases of Market Fund partnership interests, including those by which the banks hedged their XL Fund swap contracts, the last acquisition of Market Fund interests and, thus, the last date on which XL Fund transferred swap collateral to the banks, occurred on September 1, 2008, two months <u>before</u> Plaintiff acquired its partnership interest in XL Fund on November 1, 2008. *See* Doc. 571-1, Schedule A; Doc. 482, ¶¶11-13; Doc. 482-11, at 3; Doc. 482-10, at 3; 482-12, at 4. In addition, Lange's verification is defective insofar as it concerns only the allegations of the First Amended and Consolidated Class Action and Verified Derivative Complaint, *see* Doc. 571-1, which ***contains no allegations about the swap contracts***, ***and no claims against the swap counterparties***. *See* Doc. 65.

<u>Net Settlement Fund ("NSF")</u>. Lange misses the mark when he incorrectly argues "Lakeview is wrong in its assertion that XL Fund investors do not participate in the Settlement Fund." *See* Doc. 571 at 2. Lakeview never argued that. The biggest problem with the proposed settlement is its unreasonable, unfair and improper attempt to treat XL Fund *as if* it were in the same position as the other funds vis-à-vis the BLMIS and NSF distributions. It is not, and the result is a set of settlement terms that are wholly inadequate when it comes to XL Fund and its limited partners.

XL Fund was not a BLMIS customer; and, unlike other Settling Funds, it will not receive any of the BLMIS Trustee's distributions. Moreover, it has unique and valuable claims to recover $405 million in consideration transferred by XL Fund to three banks (having no affiliation at all with Madoff or BLMIS) in connection with swap contracts other Settling Fund never entered into. Because these swap-related claims are unique to XL Fund and its limited partners, it was completely improper for Lange and his lawyers to settle these claims without receiving adequate compensation for ***all*** XL Fund investors, including opt outs who will participate in the settlement only through the Fund Distribution Account ("FDA").

As it stands, however, the benefit obtained in exchange for Lange's purported promise ***never to affirmatively assert these claims against XL Fund's swap counterparties*** inures to *all* Settling Plaintiffs through the NSF, not to XL Fund investors through the FDA. *See* Doc. 563-18, Ex. XIX (Supplemental Notice), at 2 (such swap-related claims "may only be asserted by the Settling Funds ... in defense of the Swap Counterparties' assertion of claims against the Settling Funds under the swap contracts"); Doc. 563-10, Ex. XI, and 563-12, Ex. XII (email exchanges confirming this negotiated language). This is unfair, unreasonable, and contrary to law. It is wholly improper to use the derivative claims of XL Fund investors, and XL Fund's own swap-related claims, to enhance the recoveries of investors in other funds, *i.e.*, other members of the same Settlement Class. *See National Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 660 F.2d 9, 19 (2nd Cir.1981).

The following **<u>Table 1</u>** illustrates the striking inequity of the distributions of SIPA recoveries through the FDA:

|  | Allowed SIPA Claims | Percentage of Current SIPA Claims[1] | Current Value of Trustee's Recoveries to be Disbursed Under the FDA[2] |
|---|---|---|---|
| Market Fund and Market Portfolio | $ 2,886,177,716 | 29.01% | $ 2,494,585,764 |
| Rye Insurance Fund | $ 40,000,000 | 0.402% | $ 34,572,864 |
| XL Fund | $ --0 | 0.00% | $ --0 |
| Prime Fund | $ --0 | 0.00% | $ --0 |
|  |  |  | $ 2,529,158,448 |

*See* Doc. 577, at 4.

---

[1] According to the Trustee's Declaration submitted in support of the Trustee's Motion, the total amount of approved SIPA claims is currently $9.95 billion. *See* Doc. 577 at 4 n.5. That amount was used to determine the current value of each fund's SIPA claim. *See id*.

[2] According to the Trustee's July 28, 2011 press release, with the payment due under the Tremont settlement, the Trustee's recoveries as of the settlement date, will total approximately $8.6 billion. See http://www.madoff.com/News-Download.aspx?PressRelease=65.

