UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | Master File No. 08 Civ. 11117 (TPG) |
| This Document Relates to: State Law Action, No. 08 Civ. 11183 | |

**MEMORANDUM IN SUPPORT OF *EX PARTE* MOTION FOR AN ORDER, PURSUANT TO FED. R. CIV. P. 24(d), (1) REQUIRING CORRECTIVE NOTICES TO BE SENT TO XL FUND AND PRIME FUND LIMITED PARTNERS REGARDING CERTAIN DEFENDANTS' UNAUTHORIZED AND MATERIALLY MISLEADING NOTICES REGARDING THE MADOFF TRUSTEE-TREMONT SETTLEMENT AND (2) GRANTING INJUNCTIVE AND OTHER RELATED RELIEF**

Lakeview Investment, L.P. and Phoenix Lake Partners, L.P., as limited partners of Rye Select Broad Market XL Fund, L.P. ("XL Fund"), and Edward L. White, for himself and on behalf of White Trust dated May 3, 2002, and Rigdon O. Dees, III, as limited partners of Rye Select Broad Market Prime Fund, L.P. ("Prime Fund") (collectively, the "XL-Prime Limited Partners"), submit this memorandum in support of their jointly filed motion for an order, pursuant to Fed. R. Civ. P. 24(d):

(1) requiring Defendants' Tremont Group Holdings, Inc. ("Tremont Holdings") and Bank of New York Mellon Corp. ("BNY") to send XL Fund and Prime Fund limited partners notices correcting certain materially misleading statements contained in the unauthorized notices that Tremont Holdings and BNY sent via email to XL Fund and Prime Fund limited partners on August 5, 2011, regarding the proposed settlement between the Madoff Trustee and defendants in *Picard, Trustee v. Tremont Holdings, et al.*, S.D.N.Y. Adv. Pro. No. 10-05310 (BRL) (the "Madoff Trustee-Tremont Settlement");

(2) enjoining all defendants in this case from communicating directly with XL Fund and Prime Fund limited partners about the Madoff Trustee-Tremont Settlement, or the proposed settlement in this action, without court approval until a judgment is entered in this action and the time for appeal has expired;

(3) compelling defendants and interim class counsel to provide certain documents and information to XL-Prime Limited Partners so that they may prepare a suitable corrective disclosure for the Court's consideration and approval; and

(4) briefly continuing the hearing on the proposed settlement, plans of allocation and requests for attorneys' fees in this action so that XL Fund and Prime Fund investors will be properly informed about the Madoff Trustee-Tremont Settlement at the time of the hearing on the proposed settlement in this case.

## I. SUMMARY OF ARGUMENT

"It is the responsibility of the court to direct the 'best notice practicable' to class members, … and to safeguard them from unauthorized, misleading communications from the parties or their counsel." *Erhardt v. Prudential Group, Inc.*, 629 F. 2d 843, 846 (2nd Cir. 1980). "Unapproved notices to class members which are factually or legally incomplete, lack objectivity and neutrality, or contain untruths will surely result in confusion and adversely affect the administration of justice." *Id*. This is precisely the concern giving rise to XL-Prime Limited Partners' motion.

Last Friday, August 5, 2011, just one court day immediately preceding the day of the hearing to decide Plaintiffs' motion to approve the proposed settlement and plans of allocation in this case, Tremont Holdings and BNY sent limited partners of XL Fund and Prime Fund an unauthorized communication, not approved by this Court or by the Court in the Trustee's Adv. Pro. No. 10-05310. This unauthorized communication "announces" that Tremont Holdings and the Settling Funds "have reached a settlement" with the Madoff Trustee and that "as part of the settlement," XL Fund and Prime Fund investors "will be afforded the potential to recover a substantial portion of the Madoff-related losses, as ultimately determined by the Trustee's recovery efforts." In fact, the Madoff Trustee- Tremont Settlement, as proposed, will not benefit XL Fund or Prime Fund limited partners at all, and it is apparent that this unauthorized "notice," delivered via email to investors on the eve

of the hearing today, was designed to minimize and deter objections to the proposed settlement in this case.

