N.Y.S.D. Case #
08-cv-11117(TPG)

**UNITED STATES COURT OF APPEALS
FOR THE
SECOND CIRCUIT**

---

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 10th day of November, two thousand eleven.

Before: Rosemary S. Pooler,
*Circuit Judge*

---

In Re: Tremont Securities Law, State Law and Insurance Litigation.

Master File No.: 08 civ 11117 (TPG)

**ORDER**

Docket No. 11-3899 (L)
11-3923 (Con)
11-4022 (Con)
11-4030 (Con)

---

IT IS HEREBY ORDERED that the motion by appellants Madelyn Haines and Paul Zamrowski to supplement the record on appeal is GRANTED without prejudice to Appellees to move to strike before the merits panel.

**USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ______________
DATE FILED: November 16, 2011**

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

CERTIFIED COPY ISSUED ON 11/16/2011

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
Thurgood Marshall U.S. Courthouse 40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

**MOTION INFORMATION STATEMENT**

**Docket Number(s):** 11-4030, 11-3899 (lead case) Caption [use short title]

**Motion for:** Supplementation of Record In Re Tremont Securities Law

Set forth below precise, complete statement of relief sought:

Order the district court to supplement the docket and record with (a) all communications to or from the court and (b) all court orders relating to the cases on appeal that are not currently in the docket and record.

**MOVING PARTY:** Appellants Haines and Zamrowski
[ ] Plaintiff [ ] Defendant
[x] Appellant/Petitioner [ ] Appellee/Respondent

**OPPOSING PARTY:** See attached list

**MOVING ATTORNEY:** Vincent T. Gresham

**OPPOSING ATTORNEY:** See attached list

[name of attorney, with firm, address, phone number and e-mail]

Law Office of Vincent T. Gresham
2870 Peachtree Road, #306
Atlanta, Georgia 30305
404 281 2762 gresham05@comcast.net

Court-Judge/Agency appealed from: Southern District of New York Honorable Thomas P. Griesa

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
[x] Yes [ ] No (explain): ______

Opposing counsel's position on motion:
[ ] Unopposed [x] Opposed [ ] Don't Know

Does opposing counsel intend to file a response:
[ ] Yes [ ] No [x] Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has request for relief been made below? [ ] Yes [ ] No
Has this relief been previously sought in this Court? [ ] Yes [ ] No
Requested return date and explanation of emergency: ______

Is oral argument on motion requested? [x] Yes [ ] No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set? [ ] Yes [x] No If yes, enter date: ______

**Signature of Moving Attorney:** ______ **Date:** 10/20/2011 Has service been effected? [x] Yes [ ] No [Attach proof of service]

---

**ORDER**

**IT IS HEREBY ORDERED THAT** the motion is **GRANTED DENIED**.

**FOR THE COURT:**
CATHERINE O'HAGAN WOLFE, Clerk of Court

Date: ______ By: ______

**Form T-1080**

**Attorneys for Appellees-Lead Plaintiffs Based on the Notices of Appearance:**

Bernstein Liebhard, LLP
10 East 40th Street 22nd Floor, New York, NY 10016
212-779-1414 Fax: 212-779-3218
Jeffrey Michael Haber Email: haber@bernlieb.com
Stephanie M. Beige Email: beige@bernlieb.com

Wolf Haldenstein Adler Freeman & Herz, LLP
270 Madison Avenue, New York, NY 10016
212-545-4600 Fax: 212-545-4653
Daniel W. Krasner Email: krasner@whafh.com
Demet Basar Email: basar@whafh.com

Entwistle & Cappucci LLP
280 Park Avenue, 26th Floor West, New York, NY 10017
212-894-7200 Fax: 212-894-7272
Andrew J Entwistle Email: aentwistle@entwistle-law.com

Robbins Geller Rudman & Dowd LLP
58 South Service Road Suite 200, Melville, NY 11747
631-367-7100 Fax: 631-367-1173
David Avi Rosenfeld Email: drosenfeld@csgrr.com

**Attorneys for Appellees-Defendants Based on the Notices of Appearance:**

Dechert, LLP
602 Carnegie Center, Princeton, NJ 08540
609-620-3226 Fax: 609-620-3259
David Adam Kotler Email: david.kotler@dechert.com

Dechert, LLP
1095 Avenue of the Americas, New York, NY 10036-6797
212-698-3557 Fax: 212-698-3599
William Kennedy Dodds Email: william.dodds@dechert.com

Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square, 42nd Floor, New York, NY 10036
212-735-3000 Fax: 212-735-2000
Seth M. Schwartz Email: Seth.Schwartz@skadden.com

Tannenbaum Helpern Syracuse & Hirschtritt LLP
900 Third Avenue, New York, NY 10022
212-508-6700 Fax: 212-371-1084
Jamie Benjamin Walton Stecher Email: stecher@thshlaw.com
Ralph A. Siciliano Email: siciliano@thshlaw.com

Case: 11-3899 Document: 190-2 Page: 3 11/16/2011 448640 75

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

In Re Tremont Securities Law

Case No. 11-4030
Lead Case No: 11-3899

**THE HAINES-APPELLANTS' MOTION TO SUPPLEMENT THE RECORD PURSUANT TO F.R.A.P. 10(e)(2)(C)**

Appellants Haines and Zamrowski are objectors to a class and derivative action settlement approved by the district court. Appellants file this Motion to supplement the record to include all district court orders and all communications to or from the district court (collectively "Court Communications") that were not filed on the ECF system and are not currently included in the docket and record.[1] Among the omitted documents and information submitted by letter that this Motion seeks to supplement the record with are the following:

> (1) Those objections to the Settlement and proceedings below by Appellants and other class members and investors that are directly at issue in this appeal but were, as per the court's instructions, submitted by letter rather than through use of the ECF system and which the district court never placed on the docket and in the record;
>
> (2) Those arguments and hundreds of pages of information that Appellees submitted by letter to the district court in support of the Settlement and to refute the objections made below and on which the district court presumably based its approval; and,
>
> (3) Other non-ECF communications to and from the district court, including orders, that Appellants requested to see but were refused.

The current docket and record are incomplete without inclusion of the Court Communications because the missing Court Communications contain arguments and

---

[1] Appellants have two virtually identical appeals, 11-4030 and 11-3931 which have not yet been consolidated. Accordingly, Appellants are filing identical Motions in both cases, except for case captions.

information necessary for this Court to obtain a complete and accurate understanding of what occurred below both procedurally and as a matter of substance. Moreover, if the record is not supplemented with Court Communications it will be so deficient as to deprive Appellants of the ability to make certain arguments on appeal, and will hinder this Court's ability to properly determine the appeal.

Pursuant to Federal Rule of Appellate Procedure 10(e)(2)(C), Appellants request that this Court direct the district court to include in the docket and record all Court Communications that are not currently in the ECF docket and record.

**Statement of Facts**

Pursuant to local practice, counsel may communicate with district courts through letters rather than formal motions filed using the district court's ECF system. S.D.N.Y. ECF Rule 13.1 instructs that letters are not to be filed using the ECF system.[2] Letters below were not filed via the ECF system but rather "in the traditional manner on paper," and letters do not appear in the district court's docket[3] and record.

[2] S.D.N.Y. Electronic Case Filing Rules And Instructions, Rule 13.1 states in relevant part: "May letters be filed electronically? No. Letters are submitted in the traditional manner on paper. **An attorney should not file a letter electronically on the ECF system.**" (emphasis added)

[3] All references to the docket are to the docket in 08-11117.

In this case the district court in its class notice also instructed all class members that: "[t]o object, you must send **a letter** saying that you object…"[4] (emphasis added) See, Exhibit A to the *Declaration of Vincent T. Gresham In Support Of the Haines'Appellants' Motion To Supplement The Record Pursuant To FRAP 10(e)*(2)(C) ("VTG-Decl."). Because of the district court's instructions to object by "letter" some of the issues on appeal raised by Appellants in letters—pursuant to S.D.N.Y. ECF Rule 13.1—were not filed on the ECF system. (VTG-Decl. ¶3). If other interested class members and investors also raised issues material to the appeal through letter, based on S.D.N.Y ECF Rule 13.1, these letters would also be missing from the docket and record.

Below Appellants requested the district court require all filings, communications with the court and orders be entered on the district court's ECF website; however, the district court denied the request. (VTG-Decl. Ex-B) Appellants also requested that lead counsel for the class ("Lead Counsel") "[p]lease provide all communications to or from the court that are not in the ECF system, which would include all orders, letters, e-mails or writings reflecting oral communications." (VTG-Decl. Ex-C) However Lead Counsel, citing the district court's bench ruling of May 5, 2011, refused to provide the

---

[4] The following instructions are from the class notice:

> 19. How Do I Tell The Court That I Do Not Like The Settlement?
> If you are a Subclass Member or a current limited partner and/or shareholder of the Settling Funds, you can object to the Settlement if you do not like any part of it. To object, you must send a letter saying that you object to the Settlement in the In re Tremont Securities Law, State Law and Insurance Litigation – 08-11117-TPG, and the reasons why you object to the Settlement.

(VTG Decl. Ex. A)

requested Court Communications that were missing from the docket and record. (VTG-Decl. Ex-D)

Below Appellants argued that while the practice of off-the-record Court Communications might be acceptable in ordinary litigation (where all interested persons are named parties who are copied on all such communications), it is not proper in representative actions, such as class and derivative actions, whose impact goes far beyond the named parties and counsel of record. As argued below:

> Securities LC's arguments that anything put in a letter to the Court may remain secret forever has no place in proceedings evaluating class and derivative action settlements. While letters to courts might remain secret in the context of private litigation without harm (because all parties are copied on all letters to the Court and thus no communications are kept secret from anyone impacted by the litigation), representative actions are different. In a class or derivative action, the named parties constitute only a small fraction of the people impacted by the litigation. Because their rights are impacted by the litigation, there is no justification to allow any communications to and from the court be kept secret from the Absentees.
>
> In addition to being able to understand what is going on, Absentees need this information to facilitate other important legal rights. For example, an accurate and complete record is necessary to preserve Absentees rights to object and to appeal district court decisions. Secret communications tilt the playing field in favor of the party settlement proponents because only they know the entirety of the information presented to the court and only they know all of what the court did and said in response. Representative actions should be transparent; *LC cannot keep secret information leading to or reflecting the exercise of judicial discretion.*

(emphasis in original, VTG-Decl. Ex-E)

Despite Appellants' arguments and efforts below, the district court did not place any of the letter communications on the docket and in the record, and did not require Appellees to provide to Appellants "communications to or from the court that are not in the ECF system…" (See VTG-Decl. Ex-B, C & D). Consequently, neither Appellants nor this Court has a complete list of all Court Communications that are missing from the

docket and record. Examples of the types of information that are missing are discussed below.

One category of Court Communications missing from the docket and record are the multiple voluminous letters and exhibits that Lead Counsel sent to the district court during and prior to the settlement approval process. For example on 8/4/11, just days before the 8/8/11 final approval hearing Lead Counsel submitted a letter and enclosures amounting to 306 pages. (VTG-Decl. Ex-F). This letter contains arguments and information regarding the settlement, objections, and opt outs, and the enclosures include approximately 300 pages of charts, argument, information, proposed orders and non-public modifications to important aspects of the proposed settlement. (VTG-Decl. Ex-F). The arguments and information in this last-minute letter to the district court are relevant to the issues on appeal and the 8/4/11 letter is an example of why all Court Communications should have been included by the district court in the docket and record.

This type of Court Communication was not an isolated event; Lead Counsel submitted 195 pages of settlement related information in a letter dated 3/29/11 and 188 more pages of information in a letter dated 5/31/11, yet the district court did not include either of these letters in the docket and record. (VTG-Decl. ¶9). Appellants have reason to believe there have been other communications from Appellees and other interested persons to the district court. However, because Appellees refused to disclose Court Communications to Appellants when requested (VTG-Decl. Ex-D) and because the district court declined Appellants request for public access to all Court Communications (VTG-Decl. Ex-B), Appellants are currently unable to provide this Court with detailed

information about the specific dates and contents of all items currently missing from the docket and record.[5]

Another category of information missing from the docket and record are some objection letters from class members because the class notice instructed "[t]o object, you must send **a letter…"** (VTG-Decl. Ex-A). Consequently those objections filed by letter were not included by the district court in the docket and record. These objections missing from the docket and record include some by Appellants and other investors. [6] (See examples at VTG-Decl. Ex-G) Because the district court did not place all objections on the docket and in the record, this Court is provided with an incomplete record of who objected, which of the 17 different Settling Funds they invested in, and the basis for such objections.

Because Court Communications have been withheld from them (VTG-Decl. Ex-D), Appellants do not know the full extent of missing class member communications. Set forth below Appellants discuss the treatment of one communication that they are aware of, a 7/31/10 letter that Appellants sent to the district court containing *The Haines Plaintiffs' Motion to Cure Inadequate Representation* along with supporting memorandum and declaration to be filed under seal.[7] (VTG-Decl. Ex-H.) As its title

[5]While Appellants do not know of any specific district court order that is missing from the ECF system, if there were no such orders then Appellees would have simply resolved this issue by so informing Appellants when they were asked for all orders not on the ECF system. (VTG Decl. Ex-C) Instead, Appellees refused to provide any information (VTG-Decl. Ex-D) thus leaving open the potential that there are orders missing from the ECF system.

[6] Some objections were filed by letter others filed by ECF. Currently, only the ECF objections appear in the docket and record.

[7]The request for filing these documents under seal was made because the settlement was confidential.

suggests, *The Haines Plaintiffs' Motion to Cure Inadequate Representation* and supporting documents are relevant to Appellants' issues on appeal concerning inadequate representation.[8] However, a review of the docket in July and August 2010 discloses nothing to show that the district court was provided any information about inadequate representation in July-August, 2010.

The reason why there is nothing in the docket is that, even though LC did not Appellants' request to file the documents under seal, the district court never did so. (VTG-Decl. Ex-I) Instead, the district court instructed plaintiffs' counsel not to file anything in the record in response (VTG Decl. ¶13), and sealed its order regarding the 7/31/2010 submission.[9] Thus the current docket and record are incomplete and inaccurate not only with respect to Appellants' 7/31/10 submission, but also with respect to all other class member communications that the district court might have handled in a similar manner.

Appellants believe that other class members and investors also sent letters to the district court which are also missing from the docket and record. For example, in the 3/28/11 Transcript at page 10 lines 6-11 the following exchange occurs: "As the court knows, I have corresponded through some letters with the court during the past week or so. There are a number of issues, your Honor, that go to class notice…." (VTG-Decl.

---

[8] See Appellants' Form C, Addendum B-List Of Proposed Issues For Appeal (Case No. 3931 at Docket # 14-8 page 1 and Case No. 4030 at Docket # 14, page 97) which includes the following two issues: "Whether the district court erred in certifying a class with conflicted and inadequate representatives, with respect to divergent subgroups within the class." "Whether the district court erred by not enforcing attorney conflicts of interest rules that prevent the simultaneous representation of representative plaintiffs for two antagonistic classes."

