UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | § § § § | Master File No. 08 Civ. 11117 (TPG) |
| This Document Relates to: THE INSURANCE ACTION, 09 Civ. 557 (TPG), specifically to: | § § § § | |
| THE INTERNATIONAL DAD TRUST, | § § | |
| Plaintiff, | § § | |
| -against- | § § | 11 Civ. 1687 (TPG) |
| TREMONT OPPORTUNITY FUND III, L.P., ET AL, | § § § | |
| Defendants. | § § § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

The International DAD Trust ("Plaintiff") files this First Amended Complaint against Tremont Opportunity Fund III, L.P. ("Tremont Opportunity"); Tremont International Insurance Fund, L.P. ("Tremont International"); Tremont Partners, Inc. ("Tremont Partners"); Rye Investment Management ("Rye"); Tremont Group Holdings, Inc. ("Tremont Group"); Oppenheimer Acquisition Corp. ("Oppenheimer"); MassMutual Holding LLC ("Mass LLC"); and Massachusetts Mutual Life Insurance Co. ("Mass Mutual") (collectively, "Defendants") and alleges as follows:

## I.
## PARTIES

1.     Plaintiff, The International DAD Trust, is a trust created under the laws of the Cayman Islands in 2001. The first protector of the Trust, charged with directing the activities of the Trust (the "Protector"), is an individual who is a citizen of Texas with a residence in Combine, Texas, who currently continues as protector, and the Settlor of the Trust is DAD Assets, Ltd., also of Combine, Texas.

2.     Defendant Tremont Opportunity is a Delaware limited partnership with its principal place of business in Rye, New York. Tremont Opportunity has previously appeared in this case through counsel.

3.     Defendant Tremont International is a Delaware limited partnership with its principal place of business in Rye, New York. Tremont International has previously appeared in this case through counsel. Collectively, Tremont Opportunity and Tremont International are referred to herein as the "Tremont Funds."

4.     Defendant Tremont Partners is a Connecticut corporation with its principal place of business in Rye, New York. Tremont Partners has previously appeared in this case through counsel. Tremont Partners is a subsidiary of Tremont Group and manages and serves as the general partner of a number of funds associated with its parent, Tremont Group, including Tremont Opportunity and Tremont International.

5.     Defendant Rye is a division of Tremont Group that maintains its principal place of business in Rye, New York. Rye has previously appeared in this case through counsel. Rye manages certain of the Tremont Group's funds, including funds in which Tremont Opportunity and Tremont International invested.

6.     Defendant Tremont Group is a Delaware corporation with its principal place of business in Rye, New York. Tremont Group has previously appeared in this case through counsel. Tremont Group is an investment manager and is the parent of Tremont Partners.

7.     Defendant Oppenheimer is a Delaware Corporation with its principal place of business in New York, New York. Oppenheimer has previously appeared in this case through counsel. Oppenheimer is the parent of Tremont Group.

8.     Defendant Mass LLC is a Delaware limited liability company with its principal place of business in Springfield, MA. Mass LLC is the parent of Oppenheimer.

9.     Mass Mutual is a Massachusetts corporation with its principal place of business in Springfield, MA. Mass Mutual is the parent of Mass LLC.

10.     Collectively, Tremont Opportunity, Tremont International, Tremont Partners, Tremont Group, and Rye are referred to as "Tremont."

## II.
## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because complete diversity of citizenship exists among the parties and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

12.     This Court, created for multidistrict litigation consolidated pre-trial proceedings, has personal jurisdiction over Defendants because each of them has sufficient minimum contacts with Texas.

13.     Without waiver of its respective rights to request that its claims be transferred back to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1407 for trial, Plaintiffs assert venue is proper in this District for pre-trial multidistrict litigation proceedings

under 28 U.S.C. §§ 1391 and 1407 as this action was transferred to this District as part of coordinated pre-trial multidistrict litigation proceedings.

