PILLSBURY WINTHROP SHAW PITTMAN LLP
Maria T. Galeno
Greg T. Lembrich
1540 Broadway
New York, NY 10036-4039
Tel.: (212) 858-1000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | Master Docket No. 08-Civ-11117 (TPG) |
| CUMMINS INC., <br><br> Plaintiff, <br><br> - against - <br><br> NEW YORK LIFE INSURANCE COMPANY, et al., <br><br> Defendants. | Civil Action No. 1:10-9252 (TPG) |

**MEMORANDUM OF LAW OF DEFENDANTS NEW YORK LIFE INSURANCE COMPANY AND NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

January 30, 2012

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ..................................................................................... 4

   A. Cummins Purchases VUL Policies From NYLIAC ........................................4

   B. Cummins Is a Sophisticated Institutional Investor ........................................5

   C. Cummins Performed Significant Independent Due Diligence Before Investing and Knew About Tremont's Investment With Madoff ...............................................5

   D. NYLIAC Advised Cummins of the Risks of Investing ...................................6

      1. NYLIAC advised Cummins of the risk of losing its investment. ................................. 6
      2. Plaintiff was on notice that NYLIAC did not independently verify information provided by Tremont and the underlying funds........................................... 7
      3. Cummins was aware that NYLIAC did not monitor TOF III's investments, and neither selected nor controlled managers................................................ 7
      4. NYLIAC warned Cummins of the specific risks of investing in exempt funds of funds like TOF III. ................................................................................ 8
      5. NYLIAC urged Cummins to do its own evaluation of the investment and seek independent advice before investing............................................................ 8
   E. Tremont Made Clear NYLIAC's Lack of Control Over TOF III's Investments and Selection of Managers.................................................................................8

LEGAL STANDARD ............................................................................................... 9

ARGUMENT ............................................................................................................. 9

I.      CUMMINS FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT ................. 9

II.     PLAINTIFF CANNOT ESTABLISH COMMON LAW FRAUD ................................ 12

   A. Plaintiff's Fraud Claim Fails to Meet Rule 9(b)'s Heightened Pleading Requirements....12

   B. Plaintiff Identifies No Misrepresentation by NYLIAC ....................................13

   C. Plaintiff Fails to Adequately Allege that NYLIAC Acted with Fraudulent Intent ...........14

   D. Plaintiff Could Not Have Reasonably Relied on Any Purported Misrepresentation or Omission by NYLIAC .....................................................................................16

III.    CUMMINS' NEGLIGENT MISREPRESENTATION CLAIMS FAIL ........................ 17

   A. NYLIAC Owed No Special Duty to Plaintiff ...................................................18

   B. Plaintiff's Claims Are Barred by the Economic Loss Doctrine.........................18

   C. Plaintiff's Claims Are Time-Barred...................................................................19

IV.    THE UNJUST ENRICHMENT CLAIM IS BARRED .................................................. 19

V.      NO BREACH OF FIDUCIARY DUTY CAN BE PROPERLY ALLEGED ................. 20

        A.   There Is No Fiduciary Relationship Between NYLIAC and Cummins ...........................20

        B.   Plaintiff Fails to Allege that NYLIAC Breached Any Duty ...............................................21

        C.   Plaintiff's Claim Fails to Satisfy Rule 9(b)'s Pleading Requirements .............................21

        D.   Plaintiff's Claim Is Time-Barred .........................................................................................21

VI.     PLAINTIFF CANNOT STATE A CLAIM FOR BREACH OF THE IMPLIED
        COVENANT OF GOOD FAITH AND FAIR DEALING...............................................21

        A.   Plaintiff's Claim Fails Because It Is Impermissibly Duplicative......................................22

        B.   Cummins Fails to Allege Bad Faith......................................................................................22

VII.    CUMMINS FAILS TO PLEAD A VIABLE CLAIM FOR VIOLATIONS OF N.Y.
        GENERAL BUSINESS LAW SECTION 349 ...............................................................23

        A.   Section 349 Does Not Cover Securities-related Transactions ...........................................23

        B.   Section 349 Does Not Apply to Large Commercial Transactions Between Sophisticated
             Entities ....................................................................................................................................23

        C.   Cummins Fails to Plead a Misrepresentation......................................................................24

VIII.   CUMMINS CANNOT SUSTAIN A CLAIM FOR PUNITIVE DAMAGES ................. 25

CONCLUSION............................................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*24/7 Records, Inc. v. Sony Music Entm't, Inc.*,
    429 F.3d 39 (2d Cir. 2005)..................................................................................10

*Apfel v. Prudential-Bache Sec., Inc.*,
    183 A.D.2d 439 (1st Dep't 1992), *aff'd*, 81 N.Y.2d 470 (1993) ......................22

*Araujo v. John Hancock Life Ins. Co.*,
    206 F.Supp.2d 377 (E.D.N.Y. 2002) ...............................................................23

*Arcadian Phosphates, Inc. v. Arcadian Corp.*,
    884 F.2d 69 (2d Cir. 1989)................................................................................10

*Arnold Chevrolet LLC v. Tribune Co.*, No. 04 Civ. 3097,
    2007 WL 2743490 (E.D.N.Y. Sept. 17, 2007) ................................................18

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009).......................................................................................9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................9

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J.*,
    448 F.3d 573 (2d Cir. 2006)..............................................................................20

*BHC Interim Funding, L.P. v. Finantra Capital, Inc.*,
    283 F. Supp. 2d 968 (S.D.N.Y. 2003)........................................................18, 20

*Boyd v. Univ. of Illinois*, 96 Civ. 9327,
    2001 WL 246402 (S.D.N.Y. Mar. 13, 2001) ...................................................22

*Brody v. Brody*, No. 07-7981,
    2009 WL 436404 (S.D.N.Y. Feb. 17, 2009)....................................................21

*CBS Broad., Inc. v. Jones*,
    460 F. Supp. 2d 500 (S.D.N.Y. 2006)..............................................................20

*Chanayil v. Gulati*,
    169 F.3d 168 (2d Cir. 1999)..............................................................................12

*Edelman v. O'Toole-Ewald Art Assocs., Inc.*,
    28 A.D.3d 250 (1st Dep't 2006) .......................................................................20

*Exxonmobil Inter-America, Inc. v. Advanced Info. Eng'g Servs., Inc.*,
    328 F. Supp. 2d 443 (S.D.N.Y. 2004)..............................................................24

*Feinman v. Schulman Berlin & Davis*,
    677 F. Supp. 168 (S.D.N.Y. 1988)...................................................................17

500961708v14

*Fesseha v. TD Waterhouse Investor Servs., Inc.*,
    193 Misc. 2d 253 (N.Y. Sup. Ct. 2002), *aff'd*, 305 A.D.2d 268 (1st Dep't 2003) ............23

*Fiala v. Metro. Life Ins. Co.*,
    6 A.D.3d 320 (1st Dep't 2004) ......................................................................................20

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*,
    376 F. Supp. 2d 385 (S.D.N.Y. 2005).............................................................................15

*Gaidon v. Guardian Life Ins. Co. of Am.*,
    255 A.D.2d 101 (1st Dep't 1998), *aff'd*, 96 N.Y.2d 201 (2001) .....................................20

*Gaidon v. Guardian Life Ins. Co. of Am.*,
    94 N.Y.2d 330 (1999) .............................................................................................23, 24

*Genesco Entm't v. Koch*,
    593 F. Supp. 743 (S.D.N.Y. 1984)..................................................................................24

*Glonti v. Stevenson*, No. 08-8960,
    2009 WL 311293 (S.D.N.Y. Feb. 6, 2009).....................................................................19

*Goldman v. Metropolitan Life Ins. Co.*,
    5 N.Y.3d 561 (2005) ......................................................................................................19

*Gray v. Seaboard Sec., Inc.*,
    14 A.D.3d 852 (3rd Dep't 2005).....................................................................................23

*Harsco Corp. v. Segui*,
    91 F.3d 337 (2d Cir. 1996)..............................................................................................12

*Hart v. Internet Wire, Inc.*,
    50 F. App'x 464 (2d Cir. 2002) ......................................................................................16

