UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | Master File No. 08 Civ. 11117 (TPG) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This Document Relates to:          :

INSURANCE ACTION, 09 Civ. 557 (TPG),     :
and specifically to:

:

CUMMINS INC., as the authorized representative
of the Cummins Inc. Grantor Trust dated        :     10 Civ. 9252 (TPG)
September 10, 2007, as amended,

:     ECF CASE

          Plaintiff,          Electronically Filed

:

          - against -

:

NEW YORK LIFE INSURANCE COMPANY,
et al.,          :

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**THE TREMONT DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Defendants
  Tremont Group Holdings, Inc.,
  Tremont Partners, Inc.,
  Tremont (Bermuda) Limited,
  Tremont Capital Management, Inc. and
  Rye Investment Management

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................1

SUMMARY OF ALLEGATIONS .................................................................................2

ARGUMENT .................................................................................................................6

I.   CUMMINS LACKS STANDING TO ASSERT BREACH OF FIDUCIARY
     DUTY AND UNJUST ENRICHMENT CLAIMS...........................................6

     A.   The Breach of Fiduciary Duty and Unjust Enrichment Claims Are
          Derivative in Nature.............................................................................7

     B.   Cummins Has Not Satisfied the Demand  Requirements Applicable to
          Derivative Claims ................................................................................8

II.  THE COMPLAINT OTHERWISE FAILS TO STATE A CLAIM FOR RELIEF ...........9

     A.   The Complaint Fails To State a Claim of Fraud ..................................9

     B.   The Complaint Fails To State a Claim of Negligent Misrepresentation...............12

     C.   The Complaint Fails To State a Claim of Unjust Enrichment ...............................13

     D.   The Complaint Fails To State a Claim of Breach of Fiduciary Duty ...................14

     E.   The Complaint Fails To State a Claim Under New York General Business
          Law § 349 .........................................................................................16

CONCLUSION............................................................................................................17

i

## TABLE OF AUTHORITIES

### CASES

American Financial International Group-Asia, L.L.C. v. Bennett,
    05 Civ. 8988, 2007 WL 1732427 (S.D.N.Y. June 14, 2007)........................9

Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.,
    03 Civ. 1537, 2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003) .......................13, 14, 15

Barron Partners LP v. LAB123, Inc.,
    593 F. Supp. 2d 667 (S.D.N.Y. 2009)........................................................................12

Bello v. New England Financial,
    3 Misc. 3d 1109(A) (table) , 2004 WL 1305515 (Sup. Ct. Nassau County
    May 20, 2004)...........................................................................................................13

DeBlasio v. Merrill Lynch & Co.,
    07 Civ. 318, 2009 WL 2242605 (S.D.N.Y. July 27, 2009) ..........................................4

Ernest Lawrence Group v. Marketing the Americas, Inc.,
    03 Civ. 1510, 2005 WL 2811781 (S.D.N.Y. Oct. 27, 2005) ......................................16

Feldman v. Cutaia,
    951 A.2d 727 (Del. 2008) ...........................................................................................7

Flax v. Lincoln National Life Insurance Co.,
    864 N.Y.S.2d 559 (N.Y. App. Div. 2d Dep't 2008)...................................................16

Friedman v. Anderson,
    803 N.Y.S.2d 514 (N.Y. App. Div. 1st Dep't 2005)....................................................9

Goldman v. Metropolitan Life Insurance Co.,
    841 N.E.2d 742 (N.Y. 2005)......................................................................................13

IDT Corp. v. Morgan Stanley Dean Witter & Co,
    907 N.E.2d 268 (N.Y. 2009)................................................................................13, 14

In re J. Ezra Merkin & BDO Seidman Securities Litigation,
    08 Civ. 10922 , 2011 WL 4435873 (S.D.N.Y. Sept. 23, 2011)..................................11

Jordan (Bermuda) Investment Co. v. Hunter Green Investments LLC,
    00 Civ. 9214, 2007 WL 2948115 (S.D.N.Y. Oct. 3, 2007) .......................................12

Liberty Mutual Insurance Co. v. Luxury Transport Management Inc.,
    CV 07-0608, 2009 WL 1033177 (E.D.N.Y. Apr. 16, 2009) ......................................12

Litman v. Prudential-Bache Properties, Inc.,
   611 A.2d 12 (Del. Ch. 1992)...................................................................7

Metropolitan Electric Manufacturing Co. v. Herbert Construction Co.,
   583 N.Y.S.2d 497 (N.Y. App. Div. 2d Dep't 1992)..................................13

MLSMK Investments Co. v. JP Morgan Chase & Co.,
   737 F. Supp. 2d 137 (S.D.N.Y. 2010).....................................................11

New York University v. Continental Insurance Co.,
   662 N.E.2d 763 (N.Y. 1995).................................................................16

Newman v. Family Management Corp.,
   748 F. Supp. 2d 299 (S.D.N.Y. 2010)................................................7, 10

NFS Services, Inc. v. Chemical Bank,
   89 Civ. 585, 1990 WL 145152 (S.D.N.Y. Sept. 26, 1990).........................15

People v. Condor Pontiac, Cadillac, Buick & GMC Trucks, Inc.,
   02-1020, 2003 WL 21649689 (Sup. Ct. N.Y. County July 2, 2003)............9

Phillips v. American International Group, Inc.,
   498 F. Supp. 2d 690 (S.D.N.Y. 2007).....................................................12

Redtail Leasing, Inc. v. Bellezza,
   95 Civ. 5191, 1997 WL 603496 (S.D.N.Y. Sept. 30, 1997)................. 13-14

Renner v. Chase Manhattan Bank,
   98 Civ. 926, 2000 WL 781081 (S.D.N.Y. June 16, 2000)..........................15

