UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

| | | |
|---|---|---|
| IN RE TREMONT SECURITIES LAW, | : | |
| STATE LAW AND INSURANCE | : | Master File No. |
| LITIGATION | : | 08 Civ. 11117 (TPG) |

------------------------------------------------------------

| | | |
|---|---|---|
| This Document Relates to: | : | |
| State Law Action, 08 Civ. 11183 (TPG), | : | |
| Specifically to: | : | |
| | : | |
| LAKEVIEW INVESTMENT, LP, on Behalf of | : | 11 Civ. 1851 (TPG) |
| Itself and All Other Similarly Situated Individuals | : | |
| and Entities Located in California, | : | ECF Case |
| | : | Electronically Filed |
| Plaintiff, | : | |
| | : | |
| - against - | : | |
| | : | |
| ROBERT SCHULMAN, et al., | : | |
| | : | |
| Defendants. | : | |

------------------------------------------------------------x

## DEFENDANT OPPENHEIMER ACQUISITION CORP.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

William K. Dodds
David A. Kotler
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
Tel.: (212) 698-3500
Fax: (212) 698-3599

*Attorneys for Defendant Oppenheimer Acquisition Corp.*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF RELEVANT FACTS .................................................................... 2

ARGUMENT ............................................................................................................. 5

I.       THIS COURT LACKS PERSONAL JURISDICTION OVER NON-RESIDENT
         DEFENDANT OAC ....................................................................................... 5

         A.       OAC Is Not Subject To General Jurisdiction In California ...................... 5

         B.       OAC Is Not Subject To Specific Jurisdiction In California ..................... 6

         1.       OAC Did Not **"Purposefully Direct"** Any Activities At California .......... 7

         2.       Plaintiff's Claims Do Not Arise From OAC's Forum-Related Activities
                  (Because It Has None) ............................................................... 9

         C.       Plaintiff Cannot Impute Tremont's In-Forum Conduct To OAC .............. 9

II.      PLAINTIFF FAILS TO STATE A CONTROL PERSON CLAIM AGAINST OAC..... 10

         A.       Plaintiff Fails To Adequately Allege That OAC Controlled Tremont ..... 11

         1.       Allegations Of A Parent/Subsidiary Relationship Are Legally
                  Insufficient ................................................................................ 12

         2.       The Mere Pleading Of Common Directors Is Inadequate ...................... 13

         3.       Plaintiff's Conclusory Allegations That OAC Supervised And Controlled
                  Tremont Are Insufficient ............................................................ 14

CONCLUSION .......................................................................................................... 16

i

## TABLE OF AUTHORITIES

*American Protein Corp. v. AB Volvo*,
    844 F.2d 56 (2d. Cir. 1988)..................................................................13

*Batwin v. Occam Networks, Inc.*,
    2008 WL 2676364 (C.D. Cal. July 1, 2008)......................................14

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................10

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)..............................................................................9

*Burgess v. Premier Corp.*,
    727 F.2d 826 (9th Cir. 1984) .............................................................15

*Calder v. Jones*,
    465 U.S. 783 (1984)..............................................................................7

*ChemRisk, LLC v. Chappel*,
    2011 WL 1807436 (N.D. Cal. May 12, 2011) .................................8, 9

*City of Westland Police & Fire Ret. Sys. v. Sonic Solutions*,
    2009 WL 942182 (N.D. Cal. Apr. 6, 2009) ....................................11, 12

*CLAL Fin. Batucha Inv. Mgmt., Ltd. v. Perrigo Co.*,
    09 Civ. 2255, 2010 WL 4177103 (S.D.N.Y. Oct. 7, 2010) ..................15

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001) ...............................................................9

*F. Hoffman-La Roche, Inc. v. Superior Court*,
    130 Cal. App. 4th 782 (6th Dist. 2005).................................................10

*Garcia v. Bryant, Inc.*,
    2011 WL 5241177 (E.D. Cal. Oct. 31, 2011) ........................................7

*Graham v. Barriger*,
    699 F. Supp. 2d 612 (S.D.N.Y. 2009)...................................................10

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984).............................................................................6

*Hellum v. Breyer*,
    194 Cal. App. 4th 1300 (1st Dist. 2011)........................................11, 15

*Howard v. Hui,*
   2001 WL 1159780 (N.D. Cal. Sept. 24, 2001) ...................................................................13

*In re Agent Orange Prod. Liab. Litig. MDL No. 381,*
   818 F.2d 145 (2d Cir. 1987).................................................................................................5

*In re Bare Escentuals, Inc. Sec. Litig.,*
   745 F. Supp. 2d 1052 (N.D. Cal. 2010) ..............................................................................14

*In re Calpine Corp. Sec. Litig.,*
   288 F. Supp. 2d 1054 (N.D. Cal. 2003) ..............................................................................15

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
   308 F. Supp. 2d 249 (S.D.N.Y. 2004)..................................................................................14

