UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE TREMONT SECURITIES LAW,
STATE LAW AND INSURANCE          :       Master File No. 08 Civ. 11117(TPG)
LITIGATION
_____
                                 :
This Document Relates to:
                                 :
ELENDOW FUND, LLC                        10 Civ. 9061 (TPG)
                                 :
        Plaintiff,               :       **Electronically Filed**
                                 :
    v.                           :
                                 :
RYE SELCT BROAD MARKET XL FUND,  :
L.P., RYE INVESTMENT MANAGEMENT, :
TREMONT CAPITAL MANAGEMENT INC., :
TREMONT GROUP HOLDINGS, INC,     :
TREMONT PARTNERS, INC.,          :
MASSACHUSETTS MUTUAL LIFE        :
INSURANCE CO., MASSMUTUAL        :
HOLDINGS LLC, OPPENHEIMER        :
ACQUISITION CORPORATION, RUPERT  :
ALLAN, JIM MITCHELL and ROBERT   :
SCHULMAN,                        :
                                 :
        Defendants.              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OF LAW IN SUPPORT OF THE MASSMUTUAL DEFENDANTS' MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM


**BINGHAM McCUTCHEN LLP**
399 Park Avenue
New York, NY 10022
Tel.: (212) 705-7000

*Attorneys for Defendant*
*Massachusetts Mutual Life Insurance Company*
*and MassMutual Holding LLC*

## **TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ...................................................................................................... 1

ALLEGATIONS IN THE COMPLAINT .................................................................... 1

    A.    Plaintiff ......................................................................................................... 1

    B.    MassMutual ................................................................................................... 2

ARGUMENT ............................................................................................................... 6

    A.    Standard for Dismissal ................................................................................. 6

    B.    Elendow Fails to State a Claim against MassMutual for Control Person
           Liability under Section 20(a) of the Exchange Act. ..................................... 6

           1.    Elendow Has Not Alleged That MassMutual Actually Controlled
                 either a Primary Violator or the Transaction at Issue. ............................... 7

           2.    Elendow Does Not Allege that MassMutual Was a Culpable
                 Participant in any Alleged Fraud. ............................................................. 9

    C.    Elendow Fails to State a Claim for Aiding and Abetting Breach of
           Fiduciary Duty Against MassMutual ........................................................... 12

           1.    Elendow Has Not Alleged that MassMutual Had Actual
                 Knowledge of any Alleged Breach of Fiduciary Duty. .......................... 13

           2.    Elendow Has Not Alleged that MassMutual Substantially Assisted
                 any Alleged Breach of Fiduciary Duty. ................................................... 14

           3.    Elendow Lacks Standing to Bring the Derivative Aiding and
                 Abetting Claim. ........................................................................................ 16

CONCLUSION ............................................................................................................ 18

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aldridge v. AT & T Cross Corp.*,
  284 F.3d 72 (1st Cir. 2002)................................................................................8

*Am. Protein Corp. v. AB Volvo*,
  844 F.2d 56 (2d. Cir. 1988)..............................................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S.Ct. 1937 (2009)................................................................6

*ATSI Comm., Inc. v. Shaar Fund*,
  493 F.3d 87 (2d Cir. 2007)...........................................................................6, 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).........................................................................................6

*Berry v. Deutsche Bank Trust Co. Americas*,
  No. 07 Civ 7634 (WHP), 2008 WL 4694968 (S.D.N.Y. Oct. 21, 2008)...............13

*Boguslavsky v. Kaplan*,
  159 F.3d 715 (2d Cir. 1998).........................................................................7, 11

*Burstyn v. Worldwide Xceed Group, Inc.*,
  2002 WL 31191741 (S.D.N.Y. Sept. 30, 2002)..............................................10, 11

*CLAL Finance Batucha Inv. Mgmt., Ltd. v. Perrigo Co.*,
  No. 09 Civ. 2255(TPG), 2010 WL 4177103 (S.D.N.Y. Oct. 7, 2010)...................10

*Constellation Energy Commodities Group Inc. v. Transfield ER Cape Ltd.*,
  801 F.Supp.2d 211 (S.D.N.Y. 2011)...................................................................2

*DeBlasio v. Merrill Lynch & Co., Inc.*,
  No. 07 Civ 318(RJS), 2009 WL 2242605 (S.D.N.Y. July 27, 2009)................13, 15

*Design Strategies, Inc. v. Davis*,
  384 F. Supp. 2d 649 (S.D.N.Y. 2005)...............................................................13

*Deutsche Telekom AG Sec. Litig.*,
  No. 00 CIV 9475, 2002 WL 244597 (S.D.N.Y. Feb. 20, 2002)............................11

*Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*,
  551 F. Supp. 2d 210 (S.D.N.Y. 2008)................................................................11

*Ellison v. Am. Image Motor Co.*,
  36 F. Supp. 2d 628 (S.D.N.Y. 1999)................................................................8

*Feldman v. Cutaia*,
  951 A.2d 727 (Del. 2008) ........................................................................17

*Goldin Assoc., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  No. 00 Civ. 8688 (WHP), 2003 WL 22218643 (S.D.N.Y. Sept. 25, 2003) ...........................16

*Horowitz v. Aetna Life Ins.*,
  148 A.D.2d 584, 539 N.Y.S.2d 50 (2d Dep't 1989) ..............................................16

*In re Alstom SA Secs. Litig.*,
  406 F. Supp. 2d 433 (S.D.N.Y. 2005)......................................................7, 8, 9

*In re Beacon Assoc. Litig.*,
  745 F. Supp. 2d 386 (S.D.N.Y. 2010)......................................................12, 14

*In re Corning, Inc. Sec. Litig.*,
  349 F. Supp. 2d 698 (S.D.N.Y. 2004) (Griesa, J.)............................................10

