UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

| | | |
|---|---|---|
| IN RE TREMONT SECURITIES LAW, | : | Master File No. |
| STATE LAW AND INSURANCE | : | 08 Civ. 11117 (TPG) |
| LITIGATION | : | |

-------------------------------------------------------------:

This Document Relates to:                              :
                                                                          :
ELENDOW FUND, LLC,                              :
                                                                   :      10 Civ. 9061 (TPG)
                         Plaintiff,                           :
                                                                   :
         -against-                                          :      ECF Case
                                                                   :      Electronically Filed
RYE SELECT BROAD MARKET XL FUND,      :
L.P., et al.,                                                     :
                                                                   :
                         Defendants.                      :

-------------------------------------------------------------x

## DEFENDANT OPPENHEIMER ACQUISITION CORP.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

William K. Dodds
David A. Kotler
DECHERT LLP
1095 Avenue of the Americas
New York, New York  10036
Tel.: (212) 698-3500
Fax: (212) 698-3599

*Attorneys for Defendant Oppenheimer
Acquisition Corp.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF RELEVANT FACTS ............................................................................. 2

ARGUMENT ........................................................................................................................ 4

I.  PLAINTIFF FAILS TO STATE A CLAIM FOR AIDING AND ABETTING
    AGAINST OAC.......................................................................................................... 5

    A.  Plaintiff Does Not And Cannot Properly Allege Actual Knowledge ................... 6

    B.  Plaintiff Does Not And Cannot Properly Allege Substantial Assistance ............. 8

II. PLAINTIFF FAILS TO STATE A SECTION 20(A) CLAIM AGAINST OAC ........... 10

    A.  Plaintiff Fails To State A Claim For A Primary Violation Of The
        Exchange Act By A "Controlled Person" ........................................................... 11

    B.  Plaintiff Fails To Adequately Allege That OAC "Controlled" Tremont ............ 11

        1.  The Mere Pleading Of A Parent/Subsidiary Relationship Is
            Inadequate ............................................................................................... 12

        2.  The Mere Pleading Of Common Directors Is Inadequate ....................... 13

    C.  Plaintiff Has Failed To Adequately Allege "Culpable Participation" By
        OAC In The Alleged Securities Fraud Committed By Tremont ........................ 14

CONCLUSION.................................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

*American Protein Corp. v. AB Volvo*,
    844 F.2d 56 (2d. Cir. 1988)............................................................................9

*Anwar v. Fairfield Greenwich Ltd.*,
    728 F. Supp. 2d 372 (S.D.N.Y. 2010)........................................................15

*ATSI Commn's, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)..........................................................................11

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................4, 5

*Berman v. Morgan Keegan & Co.*,
    No. 10 Civ 5866, 2011 WL 1002683 (S.D.N.Y. Mar. 14, 2011),
    *aff'd*, 2012 WL 147907 (2d Cir. Jan. 19, 2012)..........................................6

*Brandon v. City of New York*,
    705 F. Supp. 2d 261 (S.D.N.Y. 2010)..........................................................5

*CLAL Fin. Batucha Inv. Mgmt., Ltd. v. Perrigo Co.*,
    No. 09 Civ 2255, 2010 WL 4177103 (S.D.N.Y. Oct. 7, 2010) .............14, 15

*Cohen v. Stevanovich*,
    722 F. Supp. 2d 416 (S.D.N.Y. 2010)........................................................11

*Constellation Energy Commodities Group Inc. v. Transfield ER Cape Ltd.*,
    801 F. Supp. 2d 211 (S.D.N.Y. 2011) ..........................................................5

*DeBlasio v. Merrill Lynch & Co*,
    No. 07 Civ. 318, 2009 WL 2242605 (S.D.N.Y. July 27, 2009) ...................6

*Deutsche Telekom AG Sec. Litig.*,
    No. 00 Civ. 9475, 2002 WL 244597 (S.D.N.Y. Feb. 20, 2002) .................15

*Ellison v. Am. Image Motor Co.*,
    36 F. Supp. 2d 628 (S.D.N.Y. 1999)..........................................................14

*Goldin Assocs., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    No. 00 Civ. 8688, 2003 WL 22218643 (S.D.N.Y. Sept. 25, 2003)...........9

*Graham v. Barriger*,
    699 F. Supp. 2d 612 (S.D.N.Y. 2009)..........................................................5

*In re Beacon Assocs. Litig.*,
    745 F. Supp. 2d 386 (S.D.N.Y. 2010) ........................................................15

*In re Emex Corp. Sec. Litig.*,
 No. 01 Civ. 4886, 2002 WL 31093612 (S.D.N.Y. Sept. 18, 2002) ...................................14, 16

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
 308 F. Supp. 2d 249 (S.D.N.Y. 2004).............................................................................12, 13

*In re Initial Public Offering Sec. Litig.*,
 241 F. Supp. 2d 281 (S.D.N.Y. 2003).....................................................................................12

*In re MBIA, Inc. Sec. Litig.*,
 700 F. Supp. 2d 566 (S.D.N.Y. 2010).....................................................................................14

*In re Merkin*,
 No. 08 Civ. 10922, 2011 WL 4435873 (S.D.N.Y. Sept. 23, 2011) ...........................................7

*In re WorldCom, Inc. Sec. Litig.*,
 No. 02 Civ. 3288, 2004 WL 1097786 (S.D.N.Y. May 18, 2004)............................................12

*JFK Family Ltd. P'ship v. Millbrae Nat. Gas Dev. Fund 2005, LP*,
 2008 WL 4308289 (N.Y. Sup. Sept. 16, 2008)........................................................................6

