PILLSBURY WINTHROP SHAW PITTMAN LLP
Maria T. Galeno
Greg T. Lembrich
1540 Broadway
New York, NY 10036-4039
Tel.: (212) 858-1000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | Master Docket No. 08-Civ-11117 (TPG) |
| F. DANIEL PRICKETT, <br><br> Plaintiff, <br><br> - against - <br><br> NEW YORK LIFE INSURANCE COMPANY, et al., <br><br> Defendants. | Civil Action No. 1:09-03137 (TPG) |

**MEMORANDUM OF LAW OF DEFENDANTS NEW YORK LIFE INSURANCE COMPANY AND NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

February 28, 2012

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND .................................................................................... 3

    A.  Prickett Purchases a VUL Policy From NYLIAC and Invests in TOF III ....................3

    B.  The NYLIAC PPM Was Not Part of the Policy ................................................5

    C.  Prickett Is a Sophisticated Investor ..............................................................5

    D.  NYLIAC Advised Prickett of the Risks of Investing .........................................5

    E.  Tremont Made Clear NYLIAC's Lack of Control Over TOF III's Investments and Selection of Managers .............................................................................6

LEGAL STANDARD ............................................................................................ 7

ARGUMENT ...................................................................................................... 7

I.      PLAINTIFF CANNOT ESTABLISH COMMON LAW FRAUD ................................... 7

    A.  Plaintiff's Fraud Claim Fails to Meet Rule 9(b)'s Heightened Pleading Requirements......8

    B.  Plaintiff's Fraud Claim Is Impermissibly Duplicative of His Contract Claim ..................9

    C.  Plaintiff Identifies No Misrepresentation by NYLIAC .........................................9

    D.  Plaintiff Fails to Adequately Allege that NYLIAC Acted with Fraudulent Intent ............11

    E.  Plaintiff Could Not Have Reasonably Relied on Any Purported Misrepresentation or Omission by NYLIAC ..............................................................................12

II.    PRICKETT'S NEGLIGENT MISREPRESENTATION CLAIM FAILS ...................... 14

    A.  NYLIAC Owed No Special Duty to Plaintiff ..................................................15

    B.  Plaintiff's Claim Is Barred by the Economic Loss Doctrine ................................15

    C.  Plaintiff's Claim Is Time-Barred ...............................................................15

III.   THE UNJUST ENRICHMENT CLAIM IS BARRED .................................... 16

IV.   NO BREACH OF FIDUCIARY DUTY CAN BE PROPERLY ALLEGED ................. 17

    A.  There Is No Fiduciary Relationship Between NYLIAC and Prickett ........................17

    B.  Plaintiff Fails to Allege that NYLIAC Breached Any Duty ..................................17

    C.  Plaintiff's Claim Fails to Satisfy Rule 9(b)'s Pleading Requirements ......................18

    D.  Plaintiff's Claim Is Time-Barred ...............................................................18

V.    PRICKETT FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT ............... 18

    A.  The Policy Did Not Impose the Obligations that NYLIAC Allegedly Breached ............19

    B.  The NYLIAC PPM Was Not a Contract Between Plaintiff and NYLIAC ......................20

VI.    PLAINTIFF CANNOT STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING ............................................... 21

    A.  Plaintiff's Claim Fails Because It Is Impermissibly Duplicative ..................................... 21

    B.  Prickett Fails to Allege Bad Faith ..................................................................................... 21

VII.   PRICKETT FAILS TO PLEAD A VIABLE CLAIM FOR VIOLATIONS OF N.Y. GENERAL BUSINESS LAW SECTION 349 .................................................................. 22

    A.  Section 349 Does Not Cover Securities-related Transactions ........................................... 22

    B.  Section 349 Does Not Apply to Large Commercial Transactions Between Sophisticated Parties .................................................................................................................................. 23

    C.  Prickett Fails to Plead a Misrepresentation ...................................................................... 24

VIII.  PLAINTIFF CANNOT PROVE LOSS CAUSATION ................................................... 24

IX.    PRICKETT CANNOT SUSTAIN A CLAIM FOR PUNITIVE DAMAGES ................. 24

CONCLUSION ........................................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*24/7 Records, Inc. v. Sony Music Entm't, Inc.*,
   429 F.3d 39 (2d Cir. 2005)....................................................................................19

*Adams v.  Intralinks, Inc.*,
   No. 03-cv-5384, 2004 WL 1627313 (S.D.N.Y.  July 20, 2004)................................ 13-14

*ALA. Holdings, S.A. v.  Lehman Bros., Inc.*,
   No. 97-4978, 1999 WL 47223 (S.D.N.Y.  February 3, 1999) ..........................................18

*Apfel v. Prudential-Bache Sec., Inc.*,
   183 A.D.2d 439 (1st Dep't 1992), *aff'd*, 81 N.Y.2d 470 (1993) ......................................21

*Araujo v. John Hancock Life Ins. Co.*,
   206 F.Supp.2d 377 (E.D.N.Y. 2002) ................................................................................23

*Arcadian Phosphates, Inc. v. Arcadian Corp.*,
   884 F.2d 69 (2d Cir. 1989)................................................................................................20

*Arnold Chevrolet LLC v. Tribune Co.*, No. 04 Civ. 3097,
   2007 WL 2743490 (E.D.N.Y. Sept. 17, 2007) .................................................................14

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009)........................................................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................................7

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J.*,
   448 F.3d 573 (2d Cir. 2006)..............................................................................................16

*BHC Interim Funding, L.P. v. Finantra Capital, Inc.*,
   283 F. Supp. 2d 968 (S.D.N.Y. 2003)........................................................................15, 17

*In re Blech Sec.  Litig.*,
   961 F.  Supp. 569 (S.D.N.Y. 1997)....................................................................................8

*Boyd v. Univ. of Illinois*, 96 Civ. 9327,
   2001 WL 246402 (S.D.N.Y. Mar. 13, 2001) ...................................................................21

*Bridgestone/Firestone v. Recovery Credit Servs.*,
   98 F.3d 13 (2d Cir. 1996) ..................................................................................................9

*Brody v. Brody*, No. 07-7981,
   2009 WL 436404 (S.D.N.Y. Feb. 17, 2009)....................................................................18

*CBS Broad., Inc. v. Jones*,
   460 F. Supp. 2d 500 (S.D.N.Y. 2006)..............................................................................16

500965780v5

*Chanayil v. Gulati*,
169 F.3d 168 (2d Cir. 1999)..............................................................8

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
70 N.Y.2d 382 (1987)......................................................................9

*Cohen v. Nassau Educators Fed. Credit Union*,
No. 15094-05, 2006 WL 1540324 (N.Y. Sup. Ct. May 10, 2006) ....................21

*Edelman v. O'Toole-Ewald Art Assocs., Inc.*,
28 A.D.3d 250 (1st Dep't 2006) ......................................................17

*Exxonmobil Inter-America, Inc. v. Advanced Info. Eng'g Servs., Inc.*,
328 F. Supp. 2d 443 (S.D.N.Y. 2004)..............................................23

*Feinman v. Schulman Berlin & Davis*,
677 F. Supp. 168 (S.D.N.Y. 1988)...............................................8, 13

*Fesseha v. TD Waterhouse Investor Servs., Inc.*,
193 Misc. 2d 253 (N.Y. Sup. Ct. 2002), *aff'd*, 305 A.D.2d 268 (1st Dep't 2003) ...... 22-23

*Fiala v. Metro. Life Ins. Co.*,
6 A.D.3d 320 (1st Dep't 2004) ......................................................17

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*,
376 F. Supp. 2d 385 (S.D.N.Y. 2005)..............................................11

*Gaidon v. Guardian Life Ins. Co. of Am.*,
255 A.D.2d 101 (1st Dep't 1998), *aff'd*, 96 N.Y.2d 201 (2001) ....................17

*Gaidon v. Guardian Life Ins. Co. of Am.*,
94 N.Y.2d 330 (1999)..............................................................22, 24

*Genesco Entm't v. Koch*,
593 F. Supp. 743 (S.D.N.Y. 1984)...................................................23

*Glonti v. Stevenson*, No. 08-8960,
2009 WL 311293 (S.D.N.Y. Feb. 6, 2009).....................................15, 16

*Goldman v. Metropolitan Life Ins. Co.*,
5 N.Y.3d 561 (2005) .....................................................................16

*Goldweber v. Harmony Partners, Ltd.*,
No. 09–61902, 2010 WL 3702508 (S.D. Fla. Sept. 16, 2010) .......................24

*Gray v. Seaboard Sec., Inc.*,
14 A.D.3d 852 (3rd Dep't 2005)........................................................22

*Harlan v. G.C. Williams Funeral Home, Inc.*,
No. 2007-CA-001266, 2008 WL 3165733 (Ky. App. Aug. 8, 2008).................19

