UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE TREMONT SECURITIES LAW,
STATE LAW AND INSURANCE
LITIGATION

This Document Relates to:

F. DANIEL PRICKETT

                 Plaintiff,

      - against -

NEW YORK LIFE INSURANCE COMPANY,
et al.

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

:     Master File No. 08 Civ. 11117(TPG)

:

:

:     No. 09 Civ. 03137 (TPG)

:

:     **Electronically Filed**

:

:

:

:

## MEMORANDUM OF LAW IN SUPPORT OF THE MASSMUTUAL DEFENDANTS' MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM

**BINGHAM McCUTCHEN LLP**
399 Park Avenue
New York, NY 10022
Tel.: (212) 705-7000

*Attorneys for Defendants*
*Massachusetts Mutual Life Insurance Company and*
*MassMutual Holding LLC*

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................ 1

ALLEGATIONS IN THE COMPLAINT ........................................................... 2

    A.    The Plaintiff ................................................................................. 2

    B.    MassMutual .................................................................................. 3

ARGUMENT ...................................................................................................... 5

I.     PRICKETT LACKS STANDING TO BRING DERIVATIVE CLAIMS AGAINST MASSMUTUAL. ............................................................... 5

II.    THE AMENDED COMPLAINT FAILS TO STATE ANY CLAIM AGAINST MASSMUTUAL. .................................................................. 6

    A.    Motion to Dismiss Standard ....................................................... 6

    B.    Prickett Has Not Alleged a Fraud Claim against MassMutual. ............................ 7

           1.    Prickett Fails to Allege that MassMutual Made Any Misrepresentation to Him. ........................................ 8

           2.    Prickett Fails to Allege That MassMutual *Knowingly* Made Any Untrue Statement. .......................... 9

           3.    Prickett Fails to Plead any of the Remaining Elements of a Fraud Claim — Intent to Deceive, Justifiable Reliance or Causation. .............. 11

    C.    Prickett Fails to Allege a Claim for Negligent Misrepresentation. ...................... 12

    D.    Prickett's Unjust Enrichment Claim Is Barred by (a) the Written VUL Policy and LPA and (b) the Lack of Any Allegation that MassMutual Received Any Specific and Direct Benefit. ........................................ 13

    E.    Prickett Fails to State an Aiding and Abetting Claim against MassMutual. ....... 14

           1.    Prickett Fails to Allege that MassMutual Had Actual Knowledge of a Fraud or Breach of Fiduciary Duty. ................................ 15

           2.    Prickett Has Not Alleged that MassMutual Substantially Assisted Any Alleged Fraud or Breach of Fiduciary Duty. .................. 17

CONCLUSION ................................................................................................... 18

A/74711485.4

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*AllGood Entm't, Inc. v. Dileo Entm't and Touring, Inc.*,
   726 F. Supp. 2d 307 (S.D.N.Y 2010)....................................................................................11

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009)...........................................................................................................6

*Banco Espirito Santo De Investimento, S.A. v. Citibank, N.A.*,
   No. 03 Civ. 1537 (MBM), 2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003) ...........................14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955 (2007)......................................................................................6

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*,
   70 N.Y.2d 382, 516 N.E.2d 190 (1987)..................................................................................14

*DeBlasio v. Merrill Lynch & Co., Inc.*,
   No. 07 Civ 318(RJS), 2009 WL 2242605 (S.D.N.Y. July 27, 2009) .......................................6

*Design Strategies, Inc. v. Davis*,
   384 F. Supp. 2d 649 (S.D.N.Y. 2005).....................................................................................15

*Eaves v. Designs for Finance, Inc.*,
   785 F. Supp. 2d 229 (S.D.N.Y. 2011)......................................................................................8

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
   375 F.3d 168 (2d Cir. 2004)................................................................................................8, 9

*Feldman v. Cutaia*,
   951 A.2d 727 (Del. 2008) ........................................................................................................5

*Friedman v. Anderson*,
   23 A.D.3d 163, 803 N.Y.S.2d 514 (1st Dep't 2005) ..............................................................12

*Granite Partners, L.P. v. Bear Stearns & Co., Inc.*,
   17 F. Supp. 2d 275 (S.D.N.Y. 1998).......................................................................................14

*Graystone Materials, Inc. v. Pyramid Champlain Co.*,
   198 A.D.2d 740, 604 N.Y.S.2d 295 (3d Dep't 1993)..............................................................14

*Harsco Corp. v. Segui*,
   91 F.3d 337 (2d Cir. 1996)........................................................................................................7

*Horowitz v. Aetna Life Ins.*,
    148 A.D.2d 584, 539 N.Y.S.2d 50 (2d Dep't 1989) ................................................16

*Hunt v. Enzo Biochem, Inc.*,
    530 F. Supp. 2d 580 (S.D.N.Y. 2008)................................................................12

*In re Tremont Sec. Law, State Law and Ins. Litig.*,
    703 F. Supp. 2d 362 (S.D.N.Y. 2010) ................................................................10

*Jet Star Enter. v. Soros*,
    No. 05 civ. 6585 (HB), 2006 WL 2270375 (S.D.N.Y. Aug. 9, 2006)....................14

*Kaufman v. Cohen*,
    307 A.D.2d 113, 760 N.Y.S.2d 157 (1st Dep't 2003) ..........................14, 15, 16, 17

*Kolbeck v. LIT Am.*,
    939 F. Supp. 240 (S.D.N.Y. 1996)................................................................15

*Lama Holding Co. v. Smith Barney Inc.*,
    88 N.Y.2d 413, 646 N.Y.S.2d 76 (1996) ......................................................7, 9, 10

*Marino v. Grupo Mundial Tenedora, S.A.*,
    No. 10 Civ. 4126, 2011 WL 3837153 (S.D.N.Y. Aug. 30, 2011) ................7, 15, 17

