IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
IN RE TREMONT SECURITIES LAW,          :
STATE LAW AND INSURANCE                :      Master File No.
LITIGATION                             :      08 Civ. 11117 (TPG)
------------------------------------------------------------:
This Document Relates to:              :
Insurance Action, 09 Civ. 557 (TPG),   :
Specifically to:                       :
                                       :
F. DANIEL PRICKETT,                    :      09 Civ. 3137 (TPG)
                                       :
                       Plaintiff,      :
                                       :      ECF Case
          - against -                  :      Electronically Filed
                                       :
NEW YORK LIFE INSURANCE COMPANY,       :
et al.,                                :
                                       :
                       Defendants.     :
------------------------------------------------------------x


**DEFENDANT OPPENHEIMER ACQUISITION CORP'S. MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**


David A. Kotler
DECHERT LLP
902 Carnegie Center, Suite 500
Princeton, New Jersey 08540
Tel.: (609) 955-3200
Fax: (609) 955-3259

*Attorneys for Defendant Oppenheimer
Acquisition Corp.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF RELEVANT FACTS ..................................................................... 3

ARGUMENT ............................................................................................................... 5

I.    PLAINTIFF CANNOT STATE ANY CLAIM AGAINST OAC MERELY BY
      ALLEGING WRONDOING BY "DEFENDANTS" ....................................... 5

II.   PLAINTIFF FAILS TO STATE ANY CLAIM AGAINST OAC UPON WHICH
      RELIEF CAN BE GRANTED ........................................................................ 7

      A.    Plaintiff Fails To State A Claim For Fraud Against OAC..................... 8

            1.    Plaintiff does not and cannot allege that OAC made any
                  representation to him.................................................................. 8

            2.    Plaintiff does not and cannot allege any of the other required
                  elements of his fraud claim against OAC .................................. 9

      B.    Plaintiff Fails To State A Claim For Negligent Misrepresentation Against
            OAC ..................................................................................................... 11

      C.    Plaintiff Fails To State A Claim For Aiding And Abetting Against OAC ......... 13

            1.    Plaintiff does not and cannot allege actual knowledge ............. 14

            2.    Plaintiff does not and cannot allege substantial assistance ...... 16

      D.    Plaintiff Fails To State A Claim For Unjust Enrichment Against OAC.............. 19

CONCLUSION ....................................................................................................... 21

## TABLE OF AUTHORITIES

*Allianz Risk Transfer v. Paramount Pictures Corp.*,
  No. 08 Civ. 10420, 2010 WL 1253957 (S.D.N.Y. Mar. 31, 2010) .........................................21

*American Protein Corp. v. AB Volvo*,
  844 F.2d 56 (2d. Cir. 1988).....................................................................................................17

*Appalachian Enters., Inc. v. ePayment Solutions Ltd.*,
  No. 01 CV 11502, 2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004)...............................................6

*Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*,
  03 Civ. 1537, 2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003),
  *aff'd,* 110 F. App'x 191 (2d Cir. 2004)..................................................................................21

*Barron Partners, LP v. LAB123, Inc.*,
  593 F. Supp. 2d 667 (S.D.N.Y. 2009)......................................................................................12

*Berman v. Morgan Keegan & Co.*,
  No. 11 Civ. 2725, 2012 WL 147907 (2d Cir. Jan. 19, 2012)..........................................7, 8, 13

*Burns v. Del. Charter Guar. & Trust Co.*,
  No. 10 Civ. 4534, 2011 WL 2314835 (S.D.N.Y. June 8, 2011)..............................................12

*Citibank, N.A. v. K-H Corp.*,
  968 F.2d 1489 (2d Cir. 1992)...................................................................................................11

*Corazzini v. Litton Loan Servicing LLP*,
  2010 WL 1132683 (N.D.N.Y. Mar. 23, 2010) .......................................................................10

*DeBlasio v. Merrill Lynch & Co.*,
  No. 07 Civ. 318, 2009 WL 2242605 (S.D.N.Y. July 27, 2009) ..................................... *passim*

*Defer LP v. Raymond James Fin. Inc.*,
  654 F. Supp. 2d 204 (S.D.N.Y. 2009).....................................................................................18

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
  No. 08 Civ. 2437, 2011 WL 6034310 (S.D.N.Y. Dec. 5, 2011).........................................7, 12

*Employees' Ret. Sys. v. Morgan Stanley & Co.*,
  No. 09 Civ. 10532, 2011 WL 4526045 (S.D.N.Y. Sept. 30, 2011) ...........................................9

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*,
  375 F.3d 168 (2d Cir. 2004)......................................................................................................9

*Everette Weaver v. Indymac Fed. Bank, FSB*,
  09 Civ. 5091, 2010 WL 7634134 (S.D.N.Y. June 8, 2010)......................................................20

*Federal Treas. Enters. Sojuzplodoimport v. Spirits Int'l N.V.*,
    400 F. App'x 611 (2d Cir. 2010) .........................................................................19

*Freydl v. Meringolo*,
    No. 09 Civ. 7196, 2010 WL 3026578 (S.D.N.Y. Aug. 2, 2010) .............................10

*Gaind v. Pierot*,
    No. 04 Civ. 9407, 2006 WL 846268 (S.D.N.Y. Mar. 31, 2006),
    *aff'd,* 282 F. App'x 946 (2d Cir. 2008).................................................................6

*Goldin Assocs., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    No. 00 Civ. 8688, 2003 WL 22218643 (S.D.N.Y. Sept. 25, 2003) ........................16

*IBM v. Liberty Mut. Ins. Co.*,
    363 F.3d 137 (2d Cir. 2004)..................................................................................19

*In re First Cent. Fin. Corp.*,
    377 F.3d 209 (2d Cir. 2004)..................................................................................19

*In re Merkin*,
    No. 08 Civ. 10922, 2011 WL 4435873 (S.D.N.Y. Sept. 23, 2011) ........................14

*In re Sterling Foster & Co. Sec. Litig.*,
    222 F. Supp. 2d 216 (E.D.N.Y. 2002) ..................................................................13

*Jackson Nat'l Life Ins. Co. v. Kennedy*,
    741 A.2d 377 (Del. Ch. 1999)...............................................................................19

*JFK Family Ltd. P'Ship v. Millbrae Nat. Gas Dev. Fund 2005, L.P.*,
    2008 WL 4308289 (N.Y. Sup. Ct. Sept. 16, 2008)................................................13

*Kaye v. Grossman*,
    202 F.3d 611 (2d Cir. 2000)..................................................................................20

*Khreativity Unlimited v. Mattel, Inc.*,
    101 F. Supp. 2d 177 (S.D.N.Y.), *aff'd*, 242 F.3d 366 (2d Cir. 2000) ....................19

