UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | Master File No.: 08 Civ. 11117 (TPG) |

This Document Relates to:

STATE LAW ACTION, 08 Civ. 11183 (TPG) and specifically to former 11 Civ. 01851 (TPG):

LAKEVIEW INVESTMENTS, LP,

                Plaintiff,

v.

ROBERT SCHULMAN, et al.,

                Defendants.

**PLAINTIFF LAKEVIEW INVESTMENTS, LP'S OPPOSITION TO (1) TREMONT DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, (2) MASSACHUSETT MUTUAL LIFE INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS, AND (3) OPPENHEIMER ACQUISITION CORP.'S MOTION TO DISMISS**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT

This is a simple case involving a California plaintiff, Lakeview Investment, LP ("Plaintiff"),which invested in two limited partnerships that were unregistered under the federal securities laws, Rye Select Broad Market XL Fund, L.P. (the "XL Fund") and Rye Select Broad Market Fund, L.P. (the "Market Fund").  To redress its injuries resulting from defendants' state law violations, Plaintiff commenced a civil action in the California Superior Court for Marin County.  With respect to its investment in each of the two funds, Plaintiff alleged four causes of action based solely upon California law.  Plaintiff also alleged identical California law claims on behalf of two classes comprised of certain California investors in the two funds.

Although the claims in Plaintiff's verified complaint (the "Complaint") involve only state law claims with respect to the two Funds whose securities were not listed or approved for listing on any national securities exchange, defendants removed the state court action to the United States District Court for the Northern District of California, citing the Securities Litigation Uniform Standard Act of 1998 ("SLUSA").  *See* Doc. __ in 11 Civ. 01851 (Notice of Removal of Action), ¶¶7-15.  Under SLUSA, a state court action is removable if: (1) it is a "covered class action"; (2) it alleges that the defendant(s) made "an untrue statement or omission of a material fact," or that the defendant(s) "used or employed any manipulative or deceptive device"; and (3) the alleged misstatement, omission, manipulation, and/or deceptive device occurred "in connection with" the plaintiff's "purchase or sale of a covered security."  *See* 15 U.S.C. §§77p(b), (c).

After the case was transferred from the Northern District of California to this Court and consolidated with the State Law Action, Lakeview moved to remand the case to the California Superior Court for Marin County.  *See* Doc. 424, 425.  Because the Court had stayed all proceedings while it was considering a proposed class action settlement in the State Law Action, no action was taken on Lakeview's motion to remand, and as noted during the parties' February 17, 2012 telephonic conference,

-1-

Lakeview intends to renew its remand motion taking into developments occurring after approval of the settlement and entry of judgment thereon. *See* Declaration of S. Benjamin Rozwood filed concurrently herewith and in support hereof ("Roz. Dec."), at ¶ 12.

Although the Complaint originally alleged class claims on behalf of California investors in the two funds, the Final Judgment and Order of Dismissal With Prejudice Regarding Settlement and Rules 23 and 23.1 (the "Judgment") operated to dismiss all class claims from the Complaint. Likewise, because Lakeview did not opt out of the settlement class with respect to its claims pertaining to Market Fund, the Judgment operated to dismiss Lakeview's individual claims pertaining to Market Fund. Hence, the only claims currently in issue in the Complaint are Lakeview's individual claims with respect to XL Fund. Under these circumstances, to the extent it was not dismissed along with the State Law Action into which it was consolidated (pursuant to the Judgment), Lakeview's case ought to have been remanded immediately to state court.

Where, as here, the claims allegedly giving rise to removal have been dismissed at a relatively early stage, leaving only state law claims involving potentially novel, unsettled, or important issues of state law or public policy, a District Court's exercise of pendent or ancillary jurisdiction over the state claims is routinely found to be an abuse of discretion. *See, e.g.*, *Valencia ex rel. Franco v. Lee*, 316 F. 3d 299, 306 (2d Cir. 2003); *Giordano v. City of New York*, 274 F.3d at 754; *Oliveira v. Frito-Lay, Inc.*, 251 F.3d 56, 64 (2d Cir. 2001); *Seabrook v. Jacobson*, 153 F.3d 70, 71-73 (2d Cir. 1998); *Fay v. South Colonie Central School District*, 802 F.2d 21, 34 (2d Cir. 1986).

