UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | Master File No.: 08 Civ. 11117 (TPG) |
| This Document Relates to: STATE LAW ACTION, 08 Civ. 11183 (TPG) and specifically to former 11 Civ. 01851 (TPG): LAKEVIEW INVESTMENTS, LP,                Plaintiff, v. ROBERT SCHULMAN, et al.,                Defendants. | |

**DECLARATION OF S. BENJAMIN ROZWOOD IN SUPPORT OF PLAINTIFF LAKEVIEW INVESTMENTS, LP'S OPPOSITION TO (1) TREMONT DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, (2) MASSACHUSETT MUTUAL LIFE INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS, AND (3) OPPENHEIMER ACQUISITION CORP.'S MOTION TO DISMISS**

**DECLARATION OF S. BENJAMIN ROZWOOD**

I, S. Benjamin Rozwood, declare and state:

1. I am one of the attorneys representing plaintiff Lakeview Investment, LP ("Lakeview") in the above-captioned matter. I am submitting this declaration in support of Lakeview's Opposition to Defendants' Motions to Dismiss and for Judgment on the Pleadings. I have personal knowledge of the facts stated herein and, if called upon to do so, could and would testify competently thereto.

2. Lakeview is a limited partner of Rye Select Broad Market XL Fund, L.P. ("XL Fund"). In addition to Lakeview, I represent 2005 Tomchin Family Charitable Trust ("Tomchin"), another limited partner of XL Fund. Lakeview and Tomchin both opted out of the class settlement in the consolidated action. *See* final judgment and order of dismissal in 08 CV 11117 (Doc. 604) and in 11 CV 01851 (Doc. 33).

**Background**

3. On March 26, 2009, the Court entered an order coordinating 12 lawsuits brought by investors in certain of the 16 different "Settling Funds"[1] into the following three groups of consolidated actions: (1) cases in which the primary claims are made under the federal securities laws (the "Securities Law Actions"); (2) cases in which the claims are based primarily on state law (the "State Law Actions"); and (3) cases in which the claims are based primarily on state law, charging improper investments by insurance companies (the "Insurance Actions"). *See* Doc. 44, at 2-3.

4. The Court appointed two law firms "as interim co-lead counsel to act on behalf of the putative plaintiff class" in the State Law Action, but did not appoint any "Lead Plaintiffs" in the State Law Action. *Id.* at 4. Pursuant to the schedule set by the Court (*see* Doc. 55), interim co-lead counsel in the State Law Action filed the First Consolidated and Amended Class Action and Verified Derivative Complaint

---

[1] Unless otherwise indicated, capitalized terms have the meaning set forth in the parties' Stipulation of Settlement (attached as Exhibit A to Declaration of Andrew J. Entwistle in Support of Motion for Preliminary Approval of Settlement), at Doc. 392-1.

-1-

("FCAC") on April 20, 2009. *See* Doc. 65. Interim co-lead counsel in the State Law Action never filed any second amended complaint or any amendments to the FCAC. The FCAC contains no claims based on California law, and none of the plaintiffs was organized or was a resident of California.

5. Lakeview's state law action was:

- (1) removed from California state court to N.D.Cal. (Dkt. #1);
- (2) after defendants filed a Notice of Tag-Along Action with the MDL panel (Dkt. #14), transferred by order of the MDL Panel to S.D.N.Y. based on the existence of then-pending consolidated class actions there (Dkt. #19) (Notice of Ruling attaching CTO-6 (Conditional Transfer Order), MDL No. 2052 (transferring Lakeview's action "under 28 U.S.C. §1407 to the Southern District of New York *for the reasons stated in the order of June 11, 2009*") (emphasis added));
- (3) over Lakeview's objection (Exhibit I.hereto), consolidated with other previously-consolidated "State Law Actions" (08 Civ. 11183) within *In re Tremont* (08 Civ. 11117) (Dkt. #25) (order directing Clerk of Court to "consolidate this case with the State Law Action under docket number 08 Civ. 11183, and upon doing so, to close the docket" in 11-cv-01851");
- (4) subject to a court order directing the Clerk of Court to close its docket (Dkt. #25); and
- (5) dismissed as part of the consolidated State Law Action pursuant to final judgment entered August 19, 2011 (Dkt. #33) (604), as corrected by court order entered September 20, 2011 (616).

