White v. Manzke, Not Reported in Cal.Rptr.3d (2011)

Not Officially Published
(Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)
2011 WL 1021362
Only the Westlaw citation is currently available.

California Rules of Court, rule 8.1115, restricts citation of unpublished opinions in California courts.

Court of Appeal, Second District, Division 1, California.

Edward L. WHITE, as Trustee, etc., et al., Plaintiffs and Appellants,
v.
Sandra MANZKE et al., Defendants and Respondents.

No. B223099.(Los Angeles County Super. Ct. No. LC083957).March 23, 2011.

APPEAL from an order of the Superior Court of Los Angeles County. John S. Wiley, Judge. Reversed.

**Attorneys and Law Firms**

S. Benjamin Rozwood, for Plaintiffs and Appellants.

Eric S. Waxman, Thomas E. Haroldson and Kevin D. Lloyd, for Defendants and Respondents Tremont Partners, Inc. and Tremont Group Holdings, Inc.
Steptoe & Johnson, Michael P. McNamara, Kirsten H. Spira and Tamara McCrossen-Orr, for Defendant and Respondent Rye Select Broad Market Prime Fund.
Lim, Ruger & Kim, Christopher Kim and John L. Jones II, for Defendants and Respondents Sandra Manzke and Suzanne Hammond.
Dechert and Matthew L. Larrabee, for Defendants and Respondents Oppenheimer Acquisition Corp., Kurt Wolfgruber, and John V. Murphy.
Gaims, Weil, West & Epstein, Alan Jay Weil and Andrew M. Vogel, for Defendant and Respondent Michael T. Rollings.
Susan L. Hoffman and Karen Pazzani, for Defendants and Respondents Massachusetts Mutual Life Insurance Company and MassMutual Holding.

**Opinion**

JOHNSON, J.

**\*1** Edward L. White as Trustee for the White Trust dated May 3, 2002 (White Trust)1 and Rigdon O. Dees III appeal from an order staying this action on forum non conveniens grounds pursuant to Code of Civil Procedure section 410.30.2 The trial court stayed this action, which arises out of investments with Bernard L. Madoff related companies, in favor of litigation in New York, finding that New York was a suitable forum and the public and private interest factors favored proceeding in New York. We reverse.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This case arises out of the collapse of Bernard L. Madoff Investment Securities, Inc. (Madoff Securities). Defendants were

White v. Manzke, Not Reported in Cal.Rptr.3d (2011)

"feeder funds" for Madoff Securities. In December 2008, after Madoff Securities was exposed as a massive Ponzi scheme, investors realized billions of dollars in losses.

Plaintiffs invested directly with defendants in hedge funds managed by defendants, and contend defendants negligently invested funds with Madoff Securities, and failed to conduct sufficient due diligence or monitor those investments. Plaintiffs filed this action against thirteen individual defendants and six financial entities, none of whom reside in California.

**A. The Parties.**

Plaintiff Rigdon O. Dees III (Dees) is a resident of Southern California and has lived in the area for over 35 years.

White Trust was created by Edward White and his wife, two long-time California residents with over 60 years between them living in Southern California.

Defendant Rye Select Board Market Prime Fund LP (the Partnership or Prime Fund) is a Delaware limited partnership formed on May 23, 1997. Plaintiffs invested in the Partnership and were limited partners.

Defendant Tremont Partners, Inc. (Tremont Partners) is the general partner of the Partnership, and is a Connecticut corporation. Tremont Partners is wholly owned by defendant Tremont Group Holdings, Inc., a Delaware corporation (Tremont Holdings). The Tremont defendants have their principal place of business in New York and conduct their day-to-day business in New York.

Defendant Massachusetts Mutual Life Insurance Co. (MassMutual) is a Massachusetts corporation and the parent company of MassMutual Holding Co. (MassMutual Holding), a Delaware limited liability company. Both of the MassMutual companies have their principal place of business in Springfield, Massachusetts. In 1990, MassMutual acquired 80 percent of Oppenheimer Acquisition Corp. (Oppenheimer), a Delaware corporation with its principal place of business in New York, through one of its subsidiaries. In 2001, Oppenheimer acquired the predecessor of Tremont Holdings.

The relationship between the entity defendants can be summarized: Prime Select is a limited partnership, of which Tremont Partners is the general partner; Tremont Holdings wholly owns Tremont Partners; Oppenheimer owns Tremont Holdings; MassMutual Holding is the parent company of MassMutual and owns 80 percent of Oppenheimer.

**\*2** The individual defendants are current or former employees of the entity defendants. None of them is a California resident, and none had any professional contact with California in connection with plaintiffs' claims. Defendant Sandra Manzke founded Tremont Holdings in 1985, was its president, and was its sole chief executive officer (CEO) from May 1994 to August 2000; she was co-CEO until sometime in 2005. Manzke worked at Tremont's headquarters in Rye, New York.

