UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE TREMONT SECURITIES LAW, STATE    Master File No.
LAW AND INSURANCE LITIGATION    :    08 Civ. 11117 (TPG)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This Document Relates to:    :

INSURANCE ACTION, 09 Civ. 557 (TPG),    :
and specifically to:

   :

F. DANIEL PRICKETT,

   :    09 Civ. 3137 (TPG)

           Plaintiff,

   :    ECF CASE

      - against -    Electronically Filed

   :

NEW YORK LIFE INSURANCE COMPANY,
et al.,    :

          Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## THE TREMONT DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Defendants
  Tremont Group Holdings, Inc.,
  Tremont Partners, Inc.,
  Tremont (Bermuda) Limited,
  Tremont Capital Management, Inc. and
  Rye Investment Management

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

ALLEGATIONS OF THE COMPLAINT ............................................................ 2

ARGUMENT ....................................................................................................... 7

I.   PRICKETT LACKS STANDING TO ASSERT HIS CLAIMS OF UNJUST
     ENRICHMENT, BREACH OF FIDUCIARY DUTY AND AIDING AND
     ABETTING BREACH OF FIDUCIARY DUTY ........................................... 7

     A.   The Claims Are Derivative in Nature ................................................ 7

     B.   Prickett Has Not Satisfied the Demand Requirements Applicable to
          Derivative Claims ............................................................................. 9

II.  THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF ................. 9

     A.   The Complaint Fails To State a Claim of Fraud ............................... 10

     B.   The Complaint Fails To State a Claim of Negligent Misrepresentation ............... 13

     C.   The Complaint Fails To State a Claim of Unjust Enrichment ............... 14

     D.   The Complaint Fails To State a Claim of Breach of Fiduciary Duty ............... 14

     E.   The Complaint Fails To State Any Aiding and Abetting Claim ............... 14

          1.   The Complaint Fails To State a Claim of Aiding and Abetting
               Fraud ........................................................................................ 14

          2.   The Complaint Fails To State a Claim of Aiding and Abetting
               Breach of Fiduciary Duty ........................................................ 15

     F.   The Complaint Fails To State a Claim Under New York General Business
          Law § 349 ......................................................................................... 15

CONCLUSION ................................................................................................... 16

## **TABLE OF AUTHORITIES**

### **CASES**

American Financial International Group-Asia, L.L.C. v. Bennett,
    05 Civ. 8988, 2007 WL 1732427 (S.D.N.Y. June 14, 2007)...................................................10

In re Bayou Hedge Funds Investment Litigation,
    472 F. Supp. 2d 528 (S.D.N.Y. 2007)...................................................................................15

Feldman v. Cutaia,
    951 A.2d 727 (Del. 2008) .....................................................................................................8

Flynn v. Bachow,
    C.A. No. 15885, 1998 WL 671273 (Del. Ch. Sept. 18, 1998)............................................7, 9

In re Health Management Systems, Inc. Securities Litigation,
    97 Civ. 1865, 1998 WL 283286 (S.D.N.Y. June 1, 1998)......................................................10

Klig v. Deloitte LLP,
    C.A. No. 4993, 2011 WL 5925085 (Del. Ch. Nov. 21, 2011)...............................................15

Litman v. Prudential-Bache Properties, Inc.,
    611 A.2d 12 (Del. Ch. 1992)..................................................................................................8

In re Manulife Financial Corp. Securities Litigation,
    276 F.R.D. 87 (S.D.N.Y. 2011) .............................................................................................10

Marino v. Grupo Mundial Tenedora, S.A.,
    810 F. Supp. 2d 601 (S.D.N.Y. 2011)....................................................................................15

Merkin v. Gabriel Capital, L.P.,
    08 Civ. 10922, 2011 WL 4435873 (S.D.N.Y. Sept. 23, 2011)...............................................12

MLSMK Investments Co. v. JP Morgan Chase & Co.,
    737 F. Supp. 2d 137 (S.D.N.Y. 2010)....................................................................................13

Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A.,
    261 F.R.D. 13 (S.D.N.Y. 2009) .............................................................................................15

NECA-IBEW Pension Trust Fund v. Bank of America Corp.,
    10 Civ. 440 (LAK) (HBP), slip op. (S.D.N.Y. Feb. 9, 2012) ...............................................10

Newman v. Family Management Corp.,
    748 F. Supp. 2d 299 (S.D.N.Y. 2010).................................................................................8, 11

New York University v. Continental Insurance Co.,
    662 N.E.2d 763 (N.Y. 1995)............................................................................15

People v. Condor Pontiac, Cadillac, Buick & GMC Trucks, Inc.,
    No. 02-1020, 2003 WL 21649689 (N.Y. Sup. Ct., N.Y. County July 2, 2003) .....................11

Saltz v. First Frontier, LP,
    782 F. Supp. 2d 61 (S.D.N.Y. 2010)..........................................................7, 8, 9

Schulman v. Delaire,
    10 Civ. 3639, 2011 WL 672002 (S.D.N.Y. Feb. 22, 2011) .................................................12

