UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE TREMONT SECURITIES LAW,
STATE LAW AND INSURANCE
LITIGATION

Master File No. 08 Civ. 11117(TPG)

_____

This Document Relates to:

ELENDOW FUND, LLC

10 Civ. 9061 (TPG)

        Plaintiff,

**Electronically Filed**

   v.

RYE SELECT BROAD MARKET XL FUND,
L.P., RYE INVESTMENT MANAGEMENT,
TREMONT CAPITAL MANAGEMENT INC.,
TREMONT GROUP HOLDINGS, INC,
TREMONT PARTNERS, INC.,
MASSACHUSETTS MUTUAL LIFE
INSURANCE CO., MASSMUTUAL
HOLDINGS LLC, OPPENHEIMER
ACQUISITION CORPORATION, RUPERT
ALLAN, JIM MITCHELL and ROBERT
SCHULMAN,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REPLY BRIEF IN SUPPORT OF THE MASSMUTUAL DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

**BINGHAM McCUTCHEN LLP**
399 Park Avenue
New York, NY 10022
Tel.: (212) 705-7000

*Attorneys for Defendant*
*Massachusetts Mutual Life Insurance Company*
*and MassMutual Holding LLC*

A/74851084.3

## <u>TABLE OF CONTENTS</u>

**Page(s)**

TABLE OF CONTENTS .............................................................................................. i

ARGUMENT ........................................................................................................... 1

A.   Elendow Fails to State a Claim against MassMutual for Control Person Liability.................................................................................................... 1

B.   Elendow Fails to State a Claim for Aiding and Abetting Breach of Fiduciary Duty. ....................................................................................... 5

1.   Elendow Fails to Allege That MassMutual Had Actual Knowledge of any Wrongdoing. ......................................................................... 5

2.   Elendow Fails to Allege that MassMutual Substantially Assisted any Alleged Wrongdoing. ............................................................... 7

3.   Elendow Lacks Standing to Bring a Derivative Aiding and Abetting Claim........................................................................................ 7

CONCLUSION ......................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aldridge v. AT & T Cross Corp.*,
284 F.3d 72 (1st Cir. 2002)...................................................................................3

*Anwar v. Fairfield Greenwich Ltd.*,
728 F. Supp. 2d 372 (S.D.N.Y. 2010)................................................................1, 2

*ATSI Comm., Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)....................................................................................1

*Boguslavsky v. Kaplan*,
159 F.3d 715 (2d Cir. 1998)..................................................................................1

*CLAL Finance Batucha Inv. Mgmt., Ltd. v. Perrigo Co.*,
No. 09 Civ. 2255 (TPG), 2010 WL 4177103 (S.D.N.Y. Oct. 7, 2010) ...................3

*CompuDyne Corp. v. Shane*,
453 F. Supp. 2d 807 (S.D.N.Y. 2003)...................................................................2

*DeBlasio v. Merrill Lynch & Co., Inc.*,
No. 07 Civ 318(RJS), 2009 WL 2242605 (S.D.N.Y. July 27, 2009) .......................5

*Dietrich v. Bauer*,
126 F. Supp. 2d 759 (S.D.N.Y. 2001)................................................................2, 4

*Feldman v. Cutaia*,
951 A.2d 727 (Del. 2008) .....................................................................................8

*Fraternity Fund v. Beacon Hill Asset Management, LLC*,
479 F. Supp. 2d 349 (S.D.N.Y. 2007)...................................................................6

*In re Alstom SA Secs. Litig.*,
406 F. Supp. 2d 433 (S.D.N.Y. 2005)...................................................................3

*In re Initial Public Offerings Sec. Litig.*,
241 F. Supp. 2d 281 (S.D.N.Y. 2003)...................................................................2

*In re MBIA, Inc., Sec. Litig.*,
700 F. Supp. 2d 566 (S.D.N.Y. 2010)................................................................1, 3

*In re Parmalat Sec. Litig.*,
375 F. Supp. 2d 278 (S.D.N.Y. 2005)...................................................................2

*In re Refco Inc. Sec. Litig.,*
 --- F.Supp.2d ----, Nos. 07 MDL 1902 (JSR), 08 Civ. 7416 (JSR), 2011 WL 1219265,
 *28 (S.D.N.Y. Mar. 30, 2011) ...........................................................................................6

