PILLSBURY WINTHROP SHAW PITTMAN LLP
Maria T. Galeno
Greg T. Lembrich
1540 Broadway
New York, NY 10036-4039
Tel.: (212) 858-1000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | Master Docket No. 08-Civ-11117 (TPG) |
| F. DANIEL PRICKETT,<br><br>        Plaintiff,<br><br>    - against -<br><br>NEW YORK LIFE INSURANCE COMPANY, et al.,<br><br>        Defendants. | Civil Action No. 1:09-03137 (TPG) |

**REPLY MEMORANDUM OF LAW OF DEFENDANTS NEW YORK LIFE
INSURANCE COMPANY AND NEW YORK LIFE INSURANCE
AND ANNUITY CORPORATION IN SUPPORT OF THEIR
MOTION TO DISMISS THE AMENDED COMPLAINT**

May 1, 2012

TABLE OF CONTENTS

I. PLAINTIFF'S FRAUD CLAIM FAILS ................................................................... 1
II. PLAINTIFF'S NEGLIGENT MISREPRESENTATION CLAIM SHOULD BE DISMISSED ............................................................................................................. 7
III. THE UNJUST ENRICHMENT CLAIM IS BARRED ............................................ 7
IV. PLAINTIFF CAN STATE NO CLAIM FOR BREACH OF FIDUCIARY DUTY ... 7
V. PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS ..................................... 8
VI. PLAINTIFF'S BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM MUST BE DISMISSED ............................................. 8
VII. PLAINTIFF CANNOT STATE A SECTION 349 CLAIM ...................................... 9
VIII. PLAINTIFF CANNOT PROVE LOSS CAUSATION AND IS NOT ENTITLED TO PUNITIVE DAMAGES .......................................................................................... 9
IX. LEAVE TO REPLEAD SHOULD BE DENIED .................................................... 9

# TABLE OF AUTHORITIES

## CASES

*In re Beacon Associates Litigation*,
    745 F. Supp. 2d 386 (S.D.N.Y. 2010) ............................................................................... 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................................... 4

*Beller v. William Penn Life Ins. Co. of N.Y.*,
    8 A.D.3d 310, 312 (2d Dep't 2004) ................................................................................. 9

*Brenkus v. Metropolitan Life Insurance Co.*,
    309 A.D.2d 1260 (4th Dep't 2003) .................................................................................. 9

*Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.*,
    17 N.Y.3d 269 (2011) .................................................................................................. 3, 6

*Dandong v. Pinnacle Performance Ltd.*,
    No. 10 Civ. 8086, 2011 WL 5170293 (S.D.N.Y. Oct. 31, 2011) .................................... 2

*Deerfield Committee Corp. v. Chesebrough-Pondsk Inc.*,
    68 N.Y.2d 954 (1986) ...................................................................................................... 6

*Foman v. Davis*,
    371 U.S. 178 (1962) .................................................................................................. 9-10

*Gaidon v. Guardian Life Insurance Co.*,
    96 N.Y.2d 201 (2001) ...................................................................................................... 9

*Goshen v. Mutual Life Insurance Co. of N.Y.*,
    98 N.Y.2d 314 (2002) ...................................................................................................... 9

*Hafez v. Avis Rent A Car System, Inc.*,
    2000 U.S. App. LEXIS 31032 (2d Cir. Nov. 29, 2000) ................................................. 10

*JM Vidal, Inc. v. Texdis USA, Inc.*,
    764 F. Supp. 2d 599 (S.D.N.Y. 2011) .............................................................................. 2

*In re J.P. Jeanneret Associates, Inc.*,
    769 F. Supp. 2d 340 (S.D.N.Y. 2011) .............................................................................. 5

*Joblove v. Barr Laboratoriess, Inc.*,
    466 F.3d 187 (2d Cir. 2006) .......................................................................................... 10

500999350v13

*Jones v. New York State Division of Military & Naval Affairs*,
    166 F.3d 45 (2d Cir. 1999)..................................................................................10

