UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | x | |
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | : | Master File No. 08 Civ. 11117 (TPG) |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | | |
| This Document Relates to: | : | |
| INSURANCE ACTION, 09 Civ. 557 (TPG), and specifically to: | : | |
| | : | |
| F. DANIEL PRICKETT, | : | 09 Civ. 3137 (TPG) |
| Plaintiff, | | |
| | : | ECF CASE |
| - against - | | Electronically Filed |
| | : | |
| NEW YORK LIFE INSURANCE COMPANY, et al., | : | |
| Defendants. | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | x | |

**THE TREMONT DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Defendants
  Tremont Group Holdings, Inc.,
  Tremont Partners, Inc.,
  Tremont (Bermuda) Limited,
  Tremont Capital Management, Inc. and
  Rye Investment Management

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT ............................................................................................................................1

I.  COUNTS III THROUGH V OF THE COMPLAINT ALLEGE DERIVATIVE
    CLAIMS PRICKETT LACKS STANDING TO ASSERT...................................................1

    A.  Delaware Law Is Controlling...................................................................................1

    B.  Counts III, IV and V Are Derivative Under New York Law...................................2

        1.  Tremont Owed No Duty to Prickett...............................................................2

        2.  Prickett's Alleged Injury Is Derivative of Harm Suffered Directly
            by the Fund ....................................................................................................3

        3.  The Doctrine of In Pari Delicto Does Not Permit Prickett To
            Assert Derivative Claims Directly on His Own Behalf................................5

II. THE COMPLAINT FAILS TO STATE A FRAUD CLAIM ...............................................5

    A.  The Complaint Does Not Adequately Identify Any False Statement Made
        by Tremont................................................................................................................5

    B.  The Complaint's Allegations Are Insufficient To Establish Scienter ......................7

III. THE COMPLAINT FAILS TO STATE A CLAIM OF NEGLIGENT
     MISREPRESENTATION...................................................................................................8

IV. THE COMPLAINT FAILS TO STATE A CLAIM OF UNJUST ENRICHMENT...........8

V.  THE COMPLAINT FAILS TO STATE A CLAIM OF BREACH OF
    FIDUCIARY DUTY............................................................................................................9

VI. THE COMPLAINT FAILS TO STATE AN AIDING AND ABETTING CLAIM .........10

VII. THE COMPLAINT FAILS TO STATE A CLAIM UNDER NEW YORK
     GENERAL BUSINESS LAW § 349................................................................................10

CONCLUSION........................................................................................................................11

# TABLE OF AUTHORITIES

## CASES

Abrams v. Donati,
   489 N.E.2d 751 (N.Y. 1985)...................................................................................3

American International Group, Inc. v. Greenberg (In re American International
   Group, Inc. Consolidated Derivative Litigation),
   976 A.2d 872 (Del. Ch. 2009)..................................................................................5

Anwar v. Fairfield Greenwich Ltd.,
   728 F. Supp. 2d 372 (S.D.N.Y. 2010).....................................................................2

Barron Partners, LP v. LAB123, Inc.,
   593 F. Supp. 2d 667 (S.D.N.Y. 2009).....................................................................8

In re Bernard L. Madoff Investment Securities LLC,
   654 F.3d 229 (2d Cir. 2011)....................................................................................4

Citadel Management, Inc. v. Telesis Trust, Inc.,
   123 F. Supp. 2d 133 (S.D.N.Y. 2000).....................................................................4

Continental Casualty Co. v. PricewaterhouseCoopers, LLP,
   933 N.E.2d 738 (N.Y. 2010)................................................................................3, 4

Fagan v. First Security Investments, LLC,
   04 Civ. 1021, 2006 WL 2671044 (S.D.N.Y. Sept. 15, 2006).................................3

Feldman v. Cutaia,
   951 A.2d 727 (Del. 2008) .......................................................................................3

Greenspun v. Lindley,
   330 N.E.2d 79 (N.Y. 1975)......................................................................................2

Kimmell v. Schaefer,
   675 N.E.2d 450 (N.Y. 1996)....................................................................................8

Law Debenture v. Maverick Tube Corp.,
   06 Civ. 14320, 2008 WL 4615896 (S.D.N.Y. Oct. 15, 2008) ................................9

