UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE TREMONT SECURITIES LAW,
STATE LAW AND INSURANCE           :    Master File No. 08 Civ. 11117(TPG)
LITIGATION
_____ :

This Document Relates to:
                                  :
F. DANIEL PRICKETT                     No. 09 Civ. 03137 (TPG)
                                  :
              Plaintiff,               **Electronically Filed**
                                  :
        - against -
                                  :
NEW YORK LIFE INSURANCE COMPANY,
et al.                            :

              Defendants.         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE MASSMUTUAL
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

**BINGHAM McCUTCHEN LLP**
399 Park Avenue
New York, NY 10022
Tel.: (212) 705-7000

*Attorneys for Defendants
Massachusetts Mutual Life Insurance Company and
MassMutual Holding LLC*

A/74882715.5

**TABLE OF CONTENTS**

Page

ARGUMENT ........................................................................................................................... 1

I.   PRICKETT FAILS TO ALLEGE A CLAIM AGAINST MASSMUTUAL FOR
     AIDING AND ABETTING LIABILITY ................................................................... 1

     A.   Prickett Fails to Allege MassMutual's Actual Knowledge .................................... 2

     B.   Prickett Fails to Allege MassMutual's Substantial Assistance .............................. 6

II.  PRICKETT'S CLAIMS FOR FRAUD AND NEGLIGENT
     MISREPRESENTATION SHOULD BE DISMISSED ............................................. 7

III. PRICKETT FAILS TO STATE A CLAIM AGAINST MASSMUTUAL FOR
     UNJUST ENRICHMENT .......................................................................................... 8

IV.  PRICKETT LACKS STANDING TO BRING DERIVATIVE CLAIMS ................. 9

V.   PRICKETT SHOULD NOT BE GRANTED LEAVE TO REPLEAD HIS
     CLAIMS ................................................................................................................... 10

CONCLUSION ..................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Atkins v. Bohrer*,
   11 Civ. 4939, 2011 WL 6779311 (S.D.N.Y. Dec. 23, 2011)..................................................10

*Chemtex, LLC v. St. Anthony Enter., Inc.*,
   490 F.Supp.2d 536 (S.D.N.Y. 2007).........................................................................................2

*King v. Crossland Sav. Bank*,
   111 F.3d 251 (2d Cir. 1997).......................................................................................................7

*Kolbeck v. LIT Am.*,
   939 F. Supp. 240 (S.D.N.Y. 1996).............................................................................................2

*Mandarin Trading Ltd. v. Wildenstein*,
   16 N.Y.3d 173 (2011) ................................................................................................................9

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
   431 Fed. App'x. 17 (2d Cir. 2011).........................................................................................1, 3

*Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A.*,
   No. 1:08-CV-01720 (LAP), 2009 WL 860635 (S.D.N.Y. Mar. 31, 2009)................................7

*Network Enters. Inc. v. Reality Racing, Inc.*,
   No. 09 Civ 4664, 2010 WL 3529237 (S.D.N.Y. Aug. 24, 2010) ..............................................8

*Newman v. Family Mgmt. Corp.*,
   748 F. Supp. 2d 299 (S.D.N.Y. 2010)...................................................................................3, 9

*Saltz v. First Frontier, LP*,
   782 F. Supp. 2d 61 (S.D.N.Y. 2010).........................................................................................3

*Sec. Trust Co. of Rochester v. Voxakis*,
   323 N.Y.S.2d 810 (N.Y. Sup. Ct. 1971) ...................................................................................7

*United States v. Bestfoods*,
   524 U.S. 51 (1998).....................................................................................................................5

*Young v. Williams*,
   850 N.Y.S.2d 262 (3rd Dep't 2008) ..........................................................................................7

*Zutty v. Rye Select Broad Market Fund*,
   No. 113209/2009 (RBL), 2011 WL 5962804 (Sup. Ct. NY Co. Apr. 15, 2011).......................9

A/74882715. 5A/74711485.4


## TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

**OTHER AUTHORITIES**

37 C.J.S Fraud § 105 .................................................................................................................7

Rule 9(b) ......................................................................................................................................7

