PILLSBURY WINTHROP SHAW PITTMAN LLP
Maria T. Galeno
Greg T. Lembrich
1540 Broadway
New York, NY 10036-4039
Tel.: (212) 858-1000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | Master Docket No. 08-Civ-11117 (TPG) |
| CUMMINS INC., <br><br> Plaintiff, <br><br> - against - <br><br> NEW YORK LIFE INSURANCE COMPANY, et al., <br><br> Defendants. | Civil Action No. 1:10-9252 (TPG) |

**REPLY MEMORANDUM OF LAW OF DEFENDANTS NEW YORK LIFE INSURANCE COMPANY AND NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

July 16, 2012

**TABLE OF CONTENTS**

Page

I.     **Amendment Would Be Futile** ................................................................................ 1

    A.  **NYLIAC Made No Misrepresentations** .........................................................1

    B.  **Cummins Continues to Rely on "Red Flags"** ...............................................3

II.    **Claims Against NYLIAC Are Insufficient Under New York Law**...............4

    A.  **NYLIAC Was Not a "Co-Conspirator" with Tremont** .................................4

    B.  **Cummins Cannot Support a Fraudulent Inducement Claim** .......................5

    C.  **The Breach of Implied Covenant of Good Faith and Fair Dealing Claim Fails** .........6

    D.  **Cummins Cannot Establish a Breach of Fiduciary Dut**y................................7

    E.  **Cummins' Negligent Misrepresentation Claim Fails** .....................................8

    F.  **Cummins' Unjust Enrichment Claim Is Barred**.............................................9

    G.  **Cummins Cannot Establish a Section 349 Claim**..........................................9

# TABLE OF AUTHORITIES

## CASES

*Batas v. Prudential Insurance Co. of America*,
    281 A.D.2d 260 (1st Dept. 2001).........................................................................................8

*Bellikoff v. Eaton Vance Corp.*,
    481 F.3d 110 (2d Cir. 2007)................................................................................................9

*Cherny v. Emigrant Bank*,
    604 F. Supp. 2d 605 (S.D.N.Y. 2009)................................................................................8

*Commodity Futures Trading Commission v. Commodity Investment Grp., Inc.*,
    05 CV 5741, 2007 WL 1519002 (S.D.N.Y. Feb. 27, 2007) ...............................................6

*Dandong v. Pinnacle Performance Ltd.*,
    No. 10 Civ. 8086, 2011 WL 5170293 (S.D.N.Y. Oct. 31, 2011) ........................................6

*Druyan v. Jagger*,
    508 F. Supp. 2d 228 (S.D.N.Y. 2007)................................................................................6

*Dweck v. Oppenheimer & Co.*,
    816 N.Y.S.2d 440 (1st Dept. 2006) ...................................................................................9

*In re Eaton Vance Mutual Funds Fee Litigation*,
    380 F. Supp. 2d 222 (S.D.N.Y. 2005), ..............................................................................9

*In re Evergreen Mutual Funds Fee Litigation*,
    423 F. Supp. 2d 249 (S.D.N.Y. 2006).................................................................................9

*Ferguson v. Lion Holding, Inc.*,
    478 F. Supp. 2d 455 (S.D.N.Y. 2007).................................................................................7

*Fesseha v. TD Waterhouse Investor Services, Inc.*,
    761 N.Y.S.2d 22 (1st Dept. 2003) .....................................................................................9

*Gaidon v. Guardian Life Insurance Co.*,
    94 N.Y.2d 330 (1999) ......................................................................................................10

*Gray v. Seaboard Securities, Inc.*,
    788 N.Y.S.2d 471 (3d Dept. 2005) ....................................................................................9

*Icebox-Scoops v. Finanz St. Honore, B.V.*,
    676 F. Supp. 2d 100 (E.D.N.Y. 2009) ................................................................................8

501025353v9

*Kassover v. UBS AG*,
    619 Fed.Supp.2d 28, 37, n. 4 (S.D.N.Y. 2008)........................................................9

*Kaye v. Grossman*,
    202 F.3d 611 (2d Cir. 2000)....................................................................................9

*King County, Wash. v. IKB Deutsche Industriebank AG*,
    09 Civ. 8387, 2012 WL 1592193 (S.D.N.Y. May 4, 2012)....................................8

