UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION : | Master File No. 08 Civ. 11117 (TPG) |
| : | |
| This Document Relates to: INSURANCE ACTION, 09 Civ. 557 (TPG), specifically to:: : | No. 11 Civ. 1283 (TPG) |
| YALE M. FISHMAN 1998 INSURANCE TRUST, Individually and on Behalf of All Others Similarly Situated and Derivatively on Behalf of the Nominal Defendant, : : : | |
| Plaintiff, : | |
| - against - | |
| PHILADELPHIA FINANCIAL LIFE ASSURANCE COMPANY F/K/A AGL LIFE ASSURANCE COMPANY, et al. : | |
| Defendants. : | |
| YALE M. FISHMAN 1998 INSURANCE TRUST and GLEN AKIVA FISHMAN LIFE INSURANCE TRUST, Individually and on Behalf of All Others Similarly Situated and Derivatively on Behalf of the Nominal Defendant, : : | No. 11 Civ. 1284 (TPG)<br><br>**Electronically Filed** |
| Plaintiff, : | |
| - against - : | |
| GENERAL AMERICAN LIFE INSURANCE COMPANY, et al. : | |
| Defendants. : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**REPLY BRIEF IN SUPPORT OF
THE MASSMUTUAL DEFENDANTS' CONSOLIDATED MOTION TO DISMISS
THE FISHMAN TRUSTS' AMENDED COMPLAINTS**

A/75095167.2

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................... 1

    A.    The Fishman Trusts Fail to State an Aiding and Abetting Claim against MassMutual.................................................................................................... 1

        1.    The Fishman Trusts Have Not Alleged that MassMutual Had Actual Knowledge of any Alleged Wrongdoing. ....................................... 2

        2.    The Fishman Trusts Have Not Alleged that MassMutual Substantially Assisted any Alleged Wrongdoing. ...................................... 5

    B.    The Fishman Trusts Are Not Limited Partners and Lack Standing to Pursue Derivative Claims on behalf of the Opportunity Fund. ............................. 6

CONCLUSION........................................................................................................................ 9

A/75095167.2

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Agile Safety Variable Fund, L.P. v. Tremont Group Holdings, Inc.*,
   No. 10 CV 2904 (Colo. Dist. Ct. June 11, 2012) ....................................................................1

*Branch v. Tower Air, Inc.*,
   No. 94 Civ. 6625 (JFK), 1995 WL 649935 (S.D.N.Y. Nov. 3, 1995) ......................................7

*Didiuck v. Kaszyci & Sons Contractors, Inc.*,
   974 F.2d 270 (2d Cir. 1992) ....................................................................................................5

*Flynn v. Bachow*,
   No. C.A. 15885, 1998 WL 671273 (Del. Ch. Sept. 18, 1998) .................................................7

*Forsythe v. ESC Fund Mgmt. Co. (U.S.), Inc.*,
   CA. No. 1091-VCL, 2007 WL 2982247 (Del. Ch. Oct. 9, 2007) ............................................8

*FutureSelect Portfolio Mgmt., Inc. v. Tremont Group Holdings, Inc.*,
   No. 10-2-30732-0 SEA (Sup. Ct. Wash. June 3, 2011) ...........................................................1

*Goldstein v. Groesbeck*,
   142 F.2d 422 (2d Cir. 1944) ....................................................................................................8

*In re Refco Inc. Sec. Litig.*,
   826 F. Supp. 2d 478 (S.D.N.Y. 2011) .....................................................................................2

*Jacobs v. Yang*,
   No. Civ.A. 206-N, 2004 WL 1728521 (Del. Ch. Aug. 2, 2004), *aff'd*, 867 A.2d 902
   (Del. 2005) ...............................................................................................................................8

*Kaufman v. Cohen*,
   760 N.Y.S.2d 157 (1st Dep't 2003) .....................................................................................2, 5

