IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
IN RE TREMONT SECURITIES LAW, :
STATE LAW AND INSURANCE :
LITIGATION : Master File No.
------------------------------------------------------------: 08 Civ. 11117 (TPG)
This Document Relates to: :
Insurance Action, 09 Civ. 557 (TPG), :
Specifically to: :
 : 11 Civ. 1283 (TPG)
YALE M. FISHMAN 1998 INSURANCE TRUST, :
 :
Plaintiff, :
- against - :
 :
PHILADELPHIA FINANCIAL LIFE :
ASSURANCE COMPANY, et al., : ECF Cases
                       Defendants : Electronically Filed
--------------------------------------------------------- :
YALE M. FISHMAN 1998 INSURANCE TRUST, :
and GLENN AKIVA FISHMAN LIFE :
INSURANCE TRUST, :
 :
Plaintiff, :
 :
- against - : 11 Civ. 1284 (TPG)
 :
GENERAL AMERICAN LIFE INSURANCE :
COMPANY, et al., :
                       Defendants.   x
------------------------------------------------------------

**DEFENDANT OPPENHEIMER ACQUISITION CORP.'S
REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
<u>MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINTS</u>**

                                                    David A. Kotler
                                                    DECHERT LLP
                                                    902 Carnegie Center, Suite 500
                                                    Princeton, New Jersey 08540
                                                    Tel.: (609) 955-3200
                                                    Fax: (609) 955-3259
                                                    *Attorneys for Defendant Oppenheimer*
                                                    *Acquisition Corp.*

**PRELIMINARY STATEMENT**

Plaintiffs' Omnibus Opposition to Defendants' Motions to Dismiss ("Opp.") fails to provide any cognizable basis as to why their lone claim against Oppenheimer Acquisition Corp. ("OAC"), for aiding and abetting breach of fiduciary duty, should proceed into discovery. Through their notable silence in their opposition brief, Plaintiffs properly concede each of the following: (1) they never had any contact with OAC; (2) OAC never had any involvement in the management of Plaintiffs' insurance policies or their indirect investments in the Tremont-sponsored Rye Funds; and (3) OAC did not know of Madoff's Ponzi scheme. Thus, Plaintiffs hope to keep OAC in this action through nothing more than threadbare allegations that OAC's purported "control and influence" over Tremont constitutes both actual knowledge of, and substantial assistance in, Tremont's alleged fiduciary duty breach. However, the law does not permit Plaintiffs to state an aiding and abetting claim on such conclusory or illogical bases.

For example, Plaintiffs' contention that OAC's mere ability to access information as Tremont's parent suffices to impute knowledge by OAC of the "red flags" of Madoff's fraud not only fails because "red flags" allegations are legally insufficient to state an aiding and abetting claim, but because Plaintiffs' assertion that OAC *could have* accessed information that *would have* revealed red flags is far too attenuated to meet the actual knowledge requirement. Moreover, neither Plaintiffs' half-hearted attempt to pass off OAC's lack of participation as affirmative assistance nor their miscellaneous assertions regarding marketing activities unrelated to the Rye Funds by non-party OppenheimerFunds, Inc. ("OFI") can sustain Plaintiffs' burden of pleading OAC's substantial assistance with an alleged breach of fiduciary duty by Tremont.

In sum, Plaintiffs' claim as against OAC remains premised on the implausible notion that OAC invested $145 million to purchase Tremont while deliberately ignoring glaring "red flags" that it was in fact dealing itself into a share of the largest financial fraud in history. Plaintiffs'

claim against OAC is thus as irrational as it is factually void.  Plaintiffs' attempt to keep OAC in this litigation as a deep pocket -- notwithstanding that they cannot and do not allege any action by OAC outside of its benign role as the holding company parent of Tremont Group -- should be rejected, and their aiding and abetting claim against OAC should be dismissed.[1]

