UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
                                      x
In re TREMONT SECURITIES LAW, STATE   :  Master Docket No. 08-Civ-11117 (TPG)
LAW AND INSURANCE LITIGATION          :
                                      :
_____:
                                      :
YALE M. FISHMAN 1998 INSURANCE        :  Civil Action No. 11-cv-1283 (TPG)
TRUST, Individually and On Behalf of All :
Others Similarly Situated and Derivatively on :
Behalf of the Nominal Defendant,      :
                                      :  REPLY IN SUPPORT OF
             Plaintiff,               :  PHILADELPHIA FINANCIAL LIFE
                                      :  ASSURANCE COMPANY'S MOTION
     vs.                              :  TO DISMISS THE CONSOLIDATED
                                      :  AMENDED DIRECT AND VERIFIED
PHILADELPHIA FINANCIAL LIFE           :  DERIVATIVE COMPLAINT
ASSURANCE COMPANY F/K/A AGL LIFE      :
ASSURANCE COMPANY, TREMONT            :
CAPITAL MANAGEMENT, INC.,             :
TREMONT GROUP HOLDINGS, INC.,         :
TREMONT PARTNERS, INC., RYE           :
INVESTMENT MANAGEMENT,                :
TREMONT OPPORTUNITY FUND III, L.P.,   :  **Electronically Filed**
RYE SELECT BROAD MARKET               :
INSURANCE FUND LP RYE SELECT          :
BROAD MARKET PRIME FUND LP, RYE       :
SELECT BROAD MARKET XL FUND LP,       :
MASSMUTUAL HOLDING LLC,               :
MASSACHUSETTS MUTUAL LIFE             :
INSURANCE CO., OPPENHEIMER            :
ACQUISITION CORP., ROBERT             :
SCHULMAN, SANDRA L. MANZKE,           :
RUPERT A. ALLAN, SUZANNE              :
HAMMOND, STEPHEN CLAYTON, MARK        :
SANTERO, and TIMOTHY BIRNEY,          :
                                      :
             Defendants,              :
                                      :
         -and-                        :
                                      :
TREMONT OPPORTNITY FUND III, L.P.,    :
RYE SELECT BROAD MARKET               :
INSURANCE FUND LP, RYE SELECT         :
BROAD MARKET PRIME FUND LP, and       :
RYE SELECT BROAD MARKET XL FUND       :
LP,                                   :
                                      :
             Nominal Defendants       :
                                      x
_____

# TABLE OF CONTENTS

Table of Authorities ................................................................................................................... iii

Introduction .....................................................................................................................................1

I.     Plaintiff's claims against PFLAC are precluded by SLUSA ...............................................2

       a.   The Madoff fraud is at the heart of Plaintiff's case ..................................................2

       b.   *Dabit* sets forth the applicable standard ..................................................................2

       c.   It does not matter that Madoff did not purchase covered securities ........................3

       d.   Even claims where fraud is not an element must be dismissed ...............................3

       e.   *Anwar*, *Pension Committee* and *Green* are distinguishable .....................................4

II.    Plaintiff's fiduciary duty claim fails because PFLAC, as an insurer, did not owe fiduciary duties to Plaintiff ........................................................................................................................5

III.   Plaintiff did not adequately plead scienter to support its fraud claim ................................6
       a.   Plaintiff has only pled misrepresentations by Tremont ...........................................6

       b.   Plaintiff has not pled a motive sufficient to support scienter ..................................7

       c.   The alleged inability to conduct due diligence does not establish scienter ............7

IV.    Plaintiff has not pled a consumer oriented transaction that will support a claim under General Business Law §349 ........................................................................................8

V.     There is no independent implied covenant claim under applicable state law ......................8

VI.    Plaintiff's gross negligence claim fails because there are no duties independent of the contract so as to avoid application of the economic loss rule .............................................9

VII.   Plaintiff's negligent misrepresentation claim fails because they have not pled a violation of a duty independent of the contract ......................................................................9

