UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE TREMONT SECURITIES LAW,　　　　　:　Master File No.:
STATE LAW and INSURANCE　　　　　　　 :　08 Civ. 11117 (TPG)
LITIGATION　　　　　　　　　　　　　　 :
　　　　　　　　　　　　　　　　　　　　:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :

This Document Relates To:　　　　　　　 :　ECF CASES
　　　　　　　　　　　　　　　　　　　　:　Electronically Filed
State Law Actions, 08 Civ. 11183 (TPG)　 :
Securities Actions, 08 Civ. 11212 (TPG)　:
Insurance Actions, 09 Civ. 557 (TPG)　　 :
　　　　　　　　　　　　　　　　　　　　:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**TREMONT'S MEMORANDUM OF LAW IN OPPOSITION TO
<u>RULE 60 MOTION TO VACATE THE FINAL JUDGMENT</u>**


SKADDEN, ARPS, SLATE,
　MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Defendants
Tremont Partners, Inc.,
Tremont Group Holdings, Inc.,
Tremont (Bermuda) Limited,
Tremont Capital Management, Inc.,
Rye Investment Management,
Robert I. Schulman, Rupert A. Allan,
Harry Hodges, James Mitchell,
Lynn O. Keeshan, Patrick Kelly,
Stephen Thomas Clayton, Stuart Pologe,
Cynthia J. Nicoll and Darren Johnston

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ............................................................................1

BACKGROUND ...................................................................................................3

GOVERNING STANDARDS................................................................................6

ARGUMENT .........................................................................................................8

I.      HAINES'S RULE 60 MOTION SHOULD BE DENIED ................................8

        A.      Haines's Supposed "Newly Discovered Evidence" Does Not Satisfy the
                Requirements of Rule 60(b)(2) ..............................................................9

                1.      Haines's "Newly Discovered" Evidence Is Not New................................10

                2.      Haines's "Newly Discovered" Evidence Is Not "of Such
                        Importance That It Probably Would Have Changed the Outcome"
                        of the Approval Motion ........................................................................10

        B.      Haines's Assertions of Fraud on an Adversary Lack Merit ..................13

        C.      Haines's Assertions Do Not Show Fraud on the Court...........................14

II.     HAINES IS NOT ENTITLED TO DISCOVERY TO ATTEMPT TO BOLSTER
        HER UNSUPPORTED MOTION .................................................................15

CONCLUSION....................................................................................................16

## TABLE OF AUTHORITIES

### CASES

Aneja v. M.A. Angeliades, Inc.,
　No. 05 Civ. 9678(LAP), 2010 WL 199681 (S.D.N.Y. Jan. 12, 2010)...................10, 13, 15

In re Allou Distributors, Inc.,
　379 B.R. 5 (Bankr. E.D.N.Y. 2007)....................................................................................8

Anthony v. City of New York,
　No. 00 Civ. 4688(DLC), 2002 WL 731719 (S.D.N.Y. April 25, 2002) .............................9

Barton v. Troy Annual Conference,
　No. 09–CV–0063, 2011 WL 5325623 (N.D.N.Y. Nov. 3, 2011)...................................7, 9

Batac Development Corp. v. B&R Consultants Inc.,
　No. 98 Civ. 721(CSH), 2000 WL 307400 (S.D.N.Y. Mar. 23, 2000) .............................12

In re Bernard L. Madoff Investment Securities LLC,
　445 B.R. 206 (Bankr. S.D.N.Y. 2011)................................................................................8

Competex, S.A. v. Labow,
　783 F.2d 333 (2d Cir. 1986).............................................................................................9

Goldy v. Beal,
　91 F.R.D. 451 (M.D. Penn. 1981) ...................................................................................15

Heghmann v. Sebelius,
　No. 09 Civ. 5880(BSJ)(GWG), 2012 WL 32236
　(S.D.N.Y. Jan. 3, 2012).....................................................................................6, 9, 10, 14

Howard v. MTA Metro-North Commuter Railroad,
　No. 10 Civ. 3291(GWG), 2011 WL 5335390 (S.D.N.Y. Nov. 7, 2011) ...........................7

Jordan v. Verizon Corp.,
　No. 02-CV-10144(GBD), 2007 WL 4591924 (S.D.N.Y. Dec. 27, 2007) ........................13

King v. First America Investigations, Inc.,
　287 F.3d 91 (2d Cir. 2002)..............................................................................................14

Kirkland v. City of Peekskill Police Dep't,
　No. 87 Civ. 8112(MEL), 1989 WL 31644 (S.D.N.Y. Mar. 28), aff'd, 888 F.2d
　125 (2d Cir. 1989)...........................................................................................................10

