UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | : : : : : : | MDL Docket No: 09-md-02052 (TPG) Master Docket No: 08 Civ. 11117 (TPG) |
| This Document Relates to: All Actions: 08 Civ. 11117 (TPG) 09-md-02052 (TPG) | : : : : : : : | |

# HAINES' REPLY TO THE TREMONT DEFENDANTS' OPPOSITION TO THEIR MOTION FOR RELIEF UNDER FRCP RULE 60

LAW OFFICE OF VINCENT T. GRESHAM

2870 Peachtree Road, #306
Atlanta, Georgia 30305
Tel: (404) 281-2762
gresham05@comcast.net
*Counsel for Appellants Madelyn Haines and Paul Zamrowski*

TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | PRELIMINARY STATEMENT | 1 |
| II. | ADDITIONAL FACTS | 1 |
| III. | ARGUMENT | 3 |
|  | A. Defendants' Arguments That Lead Counsels' Statements Were Not False (1) Are Refuted By The Record, (2) Would Only Change The Nature Of The Fraud, Not Its Existence, And (3) Are Irrelevant. | 3 |
|  | 1. Defendants' Arguments Are Refuted By Record Evidence Of What The Court Asked And Lead Counsels' Answers. | 3 |
|  | 2. Even If Defendants' Arguments Were Correct, Then Lead Counsels' Representations Were Still Fraudulent. | 4 |
|  | 3. Defendants' Arguments About "Madoff Investment Losses" and "Non-Madoff Investment Losses" Are Irrelevant As These Terms Were Not Part Of Lead Counsels' Discussion With The Court | 4 |
|  | B. Defendants' Relevancy And Materiality Arguments Are All Refuted By Record Evidence | 5 |
|  | 1. Defendants' Arguments That The Madoff-Trustee Proceedings Were Irrelevant To The Settlement Are Contradicted By Lead Counsels' Statements, The Findings By This Court And The Class Notice | 5 |
|  | 2. Defendants' Release Arguments Ignore Their Characterization Of The $22.6 Million As "Madoff-Related" And The Broad Scope Of The Release | 7 |
|  | 3. Lead Counsels' Negotiation Of A Trustee Settlement Causing Tremont Fund Investors An Additional $22.6 Million In Uncompensated Damages Demonstrates Inadequate Representation | 8 |
|  | C. Defendants' Other Defenses Are Meritless | 8 |

|  |  |
|---|---|
| D.  Defendants Have No Excuse For Sitting In Silence While Lead Counsel Was Repeatedly Misleading The Court And Class | 10 |
| IV.    CONCLUSION | 10 |

TABLE OF AUTHORITIES

|  | Page |
|---|---|
| **CASES** | |
| *Guardian Life Ins. Co. of Am. v. Handel*, 190 A.D.2d 57, 596 N.Y.S.2d 804 (1993) | 10 |
| *Heghmann v. Sebelius*, 09 CIV. 5880 BSJ GWG, 2012 WL 32236 (S.D.N.Y. Jan. 3, 2012) | 9 |
| *King v. First Am. Investigations, Inc.*, 287 F.3d 91 (2d Cir.2002) | 9 |
| *Schindler v. Issler & Schrage*, P.C., 262 A.D.2d 226, 692 N.Y.S.2d 361 (1999) | 10 |
| **STATUTES** | |
| N.Y. Judiciary Law § 487 (McKinney) | 10 |
| **OTHER AUTHORITIES** | |
| N.Y. Rules of Conduct Rule 3.3 | 10 |

## I. PRELIMINARY STATEMENT

On this Court's watch $22.6 Million in Tremont Fund assets that Lead Counsel represented to this Court that they had protected and that would be distributed to investors was instead taken by Defendants. In Haines Rule 60 Motion (the "Motion"), Haines showed that the Court was affirmatively misled by false statements made by Lead Counsel that these assets were being "protected" and would be "distributed" to investors. While the Court diligently investigated objections that the Tremont Funds' non-Madoff assets were at risk of being improperly taken to fund the Madoff-Trustee settlement, Defendants now claim that at the time Lead Counsel made its representations, all Tremont Fund assets were in fact "Madoff-related". Thus, Defendants argue, Lead Counsels' representations regarding non-Madoff assets couldn't be false because such assets didn't exist.

