UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | : | |
|---|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | :<br>:<br>:<br>: | MDL Docket No: 09-md-02052 (TPG)<br>Master Docket No: 08 Civ. 11117 (TPG) |
| | : | |
| This Document Relates to:<br>All Actions: 08 Civ. 11117 (TPG)<br>09-md-02052 (TPG) | :<br>:<br>:<br>:<br>: | |

# HAINES' REPLY TO LEAD COUNSEL'S OPPOSITION TO THEIR MOTION FOR RELIEF UNDER FRCP RULE 60

LAW OFFICE OF VINCENT T. GRESHAM

2870 Peachtree Road, #306
Atlanta, Georgia 30305
Tel: (404) 281-2762
gresham05@comcast.net
*Counsel for Appellants Madelyn Haines and Paul Zamrowski*

TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | PRELIMINARY STATEMENT | 1 |
| II. | ARGUMENT | 2 |
|  | A.  Proof That Lead Counsel's Representations Are Not Reliable Strips The Evidentiary Foundation Out From Under The Court's Findings Of The Adequacy Of The Settlement, Representation And Class Notice | 2 |
|  | B.  Lead Counsel Still Refuse To Account For Any Of The $100 Million Settlement Fund This Court Entrusted To Them | 4 |
| III. | CONCLUSION | 4 |

## I. PRELIMINARY STATEMENT

Lead Counsel's response to Haines' Rule 60 Motion (the "Motion") adopts Defendants' argument to the effect that, at the time Lead Counsel told the Court, Class and Haines that the Tremont Funds' non-Madoff assets were protected and would be distributed to investors, those assets didn't exist.  As demonstrated in Haines' Reply To Defendants at §§III.A.1 & III.A.2, even if correct, the assertion that the non-Madoff assets didn't exist proves only that Lead Counsel committed a different fraud on the Court, Class and Haines.

If the Tremont Funds' non-Madoff assets didn't exist, then the only honest thing Lead Counsel could have said about them was to inform the Court that no such assets existed.  Instead, Lead Counsel said, "The Tremont funds which are also being liquidated have non-Madoff-related assets.  ***  [T]he Tremont funds are being wound up, the non-Madoff-related assets are being liquidated over time and are being distributed outside of the settlement here."  (8/8/2012 Trans. 16:25-17:10, Exhibit K[1]).  Further Lead Counsel claimed that they had "assur[ed] protection of non-Madoff Tremont Fund assets (they were protected)."  (Exhibit BB, p.1).  It is a fraud to say that assets which don't exist were "protected" and will be "distributed."

Whether Lead Counsel committed the specific fraud Haines asserted in their Motion, or the slightly different fraud Lead Counsel admit to in their response, it is clear that Lead Counsel's representations are <u>not</u> reliable.  Lead Counsel's admissions in their Response provide additional proof why Haines' Rule 60 Motion should be granted.  As set forth below, the Court's findings concerning the adequacy of the Settlement, representation and notice are primarily, if not exclusively, based on Lead Counsel's unsupported representations.  In fact, a comparison of the proposed final orders and the final orders signed by the Court demonstrates that Lead

---

[1]All exhibit references are to documents attached to the Reply Declaration of Vincent T. Gresham filed herewith.

Counsel wrote the Court's findings.  However if--as it has now been proven--Lead Counsel's representations concerning the protection of the Tremont Funds' $22.6 million cannot be trusted, then none of Lead Counsel's other representations about the adequacy of the Settlement, representation or class notice can be trusted either.

Finally, Lead Counsel still **refuse to account** for the $100 million settlement fund entrusted with them.  Whether this $100 million is all there or all gone, neither the Court nor Class knows.  Lead Counsel should be required to provide this Court and the class with a complete accounting immediately.

## II.  ARGUMENT

### A.  Proof That Lead Counsel's Representations Are Not Reliable Strips The Evidentiary Foundation Out From Under The Court's Findings Of The Adequacy Of The Settlement, Representation And Class Notice

As this Court is well aware, Haines made overruled objections regarding the Settlement, representation and class notice.  The newly-discovered evidence demonstrating that Lead Counsel's representations are not reliable strips the Settlement of its required evidentiary foundation because the fairness and adequacy of the Settlement was supported primarily by Lead Counsel's representations.

