UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | Master File No. 08 Civ. 11117 (TPG) |
| This Document Relates to: | |
| INSURANCE ACTION, 09 Civ. 557 (TPG), and specifically to: | |
| F. DANIEL PRICKETT, Plaintiff, | 09 Civ. 3137 (TPG) |
| - against - | ECF CASE<br>Electronically Filed |
| NEW YORK LIFE INSURANCE COMPANY, et al., Defendants. | |

**THE TREMONT DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Defendants
Tremont Group Holdings, Inc. and
Tremont Partners, Inc.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

ALLEGATIONS OF THE COMPLAINT ........ 2

ARGUMENT ........ 6

THE COMPLAINT FAILS TO STATE A CLAIM OF NEGLIGENT MISREPRESENTATION ........ 6

A. The Complaint Fails To Adequately Allege Justifiable Reliance on Any Misrepresentation Purportedly Made by Tremont ........ 7

B. The Complaint Alleges No Facts Sufficient To Show Tremont Made Any Misrepresentation ........ 8

1. Tremont Accurately Disclosed Its Investment Objectives and Strategies ........ 9

2. Tremont Did Not Falsely Promise To Conduct Thorough Due Diligence ........ 10

CONCLUSION ........ 12

# TABLE OF AUTHORITIES

## CASES

Anschutz Corp. v. Merrill Lynch & Co.,
690 F.3d 98 (2d Cir. 2012)....................6

Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co.,
375 F.3d 168 (2d Cir. 2004)....................7, 11

Hausler v. Spectra Realty, Inc.,
590 N.Y.S.2d 587 (N.Y. App. Div. 3d Dep't 1992)....................11

Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,
672 F.3d 155 (2d Cir. 2012)....................6

San Diego County Employees Retirement Association v. Maounis,
749 F. Supp. 2d 104 (S.D.N.Y. 2010)....................9

Sykes v. RFD Third Avenue 1 Associates, LLC,
884 N.Y.S.2d 745 (N.Y. App. Div., 1st Dep't 2009)....................6

SSR II LLC v. John Hancock Life Insurance Co. (USA),
37 Misc.3d 1204(A) (table), 2012 WL 4513354
(N.Y. Sup. Ct., N.Y. County Sept. 28, 2012)....................7, 8

Tyler v. Liz Claiborne, Inc.,
814 F. Supp. 2d 323 (S.D.N.Y. 2011)....................2

In re VMS Limited Partnership Securities Litigation,
803 F. Supp. 179 (N.D. Ill. 1992)....................9

Welch v. TD Ameritrade Holding Corp.,
07 Civ. 6904, 2009 WL 2356131 (S.D.N.Y. July 27, 2009)....................7

Zutty v. Rye Select Broad Market Prime Fund, L.P.,
939 N.Y.S.2d 345 (table), 2011 WL 5962804
(N.Y. Sup. Ct., N.Y. County Apr. 15, 2011)....................11

Defendants Tremont Partners, Inc. ("TPI") and Tremont Group Holdings, Inc. (collectively, "Tremont" or the "Tremont Defendants") respectfully submit this memorandum of law in support of their motion for an Order, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissing the second amended complaint (the "Complaint") of plaintiff F. Daniel Prickett ("Prickett") as against Tremont with prejudice.

**PRELIMINARY STATEMENT**

This Court granted Tremont's motion to dismiss Prickett's first amended complaint pursuant to an opinion and order entered on September 12, 2012. The order dismissed with prejudice all claims asserted against Tremont, save Prickett's claim of negligent misrepresentation, which the Court granted Prickett leave to replead. Availing himself of that opportunity, Prickett has repled his negligent misrepresentation claim in his latest Complaint, but the claim remains fatally defective. It therefore should be dismissed again, this time with prejudice.

By way of background, Prickett is an alleged holder of a variable universal life insurance policy (the "Policy") issued by New York Life Insurance and Annuity Corporation ("NY Life"). Under the terms of the Policy, NY Life invested the Policy's excess cash value as directed by Prickett. One such investment included Tremont Opportunity Fund III, L.P. ("TOF III" or the "Fund"), a hedge fund managed by defendant TPI that indirectly invested a portion of its assets with Bernard Madoff.

