PILLSBURY WINTHROP SHAW PITTMAN LLP
Maria T. Galeno
Greg T. Lembrich
1540 Broadway
New York, NY 10036-4039
Tel.: (212) 858-1000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | Master Docket No. 08-Civ-11117 (TPG) |
| F. DANIEL PRICKETT,<br><br>Plaintiff,<br><br>- against -<br><br>NEW YORK LIFE INSURANCE COMPANY, et al.,<br><br>Defendants. | Civil Action No. 1:09-03137 (TPG) |

**MEMORANDUM OF LAW OF DEFENDANTS NEW YORK LIFE INSURANCE COMPANY AND NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

December 5, 2012

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ................................................................................. 4

    A.  Prickett Purchases a VUL Policy From NYLIAC and Invests in TOF III................4

    B.  Prickett Is a Sophisticated Investor ................................................................5

    C.  NYLIAC Advised Prickett of the Risks of Investing ......................................5

    D.  NYLIAC Was a Limited Partner in TOF III .................................................6

    E.  NYLIAC and Tremont Entered Into a Participation Agreement Regarding TOF III7

    F.  Tremont Made Clear NYLIAC's Lack of Control Over TOF III's Investments and
       Selection of Managers ....................................................................................8

LEGAL STANDARD ......................................................................................... 8

ARGUMENT ...................................................................................................... 9

I.     PRICKETT'S NEGLIGENT MISREPRESENTATION CLAIM FAILS................. 9

    A.  Plaintiff Identifies No Misrepresentation by NYLIAC ..................................9

    B.  As This Court Previously Ruled, There Is No Basis To Conclude That NYLIAC
       Should Have Known That Any Alleged Misrepresentations Were False ..................14

    C.  NYLIAC Is Not Responsible for Any Alleged Misrepresentations by Tremont........15

    D.  NYLIAC Owed No Special Duty to Plaintiff ................................................17

    E.  Plaintiff Could Not Have Reasonably Relied on Any Purported Misrepresentation
       by NYLIAC ..................................................................................................18

    F.  Plaintiff's Claim Is Barred by the Economic Loss Doctrine ...........................19

    G.  Plaintiff's Claim Is Time-Barred .................................................................20

    H.  Plaintiff Cannot Prove Loss Causation ........................................................21

CONCLUSION .................................................................................................. 22

# TABLE OF AUTHORITIES

## CASES

*Adams v. Intralinks, Inc.*, No. 03-cv-5384, 2004 WL 1627313 (S.D.N.Y. July 20, 2004) ..........19

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ...................................................................9

*AUSA Life Ins. Co. v. Ernst and Young*, 206 F.3d 202 (2d Cir. 2000) ........................21

*BHC Interim Funding, L.P. v. Finantra Capital, Inc.*, 283 F. Supp. 2d 968 (S.D.N.Y. 2003) ..........................................................................................................17

*Batas v. Prudential Insurance Co. of America*, 281 A.D.2d 260 (1st Dept. 2001) .....................17

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...............................................8, 9

*Centro Empresarial Cempresa S.A. v América Mvil, S.A.B. de C.V.*, 17 N.Y.3d 269, 278-79 (2011) ..................................................................................................15

*Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605 (S.D.N.Y. 2009)........................... 19-20

*Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489 (2d Cir. 1992).........................................21

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994)................................21

*Glonti v. Stevenson*, No. 08-8960, 2009 WL 311293 (S.D.N.Y. Feb. 6, 2009)............................20

*Goldweber v. Harmony Partners, Ltd.*, No. 09-61902, 2010 WL 3702508 (S.D. Fla. Sept. 16, 2010) .......................................................................................................21

*Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8 (2d Cir. 2000)....................................9

*Icebox-Scoops v. Finanz St. Honore, B.V.*, 676 F. Supp. 2d 100 (E.D.N.Y. 2009)......................20

*In re J.P. Jeanneret Associates, Inc.*, 769 F. Supp. 2d 340 (S.D.N.Y. 2011)................................14

*Kashi v. Gratsos*, 790 F.2d 1050 (2d Cir. 1986).........................................................16

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204 (S.D.N.Y. 2007) ..........................................................................................................19

*Matsumura v. Benihana National Corp.*, 542 F. Supp. 2d 245 (S.D.N.Y. 2008)..........................14

*In re Merkin*, No. 08 Civ. 10922, 2011 WL 4435873 (S.D.N.Y. Sept. 23, 2011)....................2, 18

*Michael S. Rulle Family Dynasty Trustee v. AGL Life Assurance Co.*, No. 10-231, 2010 WL 3522135 (E.D. Pa. Sept. 8, 2010), *aff'd*, No. 10-4034, 2011 WL 3510285 (3d Cir. Aug. 11, 2011) ................................................................................................ 20-21

*In re Morgan Stanley Information Fund Sec. Litigation*, 592 F.3d 347 (2d Cir. 2010) ............... 19

*Nebraskaland, Inc. v. Sunoco, Inc.*, 10 Civ. 1091, 2011 WL 6131313 (E.D.N.Y. July 13, 2011) ...................................................................................................................................... 19

*Newman v. Family Management Corp.*, 748 F. Supp. 2d 299 (S.D.N.Y. 2010) ......................... 14

*Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2 (2d Cir. 1996) ............................................ 19

*PPI Enterprises (U.S.) v. Del Monte Foods Co.*, No. 99 Civ. 3794, 2003 WL 22118977 (S.D.N.Y. Sept. 11, 2003) .................................................................................................... 20

*Sable v. Southmark/Envicon Capital Corp.*, 819 F. Supp. 324 (S.D.N.Y. 1993) ......................... 19

*Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61 (S.D.N.Y. 2010) ................................................. 14

*SSR II, LLC v. John Hancock Life Insurance Co.*, No. 652793/2011, 2012 WL 4513354 (N.Y. Sup. Ct. Sept. 28, 2012) .......................................................... 13, 15, 16, 17

*Stephenson v. Citco Grp. Ltd.*, 700 F. Supp. 2d 599 (S.D.N.Y. 2010) ........................................ 14

*Stewart v. Jackson & Nash*, 976 F.2d 86 (2d Cir. 1992) ........................................................ 16-17

