PILLSBURY WINTHROP SHAW PITTMAN LLP
Maria T. Galeno
Greg T. Lembrich
1540 Broadway
New York, NY 10036-4039
Tel.: (212) 858-1000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | Master Docket No. 08-Civ-11117 (TPG) |
| F. DANIEL PRICKETT,<br><br>    Plaintiff,<br><br>- against -<br><br>NEW YORK LIFE INSURANCE COMPANY, et al.,<br><br>    Defendants. | Civil Action No. 1:09-03137 (TPG) |

**REPLY MEMORANDUM OF LAW OF DEFENDANTS NEW YORK LIFE INSURANCE COMPANY AND NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

February 13, 2013

i

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................................................. 1

**I. NYLIAC OWED NO SPECIAL DUTY TO PLAINTIFF.** ............................................ 2

**II. NYLIAC IS NOT LIABLE FOR TREMONT'S STATEMENTS** ............................... 4

**III. PLAINTIFF CANNOT ESTABLISH REASONABLE RELIANCE** .......................... 5

**IV. THE ECONOMIC LOSS DOCTRINE BARS PLAINTIFF'S CLAIM** ...................... 7

**V. PLAINTIFF'S CLAIM IS TIME-BARRED** ................................................................. 8

**VI. PLAINTIFF CANNOT ESTABLISH LOSS CAUSATION** .......................................... 9

## TABLE OF AUTHORITIES

*A.B. Realty Corp. v. Metro. Life Insurance Co.*,
  164 F. Supp. 2d 296 (D. Conn. 2001) ................................................................................2

*Anwar v. Fairfield Greenwich Ltd.*,
  728 F. Supp. 2d 372 (S.D.N.Y. 2010)..............................................................................8, 9

*Banco Industrial de Venezuela v. CDW Direct, L.L.C.*,
  2012 WL 3776367 (S.D.N.Y. August 31, 2012) ................................................................3

*Banco Multiple Santa Cruz, S.A. v. Moreno*,
  No. 08–CV–1271, 2012 WL 3775998 (E.D.N.Y. Aug. 31, 2012) .................................2, 3

*Batas v. Prudential Insurance Co. of America*,
  281 A.D.2d 260 (1st Dept. 2001)........................................................................................3

*Brady v. Lynes*,
  05 Civ. 6540, 2008 WL 2276518 (S.D.N.Y. June 2, 2008) ................................................9

*Dandong v. Pinnacle Performance Ltd.*,
  No. 10 Civ. 8086, 2011 WL 5170293 (S.D.N.Y. Oct. 31, 2011) ........................................6

*Drake v. Lab. Corp. of Am. Holdings*,
  No. 02–1924, 2007 WL 776818 (E.D.N.Y. Mar. 13, 2007) ...............................................5

*Eaves v. Designs for Finance, Inc.*,
  785 F.Supp.2d 229 (S.D.N.Y. 2011) ..................................................................................5

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgt. LLC*,
  376 F. Supp. 2d 385 (S.D.N.Y. 2005) ................................................................................7

*JM Vidal, Inc. v. Texdis USA, Inc.*,
  764 F. Supp. 2d 599 (S.D.N.Y. 2011) ................................................................................6

*Knight Sec. v. Fiduciary Trust Co.*,
  5 A.D.3d 172 (1st Dep't 2004) ...........................................................................................6

*In re Merkin*,
  No. 08 Civ. 10922, 2011 WL 4435873 (S.D.N.Y. Sept. 23, 2011).....................................6

*Muller-Paisner v. TIAA*,
  289 F. App'x 461 (2d Cir. 2008) ........................................................................................3

*Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A.*,
  21 F.R.D. 13 (S.D.N.Y. Mar. 31, 2009) .............................................................................2

501092815v6

*SSR II, LLC v. John Hancock Life Insurance Co.*,
    No. 652793/2011, 2012 WL 4513354 (N.Y. Sup. Ct. Sept. 28, 2012).....................3, 4, 8, 9

*Securities Investor Protection Corp. v. Bernard L. Madoff Inv. Securities LLC*,
    454 B.R. 307 (S.D.N.Y. 2011) ........................................................................................8

*Travelers Cas. & Sur. Co. v. The Dormitory Auth.*,
    No. 04 Civ. 5101, 2005 WL 1177715 (S.D.N.Y. May 19, 2005) ................................... 7-8

