PILLSBURY WINTHROP SHAW PITTMAN LLP
Maria T. Galeno
Greg T. Lembrich
1540 Broadway
New York, NY 10036-4039
Tel.: (212) 858-1000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | Master Docket No. 08-Civ-11117 (TPG) |
| CUMMINS INC., <br><br> Plaintiff, <br><br> - against - <br><br> NEW YORK LIFE INSURANCE COMPANY, et al., <br><br> Defendants. | Civil Action No. 1:10-9252 (TPG) |

**REPLY MEMORANDUM OF LAW OF DEFENDANTS NEW YORK LIFE INSURANCE COMPANY AND NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION IN SUPPORT OF THEIR MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

May 9, 2013

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

I.   CUMMINS' FRAUD IN THE INDUCEMENT CLAIM FAILS ........................2

   A. NYLIAC Made No Misrepresentation to Cummins ..................................2

   B. Plaintiff Cannot Establish that NYLIAC Acted With Scienter ................4

   C. Plaintiff Cannot Show Reasonable Reliance .........................................6

   D. Madoff, Not NYLIAC, Caused Cummins' Losses ..................................7

II.  CUMMINS CANNOT STATE A NEGLIGENT MISREPRESENTATION
     CLAIM .......................................................................................................7

   A. There Was No Special Relationship Between Cummins and NYLIAC ......7

   B. The Economic Loss Doctrine Bars Plaintiff's Claim ..............................9

   C. The Negligent Misrepresentation Claim is Time-Barred .......................10

III. THE CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD
     FAITH AND FAIR DEALING FAILS .......................................................11

IV.  NYLIAC NEITHER OWED NOR BREACHED A FIDUCIARY DUTY .......12

V.   CUMMINS' UNJUST ENRICHMENT CLAIM IS BARRED .....................13

VI.  CUMMINS FAILS TO STATE A SECTION 349 CLAIM ...........................14

VII. NYLIAC IS NOT LIABLE FOR TREMONT'S STATEMENTS ..................15

# TABLE OF AUTHORITIES

**Page**

## Cases

Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.,
08 Civ. 7508, 2012 WL 4762039 (S.D.N.Y. Oct. 05, 2012). ................................................ 3, 6

Banco Industrial de Venezuela v. CDW Direct, L.L.C.,
2012 WL 3776367 (S.D.N.Y. August 31, 2012) .................................................................. 8, 9

Banco Multiple Santa Cruz, S.A. v. Moreno
08–CV–1271, 2012 WL 3775998 (E.D.N.Y. Aug. 31, 2012) ................................................ 13

Batas v. Prudential Ins. Co. of America,
281 A.D.2d 260 (1st Dept. 2001) ........................................................................................... 8

Brady v. Lynes,
05 Civ. 6540, 2008 WL 2276518 (S.D.N.Y. June 2, 2008) .................................................. 11

Commodity Futures Trading Comm'n v. Commodity Inv. Grp., Inc.,
05 CV 5741, 2007 WL 1519002 (S.D.N.Y. Feb. 27, 2007) .................................................. 6

Dandong v. Pinnacle Performance Ltd.,
10 Civ. 8086, 2011 WL 5170293 (S.D.N.Y. Oct. 31, 2011) ................................................ 6

Dornberger v. Metro. Life Ins. Co.,
961 F. Supp. 506 (S.D.N.Y. 1997) ...................................................................................... 13

Duke v. Touche Ross & Co.,
765 F. Supp. 69 (S.D.N.Y. 1991) .......................................................................................... 9

Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.,
343 F.3d 189 (2d Cir. 2003) .................................................................................................. 6

Federal Ins. Co. v. Distinguished Properties Umbrella Managers Inc.,
721 F.Supp.2d 293 (S.D.N.Y. 2010) ..................................................................................... 8

Gaidon v. Guardian Life Ins. Co.,
94 N.Y.2d 330 (1999) .......................................................................................................... 14

Goldweber v. Harmony Partners, Ltd.,
No. 09–61902, 2010 WL 3702508 (S.D. Fla. Sept. 16, 2010) .............................................. 7

In re Beacon Assocs. Litig.,
745 F. Supp. 2d 386 (S.D.N.Y. 2010) ................................................................................... 4

In re Cablevision Consumer Litigation,
864 F.Supp.2d 258 (E.D.N.Y. 2012) .................................................................................. 12

In re J.P. Jeanneret Assocs., Inc.,
769 F. Supp. 2d 340 (S.D.N.Y. 2011) ................................................................................... 4

In re Meridian Funds Group Securities and Employee Retirement Income Sec. Act
(ERISA) Litigation,
09 M.D. 2082 (TPG), 2013 WL 76188 (S.D.N.Y. Jan. 7, 2013) ............................................ 3

Kashi v. Gratsos,
   790 F.2d 1050 (2d Cir. 1986) .................................................................. 15

Kaye v. Grossman,
   202 F.3d 611 (2d Cir. 2000) .................................................................... 13

King County, Wash. v. IKB Deutsche Industriebank AG,
   863 F. Supp. 2d 288 (S.D.N.Y. 2012) ...................................................... 9

Knudsen v. Quebecor Printing (U.S.A.) Inc.,
   792 F.Supp. 234 (S.D.N.Y. 1992) ........................................................... 14

