UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW, AND INSURANCE LITIGATION | Master File No.<br><br>08 Civ. 11117 |
| CAYMAN NATIONAL TRUST COMPANY, LTD., as trustee of THE INTERNATIONAL DAD TRUST,<br><br>            Plaintiff,<br><br>            v.<br><br>TREMONT OPPORTUNITY FUND III, L.P., ET AL.,<br><br>            Defendants. | 11 Civ. 1687<br><br>**OPINION** |

        This is an action brought by the Cayman National Trust Company in its capacity as trustee of the International DAD Trust.  The Trust alleges that, through various misrepresentations about the due diligence performed by Tremont on its fund managers, defendants induced it to invest in excess of $4 million in two Tremont funds — Tremont Opportunity and Tremont International.  Of this $4 million, approximately $1.5 million was lost when it was revealed that the ultimate manager of these assets, Bernard Madoff, was using the assets to fund his Ponzi scheme instead of investing them.

The complaint frequently uses the term "Tremont" and defines it to refer collectively to Tremont Opportunity Fund III, L.P.; Tremont International Insurance Fund L.P.; Tremont Partners, Inc.; Tremont Group Holdings, Inc.; and Rye Investment Management.  The court will adopt this terminology as well.  Certain allegations in the complaint are only plausible to the extent that they refer to a subset of these entities.  But, for the purpose of this motion, it is not the court's prerogative to gainsay plaintiff's allegations.  The court anticipates, however, that further proceedings will serve to clarify which allegations and claims are truly relevant to each particular defendant.

The action was originally brought in Texas state court.  It was removed to federal court in the Northern District of Texas and then transferred to this court as a part of the multidistrict case In re Tremont Group Holdings, Inc., 09 M.D. 2052, for pretrial case management.  Here, it was consolidated with the case In re Tremont Securities Law, State Law, and Insurance Litigation, 08 Civ. 11117.

Defendant moves to dismiss the complaint, which is the second amended complaint filed in this action.  The motion is denied.

## The Complaint

The Trust is the policyholder of a variable universal life insurance policy, or "VUL," issued by Scottish Annuity & Life Insurance Company (Bermuda) Ltd.  A VUL is a type of life insurance that, in essence, permits the policyholder to engage in some degree of investment activity while enjoying the tax advantages afforded a life insurance policy.  On

one hand, this policy allows the policyholder to direct, among the options provided by the insurance carrier, how the funds paid into that account are to be invested. The proceeds from those investments are paid out through the policy's eventual death benefit and also, in the meantime, may be borrowed against and used to fund the policy premiums and other ongoing policy expenses. On the other hand, however, this arrangement is structured such that the assets held in the policy are considered to be those of the insurance carrier and not of the policyholder. This ensures that the transactions carried on within the VUL benefit from the relatively generous tax advantages afforded life insurance benefits.

In deciding how to invest these VUL assets, representatives of the Trust's "protector" took certain steps. The protector of a Cayman Islands trust serves a role similar and parallel to that of the trustee under Cayman Islands and United States law. A trust's protector is typically tasked with overseeing or approving the actions of the trustee. The protector's representatives met with representatives of Tremont in Dallas, Texas. At that meeting, the Tremont representatives stated that, if the Trust invested with Tremont, the Trust's assets would be invested in a multi-manager "fund of funds." They stated that Tremont conducted extensive "specialist" due diligence on the "market and credit risk management" and "operating and business risk management" of any fund in which Tremont invested. Based upon these representations, the complaint alleges, the Trust directed that a portion of its VUL assets be invested with Tremont. These investments occurred in February and November of 2005.

Subsequently, the complaint alleges, Tremont representatives met with representatives of the Trust's protector in Dallas, Texas on an annual basis. At these meetings, Tremont representatives continued to make representations about the due diligence that it performed on the funds in which it invested. They represented that Tremont had a dedicated "Manager Research Group" focused specifically on ensuring the "operational integrity" of the funds' managers. This allowed Tremont, it claimed, to "uniquely understand how manager returns are generated." Tremont also provided written materials which contained additional details about Tremont's due diligence practices. The materials stated that Tremont also conducted "initial operational risk due diligence" which focused on, among other things, an investment's cash controls, trade execution and settlement, and its third-party service providers.

