UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW, AND INSURANCE LITIGATION | Master File No.<br><br>08 Civ. 11117 |
| F. DANIEL PRICKETT,<br><br>                    Plaintiff,<br><br>v.<br><br>NEW YORK LIFE INSURANCE COMPANY, TREMONT PARTNERS, INC., ET AL.,<br><br>                    Defendants. | 09 Civ. 557<br><br>09 Civ. 3137<br><br><br>**OPINION** |

        This is an action brought by F. Daniel Prickett to recover assets lost in the now-infamous Ponzi scheme perpetrated by Bernard Madoff.  Prickett alleges that, through various misrepresentations about the due diligence performed by Tremont on its fund managers, defendants induced him to invest approximately $1.1 million, through a variable universal life insurance policy, in Tremont Opportunity Fund III, L.P.  More than 22% of this $1.1 million was lost was lost when it was revealed that the ultimate manager of these assets, Bernard Madoff, was using the assets to fund his Ponzi scheme instead of investing them.

Defendants move to dismiss Prickett's second amended complaint.  The motion is granted.

## The Complaint

Prickett is the policyholder of a variable universal life insurance policy, or "VUL," issued by New York Life.  A VUL is a type of life insurance that, in essence, permits the policyholder to engage in some degree of investment activity while enjoying the tax advantages afforded a life insurance policy.  On one hand, this policy allows the policyholder to direct, among the options provided by the insurance carrier, how the funds paid into that account are to be invested.  The proceeds from those investments are paid out through the policy's eventual death benefit and also, in the meantime, may be borrowed against and put towards the policy premiums and other ongoing policy expenses.  On the other hand, however, this arrangement is structured so that the assets held in the policy are considered to be those of the insurance carrier and not of the policyholder.  This ensures that the transactions carried on within the VUL benefit from the relatively generous tax advantages afforded life insurance benefits.

## NEW YORK LIFE'S REPRESENTATIONS

Prickett alleges that he initially purchased the VUL policy in May of 2003 in reliance upon certain representations made by New York Life about its oversight of the investments made through the policy.

The specific representations are numerous but, in summary, the complaint alleges that New York Life represented that Prickett's assets would be invested in diversified portfolios of securities, managed by one or more fund managers.  New York Life allegedly represented that, to ensure continued compliance with certain requirements in the Internal Revenue Code, it would monitor the portfolios of the funds it offered for investment to ensure that they remained adequately diversified.

New York Life's offering memorandum and the policy itself also provided that New York Life maintained the "exclusive right" to determine where a policy's assets would be invested and "reserved the right" to change the investments available for investment through VUL policies or to alter the securities held under a VUL policy when investment conditions warranted it.  It laid out a number of specific types of changes that could be made (such as the substitution of one investment for another, or the liquidation of a position) and the reasons for which it would make such a change ("if marketing, tax, or investment conditions so warrant").  It represented that it would notify the policyholder if any of these things occurred.

In reliance on these representations, Prickett alleges, he purchased a VUL policy from New York Life with a face value of $6.4 million.

Prickett also alleges that, once he bought the policy, New York Life exaggerated the value of his investments for more than four years.  Up until the month Madoff's Ponzi scheme was unmasked, New York Life issued periodic account statements that failed to reflect the fact that 22% of his investment with Tremont had actually been funneled into a

Ponzi scheme.  Thus, the amounts disclosed in the account statements were, Prickett

argues, 22% higher than the actual value of Prickett's Tremont investment.

## TREMONT'S REPRESENTATIONS

Of that $6.4 million, Prickett alleges that he directed New York Life to invest $1.1

million in Tremont Opportunity Fund III, more than 22% of which was ultimately lost

when Madoff's Ponzi scheme was unmasked.  As with New York Life, Prickett alleges that

he relied on a number of representations made by the Tremont defendants, and Tremont

Partners in particular, in making this investment decision, but which ultimately proved to

be false.

Tremont Partners represented that the fund had a "general policy" of choosing

managers who employed an opportunistic style or strategy, and provided a number of

examples of what it meant by an "opportunistic strategy."  Suffice it to say that its list of

examples did not include "Ponzi schemes."  Tremont also represented that it employed an

investment strategy that relied on multiple managers to ensure that it maintained a

diversified portfolio, the investments of which provided returns that were not correlated

with one another.  These representations, Prickett alleges, are inconsistent with Tremont's

decision to entrust 22% of the fund's assets to a single individual: Madoff.

Tremont Partners also made numerous representations about the due diligence it

would perform on its managers.  It represented that it would employ its "substantial

experience" to actively monitor the fund's portfolio.  Tremont  claimed that it would

monitor its accounts on a daily basis to review their securities holdings, cash flow, asset mix, and adherence to other guidelines, as well as relying upon secondary sources such as the financial press and a proprietary database of hedge fund manager performance data.

Prickett suggests that if Tremont had actually employed these manager selection and monitoring techniques, it would have detected the many red flags detailed in the complaint, suspected that something was amiss, and avoided financial exposure to Madoff.  But far from avoiding him, the fund actually took on enormous exposure to Madoff, meaning, Prickett argues, that Tremont's representations were false.  Prickett, meanwhile, alleges that he was in no position to conduct his own due diligence because Tremont's involvement with Madoff was kept secret and never disclosed to him.

