UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | MDL Docket No: 09-md-02052 (TPG)<br>Master Docket No: 08 Civ. 11117 (TPG) |
|---|---|
| This Document Relates to:<br>All Actions: 08 Civ. 11117 (TPG)<br>09-md-02052 (TPG) | |

**HAINES' REPLY TO PROPONENTS'
OPPOSITION TO SUR-REPLY DECLARATION**

Madelyn Haines and Paul Zamrowski (collectively "Haines") respectfully file this reply addressing *Tremont's Opposition To Haines' Motion To File A Sur-Reply Declaration On Remand From The Second Circuit* (District Dkt.#910) ("Proponents' Opposition").

**ARGUMENT**

*First*, Proponents' Opposition persists in mischaracterizing the relationship between the Investor and Trustee Settlements, the "Trustee Settlement" was not just "a different settlement" (Proponents' Opposition at 1) but rather it was the consideration for the Investor Settlement's release of the Tremont Funds' derivative claims.  As Tremont informed the Second Circuit in its appellate brief:  "As consideration for [the Investor Settlement's derivative] release, the Settling Defendants agreed to… negotiate a settlement (the 'Trustee Settlement') with the trustee of the BLMIS estate (the 'Trustee')..."  (Pages attached hereto, see also, Tremont's Brief attached as Exhibit OO to *Declaration of Vincent T. Gresham in Support of Haines' Opposition to Tremont's Memorandum of Law on Remand From The Second Circuit* at page D-617-618¶f (District Dkt.#896-4)).

*Second*, Proponents' Opposition does not dispute that their Reply included an argument that was based on a *false* statement relating to the evidence the Second Circuit had to support its

1

ruling. (Proponents' Reply at fn.3 (District Dkt.#900)).  Instead, Proponents now contend that their original reply argument is irrelevant and thus any correction of the false statements used in making such argument is similarly irrelevant.  (Proponents' Opposition).  Therefore, they urge this Court to turn a blind eye towards their latest misrepresentation of fact rather than admit evidence demonstrating its falsity.

The sur-reply declaration should be admitted because Proponents asserted a new (false) fact in their reply argument that attempted to undermine the explicit rulings made by the Second Circuit in remanding to this Court. (Proponents' Reply at fn.3).  The explicit rulings of the Second Circuit made when remanding this case are undoubtedly material to the questions it has asked this Court to answer.  If the Second Circuit did not believe it's ruling to be relevant, then the Second Circuit would not have taken the time to review the evidence presented to it and make their ruling.  Even if this Court were to agree with Proponents' newfound claim that their Reply argument is irrelevant, the fact that Proponents would make a false statement of fact to support their argument is clearly relevant.  Instead of evidence, Proponents' memoranda and proposed stipulation are based on nothing more than their unsupported statements as to their own "intent."  That Proponents continue to make false statements of fact to this Court is certainly relevant to this Court's decision whether to believe their unsupported statements of "intent" in their stipulation.

*Third*, Proponents misconstrue the justification for a sur-reply by inventing the requirement that the sur-reply must answer the question before this Court.  (Proponents' Opposition).  The proper function of a sur-reply is to address a new argument or assertion of new fact made in a reply memorandum such as Proponents did here. *Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Am. Boat Co., LLC*, 11 CIV. 6804 PAE, 2012 WL 32352 (S.D.N.Y. Jan. 6,

2012) ("[C]ourts have broad discretion to consider arguments in a sur-reply… particularly so when new arguments are put forth in a reply brief.") (citations and internal quotations omitted); Cf., *Mohsen v. Morgan Stanley & Co. Inc.*, 11 CIV. 6751 PGG, 2013 WL 5312525 (S.D.N.Y. Sept. 23, 2013) (Denying leave for sur-reply where "Defendant asserts no new facts, raises no new legal arguments, and properly cites new cases only in response to Plaintiff's arguments.").

The proposed sur-reply declaration properly addresses Proponents' misstatement of fact that was made for the first time in Proponents' Reply.  Thus, Haines' motion is properly based on exactly what a sur-reply is meant to address (i.e., a new assertion made for the first time in a reply argument), and should be granted.

