UNITED STATES U.S. DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | Master File No. 08 Civ. 11117 (TPG) |
| SPECTRUM SELECT, L.P.,<br><br>Plaintiff,<br><br>-against-<br><br>TREMONT GROUP HOLDINGS, INC., ET AL.,<br><br>Defendants. | No. 12-cv-09057 (TPG) |
| ANIKSTEIN, ET AL.,<br><br>Plaintiff,<br><br>-against-<br><br>TREMONT GROUP HOLDINGS, INC., ET AL.,<br><br>Defendants. | No.: 12-cv-09058 (TPG) |
| MICHAEL BECKER, ET AL.,<br><br>Plaintiffs,<br><br>-against-<br><br>TREMONT GROUP HOLDINGS, INC., ET AL.,<br><br>Defendants. | No.: 12-cv-09060 (TPG) |

A/75927061.4

| | |
|---|---|
| BILGORE, ET AL. | |
| Plaintiff, | |
| -against- | No.: 12-cv-09061 (TPG) |
| TREMONT GROUP HOLDINGS, INC., ET AL., | |
| Defendants. | |
| KARASEL II, L.P., | |
| Plaintiff, | |
| -against- | No. 12-cv-09062 (TPG) |
| TREMONT GROUP HOLDINGS, INC., ET AL., | |
| Defendants. | |
| SPECTRUM SELECT II, L.P., ET AL. | |
| Plaintiffs, | |
| -against- | No. 12-cv-09063 (TPG) |
| TREMONT GROUP HOLDINGS, INC., ET AL., | |
| Defendants. | |

A/75927061.4

COCCHI, ET AL. ,

Plaintiff,

-against-

TREMONT GROUP HOLDINGS, INC., ET AL.,

Defendants.

No. 12-cv-09064 (TPG)

ECF Case

Electronically Filed

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MASSMUTUAL'S MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT

BINGHAM MCCUTCHEN LLP
399 Park Avenue
New York, NY 10022
Tel.: (212) 705-7000
Fax: (212) 752-5378
*Attorneys for Defendants*
*Massachusetts Mutual Life Insurance Company*
*and MassMutual Holding LLC*

A/75927061.4

-i-

# TABLE OF CONTENTS

**Page(s)**

ARGUMENT ................................................................................................................... 1

      A.    For Control Person Liability, "Control" Requires Actual Control Over the
          Primary Violator and the Transaction at Issue ........................................................ 2

      B.    Plaintiffs Fail to Allege Facts that Support MassMutual's "Actual
          Control." ........................................................................................................... 5

      C.    Plaintiffs Fail to Plead "Culpable Participation" at All, Much Less With
          Particularity ........................................................................................................... 8

CONCLUSION ............................................................................................................. 10

-i-

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agile Safety Variable Fund, L.P. v. Tremont Grp. Holdings, Inc.*,
   No. 10-CV-2904 (Colo. Dist. Ct., Boulder Cty. June 8, 2012) ..............................................2

*American Protein Corp. v. AB Volvo*,
   844 F.2d 56 (2d Cir. 1988).....................................................................................................4, 6

*Anwar v. Fairfield Greenwich Ltd.*,
   728 F. Supp. 2d 372 (S.D.N.Y. 2010).......................................................................................5, 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................................6, 7

*Askenazy v. Tremont Grp. Holdings, Inc.*,
   Civ. A. No. 2010-04801-BLS2, 2012 WL 440675
   (Mass. Super. Ct. Jan. 26, 2012) ...........................................................................................1

*Askenazy v. Tremont Grp. Holdings, Inc.*,
   Civ. A. No. 2010-4801-BLS2 (Mass. Super. Ct. Feb. 6, 2014)....................................... *passim*

*ATSI Comm. Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d. Cir. 2007).....................................................................................................2

*Burks v. Lasker*,
   441 U.S. 471 (1979)..................................................................................................................3

*Cohen v. Stevanovich*,
   722 F. Supp. 2d 416 (S.D.N.Y. 2010).......................................................................................5

*Ellison v. Am. Image Motor Co.*,
   36 F. Supp. 2d 628 (S.D.N.Y. 1999).........................................................................................1

*Floyd v. Liechtung*,
   No. 10 Civ. 4254, 2013 WL 1195114 (S.D.N.Y. Mar. 25, 2013) ............................................5

