# Exhibit A

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss

SUPERIOR COURT
CIVIL ACTION NO. 2010-4801-BLS2

DOROTHEY ASKENAZY, et al.

v.

TREMONT GROUP HOLDINGS, INC., et al.

**MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION FOR LEAVE TO FILE THEIR THIRD AMENDED COMPLAINT AND ADD PARTY DEFENDANTS**

## Procedural Background

This case arises out of the criminal conduct of Bernard Madoff, who in December 2008 admitted to operating an enormous (and, until shortly before his admission) highly successful Ponzi scheme. Plaintiffs here allege millions of dollars in losses from having invested in two hedge funds which operated almost exclusively as feeder funds for investment by Madoff and his investment advisory firm. Plaintiffs originally filed suit in this court in December, 2010. They filed their Second Amended Complaint (totaling some 944 pages with exhibits, in 444 paragraphs, against eight defendants) in May, 2011.

The Second Amended Complaint was the subject of four separate motions to dismiss. The motions were duly heard by the court (Sanders, J.) September 26, 2011, and after being taken under advisement were in turn the subject of a detailed Memorandum and Order by her, dated January 26, 2012, allowing certain motions (by Defendants Oppenheimer Acquisition Corporation, Massachusetts Mutual Life Insurance Company, and MassMutual Holding LLC) as well as allowing other motions in part, but also denying them in part. (Order, Docket, at Paper

41).[1] In the interests of judicial economy, I have relied on that Order to guide my understanding of the (former) factual allegations, and decline to repeat any of those background facts here.

The court writes again (more briefly), as a result of Plaintiffs' having moved, by Superior Court Rule 9A packet filed November 27, 2013, for leave to file a Third Amended Complaint, to add back into the case two of the three defendants dismissed by the January, 2012 Order (Massachusetts Mutual Life Insurance Company and MassMutual Holding LLC), as well as to add a new defendant (Oppenheimer Funds, Inc.). Not surprisingly, all five groups of interested parties have opposed the latest Motion: The Tremont Defendants; The Rye Funds; KPMG; the MassMutual companies; and the Oppenheimer Funds. Following hearing January 9, 2014, and review of all pleadings and appropriate authority, Plaintiffs' Motion is **DENIED IN FULL**, for the reasons outlined below.

**Discussion**

Futility

Plaintiffs' Motion is grounded in the argument that certain "newly-discovered" information, primarily contained in what the parties refer to as the "Cocchi documents" (named after another Madoff-related case in which they were first produced), and certain deposition testimony, provides the factual basis Judge Sanders found lacking in 2012 for claims against the two MassMutual companies, as well as a basis for suit against the new party. Regardless of the timing of the Cocchi documents' having surfaced in this litigation, which is discussed below, I find and rule that the material on which Plaintiffs seek to rely does not alter the 2012 decision, because it does not provide additional and specific probative, material facts to the analysis.

---

[1] Portions of that Order were appealed, a motion to stay pending appeal was denied by both the Superior and Appeals Courts, and the appeal ultimately affirmed the Order. Docket, at Notice dated 2/29/2012; Orders of 4/17/12, and Paper 58; and Rescript at Paper 76.

Securities Claims/"Control" Liability

MassMutual Companies

Judge Sanders ruled that the Second Amended Complaint "fail[ed] to allege enough facts to satisfy the standard set out in Aldridge v. A.T. Cross Corp., 284 F.3d 72, 85 (1st Cir. 2002), and fell "well short of showing that either MassMutual Holding or MassMutual Life Insurance exerted actual control over Tremont or the Rye Funds." Order, at pages 32-33. She noted that potential ability to control is not sufficient, and that "what is required are facts from which it might reasonably be inferred that MassMutual 'actively participated in the decision-making processes' of Tremont and the Rye Funds." Id. at page 33. As argued by the MassMutual companies, however, the allegedly crucial "new" facts[2] (Reply, at page 2) for these claims against them are virtually nonexistent.

Plaintiffs lump the holding company and the parent company together in their arguments. They argue in conclusory fashion that "discovery has demonstrated that MassMutual extensively used OppenheimerFunds (a subsidiary of OAC) to control," and "did tightly control Tremont." Memorandum in Support, at 8.

