UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION : Master File No. 08 Civ. 11117 (TPG)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

This Document Relates to: :

STATE LAW ACTION, 08 Civ. 11183 (TPG), and specifically to: :

:

SPECTRUM SELECT, L.P.,

                                        : 12 Civ. 9057 (TPG)

          Plaintiff,

                                        : ECF CASES

    - against -                              Electronically Filed
                                        :

TREMONT GROUP HOLDINGS, INC., *et al.*,

                                        :

          Defendants.

                                        :

[CAPTION CONTINUED ON NEXT PAGE]
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**REPLY MEMORANDUM OF LAW OF OPPENHEIMER ACQUISITION CORP. IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

David A. Kotler
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036
Tel.: (212) 698-3500
Fax: (212) 698-3599
david.kotler@dechert.com

*Attorneys for Defendant*
*Oppenheimer Acquisition Corp.*

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ALBERT ANIKSTEIN, et al.,                     :

                    Plaintiffs,               :

          - against -                         :   12 Civ. 9058 (TPG)

TREMONT GROUP HOLDINGS, INC., et al.,         :

                    Defendants.               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MICHAEL BECKER., et al.,                      :

                    Plaintiff,                :

          - against -                         :   12 Civ. 9060 (TPG)

TREMONT GROUP HOLDINGS, INC., et al.,         :

                    Defendants.               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ALAN BILGORE, et al.,                         :

                    Plaintiffs,               :

          - against -                         :   12 Civ. 9061 (TPG)

TREMONT GROUP HOLDINGS, INC., et al.,         :

                    Defendants.               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
KARASEL II, L.P.,                             :

                    Plaintiff,                :

          - against -                         :   12 Civ. 9062 (TPG)

TREMONT GROUP HOLDINGS, INC., et al.,         :

                    Defendants.               :

[CAPTION CONTINUED ON NEXT PAGE]              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
SPECTRUM SELECT II, L.P. and SPECTRUM   :
EQUITIES, L.P.,
                                        :
                Plaintiffs,
                                        :   12 Civ. 9063 (TPG)
        - against -
                                        :
TREMONT GROUP HOLDINGS, INC., et al.,
                                        :
                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ROBERT COCCHI, et al.,                  :

                Plaintiffs,             :

        - against -                     :   12 Civ. 9064 (TPG)

TREMONT GROUP HOLDINGS, INC., et al.,   :

                Defendants.             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

I.  PLAINTIFFS FAIL TO ALLEGE OAC'S CULPABLE PARTICIPATION .................... 1

    A.  Plaintiffs Cannot Avoid Pleading OAC's Culpable Participation By Rewriting This Court's Prior Holdings .................................................................... 1

    B.  Plaintiffs Fail To Allege That OAC Had A Culpable State Of Mind .................... 2

    C.  Plaintiffs Fail To Allege OAC's Participation ......................................................... 4

II. PLAINTIFFS FAIL TO ALLEGE OAC'S CONTROL ..................................................... 5

    A.  Plaintiffs' Attempt To Eviscerate The Principle Of Corporate Separateness Must Fail ................................................................................................................... 6

    B.  Plaintiffs Must Adequately Allege Actual Control Over Both The Primary Violator And The Transaction In Question ............................................................. 7

    C.  Plaintiffs Have Failed To Allege OAC's Actual Control Over Tremont And The Alleged Primary Violation ................................................................................. 7

CONCLUSION ............................................................................................................................. 10

**TABLE OF AUTHORITIES**

*Anwar v. Fairfield Greenwich Ltd.*,
　　728 F. Supp. 2d 372 (S.D.N.Y. 2010)..................................................................................7, 9

*Askenazy v. Tremont Group Holdings, Inc.*,
　　No. 2010-4801-BLS2 (Mass. Super. Ct. Feb. 6, 2014) ....................................................4, 9, 10

*CLAL Fin. Batucha Inv. Mgmt., Ltd. v. Perrigo Co.*,
　　No. 09 Civ. 2255, 2010 WL 4177103 (S.D.N.Y. Oct. 7, 2010) (Griesa, J.).............................2