<u>XL Fund's Derivative Claims</u>.  Lange falsely claims that XL Fund investors' rights, including their swap-related derivative claims, are "preserved for assertion in the context of the administration of the Funds." *See* Doc. 571 at 2.  It is quite clear that Lange's lawyers—without authority to do so—promised these valuable swap-related claims would not be asserted in pursuit of an affirmative recovery from XL Fund's swap counterparties for the benefit of XL Fund and its limited partners.  As reflected in Doc. 563-10, Ex. XI, and 563-12, Ex. XII, interim co-lead counsel did this to induce the "Swap Counterparties" to accept a 99% reduction in their NSF claims.  Here is the specific language Lange's counsel purportedly agreed to:

> Except as otherwise released in the Settlement Agreement, any claims of the Settling Funds relating to the Swap Counterparties are preserved, except that ***such preserved claims may only be asserted*** by the Settling Funds (or by Class Counsel if so assigned) ***in defense of the Swap Counterparties' assertion of claims against the Settling Funds under the swap contracts***.

Doc. 563-18, Ex. XIX (Supp. Notice of Pendency), at 2.

Because XL Fund was not a BLMIS customer, and because the Trustee denied Prime Fund's SIPA claim in its entirety, the foregoing proposed resolution of XL Fund's swap-related claims without any corresponding benefit or consideration to XL Fund investors, in the FDA or otherwise, creates disproportionate and inexcusable differences in the recoveries by investors in the different funds.  This is especially true since XL Fund's right to assert its claims "in defense of" contract claims by the Swap Counterparties is worthless.  The Swap Counterparties already have the $405 million of swap collateral from XL Fund.  *See* Doc. 564-565 (motion, memorandum and complaint in intervention).  XL Fund performed all of its swap-related obligations, *see id.*, and the swap counterparties have no reason to assert swap-related claims against XL Fund.  However, even if the Swap Counterparties wanted to assert contract claims against XL Fund, they could not do so because, as "Releasing Parties" under the Settlement, they have released all such claims against XL Fund.  *See* Doc. 392-1

(Stipulation of Settlement), §§1.47, 1.49, 1.54 and 4.1 (Settlement Class Members release the Settling Funds and other defendants from all Released Claims, which is broadly defined to include contract under the swap contracts).

Contrary to Lange's argument, the proposed settlement does not permit the assertion of such claims during the administration of the FDA, and the terms of the FDA Plan of Allocation do not permit it. The FDA is set up to distribute the amounts remaining in each Settling Funds account after distributions from the Madoff Trustee are received. *See* FDA Plan of Allocation, at 3-4. Claimants in each fund receive a proportional share "of the Remaining Fund Proceeds ***attributable to the Eligible Hedge Fund in which the Fund Distribution Claimant was invested***." *Id.*

Lange weakly argues that the value attributed to XL Fund's swap-related claims is uncertain, but Lange and class counsel never alleged or pursued those claims. In fact, as specified in a recently filed complaint in intervention detailing the XL Fund's swap-related claims, the amount of recovery available is at least $405 million. The Trustee discovered the total amount of swap collateral provided by XL Fund to its swap counterparties in the ordinary course of his thorough investigation, unlike Lange, who did nothing to investigate or pursue the swap-related claims uniquely available to XL Fund. The $405 million in equitable relief sought via rescission due to mutual mistake or innocent mistake, and for unjust enrichment, is well-established under New York law, and do not require proof of scienter. Just recently, for example, a New York appellate court permitted one party to a marital property agreement to rescind the contract based on the parties' mutual mistake as to the existence of a segregated BLMIS-"Madoff" investment account in the plaintiff's name, which actually did not exist. *See Simkin v. Blank*, 80 A.D.3d 401, at 402-404, 915 N.Y.S.2d 47 (N.Y. App. 1st 2011). The court allowed the claims for rescission despite that the mistake originated with BLMIS, a third party. *Id.* at 402 ("mutual mistake can be based on a statement by a third party").

<u>Conflicts Between Settling Funds</u>.  Lange and class counsel continue to insist that no conflicts exist between the various Settling Funds and that, therefore, no conflicts of interest exist on their part.  Although there are many, the most recent example of such conflicting interests is shown by the allocation of the $800 million "credit" given with respect to the settlement payment by the Tremont defendants in *Picard, Trustee v. Tremont Group Holdings, Inc., et al.*, S.D.N.Y. No. 10-05310B—which class counsel tout as a "benefit" secured, in part, by their efforts.  *See* Entwistle Letter, at 2.  Under Section 502(h) of the Bankruptcy Code, if an entity is sued by the bankruptcy estate for receiving an alleged preference or fraudulent transfer, the entity is entitled to file a proof of claim if the entity ends up paying money to the bankruptcy estate as part of a settlement or pursuant to a judgment.