Rule 23(d), Fed. R. Civ. P. ("Rule 23(d)"), gives this court broad powers to make "appropriate orders" to ensure fair proceedings in class actions. The Court may require "appropriate notice" to be given to class members of "the proposed extent of the judgment"; to impose conditions on the parties; and to "deal with similar procedural matters." *See* Fed. R. Civ. P. 23(d)(1)(B), (C) & (E). If the Court finds that a party has improperly communicated with absent class members, the Court may require a corrective notice to be sent, and the Court may enjoin the parties from making similar unauthorized communications. As explained below, such relief is warranted in this case.

## II.  BACKGROUND FACTS

On August 5, 2011, limited partners of XL Fund and Prime Fund, including XL-Prime Limited Partners, received an email from BNY, attaching a letter from Tremont Holdings. *See* Yanowitz Dec. ¶2 & Ex. A-B (email and letter to XL Fund partners); White Dec. ¶2 & Ex. A-B (email and letter to Prime Fund partners); Dees Dec. ¶2 & Ex. A (letter to Prime Fund partners).[1] The email to XL Fund limited partners is addressed only to XL Fund limited partners, stating "Notice to Investors Re Settlement in the Rye Select Broad Market XL Fund, L.P." *See* Yanowitz Dec. ¶4. The email to Prime Fund limited partners is similarly addressed only to Prime Fund limited partners, stating "Notice to Investors Re Settlement in the Rye Select Broad Market Prime Fund, L.P." *See* White Dec. ¶4; Dees Dec. ¶4. Each email attaches the same letter from Tremont Holdings. See Yanowitz Dec., Ex. B; White Dec., Ex. B; Dees Dec., Ex. A.

---

[1] "Yanowitz Dec." refers to the concurrently filed supporting Declaration of Joel Yanowitz; "White Dec." refers to the concurrently filed supporting Declaration of Edward L. White, Doc.; and "Dees Dec." refers to the concurrently filed Declaration of Rigdon O. Dees, III.

MEMORANDUM IN SUPPORT OF *EX PARTE* MOTION PURSUANT TO FED. R. CIV. P. 24(d)

2

Although the email was sent August 5, the letter itself is dated August 1, 2011, *see id*., indicating that the letter was timed to be received by XL Fund and Prime Fund limited partners immediately before the critical hearing on the proposed settlement in this action. The letter begins with a general reference to the Madoff Trustee-Tremont Settlement. *Id*. It then states that "as part of the settlement, Tremont fund investors will be afforded the potential to recover a substantial portion of their Madoff-related losses, as ultimately determined by the Trustee's recovery efforts." *Id*.

Upon receiving their respective copies of the BNY emails and the Tremont Holdings letter, the individuals representing XL-Prime Limited Partners were led to believe that the Madoff Trustee-Tremont Settlement might produce "substantial recoveries" for limited partners of XL Fund and Prime Fund. *See* Yanowitz Dec. ¶¶5-6; White Dec., ¶¶5-6; Dees Dec., ¶¶5-6. In fact, XL Fund and Prime Fund limited partners will not share in any of the recoveries resulting from the currently proposed Madoff Trustee-Tremont Settlement

### III. LEGAL ARGUMENT

#### A. The Unauthorized Notice From Tremont Holdings and BNY To XL Fund and Prime Fund Limited Partners Is Extremely Misleading.

Although the Tremont Holdings letter states that limited partners of XL Fund and Prime Fund could recover "a substantial portion of their Madoff-related losses" as a result of the Madoff Trustee-Tremont Settlement and "the Trustee's recovery efforts," none of it is true. As previously explained by XL-Prime Limited Partners, see Doc. 577 and ___ (joinder in objections and objections), neither XL Fund nor Prime Fund will receive a BLMIS distribution. XL Fund is not a BLMIS customer, and has never been. Rather, XL Fund invested all or substantially all of its capital in connection with structured investment agreement known as "total return swap contracts." *See* Doc. 565 & 565-1 (memorandum in support of Phoenix Lake motion to intervene and proposed complaint-in-intervention). Although Prime

Fund had a BLMIS account, it withdrew all of its principal (and approximately $220 million of fictitious profits) on March 26, 2008, and the next day invested $200 million in XL Fund. *See* Doc. 577, at 3-4. Because XL Fund and, as it turns out, Prime Fund were not BLMIS customers, neither of them will share in the Madoff Trustee's recoveries. Table 1 below, which specifies the maximum potential recoveries under the Madoff Trustee-Tremont Settlement, is telling.