[9] Appellants believe that the order is filed either as docket number 365 or 366, but are not sure which one. (VTG Decl. ¶14).

Case: 11-3899 Document: 190-2 Page: 10 11/16/2011 448840 75

Ex-J) The issue of class notice is relevant to the issues Appellants raised below and are appealing;[10] however, the letters referenced in the transcript are not included in the docket and Appellants' requests for information about all Court Communications were refused. (VTG-Decl. ¶15, Ex-B, C & D).

As this example demonstrates, because the docket and record do not include letter-briefs it is difficult for Appellants (and may be difficult for this Court as well) reviewing hearing transcripts to fully understand the issues raised or evaluate the district court's compliance with its fiduciary obligations to absentee class members.

Finally, during the settlement approval process, the district court held hearings relevant to the issues on appeal without Appellants receiving notice of such hearings. Two such hearings were held just days before the 6/1/11 final approval hearing on 5/27/11 and 5/31/11. (VTG-Decl. Ex.-K) Appellants were not provided notice of either of such hearing. (VTG-Decl. ¶16). With respect to the second of the no-notice hearings there is no transcript. (VTG-Decl. ¶16). This second hearing seemed to address the issue of whether or not the Class should be expanded. This issue is of particular importance to Appellants who raised below and raise on appeal the issue of "Whether the district court erred by allowing the value of the settlement to class members to be diluted through the post-settlement expansion of the class." (Case No. 3931 at Docket # 14-8 page 1 and Case No. 4030 at Docket # 14, page 97).

[10] See Appellants' Form C, Addendum B-List Of Proposed Issues For Appeal (Case No. 3931 at Docket # 14-8 page 2 and Case No. 4030 at Docket # 14, page 98) which included: "Whether the district court erred by allowing misleading and incomplete information to be included in the notices going to members of the purported class, and by approving misleading notices that violated the PSLRA."

However, despite their objection on the issue of class expansion, Appellants were not given notice of the 5/31/2011 hearing[11] and were thus blindsided at the 6/1/2011 hearing when the Court first disclosed "I had a conference yesterday." (6/1/11 Trans. at 13:12-13, VTG-Decl. Ex-L). The Court then spent much of the hearing discussing the class expansion and other issues apparently raised in the no-notice hearing of the previous day. (6/1/11 Trans. pages 13-38, VTG-Decl. Ex-L).

The docketing and inclusion in the record of all Court Communications concerning this no-notice, no-transcript hearing would help Appellants understand the district court's final approval comments, views and rulings and are directly related to the district court's exercise of judicial discretion with respect to Appellants' own issues on appeal regarding class expansion.

Appellants believe that they could do a better job presenting their issues on appeal and this Court would have an easier time of understanding and ruling upon the issues raised on appeal if the docket and record contained all arguments, objections and information provided to the district court and all of the rulings and orders of the district court. Accordingly, Appellants request that this Court direct the district court to complete the docket and record by including all Court Communications not currently docketed and included in the ECF record.

[11] Notice of the completed hearing was not entered in the docket until 6/3/11. (VTG-Decl. Ex-K).

## Argument and Citation of Authorities

As per local practice, the parties below used letter-briefs. As per local ECF Rule 13.1 such letter briefs were not filed on the ECF system: "May letters be filed electronically? No. Letters are submitted in the traditional manner on paper. **An attorney should not file a letter electronically on the ECF system**." (emphasis supplied). However, the fact that local rules precluded inclusion in the ECF system does not mean that such letters can be excluded from the record on appeal. "It need hardly be stated that the trial record is composed of the proceedings in the District Court including **all papers**, exhibits, and affidavits on file with the Court." (emphasis supplied) *International Business Machines Corp. v. Edelstein*, 526 F.2d 37, 45 (2nd Cir. 1975)(hereinafter "*IBM*").

As argued below, the failure of the district court to include all Court Communications in the docket and record: (A) subjects this Court to an incomplete and potentially misleading record, (B) results in some court communications and actions being kept secret from this Court and Appellants; and (C) impermissibly interferes with Appellants' right to choose which parts of the record to submit to this Court for its review.

### A. This Court Is Entitled To A Record That Accurately Reflects Arguments and Information Presented to the District Court.

As set forth in the *Statement of Facts*, a significant amount of material information, objections and arguments were presented to the district court in letters that are missing from the docket and record.

Federal Rule of Appellate Procedure 10(e)(2)(c) permits this Court to supplement the record "[w]here anything material to a claim on appeal is omitted from the record…"

*U.S. v. Aulet*, 618 F.2d 182 (2d Cir. 1980) (citations omitted). The purpose of Rule 10(e) is to ensure that material information is not omitted from the record which omissions would hinder this Court's "knowledge of what transpired below." *See*, *Aulet*, 618 F.2d at 187 (noting that the party objecting to supplementation of the record on appeal "fails to suggest what principle of law or equity would be served by our thus shielding ourselves from the knowledge of what transpired below"). In *Aulet*, this Court acknowledged its "power to supplement the record by requiring transmission of … relevant evidence…" *Id*.

Here, the docket and record are materially incomplete. A significant number and volume of arguments, objections and information were presented to the district court in letters and exhibits that are not part of the current docket and record. This missing information is important not only to Appellants' ability to effectively prosecute their appeal, but also to this Court's informed review of proceedings below. As the Eleventh Circuit concluded "**it is essential that communications between the trial court and the parties to an action as well as all rulings affecting the procedural rights of parties be shown on the docket and contained in the record to afford complete review by this court.**" (emphasis supplied) *Brown v. Crawford County, Ga.*, 960 F.2d 1002, 1008 n.7 (11th Cir. 1992).

In *Brown* the Eleventh Circuit was "troubled" that "letters exchanged among the parties and the court … were not reflected on the docket and, therefore, were not part of the record" because this "'procedure' precluded complete, informed review by this court…" *Id.* Here, the situation is even worse than the one that "troubled" the Eleventh Circuit in *Brown* because here not all the "letters exchanged by the parties" were ever

provided to Appellants, despite Appellants' requests. (VTG-Decl. ¶¶4-6, Ex-B-D)

District courts in this Circuit have also held that letter communications with the district court are necessary to accurately disclose what occurred below and should be included in the docket and record. See *Delia v. Itochu Int'l, Inc.,* 93 CIV. 8064 (CSH), 1995 WL 390289 (S.D.N.Y. July 3, 1995) *aff'd sub nom. Delia v. Itochu Int'l*, 89 F.3d 825 (2d Cir. 1995), finding that it was "necessary to supplement the record on appeal to include [two letters to the court] so that the record may truly disclose all that occurred in the district court." The court further stated:

> Rule 10(e) exists to ensure… that the record on appeal "truly discloses what occurred in the district court ..." In the words of a leading commentator, if for any reason "the record on appeal on a given case may fall short of being an accurate account of events" in the district court, the purpose of Rule 10(e) is "to provide a means of correcting a defective record." 9 *Moore's Federal Practice* (2d ed. 1990) at p. 10–46.

*Id*. at *1. See also *Handschu v. Special Services Division,* 1985 WL 3538 (S.D.N.Y. Oct. 31, 1985), *1 (granting Rule 10(e) motion and directing clerk "to supplement the record (on appeal) by including the documents attached to [an attorney's] letter to the Court …"); *Clancy v. Phillips*, 2005 WL 1560485, *1 n.1 (S.D.N.Y. Jul.1, 2005) (order entered "instructing the docketing clerk to docket and place in the record the letter briefs submitted by the parties"). Accord *Ventas, Inc. v. HCP, Inc*., 2009 WL 3855638, *7 (W.D. Kent. Nov. 17, 2009) (court granted request to supplement record with counsel letters reasoning that "[t]hose letters reflect objections of the parties and arguments made to the Court; they are proper for appellate review.")

The record is currently incomplete and omits objections and arguments made to the district court by letter. The ability of this Court to perform its essential function of judicial review, especially in the context of a complex class and derivative action

settlement, is compromised where the docket and record omit documents that influenced the district court or reflected an exercise of its judicial discretion. Therefore pursuant to FRAP 10(e)(2)(c) all Court Communications should be included in the docket and record.

**B. There Should Be No Court Communications That Are Kept Secret From This Court Or Appellants.**

Appellants requested to see all communications to and from the district court and all orders issued by the district court that were not on the ECF system. (VTG-Decl. Ex-C). Appellants' request was refused based on the district court's ruling of 5/5/11. (VTG-Decl. Ex-D).

In the context of a representative action, like the class and derivative action in this case, the failure of the district court to require the use of the ECF system for communications (VTG-Decl. Ex-B) coupled with the failure to require Lead Counsel to provide all all communications to requesting class members create the same problems as *ex parte* communications. Here the parties (i.e., Appellees) are privy to communications with the district court that were and still are withheld from class members, including those class members who, like Appellants, specifically requested them to evaluate the settlement and support objections, and now need them to pursue their appeal.

This Court disfavors *ex parte* communications. *Penthouse Intern., Ltd. v. Dominion Federal Sav. & Loan Ass'n*, 855 F.2d 963, 987 (2d Cir. 1988) ("Suffice it to say that we believe that *ex parte* communications between the district court and only one of the litigants are *rarely, if ever,* looked upon with favor…" (emphasis added).) See also *Finley v. Parvin/Dohrmann Co., Inc.*, 520 F.2d 386, 389 n.4 (2d Cir. 1975) (quoting Bar Ass'n Report for proposition "'that ex parte communications are, in the main, fraught with mischief …'").

*Ex parte* communications conflict with the basic rights of the parties to hear and contest the evidence submitted by the opposing party. As the Third Circuit reasoned:

> …ex parte communications run contrary to our adversarial trial system. The adversary process plays an indispensable role in our system of justice because a debate between adversaries is often essential to the truth-seeking function of trials. See Polk County v. Dodson, 454 U.S. 312, 318, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) ("The system assumes that adversarial testing will ultimately advance the public interest in truth and fairness"). If judges engage in ex parte conversations with the parties or outside experts, the adversary process is not allowed to function properly and there is an increased risk of an incorrect result.

*In re Kensington Intern. Ltd.*, 368 F.3d 289, 110 (3d Cir. 2004). See also *Wright v. Southwest Bank*, 554 F.2d 661, 663 (5th Cir. 1977) ("it is error to accept evidence *ex parte* because it is inherently unfair to allow one party to put evidence before the court without allowing his opponent the opportunity to test its validity."); *Vining v. Runyon*, 99 F.3d 1056, 1057 (11th Cir.1996) (stating that "[o]ur adversarial legal system generally does not tolerate ex parte determinations on the merits of a civil case") (citation omitted).

In addition to documents missing from the docket, the docket reflects that two documents were placed under seal in 2010 and remained sealed throughout the settlement approval process, see Dkt #365 and #366. Given that the case has now settled, there is no reason for the documents to remain sealed, and a strong countervailing reason to make them available to this Court because evaluating the exercise of judicial discretion requires access to "documents that are used in the performance of Article III functions." As explained in *U.S. v. Amodeo*, 71 F.3d 1044, 1047 (2d Cir. 1995):

> Monitoring both provides judges with critical views of their work and deters arbitrary judicial behavior. Without monitoring, moreover, the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings. Such **monitoring is not possible without access to testimony and documents that are used in the performance of Article III functions.**

*Id*. at 1048 (emphasis added).

These two documents should be unsealed and made part of the record on appeal because, just like all other orders and communications, these two documents would assist this Court in its review and evaluation of the exercise the use of judicial discretion.

Unless the requested relief pursuant to FRAP 10(e)(2)(C) is granted, neither Appellants nor this Court will know the full extent of communications to or from the district court, and Appellees will continue to enjoy the improper advantage of knowledge of these *ex parte* communications that have been withheld from Appellants.

**C. The Selective Omissions From The Record Of All Papers Not Filed Through The ECF System Constitutes An Impermissible Interference With Appellants' Right To Make The Record It Chooses For Purposes Of Appeal.**

It is well established in the Second Circuit that Appellants have the absolute right to decide which aspects of the proceedings below to challenge, and that such rights cannot be circumscribed by district court decisions to omit certain papers from the docket and record. See, *Treasure Imports, Inc. v. Henry Amdur & Sons, Inc.*, 127 F.2d 3, 4 (2d Cir.1942) ("[T]he Federal Rules [of Civil Procedure] do not permit the district court to prevent parties from including in the record any part of the occurrences below which they wish thus included.") See also, *IBM*, 526 F.2d at 45:

> Under the Federal rules, both Rule 10(a) and its forerunner former Rule 75(a) the parties on appeal have the right to submit to the appellate court, for its consideration, those parts of the trial record which they choose to challenge or defend on review. The policy that it is the appealing parties, and not the trial court, who control the issues to be presented on appeal has been embodied in federal practice since the Federal Rules were adopted in 1938.

(footnotes omitted).

As set forth in the *Statement Of Facts*, above, there are numerous letter-briefs that were filed directly with the district court judge, that could not be filed using the ECF system pursuant to local ECF Rule 13.1, and which were never included in the docket

and record. The failure of the district court to include these communications in the docket and record constitutes an "impermissible interference with petitioner's right to make the record it chooses for purposes of appeal." *IBM*, 526 F.2d at 46. As the Court in *IBM* ruled:

> It need hardly be stated that the trial record is composed of the proceedings in the District Court including **all papers, exhibits, and affidavits** on file with the Court. See 9 Moore's Federal Practice (1975 ed.), PP 210.03, 210.04. **It is not the type of paper submitted but rather the fact of filing which determines whether a particular item will be included in the record.** Todd v. Nello L. Teer Co., 308 F.2d 397, 399 (5th Cir. 1962) (letter addressed to court properly regarded on appeal as part of trial record where it had been previously filed with the trial court).

(emphasis supplied) *Id.* at 45.

In the instant case, objections and arguments made to the district court through the ECF system are included in the docket and record, while other objections and arguments made to the district court by letter are not included in the docket and record. Pursuant to Federal Rule of Civil Procedure 5(d)(2)(B), a judge may accept papers for filing but then must note thereon the filing date and transmit them to the office of the clerk. *IBM*, 526 F.2d. at 46. Although district court judges are not required to accept papers for filing (they could return them to counsel) those judges who do are not allowed to selectively determine "what papers should properly constitute the trial record of the controversy before it." *IBM*, 526 F.2d. at 46.

Moreover, Appellants have the absolute right to "include[] in the record any part of the occurrences below which they wish thus included" *Treasure Imports*, 127 F.2d at 4. In this case, Appellants wish to include in the record available for this appeal all communications with the district court, without regard to whether such communications were through the ECF system or, as per S.D.N.Y. ECF Rule 13.1, were by letter "in the

Case: 11-3899 Document: 190-2 Page: 19 11/16/2011 448940 75

traditional manner on paper."

The district court's practice below of selectively including in the docket and record only ECF filings impermissibly interferes with Appellants' rights on appeal. Accordingly, Appellants request that this Court utilize its powers under FRAP 10(e)(2)(C) to require the district court to file all Court Communications on the docket and in the record.