### III.
### FACTUAL BACKGROUND

14.     On October 11, 2001, Plaintiff entered into and became the policy owner of a Variable Life Insurance Policy with Flexible Premiums Payable issued by Scottish Annuity & Life International Insurance Company (Bermuda) Ltd. (the "Insurance Policy") in the face amount of $30,014,546.00. Under the terms of the Insurance Policy, sub-accounts were created whereby the Protector could direct investments that funded the premiums due under the policy, the ongoing cost of insurance, and, ultimately, the death benefit.

15.     In or about the second quarter of 2004, Tremont representatives Rosemary Gilchrist, Chris Chichella and Robert Rosenbaum met with representatives of the Protector in Dallas, Texas, and attempted to induce the Protector to invest in the Tremont family of funds. Defendants' representatives pitched that the investment could be placed in a Tremont multi-manager "fund of funds." The representatives specifically stated that Bernard Madoff was the manager of one of the funds in Tremont's "fund of funds," and that Mr. Madoff was someone Tremont had worked with for a long time.

16.     During the initial meeting in Dallas, Plaintiff received and relied upon marketing and offering materials and related subscription and related documents from Tremont in considering whether to invest in Tremont's family of funds.  Among other things, these materials and representations touted the aspects of the funds' activities and investments and detailed representations regarding the extensive due diligence, expertise, procedures and analysis that were to be applied with respect to the funds' asset allocation and selection of fund managers and investment

advisors and that the same expertise would be brought to bear on the ongoing management of the funds. Among other explicit representations, Tremont specifically represented in these materials that it conducted a "background check" on prospective fund managers, and that Tremont performed "specialist due diligence" on each prospective fund's "market & credit risk management" and "operating & business risk management."

17.     Based on these and other of Tremont's representations concerning its due diligence and oversight of the various fund managers, the Protector directed investment in the Tremont family of funds. The initial purchase into the Tremont family of funds occurred in February 2005, when $1,200,000.00 was purchased in a Tremont "Market Neutral" fund and $750,000.00 was invested into Tremont Opportunity. In November 2005, an additional $1,300,000.00 was invested in the Market Neutral fund and an initial purchase of $750,000.00 in Tremont International was made. On or about July 25, 2006, Stuart Pologe of Tremont Partners notified Plaintiff that it was requiring a compulsory withdrawal of Plaintiff's interests in the fund. From the proceeds of that liquidation, an additional $2,000,000.00 of Tremont Opportunity was purchased and an additional $668,000.00 of Tremont International was purchased. As a result of these investments, the Tremont Funds and Tremont earned significant fees based on the amount of money invested in them.

18.     Prior to the investment modifications in September 2006, Tremont representatives at least annually met directly with the Protector's representatives in Dallas, Texas. During the course of one of these meetings, Tremont provided additional written materials concerning the funds' performance and Tremont's risk management and oversight relating to the investments. Among other things, in these Dallas meetings, Tremont specifically represented that it "uniquely under[stood] how manager returns are generated," and also represented that its "Manager Research

group" had a core activity of "performing due diligence with respect to [manager's][1] operational integrity." The purpose of this operational due diligence, according to Tremont, was to "ensure that the hedge fund manager has proper procedures in place" and to "minimize any possibility of misrepresentation and fraudulent activity."

19.     Tremont's written materials also stated that the "Initial Operational Risk due diligence" focused on several areas, including:

- cash controls;
- trade execution and settlement; and
- third party service providers.

20.     Plaintiff relied on Tremont's written and oral representations concerning its manager research due diligence when investing the additional funds in the fall of 2006.