*Hydro Investors, Inc. v. Trafalgar Power Inc.*,
    227 F.3d 8 (2d Cir. 2000) ...............................................................................................17

*In re Beacon Assocs. Litig.*,
    745 F. Supp. 2d 386 (S.D.N.Y. 2010).............................................................................15

*In re Evergreen Mut. Funds Fee Litig.*,
    423 F. Supp. 2d 249 (S.D.N.Y. 2006).............................................................................23

*In re J.P. Jeanneret Associates, Inc.*,
    769 F. Supp. 2d 340 (S.D.N.Y. 2011).............................................................................15

*In re Merkin*, No. 08 Civ. 10922,
    2011 WL 4435873 (S.D.N.Y. Sept. 23, 2011).......................................................2, 13, 15

*In re Morgan Stanley Info. Fund Sec. Litig.*,
    592 F.3d 347 (2d Cir. 2010)............................................................................................17

*In re Tower Auto. Sec. Litig.*,
    483 F. Supp. 2d 327 (S.D.N.Y. 2007)...................................................................9

*In re Tremont Sec. Law, State Law and Ins. Litig.*,
    703 F. Supp. 2d 362 (S.D.N.Y. 2010)............................................................2, 15

*Kassover v. UBS AG*,
    619 F. Supp. 2d 28 (S.D.N.Y. 2008)................................................................23

*Kaufman v. Guest Capital, L.L.C.*,
    386 F. Supp. 2d 256 (S.D.N.Y. 2005).......................................................... 11-12

*Linton v. New York Life Insurance and Annuity Corp.*,
    Civil Action No. 04-11362-RWZ, slip op. (D. Mass. 2006) ............................10

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*,
    244 F.R.D. 204 (S.D.N.Y. 2007) .....................................................................19

*Matsumura v. Benihana Nat'l Corp.*,
    542 F. Supp. 2d 245 (S.D.N.Y. 2008).........................................................14, 17

*MLSMK Invs. Co. v. JP Morgan Chase & Co.*,
    737 F. Supp. 2d 137 (S.D.N.Y. 2010), *aff'd*, 651 F.3d 268 (2d Cir. 2011) ......15

*Musalli Factory For Gold & Jewelry v. JPMorgan Chase Bank, N.A.*, No. 08-01720,
    2009 WL 860635 (S.D.N.Y. Mar. 31, 2009), *aff'd*, 382 F. App'x 107 (2d Cir. 2010) .....18

*New York Univ. v. Continental Ins. Co.*,
    87 N.Y.2d 308 (1995) .................................................................................23, 24

*Newman v. Family Mgm't. Corp.*,
    748 F. Supp. 2d 299 (S.D.N.Y. 2010).............................................................15

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)............................................................................14

*Ogden Martin Sys. of Tulsa, Inc. v. Tri-Continental Leasing Corp.*,
    734 F. Supp. 1057 (S.D.N.Y. 1990).................................................................10

*Pelman v. McDonald's Corp.*,
    272 F.R.D. 82 (S.D.N.Y. 2010) .......................................................................24

*Prospect St. Ventures I, LLC v. Eclipsys Solutions Corp.*,
    23 A.D.2d 213 (1st Dep't 2005) ......................................................................22

*S.E.C. v. Cohmad Sec. Corp.*, No.  09 Civ. 5680,
    2010 WL 363844 (S.D.N.Y. Feb. 2, 2010).......................................................15

*S.E.C. v. Variable Annuity Life Ins. Co. of America*,
    359 U.S. 65 (1959)...........................................................................................23

*Saltz v. First Frontier, LP*,
    782 F. Supp. 2d 61 (S.D.N.Y. 2010)............................................................15

*Schulman v. Delaire*, No. 10 Civ. 3639,
    2011 WL 672002 (S.D.N.Y. Feb. 22, 2011)..............................................15

*SCS Commc'ns, Inc. v. Herrick Co.*,
    360 F.3d 329 (2d Cir. 2004)......................................................................20

*Shapiro v. Berkshire Life Ins. Co.*,
    212 F.3d 121 (2d Cir. 2000)......................................................................23

*SNS Bank, N.V. v. Citibank, N.A.*,
    7 A.D.3d 352 (1st Dep't 2004) ................................................................22

*Sotheby's Fin. Servs., Inc. v. Baran*,
    107 F. App'x. 235 (2d Cir. 2004) .............................................................21

*South Cherry St., LLC v. Hennessee Grp. LLC*,
    573 F.3d 98 (2d Cir. 2009)............................................................ 14, 15-16

*Stephenson v. Citco Grp. Ltd.*,
    700 F. Supp. 2d 599 (S.D.N.Y. 2010).......................................................15

*Stewart v. Jackson & Nash*,
    976 F.2d 86 (2d Cir.1992).........................................................................18

*Three Crown Ltd. P'ship v. Caxton Corp.*,
    817 F. Supp. 1033 (S.D.N.Y. 1993)..................................................... 12-13

*Topps Co. v. Cadbury Stani S.A.I.C.*,
    380 F. Supp. 2d 250 (S.D.N.Y. 2005).......................................................25

*Triton Partners  LLC v. Prudential Sec. Inc.*,
    301 A.D.2d 411 (1st Dep't 2003) .............................................................22

*W.S.A., Inc., v. ACA Corp.*, Nos. 94 Civ. 1868 and 94 Civ. 1493,
    1996 WL 551599 (S.D.N.Y. Sept. 27, 1996)...........................................22

*Washington v. Kellwood Co.*, No. 05 Civ. 10034,
    2009 WL 855652 (S.D.N.Y. Mar. 24, 2009) ...........................................22

*Wynn v. AC Rochester*,
    273 F.3d 153 (2d Cir. 2001)......................................................................15

*Yak v. Bank Brussels Lambert*,
    252 F.3d 127 (2d Cir. 2001)........................................................................9

## CODES, RULES AND STATUTES

Fed. R. Civ. P. 9(b) ...........................................................................................12, 18, 21

Fed. R. Civ. P. 12(b)(6)...........................................................................................1, 9

N.Y. C.P.L.R. § 214 (McKinney 2011)................................................................19, 22

## PRELIMINARY STATEMENT

Defendants New York Life Insurance Company ("New York Life") and New York Life Insurance and Annuity Corporation ("NYLIAC"), submit this memorandum in support of their motion to dismiss the Amended Complaint ("Complaint" or "Compl.") of Cummins Inc. ("Cummins") under Rule 12(b)(6).[1]

Plaintiff improperly seeks to blame NYLIAC for losses Plaintiff incurred in one of the largest Ponzi schemes in history, simply because NYLIAC offered to purchasers of its variable universal life insurance ("VUL") policies the option to invest in the Tremont Opportunity Fund III ("TOF III"), which was, in turn, invested in the Rye Funds, which were, in turn, invested with Bernard L. Madoff Investment Securities LLC ("BMIS"). Plaintiff asserts its claims notwithstanding that Plaintiff, a sophisticated institutional investor, was informed in writing that it was responsible for its own investment decisions and any losses that might follow, was offered the option to invest in more than 70 different funds, conducted its own due diligence directly with Tremont Partners, Inc. ("Tremont"), the General Partner of TOF III, and only thereafter made a conscious election to invest 100% of its premiums in TOF III, despite its present claim that diversification of managers was significant to its investment decision.

The gist of Plaintiff's Complaint is that NYLIAC failed to monitor Madoff's activities and detect his fraud, allegedly ignoring certain warning signals or "red flags" that Madoff's operations were not legitimate. The problem for Plaintiff, however, is that such arguments have been soundly and repeatedly rejected by nearly every court to have considered them, including almost a dozen courts in this federal district alone. In an environment where the SEC and other regulatory bodies responsible for monitoring Madoff's activities failed to detect his crimes, this

---

[1] New York Life has no involvement in this case other than as parent company to NYLIAC. *See* Compl. ¶ 20. That fact, without more, provides no basis to name New York Life as a defendant in this action. All claims against New York Life should be dismissed on that ground alone.

Court has aptly observed that the "more compelling inference as to why Madoff's fraud went undetected for two decades was his proficiency in covering up his scheme and eluding the SEC and other financial professionals." *In re Tremont Sec. Law, State Law and Ins. Litig.*, 703 F. Supp. 2d 362, 371 (S.D.N.Y. 2010).