Saltz v. First Frontier, LP,
   782 F. Supp. 2d 61 (S.D.N.Y. 2010)....................................4, 6, 7, 8, 10, 11

SEC v. Cohmad Securities Corp.,
   09 Civ. 5680, 2010 WL 363844 (S.D.N.Y. Feb. 2, 2010)...........................9

Small v. Lorillard Tobacco Co.,
   720 N.E.2d 892 (N.Y. 1999).................................................................9

South Cherry Street, LLC v. Hennessee Group LLC,
   573 F.3d 98 (2d Cir. 2009)................................................................10, 11

Stephenson v. Citgo Group Ltd.,
   700 F. Supp. 2d 599 (S.D.N.Y. 2010)................................................10, 11

Suthers v. Amgen Inc.,
    441 F. Supp. 2d 478 (S.D.N.Y. 2006)...........................................................16

Thermal Imaging, Inc. v. Sandgrain Securities, Inc.,
    158 F. Supp. 2d 335 (S.D.N.Y. 2001)..................................................14, 15

In re Tremont Securities Law, State Law and Insurance Litigation,
    703 F. Supp. 2d 362 (S.D.N.Y. 2010).........................................................11

U-H Acquisition Co. v. Barbo,
    Civ. A. No. 13,279, 1994 WL 34688 (Del. Ch. Jan. 31, 1994) .............................8, 15

Wilmington Trust Co. v. Metropolitan Life Insurance Co.,
    0600242/08, 2008 WL 3819698 (Sup. Ct. N.Y. County Aug. 4, 2008) .....................16

Zutty v. Rye Select Broad Market Prime Fund, L.P.,
    33 Misc. 3d 1226(A) (table), 2011 WL 5962804 (Sup. Ct. New York County
    Apr. 15, 2011) ........................................................................ 7, 8, 10, 11-12, 13

## STATUTES

Del. Code Ann. tit. 6, § 17-1001 (2011) ..........................................................8

Del. Code Ann. tit. 6, § 17-1002 (2011) ..........................................................8

Defendants Tremont Group Holdings, Inc. ("TGH"), Tremont Partners, Inc. ("TPI"), Tremont (Bermuda) Limited ("TBL"), Tremont Capital Management, Inc. ("TCM") and Rye Investment Management ("RIM" and, collectively, "Tremont" or the "Tremont Defendants") respectfully submit this memorandum of law in support of their motion for an Order, pursuant to Rules 9(b), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, dismissing the amended complaint in this action (the "Complaint") as against Tremont.

## PRELIMINARY STATEMENT

Plaintiff is the representative of a trust ("Cummins") that allegedly holds a number of variable universal life insurance policies (the "Policies") issued by New York Life Insurance and Annuity Corporation (the "Carrier"), an insurance carrier unaffiliated with Tremont.  Under the terms of the Policies, the Carrier was authorized to invest the Policies' excess cash value as directed by Cummins among a number of investment options offered by the Carrier.  Through the exercise of that authority, the Carrier – *not Cummins itself* – invested a portion of the Policies' excess cash value with Tremont Opportunity Fund III, L.P. (the "Opportunity Fund" or "Fund"), a hedge fund managed by defendant TPI.

The Opportunity Fund is a "fund of funds," *i.e.*, it invested the partnership's capital with a number of other hedge funds, including three managed by TPI (the "Rye Funds").[1]  The Rye Funds, in turn, invested substantially all of their assets with Bernard Madoff.  Madoff stole the assets of the Rye Funds, causing a decline in the excess cash value of the Policies.

Unable to sue Madoff, Cummins has sued the Carrier, the Opportunity Fund, the Rye Funds, Tremont and Tremont's parent companies.  According to the Complaint, Tremont should

---

[1]   The Rye Funds are:  (i) Rye Select Broad Market Prime Fund, L.P.; (ii) Rye Select Broad Market XL Fund, L.P.; and (iii) Rye Select Broad Market Insurance Fund, L.P. ("Insurance LP").  The Complaint inaccurately identifies Insurance LP as Rye Select Broad Market Insurance Portfolio LDC ("Insurance LDC").

be held responsible for Madoff's well-concealed fraud because it purportedly should have uncovered his wrongdoing before he shocked the world by confessing to the largest and longest running Ponzi scheme in history.  The Complaint, however, states no claim for relief and therefore fails in its misguided effort to blame Tremont for Madoff's criminal misconduct.  As demonstrated below:

- Cummins lacks standing to assert the claims of breach of fiduciary duty and unjust enrichment alleged in the Complaint.  It lacks standing because the claims are derivative claims and Cummins has not satisfied the requirements for suing in a derivative capacity.

- Cummins' fraud claim is legally defective because the Complaint does not adequately allege scienter, *i.e.*, fraudulent intent – an essential element of the claim.

- The Complaint's allegations of negligent misrepresentation, breach of fiduciary duty, unjust enrichment and violation of New York General Business Law § 349 also fail to state a claim for relief.

## SUMMARY OF ALLEGATIONS

### The Plaintiff, the Carrier and the Tremont Defendants

Plaintiff Cummins purportedly purchased five Policies from the Carrier between September 2007 and July 2008.  (Compl. ¶¶ 1, 36, 63, 71.)  The Policies "enjoy[] special tax advantages under the United States Internal Revenue Code" and allow policyholders "to build a cash value that can be invested in a choice of separate accounts" or subaccounts at the Carrier  (Id. ¶ 37.)  According to Cummins, once a Policy's excess cash value is allocated to the Carrier's accounts or subaccounts for investment purposes, any "investment returns can be used to pay for the costs of insurance inside the [Policy]."  (Id. ¶¶ 37, 46, 48-50.)