*In re Maxim Integrated Prod., Inc. Deriv. Litig.,*
   574 F. Supp. 2d 1046 (N.D. Cal. 2008) ..............................................................................15

*In re Silicon Storage Tech., Inc. Sec. Litig.,*
   2006 WL 648683 (N. D. Cal. Mar. 10, 2006).....................................................................15

*In re Ski Train Fire in Kaprun, Austria on November 11, 2002,*
   230 F. Supp. 2d 392 (S.D.N.Y. 2002)...................................................................................5

*In re Splash Tech. Holdings, Inc. Sec. Litig.,*
   2000 WL 1727405 (N.D. Cal. Sept. 29, 2000) .............................................................11, 13

*In re Sterling Foster & Co. Sec. Litig.,*
   222 F. Supp. 2d 289 (E.D.N.Y. 2002) ..................................................................................5

*In re WorldCom, Inc. Sec. Litig.,*
   02 Civ. 3288, 2004 WL 1097786 (S.D.N.Y. May 18, 2004)...............................................12

*Kainos Labs., Inc. v. Beacon Diagnostics, Inc.,*
   1998 WL 2016634 (N.D. Cal. Sept. 14, 1998) ...............................................................11, 14

*Knollenberg v. Harmonic, Inc.,*
   152 F. App'x 674 (9th Cir. 2005) ........................................................................................15

*M2 Software Inc. v. M2 Commc'ns, L.L.C.,*
   149 F. App'x 612 (9th Cir. 2005) ..........................................................................................8

*Maplebrook Townhomes LLC v. Greenbank,*
   2010 WL 4704472 (N.D. Cal. Nov. 12, 2010) ......................................................................5

*Martinez v. City of New York,*
   06 Civ. 1476, 2008 WL 681465 (S.D.N.Y. Mar. 11, 2008), *aff'd,*
   338 F. App'x 71 (2d Cir. 2009) ...........................................................................................10

*New York City Employees' Ret. Sys. v. Berry*,
    616 F. Supp. 2d 987 (N.D. Cal. 2009) ...................................................................15

*One True Vine, LLC v. Liquid Brands LLC*,
    2011 WL 2148933 (N.D. Cal. May 31, 2011) ..........................................................8

*Plumbers and Pipefitters Local Union No. 630 Pension –*
    *Annuity Trust Fund v. Arbitron Inc.*,
    741 F. Supp. 2d 474 (S.D.N.Y 2010)......................................................................10

*Rubke v. Capitol Bancorp Ltd.*,
    460 F. Supp. 2d 1124 (N.D. Cal. 2006), *aff'd,* 551 F.3d 1156 (9th Cir. 2009) ......................15

*S.H. Silver Co. v. David Morris Int'l*,
    2008 WL 4058364 (N.D. Cal. Aug. 28, 2008) ........................................................9

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ..............................................................................5, 7

*Sedona Corp. v. Ladenburg Thalmann & Co.*,
    03 Civ. 3120, 2005 WL 1902780 (S.D.N.Y. Aug. 9, 2005) ...................................12

*Selhorst v. Alward Fisheries, LLC*,
    2011 WL 4974568 (N.D. Cal. Oct. 19, 2011)..........................................................6

*Silicon Econ., Inc. v. Fin. Accounting Found.*,
    2010 WL 4942468 (N.D. Cal. Nov. 24, 2010) ........................................................7

*United States v. Bestfoods*,
    524 U.S. 51 (1998)...........................................................................................2, 12

*Zero Motorcycles, Inc. v. Pirelli Tyre S.p.A.*,
    802 F. Supp. 2d 1078 (N.D. Cal. 2011) .................................................................10

### STATUTES/RULES

15 U.S.C. § 77o.................................................................................................................11

15 U.S.C. § 78t(a) .............................................................................................................11

15 U.S.C. § 80b-3 .............................................................................................................12

15 U.S.C. § 80b-4 .............................................................................................................12

Fed. R. Civ. P. 12(b)(2).......................................................................................................5

Fed. R. Civ. P. 12(b)(6).....................................................................................................10

Cal. Civ. Pro. Code § 410.10 ..............................................................................................5

Cal. Corp. Code § 25401..........................................................................................11

Cal. Corp. Code § 25501..........................................................................................11

Cal. Corp. Code § 25504...............................................................................11, 12, 14

**OTHER AUTHORITIES**

Form ADV, Uniform Application for Investment Adviser Registration, Item 10,
    Schedules A and B, *available at* http://www.sec.gov/about/forms/formadv.pdf. ...................12

Defendant Oppenheimer Acquisition Corp. ("OAC") respectfully submits this memorandum of law in support of its motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) on the grounds that OAC is not subject to jurisdiction in the state of California and because the Complaint fails to state any legally sustainable cause of action against OAC.