*In re Flag Telecom Holdings Ltd. Sec. Litig.*,
  308 F. Supp. 2d 249 (S.D.N.Y. 2004)........................................................8

*In re Global Crossing, Ltd. Sec. Litig.*,
  No. 02 Civ. 910, 2005 WL 1875445 (S.D.N.Y. Aug. 5, 2005) ...................................7

*In re Livent, Inc.* Sec. Litig,
  78 F. Supp. 2d 194 (S.D.N.Y.1999)........................................................7, 9

*In re MBIA, Inc., Sec. Litig.*,
  700 F. Supp. 2d 566 (S.D.N.Y. 2010)........................................................10

*In re Sotheby's Hldgs., Inc.*,
  No. 00 Civ. 1041, 2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000) ...............................7

*Kalin v. Xanboo, Inc.*,
  No. 04 Civ. 5931, 2009 WL 928279 (S.D.N.Y. Mar. 30, 2009) ................................10

*Kaufman v. Cohen*,
  307 A.D.2d 113 (1st Dep't 2003) ........................................................13, 14

*Kolbeck v. LIT Am., Inc.*,
  939 F. Supp. 240 (S.D.N.Y. 1996), *aff'd,* 152 F.3d 918 (2d Cir. 1998) ...................14

*Marino v. Grupo Mundial Tenedora, S.A.*,
  No. 10 Civ. 4126, 2011 WL 3837153 (S.D.N.Y. Aug. 30, 2011) .........................13, 15

*Maung Ng We v. Merrill Lynch & Co., Inc.,*
    No. 99 CIV. 9687 (CSH), 2000 WL 1159835 (S.D.N.Y. Aug. 15, 2000).............................16

*Meridian Horizon Fund, LP v. Tremont Group Holdings,*
    747 F. Supp. 2d 406, 413 (S.D.N.Y. 2010)................................................................................12

*Mishkin v. Ageloff,*
    No. 97 Civ. 2690 (LAP), 1998 WL 651065 ..........................................................................10

*MLSMK Inv. Co. v. JP Morgan Chase & Co.,*
    No. 10–cv-3040, 2011 WL 2176152 (2d Cir. June 6, 2011) ...................................................12

*Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A.,*
    261 F.R.D. 13 (S.D.N.Y. 2009) ...............................................................................................14

*Newman v. Family Mgmt. Corp.,*
    748 F. Supp. 2d 299 (S.D.N.Y. 2010)......................................................................................17

*Public Employees' Ret. Sys. of Miss. v. Merrill Lynch & Co.,*
    714 F. Supp. 2d 476 (S.D.N.Y. 2010)........................................................................................8

*Saltz v. First Frontier, L.P.,*
    782 F. Supp. 2d 61 (S.D.N.Y. 2010)...........................................................................7, 12, 14

*Terrydale Liquidating Trust v. Barness,*
    611 F. Supp. 1006 (S.D.N.Y. 1984).........................................................................................13

*United States v. Bestfoods,*
    524 U.S. 51 (1998)......................................................................................................................9

*Zutty v. Rye Select Broad Market Fund,*
    No. 113209/2009 (RBL), 2011 WL 5962804 *12 (Sup. Ct. NY Co. Apr. 15, 2011).............12

## STATUTES

§ 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. § 78t(a)) ................................... passim

## OTHER AUTHORITIES

Rule 9(b) ........................................................................................................................................13

## INTRODUCTION

Plaintiff, Elendow Fund, LLC ("Elendow"), is a sophisticated investment fund that invested directly in the Rye Select Broad Market XL Fund, L.P. (the "XL Fund"), and indirectly in the XL Fund through another investment fund unrelated to any of the defendants, Lakeview Investment, L.P. ("Lakeview").  Elendow's broad brush complaint names eleven defendants, including Massachusetts Mutual Life Insurance Company and MassMutual Holding LLC (collectively "MassMutual").[1]

As to MassMutual, the amended complaint essentially alleges that MassMutual is the corporate great-grandparent of the XL Fund's general partner, TPI.  The amended complaint does not allege *any* wrongful conduct by MassMutual.  Elendow -- based solely on innocuous allegations of upstream corporate ownership -- seeks to hold MassMutual secondarily liable for Elendow's own investment decisions.  Elendow's amended complaint would shift liability to MassMutual based on conclusory allegations of control liability under Section 20(a) of the Securities Exchange Act of 1934 and aiding and abetting breach of fiduciary duty.  Elendow's conclusory allegations fail as a matter of law to state a claim against MassMutual.

## ALLEGATIONS IN THE COMPLAINT

### A.    Plaintiff

Elendow is an investment fund composed of approximately 35 investors.  Am. Compl., ¶ 10.  Over an eleven month span between January 1, 2008 and November 1, 2008, Elendow invested $5.875 million directly in the XL Fund.  *Id.*, ¶ 11.  It invested another $6 million

---

[1] Those other parties are: the XL Fund; the XL Fund's general partner, Tremont Partners, Inc. ("TPI"); TPI's parent, Tremont Group Holdings, Inc. ("TGHI"); Rye Investment Management and Tremont Capital Management, both divisions of TGHI; and individuals Rupert Allan, Jim Mitchell and Robert Schulman; and TGHI's parent, Oppenheimer Acquisition Corporation ("OAC").  Massachusetts Mutual Life Insurance Company, through a holding company, MassMutual Holding LLC, owns OAC.  (A depiction of ownership relations mentioned in the amended complaint (¶¶15-16, 18-19. 22-25, 28, 30 and 31) is attached hereto at Addendum A.)

indirectly in the XL Fund through the Lakeview hedge fund.  Lakeview allegedly has assigned Elendow "its interest in any and all claims traceable to this sum."  *Id.*, ¶ 12.