*Kimmel v. Labenski*,
 No. 85 Civ. 0804, 1988 WL 19229 (S.D.N.Y. Feb. 10, 1988) ...............................................13

*Marino v. Grupo Mundial Tenedora, S.A.*,
 No. 10 Civ. 4126, 2011 WL 3837153 (S.D.N.Y. Aug. 30, 2011) ...................................5, 9, 10

*Martinez v. City of New York*,
 06 Civ. 1476, 2008 WL 681465 (S.D.N.Y. Mar. 11, 2008),
 *aff'd*, 338 F. App'x 71 (2d Cir. 2009).......................................................................................4

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
 737 F. Supp. 2d 137 (S.D.N.Y. 2010), *aff'd*, 651 F.3d 268 (2d Cir. 2011) .............................8

*Musalli Factory for Gold & Jewellry v. JP Morgan Chase Bank, N.A.*,
 261 F.R.D. 13 (S.D.N.Y. 2009), *aff'd*, 383 F. App'x 107 (2d Cir. 2010) .........................5, 10

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
 446 F. Supp. 2d 163 (S.D.N.Y. 2006).......................................................................................8

*Plumbers and Pipefitters Local Union No. 630 Pension –
 Annuity Trust Fund v. Arbitron Inc.*,
 741 F. Supp. 2d 474 (S.D.N.Y 2010).........................................................................................4

*Public Employees' Ret. Sys. v. Merrill Lynch & Co.*,
 714 F. Supp. 2d 475 (S.D.N.Y. 2010).....................................................................................12

*Rosner v. Bank of China*,
    349 F. App'x 637 (2d Cir. 2009) .......................................................5

*S.E.C. v. First Jersey Sec., Inc.*,
    101 F.3d 1450 (2d Cir. 1996)...........................................................11

*Saltz v. First Frontier, LP.*,
    782 F. Supp. 2d 61 (S.D.N.Y. 2010)...........................................7, 11

*Schulman v. Delaire*,
    No. 10 Civ. 3639, 2011 WL 672002 (S.D.N.Y. Feb. 22, 2011) ..........7

*Sedona Corp. v. Ladenburg Thalmann & Co.*,
    No. 03 Civ. 3120, 2005 WL 1902780 (S.D.N.Y. Aug. 9, 2005) ........16

*Spira v. Curtin*,
    No. 97 Civ. 2637, 2001 WL 611386 (S.D.N.Y. June 5, 2001)..............6

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*,
    250 F.3d 87 (2d Cir. 2001*)*...........................................................16

*United States v. Bestfoods*,
    524 U.S. 51 (1998).......................................................................2, 9

*Wilson v. Merrill Lynch & Co.*,
    No. 10 Civ. 1528, 2011 WL 5515958 (2d Cir. Nov. 14, 2011) ........11

*Zutty v. Rye Select Broad Mkt. Fund, LP*,
    No. 113209/09, 2011 WL 5962804 (N.Y. Sup. Apr. 20, 2011) .......7, 8

### STATUTES/RULES

15 U.S.C. § 78t(a) .......................................................... *passim*

15 U.S.C. § 78u-4(b)(2) .......................................................15

Fed. R. Civ. P. 8 ...............................................................12

Fed. R. Civ. P. 9(b) ........................................................1, 6

Fed. R. Civ. P. 12(b)(6).....................................................1, 4

Fed. R. Civ. P. 12(f) ...........................................................5

Defendant Oppenheimer Acquisition Corp. ("OAC") respectfully submits this memorandum of law in support of its motion to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) on the grounds that the Complaint fails to state any legally sustainable cause of action against OAC.

## PRELIMINARY STATEMENT

Since filing its initial complaint more than a year ago, Plaintiff has had the opportunity to conduct an extensive factual investigation, including monitoring and analyzing other highly publicized Madoff-related actions.  Despite the generous time to file an amended complaint and the wealth of available pre-filing information, Plaintiff has yet to muster any factual support tying OAC to the remote -- and meritless -- claims against it.  Plaintiff, a sophisticated investment fund, pursues claims against OAC for aiding and abetting breach of fiduciary duty and for control person liability under Section 20(a) of the 1934 Securities Exchange Act. Plaintiff's allegations, in the aggregate, amount to nothing more than a generic description of OAC's ownership of Tremont Group Holdings, Inc.'s ("Tremont Group") stock.  In sum, Plaintiff's Amended Complaint against OAC remains bereft of legal merit and devoid of factual substance, and is ripe for dismissal.

Plaintiff fails to offer even the slightest factual basis for its aiding and abetting claim. Instead of pleading -- as the law requires -- that OAC had actual knowledge of Tremont's alleged misconduct in failing to detect the Madoff fraud, Plaintiff merely alleges that OAC *should have* known of Tremont's relationship with Madoff and of certain "red flags" that somehow *must have* revealed Madoff's Ponzi scheme and Tremont's role therein.  Not only is this legally insufficient to state an aiding and abetting claim against OAC, but, as numerous courts have found, it is wholly inconsistent with the unfortunate reality that Madoff's Ponzi scheme went undetected by both sophisticated investors and regulatory agencies for years.

Moreover, Plaintiff's Amended Complaint lacks a single well-pled allegation that OAC "controlled" or "participated" in any of Tremont's alleged securities law violations.  Instead, Plaintiff premises its control person claim on the conclusory allegation that OAC "had the power to exercise complete control over the Tremont Defendants, including their selection and use of fund managers, their exercise of their professional responsibilities, and their marketing of funds through the use of offering materials."  Plaintiff's only support for this conclusion is a broad outline of corporate ownership that is neither unique to OAC nor in any way connected to Tremont's alleged securities fraud.