*Harsco Corp. v. Segui*,
    91 F.3d 337 (2d Cir. 1996)......................................................................................8

*Hart v. Internet Wire, Inc.*,
    50 F. App'x 464 (2d Cir. 2002) ..........................................................................12

*Hydro Investors, Inc. v. Trafalgar Power Inc.*,
    227 F.3d 8 (2d Cir. 2000) ....................................................................................14

*In re Bayou Hedge Fund Litig.*,
    534 F. Supp. 2d 405 (S.D.N.Y. 2007)................................................................12

*In re Beacon Assocs. Litig.*,
    745 F. Supp. 2d 386 (S.D.N.Y. 2010)................................................................12

*In re Evergreen Mut. Funds Fee Litig.*,
    423 F. Supp. 2d 249 (S.D.N.Y. 2006)................................................................22

*In re J.P. Jeanneret Associates, Inc.*,
    769 F. Supp. 2d 340 (S.D.N.Y. 2011)..........................................................11, 12

*In re Marsh & Mclennan Cos., Inc. Secs. Litig.*,
    501 F.Supp.2d 452 (S.D.N.Y.2006)....................................................................12

*In re Merkin*, No. 08 Civ. 10922,
    2011 WL 4435873 (S.D.N.Y. Sept. 23, 2011)........................................2, 10, 11

*In re Morgan Stanley Info. Fund Sec. Litig.*,
    592 F.3d 347 (2d Cir. 2010)................................................................................13

*In re Tower Auto. Sec. Litig.*,
    483 F. Supp. 2d 327 (S.D.N.Y. 2007)..................................................................7

*In re Tremont Sec. Law, State Law and Ins. Litig.*,
    703 F. Supp. 2d 362 (S.D.N.Y. 2010)..................................................1-2, 11-12

*Kassover v. UBS AG*,
    619 F. Supp. 2d 28 (S.D.N.Y. 2008)..................................................................22

*Linton v. New York Life Insurance and Annuity Corp.*,
    Civil Action No. 04-11362-RWZ, slip op. (D. Mass. Sept. 18, 2006) .............20

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*,
    244 F.R.D. 204 (S.D.N.Y. 2007) .......................................................................15

*Matsumura v. Benihana Nat'l Corp.*,
    542 F. Supp. 2d 245 (S.D.N.Y. 2008)................................................. 10-11, 14

*Michael S. Rulle Family Dynasty Tr. v. AGL Life Assurance Co.*,
    No. 10-231, 2010 WL 3522135 (E.D. Pa. Sept. 8, 2010), *aff'd*,  No. 10-4034,
    2011 WL 3510285 (3d Cir. Aug. 11, 2011)......................................................24

*Millenium Expressions, Inc. v. Chauss Marketing, Ltd.*,
   No. 02 Civ. 7545, 2007 WL 950070 (S.D.N.Y. Mar. 30, 2007) .......................................16

*MLSMK Invs. Co. v. JP Morgan Chase & Co.*,
   737 F. Supp. 2d 137 (S.D.N.Y. 2010), *aff'd*, 651 F.3d 268 (2d Cir. 2011).......................12

*Musalli Factory For Gold & Jewelry v. JPMorgan Chase Bank, N.A.*, No. 08-01720,
   2009 WL 860635 (S.D.N.Y. Mar. 31, 2009), *aff'd*, 382 F. App'x 107 (2d Cir. 2010) .....14

*New York Univ. v. Continental Ins. Co.*,
   87 N.Y.2d 308 (1995) ...................................................................................................23

*Newman v. Family Mgm't. Corp.*,
   748 F. Supp. 2d 299 (S.D.N.Y. 2010) ...........................................................................12

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)............................................................................................11

*Ogden Martin Sys. of Tulsa, Inc. v. Tri-Continental Leasing Corp.*,
   734 F. Supp. 1057 (S.D.N.Y. 1990)................................................................................20

*Olkey v. Hyperion 1999 Term Trust, Inc.*,
   98 F.3d 2 (2d Cir. 1996)..................................................................................................13

*Pelman v. McDonald's Corp.*,
   272 F.R.D. 82 (S.D.N.Y. 2010) .....................................................................................24

*PPI Enters. (U.S.) v. Del Monte Foods Co.*,
   No. 99 Civ 3794, 2003 WL 22118977 (S.D.N.Y. Sept. 11, 2003)..................................15

*Prospect St. Ventures I, LLC v. Eclipsys Solutions Corp.*,
   23 A.D.2d 213 (1st Dep't 2005) .....................................................................................22

*S.E.C. v. Cohmad Sec. Corp.*, No.  09 Civ. 5680,
   2010 WL 363844 (S.D.N.Y. Feb. 2, 2010)......................................................................12

*SEC v. Variable Annuity Life Ins. Co. of America*,
   359 U.S. 65 (1959)...........................................................................................................23

*Sable v. Southmark/Envicon Capital Corp.*,
   819 F. Supp. 324 (S.D.N.Y. 1993)...................................................................................14

*Saltz v. First Frontier, LP*,
   782 F. Supp. 2d 61 (S.D.N.Y. 2010)................................................................................12

*Schulman v. Delaire*, No. 10 Civ. 3639,
   2011 WL 672002 (S.D.N.Y. Feb. 22, 2011)....................................................................11

*Scone Invs., L.P. v. Am. Third Market Corp.*,
   No. 97-3802, 1998 WL 205338 (S.D.N.Y. April 28, 1998) ...............................................8

*SCS Commc'ns, Inc. v. Herrick Co.*,
  360 F.3d 329 (2d Cir. 2004)...................................................................17

*Shapiro v. Berkshire Life Ins. Co.*,
  212 F.3d 121 (2d Cir. 2000)...................................................................22

*SNS Bank, N.V. v. Citibank, N.A.*,
  7 A.D.3d 352 (1st Dep't 2004) ..............................................................22

*Sotheby's Fin. Servs., Inc. v. Baran*,
  107 F. App'x. 235 (2d Cir. 2004) ..........................................................18

*South Cherry St., LLC v. Hennessee Grp. LLC*,
  573 F.3d 98 (2d Cir. 2009)..............................................................11, 12

*Stephenson v. Citco Grp. Ltd.*,
  700 F. Supp. 2d 599 (S.D.N.Y. 2010).....................................................12

*Stewart v. Jackson & Nash*,
  976 F.2d 86 (2d Cir.1992)......................................................................15

*Three Crown Ltd. P'ship v. Caxton Corp.*,
  817 F. Supp. 1033 (S.D.N.Y. 1993)..........................................................8

*Topps Co. v. Cadbury Stani S.A.I.C.*,
  380 F. Supp. 2d 250 (S.D.N.Y. 2005)......................................................25

*Triton Partners  LLC v. Prudential Sec. Inc.*,
  301 A.D.2d 411 (1st Dep't 2003) ...........................................................21

*U.S. for Use and Benefit of Evergreen Pipeline Const. Co., Inc. v. Merritt Meridian
  Const. Corp.*,
  95 F.3d 153 (2d Cir. 1996)........................................................................9

*W.S.A., Inc., v. ACA Corp.*, Nos. 94 Civ. 1868 and 94 Civ. 1493,
  1996 WL 551599 (S.D.N.Y. Sept. 27, 1996).........................................21

*Washington v. Kellwood Co.*, No. 05 Civ. 10034,
  2009 WL 855652 (S.D.N.Y. Mar. 24, 2009) .........................................21

*Wolff v. Rare Medium, Inc.*,
  171 F. Supp. 2d 354 (S.D.N.Y. 2001)......................................................19

*Wynn v. AC Rochester*,
  273 F.3d 153 (2d Cir. 2001).....................................................................11

*Yak v. Bank Brussels Lambert*,
  252 F.3d 127 (2d Cir. 2001)........................................................................7

*Yucyco Ltd. v.  Rep. of Croatia*,
  No. 96-5559,1997 WL 728173 (S.D.N.Y. Nov. 19, 1997)...............22

## CODES, RULES AND STATUTES

Fed. R. Civ. P. 9(b) ...................................................................................8, 14, 18

Fed. R. Civ. P. 12(b)(6)..................................................................................1, 7

N.Y. C.P.L.R. § 214 (McKinney 2011) ........................................................15, 18

## PRELIMINARY STATEMENT

Defendants New York Life Insurance Company ("New York Life") and New York Life Insurance and Annuity Corporation ("NYLIAC"), submit this memorandum in support of their motion to dismiss the Amended Complaint ("Complaint" or "Compl.") of Plaintiff F. Daniel Prickett ("Plaintiff" or "Prickett") under Rule 12(b)(6).[1]

Plaintiff improperly seeks to blame NYLIAC for losses Plaintiff incurred in one of the largest Ponzi schemes in history, simply because NYLIAC offered to purchasers of its variable universal life insurance ("VUL") policies the option – on a platform offering numerous other options – to invest in the Tremont Opportunity Fund III ("TOF III"), which was, in turn, invested in the Rye Funds, which were, in turn, invested with Bernard L. Madoff Investment Securities LLC ("BMIS"). Plaintiff asserts his claims notwithstanding that Plaintiff, a sophisticated investor, was informed in writing that he was responsible for his own investment decisions and any losses that might follow, was advised to seek independent opinions before investing, and later made a conscious election to invest with Tremont Partners, Inc. ("Tremont") in TOF III.