*Meridian Horizon Fund, LP v. Tremont Group Holdings*,
    747 F. Supp. 2d 406 (S.D.N.Y. 2010)................................................................10

*Mountain Lion Baseball Inc. v. Gaiman*,
    263 A.D.2d 636, 693 N.Y.S.2d 289 (3d Dep't 1999) ............................................8

*Musalli Factory for Gold & Jewellry Co. v. JPMorgan Chase Bank, N.A.*,
    382 Fed.Appx. 107, 2010 WL 2588195 (2d Cir. 2010)......................................7, 17

*Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A.*,
    No. 1:08-CV-01720 (LAP), 2009 WL 860635 (S.D.N.Y. Mar. 31, 2009)..............17

*Nat'l Westminster Bank USA v. Weksel*,
    124 A.D.2d 144, 511 N.Y.S.2d 626 (1st Dep't 1987) ............................................8

*Parrott v. Coopers & Lybrand, LLP*,
    95 N.Y.2d 479 (2000) ................................................................................13

*Ruff v. Genesis Holding Corp.*,
    728 F. Supp. 225 (S.D.N.Y. 1990)................................................................11

*Saltz v. First Frontier, LP*,
    No. 10 Civ. 964 (LBS), 2010 WL 5298225 (S.D.N.Y. Dec. 23, 2010)..................11

A/74711485.4

*Shields v. Citytrust Bankcorp, Inc.*,
   25 F.3d 1124 (2d Cir. 1994)................................................................9, 11

*SKR Res., Inc. v. Players Sports, Inc.*,
   938 F. Supp. 235 (S.D.N.Y. 1996).............................................................9

*Spira v. Curtin*,
   No. 97 CIV. 2637(TPG), 2001 WL 611386 (S.D.N.Y. 2001)....................7

*Stolow v. Greg Manning Auctions Inc.*,
   258 F. Supp. 2d 236 (S.D.N.Y. 2003) .....................................................12

*Sykes v. RFD Third Ave. 1 Assocs., LLC*,
   15 N.Y.3d 370 (2010) ..............................................................................13

*Sykes v. RFD Third Ave. 1 Assocs., LLC*,
   67 A.D.3d 162, 884 N.Y.S.2d 745 (1st Dep't 2009)  .............................13

*Terrydale Liquidating Trust v. Barness*,
   611 F. Supp. 1006 (S.D.N.Y. 1984)..........................................................15

*United States v. Bestfoods*,
   524 U.S. 51 (1998).....................................................................................1

*WorldCom, Inc. v. Segway Mktg. Ltd.*,
   262 A.D.2d 164, 693 N.Y.S.2d 9 (1st Dep't 1999) ...................................8

*Zutty v. Rye Select Broad Market Fund*,
   No. 113209/2009 (RBL), 2011 WL 5962804 (Sup. Ct. NY Co. Apr. 15, 2011)............. passim

**R**ULES

Fed. R. Civ. P. 9(b) ........................................................................6, 7, 8, 15

A/74711485.4

# INTRODUCTION

At its core, this dispute concerns a life insurance policy. Plaintiff, F. Daniel Prickett ("Prickett"), purchased a variable universal life ("VUL") insurance policy from Defendant New York Life Insurance and Annuity Corporation ("New York Life") on May 12, 2003. Pursuant to the insurance contract, Defendant New York Life invested in the Tremont Opportunity III Fund, L.P. (the "Fund"). The Fund lost about 22% of its assets as a result of Bernard Madoff's Ponzi scheme. Prickett seeks to recover those losses from a myriad of defendants including New York Life, the Fund, and other entities, including Massachusetts Mutual Life Insurance Company and MassMutual Holding LLC (collectively, "MassMutual").[1]

Prickett's claims against MassMutual are for fraud, negligent misrepresentation, unjust enrichment and aiding and abetting liability. But he alleges virtually *no* conduct — let alone actionable conduct — by MassMutual. Prickett does not allege that he relied on or even dealt with MassMutual. Prickett was owed no duties by MassMutual. The amended complaint basically alleges only that MassMutual is a shareholder four shareholders removed from the Fund's general partner, TPI, and, as an ultimate shareholder, caused the election of some members to the boards of directors of TPI's corporate parent and grandparent, TGHI and OAC (but not the board of TPI itself). Prickett points to no legal basis for shifting any of New York Life's Madoff-related losses onto MassMutual.

It is "a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States*

---

[1] These entities are: Rye Select Broad Market Prime Fund, L.P., Rye Select Broad Market XL Fund, L.P., and Rye Select Broad Market Insurance Portfolio, LDC (collectively referred to as the "Rye Funds"); the Fund's general partner, Tremont Partners, Inc. ("TPI"); TPI's affiliate, Tremont (Bermuda) Ltd.; divisions Tremont Capital Management and Rye Investment Management; and TPI's parent company, Tremont Group Holdings, Inc. ("TGHI") (the Tremont related entities are referred to collectively as the "Tremont Defendants"); and TGHI's parent, Oppenheimer Acquisition Corp. ("OAC"). MassMutual Holding LLC owns the stock of OAC and is, in turn, owned by Massachusetts Mutual Life Insurance Company. Prickett also sues New York Life's parent, New York Life Insurance Company.

*v. Bestfoods*, 524 U.S. 51, 61 (1998).  Last year, in a similar matter, the New York Supreme Court applied this sound principle to dismiss a case that was brought against MassMutual by investors that lost money to Madoff.  *See Zutty v. Rye Select Broad Market Fund*, No. 113209/2009 (RBL), 2011 WL 5962804 (Sup. Ct. NY Co. Apr. 15, 2011).