*Local No. 38 Int'l Broth. of Elec. Workers Pension Fund v. Am. Express Co.*,
    724 F. Supp. 2d 447 (S.D.N.Y. 2010), *aff'd*, 430 F. App'x 63 (2d Cir. 2011)......................10

*Manela v. Gottlieb*,
    784 F. Supp 84 (S.D.N.Y. 1992)............................................................................7

*Marino v. Grupo Mundial Tenedora, S.A.*,
    No. 10 Civ. 4126, 2011 WL 3837153 (S.D.N.Y. Aug. 30, 2011) ..............................13, 16, 19

*Medina v. Bauer*,
  No. 02 Civ. 8837, 2004 WL 136636 (S.D.N.Y. Jan. 27, 2004)...............................................6

*Meridian Horizon Fund, LP, v. Tremont Group Holdings, Inc.*,
  747 F. Supp. 2d 406 (S.D.N.Y. 2010).................................................................................10

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
  737 F. Supp. 2d 137 (S.D.N.Y. 2010), *aff'd*, 651 F.3d 268 (2d Cir. 2011) ...........................15

*Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A.*,
  261 F.R.D. 13 (S.D.N.Y. 2009), *aff'd*, 382 F. App'x 107 (2d Cir. 2010) ...................7, 12, 17

*Naughright v. Weiss*,
  No. 10 Civ. 8451, 2011 WL 5835047 (S.D.N.Y. Nov. 18, 2011) .........................................11

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
  446 F. Supp. 2d 163 (S.D.N.Y. 2006).................................................................................15

*Redtail Leasing, Inc. v. Bellezza*,
  No. 95 Civ. 5191, 1997 WL 603496 (S.D.N.Y. Sept. 30, 2007) ...........................................20

*Riel v. Morgan Stanley*,
  No. 06 Civ. 524, 2007 WL 541955 (S.D.N.Y. Feb. 16, 2007),
  *aff'd*, 299 F. App'x 91 (2d Cir. 2008) ................................................................................12

*Rosner v. Bank of China*,
  349 F. App'x 637 (2d Cir. 2009) ........................................................................................13

*Saltz v. First Frontier, LP.*,
  782 F. Supp. 2d 61 (S.D.N.Y. 2010)..........................................................................7, 11, 15

*Schulman v. Delaire*,
  No. 10 Civ. 3639, 2011 WL 672002 (S.D.N.Y. Feb. 22, 2011) ............................8, 10, 15, 20

*Simon v. Keyspan Corp.*,
  785 F. Supp. 2d 120 (S.D.N.Y. 2011).................................................................................20

*Spira v. Curtin*,
  No. 97 Civ. 2637, 2001 WL 611386 (S.D.N.Y. June 5, 2001)................................................8

*Stephenson v. Citgo Group Ltd.*,
  700 F. Supp. 2d 599 (S.D.N.Y. 2010)...................................................................................8

*Tuosto v. Philip Morris USA Inc.*,
  No. 05 Civ. 9384, 2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007) .........................................12

*United States v. Bestfoods*,
  524 U.S. 51 (1998) ........................................................................................3, 16, 18

*Washington v. Kellwood Co.*,
  No. 05 Civ. 10034, 2009 WL 855652 (S.D.N.Y. Mar. 24, 2009) ...........................................7

*Zutty v. Rye Select Broad Mkt. Fund, LP*,
  2011 WL 5962804 (N.Y. Sup. Ct. Apr. 20, 2011) ...................................................9, 14, 15, 19

## STATUTES/RULES

15 U.S.C. § 80b-3 .........................................................................................................16

15 U.S.C. § 80b-4 .........................................................................................................16

Fed. R. Civ. P. 8 ..........................................................................................................6

Fed. R. Civ. P. 9(b) ..............................................................................................1, 6, 7, 8

Fed. R. Civ. P. 12(b)(6) ............................................................................................1, 7

## OTHER AUTHORITIES

Form ADV, Uniform Application for Investment Adviser Registration, Item 10,
  Schedules A and B, *available at* http://www.sec.gov/about/forms/formadv.pdf. ...................16

Defendant Oppenheimer Acquisition Corp. ("OAC") respectfully submits this memorandum of law in support of its motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) for failure to properly plead or state any legally sustainable cause of action against OAC.

## PRELIMINARY STATEMENT

Since filing his initial complaint nearly three years ago, Plaintiff has had the opportunity to conduct an extensive investigation, including monitoring and analyzing other highly publicized Madoff-related actions. Despite the generous time to file an amended complaint and the wealth of available pre-filing information, Plaintiff's claims against OAC remain as remote as they are meritless. In 2003, Plaintiff purchased a variable universal life insurance policy (the "VUL policy") from a prominent and sophisticated insurance company, New York Life Insurance and Annuity Corporation ("New York Life"). According to the Amended Complaint:

- New York Life invested a portion of the VUL policy premiums in a hedge fund known as the Tremont Opportunity Fund III, L.P. (the "Opportunity Fund") managed by defendant Tremont Partners, Inc. ("Tremont Partners");

- The Opportunity Fund, in turn, invested a portion of its assets with three other hedge funds managed by Tremont Partners -- the Rye Select Broad Market Prime Fund, L.P., the Rye Select Broad Market XL Fund, L.P., and the Rye Select Broad Market Insurance Portfolio, LDC (collectively the "Rye Funds");

- The Rye Funds retained Bernard L. Madoff Investment Securities LLC ("BMIS" or "Madoff") to manage the assets of those hedge funds; and

- Madoff, in turn, committed the most notorious financial fraud in U.S. history.

Never a direct investor in the Opportunity Fund or the Rye Funds (collectively, the "Funds"), Plaintiff nonetheless seeks to recover for all of his Madoff-related losses allegedly incurred through the Opportunity Fund's investments in the Rye Funds by ignoring the distinct legal relationships between the Opportunity Fund and the Rye Funds and between New York

Life and the Opportunity Fund.  Similarly, Plaintiff asks the Court to disregard several layers of corporate separateness by asserting claims against OAC, the parent holding company of the parent holding company of the Rye Funds' general partner.

OAC is not alleged to have had anything to do with the investments or losses at issue; it is included solely as a "deep pocket."  Plaintiff does not (and cannot) allege that OAC in any way influenced his decision to purchase the VUL policy from New York Life or his decision to invest proceeds from that policy in the Opportunity Fund.  Nor does (or can) Plaintiff allege that OAC ever played any role in Tremont's investment process, including with respect to the Rye Funds that ultimately were invested with BMIS.  The scant allegations directed at OAC merely recite that, since 2001, OAC has been an indirect corporate parent of Tremont Partners, the general partner of the hedge funds in which New York Life indirectly invested.  Notwithstanding this distant and wholly inconsequential link between OAC and the alleged wrongful conduct, Plaintiff indiscriminately asserts causes of action against OAC for (i) fraud, (ii) negligent misrepresentation, (iii) aiding and abetting fraud and breaches of fiduciary duty, and (iv) unjust enrichment.  Each of these claims is facially and fundamentally deficient.