Although Lakeview's remand motion was pending, none of the defendants responded to it. Instead, the Tremont defendants and defendant Massachusetts Mutual Insurance Company ("MassMutual") filed motions for judgment on the pleadings, claiming that SLUSA "preempts" Lakeview's individual state law claims and that Lakeview's allegations are insufficient to state a claim for "control person"

liability under Cal. Corp. Code §25504.  In addition, defendant Oppenheimer Acquisition Company ("OAC") moved to dismiss the claims against it for lack of personal jurisdiction.  All of these motions should be denied.

First, Lakeview did not purchase or sell a "covered security" in connection with any misrepresentation or omission, or any manipulative or deceptive device.  Lakeview acquired limited partnership interests that were not listed, or approved for listing, on any national exchange and that were not issued by a registered investment company.  Because Lakeview never bought or sold a "covered security" in connection with the misconduct alleged in the Complaint, one threshold requirement for the application of SLUSA has not been satisfied.

Second, to avoid the plain language and intent of SLUSA's "covered security" purchase/sale requirement, defendants argue that Lakeview's investment in XL Fund was made "in connection with" the Fund's anticipated re-investment in "covered securities."  Despite its superficial allure, this argument has no merit and, indeed, no facts to support it.  The subsequent investment of funds by limited partnership defendants has nothing to do with the initial private purchase of limited partnership interests (*i.e.*, **not** "covered securities") by Lakeview and the putative class members.  On the contrary, XL Fund told Lakeview that proceeds from the private offering of its limited partnership ("LP") interests would be used to finance a swap transaction; and swaps are not even "securities" under federal law.

Third, regardless of whether one or both of Lakeview's class actions are precluded by SLUSA, Lakeview's *individual* claims must be remanded, to the extent that they have not already been dismissed under the Judgment.  Pursuant to 15 U.S.C. §77p(d)(4), this Court may not exercise ancillary jurisdiction over non-precluded claims.  Likewise, if the Court finds that only one of the two putative class actions is precluded by SLUSA, the Court should dismiss the precluded class action and remand the other.

Fourth, the Court should deny OAC's motion to dismiss for lack of personal jurisdiction. Lakeview allegations of control person liability under Cal. Corp. Code §25504 is sufficient to confer jurisdiction against OAC for violations of the California Securities Act. However, if the Court wishes to consider OAC's motion, Lakeview is entitled to discovery concerning the jurisdictional issues raised therein.

Finally, in responding to defendants' motions, Lakeview does not waive and instead specifically intends to preserve its rights (1) to seek remand, in accordance with the Court's instructions to the parties, and (2) to argue that this action was included within the State Law Action and was dismissed pursuant to the terms of the Judgment. *See* Roz. Dec. ¶¶ 6, 9-10, 12.

## II.   CORE ALLEGATIONS

On December 10, 2010, after sustaining substantial losses resulting from the misconduct of the managing partner of the XL Fund, Lakeview filed its Complaint against defendant Tremont Partners, Inc. ("Tremont") and other defendants in the California Superior Court for the County of Marin (the "California Action"). Each cause of action in the Complaint is based solely upon California law, and Lakeview seeks compensatory damages and other relief for its investment losses. *See, e.g.*, Compl. ¶69.

The First Cause of Action is for declaratory relief under California Code of Civil Procedure ("C.C.P.") §1060 *et seq.* seeking, *inter alia*, a declaration that under California law the defendants owed limited partners like Lakeview certain fiduciary duties "before and after Lakeview made any capital contributions." *See* Compl. ¶¶79-82. The Second Cause of Action is against XL Fund for violations of California Corporations Code §§25401 *et seq. See* Compl. ¶¶83-89. The Third Cause of Action

-4-

is against the non-Partnership Defendants for violations of California Corporations Code §§25401 *et seq.* related to the XL Fund.[1]  *Id.* at ¶¶90-96.

Lakeview alleges that XL Fund misrepresented, among other things, its historical returns and the value of Lakeview's respective partnership interests and capital accounts in monthly reports and other statements.  *See* Compl. ¶¶4-6, 50, 52-54, 70-71, 78, 114-16.  Lakeview justifiably relied on these misrepresentations and others to pay taxes and to invest additional capital.  *See id.* 10, 52-54, 71-72, 78, 114-17.  Plaintiffs further allege that XL Fund had no reasonable basis for representing and reporting those amounts, which were materially inaccurate.  *See id.*¶¶5-6, 9, 54, 66, 70-71, 78, 84, 114-17.  Those allegations are sufficient to state a cause of action under California law.