6. The State Law Action was dismissed pursuant to the judgment entered August 19, 2011 (*see* 08-cv-11117, Dkt. #604 (same as 11-cv-01851, Dkt. #33)), as later corrected by court order entered September 20, 2011 (*see* 08-cv-11117, Dkt. #616) ("Judgment"). *See, e.g.*, Judgment §13 ("The Actions ... are dismissed..."). Before that happened, Lakeview's once-separate action was consolidated into that

-2-

State Law Action (*see* 11-cv-01851, Dkt. #25 (April 13, 2011) (also directing the Clerk of Court to close the docket in Lakeview's once-separate action).

7. Lakeview's case is distinct from the 15 other cases proceeding in SDNY, all of which assert federal claims. None of the plaintiffs in those actions asserts any claims under California law.

8. On October 23, 2011, in response to an email from Seth Schwartz asking if Lakeview planned to litigate its claims in New York, I wrote "that Lakeview had the only "State Law Action" in [his] revised chart, and that it only asserted claims based on California state law. Leaving Lakeview out of this group, therefore, should further Judge Griesa's interest in judicial economy and efficiency." I asked Mr. Schwartz to include these points in any submission to the Court concerning his proposals for going forward with the other 15 actions previously consolidated into the *Securities* Law Action, stating that my clients had not yet decided what to do. Attached as Exhibit II. hereto is a true and correct copy of that email.

9. Since that time, my clients and I have been gathering information based on developments in the BLMIS liquidation proceeding as they decide how best to pursue their claims. Attached as Exhibit III. is a true and correct copy of a list of XL Fund opt outs I prepared based on information available in the record. As Lakeview and Tomchin seem to be the only two XL Fund opt-outs in California, Lakeview has decided not to proceed on behalf of other California-based XL Fund investors, even if other XL Fund investors' claims survived the release in the Judgment.

10. Lakeview did not opt out of the class action settlement with respect to its Market Fund investment. *See* Lakeview's Request for Exclusion from Settlement Class, a true and correct copy of which is attached as Exhibit IV. Lakeview plans to pursue only its individual claims arising out of its investments in XL Fund.

11. Under the circumstances, especially since the class action is settled, there is no basis for proceeding with these individual state law claims in New York. There is no need for the Court to hear or decide the pending motions, and no need for it to

-3-

1  consider the unique aspects of the two-plaintiff action asserting state law claims only.
2  Indeed, Lakeview and Tomchin have a judicially recognized interest in proceeding in
3  a court of their own State of California.  *See White v. Manzke*, 2011 WL 1021362
4  (Cal.App.2 Dist.), a copy of which is attached hereto as Exhibit V.

5      12.    For these and other reasons, I told Mr. Schwartz that Lakeview would not
6  be proceeding in New York.  Indeed, Lakeview plans to file an updated complaint
7  reflecting significant factual developments relevant to its claims that have arisen since
8  it filed the old complaint back in December 2010.  In any event, at the Court's request,
9  Lakeview is preparing to file an amended motion for remand for hearing before or
10 together with defendants' pending motions.  *See* Exhibit VI. (a true and correct copy
11 of a letter dated June 6, 2011 from Mr. Schwarz acknowledging the sensibility of
12 addressing Lakeview's request for remand after entry of Judgment).