Defendant Suzanne Hammond was a senior vice-president at Tremont Holdings from October 2001 to August 2004, and worked

at its headquarters in Rye, New York.

Defendant John Murphy was a vice-president at MassMutual from February 1997, and joined Oppenheimer's board of directors in 2001. Currently, Murphy is a chairman and CEO of Oppenheimer Funds, a subsidiary of Oppenheimer, and is a resident of Massachusetts with his business offices in New York.

Defendant Michael Rollings is MassMutual's chief financial officer, and is a resident of Massachusetts.

Defendant Kurt Wolfgruber is a managing director at Oppenheimer, its president, chief investment officer, and a director of Oppenheimer Funds. He is a resident of New York.

Murphy, Rollings, and Kurt Wolfgruber are also directors of Tremont Holdings.

### B. Background Facts and Plaintiffs' Operative Amended Complaint.

On February 1, 2006, White Trust became a partner in Prime Fund and made investments in it during the period February 1, 2006 through December 1, 2008 totaling $250,000. Dees made investments totaling $250,000 in Prime Fund during the period July 1, 2005 through January 1, 2006.

Defendants marketed many different types of securities and insurance products to prospective investors in many locations. In California, defendants filed documents with the California Department of Corporations, including consent to service of process forms and forms representing compliance with Regulation D establishing exceptions from federal securities registration requirements.

On June 17, 2009, plaintiffs filed their amended complaint, alleging claims for declaratory relief, violations of California Corporations Code sections 25401 et seq., breach of fiduciary duty, aiding and abetting breach of fiduciary duty, negligent misrepresentation, and negligence.3 Plaintiffs' allegations were based on their contention that defendants failed to conduct due diligence to determine the financial soundness of Madoff Securities before investing their money; failed to exercise reasonable care in disseminating financial information to investors; and failed to exercise reasonable care in monitoring, investigating, and reviewing information provided to them concerning plaintiffs' assets.

On July 28, 2009, pursuant to defendants' motion, the court designated the matter as procedurally complex.

### C. Related Proceedings in New York and Other Courts.

Currently pending in the United States District Court for the Southern District of New York are 22 actions against Tremont Holdings, Tremont Group, Prime Fund, Oppenheimer, MassMutual Life, and MassMutual. Those actions were consolidated on March 26, 2009.4

*3 On June 11, 2009, the Multi-District Litigation (MDL) Panel formed *In re Tremont Group Holdings, Inc., Sec. Litig.* (S.D.N.Y .2009) 626 F.Supp.2d 1338 (MDL no. 2052) (*Tremont Securities Litigation*) and issued an order granting the defendants' motion for coordinated or consolidated

pretrial proceedings in the Southern District of New York pursuant to 28 United States Code section 1407⁵ with respect to 13 actions, consisting of two actions filed in federal court for the District of Massachusetts,⁶ and 11 actions filed in the Southern District of New York.⁷

In transferring the cases to the Southern District of New York, the district court found the actions involved common questions of fact and centralization of the proceedings in the Southern District of New York would serve the convenience of the parties and witnesses, and would promote the just and efficient conduct of the litigation. "All actions share factual questions relating to whether Tremont and its Rye [Investment Management] division peformed adequate due diligence before investing Tremont or Rye fund assets with [Madoff Securities].... To address this issue, all actions will likely focus on a significant number of common events, defendants, and/or witnesses. [Citation.] Centralization under section 1407 will eliminate duplicative discovery; avoid inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary." (*Tremont Securities Litigation, supra,* 626 F.Supp.2d at pp. 1339-1340.) The court further found that the Southern District of New York was an appropriate district for the action because 11 of the 13 actions were already pending there, and parties, witnesses and documents would be found in or near New York. (*Id.* at p. 1340.)

Six cases have been added to the *Tremont Securities Litigation* as "[t]ag-[a]long" actions pursuant to rule 7.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation.⁸ In addition, two cases filed in the Southern District of New York has been consolidated with the Insurance Actions,⁹ and on June 26, 2009, two other cases were conditionally transferred to the Southern District of New York from Massachusetts.¹⁰ An additional four actions are pending in New York state courts against defendants.¹¹ Actions are also pending in Florida, New Mexico, and Connecticut.

**D. Removal of This Action to Federal Court; Remand.**

On January 30, 2009, the defendants removed the action to the United States District Court for the Central District of California on the grounds of diversity jurisdiction because none of the defendants were a California resident, while both plaintiffs resided in California. (28 U.S.C. §§ 1332(a) & 1441(b).)