Securities & Exchange Commission v. Cohmad Securities Corp.,
    09 Civ. 5680, 2010 WL 363844 (S.D.N.Y. Feb. 2, 2010)................................................10, 11

Small v. Lorillard Tobacco Co.,
    720 N.E.2d 892 (N.Y. 1999).........................................................................10

South Cherry Street, LLC v. Hennessee Group LLC,
    573 F.3d 98 (2d Cir. 2009)........................................................................11, 12

Stephenson v. Citco Group Ltd.,
    700 F. Supp. 2d 599 (S.D.N.Y. 2010).................................................................12

In re Tremont Securities Law, State Law & Insurance Litigation,
    703 F. Supp. 2d 362 (S.D.N.Y. 2010)..............................................................12, 13

U-H Acquisition Co. v. Barbo,
    C.A. No. 13,279, 1994 WL 34688 (Del. Ch. Jan. 31, 1994) ................................................14

Zutty v. Rye Select Broad Market Prime Fund, L.P.,
    33 Misc. 3d 1226(A) (table), 2011 WL 5962804 (N.Y. Sup. Ct., N.Y. County
    Apr. 15, 2011)................................................................8, 9, 11, 12, 13

## STATUTES

Del. Code Ann., tit. 6 § 17-1001 (West 2011)..............................................................9

Del. Code Ann., tit. 18 § 2932(a)(5) (West 2011) ........................................................3

## MISCELLANEOUS

Revenue Ruling 2003-92, 2003-33 I.R.B. 350 ............................................................3

John T. Adney & Joseph F. McKeever III, <u>Tax Treatment of Variable Contracts</u>, <u>in</u>
VARIABLE ANNUITIES AND VARIABLE LIFE INSURANCE REGULATION (Clifford E.
Kirsch ed. 2006) .......................................................................................................................3

Defendants Tremont Group Holdings, Inc. ("TGH"), Tremont Partners, Inc. ("TPI"), Tremont (Bermuda) Limited ("TBL"), Tremont Capital Management, Inc. ("TCM") and Rye Investment Management ("RIM" and, collectively, "Tremont" or the "Tremont Defendants") respectfully submit this memorandum of law in support of their motion for an Order, pursuant to Rules 9(b), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, dismissing the amended complaint in this action (the "Complaint") as against Tremont.

## PRELIMINARY STATEMENT

Plaintiff F. Daniel Prickett ("Prickett") allegedly holds a variable universal life insurance policy (the "Policy") issued by New York Life Insurance and Annuity Corporation ("NY Life" or the "Carrier"). Under the terms of the Policy, NY Life invested the Policy's excess cash value as directed by Prickett. One such investment included the purchase of limited partnership interests in Tremont Opportunity Fund III, L.P. ("TOF III" or the "Fund"), a hedge fund managed by defendant TPI.

TOF III is a hedge "fund of funds," *i.e.*, it invested the Fund's capital with a number of other hedge funds, including three managed by TPI (the "Rye Funds").[1] The Rye Funds, in turn, invested substantially all of their assets with Bernard Madoff. Madoff's theft of those assets allegedly caused a diminution in the value of NY Life's investment in TOF III, which purportedly caused a decline in the cash value of the Policy issued by NY Life to Prickett.

In the Complaint, Prickett seeks to hold Tremont responsible for Madoff's well-concealed fraud, alleging that it should have uncovered his wrongdoing before he publicly announced in December 2008 that he had been running a Ponzi scheme for approximately twenty years. The

---

[1]   The Rye Funds are: (i) Rye Select Broad Market Prime Fund, L.P.; (ii) Rye Select Broad Market XL Fund, L.P.; and (iii) Rye Select Broad Market Insurance Fund, L.P. ("Insurance LP"). The Complaint inaccurately identifies Insurance LP as Rye Select Broad Market Insurance Portfolio LDC ("Insurance LDC").

Complaint, however, states no claim for relief and therefore should be dismissed.  As shown below:

- Prickett lacks standing to assert his claims of unjust enrichment, breach of fiduciary duty aiding and abetting breach of fiduciary duty.  He lacks standing because the claims are derivative claims belonging to the Fund, and Prickett cannot satisfy the requirements for maintaining them in a derivative capacity.

- Prickett's fraud claim is legally defective because an essential element of the claim, *i.e.*, fraudulent intent, has not been adequately alleged in the Complaint.

- Prickett's other claims – negligent misrepresentation, unjust enrichment, breach of fiduciary duty, aiding and abetting fraud, aiding and abetting breach of fiduciary duty and violation of New York General Business Law § 349 – also are legally insufficient.

Accordingly, Tremont's motion to dismiss should be granted in all respects.

## ALLEGATIONS OF THE COMPLAINT

### The Plaintiff and His Policy

Prickett, a resident of South Carolina, purchased the Policy from NY Life on May 12, 2003.  (Compl. ¶¶ 2, 17, 34.)  His Policy "enjoys special tax advantages under the United States Internal Revenue Code" and allows Prickett "to build a cash value that can be invested in a choice of separate accounts[.]"  (Id. ¶ 35.)  The cash value "earn[s] investment returns without incurring current income tax[.]"  (Id.)