*In re Worldcom, Inc. Sec. Litig.,*
 294 F. Supp. 2d 392 (SDNY 2003).................................................................................2

*Kalin v. Xanboo, Inc.,*
 526 F. Supp. 392 (S.D.N.Y. 2007) ..........................................................................1, 3, 4

*Kaufman v. Cohen,*
 307 A.D.2d 113, 760 N.Y.S.2d 157 (1st Dep't 2003) .........................................................5, 7

*Marino v. Grupo Mundial Tenedora, S.A.,*
 No. 10 Civ. 4126, 2011 WL 3837153 (S.D.N.Y. Aug. 30, 2011) ...........................................5

*Merrill Lynch Investment Managers v. Optibase, Ltd.,*
 337 F.3d 125 (2d Cir. 2003).............................................................................................2

*MLSMK Inv. Co. v. JP Morgan Chase & Co.,*
 No. 10–3040–cv, 2011 WL 2176152 (2d Cir. June 6, 2011)..................................................5

*Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A.,*
 No. 1:08-CV-01720 (LAP), 2009 WL 860635 (S.D.N.Y. Mar. 31, 2009)...............................7

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of America Sec., LLC,*
 446 F. Supp. 2d 163 (S.D.N.Y. 2006).............................................................................2

*Plumbers' & Pipefitters' Local No. 562 Supplemental Plan & Trust v. J.P. Morgan
   Acceptance Corp. I, et al.,*
 No. 08 CV 1713(ERK)(WDW), 2011 WL 6182121 (E.D.N.Y. Dec. 13, 2011)......................2

*Public Employees' Ret. Sys. of Miss. v. Merrill Lynch & Co.,*
 714 F. Supp. 2d 476 (S.D.N.Y. 2010)..............................................................................3

*Rosner v. Bank of China,*
 No. 06 CV 13562, 2008 WL 5416380 (S.D.N.Y. Dec. 18, 2008), *aff'd*, 349 Fed.
 App'x. 637 (2d Cir. 2009).................................................................................................6

*Ruiz v. Charles Schwab & Co., Inc.,*
 736 F. Supp. 461 (S.D.N.Y. 1990)...................................................................................2

*STMicroelectronics v. Credit Suisse Group,*
 775 F. Supp. 2d 525 (E.D.N.Y. 2011) ...........................................................................2

*United States v. Bestfoods,*
 524 U.S. 51 (1998)...........................................................................................................4

# ARGUMENT[1]

## A.   Elendow Fails to State a Claim against MassMutual for Control Person Liability.

It its Opposition to MassMutual's Motion to Dismiss the Amended Complaint ("Opp."), Elendow misstates the Second Circuit's pleading requirement for control person liability under Section 20(a).  Elendow incorrectly claims that it need not allege either (a) actual control over the primary violator and the transaction at issue or (b) culpable participation.  Opp. at 5-9.  This is not Second Circuit law.  "To establish a prima facie case of control person liability, a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud."  *ATSI Comm., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) (citing *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996)); *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998).

Although a few district court judges maintain otherwise, most courts consider it to be "settled" in the Second Circuit that a plaintiff is required to plead culpable participation.  *See, e.g., Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 425 (S.D.N.Y. 2010) ("[T]he question of whether a plaintiff must plead culpable participation to state a § 20(a) claim has, in this Court's view, largely been settled by the Second Circuit in numerous decisions … Hence, in order to plead control, a plaintiff must plead that the defendant had actual control over the primary violator and transaction at issue."); *In re MBIA, Inc., Sec. Litig.*, 700 F. Supp. 2d 566, 598 (S.D.N.Y. 2010) ("[T]he Court declines to depart from its earlier ruling in *Lapin* and continues to find that 'culpable participation' is a pleading requirement to state a § 20(a) claim in the Second Circuit, …and that such participation must be plead with particularity.") (citing *Lapin v. Goldman Sachs Group, Inc.*, 506 F. Supp. 2d 221, 246 (S.D.N.Y. 2006)); *Kalin v. Xanboo,*

---

[1] Capitalized terms herein have the same meaning as in the MassMutual Defendants' Memorandum of Law in Support of Its Motion to Dismiss the Amended Complaint.