*Knight Sec. v Fiduciary Trust Co.*,
    5 A.D.3d 172 (1st Dep't 2004)................................................................................6

*McDonnell v. Allstate Life Ins. Co*
    04 C 3076, 2004 WL 2392169 (N.D. Ill. Oct. 25, 2004)....................................7-8

*In re Merkin*,
    No. 08 Civ. 10922, 2011 WL 4435873 (S.D.N.Y. Sept. 23, 2011)...................2, 5

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
    500 F.3d 171 (2d Cir. 2007).....................................................................................6

*MLSMK Investments Co. v. JP Morgan Chase & Co.*,
    737 F. Supp. 2d 137 (S.D.N.Y. 2010).....................................................................6

*Monter v. Massachusetts Mut. Life Ins. Co.*,
    12 A.D.3d 651 (2d Dep't 2004)...............................................................................9

*Newman v. Family Management Corp.*,
    748 F. Supp. 2d 299 (S.D.N.Y. 2010).....................................................................6

*S.E.C. v. Cohmad Sec. Corp.*,
    No. 09 Civ. 5680, 2010 WL 363844 (S.D.N.Y. Feb. 2, 2010)............................4, 6

*Saltz v. First Frontier, LP*,
    782 F. Supp. 2d 61 (S.D.N.Y. 2010).......................................................................5

*Schulman v. Delaire*,
    No. 10 Civ. 3639, 2011 WL 672002 (S.D.N.Y. Feb. 22, 2011).............................6

*Skibinsky v. State Farm Fire & Cas. Co.*,
    6 A.D.3d 975 (3d Dep't 2004).................................................................................9

*In re Tremont Sec. Law, State Law and Insurance Litigation*,
    703 F. Supp. 2d 362 (S.D.N.Y. 2010).....................................................................6

*Van Buskirk v. N.Y. Times Co.*,
    325 F.3d 87 (2d Cir. 2003)....................................................................................10

*Zutty v. Rye Select Broad Market Prime Fund, L.P.*,
    939 N.Y.S.2d 745 (N.Y. Sup. Ct. 2011).................................................................3

Plaintiff's Opposition ("Opp.") takes language out of context, misstates the law, cites authorities that are inapposite, and fails to respond to many of the arguments in NYLIAC's Opening Memorandum.[1] Plaintiff would have the Court ignore all the disclosures about NYLIAC's narrow role as a limited partner of TOF III, and instead wrongly believe that NYLIAC undertook an obligation to act as manager of the fund and plaintiff's personal investment advisor. For example, Plaintiff falsely argues:

- "New York Life represented it would (1) maintain exclusive control and authority over investment decisions in Plaintiff's Subaccount . . ." (Opp. at 1); and

- New York Life made "representations regarding how it would manage Plaintiff's investment in the Policy . . ." (Opp. at 2).

Yet, in reality, NYLIAC made no such representations and had no such control. *See* Ex. D (Tremont PPM) at iii, 28. As set forth below, Plaintiff has failed to salvage any of his claims and each should be dismissed. Because Plaintiff has already amended his complaint, this is the second fully-briefed motion to dismiss, and any further amendment would be futile, such dismissal should be with prejudice.

## I. PLAINTIFF'S FRAUD CLAIM FAILS

Plaintiff has failed to identify any specific misrepresentation by NYLIAC upon which Plaintiff reasonably relied in order to support a fraud claim. Plaintiff cites to NYLIAC's alleged monitoring of Plaintiff's investment portfolio (Opp. at 1, 5, 8, 14, 21, 23 n.8, quoting the NYLIAC PPM at 27). But the cited language states only that NYLIAC would "monitor the performance of each Portfolio [here TOF III] to review continuing compliance with [IRS] diversification and investor control requirements" (Ex. B at 27), not that NYLIAC would monitor the performance or investment decisions of the underlying funds (here the Rye Funds) in

---

[1] All abbreviations herein are the same as set forth in Defendants' Memorandum in Support of Motion to Dismiss the Amended Complaint (Dkt. 696) ("Opening Memo."). All references to lettered exhibits are to documents attached to the Declaration of Maria T. Galeno, dated February 28, 2012, or Second Declaration of Maria T. Galeno, dated May 1, 2012. All emphasis in quotations herein is in original unless otherwise noted.

which TOF III invested.