Mandarin Trading Ltd. v. Wildenstein,
   944 N.E.2d 1104 (N.Y. 2011).................................................................................8

Manufacturers Life Insurance Co. v. Donaldson, Lufkin & Jenrette
   Securities Corp.,
   99 Civ. 1944, 2000 WL 709006 (S.D.N.Y. June 1, 2000)......................................7

In re Manulife Financial Corp. Securities Litigation,
  276 F.R.D. 87 (S.D.N.Y. 2011) ...................................................................................6

Mizrahi v. Chanel, Inc.,
  746 N.Y.S.2d 878 (Sup. Ct. N.Y. County 2001) ..........................................................1

Monter v. Massachusetts Mutual Life Insurance Co.,
  784 N.Y.S.2d 898 (2d Dep't 2004) .............................................................................10

New York University v. Continental Insurance Co.,
  662 N.E.2d 763 (N.Y. 1995).......................................................................................10

Newman v. Family Management Corp.,
  748 F. Supp. 2d 299 (S.D.N.Y. 2010) ..........................................................................2

Pension Committee of University of Montreal Pension Plan v. Banc of America
  Securities, LLC,
  446 F. Supp. 2d 163 (S.D.N.Y. 2006)...........................................................................2

Rojas v. Don King Productions, Inc.,
  11 Civ. 8468, 2012 WL 760336 (S.D.N.Y. March 6, 2012).......................................10

Ryan v. Hunton & Williams,
  99-CV-5938, 2000 WL 1375265 (E.D.N.Y. Sept. 20, 2000) .......................................7

South Cherry Street, LLC v. Hennessee Group LLC,
  573 F.3d 98 (2d Cir. 2009)............................................................................................7

Tooley v. Donaldson, Lufkin & Jenrette, Inc.,
  845 A.2d 1031 (Del. 2004) ...........................................................................................4

United States v. Wallach,
  935 F.2d 445 (2d Cir. 1991)..........................................................................................4

Vogel v. Sands Brothers & Co.,
  126 F. Supp. 2d 730 (S.D.N.Y. 2001)...........................................................................8

Wilmington Trust Co. v. Metropolitan Life Insurance Co.,
  2008 N.Y. Slip Op. 32239(U), 2008 WL 3819698 (Sup. Ct. N.Y. County
  Aug. 4, 2008) ...........................................................................................................9, 10

Zutty v. Rye Select Broad Market Prime Fund, L.P.,
  939 N.Y.S.2d 745 (table), 2011 WL 5962804 (Sup. Ct. N.Y. County
  Apr. 15, 2011)............................................................................................................1, 6

## STATUTES

N.Y. Partnership Law § 121-901 (McKinney 2006) ............................................................1

**ARGUMENT**[1]

I. **COUNTS III THROUGH V OF THE COMPLAINT ALLEGE DERIVATIVE CLAIMS PRICKETT LACKS STANDING TO ASSERT**

In his Opposition Brief, Prickett contends that New York law governs the question of whether Counts III through V of the Complaint assert derivative or direct claims.[2]  (Opp'n at 9-14.)  And, according to Prickett, New York law mandates a finding that the claims are direct.  (Id.)  As shown below, under the pertinent choice of law rule applicable here, Delaware law governs this issue and compels the conclusion that Counts III through V are derivative, not direct.  Moreover, the same conclusion is warranted under New York law.  Because the claims are derivative and Prickett lacks standing to assert them, Counts III through V should be dismissed as against Tremont.

    A. **Delaware Law Is Controlling**

The pertinent choice of law rule pertaining to limited partnership disputes has been codified in Section 121-901 of the New York Partnership Law ("NYPL").  This statute provides – without exception – that "the laws of the jurisdiction under which a foreign limited partnership is organized govern its organization and internal affairs."  NYPL § 121-901 (McKinney 2006).  Applying the statute here, Delaware law governs Counts III through V of the Complaint because they relate to the internal affairs (*i.e.*, Tremont's management) of a Fund organized as a limited partnership under the laws of Delaware.  (See Compl. ¶¶ 25, 175-92.)  See also Zutty v. Rye Select Broad Market Prime Fund, L.P., 939 N.Y.S.2d 745 (table), 2011 WL 5962804, at *7 (Sup. Ct. N.Y. County Apr. 15, 2011); Mizrahi v. Chanel, Inc., 746 N.Y.S.2d 878, 881, 883 (Sup. Ct. N.Y.