# ARGUMENT[1]{ TC \l "1"}

## I. PRICKETT FAILS TO ALLEGE A CLAIM AGAINST MASSMUTUAL FOR AIDING AND ABETTING LIABILITY.

In his Opposition to MassMutual's Motion to Dismiss ("Opp."), Prickett argues that MassMutual aided and abetted an alleged breach of fiduciary duty by Tremont because: (i) MassMutual, via its subsidiary, OAC, performed due diligence on Tremont before OAC purchased Tremont and, allegedly, some financial entities expressed skepticism about Madoff; and (ii) MassMutual, through OAC, was an indirect shareholder of TGHI and was represented on the TGHI's board of directors and "marketed" itself along with OAC and Tremont (and a host of other affiliates and subsidiaries) as one integrated company. Opp. at 20-22. These allegations, Prickett believes, support a claim that MassMutual aided and abetted an alleged wrongdoing. For the reasons stated in MassMutual's Memorandum of Law in Support of its Motion to Dismiss at 14-18 ("Opening Brief"), none of these factual allegations, separately or together, are sufficient to create liability against MassMutual.

Prickett attempts to remedy the deficiencies in his amended complaint ("Am. Compl.") by filing voluminous public records, including various of Tremont's SEC filings, MassMutual Annual Reports (which are not mentioned in the amended complaint), and two press articles about Madoff. However, not one of these documents contain any facts from which this Court could reasonably infer that MassMutual "knowingly participated" -- with actual knowledge and substantial assistance -- in any alleged wrongdoing. Prickett points to no such facts because there are none. *See, e.g., MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 431 Fed. App'x. 17, 19 (2d Cir. 2011) ("To state a claim for aiding and abetting breach of fiduciary duty under New York law, a plaintiff must show breach by a fiduciary of a duty owed to plaintiff; defendant's knowing participation in the breach; and damages.") (internal citation and quotation omitted).

---

[1] Capitalized terms herein have the same meaning as in the MassMutual Defendants' Memorandum of Law in Support of Its Motion to Dismiss.

### A. Prickett Fails to Allege MassMutual's Actual Knowledge.

Prickett argues that MassMutual had "actual knowledge" of a breach of fiduciary duty, relying on (1) MassMutual's pre-acquisition diligence on Tremont; (2) articles in the financial press critical of Madoff and unidentified financial institutions' alleged suspicions about Madoff; and (3) that MassMutual's allegedly "extensive degree of control and influence" over the Tremont Defendants. Opp. at 21-22. Cumulatively, these things allegedly made MassMutual "privy to the Tremont Defendants' knowledge of 'red flags' regarding "the potential criminality and gross irregularities in Madoff's operations." *Id.* at 20-22. For the reasons cited in MassMutual's Opening Brief at 15-16 and below, these speculative and conclusory allegations do not satisfy Prickett's "heavy" burden of pleading "actual knowledge." *Chemtex, LLC v. St. Anthony Enter., Inc.*, 490 F.Supp.2d 536, 546 (S.D.N.Y. 2007) ("The burden of demonstrating actual knowledge, although not insurmountable, is nevertheless a heavy one.").

Prickett supplies no factual support for the illogical leap from an alleged knowledge of a red flag (a warning) to a conclusion of actual knowledge of wrongdoing. Allegations that MassMutual disregarded "red flags" are allegations of negligence. That MassMutual "should have known" is an allegations that it was negligent (careless) and does not satisfy an actual knowledge pleading requirement. Even a suggestion that MassMutual had "constructive knowledge" of wrongdoing is insufficient to allege actual knowledge. *See, e.g., Kolbeck v. LIT Am.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996). "New York courts have routinely held that when a defendant is under no independent duty [to plaintiff], even alleged ignorance of obvious warning signs of fraud will not suffice to adequately allege 'actual knowledge.'" *Chemtex*, 490 F. Supp. 2d at 547 (internal quotations and citations omitted).

Notably, Prickett does not and cannot allege that MassMutual even had actual knowledge of the purported "red flags." Prickett attempts to deal with this problem by asserting that "beyond mere 'red flags,' the Amended Complaint identifies specific acquisition related due diligence reports that, at the pleading stage, are more than adequate to show that MassMutual *did in fact know* of gross irregularities with Madoff's operations, as well as with Tremont's

-2-

relationship with Madoff and Tremont's misrepresentations of due diligence and monitoring to its investors." Opp. at 3. This bald conclusion is devoid of any factual allegation to support it. For example, pleading that MassMutual knew that Tremont placed money with Madoff is not an allegation of "actual knowledge" of wrongdoing.[2]