*In re Merkin*,
    No. 08 Civ. 10922, 2011 WL 4435873 (S.D.N.Y. Sept. 23, 2011) .......................2

*Monter v. Massachusetts Mut. Life Ins. Co.*,
    12 A.D.3d 651, 651 (2d Dep't 2004) ...................................................................10

*National Union Fire Ins. Co. of Pittsburgh, PA v. Xerox Corp.*,
    25 A.D.3d 309, 310.................................................................................................6

*Nebraskaland, Inc. v. Sunoco, Inc.*,
    10 Civ. 1091, 2011 WL 6131313 (E.D.N.Y. July 13, 2011) .................................8

*New York University v. Continental Insurance Co.*,
    87 N.Y.2d 308 (1995) ..........................................................................................10

*Newman v. Family Management Corp.*,
    748 F. Supp. 2d 299 (S.D.N.Y. 2010)....................................................................3

*People v. Merkin*,
    No. 450879/09, 2010 WL 936208 (N.Y. Sup. Ct. Feb. 8, 2010).........................2

*Pew v. Cardarelli*,
    05 CV 1317, 2009 WL 3165759 (N.D.N.Y. Sept. 29, 2009) ................................9

*Rabin v. Mony Life Ins. Co.*,
    387 Fed. Appx. 36, 42 (2d Cir. 2010).....................................................................7

*Saltz v. First Frontier, LP*,
    782 F. Supp. 2d 61 (S.D.N.Y. 2010)......................................................................3

*Schandler v. New York Life Insurance Co.*,
    09 Civ. 10463, 2011 WL 1642574 (S.D.N.Y. Apr. 26, 2011)...............................8

*Schroders, Inc. v. Hogan System, Inc.*,
    522 N.Y.S.2d 404 (N.Y. Sup. Ct. 1987) ..............................................................10

iii

*SEC v. Cohmad Securities,*
    09 Civ. 5680, 2010 WL 363844 (S.D.N.Y. Feb. 2, 2010) ....................................................4

*South Cherry St., LLC v. Hennessee Grp. LLC*
    573 F.3d 98, 100-01, 104 (2d Cir. 2009) ...........................................................................3

*Stephenson v. Citco Grp. Ltd.,*
    700 F. Supp. 2d 599 (S.D.N.Y. 2010)..................................................................................3

*In re Sterling Foster & Co., Inc., Securities Litigation,*
    222 F. Supp. 2d 216 (E.D.N.Y. 2002) ................................................................................9

Unable to state sufficient claims under New York law, even after multiple attempts to do so, Cummins resorts to alternative theories, but all must fail as a matter of law.[1]  Cummins states that this is not a "red flags" case; yet, Cummins again argues that NYLIAC was aware of facts "that should have alerted them of the 'dubiousness' of Madoff's reported investment results," and then cites, without labeling them as such, the now often-repeated Madoff "red flags."  Reply in Support of the Motion ("C.R.") at 7.  Cummins argues that NYLIAC should have determined that TOF III was not a "suitable" investment (C.R. at 4-6); yet, the investment was only unsuitable because of Madoff's Ponzi scheme, which went undetected for years by regulators, banks, and other financial institutions.  Cummins goes so far as to allege that a Participation Agreement between NYLIAC and Tremont to distribute offering materials was a "civil conspiracy" to commit fraud; yet, as Cummins would likely concede, neither NYLIAC nor Tremont knew about Madoff's Ponzi scheme and the agreement at issue was not for an illegal purpose.  Cummins argues that its case is different because NYLIAC represented that it would conduct certain due diligence that it failed to conduct (C.R. at 7-8), but in making such arguments Cummins engages in a distorted reading of the NYLIAC PPM and ignores detailed and specific cautionary language.  Plainly, the weight of authority demonstrates that allowing Plaintiff to file a Second Amended Complaint would be futile here and all claims should be dismissed with prejudice.