*Laties v. Wise*,
   No. Civ.A. 1280-N, 2005 WL 3501709 (Del. Ch. Dec. 14, 2005) ..........................................8

*Meridian Horizon Fund, LP v. KPMG (Cayman)*,
   Nos. 11-3311-cv, 11-3725-cv, 2012 WL 2754933 (2d Cir. July 10, 2012) ................2, 3, 5, 6

*Rales v. Blasband*,
   634 A.2d 927 (Del. Supr. Ct. 1993) ........................................................................................8

*Rosner v. Bank of China*,
   No. 06 CV 13562, 2008 WL 5416380 (S.D.N.Y. Dec. 18, 2008) ...........................................2

A/75095167.2

*Rosner v. Bank of China*,
  349 Fed. App'x. 637 (2d Cir. 2009) ................................................................................ 3

*Sagarra Inversiones, S.L. v. Cementos Portland Valderrivas, S.A.*,
  34 A.3d 1074 (Del. Supr. 2011) ..................................................................................... 8

*U.S. v. Bestfoods*,
  524 U.S. 51 (1998) ..................................................................................................... 4, 6

*Zutty v. Rye Select Broad Market Fund*,
  939 N.Y.S.2d 745, 2011 WL 5962804 (N.Y. Sup. Ct. 2011). ................................... 1, 7

**STATUTES**

DEL. CODE. ANN. Title 6 §§ 17-1001, 17-1002 (West 2006) ............................................ 7

N.Y. P'SHIP LAW § 121-901 (McKinney 2006) ................................................................ 7

N.Y. P'SHIP LAW § § 115-a (McKinney 2006) ............................................................. 7, 8

A/75095167.2

**INTRODUCTION**

In these two actions, the Fishman Trusts assert a single derivative claim on behalf of the Opportunity Fund against MassMutual: that MassMutual aided and abetted an alleged breach of fiduciary duty by the Tremont Defendants.[1]  The Fishman Trusts' allegations boil down to a claim that MassMutual should be held liable for the Tremont Defendants' alleged wrongdoing due to its status as the corporate great-grandparent of the general partner of the Opportunity Fund.  Ownership, however, is not a basis for liability absent evidence sufficient to pierce the corporate veil -- and the Fishman Trusts plead no such facts here.[2]  Further, the Fishman Trusts have no standing to assert a derivative claim for aiding and abetting a breach of fiduciary duty because, among other reasons, they are not limited partners in the Opportunity Fund (a fact the Fishman Trusts concede); rather they purchased VUL policies from insurance carriers.

A. **The Fishman Trusts Fail to State an Aiding and Abetting Claim against MassMutual.**

In their Omnibus Opposition ("Opp."), the Fishman Trusts argue that they have adequately alleged an aiding and abetting claim against MassMutual because MassMutual (a) had actual knowledge of the alleged wrongdoing because its subsidiary, OAC, conducted diligence prior to acquiring Tremont and allegedly knew or should have known of the "red flags" surrounding Madoff and because MassMutual had representation on TGHI's board; and (b) substantially assisted the alleged wrongdoing by failing to disclose the risks of investing with

---

[1] Capitalized terms herein have the same meaning as in the MassMutual Defendants' Memorandum of Law in Support of Its Motion to Dismiss.  As used herein, "AGL" refers to the amended complaint in Civ. Action No. 11-cv-1283 (TPG), the suit involving policies purchased from Philadelphia Financial; "GenAm" refers to the amended complaint in Civ. Action No. 11-cv-1284 (TPG), the suit involving policies purchased from GenAmerica, and "Complaints" refer to both amended complaints.

[2] Several state courts have granted motions to dismiss similar claims based on MassMutual's status as corporate great-grandparent.  *See, e.g., Agile Safety Variable Fund, L.P. v. Tremont Group Holdings, Inc.*, No. 10 CV 2904 (Colo. Dist. Ct. June 11, 2012); *FutureSelect Portfolio Mgmt., Inc. v. Tremont Group Holdings, Inc.*, No. 10-2-30732-0 SEA (Sup. Ct. Wash. June 3, 2011); *Zutty v. Rye Select Broad Mkt. Prime Fund, L.P.*, 939 N.Y.S.2d 745, 2011 WL 5962804, **5-7 (N.Y. Sup. Ct. 2011).