## ARGUMENT

### I. PLAINTIFFS' AIDING AND ABETTING CLAIM AGAINST OAC FAILS AS A MATTER OF LAW

Plaintiffs' allegations in support of their aiding and abetting claim against OAC all boil down to the broad proposition that because OAC was Tremont's corporate parent it necessarily had "control over the Tremont Defendants" -- and therefore OAC must have had actual knowledge of and approved Tremont's alleged misstatements, and it must have actually influenced Tremont's decision to invest with Madoff.  Opp. at 56.  However, Plaintiffs do not allege any facts to support their broad suppositions regarding OAC's actual knowledge of Tremont's alleged breach of fiduciary duty, and they do not even attempt to allege that OAC reviewed Tremont's alleged statements or required Tremont to obtain OAC's approval of such statements.  Moreover, Plaintiffs' theory -- whereby any alleged level of corporate control is equivalent to both actual knowledge and substantial assistance -- would render any parent company strictly liable as an aider and abettor to its subsidiary's alleged wrongdoing.  This

---

[1]     Numerous state courts already have granted motions to dismiss in response to similar efforts to state claims against OAC based on its status as Tremont's parent company.  *See Agile Safety Variable Fund, L.P. v. Tremont Group Holdings, Inc.*, No. 10 CV 2904 (Colo. Dist. Ct. June 11, 2012); *FutureSelect Portfolio Mgmt., Inc. v. Tremont Group Holdings, Inc.*, No. 10-2-30732-0 SEA (Sup. Ct. Wash. June 3, 2011); *Zutty v. Rye Select Broad Mkt. Prime Fund, L.P.*, 939 N.Y.S.2d 745 (N.Y. Sup. Ct. 2011).

theory has been soundly rejected by the U.S. Supreme Court on down (*see, e.g., United States v. Bestfoods*, 524 U.S. 51, 61 (1998)), and this Court should reach the same conclusion.[2]

### A. Plaintiffs Have Not Alleged OAC's Actual Knowledge

Recognizing that they cannot allege OAC's actual knowledge of Madoff's fraud, Plaintiffs now premise their aiding and abetting claim on vague allegations that OAC had "control and influence" over Tremont and therefore "knew of the voluminous red flags surrounding Madoff's trading and purported results." Opp. at 56-58. However, Plaintiffs do not provide a single allegation that OAC actually knew of any of the supposed "red flags."[3] Instead, Plaintiffs now argue that OAC *should have known* of these "red flags" because: (1) OAC conducted routine pre-acquisition due diligence on Tremont; (2) other unrelated parties allegedly recognized warning signs of Madoff's fraud; and (3) OAC was represented on its subsidiary's board and supervised Tremont Partners' management of funds unrelated to Madoff and entirely unconnected to Plaintiffs' claim. Opp. at 13, 57. This argument fails as a matter of settled law.

As set forth in OAC's opening brief -- and nowhere rebutted by Plaintiffs' opposition -- "red flags" allegations are legally insufficient to state an aiding and abetting claim. *See* cases cited in OAC Br. at 7-8. Indeed, as the Second Circuit recently recognized, aiding and abetting claims premised on the inference that defendants "ignored 'red flags' of Madoff's fraud" are properly disposed of at the motion to dismiss stage because such an inference "is neither strong

---

[2] Plaintiffs' opposition also does nothing to rebut the argument that their aiding and abetting claim must be dismissed because Plaintiffs lack standing to assert a derivative claim on behalf of the Funds. *See* The Tremont Defendants' Reply Memorandum Of Law In Further Support Of Their Motion To Dismiss The Amended Complaints at Point I; Reply Brief In Support Of The MassMutual Defendants' Consolidated Motion to Dismiss the Fishman Trusts' Amended Complaints at Point B.

[3] The lone paragraph Plaintiffs rely on in arguing OAC ignored "red flags" only conclusorily asserts that undifferentiated "defendants" ignored such "red flags" (Opp. at 57-58) and therefore is legally insufficient to put OAC on notice of the allegations against it. *See* OAC's Memorandum Of Law In Support Of Its Motion To Dismiss The Consolidated Amended Complaints ("OAC Br.") at 7 n.9.