VIII.  Plaintiff's unjust enrichment claim fails because the policies control .................................9

# **TABLE OF AUTHORITIES**

**Cases**

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995) ............................................................... 7
*Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278 (10th Cir. 2008)............ 3
*Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372 (S.D.N.Y. 2010) ............................... 4, 5
*Citigroup Auction Rate Sec. Litig.,* 700 F. Supp. 2d 294 (S.D.N.Y. 2009) .................................... 7
*Commerce and Indus. Ins. Co. v U.S. Bank Nat. Ass'n*,
   No. 07 CIV. 5731 (JGK), 2008 WL 4178474 (S.D.N.Y. Sept. 3, 2008) .................................... 8
*In re Merkin*, 817 F. Supp. 2d 346 (S.D.N.Y. 2011) ...................................................................... 3
*Kimmell v. Schaefer*, 89 N.Y.2d 257, 652 N.Y.S.2d 715 (1996)..................................................... 9
*McDonnell v. Allstate Life Ins. Co.*,
   No. 04-C-3076, 2004 WL 2392169 (N.D. Ill. Oct. 25, 2004)................................................ 5, 6
*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 (2006) ................................ 3, 5
*New Paradigm Software Corp. v New Era of Networks, Inc.*,
   107 F. Supp. 2d 325 (S.D.N.Y. 2000) ..................................................................................... 10
*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of America Securities, LLC*,
   750 F. Supp. 2d 450 (S.D.N.Y. 2010) .................................................................................... 4, 5
*Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208 (9th Cir. 2009) .......................................... 3
*Roland v. Green*, 675 F.3d 503 (5th Cir. 2012) .............................................................................. 5
*Romano v. Kazacos*, 609 F.3d 512 (2d Cir. 2010) .......................................................................... 3
*San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Co.*,
   75 F.3d 801 (2d Cir. 1996)......................................................................................................... 7
*Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305 (6th Cir. 2009)........................................................ 3
*Siepel v. Bank of America, N.A.*, 526 F.3d 1122 (8th Cir. 2008)..................................................... 3
*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87 (2d Cir. 2001) .................... 9
*TriState HVAC Equipment, LLP v. Big Belly Solar, Inc.*,
   836 F. Supp. 2d 274 (E.D. Pa. 2011) ....................................................................................... 10
*Wilson v Northwestern Mut. Ins. Co.*, 625 F.3d 54 (2d Cir. 2010)................................................. 8

Philadelphia Financial Life Assurance Company ("PFLAC") hereby submits this reply in support of its motion to dismiss Plaintiff Yale M. Fishman 1998 Insurance Trust's Consolidated Amended Direct and Verified Derivative Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6) and the Securities Litigation Uniform Standards Act ("SLUSA"), and would respectfully show the Court as follows:

## INTRODUCTION

Yale Fishman is a wealthy investor that invested $1.5 million into Bernard Madoff's fund through another trust he controls *prior* to Plaintiff purchasing the two PFLAC insurance policies at issue in this case.[1] Contrary to Plaintiff's assertions in this suit that it was somehow duped into investing money in Tremont that was ultimately lost to Bernard Madoff's crimes, the truth is that Yale Fishman used his trust to purchase policies from PFLAC so that he could direct *even more money* into Bernard Madoff, but on a tax deferred basis. Now, after the fact, Plaintiff is scrambling to find a way to try to hang its losses on PFLAC.

Plaintiff's entire case against PFLAC rests on holding PFLAC accountable for alleged misrepresentations made by Tremont in its offering documents or for allegedly missed red flags. As demonstrated below, Plaintiff fails to allege any misrepresentations by PFLAC and the arguments in Plaintiff's response on the critical legal issues raised by PFLAC's motion either completely ignore controlling law or attempt to re-characterize the allegations from the complaint to avoid the application of controlling law. This effort should be rejected and the case dismissed.

---

[1] The repeated assertion that Yale Fishman would not have invested with Madoff independently of PFLAC's conduct is objectively false. *See* The Irrevocable Charitable Remainder Trust of Yale Fishman's Objection to Trustee's Determination of Claim, Adv. Pro. No. 08-1789 (BRL) (Bankr. S.D.N.Y., May 25, 2010) (Dkt. 2337).