Lee v. Marvel Enterprises, Inc.,
　765 F. Supp. 2d 440 (S.D.N.Y. 2011), aff'd, 471 F. App'x 14 (2d Cir. 2012).................15

Lok Prakashan, Ltd. v. India Abroad Publications,
    No. 00 Civ. 5852(LAP), 2003 WL 1701903 (S.D.N.Y. Mar. 31, 2003), aff'd, 94 F.
    App'x 856 (2d Cir. 2004) ...................................................................................................15

Nakshin v. Holder,
    360 F. App'x 192 (2d Cir. 2010) ........................................................................................7

State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada,
    374 F.3d 158 (2d Cir. 2004)..............................................................................................13

Toliver v. County of Sullivan,
    957 F.2d 47 (2d Cir. 1992)..............................................................................................6, 7

United States v. International Brotherhood of Teamsters,
    247 F.3d 370 (2d Cir. 2001)..............................................................................7, 9, 10, 15

## RULES

Federal Rules of Appellate Procedure 12.1 ...................................................................................7

Federal Rules of Civil Procedure 60(b)(2)....................................................................................9

Federal Rules of Civil Procedure 60(b)(3)..................................................................................13

Federal Rules of Civil Procedure 62.1(a)(1)–(a)(3).....................................................................7

The Tremont Defendants[1] respectfully submit this memorandum of law in opposition to the motion ("Motion," Dkt. 801) of objectors Madelyn Haines and Paul Zamrowski (together, "Haines" or the "Haines Plaintiffs") for an order, pursuant to Rule 60 of the Federal Rules of Civil Procedure, vacating the judgment entered by this Court (the "Final Judgment") on August 22, 2011, in the consolidated class and derivative litigation captioned In re Tremont Securities Law, State Law and Insurance Litigation, Master Docket No. 08 Civ. 11117 (TPG) (S.D.N.Y.) (the "Consolidated Investor Litigation").  The Final Judgment approves the agreement of the parties to settle the Consolidated Investor Litigation (the "Investor Settlement") and dismisses the litigation with prejudice.  It has been appealed to the Second Circuit Court of Appeals by two groups of objectors to the Investor Settlement.  Haines is one of the objectors/appellants.

## PRELIMINARY STATEMENT

This Court entered the Final Judgment over the objections of Haines, among others, on August 22, 2011.  (See Dkt. 604.)  On September 20, 2011, Haines filed a notice of appeal from the Final Judgment with the Second Circuit Court of Appeals.  (See Dkt. 617.)  Haines subsequently filed this Motion asking this Court to vacate the Final Judgment on the ground she purportedly has obtained "newly discovered evidence."

The "new" evidence purportedly shows that counsel for the lead plaintiffs in the Consolidated Investor Litigation ("Lead Counsel") made misrepresentations to this Court when seeking the Court's approval of the Investor Settlement.  According to Haines, Lead Counsel represented that "non-Madoff Tremont Fund assets" would be "protected" by the Investor

---

[1]   The Tremont Defendants, also referred to herein as "Tremont," are:  Tremont Partners, Inc., Tremont Group Holdings, Inc., Tremont (Bermuda) Limited, Tremont Capital Management, Inc., Rye Investment Management, Robert I. Schulman, Rupert A. Allan, Harry Hodges, James Mitchell, Lynn O. Keeshan, Patrick Kelly, Stephen Tomas Clayton, Stuart Pologe and Cynthia J. Nicoll.

Settlement, i.e., they would be available to be distributed to Tremont Fund investors.[2]  Haines contends that this representation was false because non-Madoff Tremont Fund assets will be used to pay for a portion of a different settlement, namely, the settlement (the "Trustee Settlement") of an adversary proceeding (the "Trustee Litigation") commenced in bankruptcy court by Irving Picard (the "Trustee"), the trustee appointed to oversee the liquidation of Bernard L. Madoff Investment Securities, LLC ("BLMIS"), the broker-dealer and investment adviser owned and operated by Bernard Madoff.  See Picard v. Tremont Group Holdings, Inc., No. 08-01789, Adv. Pro. No. 10-05310 (Bankr. S.D.N.Y).  Pursuant to the Trustee Settlement, it is contemplated that certain Tremont Funds, including the two Tremont Funds in which Haines invested, along with a number of other Tremont-managed funds, i.e., the "Rye Funds,"[3] will contribute different amounts to the Trustee Settlement by making payments directly to the estate of BLMIS.