Defendants' argument is plainly contradicted by the record, which shows that Lead Counsel represented that (1) there were remaining non-Madoff Tremont assets; (2) they protected those assets and (3) those assets were being distributed to investors. Even if there were no "non-Madoff assets", Lead Counsels' extended discussion of these assets as if they did exist was a fraud on the Court, the Class and Haines. An attorney cannot honestly represent that he "protected" assets that don't in fact exist. Nor can an attorney honestly represent that assets which don't exist are being distributed to investors. Defendants' arguments don't disprove Lead Counsels' misrepresentations, but only show that that Lead Counsel had no reasonable basis for their representations. Accordingly, nothing in Defendants' opposition refutes Haines' entitlement to Rule 60 relief.

## II. ADDITIONAL FACTS

Defendants now argue that Lead Counsel's repeated statements about protecting the

1

Tremont Funds' non-Madoff assets were not misleading because all assets were "Madoff-related", and thus, there were no "non-Madoff assets." However, the Court's inquiry was about <u>all remaining</u> Tremont Fund assets and was not limited to just one type of assets. Moreover, Lead Counsel clearly and unequivocally represented that the Tremont Funds had non-Madoff assets and that Lead Counsel had protected them for distribution to investors.

> THE COURT: Now, when you're describing the settlement fund, I think you said that that consists in part or would consist in part of the **remaining assets in the Tremont** and Rye **funds**. Am I right?
> MR. ENTWISTLE: Let me clarify, your Honor. The settlement fund is the class part of the settlement, and it has in it the proceeds that have been generated from the partial payment of $100 million.
> THE COURT: I know that. **Let's get down to the assets.**
> MR. ENTWISTLE: Of the funds themselves?
> THE COURT: Yes.
> MR. ENTWISTLE: The assets of the funds themselves two ways: The Rye funds assets, to the extent any remain, down into the fund distribution account. **The Tremont funds** which are also being liquidated **have non-Madoff-related assets**. **The non-Madoff-related assets in the Tremont funds are being wound up by Tremont and are being separately distributed.**
> THE COURT: Is that one fund or several funds?
> MR. ENTWISTLE: Several funds.
> THE COURT: You have several Tremont funds and several Rye funds?
> MR. ENTWISTLE: That's correct, and so **the Tremont funds are being wound up, the non-Madoff-related assets are being liquidated over time and are being distributed** outside of the settlement here.
> (emphasis added, 8/8/2012 Trans. 16:25-17:10, attached as <u>Exhibit K</u>)[1]
>
> THE COURT: I want to go back to the Tremont funds. I thought you said the **Tremont funds assets** go into the settlement fund?
> MR. ENTWISTLE: The Tremont fund assets that are not Madoff-related are being separately liquidated. They don't go into any fund.
> THE COURT: If they're related to Madoff, what happens to them?
> MR. ENTWISTLE: **They're [sic[2]] Madoff-related investments are all in the Rye funds**, and so when the fund distribution account makes a distribution out to those investors as part of the resolution of the fund distribution side of it, they --
> (emphasis added, 8/8/2012 Trans. 17:17-18:9, <u>Exhibit K</u>)

---

[1] All exhibit references are to documents attached to the Reply Declaration of Vincent T. Gresham filed herewith.
[2] Should have read "Their Madoff-related investments…"

2

>THE COURT:  -- the Tremont funds themselves or the Rye funds themselves, that all goes into the fund distribution account?
>MR. ENTWISTLE:  **The Tremont fund assets that are left get distributed separately by the fund managers.**  The Rye fund assets that are left, because they were all Madoff-related, either directly or indirectly, that all flows into the fund distribution account. (emphasis added, 8/8/2012 Trans. 18:23-19:4, Exhibit K).

Notably, Defendants do not claim that at the time Lead Counsel were making representations to the Court about protecting the $22.6 million[3] in Tremont Fund assets for distribution to investors, Defendants had not already planned to take this $22.6 million and thus knew that it would not be distributed to Tremont Fund investors.

## III. ARGUMENT

**A.  Defendants' Arguments That Lead Counsels' Statements Were Not False (1) Are Refuted By The Record, (2) Would Only Change The Nature Of The Fraud, Not Its Existence, And (3) Are Irrelevant.**

Defendants argue that Lead Counsels' representations about the non-Madoff Tremont Fund assets couldn't be misleading because there were no such assets.  However, (1) this claim is refuted by record evidence of what Lead Counsel and the Court said (§A.1), (2) even if there were no such assets, Lead Counsel still made material misrepresentations by pretending there were (§A.2), and (3) the new definitions Defendants concoct to support their arguments are all irrelevant because neither Counsel nor Court ever used them.  (§A.3).