Lead Counsel introduced virtually no evidence supporting their arguments, instead relying on their own unverifiable representations[2] made in declarations or in court.  For example, in unsupported representations made to this Court, Lead Counsel claimed that their confirmatory discovery:

---

[2] Most of Lead Counsel's representations were unverifiable because Objectors (a) were not allowed discovery.  (5/5/2011 Trans. 8:25-9:3, Exhibit Y, see also, Exhibit Y at Dkt.#520 fn.15); (b) asked questions about the settlement which Lead Counsel refused to answer.  (Exhibit Z), and (c) were refused access to Lead Counsel's confirmatory discovery.  (Exhibit AA, ¶21).  As a result, Lead Counsel's representations made in the course of the final approval process upon which the Court relied could not be vetted by Haines or any other Class Member using confirmatory discovery, or any information not already in the public domain.

2

- "confirmed the fairness of the proposed settlement."  (Exhibit V, ¶46).

- "reinforced the risks of proving… state law and federal securities law claims." (Exhibit W, ¶77).

- "confirmed these risks [of proving parent liability]."  (Exhibit W, ¶92).

Lead Counsel claimed to have reviewed "tens of thousands of records (over 2 million pages) during the course of confirmatory discovery" (Exhibit U, ¶51) and to have conducted "dozens of formal and informal interviews…"  (Exhibit U, ¶52).  However, none of the 2,000,000 pages of documents, nor one word of witness testimony is in the record.  Thus there is no evidence of what confirmatory discovery showed other than Lead Counsel's naked representations, which the newly discovered evidence has shown to be unreliable.

Similarly, Lead Counsel claimed to have "spent significant time consulting with experts concerning damages and other issues."  (Exhibit X, page 23, ¶73).  Lead Counsel relied on an "expert" to calculate the Class' damages and settlement recovery and cited this expert when the Court asked Lead Counsel the value of the claims if successful, representing that the claims were "About $1.6 billion, according to our expert…"  (Trans 6/1/2011 6:19-23, Exhibit L,).  While reliance on experts is common, what is unusual here is that the expert's opinions were relied upon without, for example, the Court even knowing who the "expert" was.  Throughout the approval process, Lead Counsel kept the identity, qualifications and methodology of this "expert" secret and refused Haines' request for information (Exhibit Z).  There is nothing in the record, other than Lead Counsel's naked representations, that prove that this "expert" was competent, used recognized methodologies, and held the opinions Lead Counsel attributed to him/her/it.

Whether the misrepresentation was (a) that Lead Counsel misrepresented that the non-Madoff assets were protected for distribution (as Haines asserted), or (b) that Lead Counsel

3

misrepresented the existence of non-Madoff assets (as Lead Counsel's response admits), the newly discovered evidence proves that Lead Counsel's representations should not be relied upon. Without Lead Counsel's representations, there is inadequate evidence supporting the adequacy of the settlement, representation or class notice and the Final Judgment should be vacated.

**B. Lead Counsel Still Refuse To Account For Any Of The $100 Million Settlement Fund That This Court Entrusted To Them**

As part of the Settlement approval process Lead Counsel represented that they protected $22.6 million of Tremont Fund assets that Defendants promptly took. As set forth in the Motion, this Court also entrusted Lead Counsel with the Settlement's $100 million Settlement Fund.

In light of the proven lack of reliability of Lead Counsel's representations to have protected the $22.6 million, Haines sought an accounting from Lead Counsel for the $100 million settlement fund. Lead Counsel still refuse to account for any part of the $100 Million Settlement Fund entrusted with them. Whether it is all there or all gone, neither the Court nor Class knows because of Lead Counsel's refusal to account. An accounting is needed.

### III.  CONCLUSION

For the foregoing reasons, Haines respectfully request that the Court vacate the Final Judgment and require an accounting of the $100 million settlement fund.

Dated: October 4, 2012.

        LAW OFFICE OF VINCENT T. GRESHAM

        By:  /s/ Vincent T. Gresham
        Vincent T. Gresham

        2870 Peachtree Road, #306
        Atlanta, Georgia 30305
        Tel:  (404) 281-2762
        gresham05@comcast.net
        *Counsel for Appellants Madelyn Haines*
            *and Paul Zamrowski*