In the Complaint, Prickett alleges that Tremont negligently misrepresented the Fund's investment objectives and TPI's oversight of Madoff. According to Prickett, these purported representations must have been false because Tremont failed to discover Madoff's Ponzi scheme before he publicly revealed it. These allegations fail to state a claim for relief because the Complaint is devoid of facts sufficient to show that Prickett justifiably relied on any representation purportedly made by Tremont or that any such representation was false when made. Having failed

once again to state a negligent misrepresentation claim, the claim should be dismissed with prejudice as against the Tremont Defendants. See Tyler v. Liz Claiborne, Inc., 814 F. Supp. 2d 323, 344 (S.D.N.Y. 2011) ("[A]s plaintiff has already amended his complaint twice, dismissal with prejudice is appropriate at this stage in the litigation.").

## ALLEGATIONS OF THE COMPLAINT

### The Plaintiff and His NY Life Policy

Prickett purchased his Policy in May 2003. (Compl. ¶¶ 1, 42.) By its terms, the Policy enabled Prickett to direct the deposit of the Policy's excess cash value in a "Separate Account" maintained by NY Life and allocate such deposits to one or more "Subaccounts." (Id. ¶¶ 22, 26-28.) In May 2004, Prickett directed allocation of a portion of the Policy's excess cash value to a subaccount created by NY Life for investments in TOF III. (Id. ¶ 61.) NY Life maintained control over the subaccount so that Prickett and other policyholders could remain exempt from federal income tax on gains realized through the investment in TOF III. (Id. ¶¶ 22-24, 27, 34-36.)

### Tremont and Its Relationship with NY Life

Defendant TPI is the general partner of TOF III, a hedge fund of funds organized as a limited partnership under Delaware law. (Compl. ¶ 19.) Defendant Tremont Group Holdings, Inc. is the parent company of TPI. (Id. ¶ 17.) On March 26, 2004, Tremont and NY Life allegedly entered into an agreement (the "Participation Agreement") authorizing NY Life to invest subaccount assets in TOF III. (Id. ¶ 43.) The Participation Agreement expressly provided that the parties intended to create a contractual relationship solely between NY Life and Tremont. (Id. ¶¶ 43, 44.) The Participation Agreement also included a provision prohibiting the parties from disclosing the contract to policyholders such as Prickett. (Id. ¶¶ 2, 44.)

**The Private Placement Memorandum**

Prior to purchasing limited partnership interests in TOF III, NY Life received the Fund's offering materials, namely, the TOF III private placement memorandum ("PPM") and the Fund's limited partnership agreement ("LPA"). (Compl. ¶ 49.) Those documents stated in no uncertain terms that only insurance carriers, such as NY Life, would be permitted to invest in TOF III and, consequently, the Fund would not accept subscriptions for limited partnership interests from policyholders, such as Prickett.[1] For example, the PPM disclosed that: **"It should be emphasized that the [Insurance] Companies, and not the owners of Contracts,[[2]] will be the Limited Partners in the Partnership."**[3]

Further underscoring this point, the PPM admonished that there would be *absolutely no communication* between Tremont and policyholders such as Prickett, who would have no role in managing the investment:

> In this regard, Contract Owners will not have any right to require the General Partner [TPI] (or any Manager) to acquire or dispose of any particular asset, to make, fund or allocate funds to any investment or to incur or pay any particular liability of a Portfolio. There will be no prearranged plan between the General Partner (or any Manager) and any Contract Owner to invest any amounts in any particular asset or subject to any particular agreement. The General Partner (and any Manager) will not discuss with, directly or indirectly consult with or receive, require or rely upon the advice of any person which the General Partner (or Manager) knows or should know is a Contract Owner, beneficiary of a Contract or fiduciary or beneficiary of a trust that is a Contract Owner with regard to management of any Portfolio assets.