*In re Tower Automobile Sec. Litigation*, 483 F. Supp. 2d 327 (S.D.N.Y. 2007) ............................ 9

*In re Tremont Sec. Law, State Law and Insurance Litigation*, 703 F. Supp. 2d 362 (S.D.N.Y. 2010) .......................................................................................................................3

*Wilmington Trust Co. v. Metropolitan Life Insurance Co.*, No. 0600242/2008, 2008 WL 3819698 (N.Y. Sup. Ct. Aug. 4, 2008) ................................................................................ 17

*Yak v. Bank Brussels Lambert*, 252 F.3d 127 (2d Cir. 2001) ....................................................... 9

*Zutty v. Rye Select Broad Market Prime Fund, L.P.*, 939 N.Y.S.2d 745 (N.Y. Sup. Ct. 2011) ...................................................................................................................................... 14

## CODES, RULES AND STATUTES

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 1, 8

## PRELIMINARY STATEMENT

Defendants New York Life Insurance Company ("New York Life") and New York Life Insurance and Annuity Corporation ("NYLIAC"), submit this memorandum in support of their motion to dismiss the Second Amended Complaint ("Complaint" or "Compl.") of Plaintiff F. Daniel Prickett ("Plaintiff" or "Prickett") under Rule 12(b)(6).[1]

After all of his claims but for a negligent misrepresentation claim were dismissed with prejudice by this Court in an Opinion dated September 11, 2012 ("Opinion"), Plaintiff's third try at a negligent misrepresentation claim is based on the same theories and allegations that this Court has already soundly rejected and have been rejected by other courts. As a result, it should suffer the same fate as his other claims and be dismissed with prejudice.

The Court permitted Prickett to replead his negligent misrepresentation claim "if this can be done" because Prickett failed to specifically allege which defendant was responsible for which alleged misrepresentation, stating that "it cannot be that all defendants stand on the same ground, and can be lumped together without differentiation." Opinion at 18. Now that Plaintiff has been forced to specify what misrepresentations NYLIAC is alleged to have made, it is clear that NYLIAC has made no misrepresentations. The "misrepresentations" identified by Prickett are, in fact, a near verbatim repeat of his failed breach of contract claim. Plaintiff has merely recast his rejected allegations concerning NYLIAC's rights and responsibilities under the Policy as alleged negligent misrepresentations. *Compare* Compl. ¶ 1 *with* Opinion at 25. For the many reasons that this Court has already recognized, such attempt to resuscitate his contract claim by mutating it into a claim for negligent misrepresentation must fail.

The misrepresentations alleged by Prickett derive solely from the NYLIAC Private Placement Memorandum ("PPM") and Tremont PPM. Neither of those documents can support a

---

[1] New York Life has no involvement in this case other than as parent company to NYLIAC. *See* Compl. ¶ 16. That fact, without more, provides no basis to name New York Life as a defendant in this action. The negligent misrepresentation claim against New York Life should be dismissed on that ground alone.

claim that NYLIAC misled him with respect to the risk of his investment with the Tremont

Opportunity Fund III ("TOF III").  NYLIAC's PPM is replete with explicit cautionary language,

which this Court specifically noted in dismissing Plaintiff's prior complaint.  *See* Opinion at 11-

12.  Moreover, the Tremont PPM cannot support a negligent misrepresentation claim against

NYLIAC.  The TOF III Limited Partnership Agreement (which Plaintiff received prior to

investing), stated that "The management of the Partnership shall be vested exclusively in the

General Partner," that "no Limited Partner shall take any part in the management or control of

the Partnership,"  and that the "General Partner shall have full power and authority...to purchase,

sell, exchange, trade and otherwise deal in and with Securities and other property of the

Partnership [and] to make decisions relating to the manner, method and timing of investment and

trading transactions."  *See* Factual Background § D, *infra*.

 The Tremont PPM further disclosed the broad extent of Tremont's authority and

NYLIAC's limited control over TOF III, stating "The General Partner is responsible for selecting

the Partnership's Managers, allocating assets  among Managers and monitoring the Partnership's

investments" and "The Limited Partners cannot take part in the management or control of the

Partnership's business, which is the sole responsibility of the General Partner."  *See* Factual

Background § F, *infra*.  As one Court in this District has held in dismissing Madoff-related

claims for securities fraud, "Plaintiffs cannot be permitted to 'cherry pick' language from the

offering memoranda, and then ignore explicit cautionary language, which warned Plaintiffs that

third-party managers would have custody over the Funds' assets and that this custody carried a

risk of loss."  *In re Merkin*, No. 08 Civ. 10922, 2011 WL 4435873, at *7 (S.D.N.Y. Sept. 23,

2011).

 Thus, Plaintiff's claim yet again boils down to blaming NYLIAC for losses Plaintiff

incurred as a result of the Bernard Madoff Ponzi scheme simply because NYLIAC offered to

purchasers of its variable universal life insurance ("VUL") policies the option – on a platform

offering numerous other options – to invest in TOF III, which was, in turn, invested in the Rye

Funds, which were, in turn, invested with Bernard L. Madoff Investment Securities LLC

("BMIS").  Despite the fact that the SEC and other regulatory bodies responsible for monitoring

Madoff's activities failed to detect his crimes, Plaintiff alleges that NYLIAC should have

discovered Madoff's fraud and protected Plaintiff from making the decision to invest in TOF III.

Plaintiff's basis for seeking to hold NYLIAC responsible for his investment losses cannot

withstand scrutiny, as numerous courts (including this one) have rejected such theories of

liability and dismissed similar claims.  See *In re Tremont Sec. Law, State Law and Ins. Litig.*,

703 F. Supp. 2d 362, 371 (S.D.N.Y. 2010) (finding that the "more compelling inference as to

why Madoff's fraud went undetected for two decades was his proficiency in covering up his

scheme and eluding the SEC and other financial professionals").