### CODES, RULES AND STATUTES

N.Y. C.P.L.R. § 214 (McKinney 2011)………………………………………………....…9

**PRELIMINARY STATEMENT**

This Court previously dismissed Plaintiff's negligent misrepresentation claim because "it cannot be that all defendants stand on the same ground, and can be lumped together without differentiation," but gave Plaintiff an opportunity to replead, "if this can be done, with specific allegations as to specific defendants." Opinion at 18.[1] Plaintiff's Opposition ("Opp."), however, demonstrates that repleading against NYLIAC was futile. Plaintiff remains unable to identify any misrepresentation made by NYLIAC, and so again resorts to grouping Tremont and NYLIAC together in a failed attempt to attribute statements of the former to the latter. Plaintiff asserts in the headings of several sections of his Opposition that "Tremont and New York Life [m]isrepresented" certain facts, but he sets forth only statements made by Tremont in those sections. *See* Opp. at 6-8. Plaintiff's fallback position is to attempt to hold NYLIAC responsible for Tremont's statements based upon a conspiracy theory (*see* Opp. at 18-20) that is misguided at best, given that the agreement at issue – the Participation Agreement – was for a legitimate business purpose and not an unlawful one.

Plaintiff seeks to create a "special relationship" by falsely portraying NYLIAC as making decisions regarding Plaintiff's funds and TOF III's underlying investments, ignoring the many disclosures by both NYLIAC and Tremont about NYLIAC's narrow role as a limited partner of TOF III and failing to acknowledge that **he directed NYLIAC to invest his money in TOF III**. Plaintiff also misstates the law, cites authorities that are inapposite, and continues to rely on the same tired, already rejected "red flag" allegations.

As set forth below, Plaintiff has failed to salvage his negligent misrepresentation claim and accordingly that claim should be dismissed once again, this time with prejudice.

---

[1] All abbreviations herein are the same as set forth in Defendants' Memorandum in Support of Motion to Dismiss the Amended Complaint (Dkt. 836) ("Opening Mem."). All references to lettered exhibits are to documents attached to the Declaration of Maria T. Galeno, dated December 5, 2012. All emphasis in quotations herein is in original unless otherwise noted.

I.     **NYLIAC OWED NO SPECIAL DUTY TO PLAINTIFF.**

Plaintiff's negligent misrepresentation claim fails because he cannot allege, as a matter of law, that NYLIAC owed him any duty due a "special relationship."[2] The facts in the cases cited by Plaintiff (Opp. at 16-18) (involving ministerial acts) are **qualitatively** different from the duties Plaintiff seeks to impose here (involving due diligence sufficient to uncover a Ponzi scheme that went undetected by regulators for years and protecting Plaintiff from the risk of investment losses). *See Banco Multiple Santa Cruz, S.A. v. Moreno*, No. 08–CV–1271, 2012 WL 3775998, at *10-12 (E.D.N.Y. Aug. 31, 2012) (finding that defendant breached duty "to process withdrawal requests from its customers' accounts in a non-negligent fashion" by paying out on forged withdrawal request); *A.B. Realty Corp. v. Metro. Life Insurance Co.*, 164 F. Supp. 2d 296, 304 (D. Conn. 2001) (finding that the insurance company breached duty by twice disbursing funds from an annuity account to an unauthorized recipient).[3]

Indeed, in the *Banco Multiple Santa Cruz case* relied upon by Plaintiff (Opp. at 16), the court addressed a very specific issue unrelated to the issue here: "whether New York law recognizes a negligence claim by a variable annuity-holder against the insurance company that issued the annuity for the negligent processing of forged withdrawal requests." *See* 2012 WL 3775998, at *10. The court, deciding an issue of first impression, found that such a tort duty of care existed by using as the "closest analogy" a claim "of a depositor against his bank for the negligent processing of unauthorized withdrawal requests." *Id.* at *11. Notably, the case did not involve a negligent misrepresentation claim, where the Plaintiff must establish the existence of an underlying fiduciary duty as a necessary element (*see* Opening Mem. at 17); rather, at issue

---

[2] Plaintiff's argument that whether a "special relationship" exists is a factual question is contradicted by the primary case upon which he relies. *See* Opp. At 15-16; *Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, 21 F.R.D. 13, 27-29 (S.D.N.Y. Mar. 31, 2009) (dismissing negligent misrepresentation claim and stating that the "issue of whether a duty of care was owned by the Defendants to [plaintiff] is a question of law that the court may properly determine on a motion to dismiss.").