Lazard Freres & Co. v. Protective Life Ins. Co.,
   108 F.3d 1531 (2d Cir. 1997) .................................................................. 6

Meridian Horizon Fund, LP v. Tremont Group Holdings, Inc.,
   747 F. Supp. 2d 406 (S.D.N.Y. 2010) ...................................................... 4

Merrill Lynch & Co. v. Allegheny Energy, Inc.,
   500 F.3d 171 (2d Cir. 2007) .................................................................... 3

Michael S. Rulle Family Dynasty Tr. v. AGL Life Assurance Co.,
   10-231, 2010 WL 3522135 (E.D. Pa. Sept. 8, 2010), aff'd, 10-4034, 2011 WL
   3510285 (3d Cir. Aug. 11, 2011) ............................................................ 7

Monter v. Massachusetts Mut. Life Ins. Co.,
   12 A.D.3d 651 (2d Dep't 2004) .............................................................. 14

Muller-Paisner v. TIAA,
   289 F. App'x 461 (2d Cir. 2008) ..................................................... 7, 8, 13

National City Commercial Capital Co., LLC v. Global Golf, Inc.,
   09-CV-0307, 2009 WL 1437620 (E.D.N.Y. May 20, 2009) ..................... 14

New York Univ. v. Continental Ins. Co.,
   87 N.Y.2d 308 (1995) ............................................................................. 14

Newman v. Family Mgmt. Corp.,
   748 F. Supp. 2d 299 (S.D.N.Y. 2010) ...................................................... 4

Nissan Motor Acceptance Corp. v. Dealmaker Nissan, LLC,
   09–CV–0196, 2011 WL 94169 (N.D.N.Y. Jan. 11, 2011) ....................... 12

People v. Merkin,
   450879/09, 2010 WL 936208 (N.Y. Sup. Ct. Feb. 8, 2010) .................... 6

Phillips v. American Intern. Group, Inc.,
   498 F.Supp.2d 690 (S.D.N.Y. 2007) ........................................................ 8

Schroders, Inc. v. Hogan Sys, Inc.,
   522 N.Y.S.2d 404 (N.Y. Sup. Ct. 1987) .................................................. 14

South Cherry Street, LLC v. Henessee Group LLC,
   573 F.3d 98 (2d Cir. 2009) .................................................................. 2, 5

Stewart v. Jackson & Nash,
   976 F.2d 86 (2d Cir. 1992) ...................................................................... 7

Terra Sec. Asa Konkursbo v. Citigroup, Inc.,
 740 F.Supp.2d 441 (S.D.N.Y. 2010) ......................................................................... 6

## Statutes and Codes

New York Code Civil Practice Law and Rules
 Section 214 (McKinney 2011)................................................................................11

New York General Business Law
 Section 349 .........................................................................................................14

## Rules and Regulations

Financial Industry Regulatory Authority,
 Rule 2310 .............................................................................................................9

## PRELIMINARY STATEMENT

Recognizing that its claims are foreclosed by this Court's prior order in *Prickett* and the

*SSR II* decision, Plaintiff struggles to identify variations between its allegations and the nearly

identical facts in those cases.  Plaintiff's attempt to distinguish those authorities boils down to

three purported differences: (1) Tremont's alleged representation that no more than six percent of

TOF III's assets would be entrusted to any one manager (what Plaintiff calls the "Six Percent

Misrepresentation"); (2) NYLIAC's alleged failure to provide a July 2007 Tremont PPM to

Plaintiff; and (3) NYLIAC's alleged misrepresentation of its due diligence into TOF III.  Opp. at

11-12.  None of these distinctions is availing.

First, while Cummins alleges that NYLIAC "was aware of Tremont's 2007 Meetings with

Plaintiff" (Compl. ¶ 43), it does not allege, nor can it, that NYLIAC was present at such 2007

Meetings or had any knowledge of the alleged "Six Percent Misrepresentation."  Cummins'

suggestion that NYLIAC purposefully participated in a conspiracy with Tremont to keep from

Cummins the concentration limits (*see* Opp. at 17) is simply unsupported by any plausible factual

allegations.  Moreover, Cummins' claims in this litigation regarding the importance of

diversification in its VUL investments are belied by the actions it admittedly took: making eight

separate investments in which it allocated 100% of its premiums to a single fund (TOF III) despite

the availability of more than 70 other options on NYLIAC's platform, among which Cummins

could have distributed its investment in any manner that it chose.  *See* Opening Mem. at 5.

Second, the Complaint nowhere alleges that NYLIAC even had possession of the July 2007

PPM at the time of Cummins' initial investment; it merely alleges that such a PPM "existed."  *See*

Compl. ¶ 53.  Moreover, NYLIAC's statement in the NYLIAC PPM that distributing a "fund's

prospectus or confidential memorandum and any supplements thereto" is an administrative service

by NYLIAC for which a fee is paid by fund managers constitutes **neither the undertaking of an**

**obligation** by NYLIAC to its policyholders to provide such documents **nor a representation** upon which any of the claims Cummins asserts can be based.  *See* Ex. 3 at 55-56.