In reliance on these representations, the complaint alleges, the Trust made additional investments with Tremont in 2006.

On December 12, 2008, however, the day after Madoff was charged with securities fraud in connection with his ponzi scheme, Tremont sent a letter to the Trust informing it that a substantial portion of its investment had been managed by Madoff. Prior to this communication, however, the Trust alleges that a great deal of information had become available that would have caused a reasonable and prudent investment advisor — particularly one that conducted all of the due diligence that Tremont represented it would conduct — to become suspicious of Madoff's operation and avoid financial exposure to it. That Tremont did not identify or heed these red flags, the complaint alleges, suggests that

4

Tremont's representations about its due diligence practices were false and that, in fact, Tremont did not conduct the due diligence that should have been conducted.

## Discussion

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must plead sufficient facts to state a claim for relief that is plausible on its face. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677-78 (2009); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). In deciding a motion under Rule 12(b)(6), a court must accept as true the facts alleged in the complaint, drawing all reasonable inferences in the plaintiff's favor, and may consider legally required public disclosures as well as documents attached to the complaint, incorporated by reference into the complaint, or known to and relied on by the plaintiff in bringing the suit. <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007).

In this connection, Tremont contends that its Private Placement Memorandum, Limited Partnership Agreement, and other documents should be considered by the court. These documents purport to prohibit Tremont from communicating with insurance policyholders such as the Trust, emphasize that policyholders were not limited partners in the fund, and provide that defendants owed no duties to policyholders. But the present motion is addressed to the complaint, and these documents are not referred to in the complaint. The court declines to turn the motion into one for summary judgment dealing, in part, with these documents.

It is far from established, however, that plaintiff relied on or even was aware of these documents in preparing its complaint.  Indeed, defendants only appear to contend that the documents were provided to Scottish Annuity and Life, not plaintiff.  Therefore, these documents can have no bearing on the resolution of this motion.

## CHOICE OF LAW

This court, as the transferee court of a diversity action commenced out of state, but transferred here for pre-trial purposes, applies the substantive law of the state in which the action was originally filed.  This includes that state's choice-of-law rules.  Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993).  In this case, therefore, the court applies the choice of law rules and the other substantive law of Texas.

In deciding which jurisdiction's laws govern a given issue, Texas courts apply the "most significant relationship" test articulated in the Restatement (Second) of Conflicts of Laws.

> Texas courts focus their examination on which state has the most meaningful connections with and interests in the parties and the transactions.  The various contacts are to be evaluated according to their relative importance with respect to the particular issue at hand.  This Restatement methodology requires a separate conflict-of-laws analysis for each issue in a case.

Greenberg Traurig of New York, P.C. v. Moody, 161 S.W.3d 56, 70 (Tex. App. 2004).

## BREACH OF FIDUCIARY DUTY

The Trust claims that, under the circumstances alleged, defendants had a fiduciary duty to plaintiffs which Tremont breached.  Defendants contend that this can only be

brought as a derivative claim, which the Trust would lack standing to bring, and that, in any case, the defendants were not the Trust's fiduciaries.

Texas, like many other states, follows the "internal affairs" doctrine.  <u>See</u> Tex. Bus. Orgs. Code Ann. § 1.102.  Thus, because the defendant funds are were organized in Delaware, Delaware law applies in determining whether a claim must be brought derivatively on an organization's behalf.  <u>See</u> <u>Alenia Spazio, S.p.A. v. Reid</u>, 130 S.W.3d 201, 211 (Tex. App. 2003).  A claim brought against a limited partnership must be brought derivatively if the harm alleged was inflicted upon the plaintiff *qua* partner such that, along with every other partner, it could only recover its *pro rata* share of the harm done to the organization itself.  <u>Feldman v. Cutaia</u>, 951 A.2d 727, 733 (Del. 2008).