Tremont did not communicate these representations to Prickett directly.  Rather, Prickett alleges, New York Life relayed them to him pursuant to a participation agreement between Tremont and New York Life.  That participation agreement obligated New York Life to continue promoting Tremont as an investment option except upon six months' notice or under certain other narrow circumstances such as the institution of formal proceedings against Tremont or if New York Life began to attract a significant amount of negative publicity to Tremont.  It provided that New York Life could be paid through amounts withdrawn from the Tremont fund, that New York Life would promote the Tremont fund, and that, in so doing, New York Life would use only Tremont-approved sales literature.  It was pursuant to this arrangement that Prickett came to receive the Tremont promotional materials that contained the misrepresentations about the Tremont

fund described above.  Plaintiff contends that this agreement to promote the Tremont funds constitutes a conspiracy to distribute false information to New York Life policyholders such as Prickett.

## Discussion

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must plead sufficient facts to state a claim for relief that is plausible on its face.  Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In deciding a motion under Rule 12(b)(6), a court must accept as true the facts alleged in the complaint, drawing all reasonable inferences in the plaintiff's favor, and may consider legally required public disclosures as well as documents attached to the complaint, incorporated by reference into the complaint, or known to and relied on by the plaintiff in bringing the suit.  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

Prickett's complaint contains only a single count, negligent misrepresentation, which he brings against Tremont Partners, Tremont Opportunity Fund III, and New York Life. Pricket also seeks to hold New York Life liable for not only its own representations to him but also vicariously liable for the Tremont defendants' representations by way of a theory of civil conspiracy.

Under New York Law, to plead a claim for negligent misrepresentation a plaintiff must allege that the defendant made a false representation that it should have known to be false

and that the plaintiff reasonably relied upon the representation to his detriment.  Liability arises only when the person making the representation held or appeared to hold unique or special expertise, when a special relationship of trust or confidence existed between the parties, and if the speaker was aware of the use to which the information would be put and supplied it for that purpose.  See Kimmell v. Schaefer, 89 N.Y.2d 257, 264, 675 N.E.2d 450, 454 (1996); Eiseman v. State, 70 N.Y.2d 175, 187, 511 N.E.2d 1128 (1987).


## THE TREMONT DEFENDANTS

Tremont Partners and Tremont Opportunity Fund III, which the court will refer to collectively as "Tremont," contend that the complaint alleges no misrepresentations on their part but that, even if it did, there was no "special relationship" between Tremont and Prickett to justify Prickett's reliance on the statements.

Tremont's first contention — that the complaint does not adequately allege that it made any misrepresentations — is based on the notion that a representation can only be a misrepresentation if it is false at the time it is made.  Tremont argues that Prickett's allegations — that Tremont did not perform the due diligence that it represented it would, among others — actually describes, at most, a broken promise.  They contend that a broken promise is not actionable as a negligent misrepresentation and that, in either case, Prickett has not alleged that the representation was false when it was made since they had to do with Tremont's future conduct.

Tremont is correct that New York Law does not permit an action for negligent misrepresentation to recover for a broken promise. See <u>Eternity Global Master Fund Ltd.</u> <u>v. Morgan Guar. Trust Co. of N.Y.</u>, 375 F.3d 168, 187 (2d Cir. 2004). But what Prickett alleges is something more than that. What Prickett has alleged is that Tremont represented that it had a robust, ongoing program of due diligence on the funds it invested in and the funds' managers, that was at the core of Tremont's day-to-day operations. But, Prickett alleges, judging from Tremont's willingness to invest with Madoff and failure to observe numerous red flags, it cannot be that Tremont's due diligence practices were as thorough and sophisticated as Tremont claimed them to be. This is different from alleging, as Tremont would have the court construe it, that Tremont promised that it would, in the future, conduct due diligence on its fund managers but simply failed to do so on certain subsequent occasions. The latter allegation is indeed promissory and disallowed as a basis for a negligent misrepresentation claim under <u>Eternity Global Master Fund</u>. But the former is some combination of a promise and a statement of contemporaneous fact — it is a factual statement that Tremont did actually conduct the described level of due diligence on an ongoing basis and as a product of well-established policy, coupled with an implied promise that it would maintain this level of diligence in the future.

Accordingly, there are two senses in which this statement might have been false. If it is the case that Tremont never had the due diligence practices that it claimed to have, then Tremont's representations were false and actionable when they were made. If, on the other hand, Tremont's due diligence practices simply broke down at some point

subsequent to its making the representations, then the representations may fall into the un-actionable category of "broken promises." While the complaint is not a model of clarity in this regard, its allegations are sufficient to plausibly allege that the former occurred and that, accordingly, Tremont's representations were false when they were made for the purposes of this motion.