## CONCLUSION

The proposed sur-reply declaration provides proof that a fact in Proponents' reply memorandum was false.  For the above stated reasons, Proponents' opposition fails to state a valid reason why this Court should turn a blind eye to the falsity of Proponents' statement by refusing to admit documentary evidence refuting it.  The sur-reply procedure is the proper procedure to correct Proponents' misstatement of fact and Haines' motion to allow for the sur-reply declaration should be granted.

Dated:  December 10, 2013.

                LAW OFFICE OF VINCENT T. GRESHAM

                By:  /s/ Vincent T. Gresham
                Vincent T. Gresham
                2870 Peachtree Road, #204
                Atlanta, Georgia 30305
                Tel:  (404) 281-2762
                gresham05@comcast.net
                *Counsel for Madelyn Haines and Paul Zamrowski*

# ATTACHED PAGES FROM TREMONT'S APPELLATE BRIEF FILED WITH SECOND CIRCUIT

(Entire brief attached as Exhibit OO to *Declaration of Vincent T. Gresham in Support of Haines' Opposition to Tremont's Memorandum of Law on Remand From The Second Circuit* at page D-617-618¶f (District Dkt.#896-4))

in any other forum by "all Persons other than the Settling Defendants who were holders of limited partnership interests in or shares of the Rye Funds . . . or the Tremont Funds as of December 11, 2008, and who sustained net losses thereby." (SA-475-76 §§ 1.47 1.53.)  In exchange for that release, the Settling Defendants agreed to pay into a "Gross Settlement Fund" the following consideration:

a. $100 million (the "Initial Settlement Amount") (SA-470 § 1.22; SA-482 § 2.1);

b. 50% of the net recovery, if any, obtained by the Settling Defendants in a $100 million insurance coverage lawsuit against their carriers (the "Fidelity Bond Recovery") (SA-468-69 § 1.16; SA-484 § 2.6);

c. an assignment of the Funds' claims, if any, against the Funds' auditors and administrators to lead plaintiffs, with any recovery to be deposited into the Gross Settlement Fund (the "Assigned Claims") (SA-488 § 2.17); and

d. 100% of the assets remaining in Tremont upon conclusion of all Madoff-related litigation against it (the "Remaining Tremont Funds") (SA-476 § 1.51; SA-484 § 2.8).

The Settlement Agreement also releases all derivative claims that were or could have been asserted in the Consolidated Actions or in any other forum as of the settlement date on behalf of any Settling Fund arising out of or relating to the Funds' investments with Madoff.  (SA-475 § 1.47; SA-493-94 § 4.1)  As consideration for that release, the Settling Defendants agreed to the following:

e. Tremont's release and waiver of millions of dollars of contractual indemnification claims against the Funds (including for management fees and litigation costs) (SA-494 § 4.2);

13

D-617

f. Tremont's commitment to negotiate a settlement (the "Trustee Settlement") with the trustee of the BLMIS estate (the "Trustee") pursuant to which: (i) the Trustee would allow approximately $2 billion of customer claims that four of the Rye Funds have against the BLMIS estate (the "Allowed Claims"), and (ii) amounts paid to the Rye Funds (other than Insurance Portfolio LDC)[5] by the BLMIS estate in satisfaction of the Allowed Claims would be transferred to a "Fund Distribution Account" for the benefit of all Fund investors other than the Settling Defendants – regardless of whether those investors opted out of the Settlement class (SA-480 § 1.61; SA-490-91 § 2.21); and

g. No Settling Defendant will have any right to distributions from the Fund Distribution Account or the "Net Settlement Fund" (the Gross Settlement Fund net of lead plaintiffs' attorneys' fees and expenses) (SA-501, § 5.6).

The Notice approved by the District Court accurately explained these provisions, stating that the amounts referenced in items b through d were "expected" to augment the $100 million Initial Settlement Amount, while cautioning there can be no assurance additional amounts will be obtained for distribution. (SA-1551.) Moreover, in estimating the percentage of total losses to be recovered by the Settlement Class, the Notice "*assume[d] that no additional monies will be added* to the Gross Settlement Fund from the Remaining Tremont Funds, the Assigned Claims, or the Fidelity Bond Recovery." (SA-1552 (emphasis added).) With that caveat, the Notice stated class members would receive

---

[5] Because Rye Select Broad Market Insurance Portfolio LDC ("Insurance Portfolio LDC") is in court-supervised liquidation (SA-1117-18 § 1.29), any Allowed Claim proceeds received by that Fund will be distributed by its liquidators.

14