*H & H Acquisition Corp. v. Fin. Intranet Holdings*,
   669 F. Supp. 2d 351 (S.D.N.Y. 2009).......................................................................................5

*In re Alstom SA Sec. Litig.*,
   406 F. Supp. 2d. 433 (S.D.N.Y. 2005).......................................................................................2

*In re Alstom SA Sec. Litig.*,
   454 F. Supp. 2d 187 (S.D.N.Y. 2006).......................................................................................5, 8

A/75927061.4

# TABLE OF AUTHORITIES
(continued)

**Page**

*In re MBIA, Inc., Secs. Litig.,*
700 F. Supp. 2d 566 (S.D.N.Y. 2010)..................................................................8

*In re MF Global Holdings Ltd. Sec. Litig.,*
--- F.Supp.2d ----, No. 11 Civ. 7866(VM), 2013 WL 5996426
(S.D.N.Y. Nov. 12, 2013)....................................................................................4

*In re Paramalat Secs. Litig.,*
594 F. Supp. 2d 444 (S.D.N.Y. 2009)................................................................4

*In re Refco, Inc. Secs. Litig.,*
503 F. Supp. 2d 611 (S.D.N.Y. 2007)................................................................5

*Kalin v. Xanboo, Inc.,*
526 F. Supp. 2d 392 (S.D.N.Y. 2007)................................................................9

*McIntire v. China MediaExpress Holdings, Inc.,*
927 F. Supp. 2d 105 (S.D.N.Y. 2013)................................................................5

*Meridian Horizon Fund, L.P. v. Tremont Grp. Holdings, Inc.,*
No. 09 Civ. 3708, 2012 WL 6168151 (S.D.N.Y. Dec. 11, 2012)......................1

*Murray v. Miner,*
74 F.3d 402 (2d Cir. 1996).................................................................................4

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs. LLC,*
592 F. Supp. 2d 608 (S.D.N.Y. 2009).............................................................5, 8

*S. Cherry St., LLC v. Hennessee Grp. LLC,*
573 F.3d 98 (2d Cir. 2009).................................................................................9

*Suez Equity Inv., LP v. Toronto-Dominion Bank*
250 F.3d 87 (2d Cir. 2001).................................................................................4

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
551 U.S. 308 (2007)...........................................................................................9

*In re Tremont Secs. Law, State Law and Ins. Litig. (Elendow Fund, LLC v. Rye
Select Broad Market XL Fund),*
No. 08-cv-11117 (TPG), 2013 WL 5179064 (S.D.N.Y. Sept. 16, 2013)......1, 2

*In re WorldCom, Inc. Sec. Litig.,*
02 Civ. 3288(DLC), 2004 WL 1097786 (S.D.N.Y. May 18, 2004)...................1

*United States v. Bestfoods,*
524 U.S. 51 (1998).....................................................................................2, 3, 4, 6

-ii-

# TABLE OF AUTHORITIES
### (continued)

**Page**

**Statutes**

Securities Exchange Act of 1934 § 20(a), 15 U.S.C. § 78t(a) ................................................. *passim*

Comprehensive Environmental Response, Compensation, and Liability Act .............................2, 3

Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4(b)(2) ..............................9, 10

A/75927061.4

## ARGUMENT[1]

Plaintiffs admit that to state a claim for control person liability against MassMutual, they are required to "plead more than the bare fact of corporate ownership." Plaintiffs' Opposition ("Opp.") at 8 (citing *Emps. Ret. Sys. of V.I. v. JP Morgan Chase Co.*, 804 F. Supp. 2d 141, 157 (S.D.N.Y. 2011) ("Allegations that an entity was the parent corporation of a primary violator, standing alone, do not make out a claim of control.")). Plaintiffs then, remarkably, argue precisely the contrary—that ownership alone is sufficient to establish control person liability: "the plain inference of control [by MassMutual] arises from all the facts surrounding their ownership of Tremont" and "the *potential* to exercise such ownership rights . . ., even if perfectly 'lawful' or 'ordinary,' can indeed establish control." Opp. at 6, 8 (emphasis in original).