The specific allegations are that John V. Murphy, executive vice president of MassMutual, was recognized as "the boss" of Tremont Group's CEO, and that other CEO's "reported to Murphy." The supporting detail is that Murphy was involved with performance evaluations, weighed in on hiring and severance, and "monitored the expansion of . . . . business and sales efforts." Id., at 9. As argued by the MassMutual companies in their Opposition, these allegations amount to nothing more than the (undisputed) fact that the holding company "held" Tremont, and the life insurance company was the parent (or grandparent).

2 Plaintiffs have provided a "red-lined" version of the Second Amended Complaint representing the proposed Third Amended Complaint.

So too with what Plaintiffs allege to be "key" additions about the so-called Rudman Report, allegedly commissioned by Oppenheimer as "a comprehensive review of Tremont's business." Proposed Complaint, at paras. 107 et seq.; Reply at page 5. Plaintiffs have offered no cogent argument as to why a parent corporation should not be interested in strategic options for its subsidiary, or why a parent thereafter should automatically be liable for the acts of subsidiaries alleged to constitute securities violations. The pleading offered by the proposed complaint fails entirely to allege the "rare particular situation[ ]" required to pierce the corporate veil in Massachusetts. Scott v. NG U.S. 1, Inc., 450 Mass. 760, 764-769 (2008)(exercising stockholder "control" will not create liability; pervasive control plus "dubious manipulation and contrivance" required). None of the authority cited by Plaintiffs is to the contrary. Thus to allow these allegedly new claims[3] against the MassMutual companies would be futile. North Am. Expositions Co. Ltd. P'ship v. Corcoran, 452 Mass. 852, 871-872 (2009).

OppenheimerFunds

This is the first time in four years of litigation that Plaintiffs have attempted to state a claim against the Oppenheimer Funds. Oppenheimer is correct in its Opposition to note that these proposed new claims are the very same claims (aiding and abetting, control person, and Chapter 93A) first made in December, 2010 against the corporate "grandparent" OAC, and dismissed by Judge Sanders in January, 2012. And, it is true Judge Sanders ruled that "common stock ownership and a modest overlap of senior executives and company directors . . . is simply not enough [to plead control]." Order, at page 30.

Plaintiffs' argument with respect to Oppenheimer is that "[d]iscovery has also revealed an additional controlling person of Tremont within MassMutual's corporate structure,"

[3] MassMutual's argument that the bulk of the allegations against them which appear in the Proposed Complaint are actually just moved or restated from the Second Amended Complainti is also well taken.

(Memorandum in Support at page 2), i.e., "discovery has demonstrated that MassMutual extensively used OppenheimerFunds (a subsidiary of OAC) to control Tremont." Id., at page 8. The specific new facts alleged against Oppenheimer are exactly the same as those alleged against the MassMutual companies, to wit: Murphy was President of OppenheimerFunds, recognized as a "boss," and monitored personnel and sales at Tremont. Plaintiffs also allege OppenheimerFunds was involved in succession planning for Tremont's contacts with Madoff, as well as some budget planning for Tremont. "Additionally, discovery has revealed that especially during the later years of the fraud, the Madoff business constituted the great majority of Tremont's revenues and essentially all its profits – and that MassMutual and OppenheimerFunds were well aware of this." Id. at page 11. Plaintiffs argue these facts "renders it even more implausible that MassMutual or OppenheimerFunds could have been unaware of or not responsible for the true character of Tremont's Madoff operation." Id. Once again, this blatantly thin speculation is insufficient. There is no basis in these allegations reasonably to infer that, because Madoff was making money for Tremont, Oppenheimer made controlling decisions to violate securities laws, by misrepresenting or misperforming diligence with respect to the Madoff funds.