*CompuDyne Corp. v. Shane*,
　　453 F. Supp. 2d 807 (S.D.N.Y. 2006)........................................................................................8

*Cromer Fin. Ltd. v. Berger*,
　　245 F. Supp. 2d 552 (S.D.N.Y. 2003)........................................................................................4

*Dietrich v. Bauer*,
　　126 F. Supp. 2d 759 (S.D.N.Y. 2001)........................................................................................8

*Employee's Ret. Sys. of the Gov't of the Virgin Islands v. J.P. Morgan Chase & Co.*,
　　804 F. Supp. 2d 141 (S.D.N.Y. 2011)........................................................................................6

*In re Alstom SA*,
　　406 F. Supp. 2d. 433 (S.D.N.Y. 2005)...................................................................................3, 4

*In re Global Crossing Ltd. Sec. Litig.*,
　　322 F. Supp. 2d 319 (S.D.N.Y. 2004)........................................................................................5

*In re IPO Sec. Litig.*,
　　241 F. Supp. 2d 281 (S.D.N.Y. 2003)........................................................................................2

*In re Parmalat Sec. Litig.*,
　　594 F.Supp.2d 444 (S.D.N.Y.2009)...........................................................................................7

*In re Tronox, Inc. Sec. Litig.*,
　　769 F. Supp. 2d 202 (S.D.N.Y. 2011)........................................................................................8

*Kalin v. Xanboo, Inc*,
　　526 F. Supp. 2d 392 (S.D.N.Y. 2007)...............................................................................2, 6, 7

*Meridian Horizon Fund, L.P. v. Tremont Group Holdings, Inc.*,
　　No. 09 Civ. 3708, 2012 WL 6168151 (S.D.N.Y. Dec. 11, 2012) (Griesa, J.)..........................2

*Rochez Bros., Inc. v. Rhoades*,
　　527 F.2d 880 (3d Cir. 1975).......................................................................................................7

*Saltz v. First Frontier LP*,
    782 F. Supp. 2d 61 (S.D.N.Y. 2010), *aff'd*, 485 F. App'x 461 (2d Cir. 2012) ......................... 4

*Schulman v. Delaire*,
    No. 10 Civ. 3639, 2011 WL 672002 (S.D.N.Y. Feb. 22, 2011) ............................................... 4

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ................................................................................................................ 6, 7

**PRELIMINARY STATEMENT**

Plaintiffs' Memorandum of Law in Opposition to MassMutual's and Oppenheimer Acquisition Corp.'s Motions to Dismiss the Consolidated Amended Complaint ("Opp.") does nothing to rebut the several independent legal bases for dismissing Plaintiffs' inadequately pled control person claim against Oppenheimer Acquisition Corp. ("OAC"). Almost four years after first suing OAC, Plaintiffs do not, and cannot, sufficiently allege any of the requisite elements of their claim under Section 20(a) of the Exchange Act.

In a desperate attempt to save their claim against OAC, Plaintiffs advocate for an unprecedented test for control person liability in which they need not plead any facts suggesting culpable participation by OAC in Tremont's alleged fraud or that OAC had actual control over that alleged fraud -- and in the process, would completely override the settled notions of corporate separateness that this Court consistently has recognized and upheld. This Court should not break the new ground demanded by Plaintiffs. The Consolidated Amended Complaint ("CAC") does not plausibly allege that OAC culpably participated in Tremont's alleged fraud or that OAC controlled Tremont or its alleged fraudulent disclosures.[1] OAC's motion to dismiss should be granted and the Complaint as against OAC should be dismissed.