Here, Tremont's $1.0 billion settlement payment results in an $800 million credit under Section 502(h).  However, contrary to the interests of investors in XL Fund and other Settling Funds, the entire amount of that $800 million credit is allocated to ***just <u>two</u> of the 16 Settling Funds***—Rye Select Broad Market Fund, L.P. ("Market Fund") and Rye Select Broad Market Portfolio Ltd. ("Market Portfolio").[3] This is fundamentally unfair, especially since the payment is in exchange for the release of avoidance and fraudulent transfer claims against all of the "Rye Select" entities, including XL Fund and Prime Fund.

---

[3] *See* Trustee's Motion & Mem. in Support of Motion for Order Approving Settlement Between the Trustee and Tremont Group Holdings, Inc., et al. ("Trustee's Motion"), *Picard, Trustee v. Tremont Group Holdings, Inc.*, S.D.N.Y. No. 10-05310B, Ex. C (showing Prime Fund's $495 million withdrawal on March 26, 2008).  A copy of the Trustee's Motion and all supporting papers, including the settlement agreement and the Trustee's supporting declaration is publicly available for download at http://www.madoff.com/CourtFilings.aspx.

Using the information contained in **Table 1** above, the inequities in the allocation of the Section 502(h) credit are apparent, as are the conflicts inherent in each funds' interest in maximizing its share of the credit.

| Recipients of §502(h) Credit | §502(h) Credit | Percentage of Current Allowed SIPA Claims | Current Value of §502(h) Credit to be Disbursed Under the FDA |
|---|---|---|---|
| Market Fund and Market Portfolio | $ 800,000,000 | 8.04% | $ 691,457,286 |
| Rye Insurance Fund | $ --0 | 0.00% | $ --0 |
| XL Fund | $ --0 | 0.00% | $ --0 |
| Prime Fund | $ --0 | 0.00% | $ --0 |
|  | $ 800,000,000 |  | $ 691,457,286 |

Standing to Object. Lange once again takes issue with Lakeview's standing to object, but Lange and his counsel are missing the point. XL Fund investors are not being adequately represented with respect to their claims, and because all XL Fund investors, including opt out, will be bound the settlement of derivative claims under the FDA, Lakeview has every right to object. Fact is, the settlement of XL Fund's derivative claims is fundamentally unfair to XL Fund investors, and XL Fund investors are being severely shortchanged under the Trustee-Tremont settlement. Although class counsel may have negotiated a "commendable resolution" on behalf of investors in Market Fund and Market Portfolio, the proposed settlement is not fair and wholly inadequate with respect to investors in XL Fund.

The Deficient Notice. Lakeview's objection papers and the objections of other interested persons, *see*, *e.g.*, Doc. 577 (White-Dees objections) detail significant defects that permeate the Notice of Pendency and the Supplemental Notice. Lange's response does not address any of these defects. No reply is required.

Phoenix Lake's Motion to Intervene. Lange's opposition to Phoenix Lake's motion to intervene rests on the claim that Lange has standing to assert and to settle claims derivatively on behalf of XL Fund, and has done so here, and that Phoenix Lake's grounds for intervening have no merit. Under Rule 23.1, however, it is not

-6-

1  enough that Lange became a limited partner of XL Fund in November 2008, the
2  month before Madoff's arrest.  Lange must have been a partner "at the time of the
3  transaction[s] complained of."  See Fed. R. Civ. P. 23.1(b)(1).  Lange must "fairly and
4  adequately represent the interests" of XL Fund limited partners who are similarly
5  situated in enforcing XL Fund's rights.  Id.  In this instance, with respect to the swap-
6  related claims at issue, Lange and his counsel did nothing to advance or protect the
7  interests of XL Fund investors.  Even worse, they did just the opposite by trading
8  away XL Fund's unique and valuable swap-related claims for the benefit of Settling
9  Plaintiffs in *other* funds (in the form of a larger NSF distribution).  This plainly is not
10 "fair" or "adequate" representation.  See, e.g., National Super Spuds, 660 F.2d at 19.
11 To protect the rights and interests of XL Fund investors and ensure that XL Fund
12 investors have the right to receive fair and adequate distributions under the NSF and
13 FDA, the Court should grant Phoenix Lake's motion to intervene.

15 Dated:  August 5, 2011           **ROZWOOD & COMPANY APC**

17                                   By:  /s/ Benjamin Rozwood
18                                        Benjamin Rozwood
19                                   503 North Linden Drive
                                     Beverly Hills, CA  90210
20                                   Telephone: (310) 246-1451
21                                   Facsimile:  (310) 246-9786

22                                   Attorneys for Lakeview Investment, LP
23                                   and Phoenix Lake Partners, L.P.