|  | Allowed SIPA Claims | Percentage of Current SIPA Claims | Current Value of Trustee's Recoveries | Net Recoveries (After Deducting Loans)[2] |
|---|---|---|---|---|
| Market Fund and Market Portfolio | $ 2,886,177,716 | 29.01% | $ 2,494,585,764 | $ 1,612,585,764[3] |
| Rye Insurance Fund | $ 40,000,000 | 0.402% | $ 34,572,864 | $ 34,572,864 |
| XL Fund | $ --0 | 0.00% | $ --0 | $ --0 |
| Prime Fund | $ --0 | 0.00% | $ --0 | $ --0 |
|  |  |  | $ 2,529,158,448 | $ 1,647,158,628 |

*See* Doc. 577, at 4.

---

[2] In a letter to the Court, class counsel stated that the $1 billion payment to be made by Tremont Holdings pursuant to the Madoff Trustee-Tremont Settlement would be funded by a $657 million loan and "assets remaining in the Settling Funds." According to Tremont Partners' June 29, 2001 Form ADV, available from the S.E.C. online at http://www.adviserinfo.sec.gov, the Settling Funds cash assets total at least $225 million. As a result, BLMIS recoveries will be reduced $882 million, as the loan is repaid and the Settling Funds' cash reserves are returned.

[3] Even this large amount is misleading to investors. Under the proposed Plan of Allocation for the Fund Distribution Account ("FDA"), "[e]ach Fund Distribution Claimant will receive a Disbursement determined by multiplying the amount of the Remaining Fund Proceeds attributable to the Eligible Hedge Fund in which the Fund Distribution Claimant was invested by a fraction, the numerator of which is the Fund Distribution Claimant's Recognized Claim and the denominator of which is the sum total of all Fund Distribution Claimants' Recognized Claims for that Eligible Hedge Fund. *See* FDA Plan of Allocation, ¶E. According to the Madoff Trustee, the sum total of Recognized Claims for Market Fund and Market Portfolio total approximately $4.2 billion. Hence, ***based upon current recoveries and the proposed Madoff Trustee-Tremont Settlement, the amount of Market Fund and Market Portfolio investors' SIPA recoveries is less than 39 cents per Dollar of Recognized Claims.***

Similarly, XL Fund and Prime Fund will not share in the $800 million "credit" given with respect to the settlement payment to be made by the Tremont defendants in Adv Pro. No. 10-05310B. Under Section 502(h) of the Bankruptcy Code, if an entity is sued by the bankruptcy estate for receiving an alleged preference or fraudulent transfer, the entity is entitled to file a proof of claim if the entity ends up paying money back to the bankruptcy estate in settlement or as a result of a judgment. Although Tremont's $1 billion settlement payment results in an $800 million credit under Section 502(h), the entire credit is allocated to only two funds – Rye Select Broad Market Fund, L.P ("Market Fund") and Rye Select Broad Market Portfolio Limited ("Market Portfolio")[4] – despite that the settlement payment is intended to release avoidance and fraudulent transfer claims against all of the "Rye Select" entities, including XL Fund and Rye Select Broad Market Prime Fund, LP. <u>Table 2</u> below illustrates inequities in the allocation of the Section 502(h) credit, and again shows that XL Fund and Prime Fund limited partners will <u>not</u> "be afforded the potential to recover a substantial portion of the Madoff-related losses, as ultimately determined by the Trustee's recovery efforts."

| Recipients of §502(h) Credit | §502(h) Credit | Percentage of Current SIPA Claims | Current Value of §502(h) Credit to be Disbursed Under the FDA |
|---|---|---|---|
| Market Fund and Market Portfolio | $ 800,000,000 | 8.04% | $ 691,457,286 |
| Rye Insurance Fund | $ --0 | 0.00% | $ --0 |
| XL Fund | $ --0 | 0.00% | $ --0 |
| Prime Fund | $ --0 | 0.00% | $ --0 |
|  | $ 800,000,000 |  | $ 691,457,286 |

---

[4] *See* Trustee's Motion & Mem. in Support of Motion for Order Approving Settlement Between the Trustee and Tremont Group Holdings, Inc., et al. ("Trustee's Motion"), *Picard, Trustee v. Tremont Group Holdings, Inc.*, S.D.N.Y. No. 10-05310B, Ex. C (showing Prime Fund's $495 million withdrawal on March 26, 2008). A copy of the Trustee's Motion and all supporting papers, including the settlement agreement and the Trustee's supporting declaration is publicly available to be downloaded at http://www.madoff.com/CourtFilings.aspx..