**Conclusion**

Currently the docket and record omit Court Communications material to this appeal. Therefore, Appellants respectfully request that this Court use its authority under FRAP 10(e)(2)(C) to order the district court to supplement the current docket and record with all Court Communications.

Atlanta, Georgia
October 20, 2011

Respectfully Submitted,

/s/ Vincent T. Gresham
Vincent T. Gresham

Law Office of Vincent T. Gresham
2870 Peachtree Road, #306
Atlanta, Georgia 30305
Tel: (404) 281-2762 Fax: (866) 618-3846
E-mail: gresham05@comcast.net
**Counsel For Appellants**

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

In Re Tremont Securities Law

Case No. 11-4030
Lead Case No: 11-3899

**DECLARATION OF VINCENT T. GRESHAM IN SUPPORT OF THE HAINES APPELLANTS' MOTION TO SUPPLEMENT THE RECORD PURSUANT TO FRAP 10(e)(2)(C)**

VINCENT T. GRESHAM, ESQ., hereby declares, under penalty of perjury pursuant to 28 U.S.C. §1746, as follows:

1. I am a member of the Bar of this Court and am attorney for Appellants Haines and Zamrowski in the above-captioned appeals. I make this declaration in support of their motion to supplement the record in the above-captioned appeals (the "Motion").

2. Attached hereto as Exhibit A are true and correct copies of pages from the class notice in which the language quoted in the Motion appears.

3. As per local practice, counsel for Appellants, counsel for Appellees and others sent letters on various substantive and procedural issues directly to District Court Judge Thomas P. Griesa. Pursuant to S.D.N.Y. ECF Rule 13.1 these letters were not filed using the ECF system. In addition, as per instructions in the class notice to file objections with a "letter," some of Appellants objections were filed by letter, rather than the ECF system.

4. Attached hereto as Exhibit B is a true and correct copy of the district court's order of 11/17/10.

5. Attached hereto as Exhibit C is a true and correct copy of the request directed to securities lead counsel that Appellants be furnished with "all communications to or from the court that are not in the ECF system, which would include all orders, letters, e-mails or writings reflecting oral communications."

6. Attached hereto as Exhibit D is a true and correct copy of Lead Counsels' response to Appellants' request for "all communications to or from the court that are not in the ECF system" denying the request based on the district court's 5/5/11 ruling.

7. Attached hereto as Exhibit E are true and correct copies of pages from Appellants' objections made to the district court below in which the language quoted in the Motion appears.

8. Attached hereto as Exhibit F is a true and correct copy of Lead Counsels' letter to the district court dated 8/4/11, not including approximately 300 pages of enclosures.

9. I have copies of the two letters, of 3/29/11 and 5/31/11 cited in the Motion. In addition, I am aware of a second 6 page letter from Lead Counsel dated 5/31/11 and a letter from counsel for the Tremont Defendant Appellees dated 6/6/11 neither of which appear in the docket[1] and record. Also missing from the record is the letter submitted by Lead Counsel seeking an order approving the sending of a supplemental class notice (dated 6/20/11), as well as Appellants' letter objecting to the supplemental notice (dated 6/21/11) and Lead Counsels' response (dated 6/22/11). Pursuant to S.D.N.Y. ECF Rule 13.1 these letters were not filed using the ECF system.

10. Attached hereto as Exhibit G are true and correct copies of examples of letters with respect to objections filed by Appellants and other investors, the Yale Fishman 1998 Insurance Trust and Glenn Akiva Fishman Life Insurance Trust. (Exhibits referenced in the letters are not attached hereto). Pursuant to S.D.N.Y. ECF Rule 13.1 these letters were not filed using the ECF system.

11. Attached hereto as Exhibit H is a true and correct copy of Appellants' cover letter to the district court on 7/31/10 (excluding the exhibits) pursuant to which the

[1] All references to the docket are to the docket in 08-11117.

district court was sent the following: *THE HAINES PLAINTIFFS' MOTION TO CURE INADEQUATE REPRESENTATION; MEMORANDUM OF LAW IN SUPPORT OF THE HAINES PLAINTIFFS' MOTION TO CURE INADEQUATE REPRESENTATION; DECLARATION OF VINCENT T. GRESHAM IN SUPPORT OF THE HAINES PLAINTIFFS' MOTION TO CURE INADEQUATE REPRESENTATION; and [PROPOSED] ORDER APPOINTING SPECIAL MASTER FOR ALLOCATION, AND REMOVING AND DISQUALIFYING CONFLICTED REPRESENTATIVE PLAINTIFFS AND COUNSEL*. The issues raised in these documents relate to the issues on appeal concerning adequate representation and conflicts of interests.

12. Attached hereto as Exhibit I is a true and correct copy of a 8/16/10 letter to the district court stating Lead Counsel did not oppose Appellants' request to file under seal; however, the district court did not file these documents under seal.

13. Instead, I was informed by securities lead counsel that Judge Griesa' s courtroom deputy, Mr. John Beale, called the lead plaintiffs and informed them that the district court wished to discuss the issues raised in the Haines Plaintiffs' Motion and that lead plaintiffs should not submit papers in response to the Motion.

14. I was informed by securities lead counsel that the district court's order regarding Appellants 7/31/11 submission would be filed under seal and I believe it was as either Docket #365 or #366.

15. Attached hereto as Exhibit J is a true and correct copy of page 10 from the Transcript of 3/28/11 that is cited in the Motion. The docket does not include the letters referenced in the transcript and I have never seen copies of them.

16. The docket discloses hearings held on 5/27/11 and 5/31/11. Both of these hearings were held after Appellants had submitted their objections. I did not receive prior notice of either hearing. The transcript for the 5/27/11 hearing is included in 08-11117 docket at Dkt#550; however, there is no transcript for the 5/31/11 hearing in the docket. With respect to the 5/31/11 hearing, I spoke to the Southern District Court Reporters and according to them there is no transcript available of the 5/31/11 hearing.

17. Attached hereto as Exhibit K is a true and correct copy of the page from the docket in 1:08-civ-11117-TPG which indicate the dates of the hearings referenced in the Motion.

18. Attached hereto as Exhibit L are true and correct copies of the pages from the Transcript of 6/1/11 that are cited in the Motion.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FORGOING IS TRUE AND CORRECT.

Dated: Atlanta, Georgia
October 20, 2011

/s/ Vincent T. Gresham
Vincent T. Gresham

# EXHIBIT A

lawsuit asserting the Released Claims, other than the Released Fund Claims, against the Settling Defendants or the Released Parties.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the Settlement or some part of it.

### 19. How Do I Tell The Court That I Do Not Like The Settlement?

If you are a Subclass Member or a current limited partner and/or shareholder of the Settling Funds, you can object to the Settlement if you do not like any part of it. To object, you must send a letter saying that you object to the Settlement in the *In re Tremont Securities Law, State Law and Insurance Litigation, Civ. No.* 08-11117(TPG), and the reasons why you object to the Settlement. Be sure to include in your statement: (i) your name, address, telephone number and e-mail address; (ii) whether you are objecting to the fairness, reasonableness or adequacy of the Settlement, the Plans of Allocation, the requests for awards of attorneys' fees or the requests for reimbursement of expenses; (iii) the reason(s), if any, for each such objection made, including any legal support and/or evidence you wish to bring to the Court's attention or introduce in support of your objection; and (iv) documentation showing the dates, purchases, contributions, sales and redemptions of limited partnership interests and/or shares in the Settling Funds. Any objection to the Settlement must be served by first class mail, or delivered on the following counsel and filed with the Court by no later than May 11, 2011:

| COURT | COUNSEL FOR SETTLING PARTIES |
|---|---|
| Clerk of the Court<br>United States District Court<br>Southern District of New York<br>500 Pearl Street<br>New York, NY 10007-1312 | ENTWISTLE & CAPPUCCI LLP<br>Andrew J. Entwistle<br>Robert N. Cappucci<br>280 Park Avenue, 26th Floor West<br>New York, NY 10017<br>aentwistle@entwistle-law.com<br><br>HAGENS BERMAN SOBOL SHAPIRO LLP<br>Reed R. Kathrein<br>Lee Gordon<br>715 Hearst Avenue<br>Suite 202<br>Berkeley, CA 94710<br>reed@hbsslaw.com<br><br>Co-Lead Counsel for the State Law Actions<br><br>BERNSTEIN LIEBHARD LLP<br>Jeffrey M. Haber<br>10 East 40th Street<br>22nd Floor<br>New York, NY 10016<br>haber@bernlieb.com<br><br>Lead Counsel for the Securities Actions<br><br>MORRISON & FOERSTER LLP<br>Jack C. Auspitz<br>Gary S. Lee<br>1290 Avenue of the Americas<br>New York, NY 10104-0050<br>jauspitz@mofo.com<br><br>Counsel for the Joint Official Liquidators of Rye Select Broad Market Insurance Portfolio LDC, Rye Select Broad Market XL Portfolio Limited and Broad Market XL Holdings Limited<br><br>SKADDEN ARPS SLATE MEAGHER & FLOM LLP<br>Seth M. Schwartz<br>Four Times Square<br>New York, NY 10036<br>seth.schwartz@skadden.com |

| | |
|---|---|
| | Counsel for Tremont Capital Management, Tremont Group Holdings, Inc., Tremont Partners, Inc., Rye Investment Management, Harry Hodges, James Mitchell, Lynn O. Keeshan, Patrick Kelly, Robert I. Schulman, Rupert A. Allan, Stephen Thomas Clayton, Stuart Pologe and Cynthia J. Nicoll |
| | TANNENBAUM HELPERN SYRACUSE & HIRSCHTRITT LLP<br>Jamie B. W. Stecher<br>900 Third Avenue<br>New York, NY 10022<br>stecher@thshlaw.com |
| | BINGHAM MCCUTCHEN LLP<br>Joseph L. Kociubes<br>One Federal Street<br>Boston, MA 02110<br>joe.kociubes@bingham.com |
| | Counsel for Massachusetts Mutual Life Insurance Co., MassMutual Holding Trust I, MassMutual Holding Company, MassMutual Life Insurance Co. |
| | DECHERT LLP<br>William K. Dodds<br>1095 Avenue of the Americas<br>New York, NY 10036-6797<br>william.dodds@dechert.com |
| | Counsel for Oppenheimer Acquisition Corporation and Oppenheimerfunds Inc. |

You do not need to go to the Fairness Hearing to have your written objection considered by the Court. However, if you file and serve a timely, written objection in accordance with the instructions above, you may appear at the Fairness Hearing either in person or through counsel retained at your expense. If you or your attorney intend to appear at the Fairness Hearing, you must file and effect service of a notice of intention to appear on or before May 11, 2011, setting forth, among other things, your name, address, telephone number and e-mail address (and, if applicable, the name, mailing address, telephone number and e-mail address of your attorney) on Plaintiffs' Settlement Class Counsel and Settling Defendants' counsel (at the addresses set out above). Moreover, if you intend to present evidence at the Fairness Hearing, you must include in your written objections the identity of any witnesses you may call to testify and exhibits you intend to introduce into evidence at the Fairness Hearing. Any objector who does not timely file and serve a notice of intention to appear in accordance with this question will not be permitted to appear at the Fairness Hearing, except for good cause shown.

**20. What Is The Difference Between Objecting And Excluding?**

Objecting means telling the Court that you do not like something about the Settlement, the Plans of Allocation, or the application for attorneys' fees and litigation expenses, and you want the Court to disapprove the Settlement. You can object to the Settlement *only if* you stay in the Settlement Class. You may still object to the Fund Distribution Plan of Allocation as long as you are a current limited partner and/or shareholder of the Settling Funds. Excluding yourself is telling the Court that you do not want to be part of the Settlement. If you exclude yourself, you have no basis to object to the Settlement because that portion of the case no longer affects you.

## THE LAWYERS REPRESENTING YOU

**21. Do I Have A Lawyer In This Case?**

The Court appointed the law firms listed below to represent you and the other Members of the Settlement Class:

Plaintiffs' State Law Settlement Class Counsel:

ENTWISTLE & CAPPUCCI LLP
Andrew J. Entwistle
Robert N. Cappucci
280 Park Avenue, 26th Floor West
New York, NY 10017
aentwistle@entwistle-law.com

HAGENS BERMAN SOBOL SHAPIRO LLP
Reed R. Kathrein
Lee Gordon
715 Hearst Avenue
Suite 202
Berkeley, CA 94710
reed@hbsslaw.com

Plaintiffs' Securities Settlement Class Counsel:

BERNSTEIN LIEBHARD LLP
Jeffrey M. Haber
10 East 40th Street
22nd Floor
New York, NY 10016
haber@bernlieb.com

Case: 11-3899 Document: 190-2 Page: 27 11/16/2011 448940 75

EXHIBIT B

MEMO ENDORSED

**Law Office of Vincent T. Gresham**
2870 Peachtree Road, #306
Atlanta, Georgia 30305
Tel: (404) 281-2762 Fax: (866) 618-3846

RECEIVED
NOV 16 2010
CHAMBERS OF
JUDGE GRIESA

November 15, 2010

Via: Federal Express

The Honorable Thomas P. Griesa
United States District Judge
United States District Court
for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1312
New York, NY 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/19/10

**Re: In re Tremont Securities Law, State Law and Insurance Litigation**
**This Document Relates to: All Actions: 08 Civ. 11117 (TPG)**

Dear Judge Griese:

Attached is a pleading filed in a California court of appeal by Massachusetts Mutual Life Insurance Company on September 16, 2010. It is being sent to you because in it they announce the existence of the settlement in In re Tremont and use the existence of the settlement to advance their legal arguments: "[T]wenty-two related cases have been filed in New York and consolidated in the Southern District of New York. *** Plaintiffs and the Tremont Defendants, MassMutual and Oppenheimer Acquisition Corp. have reached an agreement in principle to settle the cases, including all asserted derivative claims. MassMutual understands plaintiffs are preparing to submit a proposed settlement agreement to the Southern District for approval." (See page *7 as marked)

As you may recall, the alleged fact that the "Proposed Settlement which is the subject of the Proposed Order is not yet public" was the justification provided to you by Lead Counsel for not filing your most recent order on the ECF system. (See Mr. Haber's letter of September 30, 2010, also attached.)

Whatever the original justification secrecy, it no longer exists in light of the Defendants' September 16 public announcement of the settlement. Accordingly, the undersigned requests that all prior filings, communications and orders be entered on the Court's ECF website and you instruct all parties to use the ECF system for any future filings.

Respectfully,

Vincent T. Gresham

Denied.
So ordered
Thomas P. Griesa
USDJ
11/19/10

cc: Counsel on Lead Counsels' email service list w/encl.

Case: 11-3899 Document: 190-2 Page: 29 11/16/2011 443640 75

# EXHIBIT C

Case: 11-3895 Document: 190-2 Page: 30 11/16/2011 448940 73

From: gresham05@comcast.net
Subject: tremont
Date: May 9, 2011 9:17:54 AM EDT
To: haber@bernlieb.com, gresham05@comcast.net
1 Attachment, 59.0 KB

Dear Lead Counsel:

I have the following questions about your filing of May 4-5, 2011:

With reference to the statement in the Class Notice which states: "Additional monies are expected to be added to the Gross Settlement Fun from the amounts remaining in Tremont Group Holdings, Inc. after the wind down of it and its subsidiaries' operations ("Remaining Tremont Funds")..." Notice p.3: Given the filing of the Madoff-Trustee's lawsuit against Tremont, and the existence of numerous other lawsuits against Tremont what is the basis for this expectation?