21.     On or about December 12, 2008, Tremont issued a letter to Plaintiff that revealed that Plaintiff's investments were in funds that were managed, in part, by Bernard L. Madoff and Bernard L. Madoff Investment Securities LLC (collectively "Madoff"). Tremont indicated it would be taking all steps necessary to identify and recover those investments (the "December 12 Letter"). Of course, the December 12 Letter is dated the next day **following** the charging of Madoff with securities fraud by federal law enforcement and the Securities Exchange Commission. In the aftermath of those events, voluminous information detailing the scope and breadth of the massive fraud committed by Madoff in its investment advisory business has become public, and Mr. Madoff is now incarcerated. Moreover, extensive information regarding all of the red flags giving rise to serious concerns regarding Madoff have become public that reasonable and prudent investment advisors should have taken note of in conducting their due diligence and executing their fiduciary duties such that they

---

[1]     Such as Madoff.

avoided exposure to Madoff managed funds, but which Tremont did not. Had Tremont conducted the due diligence required of them, and which they affirmatively represented they were doing, they would have discovered many, if not all of these red flags. Tremont failed to perform due diligence of Madoff that a reasonable financial advisor would have done under the same or similar circumstances and failed to perform the due diligence and verification as they affirmatively represented they would do.

22.     Following receipt of the December 12 Letter, Plaintiff instructed Tremont to fully redeem its investments in the Tremont Funds. To date, of the $4,168,000 Plaintiff invested in the Tremont Funds, only $2,703,167 has been distributed to Plaintiff. In an updated month-end estimate concerning the Tremont Funds for November 30, 2008, that Tremont provided to Plaintiff, Tremont indicated that the assets in the Tremont Funds that were ultimately managed by Madoff were written down to zero in determining the funds' net asset value.

23.     Upon information and belief, Oppenheimer, Mass LLC and Mass Mutual, each jointly and/or severally, controlled or had the ability to control the content of the written and oral materials that Tremont provided to Plaintiff. Furthermore, upon information and belief, Oppenheimer, Mass LLC and Mass Mutual each knew of the falsity of representations and their misleading nature and allowed or facilitated them with conscious indifference to the rights of Plaintiff and with reckless disregard to the truth.

24.     All of the investments in the Tremont funds made by Plaintiff were purchases of limited partnership interests and were investments in securities subject to The Texas Securities Act, TEXAS CIV.ST. ART. 581-1 *et seq*.

## IV.
## FIRST CAUSE OF ACTION
## TEXAS SECURITIES ACT SEC. 581-33A.(2)

25.     Plaintiff incorporates by reference as if fully set forth at this point all of the foregoing

allegations.

26.     Tremont is jointly and severally liable to Plaintiff pursuant to TEXAS CIV.ST. ART.

581-33A.(2) by reason of misrepresentations and omissions in the sale of securities to Plaintiffs.

## V.
## SECOND CAUSE OF ACTION
## TEXAS SECURITIES ACT SEC. 581-33F.(1)

27.     Plaintiff incorporates by reference as if fully set forth at this point all of the foregoing

allegations.

28.     Tremont Group, Rye, Oppenheimer, Mass LLC and Mass Mutual are jointly and

severally liable to Plaintiff pursuant to TEXAS CIV.ST. ART. 581-33F.(1) for each of Tremont's

violations of TEXAS CIV.ST. ART. 581-33A.(2) as control persons.

## VI.
## THIRD CAUSE OF ACTION
## TEXAS SECURITIES ACT SEC. 581-33F.(2)

29.     Plaintiff incorporates by reference as if fully set forth at this point all of the foregoing

allegations.

30.     Tremont Group, Rye, Oppenheimer, Mass LLC and Mass Mutual are jointly and

severally liable to Plaintiff pursuant to TEXAS CIV.ST. ART. 581-33F.(2) for each of Tremont's

violations of TEXAS CIV.ST. ART. 581-33A.(2) as persons who directly or indirectly with intent to

deceive or defraud or with reckless disregard for the truth or the law materially aided Tremont.

## VII.
## FOURTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

31.     Plaintiff incorporates by reference as if fully set forth at this point all of the foregoing allegations.

32.     By acting as Plaintiff's financial advisor and overseer of the selection of funds through which the Tremont Funds would ultimately invest, Tremont created a fiduciary relationship with Plaintiff.  Tremont breached its fiduciary duty by failing to fully disclose to Plaintiff all important information concerning Madoff, as well as Tremont's failure to conduct reasonable due diligence of Madoff's background and operations.  Plaintiff suffered injury as a result of Tremont's breach.