Plaintiff's complaint is filled with inadequate, conclusory allegations, most of which are addressed to "Defendants" collectively, including "Tremont, Rye, Rye Funds, Oppenheimer, MassMutual Holding, and MassMutual," without specificity as to which entity is supposedly responsible for the conduct alleged. Indeed, the only specific allegations against NYLIAC relate to purported misrepresentations in NYLIAC's Private Placement Memorandum ("PPM") for its VUL policies. That PPM, however, is replete with explicit cautionary language, such as "THE OWNER OF THE POLICY BEARS ALL INVESTMENT RISKS,"[2] and "OWNERS OF THE POLICY COULD LOSE ALL OR PART OF THE PREMIUMS THEY HAVE PAID," which put Plaintiff on notice of the risks of its investment decisions. NYLIAC's PPM further cautioned that NYLIAC "do[es] not participate in the selection or monitoring of Underlying Funds," "do[es] not participate in the selection or monitoring of subadvisers," and that investments in exempt funds (such as TOF III) "are not subject to the same regulatory and corporate governance controls" as registered funds and "less opportunity exists for regulators to detect and prevent misconduct." As one Court in this District has held in dismissing Madoff-related claims for securities fraud, "Plaintiffs cannot be permitted to 'cherry pick' language from the offering memoranda, and then ignore explicit cautionary language, which warned Plaintiffs that third-party managers would have custody over the Funds' assets and that this custody carried a risk of loss." *In re Merkin*, No. 08 Civ. 10922, 2011 WL 4435873, at *7 (S.D.N.Y. Sept. 23, 2011).

Unable to identify a misrepresentation by NYLIAC, Plaintiff's counsel twice references,

---

[2]   All emphasis in quotations herein is in original unless otherwise noted.

*without citation*, statements by New York Life that it performs its "own fundamental, bottom-up research." Plaintiff's counsel fails to disclose to the Court, however, that such statements, apparently drawn from New York Life's website, refer to New York Life's own investments in its General Account, not the investments of NYLIAC's VUL policyholders.

Indeed, Plaintiff's complaint boils down to a single purported misrepresentation upon which Plaintiff allegedly relied – that less than 6% of TOF III's assets were assigned to any one manager – and Plaintiff concedes that such statement was *not* made by NYLIAC, but rather was made by Tremont in a private meeting with Plaintiff in 2007 (not attended by NYLIAC) as part of Plaintiff's own due diligence conducted prior to making its investment – due diligence which included submitting to Tremont a Request for Proposal ("RFP"), to which Tremont responded.

As set forth more fully below, each of Plaintiff's claims against NYLIAC fails and should be dismissed with prejudice.

- *First*, Plaintiff's breach of contract claim, based on an alleged failure to provide Plaintiff with revised Tremont offering materials, fails because the only contracts between Plaintiff and NYLIAC are the policies, and those policies did not obligate NYLIAC to distribute or update Tremont offering materials. The NYLIAC and Tremont PPMs separately provided to Plaintiff did not constitute contracts between Plaintiff and NYLIAC, nor were such materials part of the policies purchased by Plaintiff. *See* § I, *infra*.

- *Second*, Plaintiff has failed to plead its common law fraud claim with the particularity required under Rule 9(b) and has failed to adequately allege a misrepresentation or that NYLIAC acted with fraudulent intent or – given Plaintiff's own due diligence and direct meetings with Tremont and the cautionary language in the PPMs – that Plaintiff *reasonably* relied upon any specific misrepresentations by NYLIAC. *See* § II, *infra*.

- *Third*, Plaintiff's negligent misrepresentation claims fail because, in addition to Plaintiff's failure to adequately plead reasonable reliance, NYLIAC owed no special duty to Plaintiff, nor was there a special relationship between the parties. In addition, both the economic loss doctrine and the applicable statute of limitations bar such claims. *See* § III, *infra*.

- *Fourth*, Plaintiff's unjust enrichment claim fails because such a quasi-contractual claim cannot be pled where there is a contract between the parties. *See* § IV, *infra*.

3

- *Fifth*, Plaintiff cannot state a claim against NYLIAC for breach of fiduciary duty because no fiduciary duty exists between an insurer and an insured under New York law, no breach was adequately pled with specificity, and such claim is time-barred. *See* § V, *infra*.

- *Sixth*, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing fails because it is duplicative of Plaintiff's contract claim and because Plaintiff does not sufficiently allege bad faith on the part of NYLIAC. *See* § VI, *infra*.

- *Finally*, Plaintiff's claim alleging violations of New York General Business Law § 349 fails because that statute does not apply to securities-related transactions or to large commercial transactions between sophisticated entities (such as those here), and Plaintiff has failed to plead a misrepresentation. *See* § VII, *infra*.

## FACTUAL BACKGROUND

### A.    Cummins Purchases VUL Policies From NYLIAC

Cummins purchased VUL policies from NYLIAC on behalf of a trust (the Cummins Inc. Grantor Trust dated September 10, 2007), created by Plaintiff to fund a non-qualified deferred compensation plan. Compl. ¶ 19. In addition to the insurance component of the policies, Cummins had the opportunity to accumulate tax-free "cash value" within each policy that could be invested "in a choice of separate accounts, similar to mutual funds." *Id.* ¶¶ 37-39.

Between September 15, 2007 and July 15, 2008, Cummins made five separate purchases of VUL policies from NYLIAC. Compl. ¶ 36. With each purchase, Cummins received NYLIAC's Premium Allocation Form, which offered more than 70 different registered and exempt investment divisions from which Cummins could choose to allocate premiums. *See* Ex. B (Cummins Premium Allocation Form dated September 11, 2007). With each purchase, Cummins elected to allocate 100% of its premium payments to TOF III, a limited partnership managed by Tremont, the general partner of the Fund. *See id.* at 3; Compl. ¶¶ 27, 40. NYLIAC was a limited partner in TOF III. *Id.* ¶ 55. From September 15, 2008 through November 15, 2008, Cummins made additional premium contributions to its existing policies on three occasions, for total contributions of $122,590,638 through November 2008. *Id.* ¶ 36.

4

Each VUL policy stated on the first page that "The Policy is a legal contract between the Policy Owner and the Corporation." *See* Ex. A (Cummins policy dated September 15, 2007) at 1.[3] Each policy also set forth the documents that were *exclusively* included as part of the contract. *Id.* at 22. NYLIAC's PPM was not included among the documents that were part of the contract. *See id.*

### B. Cummins Is a Sophisticated Institutional Investor

NYLIAC's VUL policies were available only to Accredited Investors and Qualified Purchasers (i.e., "Eligible Investors") who could demonstrate to NYLIAC their financial means and sophistication through a "Prospective Purchaser Questionnaire and Agreement." Ex. 1 at 4, 10, 21.[4] Cummins submitted such a form to NYLIAC and also re-certified its status as an Eligible Investor each time that it submitted a Premium Allocation Form in connection with the purchase of a VUL policy. Ex. C (Cummins Prospective Purchaser Questionnaire and Agreement); Ex. B at 5. The NYLIAC PPM distributed to prospective purchasers expressly stated that VUL policies are "SUITABLE ONLY FOR SOPHISTICATED PURCHASERS WHO UNDERSTAND AND ARE WILLING TO ASSUME THE RISKS INVOLVED IN THE SEPARATE ACCOUNT's INVESTMENTS." Ex. 1 at 4.

### C. Cummins Performed Significant Independent Due Diligence Before Investing and Knew About Tremont's Investment With Madoff

Cummins did substantial due diligence on its own before investing even one dollar through NYLIAC VUL policies. "Because of the *substantial* size of Plaintiff's intended investment…Plaintiff prepared a Request for Proposal ('RFP') which sought *substantial*

---

[3] References to lettered exhibits are to documents attached to the Declaration of Maria T. Galeno, dated January 31, 2012. While certain information (e.g., dates, amounts, names of beneficiaries) differed among the five policies purchased by Cummins from NYLIAC, the terms of each policy were identical. Ex. A is a copy of the first policy purchased.