Cummins alleges that "[t]he number and type of investment choices available" to policyholders were "dependent on" the Carrier.  (Compl. ¶ 37.)  The investment options included the Opportunity Fund, a fund of funds that allocated its investment capital among a number of different hedge funds, including the Rye Funds.  (Id. ¶¶ 1, 27-30, 40, 41, 48, 60, 66, 75.)

2

Defendant TPI is the general partner of the Opportunity Fund and two of the Rye Funds in which the Opportunity Fund invested.  (Id. ¶¶ 24, 27-29.)  Defendant TBL is the investment adviser for Insurance LDC, an additional fund in which the Opportunity Fund allegedly invested but in fact did not.  (Id. ¶¶ 22, 30.)  Defendant TGH is the parent company of defendants TPI and TBL, and defendants TCM and RIM are divisions of TGH.  (Id. ¶¶ 21-25.)

On or about September 15, 2007, Cummins allegedly directed the Carrier to allocate a portion of the Policies' excess cash value to the Carrier's subaccount holding limited partnership interests in the Fund ("Interests"), which the Carrier purchased in its own name.[2]  (Compl. ¶¶ 36, 40, 71.)  Various materials provided by the Carrier to Cummins (the "Policy Materials") described the Carrier's "role in . . . managing the Separate Accounts and Subaccounts[,]" including its exclusive right to establish, terminate or change the investments made through the subaccounts.  (Id. ¶ 48; see also id. ¶¶ 43, 49, 66.)  As disclosed to Cummins, the Carrier also was responsible for: (i) "notify[ing] Plaintiff of any [material] change in the Subaccounts" (id. ¶ 50); (ii) issuing periodic account statements to plaintiff stating the value of the Subaccounts (id. ¶ 52); (iii) "[d]istribut[ing] the Fund's prospectus or confidential memorandum and any supplements thereto to" plaintiff (id. ¶ 47); and (iv) "[p]rovid[ing] telephonic support" to plaintiff "including, without limitation, information with respect to inquiries about the Fund."  (Id.)

**The Private Placement Memorandum and**
**Its Prohibition Against Communications with Policyholders**

Prior to purchasing its Interests in the Opportunity Fund, the Carrier received offering materials confirming that the Carrier itself, not plaintiff, would invest in the Fund.  For example, the Opportunity Fund's private placement memorandum ("PPM") expressly disclosed that only

---

[2]    (See Compl. ¶ 47 (the Carrier was "the record owner of [the Interests]").)  Indeed, plaintiff concedes that the Carrier, not plaintiff, purchased Interests in the Opportunity Fund.  (See id. ¶¶ 12, 40, 47, 55, 99, 101, 103, 176.)

domestic *insurance companies* would be eligible to purchase Interests in the Fund, adding:[3]  **"It should be emphasized that the Companies, and not the owners of Contracts,[[4]] will be the Limited Partners in the Partnership."**[5]  In further underscoring this point, the PPM disclosed that the Carrier's purchase of Fund Interests created no rights or duties running from Tremont to the Carrier's policyholders.  (See, e.g., Opportunity Fund PPM (Trans. Decl. Ex. A) at 4.)  The PPM explained that, while "[the Carrier's] rights are governed by" the Fund's offering documents, "[policyholders'] rights are governed by the [Policies] and not by the [Opportunity Fund PPM or limited partnership agreement ('LPA').]"  (Id. at 9.)

Moreover, the PPM admonished that, once the Carrier invested in the Fund, there could be *absolutely no communication* between Tremont and policyholders such as plaintiff:

> OWNERS OF VARIABLE CONTRACTS ARE RESTRICTED IN THAT THEY SHALL HAVE NO CONTACT, EITHER DIRECTLY OR INDIRECTLY, WITH THE GENERAL PARTNER [TPI] REGARDING ANY INVESTMENT MATTERS REGARDING THE GENERAL PARTNER'S INVESTMENT STRATEGIES AND DECISIONS CONCERNING INVESTMENT OF PARTNERSHIP ASSETS.  EACH PARTICIPATING INSURANCE COMPANY MUST FULLY DISCLOSE SUCH PROHIBITION ON COMMUNICATION TO THE VARIABLE CONTRACT OWNERS.

(Opportunity Fund PPM (Trans. Decl. Ex. A) at overleaf.)

---

[3]   (See, e.g., Tremont Opportunity Insurance Fund, L.P. Amended and Restated Confidential Private Placement Memorandum of November 1, 2006 (the "Opportunity Fund PPM" (attached to the accompanying transmittal Declaration of Jason C. Vigna in support of the Tremont Defendants' Motion To Dismiss the Amended Complaint ("Trans. Decl.") as Exhibit A)) at overleaf ("The Interests described herein are currently being offered only to *(a) U.S. life insurance company investors (the 'Companies')*[.]") (emphasis added).)  The Opportunity Fund was formerly known as Tremont Opportunity Insurance Fund, L.P. (see id.) and as American Masters Opportunity Insurance Fund, L.P. (see Compl. ¶ 27).  In deciding a motion to dismiss, the Court may consider, among other things, contracts and other documents that contain obligations or disclosures upon which plaintiff's allegations depend.  See DeBlasio v. Merrill Lynch & Co., 07 Civ. 318, 2009 WL 2242605, at *1 n.1 (S.D.N.Y. July 27, 2009); see also Saltz v. First Frontier, LP, 782 F. Supp. 2d 61, 70 (S.D.N.Y. 2010).

[4]   The Opportunity Fund's governing documents define policyholders, including plaintiff, as "Contract Owners" and "Contract Persons."

[5]   (Opportunity Fund PPM (Trans. Decl. Ex. A) at 30 (emphasis in original).)