## PRELIMINARY STATEMENT

Since filing its Complaint more than one year ago, Plaintiff has had the opportunity to conduct an extensive factual investigation, including monitoring and analyzing many other highly publicized Madoff-related actions.  Plaintiff also elected not to avail itself of the opportunity to file an amended complaint against OAC (or any of the named defendants). Hence, Plaintiff is proceeding against OAC on its original threadbare allegations, rendered on information and belief, that plead nothing more than OAC's status as Tremont Group Holdings, Inc.'s ("Tremont Group") parent company.

This Complaint as against OAC should be dismissed for two straightforward reasons. First, Plaintiff alleges no basis on which OAC, a holding company with no California contacts, is subject to the jurisdiction of a California court, where this case would be tried if the Complaint could survive OAC's motion to dismiss.

Second, the sole claims against OAC -- for control person liability under California blue sky statutes -- fail to make even a single well-pled allegation that OAC "controlled" any of Tremont's purported underlying securities law violations.  Instead, Plaintiff premises its control person claims on nothing more than common examples of a typical parent/subsidiary relationship between OAC and Tremont Group.

These few conclusory assertions directed at OAC are insufficient to overcome the "general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).  Moreover, Plaintiff's self-serving assumption that OAC *must have* known about the Madoff Ponzi scheme is as unsupported as it is illogical.  The speculation that OAC deliberately invested $145 million into a fraudulent operation whose success allegedly depended on the indefinite success of a brazen Ponzi scheme is inherently implausible.  To the contrary, the only fair inference from these bare bones facts is that a respected -- or for that matter, self-interested -- financial institution such as OAC would not and did not knowingly acquire an asset management firm whose success rested on the perpetuation of an unprecedented fraud.[1]

## STATEMENT OF RELEVANT FACTS

OAC, a Delaware corporation with its principal place of business in New York (Compl. ¶ 16), is a long-established holding company that conducts no business other than owning the stock of two other entities: non-party OppenheimerFunds, Inc. ("OFI") and defendant Tremont Group.  Declaration of Arthur S. Gabinet ("Gabinet Decl.") ¶ 3.  Tremont Group is the parent of defendant Tremont Partners, Inc. ("Tremont Partners"), the general partner of the limited partnerships in which Plaintiff invested: the Rye Select Broad Market XL Fund, L.P. (the "XL

---

[1]      OAC hereby also incorporates the Tremont Defendants' and Massachusetts Mutual Life Insurance Company's arguments that Plaintiff's claims are barred by Securities Litigation Uniform Standards Act of 1998 and that the sole remedy available to Plaintiff, rescission, only may be obtained from a "seller" of securities and is not available from a control person.  *See* The Tremont Defendants' Memorandum Of Law In Support Of Their Motion For Judgment On The Pleadings at Points I. and III.A.; Memorandum Of Law In Support Of Massachusetts Mutual Life Insurance Company's Motion For Judgment On The Pleadings at 5-10.

Fund") and the Rye Select Broad Market Fund, L.P. (the "Market Fund," collectively, the "Funds"). Compl. ¶¶ 1, 11-12.

As the Complaint makes clear, Tremont Partners independently operated the Funds. *Id.* ¶ 48. The XL Fund, in which Plaintiff purchased limited partner interests (*id.* ¶ 10), was not even invested with Madoff. *Id.* ¶ 15. Rather, the XL Fund entered into swap transactions with other non-parties, and XL Fund investors received a levered return based on the returns achieved by the Market Fund through Madoff. *Id.*

Plaintiff is a Delaware incorporated hedge fund with no alleged or actual relationship with OAC. Compl. ¶ 10. Plaintiff does not allege -- and in fact did not ever have -- any interaction with OAC of any kind. Gabinet Decl. ¶ 10. Plaintiff's allegations involving OAC are thus limited to the following: (1) OAC acquired Tremont Advisors, Inc. (n/k/a Tremont Group) in 2001 (Compl. ¶ 36); (2) in the course of due diligence prior to the closing of that transaction, OAC received information regarding Tremont's operations, including Tremont's relationship with Madoff (*id.* ¶ 37); (3) after the acquisition, OAC was represented on Tremont Group's board of directors (*id.* ¶ 39); and (4) Tremont properly, and as required by law, disclosed OAC's ownership to the SEC (*id.* ¶ 17) and in its privacy policy. *Id.* ¶ 40.

Plaintiff does not (because it cannot) allege that OAC played any role in the day-to-day operations of Tremont in any respect, let alone with respect to its investment relationship with Madoff. Gabinet Decl. ¶ 11. Plaintiff also does not (because it cannot) allege that OAC played any role in any investment-related activities carried out by Tremont Partners with respect to any investor's investments in the Funds. *Id.* ¶ 12. Plaintiff does not allege that OAC: (1) established, reviewed, or in any way participated in the investment strategy for either of the Funds; (2) was represented on either Funds' board; (3) participated in Tremont's due diligence or in the

selection of Madoff to manage the Market Fund; (4) participated in monitoring Madoff's performance as manager of the Market Fund; (5) prepared or reviewed any offering materials for either of the Funds; or (6) entered into any contract with Plaintiff or any swap counterparty with respect to the Funds. *Id.*

Plaintiff's lone putatively substantive allegation against OAC is that OAC "supervised and exercised effective control" over Tremont's investment products, due diligence and client privacy policies, and the preparation and dissemination of Tremont's financial statements. Compl. ¶ 39. Importantly, this vague and conclusory allegation does not purport to in any way allege that this "effective control" related to any due diligence, policies or financial statements in connection with Plaintiff's investments or Madoff.