Elendow discloses little else about its investments.  The amended complaint does not identify Elendow's general partner or fund manager.  Elendow also does not reveal whether it previously redeemed any of its shares, or what, if anything, it knew about Madoff.  The amended complaint is silent on any diligence Elendow did before investing in funds that placed money with Madoff.  Elendow does not even allege that it knew its funds were invested with Madoff or whether it as an investment fund was aware of the numerous "red flags" it claims should have alerted similar entities to Madoff's fraud.

## B.    MassMutual

Elendow's allegations about MassMutual can readily be summarized: (1) MassMutual owns OAC, which owns TGHI; (2) MassMutual was represented on some of its affiliates' boards; and (3) MassMutual, on occasion, uses the collective term, "MassMutual Financial Group," when referring to itself and its subsidiaries and affiliates.  Am. Compl., ¶¶ 3, 30-32, 86, 94-116.  These allegations correctly allege that MassMutual directly or indirectly owns several subsidiary companies and corporations, one of which is TGHI, but nothing else.  They are not sufficient to state any claim against MassMutual.[2]

Elendow also alleges that in 2001 OAC acquired TGHI for $145 million, financed with cash on hand, and "if necessary, capital contributions by Oppenheimer's parent MassMutual." *Id.*, ¶ 86.  Elendow alleges that OAC engaged in "extensive due diligence" of TGHI prior to the acquisition of TGHI, and, as a result, "would have discovered" that the Tremont Defendants placed money with Madoff and that "Defendants" "overlook[ed] or consciously ignore[ed]

---

[2] Elendow incorporates by reference various complaints filed against MassMutual, OAC and the Tremont defendants.  This is patently improper, as "[a] pleading may not adopt other pleadings from a wholly separate action."  *Constellation Energy Commodities Group Inc. v. Transfield ER Cape Ltd.*, 801 F.Supp.2d 211, 223 (S.D.N.Y. 2011) (citing *Tex. Water Supply Corp. v. R.F.C.*, 204 F.2d 190, 196 (5th Cir. 1953)).  MassMutual joins the arguments of the Tremont Defendants in support of striking portions of the amended complaint.

glaring red flags regarding Madoff's criminal enterprise." *Id.*, ¶¶ 7, 79, 84 -85.  The fact that an upstream corporation conducted due diligence before making an acquisition is hardly a "stop-the-presses" revelation, and without more, is an allegation of no significance.  From nothing more than that assertion, Elendow wants this Court to accept as a reasonable inference that MassMutual somehow knew that it was investing in a company (TGHI) that was doing business with an individual (Madoff) who was running a Ponzi scheme. Why MassMutual had any interest in signing off on a $145 million purchase of a company that was investing in a Ponzi is not explained.  Ponzi schemes end only one way.  Nor does the amended complaint even allege that MassMutual pulled money out of the Ponzi -- something an entity which had any suspicion that it was dealing, directly or indirectly, with a Ponzi would do.  The only reasonable inference applicable here is that neither MassMutual nor OAC suspected that one of Tremont's managers was engaged in fraud.[3]

MassMutual, not surprisingly for an upstream owner, elected representatives to the boards of some of its affiliates.  After the TGHI acquisition, both MassMutual and OAC elected representatives to TGHI's board.[4]  Am. Compl., ¶¶ 110, 113-15.  From this corporate ownership, Elendow stretches to its conclusion that MassMutual (and OAC) "had the power to control and did influence and control" and had "direct and supervisory involvement in the day-to-day operations" of the XL Fund and the Tremont Defendants.  *Id.*, ¶¶ 130-31.  These allegations are not allegations of facts, but are a formulaic recitation of the elements of Elendow's claims.  Notably missing however, Elendow does not allege that MassMutual -- the corporate great-

---

[3] The amended complaint notes that at the time of the acquisition, some seven years before Elendow became a limited partner in the XL Fund, TGHI and Oppenheimer made optimistic statements about the Tremont acquisition in various press releases.  Am. Compl. ¶¶ 89-92.  Elendow does not allege if these statements came true or if Elendow knew of these statements when it made its investment.

[4] Elendow refers to MassMutual Holdings Trust I as the owner of OAC.  *See* Am. Compl. ¶ 109.  MassMutual Holdings Trust I was dissolved before 2008.  MassMutual Holding LLC owns the stock of OAC.

grandparent -- directed the investment decisions of TPI, the general partner of the XL Fund, or even that MassMutual had representation on TPI's board (which it did not).[5]

Further, contrary to the amended complaint's conclusory allegations, Elendow, quoting its limited partnership agreement for the XL Fund, admits that TPI, the XL Fund's general partner, "'exercises ultimate authority over the [XL Fund] and is responsible for the day-to-day and other operations of the [XL Fund],'" (Am. Compl., ¶ 14), and, "[a]s general partner, Tremont Partners is responsible for the management of the XL Fund's investments activities, and has primary responsibility for monitoring the ongoing activities of the XL Fund's investment advisors and managers, including Madoff and/or BLMIS." *Id.,* ¶ 19. The amended complaint also alleges that "[t]he XL Fund Offering Memorandum was prepared, reviewed and/or disseminated by the Tremont Defendants," as were "Clients Statements" and other communications. *Id.,* ¶¶ 42, 49.

In a failed attempt to support its claim, Elendow points to accurate disclosures by Tremont and MassMutual that Tremont was a downstream subsidiary of MassMutual. "Following the merger," Elendow alleges TGHI "emphasized its connection to Oppenheimer and MassMutual in its marketing materials." Am. Compl., ¶¶ 93-94. These "marketing materials" consist of a disclosure by TPI that MassMutual was an upstream owner in a privacy policy in private placement memoranda. *Id.*, ¶ 94. The significance of these disclosures is not explained. Elendow never alleges that it relied upon these materials, much less how accurate disclosures of ownership give rise to liability.