At bottom, Plaintiff's claims each are premised on nothing more than the bald assertion that OAC's mere "ownership" of Tremont is sufficient to render OAC liable for the alleged wrongdoing of Tremont.  The search for deep pockets has never justified defying the "general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries."  *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).  OAC's motion to dismiss should be granted in full.

## STATEMENT OF RELEVANT FACTS

OAC is a long-established holding company that conducts no business other than owning the stock of two other entities: non-party OppenheimerFunds, Inc. ("OFI")[1] and defendant Tremont Group.  Tremont Group is the parent of defendant Tremont Partners, Inc. ("Tremont Partners"), the general partner of the limited partnership in which Plaintiff invested, the Rye Select Broad Market XL Fund, L.P. (the "XL Fund").  Am. Compl. ¶¶ 18-19.  As the Amended Complaint makes clear, Tremont Partners independently operated the XL Fund, which was not even invested with Madoff.  *Id.* ¶ 3.  Rather, the XL Fund entered into swap transactions with

---

[1]      OFI is not named as a defendant in this action, and Plaintiff does not and cannot assert any claims against it because OFI -- like OAC -- has no connection to Tremont's alleged underlying wrongs, let alone to Plaintiff or Plaintiff's investment.

other non-parties, and XL Fund investor returns were based on the returns achieved by another

Madoff-invested fund, the Rye Select Broad Market Fund L.P. (the "Market Fund," together

with the XL Fund, the "Funds"), managed by Tremont Partners. *Id.* ¶ 43. Plaintiff selected the

XL Fund knowing the XL Fund provided a levered exposure to the returns achieved by the

Market Fund through Madoff. *Id*. ¶¶ 38, 42-43.[2] Plaintiff does not (and cannot) allege any facts

supporting its assertion that OAC was involved in the day-to-day operations of Tremont (*id.* ¶

131) in <u>any</u> respect, let alone with respect to the Tremont Partners/Madoff investment

relationship at issue in this case.

     Plaintiff is a sophisticated investment fund organized under the laws of Delaware that

invested in the XL Fund.[3] *Id.* ¶ 10-12. Plaintiff alleges that it suffered damages because

Tremont: (1) misrepresented or failed to disclose material facts relating to the management of

and risks associated with the XL Fund (*id*. ¶¶ 47-48); (2) failed to conduct sufficient due

diligence in selecting Madoff to manage the Market Fund's assets (*id.* ¶¶ 51-52); (3) failed to

properly monitor Madoff's management of the Market Fund's assets (*id.*); (4) misrepresented its

due diligence procedures (*id.* ¶ 50); and (5) falsely reported positive returns for the Funds (*id.*

¶ 49).

     All of Plaintiff's allegations against OAC arise from OAC's acquisition of Tremont

Group in 2001. Plaintiff alleges that: (1) OAC acquired Tremont Advisors, Inc. (n/k/a Tremont

Group), the publicly-traded holding company for the various Tremont entities in October 2001

(*id.* ¶ 73); (2) prior to the closing of that transaction, OAC conducted due diligence into

---

[2]    *See also* Rye Select Broad Market XL Fund, L.P. Amended and Restated Confidential Private Placement Memorandum, dated November 1, 2007 (attached to the Declaration of Jason C. Vigna in support of the Tremont Defendants' Motion To Dismiss The Amended Complaint at Ex. A).

[3]    Plaintiff purchased limited partnership interests in the XL Fund directly (*id.* ¶¶ 3, 11), and indirectly through Lakeview Investment, L.P. ("Lakeview"), an investment fund unrelated to any of the defendants. *Id.* ¶ 12. Lakeview is a plaintiff in a related action pending before this Court, captioned *Lakeview Investment, LP v. Robert Schulman, et al.*, 11 Civ. 01851 (TPG).

Tremont's operations, learning that Tremont utilized Madoff as an investment manager (*id.* ¶¶ 78-85); and (3) at various times since the acquisition, certain executives of OAC and non-party OFI served on the board of directors of certain Tremont entities (*id.* ¶¶ 113, 115).

Plaintiff does not allege that OAC played <u>any</u> role in either its investment in the XL Fund or any investment-related activities carried out by Tremont Partners with respect to any investor's investments in the Funds.  Plaintiff does not allege that OAC: (1) established, reviewed, or in any way participated in the investment strategy for the Funds; (2) had board representation on the Funds; (3) selected or participated in selecting Madoff to manage the Market Fund; (4) participated in Tremont's due diligence and selection of Madoff to manage the Market Fund; (5) participated in monitoring Madoff's performance as manager of the Market Fund; (6) prepared or reviewed any offering materials for the Funds; (7) prepared or reviewed Plaintiff's account statements; (8) entered into any contract with respect to the XL Fund with Plaintiff or any swap counterparty; or (9) communicated with Plaintiff on any topic, much less with regard to Plaintiff's investment in the XL Fund.

<u>**ARGUMENT**</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint, such as that here, that does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Martinez v. City of New York*, 06 Civ. 1476, 2008 WL 681465, at *3 (S.D.N.Y. Mar. 11, 2008) (Griesa, J.) (relying on *Twombly* to dismiss complaint that did not allege "enough facts to state a claim to relief that is plausible on its face"), *aff'd*, 338 F. App'x 71 (2d Cir. 2009).