The gist of Plaintiff's Complaint is that NYLIAC failed to monitor Madoff's activities and detect his fraud, allegedly ignoring certain warning signals or "red flags" that Madoff's operations were not legitimate. The problem for Plaintiff, however, is that such arguments have been soundly and repeatedly rejected by nearly every court to have considered them, including almost a dozen courts in this federal district alone. In an environment where the SEC and other regulatory bodies responsible for monitoring Madoff's activities failed to detect his crimes, this Court has aptly observed that the "more compelling inference as to why Madoff's fraud went undetected for two decades was his proficiency in covering up his scheme and eluding the SEC

---

[1] New York Life has no involvement in this case other than as parent company to NYLIAC. *See* Compl. ¶ 18. That fact, without more, provides no basis to name New York Life as a defendant in this action. All claims against New York Life should be dismissed on that ground alone.

and other financial professionals." *In re Tremont Sec. Law, State Law and Ins. Litig.*, 703 F. Supp. 2d 362, 371 (S.D.N.Y. 2010).

Plaintiff's complaint is filled with inadequate, conclusory allegations, most of which are addressed to "Defendants" collectively, including "Tremont, Rye, Rye Funds, Oppenheimer, MassMutual Holding, and MassMutual," without specificity as to which entity is supposedly responsible for the conduct alleged.  Indeed, the only specific allegations against NYLIAC relate to purported misrepresentations in NYLIAC's Private Placement Memorandum ("PPM") for its VUL policies.  At the time Plaintiff purchased his Policy and received the PPM, however, TOF III was *not* an investment option on NYLIAC's platform, so NYLIAC could not have made misrepresentations with respect to it.

NYLIAC's PPM, moreover, is replete with explicit cautionary language, such as "You bear the entire investment risk under the Policy,"[2] and "Investing in a Policy involves substantial risks including the possible loss of Your entire investment," which put Plaintiff on notice of the risks of his investment decisions.  The NYLIAC PPM further cautioned, "The securities to be purchased and traded by the Funds and the investment techniques and strategies to be employed by the Funds may increase this risk.  The theories behind the investment strategy may be untested and may be difficult or impossible to execute on.  There can be no assurance that a Fund will not incur losses."  As one Court in this District has held in dismissing Madoff-related claims for securities fraud, "Plaintiffs cannot be permitted to 'cherry pick' language from the offering memoranda, and then ignore explicit cautionary language, which warned Plaintiffs that third-party managers would have custody over the Funds' assets and that this custody carried a risk of loss." *In re Merkin*, No. 08 Civ. 10922, 2011 WL 4435873, at *7 (S.D.N.Y. Sept. 23, 2011).

---

[2]   All emphasis in quotations herein is in original unless otherwise noted.

As set forth more fully below, each of Plaintiff's claims against NYLIAC fails and should be dismissed with prejudice.

- *First*, Plaintiff has failed to plead his common law fraud claim with the particularity required under Rule 9(b) and has failed to adequately allege a misrepresentation or that NYLIAC acted with fraudulent intent or that Plaintiff *reasonably* relied upon any specific misrepresentations by NYLIAC.  The common law fraud claim is also barred as duplicative of Plaintiff's contract claim.  *See* § I, *infra*.

- *Second*, Plaintiff's negligent misrepresentation claim fails because, in addition to Plaintiff's failure to adequately plead reasonable reliance, NYLIAC owed no special duty to Plaintiff, nor was there a special relationship between the parties.  In addition, both the economic loss doctrine and the applicable statute of limitations bar such a claim.  *See* § II, *infra*.

- *Third*, Plaintiff's unjust enrichment claim fails because such a quasi-contractual claim cannot be pled where there is a contract between the parties.  *See* § III, *infra*.

- *Fourth*, Plaintiff cannot state a claim against NYLIAC for breach of fiduciary duty because no fiduciary duty exists between an insurer and an insured under New York law, no breach was adequately pled with specificity, and such claim is time-barred.  *See* § IV, *infra*.

- *Fifth*, the fact that NYLIAC did not uncover Madoff's fraud was not a breach of any agreement with Plaintiff and thus Plaintiff's breach of contract claim fails.  The only contract between Plaintiff and NYLIAC is the Policy; the NYLIAC and Tremont PPMs separately provided to Plaintiff did not constitute contracts between Plaintiff and NYLIAC, nor were such materials part of the Policy purchased by Plaintiff.  *See* § V, *infra*.

- *Sixth*, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing fails because it is duplicative of Plaintiff's contract claim and because Plaintiff does not sufficiently allege bad faith on the part of NYLIAC.  *See* § VI, *infra*.

- *Finally*, Plaintiff's claim alleging violations of New York General Business Law § 349 fails because that statute does not apply to securities-related transactions or to large commercial transactions between sophisticated parties (such as those here), and Plaintiff has failed to plead a misrepresentation.  *See* § VII, *infra*.

## FACTUAL BACKGROUND

### A.    Prickett Purchases a VUL Policy From NYLIAC and Invests in TOF III

Prickett purchased a variable universal life insurance policy from NYLIAC ("the Policy")

in May 2003.  Compl. ¶¶ 2, 34; *see also* Ex. A (Prickett VUL policy dated May 12, 2003).[3]  The

Policy had a face amount of $6,394,951 and an initial premium of $928,044.90.  *Id.*  In addition

to the insurance component of the Policy, Prickett had the opportunity to accumulate tax-free

"cash value" within his Policy that could be invested "in a choice of separate accounts, similar to

mutual funds." *Id.* ¶¶ 35-37.

Prior to purchasing the Policy in April 2003, Plaintiff received NYLIAC's Variable Life

Insurance Policy Private Offering Memorandum (the "NYLIAC PPM").  *See id.* ¶ 44; Ex. B

(NYLIAC PPM) at i.   The NYLIAC PPM listed a dozen investment choices (deemed "Portfolio

Options").  *See id.* at 8, SP-11.  TOF III was not included among the investment options

available to NYLIAC VUL policyholders when Plaintiff purchased the Policy.  *See id.* at SP-11.

A year later, in May 2004, Plaintiff elected to invest $426,106.82 of his Policy premiums

in TOF III (then known as the American Masters Opportunity Insurance Fund, L.P. ("AMO")),

which had recently become available on NYLIAC's VUL platform.  Compl. ¶¶ 2, 34.  Plaintiff

made this allocation by submitting a check for additional premiums, along with a Fund Change

and Investment Option Form.  *See* Ex. C (Prickett Fund Change and Investment Option Form

dated May 4, 2004).  At the time of Plaintiff's election, however, AMO was not yet listed on the

Fund Change and Investment Option Form, so Plaintiff affirmatively wrote the name of the fund

by hand on the form, and included a handwritten note to his Plan Administrator to invest 100%

of the new premium in that fund.  *See id.*

Also in May 2004, Plaintiff received the American Masters Opportunity Insurance Fund,

L.P. Confidential Private Placement Memorandum (the "Tremont PPM").  *Id.* ¶ 44; Ex. D

(Tremont PPM).  TOF III is a limited partnership managed by Tremont, the General Partner of

the Fund.  *See id.* at iii; Compl. ¶¶ 22, 25, 64, 76.  NYLIAC was a Limited Partner in TOF III.

---

[3]   References to lettered exhibits are to documents attached to the Declaration of Maria T. Galeno, dated February
28, 2012.

Ex. D at 28.  Plaintiff subsequently continued to invest premiums in TOF III.  By October 2008,

Plaintiff's account statement showed a balance of $1,138,697.62 in TOF III.  Compl. ¶¶ 2, 34.

**B.      The NYLIAC PPM Was Not Part of the Policy**

Prickett's Policy stated on the first page that "The Policy is a legal contract between the

Policy Owner and the Corporation."  *See* Ex. A (Prickett VUL policy dated May 12, 2003) at 1.