## ALLEGATIONS IN THE COMPLAINT

### A.    The Plaintiff

Prickett purchased a VUL policy from New York Life on May 12, 2003.  First Amended Complaint ("FAC") ¶ 2.  The VUL policy was offered through New York Life's Individual Variable Life Insurance Policy Private Offering Memorandum ("New York Life PPM")  *Id.*, ¶ 44.  Prickett alleges that "New York Life retained 'the exclusive right to select the investments'" available to the policyholders.  *Id.* ¶ 54.  New York Life invested a portion of Prickett's premium contributions in the Fund.  *Id.*, ¶ 34.  Approximately 22% of the Fund's assets were lost as a result of Madoff.[2]  *Id.*, ¶ 39.

Prickett is the owner/policy holder of a variable life insurance policy.  The insurer (New York Life), not Prickett, invested in the Fund.  In general terms, a policy holder, such as Prickett, chooses among the various diversified accounts offered by the insurer.  *See, e.g.*,  FAC ¶¶ 35-36.  The insurer owns the investments, including, in this case, investments made in the Fund.  *See* FAC ¶ 46, 54 ("[New York Life] put[s] assets into the Separate Account that [Prickett has] allocated to the Investment Divisions for the Policy" and New York Life "retains the exclusive right to select the investments of the Investment Divisions").  The Fund's Private Placement Memorandum, filed with the Tremont Defendants' Motion to Dismiss, expressly stated:  "It should be emphasized that the [Insurance] Companies, and not the owners of the Contracts, [ ] will be the Limited Partners in the Partnership."  *See* American Masters Opportunity Insurance

---

[2] About 22% of the Fund's assets were placed in the Rye Select Broad Market Prime Fund, L.P., the Rye Select Broad Market XL Fund, L.P. (both had TPI as a general partner), and the Rye Select Broad Market Insurance Portfolio LDC (which was managed by Tremont Bermuda Ltd.), and "substantially all of these assets went to Madoff."  FAC ¶¶26-28, 39.

A/74711485.4

Fund, L.P. Amended and Restated Confidential Private Placement Memorandum of July 1, 2003 ("Fund PPM") at 35; *see also id.* at ii ("The [Insurance] Companies will be Limited Partners in the Partnership."); Second Amended and Restated Limited Partnership Agreement of Tremont Opportunity Fund III, L.P., dated August 1, 2008 ("Fund LPA"), § 1.04(a) ("The General Partner recognizes that some Limited Partners that are insurance companies may intend to hold their interests in the Partnership in separate accounts, which interests are intended to serve as an investment option under certain variable life insurance or annuity contracts (the 'Contracts') to be issued by such Limited Partners to the holders of such Contracts ('Contract Owners').")[3]  In short, New York Life is the limited partner of the Fund; Prickett is not.

## B.    MassMutual

The allegations against MassMutual do not differ from the allegations made against MassMutual in various other related actions pending in this Court: (1) MassMutual ultimately owns the stock of OAC, parent of TGHI; (2) MassMutual directly or indirectly elected some members of boards of its various affiliates (but not the Fund or TPI); and (3) MassMutual sometimes refers to itself and its affiliates collectively as "MassMutual Financial Group."  FAC ¶¶ 30-32, 133-134, 137, 139, 142, 144, 150.  (The ownership structure depicted in the amended complaint is depicted on Addendum A, attached hereto.)  None of these facts, separately or collectively, state a claim against MassMutual.

MassMutual, via its subsidiary OAC, conducted diligence on TGHI prior to its acquisition.  As a result, Prickett alleges, MassMutual learned that TPI placed money with Madoff and was aware that "numerous 'red flags' or indicators of gross irregularities in Madoff's operations" existed.  *Id.*, ¶ 121.  Yet, "notwithstanding" this knowledge, MassMutual and OAC "pressed forward" with the acquisition (at a cost of $145 million).  *Id.*, ¶ 127.  Prickett, like other plaintiffs in related litigation, offers no explanation for why MassMutual would agree to buy an

---

[3] The Fund PPM and LPA are submitted as exhibits to the Affirmation of Jason C. Vigna in support of the Tremont Defendants' Motion to Dismiss.

entity — much less pay $145 million for the privilege — that was investing in a Ponzi scheme — given that Ponzi schemes always collapse.

Prickett alleges that after the acquisition, TGHI became a "wholly-owned direct subsidiary of [OAC]" and TGHI's "operations — including the marketing and investment activities of the Rye Funds — were directly under the MassMutual Financial Group umbrella." *Id.*, ¶¶ 133-34. There is no "umbrella." Every corporate subsidiary operates "under" the auspices of its owners in the sense that owners have many rights, including rights to vote their stock and to sell their stock.

Prickett also alleges that, after the 2001 acquisition, TGHI's management structure was "overhauled" reflecting MassMutual Holding's and OAC's "deep involvement in and control over its operations." *Id.*, ¶ 135. Like other complaints in related actions, the only facts that Prickett alleges in support of this "deep involvement" is that MassMutual had representation on some affiliate boards. *See, e.g.,* FAC ¶¶ 137, 139, 142, 144 (TGHI); *id.*, ¶ 149 (OAC); *id.*, ¶¶ 150-161 (MassMutual Holding). That is irrelevant to the management of the Fund, and Prickett alleges nothing to explain the relevance. Prickett does not allege that MassMutual — the corporate great-grandparent — elected directors of TPI, the general partner of the Fund, much less involved itself in the investment decisions of the Fund or TPI. At most, Prickett refers to TPI's Form ADV and a privacy policy, in which TPI accurately discloses MassMutual's status as an ultimate shareholder — TPI's corporate great-grandparent. *Id.*, ¶¶ 30-32. Disclosed ownership does not constitute evidence of, and without more does not demonstrate, wrongdoing.

Based upon these incidents of ownership, Prickett asserts his unsupported conclusion that MassMutual (and OAC) "maintained significant influence and/or control over and provided substantial assistance to the various Tremont entities that managed and operated" the Fund and the Rye Funds. FAC ¶ 106. No factual allegation exists upon which an argument could be built that the corporate separateness between MassMutual and its direct and indirect subsidiaries may be disregarded or that MassMutual somehow meddled in the affairs of its subsidiaries in a way which would expose MassMutual to liability.