For example, with respect to his fraud and negligent misrepresentation claims, Plaintiff does not (and cannot) allege that OAC in any way was involved in drafting, reviewing, approving, or disseminating any of the offering documents at issue, much less that it actually made any of the alleged misrepresentations contained therein.  Plaintiff similarly fails even to allege any of the other requisite elements of his fraud or negligent misrepresentation claims against OAC.

The Amended Complaint also fails to offer even the slightest factual basis for Plaintiff's aiding and abetting claims.  Instead of pleading -- as the law requires -- that OAC had actual

knowledge of Tremont's alleged misconduct in failing to detect the Madoff fraud, Plaintiff

merely alleges that OAC *should have* known of certain "red flags," that *must have* revealed

Madoff's Ponzi scheme.  Not only is this legally insufficient to state an aiding and abetting claim

against OAC, but, as numerous courts have found, it is wholly inconsistent with the unfortunate

reality that Madoff's Ponzi scheme went undetected by both sophisticated investors and

regulatory agencies for years.

Plaintiff's unjust enrichment claim is equally defective.  Plaintiff is unable to specify any

"benefit" that OAC allegedly received, nor can Plaintiff identify the requisite nexus between his

indirect "impoverishment" and OAC's alleged "enrichment."

At bottom, Plaintiff's claims each are premised on nothing more than the bald assertion

that OAC's mere "ownership" of Tremont is sufficient to render OAC liable for the alleged

wrongdoing of Tremont.  The search for deep pockets has never justified defying the "general

principle of corporate law deeply ingrained in our economic and legal systems that a parent

corporation . . . is not liable for the acts of its subsidiaries."  *United States v. Bestfoods*, 524 U.S.

51, 61 (1998).  This claim by an indirect investor that lost money in a tax-driven insurance

vehicle is hardly the place to diverge from that bedrock law.  OAC's motion to dismiss should be

granted in full and with prejudice.

## STATEMENT OF RELEVANT FACTS

Plaintiff is a resident of South Carolina.  Am. Compl. ¶ 17.  In 2003, Plaintiff purchased a

VUL policy offered by New York Life.  *Id*. ¶ 2.  After reviewing several investment options

presented by New York Life, Plaintiff selected the Opportunity Fund for the investment account

component of his VUL policy.  *See id.* ¶¶ 2, 34, 38. As Plaintiff concedes, his investments were

made pursuant to a Variable Life Insurance Policy Private Offering Memorandum and an

- 3 -

Individual Variable Universal Life Policy issued by New York Life, and a private placement memorandum prepared by the Opportunity Fund.  *See id.* ¶¶ 44-59.

Plaintiff was not a limited partner in either the Opportunity Fund or any of the Rye Funds; rather, New York Life invested as a limited partner in the Opportunity Fund pursuant to the terms of that fund's offering documents.[1]  The Opportunity Fund allocated a portion of its assets to the Rye Funds, and the Rye Funds, in turn, were managed by Madoff.  *Id.* ¶ 39. Plaintiff alleges that New York Life and/or Tremont: (1) misrepresented or failed to disclose facts relating to the investment strategy and risks associated with the Opportunity Fund; (2) failed to conduct sufficient due diligence with respect to Tremont's selection of BMIS to manage the Rye Funds' assets; (3) failed to engage in proper oversight of BMIS' management of the Rye Funds' assets; (4) misrepresented their due diligence procedures; and (5) falsely reported positive returns for the Opportunity Fund.  *Id.* ¶¶ 43, 60-73, 75-78.

OAC is, and at all relevant times has been, a holding company that owns the stock of two entities -- Tremont Group Holdings, Inc. ("Tremont Group") and Oppenheimer Funds, Inc. ("OFI").[2]  Plaintiff never had any interaction with OAC of any kind.  As such, Plaintiff's allegations against OAC are confined to the following: (1) in October 2001, OAC acquired Tremont Advisors, Inc. (n/k/a Tremont Group), the parent company of Tremont Partners, (*id.* ¶¶ 133-134); (2) prior to the closing of that transaction, OAC conducted due diligence into

---

[1]      *See* American Masters Opportunity Insurance Fund, L.P. Amended and Restated Confidential Private Placement Memorandum, dated July 1, 2003 at ii (attached to the Declaration of Jason C. Vigna in support of the Tremont Defendants' Motion To Dismiss The Amended Complaint as Ex. A).  The Opportunity Fund was formerly known as the American Masters Opportunity Insurance Fund, L.P.  *See* The Tremont Defendants' Memorandum Of Law In Support Of Their Motion To Dismiss The Amended Complaint ("Tremont Br.") at 4 n.6.

[2]      OFI is not named as a defendant in this action.

- 4 -

Tremont's operations, learning that Tremont utilized BMIS as an investment manager (*id.* ¶¶ 111-121); and (3) since the acquisition, OFI employed two Tremont executives, and two executives of OAC served on Tremont Group's board of directors (*id.* ¶¶ 137-138, 140).

Not only did OAC never have any dealings with Plaintiff, but Plaintiff does not (and cannot) allege that OAC had any involvement with New York Life's relationship with Plaintiff, or with New York Life's investment in the Opportunity Fund. Nor does (or can) Plaintiff allege that OAC was ever involved in the everyday management of Tremont Partners, the entity that, as Plaintiff concedes, "was 'responsible for managing the day-to-day administration and operation of [the Opportunity Fund].'" Am. Compl. ¶ 64. Indeed, Plaintiff does not (and cannot) allege that OAC played any role in the offering or sale of interests in the Opportunity Fund to Plaintiff, or in the investment-related activities carried out by Tremont Partners with respect to the Funds, including as to: (1) the Funds' investment strategies; (2) the selection of Madoff as manager of the Rye Funds; (3) the due diligence performed with respect to that selection; (4) the monitoring of Madoff's performance as manager; or (5) the preparation or review of any offering materials for any of the Funds.