III.   APPLICABLE LEGAL STANDARDS

"SLUSA was enacted in 1998 to prevent class action plaintiffs from circumventing the PSLRA's heightened pleading requirements through artful pleading.  *Ring v. AXA Financa., Inc.*, 483 F.3d 95, 97-98 (2d Cir.2007) (describing history of PSLRA and SLUSA).  To prevent PSLRA circumvention, SLUSA permits a defendant to remove certain state law claims and obtain dismissal of them "where four conditions are met: (1) the underlying suit involves a "covered class action"; (2) the claim is based on state law; (3) the claim concerns a "covered security"; and (4) the Lakeview alleges "a misrepresentation or omission of material fact," or "a manipulative or deceptive device or contrivance, in connection with the purchase or sale of a covered security."  *See* 15 U.S.C. §78bb(f)(1).  The defendant bears the burden of establishing each element.  *See DiFelice v. Aetna U.S. Healthcare*, 346 F.3d

---

[1] The Fourth Cause of Action was against the non-Partnership Defendants for violations of California Corporations Code §§25401 *et seq.* related to the Market Fund, *see id.* at ¶¶97-103, but those claims have been dismissed as a result of the Judgment.

-5-

442, 445 (3d Cir. 2003); *see also Green v. Ameritrade, Inc*., 279 F.3d 590, 597 (8th Cir. 2002) ("The burden is on defendants to demonstrate that the requirements of SLUSA are met").

Despite its apparently broad reach, SLUSA does not completely preempt all state law securities claims. *Green,* 279 F.3d at 596 (8th Cir.2001); *see also Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003) (distinguishing between removal of state law claims "when Congress expressly so provides" and removal of such claims "when a federal statute wholly displaces the state-law cause of action through complete pre-emption"). SLUSA was enacted only to prevent class action plaintiffs from circumventing PSLRA. *Ring,* 483 F.3d at 97-98. Accordingly, "SLUSA only converts into federal claims those state claims that fall within its clear preemptive scope, thereby confining federal question jurisdiction under this statutory regime to a subset of securities fraud cases." *Spielman v. Merrill Lynch, Pierce, Fenner & Smith*, 332 F.3d 116, 124 (2d Cir.2002). "Congress was mindful to preserve the balance between establishing and maintaining 'national standards for securities class action lawsuits involving **nationally traded securities**' and 'preserving the appropriate enforcement powers of State securities regulators.'" *Id*. (emphasis added). "SLUSA does not … preclude all state enforcement or private causes of action in securities fraud cases." *Id*. Moreover, "the fact that SLUSA preempts *some* causes of action in a complaint does not entitle a defendant to broadly invoke federal preemption against the entire complaint." *Gray v. Seaboard Sec., Inc.*, 241 F. Supp. 2d 213, 219 (N.D.N.Y. 2003); *see also Winne v. Equitable Life Assur. Soc. of U.S.*, 315 F. Supp. 2d 404, 416 (S.D.N.Y. 2003) ("If a non-preempted state-law claim is appended to a claim preempted under SLUSA, … only the preempted claim would be dismissed on the merits; the pendent claims could then be adjudicated or remanded to state court").

IV. NONE OF LAKEVIEW'S CLAIMS ARE PREEMPTED BY SLUSA

    A.    <u>The Limited Partnership Interests At Issue Are Not "Covered Securities"</u>

Under SLUSA, a threshold inquiry is whether Lakeview has alleged a misrepresentation or omission of material fact in connection with the purchase or sale of a "covered security." *See* 15 U.S.C. §78bb(f)(1). Because the limited partnership interests involved in this case are not "covered securities," SLUSA does not apply.

"Under the test whether an investment contract is a security established in *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 301(1946), a limited partnership interest generally is a security because such an interest involves investment 'in a common enterprise with profits to come solely from the efforts of others.'" *Mayer v. Oil Field Systems Corp.*, 721 F.2d 59, 65 (2d Cir.1983). But that does not end the inquiry. A "covered security" is defined as "a security that satisfies the standards for a covered security specified in paragraph (1) or (2) of section 77r(b) of [Title 15], at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred...." 15 U.S.C. §77p(f)(3). Under 15 U.S.C. §77r(b)(1), "a 'covered security' is one traded nationally and listed on a regulated national exchange." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 83-84 (2006). Under 15 U.S.C. §77r(b)(2), "a security issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940" is also a "covered security."