### XL Fund Was Not a Madoff "Feeder Fund"

14      13.    XL Fund itself did not provide any capital to Madoff and, as such, was
15 not a Madoff "feeder fund" at all.  *Cf.* FCAC ¶2.  Indeed, as the FCAC acknowledges,
16 the purpose of XL Fund was to "provide investors with 'long-term capital growth and
17 a return linked to a three times leveraged exposure to the economic performance' of
18 the Market Fund[,]" ***by investing "in one or more swap transactions with one or***
19 ***more designated counterparties."***  *See* FCAC ¶90 (emphasis added); *and see* Exhibit
20 VII. (a true and correct copy of XL Fund's PPM).

21      14.    Attached as Exhibit VIII. hereto is a true and correct copy of a Form D
22 filed for XL Fund with the California Department of Corporations on March 10, 2008,
23 to qualify for an exemption from securities qualification requirements with respect to
24 its offering of limited partnership interests in California.

25      15.    On the first page of the Form D, XL Fund describes its business as
26 "**Investments in Swap Transactions**."  (Emphasis added); *and see id.*, at 5, Item 5
27 (confirming Tremont's plan to use all but $75,000 of the $1.0 billion "Aggregate
28 Offering Amount" for "**Investments in Swap Transactions**") (emphasis added).

16. The Form D discloses $406,397,352 as the "Amount Already Sold" to 137 limited partners of XL Fund. *See* Ex. VII, at 4, Items 1 and 2. $75,000 of the "Aggregate Offering Amount" was set aside to pay for legal, accounting, and marketing fees and expenses. *See* Ex. VII, at 4, Item 4.) Tremont Partners, Inc. is XL Fund's "General and/or Managing Partner" and "Promoter." *Id.* at 2. The Form D identifies Robert Schulman as a Director, and identifies Mr. Schulman, Stuart Pologe, Kelly Patrick, and John Siletta as Executive Officers. *Id.* at 2. Harry Hodges signed the Form D as Vice President of Tremont Partners, Inc.

17. XL Fund did not invest its capital in the Market Fund or any other BLMIS customer. *Cf.* FCAC ¶91. Rather, the facts show that XL Fund transferred approximately $405 million of its capital to third-party banks pursuant to total return swap contracts. *See* [Proposed] Complaint in Intervention (Doc. 565-1); *see also* Ex. VII (Form D). With respect to that $405 million, XL Fund did not transfer its capital to Madoff or to BLMIS. (Interim co-lead counsel in the State Law Action simply were wrong to allege that XL Fund functioned as a "Madoff feeder fund," as repeatedly depicted in the FCAC on pages 13, 32, 35 and 38.) As confirmed in the SIPA liquidation proceedings in bankruptcy court, XL Fund was not a BLMIS customer and it did not have a BLMIS account.

18. Interim co-lead counsel argued that there is no difference between the domestic Rye Funds, including Prime Fund and XL Fund, with respect to the issues underlying the derivative claims available to their respective limited partners. *See* Doc. 308 at 4 ("the determinations at issue work the same for each of the three domestic Rye Funds managed by Tremont"); *id.* at 5 ("The viability of the derivative claims is the same for each of [Market Fund, Prime Fund, and XL Fund]. Therefore, the Court can and should decide the viability of the derivative claims without carving-out the XL Fund."). However, XL Fund had unique claims to recover capital transferred under its swap contracts. These claims are not available to other Rye Funds that, unlike XL Fund, entrusted their capital to BLMIS.

-5-

19. In this way, XL Fund is significantly different from the other two "domestic Rye Funds." As the allegations in Picard's later-filed complaints show, interim co-lead counsel was wrong to assert "roughly 90% of the XL Fund assets were actually invested in the Rye Select Broad Market Fund." *Cf.* Doc. 308, at 4 n. 4. As detailed in the [Proposed] Complaint-in-Intervention (Doc. 565-1), substantially all of XL Fund's capital was transferred to third party banks unaffiliated with Madoff or BLMIS pursuant to total return swap contracts.

20. Attached as Exhibit IX. hereto is a true and correct copy of a map of the California Court of Appeal's six Appellate Districts.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 29th day of February 2012, in Beverly Hills, California.

/s/ Benjamin Rozwood

_____
BENJAMIN ROZWOOD