On February 13, 2009, plaintiffs filed a motion for remand.

On April 27, 2009, the California federal court ruled no diversity jurisdiction existed, reasoning that because plaintiffs were limited partners of the Partnership, diversity jurisdiction did not exist, and defendants had failed to demonstrate fraudulent joinder.

*4 On May 12, 2009, the federal court issued its order remanding the action to California state court.

**E. Motions to Stay California Proceedings on Grounds of Forum Non Conveniens.**

On October 19, 2009, the Tremont defendants moved to stay the action on forum non conveniens grounds, contending

**White v. Manzke, Not Reported in Cal.Rptr.3d (2011)**

that the matter should be heard in New York.12 Defendants argued New York was a suitable forum and private and public factors weighed in favor of staying the matter pending resolution of litigation in New York; 22 related actions were already pending in New York; New York was where most of the defendants resided, and where the due diligence and monitoring activities that were the core of plaintiffs' claims had taken place. Defendants asserted New York had a stronger interest in the action because a compelling and overriding interest in regulating the sale and promotion of securities in its state. Further, plaintiffs were the only parties with meaningful ties to California and plaintiffs could be deposed in California, yet defendants could not compel testimony at trial in California from a host of critical witnesses, including those who might have first-hand knowledge of Bernard Madoff's criminal scheme. Plaintiffs had no knowledge of the diligence and monitoring activities taking place in New York, while the many New York-based witnesses had significant knowledge. Finally, permitting the action to proceed in California would create the risk of inconsistent rulings with actions already pending in other jurisdictions, and the California court would have to apply the law of foreign jurisdictions to the dispute.

The Tremont defendants filed the declaration of Eric Waxman in support of their motion. Waxman stated that the center of gravity of the case was in New York, where a dozen related actions had been consolidated in the Southern District of New York. Waxman stated that there was substantial overlap between the parties because most of the defendant in this case were parties to the New York actions; all of the 22 New York actions involve claims of alleged breach of fiduciary duty; and most alleged negligent misrepresentation and other common law claims similar to those asserted by plaintiffs.

Plaintiffs opposed the Tremont defendants' motion, contending that the Southern District of New York lacked jurisdiction because the instant action had been remanded to state court on the basis that no diversity jurisdiction existed; New York state courts were not suitable because their claims are barred in New York by the Martin Act (New York's state securities laws); California had a strong interest in enforcing its securities laws and the sale and marketing of securities within its borders and plaintiffs' claims were based on California securities laws; California was better suited to adjudicate the matter because the New York class actions did not assert claims based on California law; California had jurisdiction over the necessary parties; private interest factors weighed in favor of a California forum, including plaintiffs' choice of forum and the relative financial means of the parties; the case presented difficult issues for the New York court; and defendants had not shown any serious inconvenience.

**\*5** In opposition to the MassMutual defendants' motion, plaintiffs argued that MassMutual presented no evidence that New York would be a more convenient forum; its reliance on the MDL Panel's orders was misplaced because the Panel did not consider plaintiffs' case; plaintiffs' action had nothing to do with facts relevant to the pending New York actions; MassMutual's assertion that key witnesses resided in New York was not supported by the evidence, the misconduct at issue occurred in California; and plaintiffs would be prejudiced by a stay because the New

York actions were not proceeding expeditiously.13

In support, plaintiffs submitted the Declaration of Edward White, in which he stated that he was a certified public accountant and he and his wife had resided in California for more than 60 years between them. In 2005, Robert Rosenblum, senior vice president and managing director of Tremont Holdings visited White at his offices in Woodland Hills, California. In February 2006, White invested in the Partnership. During the period April 2006 through December 2008, White invested in the Partnership based upon materials received from Tremont and its affiliates. These materials reflected a consistent and considerable rate of return.

In reply, the Tremont defendants14 argued that New York was a suitable forum because New York courts had jurisdiction over all defendants, while California did not; there was no statute of limitations on plaintiffs' claims that would have run; the fact California law might be more favorable was not a factor in the analysis; New York had a stronger interest in the action than California because New York was the center of the securities industry.

The MassMutual defendants argued that New York was a more suitable forum because plaintiffs had not alleged any of the MassMutual defendants had interacted with the plaintiffs in California; most actions had been transferred to the *Tremont Securities Litigation* and were not pending in numerous other state courts, as plaintiffs had asserted; and the actions pending in New York, contrary to plaintiffs' assertions, were based upon similar facts and issues as plaintiffs' claims.

**F. Entry of Stay.**

At the hearing, plaintiffs argued that New York federal court was not a suitable forum because of the lack of diversity. Furthermore, one of the plaintiffs in the currently pending litigation in New York asserted a claim under California law. With respect to the pending four New York state actions, they argued three of the actions were derivative; New York's Martin Act had a preclusive effect on their common law claims; and the relative means of the plaintiffs and the defendants made litigating in New York difficult.