### The Role of NY Life

NY Life determined "[t]he number and type of investment choices" to be made available to its policyholders in its separate accounts.  (Compl. ¶ 35; see also id. ¶¶ 40, 41, 48, 51, 54-56, 196, 198.)  The investment choices included TOF III, a fund of funds that allocated its investment capital among a number of different hedge funds, including the Rye Funds.  In May 2004, Prickett directed NY Life to allocate a portion of the cash value of the Policy toward the purchase of limited partnership interests ("Interests") in TOF III.  (Id. ¶¶ 2, 34, 38.)  As directed,

2

NY Life purchased Interests in its own name through a separate account it created for that purpose. (See, e.g., id. ¶¶ 45-56.)

NY Life became the exclusive owner of Interests both to comply with the requirements of applicable state insurance law,[2] and to enable policyholders to receive favorable tax treatment, thereby making its policies more attractive to potential customers. In that connection, NY Life's policies were carefully structured to enable policyholders to defer payment of federal income tax on investment gains such that "increments in the cash value of a contract . . . – the 'inside buildup' – are generally not taxable until distributed from the contract."[3] Policyholders cannot qualify for this favorable tax treatment, however, unless the terms of their policies strictly adhere to regulations established by the IRS.

Generally, to obtain favorable tax treatment, "the separate account assets underlying the contract *must be considered the assets of the life insurance company that issues the contract and not the property of the policyholder*. This rule is often expressed as a requirement that the owner of the contract not possess 'investor control' over the assets underlying the contract."[4] In that connection, regulations and revenue rulings promulgated by the IRS require policyholders to relinquish control of the investment to the insurance carrier to defer tax liability on current gains achieved through the carrier's investments. See, e.g., Rev. Rul. 2003-92, 2003-33 I.R.B. 350.

---

[2]    The Delaware Insurance Code is applicable here and provides, in relevant part, that "[a]mounts allocated to a separate account . . . shall be owned by the insurer and the insurer shall not be, nor hold itself out to be, a trustee with respect to such amounts." Del. Code Ann., tit. 18 § 2932(a)(5) (West 2011).

[3]    John T. Adney & Joseph F. McKeever III, Tax Treatment of Variable Contracts, in VARIABLE ANNUITIES AND VARIABLE LIFE INSURANCE REGULATION, § 4:3.1[A](1) (Clifford E. Kirsch ed. 2006); see also id. § 4:3.1[B](1).

[4]    Adney & McKeever, supra, n.3, § 4:3.2[B] (emphasis added).

And, to comply with those regulations and defer any federal income tax liability, Prickett agreed

to relinquish such control to NY Life.  (See, e.g., Compl. ¶¶ 54-56.)

**Tremont, TOF III and the Rye Funds**

Defendant TPI is the general partner of TOF III and two Rye Funds in which TOF III

invested.  (Compl. ¶¶ 22, 25-27.)  Defendant TGH is the parent company of defendants TPI and

TBL.[5]  (Id. ¶¶ 19-22.)  Defendants TCM and RIM are divisions of TGH.  (Id. ¶¶ 19, 23.)

**The Private Placement Memorandum and**
**Its Prohibition Against Communications Between TPI and Policyholders**

Prior to purchasing Interests in TOF III, NY Life received offering materials which

emphasized in no uncertain terms that only insurance carriers, such as NY Life, would be

permitted to invest in the Fund and, consequently, the Fund would not accept subscriptions for

limited partnership interests from policyholders, such as Prickett.  For example, as disclosed in

TOF III's private placement memorandum ("PPM"):[6]  "**It should be emphasized that the**

**[Insurance] Companies, and not the owners of Contracts,[[7]] will be the Limited Partners in**

**the Partnership.**"[8]

In further underscoring this point, the PPM disclosed that neither Tremont nor TOF III

would owe any duties to policyholders who directed NY Life to purchase Interests.  In the same

---

[5]   The Complaint erroneously alleges that TOF III invested a portion of its capital with Insurance LDC,
an offshore fund managed by defendant TBL.  (Compl. ¶¶ 20, 28.)  TOF III made no such investment,
and TBL had no involvement whatsoever with any transaction or occurrence alleged in the Complaint.

[6]   (See, e.g., American Masters Opportunity Insurance Fund, L.P. Am. and Restated Confidential
Private Placement Memorandum ("TOF III PPM," attached to the accompanying transmittal
Declaration of Jason C. Vigna in support of the Tremont Defendants' motion to dismiss the amended
complaint ("Trans. Decl.") as Exhibit A) at overleaf ("The Interests described herein are currently
being offered only to *insurance company investors (the 'Companies')*[.]" (emphasis added)).)  TOF III
formerly was known as American Masters Opportunity Insurance Fund, L.P.  (Compl. ¶ 25.)

[7]   In the PPM, policyholders such as Prickett are defined as "Contract Owners" and "Contract Persons."