*Inc.*, 526 F. Supp. 2d 392, 406 (S.D.N.Y. 2007) ("[T]he Court finds that the weight of Second Circuit precedent favors the view that a Plaintiff plead 'culpable participation' to state a section 20(a) claim, and that such participation must be plead with particularity.").[2]

---

[2] In its Opposition, Elendow cites cases that require a plaintiff to plead culpable participation. *See Anwar*, 728 F. Supp. 2d at 425; *CompuDyne Corp. v. Shane*, 453 F. Supp. 2d 807, 831 (S.D.N.Y. 2003) ("control person liability is properly pled by pleading control over the agent/primary violator while the agent is acting within the scope of their duties in connection with the illegal acts"); *Cf. Dietrich v. Bauer*, 126 F. Supp. 2d 759 (S.D.N.Y. 2001) (discussing the prima facie element of culpable participation in connection with motion for summary judgment); *Ruiz v. Charles Schwab & Co., Inc.*, 736 F. Supp. 461, 464 (S.D.N.Y. 1990) (same). *Plumbers' & Pipefitters' Local No. 562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I, et al.*, No. 08 CV 1713(ERK)(WDW), 2011 WL 6182121 (E.D.N.Y. Dec. 13, 2011), superseded by 2012 WL 601448, 20 (E.D.N.Y. Feb. 23, 2012), concerned control person liability under Section 15 of the Securities Act of 1933, not Section 20(a).

Other cases cited by Elendow are distinguishable on their facts. In these cases plaintiffs also pled sufficient facts to allege principal-agent liability. Agency liability requires more than stock ownership or shared officers: "'[a]gency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'" *Merrill Lynch Investment Managers v. Optibase, Ltd.*, 337 F.3d 125, 130 (2d Cir. 2003) (quoting Restatement (Second) of Agency § 1 (1958)). In *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278 (S.D.N.Y. 2005), cited by Elendow at pp. 6-7, plaintiffs separately asserted a claim for agency liability against a parent auditor company in addition to a control person claim arising out of an audit. The court explained that "plaintiffs have pleaded adequately that [the parent companies] were principals that controlled their respective agents, [subsidiaries]. They therefore state a sufficient control person claim." *Id.* at 310 (plaintiffs alleged facts from which it could be inferred that the auditor parent company "was in ultimate control of the audit" and also alleged that it "took actions in directing" the auditors which were sufficient to allege agency). In *STMicroelectronics v. Credit Suisse Group*, 775 F. Supp. 2d 525 (E.D.N.Y. 2011) the court not only found that the plaintiff had alleged a control person claim under Section 20(a), but also, based on the same allegations, allowed a fraud claim pursuant to Section 10(b) "to proceed on an actual agency theory" in the alternative. *Id.* at 539-41 (plaintiff alleged "with particularity" that parent played a substantial role in the legal and risk management affairs of subsidiary with respect to alleged misconduct and described the subsidiary as a "local office"). Both *Shane* and *Ruiz* concern plaintiffs' claim that a company is a control person for a broker or apparent broker, thus raising issues of principal-agent liability. *See, e.g., CompuDyne Corp.*, 453 F. Supp. 2d at 831; *Ruiz*, 736 F. Supp. at 464. Such cases are distinguishable because Elendow has not alleged (and cannot allege) that TPI or any Tremont entity was an agent of MassMutual.

Finally, other cases cited by Elendow pre-date the Second Circuit's decision in *ASTI Communications, Inc.* that reiterated that the prima facie elements of control person liability include culpable participation. *See In re Initial Public Offerings Sec. Litig.*, 241 F. Supp. 2d 281 (S.D.N.Y. 2003); *In re Worldcom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392 (SDNY 2003); *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of America Sec., LLC*, 446 F. Supp. 2d 163 (S.D.N.Y. 2006).