Plaintiff alleges that NYLIAC represented that it would "look through" TOF III to determine adequate diversification, Opp. at 1, 5, and makes repeated reference to NYLIAC's undertakings to ensure that his investments met "diversification requirements." Opp. at 1-2, 3, 5, 6, 8, 18 n.36, 21, 23. But the only reference to "looking though" investments in the NYLIAC PPM was to the fact that the IRS, **not NYLIAC**, would "look through" the fund to determine compliance with diversification requirements. *See* Ex. B at 25. Under such diversification requirements, TOF III could not invest over 55% of its assets in a single investment fund in order to qualify as life insurance for tax purposes. *Id.* at 25-26. Here, it is indisputable that TOF III complied with such diversification requirements, having, as Plaintiff acknowledges, only 22% of its assets invested in the three Rye Funds that invested with Madoff. *See* Compl. ¶ 3.

Such reliance by Plaintiff on language divorced from context and without regard for explicit cautionary language is precisely the type of "cherry pick[ing]" that Judge Batts soundly rejected in another Madoff-related case. *See In re Merkin*, No. 08 Civ. 10922, 2011 WL 4435873, at *7 (S.D.N.Y. Sept. 23, 2011). Further, Plaintiff's contention that the myriad disclaimers in the NYLIAC PPM were insufficient to warn Plaintiff of the risk of his investment (Opp. at 18-19) is belied by the very authority that he references. *See JM Vidal, Inc. v. Texdis USA, Inc.*, 764 F. Supp. 2d 599 (S.D.N.Y. 2011) (holding reliance unreasonable due to contractual disclaimer); *Dandong v. Pinnacle Performance Ltd.*, No. 10 Civ. 8086, 2011 WL 5170293, at *13 (S.D.N.Y. Oct. 31, 2011) (finding general disclaimers insufficient only "in the face of specific known risks which border on certainties").

Indeed, Plaintiff concedes that the NYLIAC PPM contained no misrepresentations when made. *See* Opp. at 13-16. Instead, Plaintiff argues that NYLIAC's statements "*became* false when [NYLIAC] failed to monitor and manage Plaintiff's investment in any way commensurate

2

with its representations." *Id.* at 14.[2] But statements cannot **become** false to support a fraud claim. They must be false when made. *Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011) (stating that "knowledge by the party who made the representation that it was false when made" is among the "basic elements of fraud" under New York law).[3]

Unable to establish that NYLIAC made any misrepresentations, Plaintiff claims that he relied on the Tremont PPM and LPA in deciding to invest funds in TOF III and seeks to attribute statements in those documents to NYLIAC (Opp. at 3, 12, 15). But the Tremont PPM and LPA both clearly state that limited partners in TOF III, like NYLIAC, had **no right** to participate in the Fund's selection or monitoring of investments or managers. *See* Ex. D (Tremont PPM) at iii ("The General Partner is responsible for selecting the Partnership's Managers, allocating assets among Managers and monitoring the Partnership's investments."); *id.* at 28 ("The Limited Partners cannot take part in the management or control of the Partnership's business, which is the sole responsibility of the General Partner. The General Partner has wide latitude in making investment decisions."). In short, the very documents upon which Plaintiff claims to rely state that NYLIAC was **not** responsible for the underlying investments.

Plaintiff also attempts to rely upon a contract between Tremont and NYLIAC (the "Participation Agreement") to support an argument that Tremont's statements in the Tremont PPM are somehow attributable to NYLIAC. Opp. at 2-3, 4-5, 9-11, 13-14. But Plaintiff cites no legal authority for this proposition and finds no support in the Participation Agreement (which

---

[2] Plaintiff refers to New York Life and NYLIAC collectively without specifying which entity is the subject of his allegations. But Plaintiff does not challenge the fact set forth in NYLIAC's motion that New York Life has no involvement in this case other than as parent company to NYLIAC. *See* Opening Memo. at 1 n.1. Thus, all claims against New York Life should be dismissed on that basis alone.