---

[1] Unless otherwise defined herein, capitalized terms have the same meaning as set forth in the Tremont Defendants' Memorandum of Law in support of their motion to dismiss the amended Complaint, filed March 1, 2012 ("Moving Brief" or "Mov. Br.," Dkt. No. 31).

[2] Prickett's Memorandum of Law in opposition to Tremont's motion to dismiss, filed March 30, 2012 (Dkt. No. 37), is referred to herein as "Opposition Brief" or "Opp'n."

1

County 2001).[3]

Because Counts III through V (breach of fiduciary duty and unjust enrichment) are derivative claims under settled Delaware law, Prickett attempts in his Opposition Brief to re-characterize those claims as fraud and negligent misrepresentation claims (which generally are considered to be direct). (Opp'n at 14-15.) Prickett's attempt to recast the claims in this fashion is foreclosed by the allegations of Counts III through V, which are based on the assertion that Tremont mismanaged the Fund's assets. (Compl. ¶ 181 ("Tremont breached . . . duties to the Plaintiff by investing the assets . . . in the Rye Funds and BMIS despite numerous red flags."); see also id. ¶¶ 6, 42, 72, 73, 76-78, 175, 179-92.) Such allegations of "'deficient management or administration of a fund'" are "'paradigmatic derivative claim[s].'" Newman v. Family Mgmt. Corp., 748 F. Supp. 2d 299, 315 (S.D.N.Y. 2010) (citation omitted) (applying Delaware law).

B.  **Counts III, IV and V Are Derivative Under New York Law**

Even under New York law, Counts III, IV and V of the Complaint are derivative and should be dismissed given that Prickett lacks standing to assert derivative claims.

1.  Tremont Owed No Duty to Prickett

Prickett argues that under New York law, "[i]nvestment advisors . . . owe a fiduciary duty to their investors, and those investors have standing to sue directly when that duty is breached." (Opp'n at 12 n.20.) Tremont, however, was never *Prickett's* investment adviser, and the

---

[3]  Greenspun v. Lindley, 330 N.E.2d 79 (N.Y. 1975), cited by Prickett, is inapposite because it addressed the internal affairs of a corporation, *not* a limited partnership. Moreover, even if once applicable to limited partnerships, Greenspun effectively was overruled by Section 121-901 of the NYPL, which the New York legislature enacted sixteen years after Greenspun was decided. The other cases cited by Prickett (Opp'n at 10-13) also are inapposite because they do not mention Section 121-901, much less hold that the internal affairs rule it codifies is subject to exceptions. See Anwar v. Fairfield Greenwich Ltd., 728 F. Supp. 2d 372, 401 n.8 (S.D.N.Y. 2010); Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 446 F. Supp. 2d 163, 191-92 (S.D.N.Y. 2006).

2

Complaint alleges no facts to the contrary. Tremont acted as investment adviser to *the Fund* and, indeed, was flatly prohibited from communicating with Prickett. (See, e.g., TOF III PPM (Trans. Decl. Ex. A) at 4.)

Nor has Prickett alleged any facts sufficient to show the existence of any other relationship that would have imposed on Tremont a duty owed directly to Prickett "independent of any duty owing to the [Fund,]" as required to state a direct claim under New York law. Abrams v. Donati, 489 N.E.2d 751, 752 (N.Y. 1985). Rather, at most, the Complaint makes the conclusory assertion that "Tremont owed duties to Plaintiff to use due care in the investigation, recommendation, management, and supervision of the invested assets of Plaintiff." (Compl. ¶ 180.) This bald allegation is "insufficient to demonstrate the basis of [Prickett's] fiduciary breach claim." Fagan v. First Sec. Invs., LLC, 04 Civ. 1021, 2006 WL 2671044, at *5 (S.D.N.Y. Sept. 15, 2006) (allegation that defendant represented he would oversee trading and "look out" for plaintiff held insufficient to establish a fiduciary relationship).