Prickett alleges two newspaper articles "posited" that Madoff "may have been" engaged in illegal activities. Opp. at 9. There is nothing to demonstrate that MassMutual had "actual knowledge" of the articles, let alone of the wrongdoing "posited" in them. *See Newman v. Family Mgmt. Corp.*, 748 F. Supp. 2d 299, 311 (S.D.N.Y. 2010) ("The actions of the minority cannot support an inference of intent to defraud as to the numerous other investors who were still in the dark."). Tellingly, Prickett never addresses the various decisions cited by MassMutual in which courts have concluded "[a]n inference of scienter based on publicly available red flags is simply not as cogent and compelling as the opposing inference of nonfraudulent intent." *Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61, 72 (S.D.N.Y. 2010)(citation omitted); *MLSMK Inv. Co.*, 737 F. Supp. 2d 137, 145 (S.D.N.Y. 2010).[3] Prickett never claims that MassMutual knew of these articles or that *he* had not read them. Rather, Prickett states that *Barron's* published an article raising questions about Madoff in May 2001. Prickett also states that MassMutual's 2005 Annual Report mentions that *Barron's* favorably ranked Oppenheimer mutual funds. *See* Opp.

---

[2] Prickett submits several Tremont SEC filings made prior to OAC's 2001 acquisition, presumably to support his claim that, as a result of pre-acquisition diligence, MassMutual and OAC learned of "gross irregularities in Madoff's operations." *See* Opp. at 5-11. The SEC filings support no such conclusion. What the filings demonstrate is that TGHI was formed in 1987. By 2001, it was a publicly-traded company with "three principal areas of business." *See, e.g.,* Declaration of William S. Norton in Support of Plaintiff F. Daniel Prickett's Memoranda of Law in Opposition to Defendants' Motions to Dismiss ("Norton Decl."), Ex. 11. There is no disclosure which supports a claim that MassMutual actually knew of any wrongdoing.

[3] In its Opposition (at 24), Prickett highlights the fact that the court in *Kaufman* dismissed claims based on the "conclusory" allegation "that the defendants had knowledge of the underlying breach." Although Prickett attempts to distinguish its allegations from those in *Kaufman*, its allegations that MassMutual "knew" about Tremont's alleged breaches of fiduciary duty through corporate ownership or through its "M&A due diligence" are similarly conclusory, and are not sufficient to plead actual knowledge.

at 8-9.  From this, Prickett would conclude that MassMutual *knew* that Madoff was engaged in illegal activity.  This conclusion is nonsense.

Prickett also asserts that MassMutual knew of Madoff's wrongdoing because "sophisticated players within the investment community … already had begun to publicly express skepticism regarding the legitimacy of Madoff's operations" at the time of the acquisition.  Am. Compl. ¶ 122; Opp. at 9-10, 22.  However, Prickett does not identify any of these alleged "players," or what they said, or that they communicated their concerns to MassMutual, or that MassMutual knew of these concerns.

Prickett completely fails to respond to a central part of MassMutual's analysis: namely why would MassMutual (and OAC) pay $145.3 million to acquire Tremont if they had learned that Tremont was placing investors' money in a Ponzi or other illicit investment scheme?  The reasonable inference here is that MassMutual did not know that Madoff was operating a Ponzi scheme.  Prickett attempts to sidestep this issue.  Prickett says that he "is not alleging that [MassMutual] knew Madoff was running a Ponzi scheme" -- conceding that MassMutual did not have actual knowledge that Madoff was running a Ponzi.  Opp. at 3.  Rather, he claims, "[t]o the contrary, Plaintiff alleges that MassMutual … knew that Madoff was likely running an illegal front running operation … and [] turned a blind eye to Tremont and Madoff's suspect operations."  *Id.*  Whether Prickett argues that MassMutual knew Madoff was running a Ponzi scheme or knew Madoff was engaged other illegal activities, Prickett never explains why MassMutual would knowingly acquire a company that placed clients' money with a manager who was operating illegally.