I.      **Amendment Would Be Futile**

   A.      **NYLIAC Made No Misrepresentations**

Cummins argues that this case is about NYLIAC's "false representations as to the careful pre and post-investment due diligence that would be conducted."  C.R. at 4.  In fact, the NYLIAC

---

[1]   All abbreviations herein are the same as set forth in Defendants' Memorandum in Support of Motion to Dismiss (Dkt. 647) ("Pending Motion to Dismiss") and Defendants' Memorandum in Opposition to the Motion to File Second Amended Complaint (Dkt. 765) ("NYLIAC Opp."), both of which are incorporated herein by reference. References to lettered exhibits are to documents attached to the Declaration of Maria T. Galeno, dated January 31, 2012 (Dkt. 648). Citations to Ex. 1 refer to Exhibit 1 to the Amended Complaint (Dkt. 642). Because that exhibit contains multiple documents, citations herein refer to the page number of Document 642-1 on the Court's docket rather than any internal page numbers.

PPM clearly set forth what information NYLIAC knew and was able to verify regarding each VUL

investment option and candidly disclosed that which it did not know or could not verify.  The

NYLIAC PPM stated in pertinent part:

- that NYLIAC does not "independently verify" information about the Funds and provided by the Funds and "is not responsible for incorrect information" provided by the funds (Ex. 1 at 37, 40, 60);

- that NYLIAC did not participate in the selection or monitoring of the underlying funds or subadvisers (*id.* at 60);

- that "Exempt Funds and the Underlying Funds" are not subject to regulatory oversight and thus "less opportunity exists for regulators to detect and prevent misconduct" (*id.* at 59, 61).

Thus, NYLIAC made no misrepresentations regarding due diligence.

To support a supposed duty to investigate Madoff, Cummins relies on *People v. Merkin*

(C.R. at 4, 6), but fails to point out that that case was an action by the New York State Attorney

General pursuing public claims under the Martin Act and other statutes that required no proof of

intent, reliance, or loss causation.  *See People v. Merkin*, No. 450879/09, 2010 WL 936208, at *3,

*7 (N.Y. Sup. Ct. Feb. 8, 2010).  In a private action against the same defendants, based on the

same fact pattern, the district court dismissed all claims.  *In re Merkin*, No. 08 Civ. 10922, 2011

WL 4435873 (S.D.N.Y. Sept. 23, 2011).

Cummins also relies upon various FINRA/NASD materials (*see* C.R. at 4-5) that do not

apply here.  Each of the authorities cited by Cummins pertains specifically to "retail investors" and

"non-institutional customers," not institutional investors like Cummins.  *See, e.g.*, NASD, Notice

to Members 03-07 (setting forth "members' obligations when recommending hedge funds and

funds of hedge funds to retail investors"); NASD, Notice to Members 96-60 (stating that the

"suitability rule" applies to transactions executed for "non-institutional" customers).  Similarly,

NYLIAC could not have determined that TOF III was not a "suitable" investment for Cummins

based upon Cummins' "other security holdings… financial situation and needs."  *See* FINRA Rule

2

2310.  To conclude that TOF III was unsuitable (for Cummins or any other investor) would have required that NYLIAC uncover Madoff's fraud.  Numerous courts have already held that failure to do so is not actionable.  *See* Pending Motion to Dismiss at 14-15.

### B.        Cummins Continues to Rely on "Red Flags"

The Second Circuit's decision in *South Cherry St., LLC v. Hennessee Grp. LLC* 573 F.3d 98, 100-01, 104 (2d Cir. 2009), is controlling here and dooms Cummins' proposed amendment.  Contrary to Cummins' attempt to distinguish that case (C.R. at 6), the *South Cherry* Court dismissed the breach of contract claim based on the statute of frauds *not* because the alleged due diligence representations were not in writing, but because (like the NYLIAC PPM here) the writing in question was a unilateral document rather than a contract between the parties.[2] Cummins also tries to distinguish *South Cherry* by arguing that certain facts "should have alerted [NYLIAC] of the 'dubiousness' of Madoff's reported investment results."  C.R. at 7.  The facts that NYLIAC allegedly knew, however, are all among the "red flags" that consistently have been found by courts in this district to be insufficient to support claims.  *See* Pending Motion to Dismiss at 14-15 (citing cases where similar or identical "red flags" were found inadequate).

Cummins also argues that this case is different from the "red flags" cases already dismissed because here there was not simply a failure of due diligence, but false representations that due diligence would be conducted.  C.R. at 7-8.  But numerous "red flags" cases addressed such allegations and nonetheless dismissed claims.[3]  Moreover, contrary to Cummins' argument (C.R.