Madoff and providing the Tremont Defendants with a wide distribution network.  *See* Opp. at 56-60.  Even if these claims were supported by factual allegations in the Complaints (which they are not), the Fishman Trusts have not stated an aiding and abetting claim against MassMutual.[3]

### 1. The Fishman Trusts Have Not Alleged that MassMutual Had Actual Knowledge of any Alleged Wrongdoing.

As the Second Circuit Court of Appeals recently held, "[a]lthough a plaintiff is not required to allege that the aider and abettor had an intent to harm, there must be an allegation that such defendant had actual knowledge of the breach of duty."  *Meridian Horizon Fund, LP v. KPMG (Cayman)*, Nos. 11-3311-cv, 11-3725-cv, 2012 WL 2754933, *5 (2d Cir. July 10, 2012) (quoting *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 169 (1st Dep't 2003)) (affirming dismissal under Rule 12(b)(6) of aiding and abetting claims against auditors of various funds managed by Tremont Partners with exposure to Madoff).  "Constructive knowledge of the breach of fiduciary duty by another is legally insufficient to impose aiding and abetting liability."  *Kaufman*, 760 N.Y.S.2d at 169 (citing *Kolbeck v. LIT Am.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996)).[4]

The Fishman Trusts claim in their Opposition that, based on OAC's diligence of Tremont, MassMutual had knowledge of "the voluminous red flags surrounding Madoff's trading and purported results," referring to Paragraph 8 in the Complaints.  Opp. at 57-58.  Paragraph 8, however, is a blanket allegation that undifferentiated "Defendants" "knowingly, recklessly and/or *negligently* ignored numerous 'red flags' that *could have alerted* them to the

---

[3] The Fishman Trusts' claim against MassMutual also should be dismissed because they do not state an underlying breach of fiduciary claim against the Tremont Defendants.

[4] The Fishman Trusts attempt to evade the "actual knowledge" requirement by arguing that the Court should apply a lessor standard of "conscious avoidance," citing *Fraternity Fund v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349 (S.D.N.Y. 2007).  Opp. at 58.  *Fraternity Fund* represents a minority view, as numerous decisions in this district have recognized.  *See, e.g., Rosner v. Bank of China*, No. 06 CV 13562, 2008 WL 5416380, at *8 (S.D.N.Y. Dec. 18, 2008), *aff'd*, 349 Fed. App'x. 637 (2d Cir. 2009) ("*Fraternity Fund* is in the minority of cases in this District that have permitted an allegation of willful blindness to satisfy the scienter requirement of actual knowledge"); *In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 516-17 (S.D.N.Y. 2011) (same).

fact that Madoff was running a … Ponzi scheme."  (Emphasis added.)  Such unspecified allegations do not say anything about MassMutual's *actual knowledge of any wrongdoing*.  As the Fishman Trusts admit in their Opposition, access to information during diligence only means that MassMutual (allegedly) "knew or should have known of the red flag warning signs of Madoff's operations."  Opp. at 13.

Even assuming that MassMutual had knowledge of "red flags," such knowledge does not amount to actual knowledge of wrongdoing.  In a related Madoff case, the Second Circuit rejected that "the purported 'red flags' … should have put the Auditors on notice of the Madoff fraud. …'the more compelling inference as to why Madoff's fraud went undetected for two decades was his proficiency in covering up his scheme and deceiving the SEC and other financial professionals.'"  *Meridian Horizon Fund, LP*, 2012 WL 2754933, at *3 (quoting *Meridian Horizon Fund, LP v. Tremont Grp. Holdings, Inc.*, 747 F. Supp. 2d 406, 413 (S.D.N.Y. 2010)).  Instead, "the facts alleged … only go so far as to suggest that [defendant] *should* have known that something was amiss with [the] transactions, [plaintiff's] conclusory statements on appeal that [defendant] *actually* knew something notwithstanding.  As the district court held, such a showing is insufficient to support an aiding-and-abetting claim under New York law."  *Rosner*, 349 Fed. App'x. at 639 (emphasis in original).