3

nor nearly as compelling as other, competing inferences." *Meridian Horizon Fund, LP v. KPMG (Cayman)*, Nos. 11-3311, 11-3725, 2012 WL 2754933, at **3, 5 (2d Cir. July 10, 2012) (affirming this Court's dismissal of aiding and abetting claim).[4]  As Judge Sand recognized in dismissing another Madoff-related action, in words equally applicable here:

> For twenty years, Madoff operated this fraud without being discovered and with only a handful of investors withdrawing their funds as a result of their suspicions.  The actions of the minority cannot support an inference of intent to defraud as to the numerous other investors who were still in the dark.  An inference of scienter here is simply not as cogent and compelling as the opposing inference of nonfraudulent intent.

*Newman v. Family Mgmt. Corp.*, 748 F. Supp. 2d 299, 311 (S.D.N.Y. 2010).

Even if "red flags" allegations somehow were sufficient to allege actual knowledge, Plaintiffs do not allege that OAC actually knew of any of the supposed "red flags."  Instead, Plaintiffs allege that (1) OAC had "access to information" such that it "*should have* known of red flag warning signals of Madoff's operations," and (2) "a review of public documents *would have* alerted" OAC to news articles raising red flags about Madoff's scheme.  Opp. at 13 (emphasis added).  Thus, Plaintiffs' argument that OAC should have uncovered information that would have alerted it to red flags is even further attenuated than the "red flags" allegations courts commonly reject as insufficient.

Undoubtedly aware of the inherent weaknesses in their actual knowledge allegations, Plaintiffs suggest that "conscious avoidance" is enough to plead actual knowledge.  Opp. at 58.  However, Plaintiffs' suggestion "is inconsistent with the prevailing judicial opinion" in this

---

[4]     Plaintiffs cite *Jackson National Life Insurance Co. v. Kennedy*, 741 A.2d 377 (Del. Ch. 1999), for the proposition that actual knowledge can be inferred merely from the review of due diligence materials.  Opp. at 57.  The *Jackson* court did not so hold, but rather merely accepted the plaintiff's allegations of the defendant's knowledge of specific details of the underlying fraud through its review of certain documents and that the defendant offered financial incentives to induce and aid the primary violator's breach.  741 A.2d at 392-93.  Plaintiffs here do not and cannot make such targeted allegations with respect to OAC.

4

district. *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 253 n.4 (S.D.N.Y. 2005). Moreover, even if "conscious avoidance" could suffice to allege actual knowledge, Plaintiffs do not even attempt to cite any paragraphs in their Amended Complaints that purport to meet this standard. *See* Opp. at 58.

Simply put, Plaintiffs do not (because they cannot) plausibly allege that OAC suspected Madoff's fraud but looked the other way and instead elected to buy Tremont for $145 million.

### B. Plaintiffs Have Not Alleged OAC's Substantial Assistance

Plaintiffs similarly attempt to side-step their failure to allege OAC's substantial assistance by now arguing that OAC: (1) "help[ed] to conceal Madoff's involvement in [Tremont Partners];" (2) "induc[ed] the Tremont Defendants to continue their relationship with Madoff by offering lucrative employment contracts to Manzke and Schulman due to their relationship with Madoff;" and (3) gave "the Tremont Defendants the means to market their funds to a larger pool of potential investors by virtue of their wide distribution network." Opp. at 59. These arguments allege nothing more than that OAC was Tremont's parent which, as a matter of law, fails to meet the substantial assistance element of an aiding and abetting claim.

First, because OAC played no conceivable role in Tremont's alleged breach, Plaintiffs attempt to frame OAC's *inaction* as "help[ing] to conceal" Madoff's fraud. Opp. at 59. But, because Plaintiffs cannot allege any basis on which OAC owed Plaintiffs any legal duty,[5] their argument that OAC provided substantial assistance by not amending offering memoranda or making disclosures to investors completely misses the mark. *In re Sharp Int'l Corp.*, 403 F.3d

---

[5] The *Diduck* case that Plaintiffs cite in support of their argument that OAC owed some "duty to investigate" is inapposite. *See* Opp. at 59 (citing *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 284 (2d Cir. 1992)). There, the court's finding of "knowing participation" hinged on its application of the outdated and inapplicable lower standard of constructive knowledge, which clearly goes against the current weight of authority in this District (*see* Section I.A., *infra*).