**I.      Plaintiff's claims against PFLAC are precluded by SLUSA.**

    **a. The Madoff fraud is at the heart of Plaintiff's case.**

Since most courts have dismissed similar Madoff "red flags" cases, Plaintiffs re-characterize their Complaint as one that "center[s] on how Defendants wrongfully induced Plaintiffs to buy non-covered securities, and how Defendants misrepresented and failed to fulfill their professional and fiduciary duties to manage and monitor the various funds that issued those securities and to deliver accurate information regarding their investment performance." *See* Response, p. 28. But in fact, Plaintiff's lawsuit stems solely from the losses it alleges it suffered as a result of Bernard Madoff's fraud. Compl. ¶¶ 3-5, 7, 9, 38-41. Moreover, the Complaint alleges that PFLAC "ignored the warnings that would have alerted it to Madoff's Ponzi scheme." Compl. ¶ 37. Indeed, one section is titled "Despite Numerous 'Red Flags,' Defendants Failed to Perform an Adequate Due Diligence Review" and alleges that if PFLAC and the other Defendants had "performed an adequate and comprehensive due diligence review of Madoff and BMIS, they would have noticed big 'red flags' which would have alerted them of the Madoff Ponzi scheme." Compl. ¶¶ 13, 49. Another section is titled "Other Prudent Advisors Stopped Investing with Madoff Following Their Due Diligence Review of BMIS" and also centers on Madoff's conduct. Compl. ¶¶ 52-55. In the face of the overwhelming attention given to the Madoff fraud in its Complaint, Plaintiff cannot now pretend that this is not a Madoff "red flag" case in order to avoid the majority trend in the courts to dismiss such cases on SLUSA grounds.

    **b.  *Dabit* sets forth the applicable standard.**

Plaintiffs also attempt to avoid SLUSA by limiting the Supreme Court's *Dabit* decision to "holder" cases. In *Dabit*, the Supreme Court applied its existing precedents on the S.E.C. enforcement reach of Section 10(b) to the SLUSA context and interpreted the language "in

2

connection with the purchase or sale of a covered security" broadly to mean that "it is enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006). Hundreds of decisions after *Dabit* have applied the **coincide** standard and Plaintiffs have cited no post-*Dabit* decision purporting to apply a different standard. *See, e.g., Romano v. Kazacos*, 609 F.3d 512, 521 (2d Cir. 2010); *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 310 (6th Cir. 2009); *Siepel v. Bank of America, N.A.*, 526 F.3d 1122, 1127 (8th Cir. 2008); *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1284 (10th Cir. 2008).

### c. It does not matter that Madoff did not purchase covered securities.

It does not matter whether the S&P 100 Index investments promised by Madoff were actually made. Numerous cases cited in PFLAC's brief from the Southern District of New York dismissed Madoff-related lawsuits on similar facts as those here. The Supreme Court has also explained that even where no securities are ultimately purchased, SLUSA preclusion will still apply if the misrepresentations and omissions coincide with a promised covered securities transaction. *Dabit*, 547 U.S. at 85 (approving the S.E.C's position that the "in connection with" language is satisfied where unscrupulous brokers never actually purchase the securities).

### d. Even claims where fraud is not an element must be dismissed.

In reference to Madoff-related class action lawsuits, the court in *In re Merkin* observed that "[t]he majority of district courts within the Second Circuit have found, under similar facts, that claims like the ones brought here are 'in connection with covered securities.'" *In re Merkin*, 817 F. Supp. 2d 346, 360 (S.D.N.Y. 2011) (collecting cases dismissing claims under SLUSA including negligence, breach of contract and other claims for which a misrepresentation is not an element); *see also Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1222 (9th Cir. 2009)

3

(stating that a misrepresentation need not be a specific element of the claim to fall within SLUSA and collecting cases).  Here, Plaintiff's claims incorporate by reference all of their allegations of misrepresentations and omissions.  These include allegedly omitting or misrepresenting the investment strategy, that the funds were invested in Madoff, that Tremont would be able to obtain sufficient information about potential managers, that thorough due diligence was done of the managers, that Madoff was a Ponzi scheme, and that red flags were missed.  Compl., ¶¶ 52, 57, 68, 72-86, 96.  Most of Plaintiff's claims include misrepresentation as an element and the non-fraud claims (e.g., breach of contract) are predicated on fraud—PFLAC allegedly not performing the due diligence and monitoring it represented it would do.  *Id.*, ¶¶ 185, 190, 199-200, 215.  Accordingly, all of Plaintiff's claims against PFLAC fall within the scope of SLUSA.