The Motion is fatally flawed, and thus meritless, for two separate and independent reasons.  First, contrary to Haines's baseless assertions, Lead Counsel made no misrepresentation to this Court.  The non-Madoff Tremont Fund assets have indeed been protected.  They have been or will be distributed by those funds to their investors, and they will not be used as consideration for the Trustee Settlement.

Furthermore, even if Haines could show that non-Madoff Tremont Fund assets will be used to fund the Trustee Settlement, there still would be no basis for vacating the Final Judgment.  As reflected in that judgment, the only claims that have been settled, dismissed and released pursuant to the Investor Settlement are those related to losses suffered by the Tremont and Rye

---

[2]   "Tremont Fund" refers to any one of the "funds of funds" managed by defendant Tremont Partners, Inc., that allocated assets among several asset managers, one of whom was Madoff.

[3]    The Rye Funds are single manager funds managed by Tremont Partners, Inc., that invested substantially all of their assets with Madoff.

Funds as a result of their exposure to Madoff's fraud.  Thus, to the extent Haines or any other investor wishes to assert any claim based on any alleged misuse or loss of any non-Madoff Tremont Fund assets, that claim would not be barred by the Final Judgment or the Investor Settlement.  Consequently, the purported use of non-Madoff Tremont Fund assets to fund a portion of the Trustee Settlement provides no basis for vacating the Final Judgment pursuant to Rule 60 of the Federal Rules of Civil Procedure.  The Motion seeking that relief therefore should be denied.

## BACKGROUND

The weakness of the arguments advanced by the Haines Plaintiffs is graphically illustrated by examining the difference between the Madoff and non-Madoff related losses they incurred.

### The Madoff Investment Losses

The consolidated complaints in the Consolidated Investor Litigation alleged that Tremont conducted insufficient due diligence on Madoff, causing the loss of the Fund assets invested with him.  (See generally Consolidated & Am. Class Action Compl. (Trans. Decl. Ex. A[4]).)  With respect to the Haines Plaintiffs, after they filed their appeal from the Final Judgment, Tremont calculated the total Madoff-related losses they incurred through their investments in two hedge funds, Tremont Market Neutral Fund, L.P. ("TMNF") and Tremont Market Neutral Fund II, L.P. ("TMNF II") (collectively, the "Funds" or the "Market Neutral Funds").  The amount needed to be calculated because TMNF and TMNF II are "funds of funds" that invested some, but not all, of their investment capital through Madoff.  The balance of that capital, approximately 80 percent of it, was allocated by the Funds to a number of other money managers.

---

[4]   "Trans. Decl." refers to the accompanying declaration of Seth M. Schwartz, dated September 17, 2012.

Tremont calculated the Madoff-related losses of the Haines Plaintiffs with a view toward mooting their appeal.[5]  In that connection, on May 8, 2012, Tremont tendered to the Haines Plaintiffs $129,885 – the full amount (plus interest) of the losses they incurred in Madoff's Ponzi scheme through their investments the Market Neutral Funds.  The Market Neutral Funds have suffered other losses through non-Madoff investments, but those losses were *not* the subject of the Consolidated Investor Litigation.

Tremont determined the amount of the Madoff-related losses incurred by the Haines Plaintiffs through a straightforward calculation of their pro rata share of the total amount allocated to Madoff through the Market Neutral Funds.  This calculation is set forth in the Declaration of James G. McCormick previously submitted by Tremont to the Second Circuit in support of a motion to dismiss the appeal of the Haines Plaintiffs' Dismissal Motion.[6]  (See Decl. of James G. McCormick, dated June 21, 2012 (Trans. Decl. Ex. B).)  As noted in the declaration, the Haines Plaintiffs' pro rata share of the Funds' losses to Madoff's Ponzi scheme is $28,620 for Ms. Haines and $61,225 for Mr. Zamrowski, or $89,845 in the aggregate.  (See id. ¶¶ 8-9.)  Tremont tendered this sum to the Haines Plaintiffs, plus an additional $40,040 in interest, for a total of $129,885.

**The Non-Madoff Investment Losses**

In 2009, before Tremont tendered the sums discussed above, the Market Neutral Funds liquidated a number of investments made through money managers other than Madoff.  Most of the proceeds of the liquidated investments were distributed by the Funds to their investors,

---

[5]   On June 1, 2012, Tremont filed a motion with the Second Circuit to dismiss the appeal of the Haines Plaintiffs on the ground that Tremont's tender of their Madoff-related losses mooted their appeal.  By order dated September 11, 2012, the Second Circuit denied the motion without prejudice to raising it before the panel of the court that will hear the merits of the appeal.

[6]   See note 5, supra.

including Appellants.  The amount distributed to Ms. Haines in 2009 totaled $63,814, and Mr.
Zamrowski received $103,144.  (See Decl. of Lynn O. Keeshan, dated Sept. 7, 2012 (Trans. Decl.
Ex. C) ¶¶ 6, 8.)