**1.  Defendants' Arguments Are Refuted By Record Evidence Of What The Court Asked And Lead Counsels' Answers.**

The Court's inquiries were never limited to "non-Madoff assets".  The Court inquired about **all assets** of the Tremont Funds.  Lead Counsel answered without qualification that these assets were being distributed to investors.  See, e.g., "**MR. ENTWISTLE:  The Tremont fund assets that are left get distributed separately by the fund managers**."  (emphasis added, 8/8/2011 Trans. 18:25-19:1, Exhibit K).  Lead Counsels' statements of the existence and

---

[3]This is only the amount for the two Tremont Funds Haines invested in, there are nine Tremont Funds.

3

disposition of the non-Madoff Tremont Fund assets refute Defendants' claim.

Lead Counsel correctly described the Tremont Funds' remaining assets as non-Madoff assets, but then falsely claimed to have protected these assets and further falsely claimed that these assets would be distributed to investors. In fact, Defendants were taking the $22.6 million, leaving nothing for distribution to Tremont Fund investors. Lead Counsels' false representations constituted a fraud on this Court, the Class and Haines requiring relief under Rule 60 as requested in the Motion.

**2. Even If Defendants' Arguments Were Correct, Then Lead Counsels' Representations Were Still Fraudulent.**

Defendants argue that the "non-Madoff related assets" that this Court questioned Lead Counsel about in fact did not exist. If so, the only honest statement that Lead Counsel could have made was that they did not exist. Even if Defendants were correct, Lead Counsel <u>still</u> committed a fraud on the Court, Class and Haines by claiming that assets that didn't exist were protected and being distributed to investors. Defendants' arguments aren't a defense, but a confession of actionable misconduct meriting relief under Rule 60.

**3. Defendants' Arguments About "Madoff Investment Losses" and "Non-Madoff Investment Losses" Are Irrelevant As These Terms Were Not Part Of Lead Counsels' Discussion With The Court**

The issue before the Court is what the Court asked and what Lead Counsel answered at the fairness hearing. Defendants' new terms were not used by the Court or Lead Counsel (See 8/8/2011 Trans). Thus, Defendants' discussion of "Madoff Investment Losses" and "Non-Madoff Investment Losses" (Opp-3-5) is irrelevant.

In addition, Defendants' definition of "Madoff-Investment Losses" is based on an incorrect characterization of the State and Securities Actions.[4] Lead Counsel's claim that losses

---

[4] Defendants' definition of "Madoff Investment Losses" (Opp.-3-4) rest upon their incorrect claim that the

4

incurred due to the payment of $22.6 million to the *Madoff* Trustee on behalf of claims by the *Madoff* bankruptcy estate arising from past business dealings with *Madoff* are "Non-Madoff Investment Losses" is facially specious.

## B. Defendants' Relevancy And Materiality Arguments Are All Refuted By Record Evidence

Defendants argue that their $22.6 million taking is irrelevant to the Settlement. However, (1) the settlement proponents made the Madoff-Trustee proceedings a centerpiece in their arguments for the Settlement (§B.1), (2) Defendants' arguments relating to the release of claims regarding the $22.6 taking are contradictory and speculative (§B.2), and (3) the loss of $22.6 of non-Madoff assets suffered <u>only</u> by Tremont Fund investors demonstrate that representation by Rye Fund Plaintiffs and their counsel was inadequate (§B.3).