---

1 (See, e.g., American Masters Opportunity Insurance Fund, L.P. Am. and Restated Confidential Private Placement Mem. ("TOF III PPM," attached to the accompanying transmittal Declaration of Jason C. Vigna in support of the Tremont Defendants' motion to dismiss the second amended complaint ("Trans. Decl.") as Exhibit A) at overleaf ("The Interests described herein are currently being offered only to *insurance company investors (the 'Companies')*[.]" (emphasis added)).) TOF III formerly was known as American Masters Opportunity Insurance Fund, L.P. (Compl. ¶ 19.)

2 In the PPM, policyholders such as Prickett are defined as "Contract Owners" and "Contract Persons."

3 (TOF III PPM (Trans. Decl. Ex. A) at 35 (emphasis in original).)

(TOF III PPM (Trans. Decl. Ex. A) at 4, 36-37.)

The PPM disclosed that TOF III's assets would be invested with a number of asset managers selected using "criteria including, but not limited to: extensive investment management experience; successful historical performance, including a history of consistent returns with regard to the Manager's investment style; the degree to which a specific Manager complements and balances the Partnership's Portfolio with respect to the strategies employed by other Managers; the quality and stability of the Manager's organization; the ability of the Partnership to make withdrawals or liquidate its investment; and the ability of each Manager to consistently and effectively apply its investment approach." (TOF III PPM (Trans. Decl. Ex. A) at 2.)

The PPM further disclosed that, "[i]n selecting Managers, the General Partner collects, analyzes and evaluates information regarding the personnel, history and background, and the investment styles, strategies and performance of professional investment management firms." (TOF III PPM (Trans. Decl. Ex. A) at 3.) The PPM warned, however, that "the General Partner may not always be provided with detailed information regarding all the investments made by the Managers because certain of this information may be considered proprietary information by the Mangers. This lack of access to information may make it more difficult for the General Partner to select, allocate among and evaluate the Managers[.]" (Id. at 23.) The PPM further warned that "[t]here is no ability to predict the investments the Managers may select, or whether they will act in accordance with disclosure documents or descriptive materials furnished by them to the Partnership." (Id. at 22.) The PPM repeatedly warned that "**there is no assurance that the Partnership will be able to achieve its objective or be profitable**." (Id. at 2, 22 (emphasis in original).)

**The Limited Partnership Agreement**

The LPA governs the rights and obligations of the Fund's general partner, TPI, and its limited partners. In that connection, the LPA specifies – and limits – the duties owed by TPI to the Fund and its partners, including NY Life. (See TOF III 2d Am. & Restated Ltd. P'ship Agreement ("TOF III LPA") (Trans. Decl., Ex. B) § 3.04(a) ("the General Partner and its Affiliates *shall not be obligated* to do or perform any act or thing in connection with the business of the Partnership not expressly set forth herein" (emphasis added)).)

The LPA acknowledges that certain of the Fund's limited partners might "hold their interests in the Partnership in separate accounts, which interests are intended to serve as an investment option under certain variable life insurance or annuity contracts (the 'Contracts') to be issued by such Limited Partners to the holders of such Contracts ('Contract Owners')." (TOF III LPA (Trans. Decl. Ex. B) § 1.04(a) (italics removed).) As to those limited partners, the LPA bars Tremont "from contacting directly or indirectly or accepting any communications from any [Contract Owner or its agents or representatives] concerning the assets held in the insurance company's separate accounts." (Id. § 3.08(k).)

**Madoff Admits Misleading Tremont and Other Sophisticated Investors**

As disclosed in the TOF III PPM, up to 55 percent of TOF III's assets could be allocated to any single investment. (See TOF III PPM (Trans. Decl. Ex. A) at 4, 35; see also Compl. ¶ 38.) TOF III allegedly allocated approximately 22 percent of its capital to the "Rye Funds," which directly or indirectly invested substantially all of their assets with Madoff.[4] (Compl. ¶¶ 5, 8, 61,

[4] The Rye Funds, also managed by TPI, are: (i) Rye Select Broad Market Prime Fund, L.P.; (ii) Rye Select Broad Market XL Fund, L.P.; and (iii) Rye Select Broad Market Insurance Fund, L.P. (Compl. ¶ 113.)

113.) TOF III allocated the balance of its assets for investment among multiple additional managers.