        As set forth more fully below, Plaintiff's negligent misrepresentation claim against

NYLIAC fails and should be dismissed with prejudice because:

> (1)     Plaintiff has identified no misrepresentation by NYLIAC, his efforts to attribute purported misrepresentations by Tremont to NYLIAC (based on the Participation Agreement and otherwise) fail;

> (2)     The allegations fails to satisfy the "knew or should have known" element of a negligent misrepresentation claim because Plaintiff continues to rely solely on hindsight and "red flags" that have been repeatedly rejected;

> (3)     NYLIAC owed no special duty to Prickett; this Court has specifically held that NYLIAC owed Prickett no fiduciary duties and New York law is clear that no special relationship arises out of an insurance contract;

> (4)     Prickett reliance's could not have been reasonable given the extensive cautionary language in the NYLIAC PPM and Prickett's knowledge of NYLIAC's limited authority with respect to TOF III;

> (5)     the claim is barred by the economic loss doctrine because there is a contract between the parties and Plaintiff has not alleged any personal injury or physical property damage;

(6)    the claim is barred by New York's three-year statute of limitations because Plaintiff's claim was filed nearly five years after the alleged misrepresentations were made; and

(7)    Plaintiff cannot establish loss causation because Madoff's criminal scheme, not any alleged conduct by NYLIAC, was the proximate cause of Prickett's losses.

## FACTUAL BACKGROUND

### A.    Prickett Purchases a VUL Policy From NYLIAC and Invests in TOF III

Prickett purchased a variable universal life insurance policy from NYLIAC ("the Policy") in May 2003.  Compl. ¶¶ 1, 42; *see also* Ex. A (Prickett VUL policy dated May 12, 2003).[2]  The Policy had a face amount of $6,394,951 and an initial premium of $928,044.90.  *Id.*  In addition to the insurance component of the Policy, Prickett had the opportunity to accumulate tax-free "cash value" within his Policy that could be invested "in a choice of separate accounts, similar to mutual funds." *Id.* ¶¶ 22-24.

Prior to purchasing the Policy in April 2003, Plaintiff received NYLIAC's Variable Life Insurance Policy Private Offering Memorandum (the "NYLIAC PPM").  *See id.* ¶ 1; Ex. B (NYLIAC PPM) at i.   The NYLIAC PPM listed a dozen investment choices (deemed "Portfolio Options").  *See id.* at 8, SP-11.  TOF III was not included among the investment options available to NYLIAC VUL policyholders when Plaintiff purchased the Policy.  *See id.* at SP-11.

A year later, in May 2004, Plaintiff elected to invest $426,106.82 of his Policy premiums in TOF III (then known as the American Masters Opportunity Insurance Fund, L.P. ("AMO")), which had recently become available on NYLIAC's VUL platform.  Compl. ¶¶ 3, 61.  Plaintiff made this allocation by submitting a check for additional premiums, along with a Fund Change and Investment Option Form.  *See* Ex. C (Prickett Fund Change and Investment Option Form dated May 4, 2004).  At the time of Plaintiff's election, however, AMO was not yet listed on the Fund Change and Investment Option Form, so Plaintiff affirmatively wrote the name of the fund

---

[2]   References to lettered exhibits are to documents attached to the Declaration of Maria T. Galeno, dated December 5, 2012.

by hand on the form, and included a handwritten note to his Plan Administrator to invest 100% of the new premium in that fund. *See id.*

Also in May 2004, Plaintiff received the American Masters Opportunity Insurance Fund, L.P. Confidential Private Placement Memorandum (the "Tremont PPM"). Compl. ¶¶ 2-3; Ex. D (Tremont PPM). TOF III is a limited partnership managed by Tremont, the General Partner of the Fund. *See id.* at iii; Compl. ¶ 19. NYLIAC was a Limited Partner in TOF III. Ex. D at 28. Plaintiff subsequently continued to invest premiums in TOF III. By October 2008, Plaintiff's account statement showed a balance of $1,138,697.62 in TOF III. Compl. ¶¶ 3, 61.

**B.      Prickett Is a Sophisticated Investor**

NYLIAC's VUL policies were available only to Accredited Investors and Qualified Purchasers (i.e., "Eligible Investors") who could demonstrate to NYLIAC their financial means and sophistication through a "Prospective Purchaser Questionnaire and Agreement." Ex. B at ii, iii, 5-6.[3]  Prickett, who identified himself in his Application for the Policy as a "Banker - Managing Executive" at Wachovia Bank, submitted such a form to NYLIAC certifying his status as an Accredited Investor and a Qualified Purchaser. Ex. E (Prickett Application dated April 25, 2003); Ex. F (Prickett Prospective Purchaser Questionnaire and Agreement). The NYLIAC PPM distributed to prospective purchasers expressly stated that VUL policies are "suitable only for individuals and entities of substantial economic means … [who] are familiar with and understand the fundamental risks and financial hazards of purchasing the Policy." Ex. B at iii.

**C.      NYLIAC Advised Prickett of the Risks of Investing**

Prior to purchasing the Policy, Plaintiff received a copy of the NYLIAC PPM, which was replete with cautionary language advising him that he was assuming the risk of loss of his investments and that he should seek independent advice before investing. *See* Compl. ¶ 44.

---

[3]  The terms "Accredited Investor" and "Qualified Purchaser" are defined in the Securities Act of 1933 and the Investment Advisers Act of 1940. *See* Ex. B at 5.

The NYLIAC PPM warned prospective purchasers, including Prickett, that investment results under a VUL policy could not be guaranteed and that policyholders bore the risk of any premium losses suffered from VUL investments.  *See, e.g.,* Ex. B at ii ("**You bear the entire investment risk under the Policy.**"); *id.* at iii (**"Investing in a policy involves risks including the possible loss of Your entire investment."**); *id.* at 5. [4]  NYLIAC cautioned that the "securities to be purchased and traded by the Funds and the investment techniques and strategies to be employed by the Funds may increase this risk" of loss and that the "theories behind the investment strategy of a Fund may be untested and may be difficult or impossible to execute on." *Id.* at 33.  NYLIAC explicitly stated that it did not guarantee the performance of any of the investment divisions available for election under a VUL policy.  *See id.* at 8 ("THERE CAN BE NO ASSURANCE THAT ANY FUND WILL ACHIEVE ITS INVESTMENT OBJECTIVE") (capitalization in original).  NYLIAC specifically cautioned prospective purchasers that investment in exempt funds, like TOF III, "may entail more risks than traditional investments." *Id.* at 7-8.