[3] Similarly, the New York insurance law provision cited by Plaintiff (Opp. at 16) merely imposes a duty for insurance companies to invest funds according to the insured's instructions.

2

was a simple negligence claim and a duty "to process withdrawal requests in a non-negligent fashion."  *Banco Multiple Santa Cruz*, 2012 WL 3775998, at *12.  Here, it is undisputed that NYLIAC executed Prickett's directive to invest in TOF III precisely as given.

Plaintiff's reliance on *Muller-Paisner v. TIAA,* 289 F. App'x 461 (2d Cir. 2008), is also misplaced.  There, the court permitted the case to survive a motion to dismiss where the defendant sold a fixed annuity to an elderly woman with advanced emphysema, who would not recover the purchase price unless she lived for at least 12 years (she died within six months), having advertised that "they will assist customers in purchasing the best option available to them . . ." *Id.* at 466.  Here, Prickett was an Accredited Investor and a Qualified Purchaser who made his own investment decision having been amply advised of the risks of his investment.  *See* Opening Mem. at 5-6.  In fact, *Muller-Paisner* has been distinguished precisely on this basis.  The court in *Banco Industrial de Venezuela v. CDW Direct, L.L.C.,* 2012 WL 3776367 (S.D.N.Y. August 31, 2012), in refusing to find that defendant owed a tort duty independent of the contract, distinguished *Muller-Paisner* (and other cases) because they "involve unsophisticated parties, the elderly, or the infirm," stating, "[Those cases] are inapposite to this case involving two sophisticated business entities." *Id.* at *3.

Thus, Plaintiff cannot overcome the well-established authority that, under New York law, "[n]o special relationship of trust or confidence arises out of an insurance contract between the insured and the insurer."  *Batas v. Prudential Ins. Co. of America*, 281 A.D.2d 260, 264 (1st Dept. 2001).  As the court found in *SSR II, LLC v. John Hancock Life Ins. Co.*, a Madoff-related case based on nearly identical facts, this rule does not differ for variable universal life policies.  No. 652793/2011, 2012 WL 4513354, at *10 (N.Y. Sup. Ct. Sept. 28, 2012).  Where an insurer "merely passed on prospectuses (such as the PPM) to its insureds from the funds in which the insureds could choose investments" and "Plaintiffs chose a number of investments from these

prospectuses, including the [Tremont] Opportunity Fund," the *SSR II* court held that such activity "does not amount to an advisory role that gives rise to a fiduciary relationship" and dismissed the negligent misrepresentation claim against the insurance company. *Id.* at 11.

## II. NYLIAC IS NOT LIABLE FOR TREMONT'S STATEMENTS

Plaintiff yet again "lumps" NYLIAC and Tremont together in order to mask the fact that NYLIAC made no misrepresentations. Plaintiff titles one section in the Opposition "Tremont and New York Life Misrepresented Tremont's Due Diligence and Monitoring of the Tremont Fund" (Opp. at 6-7), but that section contains only statements made by Tremont. Similarly, the section titled "Tremont and New York Life Misrepresented the Tremont Fund's Objectives and Strategies" (*id.* at 7-8) cites only Tremont statements. Neither section cites a single representation made by NYLIAC.

Tellingly, while Plaintiff persists in quoting snippets from NYLIAC's PPM out of context, he limits his argument that such statements were misrepresentations to a single, conclusory footnote. *See* Opp. at 20 n.21 (referencing statements from the NYLIAC PPM at Opp. at 3-4). In fact, all of the NYLIAC statements identified in the Complaint were true, as detailed in the Opening Memorandum (at 9-14).

Unable to point to a single NYLIAC misrepresentation, Plaintiff attempts to rely upon the Participation Agreement between Tremont and NYLIAC to attribute Tremont's statements in the Tremont PPM to NYLIAC. Opp. at 4-6, 18-20. But the Participation Agreement (which was not part of the disclosure documents provided to Plaintiff) does not support that position. Indeed, the text that Plaintiff cites as support for the bold assertion that NYLIAC agreed to make representations and statements on behalf of Tremont (*id.* at 4) actually states the opposite – that NYLIAC "shall **not** give any information or make any representations or statements on behalf of [TOF III]" other than to pass along Tremont's "Establishing Documents," such as the Tremont

4

PPM.  Ex. H §5.5 (emphasis added).  It is a restrictive clause that prohibits NYLIAC from acting on behalf of TOF III, not an affirmative undertaking to act on behalf of the partnership.  In fact, the Participation Agreement clearly states that the Insurer is a limited partner with "no authority to act for or represent the Partnership [TOF III], the General Partner [Tremont], or their respective affiliates or any of them."  *Id.* § 8.1.  Plaintiff's argument that the Participation Agreement provided for the distribution of "agreed-upon representations" (Opp. at 19) likewise has no basis.  There is no allegation, nor could there be, that NYLIAC participated in preparing the Tremont PPM, or provided any input with respect to, or approval of, its contents.