Third, Cummins' final purported distinction, that NYLIAC "misrepresented the extent of its due diligence into [TOF III] to confirm its 'appropriateness' for VUL policyholders" (Opp. at 12) has been rejected as a basis for claims by both the Second Circuit and by this Court.  *See South Cherry Street, LLC v. Henessee Group LLC*, 573 F.3d 98, 113-14 (2d Cir. 2009) (holding that failure to conduct due diligence or monitoring as promised does not support an inference of scienter); Prickett Opinion at 26 (stating "the Tremont Fund was not … a 'sham' investment; the fact that 22% of its assets were invested in the Rye Funds and misappropriated by Madoff does not make the entire fund a sham").  Plaintiff is unable to meaningfully distinguish its case from *Prickett* and *SSR II*, and those cases control here.

Thus, despite multiple opportunities to amend its Complaint and respond to Defendants' arguments (along with generous extensions of time), Plaintiff's Opposition still falls flat.  After this Court warned that defendants cannot be "lumped together without differentiation" for pleading purposes (Prickett Opinion at 18), Plaintiff persists in loosely asserting allegations against both Tremont and NYLIAC.  *See, e.g.*, Opp. at 8 (referring collectively to "representations" as false, misleading, and inducing reliance); *id.* at 20-21 (using same undifferentiated allegations to support supposed "special relationship" with both Tremont and NYLIAC).  Plaintiff also continues to take statements in NYLIAC's PPM out of context (Opp. at 7, 13-14, 24) and rely on "red flags" arguments albeit without using those terms (Opp. at 12, 14, 25).  At this point, it is clear that Cummins' claims are unsalvageable and should be dismissed with prejudice.

## I.     CUMMINS' FRAUD IN THE INDUCEMENT CLAIM FAILS

### A.     NYLIAC Made No Misrepresentation to Cummins

A misrepresentation for fraudulent inducement purposes must be a statement of **present**

**fact**, not of future intent.  *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir. 2007) (holding that a "statement of what will be done at some future point … gives rise only to a breach of contract cause of action" and a "misrepresentation of a present fact" is required to state a fraudulent inducement claim).  Cummins' allegations of misrepresentations by NYLIAC concern statements of what NYLIAC would do in the future, not statements of present fact.  *See* Opp. at 7 (alleging that NYLIAC represented that it would provide future "updated or amended" PPMs, "would" monitor Tremont, "would notify" policyholders of material changes, and "would exercise" control over certain accounts).  The Complaint does not (and cannot) allege that NYLIAC even had the Tremont July 2007 PPM at the time of Cummins' initial investment, much less that NYLIAC had the **present intent** to withhold future prospectuses from Cummins when it stated in the PPM that it would be receiving an administrative fee for distributing fund prospectuses.  Nor does Cummins allege that NYLIAC promised to conduct due diligence that it did not intend to perform at the time the statement was made.  Absent such allegations, a claim based upon purported misrepresentations of future intent cannot stand.  *See In re Meridian Funds Group Securities and Employee Retirement Income Sec. Act (ERISA) Litigation*, 09 M.D. 2082 (TPG), 2013 WL 76188, at *3 (S.D.N.Y. Jan. 7, 2013) (dismissing fraud claim where there was "no allegation that, whatever commitments were made regarding due diligence, such commitments were made with some fraudulent intent, specifically with the intent that the diligence would not be performed").[1]

Plaintiff's argument that NYLIAC misrepresented Tremont's level of due diligence is also

---

[1]  Plaintiff's argument that NYLIAC made a material omission because it had "superior knowledge" and knew that Cummins was "acting on the basis of mistaken knowledge" (*id.* at 13-14 & n.6 ) is unsupported.  The Complaint alleges neither that NYLIAC possessed the July 2007 PPM (and thus had "superior knowledge") nor that NYLIAC was aware of the "Six Percent Misrepresentation" (and thus knew that Cummins was "acting on the basis of mistaken knowledge").  Compare *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, where the defendant was alleged to have negligently conveyed to plaintiff ratings that defendant had reason to believe were inaccurate or deeply flawed, while omitting facts that would expose the flaws.  08 Civ. 7508, 2012 WL 4762039, at *3 (S.D.N.Y. Oct. 05, 2012).

contradicted by explicit disclosures in the NYLIAC PPM that NYLIAC did *not* "independently

verify" and was "not responsible for incorrect information" provided by the funds.  Ex. 3 at 29, 52.

In fact, this Court has already found that "nothing in the Policy requires New York Life to conduct

due diligence on the Tremont Fund or otherwise monitor the investments being made by the

underlying hedge funds in which the Tremont Fund invests."  Prickett Opinion at 26.

Unable to establish that NYLIAC made any specific misrepresentations regarding its due

diligence obligations, Cummins argues that the "gravamen" of NYLIAC's alleged

misrepresentations is that NYLIAC "would monitor" TOF III to determine "whether the fund

remained an 'appropriate' investment vehicle for its policyholders."  Opp. at 14.  But the only way

for NYLIAC to have determined that TOF III was not an "appropriate" investment for

policyholders would have been to uncover Madoff's fraud.  Numerous courts, including this Court,

have rejected such a theory as the basis for fraud claims.[2]  Moreover, it cannot be disputed that

TOF III *was* a legitimate investment vehicle with a diversified portfolio of securities managed by

multiple managers.  As this Court has recognized, "the Tremont Fund was not … a 'sham'

investment; the fact that 22% of its assets were invested in the Rye Funds and misappropriated by

Madoff does not make the entire fund a sham."  Prickett Opinion at 26.  The acknowledged

"gravamen" of Plaintiff's claim, therefore, has already been rejected by this Court.