The derivative action contended for by defendants would be a derivative action on behalf of the Tremont funds arising from their loss in value.  However, this is not the kind of claim which the Trust is making in this case.  The Trust seeks to recover for its own loss resulting, as alleged in the complaint, from its own inquiries of Tremont, and misrepresentations made by Tremont to the Trust specifically.  This is surely a direct claim.  However, there is the substantive issue as to whether the defendants actually owed a fiduciary duty to the Trust.

It is true that this court has, on other occasions, held that an action for breach of fiduciary duty could not be brought against Tremont by a VUL policyholder.  <u>Prickett v. New York Life Ins. Co.</u>, 896 F. Supp. 2d 236, 2012 WL 4053810, at *11 (S.D.N.Y. 2012).  But in <u>Prickett</u>, the plaintiff sought to sue for breach of fiduciary duties that Tremont

allegedly owed simply by virtue of the plaintiff's investment in the fund.  But in this case, the Trust's claim is based upon duties of a different origin.  The duties at issue here arose as a result of representations made by Tremont directly to the Trust and, thus, the claim pertains to a fiduciary relationship between Tremont and the Trust only, not between Tremont and the fund.  Moreover, <u>Prickett</u> was decided under New York.  In this case, by contrast, the Trust contends that Texas law applies and that, under Texas law, defendants' direct representations to the Trust made them the Trust's fiduciary.

Defendants' argue that, on the contrary, there is "no relationship of any kind" between the Trust and defendants.  But this is clearly inconsistent with the complaint which alleges that Tremont representatives met repeatedly with representatives of the Trust.

It should be noted that Texas, not Delaware law applies to this theory of fiduciary liability.  While Delaware law applies in determining what duties defendants owe investors in their capacities as limited partners in the fund, this second theory is based upon Tremont's external conduct and representations, not upon the entities' internal affairs.  In determining, under Texas law, which jurisdiction's laws govern the potential formation of a fiduciary relationship, the court applies the "most significant relationship" test laid out in Restatement (Second) of Conflict of Laws §§ 6 and 145.  Section 145 of the Restatement explains that, in applying § 6, the court should consider the place where the injury occurred, the place where the injury-causing conduct occurred, where the parties are located, and the place where the relationship between them is centered. <u>See also</u> <u>Red Roof Inns, Inc. v. Murat Holdings, L.L.C.</u>, 223 S.W.3d 676, 685 (Tex. App. 2007).

Here, these factors compel the conclusion that Texas law applies to the question whether Tremont's representations and other acts gave rise to fiduciary duties to the Trust. In particular, the alleged representations by defendants to the Trust were made in Texas and, all in all, the relationship between the parties was clearly centered there. While the parties were spread across several jurisdictions — the Cayman Islands, Delaware, New York — they came together in Texas to form their business relationship. Furthermore, though the Trust is a Cayman Islands entity, its Protector is domiciled in Texas. Thus, Texas is the state with the most significant relationship to this issue.

And under Texas law, the course of dealings alleged by the Trust is sufficient to give rise to fiduciary duties. Under Texas law, while not every relationship of trust gives rise to fiduciary duties, if one party acts such that the other would be justified in relying upon it then the law correspondingly recognizes the creation a fiduciary relationship. Stephanz v. Laird, 846 S.W.2d 895, 901-02 (Tex. App. 1993). It is illustrative that, under Texas law, a financial advisor owes fiduciary duties to his clients. W. Reserve Life Assur. Co. of Ohio v. Graben, 233 S.W.3d 360, 373 (Tex. App. 2007).

In this case, the complaint alleges that Tremont representatives met with representatives of the Trust and represented to them that Tremont was a "fund of funds" and that Tremont would, in its discretion, select the best investments for the Trust's assets on the basis of Tremont's exceptional industry expertise and due diligence. This, in short, is precisely the role of an investment advisor — a fiduciary under Texas law. Indeed, Tremont concedes that it served as an investment advisor but insists that it was an

9

investment advisor to the Tremont funds — and thus its limited partners — and not the Trust itself.  But this ignores the fact that, though the assets invested with Tremont were technically owned by Scottish Annuity and Life for the Trust's benefit, it was Tremont's representations to the Trust, in connection with the investment of these assets, that gives rise to its fiduciary duties in this case.