But more is required to plead negligent misrepresentation than simply a false statement. As described above, a plaintiff must also allege facts to establish that the defendant owed it a duty to provide accurate information. In this regard, there can be no dispute that Prickett has alleged that Tremont held itself out as possessing a special expertise in the selection and monitoring of funds and that Tremont made the representations it did for the purpose of providing Prickett with information to be used in selecting the funds in which he would invest. What is in dispute, however, is whether the requisite sort of "special relationship" existed between Prickett and Tremont, or if New York Life's role as intermediary bars such a conclusion.

To judge by the allegations in the complaint, it is clear that there was no privity or fiduciary relationship between Prickett and Tremont. It is undisputed that it was New York Life that was a limited partner in Tremont Opportunity Fund III, not Prickett, and there is no other basis alleged for a fiduciary relationship or privity between them.

But the standard for a "special relationship" under New York law does more than ask whether the parties were in a fiduciary or privity relationship. It is considerably more flexible. Even in the absence of privity, a special relationship can be found when 1) the

maker of the statement knew that it would be used for a particular purpose, 2) the party who relied upon the statement was known to the statement's maker and relied upon it in furtherance of that purpose, and 3) that the maker of the statement engaged in some conduct indicating a connection to the relying party and evincing its understanding of that reliance.  Terra Sec. Asa Konkursbo v. Citigroup, Inc., 740 F. Supp. 2d 441, 456 (S.D.N.Y. 2010) aff'd, 450 F. App'x 32 (2d Cir. 2011) (citing Credit Alliance Corp. v. Arthur Andersen & Co., 483 N.E.2d 110, 118 (1985)).  Under the second element, it is necessary that the maker of the statement know "the identity of the specific nonprivy party who would be relying."  Sykes v. RFD Third Ave. 1 Associates, LLC, 15 N.Y.3d 370, 374 (2010).

It is this requirement that dooms Prickett's claim against the Tremont defendants. Tremont's representations were prepared for and disseminated to New York Life's VUL policyholders as a group.  There is no allegation that they were prepared with the knowledge that Prickett specifically would receive and rely upon them.  Indeed, there is no allegation in the complaint that Tremont had ever heard Prickett's name before this lawsuit was filed.  Therefore, to allow this action against Tremont would frustrate New York Law's efforts to prevent "liability in an indeterminate amount for an indeterminate time to an indeterminate class."  Ultramares Corp. v. Touche, 255 N.Y. 170, 179 (1931).

Accordingly, Prickett's claim against the Tremont defendants is dismissed.

NEW YORK LIFE

Prickett's allegations against New York Life need not detain the court long.  Most do not allege so much as a misrepresentation, let alone actionable misrepresentations under New York Law.

New York Life allegedly made certain representations that it would monitor the level of diversification in the underlying funds, but there is no credible allegation that the New York Life's representations relating to diversification were false.  The offering materials quoted by Prickett in his complaint make clear that the diversification requirements referred to are requirements imposed by the tax code that no more than 55% of the assets in a VUL account be held in a single investment.  But the complaint alleges only that 22% of Prickett's assets in the Tremont fund were invested with Madoff, and makes no other allegations about the diversification of the funds offered through New York Life.

New York Life made representations that it reserved the right to make certain changes to Prickett's investments.  Prickett's complaint attempts to transform these reservations into a representation by New York Life that it would actively manage the accounts on its policyholders' behalf.  But New York Life's actual statements do not remotely support this interpretation.  New York Life actual statements were to the effect that it reserved the right to make certain changes if conditions warranted, not that it would ever be under any obligation to do so.  Similarly, Prickett alleges that New York Life did not notify him of the "changes" in his policy caused by Madoff's fraud.  But any careful reading of the policy

documents — or even just the passages quoted in the complaint — makes clear that this is not the sort of "change" New York Life represented it would give notice of.

New York Life also represented to Prickett that the funds would be invested in a managed portfolio.  But nowhere does Prickett allege anything to support the conclusion that Tremont itself did not invest his funds in a portfolio of some kind or that the Tremont fund was not managed.  After all, only 22% of the assets invested with the Tremont fund were "invested" with Madoff.

Finally, Prickett alleges that New York Life systematically misrepresented the value of the assets in his account by failing to alert him to the fact that the assets invested with Madoff were, in fact, worthless.  But this allegation is insufficient because there is no plausible allegation that New York Life should have known that the amounts it reported were incorrect.

Because Prickett has not alleged any misrepresentations made by New York Life that New York Life should have known were false, Prickett's negligent misrepresentation claim against New York Life is also dismissed.  And because the negligent misrepresentation claim against Tremont is dismissed, Prickett's related vicarious liability claim against New York Life for its "conspiracy" with Tremont is also dismissed.  To the extent that Prickett claims that New York Life is liable directly for Tremont's misrepresentations — perhaps because it relayed the offering materials — it is sufficient to remark that Prickett has made no allegations to show why New York Life should have known these representations to be false.

## Conclusion

Defendants' motion is granted and the complaint is dismissed.

This opinion resolves the motions listed as document numbers 831 and 834 in case number 08 Civ. 11117, number 217 in case number 09 Civ. 557, and numbers 59 and 61 in number 09 Civ. 3137.


So ordered.

Dated:    New York, New York
          August 23, 2013

Thomas P. Griesa
United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/23/13

-13-