Under Plaintiffs' approach, it is hard to imagine any situation in which a corporate owner would not "control" a subsidiary or in which a plaintiff could not allege control person liability against an upstream owner. This is not the law. Allegations of corporate ownership—and the potential to control that ownership affords, which is all Plaintiffs have alleged—do not state a claim for control person liability. *See In re WorldCom, Inc. Sec. Litig.*, 02 Civ. 3288(DLC), 2004 WL 1097786, at *3 (S.D.N.Y. May 18, 2004) (parent/subsidiary relationship insufficient to support a control person claim); *Ellison v. Am. Image Motor Co.*, 36 F. Supp. 2d 628, 642 (S.D.N.Y. 1999) (dismissing Section 20 claim where plaintiff's only allegations of control were "the naked assertion that [defendants] were 'officers' of the [controlled entity]" and where complaint was "devoid of any allegation as to how these [defendants] 'controlled' these companies").[2] For control person liability, Plaintiffs must plead a primary violation, control of

---

[1] Capitalized terms used herein have the same meaning as in MassMutual's Memorandum of Law in Support of its Motion to Dismiss ("Opening Brief").

[2] *See also In re Tremont Secs. Law, State Law and Ins. Litig. (Elendow Fund, LLC v. Rye Select Broad Market XL Fund)*, No. 08-cv-11117 (TPG), 2013 WL 5179064, at *7 (S.D.N.Y. Sept. 16, 2013) (dismissing Section 20(a) claims); *Meridian Horizon Fund, L.P. v. Tremont Grp. Holdings, Inc.*, No. 09 Civ. 3708, 2012 WL 6168151, at *2 (S.D.N.Y. Dec. 11, 2012) (same); *Askenazy v. Tremont Grp. Holdings, Inc.*, Civ. A. No. 2010-04801-BLS2, 2012 WL 440675, at **15-17 (Mass. Super. Ct. Jan. 26, 2012) (dismissing control person claims against MassMutual brought under Massachusetts, Colorado, Connecticut, New Mexico, Virginia and Illinois state

the primary violator by MassMutual—specifically, actual "control" over the transaction in question—and MassMutual's culpable participation in the primary violation.[3] *ATSI Comm. Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d. Cir. 2007).

A.      **For Control Person Liability, "Control" Requires Actual Control Over the Primary Violator and the Transaction at Issue.**

Plaintiffs argue that for "actual control," they need only plead an *ability* to control the transaction in question: ownership.   Opp. at pp. 7-10.   To the contrary, as discussed in MassMutual's Opening Brief at 8-13, Plaintiffs must allege non-conclusory facts supporting a reasonable inference that MassMutual had both "actual control over the primary violator" and "actual control over the *transaction* in question." *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d. 433, 486-87 (S.D.N.Y. 2005) (quoting *In re Global Crossing, Ltd. Sec. Litig.*, No. 02. Civ. 910, 2005 WL 1875445, at *3 (S.D.N.Y. Aug. 5, 2005)) (emphasis in original).

Plaintiffs attempt to distinguish United States Supreme Court precedent, *United States v. Bestfoods*, 524 U.S. 51 (1998).   In *Bestfoods*, the Supreme Court held that the federal statute, CERCLA (Comprehensive Environmental Response, Compensation, and Liability Act), does not preempt established corporate law principles governing parent-subsidiary liability.   *See id.*

---

laws); Ruling and Order, *Agile Safety Variable Fund, L.P. v. Tremont Grp. Holdings, Inc.*, Case No. 10-CV-2904 at **7-8 (Colo. Dist. Ct., Boulder Cty. June 8, 2012) (dismissing control person claims against MassMutual brought under Colorado state law, § 11-51-604(5), C.R.S).

[3] Plaintiffs incorrectly state that MassMutual "do[es] not contest the primary-violation element on these motions." Opp. at 6.   This is not true.   MassMutual refers to and relies on the arguments made by the Tremont Defendants in their Opening Brief regarding the lack of a primary violation and that Plaintiffs' claims are time barred. *See* MassMutual's Opening Brief at 7, n.6.   MassMutual did not separately brief Plaintiffs' failure to state claim for a primary violation because Plaintiffs cannot state any such claim against MassMutual—Plaintiffs had no dealings with MassMutual.   In any event, it is well established that the failure to state a primary violation is fatal to any control person claim. *See, e.g., ATSI Comm. Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d. Cir. 2007) ("[Plaintiff] fails to allege any primary violation; thus, it cannot establish control person liability."); *In re Tremont Secs. Law, State Law and Ins. Litig. (Elendow Fund, LLC v. Rye Select Broad Market XL Fund)*, No. 08-cv-11117 (TPG), 2013 WL 5179064, at *7 (S.D.N.Y. Sept. 16, 2013) ("Because the complaint does not allege a primary violation of the Exchange Act, count II of the complaint, for control-person liability under § 20(a) [against MassMutual and OAC] is also dismissed.").