Aiding and Abetting

To state a claim for aiding and abetting fraud, Plaintiffs must allege each of these putative defendants knew Tremont was committing fraud, and each "actively participated in or substantially assisted in . . . commission" of that fraud. Go-Best Assets Ltd. v. Citizens Bank, 463 Mass. 50, 64 (2012). Order, at pages 29-30. The proposed new complaint continues to lack allegations of direct assistance by the proposed defendants in the alleged fraud. The red-lined additions, most particularly at proposed Paragraphs 83-123, list a myriad of actions taken by

corporate partners to perform their respective responsibilities. None of those actions reveals or even suggests knowledge by MassMutual or Oppenheimer of Madoff's fraud, nor do they approach a fair inference of actively participating or substantially assisting in commission of any such fraud. It is beyond clear that attempts to plead this claim are futile. I am not persuaded by Plaintiffs' argument that being "aware of deficiencies in Tremont's business practices and allow[ing] Tremont to continue in those deficient practices," Reply at 7, is sufficient for an inference of knowledge of fraud. Cahaly v. Benistar Prop. Exch. Trust Co., 451 Mass. 343, 351-357 (2008).[4]

Chapter 93A

No additional pleading can change the fact that any Chapter 93A claim against allegedly "controlling" defendants is wholly derivative of the control person and aiding and abetting claims. Failure to meet the threshold allegations of meaningful control or active participation means that the statutory claim must also fail, and amendment would be futile. Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B., 62 Mass. App. Ct. 34, 40-41 (2004); Order at 34.

Undue Delay

Even were the claims not futile, amendment could and would be denied for undue delay. United States Leasing Corp. v. Chicopee, 402 Mass. 228, 233 (1988). I am thoroughly unpersuaded that Plaintiffs could not have brought claims allegedly based on the "Cocchi" documents sooner than the fall of 2013. While I respect the documents could not be used without leave of court, seeking such leave was well within Plaintiffs' prerogative from January, 2011 forward. Plaintiffs had many opportunities – following Judge Sanders' Order in January,

[4] This argument also seems to conflict with the argument about the Rudman report, where Oppenheimer is criticized for seeking to assist in improving Tremont's business practices.

2012; at the five Rule 16 Litigation Control Conferences that occurred between that Order and November, 2013; and while actively litigating other discovery disputes before the court – to raise these issues. I can only conclude Plaintiffs chose not to do so for strategic reasons – a choice well within their rights, but also made at their peril. DiVenuti v. Reardon, 37 Mass. App. Ct. 73, 77-78 (1994). I agree with the respective Oppositions that none of Plaintiffs' authority supports leave to amend under these circumstances.

Undue Prejudice

Perhaps the most astonishing aspect of Plaintiffs' filings is their assurance that, since they will not seek or require additional discovery as a result of the proposed amendments, all is well. Fact discovery is closed in this matter, and it closed before Plaintiffs filed their Motion. And yet, experience, common sense, and simple justice all lead to the inevitable conclusion that the three newly-added parties would seek to reopen and to revisit a fair portion of what has already occurred by way of discovery.[5] I cannot agree that the proposed amendments "will add only one issue to the case." Memorandum in Support, at page 13.

The proposed new parties were not present for some forty-five depositions in the case. Basic fairness to them would require some targeted discovery, however carefully monitored by the court. This would in turn inevitably result in additional costs and delay to the Defendants who have been present and participating in the case all along. Pullano v. Cooke, 903 N.E.2d 1144, 2009 Mass. App. Unpub. LEXIS 340, at *7 (Mass. App. Ct. 2009)(Rule 1:28 opinion)(denying motion for delay not abuse of discretion when granting motion "might have resulted in reopening discovery and delaying trial further). I cannot accept Plaintiffs' blithe assertion that "Controlling Defendants' interests are wholly aligned with Tremont's,"

[5] The parties' new alternative tracking order proposals to the court (Docket, at Paper 108) bear out this litigation truism.

Memorandum in Support, at page 14, for any number of reasons, not the least of which is that this is not for Plaintiffs to say. The prejudice to the Defendants who have been participating in this case for now more than four years, as well as the prejudice to the proposed defendants who will need to play catch up, is palpable on this record, Castelluci v U. S. Fidelity & Guaranty Co., 372 Mass. 288 (1977), and provides an additional basis for denial of the Motion.

Conclusion

For the reasons discussed here, as well as those addressed by the respective Oppositions, Plaintiffs' Motion for Leave to File Their Third Amended Complaint and Add Party Defendants (Docket, Paper 104) is **DENIED**. **Tracking Order shall issue by separate pleading.**

**SO ORDERED.**

Dated: February 6, 2014

Christine M. Roach

Notice Sent
02.07.14
(md)