**ARGUMENT**

**I.    PLAINTIFFS FAIL TO ALLEGE OAC'S CULPABLE PARTICIPATION**

    **A.    Plaintiffs Cannot Avoid Pleading OAC's Culpable Participation By Rewriting This Court's Prior Holdings**

As this Court consistently has held, to state a Section 20(a) claim Plaintiffs must adequately plead culpable participation, which also requires satisfaction of the PSLRA's

---

[1]    Contrary to Plaintiffs' assertion in their Opposition that OAC "do[es] not contest the primary-violation element" (Opp. at 6), OAC in fact joined Tremont's argument that Plaintiffs failed to plead an underlying violation against Tremont. *See* OAC Br. at 5 n.4.

heightened pleading standard.  *CLAL Fin. Batucha Inv. Mgmt., Ltd. v. Perrigo Co.*, No. 09 Civ. 2255, 2010 WL 4177103, at *9 (S.D.N.Y. Oct. 7, 2010) (Griesa, J.) (culpable participation "must be pled with particularity").  Plaintiffs fail to meet this standard.

As a threshold matter, Plaintiffs' argument that culpable participation should not be an element of a *prima facie* Section 20(a) claim (*see* Opp. at 17) rests on the very case this Court has already considered in rejecting this exact argument, *Meridian Horizon Fund, L.P. v. Tremont Group Holdings, Inc.*, No. 09 Civ. 3708, 2012 WL 6168151 (S.D.N.Y. Dec. 11, 2012) (Griesa, J.).  In their desperation, Plaintiffs misleadingly rely on a quotation from *Meridian* that is taken from this Court's *summary of plaintiffs' argument* in that case.  Opp. at 17.  Plaintiffs nowhere even attempt to distinguish *Meridian*'s holding that squarely rejected their frivolous argument on this motion.  *Meridian*, 2012 WL 6168151, at *2 ("[T]his court regards the need for a plaintiff to plead 'culpable participation' to be the law of the Second Circuit.").

Similarly disingenuous is Plaintiffs' contention that pleading culpable participation does not require alleging scienter.  *See* Opp. at 17.  Indeed, Plaintiffs fail to cite a single case that so holds.  Instead, they cobble together three unrelated snippets from *In re IPO Sec. Litig.*, 241 F. Supp. 2d 281 (S.D.N.Y. 2003), in a misleading description of the holding of that case.  To the contrary, *In re IPO Sec. Litig.* rejects culpable participation as an element of a Section 20(a) claim, which makes its rejection of scienter as a pleading requirement both unsurprising and contrary to the weight of authority in this District.  *See, e.g., Kalin v. Xanboo, Inc*, 526 F. Supp. 2d 392, 406 (S.D.N.Y. 2007) (disagreeing with *In re IPO Sec. Litig.*).

### B. Plaintiffs Fail To Allege That OAC Had A Culpable State Of Mind

Although Plaintiffs assert that "they have met the PSLRA pleading standard for culpable participation" (Opp. at 13), their conclusory allegations come nowhere close.  The very cases Plaintiffs cite make clear that they are required to allege, at a minimum, a culpable state of mind

of recklessness. *See* Opp. at 13-14.  However, Plaintiffs' allegations go no further than averring that OAC obtained background information on Tremont's business during its acquisition of Tremont,[2] that the head of OAC at times interacted with Tremont, and that Madoff was an important part of Tremont's business.  CAC ¶¶ 145-151, 162, 176.  On this threadbare basis, Plaintiffs remarkably conclude that OAC must have known of Tremont's purported fraud.  Opp. at 14.  But, conceding that they have not alleged that OAC had a culpable state of mind regarding Madoff, Plaintiffs attempt to "characterize" their claim as based solely on "Tremont's fraud" -- *i.e.*, that OAC's alleged knowledge (or reckless disregard) of Tremont's purported misrepresentations or omissions satisfies the scienter requirement.  Opp. at 14-15.  However, Plaintiffs fail to explain how OAC could be charged with knowledge of or recklessness as to *Tremont*'s alleged fraud, without any knowledge of or recklessness as to *Madoff*'s fraud (which, they concede, OAC did not have).  Plaintiffs' circular argument fails.

In addition, as Plaintiffs' own authority recognizes, even considering OAC's allegedly culpable state of mind without reference to Madoff's fraud, "the failure of [OAC] to interpret extraordinarily positive performance by [Tremont] . . . as a sign of problems and thus to investigate further does not amount to recklessness under the securities laws."  *In re Alstom SA*, 406 F. Supp. 2d. 433, 496 (S.D.N.Y. 2005), cited in Opp. at 16.