### B.  A Corrective Notice And Other Rule 24(d) Relief Is Warranted.

"It is the responsibility of the court to direct the 'best notice practicable' to class members, … and to safeguard them from unauthorized, misleading communications from the parties or their counsel." *Erhardt v. Prudential Group, Inc.*, 629 F. 2d 843, 846 (2nd Cir. 1980). "Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal. The damage from misstatements could well be irreparable." *Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1203 (11th Cir.1985); *see also In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 253 (S.D.N.Y. 2005) ("when a defendant contacts putative class members for the purpose of altering the status of a pending litigation, such communication is improper without judicial authorization"); *Hampton Hardware v. Cotter & Co.*, 156 F.R.D. 630, 632-34 (N.D. Tex. 1994) (defendant's communications with class members were improper because they affected class members' decisions to participate in the litigation).

"Rule 23(d) of the Federal Rules of Civil Procedure gives the court broad powers to make 'appropriate orders' to ensure efficient and fair proceedings in a class action." *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239, 1242 (N.D. Cal. 2000). "If the court finds that defendants have improperly communicated with plaintiffs, the court may consider a curative notice from the court, at the expense of those at fault, giving the correct information. *Great R. Co-op v. Farmland Indus., Inc.*, 59 F. 3d 764, 766 (8th Cir. 1995). "The court's Rule 23(d) powers [also] include the authority to enjoin communications with class members to protect them from undue interference." *McKesson*, 126 F. Supp. 2d at 1242; *see also Tedesco v. Mishkin*, 629 F. Supp. 1474 (S.D.N.Y. 1986) (prohibiting defendant from further communicating with class members after finding that defendant sent class members letter containing materially false and misleading statements).

To cure the effect of the materially misleading communications sent to limited partners of XL Fund and Prime Fund about the proposed Madoff Trustee-Tremont Settlement and the potential recoveries that those limited partners might receive in this case pursuant to the proposed Plan of Allocation for the Fund Distribution Account, the Court should require defendants to send a corrective communication, approved by the Court, and the Court should enjoin defendants from further communicating directly with XL Fund and Prime Fund limited partners about the Madoff Trustee-Tremont Settlement, or the proposed settlement in this action, without court approval until a judgment is entered in this action and the time for appeal has expired.  In addition, to assist XL-Prime Limited Partners in preparing a suitable corrective disclosure for the Court's approval, defendants and interim class counsel should be compelled to provide XL-Prime Limited Partners with a breakdown, by Eligible Fund, of each Fund's aggregate Recognized Claims and the parties' current proposal for allocating BLMIS recoveries assuming that the Madoff Trustee-Tremont Settlement is approved.  Finally, the Court should briefly continue the final approval hearing to permit the corrective disclosure to be given to limited partners of XL Fund and Prime Fund, so that those investors receive a full and fair opportunity to consider the proposed settlement, unaffected by the materially misleading notice that they received from BNY and Tremont Holdings.

/

/

/

/

1 | IV.  **CONCLUSION**

For the reasons stated, XL-Prime Limited Partners' *ex parte* motion should be granted.

Dated: August 8, 2011

>                               By:   /s/  Benjamin Rozwood
>                               BENJAMIN ROZWOOD
>                               ROZWOOD & COMPANY
>                               503 North Linden Drive
>                               Beverly Hills, CA 90210
>                               Tel: (310) 246-1451
>                               Fax: (310) 246-9786
>
>                               Attorneys for Lakeview Investment, L.P.;
>                               Phoenix Lake Partners, L.P.; Edward L.
>                               White, for himself and on behalf of
>                               White Trust dated May 3, 2002, and
>                               Rigdon O. Dees, III