Please provide the calculations that support the following statement from the Class Notice: "[I]n certain circumstances, a class member could receive a combined recovery in excess of 55% of his or her loss." What circumstances would need to occur for "Class members [to] receive a substantially higher... percentage of their respective losses..."?

Which provision excludes the Individual Defendants and their spouses from participating in the distribution from the Fund Distribution Account

What did you learn in confirmatory discovery that would have been relevant to the settlement negotiations of March 17 & 18, 2010?

Have you calculated the total amount of all Recognized Losses for all investors in each Settling Fund? If so, please provide the amounts for each Settling Fund. The same question with respect to the capital account balances on 12/31/2008. If you have this data please provide it for each Settling Fund.

In addition, please provide the following documents.

Please provide all communications to or from the court that are not in the ECF system, which would include all orders, letters, e-mails or writings reflecting oral communications.

T Please provide the documents and information that I originally sought on May 5, 2010. See attached e-mail.

With reference to the mediation discussed on page 6 of the Stipulation, please provide all retention agreements with the mediator and arbitrator and all communications to or from the mediator or arbitrator and any party, including but not limited to retainer agreements, filings, pleadings, and

mediation statements and reply statements.

Please provide all communications too and from the damage consultant you discuss in your filings of May 4-5, including but not limited to all final versions and draft copies of any reports, analyses, opinions, calculations and estimates.

Thank you in advance

may 5 2010 ...pdf (59.0 KB)

From: vgapp <gresham05@comcast.net>
Subject: **tremont**
Date: May 5, 2010 8:35:10 AM EDT
To: Jeffrey Haber <Haber@bernlieb.com>, Vince Gresham <gresham05@comcast.net>

Jeff.

As per your April 28th e-mail that plan of allocation issues will soon be addressed, we should ask Defendants for the relevant information necessary to making allocation decisions on an informed basis. With respect to state claim allocation issues, the following information is needed for each of the following Funds: (a) all versions of the PPM, including exhibits, (b) all financial statements, (c) all investor communications sent to members, and (d) all information sent to the brokers or representatives of investors:

Tremont Market Neutral Fund

Tremont Market Neutral Fund, II

Rye Select Broad Market Fund LP,

Rye Select Broad Market Prime Fund LP,

Rye Select Broad Market XL Fund LP,

Rye Select Broad Market Portfolio Limited; and

Rye Select Broad Market XL Portfolio Limited.

Also, all content from web site for any Tremont entity that was accessible by any investor in any Fund.

With respect to the investors in each of the Funds, the following information is needed:

1. What is the total number of investors as of December 11, 2008?
2. Of the total number of investors as of December 11, 2008, how many made all of their investment after December 10, 2003?
3. Of the total number of investors as of December 11, 2008, how many made all of their investment before December 11, 2003?
4. With respect to the investors as of December 11, 2008, what is the total amount of their contributions?
5. With respect to the investors as of December 11, 2008, what is the total amount of their contributions made on or after December 11, 2003?
6. With respect to the investors as of December 11, 2008, are there any who had previously been paid a redemption from any Fund? If so, then what was the aggregate amount of such redemptions and if possible to calculate what amount of such redemption was attributable to Madoff "profits?"
7. With respect to the investors as of December 11, 2008, list the identities of all owners of Class D units and for each the amount owned.*
8. With respect to the investors as of December 11, 2008, list the identities of each investor or group of related or affiliated investors with more than a $10 million aggregate investment in the Funds*

*Not sure how we want to identify sophisticated parties who did not rely on PPM, but rather on their own due diligence. For example, the XL Fund counterparties we found out about in mediation. I note that the counter-party lawsuit that I circulated at mediation states that the counter-parties received "Class D" Units. I don't currently have any more information about differing classes of units but that might be a way to easily identify them. Another way of identifying these parties and quantifying their investment amount might be to ask for list based on investment size. Another alternative might be to see if Defendants have records of who did "extra" due diligence. There might also be some government criteria or classification, although without knowing more detail that is difficult to determine.

I think this information will be enough to give us the background to identify the relevant issues and to know what other information we might also need.

# EXHIBIT D

BERNSTEIN LIEBHARD LLP
ATTORNEYS AT LAW
10 EAST 40TH STREET
NEW YORK, NEW YORK 10016

(212) 779-1414
FAX: (212) 779-3218
www.bernlieb.com

JEFFREY M. HABER
haber@bernlieb.com

May 9, 2011

**VIA EMAIL**

Vincent T. Gresham, Esq.
2870 Peachtree Road, #306
Atlanta, GA 30305

**Re:** ***In re Tremont Securities Law, State Law and Insurance Litigation***
**Master File No. 08 Civ. 11117 (TPG)**

Dear Vince:

I write in response to your email of earlier today requesting information concerning the Settlement of the above-referenced action.

Paragraph 1.53(d) of the Stipulation of Partial Settlement excludes the Individual Defendants and their spouses from the Settlement Class. In addition, paragraph 5.6 provides that "The Settling Defendants shall not be entitled to receive any distribution from the Net Settlement Fund, . . . or the Fund Distribution Account once the Settlement becomes Final."

As to your request for discovery pertaining to the Settlement, Judge Griesa has already denied a similar request, ruling on Thursday, May 5, 2011 that he was not going to open discovery into any aspect of the Settlement. Copies of the relevant Settlement papers are available on the Settlement website maintained by the Notice and Claims Administrator.

Very truly yours,

Jeffrey M. Haber

cc: Andrew J. Entwistle, Esq.
Reed R. Kathrein, Esq.

Ex 33

# EXHIBIT E

## III. SECRECY HAS NO PLACE IN REPRESENTATIVE ACTIONS LIKE THESE CLASS AND DERIVATIVE ACTIONS

The strength of our system of justice lies in its openness and transparency, this is particularly important in a representative action impacting a large number of citizens:

> Transparency is pivotal to public perception of the judiciary's legitimacy and independence. The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat and requires rigorous justification. Because the Constitution grants the judiciary "neither force nor will, but merely judgment," The Federalist No. 78 (Alexander Hamilton), courts must impede scrutiny of the exercise of that judgment only in the rarest of circumstances.

*Doe v. C.I.A.*, 576 F.3d 95, 107 (2d Cir. 2009). It is only through the full and complete disclosure of all relevant information that the public as well as Absentees can evaluate the judicial process and the exercise of judicial judgment.

Here, $8.2 million is taken from the Settlement Fund to pay into the Insurance Settlement Fund. There is no information about how this amount was calculated. There is no information about how this number was selected as opposed to some other number. There is no information about whether the Insurance Class is recovering the same 5.7% or a higher or lower percentage. All that is known is that in some mediation it was either decided by the mediator or agreed to by the parties, depending on which version of the inconsistent declarations one looks at. Thus, there is insufficient information to support for an $8.2 million decision. Objector requested all mediation documents and communications but they have been refused. See, Dec.Ex.33, where Objectors' requests for information were refused by LC.

As a result of LC's secrecy, Absentees cannot evaluate the Settlement, the allocations or fees, nor does this Court have sufficient information to do so either.

Case: 11-3899 Document: 190-2 Page: 37 11/16/2011 448840 73

Similarly, Objector requested all court orders and other communications to or from the court that are not on the ECF system: "Please provide all communications to or from the court that are not in the ECF system, which would include all orders, letters, e-mails or writings reflecting oral communications." Decl.Ex.33. That too was refused, ironically based on an alleged ruling by this Court of May 5, 2011. See, Decl.Ex.33. There is no entry in the publicly available docket of such a hearing or ruling. ***Thus we have a situation where a secret order is cited by LC to deny absentee class members information about court orders, this is both ironic and completely unacceptable in our system of justice.***

As a result of LC's insistence upon secrecy Objectors do not know what the Court has been told or who did the telling. Thus, when Objectors' counsel tries to understand the transcript from a court hearing it is impossible because it references numerous letter briefs that are not filed in the system. See, e.g., 3/28/2011 Transcript page 10 lines 6-11: "As the court knows, I have corresponded through some letters with the court during the past week or so. There are a number of issues, your Honor, that go to class notice...." While the "court knows" what was in the letters, neither the public nor absentee class members can "know" because these letters are not part of the ECF docket available. By refusing to provide such letters as LC did here (Decl.Ex.33), LC can effectively keep court proceedings secret.

Securities LC's arguments that anything put in a letter to the Court may remain secret forever has no place in proceedings evaluating class and derivative action settlements. While letters to courts might remain secret in the context of private litigation without harm (because all parties are copied on all letters to the Court and thus no

communications are kept secret from anyone impacted by the litigation), representative actions are different. In a class or derivative action, the named parties constitute only a small fraction of the people impacted by the litigation. Because their rights are impacted by the litigation, there is no justification to allow any communications to and from the court be kept secret from the Absentees.

In addition to being able to understand what is going on, Absentees need this information to facilitate other important legal rights. For example, an accurate and complete record is necessary to preserve Absentees rights to object and to appeal district court decisions. Secret communications tilt the playing field in favor of the party settlement proponents because only they know the entirety of the information presented to the court and only they know all of what the court did and said in response. Representative actions should be transparent; *LC cannot keep secret information leading to or reflecting the exercise of judicial discretion.*

Finally, the courts of appeal cannot do their job when there are secrets concerning what the district court is told and what the court does in response. Because a legal or factual argument influence a court in the same manner whether it is in a formal brief or in an informal letter, all communications to and from the court must be made available to requesting Absentees. Only then will Absentees be able to make arguments on an equal footing with settlement proponents, and *only then will the Second Circuit be presented with a complete and accurate record of what the court saw, said and did.*

All communications to the Court, whether in letter or brief form, formal letter or informal e-mail, influences the Court and its decisions. Accordingly, all communications whether it be in a formal motion or be informal emails, letters, etc. all must be made available to requesting absent class members-which these LC explicitly refused to do.

Lead Counsels' unfiduciary-like insistence that they and other members of the class action bar should be able to secretly influence the court with secret information in un-filed letters that they refuse to provide Absentees must be rejected. Similarly, LC's insistence on mediation secrecy must be rejected. *The Settlement is now public, LC cannot hide behind secret letter briefs or secret mediation hearings, Class Members are entitled to know what has gone on in their case.*

## CONCLUSION

The procedures LC urge this Court to apply ask this court to approve the settlement of $3.646 billion in investor claims based on unearned presumptions, *trust-me* declarations, and LC success in keeping secrets from class members. The Class deserves better.

***Objection Of Madelyn Haines And***
***Paul Zamrowski To Proceedure***
Prepared By Attorney Vincent T. Gresham
(pro hac 9/24/2010)
Law Office Of Vincent T. Gresham
2870 Peachtree Road, #306
Atlanta Georgia 30305
(404) 281-2762

Submitted to Court By Objectors' Letter
As Per Instructions In Class Notice

# EXHIBIT F

ENTWISTLE & CAPPUCCI

Entwistle & Cappucci LLP
280 Park Avenue
26th Floor West
New York, NY 10017

(212) 894-7200 Main
(212) 894-7272 Fax
www.entwistle-law.com

August 4, 2011

**VIA HAND DELIVERY**

Honorable Thomas P. Griesa
United States District Court
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

**Re:** ***In re Tremont Securities Law, State Law and Insurance Litigation*, Master File No. 08 Civ. 11117 (TPG)**

Dear Judge Griesa:

**SETTLEMENT WITH THE MADOFF TRUSTEE**

We are pleased to report that the negotiations with the Madoff Trustee, Irving Picard, Esq., have been successfully concluded. The cooperative efforts between Plaintiff's State and Securities counsel on the one hand and counsel for Tremont, Oppenheimer and Mass Mutual on the other have resulted in the creation of a substantial benefit for investors in the Settling Funds.

We began working with Defendants' counsel regarding the Trustee proceedings during discussions leading up to the partial Settlement presently before the Court. In this regard, we worked through various bankruptcy issues and laid out our views for the parameters of any settlement with the Trustee: (1) assure the partial class and derivative Settlement before this Court would not be attached by the Trustee; (2) assure the protection of non-Madoff Tremont assets from claims by the Trustee; (3) preserve/maximize the Recognized Claims made by the Rye Funds in the consolidated BLMIS/SIPA proceedings ("Recognized Claims"); (4) negotiate the lowest possible payment on the Madoff Trustee's $2.1 billion preference and fraudulent

conveyance claims; and (5) assure that any amount paid to the Trustee be credited to the Rye Funds' Recognized Claims. I am pleased to report that each of these goals was achieved.

First, no portion of the Settlement Fund and no non-Madoff assets of any Tremont Funds were impaired by the Trustee Settlement. Second, Defendants ultimately agreed to assure the preservation of the Settling Funds' Recognized Claims by permitting the Funds to borrow the approximately $657 million needed to bridge the gap between the assets remaining in the Settling Funds and the $1 billion ultimately needed to settle the Trustees' $2.1 billion preference and fraudulent conveyance claims. If this creative funding had not been done, the failure to pay the Trustees' claims could have caused the Rye Funds' Recognized Claims to be reduced to zero. Third, the Trustee ultimately agreed that $800 million of the $1 billion Tremont settlement payment would be added to the Rye Funds' claims and that those claims would be recognized in their entirety with the result that the Recognized Claim in the bankruptcy/SIPA proceedings is now $2,986,177,715.00.

Of course, we still have a lot of work left to do in assuring the Fund Distribution Account receives as much out of the Funds' claims as possible. In this regard, we are advised the Trustee has collected assets to fund more than 60 % of the claims. Assuming the 60% to be accurate, it is likely that a benefit of more than $1 billion will flow through the Fund Distribution Account after we repay the lender the approximately $657 million borrowed to fund the settlement with the Trustee.

At the moment, we anticipate several partial payments by the Trustee over time which will be allocated internally and then distributed following resolution of any outstanding claims as provided for in the Fund Distribution Plan of Allocation and the interests of fairness and equity.

**OTHER HEARING RELATED ISSUES**

**A. Supplemental Notice**

Pursuant to the Court's direction, a Supplemental Notice was sent on June 29, 2011 using the same lists as the original Notice (see Affidavit of Jose C. Fraga Regarding the Mailing of the Supplemental Notice, Notice, and Proofs of Claim, attached as Exhibit "A").