## VIII.
## FIFTH CAUSE OF ACTION
## NEGLIGENCE

33.     Plaintiff incorporates by reference as if fully set forth at this point all of the foregoing allegations.

34.     Tremont owed Plaintiff the duty to act with care and to exercise diligence in selecting the funds and managers with respect to Plaintiff's investments in the Tremont Funds and in managing those investments.  Tremont breached those duties by failing to exercise reasonable care in the selection of Madoff as one of the funds included within Tremont's "fund of funds."  Tremont's negligence proximately caused Plaintiff damages.

## IX.
## SIXTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

35.     Plaintiff incorporates by reference as if fully set forth at this point all of the foregoing allegations.

36.     In the normal course of its business and in conjunction with a transaction in which it had a pecuniary interest, Tremont made representations to Plaintiff concerning the due diligence it had performed on the managers of the funds that Tremont ultimately invested Plaintiff's money. The representations that Tremont supplied to Plaintiff for its guidance were false statements of fact. Tremont failed to exercise reasonable care in obtaining or communicating the information to Plaintiff.

37.     Plaintiff relied on Tremont's misstatements in deciding to invest in Tremont's family of funds. As a result of its reliance, Plaintiff suffered a pecuniary loss proximately caused by Tremont's negligent misrepresentation.

## X.
## EXEMPLARY DAMAGES

38.     Upon information and belief, Tremont's conduct, when viewed objectively from Tremont's standpoint at the time it occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

39.     Pleading further upon information and belief, Tremont had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others.

40.     Tremont's conduct constitutes "gross negligence" under Texas Civil Practice and Remedies Code § 41.001(11). Plaintiff therefore seeks exemplary damages under Chapter 41 of the Texas Civil Practice and Remedies Code.

## XI.
## ATTORNEYS' FEES AND COSTS

41.     Plaintiff incorporates by reference as if fully set forth at this point all of the foregoing allegations.

42.     Plaintiff is entitled to recovery of its reasonable attorneys' fees and costs incurred in the prosecution of this lawsuit, and any appeals, if necessary.

## XII.
## CONDITIONS PRECEDENT

43.     Pursuant to FED.R.CIV.P. 9(c), all conditions precedent to Plaintiff's claims have occurred or been performed.

## XIII.
## PRAYER

Plaintiff respectfully prays that upon final hearing hereof, it has and recovers of and from Defendants the following relief:

(1)     Its actual damages;

(2)     Statutory damages under The Texas Securities Act;

(3)     Rescission and redemption of its purchases of the Tremont Funds to the extent they have not already received distribution;

(4)     Recessionary damages or other relief available under The Texas Securities Act;

(5)     Recovery of the total amount Plaintiff invested in the Tremont funds ($4,168,000.00), net of any distributions plus interest from the date of investment;

(6)     Exemplary damages;

(7)     Reasonable and necessary attorneys' fees;

(8)     Costs;

(9)     Pre- and post-judgment interest at the highest rate allowed by law; and

(10)    All other relief, at law or in equity, the Court deems necessary.

Respectfully submitted,

LOOPER REED & McGRAW, PC

By: /s/ Ralph C. Perry-Miller

        RALPH C. PERRY-MILLER
        Texas State Bar No. 15810300
        rperry-miller@lrmlaw.com

1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332

ATTORNEYS FOR PLAINTIFF,
THE INTERNATIONAL DAD TRUST

OF COUNSEL:

LOOPER REED & MCGRAW, P.C.
Andrew K. York
Texas State Bar No. 24051554
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332

Lewis S. Fischbein
Southern District of New York Bar No. LF-3349
Lewis S. Fischbein, P.C.
6 East 39th Street, 6th Floor
New York, NY 10016-0112
t. (212) 752-3374
f. (914) 235-2937

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that I have this 19th day of December, 2011, electronically filed a copy of the foregoing with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the parties of record.

        /s/ Ralph C. Perry-Miller
        RALPH C. PERRY-MILLER