[4] Citations to Ex. 1 refer to Exhibit 1 to the Amended Complaint. Because that exhibit contains multiple documents, citations herein refer to the page number of Document 642-1 on the Court's docket rather than any internal page numbers. The terms "Accredited Investor" and "Qualified Purchaser" are defined in the Securities Act of 1933 and the Investment Advisers Act of 1940. *See* Ex. 1 at 10.

*additional detailed* information" concerning the various investment options offered by NYLIAC. Compl. ¶ 61 (emphasis added). Tremont responded to that RFP and touted its personal knowledge of its underlying managers, including BMIS specifically, and its use of "high quality reference checks" and "background checks." *Id.* at ¶¶ 8, 62.

In addition to the RFP process, Cummins met with Tremont during the spring and summer of 2007 (the "2007 Meetings") (before its initial purchase of a NYLIAC VUL policy in September 2007) and received "multiple personal presentations" from Tremont. *Id.* at ¶ 8. During such presentations, "with respect to Madoff specifically, Tremont personnel informed Plaintiff that Tremont [had] access to all of Madoff's trades, allowing for 'full transparency' into Madoff's activities so that Tremont could accurately 'evaluate the risk' involved with entrusting any funds under its control to Madoff." *Id.* Plaintiff was also allegedly told during the 2007 Meetings that TOF III "had a low 'size to loss potential' and that less than 6% of the Fund's assets were assigned to any one Manager." *Id.* at ¶¶ 10, 99. Plaintiff describes this representation as "a material basis upon which Plaintiff invested in the Tremont Fund." *Id.* at ¶ 99. Plaintiff does not and could not allege that NYLIAC attended such 2007 Meetings or made any such representation regarding manager concentration.

### D.   NYLIAC Advised Cummins of the Risks of Investing

Prior to its purchase of VUL policies, Cummins was provided with a copy of the NYLIAC PPM, which was replete with cautionary language advising Cummins that it was assuming the risk of loss of its investments, and advising Cummins to seek independent advice before investing. Compl. ¶ 45.

### 1.   NYLIAC advised Cummins of the risk of losing its investment.

The NYLIAC PPM warned prospective purchasers, including Cummins, that investment results under a VUL policy could "fluctuate substantially" and that policyholders bore the risk of

any premium losses suffered from VUL investments.  *See, e.g.,* Ex. 1 at 5 ("OWNERS OF THE

POLICY COULD LOSE ALL OR PART OF THE PREMIUMS THEY HAVE PAID.  THE

OWNER OF THE POLICY BEARS ALL INVESTMENT RISKS."); *id.* at 18.  NYLIAC

cautioned that the "securities to be purchased and traded by the Funds and the investment

techniques and strategies to be employed by the Funds may increase this risk" of loss and that

the "theories behind the investment strategy of a Fund may be untested and may be difficult or

impossible to execute on."  *Id.* at 58.  NYLIAC explicitly stated that it did not guarantee the

performance of any of the investment divisions available for election under a VUL policy.  *Id.*

> **2.      Plaintiff was on notice that NYLIAC did not independently verify
> information provided by Tremont and the underlying funds.**

NYLIAC advised prospective purchasers of VUL policies to "carefully read the

prospectuses and/or memoranda [of the available funds] before making any decision concerning

the allocation of premiums to an Investment Division," because such "information about the

Funds is provided by the Funds," not NYLIAC.  *Id.* at 40.  The NYLIAC PPM disclosed that

NYLIAC does not "independently verify" information provided by the funds, that it "relies on

the performance and net asset value information provided by the investment adviser, and is not

responsible for incorrect information" provided by the funds.  *Id.* at 37, 60.

> **3.      Cummins was aware that NYLIAC did not monitor TOF III's
> investments, and neither selected nor controlled managers.**

The NYLIAC PPM made clear that NYLIAC did not control the investments made by the

funds available on its platform, nor did it select or monitor the individuals and entities who made

the investments on the funds' behalf:

- "Most Portfolios offered through Exempt Investment Divisions invest in several
  underlying funds. The selection of subadvisers or underlying funds is made by the
  investment adviser of the Portfolio. NYLIAC is not responsible for these selections."  *Id.*
  at 40;

- "Selection and monitoring of the Underlying Funds is the responsibility of the managers of the Exempt Funds. We do not participate in the selection or monitoring of Underlying Funds." *Id.* at 60; and

- "The managers of certain Exempt Funds delegate investment advisory responsibility to a sub-adviser. While the manager retains ultimate responsibility, the subadviser typically is responsible for day-to-day management of the Exempt Fund's investments. Selection and monitoring of the subadvisers is the responsibility of the managers of the Exempt Funds. We do not participate in the selection or monitoring of subadvisers." *Id.*

### 4.    NYLIAC warned Cummins of the specific risks of investing in exempt funds of funds like TOF III.

The NYLIAC PPM contained specific warnings concerning the risks of investing in exempt funds such as TOF III as follows: "Because the Exempt Funds and the Underlying Funds are not subject to regulatory oversight, generally the only outside oversight of the valuation process is the annual audit of the financial statements of the Exempt Funds and the Underlying Funds," and, "[a]s a result, less opportunity exists for regulators to detect and prevent misconduct." *Id.* at 59, 61.

### 5.    NYLIAC urged Cummins to do its own evaluation of the investment and seek independent advice before investing.

The NYLIAC PPM advised that "potential investors must make their own evaluation of the risk of investing in the Policy." *Id.*  NYLIAC urged each prospective buyer to "CONSULT PROFESSIONAL ADVISERS AS TO LEGAL, TAX, FINANCIAL OR OTHER MATTERS RELEVANT TO THE SUITABILITY OF A PURCHASE OF A POLICY." *Id.* at 3.

### E.    Tremont Made Clear NYLIAC's Lack of Control Over TOF III's Investments and Selection of Managers

Prior to its election to allocate its premiums to TOF III, Cummins also received a copy of Tremont's PPM for TOF III.  Compl. ¶ 45.  The Tremont PPM, in addition to containing cautionary language similar to that found in the NYLIAC PPM of the risk of total loss of investment, explained that limited partners in TOF III, like NYLIAC, had *no right* to participate in the Fund's selection of investments or managers.  *Id.* at 109 ("The General Partner is

responsible for selecting the Partnership's Managers, allocating assets among Managers and monitoring the Partnership's investments."); *id.* at 138 ("The Limited Partners cannot take part in the management or control of the Partnership's business, which is the sole responsibility of the General Partner. The General Partner has wide latitude in making investment decisions.").

## LEGAL STANDARD

To survive a motion under Fed. R. Civ. P. 12(b)(6), a plaintiff must set forth the grounds upon which his claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The requirement to accept as true all factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff is "inapplicable to legal conclusions," which should be disregarded. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Nor should a court "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

In ruling on a motion to dismiss, a district court may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit. *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001). "[T]he truth of factual allegations that are contradicted by documents properly considered on a motion to dismiss need not be accepted." *In re Tower Auto. Sec. Litig.*, 483 F. Supp. 2d 327, 334 (S.D.N.Y. 2007).

## ARGUMENT

## I.   CUMMINS FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

Plaintiff's breach of contract claim fails because, contrary to Plaintiff's allegations (Compl. ¶¶ 170-72), (a) the PPMs were not part of the contract between Cummins and NYLIAC; and (b) the VUL policies did not obligate NYLIAC to supply Cummins with timely updates or

supplements to the Tremont PPM.[5]

The only contracts between Cummins and NYLIAC were the VUL policies themselves. The offering materials were not incorporated into those contracts.  Each Cummins policy stated that "The Policy is a legal contract between the Policy Owner and the Corporation," and the "entire contract consists of the Policy, any attached riders or endorsements, and the attached copy of the application," along with any applications to increase the amount of the Policy.  Ex. A at 1, 22.  That integration clause did not include the PPMs.  *See Linton v. New York Life Ins. and Annuity Corp.*, Civil Action No. 04-11362-RWZ, slip op. at 6, 9-10 (D. Mass. Sept. 18, 2006) (finding identical language in NYLIAC policy to be an integration clause, thus excluding a prospectus from the "entire contract" between NYLIAC and insured).[6]

Further, the PPMs were not contracts between Cummins and NYLIAC because, *inter alia*, they were not signed by the parties, were missing key terms (e.g., the amount of Plaintiff's policies, beneficiaries, investment allocations), and specifically contemplated that the parties would enter into a separate formal contract (*i.e.*, the policy).  *See Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73 (2d Cir. 1989) (finding document not a contract and noting "strong presumption against finding [a] binding obligation in agreements which include open terms, call for future approvals and expressly anticipate future preparation and execution of contract documents"); *Ogden Martin Sys. of Tulsa, Inc. v. Tri-Continental Leasing Corp.*, 734 F. Supp. 1057, 1068 (S.D.N.Y. 1990) (holding that PPM was not contract because terms indicated intent not to be bound until execution of formal contract).  Thus, neither the offering materials themselves, nor any statements within them, can support a claim for breach of contract.