4

**The Limited Partnership Agreement**

The LPA of the Fund governs the rights and obligations of the Fund's general partner (TPI) and its limited partners.  In that connection, the LPA specifies – and limits – the duties owed by Tremont to the Fund and its partners, including the Carrier.  (See Tremont Opportunity Fund III, L.P. Second Amended and Restated Ltd. Partnership Agreement ("Opportunity Fund LPA," attached to the Trans. Decl. as Ex. B) § 3.04(a) ("the General Partner and its Affiliates *shall not be obligated* to do or perform any act or thing in connection with the business of the Partnership not expressly set forth herein" (emphasis added)).)

In particular, the LPA provides that neither Tremont nor the Opportunity Fund owes any duty to policyholders arising from the Carrier's purchase of Interests in the Fund:

> No person who owns a Contract, the beneficiaries of any Contract or the grantor and beneficiaries of any trust which owns a Contract (any such parties being referred to individually as a '*Contract Person*') will have directly or indirectly any legally binding right to require the Partnership to acquire or dispose of any particular asset or incur or pay any particular liability.  There is not, nor will there be, any prearranged plan between or among the General Partner, any affiliate of the General Partner, or the Partnership and any Contract Person to invest any assets of the Partnership in any particular asset; and none of the General Partner, any affiliate of the General Partner, or any investment adviser or subadviser, will consult with or receive, require or rely upon the advice of any person which the General Partner, or such affiliate or adviser, knows or should know is a Contract Person, with regard to the management of the assets of the Partnership.

(Opportunity Fund LPA (Trans. Decl. Ex. B) § 3.08(k) (emphasis in original).)

**Madoff Admits Misleading Tremont and Other Sophisticated Investors**

The Opportunity Fund allocated approximately 22 percent of its capital to the Rye Funds, which invested substantially all of their assets with Madoff.  (Compl. ¶ 41.)  On December 11, 2008, Madoff publicly admitted that his firm had long been operated as a Ponzi scheme.  (Id. ¶¶ 2-4, 11, 41, 52, 64, 68, 101.)  According to Cummins, prior to Madoff's confession, a few investors purportedly harbored "concerns" that Madoff's business was "not legitimate."  (Id. ¶¶ 5, 6, 78.)

Cummins does not allege, however, that Tremont was aware of investors who harbored such concerns, much less that Tremont knew of investors who had accused Madoff of fraud, or that it otherwise knew or believed that Madoff was running a Ponzi scheme.

**The Complaint**

The Complaint alleges that Tremont's failure to detect Madoff's fraud demonstrates that Tremont must not have adequately monitored Madoff's investment activity before he confessed to his crimes.  (Compl. ¶¶ 5, 8, 9, 54, 57, 58, 72, 74-76, 78, 81, 93, 98, 106, 198.)  Based on the false premise that any minimal due diligence would have revealed Madoff's fraud (id.), Cummins asserts claims against Tremont for:  (i) common law fraud (Count II); (ii) negligent misrepresentation (Count III); (iii) unjust enrichment (Count IV); (iv) breach of fiduciary duty (Count V); and (v) violation of New York General Business Law § 349 (Count IX).  As shown below, all of these claims fail as a matter of law.

**ARGUMENT**

**I.     CUMMINS LACKS STANDING TO ASSERT BREACH OF
        FIDUCIARY DUTY AND UNJUST ENRICHMENT CLAIMS**

The unjust enrichment and breach of fiduciary duty claims alleged in Counts IV and V of the Complaint, respectively, are derivative claims that may be maintained, if at all, either:  (a) directly by the Opportunity Fund itself; or (b) derivatively by a Fund investor on behalf of the Fund.  An investor in the Fund, however, may not assert such claims directly on his own behalf.  See, e.g., Saltz v. First Frontier, LP, 782 F. Supp. 2d 61, 79 (S.D.N.Y. 2010) (dismissing for lack of standing derivative claims improperly asserted directly, holding, "[t]hese claims may only be brought, if at all, derivatively").  It necessarily follows, *a fortiori*, that Cummins may not assert these claims either derivatively on behalf of the Fund or directly for its own benefit given that it never directly invested in the Fund and is, at most, a customer of a Fund investor (the Carrier).

6

A.      **The Breach of Fiduciary Duty and Unjust**
        **Enrichment Claims Are Derivative in Nature**

The test for determining whether a claim is derivative or direct under Delaware law has

been summarized by the Delaware Supreme Court as follows:[6]

> Where all of a corporation's stockholders are harmed and would recover *pro rata* in
> proportion with their ownership of the corporation's stock solely because they are
> stockholders, then the claim is derivative in nature.  The mere fact that the alleged
> harm is ultimately suffered by, or the recovery would ultimately inure to the benefit
> of, the stockholders does not make a claim direct . . . .   In order to state a direct
> claim, the plaintiff must have suffered some individualized harm not suffered by all
> of the stockholders at large.

Feldman v. Cutaia, 951 A.2d 727, 733 (Del. 2008) (footnotes omitted).

In this case, Cummins' breach of fiduciary duty and unjust enrichment claims are

derivative because they allege injuries that were suffered directly by the Opportunity Fund and

only indirectly by Fund investors such as the Carrier – namely, the loss of the Fund assets invested

indirectly with Madoff through the Rye Funds, and the Fund's payment of allegedly unjustified

management fees to TPI (Compl. ¶¶ 2, 5, 13, 14, 40, 41, 44, 52-54, 57, 58, 64, 65, 70, 72, 75-77,

98, 100-03, 106-110, 179, 186, 190-92, 195-99).  See Feldman, 951 A.2d at 733; Saltz, 782 F.