Given that OAC is strictly a parent holding company, OAC has no offices or employees, and holds no licenses in California. Gabinet Decl. ¶ 4. OAC does no business in California and is not qualified as a foreign corporation in California. *Id.* ¶ 5. OAC does not rent or own any real property in California, nor does it have any bank accounts in California. *Id.* ¶ 6. OAC has never promoted, marketed, advertised, or sold any products in California (or for that matter, anywhere else). *Id.* ¶ 7. OAC has never directed Tremont or either of its subsidiaries to promote, market, advertise, or sell any products in California, or anywhere else. *Id.* ¶ 8. OAC has no registered agent in California. *Id.* ¶ 9.

Plaintiff does not allege that it had any contact with OAC in California, or elsewhere. Plaintiff's inability to allege any contact with OAC is unsurprising since OAC -- as a holding company -- does not market or solicit potential investors on behalf of itself or any other person or entity, including its parent or Tremont. *Id.* ¶ 14. OAC never participated in any marketing of

Tremont products to California residents, and Plaintiff does not even allege that it was aware of, relied upon, or was in any way affected by OAC's ownership of Tremont Group.  *Id.* ¶ 15.

## <u>ARGUMENT</u>

## I.   THIS COURT LACKS PERSONAL JURISDICTION OVER NON-RESIDENT DEFENDANT OAC

Because this action was transferred from the United States District Court for the Northern District of California and consolidated for pretrial purposes pursuant to an MDL order (Consolidation Order, 11 Civ. 1851, ECF No. 25), this Court, as a transferee court, "can exercise personal jurisdiction [over OAC] only to the same extent as the transferor court could."  *In re Sterling Foster & Co. Sec. Litig.*, 222 F. Supp. 2d 289, 300 (E.D.N.Y. 2002); *accord In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145, 163 (2d Cir. 1987).  In so doing, this Court must apply California law in determining whether Plaintiff has adequately pled jurisdiction over OAC.  *In re Ski Train Fire in Kaprun, Austria on November 11, 2002*, 230 F. Supp. 2d 392, 399 (S.D.N.Y. 2002).

Plaintiff does not, and cannot, satisfy the standards for general or specific jurisdiction under either the California long-arm statute or the U.S. Constitution, and therefore OAC should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).  *See* Cal. Civ. Pro. Code § 410.10; *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004) ("Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses are the same.").

### A.   OAC Is Not Subject To General Jurisdiction In California

This Court cannot exercise general jurisdiction over OAC because Plaintiff fails to meet its burden of establishing that OAC "engage[s] in continuous and systematic general business contacts that approximate physical presence in [California]."  *See, e.g.*, *Maplebrook Townhomes*

*LLC v. Greenbank*, 2010 WL 4704472, at *3 (N.D. Cal. Nov. 12, 2010) (granting motion to dismiss because plaintiff unable to meet the applicable "exacting standard" for general jurisdiction).

As demonstrated above, OAC is a non-resident holding company that conducts no business, and has no presence in California.  Indeed, as set forth in the accompanying Gabinet Declaration, OAC (1) does not have any offices or employees in California, (2) does not do business and is not qualified as a foreign corporation in California, (3) does not hold any licenses in California, (4) does not rent or own any real property in California, (5) does not have any bank accounts in California, (6) never has promoted, marketed, advertised, or sold any products in California, and (7) does not have a registered agent in California.  On these indisputable facts there is no basis for a California court to exercise general jurisdiction over OAC.  *Selhorst v. Alward Fisheries, LLC*, 2011 WL 4974568, at *2-3 (N.D. Cal. Oct. 19, 2011) (general jurisdiction absent where defendants "do not have any offices or bank accounts in California, own any California business licenses, pay California taxes, own California real estate, or have a registered agent" in California).

**B.      OAC Is Not Subject To Specific Jurisdiction In California**

In the absence of general jurisdiction, this Court must dismiss OAC unless specific jurisdiction exists.  When determining whether specific jurisdiction exists, courts are to consider the "relationship among the defendant, the forum, and the litigation."  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).  Plaintiff cannot satisfy any of the required three elements to establish specific jurisdiction: (1) that OAC purposefully directed its activities at California residents or purposefully availed itself of the privilege of doing business in California; (2) the claim arises out of or relates to OAC's California activities; and (3) assertion

of jurisdiction is reasonable and fair.  *Silicon Econ., Inc. v. Fin. Accounting Found.*, 2010 WL

4942468, at *4 (N.D. Cal. Nov. 24, 2010) (specific jurisdiction absent because plaintiff failed to

allege that defendant engaged in acts "expressly aimed to harm [plaintiff] in California").