Elendow then alleges that MassMutual disclosed (accurately) in its 2005, 2006 and 2007 annual reports "'that Massachusetts Mutual Life Insurance Company and its subsidiaries have offices around the globe,' and list and provide contact information for 'OppenheimerFunds,

---

[5] The allegation that individuals employed by or affiliated with MassMutual and OAC "controlled the board of directors of hedge funds that were advised by OppenheimerFunds and sub-advised by Tremont Partners" has no relevance to this case. *See* Am. Compl., ¶ 116. None of Elendow's claims are based on those funds.

Inc.,' 'Tremont Group Holdings, Inc. and Tremont Capital Management Ltd.'" and these "three subsidiaries are identified as 'general agencies and other offices.'"  Am. Compl., ¶ 96.  Elendow also cites a variety of unremarkable statements made by MassMutual in its annual reports, none that mention any Tremont entity by name.  *Id.,* ¶¶ 98-105.  That MassMutual "refers to itself as a diversified financial services organization" (¶ 97), "touted the strength of its asset management business" (¶ 98), and explained that its subsidiaries were "expanding offerings and gaining traction in key products such as hedge fund of funds, separately managed accounts and college savings plans" (¶ 99) is of no consequence to any alleged wrongdoing.  MassMutual also mentioned OppenheimerFunds, Inc. (*id.,* ¶¶ 98-101) and disclosed it "has agreements with affiliates, such as Oppenheimer Funds, to provide record-keeping and other services" in its annual report.  *Id.*, ¶ 103.  The significance of these statements is also not explained.

Elendow apparently realizes that these kinds of allegations are insufficient to allege veil piercing because Elendow does not make that allegation.  Nor does Elendow explain how statements in an annual report such as MassMutual's accurate description of itself as a "diversified financial services organization" or that it has a strong asset management business are relevant to anything other than marketing.  Despite these deficiencies, from the innocuous statements in various annual reports, Elendow would conclude that

> MassMutual operated and marketed itself as a single, integrated financial services company comprised of its life insurance business and its investment subsidiaries such as Oppenheimer Funds and Tremont Group Holdings.  MassMutual therefore controlled Tremont Group Holdings and is chargeable for Tremont Group Holdings' false statements and material omissions in the Funds' private placement memoranda, the ongoing false statements and material omissions in the Funds' private placement memoranda, the ongoing false statements and material omissions in other communications, and Tremont Group Holdings' failure to discharge its professional duties in a manner consistent with its fiduciary obligations.  [Am. Compl., ¶ 107.]

Note the irrational leap between the first and second sentences of the passage.  Elendow inexplicably moves from the allegation that MassMutual marketed itself as an "integrated

financial services company" to the unsupported conclusion that "MassMutual therefore controlled" Tremont and "is chargeable for Tremont's false statements…." This is a non-sequitur.

## ARGUMENT

### A.      Standard for Dismissal

To survive dismissal, "accepting all factual allegations in the complaint and drawing all *reasonable* inferences in the plaintiff's favor," a complaint "must provide the grounds upon which [Plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Comm., Inc. v. Shaar Fund*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (emphasis added). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citation omitted). Here, where Elendow merely recites Tremont's corporate ownership structure and makes no concrete allegations of wrongful actions by MassMutual, its amended complaint should be dismissed.

### B.      Elendow Fails to State a Claim against MassMutual for Control Person Liability under Section 20(a) of the Exchange Act.

"To establish a prima facie case of control person liability" under Section 20(a) of the Exchange Act,[6] Elendow must allege facts sufficient to show "(1) a primary violation [of the

---

[6] Section 20(a) (15 USC §78t(a)) provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

federal securities laws] by the controlled person, (2) control of the primary violator by the defendant and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Comm., Inc*, 493 F.3d at 108 (citing *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996)); *see also Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998). Assuming *arguendo* that Elendow has pled a primary violation,[7] Elendow has not alleged that MassMutual exercised actual control of any of the alleged wrongdoers or that MassMutual was a culpable participant in any alleged wrongdoing.

### 1. Elendow Has Not Alleged That MassMutual Actually Controlled Either a Primary Violator or the Transaction at Issue.

To plead control, a plaintiff must plead factual allegations sufficient to support a reasonable inference that the defendant had both (1) "actual control over the primary violator" and (2) "actual control over the *transaction* in question." *In re Alstom SA Secs. Litig.*, 406 F. Supp. 2d 433, 486-87 (S.D.N.Y. 2005) (quotation omitted) (emphasis in original); *see also In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 221 (S.D.N.Y.1999) ("Actual control is essential to control person liability."); *In re Global Crossing, Ltd. Sec. Litig.*, No. 02 Civ. 910, 2005 WL 1875445, at *3 (S.D.N.Y. Aug. 5, 2005) ("To be liable as a control person, the defendant "must actually possess, in fact, rather than in theory, the ability to direct the actions of the controlled person.'"); *In re Sotheby's Hldgs., Inc.*, No. 00 Civ. 1041, 2000 WL 1234601, at *8 (S.D.N.Y. Aug. 31, 2000) ("Actual control over the wrongdoer and the transactions in question is necessary for control person liability."). A plaintiff must allege that a defendant has control "over the transaction at issue in the sense of having the power not simply to influence, but to direct it." *In re Alstom*, 406 F. Supp. 2d at 486-87. What is more, "exercise of influence, without power to

---

[7] To the extent that Elendow has failed to plead an underlying primary violation by the "Rye Defendants" or the "Tremont Corporate Defendants," the control person liability claim must be dismissed. *Saltz v. First Frontier, L.P.*, 782 F. Supp. 61, 72-73, 75 (S.D.N.Y. 2010) (dismissing Section 20(a) claims for failure to plead underlying Section 10(b) violations in connection with Madoff fraud). MassMutual defers to the arguments made by the Tremont Defendants in their Memorandum of Law regarding the lack of a primary violation.

direct or cause the direction of management and policies through ownership of voting securities, by contract, or in any other direct way, is not sufficient to establish control for purposes of Section 20(a)."  *Id.* at 487.