Conclusions are not facts, and therefore "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."  *Plumbers and Pipefitters Local Union No. 630 Pension – Annuity Trust Fund v. Arbitron Inc.*, 741 F. Supp. 2d

474, 478 (S.D.N.Y 2010) (dismissing Section 20(a) claim).  Complaints that merely plead "labels

and conclusions[] and a formulaic recitation of the elements of a cause of action" do not suffice.

*Twombly,* 550 U.S. at 555; *see Graham v. Barriger*, 699 F. Supp. 2d 612, 634 (S.D.N.Y. 2009)

(dismissing Section 20(a) claim because "the Complaint's control person allegations are limited

to legal conclusions . . . and therefore are not entitled to the presumption of truth"); *Musalli*

*Factory for Gold & Jewellry v. JP Morgan Chase Bank, N.A.*, 261 F.R.D. 13, 28 (S.D.N.Y.

2009) (dismissing aiding and abetting breach of fiduciary duty claim), *aff'd*, 382 F. App'x 107

(2d Cir. 2010).[4]

## I.    PLAINTIFF FAILS TO STATE A CLAIM FOR AIDING AND ABETTING AGAINST OAC

The necessary elements of Plaintiff's aiding and abetting claim are: (1) the existence of

an underlying wrong;[5] (2) OAC's actual knowledge of the underlying wrong; and (3) OAC's

substantial assistance in furthering the underlying wrong.  *Rosner v. Bank of China*, 349 F.

App'x 637, 638 (2d Cir. 2009) (affirming dismissal of aiding and abetting claim).[6]  Moreover,

---

[4]    The weaknesses of the claims against OAC are well-reflected in Plaintiff's flaccid attempt to
support its bare claims against OAC by "incorporat[ing] by reference into this Amended Complaint"
allegations by other non-parties in separate litigations, and by copying paragraphs from another complaint
filed in a separate action.  Am. Compl. at 1 n.1; ¶¶ 12, 39-40, 52-72; Exhibits 1 and 2; *see, e.g.,*
*Constellation Energy Commodities Group Inc. v. Transfield ER Cape Ltd.*, 801 F. Supp. 2d 211, 223
(S.D.N.Y. 2011) (holding that "[a] pleading may not adopt other pleadings from a wholly separate
action"); *Brandon v. City of New York* 705 F. Supp. 2d 261, 268 -69 (S.D.N.Y. 2010) (finding allegations
that "incorporat[e] an entire complaint by reference . . . insufficient to withstand even a motion to dismiss
because they do not give "'fair notice of what the claim is and the grounds upon which it rests'").  These
portions of Plaintiff's complaint should be stricken pursuant to Federal Rule of Civil Procedure 12(f).  *See*
The Tremont Defendants' Memorandum Of Law In Support Of Their Motion To Dismiss The Amended
Complaint ("Tremont Br.") at Point I.

[5]    OAC hereby incorporates the Tremont Defendants' and MassMutual Defendants' arguments that
Plaintiff lacks standing to bring its aiding and abetting claim and that Plaintiff's aiding and abetting claim
is barred by the principles of res judicata and release.  *See* Tremont Br. at Point V.; Memorandum Of Law
In Support Of the MassMutual Defendants' Motion To Dismiss The Complaint For Failure To State A
Claim at 16-17.

[6]    Either New York or Delaware law governs Plaintiff's aiding and abetting claims.  *See Marino v.*
*Grupo Mundial Tenedora, S.A.*, No. 10 Civ. 4126, 2011 WL 3837153, at *11 (S.D.N.Y. Aug. 30, 2011).
However, the Court need not resolve this choice of law issue now because the aiding and abetting

because Plaintiff's aiding and abetting claim sounds in fraud, it is subject to Fed. R. Civ. P. 9(b)

particularity requirements. *Berman v. Morgan Keegan & Co.*, No. 10 Civ. 5866, 2011 WL

1002683, at *13 (S.D.N.Y. Mar. 14, 2011) (dismissing aiding and abetting breach of fiduciary

duty claim for failure to meet Fed. R. Civ. P. 9(b)), *aff'd*, 2012 WL 147907 (2d Cir. Jan. 19,

2012); *see also Spira v. Curtin*, No. 97 Civ. 2637, 2001 WL 611386, at *3 (S.D.N.Y. June 5,

2001) (Griesa, J.) (Fed. R. Civ. P. 9(b) "applies not only to claims under . . . common law fraud,

but also to elements of other claims that are premised on fraud").

### A.   Plaintiff Does Not And Cannot Properly Allege Actual Knowledge

Instead of pleading OAC's actual knowledge of Tremont's putative primary wrongs,

Plaintiff alleges only that OAC conducted due diligence on Tremont prior to completing its

acquisition of Tremont in 2001 and was, therefore, aware of Tremont's investment relationship

with Madoff.  *See* Am. Compl. ¶¶ 78-84.  Plaintiff does not (and cannot) allege -- as it must to

survive this motion -- OAC's actual knowledge of Madoff's fraudulent scheme and Tremont's

alleged role in it.  While Plaintiff asserts that Tremont was aware of purported "red flags" that

*should have* alerted Tremont to Madoff's Ponzi scheme (*id.* ¶¶ 53-57), Plaintiff makes no

corresponding allegation of OAC's knowledge of such warning signs.[7]  Furthermore, even if

Plaintiff could allege OAC knew of such red flags, Plaintiff's tower of supposition (and it is only

that) is devoid of any factual support and therefore is legally insufficient to plead OAC's "actual

---

standards are substantially the same under both New York and Delaware law.  *JFK Family Ltd. P'ship v. Millbrae Nat. Gas Dev. Fund 2005, LP*, 2008 WL 4308289, at *18 n.18 (N.Y. Sup. Sept. 16, 2008) (finding New York and Delaware aiding and abetting law "the same").