The Policy also set forth the documents that were *exclusively* included as part of the contract:

"The entire contract between the applicant and Us consists of the policy, such application, and

any riders and endorsements." *Id.* at 22.  NYLIAC's PPM was not included among the

documents that were part of the contract.  *See id.*

**C.      Prickett Is a Sophisticated Investor**

NYLIAC's VUL policies were available only to Accredited Investors and Qualified

Purchasers (i.e., "Eligible Investors") who could demonstrate to NYLIAC their financial means

and sophistication through a "Prospective Purchaser Questionnaire and Agreement." Ex. B at ii,

iii, 5-6.[4]  Prickett, who identified himself in his Application for the Policy as a "Banker -

Managing Executive" at Wachovia Bank, submitted such a form to NYLIAC certifying his status

as an Accredited Investor and a Qualified Purchaser.  Ex. E (Prickett Application dated April 25,

2003); Ex. F (Prickett Prospective Purchaser Questionnaire and Agreement).  The NYLIAC PPM

distributed to prospective purchasers expressly stated that VUL policies are "suitable only for

individuals and entities of substantial economic means … [who] are familiar with and understand

the fundamental risks and financial hazards of purchasing the Policy."  Ex. B at iii.

**D.      NYLIAC Advised Prickett of the Risks of Investing**

Prior to purchasing the Policy, Plaintiff received a copy of the NYLIAC PPM, which was

replete with cautionary language advising him that he was assuming the risk of loss of his

---

[4]   The terms "Accredited Investor" and "Qualified Purchaser" are defined in the Securities Act of 1933 and the
       Investment Advisers Act of 1940.  *See* Ex. 1 at 10.

investments and that he should seek independent advice before investing.  *See* Compl. ¶ 44.

The NYLIAC PPM warned prospective purchasers, including Prickett, that investment results under a VUL policy could not be guaranteed and that policyholders bore the risk of any premium losses suffered from VUL investments.  *See, e.g.,* Ex. B at ii ("<u>You bear the entire investment risk under the Policy</u>."); *id.* at iii (**"Investing in a policy involves risks including the possible loss of Your entire investment."**); *id.* at 5 ("<u>Investing in a Policy involves substantial risks</u> including the possible loss of Your entire investment.").  NYLIAC cautioned that the "securities to be purchased and traded by the Funds and the investment techniques and strategies to be employed by the Funds may increase this risk" of loss and that the "theories behind the investment strategy of a Fund may be untested and may be difficult or impossible to execute on."  *Id.* at 33.  NYLIAC explicitly stated that it did not guarantee the performance of any of the investment divisions available for election under a VUL policy.  *See id.* at 8 ("THERE CAN BE NO ASSURANCE THAT ANY FUND WILL ACHIEVE ITS INVESTMENT OBJECTIVE").  NYLIAC specifically cautioned prospective purchasers that investment in exempt funds, like TOF III, "may entail more risks than traditional investments."  *Id.* at 7-8.

The NYLIAC PPM advised Plaintiff that "You must make Your own evaluation of the risk of investing in the Policy."  *Id.* at 33.  NYLIAC also urged each prospective buyer to "seek independent advisory services with regard to the legal, economic, tax and related matters concerning the purchase of the Policy."  *Id.* at iii.

### E.    Tremont Made Clear NYLIAC's Lack of Control Over TOF III's Investments and Selection of Managers

Prior to his election to allocate his premiums to TOF III in May 2004, Prickett also received a copy of Tremont's PPM for TOF III.  Compl. ¶ 44.  The Tremont PPM, in addition to containing cautionary language similar to that found in the NYLIAC PPM of the risk of total loss of investment, explained that Limited Partners in TOF III, like NYLIAC, had *no right* to

participate in the Fund's selection of investments or managers.  Ex. D at iii ("The General

Partner is responsible for selecting the Partnership's Managers, allocating assets  among

Managers and monitoring the Partnership's investments."); *id.* at 28 ("The Limited Partners

cannot take part in the management or control of the Partnership's business, which is the sole

responsibility of the General Partner. The General Partner has wide latitude in making

investment decisions.").

## LEGAL STANDARD

To survive a motion under Fed. R. Civ. P. 12(b)(6), a plaintiff must set forth the grounds

upon which his claim rests through factual allegations sufficient "to raise a right to relief above

the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The requirement

to accept as true all factual allegations set forth in the complaint and draw all reasonable

inferences in favor of the plaintiff is "inapplicable to legal conclusions," which should be

disregarded. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Nor should a court "accept as true

a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

In ruling on a motion to dismiss, a district court may consider any written instrument

attached to the complaint, statements or documents incorporated into the complaint by reference,

and documents possessed by or known to the plaintiff and upon which it relied in bringing the

suit. *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001).  "[T]he truth of factual

allegations that are contradicted by documents properly considered on a motion to dismiss need

not be accepted." *In re Tower Auto. Sec. Litig.*, 483 F. Supp. 2d 327, 334 (S.D.N.Y. 2007).

## ARGUMENT

## I.    PLAINTIFF CANNOT ESTABLISH COMMON LAW FRAUD

Plaintiff's common law fraud claim fails to satisfy the heightened pleading requirements

of Federal Rule of Civil Procedure 9(b), is duplicative of his contract claim, and fails to

adequately allege a misrepresentation or intent to defraud by NYLIAC or reasonable reliance by Plaintiff.[5]

### A.     Plaintiff's Fraud Claim Fails to Meet Rule 9(b)'s Heightened Pleading Requirements

"Rule 9(b) requires that allegations of fraud be pleaded with particularity" and "when a complaint charges fraud, it must (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *See Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996). Plaintiff's fraud claim fails to distinguish which fraud allegations apply to which defendant, and which statements or omissions support his claim. *See, e.g.*, Compl. ¶ 163 (referring only to "statements and representations made by Defendants"). Plaintiff goes so far as to allege that defendants, collectively, had "extensive and prolonged business relationships with Madoff." *Id.* ¶ 8. But Plaintiff does not, and cannot, make that allegation against NYLIAC specifically. Such vague pleading violates the Rule 9(b) standard and requires dismissal. *See Three Crown Ltd. P'ship v. Caxton Corp.*, 817 F. Supp. 1033, 1040 (S.D.N.Y. 1993) ("[W]here multiple defendants are charged with fraud, the complaint must be specific as to the nature of each defendant's alleged participation in the fraud") ; *see also In re Blech Sec. Litig.*, 961 F. Supp. 569, 580 (S.D.N.Y. 1997) ("Rule 9(b) is not satisfied by a complaint in which defendants are clumped together in vague allegations.").[6]

---

[5]  Under New York law, the elements of a common law fraud claim are: (1) a material, false representation, (2) an intent to defraud thereby, (3) reasonable reliance on the representation, and (4) resulting damage to the plaintiff. *Chanayil v. Gulati*, 169 F.3d 168, 171 (2d Cir. 1999).

[6]  Plaintiff also incorporates all allegations made in the Amended Complaint into his common law fraud count, again without specifying which representations or omissions form the basis of his claim and/or which defendant was allegedly responsible for each. Compl. ¶ 162 ("Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein."). This "shotgun" or "grab bag" pleading style fails to satisfy Rule 9(b)'s requirements. *See, e.g.*, *Feinman v. Schulman Berlin & Davis*, 677 F. Supp. 168, 172 (S.D.N.Y. 2002) (dismissing fraud claim under Rule 9(b) due to "'grab bag' pleading style"); *Scone Invs., L.P. v. Am. Third Market Corp.*, No. 97-3802, 1998 WL 205338, at *7 (S.D.N.Y. April 28, 1998) (dismissing fraud claim because plaintiff's "shotgun pleading contravenes Rule 9(b)").

**B.     Plaintiff's Fraud Claim Is Impermissibly Duplicative of His Contract Claim**

The allegations in Plaintiff's fraud claim, that Defendants (including NYLIAC) made statements that caused Plaintiff to allocate premiums to TOF III and failed to protect Plaintiff from the losses suffered due to Madoff's fraud, are essentially the same as those set forth in his breach of contract claim.  Indeed, Prickett acknowledges that his relationship with NYLIAC was governed by a contract.  *See* Compl. ¶ 194.  Under such circumstances, Prickett cannot state a separate tort claim; his claims, if any, sound only in contract.  "It has long been New York law that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated."  *U.S. for Use and Benefit of Evergreen Pipeline Const. Co., Inc. v. Merritt Meridian Const. Corp.*, 95 F.3d 153, 162 (2d Cir. 1996) (*quoting Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987)).  New York courts have thus consistently rejected the notion that plaintiffs dissatisfied with their remedies under a contract cause of action may simply recast that action as a fraud claim.  *See, e.g.*, *Bridgestone/Firestone v. Recovery Credit Servs.*, 98 F.3d 13, 19-20 (2d Cir. 1996) (allegations amounting to a breach of contract are "not sufficient to support a claim of fraud under New York law").  Because Prickett's fraud allegations are essentially identical to his contract claim, his common law fraud claim is barred under New York law.