## ARGUMENT

## I.   PRICKETT LACKS STANDING TO BRING DERIVATIVE CLAIMS AGAINST MASSMUTUAL.

Prickett's claims against MassMutual for unjust enrichment and aiding and abetting breach of fiduciary duty can only be brought directly by the Fund itself or derivatively by an investor in the Fund on behalf of the Fund.  Like several other variable universal life policy holders who have sued, Prickett's claims are essentially "double derivative" because the investor here is New York Life, the limited partner in the Fund; not Prickett, a policy holder of New York Life.  Prickett's claims are "derivative" of those of New York Life, which are derivative of the Fund's claims.  As the Delaware Supreme Court has held:

> Where all of a corporation's stockholders are harmed and would recover pro rata in proportion with their ownership of the corporation's stock solely because they are stockholders, then the claim is derivative in nature.  The mere fact that the alleged harm is ultimately suffered by, or the recovery would ultimately inure to the benefit of, the stockholders does not make a claim direct ....  In order to state a direct claim, the plaintiff must have suffered some individualized harm not suffered by all of the stockholders at large.

*Feldman v. Cutaia*, 951 A.2d 727, 733 (Del. 2008) (footnote omitted).[4]

Prickett's claims for unjust enrichment and aiding and abetting breach of fiduciary duty belong to the Fund because the Fund is the entity that invested with Madoff, suffered the loss of assets, and paid TPI management fees.  *See id.*  Losses by investors, here New York Life, derive from the Fund's losses and may only be brought by or derivatively on behalf of the Fund after either a pre-suit demand or allegations that such demand would be futile.  *See, e.g., Zutty*, 2011 WL 5962804 at **5-7 (dismissing breach of fiduciary duty and unjust enrichment claims because those claims belong to the Rye Funds, not limited partners, and thus were derivative).

Because these claims are derivative, they fail because the amended complaint does not

---

[4] The Fund is a Delaware limited partnership, and Delaware law governs whether a claim is direct or derivative.  *See Newman v. Family Mgmt, Corp.*, 748 F. Supp. 2d 299, 313-14 (S.D.N.Y. 2010).

allege that the necessary pre-suit demand was made or that such demand would have been futile and therefore the demand requirement should be excused.  *See, e.g., Newman*, 748 F. Supp. 2d at 313-14, 316-17 (plaintiff lacks standing to assert derivative claims where it made no pre-suit demand and does not allege with particularity facts sufficient to show that pre-suit demand is excused as futile).  Accordingly, Prickett cannot establish the prerequisite elements to assert these derivative claims against MassMutual.

In addition, any derivative claims belonging to the Fund are barred by the recent settlement of consolidated actions in this Court.  *See In Re Tremont Securities Law, State Law and Insurance Litigation*, 08 Civ. 11117 (SDNY (Griesa, J.)).  Section 15 of the Final Judgment (Docket No. 604) provides that the Settlement releases "any and all direct, indirect, and/or derivative claims that could have been asserted in any forum by [the Fund] against [MassMutual, a settling defendant]."

## II.   THE AMENDED COMPLAINT FAILS TO STATE ANY CLAIM AGAINST MASSMUTUAL.

### A.   Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  A claim is plausible if the "plaintiff pleads factual content that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A complaint must consist of more than "labels and conclusions" or "formulaic recitations of the elements of a cause of action" to survive a motion to dismiss.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007).  In addition, because each of Prickett's claims against MassMutual is based on an underlying allegation of fraud, Prickett must meet the heightened pleading standard of Fed. R. Civ. P. 9(b).  *See, e.g., DeBlasio v. Merrill Lynch & Co., Inc.*, No. 07 Civ 318(RJS), 2009 WL 2242605, *9 (S.D.N.Y. July 27, 2009) ("Reviewing the [amended complaint] in its entirety, the Court concludes that … each of Plaintiffs' claims [(for fraud, negligent misrepresentation, breach of fiduciary duty, aiding and abetting a breach of fiduciary

duty, and unjust enrichment)] sounds in fraud and therefore is subject to a heightened pleading standard. *See* Fed. R. Civ. P. 9(b)."); *see also Spira*, 2001 WL 611386, \*3; *Marino v. Grupo Mundial Tenedora, S.A.*, No. 10 Civ. 4126, 2011 WL 3837153, \*11 (S.D.N.Y. Aug. 30, 2011).

### B.    Prickett Has Not Alleged a Fraud Claim against MassMutual.

The well known elements of a fraud claim are:

> plaintiff must prove a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury.

*Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 80 (1996).[5]

Prickett fails to plead *any* relevant facts to support a fraud claim against MassMutual — let alone with the particularity required for a fraud claim under Fed. R. Civ. P. 9(b).  *See, e.g., Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996).

Prickett substitutes conclusory allegations about the collective "Defendants" that merely recite the elements of fraud — without mention of MassMutual, much less what MassMutual allegedly misrepresented.   FAC ¶¶ 163-165.   "Where multiple defendants are involved, the complaint is required to describe specifically each defendant's alleged participation in the fraud." *Spira v. Curtin*, No. 97 CIV. 2637(TPG), 2001 WL 611386, \*3 (S.D.N.Y. 2001).  "Conclusory statements and allegations are not enough to meet the Rule 9(b) pleading requirements." *Musalli Factory for Gold & Jewellry Co. v. JPMorgan Chase Bank, N.A.*, 382 Fed.Appx. 107, 108, 2010 WL 2588195, \*1 (2d Cir. 2010).

---

[5] Plaintiff cannot allege that MassMutual omitted material information; such "an omission does not constitute fraud unless there is a fiduciary relationship between the parties." *See, e.g., Eurycleia Partners, LP v. Seward & Kissel, LLP*, 46 A.D. 3d 400, 402, 849 N.Y.S.2d 510, 512 (1st Dep't 2007).  No such duty is alleged (or exists) here.