## ARGUMENT

## I.   PLAINTIFF CANNOT STATE ANY CLAIM AGAINST OAC MERELY BY ALLEGING WRONDOING BY "DEFENDANTS"

Throughout the Amended Complaint, Plaintiff improperly attempts to plead causes of action against OAC with nothing more than generic allegations against undifferentiated "Defendants." *E.g.*, Am. Compl. ¶¶ 3, 6, 8-9, 42, 73, 78, 95-98, 163-166, 170-173, 176-177. Plaintiff's indiscriminate lumping together of such disparate entities as an insurance company, four different hedge funds, a hedge fund adviser, and multiple parent holding companies, fails to

meet even the basic pleading requirement of Fed. R. Civ. P. 8, let alone the heightened Fed. R. Civ. P. 9(b) standard applicable to Plaintiff's claims.  *See* Point II, *infra*.

A complaint, like Plaintiff's here, that makes blanket allegations against multiple, undifferentiated "Defendants" fails to meet Rule 8's basic requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8; *see Medina v. Bauer*, No. 02 Civ. 8837, 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004) (granting motion to dismiss complaint that "lump[s] all the defendants together and fail[s] to distinguish their conduct").  There is simply no way for OAC to glean from the Amended Complaint what it is alleged to have done, as opposed to what any of the other defendants (including those who actually interacted with Plaintiff) is alleged to have done.  Accordingly, Plaintiff's rote invocation of allegations against "Defendants" fails "to give adequate notice to [OAC] as to what [it] did wrong."  *Appalachian Enters., Inc. v. ePayment Solutions Ltd.*, No. 01 CV 11502, 2004 WL 2813121, at *7 (S.D.N.Y. Dec. 8, 2004) (granting motion to dismiss where the complaint "refers to acts allegedly committed by the 'Defendants'" and "does not identify any particular defendant that committed any specific act of wrongdoing against plaintiff").

Moreover, Plaintiff's sloppy reliance on allegations against an undifferentiated cluster of "Defendants" fails to state a claim "with particularity" as required under the heightened standard of Fed. R. Civ. P. 9(b) that is applicable to each of Plaintiff's claims.  *See* pp. 7-8, *infra*.  A plaintiff "may not rely upon blanket references to acts or omissions by all of the defendants, for each defendant named in the complaint is entitled to be [apprised] of the circumstances surrounding the fraudulent conduct with which he individually stands charged."  *DeBlasio v. Merrill Lynch & Co.*, No. 07 Civ. 318, 2009 WL 2242605, at *13 (S.D.N.Y. July 27, 2009) (collecting cases); *Gaind v. Pierot*, No. 04 Civ. 9407, 2006 WL 846268, at *7 (S.D.N.Y. Mar.

31, 2006) (Griesa, J.) (dismissing fraud claim "alleged generally against all defendants"), *aff'd,* 282 F. App'x 946 (2d Cir. 2008); *Manela v. Gottlieb*, 784 F. Supp 84, 88 (S.D.N.Y. 1992) (dismissing fraud claim where "many of the allegations are made against multiple defendants lumped together and fail to distinguish among them").

## II.   PLAINTIFF FAILS TO STATE ANY CLAIM AGAINST OAC UPON WHICH RELIEF CAN BE GRANTED

OAC's Rule 12(b)(6) motion should be granted because the Amended Complaint fails to state any claim for relief.[3]  Claims of fraud, negligent misrepresentation, aiding and abetting, or unjust enrichment that are founded on bare legal conclusions and conclusory assertions, such as those asserted here, routinely are dismissed.  *See, e.g., Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, No. 08 Civ. 2437, 2011 WL 6034310, at *25 (S.D.N.Y. Dec. 5, 2011) (dismissing fraud and negligent misrepresentation claims); *Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 28 (S.D.N.Y. 2009) (dismissing aiding and abetting fraud and aiding and abetting breach of fiduciary duty claims), *aff'd*, 382 F. App'x 107 (2d Cir. 2010); *Washington v. Kellwood Co.*, No. 05 Civ. 10034, 2009 WL 855652, at *11 (S.D.N.Y. Mar. 24, 2009) (dismissing unjust enrichment claim).

Moreover, Plaintiff falls woefully short of meeting the heightened pleading standard required for each of its claims by Fed. R. Civ. P. 9(b).  *See, e.g., Saltz v. First Frontier, LP.*, 782 F. Supp. 2d 61, 70, 75 (S.D.N.Y. 2010) (dismissing fraud claim arising out of Madoff fraud under Fed. R. Civ. P. 9(b)); *Berman v. Morgan Keegan & Co.*, No. 11 Civ. 2725, 2012 WL 147907, at *2 (2d Cir. Jan. 19, 2012) (affirming dismissal of aiding and abetting fraud claim for

---

[3]      In the interest of efficiency, OAC hereby incorporates the Tremont Defendants' and MassMutual Defendants' arguments that Plaintiff lacks standing to assert his claims for unjust enrichment and aiding and abetting breach of fiduciary duty.  *See* Tremont Br. at Point I; Memorandum Of Law In Support Of The MassMutual Defendants' Motion To Dismiss The Complaint For Failure To State A Claim at Point I.

failure to plead with requisite Rule 9(b) particularity).  Plaintiff's aiding and abetting breach of

fiduciary duty and unjust enrichment claims also are subject to the Rule 9(b) pleading

requirements because elements of both claims are premised on fraud.  *See Berman*, 2012 WL

147907, at *2 (affirming dismissal of aiding and abetting breach of fiduciary duty claim pursuant

to Rule 9(b) where breach based on fraudulent conduct); *Spira v. Curtin*, No. 97 Civ. 2637, 2001

WL 611386, at *3 (S.D.N.Y. June 5, 2001) (Griesa, J.) (Fed. R. Civ. P. 9(b) "applies not only to

claims under . . . common law fraud, but also to elements of other claims that are premised on

fraud").  Similarly, because Plaintiff's unjust enrichment claim, i.e. that Defendants' purported

profits were the "unjust" and "inequitable" result of Tremont's alleged fraudulent statements

(Am. Compl. ¶¶ 176-177),  is "based on the same predicate allegations relating to a fraudulent

scheme," that claim also is subject to Fed. R. Civ. P. 9(b).  *See DeBlasio,* 2009 WL 2242605, at

*14  (dismissing claim).

### A.  Plaintiff Fails To State A Claim For Fraud Against OAC

To state a claim for fraud, Plaintiff must allege each of the following with particularity:

(1) a representation of material fact; (2) the falsity of that representation; (3) knowledge by the

party who made the representation that it was false when made; (4) justifiable reliance by the

Plaintiff; and (5) resulting injury.  *Stephenson v. Citgo Group Ltd.*, 700 F. Supp. 2d 599, 619

(S.D.N.Y. 2010).   Plaintiff alleges none of these required elements as against OAC.