XL Fund is not a registered investment company, and the limited partnership interests it issued to California residents in private placements were not "covered securities." The LP interests were not publicly traded, they were not approved for listing on any national exchange, and they were not even registered pursuant to the requirements of the Securities Act of 1933. There is no dispute about that; Defendants filed papers with the U.S. Securities and Exchange Commission purporting to rely on an exemption from registration requirements under federal securities laws provided by 17 CFR §230.501 *et seq.* ("Regulation D"). *See, e.g.*, concurrently filed Declaration of S. Benjamin Rozwood in Support of Motion for Remand and Related Relief

("Rozwood Dec."); Ex. 1 (Form D for XL Fund) and Ex. 2 (Form D for Market Fund).

Although it is clear that the LP interests at issue are not "covered securities," defendants argue that "the 'covered' security prong is satisfied" because Defendants subsequently employed an investment strategy that involved the purchase and sale of "covered securities." *See* Notice of Removal, ¶13 at 6. Superficially, this argument has some appeal. A few unreported district court decisions interpret SLUSA to preclude state court claims where plaintiffs purchased interests in non-covered securities in reliance upon misstatements made in connection with defendants' proposed use of those funds to purchase of covered securities. All of those cases, however, are distinguishable. In each of those cases, plaintiffs purchased non-covered securities in reliance upon misstatements made about using those proceeds to invest in covered securities. Hence, in those cases, the specific misleading statements at issue were made directly "in connection with" the purchase of covered securities.[2]

---

[2] *See, e.g.*, *Schnorr v. Schubert*, No. Civ-050303-M, 2005 WL 2019878, *5 (W.D. Okla. Aug. 18, 2005) (plaintiff alleged that defendants "promised to invest Plaintiff's and the putative class's money in covered securities but never did"); *Ring*, 251 F.3d at 109 (noting that "the only and entire product at issue in *Lander* was a covered security"); *Ring*, 483 F.3d at 99, explaining that "[t]he assets in variable annuity contracts are segregated into 'separate accounts' and typically invested in the owners' choice of one of a number of funds, which funds in turn invest in a portfolio of securities"); *Barron v. Igolnikov*, No. 09 Civ. 4471, 2010 WL 882890, at *5 (S.D.N.Y. Mar. 10, 2010) ("plaintiff and members of the putative class purchased limited partnership interests in the UBP Funds-*which in turn invested in covered securities*") (emphasis added). Similarly, the only securities at issue in *Merrill Lynch v. Dabit*, 547 U.S. 71 (2006), were publicly traded on a national exchange and, thus, fell within the definition of "covered" under SLUSA. *See, supra*, *Pension Committee*, 2010 WL 546964, *2 n.24 ("both parties in *Dabit* conceded that the securities at issue were covered"); *Instituto De Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1345-47 (11th Cir. 2008) ("Retirement trust accounts" marketed to administrator of pension funds by investment advisor qualified as "covered securities" within meaning of SLUSA where the accounts included a mutual fund

-8-

In contrast, Lakeview's California-state-law claims in this case are predicated on misrepresentations and omissions made about the *limited partnership interests* themselves, which clearly are not "covered securities." Lakeview alleges misleading statements and omissions by Defendants regarding: the deceptive monthly reports on the Capital Accounts showing that "investors were receiving a steady return on their investment with low volatility," when they were not, and the deceptive annual and interim financial statements for the partnership funds. *See, e.g.*, Compl. ¶¶54, 58-59. None of these allegations, which collectively group actionable misconduct occurring "in connection with" Lakeview's purchase of LP interests in XL Fund, concerns any "covered security." Thus, SLUSA does not apply. *Compare Ring*, 483 F.3d at 101 ("we should not preempt and dismiss a suit that alleges fraud occurred in connection only with a promise in a contract that does not relate to a 'covered security' even where another promise in the same contract does concern a 'covered security'").

In a nearly identical case in this Court, *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456, 2010 WL 5469642010 WL 546964, Fed. Sec. L. Rep. P 95,605 (S.D.N.Y. Feb. 16, 2010), District Judge Scheindlin held that SLUSA preclusion does not apply "where plaintiffs purchased, sold, or held shares in hedge funds that are not covered securities under SLUSA but that maintain a portfolio that include covered securities" because to hold otherwise would impermissibly "extend the reach of SLUSA to any investment vehicle with covered securities in its portfolio." 2010 WL 546964, at *1. As in this case, the removing defendants in the *Montreal Pension* case "argue[d] for SLUSA preemption on the ground that a portion of the Funds' portfolios included, or purported to include, covered securities." *Id*. Finding that "[o]nly the alleged misrepresentations by the [Fund defendants] [were] relevant for an analysis of SLUSA preemption," Judge

---

component, notwithstanding they also included a life insurance component that did not qualify as a "covered security").