In imposing a stay of the plaintiffs' action, the trial court relied in part on the MDL Panel's ruling consolidating and transferring the related cases to the Southern District of New York. At the hearing, the court commented that some events happened in California and some events happened in New York, but "the Madoff disaster [was] a giant funnel where the wide end of the funnel really extended all across the country narrowing down to a pike going into Mr. Bernard Madoff...." The court found although there were solicitations to invest in California and a transfer of cash from California to New York, all of the conduct underlying plaintiffs' claims centered in New York or around New York. After commenting that the natural tendency of victims in cases such as the Madoff case was to get ahead of one another, the court found New York to be the more convenient forum and the more "globally rational course is to try to unify rather than fragment these lawsuits." The court stated, "[d]oesn't California as a state share an interest with its

White v. Manzke, Not Reported in Cal.Rptr.3d (2011)

sister states that a nationwide fraud like this where money is funneled from across the country ... all going to New York ... that that gigantic mess be sorted out as rationally as possible to ensure all victims as much recovery as possible rather than favoring one state's victims versus another. [¶] ... [¶] California wouldn't have an interest in seeing California victims doing better than, say Florida victims." The court acknowledged that while different states had different statutes, other states were competent to decide questions of a sister state's laws because courts and judges made their reasoning explicit in the record according to a uniform approach to legal questions.

**\*6** On December 17, 2009, the trial court granted the motion and stayed the action.

**G. Motion to Lift Stay.**

On February 10, 2010, plaintiffs moved to lift the stay, contending that the New York proceedings were "stalled" due to the imposition of numerous stays on the action. Five of the Southern District of New York cases were subject to a discovery stay; the insurance actions were stayed pending the filing of an amended complaint; two of the New York state court actions were involuntarily stayed; and voluntary stays had been imposed in two of the New York state court actions.
The Tremont defendants opposed, arguing that plaintiffs had disregarded the standard for lifting the stay, which required them to show they had filed their case in another jurisdiction and pursued it to resolution; further, plaintiffs' motion was nothing more than a belated motion for reconsideration.15

In reply, plaintiffs argued they were not required to join the stalled actions before moving to lift the stay, and similar state actions were proceeding in a timely fashion.

The court denied the motion.

### DISCUSSION

Plaintiffs contend the trial court erred in staying the action on forum non conveniens grounds in two respects. First, they argue both New York's federal and state courts are unsuitable forums. Second, the relevant and admissible evidence before the trial court weighs in favor of a California forum, and the court abused its discretion when it concluded the public and private interest factors weighed in favor of requiring plaintiffs to proceed in New York.

### I. FORUM NON CONVENIENS.

Code of Civil Procedure section 410.30, subdivision (a) provides: "When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any condition that may be just." (Code Civ. Proc., § 410.30, subd. (a).) Forum non conveniens is an equitable doctrine that allows a trial court to decline to exercise jurisdiction if the action may be more appropriately and justly tried elsewhere. (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 751 (*Stangvik* ).)

A court ruling on a motion to stay or dismiss an action based on forum non conveniens

engages in a two-step analysis. First, as a threshold matter, it must determine whether there is a suitable alternative forum. (*Stangvik, supra,* 54 Cal.3d at p. 752 & fn. 3 .) The second step is to consider the private interests of the parties and the public interests in litigating the case in California. (*Stangvik, supra,* 54 Cal.3d at p. 751.)

An extensive evidentiary showing is not required; all that the movant needs to show is that "trial may be held in the alternative forum and that some form of relief may be granted." Examination of the public and private interests at stake may involve more general considerations. (*Morris v. AGFA Corp.* (2006) 144 Cal.App.4th 1452, 1462.) The trial court's first determination, whether there is a suitable alternative forum, is a nondiscretionary legal question subject to de novo review. (*Chong v. Superior Court* (1997) 58 Cal.App.4th 1032, 1036-1037.) The second determination, the weighing of public and private factors, is subject to review only for an abuse of discretion, and we accord substantial deference to the trial court's balancing of factors. (*Id.* at p. 1037.)

**A. New York Courts Are Suitable Alternative Fora.**

**\*7** A forum other than California is suitable if and only if the defendant is subject to jurisdiction in that forum, the statute of limitations in that forum would not bar the action, and the action would be adjudicated by an independent judiciary respecting due process of law. (*Boaz v. Boyle & Co.* (1995) 40 Cal.App.4th 700, 711 (*Boaz* ).) The fact that the law of another forum is disadvantageous to the plaintiff or that the forum does not provide a remedy available in California does not make such a forum unsuitable. (*Stangvik, supra,* 54 Cal.3d at pp. 753-754 & fn. 5, 764; *Boaz,* at p. 711.)