[8]   (TOF III PPM (Trans. Decl. Ex. A) at 35 (emphasis in original).)

vein, it also admonished that there would be *absolutely no communication* between Tremont and policyholders such as Prickett:

> In this regard, Contract Owners will not have any right to require the General Partner [TPI] (or any Manager) to acquire or dispose of any particular asset, to make, fund or allocate funds to any investment or to incur or pay any particular liability of a Portfolio.  There will be no prearranged plan between the General Partner (or any Manager) and any Contract Owner to invest any amounts in any particular asset or subject to any particular agreement.  The General Partner (and any Manager) will not discuss with, directly or indirectly consult with or receive, require or rely upon the advice of any person which the General Partner (or Manager) knows or should know is a Contract Owner, beneficiary of a Contract or fiduciary or beneficiary of a trust that is a Contract Owner with regard to management of any Portfolio assets.

(TOF III PPM (Trans. Decl. Ex. A) at 4.)

**The Limited Partnership Agreement**

The Fund's limited partnership agreement ("LPA") governs the rights and obligations of the Fund's general partner, TPI, and its limited partners.  In that connection, the LPA specifies – and thereby limits – the duties owed by TPI to the Fund and its partners, including NY Life. (See Tremont Opportunity Fund III, L.P. Second Am. and Restated Ltd. P'ship Agreement ("TOF III LPA," attached to the Trans. Decl. as Exhibit B) § 3.04(a) ("the General Partner and its Affiliates *shall not be obligated* to do or perform any act or thing in connection with the business of the Partnership not expressly set forth herein" (emphasis added)).)

The LPA acknowledges that certain of the Fund's limited partners might "hold their interests in the Partnership in separate accounts, which interests are intended to serve as an investment option under certain variable life insurance or annuity contracts (the 'Contracts') to be issued by such Limited Partners to the holders of such Contracts ('Contract Owners')."  (TOF III LPA (Trans. Decl. Ex. B) § 1.04(a) (italics removed).)  As to those limited partners, the LPA bars Tremont "from contacting directly or indirectly or accepting any communications from any [Contract Owner or its agents or representatives] concerning the assets held in the insurance

company's separate accounts."  (Id. § 3.08(k).)  In the same vein, the LPA provides that neither

Tremont nor TOF III owes any duties to policyholders as a result of NY Life's purchase of

Interests.[9]

## Madoff Admits Misleading Tremont and Other Sophisticated Investors

TOF III allocated approximately 22 percent of its capital to the Rye Funds, which directly

or indirectly invested substantially all of their assets with Madoff.  (Compl. ¶¶ 39, 94.)  On

December 11, 2008, Madoff publicly admitted that his broker-dealer firm, Bernard L. Madoff

Investment Securities LLC (the vehicle he used to invest the Rye Funds' assets), had long been

operated as a Ponzi scheme.  (Id. ¶¶ 1, 4, 5, 80, 93, 94.)  According to the Complaint, prior to

this confession, a few investors purportedly harbored "concerns" that Madoff's business was "not

legitimate."  (Id. ¶¶ 6, 7, 79.)  The Complaint does not allege, however, that Tremont had ever

heard of those concerns or knew or suspected Madoff was running a Ponzi scheme.

## The Complaint in this Action

The gravamen of the Complaint is that Tremont failed to adequately monitor Madoff and

misrepresented its efforts to confirm that he invested the assets of the Rye Funds as he

represented he would.  The Complaint alleges that this purported misconduct gives rise to claims

against Tremont of:  (i) common law fraud (Count I); (ii) negligent misrepresentation (Count II);

---

[9]    (See TOF III LPA (Trans. Decl. Ex. B) § 3.08(k) ("No person who owns a Contract, the beneficiaries
of any Contract or the grantor and beneficiaries of any trust which owns a Contract (any such parties
being referred to individually as a 'Contract Person') will have directly or indirectly any legally
binding right to require the Partnership to acquire or dispose of any particular asset or incur or pay
any particular liability.  There is not, nor will there be, any prearranged plan between or among the
General Partner, any affiliate of the General Partner, or the Partnership and any Contract Person to
invest any assets of the Partnership in any particular asset; and none of the General Partner, any
affiliate of the General Partner, or any investment adviser or subadviser, will consult with or receive,
require or rely upon the advice of any person which the General Partner, or such affiliate or adviser,
knows or should know is a Contract Person, with regard to the management of the assets of the
Partnership." (italics removed)).)

(iii) unjust enrichment (Count III); (iv) breach of fiduciary duty (Count IV); (v) aiding and abetting fraud and breach of fiduciary duty (Count V); and (vi) violation of New York General Business Law § 349 (Count VIII).

## ARGUMENT

**I.    PRICKETT LACKS STANDING TO ASSERT HIS CLAIMS OF UNJUST ENRICHMENT, BREACH OF FIDUCIARY DUTY AND AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**

The unjust enrichment, breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims alleged in Counts III, IV and V of the Complaint, respectively, are purely derivative in nature.  They therefore may not be asserted directly by Fund investors in their individual capacities on their own behalf.  Rather, they only may be maintained, if at all, either by:  (a) TOF III itself on its own behalf; or (b) a Fund investor in a derivative capacity on behalf of TOF III.  See, e.g., Saltz v. First Frontier, LP, 782 F. Supp. 2d 61, 79 (S.D.N.Y. 2010) (dismissing for lack of standing derivative claims improperly asserted directly, holding, "[t]hese claims may only be brought, if at all, derivatively").  It necessarily follows, *a fortiori*, that Prickett not only lacks standing to assert these claims directly for his own benefit, he also cannot assert them derivatively on behalf of the Fund because he never invested in TOF III and is, at most, a customer of a Fund investor (NY Life).  See Flynn v. Bachow, C.A. No. 15885, 1998 WL 671273, at *3-4 (Del. Ch. Sept. 18, 1998) (standing to bring a derivative suit on behalf of a limited partnership is limited to plaintiffs who were partners both at the time they bring the action and at the time of the transaction(s) at issue).