Accordingly, to state a claim for control person liability, Elendow must plead factual allegations sufficient to support a reasonable inference that MassMutual had both (1) "actual control over the primary violator" and (2) "actual control over the *transaction* in question." *In re Alstom SA Secs. Litig.*, 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2005) (emphasis in original). Further, Elendow must also plead the element of culpable participation in accordance with the heightened pleading standard of the Private Securities Litigation Reform Act ("PSLRA"). *See, e.g., CLAL Finance Batucha Inv. Mgmt., Ltd. v. Perrigo Co.*, No. 09 Civ. 2255 (TPG), 2010 WL 4177103 at *9 (S.D.N.Y. Oct. 7, 2010); *In re MBIA*, 700 F. Supp. 2d at 598. "[I]n order to withstand a motion to dismiss, a section 20(a) claim must allege, at a minimum, particularized facts of the controlling person's conscious misbehavior or recklessness." *Kalin*, 526 F. Supp. 2d at 406.

For the reasons stated in MassMutual's Opening Brief at 6-12, Elendow has not alleged that MassMutual had actual control of any alleged wrongdoer or transaction at issue or that MassMutual was a culpable participant. Elendow claims that MassMutual as a corporate great-grandparent of the Fund's general partner had the "power to control." *See, e.g.,* FAC ¶¶ 130, 131. General allegations of ownership coupled with conclusory statements about "control" do not allege control person liability. *Public Employees' Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 714 F. Supp. 2d 476, 485 (S.D.N.Y. 2010) ("The parent/subsidiary relationship is an insufficient basis from which to infer control … [because] a parent corporation and its subsidiar[ies] are regarded as legally distinct entities.") (internal quotation and citation omitted); *see also Aldridge v. AT & T Cross Corp.*, 284 F.3d 72, 85 (1st Cir. 2002) (allegation that defendants were controlling shareholders was not sufficient to state a Section 20(a) claim). Elendow alleges no facts that support an allegation that MassMutual participated in the transactions at issue, let alone demonstrate MassMutual's conscious misbehavior or recklessness.

Elendow uses the word "control" in a manner that is more akin to ownership -- a shareholder ultimately can "control" a corporation by voting for a board of directors which can pick new managers. "Control" in this sense does not equate to control over a particular

transaction or culpable participation.  If it did, shareholders would become generally liable for acts of corporate management.  Elendow cites no case for this surprising result.  Elendow does not (and cannot) allege facts that MassMutual in any way "controlled" the Fund's investment decisions.  As the United States Supreme Court explained, "it is hornbook law that the exercise of the 'control' which stock ownership gives to the stockholders ... will not create liability beyond the assets of the subsidiary.  That 'control' includes the election of directors, the making of by-laws ... and the doing of all other acts incident to the legal status of stockholders.  Nor will a duplication of some or all of the directors or executive officers be fatal."  *United States v. Bestfoods*, 524 U.S. 51, 61-62 (1998) (internal quotations and citations omitted).

In its Opposition, Elendow quotes *Kalin* to support its incorrect argument that merely alleging a parent-subsidiary relationship is sufficient for control person liability.[3]  *See* Opp. at 6. Not so.  In *Kalin*, the court concluded that plaintiff had alleged the element of "control" where the parent and subsidiary shared offices, had common officers and principals, and plaintiff had alleged *direct involvement* by the parent.  526 F. Supp. 2d at 405.  But these allegations -- which are not alleged with respect to MassMutual -- were insufficient to allege the element of "culpable participation":  "[t]he only fact that Plaintiff presents that might indicate [Defendant's] involvement in the September 1999 fraudulent conversation is that [one individual] is a principal at both [the parent and subsidiary]" and "this fact alone does not provide a sufficient factual basis to … survive this Motion to Dismiss." *See id.* at 407[4]

Elendow also argues that the "conclusion" by a New Jersey U.S. District Court that a plaintiff had adequately alleged that Peter Madoff, Bernie Madoff's *brother*, was a control

---

[3] Elendow incorrectly states that this quotation is from *Dietrich*, 126 F. Supp. 2d at 759.  *See* Opp. at 6.

[4] Elendow claims that "individuals employed by or affiliated with MassMutual and OAC controlled the board of directors of hedge funds that were advised by OppenheimerFunds and sub-advised by Tremont Partners."  Opp. at 4.  Elendow does not (and cannot allege) that these funds placed money with Madoff or that Elendow invested in them.  This allegation is irrelevant to Elendow's claims.

person "is equally applicable here."  Opp. at 9.  The court in *Lautenberg Foundation v. Madoff*, noted that "Peter Madoff worked at BMIS for almost 40 years.  He served as its senior managing director, director of trading, chief compliance officer and general counsel."  Civ. A. No. 09-816 (SRC), 2009 WL 2928913, *2 (D.N.J. Sept. 9, 2009) (alleging a host of allegations about Peter Madoff's role at BMIS).  Here, in stark contrast, MassMutual is the corporate great-grandparent of Tremont, and was not involved in Tremont's day-to-day operations.  The *Lautenberg Foundation*  decision simply provides no guidance with respect to any Elendow claim against MassMutual.