[3] *See also Zutty v. Rye Select Broad Market Prime Fund, L.P.*, 939 N.Y.S.2d 745 (N.Y. Sup. Ct. 2011) (finding that "the subsequent revelation of Madoff's fraud does not establish, for pleading purposes, that any of [defendant's] prior representations regarding Madoff or the Funds was false when made" and that "courts have repeatedly rejected the legitimacy of alleging fraud by hindsight").

3

was not part of the disclosure documents provided to Plaintiff). Indeed, the portion of the Partnership Agreement that Plaintiff cites (Opp. at 10) as support for the bold assertion that NYLIAC agreed to make representations and statements on behalf of Tremont actually states that NYLIAC "shall **not** give any information or make any representations or statements on behalf of [TOF III]" other than to pass along Tremont's "Establishing Documents," such as the Tremont PPM. Ex. H §5.5 (emphasis added). Again quoting out of context, Plaintiff attempts to turn this **restrictive** clause that **prohibits** NYLIAC from acting on behalf of TOF III into something that it is not: an affirmative undertaking to act on behalf of the partnership. Plaintiff also ignores the provision in the Participation Agreement that clearly states that the Insurer is a limited partner with "no authority to act for or represent the Partnership [TOF III], the General Partner [Tremont], or their respective affiliates or any of them." Ex. H § 8.1.

NYLIAC's distribution of the Tremont PPM to prospective purchasers does not make NYLIAC liable for any misrepresentations that may be contained in that document. NYLIAC did not make the statements in the Tremont PPM, and Plaintiff has not sufficiently alleged intent to defraud by NYLIAC. Plaintiff thus fails to show any statements or misrepresentations that raise its "right to relief above the speculative level" (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and his allegations fall far short of satisfying the heightened pleading requirements for a fraud claim under Rule 9(b). *See S.E.C. v. Cohmad Securities*, No. 09 Civ. 5680, 2010 WL 363844, at *2–3 (S.D.N.Y. Feb. 2, 2010) (holding that "one who conducts normal business activities while ignorant that those activities are furthering a fraud is not liable").

Unable to show that NYLIAC made any misrepresentations, Plaintiff is left with its "red flags" allegations. Here, Plaintiff attempts to minimize the impact of the wealth of Southern District authority dismissing claims such as his by arguing that some claims have been sustained based on "red flags" allegations and by inferring that only claims against independent auditors

4

have been dismissed. *See* Opp. at 17-18 n.36. Plaintiff is wrong on both counts.

The few courts that have sustained Madoff-related claims have done so only where allegations have gone well beyond "red flags." Thus, the "red flags" allegations, by themselves, did not support such claims. For example, in the two cases cited by Plaintiff, the Court denied a motion to dismiss claims where it was alleged that an investment manager not only failed to conduct due diligence on Madoff, but specifically released the third-party investment advisor responsible for such due diligence from its responsibilities. *See In re J.P. Jeanneret Associates, Inc.*, 769 F.Supp.2d 340, 365-66 (S.D.N.Y. 2011); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 413-14 (S.D.N.Y. 2010). Indeed, the *Jeanneret* court found that, "[a]s has been true in other cases, the existence of 'red flags' does not satisfy the scienter requirement," and rejected the allegation that "had [defendant] investigated Madoff, it would have learned that he was a fraud." 769 F.Supp.2d at 365-66. The *Beacon* court specifically found the "red flags" theory "unavailing." 745 F. Supp. 2d at 414.[4]

Moreover, the dismissal of claims based on "red flag" theories has **not** been limited merely to auditors. Courts in the Southern District have dismissed claims based on "red flag" allegations against a variety of defendants, including securities brokers, broker-dealers, financial services firms, banks, hedge funds, Madoff feeder and sub-feeder funds, and fund managers and officers. *See In re Merkin*, No. 08 Civ. 10922, 2011 WL 4435873, at *7 (S.D.N.Y. Sept. 23, 2011) (hedge funds and their principals); *Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61 (S.D.N.Y. 2010) (Madoff feeder and sub-feeder fund and funds' general partner, manager, and