2. Prickett's Alleged Injury Is Derivative
   of Harm Suffered Directly by the Fund

Prickett's claims also are derivative because they allege "diminution in the value of . . . limited partnership interests" (see Compl. ¶ 102; see also id. ¶¶ 3, 11, 34, 39, 43, 64, 93, 94, 99), a classic allegation of derivative injury under the laws of both New York and Delaware. Continental Cas. Co. v. PricewaterhouseCoopers, LLP, 933 N.E.2d 738, 742-43 (N.Y. 2010); see also Feldman v. Cutaia, 951 A.2d 727, 733 (Del. 2008). Prickett nonetheless contends he "is not suing to recover the losses that the . . . Fund incurred by investing in Madoff, but to recover his *own losses*[.]" (Opp'n at 12 (emphasis in original).) In reality, the only injury alleged by Prickett is the loss he suffered *in*directly as a result of Madoff's theft of the Fund's assets. When the Carrier invested with the Fund by depositing cash into the Fund's bank account, the Carrier lost,

and the Fund gained, title to that cash.  See United States v. Wallach, 935 F.2d 445, 462 (2d Cir. 1991); Citadel Mgmt., Inc. v. Telesis Trust, Inc., 123 F. Supp. 2d 133, 148 (S.D.N.Y. 2000).  Thus, whenever the Fund allocated capital to Madoff or any other manager, the Fund was allocating *its* capital, *not* the Carrier's capital (much less Prickett's capital).  And as for the capital allocated to Madoff, Madoff's theft of that cash resulted in a loss of *Fund* assets.  Consequently, Prickett's claims are derivative because he "[cannot] prevail without showing an injury to the [Fund]." Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1039 (Del. 2004); accord Continental Cas. Co., 933 N.E.2d at 741-43.

Contrary to Prickett's contention (Opp'n at 13-14), the derivative/direct analysis under state law is in no way altered by the "net equity" test applied in the context of insolvency proceedings commenced under the Securities Investor Protection Act ("SIPA").  SIPA applies to the liquidation of broker-dealers.  See, e.g., In re Bernard L. Madoff Inv. Sec. LLC, 654 F.3d 229, 233 (2d Cir. 2011).  Under the net equity test established under SIPA, only brokerage customers who lost more than they gained through investments made in their brokerage accounts may file claims against the bankruptcy estate of the broker-dealer.  See id. at 233-35.  SIPA, however, has no application here because, among other things, the Fund is not a broker-dealer and it is not insolvent.  Moreover, customer claims authorized under SIPA are not derivative claims because they are not brought on behalf of broker-dealers covered by the statute.  Rather, they are direct claims that customers assert on their own behalf as creditors of insolvent broker-dealers.  Nothing in SIPA changes the settled principle that a claim brought by an equity stakeholder arising out of the alleged mismanagement of a company is a derivative claim where, as here, plaintiff "[cannot] prevail without showing an injury to the [company]." Tooley, 845 A.2d at 1039.

4

### 3. The Doctrine of In Pari Delicto Does Not Permit Prickett To Assert Derivative Claims Directly on His Own Behalf

There also is no merit to Prickett's contention that he has standing under the doctrine of in pari delicto to assert derivative claims directly on his own behalf. (Opp'n at 14.) It is well-settled that the doctrine has no application to derivative claims brought by equity stakeholders on behalf of companies injured by the alleged misconduct of their officers, directors or other fiduciaries. See, e.g., American Int'l Grp., Inc. v. Greenberg (In re American Int'l Grp., Inc. Consol. Deriv. Litig.), 976 A.2d 872, 889-90 (Del. Ch. 2009), aff'd sub nom. Teachers' Ret. Sys. of La. v. Gen. Re Corp., 11 A.3d 228 (table), 2010 WL 5394004 (Del. Dec. 29, 2010). Indeed, if the doctrine of in pari delicto applied to derivative suits there could never be a derivative suit because the doctrine would require the court to impute the knowledge of the defendant fiduciaries to the entities they served, thereby barring all such suits. That plainly is not and never has been the law, and Prickett cites no authority to the contrary.