Finally, Prickett argues that MassMutual had "total control" of the Tremont Defendants and therefore it had actual knowledge of Tremont's alleged breach.  In a general sense, the shareholders of any corporation, collectively, have "total" control of the corporation in the sense that they can elect a board which has the power to fire the corporation's managers.  However, there is no legal authority that MassMutual is aware of (and no case cited by Prickett) that stands for the proposition that "total" control in this sense equates to actual knowledge of alleged

wrongdoing by a party with whom the managers of a corporation are dealing.  If by "total control" Prickett means anything else, he has not pled facts to support any such claim.  Prickett, of course, is unable to plead (and does not attempt to plead) any factual allegations that would support piercing the corporate veil.  "[I]t is hornbook law that the exercise of the 'control' which stock ownership gives to the stockholders ... will not create liability beyond the assets of the subsidiary.  That 'control' includes the election of directors, the making of by-laws ... and the doing of all other acts incident to the legal status of stockholders.  Nor will a duplication of some or all of the directors or executive officers be fatal."  *United States v. Bestfoods*, 524 U.S. 51, 61-62 (1998) (internal quotations and citations omitted).

In another vain effort to plead MassMutual's "control," Prickett files MassMutual's 2005, 2006, 2007 and 2008 Annual Reports.  *See* Opp. at 11-14.  Each of these Annual Reports contains a multi-page listing of "General Agencies and Other Offices."  The list appears at the end of each Annual Report and provides the location, phone number and web address of many offices, agencies and affiliates, including Tremont.[4]  This simple listing of locations and phone numbers does not support the argument that MassMutual "controlled" Tremont in the sense that it becomes "chargeable" for its alleged wrongdoing.  *See* Opp. at 14.  Tremont is not mentioned in the body of the Annual Reports; it is not listed as a "Major Subsidiary and Affiliate" of MassMutual.[5]  The Annual Reports do not identify, let alone describe, Tremont's business. MassMutual's Annual Reports simply provide no basis to claim that MassMutual had actual

---

[4] Tremont is mentioned on page 60 of the 62-page 2005 Annual Report (Norton Decl., Ex. 16); page 66 of the 68-page 2006 Annual Report (*Id.*, Ex. 18); page 86 of the 88-page 2007 Annual Report (*Id.*, Ex. 19) and page 100 of the 103-page 2008 Annual Report (*Id.*, Ex. 20).  The 2005 and 2006 Annual Reports say: "Tremont Capital Management, Inc. Tel. (914) 925-1140 *www.tremont.com* Rye, New York."  The 2007 and 2008 Annual Reports reflect Tremont's name change to TGHI.  For Tremont's London office, the 2005, 2006, 2007 Annual Reports say: "Tremont Capital Management Ltd. Tel. +44 20-7491-5330 *www.tremont.com* London, UK."

[5] The Notes to MassMutual's Consolidated Statutory Financial Statements in the 2008 Annual Report reflect that goodwill and other intangible assets of approximately $150 million were written off in the financial statements of TGHI.

knowledge of any breach of fiduciary duty.

### B. Prickett Fails to Allege MassMutual's Substantial Assistance.

Prickett argues that MassMutual "substantially assisted" Tremont's alleged wrongdoing. This claim is based solely on his conclusory allegations of "control," which, in turn, are based on MassMutual's remote status as the shareholder of the company (MassMutual Holding) that is the shareholder of the company (OAC) that is the shareholder of the company (TGHI) which was the shareholder of the company (TPI) which managed funds which invested with Madoff. Specifically, Prickett alleges that (1) MassMutual acquired Tremont and appointed some directors on TGHI's board; (2) Tremont became part of a "network" of MassMutual affiliates; and (3) Tremont, once acquired, existed under "the MassMutual Financial Group umbrella" thereby allowing Tremont to attract investors. Prickett alleges that this conglomeration of facts and metaphors (e.g., "umbrella") is sufficient to plead that MassMutual "provided this assistance" in attracting investors. Opp. at 23. "Assistance in attracting investors," even if accepted as true for these purposes, does not equate to "assistance in alleged wrongdoing," much to "*substantial* assistance" in alleged wrongdoing.

Similarly, Prickett's argument that by acquiring Tremont, MassMutual enabled Tremont "to cast an extraordinarily wide net to attract investors" which "allowed the Tremont Defendants to continue funneling" money to Madoff to keep the Ponzi scheme going. Opp. at 23-24. Exactly what MassMutual did other than accurately listing Tremont as an affiliate is not pled. MassMutual, as the Annual Reports reveal, has many affiliates. Having subsidiaries and affiliates (and accurately disclosing them) does not constitute "substantial assistance" in an illegal scheme. No surprise that Prickett cites no authority to the contrary.