---

[2]  By abandoning its breach of contract claim in its Proposed Second Amended Complaint ("PSAC"), Cummins implicitly acknowledges that the NYLIAC PPM was not a contract between NYLIAC and Cummins, and that Cummins cannot state any breach of contract claim against NYLIAC.

[3]  *See, e.g.*, *Stephenson v. Citco Grp. Ltd.*, 700 F. Supp. 2d 599, 604 (S.D.N.Y. 2010) (defendants issued reports regarding Madoff feeder fund's portfolio and valuations, which defendants "represented they would verify and investigate through due diligence applying their substantial expertise"); *Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61, 74 (S.D.N.Y. 2010) (plaintiffs alleged that defendants "made misstatements" regarding "due diligence processes" in an offering memorandum; *Newman v. Family Mgmt. Corp.*, 748 F. Supp. 2d 299, 313 (S.D.N.Y. 2010) (plaintiffs alleged misrepresentations by defendants in offering materials regarding "due diligence" and "monitoring of investments").

at 8), the facts of the *In re J.P. Jeanneret Assocs., Inc.* case bear no resemblance to the allegations

here.  In *Jeanneret*, the Court denied a motion to dismiss claims where it was alleged that an

investment manager not only failed to conduct due diligence on Madoff, but specifically knew that

such due diligence was not possible, secretly released the third-party investment advisor

responsible for such due diligence from its responsibilities, and knew that its own internal

calculations and analysis "never supported Madoff's reported results."  *See* 769 F.Supp.2d 340,

364-66 (S.D.N.Y. 2011).  Such specific knowledge, as to the inability to conduct due diligence on

Madoff and the dubious nature of Madoff's results, is not even alleged here.

II.     **Claims Against NYLIAC Are Insufficient Under New York Law**

        A.      **NYLIAC Was Not a "Co-Conspirator" with Tremont**

        Cummins acknowledges that under New York law conspiracy liability requires "an

agreement or confederation between two or more persons intentionally participating in the

furtherance of a preconceived common plan or purpose to defraud."  C.R. at 9.  Cummins' support

for such an outrageous allegation, however, is an innocuous Participation Agreement between

NYLIAC and Tremont pursuant to which NYLIAC agreed to make TOF III available as an

investment option and to distribute Tremont's offering and marketing materials.  Even assuming

that the Tremont PPM contained misrepresentations, which Cummins cannot adequately show,

Cummins nowhere even alleges that NYLIAC *knew* of any falsehoods in the Tremont PPM.

Without such knowing participation in a plan to defraud, there can be no conspiracy to defraud.

*See SEC v. Cohmad Securities*, 09 Civ. 5680, 2010 WL 363844, at *2–3 (S.D.N.Y. Feb. 2, 2010)

(holding that "one who conducts normal business activities while ignorant that those activities are

furthering a fraud" is not liable for such fraud and dismissing fraud claims in Madoff-related

action).  Furthermore, the Participation Agreement does not establish that NYLIAC adopted or

endorsed Tremont's statements.  In fact, the Participation Agreement states that NYLIAC is a

4

limited partner with "no authority to act for or represent the Partnership [TOF III], the General Partner [Tremont], or their respective affiliates or any of them."  PSAC Ex. B § 8.1.

### B.    Cummins Cannot Support a Fraudulent Inducement Claim

Cummins cannot sustain a fraudulent inducement claim because Cummins cannot establish that NYLIAC made any false or misleading statements.  The representations on which Cummins allegedly relied were either made by Tremont, not NYLIAC (*see* C.R. at 11), or were simply not misrepresentations.  For example, Cummins attempts to transform NYLIAC's "sole discretion" to combine Separate Accounts and "exclusive right" to select funds for its platform into representations that "created the impression[]" that NYLIAC "would continuously monitor Tremont to confirm the suitability of Tremont as an appropriate investment vehicle."  PSAC ¶¶ 28, 35.  But the representations in NYLIAC's PPM to which Cummins points do nothing of the sort.  NYLIAC informed investors that it did not monitor the underlying funds of the funds available on its platform or the sub-advisers responsible for the day-to-day management of such investments.  Ex. 1 at 60.  Far from "misrepresenting the level of due diligence" that NYLIAC would perform (C.R. at 10-11), the NYLIAC PPM was clear that NYLIAC did not "independently verify" and was "not responsible for incorrect information" provided by the funds.  Ex. 1 at 37, 40, 60.