The Fishman Trusts also claim that MassMutual "had intimate knowledge of and approved of the issuance of the false and misleading statements alleged in the Complaints," citing allegations in the Complaints that MassMutual's subsidiary, OAC, acquired Tremont and MassMutual had representation on TGHI's board of directors.  Opp. at 56, citing AGL ¶¶ 144-52, GenAm ¶¶ 146-54.  None of these alleged facts -- really, just descriptions of ownership -- support an inference that MassMutual had actual knowledge of any alleged wrongdoing -- let alone the claimed "intimate knowledge."[5]

---

[5] The Complaints allege, for example, that "MassMutual's majority stock ownership of Oppenheimer and its installment of its own officers in high level executive positions at

(Footnote Continued on Next Page.)

That MassMutual is the corporate great-grandparent of Tremont Partners, the general partner of the Opportunity Fund, or has representation on the board of TGHI is not sufficient to show actual knowledge of a subsidiary's alleged breach of fiduciary duty.  To hold otherwise would upend well established principles of corporate law: "it is hornbook law that the exercise of the 'control' which stock ownership gives to the stockholders ... will not create liability beyond the assets of the subsidiary.  That 'control' includes the election of directors, the making of by-laws ... and the doing of all other acts incident to the legal status of stockholders." *U.S. v. Bestfoods*, 524 U.S. 51, 61-62 (1998) (internal quotations and citation omitted).[6]

In sum, the Fishman Trusts' conclusory allegation that MassMutual "by virtue of their control [(*i.e.*, ownership)]" had unspecified "actual knowledge of the breach of fiduciary duty

---

(Footnote Continued from Previous Page.)

Oppenheimer gave MassMutual control over all aspects of Oppenheimer and Oppenheimer's subsidiaries, including OppenheimerFunds, Inc. and Tremont." AGL ¶ 147; GenAm ¶ 149.  This is an allegation of ownership, not actual knowledge.  The other allegations that the Fishman Trusts cite in support of their argument that they have adequately alleged MassMutual's actual knowledge do not mention MassMutual by name.  *See* Opp. at 56-58 (citing AGL ¶¶ 7, 12, 58, 87-90, 97, 99).

The Fishman Trusts also make the remarkable claim that the Complaints allege "that OAC and MassMutual had day-to-day involvement with Tremont and the Nominal Defendants." Opp. at 58 n.39 (citing GenAm ¶ 134 and PFLAC [AGL] ¶ 132).  What the Fishman Trusts mean by "day-to-day involvement" and how it constituted actual knowledge remain unspecified.  The cited paragraphs allege that:

> MassMutual's annual reports for 2006 and 2007 state that "Massachusetts Mutual Life Insurance Company and its subsidiaries have offices around the globe," and list and provide contact information for "OppenheimerFunds, Inc., Tremont Group Holdings, Inc. and Tremont Capital Management Ltd."  The three subsidiaries are identified as "general agencies and other offices."

AGL ¶ 132, GenAm ¶ 134.  That a corporate great-grandparent publishes a list of contact information for its subsidiaries is hardly an allegation of "day-to-day involvement" in wrongdoing or knowledge of wrongdoing.

[6] The Fishman Trusts do not plead veil piercing or allege any facts that would support piercing the corporate veil.  To the contrary, they allege that Tremont was a pre-existing and adequately capitalized business, initially focused on "consulting for pension funds and traditional asset management." AGL ¶ 87, GenAm ¶ 89.  It went "public in 1992 … until approximately October 2001, when it was acquired by Oppenheimer." *Id.* "Tremont Group had approximately 65 employees, advised on more than $8 billion in alternative investments …" *Id.*  Tremont had been placing funds with Madoff since the early 1990s. *Id.* at ¶ 88, ¶ 90.