43, 51 (2d Cir. 2005) (dismissing aiding and abetting claims where defendant owed no duty to plaintiff and "[a]rtful pleading aside" all of plaintiff's allegations "come down to omissions or failures to act").

Second, even if Plaintiffs could provide any factual support for their blunderbuss assertion that OAC offered "lucrative employment contracts to [Tremont executives] Manzke and Schulman," this allegation suggests only that OAC -- like any acquiring company -- sought to keep the management of the company it acquired intact.  Plaintiffs inexplicably conclude from this benign and unsupported fact that OAC "induc[ed] the Tremont Defendants to continue their relationship with Madoff."  Opp. at 59.  Setting aside this massive illogical leap, Plaintiffs allege only that Manzke and Schulman were "hired as executives of OppenheimerFunds" and "enjoyed the same benefits as other OppenheimerFunds, Inc. executives."  AGL Compl. ¶ 142; Am. Life Compl. ¶ 144.  That OFI, a non-party to this action with no connection to any Madoff funds, chose to retain experienced Tremont executives in no way supports a plausible inference that *OAC* substantially assisted Tremont's purported breach of fiduciary duty.  Plaintiffs do not (and cannot) allege that OAC was even involved in the retention of these executives, let alone that those executives were hired specifically to further Madoff's fraud.  Plaintiffs thus fail to allege -- as they must -- how OFI's hiring of former Tremont employees plausibly could be "the proximate cause of the harm on which the primary liability is predicated" as against OAC. *Mazzaro de Abreu v. Bank of America Corp.*, 525 F. Supp. 2d 381, 388 (S.D.N.Y. 2007).

Finally, Plaintiffs' contention that OAC's marketing distribution network substantially assisted Tremont's alleged breach fares no better.  Opp. at 59.  First, OAC is merely a holding company and does not even have a "marketing distribution network" -- and Plaintiffs do not allege otherwise.  Second, Plaintiffs fail to identify how this supposed "network" was connected

to Tremont's alleged breach of fiduciary duty, and they certainly do not allege that Plaintiffs invested through (or even knew of) this purported network such that it was the cause of their alleged harm.  *See Rosner v. Bank of China*, 2008 WL 5416380, at *12 (S.D.N.Y. Dec. 18, 2008) (finding allegations of "'but for' causation . . . not sufficient to establish aider and abettor liability").  Finally, even if Plaintiffs somehow could connect this alleged "distribution network" to their harm, they still do not and cannot make the requisite allegation that OAC "affirmatively assist[ed], help[ed] conceal or fail[ed] to act when required to do so, thereby enabling the breach to occur."  *Kaufman v. Cohen*, 307 A.D.2d 113, 126 (1st Dep't 2003) (affirming dismissal of aiding and abetting claim); *see also CRT Invs., Ltd. v. BDO Seidman, LLP*, 925 N.Y.S.2d 439, 441 (1st Dep't 2011) ("substantial assistance . . . means more than just performing routine business services" for the alleged underlying violator).

## CONCLUSION

For the foregoing reasons, as well as those set forth in its opening brief, OAC respectfully submits that its motion to dismiss the Amended Complaints should be granted, and that the claim against it should be dismissed in its entirety and with prejudice.

Dated: August 14, 2012

      DECHERT LLP

      By: /s/ David A. Kotler
      David A. Kotler
      david.kotler@dechert.com
      902 Carnegie Center, Suite 500
      Princeton, New Jersey 08540
      Tel.: (609) 955-3200
      Fax: (609) 955-3259

      *Attorneys for Defendant Oppenheimer Acquisition Corp.*

14493955