      **e.**   ***Anwar*, *Pension Committee* and *Green* are distinguishable.**

Plaintiffs ignore most of the Southern District of New York cases dismissing on SLUSA grounds Madoff "red flag" lawsuits, and instead urge the Court to follow the discredited minority view expressed in two cases that are distinguishable from this case.  In *Pension Committee*, the district court rejected the application of SLUSA because the misrepresentations and omissions were limited to the value of hedge fund shares, which were not covered securities, and the underlying hedge fund investments in non-covered securities.  *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of America Securities, LLC*, 750 F. Supp. 2d 450, 453–54 (S.D.N.Y. 2010).  In *Anwar,* the district court found that the hedge fund investment was not a mere pass-through entity and had invested many millions of dollars in non-Madoff investments, that the plaintiffs' investments were separated by multiple layers of transactions not contemporaneous with the purported purchase of covered securities, and that the misrepresentations related only to the fund shares and not the underlying Madoff

4

investments. *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 397–99 (S.D.N.Y. 2010). Both of these cases are materially distinguishable because the alleged fraud here substantially concerns the alleged failure to monitor and detect alleged red flags related to Madoff or the fund he operated.[2]

In *Green*, the Fifth Circuit expressly held that its facts were distinguishable from "the Madoff feeder fund cases." *Roland v. Green*, 675 F.3d 503, 522 (5th Cir. 2012). *Green* involved the purchase of debt instruments that were labeled "CDs" and promised fixed returns not tied to the success the issuer's purported investments. *Id.* The CDs were only "marketed with some vague references to SIB's portfolio containing instruments that might be SLUSA covered securities," which the Fifth Circuit held was "tangential to the schemes advanced by the [defendants]." *Id.* In contrast, the Policies in this case did not promise fixed returns and Plaintiff directed its investment into Tremont after being provided a private placement memorandum explaining the strategies and risks of the fund and its underlying investments. Since these cases are distinguishable and *Anwar* and *Pension Committee* are contrary to the substantial majority of Madoff cases out of the Southern District of New York, the Court should dismiss under SLUSA.

## II. Plaintiff's fiduciary duty claim fails because PFLAC, as an insurer, did not owe fiduciary duties to Plaintiff.

Instead of addressing the New York case law cited by PFLAC for the proposition that insurers do not owe fiduciary duties to insureds, Plaintiff relies on the unpublished *McDonnell* decision from the Northern District of Illinois applying Illinois law. The court in *McDonnell* **did not hold** that under Illinois law an insurer generally owes a fiduciary duty to an insured. *McDonnell v. Allstate Life Ins. Co.*, 2004 WL 2392169, *3-4 (N.D. Ill. Oct. 25, 2004). Rather,

---

[2] Notably, *Anwar* has been criticized in the Southern District of New York as taking a contrary approach to *Dabit*. *In re Kingate Mgmt. Ltd. Litig.*, No. 09 Civ. 5386(DAB), 2011 WL 1362106, at *8 (S.D.N.Y. March 30, 2011).

the court held that there is a limited duty where an insurer is fulfilling the role of a broker in executing investment transactions at the direction of its customer:

> Under Illinois law, brokers who receive fees or commissions for executing investment transactions can serve as agents to their customers, and thus have a fiduciary duty to their customers that is limited to actions occurring within the scope of their agency. "The duty of care owed by a broker carrying a nondiscretionary account for a customer is an exceedingly narrow one, consisting at most of a duty to properly carry out transactions ordered by the customer."
>
> Here, Plaintiff alleges that Allstate was responsible for transferring funds between the various investment options pursuant to Plaintiff's request, yet failed to do so.