All told, the Haines Plaintiffs received $166,958 in the aggregate as a result of the
distributions made by the Market Neutral Funds in 2009.  Because the amount of the non-Madoff
investments allocable to the Haines Plaintiffs totaled $310,515, they have incurred non-Madoff
investment losses totaling $143,557 net of the distributions they received from the Funds in 2009.
(A chart showing a breakdown of the Haines Plaintiffs' Madoff and non-Madoff investment losses
and distributions is attached to this brief).

**The Account Statements Are Irrelevant**

According to the Haines Plaintiffs, their "newly discovered evidence" shows additional
non-Madoff losses above and beyond those discussed above.  This evidence is comprised of
account statements the Haines Plaintiffs recently received from the Market Neutral Funds (the
"Account Statements") showing that as of September 31, 2011, TMNF and TMNF II wrote the
Haines Plaintiffs' account balances down to zero (or close to zero), resulting in an "additional" loss
in the aggregate amount of $80,696.  The Account Statements reflect the financial statement
impact of the Trustee Settlement between and among the Market Neutral Funds, certain other
Tremont-managed funds and Irving Picard.  As noted above, the Trustee sued the Market Neutral
Funds, along with other Tremont-affiliated defendants, alleging that the cash the Funds received
through redemptions from BLMIS constituted property of the BLMIS estate.  In his complaint, the
Trustee alleged he was entitled to recover at least $47.5 million in estate property from TMNF and
$82.8 million from TMNF II, for a total of $130.3 million.  (See Trustee Compl. (Trans. Decl. Ex.
D) ¶¶ 287, 293, 294.)

Pursuant to the Trustee Settlement, the Market Neutral Funds, which are organized as limited partnerships, have agreed to settle the Trustee's claims against them in exchange for a payment of $22.6 million in the aggregate.  This agreed settlement amount resulted in a write-down of the limited partnership accounts of the Funds' investors, and the write-down has been reflected in the Account Statements sent to the Funds' investors, including the Haines Plaintiffs.  Because the amount of the write-down nearly equals the amount of the cash currently in the Funds' bank accounts, the Account Statements show that all investors, including the Haines Plaintiffs, have negligible balances in their limited partnership accounts with the Market Neutral Funds.

The write-down in no way alters the conclusions that: (a) the Haines Plaintiffs incurred total non-Madoff-related losses of $143,557; and (b) they incurred total Madoff investment losses of $89,485, which were the only losses at issue in the Consolidated Investor Litigation.  The amount reflected in the write-down recorded on the Account Statements, which is to be used by the Market Neutral Funds in connection with the Trustee Settlement, is cash the Trustee has claimed is property of the BLMIS estate.  The Haines Plaintiffs apparently disagree.  But cash is fungible and it is at best unclear whether the cash ultimately emanated from BLMIS or from some other source.  The Trustee has made a claim on the cash, and the Market Neutral Funds have settled that claim.

**GOVERNING STANDARDS**

**Jurisdiction**

Because the Haines Plaintiffs have appealed from the Final Judgment, this Court lacks jurisdiction to grant the Motion as long as the appeal remains pending.  See Toliver v. Cnty. of Sullivan, 957 F.2d 47, 48 (2d Cir. 1992) (reversing district court's order purporting to grant Rule 60 motion).  The Court, however, may otherwise dispose of the Motion during the pendency of the appeal.  See Heghmann v. Sebelius, No. 09 Civ. 5880(BSJ)(GWG), 2012 WL 32236, at *2

(S.D.N.Y. Jan. 3, 2012).  Pursuant to Rule 62.1 of the Federal Rules of Civil Procedure, this Court "may:  (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."  Fed. R. Civ. P. 62.1(a)(1)-(a)(3).  If the Court chooses the third option, the movant must seek leave of the Court of Appeals to relinquish jurisdiction.  See Fed. R. App. P. 12.1; see also Toliver, 957 F.3d at 49 ("In other words, before the district court may grant a rule 60(b) motion, th[e Court of Appeals] must first give its consent so it can remand the case, thereby returning jurisdiction over the case to the district court.").