### 1. Defendants' Arguments That The Madoff-Trustee Proceedings Were Irrelevant To The Settlement Are Contradicted By Lead Counsels' Statements, The Findings By This Court And The Class Notice

Although Defendants now claim no relationship between the two, during final approval proceedings the settlement proponents themselves tightly tied the settlement and trustee litigation together. Lead Counsel claimed that the settlement "maximize[ed] the value of all Funds' claims, including the Trustee and Bankruptcy claims. (<u>Exhibit O,</u> p.11). Further, Lead Counsel claimed to have been intimately involved in the negotiation of the Madoff-Trustee settlement[5] and presented it the Court and Class as a "substantial benefit for investors in the Settling

---

scope of the Actions is limited to "the loss of the Fund assets invested with [Madoff]" (Opp.-3) which they calculate as only the "pro rata share of the total amount allocated to Madoff…" (Opp-4). However, the Actions sought <u>all</u> damages directly and proximately caused by Defendants' conduct as well as seeking other amounts not tied to Madoff, such as the amount of Defendants' own unjust enrichment. See, e.g., State Complaint ¶¶ 445, 459, 480, 506 (<u>Exhibit M</u>). See Securities Complaint at ¶¶201, 206, 213, 219, 224, 232, 233-235, 244. (<u>Exhibit N</u>). Neither complaint limited damages to "Madoff Investment Losses" as Defendants define them. Thus Defendants' claim that "Madoff investment losses…were the only losses at issue in the Consolidated Investor Litigation" (Opp-6.), upon which Defendants base their opposition, is also incorrect.

[5] "Plaintiffs' Class Counsel are actively involved in the Madoff bankruptcy proceedings and we have been working with the Settling Defendants in an effort to maximize the value of the Settling Funds." (<u>Exhibit P</u>, ¶48).

5

Funds."[6] The Court's order recognized Lead Counsels' role in the Trustee Settlement--finding that Lead Counsel "worked cooperatively with the Defendants' Counsel in connection with a settlement with the Madoff Trustee…" (¶(d) Exhibit R). Lead Counsel even sought substantial fees for "[Lead Counsels'] work with the defendants to generate this trustee settlement…" (8/8/2011 Trans. 25:19-21, Exhibit K).

During final approval proceedings none of Defendants or Lead Counsel claimed that the protection of non-Madoff assets of the Tremont Funds was irrelevant. When Haines objected that the Madoff-Trustee settlement might be improperly funded by the Tremont Funds' non-Madoff assets, Lead Counsel assured objectors, the class and Court that such assets were protected and would be distributed to investors. As set forth in the Motion, the Court also made extensive inquires about the protection of non-Madoff assets at the final approval hearing. No one advised the Court that such inquiries were irrelevant, and they are not.

Not only did Settlement proponents tie the Settlement and Trustee-Proceedings together, they claimed the "benefits" from the Madoff-Trustee proceedings as a centerpiece of their sales pitch for the Settlement.[7] The class notice made representations about a "combined recovery in excess of 55% of his or her loss" as a result of *both* the Settlement and the Madoff-Trustee's proceedings.[8] However, for Tremont Fund investors this Class Notice sales pitch was a sham.

---

[6] "We are pleased to report that the negotiations with the Madoff Trustee, Irving Picard, Esq., have been successfully concluded. The cooperative efforts between Plaintiffs State and Securities counsel on the one hand and counsel for Tremont, Oppenheimer and Mass Mutual on the other have resulted in the creation of a substantial benefit for investors in the Settling Funds." (Exhibit Q, page 1).

[7] Because Lead Counsel only negotiated the recovery of approximately 5.7% of losses (Exhibit S, p.3), the other 50% had to come from the Madoff-Trustee. In the sales pitch for the Settlement the 50% recovery by the Madoff-Trustee was almost ten times more important than the 5.7% recovery by Lead Counsel.

[8] The Class Notice discussed the Madoff Trustee efforts to obtain monies for the Madoff bankruptcy estate. Despite discussing the Madoff-Trustee, no mention was made that the Madoff Trustee was seeking to recover millions from the Funds. The Class Notice never disclosed the possibility that current Fund assets would be paid to the Madoff-Trustee. Instead, the Class Notice discussed only that the Madoff-Trustee might pay monies to the Funds which funds would be combined with payments from the settlement fund. The Class Notice held out the hope of a "combined recovery in excess of 55% of his or her loss." While class members were told that they might "receive a substantially higher or lower percentage" of losses, the possibility that the Madoff-Trustee would cause more losses

6

Unlike the Rye Investors, whom Lead Counsel were looking out for, **the Trustee-Settlement resulted in additional losses for Tremont Fund investors of $22.6 million.  These additional losses were concealed by Lead Counsel and Defendants until August, 2012.**  No Tremont Fund investor would have ever supported a settlement that resulted in their incurring millions of additional <u>uncompensated</u> losses.[9]

Had the Tremont Fund investors been told the truth they would have objected to the settlement, representation and class notice *en masse*.  It was to avoid massive numbers of Tremont Fund investor objections that (a) Lead Counsel falsely told the Class and Court that the Tremont Fund assets were protected and would be distributed, and (b) Defendants concealed their taking until the accountants forced the cat out of the bag in August, 2012.