On December 11, 2008, Madoff publicly admitted that his broker-dealer firm, Bernard L. Madoff Investment Securities LLC (the firm through which he bought and sold securities), had long been operated as a Ponzi scheme. (Compl. ¶¶ 7, 8.) According to the Complaint, prior to this confession, a few individuals purportedly harbored "concerns" that Madoff's business was "not legitimate." (Id. ¶ 10.) The Complaint does not allege, however, that Tremont had ever heard of those concerns or knew or suspected Madoff was running a Ponzi scheme.

## ARGUMENT

### THE COMPLAINT FAILS TO STATE A CLAIM OF NEGLIGENT MISREPRESENTATION

To state a claim for negligent misrepresentation under New York law,[5] a plaintiff must plead that:

> "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment."

Anschutz Corp. v. Merrill Lynch & Co., 690 F.3d 98, 114 (2d Cir. 2012) (citation omitted); see also Sykes v. RFD Third Ave. 1 Assocs., LLC, 884 N.Y.S.2d 745, 747-49 (N.Y. App. Div., 1st

---

[5] A federal court sitting in diversity applies the choice of law rules of the state in which it sits, and New York uses an "interest analysis" to determine the applicable law where a conflict of laws exists. Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 672 F.3d 155, 157-58 (2d Cir. 2012). In tort cases, the interest analysis distinguishes between conduct-regulating rules, *i.e.*, those governing conduct, and loss-allocating rules, *i.e.*, those that "'prohibit, assign, or limit liability after the tort occurs.'" Id. at 158 (citation omitted). When analyzing a claim alleging violations of a conduct-regulating rule, such as negligent misrepresentation, courts apply the law of the jurisdiction where the defendant engaged in the conduct prohibited by the rule. See id. Here, all of the allegedly wrongful conduct – from Madoff's Ponzi scheme to Tremont's dissemination of alleged misrepresentations – occurred in New York. Accordingly, New York law governs Prickett's claim of negligent misrepresentation.

Dep't 2009), aff'd, 938 N.E.2d 325 (N.Y. 2010). As shown below, the Complaint does not adequately plead these elements, warranting dismissal of the claim as against Tremont.

**A. The Complaint Fails To Adequately Allege Justifiable Reliance on Any Misrepresentation Purportedly Made by Tremont**

The New York Court of Appeals has held that "a claim of negligent misrepresentation can succeed only where reliance on the alleged misrepresentation is justified." Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 188 (2d Cir. 2004) (citing Kimmel v. Schaefer, 675 N.E.2d 450 (N.Y. 1996)). To adequately allege justifiable reliance, a complaint must plead facts sufficient to show: (i) "the defendant 'held or appeared to hold unique or special expertise'"; (ii) "there was 'a special relationship of trust or confidence' between the parties"; and (iii) the defendant "'was aware of the use to which the information would be put and supplied it for that purpose.'" Welch v. TD Ameritrade Holding Corp., 07 Civ. 6904, 2009 WL 2356131, at *45 (S.D.N.Y. July 27, 2009) (quoting Kimmel, 675 N.E.2d at 454).

Even if the Complaint could be read to allege that Tremont claimed to have unique or special expertise regarding due diligence or monitoring asset managers of hedge funds, the negligent misrepresentation claim still would fail because the Complaint does not adequately allege the other two requisite factors – *i.e.*, a special relationship between Tremont and Prickett, and Tremont's knowledge of the use Prickett would make of the supposed diligence-related disclosures contained in the Fund's PPM.

Regarding the special relationship prong, the decision of SSR II LLC v. John Hancock Life Insurance Co. (USA), 37 Misc. 3d 1204(A) (table), 2012 WL 4513354 (N.Y. Sup. Ct., N.Y. County Sept. 28, 2012), is virtually on "all fours." In that case, the plaintiff ("SSR") allegedly purchased six variable universal life insurance policies and directed the insurance carriers who issued them (the "Carriers") to invest the policies' excess cash value in TOF III. See id., 2012 WL

4513354, at *1-2. After SSR sued Tremont and others in connection with alleged losses caused by Madoff's Ponzi scheme, Tremont filed a motion to dismiss the claims asserted against it, including a claim of negligent misrepresentation substantially identical to the one alleged in the Complaint here. The court granted Tremont's motion, including with respect to the negligent misrepresentation claim, finding that the complaint had not adequately alleged a "special relationship" between Tremont and the plaintiff policyholder. As explained by the court, "the extent of Tremont's relationship with SSR is that it managed the fund in which the Carriers were partners. This does not give rise to a special relationship between Tremont and SSR." Id. at *7.