The NYLIAC PPM advised Plaintiff that "You must make Your own evaluation of the risk of investing in the Policy."  *Id.* at 33.   NYLIAC also urged each prospective buyer to "seek independent advisory services with regard to the legal, economic, tax and related matters concerning the purchase of the Policy."  *Id.* at iii.

### D.	NYLIAC Was a Limited Partner in TOF III

NYLIAC is a party to a Limited Partnership Agreement with Tremont, the General Partner, and other limited partners in TOF III.  *See* Ex. G (Amended and Restated Limited Partnership Agreement of TOF III, dated May 15, 2007).  The Limited Partnership Agreement identifies NYLIAC as a limited partner in TOF III and Tremont as the General Partner.  *Id.* at 1,

---

[4]   All emphasis in quotations herein is in original unless otherwise noted.

26.  The Limited Partnership Agreement states that "The management of the Partnership shall be vested exclusively in the General Partner" and that "no Limited Partner shall take any part in the management or control of the Partnership, nor shall any Limited Partner have any authority or right to act on behalf of the Partnership in connection with any matter."  *Id.* § 3.01.  The Limited Partnership Agreement also provides that "the General Partner shall have ultimate authority and responsibility for managing and administering the affairs of the Partnership, and shall have the power and authority to do all things necessary or proper to carry out its duties" and that the "General Partner shall have full power and authority...to purchase, sell, exchange, trade and otherwise deal in and with Securities and other property of the Partnership [and] to make decisions relating to the manner, method and timing of investment and trading transactions."  *Id.* § 3.02.  Under the Limited Partnership Agreement, Tremont had the authority to determine "the valuation of Securities and other assets of the Partnership," and such determination "shall be final and conclusive as to all of the Partners."  *Id.* § 4.09.  Plaintiff acknowledges that he received a copy of the Limited Partnership Agreement before deciding to invest in TOF III. Compl. ¶ 49.

### E.   NYLIAC and Tremont Entered Into a Participation Agreement Regarding TOF III

NYLIAC also entered into a Participation Agreement with Tremont which set forth the terms and conditions under which NYLIAC would make TOF III available as an investment option on its VUL platform.  *See* Ex. H (Participation Agreement).  The Participation Agreement stated, "Insurer shall not give any information or make any representations or statements on behalf of the Partnership in connection with the sale of the Contracts other than the information or representations contained in the Establishing Documents, any side letters thereto and this Agreement, as the same may be supplemented or amended from time to time, or in sales literature or other promotional material approved by the Fund."  *Id.* § 5.5.  The Participation

Agreement defined "Establishing Documents" to include the Tremont PPM and the Limited

Partnership Agreement.  *Id.* § 1.10.  The Participation Agreement further provided, "The Insurer

will be a limited partner in the Partnership and will have no authority to act for or represent the

Partnership or the General Partner or their respective affiliates or any of them."  *Id.* § 8.1.

Prickett acknowledges that he did not have a copy of the Participation Agreement prior to

investing in TOF III.  *See* Compl. ¶¶ 2, 43.

### F.   Tremont Made Clear NYLIAC's Lack of Control Over TOF III's Investments and Selection of Managers

Prior to his election to allocate his premiums to TOF III in May 2004, Prickett received a

copy of Tremont's PPM for TOF III.  Compl. ¶¶ 2-3, 49.  The Tremont PPM, in addition to

containing cautionary language similar to that found in the NYLIAC PPM of the risk of total loss

of investment, explained that Limited Partners in TOF III, like NYLIAC, had *no right* to

participate in the Fund's selection of investments or managers.  Ex. D at iii ("The General

Partner is responsible for selecting the Partnership's Managers, allocating assets  among

Managers and monitoring the Partnership's investments."); *id.* at 28 ("The Limited Partners

cannot take part in the management or control of the Partnership's business, which is the sole

responsibility of the General Partner. The General Partner has wide latitude in making

investment decisions.").

### LEGAL STANDARD

To survive a motion under Fed. R. Civ. P. 12(b)(6), a plaintiff must set forth the grounds

upon which his claim rests through factual allegations sufficient "to raise a right to relief above

the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The requirement

to accept as true all factual allegations set forth in the complaint and draw all reasonable

inferences in favor of the plaintiff is "inapplicable to legal conclusions," which should be

disregarded. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Nor should a court "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

In ruling on a motion to dismiss, a district court may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit. *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001).  "[T]he truth of factual allegations that are contradicted by documents properly considered on a motion to dismiss need not be accepted." *In re Tower Auto. Sec. Litig.*, 483 F. Supp. 2d 327, 334 (S.D.N.Y. 2007).

## ARGUMENT

## I.    PRICKETT'S NEGLIGENT MISREPRESENTATION CLAIM FAILS

Under New York law, "the elements for a negligent misrepresentation claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).  For the reasons set forth below, Prickett has failed to state a claim for negligent misrepresentation against NYLIAC and his claim must be dismissed.

### A.    Plaintiff Identifies No Misrepresentation by NYLIAC

Plaintiff fails to allege any misrepresentation of fact attributable to NYLIAC.  Instead, Plaintiff refers, often out of context, to true statements in NYLIAC's PPM and mischaracterizes them as misrepresentations (*see* Compl. ¶¶ 25-41).  None of the statements identified by Plaintiff

supports a legally cognizable allegation that a false representation was made by NYLIAC.[5]

Specifically, Prickett alleges that NYLIAC misrepresented "that it would (1) maintain exclusive control and authority over investment decisions in Plaintiff's Subaccount; (2) invest Plaintiff's funds in a 'managed,' 'underlying portfolio' of securities; (3) 'monitor the performance' of that 'Portfolio to review continuing compliance with diversification and investor control requirements' in the sense that it would 'look through the fund' in which Plaintiff invests to review whether 'the fund has adequately diversified its investments' in accordance with the tax code; and (4) 'notify' Plaintiff of any 'material change in the Underlying Portfolios.'" Compl. ¶ 1.  As set forth below, none of these alleged misrepresentations can support a claim. Indeed, the majority of these allegations were set out in the prior complaint that was dismissed by this Court.  *See* Dkt. 641 at ¶¶ 54-56 (alleging representations concerning NYLIAC's "exclusive right" to select investments and control subaccounts), ¶¶ 45, 48-49, 51-53, 60 (alleging representations that funds would be invested in a "managed," "underlying portfolio" of securities), and ¶¶ 56-57, 60 (alleging representations that policyholders would be notified of material changes to subaccounts and underlying portfolios).