Plaintiff's argument that the Participation Agreement was the vehicle for a conspiracy between Tremont and NYLIAC (Opp. at 18-20) is fatally flawed.  While Plaintiff cites authority to show that an agreement to enter into a conspiracy may be implicit (Opp. at 18-19), he cannot overcome the fact that a conspirator must knowingly and intentionally enter into such agreement for an unlawful purpose.  *See* Opening Mem. at 16.  Here, this Court has already held that none of the defendants, including Tremont and NYLIAC, defrauded Plaintiff and that Plaintiff could not establish scienter.  Opinion at 14-17.  Moreover, Plaintiff cannot, as a matter of New York law, use allegations of civil conspiracy to establish negligence (and vice versa).  *Eaves v. Designs for Finance, Inc.*, 785 F.Supp.2d 229, 257 (S.D.N.Y. 2011) ("The law is clear, however, that while a fraud may serve as the underlying tort for a civil conspiracy claim, negligence may not."); *Drake v. Lab. Corp. of Am. Holdings*, No. 02–1924, 2007 WL 776818, at *6 (E.D.N.Y. Mar. 13, 2007) ("Since a civil conspiracy cause of action requires a showing of intentional conduct, negligence cannot serve as the underlying tort.").  Plaintiff cannot plausibly allege that NYLIAC entered into a conspiracy with Tremont to make negligent misrepresentations.

### III. PLAINTIFF CANNOT ESTABLISH REASONABLE RELIANCE

Plaintiff also cannot plausibly allege reasonable reliance in the face of the numerous

disclaimers and explicit cautionary language in the NYLIAC PPM.  *See* Opening Mem. at 5-7.  Contrary to Plaintiff's argument (Opp. at 20), the warnings in the NYLIAC PPM were not simply "boilerplate" disclaimers.  In addition to repeatedly advising Plaintiff that he risked losing his entire investment and should do his own evaluation of the investment and seek independent advice before investing, the NYLIAC PPM also contained particular warnings that investing in exempt funds of funds like TOF III posed specific additional risks.  *See* Ex. B at 7-8 (warning that investment in exempt funds "may entail more risks than traditional investments"); *id.* at 33 (cautioning that "securities to be purchased and traded by the Funds and the investment techniques and strategies to be employed by the Funds may increase this risk" of loss and that the "theories behind the investment strategy of a Fund may be untested and may be difficult or impossible to execute on").

Plaintiff's contention that the myriad disclaimers in the NYLIAC PPM were insufficient to warn Plaintiff of the risk of his investment (Opp. at 20) is belied by the very authority that he cites.  *See JM Vidal, Inc. v. Texdis USA, Inc.*, 764 F. Supp. 2d 599 (S.D.N.Y. 2011) (holding reliance unreasonable due to contractual disclaimer); *Dandong v. Pinnacle Performance Ltd.*, No. 10 Civ. 8086, 2011 WL 5170293, at *13 (S.D.N.Y. Oct. 31, 2011) (finding general disclaimers insufficient only "in the face of specific known risks which border on certainties").  Plaintiff's alleged reliance upon offering memoranda without regard for explicit cautionary language is precisely the type of "cherry pick[ing]" soundly rejected in another Madoff-related case.  *See In re Merkin*, No. 08 Civ. 10922, 2011 WL 4435873, at *7 (S.D.N.Y. Sept. 23, 2011).

Finally, Plaintiff's argument that reasonable reliance cannot be determined at the motion to dismiss stage (Opp. at 20) similarly is contradicted by the very case that he cites in support.  *See Knight Sec. v. Fiduciary Trust Co.*, 5 A.D.3d 172, 174-75 (1st Dep't 2004) (holding that promissory estoppel claim should have been dismissed because reliance was not reasonable).