### B.    Plaintiff Cannot Establish that NYLIAC Acted With Scienter

Plaintiff likewise fails to adequately plead scienter.  Like Prickett, Cummins has not

"suggested any motive for any defendant to defraud [it], besides the fees received by [NYLIAC]

and Tremont Partners, and … the profit motive common to all businesses is insufficient to

establish scienter."  Prickett Opinion at 16.  Plaintiff acknowledges that its claim for fraud in the

---

[2]  *See Meridian Horizon Fund, LP v. Tremont Group Holdings, Inc.*, 747 F. Supp. 2d 406, 413 (S.D.N.Y. 2010); *In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 366 (S.D.N.Y. 2011); *Newman v. Family Mgmt. Corp.*, 748 F. Supp. 2d 299, 309-11 (S.D.N.Y. 2010); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 414 (S.D.N.Y. 2010).

inducement is based upon NYLIAC "misrepresenting the level of due diligence that [it] has performed or will perform" (Opp. at 13).  As this Court has already stated, however, "the failure to conduct due diligence or monitoring as promised, without more, does not support an inference that the defendants acted with scienter."  Prickett Opinion at 16 (*citing South Cherry Street, LLC v. Henessee Group LLC*, 573 F.3d 98, 113-14 (2d Cir. 2009).

      Nor can any inference of scienter reasonably be drawn with respect to the statement in NYLIAC's PPM that it would receive administrative fees for providing certain services, including distributing copies of fund PPMs.  Despite Cummins' argument (Opp. at 17) that NYLIAC "was aware of the July 2007 PPM" and "did not provide Cummins" with that PPM "simultaneously" with Tremont's "Six Percent Misrepresentation," there is in fact **no allegation in the Complaint** that NYLIAC "was aware of the July 2007 PPM" or that NYLIAC even knew of the "Six Percent Misrepresentation."  The Complaint merely alleges that Tremont's July 2007 PPM "existed" prior to November 2007, when Cummins made its first VUL purchase.  Compl. ¶¶ 46, 53.  Moreover, Cummins cannot dispute that any representations made in the NYLIAC PPM (dated May 15, 2007) predated the existence of the Tremont July 2007 PPM.  Cummins also cannot dispute that the July 2007 PPM did not exist when "[i]n or about the spring of 2007," Plaintiff sought information from NYLIAC regarding VUL policies and the funds in which policyholders could invest.  *See id.* ¶ 32. At that time, the only references to diversification in the NYLIAC and Tremont PPMs were to compliance with IRS requirements limiting a fund's concentration with any single investment to 55%.  *See* Ex. 3 at 39; Ex. 6 at 4.  The 30% concentration limit stated in subsequent Tremont PPMs (of which Cummins claims it was not aware), therefore, required greater diversification (which Cummins allegedly sought) than the 55% in the earlier PPMs (of which Cummins concedes that it was aware).  Thus, it is implausible to suggest that NYLIAC, unaware of the "Six Percent Misrepresentation," would  know that subsequent Tremont PPMs undermined Tremont's alleged

oral representations to Cummins, much less that NYLIAC represented in its May 2007 PPM that it would distribute Tremont PPMs knowing that it intended to withhold them.[3]

### C.    Plaintiff Cannot Show Reasonable Reliance

Cummins' argument that NYLIAC's offering materials "as a whole create[d] a false or misleading picture of the investment" (Opp. at 17) is not sufficient to establish reasonable reliance given that the NYLIAC PPM contained detailed and specific cautionary language, and that Plaintiff has alleged no specific facts known to NYLIAC and not disclosed.  Opening Mem. at 7-9.[4]  Thus, the cases cited by Cummins are easily distinguished.  *See Dandong v. Pinnacle Performance Ltd.*, 10 Civ. 8086, 2011 WL 5170293, at *13 (S.D.N.Y. Oct. 31, 2011) (finding general disclaimers insufficient only "in the face of specific known risks which border on certainties"); *Commodity Futures Trading Comm'n v. Commodity Inv. Grp., Inc.*, 05 CV 5741, 2007 WL 1519002, at *5-6 (S.D.N.Y. Feb. 27, 2007) (finding standard risk disclosures unavailing where defendant promised profits despite fact that over 90% of prior customers had lost money).[5]  Moreover, the reasonableness of a claim of reliance must be considered in light of the plaintiff's sophistication.[6]  Here, it is undisputed that Cummins is a sophisticated institutional investor, that NYLIAC's VUL policies were available only to Accredited Investors and Qualified Purchasers,

---

[3]   It is also implausible to suggest that there is any causal connection between the alleged withholding of the July 2007 PPM and Cummins' decision to invest in Tremont.  If Cummins accepted Tremont's alleged oral "Six Percent Misrepresentation" when it had a PPM stating that Tremont could invest up to 55% in any one investment, there is no basis to claim that it would not have relied on the "Six Percent Misrepresentation" if it had a PPM that said Tremont could invest up to 30% in any one investment.

[4]   Contrary to Plaintiff's argument (Opp. at 18), "the reasonableness of reliance is properly considered at the motion to dismiss stage." *Terra Sec. Asa Konkursbo v. Citigroup, Inc.*, 740 F.Supp.2d 441, 449 (S.D.N.Y. 2010); *see also Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 195 (2d Cir. 2003); *Abu Dhabi Commercial Bank v. Morgan Stanley & Co., Inc.*, 651 F.Supp.2d 155, 180–81 (S.D.N.Y. 2009).