## TEXAS SECURITIES ACT

The Trust contends that defendants violated § 33A(2) of the Texas Securities Act which creates a cause of action that may be brought by a "person buying [a] security" against the seller of the security, if the sale was made by means of a material omission or misrepresentation.  Vernon's Ann. Tex. Civ. St. Art. 581-33A(2).

As an initial matter, the court concludes that the Trust's complaint adequately alleges that misrepresentations were made in Tremont's meetings with the Trust, although the complaint is hardly a model of clarity in this regard.  On one hand, the complaint includes several concrete allegations about the representations made, and the reasons to suspect that they may have been false.  In particular, the complaint alleges many specific measures that Tremont representatives claimed that Tremont took to scrutinize and monitor the performance of its investment managers.  It then alleges that a fund that was actually performing the due diligence that Tremont represented it would, would have discovered the many red flags that suggested that Madoff's operation was a fraud.

But it contains very little to take these allegations to their logical conclusion, that these representations were actually false.  Instead of a straightforward allegations that the representations were false, the complaint relies upon the circuitous allegation that "had Tremont conducted the due diligence required of them, and which they affirmatively represented they were doing, they would have discovered many, if not all of these red flags."  A court — to say nothing of defendants in a multi-year, multi-million dollar lawsuit — might reasonably expect something more from a second amended complaint.  Nonetheless, however, the court concludes that this allegation, in combination with the conclusory allegation that Tremont is liable to the Trust "by reason of misrepresentations and omissions," and the clear implications arising from the complaint taken as a whole, is sufficient to allege misrepresentation.

Contrary to defendants' contentions, these allegations are not subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b).  That rule imposes heightened requirements only on allegations of fraud or mistake.  But the Trust's complaint does not present such a theory of liability.

The authority cited by defendants, <u>Bagby v. Rydex Inv.</u>, 06 Civ. 0648-G, 2007 WL 507042 (N.D. Tex. Feb. 16, 2007), is not to the contrary.  The <u>Bagby</u> court applied Rule 9(b) to the Texas Securities Act claim in that case because the plaintiff in that case brought a claim under §33(F) of the act, which is a securities fraud claim, not just because, as defendants misleadingly suggest, the Rule 9(b) requirements "apply to TSA claims."

11

Freed of this requirement, the Trust's complaint meets the much less exacting "short and plain statement" standard of Rule 8 and the "plausibility" requirement of <u>Iqbal</u> and <u>Twombly</u>.  Not only does the complaint allege that Tremont did not perform the due diligence it said it performed — arguably an adequate allegation standing alone — but it goes on to explain the Trust's basis for making the allegation.  Namely, while Tremont made specific representations about its robust due diligence practices, numerous red flags were there to be seen by anyone who investigated with the level of diligence that Tremont claimed.  Tremont's failure to observe or heed these warning signs supports the inference (though, of course, it hardly proves) that Tremont did not conduct the due diligence it said that it would.  This is enough for the Trust to state a claim under Rule 8.

But there is a more difficult question.  The Texas Securities Act provides a cause of action for a "buyer" against a "seller" of securities.  But, in this case, it is not clear that the Trust qualifies as a "buyer" of securities because, instead of investing directly in the Tremont funds, the Trust paid premiums into VUL and directed that Scottish Annuity and Life invest VUL assets with Tremont.  Indeed, to enjoy the tax advantages that a VUL typically conveys, it is apparently important that the actual partnership shares purchased with these assets be held in the insurer's name and that the funds used to purchase the shares come from the insurer and not directly from the policyholder.

Defendants argue that the court need only follow the "plain language" of the statute in resolving this question.  Defendants evidently are of the view that the categories erected by tax law — in particular, its designation of Scottish Annuity and Life as the "owner" of the

purchased partnership shares — are conclusive in evaluating the extension of the term "buyer" under Texas law.  But the reality is far less certain.