A/75927061.4

at 61-63.  Plaintiffs argue that *Bestfoods* is inapposite because it does not address Section 20(a) liability.  Opp. at 7.  To the contrary, *Bestfoods* is directly applicable because, like Section 20(a), CERCLA contains broad statutory language that could be interpreted to make a parent company liable for the acts of a subsidiary simply due to ownership.  *See Bestfoods*, 524 U.S. at 60 & n.8 (noting the then-circuit split on how to interpret "control" provisions of CERCLA).

In *Bestfoods*, the Supreme Court refused to construe CERCLA that in any way rejects (1) the "bedrock principle" that "the exercise of the 'control' which stock ownership gives to the stockholders ... will not create liability beyond the assets of the subsidiary" or (2) "the equally fundamental principle of corporate law, applicable to the parent-subsidiary relationship ..., that the corporate veil may be pierced ... when, *inter alia*, the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud . . . ."  *Id.* at 61-63.  The Supreme Court held that a federal statute does not, without "speak[ing] directly to the question addressed by the common law," abrogate fundamental principles of common law.  *Id.* at 63 (quoting *United States v. Texas*, 507 U.S. 529, 534 (1993)).  As the Court explained, "[n]othing in [the statutory text] purports to rewrite this well-settled rule" that "a parent corporation ... is not liable for the acts of its subsidiaries" and, "against this venerable common-law backdrop, the congressional silence is audible."  *Id.* at 61, 62-63.  "CERCLA is thus like many another congressional enactment in giving no indication that 'the entire corpus of state corporation law is to be replaced simply because a plaintiff's cause of action is based on a federal statute.'"  *Id.* at 63 (quoting *Burks v. Lasker*, 441 U.S. 471, 478 (1979)).

The Supreme Court's analysis governs the interpretation of the "control" provisions of Section 20(a) when applied in the parent-subsidiary context.[4]  *See id.* at 61-63; *see also Burks v.*

---

[4] Section 20(a), 15 U.S.C. § 78t,  provides:
> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable ..., unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

-3-

*Lasker*, 441 U.S. 471, 478 (1979) ("In short, in this field congressional legislation is generally enacted against the background of existing state law; Congress has never indicated that the entire corpus of state corporation law is to be replaced simply because a plaintiff's cause of action is based upon a federal statute."). Like in *Bestfoods*, nothing in Section 20(a) purports to overwrite "bedrock principles" of corporate law, that "a corporate entity is liable for the acts of a separate, related entity only under extraordinary circumstances . . . ." *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996).[5] In other words, to establish Section 20(a) control person liability against a parent company, plaintiffs must allege something more than "ability to control"—*i.e.*, ownership or the exercise of incidents of ownership.

At a minimum, this means that Plaintiffs must allege facts that support MassMutual's actual control over the primary violator and "actual control over the *transaction* in question"—a standard consistent with the well-established requirements in this Circuit.[6] *See, e.g., In re MF Global Holdings Ltd. Sec. Litig.*, --- F.Supp.2d ----, No. 11 Civ. 7866(VM), 2013 WL 5996426, at *20 (S.D.N.Y. Nov. 12, 2013) ("Moreover, a Section 20(a) defendant "must not only have actual control over the primary violator, but have 'actual control over the transaction in

---

[5] Plaintiffs also ask the Court to disregard MassMutual's citation to *American Protein Corp. v. AB Volvo*, 844 F.2d 56, 57 (2d Cir. 1988)—a contract law case—which holds that "it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." *See* Opp. at 7-8. The Supreme Court quoted this very holding in *Bestfoods* as an example of a fundamental principle of corporate law that the federal statute did not preempt. *See* 524 U.S. at 69.

[6] Plaintiffs cite *In re Paramalat Secs. Litig.*, 594 F. Supp. 2d 444, 456 (S.D.N.Y. 2009) in their Opposition. In that case, the court in dicta questions whether the statute requires "actual control" of the transaction, but did not decide the issue because the defendant was alleged to have actually participated in the transaction at issue.