In sum, Plaintiffs' assertion that they have pled a "more compelling inference" of fraud is unsupported by fact or law, and is at odds with the conclusions reached by numerous courts in similar Madoff-related cases -- that the most compelling inference is "that Madoff fooled the

---

[2]   Plaintiffs erroneously characterize OAC's receipt of background information from Tremont as "extensive due diligence and ongoing review."  Opp. at 15.  These alleged "due diligence materials" were made available to another entity interested in buying Tremont and that company also made an offer to buy Tremont after seeing the same materials.  *See* Tremont Advisers, Inc., Proxy Statement (Form DEF 14A), at 11-12 (8/20/01), *available at* http://www.sec.gov/Archives/edgar/data/880320/000095012301505828/ 0000950123-01-505828.txt.  The alleged "ongoing review" -- to the extent the allegations refer to OAC and not a separate corporate entity, *see, e.g.*, CAC ¶¶ 167, 174 -- refers merely to Murphy's intermittent contact with Tremont.  *See, e.g.*, CAC ¶ 184.

defendant[s] as he did individual investors, financial institutions, and regulators." *Schulman v. Delaire*, No. 10 Civ. 3639, 2011 WL 672002, at *3 (S.D.N.Y. Feb. 22, 2011); *accord Saltz v. First Frontier LP*, 782 F. Supp. 2d 61, 72 (S.D.N.Y. 2010), *aff'd*, 485 F. App'x 461 (2d Cir. 2012).[3] Such "blatantly thin speculation is insufficient. There is no basis in these allegations reasonably to infer that, because Madoff was making money for Tremont, [OAC] made controlling decisions to violate securities laws." Memorandum And Order on Plaintiffs' Motion for Leave to File Their Third Amended Complaint And Add Party Defendants, *Askenazy v. Tremont Group Holdings, Inc.*, No. 2010-4801-BLS2, at *5 (Mass. Super. Ct. Feb. 6, 2014), Dkt. No. 109 (rejecting state-law control person claims brought by Plaintiffs' counsel in this case based on nearly identical allegations).[4]

### C. Plaintiffs Fail To Allege OAC's Participation

Plaintiffs fail to offer any argument as to how they satisfied the second required element of culpable participation -- that OAC "participated" in Tremont's alleged misconduct. In so doing, they ignore entirely OAC's dispositive argument that Plaintiffs' allegations regarding OAC's (1) ownership of Tremont's stock, (2) representation on Tremont's board, and (3) purported "influence" over Tremont's activities fall far short of the mark. *See* OAC Br. at 8-9. Indeed, nothing in the CAC reasonably could be construed to satisfy the "participation" prong.

To be sure, Plaintiffs cite *In re Alstom* in an effort to show that they have alleged "day to day" involvement by OAC, and that OAC therefore was a culpable participant in the alleged fraud. Opp. at 16 (citing 406 F. Supp. 2d. at 498). Not only are the facts of *In re Alstom* -- an

---

[3] Finally, Plaintiffs' passing attempt to argue that OAC "gain[ed] the required state of mind through exposure of its agents" is misplaced. *See* Opp. at 14, citing *Cromer Fin. Ltd. v. Berger*, 245 F. Supp. 2d 552 (S.D.N.Y. 2003). In *Cromer*, plaintiffs alleged a claim for agency. *Id.* at 553. By contrast, Plaintiffs have not pled an agency claim against OAC.

[4] *See* Reply Memorandum Of Law In Support Of MassMutual's Motion To Dismiss The Consolidated Amended Complaint, at Exhibit A.

-4-

individual executive defendant who was alleged to have been deeply involved in the primary violator's operations -- completely dissimilar, but Plaintiffs fail to point to any allegations of OAC's "day to day" involvement, instead leaning on the intermittent contact of Murphy and others carrying out their entirely separate fiduciary duties as directors and officers of Tremont.