Hon. Thomas P. Griesa
August 4, 2011
Page 3

**B. Supplemental Objections**

Supplemental objections were received from four objectors: (1) Philadelphia Financial Life Assurance Company, formerly known as AGL Life Assurance Company ("Philadelphia Life"), filed an objection responding to the Court's request at the last hearing for additional information (to which Tremont has also responded) [the Philadelphia Life Objection makes it clear that Philadelphia Life (not its policyholders) is the owner of the account and that it is a net winner and, therefore, not a Class Member]; (2) John Hancock Life Insurance Co. filed an objection based on a misunderstanding of the mechanics of the Fund Distribution Account (which misunderstanding has been clarified in our brief in response thereto); (3) the Haines Objectors filed yet two more sets of objections -- the first focused on swap transactions they did not participate in and the second (and untimely) objection focused on contrived speculation regarding the allocation of payments to be received from the Trustee; and (4) Lakeview also filed two untimely objections -- the first reiterating, again incorrectly, that the named Plaintiffs do not have standing with respect to the XL Fund and the second, in the thinly veiled guise of a motion to intervene by Rozwood client Phoenix, rehashing arguments rejected by the Court at the last hearing. For the reasons stated in the current and prior responses, each of these Supplemental Objections should be overruled.

We have modified the Chart of Objections to include the supplemental objections by Haines, Philadelphia Life, John Hancock and Lakeview/Phoenix (attached as Exhibit "B").

The Status of the Objections may now be summarized as follows:

- *Withdrawn Objections*: The first 6 objections referenced in the Chart -- the Annuity Carriers, Bankers Trust Co., New Jersey Carpenters Funds, all Swap Counterparties (HSBC, ABN AMRO and RBS), the Accounting Objectors, and the Gallatin Objectors -- have all been withdrawn (with the exception of John Hancock's Supplemental Objection (chart number 13)).

- *Non-Class Member Objections*: Chart numbers 7 and 8 -- the Insurance Trust Objectors and Philadelphia Life -- relate to objections filed by entities or individuals who, by definition, are not members of the Settlement Class and, thus, have no standing to object. Philadelphia Life's supplemental objection does not change these basic facts.

- *Objectors Who Have Also Sought Exclusion from the Settlement*: Chart numbers 9-13 -- the Lakeview Objectors, the FutureSelect Objectors, the Spectrum Objectors, and the Meridian Objectors,[1] and John Hancock have all sought to exclude themselves from the Settlement and, thus, they have no standing to object to any matter related to the partial Settlement other than the Fund Distribution Plan of Allocation. The effort by these objectors to restructure the Settlement to move money from the Settlement Fund to the Fund Distribution Account is, by its nature, an objection to the Settlement by objectors whose exclusion limits their standing to make such an objection.

- *Deficient Objections*: Chart numbers 14-16 -- the Haines Objectors and the Orloff Objector -- are deficient because they fail, among other things, to comply with this Court's April 15, 2011 Order directing Notice and accordingly such objections are properly deemed waived. The Haines Objectors also lack standing to raise objections to the Swap Transactions because they themselves were not involved in any transactions with the Swap Counterparties. In addition, the Haines Objectors do not have standing to object to any aspect of the Insurance Settlement or fee request because they are not members of the Insurance Sub-class. The Haines second supplemental objection and the Lakeview/Phoenix Objectors' Supplemental Objections are all deficient because they are untimely.

While every lawyer may not have been heard from at the last hearing, most if not all of the overlapping issues raised in the objections were discussed with the Court as reflected in the transcript.

## C. Proposed Orders and Final Judgments

Attached hereto are final Proposed Orders and Final Judgments regarding (1) Final Approval of the Settlement (attached as Exhibit "C"); (2) approval of the Plans of Allocation (attached as Exhibit "D"); (3) approval of the Plaintiffs' State and Securities Law Counsel's Fees, Expenses and Awards to State and Securities Law Representatives and Lead Plaintiffs (attached as Exhibit "E"); and (4) Insurance Class Counsel's Motion for Award of Attorneys' Fees, Expenses and Insurance Class Plaintiff Awards (attached as Exhibit "F").[2]

[1] Exclusions were requested for five of the Meridian funds (Meridian Diversified Fund LP; Meridian Diversified Fund Ltd.; Meridian Diversified ERISA Fund Ltd.; Meridian Diversified Compass Fund, Ltd.; and Meridian Absolute Return ERISA Fund Ltd.). The remaining two funds (Meridian Horizon Fund LP and Meridian Horizon Fund II LP) are not part of the Class according to their counsel.

[2] Four separate motions are before the Court:

**D. <u>Court Requests</u>**

At the conclusion of the Hearing, Your Honor made two requests. First, that Philadelphia Life and Tremont provide supplemental information regarding the Philadelphia Life investment. As noted above, this was done by Philadelphia Life in the form of a supplemental objection and by Tremont in the form of a response -- all making clear that Philadelphia Life owned the investment (not its policyholders) and that, in any event, Philadelphia Life was a "net winner" and is, thus, not a member of the Class.

Second, Your Honor asked for additional information on the exclusions from the Settlement. Attached hereto as Exhibit "G" is a Summary Chart of the Exclusions. [The full list of Exclusions is attached to the Final Approval Order (<u>see</u> Exhibit "C," tab 1, attached hereto)]. The Summary Chart is in two columns: the first column reflects all exclusions received and the second column reflects eligible Class Members only. As Your Honor will quickly see, of the 175 eligible exclusions: 137 are members of a group assembled by the Ross and Orenstein Law Firm; and most of the remaining groups -- including the Rozwood, Meridian, and FutureSelect Groups are already engaged in other litigation (though the FutureSelect case was recently dismissed by a District Court in Washington). In any event, the Defendants have struck the bargain of this Settlement, believing, as borne out by the recent FutureSelect dismissal, that they can prevail in litigation if these opt-out claims are pursued. Simply stated, the opinion of a few groups of lawyers to opt-out their clients should not impact this Settlement.

---

- Settling Class Plaintiffs' Motion for Final Approval of Partial Settlement, Class Certification and Derivative Findings;
- Settling Class Plaintiffs' Motion for Approval of Plans of Allocation;
- Plaintiffs' State and Securities Law Class Counsels' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Awards to State and Securities Plaintiffs; and
- Insurance Class Counsels' Motion for an Award of Attorneys' Fees and Expenses and Insurance Class Plaintiffs' Incentive Awards.

Each of the four motions seeks the entry of a separate Order and Final Judgment. Copies of the Orders and Final Judgments were previously submitted to the Court and later placed on the Settlement Website. However, the Trustee Settlement necessitated certain minor additions and clarifications to the Orders which, together with the correction of a few typos and related language are now reflected in the final Proposed Orders and Final Judgments attached hereto.

Hon. Thomas P. Griesa
August 4, 2011
Page 6

**CONCLUSION**

We appreciate all of Your Honor's time and effort and that of your Law Clerks and Staff in working to bring this difficult and complex matter to conclusion. Please let me know if there is anything else we can provide that will be of assistance in resolving the pending motions.

Respectfully submitted,

**ENTWISTLE & CAPPUCCI LLP**

Andrew J. Entwistle

**HAGENS BERMAN SOBOL & SHAPIRO LLP**
Reed S. Kathrein

**BERNSTEIN LIEBHARD LLP**
Jeffrey M. Haber

*State and Securities Law Counsel*

AJE/aa

cc: Defense Counsel and Counsel for Objectors

Case: 11-3899 Document: 190-2 Page: 47 11/16/2011 448840 75

EXHIBIT G

Madelyn Haines

May 8, 2011

The Honorable Thomas P. Griesa
United States District Judge
United States District Court
for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1312
New York, NY 10007

**<u>Re: In re Tremont Securities Law, State Law and Insurance Litigation</u>**
**<u>This Document Relates to: All Actions: 08 Civ. 11117 (TPG)</u>**

Dear Judge Griese:

I am both a Securities/State Subclass Member and Limited Partner in Settling-Fund, Tremont Market Neutral Fund II, and have been since I originally purchased my units in August, 2008. I have not engaged in any redemptions, sales or other purchases in any of the other Settling Funds. My documentation showing my purchase and ownership is attached hereto.

I am also a named plaintiff in the case originally brought as *Haines v. Massachusetts Mutual Life Ins. Co.*, No. 09-10182-RWZ (D. Mass.) (the "*Haines* Action"). The *Haines* Action was transferred to this Court by the Judicial Panel for Multidistrict Litigation on June 11, 2009 and provided the Docket No. of 09-civ-05441. Pursuant to the Court's September 25, 2009 Order, the *Haines* Action was consolidated into the Securities Action (08-civ-11212) in *In re: Tremont Securities Law, State Law And Insurance Litigation* under Docket No. 08-cv-11117.

Pursuant to Section 19 of the Class Notice, I am sending you this letter stating what I object to. My objections and the legal support and evidence supporting them are set forth in the exhibits attached hereto and relate to certain aspects of the Settlement, Plans of Allocation, Attorney Fees, Class Certification and the Procedures for Settlement Approval. Each of these exhibits was drafted by my attorney. I have reviewed them, gone over them with my attorney and hereby object for the reasons set forth in the attached exhibits.

The exhibits we plan to introduce into evidence at the final approval hearing are referenced in the attached Declaration of Vincent T. Gresham. In addition to those documents we reserve the right to introduce into evidence any document needed to address any argument raised subsequent to the date of this objection and to more fully set forth the objections when we receive information that has been requested (but not yet provided) of Plaintiffs Class Counsel. The witnesses we plan to call, if any, are Plaintiffs Class Counsel. At the June 1, 2011 fairness hearing my attorney will speak on my behalf.

My address is 23 Courtney Circle, Bryn Mawr, PA 19010, telephone number is 610-909-1947 and e-mail madbill7@earthlink.net; however, I prefer to be contacted through my counsel Vincent T. Gresham at 2870 Peachtree Road, #306, Atlanta, Georgia 30305, telephone 404-281-2762 and e-mail: gresham05@comcast.net.

I reserve the right to make additional objections and filings in response to anything done or filed by any objector, defendant or plaintiff, and reserve the right to adopt in whole or in part any other objection made by any other limited partner or class member.

Sincerely,

Madelyn Haines

Paul Zamrowski

May 8, 2011

The Honorable Thomas P. Griesa
United States District Judge
United States District Court
for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1312
New York, NY 10007

**Re: In re Tremont Securities Law, State Law and Insurance Litigation**
**This Document Relates to: All Actions: 08 Civ. 11117 (TPG)**

Dear Judge Griese:

I am both a Securities/State Subclass Member and Limited Partner in Settling-Fund, Tremont Market Neutral Fund, and have been since I originally purchased my units in April, 2007. I have not engaged in any redemptions, sales or other purchases in any of the other Settling Funds. My documentation showing my purchase and ownership is attached hereto.

I am also a named plaintiff in the case originally brought as *Haines v. Massachusetts Mutual Life Ins. Co.*, No. 09-10182-RWZ (D. Mass.) (the "*Haines* Action"). The *Haines* Action was transferred to this Court by the Judicial Panel for Multidistrict Litigation on June 11, 2009 and provided the Docket No. of 09-civ-05441. Pursuant to the Court's September 25, 2009 Order, the *Haines* Action was consolidated into the Securities Action (08-civ-11212) in *In re: Tremont Securities Law, State Law And Insurance Litigation* under Docket No. 08-cv-11117.

Pursuant to Section 19 of the Class Notice, I am sending you this letter stating what I object to. My objections and the legal support and evidence supporting them are set forth in the exhibits attached hereto and relate to certain aspects of the Settlement, Plans of Allocation, Attorney Fees, Class Certification and the Procedures for Settlement Approval. Each of these exhibits was drafted by my attorney. I have reviewed them, gone over them with my attorney and hereby object for the reasons set forth in the attached exhibits.

Case: 11-3899 Document: 190-2 Page: 51 11/16/2011 448640 75

The exhibits we plan to introduce into evidence at the final approval hearing are referenced in the attached Declaration of Vincent T. Gresham. In addition to those documents we reserve the right to introduce into evidence any document needed to address any argument raised subsequent to the date of this objection and to more fully set forth the objections when we receive information that has been requested (but not yet provided) of Plaintiffs Class Counsel. The witnesses we plan to call, if any, are Plaintiffs Class Counsel. At the June 1, 2011 fairness hearing my attorney will speak on my behalf.

My address is 16 Barr Rd., Berwyn, PA 19312, telephone number is 610 353 5595 and e-mail zamrowski@comcast.net; however, I prefer to be contacted through my counsel Vincent T. Gresham at 2870 Peachtree Road, #306, Atlanta, Georgia 30305, telephone 404-281-2762 and e-mail: gresham05@comcast.net.

I reserve the right to make additional objections and filings in response to anything done or filed by any objector, defendant or plaintiff, and reserve the right to adopt in whole or in part any other objection made by any other limited partner or class member.

Sincerely,

Paul Zamrowski

**Yale Fishman 1998 Insurance Trust**
**& Glenn Akiva Fishman Life Insurance Trust**
**930 Broadway**
**Woodmere, N. Y. 11598**
**516 374-0350\fax 516 374-0309**
**Rebecca Silberstein, Trustee rfsilberstein@debevoise.com**
**Glenn Fishman, Trustee glenn@fishmanassociates.com**

Judge Thomas Griesa
United States District Court
Southern District of New York
500 Pearl Street #1630
New York, N.Y.10007
Tel 212 805-0136
Fax 212 805-7908

Re: In Re Tremont Docket # 08CV11117

Dear Judge Griesa:

We are the plaintiffs in the two class actions against Tremont and against the insurance companies Met Life and AGL life filed by our attorneys ROBBINS GELLER RUDMAN & DOWD. The details of our losses and claims as a result of the Madoff fraud are set forth in the complaints (attached herein as Ex A. General American and Ex B. AGL.) This complaint filed by ROBBINS GELLER RUDMAN & DOWD for us is almost identical to the complaint filed by ROBBINS GELLER RUDMAN & DOWD on behalf of the plaintiffs against the Argus Insurance Company (Exhibit C. )

In summary, our insurance trusts invested $1,800,000 (on a combined basis) in AGL Life and Met Life/GenAm sponsored variable life insurance policies which invested those moneys within Tremont managed funds designed for the insurance product. Tremont, then allocated those funds to Madoff.

As a direct result of the Madoff fraud, these funds are now gone and the trusts have suffered substantial and irreparable financial harm and have further caused the long term viability of the policies to be compromised. We are clear "net losers" in this matter (according to the methodology set forth by the court appointed trustee Irving Picard In related litigation), and we have no source of recovery but this litigation. We are not eligible for SIPC relief, nor are we part of the class the Madoff Trustee is seeking relief for.

We object to the proposed settlement before the court in the IN RE TREMONT litigation. However, our objection is directed not at the settlement, per se, but only at the attempt to exclude our claims from participation in the distribution of the settlement funds without a fair and reasonable basis.

Our claims against Tremont are identical to the claims of all the other plaintiffs who are the class representatives of the IN RE TREMONT litigation. Our claims should and would be properly consolidated with the IN RE TREMONT litigation were the cases all to be litigated. There is no reasonable or fair basis for differentiation of our claims from the claims of the other members of the class in the IN RE TREMONT litigation, as the basis of all the claims against Tremont is the same.