---

[5]   The elements of a breach of contract under New York law are: (1) the existence of a contract; (2) the plaintiff adequately performed its obligations under the contract; (3) the defendant failed to perform its obligations thereunder; and (4) foreseeable damages resulting to the plaintiff.  *See 24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 429 F.3d 39, 41-42 (2d Cir. 2005).

[6]   A copy of this unpublished decision is attached as Exhibit D to the Galeno Declaration.

The VUL policies contain no provision, as Plaintiff alleges, that obligates NYLIAC to provide amended or updated Tremont offering materials to prospective purchasers or existing policyholders.  In fact, under those contracts, the only situations in which NYLIAC is required to notify the policyholder are: (1) if an investment fund to which the policyholder has allocated premiums is closed to accepting payments or transfers, or (2) if a fund is added, substituted, or removed from the list of available investment options.  *See* Ex. A at 9, 11, 14.  Neither of these circumstances was present here.

Moreover, even if the NYLIAC PPM were part of a contract (which it is not), the language in the NYLIAC PPM upon which Plaintiff relies to create an alleged duty on the part of NYLIAC to provide updated Tremont offering materials does no such thing.  *See* Compl. ¶ 50.[7] NYLIAC's statement that it would provide notification and the opportunity to make a new election to policyholders if there was "a material change in the Fund Portfolios of Investment Divisions" was solely and specifically in the context of a change in a fund's "investment objective" based on legal or regulatory requirements:

> When required by law or regulation, an investment objective of the Separate Account may be changed. It will be changed only if approved by the appropriate insurance official of the State of Delaware or deemed approved in accordance with such law or regulation.  …We will notify You if any change results in a material change in the Fund Portfolios of Investment Divisions to which You have allocated funds. You may then make a new election.

Ex. 1 at 40.  The NYLIAC PPM did not state that it would notify policyholders simply where there was a change in a fund's offering materials; nor should the Court construe the PPM to expand the scope of NYLIAC's undertaking.[8]  *See Kaufman v. Guest Capital, L.L.C.*, 386 F.

---

[7]  Although the Amended Complaint mistakenly identifies the language in Paragraph 50 as being taken from NYLIAC's VUL policies, it appears only in the NYLIAC PPM (Ex. 1 at 40) and not in the policies.

[8]  There can be no dispute that such language does not appear in the policies, and to the extent that the offering materials arguably imposed additional obligations on NYLIAC that were not set forth in the policies, the NYLIAC PPM specifically states that the policies controlled.  Ex. 1 at 14 ("[T]he provisions of the Policy shall control in the event of any discrepancy between the Policy and this Memorandum."); *id.* at 21 (stating that the description of the Policy contained in the NYLIAC PPM "is qualified in its entirety by the terms of the Policy").

Supp. 2d 256, 273-74 (S.D.N.Y. 2005) (noting that the court "cannot rewrite the PPM and add words that the parties themselves did not include").

Moreover, the Tremont PPM was not issued by NYLIAC, nor was it incorporated into NYLIAC's PPM as Cummins alleges (Compl. ¶¶ 45, 56).  That allegation is directly rebutted by express language in the NYLIAC PPM.  *See* Ex. 1 at 37, 40 (stating that "information about the Funds is provided by the Funds" and that NYLIAC does not "independently verify" information provided by the funds).  Thus, the Tremont PPM cannot be the basis for a breach of contract claim against NYLIAC.

## II.     PLAINTIFF CANNOT ESTABLISH COMMON LAW FRAUD

Plaintiff's common law fraud claim fails to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and fails to adequately allege a misrepresentation or intent to defraud by NYLIAC or reasonable reliance by Plaintiff.[9]

### A.      Plaintiff's Fraud Claim Fails to Meet Rule 9(b)'s Heightened Pleading Requirements

"Rule 9(b) requires that allegations of fraud be pleaded with particularity" and "when a complaint charges fraud, it must (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."  *See Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996).  Plaintiff's fraud claim fails to distinguish which fraud allegations apply to which defendant, and which statements or omissions support its claim.  *See, e.g.*, Compl. ¶ 177 (referring only to "statements and representations [] made by the Defendants").  Such vague pleading violates the Rule 9(b) standard.  *See Three Crown Ltd. P'ship v. Caxton Corp.*, 817 F. Supp. 1033, 1040 (S.D.N.Y. 1993) ("[W]here

---

[9]   Under New York law, the elements of a common law fraud claim are: (1) a material, false representation, (2) an intent to defraud thereby, (3) reasonable reliance on the representation, and (4) resulting damage to the plaintiff. *Chanayil v. Gulati*, 169 F.3d 168, 171 (2d Cir. 1999).

multiple defendants are charged with fraud, the complaint must be specific as to the nature of each defendant's alleged participation in the fraud").

### B.      Plaintiff Identifies No Misrepresentation by NYLIAC

Plaintiff fails to allege any fraudulent statement attributable to NYLIAC.  Instead, Plaintiff refers to innocuous statements in NYLIAC's PPM, such as that NYLIAC will select the funds for its platform, misconstrues them as statements that NYLIAC exercised "extensive control and authority over the investments of its VUL policyholders," and then mischaracterizes them as false because NYLIAC did not detect Madoff's fraud.  *See* Compl. ¶¶ 46-49.  Such linguistic gymnastics by Plaintiff do not support a fraud claim against NYLIAC.

In fact, the only arguably false representation to which Cummins can point with any specificity – that less than 6% of TOF III's assets would be concentrated with any one Manager – was, as Plaintiff concedes, made by Tremont during the in-person 2007 Meetings, and not by NYLIAC.  *Id.* ¶ 99 (the NYLIAC PPM "was silent regarding concentration of funds in any one manager").  While Cummins alleges that NYLIAC "was aware of Tremont's 2007 Meetings with Plaintiff" (*id.* ¶ 8), it does not claim that NYLIAC was present at the 2007 Meetings or had any knowledge of the representations made by Tremont in such discussions, much less that NYLIAC confirmed or adopted such statements.

Indeed, to the extent that Plaintiff is relying upon any statements in NYLIAC's PPM to establish a misrepresentation, Plaintiff's effort must fail.  In *Merkin*, a recent Madoff-related case, the Court stated "Plaintiffs cannot be permitted to 'cherry pick' language from the offering memoranda, and then ignore explicit cautionary language, which warned Plaintiffs that third-party managers would have custody over the Funds' assets and that this custody carried a risk of loss."  *Merkin*, 2011 WL 4435873, at *7 (finding that, when taken "in conjunction with this cautionary language, it is clear there was no actual misrepresentation by Defendants").

13

To the extent that the Amended Complaint attempts to identify specific misrepresentations regarding supervision of Madoff, all such misrepresentations are alleged to have been made by Tremont, not NYLIAC.  *See* Compl. ¶¶ 8, 61-62, 91-98.  Thus, Plaintiff has failed to adequately allege the first element of fraud.  *Matsumura v. Benihana Nat'l Corp.*, 542 F. Supp. 2d 245, 252-54 (S.D.N.Y. 2008) (dismissing fraud claim where plaintiff failed to allege any legally cognizable misrepresentation).