Supp. 2d at 79 ("The diminution in the value of partnership interests clearly is not a direct injury,

because '[t]he diminution in the value of their interests flows from the damage inflicted directly on

the Partnership.'" (citation omitted)).[7]  Because plaintiff purports to assert those claims in a direct

---

[6]     Because the Opportunity Fund is a Delaware limited partnership (Compl. ¶ 27), Delaware law governs
the determination of whether Cummins' claims must be brought derivatively.  See Saltz, 782 F. Supp.
2d at 77-78; see also Zutty v. Rye Select Broad Mkt. Prime Fund, L.P., 33 Misc. 3d 1226(A) (table),
2011 WL 5962804, at *5-9 (Sup. Ct. N.Y. County Apr. 15, 2011).

[7]     See also Litman v. Prudential-Bache Props., Inc., 611 A.2d 12, 15-16 (Del. Ch. 1992) (finding
allegations that "general partners . . . inadequately investigat[ed] and monitor[ed] investments" to be
derivative); Newman v. Family Mgmt. Corp., 748 F. Supp. 2d 299, 315 (S.D.N.Y. 2010) ("'A claim for
deficient management or administration of a fund is 'a paradigmatic derivative claim.'"" (citations
omitted)).

– rather than derivative – capacity, they should be dismissed.  See, e.g., Saltz, 782 F. Supp. 2d at 79-80 & n.17.

## B. Cummins Has Not Satisfied the Demand Requirements Applicable to Derivative Claims

Had Cummins attempted to assert its claims for breach of fiduciary duty and unjust enrichment derivatively, they still would be subject to dismissal.  Because Cummins is not a limited partner of the Fund, it lacks standing to assert – under any circumstances – derivative claims on the Fund's behalf.  See Del. Code Ann., tit. 6 § 17-1002 (2011) ("In a derivative action, the plaintiff must be a partner . . . at the time of bringing the action[.]"); see also U-H Acquisition Co. v. Barbo, Civ.A. No. 13,279, 1994 WL 34688, at *4 (Del. Ch. Jan. 31, 1994).  For this reason alone, the claims should be dismissed.

Further, even limited partners and shareholders lack standing to assert derivative claims on behalf of a company in which they have invested unless they "(1) first make a pre-suit demand on the company's directors or general partner to redress the defendants' alleged wrongdoing; or (2) adequately allege with particularity in their complaint facts sufficient to show that pre-suit demand is excused as futile."  Zutty v. Rye Select Broad Mkt. Prime Fund, L.P., 33 Misc. 3d 1226(A) (table), 2011 WL 5962804, at *6 (Sup. Ct. N.Y. County Apr. 15, 2011) (applying Delaware law and dismissing claims against Tremont); see also Del. Code Ann., tit. 6 § 17-1001 (2011).  Here, the Complaint nowhere alleges that Cummins or the Carrier made a pre-suit demand on TPI or that such demand would have been futile.  This failure to satisfy the applicable demand requirements provides a separate and independent basis for dismissing the derivative claims alleged in Counts IV and V of the Complaint.[8]

---

[8] See Saltz, 782 F. Supp. 2d at 80-82 (dismissing derivative claims under Delaware law); see also Zutty, 2011 WL 5962804, at *6 (dismissing derivative claims against Tremont).

## II.   THE COMPLAINT OTHERWISE FAILS TO STATE A CLAIM FOR RELIEF

### A.   The Complaint Fails To State a Claim of Fraud

To state a claim of fraud under New York law, Rule 9(b) of the Federal Rules of Civil Procedure requires a plaintiff to allege "with particularity the circumstances constituting fraud," including facts sufficient to show:  (i) a misrepresentation of material fact; (ii) falsity of the representation; (iii) scienter; (iv) plaintiff's reasonable reliance on the alleged misrepresentation; and (v) injury resulting from the alleged reliance.  Small v. Lorillard Tobacco Co., 720 N.E.2d 892, 898 (N.Y. 1999); Am. Fin. Int'l Grp.-Asia, L.L.C. v. Bennett, 05 Civ. 8988, 2007 WL 1732427, at *6-7 (S.D.N.Y. June 14, 2007).

In the Complaint, Cummins alleges that Tremont misrepresented the due diligence it performed on Madoff and the extent to which Madoff actually invested the assets of the Rye Funds.  (Compl. ¶¶ 53, 54, 57-59, 62, 93, 98.)  At a minimum, these allegations fail to state a claim of fraud because the Complaint alleges no facts sufficient to establish scienter, an essential element of the claim.  By itself, this pleading deficiency warrants dismissal of Cummins' fraud claim.

Scienter, as an element of fraud, means an actual "'intent to deceive, manipulate, or defraud.'"  People v. Condor Pontiac, Cadillac, Buick & GMC Trucks, Inc., 02-1020, 2003 WL 21649689, at *5 (Sup. Ct. N.Y. County July 2, 2003) (quoting Black's Law Dictionary 1347 (7th ed. 1999)); see also Friedman v. Anderson, 803 N.Y.S.2d 514, 517 (N.Y. App. Div. 1st Dep't 2005) ("A fraud claim is not actionable without evidence that the misrepresentations were made with the intent to deceive.").  "[O]ne who conducts normal business activities while ignorant that those activities are furthering a fraud is not liable for securities fraud."  SEC v. Cohmad Sec. Corp., 09 Civ. 5680, 2010 WL 363844, at *1 (S.D.N.Y. Feb. 2, 2010) (dismissing fraud claims against party that referred clients to Madoff).