### 1.    OAC Did Not "Purposefully Direct" Any Activities At California

Plaintiff does not allege that OAC "purposefully directed" any activities at California, let

alone that it did so in connection with Plaintiff's claims.  Indeed, Plaintiff fails to meet all three

elements of the *Calder* "effects test,"[2]  *i.e.*, that OAC: "(1) committed an intentional act, (2)

expressly aimed at [California], (3) causing harm that [OAC] knows is likely to be suffered in

[California]."  *Schwarzenegger*, 374 F.3d at 803.

First, because Plaintiff cannot allege that OAC committed an "intentional act" in

California, it attempts to conflate OAC and MassMutual by alleging that "[b]oth … solicit clients

in Los Angeles County by directing them to their numerous broker/dealers and other agents and

representatives . . . ."  Compl. ¶ 16.  OAC is a holding company with no products to offer,

"clients" to solicit or "broker/dealers" to "direct" anyone to.  *See* Gabinet Decl. ¶¶ 3-4; *see*

*Garcia v. Bryant, Inc.*, 2011 WL 5241177, at *5 (E.D. Cal. Oct. 31, 2011) (specific jurisdiction

absent over "holding company that does not engage in any business operations").  Plaintiff's

conclusory, and demonstrably false, allegation fails to establish that OAC itself committed an

"intentional act" in California.

Similarly, Plaintiff cannot satisfy the "intentional act" requirement by vaguely alleging

that OAC "directed a defendant to conduct business in and maintain operations in California."

---

[2]    Where, as here, Plaintiff has asserted tort claims (as opposed to contract claims), the "purposeful direction" prong of the specific jurisdiction standard is analyzed under the "effects" test set forth in *Calder v. Jones*, 465 U.S. 783, 789-90 (1984).  *See Schwarzenegger*, 374 F.3d at 802 ("A purposeful availment analysis is most often used in suits sounding in contract.  A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort.").

Compl. ¶ 27.  Plaintiff does not allege that OAC "directed" some other defendant to conduct business in California in connection with Plaintiff's investments in the Funds, the Tremont Partners/Madoff relationship at issue, or anything else in connection with this case.  *See M2 Software Inc. v. M2 Commc'ns, L.L.C.*, 149 F. App'x 612 (9th Cir. 2005) (holding that mere stock ownership is not an "act" for purposes of establishing jurisdiction).  And, once again, the allegation is simply not true.  OAC has not disseminated any offering materials, financial disclosures, audit materials, or any other written materials to Plaintiff or any other California resident, and was in no way involved in Tremont's California solicitation of business for the Funds or operations there.  *See* Gabinet Decl. ¶ 13.

Second, Plaintiff does not even attempt to allege that OAC "expressly aimed" any conduct at California.  OAC did not direct *any* conduct (intentionally or otherwise) at California, and Plaintiff does not allege otherwise.  Plaintiff does not (and cannot) allege that OAC ever signed any document, approved any decision, or otherwise performed any act that could even theoretically impact California in any way.  *See ChemRisk, LLC v. Chappel*, 2011 WL 1807436, at *6 (N.D. Cal. May 12, 2011) (dismissing for lack of specific jurisdiction where "there is no allegation or evidence that Defendants engaged in any activities or transacted business aimed at or within California").

Third, Plaintiff fails to allege that OAC "caused harm that it knew was likely to be suffered in the forum."  *One True Vine, LLC v. Liquid Brands LLC*, 2011 WL 2148933, at **1, 7 (N.D. Cal. May 31, 2011) (dismissing for failure to satisfy "effects test" where defendant did not "knowingly sell [its product] in California" and was "unaware that Plaintiff resided in California").  OAC never sold any of the Funds' shares, or participated in the solicitation of any Fund investors in California.  *See* Gabinet Decl. ¶¶ 7, 14, 15.  OAC never had any contact with

8

Plaintiff in California (or elsewhere), and the Complaint alleges no facts to the contrary. *Id*. ¶ 10.

Accordingly, Plaintiff cannot meet its burden of showing that OAC "purposefully directed" any act at California.