Elendow attempts to define MassMutual as a control person based solely on its status as a parent company:  "Defendant MassMutual, *as the parent company* of Defendant Oppenheimer, and Oppenheimer, *as the parent company* of the Corporate Tremont Defendants, *had the power to exercise complete control* over the Tremont Defendants, including their selection and use of fund managers, their exercise of their professional responsibilities, and their marketing of funds through the use of offering materials."  Am. Compl., ¶ 32 (emphasis added); *see also id.*, ¶¶ 130, 131 ("By virtue of, among other things, (i) their ownership in, high level positions, participation in and/or awareness of the operations" Defendants had "the power to control").  Such allegations of corporate ownership fail to state a claim for control person liability.

"Merely alleg[ing]" that controlled entities are "subsidiaries and affiliates" coupled with "formulaic recitations" of the elements of control does not state a claim for control person liability.  *Public Employees' Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 714 F. Supp. 2d 476, 485 (S.D.N.Y. 2010).  "The parent-subsidiary relationship is an insufficient 'basis from which to infer control … [because] 'a parent corporation and its subsidiary[ies] are regarded as legally distinct entities.'"  *Id.* (quoting *In re WorldCom, Inc. Sec. Litig.*, 02 Civ. 3288, 2004 WL 1097786, at *3 (S.D.N.Y. May 18, 2004)).  *See also Aldridge v. AT & T Cross Corp.*, 284 F.3d 72, 85 (1st Cir. 2002) (allegation that defendants were controlling shareholders was not sufficient to state a Section 20(a) claim).  Similarly, the mere allegation that an upstream parent may have representation on the board of a subsidiary is not sufficient for control person liability.  *See, e.g., In re Flag Telecom Holdings Ltd. Sec. Litig.*, 308 F. Supp. 2d 249 (S.D.N.Y. 2004) (allegation of partial ownership and ability to select board members did not allege control); *Ellison v. Am. Image Motor Co.*, 36 F. Supp. 2d 628, 642 (S.D.N.Y. 1999) (dismissing Section 20 claim where plaintiff's only allegations of control were "the naked assertion that [defendants] were 'officers' of the [controlled entity]" and where complaint was "devoid of any allegation as to how these

[defendants] 'controlled' these companies"); *cf. In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d at 221 ("Officer or director status alone does not constitute control.") (citing *Rubinstein v. Skyteller, Inc.*, 48 F. Supp. 2d 315, 323 (S.D.N.Y. 1999)).   Board representation is, after all, a normal incident of ownership and does not, alone, support piercing the corporate veil.  *See, e.g., United States v. Bestfoods*, 524 U.S. 51, 61-62 (1998) (rights including the election of board of directors and making of by-laws "will not create liability beyond the assets of the subsidiary"); *Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 57, 60 (2d. Cir. 1988) ("[I]t is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts.").

The amended complaint does not allege any facts that even suggest *how* MassMutual had actual "power to direct" the transaction at issue.  *See In re Alstom*, 406 F. Supp. 2d at 486-87. Beyond MassMutual's status as corporate great-grandparent and MassMutual's board representation on TGHI -- but not TPI, the general partner, -- the amended complaint alleges no facts that remotely support an inference that MassMutual was involved the Tremont Corporate Defendants' day-to-day affairs, let alone in the management of the XL Fund.  To the contrary, Elendow admits that TPI, the general partner, "exercises ultimate authority over the [XL Fund] and is responsible for the day-to-day and other operations of the [XL Fund]," (Am. Compl., ¶ 14 (quoting Limited Partnership Agreement)); that "[a]s general partner, [TPI] is responsible for the management of the XL Fund's investments activities, and has primary responsibility for monitoring the ongoing activities of the XL Fund's investment advisors and managers, including Madoff and/or BLMIS" (*id.,* ¶ 19); and that "[t]he XL Offering Memorandum was prepared, reviewed and/or disseminated by the Tremont Defendants."  *Id.,* ¶ 42.

## 2.     Elendow Does Not Allege that MassMutual Was a Culpable Participant in Any Alleged Fraud.

To succeed on its control person claim, Elendow must also allege that "the controlling entity [MassMutual] was in some meaningful sense a culpable participant in the fraud perpetrated by the controlled entity."  *In re Corning, Inc. Sec. Litig.*, 349 F. Supp. 2d 698, 722

(S.D.N.Y. 2004) (Griesa, J.); *CLAL Finance Batucha Inv. Mgmt., Ltd. v. Perrigo Co.*, No. 09 Civ. 2255(TPG), 2010 WL 4177103 (S.D.N.Y. Oct. 7, 2010).  Culpable participation "must be pled with particularity" in accordance with the Private Securities Litigation Reform Act ("PSLRA").  *CLAL Finance*, 2010 WL 4177103 at *9*; see, e.g., In re MBIA, Inc., Sec. Litig.*, 700 F. Supp. 2d 566, 598 (S.D.N.Y. 2010); *Burstyn v. Worldwide Xceed Group, Inc.,* 2002 WL 31191741, at *8 (S.D.N.Y. Sept. 30, 2002) ("Since culpable participation is an element, the PSLRA's heightened pleading requirements apply" such that "plaintiffs must plead with particularity facts giving rise to a strong inference that the controlling person knew or should have known that the primary violator, over whom that person had control, was engaging in fraudulent conduct") (citations and quotations omitted).  Elendow is thus required, at the initial pleading stage, to allege "particularized facts of the controlling person's conscious misbehavior or recklessness."  *CLAL*, 2010 WL 4177103 at *9; *Mishkin v. Ageloff*, No. 97 Civ. 2690 (LAP), 1998 WL 651065, **25-26 (S.D.N.Y. Sept. 23, 1998) (dismissing claim for failure to plead culpable participation and stating that "the complaint must provide some detail about what [the defendant] is alleged to have done, and when [it] did it, in order for me to hold that the Complaint provides 'particularized facts' of [its] culpable participation"); *Kalin v. Xanboo, Inc.*, No. 04 Civ. 5931, 2009 WL 928279, *12 (S.D.N.Y. Mar. 30, 2009).