[7]       Not only does Plaintiff fail to allege facts supporting its conclusory allegations that OAC overlooked red flags of Madoff's fraud (*id.* ¶¶ 7, 164), these allegations fail for the additional reason that they are asserted against undifferentiated "defendants" and fail to put OAC on notice of the allegations against it.  *DeBlasio v. Merrill Lynch & Co*, No. 07 Civ. 318, 2009 WL 2242605, at *10 (S.D.N.Y. July 27, 2009) (applying Rule 9(b) to aiding and abetting breach of fiduciary duty claim and holding that plaintiff "may not rely upon blanket references to acts or omissions by all of the defendants, for each defendant named in the complaint is entitled to be [apprised] of the circumstances surrounding the fraudulent conduct with which he individually stands charged").

knowledge" of any underlying breach of fiduciary duty, as recently recognized by another court in dismissing similar allegations against OAC.[8] *Zutty v. Rye Select Broad Mkt. Fund, LP*, No. 113209/09, 2011 WL 5962804, at *8 (N.Y. Sup. Apr. 20, 2011) (dismissing Rye Fund investors' claims where "plaintiffs fail to allege anything that would create an inference" that OAC "knew about Madoff's Ponzi scheme, but nevertheless invested with him").

Moreover, the hyperbolic supposition that OAC, "motivated by unchecked greed," (Am. Compl. ¶ 4), deliberately invested $145 million into a fraudulent operation whose success allegedly depended on a brazen Ponzi scheme, is inherently implausible.  To the contrary, the only appropriate inference is that a respected -- or for that matter, self-interested -- financial institution would not knowingly acquire an asset management firm whose success rested on the perpetuation of an unprecedented fraud.  *Saltz v. First Frontier, LP.*, 782 F. Supp. 2d 61, 72 (S.D.N.Y. 2010) (inference of actual knowledge based on "red flags" of Madoff's fraud is "not as cogent and compelling as the opposing inference of nonfraudulent intent"); *Schulman v. Delaire*, No. 10 Civ. 3639, 2011 WL 672002, at *3 (S.D.N.Y. Feb. 22, 2011) (dismissing complaint that "supports the reasonable inference that Madoff fooled the defendant[ ] as he did individual investors, financial institutions, and regulators").

Plaintiff's speculation that OAC "turned a blind eye to Madoff's nefarious operations" (Am. Compl. ¶ 4) effectively concedes its inability to meet the demanding actual knowledge requirement, amounting to no more than an assertion that OAC was negligent or reckless in

---

[8]     Plaintiff's attempt to bolster its inadequate knowledge averments with allegations of what other non-parties supposedly concluded regarding Madoff's operations is beside the point.  *See, e.g.*, Am. Compl. ¶¶ 58-67.  Plaintiff does not (and cannot) allege that OAC ever had any knowledge of other non-parties' suspicions of Madoff, even if such allegations somehow could satisfy the requirement that Plaintiff allege OAC's actual knowledge.  *See In re Merkin*, No. 08 Civ. 10922, 2011 WL 4435873, at *10 (S.D.N.Y. Sept. 23, 2011) ("[T]here is simply no basis for imputing scienter just because a non-party had a hunch or a gut feeling about Madoff, especially when juxtaposed against his considerable reputation and success within the investment community.").

failing to identify the "warning signals" as harbingers of Madoff's fraud. *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 201 n.279 (S.D.N.Y. 2006) (noting "the overwhelming weight of authority holds that actual knowledge is required, rather than a lower standard such as recklessness or willful blindness"). Hence, as recently recognized by another Court in dismissing a similar Madoff-related complaint brought against OAC, a plaintiff cannot state a claim against OAC where the complaint "fails to explain how one or more alleged red flags made it so obvious that Madoff was running a Ponzi scheme that defendants must have known about the scheme and wanted to further it." *Zutty*, 2011 WL 5962804, at *12; *see also MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 737 F. Supp. 2d 137, 144-145 (S.D.N.Y. 2010) (dismissing aiding and abetting breach of fiduciary duty claim because even if defendants "could have connected the dots to determine that Madoff was committing fraud, Plaintiff offers no facts to support the claim they actually reached such a conclusion"), *aff'd*, 651 F.3d 268 (2d Cir. 2011).

### B.     Plaintiff Does Not And Cannot Properly Allege Substantial Assistance

Plaintiff likewise fails to satisfy the "participation" requirement of its aiding and abetting claim because it does not and cannot support its blanket assertion that OAC "substantially assisted" in Tremont's alleged underlying misconduct. Am. Compl. ¶ 6. Plaintiff avers only that: (1) OAC acquired Tremont in 2001 (*id.* ¶ 73); (2) two OAC board members also served on Tremont Group's board and two OFI employees also worked at Tremont (*id.* ¶¶ 87, 113, 115); (3) OAC somehow was involved in Tremont's non-Madoff related marketing operations (*id.* ¶¶ 29, 93, 117); and (4) Tremont disclosed its relationship with OAC in a press release and

marketing materials (*id.* ¶¶ 90, 94).[9]  These unremarkable circumstances typical of corporate

affiliates are wholly unavailing as allegations of substantial assistance.