**C.     Plaintiff Identifies No Misrepresentation by NYLIAC**

Plaintiff fails to allege any fraudulent statement attributable to NYLIAC.  Instead, Plaintiff refers to innocuous statements in NYLIAC's PPM (such as that NYLIAC will select the funds for its platform and that the investment divisions would invest fund assets in a "portfolio of securities") and mischaracterizes them as false (*see* Compl. ¶¶ 45-54) because TOF III, the investment division that Plaintiff selected, was partially invested in the Rye Funds, which turned out to be part of Madoff's fraudulent Ponzi scheme, which went undetected for decades by the

SEC and other regulatory authorities.  Such circumstances simply do not support a legally

cognizable allegation that a false representation was made by NYLIAC.  This is particularly so

given that TOF III was not even available as an investment option for NYLIAC's VUL policies

at the time that Plaintiff received both the NYLIAC PPM and his Policy, the very documents that

Plaintiff alleges contained the false statements.  *See* Ex. B at SP-11.

Indeed, to the extent that Plaintiff is relying upon any statements in NYLIAC's PPM to

establish a misrepresentation, Plaintiff's effort must fail.  In *Merkin*, a recent Madoff-related

case, the Court stated "Plaintiffs cannot be permitted to 'cherry pick' language from the offering

memoranda, and then ignore explicit cautionary language, which warned Plaintiffs that third-

party managers would have custody over the Funds' assets and that this custody carried a risk of

loss."  *Merkin*, 2011 WL 4435873, at *7 (finding that, when taken "in conjunction with this

cautionary language, it is clear there was no actual misrepresentation by Defendants").

Plaintiff's allegation that NYLIAC "issued periodic statements that completely

misrepresented the value of Plaintiff's investment in the Tremont Fund" (Compl. ¶ 61) is simply

frivolous.  The Tremont PPM makes clear that Tremont, the General Partner of TOF III, was

responsible for investing the fund's assets, not NYLIAC.  Ex. D at iii ("The General Partner is

responsible for selecting the Partnership's Managers, allocating assets  among Managers and

monitoring the Partnership's investments.").  Plaintiff does not, and cannot, allege that NYLIAC

did anything more or less than pass along the account values provided to it by Tremont, or that

NYLIAC knew that such values were not accurate.

To the extent that the Amended Complaint attempts to identify specific

misrepresentations regarding supervision of Madoff, all such misrepresentations are alleged to

have been made by Tremont, not NYLIAC.  *See* Compl. ¶¶ 65-72.  Thus, Plaintiff has failed to

adequately allege the first element of fraud.  *Matsumura v.  Benihana Nat'l Corp.*, 542 F. Supp.

2d 245, 252-54 (S.D.N.Y. 2008) (dismissing fraud claim where plaintiff failed to allege any legally cognizable misrepresentation).

### D.   Plaintiff Fails to Adequately Allege that NYLIAC Acted with Fraudulent Intent

The scienter element of a fraud claim can be satisfied by alleging facts (1) demonstrating that a defendant had motive and opportunity to commit fraud, or (2) providing evidence of conscious recklessness.  *See South Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 108–09 (2d Cir. 2009).  "[C]onscious recklessness" is "a state of mind approximating actual intent, and not merely a heightened form of negligence." *Id.* at 109 (*quoting Novak v. Kasaks*, 216 F.3d 300, 312 (2d Cir. 2000)).  Such recklessness is "at the least, ... an extreme departure from the standards of ordinary care ... to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Id.* at 308.

Here, Plaintiff argues that NYLIAC failed to perform sufficient due diligence to ferret out Madoff's fraud, ignoring purported "red flags" that allegedly should have caused NYLIAC to suspect that Madoff's operations were fraudulent.  *See, e.g.*, Compl. ¶¶ 74-92.  Such allegations are not enough to demonstrate conscious misbehavior or recklessness.  In fact, identical "red flag" allegations have been consistently rejected by courts considering claims brought in the wake of the Madoff fraud.  Already, nearly a dozen cases in this district alone have found such "red flags" insufficient to support claims (sounding in securities fraud or common law fraud) that defendants knew or should have known of the Madoff fraud.[7]  *See In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340 (S.D.N.Y. 2011) (McMahon, J.); *Merkin*, 2011 WL 4435873 (S.D.N.Y. Sept. 23, 2011) (Batts, J.); *Schulman v. Delaire*, No. 10 Civ. 3639, 2011 WL 672002 (S.D.N.Y. Feb. 22, 2011) (Baer, J.); *In re Tremont*, 703 F. Supp. 2d 362 (S.D.N.Y. 2010)

---

[7]  Common law fraud under New York law has the same essential required elements as a section 10(b) securities fraud claim. *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001); *see also Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*, 376 F. Supp. 2d 385, 407 (S.D.N.Y. 2005).

(Griesa, J.); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386 (S.D.N.Y. 2010) (Sand, J.);

*Stephenson v. Citco Grp. Ltd.*, 700 F. Supp. 2d 599 (S.D.N.Y. 2010) (Holwell, J.); *Saltz v. First*

*Frontier, LP*, 782 F. Supp. 2d 61 (S.D.N.Y. 2010) (Sand, J.); *S.E.C. v. Cohmad Sec. Corp.*, No.

09 Civ. 5680, 2010 WL 363844 (S.D.N.Y. Feb. 2, 2010) (Stanton, J.); *Newman v. Family Mgmt.*

*Corp.*, 748 F. Supp. 2d 299 (S.D.N.Y. 2010) (Sand, J.); *MLSMK Invs. Co. v. JP Morgan Chase*

*& Co.*, 737 F. Supp. 2d 137 (S.D.N.Y. 2010) (Jones, J.), *aff'd*, 651 F.3d 268 (2d Cir. 2011).

Courts have specifically found "red flag" allegations inadequate to plead scienter with

respect to fraud claims in Madoff-related cases.  *See, e.g.*, *Jeanneret*, 769 F. Supp. 2d at 366

("Plaintiffs' 'red flags' theory of scienter is no different from the theory rejected by this court

and the Second Circuit in *South Cherry*: had [defendant] investigated Madoff, it would have

learned that he was a fraud."); *Newman*, 748 F. Supp. 2d at 309-11 ("For twenty years, Madoff

operated this fraud without being discovered and with only a handful of investors withdrawing

their funds as a result of their suspicions. The actions of the minority cannot support an inference

of intent to defraud as to the numerous other investors who were still in the dark."); *In re*

*Beacon*, 745 F.Supp.2d at 414 (applying *South Cherry* and holding that allegations that managers

of funds that invested with Madoff failed to heed red flags did not support a finding of scienter).[8]

Prickett's "red flag" allegations likewise fail to establish scienter.

E.     **Plaintiff Could Not Have Reasonably Relied on Any Purported**
       **Misrepresentation or Omission by NYLIAC**

Prickett also cannot support an allegation that he reasonably relied on any

---

[8]   This body of case law is consistent with Second Circuit authority and other case law in this District.  *See South Cherry*, 573 F.3d at 100-01, 112 (affirming dismissal of fraud claim for failure to plead scienter notwithstanding that defendant investment advisor had represented to plaintiff that it had conducted a "rigorous five step due diligence process" and had promised to "perform on-going due diligence" on plaintiff's investments); *Hart v. Internet Wire, Inc.*, 50 Fed.  App'x 464, 466 (2d Cir. 2002) (holding that plaintiffs failed adequately to plead scienter in alleging that "defendants recklessly ignored or failed to investigate 'red flags'"); *In re Bayou Hedge Fund Litig.*, 534 F.  Supp. 2d 405, 417 (S.D.N.Y. 2007) ("The failure to conduct due diligence is not the same thing as knowing of or closing one's eyes to a known 'danger,' or participating in the fraud."); *In re Marsh & Mclennan Cos., Inc. Secs. Litig.*, 501 F.Supp.2d 452, 487 (S.D.N.Y.2006)  ("Merely labeling allegations as red flags ... is insufficient to make those allegations relevant to a defendant's scienter.").

misrepresentation or omission purportedly made by NYLIAC given the multitude of disclaimers and other cautionary language in the NYLIAC PPM.  Far from "endorsing" Plaintiff's investments in TOF III, the NYLIAC PPM repeatedly advised Plaintiff that: (1) he risked losing his entire investment; (2) he should do his own evaluation of the investment and seek independent advice before investing; and (3) investing in exempt funds of funds like TOF III posed specific additional risks.  *See* Factual Background § D, *supra*.  Moreover, the Tremont PPM advised Plaintiff that NYLIAC, as a Limited Partner in TOF III, could not participate in TOF III's selection of investments or managers, and that Tremont, the General Partner, had sole responsibility to monitor TOF III's investments.  *See* Factual Background § E, *supra*.