1.    **Prickett Fails to Allege that MassMutual Made Any Misrepresentation to Him.**

The cornerstone of any fraud claim is a material misrepresentation.  Fed. R. Civ. P. 9(b) requires that the plaintiff "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."  *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (*quoting Harsco*, 91 F.3d at 347); *see also Mountain Lion Baseball Inc. v. Gaiman*, 263 A.D.2d 636, 638, 693 N.Y.S.2d 289, 292 (3d Dep't 1999).   Where a claimant has "failed to articulate a misrepresentation of a material existing fact," a fraud claim is "properly dismissed."  *WorldCom, Inc. v. Segway Mktg. Ltd.*, 262 A.D.2d 164, 164, 693 N.Y.S.2d 9, 10 (1st Dep't 1999); *see also Eaves v. Designs for Finance, Inc.*, 785 F. Supp. 2d 229, 248-249 (S.D.N.Y. 2011) (in cases involving multiple defendants, plaintiff must identify the specific alleged misrepresentations made and the specific defendant that allegedly made it; allegations regarding "Defendants" generally are insufficient); *Nat'l Westminster Bank USA v. Weksel*, 124 A.D.2d 144, 147, 511 N.Y.S.2d 626, 628 (1st Dep't 1987) ("no cause is stated against [defendant] for fraud … because there is no allegation anywhere in the complaint that [defendant] made any representation, fraudulent or otherwise, to plaintiff").

Prickett fails to identify a single statement made to him by MassMutual (or even any dealing he had with MassMutual).  *See Zutty*, 2011 WL 5962804 at *13 ("[P]laintiffs fail to allege the most rudimentary element of a fraud claim - that MassMutual or OAC ever made a representation to them.").  Prickett attempts to assign responsibility for these representations to MassMutual based on his "umbrella" allegation: after the 2001 acquisition, Tremont's "operations" "were directly under the MassMutual Financial Group umbrella." *Id.*, ¶ 133.  The (unreasonable) inference Prickett seeks to imply is that, by virtue of MassMutual's ownership of a company (MassMutual Holding) that owned a company (OAC) that owned another company (TGHI) which owned the general partner (TPI) of the Fund, MassMutual becomes obligated to

indemnify Prickett for New York Life's Madoff-related losses.

In another Madoff-related case, the New York Supreme Court did not hesitate to dismiss a complaint with fraud allegations where plaintiffs failed to plead that MassMutual made any representation to them:

> The inference that plaintiffs seek to draw is that, by virtue of their ownership of TPI, MassMutual and OAC represented that investments made through TPI were secure and legitimate. However, *plaintiffs cannot demonstrate that, simply by virtue of ownership, MassMutual and OAC represented anything to plaintiffs, or committed fraud.* "It is beyond dispute that a corporation may not be held liable for the actions of another company merely because it has an ownership interest in it" (Maung Ng We v. Merrill Lynch & Co., Inc., [No. 99 CIV. 9687(CSH), 2000 WL 1159835, *3 (S.D.N.Y. Aug. 15, 2000)])

*Zutty,* 2011 WL 5962804 at *14 (emphasis added).  Prickett's failure to "detail" any statement MassMutual made, "where and when" the statement was made or "why" the statement was fraudulent is fatal to its claim.  *See, e.g., Eternity Global Master Fund Ltd*., 375 F.3d at 187.

## 2. Prickett Fails to Allege That MassMutual *Knowingly* Made Any Untrue Statement.

Assuming *arguendo*, that MassMutual, by virtue of its status as corporate great-grandparent, impliedly misrepresented some fact to Prickett, Prickett must also allege facts sufficient to reasonably infer that MassMutual knew the alleged misrepresentation was false. *See, e.g., Lama Holding Co.*, 88 N.Y.2d at 421, 646 N.Y.S.2d at 80.  Although "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally," plaintiff cannot "base claims of fraud on speculation and conclusory allegations." *Shields v. Citytrust Bankcorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (*citing O'Brien v. Nat'l Prop. Analysts Partner*, 936 F.2d 674, 676 (2d Cir. 1991)).  "To allege conscious misbehavior or recklessness the [plaintiff] must link the misleading statement with facts that give rise to the inference that the [defendant] had a basis for knowing it was false."  *SKR Res., Inc. v. Players Sports, Inc*., 938 F. Supp. 235, 239 (S.D.N.Y. 1996) (citations and quotations omitted).

Reading the complaint generously, Prickett's theory of knowledge seems to be that

before the 2001 acquisition of TGHI, MassMutual (and OAC) "were aware" of numerous "'red flags' or indicators of gross irregularities in Madoff's operations."  FAC ¶ 121.  Despite alleged knowledge of the red flags and gross irregularities about *Madoff*, Prickett asserts, *ipse dixit,* that MassMutual and OAC nonetheless "pressed forward with the Tremont Advisers acquisition." *Id.*, ¶ 127.  Leaving to one side that Tremont used multiple managers, as evidenced by the fact that almost 80% of the assets of the Fund were not invested with Madoff, the only reasonable inference from pre-acquisition diligence is that MassMutual and OAC did *not* know that any Tremont investment vehicle was placing money into a Ponzi scheme.