### 1.  Plaintiff does not and cannot allege that OAC made any representation to him

First and foremost, Plaintiff's fraud claim against OAC fails for the straightforward

reason that Plaintiff does not allege the most rudimentary element of a fraud claim -- that OAC

ever made a representation to him.  *Schulman v. Delaire*, No. 10 Civ. 3639, 2011 WL 672002, at

*3 (S.D.N.Y. Feb. 22, 2011) (dismissing fraud claim where complaint "provides no specificity as to any deceptive or manipulative act [and] no connection between the Madoff Ponzi scheme and [defendant]"). A well-pled fraud claim must: "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent; (2) identify the speaker; (3) state where and when the statements (or omissions) were made; and (4) explain why the statements (or omissions) are fraudulent." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 187 (2d Cir. 2004). Plaintiff does not (and cannot) identify *any* statement or representation made by OAC, let alone the particular time and place such statement was made. *DeBlasio*, 2009 WL 2242605, at *13 (granting motion to dismiss fraud claim where "not a single allegation in the [complaint] directly identifies a statement or act by the [defendants]"). This failure alone is fatal to Plaintiff's fraud claim as against OAC. *See Employees' Ret. Sys. v. Morgan Stanley & Co.*, No. 09 Civ. 10532, 2011 WL 4526045, at *8 (S.D.N.Y. Sept. 30, 2011) (dismissing fraud claim where plaintiffs failed to allege any false statement made by defendant); *Zutty v. Rye Select Broad Mkt. Fund, LP*, 2011 WL 5962804, at *13 (N.Y. Sup. Ct. Apr. 20, 2011) (dismissing fraud claim against OAC where plaintiffs failed to identify any statement by OAC or any dealings between plaintiffs and OAC).

> **2.  Plaintiff does not and cannot allege any of the other required elements of his fraud claim as against OAC**

Given Plaintiff's failure to allege that OAC ever made a misrepresentation, Plaintiff's inability to allege any of the other requisite elements of his fraud claim against OAC is both hardly surprising and dispositive. Plaintiff does not (and cannot) allege that: (1) OAC's representations were false; (2) OAC had the intent to deceive Plaintiff through its

representations; (3) Plaintiff justifiably relied on the false representations; or (4) the false representations caused Plaintiff's losses.

First, even if Plaintiff somehow were able to identify some representation made by OAC, Plaintiff fails to allege falsity. Plaintiff's bald assertion that "Defendants' representations concerning the investment products offered to Plaintiff were materially false and misleading" (Am. Compl. ¶ 8), not only fails to identify OAC's role with the required particularity, but is legally insufficient because it "merely recites the element[]" of falsity. *Freydl v. Meringolo*, No. 09 Civ. 7196, 2010 WL 3026578, at *5 (S.D.N.Y. Aug. 2, 2010) (dismissing fraud claim where no factual basis provided for complaint's legal conclusions).

Second, because Plaintiff is unable to demonstrate that OAC made a misrepresentation, he necessarily cannot demonstrate that OAC made a misrepresentation with the intent to defraud Plaintiff. *Schulman*, 2011 WL 672002, at *3 (finding scienter inadequately pled where complaint based on conclusory allegation that defendant "knew or had substantial information available to him to cause him to suspect" Madoff's fraudulent conduct); *see Meridian Horizon Fund, LP, v. Tremont Group Holdings, Inc.*, 747 F. Supp. 2d 406, 413 (S.D.N.Y. 2010) (Griesa, J.) (dismissing fraud claim where scienter was based on "red flags" of Madoff's fraud because "the more compelling inference as to why Madoff's fraud went undetected for two decades was his proficiency in covering up his scheme"). Plaintiff's lone conclusory allegation that unspecified "Defendants" knew the representations to be false (Am. Compl. ¶ 164) does nothing to alter this result as to OAC. *Local No. 38 Int'l Broth. of Elec. Workers Pension Fund v. Am. Express Co.*, 724 F. Supp. 2d 447, 460 (S.D.N.Y. 2010) (finding "conclusory statements of belief" insufficient to plead scienter), *aff'd*, 430 F. App'x 63 (2d Cir. 2011); *Corazzini v. Litton*

- 10 -

*Loan Servicing LLP*, 2010 WL 1132683, at *5 (N.D.N.Y. Mar. 23, 2010) (conclusory allegation that representation was "willful and intentional" inadequate to plead scienter).

Third, Plaintiff fails to allege that he justifiably relied on any representation made by OAC. *DeBlasio*, 2009 WL 2242605, at *24 (dismissing fraud claim where plaintiff fails to specifically allege that it relied on the alleged misrepresentations).

Fourth, Plaintiff's attempt to plead that OAC's "representations" caused his investment losses also falls short of the legal requirements for stating a fraud claim. According to Plaintiff, it was "Defendants' wrongful concealments and misrepresentations"-- and not Madoff's unprecedented fraud -- that caused the VUL Policy's investment losses. Am. Compl. ¶ 166. Even ignoring Plaintiff's illogical theory of causation, this type of conclusory allegation fails to "detail how the alleged fraud directly and proximately resulted in" Plaintiff's losses and is insufficient as a matter of law. *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1497 (2d Cir. 1992) (affirming dismissal of fraud claim).

### B.    Plaintiff Fails To State A Claim For Negligent Misrepresentation Against OAC

Plaintiff's negligent misrepresentation claim fails as a matter of law for failing to allege any of the following required elements with the requisite particularity: (1) the existence of a special or privity-like relationship imposing a duty on OAC to provide information to Plaintiff; (2) that OAC provided any information to Plaintiff, let alone misleading information; and (3) Plaintiff's reasonable reliance on the information. *Saltz*, 782 F. Supp. 2d at 70 (dismissing negligent misrepresentation claim); *Naughright v. Weiss*, No. 10 Civ. 8451, 2011 WL 5835047, at *6 (S.D.N.Y. Nov. 18, 2011) (negligent misrepresentation claim must comply with Fed. R. Civ. P. 9(b)).

- 11 -

As with his fraud claim, Plaintiff fails to allege that OAC ever made any statement or misrepresentation to him.  *See* Point II.A.1., *supra*; *Ellington*, 2011 WL 6034310, at *25 (dismissing fraud and negligent misrepresentation claims together for failure to identify, with particularity, any knowingly false misrepresentation); *Burns v. Del. Charter Guar. & Trust Co.*, No. 10 Civ. 4534, 2011 WL 2314835, at *12 (S.D.N.Y. June 8, 2011) (same).  Plaintiff's negligent misrepresentation claim additionally fails for the independent reason that Plaintiff cannot allege a relationship with OAC of "actual privity" or "so close as to approach that of privity."  *Barron Partners, LP v. LAB123, Inc.*, 593 F. Supp. 2d 667, 674 (S.D.N.Y. 2009) (dismissing negligent misrepresentation claim); *Musalli*, 261 F.R.D. at 28 (dismissing negligent misrepresentation claim because no special or "privity-like relationship" existed between plaintiff and defendant).  Apart from a singular, conclusory allegation that undifferentiated "Defendants" owed "to Plaintiff a duty" (Am. Compl. ¶ 170), Plaintiff does not (and cannot) allege any relationship, let alone the mandated "special" relationship, with OAC.  Given the remote and indirect connection between Plaintiff and OAC, revealed by the Amended Complaint, this failure is both natural and fatal.