Scheindlin ruled that SLUSA did not apply "[b]ecause the [Fund defendants'] alleged untrue statements concern[ed] only the valuation of the *Funds* and their restricted shares and warrants" and, therefore, "those statements were not made 'in connection with' the purchase and sale of covered securities." *Id*. at *2 (emphasis in original). "Because plaintiffs purchased shares in hedge funds, rather than covered securities, SLUSA does not preempt plaintiffs' state-law claims." *Id*. The same reasoning applies here.

Judge Scheindlin rejected the Fund defendants' argument that *Merrill Lynch, Pierce, Fenner & Smith v. Dabit*, 547 U.S. 71 (2006), compelled a different ruling. As District Judge Scheindlin explained:

> The interpretation of SLUSA urged by the [Fund defendants] stretches the statute beyond its plain meaning. There are no grounds on which to justify applying *Dabit* to statements made by the [Fund defendants] concerning uncovered hedge funds — even when a portion of the assets in those funds include covered securities. This outcome is required because the alleged fraud relates to those hedge funds rather than to the covered securities in the portfolios.

2010 WL 546964, at *2.

An even closer case factually is *Anwar v. Fairfield Greenwich Ltd*, 728 F. Supp. 2d 372 (S.D.N.Y. 2010), in which District Judge Marrero "follow[ed] the path struck in *Pension Committee*" to find that state law claims arising from plaintiffs' investment in a Madoff-feeder-fund were not subject to SLUSA because "the securities 'at the heart of [the] case' are non-covered interests in the Funds." *Id*. at 399 n.6. District Judge Marrero's reasoning is particularly apt:

> The Court finds that the "in connection with" requirement is not met here. The allegations in this case present multiple layers of separation between whatever phantom securities Madoff purported to be purchasing and the financial interests Plaintiffs actually purchased. First, Plaintiffs invested their money in the Funds, with one of the [Fund defendants] receiving the actual deposits. The [Fund defendants] then placed this money with Madoff, a transaction which Plaintiffs allege did not occur instantaneously; the Funds were not a cursory, pass-through entity. The Funds also placed up to 5 percent of their assets in non-Madoff investments, a relatively small portion overall but representing many millions of dollars. Madoff, when and if he received Plaintiffs' investments from the Funds, then represented he was investing this money in a manner intended to "highly correlate to the S & P 100 Index…."

> But sometimes Madoff claimed he also invested this money in Treasury Bills. Though the Court must broadly construe SLUSA's "in connection with" phrasing, stretching SLUSA to cover this chain of investment–from Plaintiffs' initial investment in the Funds, the Funds' reinvestment with Madoff, Madoff's supposed purchases of covered securities, to Madoff's sale of those securities and purchases of Treasury bills–snaps even the most flexible rubber band.

*Id.* at 398-399; *see also In re Banco Santander Sec.-Optimal Litig.,* 732 F. Supp. 2d 1305, 1316-19, 2010 WL 3036990, at *5-*7 (S.D. Fla. July 30, 2010) (rejecting §10(b) claims against Bahamian investment fund when all activity relating to purchases of securities occurred off-shore even though plaintiffs alleged they were aware the funds would be invested with Madoff).

-11-

B.  No Transaction Occurred "In Connection With" A "Covered Security"

As in *Pension Committee* and *Anwar*, the misrepresentations alleged in the Complaint here occurred in connection with the purchase of non-covered securities. Defendants nevertheless argue, without any substantiation, that because the managers of the two Funds might have invested in "covered securities," the fraudulent conduct alleged in the Complaint occurred in connection with covered securities. These bare allegations do not satisfy their burden of proof in this issue. Capital invested in the XL Fund was used to finance and enter into swap agreements, which are not "securities" under federal law. *See* Rozwood Dec., Ex. 3 (XL Fund PPM). Market Fund placed its capital in accounts with a different fund, which were not "covered securities" either. Because neither of these transactions occurred in connection with a "covered security," SLUSA does not apply.