The defendant must be subject to service of process in the alternative forum. (*American Cemwood Corp. v. American Home Assurance Co.* (2001) 87 Cal.App.4th 431, 440.) Further, the forum's law must provide a remedy, but it is sufficient if the action can be brought, but not necessarily won, in the alternative forum. (*Guimei v. General Electric Co.* (2009) 172 Cal.App.4th 689, 696.) The other forum's law need not be as favorable to the plaintiff as local law; advantages of California law or procedure cannot be considered. The alternative forum's law is irrelevant unless the remedy provided is so clearly inadequate or unsatisfactory such that it constitutes no remedy at all. (*Stangvik, supra,* 54 Cal.3d at p. 764.) The " 'no remedy at all' " exception is very limited, and is only applied in rare circumstances, "such as where the alternative forum is a foreign country whose courts are ruled by a dictatorship, so there is no independent judiciary or due process of law." (*Shiley Inc. v. Superior Court* (1992) 4 Cal.App.4th 126, 133-134.) The exception has never been applied to a sister state. (*Boaz, supra,* 40 Cal.App.4th at p. 711.)

***1. New York Federal Court Has Jurisdiction.***

Plaintiffs contend the Southern District of New York is not a suitable forum because there is no federal court jurisdiction because of the lack of diversity. The fact that they are free to include federal causes of action in their claims is irrelevant because they do not have a duty to assert such claims. Respondents[16] argue that the New York

federal court has supplemental jurisdiction over plaintiffs' claims pursuant to 28 United States Code section 1367 even in the absence of diversity or federal question jurisdiction.

Pursuant to 28 United States Code section 1367(a), federal courts may exercise supplemental jurisdiction over claims that do not independently come within the jurisdiction of the federal court, but which form part of the same article III of the United States Constitution "case or controversy."17 (*State National Insurance Company v. Yates* (5th Cir.2004) 391 F.3d 577, 579.) However, where the district court's original jurisdiction is based solely on diversity, 28 United States Code section 1367(b) withdraws the grant of supplemental jurisdiction conferred under United States Code section 1367(a) where the addition of a plaintiff would be inconsistent with the jurisdictional requirements of 28 U.S.C. section 1332 (the statutory grant of diversity jurisdiction).18 There are three requirements for supplemental jurisdiction: (1) the federal claim must have substance sufficient to confer subject matter jurisdiction on the federal court; (2) the state and federal claims must derive from a common nucleus of operative facts, and (3) the claims must be such that they would ordinarily be expected to be tried in one judicial proceeding. (*United Mine Workers of America v. Gibbs* (1966) 383 U.S. 715, 725; *MCI Telecommunications Corporation v. Teleconcepts Incorporated* (3d Cir.1995) 71 F.3d 1086, 1102.)

**\*8** Here, numerous actions asserting federal and state claims19 are already pending in the *Tremont Securities Litigation.* Plaintiffs' claims arise out of the same facts (the defendants' failure to conduct adequate due diligence before investing in Madoff Securities, and failure to monitor investments in Madoff Securities); and claims would ordinarily be expected to be tried in the same litigation (the multidistrict litigation). Thus, the Southern District of New York is a suitable alternative forum.

*2. New York State and Federal Courts Are Suitable Fora.*

Plaintiffs contend they are not subject to personal jurisdiction in New York, and their claims are precluded under New York state law because New York's Martin Act preempts common law claims.

New York's Martin Act prohibits fraud, deception, and concealment in connection with the sale of securities.20 New York courts construe the Martin Act liberally and have held that the statute vests the New York Attorney General with the sole authority to prosecute state law claims involving securities sounding in fraud that do not require proof of intent to defraud or scienter. (*Castellano v. Young & Rubicam, Inc.* (2d Cir.2001) 257 F.3d 171, 190.) There is no implied private right of action for any claim covered by the Martin Act. (*CPC Int'l Inc. v. McKesson Corp.* (1987) 70 N.Y.2d 268, 275.)

As a result, New York courts routinely dismiss common law securities claims under the Martin Act based on conduct that is "within or from" New York sounding in fraud or deception that do not require pleading or proof of intent. (*In re Tremont Secs. Law* (S.D.N.Y.2010) 703 F.Supp.2d 362, 372.) Limited partnership interests are

considered securities for purposes of the Martin Act. (See N.Y. Gen. Bus. Law § 352(1); *Mayer v. Oil Field Systems Corp.* (2d Cir.1983) 721 F.2d 59, 65.) A transaction qualifies as "within or from" New York for purposes of the Martin Act if a plaintiff alleges that a substantial portion of the events giving rise to a claim occurred in New York. (*In re Tremont Secs. Law, supra,* 703 F.Supp.2d at p. 372.)