### A.    The Claims Are Derivative in Nature

The test for determining whether a claim is derivative or direct under Delaware law has

been summarized by the Delaware Supreme Court as follows:[10]

> Where all of a corporation's stockholders are harmed and would recover *pro rata* in proportion with their ownership of the corporation's stock solely because they are stockholders, then the claim is derivative in nature.  The mere fact that the alleged harm is ultimately suffered by, or the recovery would ultimately inure to the benefit of, the stockholders does not make a claim direct . . . .  In order to state a direct claim, the plaintiff must have suffered some individualized harm not suffered by all of the stockholders at large.

Feldman v. Cutaia, 951 A.2d 727, 733 (Del. 2008).

In this case, Prickett's claims of unjust enrichment, breach of fiduciary duty and aiding and abetting breach of fiduciary duty are all derivative claims because they all are based on alleged injuries suffered directly by TOF III and only indirectly by Fund investors such as NY Life – namely, the loss of the Fund assets invested indirectly with Madoff through the Rye Funds, and the payment of allegedly unjustified management fees to TPI by TOF III and the Rye Funds (Compl. ¶¶ 1, 3, 6, 11, 39, 42, 43, 64, 72, 73, 76, 77, 98, 102, 104, 179, 181-84, 189, 191).  See Feldman, 951 A.2d at 733; Saltz, 782 F. Supp. 2d at 79 ("The diminution in the value of partnership interests clearly is not a direct injury, because '[t]he diminution in the value of their interests flows from the damage inflicted directly on the Partnership.'" (citation omitted)).[11] Because Prickett purports to assert those claims in a direct – rather than a derivative – capacity, they should be dismissed.  See, e.g., Saltz, 782 F. Supp. 2d at 79-80 & n.17.

---

[10]  Because TOF III is a limited partnership organized under the laws of Delaware (Compl. ¶ 25), Delaware law governs the determination of whether Prickett's claims are derivative or direct.  See Saltz, 782 F. Supp. 2d at 77-78; see also Zutty v. Rye Select Broad Mkt. Prime Fund, L.P., 33 Misc. 3d 1226(A) (table), 2011 WL 5962804, at *5-9 (N.Y. Sup. Ct., N.Y. County Apr. 15, 2011).

[11]  See also Litman v. Prudential-Bache Props., Inc., 611 A.2d 12, 15-16 (Del. Ch. 1992) (finding allegations that "general partners . . . inadequately investigat[ed] and monitor[ed] investments" to be derivative); Newman v. Family Mgmt. Corp., 748 F. Supp. 2d 299, 315 (S.D.N.Y. 2010) ("'A claim for deficient management or administration of a fund is 'a paradigmatic derivative claim.'" (citations omitted)).

### B.     Prickett Has Not Satisfied the Demand
   Requirements Applicable to Derivative Claims

Had Prickett attempted to properly assert his derivative claims in a derivative capacity on behalf of the Fund, the claims still would be subject to dismissal for lack of standing.  Indeed, because Prickett is not and never was a limited partner of the Fund, he lacks standing to assert – under any circumstances – derivative claims on the Fund's behalf.  See Flynn, 1998 WL 671273, at *3-4.  For this reason alone, the claims should be dismissed.

Further, even limited partners lack standing to assert derivative claims on behalf of the partnership unless they "(1) first make a pre-suit demand on the company's directors or general partner to redress the defendants' alleged wrongdoing; or (2) adequately allege with particularity in their complaint facts sufficient to show that pre-suit demand is excused as futile."  Zutty v. Rye Select Broad Mkt. Prime Fund, L.P., 33 Misc. 3d 1226(A) (table), 2011 WL 5962804, at *6 (N.Y. Sup. Ct., N.Y. County Apr. 15, 2011) (applying Delaware law and dismissing claims against Tremont); see also Del. Code Ann., tit. 6 § 17-1001 (West 2011).  Here, the Complaint nowhere alleges that Prickett or NY Life made a pre-suit demand on TPI or that such demand would have been futile.  Thus, even if Prickett were a limited partner of TOF III, his failure to satisfy the applicable demand requirements would provide a separate and independent basis for dismissing the derivative claims alleged in Counts III, IV and V of the Complaint.  See Saltz, 782 F. Supp. 2d at 80-82 (dismissing derivative claims under Delaware law); see also Zutty, 2011 WL 5962804, at *6 (dismissing derivative claims against Tremont).