**B.**     **Elendow Fails to State a Claim for Aiding and Abetting Breach of Fiduciary Duty.**

"To state a claim for aiding and abetting breach of fiduciary duty under New York law, a plaintiff must show 'breach by a fiduciary of a duty owed to plaintiff; defendant's knowing participation in the breach; and damages.'"  *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, No. 10–cv–3040–cv, 2011 WL 2176152 at *19 (2d Cir. June 6, 2011) (quoting *SCS Comm., Inc. v. Herrick Co.*, 360 F.3d 329, 342 (2d Cir. 2004)).  "[B]ecause [Elendow's aiding and abetting claims] sound in fraud, these allegations must be pled with particularity under Rule 9(b)." *Marino v. Grupo Mundial Tenedora, S.A.,* No. 10 Civ. 4126, 2011 WL 3837153, *11 (S.D.N.Y. Aug. 30, 2011); *DeBlasio v. Merrill Lynch & Co., Inc.,* No. 07 Civ 318(RJS), 2009 WL 2242605, *10 (S.D.N.Y. July 27, 2009).

**1.**     **Elendow Fails to Allege That MassMutual Had Actual Knowledge of any Wrongdoing.**

Knowing participation requires actual knowledge of and substantial assistance in the underlying wrongdoing.  *Kaufman v. Cohen*, 307 A.D.2d 113, 125, 760 N.Y.S.2d 157, 169 (1st Dep't 2003).  Allegations that MassMutual "should have known" or even had "constructive knowledge" of an alleged wrongdoing are not sufficient to allege actual knowledge.  *See, e.g., id.*, 307 A.D.2d at 125 ("Constructive knowledge of the breach of fiduciary duty by another is legally insufficient to impose aiding and abetting liability.") (citing *Kolbeck v. LIT America*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir 1998)).

Elendow attempts to evade the "actual knowledge" requirement.  Opp. at 9-10.  Relying on *Fraternity Fund v. Beacon Hill Asset Management*, *LLC*, 479 F. Supp. 2d 349 (S.D.N.Y. 2007), Elendow claims that allegations of "conscious avoidance" or "willful blindness" suffice. *Fraternity Fund* represents a minority view, as numerous decisions in this district have recognized.  *See, e.g., Rosner v. Bank of China*, No. 06 CV 13562, 2008 WL 5416380, at *8 (S.D.N.Y. Dec. 18, 2008), *aff'd*, 349 Fed. App'x. 637 (2d Cir.  2009) ("*Fraternity Fund* is in the minority of cases in this District that have permitted an allegation of willful blindness to satisfy the scienter requirement of actual knowledge"); *In re Refco Inc. Sec. Litig.*, ., --- F.Supp.2d ----, Nos. 07 MDL 1902 (JSR), 08 Civ. 7416 (JSR), 2011 WL 1219265, *28 (S.D.N.Y. Mar. 30, 2011) (same).

Even if conscious avoidance were a permissible standard, Elendow has not pled facts to support that MassMutual was willfully blind to an alleged wrongdoing.  As in *Rosner*,  Elendow relies on "the suspicious nature" of circumstances that "are, at most, indicative of [defendant's] constructive knowledge."  2008 WL 5416380 at *8.  Elendow alleges that undifferentiated "Defendants" (including MassMutual) had unspecified "actual knowledge of or consciously ignored the [Tremont Defendants'] breaches of fiduciary duty" because "Defendants" had "awareness of highly suspicious facts and circumstances involving Madoff and BLMIS."  *See, e.g.*, FAC ¶ 164.  As the Second Circuit held in affirming dismissal in *Rosner*, allegations that a defendant was aware of suspicious circumstances do not to state an aiding and abetting claim:

> At bottom, the facts alleged in [plaintiff's] complaint only go so far as to suggest that [defendant] should have known that something was amiss with [the] transactions, [plaintiff's] conclusory statements on appeal that [defendant] *actually* knew something notwithstanding. As the district court held, such a showing is insufficient to support an aiding-and-abetting claim under New York law.