---

[4] Plaintiff's assertion that the court in *Beacon* found that "red flags similar to those alleged in this case persuasively indicated that the defendants 'knew facts or had access to information suggesting that their public statements were not accurate'" (Opp. at 18 n.36) is untruthful. *Beacon*'s finding that the plaintiffs in that case had satisfied their pleading burden was based on specific allegations that defendants, *inter alia*, (i) knew that Madoff's records of option trades were inconsistent with numbers and prices reported by independent sources, (ii) were aware that Madoff was possibly using client funds to finance a separate business, (iii) knew that there was no independent verification of Madoff's trades, and (iv) steered other investors away from Madoff due to "grave doubts" that "were candidly discussed in internal memoranda and e-mails," not "red flags" similar to those alleged here. *See* 745 F. Supp. 2d at 405.

5

officers); *Schulman v. Delaire*, No. 10 Civ. 3639, 2011 WL 672002, at *1-5 (S.D.N.Y. Feb. 22, 2011) (securities broker who allegedly received a fee for encouraging plaintiff to invest with Madoff); *Cohmad*, 2010 WL 363844, at *1-4 (broker-dealer who allegedly received fees from Madoff or BLMIS for introducing the plaintiff to BLMIS); *Newman v. Family Mgmt. Corp.*, 748 F. Supp. 2d 299, 303, 309-11 (S.D.N.Y. 2010) (Madoff feeder and sub-feeder funds); *MLSMK Invs. Co. v. JP Morgan Chase & Co.*, 737 F. Supp. 2d 137, 140, 145 (S.D.N.Y. 2010) (financial services firm and affiliated bank).[5]

Finally, Plaintiff's argument that reasonable reliance cannot be determined at the motion to dismiss stage is contradicted by the very case that he cites in support. *See Knight Sec. v Fiduciary Trust Co.*, 5 A.D.3d 172, 174-75 (1st Dep't 2004) (holding that promissory estoppel claim should have been dismissed because reliance was "neither reasonable nor foreseeable"). Similarly, Plaintiff's authority to support the argument that his fraud claim is not duplicative of his breach of contract claim is also inapposite on its face, particularly given the absence of any allegation (much less cause of action) of fraudulent inducement in the Amended Complaint.[6] *See Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir. 2007) (finding fraudulent inducement claim not duplicative where plaintiff alleged misrepresentation of present fact prior to contract formation); *Deerfield Comm. Corp. v. Chesebrough-Pondsk Inc.*, 68 N.Y.2d 954, 956 (1986) (upholding denial of motion to dismiss fraudulent inducement claim based upon misrepresentation of present fact and alleging separate damages). For all the forgoing reasons,

---

[5] While Plaintiff relies on cases from the 1930's to argue that NYLIAC's failure to uncover Madoff's criminal activity (and/or warn Plaintiff of it) constituted fraud (*see* Opp. at 16), as this Court stated much more recently, the "more compelling inference as to why Madoff's fraud went undetected for two decades was his proficiency in covering up his scheme and eluding the SEC and other financial professionals." *In re Tremont Sec. Law, State Law and Ins. Litig.*, 703 F. Supp. 2d 362, 371 (S.D.N.Y. 2010).

[6] Even if Plaintiff had alleged a fraudulent inducement claim, such claim would fail because Plaintiff was a sophisticated investor with access to information regarding Madoff and the alleged "red flags." *See Centro Empresarial Cempresa*, 17 N.Y.3d at 278-79 ("If the facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to him of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations.")

Plaintiff's fraud claim should be dismissed.