## II. THE COMPLAINT FAILS TO STATE A FRAUD CLAIM

### A. The Complaint Does Not Adequately Identify Any False Statement Made by Tremont

The gravamen of Prickett's fraud claim is that Tremont falsely "assured Plaintiff and other investors that it would conduct painstaking due diligence [and] monitoring[.]"[4] (Opp'n at 3.) According to Prickett, this purported assurance must have been false when made because Tremont would have discovered Madoff's fraud had it rigorously monitored Madoff. (See Compl. ¶¶ 9, 64;

---

[4] Prickett does not specify where or when Tremont gave this "assurance." The PPM disclosed that TPI asked each of the Fund's managers for information regarding the manager's historical performance and investment strategies. (Opp'n at 6.) The PPM, however, made no representation that TPI could or would attempt to verify the accuracy of any information the manager agreed to provide, or that TPI would conduct any other form of diligence or monitoring. Indeed, far from promising "painstaking" diligence, the PPM warned that TPI would be substantially constrained in its ability to obtain *any* information from the Fund's managers. (See TOF III PPM (Trans. Decl. Ex. A) at 23.)

5

see also Opp'n at 16.)  Tremont, however, never promised to conduct any specified level of due diligence or monitoring, much less represented that its oversight was so comprehensive that Tremont would be able to uncover a well-concealed and unprecedented Ponzi scheme.  (See generally TOF III PPM (Trans. Decl. Ex. A).)  In any event, Prickett's claim of "false assurances" is nothing more than an allegation of fraud by hindsight, which fails to state a claim of fraud.  See In re Manulife Fin. Corp. Sec. Litig., 276 F.R.D. 87, 99 (S.D.N.Y. 2011); Zutty, 2011 WL 5962804, at *10 ("the subsequent revelation of Madoff's fraud does not establish, for pleading purposes, that any of TPI's prior representations regarding Madoff or the Funds was false when made.  Indeed, courts have repeatedly 'rejected the legitimacy of 'alleging fraud by hindsight.'"" (citation omitted)).

Apart from conclusory allegations of "falsity," Prickett proffers no facts to show that *any* representation made by Tremont was false when made.  For example, Prickett points to disclosures in the Fund's PPM regarding the Fund's investment strategy and asserts that the disclosures were "false" because other investment professionals "were unable to replicate the . . . returns purportedly achieved by Madoff" through his "split-strike conversion" investment strategy.  (Opp'n at 17.)  This assertion makes no sense given that the PPM said nothing about *Madoff's* strategy.  Rather, the PPM disclosed that the *Fund's* strategy was to use a "multi-manager approach" to allocate assets among multiple managers "exhibit[ing] opportunistic styles and strategies."  (TOF III PPM (Trans. Decl. Ex. A) at 1; see also Opp'n at 17.)  Prickett does not and cannot allege that the Fund pursued any other strategy.

Prickett fares no better with his attack on the PPM's disclosure that the Fund endeavored to create a diversified portfolio.  (Opp'n at 17.)  According to Prickett, this statement "was patently false because the . . . Fund invested over 22% of the fund's assets – an extremely concentrated position – with Madoff."  (Opp'n at 17 (emphasis omitted).)  But as this allegation implicitly

6

recognizes, 78% of the Fund's assets were allocated for investment to a number of managers other than Madoff.  Thus, contrary to Prickett's contention, the allocation of 22% of the Fund's assets to Madoff does not, by itself, show that that Fund's entire portfolio − in the aggregate − was "extremely concentrated" and not diversified.

In sum, Prickett has been unable to identify any false statement made by Tremont.  This pleading defect, by itself, warrants dismissal of the fraud claim.