Prickett incorrectly references paragraph 133 of the amended complaint to argue that MassMutual "commenced a marketing campaign touting the Tremont Defendants' capabilities and promoting the Tremont Defendants as being part of the network of subsidiaries and affiliates that comprise the MassMutual Financial Group." Opp. at 23. What Prickett's Paragraph 133

-6-

actually alleges is that after the acquisition, "Tremont Advisers' operations -- including the marketing and investment activities of the Rye Funds -- were directly under the MassMutual Financial Group umbrella."  Even if Prickett actually alleged that MassMutual had "commenced a marketing campaign" (one that Prickett never claims to have seen) or allowed Tremont to cast a "wide net," that would not be enough to plead substantial assistance.  Substantial assistance requires affirmative actions by the alleged aider and abettor that *proximately cause* the wrongdoing.  *See, e.g., Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, No. 1:08-CV-01720 (LAP), 2009 WL 860635, at **10-11 (S.D.N.Y. Mar. 31, 2009).

## II.  Prickett's Claims for Fraud and Negligent Misrepresentation Should Be Dismissed.

Prickett does not (and cannot) allege *the critical element of a misrepresentation claim*: that MassMutual made a representation of any kind.  Rather, Prickett makes a vague argument that MassMutual should be liable for the alleged misrepresentation of others.  Relying on a New York trial court decision, *Sec. Trust Co. of Rochester v. Voxakis*, 323 N.Y.S.2d 810, 811 (N.Y. Sup. Ct. 1971), Prickett argues (in a footnote) that "in the case at bar 'the circumstances *may* be such as to impose liability for representations made by others.'"  Opp. at 4 n.5 (emphasis added) (citing 37 C.J.S Fraud § 105).  That case is not applicable to the facts alleged here.  *Sec. Trust Co. of Rochester* and the treatise citation concern aconspiracy to defraud.[6]  323 N.Y.S.2d at 811 ("These allegations state a cause of action in the nature of a conspiracy to defraud.").  Prickett has made no such allegations.  As explained in MassMutual's Opening Brief at 7-12, Prickett's failure to allege any representation by MassMutual -- as well as his failure to allege any of the required elements of a fraud or negligent misrepresentation claim, let alone with the particularity required under Rule 9(b) -- is fatal to his claims.  *See, e.g., King v. Crossland Sav. Bank*, 111 F.3d 251, 257-258 (2d Cir. 1997); *Young v. Williams*, 850 N.Y.S.2d 262 (3rd Dep't 2008).

---

[6] The other cases Prickett cites are similarly distinguishable.  The 1932 California case, for example, concerns the alleged acts of an agent, but Prickett cannot assert any agency claims.

### III. PRICKETT FAILS TO STATE A CLAIM AGAINST MASSMUTUAL FOR UNJUST ENRICHMENT.

Prickett argues that his unjust enrichment claim should survive because he had no contract with MassMutual (although he did have a contract with New York Life) and even if he did have a contract with MassMutual, he could plead unjust enrichment in the alternative. Opp. at 17. Although Prickett correctly states that a plaintiff may plead claims in the alternative, any alternative claims must still be actionable, and the claim for equitable relief is not.

Prickett claims that MassMutual and OAC "were the ultimate beneficiaries of the improper fees collected by the Tremont Defendants." Any "fees" in the case, however, were paid pursuant to a contract: "fees" paid by Prickett were paid to pursuant to his insurance contract, Am. Compl., ¶¶ 104, 176, 178, and "fees" paid to TPI were governed by the limited partnership agreements between the carriers, the Fund and TPI. *Id.*, ¶ 104 ("management and advisory fees and administrative service fees [were] paid to Defendants New York Life and Tremont"). However, the fact remains (and Prickett admits) that the "fees" which are the subject matter of the unjust enrichment claim are governed by contracts. The presence of these contracts bar Prickett's unjust enrichment claim against MassMutual -- even though MassMutual was not a signatory to them. *See, e.g., Network Enters. Inc. v. Reality Racing, Inc.*, No. 09 Civ 4664, 2010 WL 3529237 at *7 (S.D.N.Y. Aug. 24, 2010) ("[A] valid and binding contract governing the subject matter at issue in a particular case *does* act to preclude a claim for unjust enrichment even against a third party non-signatory to the agreement.'").