Cummins argues that NYLIAC represented that it would provide supplemental PPMs.  C.R. at 1, 5, 11.  Putting aside the factual matter of what materials were provided and when, NYLIAC made no such representation.  Indeed, Cummins relies for support for such allegation on an explanation of an administration fee received by NYLIAC from the funds, not on any undertaking by NYLIAC to Cummins.  *See* Ex. 1 at 63-64.

Cummins' allegation that NYLIAC had the requisite scienter to establish fraud based on "access to information" (C.R. at 12) echoes the claims of plaintiffs whose claims have been routinely dismissed in Madoff-related actions.  *See* Pending Motion to Dismiss at 14-15.

Cummins' argument regarding "general risk disclaimers in investment offering materials" (C.R. at

13) is also unavailing.  As set forth in the Pending Motion to Dismiss (at 7-8) and above (at § I.A),

the NYLIAC PPM contained detailed and specific cautionary language, not just general risk

disclaimers.  Thus, the cases cited by Cummins are easily distinguished.  *See Dandong v. Pinnacle*

*Performance Ltd.*, No. 10 Civ. 8086, 2011 WL 5170293, at \*13 (S.D.N.Y. Oct. 31, 2011) (finding

general disclaimers insufficient only "in the face of specific known risks which border on

certainties"); *Commodity Futures Trading Comm'n v. Commodity Inv. Grp., Inc.*, 05 CV 5741,

2007 WL 1519002, at \*5-6 (S.D.N.Y. Feb. 27, 2007) (finding standard risk disclosures unavailing

where defendant promised profits despite fact that over 90% of prior customers had lost money).[4]

## C.      The Breach of Implied Covenant of Good Faith and Fair Dealing Claim Fails

As with its fraud claim, Cummins tries to convert "rights" and "discretion" reserved by

NYLIAC into obligations to Cummins.  *See* C.R. at 14-15.  But such rights of NYLIAC do not

create "extra-contractual duties" to support a breach of implied covenant claim.  For example, the

fact that NYLIAC had the *right* to remove TOF III from its platform cannot be converted into an

obligation to have done so, particularly where NYLIAC could *not* select, manage, or monitor the

funds in which TOF III invested.  *See* Ex. 1 at 109, 138.  Also, a breach of implied covenant claim

cannot substitute for a deficient breach of contract claim (which Cummins' proposed amendment

drops) or create rights independent of the contract.  *See, e.g., National Union Fire Ins. Co. of*

*Pittsburgh, PA v. Xerox Corp.*, 25 A.D.3d 309, 310 (1st Dept. 2006 ("The court properly dismissed

plaintiff's claim for breach of defendants' duty of good faith and fair dealing since it is merely a

substitute for plaintiff's non-viable contract claims"); *Druyan v. Jagger*, 508 F.Supp.2d 228, 238

(S.D.N.Y. 2007) (stating that "it is well-established that the implied covenant does not create any

---

[4]  Cummins' argument that NYLIAC made misstatements of "existing fact," as opposed to forward-looking
statements, is belied by its very allegations, which state that NYLIAC "would conduct" oversight, would provide
future "updated" PPMs, and would confirm the appropriateness of TOF III "on an ongoing basis."  *See* C.R. at 11,
13.

new contractual rights or provide an independent basis for recovery"). Finally, Cummins'

allegations of supposed bad faith (C.R. at 15-16) merely repeat its allegations of the extra-

contractual covenants that NYLIAC purportedly breached and are insufficient to support a claim.

*See Ferguson v. Lion Holding, Inc.*, 478 F.Supp.2d 455, 469 (S.D.N.Y. 2007) ("To prove a

violation of the implied covenant of good faith and fair dealing, conclusory allegations of a party's

failure to act in good faith alone are insufficient; specific factual allegations of a party's bad faith

acts are required.")