-4-

complained of herein," AGL ¶ 248, GenAm ¶ 250, cannot satisfy the pleading requirement for actual knowledge.  *See, e.g., Kaufman*, 760 N.Y.S.2d at 169-70 ("[a]part from … conclusory allegation[s], there are no facts in the complaint from which it could be inferred that [MassMutual] had actual knowledge [of any breach of fiduciary duty owed to the Plaintiffs]").

### 2. The Fishman Trusts Have Not Alleged that MassMutual Substantially Assisted any Alleged Wrongdoing.

"[A] plaintiff must show that the defendant provided 'substantial assistance' to the primary violator, which 'means more than just performing routine business services for the alleged fraudster.'" *Meridian Horizon Fund, LP*, 2012 WL 2754933 at *5 (quoting *CRT Invs., Ltd. v. BDO Seidman, LLP*, 925 N.Y.S.2d 439, 441 (1st Dep't 2011)) (internal citations omitted). For substantial assistance, the Fishman Trusts must allege that MassMutual's actions "enable[d] the fraud to proceed" and "proximately caused the harm on which the primary liability is predicated."  *See Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank*, N.A., 261 F.R.D. 13, 25 (S.D.N.Y. 2009) (citations and internal quotations omitted).

The Fishman Trusts argue (but do not allege in the Complaints) that MassMutual substantially assisted the breach of fiduciary duty by "reviewing, and not amending" various offering materials and that "MassMutual had a duty to investigate further … the Tremont Defendants' breaches [but] fail[ed] to do so." Opp. at 59.[7]  Under New York law, MassMutual can only be held liable for a failure to act if it had an affirmative duty to plaintiffs.  "[T]he mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff."  *Kaufman*, 760 N.Y.S.2d at 170 (citations omitted).  As the corporate great-grandparent of the Opportunity Fund's general partner, MassMutual owed no duty to the Fishman Trusts (and they do not allege otherwise).

---

[7] Plaintiffs cite *Didiuck v. Kaszyci & Sons Contractors, Inc.*, 974 F.2d 270 (2d Cir. 1992), in support of its argument that Plaintiffs have alleged substantial assistance.  That case is inapposite, having applied a lower standard of constructive knowledge to affirm a claim involving a company who assisted a trustee in breaching his fiduciary obligations to fund a union pension fund by undercounting workers on a job site.

The Fishman Trusts also claim that MassMutual substantially assisted an alleged wrongdoing by engaging in "joint marketing programs" with Tremont (Opp. at 60 n.40), by giving "the Tremont Defendants the means to market their funds to a larger pool of potential investors by virtue of their wide distribution network" (*id.* at 59, citing AGL ¶ 143, GenAm ¶ 144). The Fishman Trusts' "marketing" theory rests on a series of allegations about MassMutual's annual reports. However, with the exception of an allegation that MassMutual provides "contact information" for certain subsidiaries including Tremont, the Complaints do not allege that the MassMutual annual reports mention Tremont (nor do the Complaints quote any annual report mentioning Tremont). *Compare* AGL ¶ 132, GenAm ¶ 134 (listing Tremont's contact information) *with* AGL ¶¶ 133-41, GenAm ¶¶ 135-43. In any event, "routine business services" such as disclosing ownership of a subsidiary or having a "wide distribution network" do not amount to substantial assistance that proximately caused the alleged wrongdoing. *See Meridian Horizon Fund, LP*, 2012 WL 2754933 at *5.