*Id.* (citations omitted). Plaintiff has not alleged a failure by PFLAC to follow its instructions in transferring funds between investment options, and accordingly, *McDonnell* has no application to this case.

### III. Plaintiff did not adequately plead scienter to support its fraud claim.

#### a. Plaintiff has only pled misrepresentations by Tremont.

The only misrepresentations Plaintiff alleges were in Tremont's offering documents. Trying to saddle PFLAC with Tremont's alleged misrepresentations, Plaintiff asserts in its response that PFLAC "agreed to promote" and "make reasonable efforts to market" Tremont and was "required … to disseminate to potential investors certain [Tremont offering documents]." *See* Response, pp. 2, 6, 20, 36, 37. These allegations are purportedly based on the Participation Agreement between PFLAC and Tremont, but Plaintiff only cites paragraph 5.5, which does not require any marketing efforts by PFLAC, but instead only restricts the information that PFLAC could distribute regarding Tremont:

> **Insurer Representations.** Insurer shall not give any information or make any representations or statements on behalf of the Partnership in connection with the sale of the Contracts other than the information or representations contained in the Establishing Documents, any side letters thereto and this Agreement, as the same may be supplemented or amended from time to time, or in sales literature or other promotional material approved by the Fund.

*See* Plaintiff's Response, Ex. A, ¶ 5.5.

The Participation Agreement only required that PFLAC distribute the documents to any prospective purchaser of a PFLAC policy featuring the Tremont fund as an underlying investment. *Id.*, ¶ 3.1(e). Nowhere in the Participation Agreement is PFLAC required to market the Tremont fund, and in any event, Plaintiff has not pled any allegations showing that PFLAC's distribution of Tremont's offering documents evidences an intent by PFLAC to defraud anyone sufficient to meet the pleading requirements of Rule 9(b).

### b. Plaintiff has not pled a motive sufficient to support scienter.

Plaintiff's only alleged motive in support of scienter is that PFLAC collected fees under the Policies. Plaintiff relegates this issue to a footnote, but several cases generally stand for the proposition that a company trying to maximize revenue is not a sufficient motive. *See San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Co.*, 75 F.3d 801, 814 (2d Cir. 1996) (company's desire to maintain high bond or credit rating, and thereby maximize marketability of and minimize interest rate on debt securities, is not sufficient motive for fraud); *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) (existence of executive compensation dependent upon stock value is not sufficient); *In re Citigroup Auction Rate Sec. Litig.*, 700 F. Supp. 2d 294, 305–06 (S.D.N.Y. 2009) ("Courts have repeatedly rejected conclusory allegations regarding the motivation to earn unspecified fees as a basis for inferring scienter"). Accordingly, Plaintiff has not pled a motive sufficient to support scienter.

### c. The alleged inability to conduct due diligence does not establish scienter.

Finally, Plaintiff attempts to establish scienter by arguing that it was prohibited from doing its own due diligence because PFLAC owned the investment in Tremont. The flaw in this argument is that PFLAC's ownership of the investment and the prohibition against Plaintiff communicating directly with Tremont were both legal requirements to preserve the tax-deferred

7

status of the Policies.  *See* Decl., Ex. 1, p. 31.  Plaintiff cannot ascribe a fraudulent intent to PFLAC based on its compliance with the law.

**IV.    Plaintiff has not pled a consumer oriented transaction that will support a claim under General Business Law §349.**

Plaintiff argues that the purchase of the Policies was a consumer oriented transaction because "variable life insurance is widely marketed…[and] generally considered to be consumer oriented."  *See* Response, p. 65.  What Plaintiff fails to address is that the two Policies are not retail annuities, but private placement products exempt from federal securities registration requirements and issued solely to eligible investors, i.e., generally persons with substantial means and financial sophistication.  *See* Decl., Ex. 1, pp. 2, 9.  For this reason, the conduct alleged in connection with the sale of private placement products like the two Policies at issue in this case does not constitute the required injury to the public at large.  *Wilson v Northwestern Mut. Ins. Co.*, 625 F.3d 54, 65 (2d Cir. 2010) ("[T]o demonstrate the requisite consumer-oriented conduct in a dispute concerning coverage under an insurance policy, a plaintiff must establish facts showing injury or potential injury to the public.").  Accordingly, Plaintiff's General Business Law §349 claim should be dismissed.