**Burden of Proof**

Rule 60 "provides 'extraordinary judicial relief' [that] should be granted 'only upon a showing of exceptional circumstances.'"  Barton v. Troy Annual Conference, No. 09–CV–0063, 2011 WL 5325623, at *2 (N.D.N.Y. Nov. 3, 2011) (quoting Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986)) (collecting cases).  Rule 60 motions "are disfavored and the burden of proof is on the party seeking relief from the judgment."  Id.; see also United States v. International Brotherhood of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001).  Thus, the "threshold for prevailing on a motion for [relief from a judgment] is high."  Nakshin v. Holder, 360 F. App'x 192, 193 (2d Cir. 2010).  To prevail, the moving party must be able to "'point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'"  Id. (citation omitted).  Furthermore, "'courts require that the evidence in support of [a Rule 60(b) motion] be highly convincing, that a party show good cause for the failure to act sooner, and that no undue hardship be imposed on other parties.'"  Howard v. MTA Metro-North Commuter R.R., No. 10 Civ. 3291(GWG), 2011 WL 5335390, at *12 (S.D.N.Y. Nov. 7, 2011) (alteration in original; citation omitted).

## ARGUMENT

I.   **HAINES'S RULE 60 MOTION SHOULD BE DENIED**

In her Motion, Haines argues that Lead Counsel represented that none of the Tremont Funds' "non-Madoff assets" would be used to fund the Trustee Settlement, that "new evidence" shows that, in fact, the Tremont Funds have agreed to contribute "non-Madoff assets" to the Trustee Settlement and that, in light of this development, the Court should vacate the Final Judgment.

Haines's argument suffers from at least three fatal defects.  First and foremost, Lead Counsel made no misrepresentation to the Court.  The cash the Tremont Funds will contribute to the Trustee Settlement is "Madoff-related" because those funds are arguably traceable to redemptions of the Tremont Funds' investments with Madoff via the funds' investments with the Rye Funds.  See, e.g., In re Allou Distribs., Inc., 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007).  Indeed, the Trustee claimed that he was entitled to claw back from the Market Neutral Funds far *more* than the Funds have agreed to pay him.  (See Trustee Compl. (Trans. Decl. Ex. D) ¶¶ 287, 293, 294; see also Notice of Mot. Ex. A (Trans. Decl. Ex. E) ¶ 8.)  See also In re Bernard L. Madoff Inv. Secs. LLC, 445 B.R. 206, 217, 235-36 (Bankr. S.D.N.Y. 2011) ("a dollar-for-dollar accounting is not required") (quotation marks omitted).

The second major defect in Haines's argument is that, even if the Market Neutral Funds had agreed to contribute "non-Madoff assets" to the Trustee Settlement – which the funds have not done – Haines has not carried her burden of showing that this "new evidence" is "of such importance that it probably would have changed the outcome" of the Final Judgment, as required to establish grounds for vacating a judgment under Rule 60(b)(2) of the Federal Rules of Civil Procedure, or that Lead Counsel knowingly deceived the Court, as required for vacatur under Rule 60(d)(2).  The Investor Settlement approved by the Final Judgment does not address the Tremont

Funds' "non-Madoff assets" and does not release any potential claims related to them.  Nor does the Final Judgment even resolve the distribution of the Settling Funds' assets – whether "Madoff-related" or "non-Madoff related."  That issue has been deferred for resolution in connection with Lead Plaintiffs' anticipated application for this Court's approval of the Plans of Allocation.

Finally, Haines does not logically tie any supposed misrepresentation to the relief she seeks.  She simply uses Lead Counsel's supposed misrepresentation as an opportunity to re-argue the points she made in her original objection to the Settlement – all of which were properly rejected by the Court.  Rule 60 is not intended to permit parties to reargue points the Court has already considered.  See Competex, S.A. v. Labow, 783 F.2d 333, 335 (2d Cir. 1986); Barton, 2011 WL 5325623, at *4.

### A.    Haines's Supposed "Newly Discovered Evidence" Does Not Satisfy the Requirements of Rule 60(b)(2)

Rule 60(b)(2) of the Federal Rules of Civil Procedure permits a court to vacate and reconsider a previous order only where the movant presents "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)[.]" Fed. R. Civ. P. 60(b)(2).  Further, the "'newly discovered evidence [must be] *relevant to the merits of the litigation*,'" Heghmann, 2012 WL 32236, at *2 (quoting Boule v. Hutton, 328 F.3d 84, 95 (2d Cir. 2003)) (emphasis added), and of "'such importance that it probably would have changed the outcome'" of the contested order, Int'l Bhd. of Teamsters, 247 F.3d at 392.  Accordingly, "the newly discovered evidence must be 'highly convincing.'"  Anthony v. City of New York, No. 00 Civ. 4688(DLC), 2002 WL 731719, at *4 (S.D.N.Y. April 25, 2002) (citation omitted).