**2.  Defendants' Release Arguments Ignore Their Own Characterizations Of The $22.6 Million As "Madoff-Related" And The Broad Scope Of The Release**

Defendants' claim that the Settlement's release doesn't release claims as to this $22.6 million taking is based on their characterization of the $22.6 million as "the Tremont Funds 'non-Madoff related assets.'"  (Opp-8-9).  However, Defendants' arguments are inherently contradictory: they also characterize this same $22.6 million as "Madoff-related."  (Opp-8). Defendants arguments are based on the dubious claim that the payment of $22.6 million to the *Madoff* Trustee on behalf of claims by the *Madoff* bankruptcy estate arising from business dealings with *Madoff* would not be released by the Proof of Claim's release of all claims: "that relate to the management or administration of the Settling Funds… or the Settling Funds' investments with Madoff."  (<u>Exhibit T</u>, ¶4).  Defendants' argument is speculative at best.

---

by taking $22.6 million of the Tremont Funds' non-Madoff Related assets (which Lead Counsel claimed they had protected) was <u>never</u> disclosed.  (See Class Notice, <u>Exhibit S, pages</u> 3-4).

[9] Defendants incorrectly suggest that the Tremont Funds might recover the money in the allocation of the fund distribution account (Opp-11-12); however, Defendants ignore the fact that both they and Lead Counsel have already characterized the taking of the $22.6 million as "Non-Madoff Investment Losses" (Opp-4-5), which by definition would be ineligible for any fund distribution account recovery pursuant to the Actions.

### 3. Lead Counsels' Negotiation Of A Trustee Settlement Causing Tremont Fund Investors An Additional $22.6 Million In Uncompensated Damages Demonstrates Inadequate Representation

Before final approval of the settlement, Lead Counsel and Lead Plaintiffs negotiated a Trustee Settlement that stripped the Tremont Fund investors of their non-Madoff assets, roughly doubling the losses of the Haines' plaintiffs and other Tremont Fund investors.[10]  In contrast, since the Rye Funds didn't have non-Madoff assets it did not harm the Rye Fund Investors whom Lead Counsel personally represent.  The conduct of Lead Plaintiffs and Counsel demonstrates that they were inadequate representatives for Tremont Funds and their investors.[11]

### C. Defendants' Other Defenses Are Meritless

Defendants' argument that the newly discovered evidence is not new (Opp-10) is based on the claimed knowledge of a different investor (John Hancock) in a different fund (Tremont Opportunity Fund III) relating to a conversation that Haines was not party to.

Moreover, Defendants characterize the same $22.6 million as a Madoff-related asset in one argument and a non-Madoff related asset in another.  For example, Defendants say that Lead Counsels' statements weren't false based upon the characterization of the taken $22.6 million as "Madoff-related." (Opp-8).  Inconsistently, Defendants say that the Settlement's release doesn't release claims as to this $22.6 million taking because this same $22.6 million was "the Tremont Funds 'non-Madoff related assets.'" (Opp-8-9).  Defendants flip flop again when they say that Haines assertions of fraud lack merit because "the purported 'non-Madoff' assets referenced by Haines… were in reality, 'Madoff assets'" (Opp-13) but on the next page state "[a]s shown

---

[10] Additionally because these losses are characterized as Non-Madoff Losses, the Tremont Investors will receive nothing in the Settlement on account of them.

[11] As this Court was informed during final approval proceedings, none of the State Law class plaintiffs were Tremont Fund investors, none of the Tremont Funds had the Rule 23.1 required named plaintiff, and there was no separate subclass of Tremont Fund investors despite the fact that they alone had millions in non-Madoff related assets that needed (but never received) protection.

8

above, the non-Madoff related assets of the Tremont Funds were not at issue in the Consolidated Investor Litigation." (Opp-14).