Here, as in SSR II, the Complaint alleges no facts sufficient to show that Prickett had a special relationship with any Tremont Defendant. Indeed, the Complaint alleges no relationship of any kind between Prickett and Tremont. The only alleged relationship pertaining to the investments at issue here is Prickett's contractual arrangement with NY Life pursuant to the Policy. (Compl. ¶ 1.)

The Complaint also nowhere alleges that Tremont had any knowledge of what, if anything, Prickett intended to do with any Fund offering materials he may have reviewed. The Complaint does not even allege that, prior to this litigation, Tremont ever became aware of Prickett, his purchase of a Policy, or his receipt or review of Fund offering materials. The Complaint therefore fails adequately to allege that Prickett justifiably relied on any purported misrepresentation made by Tremont, warranting dismissal of his negligent misrepresentation claim.

### B. The Complaint Alleges No Facts Sufficient To Show Tremont Made Any Misrepresentation

The negligent misrepresentation claim is facially defective for another separate and independent reason: the Complaint fails adequately to allege that Tremont made any misrepresentation of material fact. The misrepresentations alleged in the Complaint purportedly

appeared in the Fund's PPM and pertained broadly to the following: (i) TOF III's investment objectives and strategies (Compl. ¶¶ 51-53); and (ii) Tremont's oversight of TOF III's investment managers (including Madoff) (id. ¶¶ 54-60).[6] The Complaint, however, fails to allege facts sufficient to show that Tremont misrepresented any fact pertaining to those topics.

1. Tremont Accurately Disclosed Its Investment Objectives and Strategies

The Complaint alleges that TOF III's PPM "falsely represented the [] Fund's investment objectives and how those stated objectives were to be achieved." (Compl. ¶ 51.) The Complaint, however, fails to explain, as it must, how any such representations were false. For example, according to the Complaint, the PPM disclosed that TOF III sought to "'provide investors with a diversified investment portfolio[] designed to result in above average returns over a long period of time' by delegating discretionary and other authority to manage [TOF III's] assets to one or more Investment Advisors in Tremont's absolute discretion." (Id. ¶ 4.) But the Complaint is devoid of any facts showing that TOF III did not, as represented, seek to achieve superior returns by delegating discretionary investment authority to a number of investment managers. TOF III was, after all, a fund of funds that allocated assets among multiple managers employing different investment strategies. The Complaint proffers nothing to support Prickett's implicit (and far-fetched) suggestion that TOF III deviated from the objectives disclosed in the PPM by, for example, investing with only one manager in order to achieve below average returns.

---

6 To the extent Prickett alleges that Tremont made additional misstatements on its website or in its Form ADV (see Compl. ¶¶ 54, 56, 59, 60), such allegations are insufficient to state a claim of negligent misrepresentation because Prickett does not allege, as he must, that he ever read – much less relied on – those statements. (Cf. Compl. ¶ 49 ("New York Life . . . furnished to Plaintiff the Tremont PPM and the LPA.").) Further, any such alleged reliance would have been unreasonable as a matter of law given the PPM's express admonition (see TOF III PPM (Trans. Decl. Ex. A) at overleaf)) against reliance on any representation outside the four corners of the PPM. See San Diego Cnty. Employees Ret. Ass'n v. Maounis, 749 F. Supp. 2d 104, 120-21 (S.D.N.Y. 2010); In re VMS Ltd. P'ship Sec. Litig., 803 F. Supp. 179, 193-94 (N.D. Ill. 1992).