1.    NYLIAC did not misrepresent its control over the Subaccounts

Prickett points to NYLIAC's statements in the NYLIAC PPM regarding its "exclusive right to select the investments" available on its VUL platform, power to maintain and make changes to the Subaccounts, and discretion to substitute or change the investment options available to policyholders as alleged misrepresentations (Compl. ¶¶ 34-36, 40), but the Complaint fails to explain how or why such statements were false.  Plaintiff merely asserts that NYLIAC could have exercised its rights and control over the Subaccounts to remove TOF III as

---

[5]  This is particularly so given that TOF III was not even available as an investment option for NYLIAC's VUL policies at the time that Plaintiff received both the NYLIAC PPM and his Policy, the very documents that Plaintiff alleges contained the false statements.  *See* Ex. B at SP-11.

an investment option from its VUL platform, which, in hindsight, would have prevented

Plaintiff's Madoff-related losses.  This argument is tantamount to Prickett's assertion that

NYLIAC should have detected Madoff's Ponzi scheme, which the Court has already rejected.

*See* Opinion at 15-16.

The fact that NYLIAC had the **right** to remove TOF III from its platform cannot be

converted into an obligation to have done so (much less a misrepresentation that it would do so),

particularly where NYLIAC could **not** select, manage, or monitor the funds in which TOF III

invested.  *See* Ex. D. at iii, 28.  As this Court has recognized, "It is true that New York Life had

certain rights under the contract, to make changes to the list of investments and to take certain

investment options (such as the Tremont Fund) off of the list of investments for policyholders.

... But the contract says that New York Life may do these things and has discretion to do these

things; it does not say that New York Life must do those things."  Opinion at 26.  Thus,

NYLIAC's statements regarding its control over the Subaccounts were neither negligent nor

misrepresentations.[6]

2.    TOF III was a managed portfolio of securities

Prickett alleges that NYLIAC misrepresented that Plaintiff's funds would be invested in a

"managed," "underlying portfolio" of securities that would be valued at "fair value" because

TOF III was invested in funds managed by Madoff.  Compl. ¶¶ 28-31.  It cannot be credibly

disputed, however, that TOF III itself **was** invested in a diversified portfolio of securities

managed by multiple managers.  While that portfolio included the Rye Funds, which were

managed by BLMIS, approximately 78% of TOF III's assets consisted of other investments, the

legitimacy of which Plaintiff does not contest.  As this Court has recognized, "the Tremont Fund

---

[6]  Plaintiff does not dispute that he directed NYLIAC to invest his premiums in TOF III and that NYLIAC properly
carried out his instructions.  Accordingly, Prickett's statement that NYLIAC "channeled Plaintiff's investment to
Madoff's Ponzi scheme" (Compl. ¶ 112) is misleading at best.  It was Prickett himself who elected to invest his
premiums in TOF III.

was not, as Prickett suggests, a 'sham' investment; the fact that 22% of its assets were invested

in the Rye Funds and misappropriated by Madoff does not make the entire fund a sham."

Opinion at 26.  Moreover, Plaintiff was on notice from the Tremont PPM that NYLIAC was

**precluded** from selecting, supervising, or monitoring the underlying funds in TOF III, including

the Rye Funds.  *See* Factual Background § F, *supra*.

Plaintiff's allegation that NYLIAC "issued periodic statements that completely

misrepresented the value of Plaintiff's investment in the Tremont Fund" (Compl. ¶ 62) is simply

frivolous.  The Tremont PPM makes clear that Tremont, the General Partner of TOF III, was

responsible for investing the fund's assets, not NYLIAC.  Ex. D at iii ("The General Partner is

responsible for selecting the Partnership's Managers, allocating assets  among Managers and

monitoring the Partnership's investments.").  Moreover, the Limited Partnership Agreement

stated that Tremont had the authority to determine "the valuation of Securities and other assets of

the Partnership," and that such determination "shall be final and conclusive as to all of the

Partners."  Ex. G § 4.09.   As such, Plaintiff cannot allege plausibly that NYLIAC

misrepresented the manner in which the "fair value" of his investment would be determined.

3.     TOF III complied with diversification and investor control requirements

Plaintiff alleges that NYLIAC misrepresented that it would "'monitor' Plaintiff's

investment for 'adequate diversification' in the sense that it would 'look through' the Tremont

Fund to the diversification of its holdings."  Compl. ¶ 41; *see also* Compl. ¶¶ 38-39.  But the

relevant language in the NYLIAC PPM, in fact, states only that NYLIAC would "monitor the

performance of each Portfolio [here TOF III] to review continuing compliance with [IRS]

diversification and investor control requirements" (Ex. B at 27), not that NYLIAC would

monitor the performance or investment decisions of the underlying funds (here the Rye Funds) in

which TOF III invested.  As the court in another Madoff-related case found with respect to

nearly identical language in a PPM issued by another insurance company that was a limited partner in TOF III, "'monitoring' merely related to compliance with the diversification requirements of IRC § 817(h), and had nothing to do with [the insurance company] allegedly actively managing or overseeing [plaintiff's] investments." *SSR II, LLC v. John Hancock Life Ins. Co.*, No. 652793/2011, 2012 WL 4513354, at *11 n.6 (N.Y. Sup. Ct. Sept. 28, 2012) (dismissing negligent misrepresentation claim).

Moreover, the only reference to "looking though" investments in the NYLIAC PPM was to the fact that the IRS, **not NYLIAC**, would "look through" the fund to determine compliance with diversification requirements. *See id.* at 25. Under such diversification requirements, TOF III could not invest over 55% of its assets in a single investment fund in order to qualify as life insurance for tax purposes. *Id.* at 25-26. Here, it is indisputable that TOF III complied with such diversification requirements, having, as Plaintiff acknowledges, only 22% of its assets invested in the three Rye Funds that invested with Madoff. *See* Compl. ¶¶ 53, 61-62. As such, there can be no plausible allegation that NYLIAC misrepresented its responsibility to ensure such compliance.