6

**IV.     THE ECONOMIC LOSS DOCTRINE BARS PLAINTIFF'S CLAIM**

Plaintiff concedes that to establish a negligent misrepresentation claim, NYLIAC must owe him a duty "which is independent of the contract itself." Opp. at 21. Remarkably, Plaintiff then argues that his alleged "special relationship" with NYLIAC "arose out of the Policy." *Id.* The Policy is unquestionably a contract (*see* Opinion at 22), and Plaintiff thus cannot state any extra-contractual duty.

Plaintiff then goes on to assert wrongly that, under the Policy, NYLIAC "assumed obligations to monitor and safeguard Plaintiff's investment." Opp. at 21. In fact, this Court has already found that "nothing in the Policy requires New York Life to conduct due diligence on the Tremont Fund or otherwise monitor the investments being made by the underlying hedge funds in which the Tremont Fund invests." Opinion at 26. Moreover, there can be no plausible allegation that NYLIAC failed to "safeguard" Plaintiff's investment. NYLIAC surely owed Plaintiff no special duty to protect him from prospective investment losses, particularly where it is undisputed that Plaintiff specifically directed NYLIAC to invest his premiums in TOF III, and the Court has already found that TOF III was not a "sham" investment." *See id.*

Plaintiff makes no effort to distinguish the numerous authorities cited by NYLIAC (Opening Mem. at 19-20), which squarely foreclose his claim, and the authorities that he cites are inapposite. The court in *Fraternity Fund* permitted the plaintiffs (limited partners) to proceed with a negligent misrepresentation claim because the defendant (general partner) owed fiduciary duties to the plaintiffs independent of the contracts between them. *Fraternity Fund Ltd. v. Beacon Hill Asset Mgt. LLC*, 376 F. Supp. 2d 385, 408, 411 (S.D.N.Y. 2005). This Court has already held that NYLIAC owed no such duties to Plaintiff. Opinion at 23-24. The *Travelers* case involved claims in the construction context and a finding that the plaintiff (a third-party insurer) had standing to sue a negligent construction firm for indemnification due to

harm to its insured that the third-party insurer was forced to cover.  *See Travelers Cas. & Sur. Co. v. The Dormitory Auth.*, No. 04 Civ. 5101, 2005 WL 1177715, at *1-7 (S.D.N.Y. May 19, 2005).  Here, the contract at issue was the Policy between Plaintiff and NYLIAC, and Plaintiff's breach of contract claim has already been dismissed.  *See* Opinion at 25-26.

## V.     PLAINTIFF'S CLAIM IS TIME-BARRED

Plaintiff's argument that he did not suffer any injury from the alleged negligent misrepresentation until Madoff's fraud was revealed in December 2008, and thus the statute of limitations for his claim did not begin to run until that time, is wrong and has been specifically rejected in another Madoff-related case.  In *SSR II*, the court held that the plaintiff, also a variable universal life policyholder who invested in TOF III, suffered "an injury in 2004 when its money was invested in the Madoff Ponzi scheme" and rejected the "unconvincing contention that it did not suffer an injury until December 2008."  2012 WL 4513354, at *10.  Like the plaintiff in *SSR II*, Prickett's claim is based "not on Madoff's fraud," but on the insurer's allegedly false statements, which were issued before the investment was made.  *See id.*  Under such circumstances, the court in *SSR II* concluded that "[i]t would be unduly speculative for the Court to try and pinpoint the last moment in time when, if SSR knew about the fraud (the defendants' false statements, not the existence of the Ponzi scheme), it could have gotten its money back."[4]  *Id.*  Thus, the *SSR II* court held that plaintiff suffered its injury from its investment in the Madoff Ponzi scheme when the investment was made, and that its claims accrued at that time for statute of limitations purposes.  *Id.*[5]  Plaintiff's negligent

---

[4]  Prickett's assertion that "up until Madoff's fraud was ultimately revealed in December 2008, Plaintiff could have redeemed its investment at any time and walked away without ever suffering a loss" (Opp. at 23) is plainly false. Numerous investors who redeemed their Madoff-related investments before his fraud was revealed have been the subject of clawback claims by the trustee in the Madoff bankruptcy proceedings.  *See, e.g., Securities Investor Protection Corp. v. Bernard L. Madoff Inv. Securities LLC*, 454 B.R. 307, 310-11 (S.D.N.Y. 2011) (discussing trustee's clawback action seeking to recover $425 million from JPMorgan based on redemptions from Madoff investments).