[5]   Plaintiff's reliance on *People v. Merkin* (Opp. at 18) is not persuasive here.  That case was an action by the New York State Attorney General pursuing public claims under the Martin Act and other statutes that required no proof of intent, reliance, or loss causation.  *See People v. Merkin*, 450879/09, 2010 WL 936208, at *3, *7 (N.Y. Sup. Ct. Feb. 8, 2010).  In a private action against the same defendants, based on the same fact pattern, the district court dismissed all claims.  *In re Merkin*, 08 Civ. 10922, 2011 WL 4435873 (S.D.N.Y. Sept. 23, 2011).

[6]   *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1541 (2d Cir. 1997) ("It is well established that where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance.").

and that Cummins initiated and conducted substantial pre-investment due diligence directly with Tremont.  *See* Opening Mem. at 5-6; Opp. at 6-7.

### D.    Madoff, Not NYLIAC, Caused Cummins' Losses

Finally, Plaintiff's fraudulent inducement claim fails because Cummins cannot establish that NYLIAC caused its losses.  Cummins attempts to distinguish the *Rulle* and *Goldweber* cases on the basis that the defendants in those cases supposedly did not "specifically misrepresent or omit information concerning the percentage diversification of fund assets" (Opp. at 18), but Cummins is wrong.  In *Rulle*, the court dismissed plaintiff's case despite the allegations that "approximately 23% of Plaintiff's account had been invested in a single fund" and "Defendant had affirmatively represented that a significantly less percentage of the aggregate of such funds would be invested with any one investment manager."  *Michael S. Rulle Family Dynasty Tr. v. AGL Life Assurance Co.*, 10-231, 2010 WL 3522135, at *5 (E.D. Pa. Sept. 8, 2010), *aff'd*, 10-4034, 2011 WL 3510285 (3d Cir. Aug. 11, 2011).  Similarly, in *Goldweber* the court dismissed claims based on failure to show loss causation where plaintiff alleged that defendants "deviated from the plan of investment as stated in the PPM/Prospectus" and did not "maintain[] a diversified portfolio." *Goldweber v. Harmony Partners, Ltd.*, 2010 WL 3702508, at *4 (S.D. Fla. Sept. 16, 2010).

## II.    CUMMINS CANNOT STATE A NEGLIGENT MISREPRESENTATION CLAIM

### A.    There Was No Special Relationship Between Cummins and NYLIAC

There is ample Second Circuit authority for the proposition that "a plaintiff may recover for negligent misrepresentation only where the defendant owes [plaintiff] a fiduciary duty."  *See Muller-Paisner v. TIAA,* 289 F. App'x 461, 465 (2d Cir. 2008); *Stewart v. Jackson & Nash*, 976 F.2d 86, 90 (2d Cir. 1992).  Even if some lesser standard applies, as Cummins argues (Opp. at 19), New York law is clear that no "special relationship" of trust or confidence arises out of an insurance contract between insured and insurer under New York law.  *Batas v. Prudential Ins. Co.*

*of America*, 281 A.D.2d 260, 264 (1st Dept. 2001).  While *Batas* itself did not address a negligent

misrepresentation claim, numerous cases have relied on the rule stated in *Batas* to dismiss

negligent misrepresentation claims.  *See SSR II*, 2012 WL 4513354, at *11; *Federal Ins. Co. v.

Distinguished Properties Umbrella Managers Inc.*, 721 F.Supp.2d 293, 301 (S.D.N.Y. 2010);

*Phillips v. American Intern. Group, Inc.*, 498 F.Supp.2d 690, 695-96, 698 (S.D.N.Y. 2007).

Plaintiff's statement that the *SSR II* court "did not address whether the insurance carrier had a

special relationship with its VUL insured" (Opp. at 21) is simply not true; *SSR II* explicitly found

that John Hancock did not have a special relationship with its VUL policyholder and dismissed the

policyholder's negligent misrepresentation claim on that basis.  *SSR II*, 2012 WL 4513354, at *11.

There is similarly no "special relationship" here.

  Plaintiff's reliance on *Muller-Paisner v. TIAA,* 289 F. App'x 461 (2d Cir. 2008) (Opp. at

20) is inapposite.  In that case, the court denied a motion to dismiss where the defendant sold a

fixed annuity to an elderly woman with advanced emphysema, who would not recover the

purchase price unless she lived for at least 12 years (she died within six months), having advertised

that "they will assist customers in purchasing the best option available to them . . .." 289 F. App'x

at 466.  Here, Cummins was an Accredited Investor and a Qualified Purchaser that met separately

with Tremont and made its own investment decision selecting TOF III after being amply advised

of the risks of its investment.  *See* Opening Mem. at 5, 7-9.[7]  Indeed, *Muller-Paisner* previously

has been distinguished precisely on this basis.  The court in *Banco Industrial de Venezuela v. CDW

Direct, L.L.C.,* in refusing to find that defendant owed a tort duty independent of the contract,

distinguished *Muller-Paisner* (and other cases) because they "involve unsophisticated parties, the

elderly, or the infirm," and "are inapposite to this case involving two sophisticated business