The courts and legislature of Texas appear never to have answered the question whether the policyholder of a VUL counts as a "buyer" of the securities in which the VUL assets are invested.  And, indeed, Texas law appears to provide no comprehensive definition of "buyer" at all in relation to the sale of securities.

However, a number of cases do exist from around the country that elaborate on the term "person purchasing" in federal Securities Act of 1933 § 12(2), which the Texas Securities Act was apparently designed to parallel, and the word "purchaser" in the Securities Exchange Act of 1934 § 10(b).  In the broadest of strokes, these cases disclose that there are circumstances under which courts are willing to conclude that the "person purchasing" can be a separate entity from the one that technically holds the purchased security.  Typically this is done when to hold otherwise would frustrate the remedial purposes of the securities laws, when the technical purchaser of the securities is a shell corporation, and when the seller directly solicited the putative, *de-facto* buyer.  Courts frequently ask whether a party was the "actual party at risk" in the transaction in determining it was a "purchaser."  See, e.g., Grubb v. Fed. Deposit Ins. Corp., 868 F.2d 1151, 1161 (10th Cir. 1989); Walther v. Maricopa Int'l Inv., Corp., 97 Civ. 4816, 1999 WL 64280 (S.D.N.Y. Feb. 9, 1999); HB Holdings Corp. v. Scovill, Inc., 88 Civ. 7983 , 1990 WL 37869 (S.D.N.Y. Mar. 26, 1990);  Prudential Ins. Co. of America v. BMC Industries, 655 F.Supp. 710, 711 (S.D.N.Y.1987).  The Second Circuit has also helpfully instructed, in

the federal securities context, that the purchase-sale requirement must be interpreted so as to ensure that the remedial purpose of the statute "is not frustrated by the use of novel or atypical transactions." Crane Co. v. Westinghouse Air Brake Co., 419 F.2d 787, 798 (2d Cir. 1969)

These cases, of course, are not controlling, dealing as they do with different statutes under the laws of other jurisdictions. They are nonetheless relevant because it is likely that a Texas court would regard them as instructive in developing Texas's own definition of "buyer."

Under Texas law itself, the guidance most useful to the court in predicting the law that would be developed by a Texas court, is simply this: according to the Supreme Court of Texas, § 33 of the Texas Securities Act "should be given the widest possible scope" because it is remedial in nature. Flowers v. Dempsey-Tegeler & Co., 472 S.W.2d 112, 115 (Tex. 1971).[1]

Here, to properly respect the remedial purpose of § 33A, the court concludes that, under Texas law, the holder of a VUL policy is a "buyer" under the Texas Securities Act. It is the policyholder who is exposed to risk of loss should the VUL investments lose value and it is the policyholder's premium payments that fund the insurer's transactions — even if, in a certain technical sense, the funds belong to the insurer at the time the transaction is

---

[1] The court is keenly aware that its duty in this case is to model the jurisprudential behavior of the Texas courts as closely as it can and, thus, proceeds with caution in reaching any conclusion that does not clearly follow from established Texas law. Given the somewhat thin guidance provided by Texas law on the meaning of the term "buyer" in this context — and, to a lesser extent, the breach of fiduciary duty issue discussed above, see supra p.6 — this question presents an excellent candidate for certification to the Texas Supreme Court. Texas law, however, only permits the certification of questions from federal courts of appeals, not federal district courts. Tex. R. App. P. 58.1. Thus, the only course available to this court is to attempt as faithful an interpretation of Texas law as possible.

made.  To prevent VUL policyholders from bringing actions under the Texas Securities
Act misaligns the harm with its legal remedy — the injured party would not be able to sue
and the party that could sue would not be injured.  This would create a real danger that the
Texas Securities Act will exert very little regulative and remedial power for the benefit of
those who choose to invest through VULs.  It is doubtful that the Texas legislature would
desire such a gap in its securities regulations.

Thus, the Trust has adequately pleaded violation of §33(A) of the Texas Securities
Act.