Plaintiffs are correct that the Second Circuit in *Suez Equity Inv., LP v. Toronto-Dominion Bank* held that plaintiffs adequately plead control person liability against a Bank where one of its officers was the alleged primary violator. 250 F.3d 87, 101 (2d Cir. 2001). However, *Suez Equity* follows the prevailing rule that control person liability requires the allegation that the control person actually controlled the transaction at issue. There, plaintiffs specifically alleged that the primary violator acted for the controlling person in committing the primary violation. *Id.* at 93 ("DeRoziere allegedly acted for the Bank in the sale.").

A/75927061.4

question.'"); *Floyd v. Liechtung*, No. 10 Civ. 4254, 2013 WL 1195114, at \*6 (S.D.N.Y. Mar. 25, 2013) (same); *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 122 (S.D.N.Y. 2013) (same); *Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 435 (S.D.N.Y. 2010) (same); *H & H Acquisition Corp. v. Fin. Intranet Holdings*, 669 F. Supp. 2d 351, 361 (S.D.N.Y. 2009) (same); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs. LLC*, 592 F. Supp. 2d 608, 637 n. 204 (S.D.N.Y. 2009) (same); *In re Alstom SA Sec. Litig.*, 454 F. Supp. 2d 187, 209 (S.D.N.Y. 2006) (same); *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 413 (S.D.N.Y. 2010) ("Plaintiffs must plead that the Section 20 Defendants had actual control over the primary violator and transaction at issue"); *In re Refco, Inc. Secs. Litig.*, 503 F. Supp. 2d 611, 663 (S.D.N.Y. 2007) ("Put another way, a claim under § 20(a) requires that the defendant have 'actual control over the transaction in question.'").

**B.      Plaintiffs Fail to Allege Facts that Support MassMutual's "Actual Control."**

Plaintiffs fail to allege that MassMutual participated in Tremont's day-to-day operations or, directly or indirectly, involved itself in or controlled TPI's management of the Funds or Plaintiffs' investments—or any facts that would support a reasonable inference that MassMutual had actual control over the primary violator and the transaction in question.  As explained in MassMutual's Opening Brief, nearly all of Plaintiffs' allegations concerning MassMutual derive from its status as corporate owner, and the lawful exercise of ownership rights and incidents. *See* Opening Brief at 10-12.  Plaintiffs' failure is not the result of lack of access to discovery. Before filing their consolidated amended complaint, Plaintiffs had access to Tremont's production of millions of pages of documents (produced in the *Cocchi* action, No. 12-cv-09064 (TPG), before removal).  And, before filing their opposition, Plaintiffs' counsel conducted sixteen (16) depositions of Tremont or its employees in another matter proceeding in Massachusetts, *Askenazy v. Tremont Grp. Holdings, Inc.* (*see* Plaintiffs' Opposition to the Tremont Defendants' Motion to Dismiss at 4).

A/75927061.4

In their Opposition, Plaintiffs focus on John Murphy, who served as chairman, CEO and president of OAC, the parent company of Tremont Group Holdings, Inc.; was a director of Tremont Group Holdings, Inc.; and also held the title of Executive Vice President at MassMutual.  *See* Opp. at 10-12 and Compl. at ¶158.  The fact that a director of a parent company serves as a director of a subsidiary does not expose the parent company for liability for the subsidiary's acts.  *See Bestfoods*, 524 U.S. at 69; *American Protein Corp.*, 844 F.2d at 57.

The sum total of Plaintiffs' allegations regarding Murphy are that he conducted the performance evaluation of Tremont's CEO and on three occasions was included in Tremont's hiring and termination processes; reviewed Tremont's budget and participated in high-level strategic decisions about Tremont; received materials with Tremont's due diligence procedures (Compl. at ¶184) (though Plaintiffs do not explain with regard to what entities or what funds those procedures applied); and knew that Madoff was one of Tremont's investment managers (*id.* at ¶¶175, 177, 183).

These allegations do not support any inference that MassMutual actually controlled TPI, the Rye Funds or the Plaintiffs' investments.[7]  Rather, they are consistent with ownership of a subsidiary and the exercise of incidents of that ownership.