Plaintiffs' reliance on *In re Global Crossing Ltd. Sec. Litig.*, 322 F. Supp. 2d 319 (S.D.N.Y. 2004) (*see* Opp. at 16) similarly fails, as that case also presents vastly different facts than those alleged here.  The court in *Global Crossing* sustained a control person claim against *individual* executive defendants who "would have directly overseen" the primary defendants, where plaintiffs alleged "widespread internal knowledge" of the primary defendants' actions. 322 F. Supp. 2d at 350-51.  Not only does *Global Crossing* having nothing to do with a parent-subsidiary relationship, but Plaintiffs here have not alleged anything even resembling OAC's "widespread internal knowledge" of Tremont's alleged fraud.

## II.     PLAINTIFFS FAIL TO ALLEGE OAC'S CONTROL

Plaintiffs advance an untenably broad definition of "control," apparently in the hopes that this Court will conclude that because OAC is Tremont's parent, its "potential" to prevent Tremont's alleged fraud should expose OAC to liability.  *See* Opp. at 8.  However, mere potential to control a primary violator is not enough to justify imposing liability on a parent for the violations of its subsidiary.  Instead, courts in this District require a Plaintiff to allege actual control over the primary violator *and* the transaction in question.  Because Plaintiffs fail to plead any actual control over Tremont's alleged violations, their Section 20(a) claim against OAC fails.

### A. Plaintiffs' Attempt To Eviscerate The Principle Of Corporate Separateness Must Fail

Plaintiffs begin by asserting that because "this is not a veil-piercing case," OAC's citation to *United States v. Bestfoods*, 524 U.S. 51 (1998) is misplaced. Opp. at 7-8. Contrary to Plaintiffs' assertion, OAC does not contend that Plaintiffs must pierce the corporate veil to trigger liability under Section 20(a). Instead, the Supreme Court's decision in *Bestfoods* is important because it expresses the "general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *Bestfoods*, 524 U.S. at 61. Plaintiffs are advocating a position that is directly contrary to that fundamental principle. *See generally Employee's Ret. Sys. of the Gov't of the Virgin Islands v. J.P. Morgan Chase & Co.*, 804 F. Supp. 2d 141, 157 (S.D.N.Y. 2011) ("Allegations that an entity was the parent corporation of a primary violator, standing alone, do not make out a claim of control.").

Plaintiffs suggest that "simply the *potential* to exercise . . . ownership rights in a way that would direct the activities of the wrongdoer" will establish control. Opp. at 8 (emphasis in original). Under their definition of control, a parent company would *always* be liable for its subsidiary's violation, because a parent company *always* has at least the "potential" to direct its subsidiary. Plaintiffs cannot cite any case, however, in which mere status as a corporate parent was a legally sufficient allegation of control.[5] Rather, as Plaintiffs correctly concede elsewhere, the "bare fact of corporate ownership" is *not* sufficient to establish control. Opp. at 8. In short,

---

[5] Plaintiffs cite one case, *Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392, 404 (S.D.N.Y. 2007), in which the court observed that a control person is "typically . . . a parent corporation, the employer of the primary violator, or a director or officer of the primary violator corporation." That court also stated, however, that "[a]ctual control over the alleged wrongdoer and the purported transactions at issue is *essential* for control person liability." *Id.* at 405 (emphasis added). Plainly, the court in *Kalin* did not rule that mere status as a "parent corporation" (or an employer, director, or officer) would be sufficient.

Plaintiffs' contrived interpretation of "control" would eviscerate the fundamental principle of corporate separateness expressed in *Bestfoods*. Plaintiffs' interpretation should be rejected.