We ourselves are filing this objection to the settlement in IN RE TREMONT because, regrettably, our own attorneys have refused to do so on our behalf, and in fact, have inexcusably sought

to exclude our claims from participation in the proposed settlement in the IN RE TREMONT matter before the court. Therefore, we are timely submitting this objection, as, despite numerous requests to file this objection both orally and in writing, our attorneys ROBBINS GELLER RUDMAN & DOWD have refused to do so (See Exhibit D).

By way of history, these attorneys, ROBBINS GELLER RUDMAN & DOWD, were appointed by the Court as one of the two law firms handling insurance related claims against Tremont. It was based on this fact, and our further discussion with said counsel, that we retained ROBBINS GELLER RUDMAN & DOWD on Dec 10, 2010 (see Retainer Ex E.)

Based on our discussion with counsel at ROBBINS GELLER RUDMAN & DOWD we learned that they were in settlement discussions with Tremont. On Dec 17, 2010 our attorneys ROBBINS GELLER RUDMAN & DOWD sent us a stipulation that would allow us to be part of the settlement discussion and members of the settlement class in the Tremont litigation, which Settlement is now before this Court (Exhibit F.)

That stipulation agreement clearly related to all the matters before this Court in the IN RE TREMONT litigation. It states as follows, and I quote:

**"UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| **IN RE TREMONT SECURITIES LAW, STATE LAW, AND INSURANCE LITIGATION** | **Master File No.: 08 Civ. 11117 (TPG)** |

-------------------------------------------x

**This Document Relates to:**
**Securities Actions, 08 Civ. 11212 (TPG)**
**State Law Actions, 08 Civ. 11183 (TPG)**
**Insurance Actions, 09 Civ. 557 (TPG)**

---

**EXHIBIT A**

**Declaration Concerning Material Covered by the Confidentiality Stipulation Governing Proposed Settlement Terms**

We, the undersigned, hereby declare that we have read the attached Confidentiality Stipulation Governing Proposed Settlement Terms (the "Confidentiality Stipulation") **executed by our counsel, Robbins Geller Rudman & Dowd LLP, in connection with the consolidated actions pending in the United States District Court for the Southern District of New York, under the following captions: (i) Securities Actions, 08 Civ. 11212 (TPG); (ii) State Law Actions, 08 Civ. 11183 (TPG); and (iii) Insurance Actions, 09 Civ. 557 (TPG) (the "Actions"). We understand that we are authorized to receive information concerning the terms of the tentativesettlement subject to the Confidentiality Stipulation.** (*bold emphasis added*)

We agree to abide by all of the obligations and conditions of the Confidentiality Stipulation and will keep the terms of the settlement

confidential and shall not disclose them to any person or entity until and unless definitive settlement documentation is presented to the Court for approval.

We agree to submit to the personal jurisdiction of the United States District Court for the Southern District of New York in any proceeding related to the enforcement of the Confidentiality Stipulation."

From the text of the above stipulation it is thus crystal clear that ROBBINS GELLER RUDMAN & DOWD were specifically retained to represent us to be part of the settlement class and matters consolidated before this Court.

Ultimately, our attorneys at ROBBINS GELLER RUDMAN & DOWD have informed us that the proposed settlement does include our cases, but stipulates that we do not participate or receive proceeds from the contemplated settlement. Counsel at ROBBINS GELLER RUDMAN & DOWD further claims, that it was Tremont, through its Counsel, who insisted we receive no proceeds from the settlement and who objects to our receipt of any settlement proceeds.

This claim that Tremont doesn't want to settle with us, despite the fact that it would not cost Tremont one extra penny to do so, since we would accept inclusion in the $100 million settlement on the table already, makes no sense to us. Although we have requested a conference call with Tremont counsel, our attorneys at ROBBINS GELLER RUDMAN & DOWD refused to have such a call. They submitted that Tremont would rather have us continue litigating and incur further litigation costs and liability exposure rather than settle for no extra cost! The amount of our claim is about $1,800,000. Since we understand settlement is based on 10 cents to dollar the amount we would receive if included in the settlement is about $180,000 from the $100,000,000 (or just 0.0018 - literally just a fraction!) (We understand there are some additional funds to come later after litigation.)

We object to being excluded from the settlement as it totally unfair and unreasonable to exclude one group of plaintiffs to enrich (even the minute amount involved) other plaintiffs. Should we not be included in the settlement , we object to our Counsel ROBBINS GELLER RUDMAN & DOWD receiving compensation in the Argus matter as it appears that they are advancing that claim at the expense of our claim. It is not fair and reasonable to exclude our claims based on same matter. It is also not fair and reasonable to award attorneys fees for such conduct. We further request that the Court appoint Counsel to fairly represent interest of all plaintiffs including us and such other relief as court deems fair and and just.

We further request opportunity to appear and be heard at the Fairness Hearing . Witnesses at hearing will include Counsel for Tremont, Seth Schwartz, Counsel for ROBBINS GELLER RUDMAN & DOWD, David Rosenfeld and Edward Kroub, Yale Fishman, Glenn Fishman. The Exhibits to be introduced will be all correspondence emails between ROBBINS GELLER RUDMAN & DOWD and all plaintiffs and counsel in this matter as well as Exhibits attached herein and all pleadings filed in connection with IN RE TREMONT.

All counsel have been served by email. The original has been filed by hand delivery with the Clerk of the Court and a copy hand- delivered to the Judge's chambers.

Respectfully Yours,

Glenn Fishman, Trustee

Rebecca Silberstein, Trustee

# EXHIBIT H

Case: 11-3899 Document: 190-2 Page: 57 11/16/2011 448940 73

**Law Office of Vincent T. Gresham**
2870 Peachtree Road, #306
Atlanta, Georgia 30305
Tel: (404) 281-2762 Fax: (866) 618-3846

July 31, 2010

Via: Federal Express

The Honorable Thomas P. Griesa
United States District Judge
United States District Court
for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1312
New York, NY 10007

**Re: In re Tremont Securities Law, State Law and Insurance Litigation**
**This Document Relates to: All Actions: 08 Civ. 11117 (TPG)**

Dear Judge Griese:

I am writing on behalf of Movants, Madelyn Haines and Paul Zamrowski, to request that the Court permit the enclosed *The Haines Plaintiffs' Motion To Cure Inadequate Representation* (the "Motion") and any accompanying declaration and memorandum to be filed under seal. (These enclosed documents unsigned and bear instructions to preclude inadvertent filing. They will be filed upon issuance of the Sealing Order.) This request for confidential treatment is based on the same grounds and is for the same reasons as an earlier request made in this case. See, letter to this court from Bernstein Liebhard LLP dated May 18, 2010, attached as Exhibit A.

The fact that there is a proposed settlement of the claims in all actions as against certain defendants (the "Settlement") is confidential. Consequently, filing the Motion which relates to representational inadequacies in connection with the allocation of Settlement consideration would necessarily make public the fact that there is a settlement. Therefore the Motion and any accompanying pleadings and documents cannot yet be filed in the public records.[1]

---

[1] As can be seen by the Motion and accompanying draft pleadings, the settlement and issues concerning settlement allocations are so frequently mentioned that redaction does not seem to be a practical solution and is likely not to result in meaningful public disclosure.

Case: 11-3899 Document: 190-2 Page: 58 11/16/2011 448840 75

Movants request that these pleadings be kept under seal only for as long as the Settlement remains confidential. As it is likely that Settlement will be publicly disclosed at or about the time of the filing of Preliminary Approval papers, the length of time that the these documents will remain under seal is of limited duration.

Under local rules, see Exhibit B, documents may only be filed under seal if this Court grants prior approval either through order or letter. As this letter states the reason for the confidential treatment, it cannot be filed in the public records. Accordingly, I have prepared a short [Proposed] Order Relating To The Sealing Of Documents suitable for filing.

If the Court has any questions concerning the foregoing, or if the Court would like to address these confidentiality concerns at an *in camera* conference, then please let me know.

Respectfully,

____________________________
Vincent T. Gresham

cc: All counsel (via email or first class mail)
Enclosures

# EXHIBIT I

Case: 11-3899 Document: 190-2 Page: 60 11/16/2011 448940 73

**BERNSTEIN LIEBHARD LLP**
ATTORNEYS AT LAW
10 EAST 40TH STREET
NEW YORK, NEW YORK 10016

(212) 779-1414
FAX: (212) 779-3218
www.bernlieb.com

August 16, 2010

**BY HAND DELIVERY**

The Honorable Thomas P. Griesa, United States District Judge
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

RE: *In re Tremont Securities, State Law, and Insurance Actions* (08-CV-11117)

Dear Judge Griesa:

My firm is Lead Counsel to Lead Plaintiffs in the above-referenced consolidated Securities Action. I am writing in response to Vincent Gresham's July 31, 2010 letter to the Court (the "Letter Request") requesting permission to file under seal a proposed motion to cure inadequate representation (the "Proposed Motion").

Mr. Gresham and I spoke telephonically with respect to his submission and Lead Plaintiffs' response thereto. With respect to the Letter Request, Lead Plaintiffs do not oppose the request to file under seal the Proposed Motion and papers in support thereof. If the Court grants Mr. Gresham's Letter Request to file his Proposed Motion under seal, upon such filing Lead Plaintiffs and Mr. Gresham will submit a stipulated briefing schedule setting forth the due dates for any responses and replies to the Proposed Motion.

Sincerely,

Jeffrey D. Lerner

CC: All counsel of record (via electronic mail)

# EXHIBIT J

13S7TREC
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE TREMONT 08 Civ. 11117

------------------------------x

March 28, 2011
3:00 p.m.

Before:

HON. THOMAS P. GRIESA

District Judge

APPEARANCES

ENTWISTLE & CAPPUCCI LLP
Attorneys for Plaintiff
BY: ANDREW ENTWISTLE
ROBERT CAPPUCCI

HAGENS BERMAN SOBOL SHAPRIO LLP
Attorneys for Plaintiff
BY: REED KATHREIN

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
Attorneys for Plaintiff
BY: JEFFREY HABER

ROBBINS GELLER RUDMAN & DOWD LLP
Attorneys for Plaintiff
BY: DEMET BASAR

MILBERG LLP
Attorneys for ADR Provider
BY: ROBERT WALLNER
CHARLES SLIDDERS

SKADDEN ARPS SLATE MEAGHER & FLOM LLP
Attorneys for Defendants
BY: SETH SCHWARTZ

BINGHAM MCCUTCHEN LLP
Attorneys for Defendant
BY: JOSEPH KOCIUBES

MR. WALLNER: Yes, your Honor. My name is Robert Wallner. I represent the plaintiffs in the action entitled New Jersey Carpenters Annuity Fund, et al v. Meridian Diversified Fund Management LLC, et al, pending before your Honor in this court. The civil action number is 10 Civil 5738.

As the court knows, I have corresponded through some letters with the court during the past week or so. There are a number of issues, your Honor, that go to class notice that I submit, your Honor, makes the notice, even as addressed by your Honor, inadequate and fundamentally at conflict with the Second Circuit requirements in the Walmart Stores v. Visa USA case.

In a nutshell here is the issue: We have tried to work with Mr. Entwistle and his colleagues and the defendants, and we have not been able to resolve the issue. The issue is as follows:

Tremont was a feeder fund through the various Rye funds that invested with Mr. Madoff. And the briefing in this case describes the fact that "the majority of investors who fell prey to Madoff's scheme invested indirectly with him through an extensive network of feeder funds." And it continues. That's from docket number 220 at page 1.

In addition to the so-called master feeder funds like Rye, there is a series of what are called subfeeder funds, and indeed the consolidated complaint in this case filed --

THE COURT: Are your actions class actions?

EXHIBIT K

| | | |
|---|---|---|
| | | 05/27/2011) |
| 05/27/2011 | 528 | AFFIDAVIT OF SERVICE of Memorandum of Law in Opposition to Objection of Royal Bank of Scotland NV and in Further Support of Settlement and Joint Declaration of Andrew J. Entwistle, Reed R. Kathrein and Jeffrey M. Haber in Response to Object of Royal Bank of Scotland NV and in Further Support of Partial Settlement, Class Certification and Derivative Findings. Document filed by Arthur E. Lange, Arthur C. Lange, Arthur E. Lange Revocable Trust. (Entwistle, Andrew) (Entered: 05/27/2011) |
| 05/27/2011 | | Minute Entry for proceedings held before Judge Thomas P. Griesa: Motion Hearing held on 5/27/2011 re: 347 JOINT MOTION for Entry of Judgment under Rule 54(b). filed by KPMG LLP, Ernst & Young LLP, Ernst & Young. (mbe) (Entered: 05/31/2011) |
| 05/31/2011 | 529 | MOTION to Withdraw *of FutureSelect Prime Advisor II LLC's Motion to Dismiss the Derivative Claims Brought on Its Behalf by Plaintiff John Dennis*. Document filed by FutureSelect Portfolio Management, Inc., FutureSelect Prime Advisor II, LLC.(Alexander, Emily) (Entered: 05/31/2011) |
| 05/31/2011 | 530 | CERTIFICATE OF SERVICE on 5/31/11. Document filed by FutureSelect Portfolio Management, Inc., FutureSelect Prime Advisor II, LLC. (Alexander, Emily) (Entered: 05/31/2011) |
| 05/31/2011 | 531 | MOTION Relief from Mediation & Settlement Confidentiality Provisions. Document filed by Madelyn Haines.(Gresham, Vincent) (Entered: 05/31/2011) |
| 05/31/2011 | 532 | MEMORANDUM OF LAW in Support re: 531 MOTION Relief from Mediation & Settlement Confidentiality Provisions.. Document filed by Madelyn Haines. (Gresham, Vincent) (Entered: 05/31/2011) |
| 05/31/2011 | 533 | DECLARATION of Vincent Gresham in Support re: 531 MOTION Relief from Mediation & Settlement Confidentiality Provisions.. Document filed by Madelyn Haines. (Gresham, Vincent) (Entered: 05/31/2011) |
| 05/31/2011 | 534 | RESPONSE in Opposition re: 436 MOTION for Settlement , *Class Certification and Derivative Findings*., 440 MOTION to Approve Plans of Allocation.. Document filed by Lakeview Investments, LP. (Harr, Kevin) (Entered: 05/31/2011) |
| 05/31/2011 | 535 | DECLARATION of S. Benjamin Rozwood in Opposition re: 436 MOTION for Settlement , *Class Certification and Derivative Findings*., 440 MOTION to Approve Plans of Allocation.. Document filed by Lakeview Investments, LP. (Attachments: # 1 Exhibit I, # 2 Exhibit II, # 3 Exhibit III, # 4 Exhibit IV, # 5 Exhibit V, # 6 Exhibit VI, # 7 Exhibit VII, # 8 Exhibit VIII)(Harr, Kevin) (Entered: 05/31/2011) |
| 05/31/2011 | | Minute Entry for proceedings held before Judge Thomas P. Griesa: Status Conference (Motion Hearing) held on 5/31/2011. David Rosafeld present for plaintiff and Yale and Joseph Fisherman present for defendant. Motion conference held and concluded. Judge Greisa reserved decision. (mbe) (Entered: 06/03/2011) |
| 06/01/2011 | 536 | NOTICE OF APPEARANCE by Kenneth Mark Rehns on behalf of Daniel Jackson, |

# EXHIBIT L

Case: 11-3899 Document: 190-2 Page: 67 11/16/2011 448640 75

**In The Matter Of:**

*IN RE TREMONT*

*June 01, 2011*

*SOUTHERN DISTRICT REPORTERS*
*500 PEARL STREET*
*NEW YORK, NY 10007*
*212 805-0330*

Original File 161KTREH.txt

**Min-U-Script® with Word Index**

have withdrawn their objection. And so I am doing that as a courtesy now.