### C.    Plaintiff Fails to Adequately Allege that NYLIAC Acted with Fraudulent Intent

The scienter element of a fraud claim can be satisfied by alleging facts (1) demonstrating that a defendant had motive and opportunity to commit fraud, or (2) providing evidence of conscious recklessness.  *See South Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 108–09 (2d Cir. 2009).  "[C]onscious recklessness" is "a state of mind approximating actual intent, and not merely a heightened form of negligence." *Id.* at 109 (*quoting Novak v. Kasaks*, 216 F.3d 300, 312 (2d Cir. 2000)).  Such recklessness is "at the least, ... an extreme departure from the standards of ordinary care ... to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Id.* at 308.

Here, Plaintiff argues that NYLIAC failed to perform sufficient due diligence to ferret out Madoff's fraud, ignoring purported "red flags" that allegedly should have caused NYLIAC to suspect that Madoff's operations were fraudulent.  *See, e.g.*, Compl. ¶¶ 66, 72-90.  Such allegations are not enough to demonstrate conscious misbehavior or recklessness.  In fact, identical "red flag" allegations have been consistently rejected by courts considering claims brought in the wake of the Madoff fraud.  Already, nearly a dozen cases in this district alone have found such "red flags" insufficient to support claims (sounding in securities fraud or

common law fraud) that defendants knew or should have known of the Madoff fraud.[10]  *See In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340 (S.D.N.Y. 2011) (McMahon, J.); *Merkin*, 2011 WL 4435873 (S.D.N.Y. Sept. 23, 2011) (Batts, J.); *Schulman v. Delaire*, No. 10 Civ. 3639, 2011 WL 672002 (S.D.N.Y. Feb. 22, 2011) (Baer, J.); *In re Tremont*, 703 F. Supp. 2d 362 (S.D.N.Y. 2010) (Griesa, J.); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386 (S.D.N.Y. 2010) (Sand, J.); *Stephenson v. Citco Grp. Ltd.*, 700 F. Supp. 2d 599 (S.D.N.Y. 2010) (Holwell, J.); *Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61 (S.D.N.Y. 2010) (Sand, J.); *S.E.C. v. Cohmad Sec. Corp.*, No. 09 Civ. 5680, 2010 WL 363844 (S.D.N.Y. Feb. 2, 2010) (Stanton, J.); *Newman v. Family Mgmt. Corp.*, 748 F. Supp. 2d 299 (S.D.N.Y. 2010) (Sand, J.); *MLSMK Invs. Co. v. JP Morgan Chase & Co.*, 737 F. Supp. 2d 137 (S.D.N.Y. 2010) (Jones, J.), *aff'd*, 651 F.3d 268 (2d Cir. 2011).

Courts have specifically found "red flag" allegations inadequate to plead scienter with respect to fraud claims in Madoff-related cases.  *See, e.g.*, *Jeanneret*, 769 F. Supp. 2d at 366 ("Plaintiffs' 'red flags' theory of scienter is no different from the theory rejected by this court and the Second Circuit in *South Cherry*: had [defendant] investigated Madoff, it would have learned that he was a fraud."); *Newman*, 748 F. Supp. 2d at 309-11 ("For twenty years, Madoff operated this fraud without being discovered and with only a handful of investors withdrawing their funds as a result of their suspicions. The actions of the minority cannot support an inference of intent to defraud as to the numerous other investors who were still in the dark."); *In re Beacon*, 745 F.Supp.2d at 414 (applying *South Cherry* and holding that allegations that managers of funds that invested with Madoff failed to heed red flags did not support a finding of scienter).[11]  Cummins' "red flag" allegations likewise fail to establish scienter.

---

[10] Common law fraud under New York law has the same essential required elements as a section 10(b) securities fraud claim. *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001); *see also Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*, 376 F. Supp. 2d 385, 407 (S.D.N.Y. 2005).

[11] This body of case law is consistent with Second Circuit authority.  *See South Cherry*, 573 F.3d at 100-01, 112-14 (affirming dismissal of fraud claim for failure to plead scienter notwithstanding that defendant investment advisor had represented to plaintiff that it had conducted a "rigorous five step due diligence process" and had promised to

Cummins' allegations concerning the Madoff "red flags" are particularly unpersuasive given that Cummins, a sophisticated investor, conducted its own due diligence and acknowledges that, through that process, it was aware prior to its investment that a portion of TOF III was invested with Madoff.  *See* Compl. ¶¶ 8, 10, 61-62, 99.  Despite this knowledge, or perhaps because of it, Cummins chose to invest 100% of its premiums in only one of more than 70 available investment divisions.  At a minimum, all of the publicly available "red flags" cited in Plaintiff's Complaint would have been available to a sophisticated institutional investor performing its own due diligence.

### D.    Plaintiff Could Not Have Reasonably Relied on Any Purported Misrepresentation or Omission by NYLIAC

Cummins also cannot support an allegation that it reasonably relied on any misrepresentation or omission purportedly made by NYLIAC given the multitude of disclaimers and other cautionary language in the NYLIAC PPM.  Far from "endorsing" Plaintiff's investments in TOF III, the NYLIAC PPM repeatedly advised Plaintiff that: (1) Cummins risked losing its entire investment; (2) Cummins should do its own evaluation of the investment and seek independent advice before investing; (3) Cummins faced specific risks of investing in exempt funds of funds like TOF III, including decreased regulatory oversight; (4) NYLIAC did not and could not monitor TOF III's investments, and neither selected nor controlled the managers of such investments; and (5) NYLIAC did not independently verify information provided by Tremont and the underlying funds.  *See* Factual Background § D.1-5, *supra*.

In evaluating alleged reliance on statements contained in offering memoranda and prospectuses, courts have held that such statements must be read in the context of the entire

---

"perform on-going due diligence" on plaintiff's investments); *Hart v. Internet Wire, Inc.*, 50 F. App'x 464, 466 (2d Cir. 2002) (holding that plaintiffs failed adequately to plead scienter in alleging that "defendants recklessly ignored or failed to investigate 'red flags'").

document.  *See, e.g., In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 365–66 (2d Cir. 2010) ( "When analyzing offering materials... [t]he literal truth of an isolated statement is insufficient; the proper inquiry requires an examination of defendants' representations, taken together and in context.").  Given the express disclaimers and cautionary language contained in the NYLIAC PPM, Plaintiff could not have reasonably relied on any purported implied "endorsement" of TOF III by NYLIAC for offering the fund on NYLIAC's platform or any alleged due diligence undertakings contained in the PPM.  *See, e.g., Feinman v. Schulman Berlin & Davis,* 677 F. Supp. 168, 170 (S.D.N.Y. 1988) ("Reliance on statements which are directly contradicted by the clear language of the offering memorandum through which plaintiffs purchased their securities cannot be a basis for a federal securities fraud claim.").

## III.   CUMMINS' NEGLIGENT MISREPRESENTATION CLAIMS FAIL

Plaintiff's negligent misrepresentation claims (Compl. ¶¶ 182-87, 213-18) fail for the same reasons that its fraud claim fails.[12]  *First*, Plaintiff does not identify any misrepresentation made by NYLIAC in the NYLIAC PPM or elsewhere.  *See* § II.B, *supra*; *see also Matsumura*, 542 F. Supp. 2d at 252-54 (dismissing claim for negligent misrepresentation where plaintiff failed to allege any legally cognizable misrepresentation).  Indeed, in a desperate attempt to identify *some* representation by NYLIAC, Plaintiff's counsel seemingly seeks to mislead this Court.  Plaintiff's counsel quotes statements – without citation to their source – regarding New York Life's "independence from the demands of Wall Street analysts" and performance of its "own fundamental, bottom-up research" (Compl. ¶¶ 68, 210), knowing full well that such statements, apparently taken from New York Life's website, refer to New York Life's own

---

[12]  Under New York law, "the elements for a negligent misrepresentation claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment."  *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).

investments, not the third-party investment funds available on NYLIAC's VUL platform.