The Complaint attempts to plead scienter in part by suggesting that Tremont purportedly had a motive for committing fraud – namely, a desire to earn fees as manager of the Opportunity Fund and the Rye Funds.  (Compl. ¶ 65.)  It is well-established, however, that such allegations are "legally insufficient to establish scienter because the desire for higher compensation . . . is found in virtually all commercial transactions, making it an ill-suited motive from which to draw an inference of intent to defraud."  Zutty, 2011 WL 5962804, at *11 (internal quotation marks omitted); see also Saltz, 782 F. Supp. 2d at 72; Stephenson v. Citco Grp. Ltd., 700 F. Supp. 2d 599, 621 (S.D.N.Y. 2010) (dismissing fraud claim and explaining, "it is economically irrational to risk your professional reputation, license, and the possibility of legal liability simply in return for a professional services fee").

The Complaint also attempts to show the requisite "'state of mind *approximating actual intent* [to defraud], and *not merely a heightened form of negligence,*'" S. Cherry St., LLC v. Hennessee Grp. LLC, 573 F.3d 98, 109 (2d Cir. 2009) (citation omitted) (emphasis in original), by alleging that Tremont either was aware of "red flags" indicative of Madoff's fraud or would have uncovered those flags had it "performed appropriate due diligence."  (Compl. ¶¶ 76, 77.)[9]  But scienter cannot be established merely by alleging, as Cummins does here, that a defendant failed to uncover or heed "red flags" that, if investigated, allegedly could have revealed wrongdoing. See S. Cherry St., 573 F.3d at 112 (holding allegations that the defendant "'would' have learned the truth . . . if [it] had performed the 'due diligence' it promised" insufficient to state a claim for

---

[9]     Cummins also attempts to plead scienter by suggesting that Tremont must have known of Madoff's fraud because certain other investment professionals allegedly "publicly express[ed] skepticism regarding the legitimacy of Madoff's operations."  (Compl. ¶ 129; see also id. ¶¶ 5, 6, 78, 134, 136.) This allegation also falls short because "[f]or twenty years, Madoff operated this fraud without being discovered and with only a handful of investors withdrawing their funds as a result of their suspicions. The actions of the minority cannot support an inference of intent to defraud as to the numerous other investors who were still in the dark."  Newman, 748 F. Supp. 2d at 311.

fraud); In re J. Ezra Merkin & BDO Seidman Sec. Litig., 08 Civ. 10922, 2011 WL 4435873, at *9 (S.D.N.Y. Sept. 23, 2011) ("[A]llegations that managers of funds that invested with Madoff failed to heed red flags d[o] not support a finding of scienter.") (to be published in F. Supp. 2d); Saltz, 782 F. Supp. 2d at 72; Stephenson, 700 F. Supp. 2d at 622-24.

Cummins' conclusory allegations that Tremont had knowledge of the red flags mentioned in the Complaint also are insufficient.  To adequately plead scienter, the Complaint must allege facts establishing both that the red flags in question actually came to the defendant's attention, see S. Cherry St., 573 F.3d at 112-13; Stephenson, 700 F. Supp. 2d at 622-23, and that the flags were "'so obvious[ly]'" indicative of wrongdoing "'that the defendant must have been aware'" of it and wished to further it.  Zutty, 2011 WL 5962804, at *12 (citing S. Cherry St., 573 F.3d at 109, 112); see also MLSMK Invs. Co. v. JP Morgan Chase & Co., 737 F. Supp. 2d 137, 144 (S.D.N.Y. 2010) (finding allegations of scienter insufficient because, "[w]hile it may be true that Defendants could have connected the dots to determine that Madoff was committing fraud, Plaintiff offers no facts to support the claim that they actually reached such a conclusion"), aff'd in part, 431 F. App'x 17 (2d Cir. 2011), aff'd, 651 F.3d 268 (2d Cir. 2011).

Here, the Complaint alleges no facts sufficient to show that all of the "red flags" it identifies either were known to Tremont or were obvious indicators to the world at large that Madoff must have been operating a Ponzi scheme.  Consequently, the requirements for pleading scienter have not been met here.[10]  See, e.g., Zutty, 2011 WL 5962804, at *12 (even if the complaint adequately alleged Tremont had knowledge of purported "red flags," it "would still be

---

[10]  For example, one of the purported "red flags" alleged in the Complaint is a "detailed letter" Harry Markopolos sent to the SEC in 1999 expressing concern about Madoff.  (Compl. ¶ 6(g).)  The Complaint, however, alleges no facts indicating that Tremont had access to the SEC's mail, or that the SEC publicly disclosed the Markopolos letter.  See In re Tremont Sec. Law, State Law and Ins. Litig., 703 F. Supp. 2d 362, 371 (S.D.N.Y. 2010) (Griesa, J.) (dismissing claim for securities fraud asserted against the Rye Funds' auditor).

defective because it also fails to explain how one or more alleged red flags made it so obvious that Madoff was running a Ponzi scheme that [Tremont] must have known about the scheme and wanted to further it").

### B.      The Complaint Fails To State a Claim of Negligent Misrepresentation

While scienter is not an element of the claim of negligent misrepresentation, "'a plaintiff may not recover for negligent misrepresentation in the absence of a special relationship of trust or confidence between the parties.'"[11]  Barron Partners LP v. LAB123, Inc., 593 F. Supp. 2d 667, 674 (S.D.N.Y. 2009) (citation omitted).  And no such relationship will be deemed to exist unless "'there is actual privity of contract between the parties or a relationship so close as to approach that of privity.'"  Id. (quoting Ossining Union Free Sch. Dist. v. Anderson, 539 N.E.2d 91, 94 (N.Y. 1989)).