### 2. Plaintiff's Claims Do Not Arise From OAC's Forum-Related Activities (Because It Has None)

Plaintiff's inability to allege any California conduct by OAC necessarily precludes it from adequately pleading that its claims "arise from" OAC's in-forum activities.  OAC did not reach out to California on its own initiative or otherwise to create a relationship with Plaintiff or, for that matter, with anyone else.  Plaintiff therefore cannot possibly argue that OAC's conduct in California is the "but for" cause of its injury. *See Doe v. Unocal Corp.*, 248 F.3d 915, 924-25 (9th Cir. 2001) (declining to assert specific personal jurisdiction where allegations insufficient to establish a but-for relationship between defendant's forum-based contact and plaintiff's claims); *ChemRisk*, 2011 WL 1807436, at *6 (same).[3]

### C. Plaintiff Cannot Impute Tremont's In-Forum Conduct To OAC

Plaintiff's suggestion that OAC should be subject to jurisdiction on the basis of Tremont's alleged conduct within California is also unavailing.  Compl. ¶ 28.  As a matter of law, there is no basis for Tremont's conduct to establish jurisdiction over OAC where none otherwise would exist. *See, e.g., Doe*, 248 F.3d at 927-30 (declining to impute subsidiary's

---

[3]     Moreover, even if Plaintiff could meet its burden of showing OAC's "purposeful direction" and that its claims arose out of OAC's California-related activities, jurisdiction would still be improper because OAC has satisfied its burden of demonstrating that the exercise of jurisdiction over OAC would still not be reasonable or "comport with traditional notions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-78 (1985); *see also S.H. Silver Co. v. David Morris Int'l*, 2008 WL 4058364, at *6 (N.D. Cal. Aug. 28, 2008) (finding "exercising specific personal jurisdiction over [the defendant] would be unreasonable" where defendant's "interjection into California was minimal" and the burden on defendant of defending in California was great).

conduct to parent because no evidence that but for subsidiary's in-forum conduct the parent

"would conduct and control those operations"); *Zero Motorcycles, Inc. v. Pirelli Tyre S.p.A.*, 802

F. Supp. 2d 1078, 1094 (N.D. Cal. 2011) (declining to impute contacts from subsidiary to parent

holding company where plaintiff's "conclusory assertions" failed to show that parent holding

company "exercise[s] control over its subsidiaries so as to render them a mere instrumentality of

[d]efendants").  Indeed, California law is "firm . . . that neither ownership nor control of a

subsidiary by a foreign parent corporation, without more, subjects the parent to the jurisdiction of

the state where the subsidiary does business."  *F. Hoffman-La Roche, Inc. v. Superior Court*, 130

Cal. App. 4th 782, 797 (6th Dist. 2005).

## II.    PLAINTIFF FAILS TO STATE A CONTROL PERSON CLAIM AGAINST OAC

Pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court should dismiss the

Complaint for failing to plead "enough facts to state a claim to relief that is plausible on its face."

*Martinez v. City of New York*, 06 Civ. 1476, 2008 WL 681465, at *3 (S.D.N.Y. Mar. 11, 2008)

(Griesa, J.) (dismissing complaint) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)), *aff'd*, 338 F. App'x 71 (2d Cir. 2009).

Conclusions are not facts, and therefore "the tenet that a court must accept as true all of

the allegations contained in the complaint is inapplicable to legal conclusions."  *Plumbers and

Pipefitters Local Union No. 630 Pension – Annuity Trust Fund v. Arbitron Inc.*, 741 F. Supp. 2d

474, 478 (S.D.N.Y 2010) (dismissing control person claim).  Complaints -- such as Plaintiff's --

that merely plead "labels and conclusions[] and a formulaic recitation of the elements of a cause

of action" do not suffice.  *Twombly*, 550 U.S. at 555; *see Graham v. Barriger*, 699 F. Supp. 2d

612, 634 (S.D.N.Y. 2009) (dismissing claim because "the Complaint's control person allegations

are limited to legal conclusions . . . and therefore are not entitled to the presumption of truth").

10

Plaintiff fails to plead adequately that OAC had the power to influence or control Tremont, as required to state a claim under California Corporations Code Section 25504.[4]   *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 2000 WL 1727405, at *15 (N.D. Cal. Sept. 29, 2000).[5]

### A.    Plaintiff Fails To Adequately Allege That OAC Controlled Tremont

Plaintiff's control person claims fail to allege that OAC possessed, directly or indirectly, "the power to direct or cause the direction of the management and policies of [Tremont], whether through the ownership of voting securities, by contract, or otherwise."[6]  *Id.*  Further, Plaintiff does not and cannot allege, as it must to survive this motion, that OAC controlled "the day-to-day affairs of" Tremont and had the "power to control [Tremont's] corporate actions."  *City of Westland Police & Fire Ret. Sys. v. Sonic Solutions*, 2009 WL 942182, at *10 (N.D. Cal. Apr. 6, 2009) (dismissing control person claim).  The unremarkable characterization of OAC's parent/subsidiary relationship with Tremont is insufficient to adequately plead control.  *Id.* at *11 ("bare legal conclusions devoid of any factual underpinnings" insufficient to state a control

---

[4]    The statute provides in relevant part, "[e]very person who directly or indirectly controls a person liable under Section 25501 or 25503 . . . [is] also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist."