The amended complaint contains no factual allegations that could support a reasonable inference of MassMutual's participation, much less its culpable participation, in any violation of the securities laws.  This failure to plead participation alone warrants dismissal: a complaint "must provide some detail" about what a defendant "is alleged to have done, and when [defendant] did it" for a court to assess culpable participation.  *Mishkin*, 1998 WL 651065, at *26; *see also Edison Fund v. Cogent Inv. Strategies Fund, Ltd.,* 551 F. Supp. 2d 210, 231 (S.D.N.Y. 2008) (dismissing claim of control person liability where plaintiffs "do not allege particularized facts as to" defendant's "participation in the fraud").  As discussed above, Elendow merely recites the corporate lineage of the Tremont Corporate Defendants and then makes conclusory allegations regarding the ability to control, but does not allege specific facts

that would support an inference that MassMutual had any involvement in the alleged wrongs.

Another fatal omission, Elendow fails to allege that MassMutual had knowledge of any alleged wrongdoing.  "[P]laintiffs must plead with particularity facts giving rise to a strong inference that the controlling person knew or should have known that the primary violator, over whom that person had control, was engaging in fraudulent conduct."  *Burstyn*, 2002 WL 31191741 at *8 (internal quotations omitted); *Deutsche Telekom AG Sec. Litig.*, No. 00 CIV 9475, 2002 WL 244597, at *7 (S.D.N.Y. Feb. 20, 2002) (dismissing Section 20(a) claim not pled "with sufficient particularity that a strong inference is raised that [the defendant] knew or should have known that the controlled person was engaging in fraudulent conduct").  The showing is required as to each defendant: "§20(a) liability requires an individualized determination of a ... defendant's particular culpability."  *Boguslavsky*, 159 F.3d at 720.

Elendow does not allege that MassMutual took any action or was engaged in any relevant decision-making with respect to the alleged fraud.  Elendow does not allege that MassMutual was involved in Tremont's selection of Madoff as a manager -- it cannot, as the Tremont Defendants' relationship with Madoff predates the 2001 OAC acquisition.  At most, Elendow makes the conclusory allegation that undifferentiated "Defendants," including MassMutual, "overlook[ed] or consciously ignore[ed] glaring red flags regarding Madoff's criminal enterprise."  Am. Compl., ¶ 7.  However, Elendow does not allege specifically *what* red flags *MassMutual* was aware of and overlooked, or *how* it overlooked them or that the red flags alerted MassMutual that Madoff was running a Ponzi scheme.

Numerous courts have rejected the inference that allegations of knowledge of public red flags (even if true) are tantamount to knowledge of the Madoff fraud.  In *Meridian Horizon Fund, LP v. Tremont Group Holdings*, this Court held that the existence of publicly known red flags did not support an inference that Tremont's auditor, KPMG, knew of Madoff's fraud — rather, "the more compelling inference as to why Madoff's fraud went undetected for two decades was his proficiency in covering up his scheme and deceiving the SEC and other financial professionals."  747 F. Supp. 2d 406, 413 (S.D.N.Y. 2010) (Griesa, J.).  In *Zutty*, the

New York Supreme Court held that allegations about others' "'suspicions' regarding Madoff" do not create an inference that defendants (including MassMutual) "knew about Madoff's Ponzi scheme" or "made it so obvious that Madoff was running a Ponzi scheme that defendants must have known about the scheme and wanted to further it." *Zutty v. Rye Select Broad Market Fund*, No. 113209/2009 (RBL), 2011 WL 5962804, *12 (Sup. Ct. NY Co. Apr. 15, 2011).

> For twenty years, Madoff operated this fraud without being discovered and with only a handful of investors withdrawing their funds as a result of their suspicions. *An inference of scienter based on publicly available red flags is simply not as cogent and compelling as the opposing inference of nonfraudulent intent*.

*Saltz*, 782 F. Supp. 2d at 72 (citation omitted) (emphasis added); *see also In re Beacon Assoc. Litig.*, 745 F. Supp. 2d 386, 411 (S.D.N.Y. 2010) (dismissing control person claims against Bank of New York Company, Inc., the parent of an investment fund that invested in Madoff, because the plaintiffs in that case "fail[ed] to plead that BONY was sufficiently culpable or involved in the underlying securities fraud violation").