    The mere fact that OAC acquired Tremont and held its stock is neither controversial,

actionable, nor sufficient to allege "substantial assistance."  *See Bestfoods*, 524 U.S. at 61;

*Goldin Assocs., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 Civ. 8688, 2003 WL

22218643, at *10 (S.D.N.Y. Sept. 25, 2003) (dismissing aiding and abetting claim where

substantial assistance allegations described acts that "are not wrongful" and failed to allege

knowing participation in "conduct in furtherance of the breach").  Likewise, Plaintiff fails to

allege how *Tremont'*s accurate disclosure of OAC's ownership status in press releases and its

privacy policy constitutes *OAC's* "substantial assistance" in Tremont committing an alleged

fraud or violating fiduciary duties owed to Plaintiff.[10]  *Marino*, 2011 WL 3837153, at *13

(dismissing aiding and abetting breach of fiduciary duty claim where plaintiff failed to allege that

defendant's conduct enabled breach of fiduciary duty).

    Similarly, the allegations that two OAC executives served on Tremont Group's board of

directors and that non-party OFI employed two Tremont executives do not advance Plaintiff's

assertion of substantial assistance.  *Id.* ¶¶ 87, 113, 115.  That OAC, as a parent company, had two

representatives serve on its subsidiary's board is neither unique of a parent company nor

revelatory of any improper behavior.  *See American Protein Corp. v. AB Volvo*, 844 F.2d 56, 57

(2d. Cir. 1988) ("[I]t is entirely appropriate for directors of a parent corporation to serve as

---

[9]     Plaintiff vaguely asserts that "the Individual Defendants and the Controlling Defendants"
substantially assisted the alleged breach of fiduciary duty through: (1) the preparation and/or review of
false and misleading documents; (2) dealing and interaction with Madoff and BLMIS; and (3) structuring
some or all of the swap transactions at issue.  *Id.* ¶ 163.  It is unclear which of the defendants these
allegations are directed at, but there are no facts alleged connecting OAC to any of these activities.

[10]    To the extent that Plaintiff relies on statements by Tremont regarding its affiliation with non-party
*OFI* (Am. Compl. ¶¶ 90-93), these allegations are irrelevant as to whether *OAC* substantially assisted
Tremont's alleged misconduct.

directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts.").  A ruling to the contrary would mean that any overlap in board members or employees would render one corporate affiliate automatically liable for substantial assistance of the alleged wrongdoing of another.  That is not the law, nor should it be.

Nor can allegations of purported inaction supply the requisite "substantial assistance" (*see, e.g.*, Am. Compl. ¶¶ 4-5, 164) because there is no legal or factual basis to suggest that OAC owed a duty to Tremont's investors to investigate Madoff, let alone to interfere with or manage the Tremont/Madoff relationship.  *See Musalli Factory*, 261 F.R.D. at 25 (aiding and abetting claim cannot be based on inaction where defendant owed no fiduciary duty to plaintiff).

Lastly, Plaintiff's allegation that "Defendant Oppenheimer markets several funds with the Tremont Defendants . . ." (Am. Compl. ¶ 29) is neither factually accurate nor legally relevant to the underlying wrongs alleged by Plaintiff.  Plaintiff intentionally conflates OAC and non-party OFI, which does of course market the public mutual funds it manages.  Such purported marketing activities by OFI cannot be linked to Tremont's alleged primary wrongs because Plaintiff does not allege (1) that it was ever even aware of such joint marketing, (2) that it ever invested in those funds, or (3) that those funds had *any* connection to Madoff (because they did not).  *See*, *e.g.*, *Marino*, 2011 WL 3837153, at *13 (dismissing aiding and abetting claim where the "participation" unrelated to alleged underlying wrong).

## II.   PLAINTIFF FAILS TO STATE A SECTION 20(A) CLAIM AGAINST OAC

Plaintiff's Section 20(a)[11] claim requires well-pled allegations of: "(1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) 'that the controlling person was in some meaningful sense a culpable participant' in the primary

---

[11]   The statute provides, in relevant part, that "[e]very person who, directly or indirectly, controls any person liable under any provision of [the Exchange Act] or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person."  15 U.S.C. § 78t(a).

violation." *ATSI Commn's, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) (citing *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996)).  Plaintiff has failed to plead adequately any of these essential elements of their Section 20(a) claim; the claim therefore should be dismissed.

### A.    Plaintiff Fails To State A Claim For A Primary Violation Of The Exchange Act By A "Controlled Person"

As set forth in the Tremont Br. at Point II., Plaintiff has failed to plead a primary violation of Section 10(b) or Rule 10b-5 by any of the Tremont entities.  Therefore, they also necessarily have failed to state a Section 20(a) claim against OAC.  *See, e.g., Wilson v. Merrill Lynch & Co.*, No. 10 Civ. 1528, 2011 WL 5515958, at *16 (2d Cir. Nov. 14, 2011) (affirming dismissal of Section 20(a) claim where plaintiff failed to plead primary violation); *accord  Saltz*, 782 F. Supp. 2d at 72-73, 75 (dismissing Section 20(a) claims for failure to plead underlying Section 10(b) violations in connection with Madoff fraud).