In evaluating alleged reliance on statements contained in offering memoranda and prospectuses, courts have held that such statements must be read in the context of the entire document.  *See, e.g., In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 365–66 (2d Cir. 2010) ( "When analyzing offering materials... [t]he literal truth of an isolated statement is insufficient; the proper inquiry requires an examination of defendants' representations, taken together and in context."); *see also Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 5 (2d Cir. 1996) ("[P]rospectuses must be read 'as a whole.'")).  Given the express disclaimers and cautionary language contained in the NYLIAC PPM, Plaintiff could not have reasonably relied on any purported implied "endorsement" of TOF III by NYLIAC for offering the fund on NYLIAC's platform or any alleged due diligence undertakings contained in the PPM.  *See, e.g., Feinman v. Schulman Berlin & Davis,* 677 F. Supp. 168, 170 (S.D.N.Y. 1988) ("Reliance on statements which are directly contradicted by the clear language of the offering memorandum through which plaintiffs purchased their securities cannot be a basis for a federal securities fraud claim."); *Adams v.  Intralinks, Inc.*, No. 03-cv-5384, 2004 WL 1627313, at *7 (S.D.N.Y.  July 20, 2004) (holding same and granting motion to dismiss "[b]ecause plaintiffs cannot plead

reliance"); *Sable v. Southmark/Envicon Capital Corp.*, 819 F. Supp. 324, 339 (S.D.N.Y. 1993)

(granting motion to dismiss and holding that "plaintiffs cannot rely on statements that the PPMs

contradict").

## II.   PRICKETT'S NEGLIGENT MISREPRESENTATION CLAIM FAILS

Plaintiff's negligent misrepresentation claim (Compl. ¶¶ 169-74) fails for many of the

same reasons as his fraud claim.[9]  *First*, Plaintiff does not identify any legally cognizable

misrepresentation made by NYLIAC in the NYLIAC PPM or elsewhere.  *See* § I.C, *supra*; *see*

*also Matsumura*, 542 F. Supp. 2d at 252-54 (dismissing claim for negligent misrepresentation

where plaintiff failed to allege any legally cognizable misrepresentation).  *Second*, Plaintiff has

not adequately alleged reasonable reliance given the disclaimers and cautionary language in

NYLIAC's PPM.  *See* § I.E, *supra; see also Musalli Factory For Gold & Jewelry v.  JPMorgan*

*Chase Bank, N.A.*, No. 08-01720, 2009 WL 860635, at *15 (S.D.N.Y.  Mar. 31, 2009)

(dismissing negligent misrepresentation claim where plaintiff "had no reasonable justification for

relying upon the representations by [defendant]"), *aff'd*, 382 F. App'x 107 (2d Cir. 2010).  *Third*,

because Plaintiff has alleged the same facts to support both his fraud and negligent

misrepresentation claims, Plaintiff must plead with the particularity required by Rule 9(b) and

has failed to do so.  *See* § I.A, *supra; see also Arnold Chevrolet LLC v.  Tribune Co.*, No. 04 Civ.

3097, 2007 WL 2743490, at *6-7 (E.D.N.Y.  Sept. 17, 2007) (holding that Rule 9(b) applied to

negligent misrepresentation claim because it was "based upon the same set of facts" as fraud

claim).  The negligent misrepresentation claim also fails for the grounds set forth below.

---

[9]   Under New York law, "the elements for a negligent misrepresentation claim are that (1) the defendant had a duty,
as a result of a special relationship, to give correct information; (2) the defendant made a false representation that
he or she should have known was incorrect; (3) the information supplied in the representation was known by the
defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and
(5) the plaintiff reasonably relied on it to his or her detriment."  *Hydro Investors, Inc. v. Trafalgar Power Inc.*,
227 F.3d 8, 20 (2d Cir. 2000).

### A.     NYLIAC Owed No Special Duty to Plaintiff

Under New York law, "a plaintiff may recover for negligent misrepresentation only where the defendant owes [plaintiff] a fiduciary duty."  *Stewart v. Jackson & Nash*, 976 F.2d 86, 90 (2d Cir. 1992); *BHC Interim Funding, L.P. v. Finantra Capital, Inc.*, 283 F. Supp. 2d 968, 990-91 (S.D.N.Y. 2003) (dismissing negligent misrepresentation claim where defendant owed no fiduciary duty).  As discussed in Section IV.A below, no fiduciary duty existed here between NYLIAC and Prickett.  Similarly, Plaintiff can point to no language whereby NYLIAC assumed any duty to verify the underlying fund values for a fund of funds.

### B.     Plaintiff's Claim Is Barred by the Economic Loss Doctrine

The gravamen of Plaintiff's claim is that NYLIAC, as issuer of the VUL Policy, breached its duty of care to Plaintiff causing Plaintiff losses from his investment.  *See id.* ¶¶ 170-73.  Any duties that NYLIAC owed Prickett, however, are governed by the terms of the Policy.  Under New York's economic loss rule, a plaintiff asserting a claim of negligent misrepresentation who "has not suffered any personal or property damage is limited to an action in contract."  *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 212, 220 (S.D.N.Y. 2007) (dismissing negligent misrepresentation claim because "if the damages suffered are of the type remediable in contract, a plaintiff may not recover in tort"); *PPI Enters. (U.S.) v. Del Monte Foods Co.*, No. 99 Civ. 3794, 2003 WL 22118977, at *27 (S.D.N.Y. Sept. 11, 2003) (dismissing negligent misrepresentation claim where plaintiff alleged only economic loss).

### C.     Plaintiff's Claim Is Time-Barred

To the extent that Plaintiff's negligent misrepresentation allegations do not sound in fraud, New York's three-year statute of limitations applies to bar such claim.  *See* N.Y. C.P.L.R. § 214 (McKinney 2011); *see also Glonti v. Stevenson*, No. 08-8960, 2009 WL 311293, at *6 (S.D.N.Y.  Feb. 6, 2009).  In New York, claims for negligent misrepresentation accrue when the

allegedly tortious conduct is committed.  *See id.*  Plaintiff alleges that he relied on Defendants'

purported misrepresentations in deciding to purchase the Policy and invest premiums in TOF III.

*See* Compl. ¶ 170.  Any alleged misrepresentation by NYLIAC, therefore, occurred in or prior to

May 2004, when Prickett elected to invest a portion of his VUL policy premiums in TOF III.

*See id.* ¶ 34.  Plaintiff filed this lawsuit on March 31, 2009, nearly five years after electing to

allocate premiums to TOF III, and well beyond the three-year statute of limitations period.

### III.    THE UNJUST ENRICHMENT CLAIM IS BARRED

Plaintiff's unjust enrichment claim alleges that "Defendants have benefited and profited

unjustly by receiving excessive revenue derived from the fees they collected based on the

policy's cash value."  Compl. ¶ 176.  Under New York law, however, "[t]he theory of unjust

enrichment lies as a quasi-contract claim. It is an obligation the law creates *in the absence of any

agreement*."  *Goldman v. Metropolitan Life Ins. Co.*, 5 N.Y.3d 561, 572 (2005) (emphasis

added).  Thus, "[t]he existence of a valid and enforceable written contract governing a particular

subject matter precludes recovery in quasi-contract or unjust enrichment for occurrences or

transactions arising out of the same matter."  *CBS Broad., Inc. v.  Jones*, 460 F. Supp.2d 500,

506 (S.D.N.Y. 2006).  Here, the fees and charges assessed by NYLIAC under the VUL Policy

are plainly set forth in the Policy, the express and enforceable agreement between the parties.

*See, e.g.*, Ex. A at §§ 1.7, 1.8, 1.9, 5.1, 8, 13.2; *see also Beth Israel Med. Ctr. v. Horizon Blue

Cross & Blue Shield of N.J.*, 448 F.3d 573, 586-87 (2d Cir. 2006) (affirming dismissal of unjust

enrichment claim where valid and enforceable written agreements governed the subject matter of

the claim); *Millenium Expressions, Inc. v. Chauss Marketing, Ltd.*, No. 02 Civ. 7545, 2007 WL

950070, at *8 (S.D.N.Y. Mar. 30, 2007) (holding that an unjust enrichment claim "must be

dismissed" where "it has been determined that an enforceable contract existed").

IV.     **NO BREACH OF FIDUCIARY DUTY CAN BE PROPERLY ALLEGED**

The elements of a claim for breach of fiduciary duty under New York law are: (1) a

fiduciary duty owed by defendant to plaintiff; (2) a breach of that duty; (3) defendant's knowing

participation in the breach; and (4) damages.  *SCS Commc'ns, Inc. v. Herrick Co.,* 360 F.3d 329,

342 (2d Cir. 2004).