Numerous courts, including this Court, have rejected inferences that allegations of knowledge of red flags (even if true) constitute knowledge of a fraud or constituted recklessness. *See Meridian Horizon Fund, LP v. Tremont Group Holdings*, 747 F. Supp. 2d 406, 413 (S.D.N.Y. 2010) (Griesa, J.) ("the more compelling inference as to why Madoff's fraud went undetected for two decades was his proficiency in covering up his scheme and deceiving the SEC and other financial professionals")*; In re Tremont Sec. Law, State Law and Ins. Litig.*, 703 F. Supp. 2d 362, 371 (S.D.N.Y. 2010) (Griesa, J.) (same).  Allegations about others' "'suspicions' regarding Madoff" do not create an inference that defendants "knew about Madoff's Ponzi scheme" or "made it so obvious that Madoff was running a Ponzi scheme that defendants must have known about the scheme and wanted to further it." *Zutty*, 2011 WL 5962804 at *12.  In *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, plaintiff alleged that defendants had knowledge of the Madoff fraud because defendant JP Morgan Chase Bank provided banking services to Madoff and defendant JP Morgan Chase, which had placed money with Madoff, noticed unusually high returns, met with Madoff to discuss his operations and, ultimately, liquidated that investment.  737 F. Supp. 2d 137, 145 (S.D.N.Y. 2010), *aff'd* 2011 WL 2176152 (2d Cir. June 6, 2011).  On these allegations, "Plaintiff has utterly failed to set forth non-conclusory facts indicating even that Defendants had constructive knowledge of Madoff's fraud, let alone actual knowledge." *Id.* at 146.

The only other allegations of knowledge made by Prickett concerns "Defendants"

generally:  "[a]t the time the statements and representations were made by the Defendants, the Defendants knew them to be false, or disregarded their falsity with extreme recklessness, and Defendants intended to deceive Prickett by making such statements and representations and by concealing material facts."  FAC ¶ 164.  Such "speculation and conclusory allegations" do not support a fraud claim.  *Shields*, 25 F.3d at 1128.  And, "[i]n a case involving multiple defendants, plaintiffs must plead circumstances providing a factual basis for scienter for each defendant; guilt by association is impermissible."  *AllGood Entm't, Inc. v. Dileo Entm't and Touring, Inc.*, 726 F. Supp. 2d 307, 322 (S.D.N.Y 2010) (internal quotes and citations omitted).

### 3. Prickett Fails to Plead any of the Remaining Elements of a Fraud Claim — Intent to Deceive, Justifiable Reliance or Causation.

(1) The essence of fraud is intent to deceive.  The amended complaint contains no specific allegation that MassMutual acted with the requisite intent, and makes only the bare allegation that "[a]t the time the statements and representations were made by the [undifferentiated] Defendants, … Defendants intended to deceive Prickett by making such statements and representations and by concealing material facts."  FAC ¶ 164.  This non-particularized and conclusory allegation says nothing about MassMutual and does not substitute for the crucial intent to deceive or reckless disregard element of a fraud claim.  *See, e.g., Ruff v. Genesis Holding Corp.*, 728 F. Supp. 225, 227-28, 230 (S.D.N.Y. 1990) (dismissing fraud claim where "[n]othing in the Complaint remotely suggests that the defendants acted intentionally or with reckless disregard," and plaintiff "alleges no facts showing a motive for committing fraud") (internal quotation marks omitted).  As explained in another Madoff-related case:

> For twenty years, Madoff operated this fraud without being discovered and with only a handful of investors withdrawing their funds as a result of their suspicions.  *An inference of scienter based on publicly available red flags is simply not as cogent and compelling as the opposing inference of nonfraudulent intent.*

*Saltz v. First Frontier, LP*, No. 10 Civ. 964 (LBS), 2010 WL 5298225, *6 (S.D.N.Y. Dec. 23, 2010) (citation omitted) (emphasis added).

(2)   Assuming *arguendo* that MassMutual uttered a knowing, intentional misrepresentation to Prickett (which it did not), Prickett alleges no facts that suggest that he justifiably relied on any such MassMutual misrepresentation.   He alleges only in the most general terms that he acted "in reasonable and justifiable reliance upon the statements and representations made by Defendants."   FAC ¶ 163.   This conclusory statement falls far short of satisfying the heightened pleading standard for a fraud claim.   "Reasonable, detrimental reliance upon a misrepresentation is an essential element of a cause of action for fraud, and such reliance must be pleaded with particularity."   *Stolow v. Greg Manning Auctions Inc.*, 258 F. Supp. 2d 236, 248 (S.D.N.Y. 2003) aff'd, 80 F. App'x 722 (2d Cir. 2003) (citations and quotations omitted); *Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580, 593 (S.D.N.Y. 2008) ("detrimental reliance [must] be pleaded with particularity ... allegations that are conclusory or unsupported by factual assertions are insufficient") (quotations and citations omitted).

(3) Prickett also fails to allege any basis for causation beyond his desired conclusion: "Prickett, as a result of his purchase of an interest in the Tremont Fund and by reasons of the Defendants' wrongful concealments and misrepresentations, has sustained damages …"   FAC ¶ 166.   This allegation is factually incorrect (as demonstrated by other parts of the FAC) in that Prickett never purchased an interest in the Fund.   He purchased an insurance policy.   New York Life invested in the Fund.   That factual inaccuracy aside, this allegation is insufficient to allege causation: "[t]o establish a fraud claim, a plaintiff must demonstrate that [MassMutual's] misrepresentations were the direct and proximate cause of the claimed losses." *Friedman v. Anderson*, 23 A.D.3d 163, 167, 803 N.Y.S.2d 514, 517 (1st Dep't 2005).

## C.   Prickett Fails to Allege a Claim for Negligent Misrepresentation.

Prickett fails to plead any of the elements of a negligent misrepresentation claim against MassMutual, namely that (1) defendant had a duty, as a result of a special relationship, to disclose correct information; (2) defendant made a false representation that it should have known was incorrect; (3) defendant knew that plaintiff intended to use the information supplied for a

particular purpose; and (4) plaintiff reasonably relied on the information to his or her detriment. *See, e.g., Sykes v. RFD Third Ave. 1 Assocs., LLC,* 67 A.D.3d 162, 165-66, 884 N.Y.S.2d 745, 747-48 (1st Dep't 2009), *aff'd*, 15 N.Y.3d 370 (2010).[6]

Prickett had no relationship with MassMutual.  He does not (and cannot) allege that he and MassMutual had a "special relationship," which is required for a negligent misrepresentation claim.  "We have reiterated time and again that 'before a party may recover in tort for pecuniary loss sustained as a result of another's negligent misrepresentations, there must be a showing that there was either actual privity of contract between the parties or a relationship so close as to approach that of privity.'"  *Parrott v. Coopers & Lybrand, LLP*, 95 N.Y.2d 479, 483 (2000) (citations omitted).  Prickett fails even to allege that MassMutual knew that Prickett was a policy holder of a competitor, New York Life.  *See Sykes v. RFD Third Ave. 1 Assocs., LLC*, 15 N.Y.3d 370, 374 (2010) ("[Since defendant] did not know 'the identity of the specific nonprivy party who would be relying,' the complaint falls short of satisfying the [special relationship test].").