In sum, because the Amended Complaint does not allege that Plaintiff ever had any contact with OAC or that OAC even knew of Plaintiff's existence, Plaintiff's negligent misrepresentation claim fails as a matter of law.  *See Tuosto v. Philip Morris USA Inc.*, No. 05 Civ. 9384, 2007 WL 2398507, at **14-15 (S.D.N.Y. Aug. 21, 2007) (dismissal of negligent misrepresentation claim warranted where plaintiff failed to allege the existence of a special relationship and failed to plead claim with the "specificity demanded by Rule 9(b)"); *Riel v. Morgan Stanley*, No. 06 Civ. 524, 2007 WL 541955, at *14 (S.D.N.Y. Feb. 16, 2007) (Griesa, J.) (dismissing negligent misrepresentation claim where plaintiff  "alleged no fact permitting even

- 12 -

an inference" of a special relationship between plaintiff and defendant), *aff'd*, 299 F. App'x 91 (2d Cir. 2008); *In re Sterling Foster & Co. Sec. Litig.*, 222 F. Supp. 2d 216, 284 (E.D.N.Y. 2002) (dismissing negligent misrepresentation claim because "[i]n the absence of any allegations that the plaintiffs and these defendants had any contact, the Court cannot find that any relationship existed between the parties much less one of trust or confidence").

### C.    Plaintiff Fails To State A Claim For Aiding And Abetting Against OAC

The necessary elements of Plaintiff's aiding and abetting claims are: (1) the existence of an underlying wrong;[4] (2) OAC's actual knowledge of the underlying wrong; and (3) OAC's substantial assistance in furthering the underlying wrong.[5] *Rosner v. Bank of China*, 349 F. App'x 637, 638 (2d Cir. 2009) (affirming dismissal of aiding and abetting claim).[6] Moreover, because both of Plaintiff's aiding and abetting claims sound in fraud, they are subject to Fed. R. Civ. P. 9(b) particularity requirements. *See Berman*, 2012 WL 147907, at *4 (affirming

---

[4]     Plaintiff's aiding and abetting claims against OAC fail because it has not pled an underlying fraud or breach of fiduciary duty by any Tremont defendant. *See* Tremont Br. at Point II.A, II.D.

[5]     Plaintiff alleges that OAC aided and abetted fraud and breaches of fiduciary duty by the Funds and by Rye Investment Management ("Rye"). Am. Compl. ¶¶ 189-192. Not only does Plaintiff fail to make any allegation that OAC knew of or participated in any violation by any of the Funds, Plaintiff does not actually allege those entities breached any fiduciary duties. *See id.* ¶¶ 180-181 (asserting breach of fiduciary duty by New York Life and Tremont). Nor does Plaintiff make any allegations linking OAC to any conduct by Rye. To the extent that Plaintiff relies on allegations regarding OAC's relationship with "Tremont" to support its claim that OAC aided and abetted Rye, those claims fail for the reasons set forth here. *See id.* ¶ 24 ("Tremont Capital, Tremont Bermuda, Tremont Group, Tremont Partners and Rye are sometimes collectively referenced herein as 'Tremont.'").

[6]     Either New York or Delaware law governs Plaintiff's aiding and abetting claims. *See Marino v. Grupo Mundial Tenedora, S.A.*, No. 10 Civ. 4126, 2011 WL 3837153, at *11 (S.D.N.Y. Aug. 30, 2011). However, the Court need not resolve this choice of law issue now because the aiding and abetting standards are substantially the same under both New York and Delaware law. *JFK Family Ltd. P'Ship v. Millbrae Nat. Gas Dev. Fund 2005, L.P.*, 2008 WL 4308289, at *18 n.18 (N.Y. Sup. Ct. Sept. 16, 2008) (finding New York and Delaware aiding and abetting law "the same").

dismissal of aiding and abetting fraud and aiding and abetting breach of fiduciary duty claims for failure to meet Fed. R. Civ. P. 9(b)).

### 1.      Plaintiff does not and cannot allege actual knowledge

Instead of pleading facts sufficient to support his claim of OAC's actual knowledge (Am. Compl. ¶ 189), Plaintiff offers no more than a series of circular allegations to the effect that (i) because OAC conducted due diligence on Tremont prior to completing its acquisition of Tremont in 2001, OAC purportedly therefore *must have*, "as early as the spring of 2001 . . . [been] aware (or recklessly disregarded) numerous 'red flags' or indicators of gross irregularities in Madoff's operations," (*id.* ¶ 121) and (ii) if OAC was aware of those "red flags," then it obviously *should have* known Madoff was running a Ponzi scheme.  "Should have known" is not "did know."   And even were "should have known" the applicable standard, Plaintiff's tower of supposition (and it is only that) is devoid of any factual support and therefore is legally insufficient to plead OAC's "actual knowledge" of any underlying breach of fiduciary duty, as recently recognized by another court in dismissing similar allegations against OAC.[7]  *Zutty*, 2011 WL 5962804, at *8 (dismissing Rye Fund investors' claims where "plaintiffs fail to allege anything that would create an inference" that OAC "knew about Madoff's Ponzi scheme, but nevertheless invested with him").

Moreover, the supposition that OAC was "[b]linded by the lure of easy money" (Am. Compl. ¶ 6), and thus deliberately invested $145 million into a fraudulent operation whose

---

[7]      What other non-parties supposedly concluded regarding Madoff's operations is beside the point. *See, e.g.,* Am. Compl. ¶¶ 79-92, 122-126.  Plaintiff does not (and cannot) allege that OAC ever had any knowledge of other non-parties' suspicions of Madoff, even if such allegations somehow could satisfy the requirement that Plaintiff allege OAC's actual knowledge.  *See In re Merkin*, No. 08 Civ. 10922, 2011 WL 4435873, at *10 (S.D.N.Y. Sept. 23, 2011) ("[T]here is simply no basis for imputing scienter just because a non-party had a hunch or a gut feeling about Madoff, especially when juxtaposed against his considerable reputation and success within the investment community.").