Defendants allege in their removal papers that capital placed with the XL Fund was delivered to a third-party adviser who purchased and sold "covered securities," *see* Notice of Removal ¶14 at 8; however, no evidence supports this bare allegation. According to the "Investment Objective and Strategy" stated in its PPM, XL Fund sought "to provide investors with long-term capital growth … by entering into a total return swap transaction with one or more designated counterparties … on a leveraged basis." *See* Rozwood Dec., Ex. 3, at viii. Swap transactions, of course, are not "covered securities." In fact, they are not securities at all. *See* 15 U.S.C. §78c–1 (Swap agreements) ("[T]he definition of 'security' in section 78c(a)(10) of [Title 15] does not include any non-security-based swap agreement or any security-based swap agreement."). Because the swap transactions marketed by the XL Fund were not securities under federal law, it follows that the private sale of LP interests by XL Fund did not occur "in connection with" a "covered security" under SLUSA.

Likewise, Market Fund assets were not reinvested in "covered securities." Rather, money in the Market Fund was subsequently moved into Tremont Defendant accounts with Bernard L. Madoff Investment Securities ("BLMIS"). BLMIS was not

registered under the Investment Company Act of 1940, and the BLMIS accounts at issue were not securities, much less securities listed or approved for listing on a national exchange, and did not constitute "covered securities."[3] Hence, purchases of LP interests in the Market Fund did not occur "in connection with" a covered security.

### C. Even If SLUSA Applies To Some Claims, A Partial Remand Is Required

Finally, individual state law claims are not "covered class claims" precluded under SLUSA. Hence, Lakeview's individual state law claims must be remanded even if the Court concludes that the class claims are "covered" under and precluded by SLUSA. *See In re Lord Abbett Mut. Funds Fee Litig.*, 553 F.3d 248, 256 (3d Cir. 2009) ("SLUSA does not mandate dismissal of an action in its entirety where the action includes only some pre-empted claims"); *Winne*, 315 F. Supp. 2d at 416. Accordingly, even if the Court were to find that SLUSA precludes the class action claims in the Complaint, the Court may not dismiss the individual claims remaining in the case under SLUSA and, instead, must remand them to the state court in which they were filed. *See also* 15 U.S.C. §78bb(f)(3)(d) ("if the Federal Court determines that the action may be maintained in State court pursuant to this subsection, the Federal court *shall* remand such action to such State court") (emphasis added).

Likewise, if the Court determines that the putative class claims pertaining to Lakeview's investment in one Fund are precluded, but that Lakeview's putative class claims pertaining to Lakeview's investment in the other Fund are not, then the Court

---

[3] This is an important distinction. For example, investments made by BLMIS customers directly are protected under the Securities Investment Protection Act ("SIPA"). Only BLMIS customers are permitted to submit SIPA claims related to their own BLMIS accounts. Unfortunately for Lakeview, since XL Fund is not a registered broker-dealers, Lakeview's investments with those funds are not protected under SIPA. The money it used to purchase LP interests in XL Fund is not protected under SIPA, and Lakeview has no standing to submit SIPA claims even if some of XL Fund's capital was placed in one of Tremont's customer accounts with BLMIS.

-13-

should dismiss the precluded class claims and remand the class claims that are not precluded. *See Lord Abbett*, 553 F.3d at 256; *Winne*, 315 F. Supp. 2d at 416.

## V. LAKEVIEW ADEQUATELY ALLEGES CLAIMS UNDER §25504

California law is significantly different than federal law on issues concerning when a person is in control, as that term is used in Cal. Corp. Code §25504, directly or indirectly, for purposes of holding such control persons jointly and severally liable with "and to the same extent as" the issuer of the securities for underlying violations of §25401. See, e.g., Hellum v. Breyer, 194 Cal. App. 4th 1300 (1 Dist. 2011), review denied, (July 20, 2011) (though modeled on federal statutes, California statute expands liability to include persons "based on their relationships or connections to the corporation") (citing Openwave Systems, Inc. v. Fuld, 2009 WL 1622164 (N.D. Cal. 2009). In Hellum, three non-employee directors of an online money lending marketplace were presumptively liable for the lender issuer's alleged violations of California law in selling unregistered loan note securities. The Court of Appeal explained that, under state law, "every principal executive officer or director" is presumptively liable under §25504. The allegations of the users' complaint were sufficient to show that the directors controlled the issuer, based on their significant voting power by virtue of their stock holdings and voting agreement. Thus, ownership of all or a sufficient majority of voting stock, directly or indirectly, itself is sufficient to show control over those entities.