Here, the fact that New York state law gives no private right of action to certain types of securities claims under the Martin Act does not mean plaintiffs will be denied a remedy. Plaintiffs have asserted claims under California's corporations laws (Corp.Code, §§ 25000 et seq.) that are substantively equivalent to their common law claims in terms of providing a remedy.21 The New York courts, state or federal, will be required to apply California law to plaintiffs' claims asserted under California law. (See, e.g., *American High-Income Trust v. Alliedsignal* (S.D.N.Y.2004) 329 F.Supp.2d 534 [applying California Corporations Code sections 25401 and 25501].) Thus, New York courts are suitable alternative fora. The fact plaintiffs may be disadvantaged by proceeding in New York state courts with respect to their common law claims does not render the forum unsuitable.22 (*Boaz, supra,* 40 Cal.App.4th at p. 711.)

**B. The Trial Court Abused Its Discretion in Finding the Public and Private Interests Weigh in Favor of Staying the Action Pending Resolution in a New York Forum.**

**\*9** Plaintiffs argue the private interest favors retaining this matter in California because the relative means of the parties favor California and locations of witnesses and documents favor California because the culpability in this matter arises from acts and omission which took place in California pursuant to contracts with California residents. They argue the public interest factors favor venue in California because of California's interest in enforcing its securities laws and controlling the market for securities within its borders, and New York has little interest in applying the laws of California to securities transactions. Further, there is little administrative convenience in having the matter litigated in New York state courts, as opposed to federal court. The currently pending New York state actions have different procedural postures (Tremont is a plaintiff in three of them), the actions allege violations of New York law; and they have not been consolidated. We agree.

The plaintiff's choice of a California forum is entitled to great weight, particularly if the plaintiff is a California resident. (*Stangvik, supra,* 54 Cal.3d at pp. 754-755.) The fact that the law of another forum is less favorable to a litigant than California law is not a valid consideration in balancing the private and public interests, and carries no weight. (*Id.* at pp. 753, fn. 5, 764.)

*1. Private Interest Factors.*

"The private interest factors are those that make trial and the enforceability of the ensuing judgment expeditious and relatively inexpensive, such as the ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the availability of compulsory process for attendance of

**White v. Manzke, Not Reported in Cal.Rptr.3d (2011)**

unwilling witnesses." (*Stangvik, supra,* 54 Cal.3d at p. 751.)

Here, the trial court abused its discretion in finding New York was a suitable alternative forum because it failed to consider and balance all of the factors, instead heavily focusing on judicial economy that would be served by having the case tried near its "center of gravity" in New York. Although the "center of gravity" of this case is indeed in New York, where the majority of the sources of proof and witnesses are located, the offices of most of the defendants are located and alleged errors and omissions that form the basis of plaintiffs' claims took place, this sole convenience factor does not outweigh the hardship to be imposed on the California plaintiffs in this case if the matter is stayed in favor of proceedings in New York. The relative means of the parties (plaintiffs are individuals of limited means, while defendants are large corporations and entities that have the resources to do business in California, as evidenced by filing of necessary regulatory documents by some of the defendants in California) favors retention of this action in California, particularly where the plaintiffs are elderly and the matter is proceeding slowly in New York.

Discovery can be orchestrated from this California venue as well as from any other location. Logistical and geographic obstacles are no longer major hindrances in this era of instant communication and instant data transmission. To ease discovery hurdles, courts in various jurisdictions can coordinate discovery and protective orders to lessen potential difficulties. Further, large caches of documents can readily be reduced to discs.

## 2. *Public Interest Factors.*

**\*10** The public interest factors include avoidance of overburdening local courts with congested calendars, protecting the interests of potential jurors so that they are not called upon to decide cases in which the local community has little concern, and weighing the competing interests of California and the alternate jurisdiction in the litigation. (*Stangvik, supra,* 54 Cal.3d at p. 751.)

Here, the public interest factors do not militate in favor of a New York forum, and the trial court gave short shrift to California's interest in adjudicating, under its own securities laws, harm done to California plaintiffs. (See *Friese v. Superior Court* (2005) 134 Cal.App.4th 693, 702; *Western Air Lines, Inc. v.. Sobieski* (1961) 191 Cal.App.2d 399, 409-410 [" ' " 'It is true that the courts in California cannot control the internal affairs of any foreign corporation. Such matters are to be conducted in pursuance of and in compliance with the provisions of the charter of the foreign corporation, and the laws of the country where it was created; but in the management and method of its business affairs in California with the citizens and residents thereof, *in the sale or disposition or transfer of the shares of stock,* it must conform to the laws of California in relation to such matters, and is bound thereby....' " ' "].) Thus, although the locus of the malfeasance in this case (failure to monitor and to conduct due diligence) may have occurred in New York, California nonetheless has a strong interest in the enforcement of its laws as they relate to such conduct. California has a stronger interest than New York in maintaining a healthy

business climate in this state, which California can secure and safeguard by enforcing its securities laws. (*Diamond Multimedia Systems, Inc. v. Superior Court, supra,* 19 Cal.4th at pp. 1064-1065.)