## II.     THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF

Even if Prickett could establish standing to sue on behalf of the Fund, *both* his direct *and* his derivative claims still should be dismissed on the ground they fail to state a claim for relief.

### A.      The Complaint Fails To State a Claim of Fraud

The elements of a fraud claim are:  (i) a misrepresentation of material fact; (ii) falsity of the representation; (iii) scienter; (iv) plaintiff's reasonable reliance on the alleged misrepresentation; and (v) injury resulting from the alleged reliance.  See, e.g., Small v. Lorillard Tobacco Co., 720 N.E.2d 892, 898 (N.Y. 1999).  These elements must be alleged with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.  See, e.g., Am. Fin. Int'l Grp.-Asia, L.L.C. v. Bennett, 05 Civ. 8988, 2007 WL 1732427, at *6 (S.D.N.Y. June 14, 2007).

In the Complaint, Prickett alleges that Tremont misrepresented the due diligence it performed on Madoff and the investments he made on behalf of the Rye Funds.  (Compl. ¶¶ 3, 8, 9, 43, 63, 64, 96, 164.)  At a minimum, these allegations fail to state a claim of fraud because the Complaint alleges no facts sufficient to establish scienter, an essential element of the claim.  By itself, this pleading deficiency warrants dismissal of plaintiff's fraud claim.[12]

---

[12]   In addition, the Complaint fails to allege facts sufficient to show that Tremont's purported representations that it conducted due diligence were false.  The Complaint's assertions of falsity are based largely on conclusory allegations that purport to paraphrase Tremont's representations, followed by the conclusory allegation that the representations were false.  (E.g., Compl. ¶ 72 ("despite pledging to conduct thorough due diligence, . . . [Tremont] failed to perform any due diligence").)  This pleading technique is inadequate.  Indeed, the "conclusory allegation that the opposite of [an alleged misrepresentation] is true, without further elaboration, is insufficient" to state a claim of fraud.  In re Health Mgmt. Sys., Inc. Sec. Litig., 97 Civ. 1865, 1998 WL 283286, at *5 (S.D.N.Y. June 1, 1998).  The Complaint fares no better with its attempt to show that Tremont conducted little or no due diligence by alleging, in essence, that Tremont would have uncovered Madoff's fraud had it actually performed due diligence.  (Compl. ¶¶ 10, 98.)  This is nothing more than an allegation of fraud by hindsight, which fails to state a claim for fraud.  See, e.g., In re Manulife Fin. Corp. Sec. Litig., 276 F.R.D. 87, 99 (S.D.N.Y. 2011); see also NECA-IBEW Pension Trust Fund v. Bank of Am. Corp., 10 Civ. 440 (LAK) (HBP), slip op. at 63 (S.D.N.Y. Feb. 9, 2012) (Pitman, M.J.) ("the fact that a due diligence investigation turned out to reach results that ultimately proved to be incorrect does not mean that a statement by a company that it performed extensive due diligence was false at the time it was made") (attached to Trans. Decl. as Exhibit C); SEC v. Cohmad Sec. Corp., 09 Civ. 5680, 2010 WL 363844, at *4 (S.D.N.Y. Feb. 2, 2010) ("That Madoff's secrecy warned defendants of fraud amounts to an argument of 'fraud by hindsight[.]'" (citation omitted)).

Scienter, as an element of fraud, means an actual "'intent to deceive, manipulate, or defraud.'"  People v. Condor Pontiac, Cadillac, Buick & GMC Trucks, Inc., No. 02-1020, 2003 WL 21649689, at *5 (N.Y. Sup. Ct., N.Y. County July 2, 2003) (quoting Black's Law Dictionary 1347 (7th ed. 1999)).  A party that "conducts normal business activities while ignorant that those activities are furthering a fraud [of a third party] is not liable for . . . fraud."  SEC v. Cohmad Sec. Corp., 09 Civ. 5680, 2010 WL 363844, at *1 (S.D.N.Y. Feb. 2, 2010) (dismissing fraud claims against party that referred clients to Madoff).

The Complaint attempts to plead scienter in part by suggesting that Tremont purportedly had a motive for committing fraud – namely, a desire to earn fees as manager of TOF III and the Rye Funds.  (Compl. ¶¶ 6, 42, 73.)  Such allegations, however, are "legally insufficient to establish scienter because the 'desire for higher compensation . . . is found in virtually all commercial transactions, making it an ill-suited motive from which to draw an inference of intent to defraud.'"  Zutty, 2011 WL 5962804, at *11 (citation omitted).