349 Fed. App'x. at 639 (citing cases) (emphasis in original).  Elendow's claim that alleged "red flags" should have put MassMutual on notice of the wrongdoing does not allege actual knowledge -- or even conscious avoidance.

**2.      Elendow Fails to Allege that MassMutual Substantially Assisted any Alleged Wrongdoing.**

Elendow also claims, incorrectly, that it has adequately pled substantial assistance: "[b]y virtue of their ownership interest and shared executives, Defendants had the ability to influence and direct the actions of the Tremont defendants."  Opp. at 11.  Elendow has not, as it must, alleged that MassMutual's actions "enable[d] the fraud to proceed" and "proximately caused the harm on which the primary liability is predicated."  *See Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, No. 1:08-CV-01720 (LAP), 2009 WL 860635, at *11 (S.D.N.Y. Mar. 31, 2009) (citations and internal quotations omitted).  MassMutual's status as corporate great-grandparent of Tremont and MassMutual having representation on the board of TGHI (but not the Fund's general partner, TPI) did not proximately cause Elendow to be injured and does not amount to substantial assistance.

Elendow argues in its Opposition that MassMutual aided and abetted an underlying breach by "failing to act when required to do so."  Opp. at 10 (*quoting Pension Comm.*, 446 F. Supp. 2d at 201).  Under New York law, MassMutual can only be held liable for a failure to act if it had an affirmative duty to Elendow.  "[T]he mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff."  *Kaufman*, 307 A.D.2d at 126, 760 N.Y.S.2d at 170 (citations and internal quotation marks omitted).  As the corporate great-grandparent of the Fund's general partner, MassMutual owed Elendow no duty (and Elendow does not allege otherwise).  The other case cited by Elendow in Opposition to MassMutual's motion to dismiss involves principal-agent liability. Elendow does not bring an principal-agency claim, and Elendow does not allege (and cannot allege) any facts that would plausibly support an agency relationship between MassMutual, the ultimate stock owner, and an affiliate.

**3.      Elendow Lacks Standing to Bring a Derivative Aiding and Abetting Claim.**

Elendow argues in its Opposition to the Tremont Defendants' Motion to Dismiss ("Tremont Opp.") (which Elendow incorporated by reference in its Opposition to MassMutual's

Motion, *see* Opp. at 11) that its breach of fiduciary duty claim against the Tremont Defendants is, in reality, a fraud in the inducement claim, not a mismanagement claim. Therefore, Elendow asserts, its claim for aiding and abetting breach of fiduciary duty is a direct, not derivative claim. MassMutual does not dispute that, as a general matter, claims for fraud in the inducement may be brought directly. Elendow's amended complaint (which separately alleges claims for fraud and negligent misrepresentation against the Tremont Defendants), however, alleges that the actions of the Tremont Defendants "constituted an intentional dereliction of their duties." FAC ¶ 156. As addressed in the Tremont Defendants' reply brief, which MassMutual refers to, such claims concern alleged mismanagement and can only be brought on behalf of the Fund, and are derivative. *See, e.g., Feldman v. Cutaia*, 951 A.2d 727, 733 (Del. 2008).

## CONCLUSION

For these reasons and those in MassMutual's opening brief, Massachusetts Mutual Life Insurance Company and MassMutual Holding LLC respectfully move that this Court dismiss the claims against them with prejudice.

Dated: April 20, 2012

BINGHAM McCUTCHEN LLP

s/ Carol E. Head
Kenneth I. Schacter
399 Park Avenue
New York, NY 10022
Tel.: (212) 705-7000
kenneth.schacter@bingham.com

Joseph L. Kociubes*
joseph.kociubes@bingham.com
Carol E. Head*
carol.head@bingham.com
One Federal Street
Boston, MA 02110
Tel.: (617) 951-8000
*admitted pro hac vice

*Attorneys for Defendant Massachusetts Mutual Life Insurance Company and MassMutual Holding LLC*

A/74851084.3                                    8

9