## II. PLAINTIFF'S NEGLIGENT MISREPRESENTATION CLAIM SHOULD BE DISMISSED

While Plaintiff cites several cases for the general proposition that a "special relationship" may exist between parties to a contract, he fails to offer any specific precedent to suggest that such a relationship existed here, in an arms-length insurance transaction with an Accredited Investor and Qualified Purchaser and in which NYLIAC's alleged negligent misrepresentations concerned the concealed criminal conduct of a third-party several layers removed from NYLIAC. Plaintiff was clearly informed that his VUL investment in TOF III was managed by Tremont, and that it was Tremont that selected the managers, allocated assets among those managers, and monitored those investments. *See* Ex. D at iii. Even if Plaintiff could establish the existence of a special duty (which he cannot), he offers no response to NYLIAC's position that his negligent misrepresentation claim is barred by the economic loss doctrine or that, to the extent it does not sound in fraud, it is barred by the applicable statute of limitations. *See* Opening Memo. at 15-16. Each of these defects standing alone is fatal to Plaintiff's claim.

## III. THE UNJUST ENRICHMENT CLAIM IS BARRED

Plaintiff's Opposition does not even attempt to defend his unjust enrichment claim, which is barred under New York law and should be dismissed accordingly. *See* Opening Memo. at 16.

## IV. PLAINTIFF CAN STATE NO CLAIM FOR BREACH OF FIDUCIARY DUTY

The general cases cited by Plaintiff in support of his breach of fiduciary duty claim do not overcome the specific doctrine under New York law that an insurer does not owe a fiduciary duty to an insured (except in limited circumstances not applicable here). *See* Opening Memo. at 17. Nor does *McDonnell v. Allstate Life Ins. Co.*, an unreported decision from the Northern District of Illinois cited by Plaintiff, support his claim. *See* Opp. at 22. In *McDonnell*, the district court found only that, under Illinois law, an insurer who is acting as a broker for a

7

securities transaction owes an "exceedingly narrow" duty to its customers, "consisting at most of a duty to properly carry out transactions ordered by the customer." *McDonnell*, 04 C 3076, 2004 WL 2392169, at *3 (N.D. Ill. Oct. 25, 2004). Even if NYLIAC owed such a duty to Plaintiff here, there is no allegation that NYLIAC failed to properly carry out the transaction ordered by Plaintiff. Indeed, it is undisputed that Plaintiff directed NYLIAC to invest the premiums in question in TOF III, and NYLIAC carried out that instruction. In the absence of a fiduciary duty, Plaintiff's claim for breach of fiduciary duty must fail. Plaintiff also does not dispute that his claim is time-barred to the extent that it does not sound in fraud. *See* Opening Memo. at 18.

## V.  PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS

Plaintiff argues that his contract claim should survive because NYLIAC allegedly breached the Policy by failing to exercise *rights exclusively reserved by NYLIAC* in the Policy. *See* Opp. at 23-24 ("By failing to exercise[] its contract rights for their intended purpose, New York Life breached its contract with Plaintiff."). But rights of NYLIAC are not affirmative duties and cannot support a breach of contract claim. Plaintiff identifies no obligation or duty that NYLIAC breached. The fact that NYLIAC had the **right** to remove TOF III from its platform cannot be converted into an obligation to have done so, particularly where NYLIAC could **not** select, manage, or monitor the funds in which TOF III invested. *See* Ex. D. at iii, 28.[7]

## VI.  PLAINTIFF'S BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM MUST BE DISMISSED

Plaintiff's cases in support of his breach of implied covenant claim are inapposite. There is no allegation in the Complaint or otherwise that NYLIAC exercised any discretion in bad faith or "arbitrarily or irrationally," or declined to "consider relevant material," or otherwise acted in bad faith. *See* Opp. at 23-24. Moreover, Plaintiff does not dispute that his breach of covenant

---

[7] Plaintiff also does not dispute or respond to NYLIAC's position that no term in the Policy obligated NYLIAC to anticipate Madoff's intervening criminal activity and provide protection against it. *See* Opening Memo. at 19.

8

claim is duplicative of his breach of contract claim. *See* Opening Memo. at 21-22.