### B.      The Complaint's Allegations Are Insufficient To Establish Scienter

In response to Tremont's showing that the Complaint also fails to allege fraudulent intent adequately (Mov. Br. at 10-13), Prickett points to "a lengthy cavalcade of red flags that contradicted the information that Tremont provided to Prickett and other investors." (Opp'n at 18; see also id. at 8-9.)  But even a cornucopia of alleged red flags would be insufficient to establish scienter where, as here, "[t]here is no factual allegation in the Complaint that, prior to . . . [December 2008] . . . the danger of fraud was so obvious that [Tremont] must have been aware of it." South Cherry St., LLC v. Hennessee Grp. LLC, 573 F.3d 98, 112 (2d Cir. 2009).  The Complaint's vague allegation that the red flags "would have given any reasonable investor *serious concerns* over Madoff's operations"  (Compl. ¶ 6 (emphasis added)) is plainly insufficient to show that Tremont knew Madoff was a fraud and, armed with that knowledge, acted with intent to deceive Prickett.  See South Cherry, 573 F.3d at 112-13; see also Ryan v. Hunton & Williams, 99-CV-5938, 2000 WL 1375265, at *7-8 (E.D.N.Y. Sept. 20, 2000) (even suspicions of fraudulent activity, if unverified, are insufficient to demonstrate intent to participate in a Ponzi scheme); Manufacturers Life Ins. Co. v. Donaldson, Lufkin & Jenrette Sec. Corp., 99 Civ. 1944, 2000 WL 709006, at *4 (S.D.N.Y. June 1, 2000) (allegation that defendant "recklessly ignored numerous 'red flags'" identified in complaint at most asserted a claim of negligence).

In the same vein, Prickett cannot establish scienter through the unsubstantiated (and

demonstrably erroneous) assertion that the fees paid to Tremont for managing the Fund "were astronomical (even for the hedge fund industry)[.]" (Opp'n at 20.) According to Prickett, "standard hedge fund fees [are a] 1% management fee + 20% of the profits[.]" (Compl. ¶ 91(b).) In contrast, as disclosed in the Fund's PPM, Tremont's compensation was limited to 1% of assets under management, with no entitlement to share in any profits realized by the Fund. (See TOF III PPM (Trans. Decl. Ex. A) at 21.) Thus, the facts, as opposed to Prickett's conclusory assertions, show that Tremont's fee was *below* the industry standard. See Vogel v. Sands Bros. & Co., 126 F. Supp. 2d 730, 743 (S.D.N.Y. 2001) ("Allegations that plaintiffs believe the fee amounts and arrangement to be 'unusual,' without more, is insufficient to plead scienter.").

### III. THE COMPLAINT FAILS TO STATE A CLAIM OF NEGLIGENT MISREPRESENTATION

In his Opposition Brief, Prickett contends that he had a "special relationship" with Tremont because Tremont held "itself out as possessing 'unique or specialized expertise.'" (Opp'n at 20-21 (quoting Kimmell v. Schaefer, 675 N.E.2d 450, 454 (N.Y. 1996)).) But in contrast to Tremont in this case, the defendant in Kimmell made "continued attempts to communicate directly with the plaintiffs to induce their investment" by exploiting the parties' relationship of trust and confidence that pre-dated the investment in question. Mandarin Trading Ltd. v. Wildenstein, 944 N.E.2d 1104, 1109-10 (N.Y. 2011) (distinguishing Kimmell). Here, the Complaint nowhere identifies *any* contact between Tremont and Prickett. Thus, the Complaint alleges no facts that show Tremont had any relationship with Prickett, much less the "special relationship" needed to state a claim of negligent misrepresentation. See, e.g., Barron Partners, LP v. LAB123, Inc., 593 F. Supp. 2d 667, 674 (S.D.N.Y. 2009).

### IV. THE COMPLAINT FAILS TO STATE A CLAIM OF UNJUST ENRICHMENT

Given the existence of the Fund's LPA (the contract entitling Tremont to receive

8

management fees from the Fund), Prickett's claim that the fees unjustly enriched Tremont fails as a matter of law.  (See Mov. Br. at 14 and cases incorporated therein.)  Contrary to Prickett's contention, there is no "bona fide dispute" concerning the existence and scope of the LPA.  (Cf. Opp'n at 22.)  Indeed, the Complaint nowhere raises any issue regarding that contract.  To the extent Prickett attempts to suggest that the LPA is irrelevant because he is not a party to that agreement, his contention is contrary to settled law.  Indeed, a "claim for unjust enrichment, even against a third party, cannot proceed when there is an express agreement between two parties governing the subject matter of the dispute."  Law Debenture v. Maverick Tube Corp., 06 Civ. 14320, 2008 WL 4615896, at *13 (S.D.N.Y. Oct. 15, 2008), aff'd, 595 F.3d 458 (2d Cir. 2010).