Prickett also argues that it does not matter that he did not have a "quasi-contractual relationship" with MassMutual, that MassMutual did not receive any "specific benefit" from plaintiff or that there was no "nexus" between plaintiff's impoverishment and defendant's alleged enrichment. Opp. at 18-20. Instead, Prickett claims that it is enough that MassMutual was an "the ultimate beneficiar[y] of the improper fees collected by the Tremont Defendants." *Id.* at 20. Assuming *arguendo* that the above contracts do not bar Prickett's unjust enrichment claim, his unjust enrichment claim still fails because he alleges, at best, a highly attenuated

connection to MassMutual.  As the New York Court of Appeals has held, "[a]lthough privity is not required for an unjust enrichment claim, a claim will not be supported if the connection between the parties is too attenuated."  *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011) (citation omitted).  MassMutual is the corporate great-grandparent of TPI, the general partner of the Fund of which Prickett *was not* a limited partner.  Prickett had no dealings with MassMutual and MassMutual received no specific benefit from Prickett.  "[T]he lack of allegations that would indicate a relationship between the parties, or at least an awareness by [MassMutual] of [Prickett's] existence" is fatal to the unjust enrichment claim.  *Id.* ("[t]there are no indicia of an enrichment that was unjust where the pleadings failed to indicate a relationship between the parties that could have caused reliance or inducement").

## IV.   Prickett Lacks Standing to Bring Derivative Claims.

Prickett's claims for unjust enrichment and aiding and abetting a breach of fiduciary duty not only fail on substantive grounds, but the claims should also be dismissed because Prickett lacks standing to bring derivative claims.  Prickett argues that (1) this question is governed by New York, not Delaware law; (2) special circumstances exist to disregard the traditional direct/derivative analysis; and (3) his claims for unjust enrichment and aiding and abetting are based on non-disclosure and thus not barred.  Opp. at 14-15.

The New York Supreme Court, in a case involving the Rye Funds, held that similar claims for unjust enrichment and aiding and abetting breach of fiduciary duty against the Tremont Defendants were (a) governed by Delaware law and (b) barred because they were derivative.  *See, e.g., Zutty v. Rye Select Broad Market Fund*, No. 113209/2009 (RBL), 2011 WL 5962804, \*\*5-7 (Sup. Ct. NY Co. Apr. 15, 2011).  That reasoning is equally applicable here.  Prickett's argument that these claims are based on non-disclosure is belied by the abundant allegations regarding Tremont's mismanagement of the funds.  Allegations of "'deficient management or administration of a fund'" are "'paradigmatic derivative claims.'"  *Newman*, 748 F. Supp. 2d at 315 (citation omitted).

### V.     Prickett Should Not Be Granted Leave to Replead His Claims

Plaintiff has amended his complaint once, and this Court should not allow him to amend again.  Nearly three years after Prickett initiated this action, Prickett filed an amended complaint.  The amended complaint was filed after a "review of complaints filed by the United States Government and the Securities and Exchange Commission [], news reports published in the financial press, and other available information."  Am. Compl. pp. 1-2.  Prickett had sufficient opportunity to investigate the facts underlying his claims and amend his complaint accordingly.  *See Atkins v. Bohrer*, 11 Civ. 4939, 2011 WL 6779311, at *9 (S.D.N.Y. Dec. 23, 2011) (denying leave to amend where plaintiff "had already been given an opportunity to amend his pleadings and he took advantage of that opportunity").  Any leave to amend should be denied.

### CONCLUSION

For these reasons and those in MassMutual's Opening Brief, Massachusetts Mutual Life Insurance Company and MassMutual Holding LLC respectfully pray that this Court dismiss the claims against them in their entirety and with prejudice.

Dated: May 1, 2012

**BINGHAM McCUTCHEN LLP**

  s/Carol E. Head_____
Kenneth I. Schacter
399 Park Avenue
New York, NY 10022
Tel.: (212) 705-7000
kenneth.schacter@bingham.com

Joseph L. Kociubes*
joseph.kociubes@bingham.com
Carol E. Head*
carol.head@bingham.com
One Federal Street
Boston, MA 02110
Tel.: (617) 951-8000
*admitted *pro hac vice*

*Attorneys for Defendants Massachusetts Mutual Life Insurance Company and MassMutual Holding LLC*