### D.    Cummins Cannot Establish a Breach of Fiduciary Duty

Cummins' allegation that a fiduciary relationship arose because NYLIAC  "assumed

complete discretion to manage Cummins' investment" (C.R. at 16, 17) is plainly false. NYLIAC

offered more than 70 different registered and exempt investment divisions from which Cummins

could choose to allocate premiums, and on five occasions Cummins elected to allocate 100% of its

premium payments to TOF III. Pending Motion to Dismiss at 4. Subject to certain restrictions,

Cummins could have transferred some or all of its premiums from TOF III to other available

investment funds at any time. *See* Ex. 1 at 23-25. Cummins did not grant NYLIAC discretionary

authority to make asset allocation decisions, unlike in *People v. Merkin*, upon which Cummins

relies (C.R. at 16), where the defendant had complete discretion over how investors' funds were

invested and *acknowledged* that he had a fiduciary duty to his investors. 2010 WL 936208, at *3,

*10. Moreover, Cummins met directly with Tremont in advance of its first investment to conduct

its own due diligence. *See* Pending Motion to Dismiss at 5-6.

Cummins' argument that the existence of a fiduciary duty is a factual question that cannot

be determined at the motion to dismiss stage (C.R. at 16) is wrong because, as a matter of New

York law, an insurer owes no fiduciary duty to an insured (except where there is a duty to defend

in litigation). *Rabin v. Mony Life Ins. Co.*, 387 Fed. Appx. 36, 42 (2d Cir. 2010) ("An insurance

company does not owe its policyholder a common-law fiduciary duty except when it is called upon to defend its insured.").  Accordingly, courts not only regularly dismiss breach of fiduciary duty claims against insurance companies by policyholders, but deny leave to amend to add such claims as futile.  *See Schandler v. New York Life Ins. Co.*, 09 Civ. 10463, 2011 WL 1642574, at \*12-13 (S.D.N.Y. Apr. 26, 2011) (denying leave to amend because breach of fiduciary duty claim against insurance companies "would not survive a motion to dismiss").

### E.   Cummins' Negligent Misrepresentation Claim Fails

Cummins cannot establish a negligent misrepresentation claim because, under New York law, no "special relationship" of trust or confidence arises out of an insurance contract between insured and insurer.  *Batas v. Prudential Ins. Co. of America*, 281 A.D.2d 260, 264 (1st Dept. 2001).  *King County* and the other general cases cited by Cummins (C.R. at 18-19) are outside of the insurance context, with respect to which the specific authority governs.[5]  Moreover, the economic loss doctrine bars Cummins' claim because a plaintiff asserting a claim of negligent misrepresentation who has not suffered any personal injury or property damage is limited to an action in contract, and NYLIAC had no separate legal duty to protect Cummins from investment losses.[6]  Even the authority cited by Cummins does not support its position, as there was no contract between the parties in the *King County* case and the court recognized that "the presence of a contract … can be a strong indicator that a plaintiff was not owed a legal duty separate and apart from obligations bargained for and subsumed within the transaction."  *See King County, Wash. v. IKB Deutsche Industriebank AG*, 09 Civ. 8387, 2012 WL 1592193, at \*8 (S.D.N.Y. May 4, 2012).

---

[5]   Cummins' argument that NYLIAC, as a limited partner in TOF III, acted as Cummins' agent (C.R. at 19) has no basis in either the relevant agreements or under the law, and Cummins offers none.

[6]   *See Nebraskaland, Inc. v. Sunoco, Inc.*, 10 Civ. 1091, 2011 WL 6131313, at \*4 (E.D.N.Y. July 13, 2011) (dismissing negligent misrepresentation claim as barred by the economic loss doctrine); *Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 609 (S.D.N.Y. 2009) (dismissing negligent misrepresentation claim where plaintiff had not alleged personal or property damage); *Icebox-Scoops v. Finanz St. Honore, B.V.*, 676 F.Supp.2d 100, 114 (E.D.N.Y. 2009) (holding that, where plaintiff pled only economic damages, negligent misrepresentation claim was barred by New York's economic loss rule and must be dismissed).