Relying on the same innocuous allegations regarding MassMutual's annual reports, the Fishman Trusts argue that MassMutual "provided substantial assistance by influencing and controlling the content of the various account statements administered by the Tremont Defendants … to Plaintiffs …" Opp. at 56. There are no factual allegations in the Complaints from which any reasonable inference may be drawn that MassMutual had any role with regard to "account statements" provided to the Fishman Trusts (policyholders of other insurance carriers). Rather, again, the Fishman Trusts are using "control" as a synonym for ownership in an effort to circumvent the "general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *Bestfoods*, 524 U.S. at 61 (citations and internal quotations omitted).

**B.   The Fishman Trusts Are Not Limited Partners and Lack Standing to Pursue Derivative Claims on behalf of the Opportunity Fund.**

The Fishman Trusts' aiding and abetting claim should be dismissed for the separate and independent reason that they lack standing to bring this derivative claim on behalf of the

Opportunity Fund. The Fishman Trusts contend that they have standing because (1) New York, not Delaware, law governs the question of standing; (2) they should be excused from the requirement that only limited partners of a fund may bring derivative claims; (3) they should be excused from making a pre-suit demand; and (4) their claims are not barred by the Settlement Agreement in *In Re Tremont Securities Law, State Law and Insurance Litigation,* Civ. A. 08-cv-11117.[8] Opp. at 18-24. Each of these arguments should be rejected.

First, Section 121-901 of the New York Partnership Law provides that "the laws of the jurisdiction under which a foreign limited partnership is organized govern its organization and internal affairs…" N.Y.P.L. § 121-901 (McKinney 2006). Here, that jurisdiction is Delaware.[9] Accordingly, Delaware law governs the question of whether the Fishman Trusts have standing to bring a derivative claim. *See, e.g., Zutty*, 2011 WL 5962804, at \*\*5-7 (applying Delaware law to determine plaintiffs lacked standing for a derivative aiding and abetting claim).

Second, the Fishman Trusts point to no law that would support upending the traditional rule that derivative claims brought on behalf of a fund can only be brought by limited partners of that fund or their assignees. *See* DEL. CODE. ANN. tit. 6, §§ 17-1001, 17-1002 (West 2006); N.Y.P.L. § 115-a (McKinney 2006); *see also Flynn v. Bachow*, No. C.A. 15885, 1998 WL 671273, at \*3 (Del. Ch. Sept. 18, 1998) (only limited partners may bring a derivative suit on behalf of a limited partnership). The Fishman Trusts concede that they are not limited partners of the Opportunity Fund (Opp. at 20), but argue they nevertheless have standing to bring a

---

[8] The Fishman Trusts also lack standing because only trustees can bring suit on behalf of a Trust, and here, the trustees have not sued. *See* MassMutual's Opening Brief at 7-8. In response, the Fishman Trusts aver in the Opposition that the "these actions are being pursued at the direction of the trustees on behalf of the Fishman Trusts." Opp. at 24, n.15. However, "memoranda and supporting affidavits in opposition to a motion to dismiss cannot be used to cure a defective complaint …" *Branch v. Tower Air, Inc.*, No. 94 Civ. 6625 (JFK), 1995 WL 649935, \*6 (S.D.N.Y. Nov. 3, 1995).

[9] The cases cited in support of the argument that New York law should apply either predate or do not cite Section 121-901; concern corporations, not limited partnerships; and/or do not address the requirements for standing to bring a derivative claim. *See* Opp. at 18-19.

"double derivative" suit under a line of cases that includes *Rales v. Blasband*, 634 A.2d 927, 930 (Del. Supr. Ct. 1993).[10]  This case law is inapplicable: the "double derivative" suits permitted under Delaware law involve "a stockholder of a parent corporation [who] seeks recovery for a cause of action belonging to a subsidiary corporation."  *See id.* at 932; *see also Sagarra Inversiones, S.L. v. Cementos Portland Valderrivas, S.A.*, 34 A.3d 1074, 1079 (Del. Supr. 2011). Critical to a permissible "double derivative" suit is that (a) plaintiffs are shareholders in the parent entity and (b) "bring suit derivatively to enforce the claim of a wholly owned corporate subsidiary, where the subsidiary and its controller parent wrongfully refuse to enforce the subsidiary's claim directly."  *See id.*  Here, the Fishman Trusts fail on all counts.  They are policyholders of insurance carriers, not limited partners, and the insurance carriers are not the parent company of the Opportunity Fund.