**V.    There is no independent implied covenant claim under applicable state law.**

New York courts enforce choice of law provisions in insurance policies and apply them to both breach of contract and bad faith claims.  *See, e.g., Commerce and Indus. Ins. Co. v U.S. Bank Nat. Ass'n*, No. 07 CIV. 5731 (JGK), 2008 WL 4178474 (S.D.N.Y. Sept. 3, 2008) (applying New York law to the contract and bad faith claims under a choice of law provision). Since Plaintiffs do not deny that its implied covenant claims fail under the laws of Florida and Pennsylvania as required by the two Policies, these claims should be dismissed.

**VI.     Plaintiff's gross negligence claim fails because there are no duties independent of the contract so as to avoid application of the economic loss rule.**

Since Plaintiff failed to allege facts supporting a fiduciary obligation owed by PFLAC, it has failed to demonstrate a duty independent of the contract so as to avoid the application of the economic loss rule. Moreover, the action Plaintiff claims PFLAC should have taken – the alleged duty to safeguard the investment – is belied by the express terms of offering documents that state that Tremont would have total control over the investment. *See* Decl., Ex. 6, § 3.01. For these reasons, Plaintiff's gross negligence claim fails and should be dismissed.

**VII.    Plaintiff's negligent misrepresentation claim fails because they have not pled a violation of a duty independent of the contract.**

In determining whether justifiable reliance exists in a particular case, a fact finder should consider whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose. *Kimmell v. Schaefer*, 89 N.Y.2d 257, 264, 652 N.Y.S.2d 715 (1996) (cited in *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001). Such a "special relationship" must extend beyond a typical arm's length business transaction. *Suez Equity*, 250 F.3d 103. The Complaint does not allege any such special relationship nor does it dispute that the Policies were the result of arms-length transactions, but states only that "Defendants owed Plaintiff and the Class a duty to act with reasonable care" and that such duty was "breached." Compl. ¶¶ 104-105. Accordingly, the negligent misrepresentation claim should be dismissed.

**VIII.   Plaintiff's unjust enrichment claim fails because the policies control.**

Under the Federal Rules of Civil Procedure, alternative theories of liability may only survive when the contract is in dispute, and fails when the contract is proven. *New Paradigm*

9

*Software Corp. v New Era of Networks, Inc.*, 107 F. Supp. 2d 325, 329 (S.D.N.Y. 2000); *see also TriState HVAC Equipment, LLP v. Big Belly Solar, Inc.*, 836 F. Supp. 2d 274 (E.D. Pa. 2011) ("Because the parties agree that a valid and enforceable contract exists here, to the extent that TriState seeks to have this court imply a contract under the doctrine of unjust enrichment, TriState's claim must be dismissed."). Since PFLAC does not challenge the validity of the two Policies, Plaintiff's unjust enrichment claim should be dismissed.

For all the reasons stated in Plaintiff's opening memorandum and this reply brief, Plaintiff's claims against PFLAC are precluded by SLUSA and Plaintiff has failed to allege facts sufficient to support its claims, and therefore, PFLAC respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety.

Respectfully submitted,

Dated: August 14, 2012

EDISON, MCDOWELL & HETHERINGTON, LLP

By: /s/   Hutson B. Smelley
   Thomas F. A. Hetherington*
   David T. McDowell*
   Hutson B. Smelley*

Phoenix Tower
3200 Southwest Freeway
Suite 2100
Houston, Texas 77027
Telephone: (713) 337-5580
Facsimile: (713) 337-8850
*admitted pro hac vice

*Attorneys for Defendant Philadelphia Financial Life Assurance Company f/k/a AGL Life Assurance Company*