In her Motion, Haines asserts that her "newly discovered evidence" (i.e., her Account Statements) "very likely would have changed the outcome of this matter by (A) showing the settlement's lack of fairness, adequacy or reasonableness to the Tremont Fund investors; (B)

demonstrating the representation for both Tremont Funds and Tremont Fund class members was inadequate[;] and (C) revealing inadequacies in the Class Notice."  (Mot. at 14.)  None of Haines's contentions has merit.

### 1.   Haines's "Newly Discovered" Evidence Is Not New

While Haines asserts that she did not know before August 2012 that the Market Neutral Funds would contribute $22.6 million toward the Trustee Settlement (Mot. at 13-14), her attorney knew by the time of the August 2011 Hearing that various Rye and Tremont Funds would be contributing a total of approximately $350 million toward that settlement (see Aug. 8, 2011 Hr'g Transcript (Trans. Decl. Ex. F) at 71.  Further, a different investor in a Tremont Fund (John Hancock) knew in August 2011 that the fund in which it invested would contribute $51.4 million. (See id. at 97.)  Thus, the material aspect of what Haines now calls her "newly discovered evidence" was known more than a year ago, and even the details could have been discovered with reasonable diligence.  For this reason alone, Haines's Motion should be denied to the extent it relies on Rule 60(b)(2) of the Federal Rules of Civil Procedure.  See Aneja v. M.A. Angeliades, Inc., No. 05 Civ. 9678(LAP), 2010 WL 199681, at *2 (S.D.N.Y. Jan. 12, 2010); Kirkland v. City of Peekskill Police Dep't, No. 87 Civ. 8112(MEL), 1989 WL 31644, at *2 (S.D.N.Y. Mar. 28, 1989), aff'd, 888 F.2d 125 (2d Cir. 1989).

### 2.   Haines's "Newly Discovered" Evidence Is Not "of Such Importance That It Probably Would Have Changed the Outcome" of the Approval Motion

The Funds' planned contribution to the Trustee Settlement is neither relevant to the issues before the Court when considering the Approval Motion, see Heghmann, 2012 WL 32236, at *2, nor of "'such importance that it probably would have changed the outcome'" of the Final Judgment, Int'l Bhd. of Teamsters, 247 F.3d at 392.

As discussed above, all of the claims released by the Settlement arise out of or relate to the losses sustained by investors in the Settling Funds as a result of Madoff's Ponzi scheme.  They do not arise out of or relate to allegations made by Haines in support of this Motion – namely, that Non-Madoff investments will be used to settle different claims in a different litigation before the bankruptcy court.  This Court reviewed the consideration offered by the settling defendants in exchange for the release of the Class members' claims ($100 million, plus certain other consideration) and found that this consideration is fair, reasonable and adequate.  (See Aug. 8 Hr'g Tr. (Trans. Decl. Ex. F) at 107-08.)

Haines's new argument that "the net value of the [S]ettlement to Tremont Fund investors like Haines was highly negative" (Mot. at 18) is inaccurate.  Her argument is based on the false premise that the Market Neutral Funds' planned contribution toward the Trustee Settlement is part of the Investor Settlement.  It is not.  The anticipated $22.6 million payment relates to the settlement of the entirely separate Trustee Litigation.  Tremont and the Market Neutral Funds would have been free to enter into the Trustee Settlement whether or not they also chose to settle the Consolidated Investor Litigation.  Moreover, the Investor Settlement in no way impacts any claim Haines believes she may have arising out of the Trustee Settlement.  (See Aug. 8 Hr'g Tr. (Trans. Decl. Ex. F) at 92.)  Indeed, because the $22.6 million payment has not yet been made, any claim purporting to challenge the propriety of it plainly could not have been released by the Final Judgment entered more than a year ago.

There also is no merit to Haines's additional argument that the Investor Settlement is unfair because "the Rye Fund investors (who controlled this litigation) will disproportionately receive the benefit of the Tremont Fund investors' non-Madoff assets because only certain Rye Funds are

11

guaranteed to be paid any proceeds by the Madoff-Trustee."  (Mot. at 13-14.[7])  Pursuant to the

Trustee Settlement, only certain Rye Funds will receive payments from the estate of BLMIS.  (See

Notice of Mot. Ex. A (Trans. Decl. Ex. E) ¶¶ 5, 6.)  But, as Haines well knows, under the terms of

the *Investor* Settlement, *all* monies the Rye Funds recover from the Trustee will flow into the

Fund Distribution Account for the benefit of Rye Fund *and* Tremont Fund investors alike.[8]

Moreover, the Plan of Allocation for distributions to be made to those investors from the Fund

Distribution Account must be submitted to this Court for approval before any distributions are

made.  (Final Judgment (Trans. Decl. Ex. G) ¶ 29.)  This Court previously considered concerns

expressed by objectors concerning the distributions that ultimately will be made from the Fund

Distribution Account and found them insufficient to undermine the fairness, reasonableness and

adequacy of the Investor Settlement.  (See Aug. 8 Hr'g Tr. (Trans. Decl. Ex. F) at 107-08.)