The Account Statements which show the impact on Tremont Fund investors of Defendants' $22.6 million are highly "relevant" [12] to Tremont Fund investors like Mrs. Haines. In Mrs. Haines' Tremont Fund every penny was taken for payment to the Madoff Trustee; as a result her account balance is $0.00. Even though 100% of Mrs. Haines' assets were taken in September 2011, Defendants still claim "[t]he non-Madoff Tremont Fund assets have indeed been protected. They have been or will be distributed by those funds to their investors, and they will not be used as consideration for the Trustee Settlement." (Opp-2). Mrs. Haines $0.00 account statement balance shows the falsity of Defendants' assertions. [13]

Finally, Defendants' jurisdictional argument is incorrect. (Opp. 5-6). *Heghmann v. Sebelius*, 09 CIV. 5880 BSJ GWG, 2012 WL 32236 (S.D.N.Y. Jan. 3, 2012) ("[T]he Second Circuit has held definitively that a pending appeal does not preclude a district court from entertaining a Rule 60(b) motion—only that it must obtain permission before it grants such a motion. *See King v. First Am. Investigations, Inc.,* 287 F.3d 91, 94 (2d Cir.2002)."). As a courtesy to the Court of Appeal (who is aware of this Rule 60 Motion) the Court might quickly state whether it will consider the motion so that the Second Circuit may be promptly advised.

**D.  Defendants Have No Excuse For Sitting In Silence While Lead Counsel Was Repeatedly Misleading The Court And Class**

When Lead Counsel represented that they "protected" for "distribution" the non-Madoff

---

[12] Defendants' argue that the account statements are irrelevant based upon their misrepresenting Haines' Rule 60 argument as that Haines' "'newly discovered evidence' shows additional **non-Madoff losses** above and beyond those discussed above…" (emphasis added, Opp-5). Defendants' assertion that Haines referred to these losses as "non-Madoff losses" is a pure fabrication. The Motion never argued that.

[13] Defendants also claim that "The non-Madoff assets were plainly protected, as evidenced by the distribution of such assets to the Haines Plaintiffs from the Market Neutral Funds in 2009." (Opp.-14). Lead Counsel's 2011 statements that the non-Madoff assets would be distributed were clearly prospective, and Defendants' assertion that 2009 events somehow cured the fraudulent nature of the 2011 statements is specious.

related assets to this Court, Defendants sat silently before the Court, despite knowing (as they admit in their Opposition) that were no non-Madoff assets.  Assuming *arguendo* Defendants' were correct, Lead Counsel still committed a fraud on the Court, Class and Haines by claiming the non-Madoff assets existed, had been protected and would be distributed.

Defendants' counsel and Lead Counsel jointly moved for approval.  As officers of the court, Defendants have no excuse for not correcting the misrepresentations of their co-counsel for this purpose.[14]  Notably, Defendants' counsel did not hesitate to make corrections when it was to their advantage.  (6/1/2011 Trans 45:7, 72:12 (Ex. L); 8/8/2011 Trans 33:16, 55:20). *However here, when acting as an officer of the court, it was not to their advantage, the dozens of Defendants' counsel present in the courtroom sat silently by while the Court was misled.*

## CONCLUSION

Defendants and Lead Counsel knowingly sought to deceive the Court, Class and Haines and succeeded, entitling Haines to the Rule 60 relief sought in the Motion.

Dated:  October 4, 2012.

> LAW OFFICE OF VINCENT T. GRESHAM
>
> By:  /s/ Vincent T. Gresham
> Vincent T. Gresham
>
> 2870 Peachtree Road, #306
> Atlanta, Georgia 30305
> Tel:  (404) 281-2762
> gresham05@comcast.net
> *Counsel for Appellants Madelyn Haines
>         and Paul Zamrowski*

---

[14] See, *Schindler v. Issler & Schrage*, P.C., 692 N.Y.S.2d 361 (1999) (Knowingly withholding "crucial information" from the Court "clearly falls within the proscription of Judiciary Law § 487."); N.Y. Rules of Conduct Rule 3.3; N.Y. Judiciary Law § 487 (making it punishable for an attorney who "is guilty of any deceit or collusion…with intent to deceive the court…").  Furthermore, "[i]t is well settled that when there is a duty to speak, silence may very well constitute fraudulent concealment , which is itself the equivalent of affirmative misrepresentations of fact." *Guardian Life Ins. Co. of Am. v. Handel*, 596 N.Y.S.2d 804 (1993) (citations omitted).