To be sure, the Complaint alleges that TOF III's "investment objectives could not be achieved using Tremont's stated strategy," *i.e.*, "investment professionals . . . were unable to replicate the split strike strategy and the returns purportedly achieved by Madoff using that strategy." (Compl. ¶ 52.) But this is a *non sequitur*. The PPM made no representation concerning *Madoff's* strategy. Rather, it disclosed that the *Fund's* strategy was to use a "multi-manager approach" to allocate assets among multiple managers "exhibit[ing] opportunistic styles and strategies." (TOF III PPM (Trans. Decl. Ex. A) at iii, 1.) The Complaint does not and cannot allege that the Fund pursued any other strategy.

Prickett fares no better with his allegation that it was "patently false" for TOF III to disclose it maintained a "diversified investment portfolio" when it invested 22 percent of its assets with Madoff, "an extremely concentrated position." (Compl. ¶ 53.) This allegation implicitly recognizes that 78 percent of the Fund's assets were allocated for investment among a number of managers other than Madoff. And the PPM itself explained that TOF III could have a single investment account for up to 55 percent of the Fund's assets and the Fund's portfolio could still be considered diversified. (See TOF III PPM (Trans. Decl. Ex. A) at 4, 35.) Thus, the allegation that 22 percent of the Fund's assets were allocated to Madoff does not, by itself, show that the Fund's entire portfolio – in the aggregate – was "extremely concentrated" and not diversified.

2. Tremont Did Not Falsely Promise To Conduct Thorough Due Diligence

The Complaint also fails adequately to allege that Tremont made any false representation regarding efforts to conduct due diligence or monitor the activities of TOF III's investment managers. (See Compl. ¶¶ 54-60.)

The Complaint alleges that Tremont "pledg[ed] to conduct thorough due diligence of any investment advisor and/or investment products before making investment decisions[.]" (Compl.

¶ 60.[7]) As a threshold matter, the purported pledge "cannot support a claim for negligent misrepresentation because [it is a] promissory representation[] about future events." Eternity Global Master Fund, 375 F.3d at 188. But even if a promise could otherwise provide a basis for a negligent misrepresentation claim, the claim still would fail given that the Complaint alleges no facts sufficient to show that the purported pledge was "false," *i.e.*, that Tremont had no intention of keeping the promise at the time Tremont supposedly made it. Rather, the Complaint alleges on "information and belief" that Tremont's due diligence could not have been thorough because Tremont did not detect Madoff's fraud. (Compl. ¶¶ 5, 11, 58.) This conclusory assertion falls short of what is required to state a claim of negligent misrepresentation under New York law. See Zutty v. Rye Select Broad Mkt. Prime Fund, L.P., 939 N.Y.S.2d 745 (table), 2011 WL 5962804, at *10 (N.Y. Sup. Ct., N.Y. County Apr. 15, 2011) ("[T]he subsequent revelation of Madoff's fraud does not establish, for pleading purposes, that any of TPI's prior representations regarding Madoff or the Funds was false when made."); see also Hausler v. Spectra Realty, Inc., 590 N.Y.S.2d 587, 589 (N.Y. App. Div. 3d Dep't 1992) (affirming dismissal of negligent misrepresentation claim where complaint contained only conclusory allegations regarding the falsity of defendant's representations).

---

7 In reality, no such "pledge" appeared in TOF III's PPM. Far from making any promise to conduct any specified level of due diligence or monitoring, the PPM disclosed that "[t]he General Partner will request detailed information on a continuing basis from each Manager regarding the Manager's historical performance and investment strategies. However, the General Partner may not always be provided with detailed information regarding all the investments made by the Managers because certain of this information may be considered proprietary information by the Managers. This lack of access to information may make it more difficult for the General Partner to select, allocate among and evaluate the Managers[.]" (PPM (Trans. Decl. Ex. A) at 23.)

## CONCLUSION

For the reasons stated, the Tremont Defendants' motion to dismiss should be granted and the Complaint dismissed with prejudice.

Dated: New York, New York
November 28, 2012

Respectfully submitted,

/s/ Seth M. Schwartz

Seth M. Schwartz (Seth.Schwartz@Skadden.com)
Jason C. Vigna (Jason.Vigna@Skadden.com)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Defendants
Tremont Group Holdings, Inc. and
Tremont Partners, Inc.