4.   No material change requiring notification to Plaintiff occurred

Plaintiff alleges that NYLIAC misrepresented in the Policy and NYLIAC PPM that it would notify him of "'any changes' in his 'underlying portfolio.'" Compl. ¶¶ 36-37. In fact, the changes about which NYLIAC represented that it would advise Prickett were limited to a narrow and specific list (such as transferring the assets of Subaccounts or changing the amount of minimum or maximum investments permitted in certain accounts), and all such changes involved actions that could be taken by NYLIAC. *See* Ex. A at 16; Ex. B at 7. None of the "changes" listed in the Policy or PPM as triggering a responsibility by NYLIAC to notify Prickett concerned any changes in the investment funds (such as TOF III) in which Prickett elected to

invest his premiums, much less any changes in the underlying investments of such funds. Thus, Plaintiff again fails to set forth any misrepresentation by NYLIAC.

     5.    <u>There was no misrepresentation regarding due diligence that would be performed</u>

Prickett alleges that NYLIAC and Tremont made misrepresentations because they failed to conduct appropriate due diligence, and should therefore bear responsibility for his investment losses. *See* Compl. ¶¶ 5, 41, 54-60, 114. Courts have dismissed claims in numerous Madoff-related cases based upon similar allegations.[7] As one court stated, "the subsequent revelation of Madoff's fraud does not establish, for pleading purposes, that any of [defendant's] prior representations regarding Madoff or the Funds was false when made." *Zutty v. Rye Select Broad Market Prime Fund, L.P.*, 939 N.Y.S.2d 745 (N.Y. Sup. Ct. 2011).

Having failed to identify any misrepresentation by NYLIAC, Prickett's claim for negligent misrepresentation must be dismissed. *Matsumura v. Benihana Nat'l Corp.*, 542 F. Supp. 2d 245, 252-54 (S.D.N.Y. 2008) (dismissing claim for negligent misrepresentation where plaintiff failed to allege any legally cognizable misrepresentation).

**B.    As This Court Previously Ruled, There Is No Basis To Conclude That NYLIAC Should Have Known That Any Alleged Misrepresentations Were False**

Prickett continues to insist that NYLIAC was negligent in not detecting Madoff's fraud based on numerous "warning signs" (Compl. ¶¶ 10, 63-84, 100-104), notwithstanding that this Court ruled that Prickett "does not allege facts plausibly suggesting that defendants were aware of these red flags, or that if they were aware, that they translated those red flags into a suspicion

---

[7]  *See, e.g., In re J.P. Jeanneret Associates, Inc.*, 769 F.Supp.2d 340, 365-66 (S.D.N.Y. 2011) (rejecting allegation that "had [defendant] investigated Madoff, it would have learned that he was a fraud."); *Stephenson v. Citco Grp. Ltd.*, 700 F. Supp. 2d 599, 604 (S.D.N.Y. 2010) (defendants issued reports regarding Madoff feeder fund's portfolio and valuations, which defendants "represented they would verify and investigate through due diligence applying their substantial expertise"); *Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61, 74 (S.D.N.Y. 2010) (plaintiffs alleged that defendants "made misstatements" regarding "due diligence processes" in an offering memorandum); *Newman v. Family Mgmt. Corp.*, 748 F. Supp. 2d 299, 313 (S.D.N.Y. 2010) (plaintiffs alleged misrepresentations by defendants in offering materials regarding "due diligence" and "monitoring of investments").

of fraud" (Opinion at 15).[8]  Plaintiff also cannot adequately allege that he invested in TOF III

based upon negligent misrepresentations by NYLIAC because he was a sophisticated investor

with equal access to information regarding Madoff and the so-called "warning signs" that he

alleges that NYLIAC ignored.  That was the conclusion of the court in *SSR II* in dismissing a

negligent misrepresentation claim on nearly identical facts.  *See SSR II*, 2012 WL 4513354, at

*11 n.5 ("Nor does the court find that the insurer had knowledge not available to the insureds.

Here, the plaintiffs were sophisticated investors.  Additionally, entities such as the SEC failed to

uncover the Madoff scheme."); *see also Centro Empresarial Cempresa S.A. v América Móvil,

S.A.B. de C.V.*, 17 N.Y.3d 269, 278-79 (2011) ("If the facts represented are not matters peculiarly

within the party's knowledge, and the other party has the means available to him of knowing, by

the exercise of ordinary intelligence, the truth or the real quality of the subject of the

representation, he must make use of those means, or he will not be heard to complain that he was

induced to enter into the transaction by misrepresentations.").  It is important to note that the

court in *SSR II* dismissed the negligent misrepresentation claim not only against the insurance

company limted partner, but also against Tremont, which, as the general partner responsible for

overseeing the investments of TOF III, was in a better position to detect Madoff's ponzi scheme.

Thus, the negligent misrepresentation claim fails because the allegations do not support a claim

that NYLIAC should have known that any of the statements made about TOF III were false.

## C.    NYLIAC Is Not Responsible for Any Alleged Misrepresentations by Tremont

Unable to establish that NYLIAC itself made any misrepresentations, Plaintiff asserts that

he relied on the Tremont PPM and seeks to attribute certain alleged misrepresentations in that

document to NYLIAC.  Compl. ¶ 49.   It is undisputed that NYLIAC did not make the

statements in the Tremont PPM, so Plaintiff attempts to rely upon the Participation Agreement to

---

[8]   Plaintiff persists in pursuing in his Second Amended Complaint even the red flags that this Court found
"defendants would not likely have known about" (Opinion at 16 n.1).  *See* Compl. ¶¶ 73-81, 83.

establish that Tremont's statements in the Tremont PPM are somehow attributable to NYLIAC. Compl. ¶¶ 43-48.  But Prickett cites no legal basis for this proposition and finds no support in the Participation Agreement. [9]