[5]  While the *Anwar v. Fairfield Greenwich, Ltd.* case cited by Plaintiff (Opp. at 22) found that the limitations period

misrepresentation claim, therefore, accrued in May 2004 when he instructed NYLIAC to invest his funds in TOF III, and is accordingly barred by New York's three year statute of limitations period. *See* N.Y. C.P.L.R. § 214 (McKinney 2011).

## VI.  PLAINTIFF CANNOT ESTABLISH LOSS CAUSATION

To overcome NYLIAC's loss causation defense, Plaintiff acknowledges that he must show that Madoff's Ponzi scheme was "anticipated [or] reasonably foreseeable." Opp. at 24.  In an attempt to meet that burden, Plaintiff points to the same red flags that have failed to support claims in numerous other Madoff-related actions and have been specifically rejected by this Court.  Opinion at 15 (ruling that Prickett "does not allege facts plausibly suggesting that defendants were aware of these red flags, or that if they were aware, that they translated those red flags into a suspicion of fraud"); *id.* at 16 n.1 ("It is also apparent that some of the red flags are things that the defendants would not likely have known about.").  This Court has also previously noted that "Madoff's fraud went undetected for two decades [due to] his proficiency in covering up his scheme and deceiving the SEC and other financial professionals," thus foreclosing that Madoff's fraud was anticipated or reasonably foreseeable. *See* Opinion at 17.

Plaintiff's reliance on *Anwar* (Opp. at 24) to argue that NYLIAC should have reasonably foreseen Madoff's fraud is unavailing, as this Court has already clearly distinguished that case from the allegations here.  *See* Opinion at 17 (stating that *Anwar* "only serves to highlight the insufficiency" of Prickett's allegations and noting that here "there are no facts plausibly suggesting that any defendant participated in conduct similar to that in *Anwar*" where, *inter alia*, the defendants had conversations with Madoff before a meeting with the SEC in which Madoff

---

for claims concerning losses suffered due to Madoff's fraud did not begin to run until the fraud was revealed, this Court should be guided by the later-decided state court *SSR II* case (involving claims against an insurance company nearly identical to the allegations here), which contradicted *Anwar* in resolving this issue of New York state law.  Moreover, *Anwar* essentially applied a "discovery rule" for a negligent misrepresentation claim, which is contrary to New York law.  *See Brady v. Lynes*, 05 Civ. 6540, 2008 WL 2276518, at *8 (S.D.N.Y. June 2, 2008) (dismissing negligent misrepresentation claim as time-barred and noting "there is no discovery rule for negligent misrepresentation claims").

coached them on what to say). Moreover, Plaintiff's effort to distinguish the Madoff-related cases where claims have been dismissed for failure to show loss causation (Opp. at 23) only highlights the similarities between the facts in those cases and here. For example, Plaintiff attempts to distinguish the *Rulle* case by arguing that the defendant in that case "had no responsibility for investment decisions. Opp. at 23 n.25. But that is the case here, where it cannot be disputed that Plaintiff himself made the ultimate decision to invest in TOF III (selecting that fund over a dozen other options on NYLIAC's platform), and Tremont, not NYLIAC, made the ultimate decision to invest a portion of TOF III with Madoff. Plaintiff was on notice from the Tremont PPM that NYLIAC was **precluded** from selecting, supervising, or monitoring the underlying funds in TOF III, including the Rye Funds managed by Madoff. *See* Opening Mem. at 4-5, 8. Similarly, as in *Goldweber*, NYLIAC is not a fund manager. Thus, Plaintiff cannot adequately allege that any actions by NYLIAC, as opposed to Madoff's intervening criminal conduct, caused his losses and his negligent misrepresentation claim accordingly should be dismissed with prejudice.

Dated:  New York, New York
        February 13, 2013

                                        PILLSBURY WINTHROP SHAW PITTMAN LLP

                                        By:    s/ Maria T. Galeno
                                               Maria T. Galeno
                                               Greg T. Lembrich
                                               1540 Broadway
                                               New York, NY  10036
                                               Telephone: (212) 858-1000
                                               Fax: (212) 858-1500
                                               maria.galeno@pillsburylaw.com
                                               greg.lembrich@pillsburylaw.com

                                               *Attorneys for Defendants New York Life Insurance Company and New York Life Insurance and Annuity Corporation*