---

[7]  Despite referring to NYLIAC's alleged "solicitation" of Cummins (Opp. at 5), Plaintiff acknowledges that, in fact, "Cummins became interested in purchasing VUL Insurance, and **sought** information from NYL about its VUL Policies and the corresponding funds in which policyholders were permitted to invest" (*id.* at 6 (emphasis added)). Cummins then initiated an RFP and conducted due diligence directly with Tremont. *See id.* at 21.

entities." 2012 WL 3776367, at *3 (S.D.N.Y. August 31, 2012).  The other general cases cited by Cummins (Opp. at 20) are completely outside of the insurance context.  *See, e.g., Duke v. Touche Ross & Co.*, 765 F. Supp. 69, 77 (S.D.N.Y. 1991) (finding that accountants owed special duty under certain circumstances).

Cummins also relies upon various FINRA and NASD materials (Opp. at 20 n.12) that do not apply here.  The NASD notice cited by Cummins pertains specifically to "non-institutional customers," not institutional investors like Cummins.  *See,* NASD, Notice to Members 96-60, (stating that the "suitability rule" applies to transactions for "non-institutional" customers).  Also, NYLIAC could not have determined that TOF III was not a "suitable" investment for Cummins based upon Cummins' "other security holdings… financial situation and needs" (*see* FINRA Rule 2310) because, as noted above (*see* § I.A, *supra*), to conclude that TOF III was unsuitable would have required that NYLIAC uncover Madoff's fraud, and numerous courts have already held that failure to do so is not actionable.  *See* n.2, *supra*.

### B.    The Economic Loss Doctrine Bars Plaintiff's Claim

Plaintiff's argument that the economic loss doctrine is inapplicable ignores the fact that contracts (i.e., the policies) govern the relationship between the parties.  Plaintiff instead circularly asserts that the alleged "special relationship" between Cummins and NYLIAC created a "legal duty, separate and apart from any contractual obligations — to protect the plaintiff from purely economic losses."  *See* Opp. at 22.  While such a "special relationship" (which, in any event, did not exist here) may suffice to overcome the economic loss doctrine in cases where no contract exists between the parties, even the *King County* case relied upon by Cummins recognized that "the presence of a contract … can be a strong indicator that a plaintiff was not owed a legal duty separate and apart from obligations bargained for and subsumed within the transaction."  *See King County, Wash. v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 288, 303-304 (S.D.N.Y. 2012)

(rejecting economic loss defense where there was no contract between the parties).

Plaintiff has offered no plausible basis for the Court to recognize that NYLIAC owed a duty to protect Cummins from purely economic losses.  Indeed, NYLIAC owed Plaintiff no duty to protect it from prospective investment losses, particularly where it is undisputed that: (i) NYLIAC warned Plaintiff of the risks of investing in a VUL policy, including the specific risks of investing in exempt funds like TOF III (Opening Mem. at 7-9); (ii) Plaintiff specifically directed NYLIAC to invest its premiums in TOF III (*id.* at 5); and (iii) this Court has already found that TOF III was **not** a "sham" investment (Prickett Opinion at 26).  Plaintiff's only effort to distinguish the considerable authority cited by NYLIAC is to argue that "the parties in those cases were merely engaged in arms-length negotiations from which no special duty arose."  Opp. at 22.  As in *Prickett*, however, the relationship here "**was** an arms-length insurance contract between sophisticated parties."  Prickett Opinion at 23 (emphasis added).

### C.     The Negligent Misrepresentation Claim is Time-Barred

Plaintiff's argument that its purported negligent misrepresentation claim did not accrue until Madoff's fraud was revealed in December 2008 (Opp. at 23) is wrong and has been specifically rejected in *SSR II*.  There, the court held that the plaintiff, also a variable universal life policyholder who invested in TOF III, suffered "an injury in 2004 when its money was invested in the Madoff Ponzi scheme" and rejected the "unconvincing contention that it did not suffer an injury until December 2008."  2012 WL 4513354, at *10.  Like the plaintiff in *SSR II*, Cummins' claim is based "not on Madoff's fraud," but on the insurer's alleged misrepresentations, which were issued before the investment was made.  *See id.*  Under such circumstances, the court in *SSR II* concluded that "[i]t would be unduly speculative for the Court to try and pinpoint the last moment in time when, if SSR knew about the fraud (the defendants' false statements, not the existence of the Ponzi scheme), it could have gotten its money back."  *Id.*  Thus, the *SSR II* court

held that plaintiff suffered its injury from its investment in the Madoff Ponzi scheme when the investment was made, and that its claims accrued at that time for statute of limitations purposes. *Id.*[8]  Plaintiff's negligent misrepresentation claim, therefore, accrued in September 2007 when it instructed NYLIAC to invest its funds in TOF III, and is accordingly barred by New York's three-year statute of limitations period.  *See* N.Y. C.P.L.R. § 214 (McKinney 2011).[9]

## III.   THE CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING FAILS

In asserting that NYLIAC "failed to reasonably exercise its 'sole discretion' and 'exclusive rights'" (Opp. at 24-25), Plaintiff persists in ignoring the language of the policies and assigning obligations to NYLIAC that NYLIAC did not undertake.  As this Court has stated:

> It is true that New York Life had certain rights under the contract, to make changes to the list of investments and to take certain investment options (such as the Tremont Fund) off of the list of investments for policyholders.  ... But the contract says that New York Life may do these things and has discretion to do these things; it does not say that New York Life must do those things.