## Negligent Misrepresentation

The Trust also brings a negligent misrepresentation claim based upon the alleged
misrepresentations described above.  As the court has already explained, supra p. 10, the
Trust has adequately alleged that defendants misrepresented material facts.  However,
there is an issue about whether the negligent misrepresentation claim is governed by Texas
or New York law.

New York negligent misrepresentation law requires that a plaintiff allege that a "special
relationship" existed between plaintiff and defendant, see Hydro Investors, Inc. v. Trafalgar
Power, Inc., 227 F.3d 8, 20 (2d Cir.2000).  It also permits a court to dismiss a case at the
pleading stage, that is brought by a sophisticated party with the means to conduct its own
due diligence, because such a party cannot be said to have reasonably relied upon the

defendants' misrepresentations.  See Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc., 343 F.3d 189, 195 (2d Cir. 2003).

Texas negligent misrepresentation law has neither of these features.  It does not require a special relationship between the plaintiff and defendant.  See McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests, 991 S.W.2d 787, 792 (Tex. 1999), Restatement (Second) of Torts § 552.  And it appears to discourage courts from holding that, as a matter of law, a sophisticated plaintiff could not have reasonably relied on defendants' misrepresentations.  Rather, the plaintiff's sophistication is regarded as a factual consideration more appropriately left to the jury in determining whether the plaintiff reasonably relied on defendants' misrepresentations.  See, e.g., Lutheran Bhd. v. Kidder Peabody & Co., Inc., 829 S.W.2d 300, 308 (Tex. App. 1992); Hall v. Harris Cnty. Water Control & Imp. Dist. No. 50, 683 S.W.2d 863, 868 (Tex. App. 1984).

The court has already concluded that defendants owed fiduciary duties to the Trust. Therefore, the "special relationship" element of negligent misrepresentation is satisfied even under New York law.  The difference between New York and Texas law on the question of reasonable reliance, however, is of considerable significance.  The court concludes, however, that Texas law governs the claim.

As the court has already explained, in choosing which jurisdiction's laws govern an alleged tort, Texas courts apply the "most significant relationship" test laid out in Restatement (Second) of Conflict of Laws §§ 6 and 145.  Section 6 lays out a number of quite general factors to be considered which, for tort claims, are supplemented and

clarified in § 145 by four more specific considerations: the place where the injury occurred, the place where the injury-causing conduct occurred, where the parties are located, and the place where the relationship between them is centered.

The Restatement also, however, contains specific choice of law rules for claims of fraud and misrepresentation. When the plaintiff's actions in reliance on the alleged misrepresentation occurred in the same state as the misrepresentations themselves, that state's law typically controls. There is good reason to conclude that this is such a case. It is clear that the misrepresentations occurred in Texas, it appears that the protector's decision to invest in Tremont occurred there, and there is no other state with a more significant relationship to the claim. Restatement (Second) of Conflict of Laws § 148(1).

But even if, for the sake of argument, the court were to conclude that the plaintiff's actions in reliance on the misrepresentations occurred outside of Texas, perhaps in the Cayman Islands, Texas law would still control. Under such a circumstance, Texas courts look to the six factors laid on in § 148(2) of the Restatement.

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

If more than two of these factors — other than (d) — point to a single forum, Texas courts typically apply the law of that forum.  Grant Thornton LLP v. Suntrust Bank, 133 S.W.3d 342, 358 (Tex. App. 2004); Greenberg Traurig, 161 S.W.3d at 71 (Tex. App. 2004).  In this case, it is clear that the misrepresentations were both made by defendant and received by plaintiff in Dallas, Texas.  Thus, Texas choice-of-law principles direct that the court should apply Texas negligent misrepresentation law.  Accordingly, the court declines to dismiss this claim on the basis of the plaintiff's alleged sophistication.

Therefore, the motion to dismiss plaintiff's negligent misrepresentation claim is denied.

## Conclusion

Defendants' motion to dismiss is denied in its entirety.

Dated:   New York, New York
         May 23, 2013

Thomas P. Griesa
United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 23 2013

18