Earlier this month, in a case pending in Massachusetts brought by the same plaintiffs' counsel as here, a Massachusetts court rejected Plaintiffs' counsel's argument that these very allegations were sufficient to state a claim for control person liability under the Blue Sky Laws of Massachusetts, Colorado and Connecticut.  *See* Memorandum and Order on Plaintiffs' Motion for Leave to File their Third Amended Complaint and Add Party Defendants in *Askenazy v. Tremont Grp. Holdings, Inc.,* Civ. A. No. 2010-4801-BLS2 (Mass. Super. Ct. Feb. 6, 2014) ("Order") (attached as Exhibit A).  Relying on documents produced by Tremont in

---

[7] Plaintiffs claim that they are entitled to an inference of control because "[i]t is highly unlikely that Tremont personnel viewed the pronouncements of their bosses' boss as mere advice."  Opp. at 11.  Leaving to one side that Plaintiffs allege no facts about these "pronouncements," this allegation is pure speculation and the Court should not credit it.  *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A/75927061.4

*Cocchi* (part of this consolidated action), Plaintiffs' counsel moved for leave to file an amended complaint reinstating dismissed claims against MassMutual.   (In 2012, the court previously granted MassMutual's motion to dismiss all claims against it. *See Askenazy*, 2012 WL 440675 at *18.)

After reviewing the proposed complaint and produced documents filed with the motion, the court denied the motion "in full."   The court ruled "that the material on which Plaintiffs seek to rely does not alter the 2012 decision [dismissing all claims against MassMutual], because it does not provide additional and specific probative, material facts to the analysis."   Order at 2. "The specific allegations are that John V. Murphy, executive vice president of MassMutual, was recognized as 'the boss' of Tremont Group's CEO, and that other CEO's 'reported to Murphy' [and that] Murphy was involved with performance evaluations, weighed in on hiring and severance, and 'monitored the expansion of . . . . business and sales efforts.'"   *Id.* at 3.   The court held that "these allegations amount to nothing more than the (undisputed) fact that the holding company 'held' Tremont, and the life insurance company was the parent (or grandparent)."   *Id.*   There, as here, "Plaintiffs have offered no cogent argument as to why a parent corporation should not be interested in strategic options for its subsidiary, or why a parent thereafter should [ ] be liable for the acts of subsidiaries alleged to constitute securities violations."   *Id.* at 4.   The court concluded "to allow these allegedly new claims . . . would be futile." *Id.*

The *Askenazy* court also rejected Plaintiffs' counsel's argument—also made here—that because Madoff constituted a great majority of Tremont's revenue it was "implausible that MassMutual . . . could have been unaware of or not responsible for the true character of Tremont's Madoff operation." *Id.* at 5.   "[T]his blatantly thin speculation is insufficient.   There is no basis in these allegations reasonably to infer that, because Madoff was making money for Tremont, [MassMutual] made controlling decisions to violate securities laws." *Id.*

While a court is required to draw inferences in Plaintiffs' favor, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft*, 556 U.S. at 679.

A/75927061.4

Accordingly, this court should dismiss the control person claim against MassMutual for failure to plead "actual control."[8]

### C.   Plaintiffs Fail to Plead "Culpable Participation" at All, Much Less With Particularity.

As Plaintiffs acknowledge, "this Court previously has concluded that culpable participation must be pled . . . and is subject to the particularity requirement." Opp. at 13 (citation omitted). *See also Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 425 (S.D.N.Y. 2010) ("[T]he question of whether a plaintiff must plead culpable participation to state a § 20(a) claim has, in this Court's view, largely been settled by the Second Circuit in numerous decisions . . . . Hence, in order to plead control, a plaintiff must plead that the defendant had actual control over the primary violator and transaction at issue."); *In re MBIA, Inc., Secs. Litig.*, 700 F. Supp. 2d 566, 598 (S.D.N.Y. 2010) ("[T]he Court declines to depart from its earlier ruling in *Lapin* and continues to find that 'culpable participation' is a pleading requirement to state a § 20(a) claim in the Second Circuit, . . . and that such participation must be plead with particularity.") (citing *Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221,