### B. Plaintiffs Must Adequately Allege Actual Control Over Both The Primary Violator And The Transaction In Question

To state a Section 20(a) claim, a plaintiff must show that the defendant had actual control over the primary violator *and* over the transaction in question. Plaintiffs argue that the Court should reject the rule that Section 20(a) requires "actual control over the transaction in question," a requirement that has been adopted by many courts in this District. As Plaintiffs correctly observe (Opp. at 5, 12), Congress intentionally left "control" undefined in the statute to allow *courts* to decide issues of control on a case-by-case basis. *See Rochez Bros., Inc. v. Rhoades*, 527 F.2d 880, 890 (3d Cir. 1975) ("Congress deliberately did not define 'control,' thus indicating its desire to have the courts construe the applicable provisions of the statute . . ."). The courts of this District have done so, and they have rejected Plaintiffs' interpretation; indeed, a number of Plaintiffs' own cases reject their interpretation. *See, e.g., Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 413, 425-27 (S.D.N.Y. 2010) (rejecting *In re Parmalat Secs. Litig.*, 594 F.Supp.2d 444 (S.D.N.Y.2009), and ruling that "to sufficiently demonstrate control, Plaintiffs must plead . . . actual control over the primary violator and the transaction at issue"); *Kalin*, 526 F. Supp. 2d at 405 ("Actual control over the alleged wrongdoer and the purported transactions at issue is essential for control person liability.").

### C. Plaintiffs Have Failed To Allege OAC's Actual Control Over Tremont And The Alleged Primary Violation

While Plaintiffs assert that a "hyper-detailed" showing of control is not required, Opp. at 9, under any measure they fail to plead that OAC had actual control over Tremont or its alleged violations. They point to cases in which the courts have found control adequately pled, but the conclusory and unremarkable facts alleged in the CAC pale in comparison. Neither the fact of

OAC's ownership of Tremont, nor Murphy's limited involvement with Tremont, nor any of the alleged activities of non-party OFI suffice to overcome OAC's motion to dismiss.

Contrary to Plaintiffs' assertion, none of their cited cases "make[s] clear" (Opp. at 10) that Plaintiffs have adequately alleged OAC's actual control over the transaction in question. In *In re Tronox, Inc. Sec. Litig.*, 769 F. Supp. 2d 202 (S.D.N.Y. 2011), plaintiffs made detailed allegations supporting a conclusion that the corporate defendants were "deeply involved in [the violator company's] day-to-day operations as they pertained to the transaction at issue." *Id*. at 211-14. Specifically, the primary violator company was required by contract to request approval from the Section 20(a) defendant company for the specific fraudulent disclosures and the primary violator "continually [had] dialogues with [the Section 20(a) defendant company]" related to the disclosures. *Id.* at 214. In contrast to *Tronox*, Plaintiffs here do not allege that Tremont was required to seek approval from OAC for its allegedly fraudulent disclosures or that Tremont had "continual[] . . . dialogues" with OAC regarding its disclosures. *See id*.[6]

Plaintiffs' allegations do not approach the detailed control allegations in *Tronox*. First, the allegations of "complete stock ownership" and board membership, Opp. at 10-11, far from suffice. OAC does not dispute that the alleged primary violator, Tremont, is its wholly-owned subsidiary, but as demonstrated above (*see* Point II.A), the mere fact of a parent/subsidiary relationship is not adequate to establish control. Plaintiffs' unremarkable allegations that OAC representatives served on the Tremont Board starting in 2001 and that, twice, for unspecified

---

[6] Plaintiffs' other cases are wholly inapposite. In *CompuDyne Corp. v. Shane*, 453 F. Supp. 2d 807 (S.D.N.Y. 2006), the plaintiff adequately alleged that the individual violator was an agent of the corporate defendant. *Id*. at 829. Tremont is not an officer or employee of OAC, and Plaintiffs have not alleged that Tremont acted as OAC's agent in making any allegedly fraudulent disclosures. In *Dietrich v. Bauer*, 126 F. Supp. 2d 759 (S.D.N.Y. 2001), a *summary judgment* case, the individual defendant contributed 100% of the equity of the primary violator firm, was an incorporating director of the firm, was named as a control person in its broker-dealer registration, and personally appointed the officer of the firm who perpetrated the fraud. *Id.* at 761-62. These allegations are not comparable to those made against OAC in the Consolidated Amended Complaint.

periods of time, OAC representatives occupied a majority of the Board's seats, fall similarly short. Opp. at 3. The placement of a parent's officers and/or directors on a subsidiary's board is neither unusual nor proof of "actual control." *See Anwar*, 728 F. Supp. 2d at 426-27 ("[A] bare assertion that [the defendant company] appointed directors to [the violators] . . . standing alone, would be insufficient to make out the control prong of the § 20(a) claim.").