There are two nonclass member objections at chart numbers 7 and 8. They are the insurance trust objectors and the Philadelphia Financial Life Assurance Company. The insurance trust objectors -- that's Yale Fishman and related entities -- are life insurance policyholders who bought policies from Philadelphia Financial Life. And since they're policyholders and not direct investors in the Tremont funds, they are simply not class members here, although they have filed an objection.

THE COURT: Wait a minute. I had a conference yesterday. Two people by the name of Fishman were there.

MR. Y. FISHMAN: Yes, yes, your Honor. We're here today.

THE COURT: And what is your first name?

MR. Y. FISHMAN: Yale Fishman. I'm a trustee for the Glenn Fishman Trust.

MR. J. FISHMAN: And Joseph Fishman on behalf of the Yale Fishman 1998 Insurance Trust.

THE COURT: Now, what they -- I should have made a better note. But sit down, please.

They have an action. Is their attorney here today?

MR. ROSENFELD: Yes, your Honor. David Rosenfeld from Robbins Geller.



THE COURT: They have an action which has been filed, and they, as I understand it, seek to be part of the settlement. They say they sustained losses over a million dollars and they have a lawsuit. I think it has now been consolidated with the other lawsuits. And they're not objecting to the settlement; they simply want to partake in it.

MR. ENTWISTLE: And I wish we could help them, your Honor, but here's the issue: They purchased policies from an entity, Philadelphia Life Assurance Company, which is a net winner. In other words, Philadelphia Life Assurance Company was the investor in Tremont, actually in the Rye funds -- actually, I think it's actually among the Tremont funds. But in any event, it took out more money from the funds than it invested, so it's a net winner. By definition, it's not a class member. In order to be a class member, you have to have sustained a loss. So they did not sustain a loss. So Philadelphia Life is a net winner.

It appears -- and we don't know because we don't represent Philadelphia Life, but it appears that they may have given that money to certain policyholders and not to others, perhaps the Fishmans being one of them. So the Fishmans, it sounds like, have a claim, and I believe they actually have sued Philadelphia Life -- that's the lawsuit -- for the money that they're out of pocket because Philadelphia Life didn't properly take the money that it took from the Tremont funds and



give it to the right policyholders.

But that's not a claim that is part of this settlement and it's only before the Court because of the consolidation. But it is one that properly must proceed separately against Philadelphia Life because they're not investors -- the Fishmans are not investors -- and Philadelphia Life has already received more money from the funds than it was entitled to. It's a net winner and, therefore, it does not participate in this settlement.

THE COURT: They say they've lost and they have a lawsuit and it's consolidated --

MR. ENTWISTLE: Absolutely.

THE COURT: -- so it should be part of the settlement.

MR. ENTWISTLE: Your Honor, in this instance, it can't be part of the --

THE COURT: It can be.

MR. ENTWISTLE: It wasn't one of the litigations, your Honor, that --

THE COURT: It is a suit before me, and it is part of the consolidated actions. It has to be taken care of.

MR. ENTWISTLE: And in that regard, your Honor -- in that regard, the investor itself, Philadelphia Life, has already received more --

THE COURT: But they have not.

MR. ENTWISTLE: That's true, but it's up to



Philadelphia Life, the carrier --

THE COURT: It may be, but they're suing here. Mr. -- is it Rosenfeld?

MR. ROSENFELD: Rosenfeld, your Honor. Just to be clear --

THE COURT: Does the complaint -- you represent them in that action. I saw the retainer agreement.

MR. ROSENFELD: Correct, your Honor. Just to be clear --

THE COURT: The complaint that you filed on their behalf sues whom?

MR. ROSENFELD: It includes Tremont as a defendant, your Honor.

THE COURT: All right. And it is against Tremont as a defendant.

MR. ENTWISTLE: But, your Honor, if the case were to proceed, they would have no claim against Tremont as a defendant because they have no privity with Tremont. They bought a policy from Philadelphia Life.

THE COURT: I have a lawsuit that has not been dismissed.

MR. ENTWISTLE: I understand that, your Honor. And in this particular instance, it is a lawsuit that, absent Philadelphia Life wanting to settle it with the Fishmans, it's one that would have to proceed. The defendants have taken the

position that they have already -- the settling funds have already given more money to Philadelphia Life than Philadelphia Life was entitled to. And so there's no -- the class itself would be severely disadvantaged were we to begin the process of that your Honor anticipates.

There are feeder funds, subfeeder funds, and other carriers out there who are no longer class members because they have taken more money out of the funds, the settling funds, than they put in. It may be that there are people who invested in those funds that have claims against those funds. But they're not funds that this class would be responding to. If we took money away from the class to pass through a life insurance company which has already gotten more money than it was entitled to, to give to the Fishmans, we would be disadvantaging the class members here unfairly.

I feel for the Fishmans and I believe from the sound of it, they have a very good case against Philadelphia Life -- it should be pursued -- but it's simply not part of the cases that were here in the original action.

THE COURT: Are they suing Philadelphia Life?

MR. ROSENFELD: The predecessor company, correct, your Honor. The name has changed, but at the time it was called AGL Life. They're one of the defendants as well.

THE COURT: They're suing?

MR. ROSENFELD: Both they're suing AGL, which is



really Philadelphia Life, and they're suing the Tremont funds, Rye Investment, MassMutual, Oppenheimer, and a number of other defendants.

MR. Y. FISHMAN: May I?

THE COURT: Yes.

MR. Y. FISHMAN: Your Honor, Mr. Entwistle fails to tell the Court that we're also suing MetLife, who is a net loser, from what I can understand talking to MetLife's counsel, of $9 million. So his argument that the insurance company's a net winner, he's not telling your Honor about MetLife -- there's a second lawsuit that we have filed. And that's number one.

Number two, this whole --

THE COURT: You're suing --

MR. Y. FISHMAN: -- issue that we shouldn't be part of the class, I don't understand it, your Honor, because there's no difference between us, who purchased variable life policies from an insurance company, to the plaintiffs in Argus who purchased policies from a variable life company. They were certified as the class for insurance claims. And we chose our counsel who -- we're here almost because there's a conflict because our counsel did not bring to your Honor's attention and have us be part of the class. Our claim should be part of the insurance class as far as we're concerned. And I appreciate Mr. Entwistle's thoughts of compassion, but the fact is, we are



victims. We lost a $1,800,000 of our children's trust fund money for their education.

THE COURT: A million what?

MR. Y. FISHMAN: A million eight, a little bit more than that. And the money is gone and -- and we heard Mr. Entwistle --

THE COURT: When you mentioned Metropolitan Life, what --

MR. Y. FISHMAN: General American was the company that -- two companies we bought, AGL Life, which is now Philadelphia, and General American, which is now MetLife or works with MetLife. We have two separate lawsuits against them both. One of them is certainly a net loser.

But the broader question simply is, we have a legitimate claim which counsel that we retained, that were appointed by this court as class action counsel for insurance matters, failed to ask your Honor to make it part of the class. There is no legitimate reason we shouldn't be part of the class. It's unfair and arbitrary to exclude us.

Moreover, we heard Mr. Entwistle tell your Honor that everything's going out, the money, the after-settlement money, the hundred million dollar bond which we didn't even know about until this second.

So it seems that the time for a fair, reasonable and adequate settlement is now. And we'd ask your Honor to urge



the parties to discuss that.

And moreover --

THE COURT: The problem is, I certainly credit your statement that you and -- is it your brother?

MR. Y. FISHMAN: Yes.

THE COURT: -- you lost what you say you lost. The problem is that you invested with, going by what Mr. Entwistle said, you invested with an insurance company which got back more than it put into the Madoff funds. Now, it seems to me that that insurance company is responsible for properly distributing what they received. If I somehow -- and I don't know whether I can do it because this is a settlement, but let's suppose your case came to trial, and you were suing MassMutual, Oppenheimer or whoever, or the Tremont funds.

MR. Y. FISHMAN: Yes.

THE COURT: It would be difficult, it seems to me, to award your losses and any judgment against them. It's been said over and over by Mr. Entwistle, and I can't really add to that. But what about the people who bought this entity called Argus?

MR. ENTWISTLE: In the Argus case, your Honor, what the plaintiffs there did before they came to this Court was they brought suit against Argus, and Argus assigned its rights as an investor in the Tremont funds to those policyholders. And by doing so --

THE COURT: It was Argus -- was Argus a net loser?
MR. ENTWISTLE: Argus was a net loser. And it was an investor, direct investor in the Tremont funds. So it assigned its rights to the insurance action plaintiffs, and then they proceeded in this court using the standing they got from Argus.
That is different obviously than the situation with Mr. Fishman. Neither Philadelphia Life or if he has a policy with MassMutual or with MetLife, neither one of those entities have assigned him any claims here, so he has no standing. There's no privity between him and the Tremont funds. He's not an investor. And the lawsuits we're settling here are the lawsuits by investors in the Tremont and Rye funds.
MR. Y. FISHMAN: MetLife is a net loser. And so your Honor's question about would we prevail, there's a question I understand to the Philadelphia company; but as to MetLife, who is a net loser, I think we would prevail.
And furthermore, this is a settlement discussion. Under the rules, it should be reasonable, adequate and fair. It doesn't seem to be in the principles of American justice that a few guys get together and say, our particular clients we favor should be part of a settlement. There's no rule of law -- this is --
THE COURT: No, they're not saying that at all, they're not saying that at all. This isn't a matter of playing favorites. It's a matter of having a settlement to cover valid



claims.
MR. Y. FISHMAN: We believe it's in their discretion, your Honor.
THE COURT: I don't quite understand the question of privity. And if somebody invested in a Rye fund, there's no issue of privity. The investor in the Rye fund doesn't have any privity with Tremont.
MR. ENTWISTLE: No, but they're the direct investor here. In the case of the carriers, the carriers are the direct investors, not their policyholders.
THE COURT: They were direct investors in what?
MR. ENTWISTLE: They were direct investors in the settling funds, your Honor, in the Tremont funds. So we have certain carriers --
THE COURT: Wait a minute. Somebody who bought -- were these mutual funds or limited partnerships or what, the Rye funds?
MR. ENTWISTLE: The Rye funds were all limited partnerships.
THE COURT: OK. If somebody bought a limited partnership in a Rye fund -- and the Rye fund invests in Tremont, right?
MR. ENTWISTLE: The Rye fund invested in Madoff. Tremont owned the managing entities for the Rye funds and the Tremont funds. So when we say the settling funds, we mean all



of those funds.
So here, you had carriers that bought interests in the settling funds --
THE COURT: No, wait a minute.
MR. ENTWISTLE: I'm sorry.
THE COURT: Let's just talk about somebody who became a limited partner in a Rye fund. Now, did the Rye funds invest directly with some Madoff entity?
MR. ENTWISTLE: Yes, they did, your Honor. For the most part, they invested directly.
THE COURT: So Tremont is not another fund, Tremont --
MR. ENTWISTLE: Is a fund manager.
THE COURT: A fund manager?
MR. ENTWISTLE: That's right.
THE COURT: A fund owner?
MR. ENTWISTLE: That's correct.
THE COURT: So the investments were made in the Rye funds, Rye funds invest in Madoff.
MR. ENTWISTLE: Correct.
THE COURT: And the settlement is with -- the lawsuits were filed against the Tremont entities?
MR. ENTWISTLE: That's correct.
THE COURT: Not against Madoff?
MR. ENTWISTLE: Not against Madoff.
THE COURT: The Tremont entities saying mismanagement



and so forth?
MR. ENTWISTLE: Exactly right, your Honor.
THE COURT: Now, I don't understand what you mean about privity. The only privity, if you want to talk about privity, it's privity between the limited partner and the partnership, which is the Rye fund. And the reason there's a cause of action against a Tremont entity isn't because of privity at all; it's because Tremont was managing the Rye funds. The privity was between Rye funds and Tremont. Privity is to me irrelevant, completely irrelevant. Let's put that aside.
MR. ENTWISTLE: Fair enough, your Honor.
THE COURT: Let me go back to Mr. Fishman. Let's suppose that somebody who invested in a Rye fund bought a limited partnership, and the Rye funds were managed by Tremont. And let's suppose the particular Rye fund was a net gain or, in other words, the Madoff people paid more than they took in from that particular Rye fund. Was that the case in any of the Rye funds?
MR. ENTWISTLE: It was the case -- from Madoff as a total you mean? Were any of the Rye funds net winners themselves?
THE COURT: Yeah.
MR. ENTWISTLE: I don't believe any of the Rye funds are net winners, no, your Honor. The Rye funds weren't net

winners because the money that flowed into the Rye funds would have then flowed right out to the investors. So the funds themselves are not net winners, although I would say that the Madoff trustee has taken the position that he has claims that are greater than -- in other words, claims for preference or conveyances, et cetera -- that are greater than certainly the monies that remain in those funds. So you could think of them as net winners from his point of view. But, no, it's really a question of what happened with the limited partners in the Rye funds.

So here, this lawsuit resolves the claims of the limited partners of these settling funds, the Rye funds, and not anyone else.

So in order to participate in the first instance, you have to be a limited partner, you have to purchase that interest directly, which Mr. Fishman did not. He bought --

THE COURT: But a limited partner in a Rye fund --

MR. ENTWISTLE: It could be a net winner.

THE COURT: He could be a net winner.

MR. ENTWISTLE: That's right, or he could be net zero. In either case, he would not be a member of the class. For example, Philadelphia Life is a net winner --

THE COURT: Forget Philadelphia. In other words, the members of the class are people who were losers?

MR. ENTWISTLE: Losers, that's correct, your Honor.



MR. Y. FISHMAN: We are certainly losers, your Honor.

THE COURT: But it's individual limited partners.

MR. ENTWISTLE: That's correct, your Honor.

THE COURT: The thing that is a problem to me is that if you've got two people who buy whatever they bought from the insurance company -- it was an investment, whatever form -- and they personally are net losers, I have a hard time seeing why they are not in the same position as the individuals who invest in the Rye funds and who individually are net losers --

MR. ENTWISTLE: Here's the --

THE COURT: -- because it seems to me that the -- and maybe you'll correct me, but it seems to me possible that the fund itself might be a net winner. Is that possible or not?

MR. ENTWISTLE: That the entire Rye fund might be a net winner?

THE COURT: Well, I guess there's more than one Rye fund. Wasn't there?

MR. ENTWISTLE: There were. There were several Rye funds.

THE COURT: Several Rye funds. I'm talking about a limited partner in some Rye fund. Were any of the Rye funds net winners as funds?

MR. ENTWISTLE: Not that we can tell, your Honor, at this point, no.