Ironically, Plaintiff's counsel repeats this misleading assertion in its claim for breach of the

implied covenant of good faith and fair dealing.  Such statements appear nowhere in either the

VUL policies or the NYLIAC PPM.  *Second*, Plaintiff has not adequately alleged reasonable

reliance given the disclaimers and cautionary language in NYLIAC's PPM.  *See* § II.D, *supra;*

*see also Musalli Factory For Gold & Jewelry v.  JPMorgan Chase Bank, N.A.*, No. 08-01720,

2009 WL 860635, at *15 (S.D.N.Y.  Mar. 31, 2009) (dismissing negligent misrepresentation

claim where plaintiff "had no reasonable justification for relying upon the representations by

[defendant]"), *aff'd*, 382 F. App'x 107 (2d Cir. 2010).  *Third*, because Plaintiff has alleged the

same facts to support both its fraud and negligent misrepresentation claims, Plaintiff must plead

with the particularity required by Rule 9(b) and has failed to do so.  *See* § II.A, *supra; see also*

*Arnold Chevrolet LLC v.  Tribune Co.*, No. 04 Civ. 3097, 2007 WL 2743490, at *6-7 (E.D.N.Y.

Sept. 17, 2007) (holding that Rule 9(b) applied to negligent misrepresentation claim because it

was "based upon the same set of facts" as fraud claim).  The negligent misrepresentation claims

also fail for the additional grounds set forth below.

## A.    NYLIAC Owed No Special Duty to Plaintiff

Under New York law, "a plaintiff may recover for negligent misrepresentation only

where the defendant owes [plaintiff] a fiduciary duty."  *Stewart v. Jackson & Nash*, 976 F.2d 86,

90 (2d Cir.1992); *BHC Interim Funding, L.P. v.  Finantra Capital, Inc.*, 283 F. Supp. 2d 968,

990-91 (S.D.N.Y. 2003) (dismissing negligent misrepresentation claim where defendant owed no

fiduciary duty).  As discussed in Section V.A below, no fiduciary duty existed here between

NYLIAC and Cummins.

## B.    Plaintiff's Claims Are Barred by the Economic Loss Doctrine

Any duties that NYLIAC owed Cummins are governed by the terms of the policies.

Under New York's economic loss rule, a plaintiff asserting a claim of negligent misrepresentation who "has not suffered any personal or property damage is limited to an action in contract." *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 212, 220 (S.D.N.Y. 2007) (dismissing negligent misrepresentation claim because "if the damages suffered are of the type remediable in contract, a plaintiff may not recover in tort").

### C.      Plaintiff's Claims Are Time-Barred

To the extent that Plaintiff's negligent misrepresentation allegations do not sound in fraud, New York's three-year statute of limitations applies to bar such claims. *See* N.Y. C.P.L.R. § 214 (McKinney 2011); *see also Glonti v. Stevenson*, No. 08-8960, 2009 WL 311293, at *6 (S.D.N.Y.  Feb. 6, 2009).  In New York, claims for negligent misrepresentation accrue when the allegedly tortious conduct is committed.  *See id.*  Plaintiff alleges that it relied on Defendants' purported misrepresentations in deciding to purchase the VUL policies and invest its premiums in TOF III.  *See* Compl. ¶ 183.  Any alleged misrepresentation by NYLIAC, therefore, occurred in or prior to September 2007, when Cummins purchased its first VUL policy from NYLIAC and first elected to allocate 100% of its premiums to TOF III.  *See id.* ¶ 36.  Plaintiff filed this lawsuit on December 10, 2010, more than three years after purchasing its first NYLIAC VUL policy.

## IV.   THE UNJUST ENRICHMENT CLAIM IS BARRED

Plaintiff's unjust enrichment claim alleges that "Defendants have benefited and profited unjustly by receiving excessive revenue derived from the fees they collected based on the VUL policies' cash value." Compl. ¶ 190.  Under New York law, however, "[t]he theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates *in the absence of any agreement*." *Goldman v. Metropolitan Life Ins. Co.*, 5 N.Y.3d 561, 572 (2005) (emphasis added).  Thus, "[t]he existence of a valid and enforceable written contract governing a particular subject matter precludes recovery in quasi-contract or unjust enrichment for occurrences or

transactions arising out of the same matter." *CBS Broad., Inc. v. Jones*, 460 F. Supp. 2d 500, 506 (S.D.N.Y. 2006).  Here, the fees and charges assessed by NYLIAC under the VUL policies are plainly set forth in the policies, the express and enforceable agreements between the parties. *See, e.g.*, Ex. A at 2.1, § 7.7, § 7.8; *see also Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J.*, 448 F.3d 573, 586-87 (2d Cir. 2006) (affirming dismissal of unjust enrichment claim where valid and enforceable written agreements governed the subject matter of the claim).

## V.   NO BREACH OF FIDUCIARY DUTY CAN BE PROPERLY ALLEGED

The elements of a claim for breach of fiduciary duty under New York law are: (1) a fiduciary duty owed by defendant to plaintiff; (2) a breach of that duty; (3) defendant's knowing participation in the breach; and (4) damages.  *SCS Commc'ns, Inc. v. Herrick Co.,* 360 F.3d 329, 342 (2d Cir. 2004).

### A.   There Is No Fiduciary Relationship Between NYLIAC and Cummins

NYLIAC does not owe a fiduciary duty to Cummins.  Under New York law, an insurer does not owe fiduciary duties to its insured, except where the insurer owes the insured a duty to defend or when an insured demonstrates the existence of a special relationship, neither of which is present here.  *See Edelman v. O'Toole-Ewald Art Assocs., Inc.*, 28 A.D.3d 250, 251 (1st Dep't 2006); *Fiala v. Metro. Life Ins. Co.*, 6 A.D.3d 320, 322 (1st Dep't 2004).  This principle has been applied in New York in situations where the insurer issued policies that accumulate "cash value," similar to the one purchased by Plaintiff here.  *See Gaidon v. Guardian Life Ins. Co. of Am.*, 255 A.D.2d 101, 101-02 (1st Dep't 1998), *aff'd*, 96 N.Y.2d 201 (2001).  Cummins alleges no facts to support its conclusory allegation of a fiduciary duty, and does not even purport to allege a "special relationship" between itself and NYLIAC.  *See* Compl. ¶ 194; *see BHC Interim Funding*, 283 F. Supp. 2d at 986 (dismissing breach of fiduciary duty claim because plaintiff did not allege facts to show the existence of a fiduciary relationship).

### B.     Plaintiff Fails to Allege that NYLIAC Breached Any Duty

Plaintiff fails to allege any facts that would demonstrate that, even if NYLIAC owed a

fiduciary duty to Cummins, such a duty was breached.  As a limited partner in TOF III, NYLIAC

did not have the ability, much less a duty, to oversee the underlying investments of the Fund.

*See* Factual Background § E, *supra*.  Moreover, Plaintiff's allegation, that NYLIAC breached a

fiduciary duty by "investing the assets of Plaintiff in the Rye Funds and BMIS despite numerous

red flags" (Compl. ¶ 195), cannot support a claim because (a) it was Tremont, not NYLIAC, who

invested a portion of Cummins' premiums in the Rye Funds (via TOF III), and (b) the purported

"red flags" cited by Plaintiff have been consistently rejected by courts as a valid basis for claims

to cover losses suffered due to the Madoff fraud.  *See* § II.C, *supra*.

### C.     Plaintiff's Claim Fails to Satisfy Rule 9(b)'s Pleading Requirements

To the extent that Plaintiff's breach of fiduciary duty claim sounds in fraud, it should be

dismissed for failure to comply with Rule 9(b).  *See, e.g., Brody v. Brody*, No. 07-7981, 2009

WL 436404, at *4 n.3 (S.D.N.Y.  Feb. 17, 2009) (holding that Rule 9(b) applies to claims for

breach of fiduciary duty "when the conduct underlying that claim is based in fraud.").

### D.     Plaintiff's Claim Is Time-Barred

Like its negligent misrepresentation claims (*see* § III.C, *supra*), to the extent that

Plaintiff's breach of fiduciary duty claim does not sound in fraud, it is barred by the three-year

statute of limitations for such a claim under New York law.  *See* N.Y. C.P.L.R. § 214(4)

(McKinney 2011); *see also Sotheby's Fin. Servs., Inc. v. Baran*, 107 F. App'x. 235, 238 (2d Cir.

2004) (affirming dismissal of a breach of fiduciary duty claim as time-barred).