Here, Cummins admittedly did not enter into any contract with any Tremont Defendant. As alleged in the Complaint, its only contractual relationship pertaining to the investments at issue was with the Carrier.  (Compl. ¶¶ 27, 40, 42, 170-74.)  Thus, Cummins was, at most, a "client of a client" (the Carrier), a "relationship" that falls far short of the "special relationship" required for a negligent misrepresentation claim.[12]  Jordan (Bermuda) Inv. Co. v. Hunter Green Invs. LLC, 00 Civ. 9214, 2007 WL 2948115, at *23-24 (S.D.N.Y. Oct. 3, 2007).  Thus, Count III of the Complaint should be dismissed as against Tremont.

---

[11]    To state a claim for negligent misrepresentation, plaintiff must adequately allege that:  (1) defendant had a duty, as a result of a special relationship, to disclose accurate information; (2) defendant made a false representation that it should have known was incorrect; (3) defendant knew plaintiff intended to use the disclosed information for a particular purpose; and (4) plaintiff reasonably relied on the information to its detriment.  See, e.g., Liberty Mut. Ins. Co. v. Luxury Transp. Mgmt. Inc., CV 07-0608, 2009 WL 1033177, at *7 (E.D.N.Y. Apr. 16, 2009).

[12]    Plainly, the Complaint's allegations that Tremont made statements directly to plaintiff do not, by themselves, establish a special relationship.  See, e.g., Phillips v. Am. Int'l Grp., Inc., 498 F. Supp. 2d 690, 695-96 (S.D.N.Y. 2007).

### C.      The Complaint Fails To State a Claim of Unjust Enrichment

Because unjust enrichment is a "quasi-contract claim[,]" it is a claim that may be asserted

solely "in the *absence* of any agreement."  Goldman v. Metro. Life Ins. Co., 841 N.E.2d 742, 746

(N.Y. 2005) (emphasis added).  Accordingly, "'[t]he existence of a valid and enforceable written

contract governing a particular subject matter . . . precludes recovery in quasi contract for events

arising out of the same subject matter.'"[13] Id. (citation omitted).

Here, the LPA governs the subject of Tremont's entitlement to fees for the services it

rendered to the Fund.[14]  The LPA therefore forecloses Cummins' claim that Tremont was unjustly

enriched by the Fund's payment of those fees in accordance with that contract.  See IDT Corp. v.

Morgan Stanley Dean Witter & Co., 907 N.E.2d 268, 274 (N.Y. 2009) ("unjust enrichment . . .

cannot form the basis of [plaintiff's] demand that [defendant] return the . . . fee paid in relation to

the . . . transaction, because that fee arose from services governed by" a contract); see also Zutty,

2011 WL 5962804, at *8-9 (dismissing nearly identical claim for unjust enrichment asserted

against Tremont by Rye Fund investors).

Further, to state a claim of unjust enrichment, Cummins must establish that it "performed

services for the Defendant which resulted in the Defendant being unjustly enriched" and "that the

services were preformed at the request or behest of the Defendant."  Bello v. New Eng. Fin., 3

Misc. 3d 1109(A) (table), 2004 WL 1305515, at *6 (Sup. Ct. Nassau County May 20, 2004); see

also Redtail Leasing, Inc. v. Bellezza, 95 Civ. 5191, 1997 WL 603496, at *8 (S.D.N.Y. Sept. 30,

---

[13]    This rule applies "'whether the contract is one between parties to the lawsuit, or where one party to the
lawsuit is not a party to the contract.'"  Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.,
03 Civ. 1537, 2003 WL 23018888, at *18 (S.D.N.Y. Dec. 22, 2003) (citation omitted) (collecting cases)
(dismissing unjust enrichment claim), aff'd, 110 F. App'x 191 (2d Cir. 2004); see also Metropolitan
Elec. Mfg. Co. v. Herbert Constr. Co., 583 N.Y.S.2d 497, 498 (N.Y. App. Div. 2d Dep't 1992) (same).

[14]    (See Opportunity Fund LPA (Trans. Decl. Ex. B) § 3.07.)  The LPAs for the Rye Funds each contain
substantially similar provisions governing the Rye Funds' payment of fees to Tremont as well.

1997) (dismissing unjust enrichment claim where, as here, "Plaintiffs do not allege any direct dealings or actual, substantive relationship with any of the Defendants").  Here, the Complaint nowhere alleges that Cummins performed services for Tremont, much less at Tremont's request. This pleading defect also warrants dismissal of the unjust enrichment claim.

Yet another fatal defect is the absence of any allegation that Tremont received any fee directly from Cummins.  Although the Complaint alleges that Cummins "has lost its share of the millions of dollars in management and advisory fees and administrative service fees that were paid to . . . Tremont" (Compl. ¶ 110), the Opportunity Fund LPA demonstrates that the Opportunity Fund – *not Cummins* – paid Tremont the management and other fees earned pursuant to its contracts with the Fund.[15]  Plaintiff may not assert an unjust enrichment claim to recover fees that the Fund, a third party, paid to Tremont.  See IDT Corp., 907 N.E.2d at 274; Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A., 03 Civ. 1537, 2003 WL 23018888, at *17-18 (S.D.N.Y. Dec. 22, 2003) (dismissing unjust enrichment claim where management fees plaintiff sought to recover were paid by the structured finance funds defendant managed and not by plaintiff), aff'd, 110 F. App'x 191 (2d Cir. 2004).  Consequently, Count IV of the Complaint should be dismissed.

### D.      The Complaint Fails To State a Claim of Breach of Fiduciary Duty

To state a claim of breach of fiduciary duty, a plaintiff must adequately allege "the existence of a fiduciary duty between the parties and a breach of that duty by the defendant." Thermal Imaging, Inc. v. Sandgrain Sec., Inc., 158 F. Supp. 2d 335, 343 (S.D.N.Y. 2001).  Here, the Complaint nowhere alleges facts sufficient to show that Tremont owed a fiduciary duty to Cummins.