[5]    Section 25504 "was modeled on the federal statutes governing control person liability," but also provides "expanded liability to include certain persons based on their relationships or connections to the corporation."  *Hellum v. Breyer*, 194 Cal. App. 4th 1300, 1312 (1st Dist. 2011).  Although the California statute provides for different types of secondary liability, California courts look to Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a), and Section 15 of the Securities Act of 1933, 15 U.S.C. § 77o, when analyzing Section 25504 claims against a party that "directly or indirectly controls" a primary violation because "the control person statute under California law is substantially the same as the federal statute."  *See Kainos Labs., Inc. v. Beacon Diagnostics, Inc.*, 1998 WL 2016634, at *14 (N.D. Cal. Sept. 14, 1998).

[6]    Plaintiff's control person claims against OAC fail for the additional reason that Tremont did not offer or sell securities to Plaintiff, as required for primary liability under the California blue sky laws. Cal. Corp. Code §§ 25401, 25501.  To the extent that Plaintiff intended to assert that OAC "controlled" the Funds' alleged securities violations, the Complaint contains no facts in support of such a woefully deficient claim.

person claim). The conclusory and inadequate nature of Plaintiff's control person allegations are underscored by the Complaint's resort to the characterization that OAC only "effectively" controlled the Tremont defendants.

### 1. Allegations Of A Parent/Subsidiary Relationship Are Legally Insufficient

The mere fact that OAC was Tremont Group's parent company does not suffice to plead the actual control required by Section 25504. *City of Westland Police*, 2009 WL 942182, at *11 (allegations that purported control person owned stock in the primary violator and "had the power and authority" to influence wrongful conduct insufficient to state control person claim); *see also In re WorldCom, Inc. Sec. Litig.*, 02 Civ. 3288, 2004 WL 1097786, at *3 (S.D.N.Y. May 18, 2004) (parent/subsidiary relationship insufficient to support a federal securities control person claim). That Tremont Partners -- accurately and as required by the federal securities laws[7] -- disclosed OAC's ownership in its SEC filings (Compl. ¶ 17) does not in any way infer OAC controlled Tremont Partners' day-to-day affairs, let alone the Tremont Partners/Madoff relationship at the heart of Plaintiff's Complaint. *See Sedona Corp. v. Ladenburg Thalmann & Co.,* 03 Civ. 3120, 2005 WL 1902780, at *16 (S.D.N.Y. Aug. 9, 2005) (allegation that "publicly-filed documents with the SEC indicate that [primary violators] are wholly-owned subsidiaries of [defendant]" insufficient to state control person claim). Indeed, to allow a control person claim to survive merely on the basis of a parent/subsidiary relationship would violate the "general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *Bestfoods*, 524 U.S. at 61.

---

[7]     *See* 15 U.S.C. § 80b-3, 80b-4; Form ADV, Uniform Application for Investment Adviser Registration, Item 10, Schedules A and B, *available at* http://www.sec.gov/about/forms/formadv.pdf.

### 2.     The Mere Pleading Of Common Directors Is Inadequate

Likewise, neither Plaintiff's contention that OAC was represented on Tremont Group's board, nor its conclusory and vague assertion of "overlap in executive officer and directors between [OAC], MassMutual, and Tremont," (Compl. ¶¶ 39, 63) establishes "control." *See Howard v. Hui*, 2001 WL 1159780, at *3 (N.D. Cal. Sept. 24, 2001) (dismissing control person claim based on allegations of overlapping officers and directors). In fact, "it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." *American Protein Corp. v. AB Volvo*, 844 F.2d 56, 57 (2d. Cir. 1988); *In re Splash Tech.*, 2000 WL 1727405, at *15 (dismissing control person claim alleging defendant's CEO was a director of primary violator and that primary violator was an "operating division" of defendant).

Tellingly, Plaintiff asserts direct claims against six Tremont representatives, alleging these individuals were, among other things, the "principal decision makers," "head of investment management," and/or "responsible for the partnerships' activities." Compl. ¶¶ 18-24. None of these individuals is alleged to have been an OAC officer, director, or employee. Plaintiff's patent inability to "allege that [OAC was] active in the day-to-day affairs" of Tremont Partners -- the entity "responsible for the day-to-day administration and operation" of the Funds (*id.* ¶ 48) -- is fatal to its claims. *Howard*, 2001 WL 1159780, at *3.

Even more to the point of this action, Plaintiff does not (because it cannot) allege that OAC, either directly or indirectly, was in any way involved in, or had control of: (1) Tremont's management of or investment strategy for the Funds; (2) the selection of Madoff to manage the Market Fund; (3) the due diligence or monitoring of Madoff's performance as manager of the Market Fund; (4) preparing or reviewing any offering materials for any of the Funds; or (5)

entering into any contract with respect to the Funds with Plaintiff, or the XL Fund and any swap counterparty.  The complete absence of any such allegations, especially given the high degree of public scrutiny over the Tremont/Madoff connection, is fatal to its claims against OAC.  *See Batwin v. Occam Networks, Inc.*, 2008 WL 2676364, at *25 (C.D. Cal. July 1, 2008) (dismissing control person claim where "allegations do not offer any indication that these defendants were involved in the day-to-day affairs" of the primary violator); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 308 F. Supp. 2d 249, 273 (S.D.N.Y. 2004) (allegations that defendant selected members of entity's board of directors insufficient to establish control).