## C.     Elendow Fails to State a Claim for Aiding and Abetting Breach of Fiduciary Duty Against MassMutual.

"To state a claim for aiding and abetting breach of fiduciary duty under New York law, a plaintiff must show 'breach by a fiduciary of a duty owed to plaintiff; defendant's knowing participation in the breach; and damages.'" *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, No. 10–3040–cv, 2011 WL 2176152 at *19 (2d Cir. June 6, 2011) (quoting *SCS Comm., Inc. v. Herrick Co.*, 360 F.3d 329, 342 (2d Cir. 2004)).   "Moreover, … because [aiding and abetting claims] sound in fraud, these allegations must be pled with particularity under Rule 9(b)." *Marino v. Grupo Mundial Tenedora, S.A.,* No. 10 Civ. 4126, 2011 WL 3837153, *11 (S.D.N.Y. Aug. 30, 2011) (aiding and abetting breach of fiduciary was based on allegations of fraud and thus Rule 9(b) applied); *DeBlasio v. Merrill Lynch & Co., Inc.,* No. 07 Civ 318(RJS), 2009 WL 2242605, *10 (S.D.N.Y. July 27, 2009) ("this [aiding and abetting breach of fiduciary duty]

action is based on averments of fraud.  In light of this general theory of the case, there is little question that four of Plaintiffs' claims are subject to the requirements of Rule 9(b)").  Elendow has not alleged any facts about MassMutual that support a reasonable inference of either actual knowledge or substantial assistance in any wrongdoing.  Assuming *arguendo* that the amended complaint states an underlying claim for breach of fiduciary duty, Elendow has not adequately pled that MassMutual "aided and abetted" any alleged wrongdoing.[8]

      **1.**      **Elendow Has Not Alleged that MassMutual Had Actual Knowledge of any Alleged Breach of Fiduciary Duty.**

To state a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must plead actual knowledge of the breach, and "'[t]he burden of demonstrating actual knowledge, although not insurmountable, is nevertheless a heavy one.'"  *Design Strategies, Inc. v. Davis*, 384 F. Supp. 2d 649, 671 (S.D.N.Y. 2005) (quoting *Terrydale Liquidating Trust v. Barness*, 611 F. Supp. 1006, 1027 (S.D.N.Y. 1984)).  "[T]here must be an allegation that such defendant had actual knowledge of the breach of duty … Constructive knowledge of the breach of fiduciary duty by another is legally insufficient to impose aiding and abetting liability."  *Kaufman v. Cohen*, 307 A.D.2d 113, 125 (1st Dep't 2003) (citing *Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 247 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir. 1998)).

Here, "[a]part from … conclusory allegation[s], there are no facts in the complaint from which it could be inferred that [MassMutual] had actual knowledge [of any breach of fiduciary duty owed to plaintiff]."  *Id.* at 125; *Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 24 (S.D.N.Y. 2009) (plaintiff must "'allege some facts, in non-conclusory terms' to show knowing participation;" dismissing aiding and abetting claim where "allegations are simply too vague to show actual knowledge").  Elendow alleges that

---

[8] To the extent that Elendow has not properly pled an underlying claim for breach of fiduciary duty, the aiding and abetting claim should also be dismissed.  *See, e.g., Berry v. Deutsche Bank Trust Co. Americas*, No. 07 Civ. 7634 (WHP), 2008 WL 4694968, at *8 (S.D.N.Y. Oct. 21, 2008) (where plaintiffs failed to state a claim for an underlying breach, aiding and abetting claim should be dismissed).

undifferentiated "Defendants" (including MassMutual) had unspecified "actual knowledge of or consciously ignored the [Tremont Defendants'] breaches of fiduciary duty" because "Defendants" ignored "red flags."  *See, e.g.,* Am. Compl., ¶ 164.  Elendow fails to allege *what* breaches of fiduciary duty MassMutual, in its role as a corporate great-grandparent, had "actual knowledge" of, fails to allege *how* MassMutual had "actual knowledge," and fails to allege *when* MassMutual became aware of any breaches of fiduciary duties.  It simply makes the conclusory allegation without any explanation.  As noted above, it is not reasonable to draw an inference that MassMutual was aware of publicly available "red flags" and nonetheless allowed the acquisition to proceed.  The more plausible inference is that MassMutual had no idea that Madoff was running a Ponzi scheme.  *See Saltz*, 782 F. Supp. 2d at 72; *In re Beacon Assoc. Litig.*, 745 F. Supp. 2d at 411.

> ### 2.   Elendow Has Not Alleged that MassMutual Substantially Assisted any Alleged Breach of Fiduciary Duty.

"A defendant may be held liable for 'participating' in another's breach of fiduciary duty only if the defendant provided 'substantial assistance' to the primary violator."  *Kolbeck*, 939 F. Supp. at 247 (quoting *DePinto v. Ashley Scott, Inc.*, 222 A.D.2d 288, 635 N.Y.S.2d 215, 217 (1st Dep't 1995)).  "In general, substantial [assistance] is found where (1) a defendant affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed; and (2) the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated."  *Musalli Factory For Gold & Jewellry*, 261 F.R.D. at 25 (citations and internal quotations omitted); *see also Kaufman*, 307 A.D.2d at 126 (substantial assistance occurs "when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur.  However, the mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff") (citations and internal quotation marks omitted).

Elendow does not allege that MassMutual "affirmatively assist[ed]" or "help[ed] conceal" any wrongdoing.  Elendow makes the conclusory allegation that "Defendants"

(including MassMutual) "provided substantial assistance to and/or encouraged, and/or aided or abetted" the Tremont Defendants' alleged breaches of fiduciary duty by "(i) their preparation and/or review of the false and misleading documents disseminated to Plaintiff; (ii) dealings and interaction with Madoff and BLMIS; (iii) marketing and advertising of the XL Fund and other funds operated by the [Tremont Defendants]; and (iv) structuring of some or all of the swap transactions between the XL Fund and its counterparties."  Am. Compl., ¶ 163.  The amended complaint does not allege that *MassMutual* was involved in any of these kinds of actions.  This allegation, like many others in the amended complaint, impermissibly lumps undifferentiated "Defendants" together: "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."  *DeBlasio*, 2009 WL 2242605 at *10.  Elendow has alleged no actions by *MassMutual* that "substantially assisted" any breaches of fiduciary duty -- let alone "proximately caused the harm on which the [alleged] primary liability is predicated."