### B.    Plaintiff Fails To Adequately Allege That OAC "Controlled" Tremont

Plaintiff's Section 20(a) claim also fails to allege that OAC "controlled" any of the Tremont entities.  To plead control, plaintiff must allege the defendant "possessed the power to direct or cause the direction of the management and policies of defendant, whether through the ownership of voting securities, by contract, or otherwise." *First Jersey*, 101 F.3d at 1472-73. Plaintiff does not allege, as required to survive this motion, that OAC "not only ha[d] actual control over the primary violator, but ha[d] actual control over the *transaction* in question." *Cohen v. Stevanovich,* 722 F. Supp. 2d 416, 435 (S.D.N.Y. 2010) (emphasis in original).  In fact, Plaintiff itself correctly acknowledges that Tremont Partners was the party that "exercise[d] ultimate authority over the [XL Fund] and [was] responsible for the day-to-day and other operations of the [XL Fund]."  Am. Compl. ¶¶ 13-14, 19.  Plaintiff's conclusory assertion that

OAC "controlled" (*see, e.g., id.* ¶¶ 6, 32) Tremont, and unremarkable characterization of that parent/subsidiary relationship is insufficient to adequately plead "control." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 308 F. Supp. 2d 249, 274 (S.D.N.Y. 2004) ("[a]llegations of control must be substantial" and the court must conduct an individualized determination of defendant's control).

### 1.    The Mere Pleading Of A Parent/Subsidiary Relationship Is Inadequate

The mere fact that OAC was Tremont Group's parent company does not suffice to plead the actual control required by Section 20(a).  *See, e.g., In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2004 WL 1097786, at *3 (S.D.N.Y. May 18, 2004); *Public Employees' Ret. Sys. v. Merrill Lynch & Co.*, 714 F. Supp. 2d 475, 485 (S.D.N.Y. 2010).  In *WorldCom*, Judge Cote considered whether plaintiffs satisfied the minimal Fed. R. Civ. P. 8 pleading requirements for a controlling person claim by asserting that "Holding Company Defendants" were parents of entities that allegedly violated the federal securities laws.[12]  Finding that the mere pleading of a parent/subsidiary relationship is factually insufficient to support this contention, the court observed the "well-settled principle of corporate law that . . . a parent corporation and its subsidiary are regarded as legally distinct entities." *WorldCom*, 2004 WL 1097786, at *3.  Judge Cote therefore held that merely alleging controlling shareholder status or control by a corporate affiliate was insufficient as a matter of law to demonstrate "control" for purposes of pleading a control person claim under the federal securities laws.  *Id.*  Here, Plaintiff's mere invocation of OAC's status as a parent of Tremont Group is equally insufficient as a matter of law.

---

[12]       Although plaintiffs' claims of control in *WorldCom* were brought under Section 15 of the Securities Act of 1933, courts consistently hold that the "[e]xamination of control person liability under the Section 15 is governed by the same analysis as that used for control person liability under the Section 20(a) of the [Exchange Act]." *Id.* at *2 n.9; *see also, e.g., In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d 281, 352 (S.D.N.Y. 2003) (using "control" under Section 15 and Section 20(a) interchangeably).

### 2.     The Mere Pleading Of Common Directors Is Inadequate

Likewise, neither Plaintiff's contention that OAC was represented on Tremont Group's board, nor its vague and conclusory assertion that "MassMutual and Oppenheimer executives controlled the Tremont Defendants as directors," (Am. Compl. ¶ 112), establishes "control" for purposes of Section 20(a).  *See In re Flag Telecom*, 308 F. Supp. 2d at 273 (allegations that defendant's predecessor co-founded alleged controlled entity, owned a significant shareholding in that entity, and selected members of entity's board of directors were insufficient to establish control).  Rather, to state a Section 20(a) claim, Plaintiff must allege specifically how OAC possessed the power "to direct or cause the direction of the management" of Tremont.  *Kimmel v. Labenski*, No. 85 Civ. 0804, 1988 WL 19229, at *5 (S.D.N.Y. Feb. 10, 1988) (granting motion to dismiss Section 20(a) claim).

On this critical point, Plaintiff's allegations are wholly insufficient because Plaintiff fails to allege any facts that would support a reasonable inference that OAC exerted control over any of the Tremont entities' day-to-day affairs.  Plaintiff makes no attempt "to allege specifically" (*id.*) facts supporting its assertion that OAC "had the power to exercise complete control over the Tremont Defendants."  Am. Compl. ¶ 32.  Beyond this boilerplate allegation, Plaintiff does not allege that OAC, either directly or indirectly, was in any way involved in, or had control over, Tremont's management of the Funds, or any of the following: (1) establishing the investment strategy for either of the Funds; (2) selecting Madoff to manage the Market Fund; (3) performing due diligence as part of Tremont's selection of Madoff to manage the Market Fund; (4) monitoring Madoff's performance as manager of the Market Fund; (5) preparing or reviewing any offering materials for either of the Funds; (6) preparing or reviewing account statements for Plaintiff or any other investor in the XL Fund; (7) entering into any contract with respect to the

XL Fund with Plaintiff or the XL Fund and any swap counterparty; or (8) communicating with Plaintiff on any topic, much less with regard to Plaintiff's investment in the XL Fund.

The complete absence of any such allegations, especially given the high degree of public scrutiny over the Tremont/Madoff connection and the length of time that Plaintiff has had to prepare its amended complaint, is fatal to its claim against OAC. *See*, *e.g.*, *Ellison v. Am. Image Motor Co.*, 36 F. Supp. 2d 628, 642 (S.D.N.Y. 1999) (dismissing Section 20 claim where plaintiff's only allegations of control were "the naked assertion that [defendants] were 'officers' of the [controlled entity]" and where complaint was "devoid of any allegation as to how these [defendants] 'controlled' these companies").