### A.     There Is No Fiduciary Relationship Between NYLIAC and Prickett

NYLIAC does not owe a fiduciary duty to Prickett.  Under New York law, an insurer

does not owe fiduciary duties to its insured, except where the insurer owes the insured a duty to

defend or when an insured demonstrates the existence of a special relationship, neither of which

is present here.  *See Edelman v. O'Toole-Ewald Art Assocs., Inc.*, 28 A.D.3d 250, 251 (1st Dep't

2006); *Fiala v. Metro. Life Ins.  Co.*, 6 A.D.3d 320, 322 (1st Dep't 2004).  This principle has

been applied in New York in situations where the insurer issued policies that accumulate "cash

value," similar to the one purchased by Plaintiff here.  *See Gaidon v. Guardian Life Ins. Co. of

Am.*, 255 A.D.2d 101, 101-02 (1st Dep't 1998), *aff'd*, 96 N.Y.2d 201 (2001).  Prickett alleges no

facts to support his conclusory allegation of a fiduciary duty, and does not even purport to allege

a "special relationship" between himself and NYLIAC.  *See* Compl. ¶ 194; *see BHC Interim

Funding*, 283 F. Supp. 2d at 986 (dismissing breach of fiduciary duty claim because plaintiff did

not allege facts to show the existence of a fiduciary relationship).

### B.     Plaintiff Fails to Allege that NYLIAC Breached Any Duty

Plaintiff fails to allege any facts that would demonstrate that, even if NYLIAC owed a

fiduciary duty to Prickett, such a duty was breached.  As a Limited Partner in TOF III, NYLIAC

did not have the ability, much less a duty, to oversee the underlying investments of the Fund.

*See* Factual Background § E, *supra*.  Moreover, Plaintiff's allegation that NYLIAC breached a

fiduciary duty by "investing the assets of Plaintiff in the Rye Funds and BMIS despite numerous

red flags" (Compl. ¶ 181) cannot support a claim because (a) it was Tremont, not NYLIAC, who invested a portion of Prickett's premiums in the Rye Funds (via TOF III), and (b) the purported "red flags" cited by Plaintiff have been consistently rejected by courts as a valid basis for claims to cover losses suffered due to the Madoff fraud.  *See* § I.D, *supra*.

### C.   Plaintiff's Claim Fails to Satisfy Rule 9(b)'s Pleading Requirements

To the extent that Plaintiff's breach of fiduciary duty claim sounds in fraud, it should be dismissed for failure to comply with Rule 9(b).  *See, e.g., Brody v. Brody*, No. 07-7981, 2009 WL 436404, at *4 n.3 (S.D.N.Y.  Feb. 17, 2009) (holding that Rule 9(b) applies to claims for breach of fiduciary duty "when the conduct underlying that claim is based in fraud."); *ALA. Holdings, S.A. v. Lehman Bros., Inc.*, No. 97-4978, 1999 WL 47223, at *6 (S.D.N.Y.  February 3, 1999) (dismissing claim for breach of fiduciary duty because the allegations, "stated in conclusory and general terms," failed to meet the strictures of Rule 9(b)).

### D.   Plaintiff's Claim Is Time-Barred

Like his negligent misrepresentation claim (*see* § II.C, *supra*), to the extent that Plaintiff's breach of fiduciary duty claim does not sound in fraud, it is barred by the three-year statute of limitations for such a claim under New York law.  *See* N.Y. C.P.L.R. § 214(4) (McKinney 2011); *see also Sotheby's Fin. Servs., Inc. v. Baran*, 107 F. App'x. 235, 238 (2d Cir. 2004) (affirming dismissal of a breach of fiduciary duty claim as time-barred).

## V.   PRICKETT FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

Plaintiff's breach of contract claim fails because, contrary to Plaintiff's allegations (Compl. ¶¶ 194-98), (a) the Policy did not obligate NYLIAC to conduct due diligence on, or monitor, TOF III, much less the underlying investments; and (b) the PPMs were not part of the

contract between Prickett and NYLIAC.[10]

### A.   The Policy Did Not Impose the Obligations that NYLIAC Allegedly Breached

Plaintiff argues that NYLIAC breached its contract with him by failing to perform due diligence and monitor TOF III to "ensure that the fund represents a true investment vehicle and not a sham." Compl. ¶ 196.  It cannot be credibly disputed, however, that TOF III itself *was* a "true investment vehicle" that was invested in a diversified portfolio of securities managed by multiple managers.  While that portfolio included the Rye Funds, which were managed by BLMIS, approximately 78% of TOF III's assets consisted of other investments, the legitimacy of which Plaintiff does not contest.  Moreover, Plaintiff was on notice from the Tremont PPM that NYLIAC was *precluded* from selecting, supervising, or monitoring the underlying funds in TOF III, including the Rye Funds.  *See* Factual Background § E, *supra*.

Further, Plaintiff can point to no specific contractual provision to support his claim.  *See Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001) (holding that a "plaintiff must identify what provisions of the contract were breached as a result of the acts at issue."). Indeed, no contract could have accounted for the extraordinary intervention of a criminal actor, particularly one as proficient in avoiding detection as Bernard Madoff.  *See Harlan v. G.C. Williams Funeral Home, Inc.*, No. 2007-CA-001266, 2008 WL 3165733, at *5 (Ky. App. Aug. 8, 2008) (affirming dismissal of breach of contract claims because defendants "provided everything outlined in the contract" and the contract "did not require them to anticipate an intervening, unforeseeable criminal act and to provide precautions against it").

Finally, Plaintiff's breach of contract argument, in any event, is just a re-casting of the "red flags" argument that NYLIAC had an obligation to detect Madoff's fraud, and, as the

---

[10]  The elements of a breach of contract under New York law are: (1) the existence of a contract; (2) the plaintiff adequately performed its obligations under the contract; (3) the defendant failed to perform its obligations thereunder; and (4) foreseeable damages resulting to the plaintiff.  *See 24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 429 F.3d 39, 41-42 (2d Cir. 2005).

caselaw on this issue makes clear, that argument is insufficient to sustain a claim.  *See* § I.D, *supra*.

### B.     The NYLIAC PPM Was Not a Contract Between Plaintiff and NYLIAC

The only contract between Prickett and NYLIAC was the Policy itself.  The offering materials, including the NYLIAC and Tremont PPMs, were not incorporated into those contracts.  Prickett's Policy stated that "This is a legal contract between You, the Owner, and Us, New York Life Insurance and Annuity Corporation," and the "entire contract between the applicant and Us consists of the policy, such application, and any riders and endorsements."  Ex. A at 1, 22.  That integration clause did not include the PPMs.  *See Linton v. New York Life Ins. and Annuity Corp.*, Civil Action No. 04-11362-RWZ, slip op. at 6, 9-10 (D. Mass. Sept. 18, 2006) (finding nearly identical language in NYLIAC policy to be an integration clause, thus excluding a prospectus from the "entire contract" between NYLIAC and insured).[11]

Further, the PPMs were not contracts between Prickett and NYLIAC because, *inter alia*, they were not signed by the parties, were missing key terms (e.g., the amount of Plaintiff's Policy, beneficiaries, investment allocations), and specifically contemplated that the parties would enter into a separate formal contract (*i.e.*, the Policy).  *See Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73 (2d Cir. 1989) (finding document not a contract and noting "strong presumption against finding [a] binding obligation in agreements which include open terms, call for future approvals and expressly anticipate future preparation and execution of contract documents"); *Ogden Martin Sys. of Tulsa, Inc. v. Tri-Continental Leasing Corp.*, 734 F. Supp. 1057, 1068 (S.D.N.Y. 1990) (holding that PPM was not contract because terms indicated intent not to be bound until execution of formal contract).  Thus, neither the offering materials themselves, nor any statements within them, can support a claim for breach of contract.

---

[11]  A copy of this unpublished decision is attached as Exhibit G to the Galeno Declaration.

## VI.   PLAINTIFF CANNOT STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing should be dismissed because it is impermissibly duplicative of Plaintiff's contract claim and fails to adequately allege the essential element of bad faith.[12]

### A.   Plaintiff's Claim Fails Because It Is Impermissibly Duplicative

Under New York law, a "cause of action alleging a breach of good faith is duplicative of a cause of action alleging breach of contract, since every contract contains an implied covenant of good faith and fair dealing." *Apfel v. Prudential-Bache Sec., Inc.*, 183 A.D.2d 439, 439 (1st Dep't 1992), *aff'd*, 81 N.Y.2d 470 (1993); *accord W.S.A., Inc., v. ACA Corp.*, Nos. 94 Civ. 1868 and 94 Civ. 1493, 1996 WL 551599, at *9 (S.D.N.Y. Sept. 27, 1996) (dismissing implied covenant of good faith and fair dealing claim because "breach of that duty is merely a breach of the underlying contract.  Raising both claims in a single complaint is, therefore, redundant."); *Cohen v. Nassau Educators Fed. Credit Union*, No. 15094-05, 2006 WL 1540324, at *4 (N.Y. Sup. Ct. May 10, 2006) (dismissing claim because "New York does not recognize a separate cause of action for violation of the implied covenant of good faith and fair dealing").  Nor can a breach of the implied covenant claim salvage an inadequately pled breach of contract claim, as exists here.  *See, e.g., Triton Partners LLC v.  Prudential Sec.  Inc.*, 301 A.D.2d 411, 411 (1st Dep't 2003) (dismissing breach of covenant of good faith and fair dealing claim that was an attempted substitute for a non-viable breach of contract claim).