### D. Prickett's Unjust Enrichment Claim Is Barred by (a) the Written VUL Policy and LPA and (b) the Lack of Any Allegation that MassMutual Received Any Specific and Direct Benefit.

Prickett alleges that the undifferentiated "Defendants have benefited and profited unjustly by receiving excessive revenue derived from the fees they collected based on the policy's cash value" and that "[t]hese payments have been received by New York Life and Tremont."  FAC ¶¶ 176-177.  Prickett fails to state a claim against MassMutual for two main reasons:

First, any "fees" paid by Prickett were pursuant to a contract – the VUL policy.  Any "fees" received by TPI from the Fund were pursuant to the Fund's LPA.  The presence of "a valid and enforceable written contract governing a particular subject matter" precludes "recovery

---

[6] As stated above, Prickett, a sophisticated investor with no dealings with MassMutual, does not allege any MassMutual representation, let alone a false one which Plaintiff reasonably relied on to his detriment.  *See, e.g.,* FAC ¶¶ 161-65.

in quasi contract for events arising out of the same subject matter." *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 388, 516 N.E.2d 190, 193 (1987); *see also Banco Espirito Santo De Investimento, S.A. v. Citibank, N.A.*, No. 03 Civ. 1537 (MBM), 2003 WL 23018888, at **17-18 (S.D.N.Y. Dec. 22, 2003) (dismissing unjust enrichment claim, which concerned administrative fees it allegedly paid fund manager, where fees were expressly governed by written agreements). The written contracts preclude recovery for unjust enrichment even as to claims against defendants who are not parties to the contracts. *See Granite Partners, L.P. v. Bear Stearns & Co., Inc.*, 17 F. Supp. 2d 275, 311 (S.D.N.Y. 1998) (contract precludes claim even "where one party to the lawsuit is not a party to the contract").

Second, Prickett does not allege that MassMutual received any specific benefit from Prickett. Unjust enrichment is a "quasi contractual remedy," successfully obtained as an alternative to a contract, where a contractual relationship has failed. Prickett must allege "direct dealings or some sort of quasi-contractual relationship" with MassMutual — that MassMutual received a specific benefit belonging to Prickett that equity and good conscience require restitution. *Jet Star Enter. v. Soros*, No. 05 civ. 6585 (HB), 2006 WL 2270375, at *5 (S.D.N.Y. Aug. 9, 2006) (unjust enrichment claim fails where plaintiffs did not identify any benefit defendants received at plaintiffs' expense). Where, as here, "[p]laintiff's complaint does not allege that defendant obligated itself in any way to plaintiff," plaintiff's "sole remedy" is against party with whom it contracted. *Graystone Materials, Inc. v. Pyramid Champlain Co.*, 198 A.D.2d 740, 741, 604 N.Y.S.2d 295, 296 (3d Dep't 1993).

### E.    Prickett Fails to State an Aiding and Abetting Claim against MassMutual.

For aiding and abetting liability, a plaintiff must allege: (1) an underlying fraud or breach of fiduciary duty, (2) a defendant who knowingly induced or participated in the breach or fraud, and (3) plaintiff suffered damage as a result.[7] *See Kaufman v. Cohen*, 307 A.D.2d 113, 125, 760

---

[7] Because Plaintiff has not stated an underlying claim against the Tremont Defendants, the aiding and abetting claim should be dismissed. *See, e.g., Berry v. Deutsche Bank Trust Co.*

(Footnote Continued on Next Page.)

N.Y.S.2d 157, 169 (1st Dep't 2003).  "Knowing participation" requires that plaintiff allege actual knowledge and substantial assistance in the alleged wrongdoing.  *See id.*  Moreover, … because [aiding and abetting claims] sound in fraud, these allegations must be pled with particularity under Rule 9(b)."  *Marino,* 2011 WL 3837153 at *11.

**1.    Prickett Fails to Allege that MassMutual Had Actual Knowledge of a Fraud or Breach of Fiduciary Duty.**

To state an aiding and abetting claim against MassMutual, Prickett must allege actual knowledge of the fraud or breach of fiduciary duty by MassMutual.  "'The burden of demonstrating actual knowledge, although not insurmountable, is nevertheless a heavy one.'"  *Design Strategies, Inc. v. Davis*, 384 F. Supp. 2d 649, 671 (S.D.N.Y. 2005), quoting *Terrydale Liquidating Trust v. Barness*, 611 F. Supp. 1006, 1027 (S.D.N.Y. 1984).  "Constructive knowledge of the breach of fiduciary duty by another is legally insufficient to impose aiding and abetting liability."  *Kaufman*, 307 A.D.2d at 125, 760 N.Y.S.2d at 169, citing *Kolbeck v. LIT Am.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996).

Here, "[a]part from … conclusory allegation[s], there are no facts in the complaint from which it could be inferred that [MassMutual] had actual knowledge [of any breach of fiduciary duty owed to plaintiff]."  *Kaufman*, 307 A.D.2d at 125-26, 760 N.Y.S.2d at 169-70; *Berry*, 2008 WL 4694968 at *8 ("conclusory allegations cannot support aiding and abetting breach of fiduciary duty claim") (citation omitted); *see also Kolbeck*, 939 F. Supp. at 248 ("Because plaintiffs have failed to set forth facts showing that defendants knew [of the alleged breach of fiduciary duty], plaintiffs' motion to amend their complaint to allege a claim of participating in that breach of fiduciary duty must be denied.").