- 14 -

success allegedly depended on a brazen Ponzi scheme, is inherently implausible.  To the

contrary, the only appropriate inference is that a respected -- or for that matter, self-interested --

financial institution would not knowingly acquire an asset management firm whose success

rested on the perpetuation of an unprecedented fraud.  *See Saltz*, 782 F. Supp. 2d at 72 (inference

of actual knowledge based on "red flags" of Madoff's fraud is "not as cogent and compelling as

the opposing inference of nonfraudulent intent"); *Schulman*, 2011 WL 672002, at *3 (dismissing

complaint that "supports the reasonable inference that Madoff fooled the defendant[ ] as he did

individual investors, financial institutions, and regulators").

Plaintiff's speculation that the defendants, including OAC, were "aware of numerous

warning signals" (Am. Compl. ¶ 6) of Madoff's fraud effectively concedes his inability to meet

the demanding actual knowledge requirement, amounting to no more than an assertion that OAC

was negligent or reckless in failing to identify the "warning signals" as harbingers of Madoff's

fraud.  *See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F.

Supp. 2d 163, 201 n.279 (S.D.N.Y. 2006) (noting "the overwhelming weight of authority holds

that actual knowledge is required, rather than a lower standard such as recklessness or willful

blindness").  Hence, as recently recognized by another court in dismissing a similar Madoff-

related complaint brought against OAC, a plaintiff cannot state a claim against OAC where the

complaint "fails to explain how one or more alleged red flags made it so obvious that Madoff

was running a Ponzi scheme that defendants must have known about the scheme and wanted to

further it."  *Zutty*, 2011 WL 5962804, at *12; *see also MLSMK Inv. Co. v. JP Morgan Chase &*

*Co.*, 737 F. Supp. 2d 137, 144-45 (S.D.N.Y. 2010) (dismissing aiding and abetting breach of

fiduciary duty claim because even if defendants "could have connected the dots to determine that

Madoff was committing fraud, Plaintiff offers no facts to support the claim they actually reached such a conclusion"), *aff'd*, 651 F.3d 268 (2d Cir. 2011).

### 2.   Plaintiff does not and cannot allege substantial assistance

Plaintiff likewise fails to satisfy the "participation" requirement of his aiding and abetting claim because he does not and cannot plead that OAC "substantially assisted" in Tremont's alleged underlying misconduct.  Plaintiff avers only that: (1) OAC acquired Tremont in 2001 (Am. Compl. ¶¶ 133-134); (2) two OAC board members also served on Tremont Group's board and two OFI employees also worked at Tremont (*id.* ¶¶ 137-138, 140); (3) Tremont properly, and as required by law, disclosed OAC's ownership to the SEC and in its privacy policy (*id.* ¶ 30); and (4) OAC somehow was involved in Tremont's non-Madoff related marketing operations (*id.*).  These unremarkable circumstances typical of corporate affiliates are wholly unavailing as allegations of substantial assistance.

The mere fact that OAC acquired Tremont and held its stock is neither controversial, actionable, nor legally sufficient to allege "substantial assistance."  *See Bestfoods*, 524 U.S. at 61; *Goldin Assocs., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 Civ. 8688, 2003 WL 22218643, at *10 (S.D.N.Y. Sept. 25, 2003) (dismissing aiding and abetting claim where substantial assistance allegations described acts that "are not wrongful" and failed to allege knowing participation in "conduct in furtherance of the breach").  Likewise, Plaintiff fails to allege how Tremont's entirely proper -- and indeed required[8] -- disclosure in its SEC filings of OAC's ownership status reflects or constitutes "substantial assistance" by OAC in Tremont committing an alleged fraud or in violating fiduciary duties owed to Plaintiff.  *See Marino*, 2011

---

[8]        *See* 15 U.S.C. §§ 80b-3, 80b-4; Form ADV, Uniform Application for Investment Adviser Registration, Item 10, Schedules A and B, *available at* http://www.sec.gov/about/forms/formadv.pdf.

WL 3837153, at *13 (dismissing aiding and abetting breach of fiduciary duty claim where plaintiff failed to allege that defendant's conduct enabled breach of fiduciary duty).

Similarly, the allegations that two OAC executives served on Tremont Group's board of directors and that non-party OFI employed two Tremont executives does not advance Plaintiff's assertion of substantial assistance. *Id.* ¶¶ 137-138, 140.  That OAC, as a parent company, had two representatives serve on its subsidiary's board is neither unique of a parent company nor revelatory of any improper behavior. *See American Protein Corp. v. AB Volvo*, 844 F.2d 56, 57 (2d. Cir. 1988) ("[I]t is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts.").  A ruling to the contrary would mean that any overlap in board members or employees would render one corporate affiliate automatically liable for substantial assistance of the alleged wrongdoing of another.  That is not the law, nor should it be.

Nor can allegations of purported inaction supply the requisite "substantial assistance" (*see, e.g.*, Am. Compl. ¶ 190, "Oppenheimer . . . had the ability to prevent the issuance of the statements or cause the statements to be corrected") because there is no legal or factual basis that substantiates a duty owed by OAC to Tremont's investors to investigate Madoff, let alone to interfere with or manage the New York Life/Tremont/Madoff relationship. *See Musalli*, 261 F.R.D. at 25 (aiding and abetting claim cannot be based on inaction where defendant owed no fiduciary duty to plaintiff).

Equally unavailing is Plaintiff's attempt to support his aiding and abetting claim with the conclusory assertions that OAC "maintained significant influence and/or control over and provided substantial assistance to the Tremont entities that managed and operated the Rye Funds" (Am. Compl. ¶¶ 106) and that OAC is "presumed to have had the power to control or

- 17 -

influence the particular statements giving rise to the claims alleged herein" (*id.* ¶ 191). To the contrary, the opposite presumption -- that OAC, as a parent holding company two levels removed from Tremont Partners, *did not* have the power to control or influence the Funds' disclosures -- is the only legally permissible presumption. *Defer LP v. Raymond James Fin. Inc.*, 654 F. Supp. 2d 204, 217 (S.D.N.Y. 2009) (allegations of corporate relationship insufficient to attribute misstatements to corporate parent); *see also Bestfoods*, 524 U.S. at 61 (holding that it is "general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries"). Plaintiff in fact concedes that Tremont, and not OAC, "was responsible for managing the day-to-day administration and operation" (Am. Compl. ¶ 64) and "ha[d] overall responsibility for implementing the investment strategy of" the Opportunity Fund (*id.* ¶ 70). In any event, even if there was some proper basis to presume OAC's control over the disclosure statements at issue, Plaintiff does not and cannot allege that OAC ever actually exercised such control or that the mere possession of some undefined "control" itself constitutes action amounting to substantial assistance.