MassMutual argues that there are no facts alleged to support an inference that it exercised actual control over the issuer or its general partner. See MJOP at 12, 13. However, as the California Court of Appeal recently explained, "[u]nder California law, the general definition of 'control' for use throughout the Corporations Code, including section 25504 [citation omitted], is 'the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a corporation.'" Hellum v. Breyer, 194 Cal.App.4th 1300, 1316 (2011), review denied July 29, 2011 (citing Cal. Corp. Code §§5, 160(a), and 25403(a) ). "Similarly, the

SEC defines 'control' in almost identical terms as 'possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.'" Id. (citing 17 C.F.R. § 230.405 (Apr. 1, 2010)). "We see nothing in this language justifying the conclusion that plaintiffs must plead that the outside directors exercised day-to-day control over Prosper's affairs, or that they were culpable participants in the decision not to register or qualify the loan note securities. Rather, both of these definitions of "control" speak in terms of the "direct or indirect power ... to direct or cause the direction of the management and policies" of a liable corporation. (Italics added.) As reasoned in Lane v. Page (D.N.M.2009) 649 F.Supp.2d 1256, this wording focuses "on the power to direct, not on the exercise of that power. Requiring that a defendant have actually exercised power over the primary violator's general operations would involve divining an exercise of power requirement from a [definition] that mentions only the possession of power."" Id. at 1317 (emphasis in original). Moss v. Kroner, 197 Cal. App. 4th 860 (2 Dist. 2011) (July 20, 2011) (declining to follow Viterbi); see MJOP at 11 n. 13.

  MassMutual is wrong, therefore, when it argues that California law follows federal law with respect to "control" persons. See MJOP at 11 n.7; Underhill v. Nat'l Mortg. Exch., Inc., 769 F.2d 1426, 1433 (9th Cir.1985) [red flag]; Durham v. Kelly, 810 F.2d 1500, 1504-1505 (9th Cir.1987). As a result, defendants' reliance on cases which deal with federal statutes, federal pleading standards, and federal "control person" law is wholly misplaced. See, e.g., Tremont MJOP at 11, quoting McFarland v. Memorex Corp., 493 F. Supp. 631, 648 (N.D. Cal.1980). Moreover, a resolution of Lakeview's claims thus requires the interpretation, analysis, and application of California's securities statutes, which California courts have a strong interest in doing themselves. See, e.g., Friese v. Superior Court, 134 Cal. App. 4th 693, 698, 701 (2005). And where Appellate Districts may take different approaches to interpreting and applying section 25504, the sensible approach is to leave the resolution of any

such differences to California's Supreme Court, further illustrating why the action should be remanded to state court.

MassMutual misses the mark when it quotes PPM text stating that the Tremont general partner "is responsible for day-to-day operations and investment management of" XL Fund. See MJOP at 13. The same is true of MassMutual's inapposite argument that there are no facts alleged to support an inference that it exercised actual power or control over the issuer or its general partner. See MJOP at 12, 13. Under California law, that is not the test for control for purposes of establishing liability under section 25504. See Moss v. Kroner, 197 Cal. App. 4th 860 (2 Dist. 2011). Instead, Cal. Corp. Code §25504 presumptively imposes joint and several liability on direct and indirect control persons, "to the same extent as" the issuer, and a plaintiff is not required to plead facts showing that a defendant asserted any actual control over the entity that violated the securities laws. Cf. Durham v. Kelly, 810 F.2d 1500 (9th Cir.1987) (influence of president's wife over general corporate affairs held insufficient to show "control" under §25504).

MassMutual correctly notes that a parent generally is not liable for the acts of its subsidiaries. See MJOP at 1, citing U.S. v. Bestfoods, 524 U.S. 51, 62 (1998). However, Lakeview relies on a statutory imposition of such liability under California law when it comes to securities violations. See Cal. Corp. Code §25504; Hellum v. Breyer, 194 Cal. App. 4th 1300, 1316-17 (2011), review denied July 20, 2011. Thus, cases addressing common law principles for veil-piercing or alter-ego liability are inapposite.

Under this test, MassMutual's arguments that it is not liable as control person have zero force. See MJOP at 10-11 (citing a series of inapposite cases). The same is true of MassMutual's argument that lumping defendants together is impermissible for purposes of alleging control person liability. See MJOP at 12, citing Sollberger, 2010 WL 2674456 at *5, 9 and Batwin v. Occam Networks Inc., 2008 WL 2676364, *25 (C.D. Cal. July 1, 2008). Sollberger and Batwin, however, are readily distinguishable.