We recognize the New York courts have an interest in adjudicating claims based upon the marketing and sale of securities and in resolution of the Bernard Madoff scandal in a consistent and fair manner by avoiding piecemeal litigation of the plentiful claims that have arisen out of the collapse of Madoff Securities. Although numerous actions involving Madoff "feeder funds" have been consolidated in New York in order to ensure that the proceedings are orderly and fair with respect to reimbursing the victims, New York's interest in obtaining a just and fair resolution of these cases will not be jeopardized by permitting this action involving California plaintiffs and California law to proceed in the state where such defendants marketed their products.

## DISPOSITION

The order of the superior court staying this action is reversed. Appellants are to recover their costs on appeal.

We concur: MALLANO, P.J., and CHANEY, J.

## Footnotes

1  A trust is not an entity distinct from its trustees, and is not capable of legal action on its own behalf. Instead, it is a fiduciary relationship with respect to property. (*Ziegler v. Nickel* (1998) 64 Cal.App.4th 545, 548.) Thus, although the complaint lists the "White Trust Dated May 3, 2002" as the party plaintiff, the caption should have referenced Edward L. White as the trustee of the White Trust as the plaintiff. We have changed the caption on this appeal to correct the clerical error. (Code Civ. Proc., § 475 [court may disregard any error or defect in pleadings or the proceedings that does not affect the substantial rights of the parties]; *Bemmerly v. Woodward* (1899) 124 Cal. 568, 576 [court may correct clerical mistake in caption at any time].)

2  All statutory references herein are to the Code of Civil Procedure unless otherwise noted.

3  Plaintiffs' amended complaint listed as defendants, in addition to those parties appearing as respondents, Robert Schulman, James V. Mitchell, Stephen Clayton, Barry Colvin, Mark D. Santero, Darren Johnston, and H. Catherine Chang.

4  Pursuant to the consolidation order, the *In re Tremont Group Holdings, Inc., Sec. Litig.* (S.D.N.Y.2009) 626 F.Supp.2d 1338 cases have been divided into three groups: (1) cases in which the primary claims are under the federal securities laws (the securities action), (2) cases in which the primary claims are based on state law (the state law action), and (3) cases in which the primary claims are based on state law and are asserted against insurance companies (the insurance action).

5  28 United States Code section 1407, subdivision (a) provides in relevant part: "(a) When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions. Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated: *Provided, however,* [t]hat the panel may separate any claim, cross-claim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded."

6  The Massachusetts federal court actions are (1) *The William Kretschmar Revocable Trust, et. al. v. Rye Select Broad Market Fund, L.P., et al.* (C.A. No. 1:09-10146) and (2) *Madelyn Haines, et. al. v. Massachusetts Mutual Life Insurance Co., et al.,* (C.A. No. 1:09-10182). (*Tremont Securities Litigation, supra,* 626 F.Supp.2d at pp. 1340-1341.)

7  The New York federal court actions are (1) *Arthur E. Lange, et al. v. Massachusetts Mutual Life Insurance Co., et al.* (C.A. No. 1:08-11117), (2) *Yvette Finkelstein, etc. v. Tremont Group Holding, Inc., et al.* (C.A. No. 1:08-11141), (3) *Richard Peshkin, etc. v.*

*Oppenheimer Acquisition Corp., et al.* (C.A. No. 1:08-11183), (4) *Arthur M. Brainson IRA R/O v. Rye Select Broad Market Fund L.P., et al.* (C.A. No. 1:08-11212), (5) *Group Defined Pension Plan & Trust v. Tremont Market Neutral Fund, L.P., et al.* (C.A. No. 1:08-11359), (6) *Chateau Fiduciare, S.A., etc. v. Argus International Life Bermuda Ltd., et al.* (C.A.1:09-557), (7) *Eileen S. Silvers v. Tremont Group Holdings, Inc., et al.* (C.A. No. 1:09-1111), (8) *John F. Keane, Jr. v. Tremont Group Holdings, Inc., et al.* (C.A. No. 1:09-1396), (9) *The Geoffrey Rabie Credit Shelter Trust, et al. v. Argus Group Holdings Ltd., et al.* (C.A. No. 1:09-1466), (10) *The Harriet Rutter Klein Revocable Trust v. Argus International Life Bermuda Ltd., et al.* (C.A. No. 1:09-2253), and (11) *The Matthew L. Klein Irrevocable Family Trust v. Argus International Life Bermuda Limited, et al.* (C.A. No. 1:09-2254). (*Tremont Securities Litigation, supra,* 626 F.Supp.2d at p. 1341.)