The Complaint also attempts to show the requisite "'state of mind *approximating actual intent* [to defraud], and *not merely a heightened form of negligence,*'"  South Cherry St., LLC v. Hennessee Grp. LLC, 573 F.3d 98, 109 (2d Cir. 2009) (emphasis in original) (citation omitted), by alleging that Tremont either was aware of "red flags" indicative of Madoff's fraud, or would have uncovered those flags had it "performed appropriate due diligence."  (E.g., Compl. ¶¶ 6, 8, 77; see also id. ¶¶ 9, 64, 78, 79, 82, 95-98.)[13]  But scienter cannot be established merely by

---

[13]   Prickett also attempts to plead scienter by suggesting that Tremont must have known of Madoff's fraud because certain other investment professionals allegedly "publicly express[ed] skepticism regarding the legitimacy of Madoff's operations."  (Compl. ¶ 122; see also id. ¶¶ 6, 7, 79, 127, 129.)  This allegation also is insufficient to show that Tremont acted with fraudulent intent because "[f]or twenty years, Madoff operated this fraud without being discovered and with only a handful of investors withdrawing their funds as a result of their suspicions.  The actions of the minority cannot support an inference of intent to defraud as to the numerous other investors who were still in the dark."  Newman, 748 F. Supp. 2d at 311.

alleging, as Prickett does here, that a defendant failed to uncover or heed "red flags" that, if investigated, allegedly could or would have revealed wrongdoing.  See South Cherry St., 573 F.3d at 112 (allegations that the defendant "'would' have learned the truth . . . if [it] had performed the 'due diligence' it promised" insufficient to show scienter).  Indeed, courts in this District have "'routinely' rejected the argument that such irregularities in Madoff's investment business were red flags that should have put investment professionals on notice of the fraud." Schulman v. Delaire, 10 Civ. 3639, 2011 WL 672002, at *3-4 (S.D.N.Y. Feb. 22, 2011) (citation omitted).  Given that "Madoff's fraud went undetected for two decades," the "more compelling inference as to why" Tremont (among numerous others) failed to uncover it is that Madoff was highly "proficien[t] in covering up his scheme and eluding the SEC and other professionals."  In re Tremont Securities Law, State Law and Insurance Litig., 703 F. Supp. 2d 362, 371 (S.D.N.Y. 2010) (Griesa, J.); accord, e.g., Merkin v. Gabriel Capital, L.P., 08 Civ. 10922, 2011 WL 4435873, at *9 (S.D.N.Y. Sept. 23, 2011) ("[A]llegations that managers of funds that invested with Madoff failed to heed red flags d[o] not support a finding of scienter.") (to be published in F. Supp. 2d).  (See also the brief filed by Tremont in support of its motion to dismiss the amended complaint in the related Cummins case (the "Cummins Brief")[14] at 10-11 and cases cited therein.)

Prickett's conclusory allegations that Tremont had knowledge of the red flags mentioned in the Complaint also are insufficient.  (See Compl. ¶¶ 6, 8, 95.)  To adequately plead scienter, the Complaint must allege facts to show that the red flags in question both came to the defendant's attention, see South Cherry St., 573 F.3d at 112-13; Stephenson v. Citco Group Ltd., 700 F. Supp. 2d 599, 622-23 (S.D.N.Y. 2010), and were "'so obvious[ly]'" indicative of wrongdoing "'that the defendant must have been aware'" of it and wished to further it.  Zutty,

---

[14]   Cummins Inc. v. New York Life Ins. Co., 10 Civ. 9252 (TPG) (ECF No. 23 Jan. 31, 2012).

2011 WL 5962804, at *12 (quoting <u>South Cherry St.</u>, 573 F.3d at 109, 112); <u>see also</u> <u>MLSMK</u>

<u>Invs. Co. v. JP Morgan Chase & Co.</u>, 737 F. Supp. 2d 137, 144 (S.D.N.Y. 2010) (finding

allegations of scienter insufficient because, "[w]hile it may be true that Defendants could have

connected the dots to determine that Madoff was committing fraud, Plaintiff offers no facts to

support the claim that they actually reached such a conclusion"), <u>aff'd in part</u>, 431 F. App'x 17

(2d Cir.), <u>aff'd</u>, 651 F.3d 268 (2d Cir. 2011).

Here, the Complaint alleges no facts sufficient to show that the "red flags" it identifies

were *both* known to Tremont *and* obvious indicators to the world at large that Madoff must have

been operating a Ponzi scheme.[15]   Consequently, scienter has not been adequately alleged and

the fraud claim in Count I of the Complaint should be dismissed as against Tremont.  <u>See, e.g.</u>,

<u>Zutty</u>, 2011 WL 5962804, at *12 (even if the complaint adequately alleged Tremont had

knowledge of purported "red flags," it "would still be defective because it also fails to explain

how one or more alleged red flags made it so obvious that Madoff was running a Ponzi scheme

that [Tremont] must have known about the scheme and wanted to further it").

**B.**     **The Complaint Fails To State a Claim of Negligent Misrepresentation**

As demonstrated in the Cummins Brief (at 12), the Complaint's failure to plead any

special relationship between Tremont and Prickett warrants dismissal of the negligent

misrepresentation claim alleged in Count II of the Complaint.

---

[15]   For example, one of the purported "red flags" alleged in the Complaint is a "detailed letter" Harry
Markopolos sent to the SEC in 1999 expressing concern about Madoff.  (Compl. ¶ 7(g); <u>see also</u> <u>id.</u>
¶¶ 84, 91.)  The Complaint, however, alleges no facts indicating that Tremont had access to the SEC's
mail, or that the SEC publicly disclosed the Markopolos letter.  <u>See</u> <u>In re Tremont</u>, 703 F. Supp. 2d at
371 (dismissing claim for securities fraud asserted against the Rye Funds' auditor).