## VII.  PLAINTIFF CANNOT STATE A SECTION 349 CLAIM

Plaintiff disputes the argument that Section 349 does not apply to securities-related transactions by making the unremarkable and irrelevant contention that Section 349 applies to insurance policies generally. *See* Opp. at 24-25 & n. 39. The cases cited by Plaintiff concern disputes over alleged misrepresentations by the insurer regarding premiums,[8] the amount of life insurance that a policyholder had purchased,[9] and a "builder's risk" policy insuring against faulty construction in a home.[10] None of the Section 349 claims in the cases that Plaintiff cites, however, has any securities-related element whatsoever.[11] Because Section 349 does not cover securities-related transactions, and a VUL policy is unquestionably a security, Plaintiff's claim cannot be sustained. *See* Opening Memo. at 22-23.

## VIII.  PLAINTIFF CANNOT PROVE LOSS CAUSATION AND IS NOT ENTITLED TO PUNITIVE DAMAGES

Plaintiff does not contest his failure to prove loss causation or his lack of entitlement to punitive damages. *See* Opening Memo. at 24-25.

## IX.  LEAVE TO REPLEAD SHOULD BE DENIED

Not only should all of Plaintiff's claims be dismissed, but such dismissal should be with prejudice. Plaintiff has already had the opportunity to amend his complaint following an extended stay in these proceedings, which mooted an earlier, fully-briefed motion to dismiss. More importantly, Plaintiff's claims are fatally flawed and any repleading would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that denial of leave to amend is not abuse of

---

[8] *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 321-22 (2002); *Gaidon v. Guardian Life Ins. Co.*, 96 N.Y.2d 201, 206-07, 211-12 (2001); *Beller v. William Penn Life Ins. Co. of N.Y.*, 8 A.D.3d 310, 312 (2d Dep't 2004); *Monter v. Massachusetts Mut. Life Ins. Co.*, 12 A.D.3d 651, 651 (2d Dep't 2004).

[9] *Brenkus v. Metropolitan Life Ins. Co.*, 309 A.D.2d 1260, 1261 (4th Dep't 2003).

[10] *Skibinsky v. State Farm Fire & Cas. Co.*, 6 A.D.3d 975, 975 (3d Dep't 2004).

[11] The cases cited by Plaintiff also did not involve large commercial transactions between sophisticated parties. *See* Opening Memo. at 23-24.

9

discretion where amendment would be futile); *Joblove v. Barr Labs., Inc.*, 466 F.3d 187, 220-21 (2d Cir. 2006) (finding that district court did not abuse its discretion in denying plaintiffs leave to amend where plaintiffs could "prove no set of facts in support of their claim").[12] Particularly given that the developments in the Madoff-related jurisprudence over the past two years have roundly rejected nearly identical claims and theories as those pursued by Plaintiff, leave to amend should be denied and Plaintiff's Amended Complaint should be dismissed with prejudice.

Dated: New York, New York
      May 1, 2012

                       PILLSBURY WINTHROP SHAW PITTMAN LLP

                       By: /s/ Maria T. Galeno
                            Maria T. Galeno
                            Greg T. Lembrich
                            1540 Broadway
                            New York, NY  10036
                            Telephone: (212) 858-1000
                            Fax: (212) 858-1500
                            maria.galeno@pillsburylaw.com
                            greg.lembrich@pillsburylaw.com

                            *Attorneys for Defendants New York Life Insurance Company and New York Life Insurance and Annuity Corporation*

---

[12] *See also Van Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 91-92 (2d Cir. 2003) (affirming district court's judgment denying leave to amend as futile); *Jones v. New York State Div. of Military & Naval Affairs*, 166 F.3d 45, 50 (2d Cir. 1999) (holding that "a district court may properly deny leave when amendment would be futile" and affirming district court's denial of leave to amend); *Hafez v. Avis Rent A Car System, Inc.*, 2000 U.S. App. LEXIS 31032, at *5 (2d Cir. Nov. 29, 2000) (affirming denial of leave to amend and holding that "the denial of leave to amend does not constitute an abuse of discretion when granting leave would be unproductive … or where the proposed amendments would be meritless"). Given this substantial, recent Second Circuit authority, it is perhaps not surprising that all of the cases cited by Plaintiff are at least 20 years old.