## V.   THE COMPLAINT FAILS TO STATE A CLAIM OF BREACH OF FIDUCIARY DUTY

In an effort to show he had a fiduciary relationship with TPI, Prickett argues that "New York courts have routinely held that a fiduciary relationship exists between an investor and his investment advisor[.]"  (Opp'n at 22.)  But as noted above, the cases cited by Prickett have no application here because Tremont never communicated with – much less served as an investment adviser to – Prickett.  To be sure, Prickett now contends in his Opposition Brief that "Tremont's acts clearly demonstrate that it held itself out in a fiduciary capacity to Plaintiff and other . . . Fund investors[.]"  (Opp'n at 23.)  The Complaint, however, has no allegation that Tremont "held itself out" as a fiduciary *to Prickett*.  The only relationship alleged in the Complaint involving Prickett is his contractual relationship with the Carrier.  As a matter of settled law, even that relationship is not fiduciary in character.  See Wilmington Trust Co. v. Metro. Life Ins. Co., 2008 N.Y. Slip Op. 32239(U), at *18 (Sup. Ct. N.Y. County Aug. 4, 2008) (collecting cases showing that insurance carriers owe no fiduciary duties to policyholders) (text available at 2008 WL 3819698).

9

## VI. THE COMPLAINT FAILS TO STATE <u>AN AIDING AND ABETTING CLAIM</u>

Count V of the Complaint alleges that the Tremont Defendants "aid[ed] and abet[ted] breaches of fiduciary duty *by the . . . Fund*[.]"  (Compl. ¶ 192 (emphasis added); <u>see also</u> <u>id.</u> ¶¶ 189-91.)  In his Opposition Brief, Prickett seeks to amend this claim, alleging for the first time that Tremont "knowingly participated in [the *Carrier's*] breach of fiduciary duty[.]"  (Opp'n at 24 (emphasis added).)  Even if Prickett could amend his Complaint in his Opposition Brief, which he cannot, <u>see, e.g.</u>, <u>Rojas v. Don King Productions, Inc.</u>, 11 Civ. 8468, 2012 WL 760336, at *5 (S.D.N.Y. March 6, 2012), his aiding and abetting claim still would be legally defective.  As shown above, insurance carriers owe no fiduciary duties to their policyholders.  <u>See, e.g.</u>, <u>Wilmington Trust</u>, 2008 N.Y. Slip Op. 32239(U), at *18.  Thus, Prickett's belatedly revised claim does not allege, as it must, any underlying breach of fiduciary duty in which Tremont could have participated.

## VII. THE COMPLAINT FAILS TO STATE A CLAIM <u>UNDER NEW YORK GENERAL BUSINESS LAW § 349</u>

GBL § 349 does not apply to the Policy, and <u>Monter v. Massachusetts Mutual Life Insurance Co.</u>, 784 N.Y.S.2d 898 (2d Dep't 2004) (Opp'n at 24), is not to the contrary.  The opinion in that case is inapposite because it gives no indication that the insurance policies at issue authorized the investment of premiums in securities, a factor that would have placed the policies beyond the reach of GBL § 349.  In contrast, in this case, it is undisputed that Prickett's Policy was structured so that premiums could be utilized to fund securities transactions, a feature that places the Policy outside the ambit of the statute.  <u>See, e.g.</u>, <u>N.Y. Univ. v. Cont'l Ins. Co.</u>, 662 N.E.2d 763, 770-71 (N.Y. 1995) ("complex insurance coverage" does not fall under GBL § 349 because it is "not the 'modest' type of transaction the statute was primarily intended to reach").

**CONCLUSION**

For the reasons stated above and in the Moving Brief, the Tremont Defendants respectfully submit that their motion to dismiss the Complaint should be granted in all respects.

Dated: New York, New York
       May 1, 2012

    Respectfully submitted,

    /s/ Seth M. Schwartz
    Seth M. Schwartz (Seth.Schwartz@Skadden.com)
    Jason C. Vigna (Jason.Vigna@Skadden.com)
    SKADDEN, ARPS, SLATE,
      MEAGHER & FLOM LLP
    Four Times Square
    New York, New York 10036
    (212) 735-3000

    Attorneys for Defendants
      Tremont Group Holdings, Inc.,
      Tremont Partners, Inc.,
      Tremont (Bermuda) Limited,
      Tremont Capital Management, Inc. and
      Rye Investment Management