**F.      Cummins' Unjust Enrichment Claim Is Barred**

Cummins' unjust enrichment claim is barred under New York law by the existence of a

valid, binding contract between the parties.  *See* Pending Motion to Dismiss at 19-20.  While

Cummins suggests that "the scope of the contract does not cover the entirety of the dispute

between the parties" (C.R. at 21), Cummins does not explain what aspect of the dispute falls

outside the VUL policies.  Nor can it; the fees paid by Cummins to NYLIAC were all set forth

clearly in the policies.  Cummins' argument that it "is not seeking just reimbursement of the fees

paid to [NYLIAC] under the VUL Policies, but rather any financial gains to [NYLIAC]

attributable to Cummins' investment in [TOF III] including, for example, administrative fees paid

by Tremont to [NYLIAC]" (C.R. at 22) fails as a matter of New York law because unjust

enrichment requires that the "enrichment" in question be at *plaintiff's expense.  Kaye v. Grossman*,

202 F.3d 611, 616 (2d Cir. 2000) (holding that the "essence" of an unjust enrichment claim "is that

one party has received money or a benefit at the expense of another" and that such money or

benefit must be "specific and direct").  Thus, fees received by NYLIAC from anyone *other than*

*Cummins* do not support an unjust enrichment claim and are not recoverable.

**G.      Cummins Cannot Establish a Section 349 Claim**

Cummins' Section 349 claim should be dismissed and amendment denied as futile because

the overwhelming weight of New York federal and state authority (including the First Department

and all New York federal district courts that have addressed the subject) provides that Section 349

does not apply to securities-related transactions.[7]  Only the Fourth Department has held otherwise.

*See* C.R. at 23.  Thus, the Court should follow the majority and conclude that securities-related

---

[7]   *See, e.g., Pew v. Cardarelli*, 05 CV 1317, 2009 WL 3165759, at *5-6 (N.D.N.Y. Sept. 29, 2009); *Kassover v.*
     *UBS AG*, 619 Fed.Supp.2d 28, 37, n. 4 (S.D.N.Y. 2008); *In re Evergreen Mut. Funds Fee Litigation*, 423
     F.Supp.2d 249, 264–65 (S.D.N.Y. 2006); *In re Eaton Vance Mut. Funds Fee Litigation*, 380 F.Supp.2d 222, 240
     (S.D.N.Y. 2005), *aff'd Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110 (2d Cir. 2007); *In re Sterling Foster & Co.,*
     *Inc., Securities Litigation*, 222 F.Supp.2d 216, 285–86 (E.D.N.Y. 2002); *Dweck v. Oppenheimer & Co.*, 816
     N.Y.S.2d 440, 441 (1st Dept. 2006); *Gray v. Seaboard Securities, Inc.*, 788 N.Y.S.2d 471, 472–73 (3d Dept.
     2005); *Fesseha v. TD Waterhouse Investor Servs., Inc.*, 761 N.Y.S.2d 22, 23–24 (1st Dept. 2003).

claims are outside the reach of Section 349.

Cummins also makes the unremarkable and irrelevant contention that Section 349 applies to insurance policies generally.  C.R. at 23.  Tellingly, both of the cases cited by Cummins concern disputes over alleged misrepresentations by the insurer regarding premiums, and have no securities-related element whatsoever.  *See Gaidon v. Guardian Life Ins. Co.*, 94 N.Y.2d 330, 338-42 (1999); *Monter v. Massachusetts Mut. Life Ins. Co.*, 12 A.D.3d 651, 651 (2d Dep't 2004). Cummins also argues that corporate consumers have successfully alleged Section 349 claims, but its sole support for this proposition is a single 25-year old trial court decision involving a breach of warranty for a computer software system.  *See Schroders, Inc. v. Hogan Sys, Inc.*, 522 N.Y.S.2d 404, 406 (N.Y. Sup. Ct. 1987).  The weight of authority, including a New York Court of Appeals case addressing corporate-purchased insurance, establishes that Section 349 does not apply to large commercial transactions between sophisticated parties, such as the one at issue here.  *See New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 320-21 (1995) (dismissing Section 349 claim because purchase of insurance contract by major university with premiums in excess of $55,000 and a potential payout of $10 million did "not constitute consumer-oriented conduct").

Dated: New York, New York
       July 16, 2012

PILLSBURY WINTHROP SHAW PITTMAN LLP

By:    s/ Maria T. Galeno
        Maria T. Galeno
        Greg T. Lembrich
        1540 Broadway
        New York, NY  10036
        Telephone: (212) 858-1000
        Fax: (212) 858-1500
        maria.galeno@pillsburylaw.com
        greg.lembrich@pillsburylaw.com

*Attorneys for Defendants New York Life Insurance Company and New York Life Insurance and Annuity Corporation*

10