Third, contrary to the Fishman Trusts' claim that pre-suit demand should be excused because Tremont "would need to sue themselves" (Opp. at 22), Delaware courts hold that demand is not excused "merely because [the general partner] would be suing [itself]." *Jacobs v. Yang*, No. Civ.A. 206-N, 2004 WL 1728521, at *6 n.31 (Del. Ch. Aug. 2, 2004), *aff'd*, 867 A.2d 902 (Del. 2005).  As set forth in the Tremont Defendants' Motion to Dismiss and Reply Brief, the Fishman Trusts have not pled particularized facts sufficient to excuse the requirement of a pre-suit demand.  *See Laties v. Wise*, No. Civ.A. 1280-N, 2005 WL 3501709, at *1 (Del. Ch. Dec. 14, 2005) (plaintiffs must plead "with particularity why demand should be excused").[11]

---

[10] The Fishman Trusts' reliance on *Goldstein v. Groesbeck*, 142 F.2d 422, 425 (2d Cir. 1944), to support its standing argument is also misplaced. *See* Opp. at 20.  That case predates the enactment of N.Y.L.P. § 115-a, which provides only a limited partner or assignee may bring a derivative action, and only after a pre-suit demand is made.

[11] *Forsythe v. ESC Fund Mgmt. Co. (U.S.), Inc.*, CA. No. 1091-VCL, 2007 WL 2982247, *1 (Del. Ch. Oct. 9, 2007), cited by the Fishman Trusts (Opp. at 22), is inapposite.  In that case, the partnership agreement "impose[d] a duty upon the general partner to take active steps to satisfy itself that the conflicted [persons] actually discharge their powers loyally to the fund and in conformity with the partnership agreement." *Id.*  "Because the complaint adequately allege[d] facts which, if true, show that the general partner did not fulfill that duty, demand [was] excused." *Id.*  No such facts are alleged here.

Fourth, the Settlement Agreement bars claims brought by or on behalf of the Opportunity Fund. The Fishman Trusts concede that "the Insurance Company Defendants entered into limited partnership agreements with [the Opportunity Fund] and would have standing to assert derivative claims on behalf of [the Opportunity Fund]," but claim the Insurance Company Defendants are conflicted. Opp. at 20. Thus, "Plaintiffs stand in the shoes of the Insurance Company Defendants … to assert derivative claims … against the Tremont and MassMutual Defendants" on behalf of the Opportunity Fund. *Id.* These derivative claims that the limited partner "Insurance Company Defendants" purportedly would have standing to assert, however, are claims that the Settlement Agreement releases and bars. *See In Re Tremont Securities Law, State Law and Insurance Litig.*, 08-cv-11117 (S.D.N.Y., Griesa, J.), Section 15 of the Final Judgment (Docket No. 604).

## CONCLUSION

Massachusetts Mutual Life Insurance Company and MassMutual Holding LLC respectfully pray that this Court dismiss the claims against them with prejudice.

BINGHAM McCUTCHEN LLP

Dated: August 14, 2012

   s/ Carol E. Head
Joseph L. Kociubes*
joseph.kociubes@bingham.com
Carol E. Head*
carol.head@bingham.com
One Federal Street
Boston, MA 02110
Tel.: (617) 951-8000
*admitted pro hac vice*

Kenneth I. Schacter
399 Park Avenue
New York, NY 10022
Tel.: (212) 705-7000
kenneth.schacter@bingham.com

*Attorneys for Defendants Massachusetts Mutual Life Insurance Company and MassMutual Holding LLC*