Accordingly, the premature claims once again leveled by the Haines Plaintiffs regarding the

distributions to be made with this Court's approval through the Fund Distribution Account provide

no basis to vacate the Final Judgment.  See, e.g., Batac Dev. Corp. v. B&R Consultants Inc., No.

98 Civ. 721(CSH), 2000 WL 307400, at *3 (S.D.N.Y. Mar. 23, 2000) ("A party may not . . . use

Rule 60(b) as a substitute for appeal or to relitigate matters already resolved by the court adversely

to that party.").

---

[7]   Haines's argument ignores that the Market Neutral Funds are themselves "Rye Fund investors."

[8]   (See, e.g., Investor Settlement (Trans. Decl. Ex. H) ¶ 1.18 ("'Fund Distribution Claimant' means any limited partner or shareholder in any of the Settling Funds, . . ., each of which shall be entitled to receive a disbursement from the Fund Distribution Account."); see also id. ¶ 2.21 ("the Rye Funds . . . shall cause to be transferred to the [FDA] . . . 100% of any SIPC Recovery").)  "'SIPC Recovery' means all amounts received . . . by the Settling Funds [which includes the Rye Funds] through the Madoff Trustee Proceedings."  (Id. ¶ 1.61.)

### B.  Haines's Assertions of Fraud on an Adversary Lack Merit

While mentioned only in passing, the Motion also purports to be premised, in part, on Rule 60(b)(3) of the Federal Rules of Civil Procedure (permitting vacatur where a litigating party has defrauded an adversary).  Under that rule, the moving party must show "fraud . . ., misrepresentation, or misconduct by an opposing party[.]"  Fed. R. Civ. P. 60(b)(3).  To prevail on a Rule 60(b)(3) motion, "a movant 'must show that the conduct complained of prevented the moving party from fully and fairly presenting h[er] case.'"  State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 176 (2d Cir. 2004); see also Jordan v. Verizon Corp., No. 02-CV-10144(GBD), 2007 WL 4591924, at *4 (S.D.N.Y. Dec. 27, 2007) (same).  A Rule 60(b)(3) motion "'cannot be granted absent clear and convincing evidence of material misrepresentations and cannot serve as an attempt to relitigate the merits.'"  Aneja, 2010 WL 199681, at *2 (quoting Fleming v. N.Y. Univ., 865 F.2d 478, 484 (2d Cir. 1989)).

Here, Haines has fallen far short of presenting clear and convincing evidence that any litigating party defrauded her.  Her argument (like her "fraud on the Court" argument discussed below) appears to be based on the assertion that Lead Counsel falsely stated that no non-Madoff assets of any Tremont Fund would be used to Fund the Trustee Settlement.  But as demonstrated above, the purported "non-Madoff" assets referenced by Haines, i.e., the assets reflected on the Account Statements, were, in reality, "Madoff assets" that the Trustee claimed were property of the estate of BLMIS and thus subject to claw back by the estate under the Bankruptcy Code.  There is therefore no evidence that non-Madoff assets were used to fund the Trustee Settlement.  Cf. Jordan, 2007 WL 4591924, at *4 (fraud sufficient to permit Rule 60(b)(3) relief must be established by "clear and convincing evidence").

Even if Lead Counsel did misrepresent any fact – which he did not – Haines has not carried her burden of showing that the supposed misrepresentation was material.  See, e.g., Heghmann, 2012 WL 32236, at *6 ("Plaintiffs have not identified a single misrepresentation made by Defendant, much less a material one, and their Rule 60(b)(3) motion must therefore fail.").  As shown above, the non-Madoff-related assets of the Tremont Funds were not at issue in the Consolidated Investor Litigation and were not impacted by the Investor Settlement.  Therefore, they could not have been material to the Final Judgment.  For this reason, too, Haines's Motion should be denied.

### C.   Haines's Assertions Do Not Show Fraud on the Court

Haines's assertions also fail to meet the heavy burden imposed by Rule 60(d)(3) of the Federal Rules of Civil Procedure for setting aside a judgment on the basis of fraud committed upon the Court.

A "fraud upon the court" is one that that "'seriously affects the integrity of the normal process of adjudication.'"  King v. First Am. Investigations, Inc., 287 F.3d 91, 95 (2d Cir. 2002).  It "should embrace 'only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases.'"  Id. (citation omitted).  The burden is on the moving party to establish such fraud by clear and convincing evidence.  See, e.g., id.