Under the Participation Agreement, NYLIAC agreed to make TOF III available as an investment option and to provide copies of the Tremont PPM and the Limited Partnership Agreement to policyholders who were interested in investing in TOF III.  *See* Factual Background § D, *supra*.  Even assuming that the Tremont PPM contained misrepresentations, which Prickett cannot adequately show, the Complaint, as discussed above, does not adequately allege that NYLIAC should have known that such statements were false.  Plaintiff only alleges in the most conclusory manner that NYLIAC and Tremont "conspired to purposefully direct false representations to Plaintiff and other variable life insurance investors in order to attract investments in the Tremont Fund."  Compl. ¶ 48.  Yet, as Prickett must concede, neither NYLIAC nor Tremont knew about Madoff's Ponzi scheme and the Participation Agreement was not for an illegal purpose, so as a matter of law there was no such conspiracy.  *See Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2d Cir. 1986) (holding that knowing, intentional participation in a plan to defraud is required to establish civil conspiracy under New York law).  Furthermore, the Participation Agreement does not establish that NYLIAC adopted or endorsed Tremont's statements.  In fact, the Participation Agreement states that NYLIAC is a limited partner with "no authority to act for or represent the Partnership [TOF III], the General Partner [Tremont], or their respective affiliates or any of them."  Ex. H § 8.1.  In short, there are insufficient allegations that NYLIAC should have known of any purported misrepresentations by Tremont.  Thus, Plaintiff has no plausible legal basis to hold NYLIAC responsible for statements made by

---

[9]  Prickett's argument is neither new nor meritorious.  He previously made this argument in his Opposition to NYLIAC's motion to dismiss his prior complaint.  *See* Dkt. 742 at 2-3, 5, 10, 11, 13-14, 15.  The plaintiff is *SSR II* made a similar argument, without success, based on a Participation Agreement between Tremont and John Hancock that Prickett acknowledges was identical to the NYLIAC Participation Agreement.  *See SSR II*, 2012 WL 4513354, at *2; Dkt. 742 at 2 n.9.

Tremont.

### D.      NYLIAC Owed No Special Duty to Plaintiff

Under New York law, "a plaintiff may recover for negligent misrepresentation only where the defendant owes [plaintiff] a fiduciary duty." *Stewart v. Jackson & Nash*, 976 F.2d 86, 90 (2d Cir. 1992); *BHC Interim Funding, L.P. v. Finantra Capital, Inc.*, 283 F. Supp. 2d 968, 990-91 (S.D.N.Y. 2003) (dismissing negligent misrepresentation claim where defendant owed no fiduciary duty).  Even if the duty requirement for negligent misrepresentation could be met by something less than a fiduciary duty, no "special relationship" of trust or confidence arises out of an insurance contract between insured and insurer under New York law.  *Batas v. Prudential Ins. Co. of America*, 281 A.D.2d 260, 264 (1st Dept. 2001) ("[T]he relationship between the parties to a contract of insurance is strictly contractual in nature. No special relationship of trust or confidence arises out of an insurance contract between the insured and the insurer; the relationship is legal rather than equitable.").

Though Plaintiff persists in alleging that NYLIAC violated "fiduciary duties" to Prickett (*see* Complaint ¶ 63), this Court has already ruled that NYLIAC owes no fiduciary duty to Prickett because their relationship was based on an arms-length insurance contract between sophisticated parties.  Opinion at 23-24 (dismissing claim for breach of fiduciary duty).  Courts, including one in a Madoff-related case, have rejected the argument that a fiduciary or special relationship is created between insurer and insured due to the investment nature of a VUL.  *See SSR II*, 2012 WL 4513354, at *11; *Wilmington Trust Co. v. Metropolitan Life Ins. Co.*, No. 0600242/2008, 2008 WL 3819698 (N.Y. Sup. Ct. Aug. 4, 2008).  As the court in SSR II found, the insurer "merely passed on prospectuses (such as the PPM) to its insureds from the funds in which the insureds could choose investments" and "Plaintiffs chose a number of investments from these prospectuses, including the [Tremont] Opportunity Fund."  *SSR II*, 2012 WL

4513354, at *11.  That court held that such activity "does not amount to an advisory role that

gives rise to a fiduciary relationship" and dismissed the claim for negligent misrepresentation

against the insurance company.  *Id.*  Given the identical relationship at issue here, this Court

should do the same.

      **E.**      **Plaintiff Could Not Have Reasonably Relied on Any Purported**
                  **Misrepresentation by NYLIAC**

      Prickett also cannot support an allegation that he reasonably relied on any

misrepresentation purportedly made by NYLIAC given the multitude of disclaimers and other

cautionary language in the NYLIAC PPM and Prickett's knowledge, from the Limited

Partnership Agreement and Tremont PPM, of NYLIAC's limited authority with respect to his

investment in TOF III.  *See* Factual Background §§ C, D, F, *supra; Merkin*, 2011 WL 4435873,

at *7 ("Plaintiffs cannot be permitted to 'cherry pick' language from the offering memoranda,

and then ignore explicit cautionary language, which warned Plaintiffs that third-party managers

would have custody over the Funds' assets and that this custody carried a risk of loss.").  The

NYLIAC PPM repeatedly advised Plaintiff that: (1) he risked losing his entire investment; (2) he

should do his own evaluation of the investment and seek independent advice before investing;

and (3) investing in exempt funds of funds like TOF III posed specific additional risks.  *See*

Factual Background § C, *supra*.  Moreover, the Tremont PPM advised Plaintiff that NYLIAC, as

a Limited Partner in TOF III, could not participate in TOF III's selection of investments or

managers, and that Tremont, the General Partner, had sole responsibility to monitor TOF III's

investments.  *See* Factual Background § F, *supra*.  Plaintiff's reliance on language in the

NYLIAC PPM, divorced from context and without regard for explicit cautionary language and

ample notice that Tremont held ultimate responsibility for TOF III's investment decisions, is

precisely the type of impermissible cherry picking that courts have rejected and cannot support a

claim for negligent misrepresentation.  *See Merkin*, 2011 WL 4435873, at *7 (finding that, when

taken "in conjunction with this cautionary language, it is clear there was no actual
misrepresentation by Defendants").