Prickett Opinion at 26.  Moreover, Cummins' suggestion that NYLIAC was obligated to exercise its discretion to remove TOF III from the investment options offered to VUL policyholders is based solely on hindsight.  While careful to avoid invoking the term (Opp. at 12), Plaintiff is again relying on the "red flags" argument that NYLIAC should have divested the premiums of its insureds from TOF III due to TOF III's investment with Madoff.  The NYLIAC PPM made clear that NYLIAC did not control the investments made by the funds available on its platform, nor did it select or monitor the individuals and entities that made the investments on the funds' behalf.

---

[8]   While the *Anwar v. Fairfield Greenwich, Ltd.* case cited by Plaintiff (Opp. at 23) found that the limitations period for claims concerning losses suffered due to Madoff's fraud did not begin to run until the fraud was revealed, this Court should be guided by the later-decided state court *SSR II* case (involving claims against an insurance company nearly identical to the allegations here), which contradicted *Anwar* in resolving this issue of New York state law.  Moreover, *Anwar* essentially applied a "discovery rule" for a negligent misrepresentation claim, which is contrary to New York law.  *See Brady v. Lynes*, 05 Civ. 6540, 2008 WL 2276518, at *8 (S.D.N.Y. June 2, 2008) (dismissing negligent misrepresentation claim as time-barred and noting "there is no discovery rule for negligent misrepresentation claims").

[9]   For the same reasons, Plaintiff's breach of fiduciary duty claim is also barred by the three-year statute of limitations under New York law.  *See* N.Y. C.P.L.R. § 214(4) (McKinney 2011).

Ex. 3 at 32, 52.[10]

Moreover, Cummins' allegation that NYLIAC acted in bad faith by "either knowing that Tremont had not vetted Madoff's investment methods and practices or without discerning whether Tremont had done so" (Opp. at 25) is unsupported by factual allegations in the Complaint, and does not correspond to any obligation undertaken by NYLIAC in the policies or NYLIAC PPM. The alleged failure to provide the July 2007 Tremont PPM similarly falls far short of establishing bad faith.  There is no allegation in the Complaint that NYLIAC even had the July 2007 Tremont PPM, much less that NYLIAC intentionally withheld it to steer Plaintiff to invest its premiums in TOF III, particularly since NYLIAC is not alleged to have had knowledge of the "Six Percent Misrepresentation" that the July 2007 Tremont PPM supposedly contradicts.  Numerous courts have granted motions to dismiss claims for breach of the implied covenant of good faith and fair dealing due to insufficient allegations of bad faith.  *See, e.g.*, *In re Cablevision Consumer Litigation*, 864 F.Supp.2d 258, 265 (E.D.N.Y. 2012); *Nissan Motor Acceptance Corp. v. Dealmaker Nissan, LLC*, 09–CV–0196, 2011 WL 94169, at *5 (N.D.N.Y. Jan. 11, 2011).

## IV.    NYLIAC NEITHER OWED NOR BREACHED A FIDUCIARY DUTY

Plaintiff does not explain why this Court should not apply its holding in *Prickett* – that "arms-length commercial transactions, including insurance transactions, do not give rise to fiduciary relationships" (Prickett Opinion at 23) – to the identical relationship between Cummins and NYLIAC.  Instead, Plaintiff cites inapposite authority to suggest erroneously that other courts have found such a duty to exist in similar circumstances.  *See* Opp. at 26-27.  But *Dornberger v. Metro. Life Ins. Co.*, upon which Plaintiff relies, addressed illegal insurance sales in Europe and found a duty based on relationships that were "closer than arm's-length" relying on cases limited to the insurer's duty to defend the insured in litigation.  *See* 961 F. Supp. 506, 546 (S.D.N.Y.

---

[10]   The Tremont PPM also explained that limited partners in TOF III, like NYLIAC, had *no right* to participate in the Fund's selection of investments or managers.  Ex. 6 at iv, 24.

1997). *Banco Multiple Santa Cruz, S.A. v. Moreno* did not involve a breach of fiduciary duty claim; rather, at issue was a simple negligence claim and a duty "to process withdrawal requests in a non-negligent fashion" where the defendant had paid out on multiple forged requests. 08–CV–1271, 2012 WL 3775998, at \*10-12 (E.D.N.Y. Aug. 31, 2012).[11]   Here, it is undisputed that NYLIAC executed Cummins' directives to invest in TOF III precisely as given.  Finally, *Muller-Paisner v. TIAA*, which involved the sale of an annuity to a terminally-ill, elderly woman, is readily distinguished from the arms-length, nine-figure VUL transaction with the sophisticated institutional investor at issue here.  *See* § II.A, *supra*.