---

[8] The handful of cases Plaintiffs cite that purportedly support their position that they have adequately plead actual control are inapposite, or do not actually stand for the propositions suggested by Plaintiffs. In *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*, the court did not, as suggested by Plaintiffs, hold that the indirect corporate parent had "actual control" over the subsidiary. 592 F. Supp. 2d 608 (S.D.N.Y. 2009). Rather, the court there denied summary judgment, finding that a "genuine issue of fact" remained as to whether the parent controlled the subsidiary. *Id.* at 637. In that case, the parent hired an individual to oversee the day-to-day operations of the alleged primary violator. Moreover, the court there repeated the tenet that "the Section 20(a) defendant must not only have actual control over the primary violator, but *have 'actual control over the transaction in question.*'" *Id.* at 637, n.204 (quoting *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 486–87 (S.D.N.Y. 2005) (emphasis added). In *In re Alstom, SA Sec. Litig.*, the court held that "[i]n order to plead control, plaintiffs must allege facts demonstrating that the defendants not only had control over the primary violator, but also that they had actual control over the transaction in question." 454 F. Supp. 2d 187, 209 (S.D.N.Y. 2006) (citation omitted). Plaintiffs alleged that certain individuals had direct involvement and actual control over the primary violators and the transactions at issue, as opposed to here, where Plaintiffs do not (and cannot) allege any facts suggesting MassMutual's involvement and actual control over Tremont Partners, the management of the Funds, or the transactions at issue.

A/75927061.4

246 (S.D.N.Y. 2006)); *Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392, 406 (S.D.N.Y. 2007) ("[T]he Court finds that the weight of Second Circuit precedent favors the view that a Plaintiff plead 'culpable participation' to state a section 20(a) claim, and that such participation must be plead with particularity.").[2] "[I]n order to withstand a motion to dismiss, a section 20(a) claim must allege, at a minimum, particularized facts of the controlling person's conscious misbehavior or recklessness." *Id.* Plaintiffs' mental state must have "approximat[ed] actual intent." *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009).

Plaintiffs do not allege that MassMutual had knowledge (or was reckless in its lack of knowledge) of *any* alleged wrongdoing, let alone that MassMutual's "state of mind" approximated actual intent. Plaintiffs argue that they have plead with particularity that MassMutual had knowledge (or was reckless in its lack of knowledge) about the fact that Tremont was "misrepresenting its due diligence and/or omitting to disclose its lack of due diligence on Madoff." Opp. at 14-16. However, the facts Plaintiffs say prove that knowledge are that 1) the Funds were very profitable; 2) Tremont said that it conducted due diligence and monitored its investment advisors; 3) "The Controlling Defendants" performed diligence on Tremont before they purchased it in 2001; and 4) at some point, Mr. Murphy received some unspecified materials setting forth "Tremont's" due diligence procedures (although Plaintiffs do not allege to what entities or what funds those procedures applied). *See* Opp. at 14-15. These allegations are not sufficient. None of the factual allegations recited above demonstrate MassMutual knew that Tremont was (allegedly) misrepresenting its diligence, nor do they support a reasonable inference that MassMutual was reckless in not recognizing Tremont's alleged misrepresentations.

As Plaintiffs concede, the PSLRA requires the inference of scienter to "be cogent and at least as compelling as any opposing inference." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007). Here, the most reasonable inference to take from these four allegations

---

[2] Plaintiffs' argument against pleading culpable participation in accordance with the PSLRA is contrary to the law in this Circuit. *See* Opening Brief at 13-16.

(as well as the other conclusory allegations in the Complaint) is that MassMutual did not make controlling decisions to violate the securities laws. Plaintiffs allege no facts suggesting that MassMutual believed (or had any reason to believe) that Madoff was a fraud or that Tremont was misrepresenting its diligence. As such, Plaintiffs have failed to plead culpable participation, much less with sufficient particularity to meet the pleading requirements of the PSLRA.

## CONCLUSION

For these reasons and those in MassMutual's opening brief, Massachusetts Mutual Life Insurance Company and MassMutual Holding LLC pray that the Court dismiss the causes of action against them in their entirety with prejudice.

Dated: February 28, 2014

BINGHAM MCCUTCHEN LLP

By: /s/ Carol E. Head
    Kenneth I. Schacter
    kenneth.schacter@bingham.com
    Bingham McCutchen LLP
    399 Park Avenue
    New York, NY 10022
    Telephone:   212-705-7000
    Facsimile:   212-702-3622

    Joseph L. Kociubes (*pro hac vice*)
    joseph.kociubes@bingham.com
    Michael D. Blanchard
    michael.blanchard@bingham.com
    Carol E. Head (*pro hac vice*)
    carol.head@bingham.com
    Bingham McCutchen LLP
    One Federal Street
    Boston, MA 02110-1726
    Telephone:   617-951-8000
    Facsimile:   617-951-8736

    *Attorneys for Defendants*
    *Massachusetts Mutual Life Insurance*
    *Company and MassMutual Holding LLC*

A/75927061.4