Second, Plaintiffs' flimsy allegations of Murphy's involvement, Opp. at 11-12, fail to plead control, and instead merely amount to an assertion that as a Tremont director who owed fiduciary duties to Tremont, he had occasional contact with Tremont employees. For example, Plaintiffs argue that Murphy "frequently emailed Tremont employees regarding Madoff," yet they offer only one purportedly supporting allegation -- a single email between Murphy and a Tremont employee in which Murphy specifically disclaims authority to control that employee's business decision. CAC ¶ 162. The allegations that Murphy "oversaw Tremont's day-to-day operations" are similarly thin and conclusory. *Id*. For this very reason, a Massachusetts state court recently ruled that these same allegations were insufficient to state a control person claim under various states' blue sky laws because they "amount to nothing more than the (undisputed) fact that the holding company 'held' Tremont." *Askenazy*, No. 2010-4801-BLS2, at *3.

Third, Plaintiffs' allegations regarding non-party OFI have no bearing on whether OAC had actual control over Tremont's violations. In their Opposition, Plaintiffs attempt to explain, for the first time, how OFI's alleged activities suffice to show OAC's control over Tremont -- albeit by wildly speculating that "Oppenheimer and MassMutual said that OFI had that authority." Opp. at 11. Not only do Plaintiffs offer no basis for their speculative assertion in their Complaint, but Plaintiffs' attempt to collapse OFI into OAC fails as a matter of law.[7]

---

[7]   Plaintiffs' interest in making this novel argument, despite lacking legal support, is clear, given the significant extent to which they lean on *OFI*'s activities to assert that *OAC* exercised control. In both the

Indeed, another court has recently rejected an attempt, by the same counsel who represents Plaintiffs here, to add *OFI* as a new defendant based on the very same allegations that Plaintiffs wish to use here against *OAC*.  *See Askenazy*, No. 2010-4801-BLS2, at *4-5.  In rejecting plaintiffs' attempt to add claims against OFI based on these allegations, the *Askenazy* court found "no basis . . . reasonably to infer that, because Madoff was making money for Tremont, Oppenheimer made controlling decisions to violate securities laws, by misrepresenting or misperforming diligence with respect to the Madoff funds."  *Id.* at *5.

## CONCLUSION

For the foregoing reasons, as well as those set forth in OAC's initial brief, OAC's motion to dismiss should be granted in its entirety and with prejudice.

Dated:  February 28, 2014
        New York, NY

>                                       DECHERT LLP
>
>                                       By:  /s/ David A. Kotler
>                                       David A. Kotler
>                                       david.kotler@dechert.com
>                                       1095 Avenue of the Americas
>                                       New York, NY 10036
>                                       Tel.: (212) 698-3500
>                                       Fax: (212) 698-3599
>
>                                       *Attorneys for Defendant*
>                                       *Oppenheimer Acquisition Corp.*

---

CAC and Opposition, Plaintiffs rely on factual allegations regarding individuals whose *sole* connection to Tremont is through OFI, not OAC.  *See, e.g.,* CAC ¶ 158, 159, 164, 165, 179-81; Opp. at 11-12.  Plaintiffs likewise attempt to obscure the issue by referring generically to "Oppenheimer" when allegations relate only to OFI.  *See, e.g.,* CAC ¶ 154 (alleging that OFI made clear that Tremont's products would become "Oppenheimer" products, even though Plaintiff Spectrum Select L.P.'s original complaint alleged that OFI stated that the acquisition of Tremont would enable OFI -- not OAC -- to enhance its alternative products offerings for high net worth and institutional clients.  *See* Spectrum State Complaint, *Spectrum Select L.P. v. Tremont Group Holdings, Inc.*, 12-9057, Notice of Removal, ECF No. 6-8 at ¶ 49 (S.D.N.Y. Sept. 10, 2012).