THE COURT: What do you mean, not that you can tell?



MR. ENTWISTLE: In other words, the funds themselves were not net winners. They all have -- every fund has a SIPC claim here -- the funds all have -- that invested directly with Madoff have made claims to recover Madoff-related losses, so they all have claims at this point out of the SIPC funds that are being gathered by the trustee. So in that context, the answer to your Honor's question would be no.

However, there may be individual limited partners. And when we say individuals --

THE COURT: I'm not talking about that. Look, is this the case -- I don't know whether it is or it isn't but please answer me. If a Rye fund was a net winner but had not passed that on to the limited partners, what would happen? Does the Rye fund owe that money to the limited partners or not? I don't know what the arrangement is.

MR. ENTWISTLE: In this context, your Honor, all of the Rye funds that were 100 percent invested in Madoff are all net losers. However, in your hypothetical, there would hypothetically be money that would be in the fund at the time of the winding-up, and that money would flow back through the fund distribution account that we've set up during the windup process, out to the fund's investors. So that process would occur, and that's part of the winding-up.

At some point -- we don't know what the ultimate outcome will be of the claims, the back-and-forth or the



netting of the claims with the Madoff trustee and the recovery through the SIPC funds, but whatever is left at that point will go through the winding-up process in the ordinary course, pursuant to the fund distribution account and the operative fund documents and then flow back out to the investors at the end of the day.

THE COURT: But the insurance companies are not part of that arrangement, right? In other words, there's no arrangement to have the insurance companies be treated in that way?

MR. ENTWISTLE: Well, your Honor, to the extent that an insurance company --

THE COURT: Just respond.

MR. ENTWISTLE: Yes, the answer is --

THE COURT: The Rye funds, if they come out of this with some money, it has to flow through to the settling plaintiffs, the settlers, right?

MR. ENTWISTLE: If it comes through the Rye funds, it flows through the fund distribution account out to the investors in the limited partnerships. That would --

THE COURT: Who are settling?

MR. ENTWISTLE: Yes. That would include any of the carriers that are participating, who were investors in those funds. So they may get money from that direction.

We also have the settlement fund. The settlement

fund --

THE COURT: But you're treating the insurance companies as --

MR. ENTWISTLE: Investors.

THE COURT: -- investors?

MR. ENTWISTLE: That's correct, your Honor.

THE COURT: And, as such, if anything comes out to investors, they get some of that?

MR. ENTWISTLE: That's correct. They get their participation.

THE COURT: What you told me is that the individuals who invested in the Rye funds are treated as the investors, so if money comes out to investors, it comes to them?

MR. ENTWISTLE: That's correct. But that could be an insurance company or some separate investment vehicle. It doesn't have to be an individual. But every limited partner in the Rye funds will receive their share of what's left after the Madoff trustee litigation is finished and the winding-up process is completed. They will get whatever is left, and it will flow out to the investors in the Rye funds, whether they're insurance companies, investment funds, or individuals.

On the settlement side of the case, if you are a net loser and you were an investor or a limited partner in the funds, you will get your share of the settlement money, which will flow to you as long as you're a net loser. And if you are



an insurance company that's a net loser, you'll get your share of that. And it's up to the individual insurance companies then, or feeder funds or the like, to distribute that money out to -- whether it's their policyholders or their limited partners or the like.

So the direct limited partners in the settling funds, the Rye funds, will receive their share from both accounts, and then it's up to them to distribute it out further, to the extent they have investors themselves. You understand some of these direct investors in the Rye funds were money managers themselves, and so they then have to distribute it out to their investors or, in the case of the carriers, out to their policyholders.

So it's the responsibility of the carriers to distribute out whatever money they either have already received or that they will receive through either the settlement fund or, after the winding-up of the funds, through the fund distribution account.

THE COURT: Who did the insurance company -- you say they are investors. Who did they invest with?

MR. ENTWISTLE: They invested in various different funds, your Honor. I would say the majority of the carriers invested in the Rye funds through a different Tremont fund, which is also part of the settlement, and that's this Opportunity III fund. And most of the carriers seem to have



invested through that vehicle. That was a fund of funds, and one of the funds that it invested --

THE COURT: The Rye fund?

MR. ENTWISTLE: Right, one of the funds it invested in was Rye. So it participates in the settlement, both through the Rye funds and it will also get money when it unwinds. And those particular funds had very good investments outside of the investments that were made in the Rye funds and in Madoff.

THE COURT: Let me go back to Mr. Fishman. But, Mr. Rosenfeld, just one question for you --

MR. ROSENFELD: Yes, your Honor.

THE COURT: -- what was the name of the insurance company that the Fishmans invested in at the time? It wasn't the Philadelphia company, it was called something else, right?

MR. ROSENFELD: Correct, your Honor. It was called AGL.

THE COURT: AGL. Who did AGL invest with?

MR. ROSENFELD: AGL, I believe, invested in the Tremont Opportunity Fund III. That's one of the Rye funds, which is a part of the state law settlement.

THE COURT: But it was a Rye fund?

MR. ROSENFELD: Correct.

THE COURT: This is the problem, Mr. Fishman -- and I hope I get it clearly, and, if not, somebody correct me -- when Mr. Entwistle keeps talking about investors, he's talking about



people or entities who invested in the Rye funds.

MR. ENTWISTLE: That's correct, your Honor.

THE COURT: And the individuals or the entities who invested in the Rye funds, they are investors whose claims are being settled?

MR. ENTWISTLE: That's correct.

THE COURT: Now, where an insurance company is an investor in a Rye fund, is it correct that that insurance company is a party to the settlement or not? I don't know.

MR. ENTWISTLE: Unless they've excluded themselves, your Honor, or if they were otherwise a net winner, meaning --

THE COURT: If they were a net winner, they would not be?

MR. ENTWISTLE: Correct, your Honor.

THE COURT: But the thing is, the settlement is with the investors in the Rye funds.

MR. ENTWISTLE: That's correct.

THE COURT: OK. That is the problem. And to suddenly take an individual who invested in an insurance company but did not invest in a Rye fund, that is really contrary to the theory of the settlement --

MR. Y. FISHMAN: However, your Honor --

THE COURT: -- is that right?

MR. ENTWISTLE: That's absolutely correct, your Honor.

THE COURT: And really I cannot suddenly -- in the

first place, a settlement is a settlement and I don't order people to settle, but I would not sustain an objection and disapprove the settlement on the ground that somebody who did not invest in a Rye fund was objecting or suffered losses, because this is a settlement of suits by investors in Rye funds. Am I right?
MR. ENTWISTLE: That's correct, your Honor.
THE COURT: OK. And so if somebody -- in your case, you invested in an insurance company, which, in turn, invested in a Rye fund, then the purpose of the settlement is not to deal with your kind of claim, and it's not illogical because this settlement is not really designed to include people who may have invested in entities which invested in entities which invested in a Rye fund. There could be a whole string of those, right?
MR. ENTWISTLE: That's correct, your Honor.
THE COURT: And we're not getting to that whole string. So I'm afraid I have to --
MR. Y. FISHMAN: Your Honor, may I be heard on that?
THE COURT: Look, I've spent a lot of time this afternoon on your problem and I've been very conscientiously interested in it, but we have to move on. We have a lot of work to do.
MR. Y. FISHMAN: I appreciate that. I'll be very brief, your Honor. In the interests of the justice, give me



one moment, please.
If you're represented by Mr. Entwistle, his insurance company claims are part of the settlement for $8.2 million. The difference between Argus Insurance Company or MetLife or AGL Life is lost on me. And because of that, and because of the back-and-forth, it's clear to me there's no difference between our claims, because his clients are also part of insurance company -- not the individuals. 84 people are part of his class, getting the 8.2 million. Two more people and you can't participate and our claims are identical.
Secondly, I'm hopelessly outgunned, your Honor, by so many counsel. Since we have a motion by my counsel to withdraw as our counsel, I'd like to ask the Court -- I'm not going to object to the motion, but I'd like to ask that successor counsel be appointed, Sadis & Goldberg, to represent us so they can properly brief these very difficult legal issues so the Court can have a good basis to make a ruling on this. I think --
THE COURT: I'm here to sort out those issues. I want to go back to the insurance company that is going to participate in the settlement or its holders or something -- right?
MR. ENTWISTLE: You mean Argus, your Honor --
THE COURT: Yes.
MR. ENTWISTLE: -- that's part of the insurance



actions?
THE COURT: I think you've said, but say it once more: Why is Argus participating -- which ultimately will benefit the individuals who invested in Argus, right?
MR. ENTWISTLE: That's correct, your Honor.
THE COURT: They will benefit?
MR. ENTWISTLE: They will benefit.
THE COURT: OK. Why did they benefit and the Fishmans not benefit?
MR. ENTWISTLE: The answer is very simple, your Honor. Those folks had counsel that sued Argus. And in settlement of the claims that they brought against Argus, Argus assigned its rights as a limited partner in the Rye and Tremont funds to the settling -- to the investors, the annuity holders of Argus.
So they proceeded in this court in Argus' shoes, if you will, against the various entities here.
THE COURT: Well, I'll tell you what, it's not a very weighty thing to say that one group of insurance policyholders were smart enough to get an assignment because they had a lawyer who was smart enough to get that assignment and then the Fishmans didn't have a lawyer who got an assignment so they're left out in the cold. That is not a very persuasive argument to me.
The thing that I think is persuasive, if anything is, is that Argus was a net loser.



MR. ENTWISTLE: That's correct, your Honor.
THE COURT: And --
MR. Y. FISHMAN: As was MetLife, our case as well, your Honor.
THE COURT: I don't -- what about MetLife?
MR. ENTWISTLE: MetLife is a participant in the litigation, your Honor. To the extent that MetLife receives funds and the Fishmans were MetLife policyholders, the benefits will flow through --
THE COURT: MetLife is going to participate in the settlement?
MR. ENTWISTLE: That's correct. MetLife is --
THE COURT: Part of the 8 million?
MR. ENTWISTLE: No, no, no. They had originally sought exclusion from the settlement. But I've actually been advised by the defendants that they are now intending to participate in the settlement, but I don't know that they have opted back in.
THE COURT: What's the 8 million going to?
MR. ENTWISTLE: That's the separate insurance action. You divided us up into three originally. The separate insurance action proceeded with its claims. And after the settlement was negotiated, we held a separate mediation before two federal judges, former federal judges, former Judge Layn Phillips and Judge Brett, and there was an allocation reached

where they would be able to receive a portion of the overall proceeds.

THE COURT: A set amount of money?

MR. ENTWISTLE: A set percentage of the recovery, that's correct.

THE COURT: And that all goes to Argus people?

MR. ENTWISTLE: That goes to the Argus people, that's correct, your Honor.

THE COURT: And MetLife?

MR. ENTWISTLE: MetLife and the other annuity carriers here all had the opportunity to participate in the main settlement of all of the claims and they participate in the bulk -- the remaining monies, as investors in the Rye funds, Rye and Tremont funds.

THE COURT: They'll get part of what, 100 million?

MR. ENTWISTLE: That's correct, your Honor.

THE COURT: And so forth?

MR. ENTWISTLE: That's exactly right.

THE COURT: I'm going to bring this to a close. The point is that one of the insurance companies that you and Mr. Fishman and your relative invested in was a net winner?

MR. ENTWISTLE: Correct.

THE COURT: The other insurance company you mentioned, MetLife, is going to participate in the settlement, but they



are the investors?

MR. ENTWISTLE: Correct.

THE COURT: So, respectfully -- because I respect anybody who's lost a lot of money and you've lost a lot of money -- the objection to the settlement on your part is overruled. Thank you very much for presenting what you did, and we will proceed to the next point. Let's proceed. Thank you, thank you.

MR. ENTWISTLE: That takes care of the first two categories of objections, the withdrawn objections and the nonclass member objections.

The next category of objections --

MR. HADDAD: Your Honor, may I be heard, please? On behalf of Philadelphia Financial Life Assurance Company, your Honor, Richard Haddad from Otterbourg Steindler Houston & Rosen.

THE COURT: All right.

MR. HADDAD: With respect, I'll be very brief, your Honor. I do not believe that the allocation plan that has been set forth here, the settlement plan, is fair with respect to Philadelphia Financial. I think the notion that Philadelphia Financial --

THE COURT: Are you the company that the Fishmans are talking about?

MR. HADDAD: Yes, your Honor.



THE COURT: All right.

MR. HADDAD: And the motion that the life insurance company should be viewed in the whole as a single monolith making an investment, your Honor, is a flawed analysis. And it's a flawed analysis --

THE COURT: I don't understand that that's any contention, that it's all --

MR. HADDAD: Well, the contention that the insurance company is a net winner -- the contention that the insurance company is a net winner is itself a flawed premise. And it's a flawed premise because the very nature of these insurance policies --

THE COURT: Can you just come to the fact? Did Philadelphia, did your company -- it's called Philadelphia what?

MR. HADDAD: Philadelphia Financial Life Assurance.

THE COURT: Philadelphia Financial Life. Was it formerly called something else?

MR. HADDAD: Yes. AGL.

THE COURT: What?

MR. HADDAD: AGL.

THE COURT: AGL, all right. Now, AGL, did it invest money in a Rye fund?

MR. HADDAD: Your Honor, the individual policyholders -- the individual policyholders -- made separate



and independent investment decisions to invest their particular cash value in the Tremont funds --

THE COURT: Who did the investing?

MR. HADDAD: The investing decision is made by the investor --

THE COURT: I'm not talking about the decision. I'm talking about formally -- obviously, I can have an investment account at Morgan Stanley and I go and say, I want to have the investment, but my investments are in the street name and the name of Morgan Stanley, it's Morgan Stanley who invests. Now, who did the investing?

MR. HADDAD: Your Honor, it was done by the insurance company in individual separate accounts that were specifically allocated by, maintained by, recorded by separate accounts by the Tremont funds, identified by each investor, so that each investor could know, and Tremont could know, who had what and how much. So that when one particular investor -- and here's where the inherent unfairness of this entire settlement comes from -- when one particular investor, by happenstance, happens to withdraw money from a Tremont fund, and because no one knew that Madoff was a fraud, took out a tremendous amount of money, that person got that money and moved on. That is their own individual money to do as they please. This is a regulated industry and we can't make the decisions for people, we can't withhold the money from them. It is their own fund for which

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

In Re Tremont Securities Law

Case No. 11-4030
Lead Case No: 11-3899

**CERTIFICATE OF SERVICE**

I Vincent T. Gresham certify under penalty of perjury that on October 20, 2011, I caused a copy of *The Haines Appellants' Motion To Supplement The Record Pursuant To FRAP 10(e)(2)(C)* and *Declaration of Vincent T. Gresham In Support of The Haines Appellants' Motion To Supplement The Record Pursuant To FRAP 10(e)(2)(C)* to be filed electronically. Notice of these filings will be sent by email to all filing parties through operation of the electronic filing system. All may access these filings through the court's system.

Atlanta, Georgia
Dated: October 20, 2011

/s/ Vincent T. Gresham
Vincent T. Gresham