## VI.     PLAINTIFF CANNOT STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing should

be dismissed because it is impermissibly duplicative of Plaintiff's contract claim and fails to

adequately allege the essential element of bad faith.[13]

### A.      Plaintiff's Claim Fails Because It Is Impermissibly Duplicative

Under New York law, a "cause of action alleging a breach of good faith is duplicative of a cause of action alleging breach of contract, since every contract contains an implied covenant of good faith and fair dealing." *Apfel v. Prudential-Bache Sec., Inc.*, 183 A.D.2d 439, 439 (1st Dep't 1992), *aff'd*, 81 N.Y.2d 470 (1993); *accord W.S.A., Inc., v. ACA Corp.*, Nos. 94 Civ. 1868 and 94 Civ. 1493, 1996 WL 551599, at *9 (S.D.N.Y. Sept. 27, 1996) (dismissing implied covenant claim as redundant of contract claim).  Nor can a breach of the implied covenant claim salvage an inadequately pled breach of contract claim, as exists here.  *See, e.g., Triton Partners LLC v. Prudential Sec. Inc.*, 301 A.D.2d 411, 411 (1st Dep't 2003) (dismissing breach of covenant of good faith and fair dealing claim that was an attempted substitute for a non-viable breach of contract claim).

### B.      Cummins Fails to Allege Bad Faith

Even had Plaintiff not raised a breach of contract claim, its breach of an implied covenant claim fails because it is devoid of factual allegations to show bad faith by NYLIAC.  Conclusory allegations of a party's failure to act in good faith alone are insufficient; specific factual allegations of a party's bad faith acts are required to state a claim.  *See Prospect St. Ventures I, LLC v. Eclipsys Solutions Corp.*, 23 A.D.2d 213, 214 (1st Dep't 2005) (affirming dismissal because the complaint was "devoid of any specific factual allegations" of defendant's bad faith); *SNS Bank, N.V. v. Citibank, N.A.*,  7 A.D.3d 352, 355 (1st Dep't 2004) ("Even on a motion to dismiss, a court need not accept as true conclusory allegations" of bad faith).

---

[13]  Under New York law, the elements of a claim for breach of the duty of good faith and fair dealing are: (1) defendant must owe plaintiff a duty to act in good faith and conduct fair dealing; (2) defendant must breach that duty by acting in bad faith or failing to conduct fair dealing; and (3) the breach of duty must proximately cause plaintiff's damages.  *Washington v. Kellwood Co.*, 05 Civ. 10034, 2009 WL 855652, at *6 (S.D.N.Y. Mar. 24, 2009) (*quoting Boyd v. Univ. of Illinois*, 96 Civ. 9327, 2001 WL 246402, at *10 (S.D.N.Y. Mar. 13, 2001)).

## VII.   CUMMINS FAILS TO PLEAD A VIABLE CLAIM FOR VIOLATIONS OF N.Y. GENERAL BUSINESS LAW SECTION 349

Plaintiff's Section 349 claim fails because the statute (a) does not cover securities-related transactions, (b) does not apply to large commercial transactions between sophisticated entities, and (c) because Plaintiff has failed to plead a misrepresentation by NYLIAC.[14]

### A.   Section 349 Does Not Cover Securities-related Transactions

It is "well-established that Section 349 does not apply to securities transactions." *Kassover v. UBS AG*, 619 F. Supp. 2d 28, 37 n.4 (S.D.N.Y. 2008); *In re Evergreen Mut. Funds Fee Litig.*, 423 F. Supp. 2d 249, 264–65 (S.D.N.Y. 2006).  Likewise excluded from the scope of Section 349 are claims involving transactions "ancillary to the purchase of securities."  *Gray v. Seaboard Sec., Inc.*, 14 A.D.3d 852, 853-54 (3rd Dep't 2005); *Fesseha v. TD Waterhouse Investor Services, Inc.*, 193 Misc. 2d 253, 260 (N.Y. Sup. Ct. 2002), *aff'd*, 305 A.D.2d 268 (1st Dep't 2003).  It is beyond dispute that through its NYLIAC VUL policies Cummins allocated its premiums to TOF III for the purpose of investing in securities and that a VUL is a securities product.  *See* Compl. ¶¶ 37, 40, 46, 55; *Araujo v. John Hancock Life Ins. Co.*, 206 F.Supp.2d 377, 381–82 (E.D.N.Y. 2002) (holding that a variable universal life insurance policy is a "security"); *see also SEC v. Variable Annuity Life Ins. Co. of America*, 359 U.S. 65, 70–72 (1959) (holding that a variable annuity is properly classified as a "security").  Plaintiff's claim, therefore, is outside the scope of activity regulated by Section 349.

### B.   Section 349 Does Not Apply to Large Commercial Transactions Between Sophisticated Entities

Section 349 is limited to "consumer-oriented conduct."  *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 320-21 (1995).  New York courts have identified at least three factors

---

[14] To state a claim pursuant to Section 349, a Plaintiff must show: (1) acts or practices that are "consumer oriented"; (2) that such acts or practices are deceptive or misleading in a material way and (3) that plaintiff has been injured by reason of those acts.  *See Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121, 126 (2d Cir. 2000); *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 343–44 (1999).

relevant in the consumer-orientation analysis: (1) the amount of money involved in the agreement; (2) the relative bargaining power and sophistication of the parties; and (3) the nature of the agreement.  *See id.*  In applying these factors, courts have routinely rejected Section 349 claims based on transactions involving large sums of money and sophisticated business entities as falling outside of the statute.  *See, e.g.*, *id.* (dismissing Section 349 claim because purchase of insurance contract by major university with premiums in excess of $55,000 and a potential payout of $10 million did "not constitute consumer-oriented conduct"); *Exxonmobil Inter-America, Inc. v. Advanced Info. Eng'g Servs., Inc.*, 328 F. Supp. 2d 443, 449 (S.D.N.Y. 2004) (dismissing Section 349 claim where parties to transaction were "large businesses" and "relatively sophisticated entities with equal bargaining power"); *Genesco Entm't v. Koch*, 593 F. Supp. 743, 752 (S.D.N.Y. 1984) (finding § 349 inapplicable because "transaction[s] involving complex arrangements, knowledgeable and experienced parties and large sums of money ... are different in kind and degree from those that confront the average consumer who requires the protection of a statute against fraudulent practices").  Here, Plaintiff was an Accredited Investor engaged in an arms-length purchase of VUL policies with premiums in excess of $120 million.  Given the significant size of these commercial transactions, as well as Cummins' sophistication and bargaining power, its claim is not the type of "consumer-oriented conduct" covered by Section 349.

### C.  Cummins Fails to Plead a Misrepresentation

The New York Court of Appeals has defined a "deceptive act or practice" as a representation or omission "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Gaidon*, 94 N.Y.2d at 344; *see also Pelman v. McDonald's Corp.*, 272 F.R.D. 82, 92 (S.D.N.Y. 2010).  As set forth above (*see* § II.B, *supra*), Cummins has not sufficiently alleged any misrepresentation by NYLIAC.

## VIII.   CUMMINS CANNOT SUSTAIN A CLAIM FOR PUNITIVE DAMAGES

The Amended Complaint states that Cummins seeks punitive damages from NYLIAC with respect to its common law fraud, negligent misrepresentation, and breach of fiduciary duty claims.  Compl. ¶¶ 181, 187, 200, 218.  However, Plaintiff has failed to plead a viable claim against NYLIAC, much less the gross, wanton or morally culpable conduct necessary to sustain a claim for punitive damages.  *Topps Co. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 264 (S.D.N.Y. 2005).

### CONCLUSION

WHEREFORE, Defendants New York Life Insurance Company and New York Life Insurance and Annuity Corporation, by and through their undersigned counsel, move this Court for an order dismissing with prejudice all claims alleged against them in the Amended Complaint.

Dated: New York, New York
       January 30, 2012

PILLSBURY WINTHROP SHAW PITTMAN LLP

By:   s/  Maria T. Galeno
      Maria T. Galeno
      Greg T. Lembrich
      1540 Broadway
      New York, NY  10036
      Telephone: (212) 858-1000
      Fax: (212) 858-1500
      maria.galeno@pillsburylaw.com
      greg.lembrich@pillsburylaw.com

      *Attorneys for Defendants New York Life Insurance Company and New York Life Insurance and Annuity Corporation*