---

[15]      (See Opportunity Fund LPA (Trans. Decl. Ex. B) § 3.07(a) ("As compensation for its services to the [Opportunity Fund], the [Fund] shall pay to [Tremont] an annual asset-based management fee[.]"); see also Opportunity Fund PPM (Trans. Decl. Ex. A) at 16-17.)

A fiduciary duty may be found "'when one person is under a duty to act for or to give advice for the benefit of another [upon matters] within the scope of the relation.'" Banco Espirito Santo, 2003 WL 23018888, at *15 (citation omitted).  In determining whether such a relationship exists, "'New York courts typically focus on whether one person has reposed trust or confidence in another who thereby gains a resulting superiority or influence over the first.'" Thermal Imaging, 158 F. Supp. 2d at 343 (citation omitted).  Even then, a fiduciary duty will arise only if the purported fiduciary voluntarily accepts the entrustment of confidence.  See NFS Servs., Inc. v. Chem. Bank, 89 Civ. 585, 1990 WL 145152, at *3-4 (S.D.N.Y. Sept. 26, 1990).  Thus, even if "'plaintiffs may have regarded defendants as their fiduciaries[, that] is not enough to establish a fiduciary duty when that duty otherwise would not exist.'" Renner v. Chase Manhattan Bank, 98 Civ. 926, 2000 WL 781081, at *20 (S.D.N.Y. June 16, 2000) (citation omitted), aff'd, 85 F. App'x 782 (2d Cir. 2004).

Here, the Complaint alleges no relationship of any kind between Tremont and Cummins, much less a relationship of trust and confidence voluntarily accepted by Tremont.[16]  The only "relationship" alleged by Cummins in the Complaint is the contractual relationship between Cummins and the Carrier pursuant to the terms of the Policies.  As a matter of law, that relationship fails to establish a fiduciary relationship between Tremont and plaintiff.  See, e.g.,

---

[16]   The Complaint alleges that, as the Fund's general partner, TPI was "'accountable to the Partnership as a fiduciary'" (Compl. ¶ 53) and breached "its expressly acknowledged fiduciary duties to the Partnership" (id. ¶ 54) by, among other things, failing to:  (i) "select an appropriate investment manager [for the Opportunity Fund] under the criteria outlined in the offering materials" (id. ¶ 98); (ii) "perform any due diligence prior to investing the [Opportunity Fund's] . . . assets with Madoff and/or BMIS" (id.); and (iii) "consistently monitor the status of the [Opportunity] Fund's investments" (id.).  These allegations fail to state a claim for breach of fiduciary duty because even if Tremont owed and/or breached any of the alleged duties, the duties were owed, if at all, solely to the Fund and its limited partners, *not* to Cummins.  See, e.g., U-H Acquisition Co. v. Barbo, Civ. A. No. 13,279, 1994 WL 34688, at *5 (Del. Ch. Jan. 31, 1994) (applying Delaware law and dismissing breach of fiduciary duty claim against general partners on ground that plaintiff, a non-limited partner, "could not be owed any fiduciary duty by the general partners").

<u>Wilmington Trust Co. v. Metro. Life Ins. Co.</u>, 0600242/08, 2008 WL 3819698 (Sup. Ct. N.Y. County Aug. 4, 2008) (dismissing breach of fiduciary duty claim asserted against a sub-adviser to an insurance carrier's separate account).[17]

E.     **The Complaint Fails To State a Claim Under New York General Business Law § 349**

All of Cummins' claims arise out of investments made through the Policies it purchased from the Carrier.  GBL § 349, however, has no application to complex investment products, such as the Policies, which enable policyholders to direct the investment of policy premiums. Accordingly, the Complaint states no claim under GBL § 349 and should be dismissed as against Tremont.  <u>See</u> <u>N.Y. Univ. v. Cont'l Ins. Co.</u>, 662 N.E.2d 763, 770-71 (N.Y. 1995) (holding that "complex insurance coverage" does not fall under GBL § 349 because it is "not the 'modest' type of transaction the statute was primarily intended to reach"); <u>Flax v. Lincoln Nat'l Life Ins. Co.</u>, 864 N.Y.S.2d 559, 561-62 (N.Y. App. Div. 2d Dep't 2008) (dismissing GBL § 349 claim based on flexible premium life insurance policy because plaintiff's allegations were "insufficient to show that the defendants engaged in consumer oriented conduct").

---

[17]   <u>See also</u> <u>Suthers v. Amgen Inc.</u>, 441 F. Supp. 2d 478, 487 (S.D.N.Y. 2006) ("New York courts have not hesitated to find fiduciary duty claims deficient when a plaintiff has not pled or proved facts demonstrating a fiduciary duty or 'any relationship approaching privity.'" (citation omitted)); <u>Ernest Lawrence Grp. v. Mktg. the Ams., Inc.</u>, 03 Civ. 1510, 2005 WL 2811781, at *9 (S.D.N.Y. Oct. 27, 2005) ("New York has restricted the circumstances permitting a finding of a fiduciary duty.  At a minimum, a plaintiff must plead or prove facts demonstrating a 'relationship approaching privity.'" (citation omitted)).

## CONCLUSION

For the reasons stated, the Tremont Defendants' motion to dismiss should be granted in all respects.

Dated:  New York, New York
        January 31, 2012

Respectfully submitted,

/s/ Seth M. Schwartz
Seth M. Schwartz (Seth.Schwartz@Skadden.com)
Jason C. Vigna (Jason.Vigna@Skadden.com)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Defendants
  Tremont Group Holdings, Inc.,
  Tremont Partners, Inc.,
  Tremont (Bermuda) Limited,
  Tremont Capital Management, Inc. and
  Rye Investment Management

17