### 3.    Plaintiff's Conclusory Allegations That OAC Supervised And Controlled Tremont Are Legally Insufficient

Plaintiff's evasive assertion that OAC "exercised effective control" over Tremont's investment products, due diligence and client privacy policies, and dissemination of financial statements (Compl. ¶ 39) is a conclusion -- made on unstated information and belief -- that lacks any factual basis in the Complaint (or in reality).  Plaintiff's claim should thus be dismissed for failure to provide the required well-pled and "specific facts establishing . . . a 'significant degree of day-to-day operational control'" over Tremont.  *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1081 (N.D. Cal. 2010) (dismissing complaint and finding that it is not enough that complaint "generally demonstrate that [a defendant] was a key player in the day-to-day operations of the company").

Plaintiff does not identify the "investment products" that OAC allegedly controlled or allege either that Plaintiff invested in such products or that the products were in any way related to Madoff.  *See Kainos Labs.*, 1998 WL 2016634, at *16 (dismissing § 25504 claim based on conclusory allegations that did not state "what involvement each of [the defendants] had . . . in the allegedly wrongful acts").  Moreover, Plaintiff makes no attempt to link the purported

14

marketing activities, policies, or financial statements that OAC "effectively controlled" to Plaintiff's investments, the Funds, or any other Madoff-related investment. *Burgess v. Premier Corp.*, 727 F.2d 826, 832 (9th Cir. 1984) (no liability where defendant "had nothing to do with the preparation of" the documents at issue). And, Plaintiff's allegation that OAC supervised and controlled the dissemination of Tremont's financial statements is equally irrelevant because OAC's involvement in the dissemination of *Tremont's* financial statements in no way supports an inference that OAC controlled the dissemination of any of the *Funds'* financial reports at issue, let alone the financial statements Plaintiff received. *In re In re Calpine Corp. Sec. Litig.*, 288 F. Supp. 2d 1054 (N.D. Cal. 2003) (dismissing control person claim where complaint does not allege defendants signed documents in question, or played a role in preparation of documents at issue).[8]

---

[8]        Although some recent California cases have found that culpable participation is a good faith defense and not a pleading requirement to a claim against a party that "directly or indirectly controls" a primary violator, *see, e.g., Hellum*, 194 Cal. App. 4th at 1317, other decisions agree with this Court's well-reasoned holding that "'culpable participation' is a pleading requirement to state a [control person] claim." *CLAL Fin. Batucha Inv. Mgmt., Ltd. v. Perrigo Co*., 09 Civ. 2255, 2010 WL 4177103, at *9 (S.D.N.Y. Oct. 7, 2010*)* (Griesa, J.); *see Knollenberg v. Harmonic, Inc.*, 152 Fed. App'x 674 (9th Cir. 2005); *New York City Employees' Ret. Sys. v. Berry*, 616 F. Supp. 2d 987, 1001-02 (N.D. Cal. 2009); *In re Maxim Integrated Prod., Inc. Deriv. Litig.,* 574 F. Supp. 2d 1046, 1067 (N.D. Cal. 2008); *Rubke v. Capitol Bancorp Ltd.*, 460 F. Supp. 2d 1124, 1131-32 (N.D. Cal. 2006), *aff'd,* 551 F.3d 1156 (9th Cir. 2009); *In re Silicon Storage Tech., Inc. Sec. Litig.*, 2006 WL 648683, at *3 (N. D. Cal. Mar. 10, 2006); *In re Calpine Corp.*, 288 F. Supp. 2d at 1081.

        To the extent that this Court determines that culpable participation is a required pleading element of Plaintiff's claims, its claims also should be dismissed for failure to even attempt to plead that OAC had any knowledge of Madoff's fraud or that OAC engaged in any act constituting participation in Tremont's alleged underlying securities law violations. *Burgess*, 727 F.2d at 832 (control person liability absent where defendant did not "possess the requisite scienter"); *New York City Employees'*, 616 F. Supp. 2d at 1002 (plaintiff must allege "actual participation" in primary violation to state control person claim).

## <u>CONCLUSION</u>

For the foregoing reasons, OAC respectfully requests this Court dismiss the claims against it for lack of personal jurisdiction, or in the alternative for failure to state a claim upon which relief can be granted.

Dated: New York, New York
        January 31, 2012

                     DECHERT LLP

                     By: <u>/s/ William K. Dodds</u>
                     William K. Dodds
                     william.dodds@dechert.com
                     David A. Kotler
                     david.kotler@dechert.com
                     1095 Avenue of the Americas
                     New York, New York  10036
                     Tel.: (212) 698-3500
                     Fax: (212) 698-3599

                     *Attorneys for Defendants Oppenheimer Acquisition Corp.*

14321768

16