Again, as to MassMutual, all that Elendow has alleged is that MassMutual is TPI's corporate great-grandparent.  A description of MassMutual's corporate ownership does not lead to any inference, positive or negative, about any action taken by MassMutual, knowingly or otherwise.  Further, in this instance, MassMutual is not even alleged to have a representative (because it did not) on the board of TPI, general partner of the XL Fund.  *See, e.g., Marino,* 2011 WL 3837153 at *12 (establishing a holding company, having board representation and purportedly "exercis[ing] financial power" are insufficient to allege substantial assistance "because they fail to allege that these actions enabled [the] alleged breach to occur").

The only reasonable inference that flows from the allegation of ownership made by Elendow is that the Tremont Defendants are affiliates of MassMutual.  That is correct, and that is not wrongful conduct.  Detailing ownership structure does not create an inference that MassMutual substantially assisted in any alleged fraud or breach of fiduciary duty owed to plaintiff, a necessary predicate for an aiding and abetting claim.  *See, e.g., Goldin Assoc., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 Civ. 8688 (WHP), 2003 WL 22218643, at

*10 (S.D.N.Y. Sept. 25, 2003) ("As these acts are described in the … Complaint, they are not wrongful and cannot supply the basis for a claim that [defendants] 'knowingly participated' in [a] breach of duty"). Taken to its logical conclusion, if corporate ownership amounted to "actual knowledge" or "substantial assistance" of the parent corporation's affiliates, every corporation would be the guarantor for each and every of its related corporate affiliates. Such an outcome would represent a dramatic unraveling of well established and longstanding principles of corporate separateness -- indeed, it would eliminate the most basic underpinnings of corporate law: that shareholders are not responsible for the obligations of the corporation they own. *See Maung Ng We v. Merrill Lynch & Co., Inc.*, No. 99 CIV. 9687 (CSH), 2000 WL 1159835, *3 (S.D.N.Y. Aug. 15, 2000) (citing *Astrocom Electronics, Inc. v. Lafayette Radio Electronics Corp.*, 63 A.D.2d 765 766, 404 N.Y.S.2d 742, 744 (3d Dep't 1978)); *see also Horowitz v. Aetna Life Ins.*, 148 A.D.2d 584, 586, 539 N.Y.S.2d 50, 53 (2d Dep't 1989) ("A parent company is not liable for the torts of its subsidiary, even if it is a wholly owned subsidiary, unless it can be shown that the parent's control over the subsidiary disregards its corporate independence.").

### 3.   Elendow Lacks Standing to Bring the Derivative Aiding and Abetting Claim.

Elendow's claim for aiding and abetting breach of fiduciary duty can only be brought directly by the XL Fund or derivatively on behalf of the XL Fund because the claim is based on alleged injuries that were suffered directly by the XL Fund, not Elendow.

As the Delaware Supreme Court has held:

> Where all of a corporation's stockholders are harmed and would recover pro rata in proportion with their ownership of the corporation's stock solely because they are stockholders, then the claim is derivative in nature. The mere fact that the alleged harm is ultimately suffered by, or the recovery would ultimately inure to the benefit of, the stockholders does not make a claim direct .... In order to state a direct claim, the plaintiff must have suffered some individualized harm not suffered by all of the stockholders at large.

*Feldman v. Cutaia*, 951 A.2d 727, 733 (Del. 2008) (footnote omitted).[9]

Any alleged injuries to Elendow occurred because the XL Funds suffered losses as a result of Madoff.  Any alleged breach of fiduciary duty injured the XL Fund and, only indirectly or derivatively, Elendow.  As the New York Supreme Court explained when dismissing a breach of fiduciary duty claim based on the same funds at issue in this case, "[i]n considering the alleged misconduct and the nature of the relief sought, it is clear that the [Rye] Funds, not plaintiffs individually, suffered the alleged injuries, and hence, would receive the benefit of any recovery." *Zutty,* 2011 WL 5962804 at *5 (applying Delaware law).

Elendow cannot establish the prerequisites elements to assert this derivative claim against MassMutual.  The amended complaint does not allege that the necessary pre-suit demand was made or that such demand would have been futile and therefore the demand requirement should be excused.  *See, e.g., Newman,* 748 F. Supp. 2d at 313-14, 316-17 (plaintiff lacks standing to assert derivative claims where it made no pre-suit demand and does not allege with particularity facts sufficient to show that pre-suit demand is excused as futile).  Accordingly, this claim should be dismissed.

In addition, any derivative claims belonging to the XL Fund are barred by the recent settlement of consolidated actions in this Court.  *See In Re Tremont Securities Law, State Law and Insurance Litigation*, 08 Civ. 11117-TPG (S.D.N.Y. Aug. 19, 2011).  Section 15 of the Final Judgment (Docket No. 604) provides that the Settlement releases "any and all direct, indirect, and/or derivative claims that could have been asserted in any forum by [the Fund] against [MassMutual, a settling defendant]."

---

[9] The XL Fund is a Delaware limited partnership, and Delaware law governs whether a claim is direct or derivative.  *Newman v. Family Mgmt. Corp.,* 748 F. Supp. 2d 299, 313-14 (S.D.N.Y. 2010).

## CONCLUSION

For these reasons, Massachusetts Mutual Life Insurance Company and MassMutual Holding LLC respectfully move that this Court dismiss the claims against them with prejudice.


Dated: New York, New York  
      February 8, 2012

BINGHAM McCUTCHEN LLP

s/ Carol E. Head  
Kenneth I. Schacter  
399 Park Avenue  
New York, NY 10022  
Tel.: (212) 705-7000  
kenneth.schacter@bingham.com

Joseph L. Kociubes*  
joseph.kociubes@bingham.com  
Carol E. Head*  
carol.head@bingham.com  
One Federal Street  
Boston, MA 02110  
Tel.: (617) 951-8000  
*admitted pro hac vice

*Attorneys for Defendant Massachusetts Mutual Life Insurance Company and MassMutual Holding LLC*