### C.   Plaintiff Has Failed To Adequately Allege "Culpable Participation" By OAC In The Alleged Securities Fraud Committed By Tremont

Plaintiff's Complaint also omits any allegation of OAC's "culpable participation." *See CLAL Fin. Batucha Inv. Mgmt., Ltd. v. Perrigo Co.*, No. 09 Civ. 2255, 2010 WL 4177103, at *9 (S.D.N.Y. Oct. 7, 2010) (holding "'culpable participation' is a pleading requirement to state a § 20(a) claim" and dismissing claim). To plead culpable participation, Plaintiff must plead both: (1) that OAC had a culpable state of mind of, at a minimum, recklessness with regard to Tremont's alleged underlying wrongful conduct; and (2) that OAC engaged in some type of act constituting "participation" in Tremont's alleged underlying wrong. *See, e.g.*, *In re Emex Corp. Sec. Litig.*, No. 01 Civ. 4886, 2002 WL 31093612, at *10 (S.D.N.Y. Sept. 18, 2002) (dismissing Section 20(a) claim because plaintiff failed to plead "both fraudulent conduct and a culpable state of mind" of the alleged controlling person); *In re MBIA, Inc. Sec. Litig.*, 700 F. Supp. 2d 566, 598 (S.D.N.Y. 2010*)* ("[T]o withstand a motion to dismiss, a section 20(a) claim must allege, at a minimum, particularized facts of the controlling person's conscious misbehavior or recklessness.").

- 14 -

Moreover, Plaintiff's culpable participation allegations must meet the demanding heightened pleading requirements of the Private Securities Litigation Reform Act (the "PSLRA;" *see* 15 U.S.C. § 78u-4(b)(2)).  *See, e.g.*, *CLAL Fin.*, 2010 WL 4177103, at *9 (culpable participation "must be pled with particularity").  Plaintiff's failure to meet these rigorous standards and inability to plead "particularized facts . . . as to [OAC] regarding what [it] actually did" warrants dismissal.  *Id*.

First, as discussed above (*see* Section I.A., *supra*), Plaintiff does not (and cannot) allege particularized facts to suggest that OAC had knowledge, or even should have had knowledge, of any of Tremont's alleged misrepresentations -- another defect fatal to Plaintiff's claim.  *See In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 411 (S.D.N.Y. 2010) (dismissing Section 20(a) claim because "an inference of culpable participation is not 'at least as compelling' as the opposing inference that [Defendant] was not privy to Ivy's specific doubts about Madoff").  Nor does (or can) Plaintiff even allege that OAC had knowledge of the purported "red flags" of Madoff's fraud.  *See* Am. Compl. ¶¶ 53-57; *Deutsche Telekom AG Sec. Litig.*, No. 00 Civ. 9475, 2002 WL 244597, at *7 (S.D.N.Y. Feb. 20, 2002) (dismissing Section 20(a) claim where plaintiff failed to plead "with sufficient particularity that the [defendant] knew or should have known that the controlled person was engaging in fraudulent conduct").

Second, Plaintiff's Section 20(a) claim should be dismissed for the independent reason that Plaintiff makes no allegation of OAC's "participation" in Tremont's alleged misconduct.  *See* Section I.B., *supra*.  Plaintiff's allegation that OAC owns Tremont Group (Am. Compl. ¶ 130) has nothing to do with Tremont's purported fraudulent disclosures or its due diligence and monitoring of Madoff.  *See Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 413-14 (S.D.N.Y. 2010) (allegations of a defendant's "passive" role related to Madoff fraud insufficient

for purposes of culpable participation under Section 20(a).  As a matter of law, an allegation of stock ownership is not "culpable participation."  *Sedona Corp. v. Ladenburg Thalmann & Co.,* No. 03 Civ. 3120, 2005 WL 1902780, at *16 (S.D.N.Y. Aug. 9, 2005) (allegation that "publicly-filed documents with the SEC indicate that [primary violators] are wholly-owned subsidiaries of [defendant]" insufficient to allege culpable participation under Section 20(a)).

Similarly, that OAC was represented on Tremont's board does not demonstrate OAC's participation in Tremont's purported fraud.  Am. Compl. ¶ 112.  Not only is a parent's representation on its subsidiary's board routine, but Plaintiff again omits any facts from which this Court could infer that OAC's representation on Tremont Group's board bore any relationship to, or had any involvement with, either of the Funds' purported misleading offering documents or Tremont's allegedly inadequate due diligence and monitoring.  *See*, *e.g.*, *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 102 (2d Cir. 2001*)* (allegations "indicating only that certain employees worked for multiple defendants . . . are insufficient under § 20 as a matter of law").  Moreover, Plaintiff's allegation that OFI acted as the investment adviser for non-Madoff related funds that were managed by Tremont (Am. Compl. ¶¶ 117-19) fails to establish any conduct at all by OAC, let alone participation in the alleged misconduct related to the Funds.  *See In re Emex Corp.*, 2002 WL 31093612, at *11 (dismissing claim that "fail[s] to provide any particularized facts as to what [the defendants] are alleged to have done or failed to do as a participant in [the controlled person's] primary violation").

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant Oppenheimer Acquisition Corp. respectfully

submits that its motion to dismiss the Amended Complaint should be granted in its entirety and

with prejudice.

Dated:  New York, New York
        February 8, 2012

                                            DECHERT LLP

                                            By:  /s/ William K. Dodds
                                            William K. Dodds
                                            william.dodds@dechert.com
                                            David A. Kotler
                                            david.kotler@dechert.com
                                            1095 Avenue of the Americas
                                            New York, New York  10036
                                            Tel.: (212) 698-3500
                                            Fax: (212) 698-3599

                                            *Attorneys for Defendant Oppenheimer
                                            Acquisition Corp.*

14310765