### B.   Prickett Fails to Allege Bad Faith

Even had Plaintiff not raised a breach of contract claim, his breach of an implied

---

[12] Under New York law, the elements of a claim for breach of the duty of good faith and fair dealing are: (1) defendant must owe plaintiff a duty to act in good faith and conduct fair dealing; (2) defendant must breach that duty by acting in bad faith or failing to conduct fair dealing; and (3) the breach of duty must proximately cause plaintiff's damages.  *Washington v. Kellwood Co.*, 05 Civ. 10034, 2009 WL 855652, at *6 (S.D.N.Y. Mar. 24, 2009) (*quoting Boyd v. Univ. of Illinois*, 96 Civ. 9327, 2001 WL 246402, at *10 (S.D.N.Y. Mar. 13, 2001)).

covenant claim fails because it is devoid of factual allegations to show bad faith by NYLIAC.

Conclusory allegations of a party's failure to act in good faith alone are insufficient; specific

factual allegations of a party's bad faith acts are required to state a claim. *See Prospect St.*

*Ventures I, LLC v. Eclipsys Solutions Corp.*, 23 A.D.2d 213, 214 (1st Dep't 2005) (affirming

dismissal because the complaint was "devoid of any specific factual allegations" of defendant's

bad faith); *SNS Bank, N.V. v. Citibank, N.A.*, 7 A.D.3d 352, 355 (1st Dep't 2004) ("Even on a

motion to dismiss, a court need not accept as true conclusory allegations" of bad faith); *Yucyco*

*Ltd. v. Rep. of Croatia*, No. 96-5559,1997 WL 728173, at *2 (S.D.N.Y. Nov. 19, 1997)

(dismissing covenant of good faith and fair dealing claim where complaint "fail[ed] to describe

the specific actions on the part of particular defendants" that allegedly breached the covenant).

## VII.    PRICKETT FAILS TO PLEAD A VIABLE CLAIM FOR VIOLATIONS OF N.Y. GENERAL BUSINESS LAW SECTION 349

Plaintiff's Section 349 claim fails because the statute (a) does not cover securities-related

transactions and (b) does not apply to large commercial transactions between sophisticated

parties, and because (c) Plaintiff has failed to plead a misrepresentation by NYLIAC.[13]

### A.    Section 349 Does Not Cover Securities-related Transactions

It is "well-established that Section 349 does not apply to securities transactions."

*Kassover v. UBS AG*, 619 F. Supp. 2d 28, 37 n.4 (S.D.N.Y. 2008); *In re Evergreen Mut. Funds*

*Fee Litig.*, 423 F. Supp. 2d 249, 264–65 (S.D.N.Y. 2006). Likewise excluded from the scope of

Section 349 are claims involving transactions "ancillary to the purchase of securities." *Gray v.*

*Seaboard Sec., Inc.*, 14 A.D.3d 852, 853-54 (3rd Dep't 2005); *Fesseha v. TD Waterhouse*

*Investor Services, Inc.*, 193 Misc. 2d 253, 260 (N.Y. Sup. Ct. 2002), *aff'd*, 305 A.D.2d 268 (1st

---

[13] To state a claim pursuant to Section 349, a Plaintiff must show: (1) acts or practices that are "consumer oriented"; (2) that such acts or practices are deceptive or misleading in a material way and (3) that plaintiff has been injured by reason of those acts. *See Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121, 126 (2d Cir. 2000); *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 343–44 (1999).

Dep't 2003).  It is beyond dispute that through his NYLIAC VUL Policy Prickett allocated his premiums to TOF III for the purpose of investing in securities and that a VUL policy is a securities product.  *See* Compl. ¶¶ 3, 45, 48, 49, 51, 58, 62; *Araujo v. John Hancock Life Ins. Co.*, 206 F.Supp.2d 377, 381–82 (E.D.N.Y. 2002) (holding that a variable universal life insurance policy is a "security"); *see also SEC v. Variable Annuity Life Ins. Co. of America*, 359 U.S. 65, 70–72 (1959) (holding that a variable annuity is properly classified as a "security").  Plaintiff's claim, therefore, is outside the scope of activity regulated by Section 349.

### B.  Section 349 Does Not Apply to Large Commercial Transactions Between Sophisticated Parties

Section 349 is limited to "consumer-oriented conduct."  *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 320-21 (1995).  New York courts have identified at least three factors relevant in the consumer-orientation analysis: (1) the amount of money involved in the agreement; (2) the relative bargaining power and sophistication of the parties; and (3) the nature of the agreement.  *See id.*  In applying these factors, courts have routinely rejected Section 349 claims based on transactions involving large sums of money and sophisticated parties as falling outside of the statute.  *See, e.g.*, *id.* (dismissing Section 349 claim because purchase of insurance contract with premiums in excess of $55,000 and a potential payout of $10 million did "not constitute consumer-oriented conduct"); *Exxonmobil Inter-America, Inc. v. Advanced Info. Eng'g Servs., Inc.*, 328 F. Supp. 2d 443, 449 (S.D.N.Y. 2004) (dismissing Section 349 claim where parties to transaction were "relatively sophisticated entities with equal bargaining power"); *Genesco Entm't v. Koch*, 593 F. Supp. 743, 752 (S.D.N.Y. 1984) (finding § 349 inapplicable because "transaction[s] involving complex arrangements, knowledgeable and experienced parties and large sums of money ... are different in kind and degree from those that confront the average consumer who requires the protection of a statute against fraudulent practices").  Here, Plaintiff was an Accredited Investor engaged in an arms-length purchase of a

VUL Policy with premiums in excess of $900,000 and a face amount of more than $6 million. Given the significant size of this commercial transaction, as well as Prickett's sophistication and bargaining power, his claim is not the type of "consumer-oriented conduct" covered by Section 349.

### C.   Prickett Fails to Plead a Misrepresentation

The New York Court of Appeals has defined a "deceptive act or practice" as a representation or omission "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Gaidon*, 94 N.Y.2d at 344; *see also Pelman v. McDonald's Corp.*, 272 F.R.D. 82, 92 (S.D.N.Y. 2010).  As set forth above (*see* § I.C, *supra*), Prickett has not sufficiently alleged any misrepresentation by NYLIAC.

## VIII.   PLAINTIFF CANNOT PROVE LOSS CAUSATION

In addition to the reasons set forth above, all of Plaintiff's claims also fail as a matter of law because Madoff's criminal fraud, and not NYLIAC's alleged conduct, was the proximate cause of Plaintiff's losses.  *See Michael S. Rulle Family Dynasty Tr. v. AGL Life Assurance Co.*, No. 10-231, 2010 WL 3522135, at *5 (E.D. Pa. Sept. 8, 2010), *aff'd*,  No. 10-4034, 2011 WL 3510285 (3d Cir. Aug. 11, 2011) ("[I]t was Madoff's illegal acts that caused a decrease in the value of the investment account [of the insurance policy]. . . . [T]he injury was attributable to Madoff's conduct"); *Goldweber v. Harmony Partners, Ltd.*, No. 09–61902, 2010 WL 3702508, at *5 (S.D. Fla. Sept. 16, 2010) ("Plaintiff's damages were caused by Madoff's Ponzi scheme, not by Defendants [limited partnership, general partners, and associated officers and directors].")

## IX.   PRICKETT CANNOT SUSTAIN A CLAIM FOR PUNITIVE DAMAGES

The Amended Complaint states that Prickett seeks punitive damages from NYLIAC with respect to his common law fraud, negligent misrepresentation, and breach of fiduciary duty claims.  Compl. ¶¶ 168, 174, 186.  However, Plaintiff has failed to plead a viable claim against

NYLIAC, much less the gross, wanton or morally culpable conduct necessary to sustain a claim for punitive damages. *Topps Co. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 264 (S.D.N.Y. 2005).

## CONCLUSION

WHEREFORE, Defendants New York Life Insurance Company and New York Life Insurance and Annuity Corporation, by and through their undersigned counsel, move this Court for an order dismissing with prejudice all claims alleged against them in the Amended Complaint.

Dated: New York, New York
February 28, 2012

PILLSBURY WINTHROP SHAW PITTMAN LLP

By:      s/  Maria T. Galeno
Maria T. Galeno
Greg T. Lembrich
1540 Broadway
New York, NY  10036
Telephone: (212) 858-1000
Fax: (212) 858-1500
maria.galeno@pillsburylaw.com
greg.lembrich@pillsburylaw.com

*Attorneys for Defendants New York Life Insurance Company and New York Life Insurance and Annuity Corporation*