Prickett alleges that: (1) certain "Defendants," including MassMutual, had unspecified "actual knowledge of the breaches of fiduciary duty by the Tremont Fund, Rye, and the Rye

---

(Footnote Continued from Previous Page.)

*Ams.*, No. 07 Civ. 7634 (WHP), 2008 WL 4694968, at *8 (S.D.N.Y. Oct. 21, 2008).

A/74711485.4

Funds" (FAC ¶ 189); (2) MassMutual knew that some funds managed by TPI had a relationship with Madoff, but went ahead with the 2001 Tremont acquisition (FAC ¶¶ 121, 127); and (3) "Defendants Tremont [TPI's corporate parent], Oppenheimer [TPI's corporate grandparent], MassMutual Holding, and MassMutual [TPI's corporate great-grandparent] participated in *and/or* were aware of the Tremont Fund's, Rye's, and the Rye Fund's operations, *and/or* had intimate knowledge of their products, sales, accounting, plans and implementation thereof …" *Id.*, ¶ 190 (emphasis added).  These non-specific "and/or" conclusory allegations do not support an inference that MassMutual had actual knowledge of any fraud or breach of fiduciary duty or that Madoff was operating a Ponzi.[8]

Prickett's non-sequitur that ownership is proves "actual knowledge" of wrongdoing simply is not correct and lacks legal support.  Stock ownership does not demonstrate "actual knowledge" of wrongdoing by the stock owner.  If stock ownership amounted to actual knowledge of the owner of every act taken by an affiliate, stock owners would become guarantors of each of its affiliates.  Such an outcome would represent a dramatic unraveling of well established and longstanding principles of corporate separateness — indeed, it would eliminate the most basic underpinnings of corporate law: that shareholders are not responsible for the obligations of the corporation they own.  *See Maung Ng We*, 2000 WL 1159835, *3 ("It is beyond dispute that a corporation may not be held liable for the actions of another company merely because it has an ownership interest in it.") (citation omitted); *see also Horowitz v. Aetna Life Ins.*, 148 A.D.2d 584, 586, 539 N.Y.S.2d 50, 53 (2d Dep't 1989) ("A parent company is not

---

[8] For example, in making "and/or" allegations, does Prickett allege that MassMutual "participated" in Tremont's operations (a proposition for which Prickett alleges no facts) or does Prickett allege that MassMutual had knowledge of Tremont's business (hardly shocking that a shareholder would have knowledge of the business of the entity in which the shareholder owned stock) or both?  Prickett does not say.  Such non-specific and conclusory allegations do not state a claim for relief, let alone meet the heightened pleading standard for a claim based on fraud. *See, e.g., DeBlasio*, 2009 WL 2242605 at *9.

liable for the torts of its subsidiary, even if it is a wholly owned subsidiary, unless it can be shown that the parent's control over the subsidiary disregards its corporate independence.").

### 2. Prickett Has Not Alleged that MassMutual Substantially Assisted Any Alleged Fraud or Breach of Fiduciary Duty.

"A person knowingly participates in a breach of fiduciary duty only when he or she provides substantial assistance to the primary violator." *Kaufman*, 307 A.D.2d at 126, 760 N.Y.S.2d at 170. "In general, substantial [assistance] is found where (1) a defendant affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed; and (2) the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated." *See Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, No. 1:08-CV-01720 (LAP), 2009 WL 860635, at **10-11 (S.D.N.Y. Mar. 31, 2009), *aff'd*, 382 Fed.Appx. 107, 2010 WL 2588195 (2d Cir. 2010) (citations and internal quotations omitted); *see also Kaufman*, 307 A.D.2d at 126, 760 N.Y.S.2d at 170 (substantial assistance occurs "when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur. However, the mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff") (citations and internal quotation marks omitted).

Prickett makes no factual allegations that MassMutual "affirmatively assist[ed]" or "help[ed] conceal" any wrong doing. He, instead, posits a conclusion: that MassMutual, as a result of its status as ultimate owner and, as such, by virtue of representation on TGHI's board is "presumed to have had the power to control or influence the particular statements giving rise to the claims alleged herein." FAC ¶ 191. These allegations underscore perfectly that Prickett alleges no facts from which to infer affirmative assistance by MassMutual of wrongdoing. A description of ownership does not lead to any inference, positive or negative, about any action taken by MassMutual, knowingly or otherwise. Furthermore, Prickett does not even allege that MassMutual elected members to the board of TPI, the general partner of the Fund in which New York Life (not Prickett) invested. *See, e.g., Marino*, 2011 WL 3837153 at *12 (establishing a

holding company, having board representation and purportedly "exercis[ing] financial power" are insufficient to allege substantial assistance "because they fail to allege that these actions enabled [the] alleged breach to occur").  The only reasonable inference from allegations of ownership is that TPI and TGHI are affiliates of MassMutual, not that MassMutual substantially assisted in any alleged fraud or breach of fiduciary duty owed to plaintiff.

## CONCLUSION

For the reasons stated above, Massachusetts Mutual Life Insurance Company and MassMutual Holding LLC respectfully pray that this Court dismiss the claims against them with prejudice.

Dated: February 29, 2012

**BINGHAM McCUTCHEN LLP**

_s/Carol E. Head_____
Kenneth I. Schacter
399 Park Avenue
New York, NY 10022
Tel.: (212) 705-7000
kenneth.schacter@bingham.com

Joseph L. Kociubes*
joseph.kociubes@bingham.com
Carol E. Head*
carol.head@bingham.com
One Federal Street
Boston, MA 02110
Tel.: (617) 951-8000
*admitted *pro hac vice*

*Attorneys for Defendants Massachusetts Mutual Life Insurance Company and MassMutual Holding LLC*

A/74711485.4