Lastly, Plaintiff's allegation that "Defendant Oppenheimer jointly markets several funds with Defendant Tremont Partners, allowing Tremont Partners to use Oppenheimer's name on several of Tremont Partners' funds" (Am. Compl. ¶ 30) is neither factually accurate nor legally relevant to the underlying wrongs alleged by Plaintiff. Plaintiff intentionally conflates OAC and non-party OFI, which does of course market the public mutual funds it manages. Such purported marketing activities by OFI cannot be linked to Tremont's alleged primary wrongs because Plaintiff does not allege (1) that he was ever even aware of such joint marketing, (2) that he ever invested in those funds, or (3) that those funds had *any* connection to Madoff (because they did

not).  *See, e.g.*, *Marino*, 2011 WL 3837153, at *13 (dismissing aiding and abetting claim where the "participation" unrelated to alleged underlying wrong).

### D.        Plaintiff Fails To State A Claim For Unjust Enrichment Against OAC

Plaintiff's unjust enrichment claim fails as a matter of law because Plaintiff is unable plausibly to allege any element of his claim as against OAC, including: (1) Plaintiff's "impoverishment;" (2) OAC's "enrichment;" (3) a nexus between Plaintiff's impoverishment and OAC's enrichment; and (4) that "equity and good conscience" require restitution.  *See, e.g.*, *Federal Treas. Enters. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010) (affirming dismissal of unjust enrichment claim).[9]  Moreover, the existence of valid contracts (the VUL policy and the LPA) governing the subject matter at issue bars an unjust enrichment claim as a matter of law.  *In re First Cent. Fin. Corp.*, 377 F.3d 209, 213 (2d Cir. 2004) (recognizing rule as "one of the well-settled principles of New York law"); *Zutty*, 2011 WL 5962804, at *8 (dismissing unjust enrichment claim based on fees received by Tremont because such fees were governed by contract).

First, although unable to define, calculate, or trace it, Plaintiff broadly asserts that "Defendants have benefited and profited unjustly by receiving excessive revenue derived from the fees they collected based on the [VUL] policy's cash value."  Am. Compl. ¶ 176.  The

---

[9]        New York courts apply a "center of gravity" or "grouping of contacts" approach to determining what jurisdiction's law governs a quasi-contractual unjust enrichment claim.  *See, e.g.*, *Khreativity Unlimited v. Mattel, Inc.*, 101 F. Supp. 2d 177, 183 (S.D.N.Y.), *aff'd*, 242 F.3d 366 (2d Cir. 2000) (applying New York choice of law principles).  Under this analysis, New York law, which has numerous significant contacts with the Opportunity Fund Limited Partnership Agreement ("LPA") and the conduct complained of in the Amended Complaint, should apply.  However, the elements under Delaware law, *i.e.,* the only other jurisdiction with substantive contact with the claim, are substantively the same.  *See, e.g.*, *Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393 (Del. Ch. 1999).  Thus, since the outcome of Plaintiff's unjust enrichment claim would be the same under either New York or Delaware law, the Court need not conduct a choice of law analysis.  *See, e.g.*, *IBM v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004).

- 19 -

Amended Complaint, however, also conclusively rebuts that speculation by actually conceding that OAC never received any portion of the allegedly "excessive revenue." *Id.* ¶¶ 104, 177 (alleging payments only were received by New York Life and Tremont). Plaintiff's inability to allege that OAC received any "benefit" -- and indeed, his correct concession to the contrary -- is fatal to his unjust enrichment claim against OAC. *Kaye v. Grossman,* 202 F.3d 611, 616 (2d Cir. 2000) (unjust enrichment claim requires an allegation of a "specific and direct benefit" received by the defendant); *Simon v. Keyspan Corp.,* 785 F. Supp. 2d 120, 140 n.143 (S.D.N.Y. 2011) (unjust enrichment claim dismissed for failure to identify defendant's specific and direct benefit).

Second, even if Plaintiff could sufficiently allege his impoverishment and OAC's enrichment (which he cannot), he fails to allege the requisite "nexus between [OAC's] 'enrichment' and [Plaintiff's] 'expense.'" *DeBlasio*, 2009 WL 2242605, at *40 (dismissing unjust enrichment claim). In fact, Plaintiff is fundamentally unable to plead this nexus given that OAC never had any connection to Plaintiff, his VUL Policy, or his indirect interest in the Rye Funds. *See, e.g.*, *Everette Weaver v. Indymac Fed. Bank, FSB*, 09 Civ. 5091, 2010 WL 7634134, at *12 (S.D.N.Y. June 8, 2010) (dismissing unjust enrichment claim where plaintiff did not himself pay the fees at issue); *Redtail Leasing, Inc. v. Bellezza*, No. 95 Civ. 5191, 1997 WL 603496, at *8 (S.D.N.Y. Sept. 30, 2007) (dismissing unjust enrichment claim because plaintiffs did "not allege any direct dealings or actual, substantive relationship with" the defendants).

Third, Plaintiff also is unable genuinely to allege that "equity and good conscience" require OAC -- which played no conceivable role in Plaintiff's investment decisions or in causing his Madoff-related losses -- to backstop any purported losses Plaintiff suffered through his insurance investments. *See Schulman*, 2011 WL 672002, at *5 (dismissing unjust enrichment claim where "Plaintiffs allege nothing that suggests that any compensation received by

- 20 -

[defendant] was improper in its own right or infected by the improprieties plaguing the Madoff

Ponzi scheme"); *Allianz Risk Transfer v. Paramount Pictures Corp.*, No. 08 Civ. 10420, 2010

WL 1253957, at *10 (S.D.N.Y. Mar. 31, 2010) (Griesa, J.) (dismissing unjust enrichment claim

because without underlying fraud, "it is difficult to imagine . . . how the elements of an unjust

enrichment claim could be met"); *Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*,

03 Civ. 1537, 2003 WL 23018888, at *18 (S.D.N.Y. Dec. 22, 2003) (dismissing unjust

enrichment claim because plaintiff failed to allege the "indispensable ingredient that between the

two parties involved there must be an injustice"), *aff'd,* 110 F. App'x 191 (2d Cir. 2004).

## CONCLUSION

For the foregoing reasons, OAC respectfully submits that its motion to dismiss the

Amended Complaint should be granted, and the claims as against it should be dismissed in their

entirety and with prejudice.

Dated: New York, New York
         February 29, 2012

                                        DECHERT LLP

                                        By: /s/ David A. Kotler
                                        David A. Kotler
                                        david.kotler@dechert.com
                                        902 Carnegie Center, Suite 500
                                        Princeton, New Jersey 08540
                                        Tel.: (609) 955-3200
                                        Fax: (609) 955-3259

                                        *Attorneys for Defendant Oppenheimer
                                        Acquisition Corp.*

14332701

- 21 -