First, neither addresses §25504. As stated above, Lakeview is not trying to allege "control person" liability in general, but rather to plead facts showing "the power to direct, not on the exercise of that power." See Moss v. Kroner, 197 Cal. App. at 1317 (emphasis in original) ("Requiring that a defendant have actually exercised power over the primary violator's general operations would involve divining an exercise of power requirement from a [definition] that mentions only the possession of power.""). Second, Lakeview does allege, in fact, that MassMutual has indirect control over the issuer. See ¶¶16, 17; and see Addendum A (Doc. 652-1). Cases dealing with the "group pleading doctrine" and other PSLRA pleading standards have no application here.

   Defendants argue that an indirect control person may not be held liable jointly and severally with its indirect subsidiary issuer to pay a specified sum to an investor plaintiff under a rescission-based judgment entered in plaintiff's favor against subsidiary issuer based on the issuer's violations of §§25401 and 25501. See Tremont MJOP at 10, 11 (citing seven pages of Viterbi v. Wasserman, 191 Cal. App. 4th 927 (4 Dist. 2011)). But see Moss v. Kroner, 197 Cal. App. 4th 860, 879 (2 Dist. 2011) (declining to follow Viterbi) ("In light of the express language of sections 25504 and 25504.1 that the specified secondary actors are jointly and severally liable with the primary actor, we … hold that for secondary actors strict privity is not required to state a cause of action for violation of section 25401 by means of section 25504 and 25504.1.").

   In Viterbi, plaintiffs asserted a claim under Cal. Corp. Code §25504.1, not §25504. To be held jointly and severally liable under §25504.1, plaintiff must plead and prove that a person who "materially assists" in the underlying violation did so "with intent to deceive or defraud…." In contrast, section 25504 does not require any intent to deceive or defraud and, indeed, does not require any material assistance on the part of the person plaintiff seeks to hold accountable. Instead, section 25504 provides that "[e]very person who directly or indirectly controls a person liable under

Section 25501" is "also liable jointly and severally and to the same extent as such person…."

Trial courts in one Appellate District are required under the doctrine of stare decisis to follow the decisions of that Appellate District. Of course, differences between the Appellate Districts are to be resolved by the California Supreme Court. Lakeview initially filed its complaint in the First Appellate District, where Hellum was decided. See Roz. Dec. Ex. IX (map of California's six Appellate Districts). Tomchin is considering filing its claims in the Second Appellate District (where Moss was decided), given that the White Trust case is already pending in the trial court there. As such, Viterbi does not apply to their claims in any event.

Defendants' reliance on Empl. Ins. of Wausau v. Musick, Peeler & Garrett, 871 F. Supp. 381, 387 (S.D. Cal.1994) is misplaced. See Tremont MJOP at 10. In Wausau, insurers who paid settlement in securities litigation brought actions against attorneys and accountants who were not named as defendants for contribution and equitable indemnity. The right of action Lakeview asserts here is based on a statute which provides an express legal remedy, as distinct from common law claims and remedies available in equity.

In sum, defendants confuse the distinction between equitable and legal relief. There is nothing preventing a state from enacting a securities statute providing investor plaintiffs with a right to obtain a rescission-based money judgment against the issuer's indirect control person, even if such a remedy otherwise would not be available in equity. Under California's securities laws, an indirect control person may be held jointly and severally liable with indirect subsidiary issuer to pay plaintiff a certain sum in connection with a rescission-based judgment entered in plaintiff's favor against subsidiary issuer.

VI. THE COURT HAS JURISDICTION OVER OAC

Lakeview allegations of control person liability under Cal. Corp. Code §25504 is sufficient to confer jurisdiction against OAC for violations of the California Securities Act. However, if the Court wishes to consider OAC's motion, Lakeview is entitled to discovery concerning the jurisdictional issues raised therein.

VII. CONCLUSION

For the foregoing reasons, the Court should deny defendants' three motions.

Dated: February 29, 2012          By:   /s/  S. Benjamin Rozwood
                                        S. BENJAMIN ROZWOOD
                                        ROZWOOD & COMPANY APC
                                        503 North Linden Drive
                                        Beverly Hills, CA 90210
                                        Tel: (310) 246-1451
                                        Fax: (310) 246-9786

                                        Attorneys for Plaintiff
                                        LAKEVIEW INVESTMENTS, LP