The instant case was not part of the order because it had been remanded to California state court. (*Tremont Securities Litigation, supra,* 626 F.Supp.2d at p. 1340, fn. 3.)

8   A "[t]ag-[a]long" action is "a civil action pending in a district court which involves common questions of fact with either (1) actions on a pending motion to transfer to create an MDL or (2) actions previously transferred to an existing MDL, and which the Panel would consider transferring under Section 1407." (Rules of Proc., Jud. Panel on Multidistrict Litigation, rule 1.1(h).)

9   *Pricket v. Massachusetts Holding LLC, et al.* (No. 09 CV 3137) and *The Lugano Trust, et al.* (No. 09 CV 6840).

10  *Family Swimmers, LP v. Rye Select Board Market Prime Fund L.P. et al.* (No. 1:09-10784) and *Lawrence J. Rothschild v. Rye Select Board Market XL Fund L.P., et al.* (No. 1:09-10858).

11  Those actions include (1) *2005 Tomchin Family Charitable Trust v. Tremont Partners, Inc.* (N.Y. Supreme Ct. No. 600332/09) (derivative action, stayed pending arbitration), (2) *Securion I, L.P. v. Rye Investment Management* (N.Y. Supreme Ct. No. 600741/09) (derivative action, stayed pending rulings on motions to dismiss in related actions), (3) *Wexler v. Tremont Partners, Inc., et al.* (N.Y. Supreme Ct. No. 101615/09) (consolidated with two other state court actions), (4) *Zutty, et al. v. Rye Select Board Market Fund L.P.* (N.Y. Supreme Ct. No. 113209/09) (stayed pending motions to dismiss in related proceedings, including, inter alia, the *Tremont Securities Litigation* ).

12  Defendants Prime Fund, Oppenheimer, Wolfgruber, Murphy, MassMutual, and MassMutual Life joined in the Tremont Defendants' motion. The MassMutual defendants' motion also set forth the same grounds as the Tremont defendants' motion for staying the plaintiffs' action.

13  Plaintiffs submitted separate oppositions to the Tremont defendants' motion and to the MassMutual defendants' motions.

14  The Partnership joined in the Tremont defendants' reply.

15  The other defendants, including the specially appearing defendants, joined in the Tremont defendants' reply.

16  The Tremont defendants filed a brief in which they make this argument and which respondents Prime Fund, Manzke, Hammond, Wolfgruber, Murphy, and Rollings join.

17  28 United States Code section 1387(a) provides, "Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."

18  28 United States Code section 1367(b) provides, "In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title [28 USCS § 1332], the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332 [28 USCS § 1332]."

19  Several of the cases pending in the MDL litigation do not assert any federal claims and have jurisdiction by virtue of 28 United States Code section 1387(a). (For example, *John F. Keane, Jr. v. Tremont Group Holdings, Inc., et al.* (C.A. No. 1:09-1396) asserts no federal claims.)

20  The Martin Act prohibits (a) Any fraud, deception, concealment, suppression, false pretense or fictitious or pretended purchase or sale; (b) Any promise or representation as to the future which is beyond reasonable expectation or unwarranted by existing circumstances; (c) Any representation or statement which is false, where the person who made such representation or statement: (i) knew the truth; or (ii) with reasonable effort could have known the truth; or (iii) made no reasonable effort to ascertain the truth; or (iv) did not have knowledge concerning the representation or statement made. (N.Y.Gen.Bus.Law, § 352-c(1).)

**White v. Manzke, Not Reported in Cal.Rptr.3d (2011)**

21  Under California's securities laws, in contrast to state common law claims, plaintiff need not show reliance on the defendant's deception or manipulation. (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1045-1046, fns. 10 & 11.) Liability for violations of Corporations Code section 25400 is imposed on any person who willfully participated in the transaction. California Corporations Code section 25500 provides a private right of action for violations of section 25400, and "extends liability to all persons affected by market manipulation without requiring reliance or privity." (*California Amplifier, Inc. v. RLI Ins. Co.* (2001) 94 Cal.App.4th 102, 109.)

22  Plaintiffs' argument that they are not subject to jurisdiction in New York does not factor into the forum non conveniens analysis, and they have cited no authority to support this assertion.

**End of Document**                                              © 2011 Thomson Reuters. No claim to original U.S. Government Works.