### C.   The Complaint Fails To State a Claim of Unjust Enrichment

As shown in the Cummins Brief, Prickett's unjust enrichment claim is legally defective because:  (i) it is based on Tremont's receipt of management fees it was contractually entitled to receive under the LPAs of TOF III and the Rye Funds; and (ii) the fees were for services rendered by Tremont to those funds, *not* services it rendered to Prickett.  (See Cummins Brief at 13-14.)  Accordingly, Count III of the Complaint should be dismissed as against Tremont.

### D.   The Complaint Fails To State a Claim of Breach of Fiduciary Duty

The Complaint alleges no relationship – much less a relationship of trust or confidence – between Tremont and Prickett.[16]  The only "relationship" alleged in the Complaint is the contractual relationship between Prickett and NY Life pursuant to the terms of the Policy.  (See, e.g., Compl. ¶ 194.)  Consequently, as shown in the Cummins Brief (at 14-16), Count IV of the Complaint fails to state a claim of breach of fiduciary duty against Tremont.

### E.   The Complaint Fails To State Any Aiding and Abetting Claim

#### 1.   The Complaint Fails To State a Claim of Aiding and Abetting Fraud

Count V of the Complaint is styled as a claim for "aiding and abetting fraud and breaches of fiduciary duty."  To state a claim for aiding and abetting fraud, plaintiff must allege:  "(1) the existence of an underlying tort; (2) defendant's actual knowledge of the underlying tort; and (3) defendant's provision of substantial assistance in the commission of the underlying tort."  In re

---

[16]   In attempting to show that Tremont owed fiduciary duties to Prickett, the Complaint alleges that TPI, as the Fund's general partner, was responsible for "'selecting the Partnership's Managers, allocating assets among Managers and monitoring the Partnership's investments'" and "'managing the day-to-day administration and operation of the Partnership.'"  (Compl. ¶ 64 (citations omitted).)  These allegations are insufficient because to the extent Tremont had any such duties, it owed them solely to the Fund and its limited partners, *not* to Prickett, given that he never was a limited partner of TOF III.  See, e.g., U-H Acquisition Co. v. Barbo, C.A. No. 13,279, 1994 WL 34688, at *5 (Del. Ch. Jan. 31, 1994) (applying Delaware law and dismissing breach of fiduciary duty claim against general partners on ground that plaintiff, a non-limited partner, "could not be owed any fiduciary duty by the general partners").

14

Bayou Hedge Funds Inv. Litig., 472 F. Supp. 2d 528, 532 (S.D.N.Y. 2007).  Moreover, to

survive dismissal, the Complaint's allegations must satisfy the particularity requirements of Rule

9(b).  See, e.g., Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A., 261 F.R.D.

13, 23 (S.D.N.Y. 2009) (dismissing aiding and abetting fraud claim under Rule 9(b)), aff'd, 382

F. App'x 107 (2d Cir. 2010).  To the extent Count V of the Complaint purports to allege that

Tremont aided and abetted someone's fraud, it should be dismissed because, as shown above in

Point II(A) of this brief, the Complaint fails adequately to allege the requisite underlying tort, i.e.,

it fails to state a claim of fraud.

**2.    The Complaint Fails To State a Claim of
Aiding and Abetting Breach of Fiduciary Duty**

Count V of the Complaint also charges Tremont with aiding and abetting an alleged

breach of fiduciary duty purportedly committed by TOF III.  This branch of the claim also is

defective because the Complaint does not adequately allege, as it must, any underlying fiduciary

duty owed by the Fund to Prickett, much less a breach of any such duty.  See, e.g., Marino v.

Grupo Mundial Tenedora, S.A., 810 F. Supp. 2d 601, 613 (S.D.N.Y. 2011).[17]

**F.    The Complaint Fails To State a Claim
Under New York General Business Law § 349**

As shown in the Cummins Brief (at 16), New York General Business Law § 349 does not

apply to complex insurance products such as the Policy at issue in this case.  See also N.Y. Univ.

v. Cont'l Ins. Co., 662 N.E.2d 763, 770-71 (N.Y. 1995).  Consequently, Count VIII of the

Complaint should be dismissed.

---

[17]    Indeed, the Fund does not owe fiduciary duties even to its direct investors, such as NY Life.  See, e.g.,
Klig v. Deloitte LLP, C.A. No. 4993, 2011 WL 5925085, at *12 (Del. Ch. Nov. 21, 2011) (holding
that "partnership as an entity" owes partners no fiduciary duties).

15

## **CONCLUSION**

For the reasons stated, the Tremont Defendants' motion to dismiss should be granted in

all respects.

Dated:  New York, New York
        March 1, 2012

Respectfully submitted,

/s/ Seth M. Schwartz
Seth M. Schwartz (Seth.Schwartz@Skadden.com)
Jason C. Vigna (Jason.Vigna@Skadden.com)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Defendants
  Tremont Group Holdings, Inc.,
  Tremont Partners, Inc.,
  Tremont (Bermuda) Limited,
  Tremont Capital Management, Inc. and
  Rye Investment Management