Haines has failed to satisfy the stringent requirements of proving a fraud on this Court.  According to Haines, it is "likely" that Lead Counsel and the settling defendants committed fraud on the Court by providing "simply false" assurances that "non-Madoff Tremont Fund assets were protected." (Mot. at 19-20.)  But any such assurances were true, not false.  The non-Madoff assets plainly were protected, as evidenced by the distribution of such assets to the Haines Plaintiffs from the Market Neutral Funds in 2009.  Haines's incorrect characterization of the facts in the record

provides no basis for vacating the Final Judgment.  See, e.g., Aneja, 2010 WL 199681, at *3

(denying motion to set aside judgment under Rule 60(d)(3) where, as here, "Plaintiff simply offers

his take on a variety of disputed facts" and "demonstrates no . . . misrepresentation that rises to the

level of fraud").  Accordingly, Haines's Motion should be denied to the extent it relies on Rule

60(d).  See, e.g., Lee v. Marvel Enters., Inc., 765 F. Supp. 2d 440, 451 (S.D.N.Y. 2011)

("Conclusory allegations cannot support a claim of fraud on the court under Rule 60(d), and as

such this aspect of [the] motion must be denied."), aff'd, 471 F. App'x 14 (2d Cir. 2012).

## II.    HAINES IS NOT ENTITLED TO DISCOVERY
##        TO ATTEMPT TO BOLSTER HER UNSUPPORTED MOTION

Apparently recognizing that the assertions in the Motion are insufficient to satisfy the

stringent standards imposed by Rule 60, Haines makes several requests for post-judgment

discovery.  (See Mot. at 10, 11, 20.)  However, Haines's attempt to proceed with an unsupported

motion is improper.  "The burden of proof [on a Rule 60 Motion] is on the party seeking relief

from judgment, in this case [Haines]."  Int'l Bhd. of Teamsters, 247 F.3d at 391.  If she cannot

carry that burden, the Motion should be denied.  See id. ("A motion for relief from judgment is

generally not favored and is properly granted only upon a showing of exceptional circumstances.");

see also Lok Prakashan, Ltd. v. India Abroad Publ'ns, No. 00 Civ. 5852(LAP), 2003 WL 1701903,

at *2 (S.D.N.Y. Mar. 31, 2003) (denying request for discovery in support of Rule 60 motion), aff'd,

94 F. App'x 856 (2d Cir. 2004); Goldy v. Beal, 91 F.R.D. 451, 454-56 (M.D. Penn. 1981)

(discussing standards governing post-judgment discovery and denying discovery request).

## CONCLUSION

For the reasons stated, Haines's motion to vacate the Final Judgment should be

denied.

Dated:      New York, New York
             September 17, 2012

                           Respectfully submitted,

                           /s/ Seth M. Schwartz
                           Seth M. Schwartz (Seth.Schwartz@Skadden.com)
                           Jason C. Vigna (Jason.Vigna@Skadden.com)
                           SKADDEN, ARPS, SLATE,
                             MEAGHER & FLOM LLP
                           Four Times Square
                           New York, New York 10036
                           (212) 735-3000

                           Attorneys for Defendants
                           Tremont Partners, Inc.,
                           Tremont Group Holdings, Inc.,
                           Tremont (Bermuda) Limited,
                           Tremont Capital Management, Inc.,
                           Rye Investment Management,
                           Robert I. Schulman, Rupert A. Allan,
                           Harry Hodges, James Mitchell,
                           Lynn O. Keeshan, Patrick Kelly,
                           Stephen Thomas Clayton, Stuart Pologe,
                           Cynthia J. Nicoll and Darren Johnston

## THE HAINES PLAINTIFFS' INVESTMENTS
## IN THE MARKET NEUTRAL FUNDS

|  | Haines | Zamrowski |
|---|---|---|
| Total Market Neutral Fund Investment | $150,000 | $250,000 |
| Total Allocated to Madoff as of December 11, 2008 | $28,620 | $61,225 |
| Total Allocated to Other Managers | $121,740 | $188,775 |
| Total Returned on Investment with Other Managers in 2009 | $63,814 | $103,144 |
| Total Loss on Money Allocated to Other Managers | $57,926 | $85,631 |
| Loss as a Percentage of Total Allocated to Other Managers | 48% | 45% |
| Total Loss on Money Allocated to Madoff | $28,620 | $61,225 |
| Loss as a Percentage of Total Allocated to Madoff | 100% | 100% |
| Amount Written Down Per September 2011 Statement | $28,051 | $55,546 |