In evaluating alleged reliance on statements contained in offering memoranda and
prospectuses, courts have held that such statements must be read in the context of the entire
document.  *See, e.g., In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 365–66 (2d Cir.
2010) ("When analyzing offering materials... [t]he literal truth of an isolated statement is
insufficient; the proper inquiry requires an examination of defendants' representations, taken
together and in context."); *see also Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 5 (2d
Cir. 1996) ("[P]rospectuses must be read 'as a whole.'")).  Given the express disclaimers and
cautionary language contained in the NYLIAC PPM, Plaintiff could not have reasonably relied
on any alleged due diligence undertakings contained in the PPM.  *See, e.g., Adams v.  Intralinks,
Inc.*, No. 03-cv-5384, 2004 WL 1627313, at *7 (S.D.N.Y.  July 20, 2004) (granting motion to
dismiss "[b]ecause plaintiffs cannot plead reliance"); *Sable v. Southmark/Envicon Capital Corp.*,
819 F. Supp. 324, 339 (S.D.N.Y. 1993) (granting motion to dismiss and holding that "plaintiffs
cannot rely on statements that the PPMs contradict").

### F.   Plaintiff's Claim Is Barred by the Economic Loss Doctrine

The gravamen of Plaintiff's claim is that NYLIAC, as issuer of the VUL Policy, breached
its duty of care to Plaintiff causing Plaintiff losses from his investment.  *See id.* ¶¶ 121-24.  Any
duties that NYLIAC owed Prickett, however, are governed by the terms of the Policy.  NYLIAC
had no separate legal duty to protect Prickett from investment losses.  Under New York's
economic loss rule, a plaintiff asserting a claim of negligent misrepresentation who "has not
suffered any personal or [physical] property damage is limited to an action in contract."
*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 212, 220
(S.D.N.Y. 2007) (dismissing negligent misrepresentation claim because "if the damages suffered

19

are of the type remediable in contract, a plaintiff may not recover in tort"); *see also Nebraskaland, Inc. v. Sunoco, Inc.*, 10 Civ. 1091, 2011 WL 6131313, at *4 (E.D.N.Y. July 13, 2011) (dismissing negligent misrepresentation claim as barred by the economic loss doctrine); *Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 609 (S.D.N.Y. 2009) (dismissing negligent misrepresentation claim where plaintiff had not alleged personal or property damage); *Icebox-Scoops v. Finanz St. Honore, B.V.*, 676 F.Supp.2d 100, 114 (E.D.N.Y. 2009) (holding that, where plaintiff pled only economic damages, negligent misrepresentation claim was barred by New York's economic loss rule and must be dismissed); *PPI Enters. (U.S.) v. Del Monte Foods Co.*, No. 99 Civ. 3794, 2003 WL 22118977, at *27 (S.D.N.Y. Sept. 11, 2003) (dismissing negligent misrepresentation claim where plaintiff alleged only economic loss).  Because Prickett does not allege that he has suffered any personal injury or property damage, he is limited to an action in contract (which has already been dismissed), and cannot state a claim for negligent misrepresentation.

### G.    Plaintiff's Claim Is Time-Barred

New York's three-year statute of limitations bars Prickett's claim for negligent misrepresentation.  *See* N.Y. C.P.L.R. § 214 (McKinney 2011); *see also Glonti v. Stevenson*, No. 08-8960, 2009 WL 311293, at *6 (S.D.N.Y.  Feb. 6, 2009).  In New York, claims for negligent misrepresentation accrue when the allegedly tortious conduct is committed.  *See id.*  Plaintiff alleges that he relied on Defendants' purported misrepresentations in deciding to purchase the Policy and invest premiums in TOF III.  *See* Compl. ¶¶ 3, 42, 61.  Any alleged misrepresentation by NYLIAC, therefore, occurred in or prior to May 2004, when Prickett elected to invest a portion of his VUL policy premiums in TOF III.  *See id.* ¶¶ 3, 61.  Plaintiff filed this lawsuit on March 31, 2009, nearly five years after electing to allocate premiums to TOF III, and well beyond the three-year statute of limitations period.  His claim therefore should be dismissed.

###### H.      Plaintiff Cannot Prove Loss Causation

In addition to the reasons set forth above, Plaintiff's negligent misrepresentation claim also fails as a matter of law because Madoff's criminal fraud, and not NYLIAC's alleged conduct, was the proximate cause of Plaintiff's losses.  *See Michael S. Rulle Family Dynasty Tr. v. AGL Life Assurance Co.*, No. 10-231, 2010 WL 3522135, at *5 (E.D. Pa. Sept. 8, 2010), *aff'd*, No. 10-4034, 2011 WL 3510285 (3d Cir. Aug. 11, 2011) ("[I]t was Madoff's illegal acts that caused a decrease in the value of the investment account [of the insurance policy]. . . . [T]he injury was attributable to Madoff's conduct"); *Goldweber v. Harmony Partners, Ltd.*, No. 09–61902, 2010 WL 3702508, at *5 (S.D. Fla. Sept. 16, 2010) ("Plaintiff's damages were caused by Madoff's Ponzi scheme, not by Defendants [limited partnership, general partners, and associated officers and directors].").  The Second Circuit requires that a plaintiff "show that its loss was caused by the alleged misstatements as opposed to intervening events" in order to establish loss causation.  *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769, 772 (2d Cir. 1994). Unable to show that his damages were caused by NYLIAC directly, Plaintiff cannot prevail on his claim for negligent misrepresentation.  *See AUSA Life Ins. Co. v. Ernst and Young*, 206 F.3d 202, 209 (2d Cir. 2000) ("Loss causation is causation in the traditional 'proximate cause' sense - the allegedly unlawful conduct caused the economic harm."); *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1495 (2d Cir. 1992) ("To establish loss causation a plaintiff must show that the economic harm that it suffered occurred as a result of the alleged misrepresentations.").

## CONCLUSION

WHEREFORE, Defendants New York Life Insurance Company and New York Life Insurance and Annuity Corporation, by and through their undersigned counsel, move this Court for an order dismissing with prejudice the negligent misrepresentation claim alleged against them in the Second Amended Complaint.

Dated:  New York, New York
        December 5, 2012

                     PILLSBURY WINTHROP SHAW PITTMAN LLP

                     By:     s/ Maria T. Galeno
                           Maria T. Galeno
                           Greg T. Lembrich
                           1540 Broadway
                           New York, NY  10036
                           Telephone: (212) 858-1000
                           Fax: (212) 858-1500
                           maria.galeno@pillsburylaw.com
                           greg.lembrich@pillsburylaw.com

                           *Attorneys for Defendants New York Life Insurance Company and New York Life Insurance and Annuity Corporation*