## V.    CUMMINS' UNJUST ENRICHMENT CLAIM IS BARRED

Plaintiff acknowledges that an unjust enrichment claim requires that a "contract does not cover the entirety of the dispute between the parties."  Opp. at 29.  Here, the fees and charges assessed by NYLIAC are plainly set forth in the policies.  *See* Opening Mem. at 23.  Perhaps recognizing that the policies bar recovery of fees that it paid under an unjust enrichment theory, Cummins seeks to recover money that it did not pay, asserting that it "is not seeking just reimbursement of the fees paid to [NYLIAC] under the VUL Policies, but rather any financial gains to defendants attributable to Cummins' investment in [TOF III]." Opp. at 30.  This gambit, however, fails as a matter of New York law because unjust enrichment requires that the "enrichment" in question be at *plaintiff's expense*.  *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (holding that the "essence" of an unjust enrichment claim "is that one party has received money or a benefit at the expense of another" and that such money or benefit must be "specific and direct").  Thus, monies received by NYLIAC that were not from Cummins or at Cummins' expense do not support an unjust enrichment claim by Cummins.

Plaintiff's cases are unavailing.  *See Knudsen v. Quebecor Printing (U.S.A.) Inc.*, 792

---

[11]  Similarly, the New York insurance law provision cited by Plaintiff (Opp. at 27 n.18) merely imposes a duty for insurance companies to invest funds according to the insured's instructions, which NYLIAC did.

F.Supp. 234, 237-38 (S.D.N.Y. 1992) (denying motion to dismiss quantum meruit claim because "the complaint does not set forth an express contract" ); *National City Commercial Capital Co., LLC v. Global Golf, Inc.,* 09-CV-0307, 2009 WL 1437620, at *1 (E.D.N.Y. May 20, 2009) (declining to dismiss quasi-contract claim where the purported written agreement was not yet before the court, but stating that "if this Court were to find, at a later stage of this litigation, that a valid and enforceable agreement governed the subject matter at issue in plaintiff's quasi-contract claim, such a claim would be barred"). Here, Cummins' policies are before the Court, there is no factual dispute that they are valid and enforceable agreements, and they control the relationship between Plaintiff and NYLIAC. Accordingly, there is no plausible basis for alternative quasi-contractual pleading.

## VI.   CUMMINS FAILS TO STATE A SECTION 349 CLAIM

This Court has already dismissed the Section 349 claim in *Prickett* on the basis that Section 349 claims are unavailable for securities-related transactions (Prickett Opinion at 27-30), and that decision applies with equal force here. Plaintiff does not contest this, ignoring that issue entirely. In addition, Plaintiff fails to overcome the fact that Section 349 is aimed at "consumer-oriented conduct," not multimillion dollar commercial transactions involving a sophisticated institutional investor. *See* Opening Mem. at 24-25.[12] The weight of authority, including a New York Court of Appeals case addressing corporate-purchased insurance, establishes that Section 349 does not apply to large commercial transactions between sophisticated parties.[13]

---

[12] The cases cited by Cummins where insureds have successfully alleged Section 349 claims against insurers concern disputes over alleged misrepresentations regarding premiums to be paid by the insured. *See Gaidon v. Guardian Life Ins. Co.*, 94 N.Y.2d 330, 338-42 (1999); *Monter v. Massachusetts Mut. Life Ins. Co.*, 12 A.D.3d 651, 651 (2d Dep't 2004). Moreover, Cummins' only support for the proposition that corporate consumers can allege Section 349 claims is a single 25-year old trial court decision involving a breach of warranty for a computer software system. *See Schroders, Inc. v. Hogan Sys, Inc.*, 522 N.Y.S.2d 404, 406 (N.Y. Sup. Ct. 1987).

[13] Plaintiff's attempt to distinguish *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308 (1995), because the opportunity to invest in TOF III "was not limited to corporate customers" (Opp. at 31) is fruitless. It is undisputed that the VUL policies at issue were not available to ordinary consumers, but only to Accredited Investors and Qualified Purchasers. *See* Opening Mem. at 5.

## VII.   NYLIAC IS NOT LIABLE FOR TREMONT'S STATEMENTS

Plaintiff fails to plausibly allege that NYLIAC is liable for any alleged misrepresentations by Tremont under a conspiracy theory.  Acknowledging that a "purpose to defraud" is required to state such a claim, Plaintiff argues that the Participation Agreement between NYLIAC and Tremont "raise[s] a plausible inference" of conspiracy despite Plaintiff's concession that the agreement itself is not unlawful.  Opp. at 32.  The Complaint, however, fails to identify any "purpose to defraud" by NYLIAC, or conspiracy between NYLIAC and Tremont to make "misrepresentations and omissions to Cummins concerning the diversification of [TOF III]."  *Id.* There is no allegation, nor could there be, that NYLIAC participated in preparing the Tremont PPM, or provided any input with respect to, or approval of, its contents.  Nor does Cummins allege that NYLIAC was aware of the "Six Percent Misrepresentation."  Under New York law, a conspirator must knowingly and intentionally enter into an agreement for an unlawful purpose. *See Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2d Cir. 1986).  Cummins' allegations regarding NYLIAC fall far short of that standard.

Dated:  New York, New York
          May 9, 2013

                                        PILLSBURY WINTHROP SHAW PITTMAN LLP

                              By:     s/  Maria T. Galeno
                                        Maria T. Galeno
                                        Greg T. Lembrich
                                        1540 Broadway
                                        New York, NY  10036
                                        Telephone: (212) 858-1000
                                        Fax: (212) 858-1500
                                        maria.galeno@pillsburylaw.com
                                        greg.lembrich@pillsburylaw.com

                                        *Attorneys for Defendants New York Life Insurance
                                        Company and New York Life Insurance and Annuity
                                        Corporation*