UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | : : : | Master File No. 08 Civ. 11117 (TPG) |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | | |
| This Document Relates to: | : | 12 Civ. 9057 (TPG) |
| | | 12 Civ. 9058 (TPG) |
| SPECTRUM SELECT, L.P., et al., | : | 12 Civ. 9060 (TPG) |
| | | 12 Civ. 9061 (TPG) |
| Plaintiffs, | : | 12 Civ. 9062 (TPG) |
| | | 12 Civ. 9063 (TPG) |
| - against- | : | 12 Civ. 9064 (TPG) |
| | : | ECF CASES |
| TREMONT GROUP HOLDINGS, INC., et al., | | Electronically filed |
| | : | |
| Defendants. | | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**TREMONT DEFENDANTS' MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFFS' SECOND MOTION TO REMAND**

SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

*Attorneys for Defendants
 Tremont Partners, Inc. and
 Tremont Group Holdings, Inc.*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ i

PRELIMINARY STATEMENT ........................................................................................................ 1

PROCEDURAL HISTORY ................................................................................................................ 2

ARGUMENT ....................................................................................................................................... 4

THE SECOND REMAND MOTION SHOULD BE DENIED ........................................................ 4

      A.     *Troice* Does Not Alter the Conclusion that SLUSA Barred Plaintiffs' State Law Claims .............................................................................................................. 4

      B.     Controlling Second Circuit Precedent Compels the Conclusion that SLUSA Barred Plaintiffs' State Law Claims ......................................................... 7

      C.     The Amended Complaint Establishes Subject Matter Jurisdiction .................... 9

      D.     Plaintiffs Should Not Be Permitted To Drop Their Federal Claims ................. 11

CONCLUSION .................................................................................................................................. 14

**TABLE OF AUTHORITIES**

**CASES**

**Page**

Allen v. Rite-Aid, Inc.,
    Civ. A. No. 91-3835, 1991 WL 148272 (E.D. Pa. July 30, 1991).....................................12

In re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation,
    MDL No. 1715, 2013 WL 4718958 (N.D. Ill. Sept. 3, 2013) ...........................................11

Barbara v. New York Stock Exchange,
    99 F.3d 49 (2d Cir. 1996) ...............................................................................................2, 9

In re Bernard L. Madoff Investment Securities LLC,
    708 F.3d 422 (2d Cir. 2013)................................................................................................7

Bernstein v. Lind-Waldock & Co.,
    738 F.2d 179 (7th Cir. 1984) ............................................................................................10

Cambridge Fund, Inc. v. Abella,
    501 F. Supp. 598 (S.D.N.Y. 1980).....................................................................................7

Carnegie-Mellon University v. Cohill,
    484 U.S. 343 (1988)..........................................................................................................11

Cartier v. Wells Fargo Bank, N.A.,
    No. 12-2884, 2013 U.S. App. LEXIS 23612 (8th Cir. Nov. 25, 2013) .............................10

Chadbourne & Parke LLP v. Troice,
    134 S. Ct. 1058 (2014)...........................................................................................1, 5, 6, 7, 8

Cook v. New York Times Co. Group Long-Term Disability Plan,
    02 Civ. 9154, 2004 WL 203111 (S.D.N.Y. Jan. 30, 2004).................................................9

Fernandez v. Johnson,
    12 Civ. 2774, 2013 U.S. Dist. LEXIS 31998 (S.D.N.Y. March 5, 2013)..........................9

In re Hearld, Primeo and Thema Securities Litigation,
    730 F.3d 112 (2d Cir. 2013)................................................................................................8

Hunt v. Tektronix, Inc.,
    952 F. Supp. 998 (W.D.N.Y. 1997) ...................................................................................9

Janus Capital Group v. First Derivative Traders,
    131 S. Ct. 2296 (2011).........................................................................................................7

In re JetBlue Airways Corp. Privacy Litigation,
    379 F. Supp. 2d 299 (E.D.N.Y. 2005) ..................................................................11, 13

Kidd v. Southwest Airlines Co.,
    891 F.2d 540 (5th Cir. 1990) ...................................................................................11

In re Kingate Management Limited Litigation,
    No. 09-cv-5386, 2011 WL 1362106
    (S.D.N.Y. March 30, 2011), appeal pending, No. 11-1397-cv (2d Cir.) ..............8

Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,
    547 U.S. 71 (2006)......................................................................................................5

In re Procel,
    467 B.R. 297 (S.D.N.Y. 2012)...................................................................................9

SEC v. Zandford,
    535 U.S. 813 (2002)....................................................................................................6

Spectrum Select II, L.P. v. Tremont Group Holdings, Inc.,
    No. 12-80968-CIV. (S.D. Fla. Nov. 14, 2012) ...................................................1, 2

In re Tremont Group Holdings, Inc. Securities Litigation,
    626 F. Supp. 2d 1338 (J.P.M.L. 2009).................................................................3, 12

In re Tremont Group. Holdings, Inc. Securities Litigation,
    MDL No. 2052, (J.P.M.L. Dec. 12, 2012)...........................................................3, 11

In re Tremont Securities Law, State Law, & Insurance Litigation,
    Nos. 08 Civ. 11117, et al., 2013 WL 4730263 (S.D.N.Y. Sept. 3, 2013).........1, 3

Valencia v. Lee,
    316 F.3d 299 (2d Cir. 2003)......................................................................................13

Vega v. Walsh,
    No. 06-CV-6492, 2010 WL 1685819 (E.D.N.Y. Apr. 22, 2010) ........................9

**STATUTES, RULES & REGULATIONS**

15 U.S.C. § 78bb(f).................................................................................................................1

15 U.S.C. § 78bb(f)(1)(A).......................................................................................................4

15 U.S.C. § 78u-4 ..................................................................................................................13

## OTHER AUTHORITIES

Brief of Respondents in <u>Chadbourne & Parke LLP v. Troice</u>,
    134 S. Ct. 1058 (2014) (Nos. 12-79, 12-86, 12-88) 2013 WL3817000..............................8

15th Judicial Circuit of Florida, http://15thcircuit.co.palm-beach.fl.us/web/judge-french
    (last updated Jan. 23, 2014) ........................................................................................13

Defendants Tremont Partners, Inc. and Tremont Group Holdings, Inc. (the "Tremont Defendants" or "Tremont") respectfully submit this memorandum of law in opposition to plaintiffs' second motion to remand these actions to state court (the "Second Remand Motion," or "Mot.," Dkt. No. 146).  In requesting this relief, plaintiffs effectively seek reconsideration of:  (a) the ruling of the United States District Court for the Southern District of Florida (the "Southern District of Florida") denying plaintiffs' first remand motion on the ground Tremont properly removed these actions pursuant to the Securities Litigation Uniform Standards Act of 1998 ("SLUSA," codified at 15 U.S.C. § 78bb(f)), see Spectrum Select II, L.P. v. Tremont Grp. Holdings, Inc., No. 12-80968-CIV., Order at 3-4 (S.D. Fla. Nov. 14, 2012); and (b) this Court's order granting Tremont's motion to dismiss plaintiffs' prior complaints in these actions (the "Florida Complaints") on the ground they were barred by SLUSA.  See In re Tremont Sec. Law, State Law, & Ins. Litig., Nos. 08 Civ. 11117, et al., 2013 WL 4730263, at *1 (S.D.N.Y. Sept. 3, 2013) (Griesa, J.).  For the reasons set forth below, plaintiffs' request for reconsideration should be rejected and the Second Remand Motion should be denied.

## PRELIMINARY STATEMENT

Plaintiffs base the Second Remand Motion principally on the contention that the Supreme Court's recent decision in Chadbourne & Parke LLP v. Troice, 134 S. Ct. 1058 (2014), "established conclusively that this Court erred when it dismissed Plaintiffs' state-law claims[.]"  (Mot. at 1.)  To the contrary, both Troice and controlling Second Circuit authority show conclusively that this Court properly dismissed those claims.  Under this precedent, the claims were barred by SLUSA because they were based on allegations that plaintiffs sought to acquire ownership interests in covered securities in reliance on misrepresentations that the securities would be purchased for their benefit by Bernard Madoff.

Even if <u>Troice</u> compelled a different conclusion, which it does not, plaintiffs nevertheless waived their objection to removal and dismissal pursuant to SLUSA by filing a consolidated amended complaint (the "Amended Complaint" or "CAC") with this Court asserting claims under the federal securities laws. Once "the plaintiff voluntarily amends the complaint to allege federal claims, [federal courts] will not remand for want of jurisdiction." <u>Barbara v. New York Stock Exchange, Inc.</u>, 99 F.3d 49, 56 (2d Cir. 1996).

Apparently recognizing that this Court presently has subject matter jurisdiction over their actions, plaintiffs request leave to amend their Amended Complaint yet again, this time to drop their federal securities law claims and restore their previously dismissed state law claims in order to attempt to divest this Court of jurisdiction. The requested amendment, however, would not have the effect plaintiffs desire. Even if plaintiffs could show that the proposed state law claims would fall outside SLUSA, this Court nevertheless would be able to exercise supplemental jurisdiction over those claims and should do so in the event it permits plaintiffs to assert them. Accordingly, the Second Remand Motion should be denied.

## PROCEDURAL HISTORY

**The First Remand Motion**

On September 7, 2012, Tremont removed these actions pursuant to SLUSA to the Southern District of Florida from the Circuit Court of the Fifteenth Judicial District in and for Palm Beach County. (<u>See, e.g.</u>, 12 Civ. 9057, Dkt. No. 1.) In response, plaintiffs filed their first motion to remand the litigation to state court (the "First Remand Motion"), which the Southern District of Florida denied by order entered on November 14, 2012, finding that Tremont had properly removed the actions under SLUSA. <u>See</u> <u>Spectrum Select II, L.P. v. Tremont Grp. Holdings, Inc.</u>, No. 12-80968-CIV., Order at 3-4 (S.D. Fla. Nov. 14, 2012). Thereafter, the United States Judicial Panel on Multidistrict Litigation (the "MDL Panel") transferred these actions to this Court for the

same reasons set out in the MDL Panel's original transfer order, namely, the actions involve common questions of fact with the other Madoff-related litigation previously transferred by the MDL Panel to this Court, and transfer would eliminate duplicative discovery, avoid inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary.  See  In re Tremont Grp. Holdings, Inc. Sec. Litig., MDL No. 2052, Transfer Order at 1 (J.P.M.L. Dec. 12, 2012), Dkt. No. 137 ("MDL Order"); see also In re Tremont Grp. Holdings, Inc. Sec. Litig., 626 F. Supp. 2d 1338, 1340 (J.P.M.L. 2009).

**Tremont's Motion To Dismiss the Florida Complaints**

On January 23, 2013, Tremont filed with this Court a motion to dismiss the Florida Complaints on the ground they were precluded by SLUSA.  Plaintiffs filed opposition papers but, as this Court found, they did "not seriously contend that dismissal on this basis is not appropriate." In re Tremont, 2013 WL 4730263, at *1.  Rather, in anticipation of dismissal, plaintiffs requested leave to amend their complaints in order to replace their purely state law claims with federal claims not barred by SLUSA, namely, claims arising under Section 10(b) of the Securities Exchange Act of 1934.  See id.

By order dated September 3, 2013, this Court granted Tremont's motion to dismiss without prejudice to plaintiffs amending their complaints to assert federal securities law claims.  In granting the motion, this Court found that plaintiffs' state law claims were precluded by SLUSA on the ground they "primarily revolve[d] around allegations of misrepresentation in connection with the sale of [covered] securities." In re Tremont, 2013 WL 4730263, at *3.

**The Consolidated Amended Complaint**

On October 3, 2013, plaintiffs filed the Amended Complaint asserting Section 10(b) claims against Tremont.  On December 6, 2013, Tremont filed an Answer to the Amended Complaint along with a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of

3

Civil Procedure dismissing the CAC for failure to state a Section 10(b) claim. The parties completed briefing on Tremont's Rule 12(c) motion on February 28, 2014.[1] The motion remains *sub judice* before this Court.

**The Second Remand Motion**

On February 26, 2014, the Supreme Court issued its decision in Troice. On March 7, relying on Troice, plaintiffs filed their Second Remand Motion asking this Court to "revisit[]" its decision dismissing plaintiffs' Florida Complaints pursuant to SLUSA. (Mot. at 9.) According to plaintiffs, Troice "establishe[s] conclusively that this Court erred when it dismissed Plaintiffs' state-law claims[.]" (Mot. at 1.)

**ARGUMENT**

**THE SECOND REMAND MOTION SHOULD BE DENIED**

    A.    *Troice* **Does Not Alter the Conclusion that SLUSA Barred Plaintiffs' State Law Claims**

Plaintiffs' reliance on Troice is misplaced. Indeed, the Supreme Court's decision in that case reinforces the conclusion that this Court properly dismissed plaintiffs' Florida Complaints on the ground they were barred by SLUSA.

For SLUSA purposes, the principal issue is whether plaintiffs' state law claims were based on alleged misrepresentations made "in connection with" the purchase or sale of "covered securities." 15 U.S.C. § 78bb(f)(1)(A). Plaintiffs argue there were no such alleged misrepresentations because they purchased only uncovered securities, *i.e.*, limited partnership interests in hedge funds managed by Tremont (the "Rye Funds" or the "Funds"). The fatal flaw

---

[1] The CAC also contained Section 20(a) control person claims against Tremont's parent companies, Massachusetts Mutual Life Insurance Company, MassMutual Holding, LLC and Oppenheimer Acquisition Corp. These defendants moved to dismiss plaintiffs' claims for failure to state a claim pursuant to Rule 12(b)(6), and briefing on those motions was also completed on February 28, 2014.

with this contention, however, is that plaintiffs invested in the Rye Funds to gain exposure to Bernard Madoff's split-strike conversion strategy, an investment strategy principally involving the purchase and sale of covered securities.  (See, e.g., Cocchi Compl. ¶¶ 2, 107 n.1.)  Because the Rye Funds are investment companies that purchased covered securities through Madoff for the benefit of plaintiffs and the Funds' other investors (see, e.g., Cocchi Compl. ¶¶ 2, 78-83, 107 n.1,), plaintiffs' Florida Complaints necessarily alleged fraud in connection with the purchase and sale of covered securities by alleging that Tremont misrepresented Madoff's investment activity to induce plaintiffs' investments in the Funds.

Troice does not compel a different conclusion.  In that case, the Supreme Court adhered to its prior decision in Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71 (2006), which broadly construed SLUSA's "in connection with" requirement.  See Troice, 134 S. Ct. at 1066 ("We do not here modify Dabit."); see also Dabit, 547 U.S. at 85 ("Congress can hardly have been unaware of the broad construction adopted by both this Court and the SEC when it imported the key phrase – 'in connection with the purchase or sale' – into SLUSA's core provision.").  Under this precedent, for SLUSA to preclude a claim, "it is enough that the fraud alleged 'coincide' with a [covered] securities transaction – whether by the plaintiff or by someone else."  Dabit, 547 U.S. at 85.

In Troice, the Supreme Court refined the Dabit analysis by clarifying that "the 'someone' making [the] decision to purchase or sell [a covered security] must be a party other than the fraudster."  Id., 134 S. Ct. at 1066.  As explained by the Court, under SLUSA, a misrepresentation "is not made 'in connection with' … a 'purchase or sale of a covered security' unless it is material to a decision by one or more individuals (*other than the fraudster*) to buy or sell a 'covered security.'"  Id. (emphasis added).  Citing prior precedent, the Court reiterated that the "in connection with" requirement is satisfied when misrepresentations "involve[] victims who took, who tried to take . . .

5

or who maintained *an ownership interest* in financial instruments that fall within the relevant statutory definition [of covered securities]." Id. at 1066 (emphasis in original) (citing SEC v. Zanford, 535 U.S. 813, 822 (2002) (finding requirement satisfied where victims were "duped into believing" that the defendant would "'invest' their assets in the stock market")).

With that clarification, the Court in Troice held that SLUSA did not bar state law claims alleging fraud in connection with a bank's sale of certificates of deposit – uncovered securities – backed by covered securities purportedly held by *the bank,* not a victim. As explained by the Court:

> At most, the complaints allege … fraudulent assurances that the Bank owned, would own, or would use the victims' money to buy *for itself* shares of covered securities. But the Bank is [the] entity that made the misrepresentations. The Bank is the fraudster, not the fraudster's victim. Nor is the Bank some other person transacting (or refraining from transacting) in covered securities. And consequently, there is not the necessary "connection" between the materiality of the misstatements and the statutorily required "purchase or sale of a covered security."

Troice, 134 S. Ct. at 1071 (emphasis in original) (citation omitted).

In this case, the necessary connection was alleged in the Florida Complaints, and SLUSA therefore barred plaintiffs' state law claims. In contrast to Troice, which involved false assurances by the fraudster that it would purchase covered securities "*for itself,*" id., 134 S. Ct. at 1071, the Florida Complaints here alleged misrepresentations "material to a transaction in [covered] securities by or on behalf of *someone other than the fraudster*," namely, plaintiffs and the other investors in the Rye Funds. See id. at 1069 (emphasis added). Indeed, those pleadings alleged that Tremont misled plaintiffs by falsely representing that their capital contributions to the Rye Funds would be placed with Madoff, who would use that capital to purchase and sell covered securities. (See, e.g., Cocchi Compl. ¶¶ 2, 78-83, 107 n.1.)

According to the Florida Complaints, "the Rye Funds were little more than a conduit for Defendants to hand Plaintiffs' funds over to Madoff." (Cocchi Compl. ¶ 2.) The complaints further alleged that plaintiffs were induced to invest in the Rye Funds in reliance on Tremont's purported

6

misrepresentation that their "investments were actually invested by Madoff in what is known as a split-strike conversion strategy." (Id.)  These allegations plainly satisfy the "in connection with" requirement as set forth in Troice given that they involve plaintiff "victims" who, through their investments in the Rye Funds, "tried to take . . . *an ownership interest* in financial instruments that fall within the relevant statutory definition [of covered securities]." Troice, 134 S. Ct. at 1066; see also Janus Capital Grp. v. First Derivative Traders, 131 S. Ct. 2296, 2299 (2011) (investment fund has "no assets apart from those owned by the investors"); Cambridge Fund, Inc. v. Abella, 501 F. Supp. 598, 614 (S.D.N.Y. 1980) (fund is a "pool of assets consisting mostly of portfolio securities that belongs to the individual investors").[2]

In sum, under both Troice and Dabit, the Florida Complaints were precluded by SLUSA because they alleged in essence that Tremont falsely represented to its "victims" (the Rye Fund investors) that they would hold ownership interests in covered securities through their investments in the Rye Funds.  For this reason alone, the Second Remand Motion should be denied.

    **B.**    **Controlling Second Circuit Precedent Compels the Conclusion that SLUSA Barred Plaintiffs' State Law Claims**

Troice does not directly address the situation presented here:  plaintiff hedge fund investors electing an investment strategy dependent almost entirely on the purchase and sale of covered

---

[2]    To be sure, plaintiffs' ownership interests in covered securities were indirect given that the securities were held directly by the Rye Funds. Cf. In re Bernard L. Madoff Investment Securities LLC, 708 F.3d 422, 427 (2d Cir. 2013) (finding that under Delaware law, feeder fund investors did not have a direct ownership interest in the cash invested by the funds with Madoff).  Nevertheless, as alleged by plaintiffs in their Florida Complaints, the Rye Funds attempted to purchase covered securities through Madoff for the benefit of the Funds' investors, including plaintiffs, thereby creating the requisite SLUSA connection under Troice. (See, e.g., Cocchi Compl. ¶¶ 2, 78-83, 107 n.1.)

securities.³  The Second Circuit, however, has directly addressed this scenario in In re Herald, Primeo and Thema Sec. Litig., 730 F.3d 112 (2d Cir. 2013).  In that case:

> The proposed plaintiff classes purchased interests in foreign feeder funds, interests that all parties concede are not included within the definition of "covered security." The district court nonetheless found that since "Madoff's purported trading strategy utilized indisputably covered securities," and since all the claims of misconduct by [defendant] JPMorgan arose "in connection with" Madoff Securities' fraud, SLUSA applied.

Id., 730 F.3d at 118.

The Second Circuit in Herald affirmed the district court's finding that the claims of the plaintiff hedge fund investors were precluded by SLUSA.  Although the investors themselves did not directly purchase covered securities, they acquired indirect ownership interests in them by acquiring direct interests in foreign hedge funds which directly purchased covered securities through Madoff.  Moreover, the Herald plaintiffs allegedly were induced to make those investments as a result of defendant JP Morgan's relationship with Madoff and its purported efforts to conceal his failure to execute, as represented, "purported investments in covered securities on U.S. exchanges."  Id. at 119.  The Second Circuit held that those allegations were "more than sufficient to satisfy" SLUSA's "in connection with" requirement.  Id.

---

3   In their briefs submitted to the Supreme Court, the plaintiffs/respondents in Troice distinguished their claims from those alleged in a Madoff-related case dismissed on SLUSA grounds, In re Kingate Management Limited Litig., No. 09-cv-5386, 2011 WL 1362106 (S.D.N.Y. March 30, 2011), appeal pending, No. 11-1397-cv (2d Cir.).  See Br. of Resp'ts, Chadbourne & Parke LLP v. Troice, 134 S. Ct. 1058 (2014) (Nos. 12-79, 12-86, 12-88) 2013 WL 3817000, at *16.  As acknowledged in those briefs, in contrast to the Kingate plaintiffs, who were investors in Madoff-related feeder funds, the Troice plaintiffs did not acquire any direct or indirect ownership interest in any covered securities when they purchased certificates of deposit issued by a bank operated as a Ponzi scheme.  See id.

In any event, the majority in Troice did not expressly address the application of SLUSA to any of the Madoff feeder fund cases.  See Troice, 134 S. Ct. at 1080 (Kennedy, J., dissenting) ("By using the term ownership interest instead of ownership, the Court also appears to accept the respondents' concession that indirect ownership, where the victim buys or sells shares in a defendant fund that itself owns equities, is sufficient in certain circumstances" to satisfy SLUSA's "in connection with" requirement).

8

Under the circumstances, the Herald decision is binding precedent in this Circuit even if Troice arguably is inconsistent with Herald, which it is not. Indeed, it remains binding unless and until it is directly overruled by the Second Circuit or the Supreme Court, which has not occurred. See, e.g. In re Procel, 467 B.R. 297, 305-06 (S.D.N.Y. 2012).[4] Accordingly, the Second Circuit's decision in Herald further compels the conclusion that the Second Remand Motion should be denied.

### C. The Amended Complaint Establishes Subject Matter Jurisdiction

Even if plaintiffs could establish that the Florida Complaints were improperly removed to federal court pursuant to SLUSA, plaintiffs waived any such defect by voluntarily filing the Amended Complaint asserting federal securities law claims over which this Court indisputably has subject matter jurisdiction. As the Second Circuit has squarely held, "if a district court erroneously exercises removal jurisdiction over an action, and the plaintiff voluntarily amends the complaint to allege federal claims, [a court] will not remand for want of jurisdiction." Barbara v. New York Stock Exchange, Inc., 99 F.3d 49, 56 (2d Cir. 1996).

Undaunted, plaintiffs contend that their Amended Complaint should be remanded to state court because the amendment of their pleading was involuntary, and they have renewed their request for remand prior to entry of final judgment on their pending federal securities law claims. (Mot. at 10.) Plaintiffs are wrong on both counts.

Here, there was nothing involuntary regarding plaintiffs' decision to file the Amended Complaint. Plaintiffs requested leave to amend *before* this Court granted Tremont's motion to

---

[4] Accord Fernandez v. Johnson, 12 Civ. 2774, 2013 U.S. Dist. LEXIS 31998, at *5-9 (S.D.N.Y. March 5, 2013); Vega v. Walsh, No. 06-CV-6492, 2010 WL 1685819, at *9 n.8 (E.D.N.Y. Apr. 22, 2010); Cook v. N.Y. Times Co. Grp. Long-Term Disability Plan, 02 Civ. 9154, 2004 WL 203111, at *3 n.4 (S.D.N.Y. Jan. 30, 2004); Hunt v. Tektronix, Inc., 952 F. Supp. 998, 1009 (W.D.N.Y. 1997).

9

dismiss the Florida Complaints. This Court never directed plaintiffs to file an amended pleading, and, accordingly, plaintiffs' decision to amend was theirs alone. "The fact that [Tremont's] motion to dismiss may have motivated [plaintiffs] to file the amended complaint does not necessarily render the decision to amend involuntary." Cartier v. Wells Fargo Bank, N.A., No. 12-2884, 2013 U.S. App. LEXIS 23612, at *9-10 (8th Cir. Nov. 25, 2013).

In the same vein, if plaintiffs genuinely believed that this Court incorrectly applied SLUSA to dismiss their state law claims, they had the option of appealing this Court's decision without the need for filing an amended complaint. Their election to pursue a different path does not render their amendment an involuntary one. As explained by the Seventh Circuit Court of Appeals in language applicable here:

> . . . [A]fter [plaintiff's] motion to remand was denied, he threw in the towel, as it were, and filed an amended complaint in federal court that included an unmistakable federal cause of action . . . . The amended complaint was thus within the original jurisdiction of the federal district courts and it makes no difference that it was filed only because [plaintiff's] previous suit had improperly been removed. If he was convinced that the original action was not removable, he could have stuck by his guns and we would have vindicated his position on appeal. But once he decided to take advantage of his involuntary presence in federal court to add a federal claim to his complaint he was bound to remain there. Otherwise he would be in a position where if he won his case on the merits in federal court he could claim to have raised the federal question in his amended complaint voluntarily, and if he lost he could claim to have raised it involuntarily and to be entitled to start over in state court. He "cannot be permitted to invoke the jurisdiction of the federal court, and then disclaim it when he loses."

Bernstein v. Lind-Waldock & Co., 738 F.2d 179, 185-86 (7th Cir. 1984).

Bernstein confirms that plaintiffs' decision to amend was voluntary, thereby waiving any right to seek remand at this juncture. It also shows that, contrary to plaintiffs' contention, such waiver is effective regardless of whether remand is sought before or after an amended federal claim proceeds to final judgment. If it were otherwise, plaintiffs would have the "heads I win, tails you lose" option of deferring any challenge to removal jurisdiction until the merits of their federal

claims have been resolved.  Consequently, waiver occurs once an amended pleading conferring subject matter jurisdiction has been filed with the district court.  Thus, if "after objecting to removal, the plaintiff voluntarily amends the original complaint to allege a federal cause of action, the plaintiff will have waived the ability to challenge removal jurisdiction."  Kidd v. Southwest Airlines Co., 891 F.2d 540, 547 (5th Cir. 1990).

### D. Plaintiffs Should Not Be Permitted To Drop Their Federal Claims

In an effort to avoid the consequences of filing their Amended Complaint, plaintiffs ask this Court for leave to drop their federal claims and replace them with purely state law claims in order to attempt to divest this Court of subject matter jurisdiction.  Tremont submits that even if the Court permits plaintiffs to make this change to their complaint, it should nevertheless exercise supplemental jurisdiction over any newly filed state law claims and deny plaintiffs' request to remand them to state court.

Plaintiffs' request that this Court relinquish jurisdiction should be denied given that such relinquishment would be contrary to "the values of judicial economy, convenience, fairness, and comity."  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988).  Indeed, the MDL Panel has determined that plaintiffs' lawsuits should be coordinated with the other Madoff-related litigation pending before this Court, see MDL Order at 1, a finding that reinforces the conclusion that the interests of judicial economy, fairness and convenience warrant this Court's exercise of supplemental jurisdiction over any state law claims plaintiffs are permitted to assert against Tremont.  See In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig., MDL No. 1715, 2013 WL 4718958, at *5-6 (N.D. Ill. Sept. 3, 2013) (denying remand in MDL case because judicial economy and convenience favored exercising supplemental jurisdiction over related state law claims); In re JetBlue Airways Corp. Privacy Litig., 379 F. Supp. 2d 299, 311 (E.D.N.Y. 2005) (refusing to remand state law claims after dismissing federal claims, and finding it appropriate to

exercise supplemental jurisdiction in part because of the objectives underlying multi-district litigation "to conserve resources by consolidating claims raised in courts around the country that address the same operative facts"); Allen v. Rite-Aid, Inc., Civ. A. No. 91-3835, 1991 WL 148272, at *2 (E.D. Pa. July 30, 1991) ("[R]etaining federal jurisdiction over these claims is appropriate in light of the national scope of the . . . litigation presently undergoing consolidated and coordinated pretrial proceedings.").

Retaining jurisdiction here would be particularly appropriate given the diverse domiciles of the named plaintiffs. While plaintiffs assert that "[m]ost Plaintiffs are individual investors residing in Florida" (Mot. at 14), in reality plaintiffs reside in twelve different states and their Florida Complaints purported to assert claims under the laws of California, Colorado, Connecticut, Minnesota, New Jersey and North Carolina, in addition to Florida.[5] If those claims were reinstated, this Court would be best situated to adjudicate them through coordination with the other Madoff-related claims in the other Madoff-related actions that remain pending before this Court. See In re Tremont Grp. Holdings, Inc. Sec. Litig., 626 F. Supp. 2d at 1338.

Further, there is no merit to plaintiffs' assertion that the Florida state court is "significantly more steeped in the facts of Plaintiffs' claims than is this Court." (Mot. at 13.) The vast majority of the Madoff-related actions against Tremont have been pending here since December 22, 2008, and the MDL master docket, which currently spans 449 pages, reflects the depth to which *this* Court has become steeped in the relevant facts and law. Moreover, Judge David French, who presided over these actions in Florida before they were removed to federal court, has been

---

[5]   (See, e.g., Anikstein Complaint ¶¶ 6-27, 156- 63, 164-72 (claim under California law), 173-81 (claim under Minnesota law), 182-90 (claim under North Carolina law), 191-99 (claim under New Jersey law), 267-89 (claims under Florida law); Becker Amended Complaint ¶¶ 6-42, 169-76, 186-94 (claim under Colorado law), 195-203 (claim under Connecticut law); Bilgore Complaint ¶¶ 7-25; Karasel Complaint ¶ 10; Spectrum Select II, L.P. Complaint ¶¶ 10-11; Spectrum Select, L.P. Complaint ¶ 10; Cocchi Complaint ¶¶ 7-21.)

reassigned to a family and probate court.  See http://15thcircuit.co.palm-beach.fl.us/web/judge-french.  He therefore would not continue to preside over plaintiffs' claims even if they could properly be remanded.  Plainly, the values of judicial economy, convenience, fairness and comity would be *disserved*, not promoted, by severing these cases from the other Madoff-related actions before this Court and remanding them to a new judge in Florida to adjudicate the claims of plaintiffs residing in twelve different states.  See, e.g., In re JetBlue, 379 F. Supp. 2d at 311.

Finally, there is nothing unfair about denying plaintiffs' request to return to Florida state court at this juncture.  Contrary to plaintiffs' contention, plaintiffs' latest procedural gambit is but the most recent installment of their master class in "forum manipulation."  (Cf. Mot. at 12.)  In that connection, there is only one reason plaintiffs took the extraordinary – and entirely unjustified – step of initially filing seven virtually identical lawsuits in seven separate Florida state courts:  to attempt to circumvent SLUSA, the stringent pleading requirements of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 ("PSLRA"), and the ruling of the MDL Panel that the interests of convenience and judicial economy would best be served by centralizing all Madoff-related litigation against Tremont before this Court.  It would be manifestly unfair to permit plaintiffs' rank forum shopping to upend the centralization process directed by the MDL Panel here.[6]

---

[6] Valencia v. Lee, 316 F.3d 299 (2d Cir. 2003) (Mot. at 13), is not to the contrary.  In contrast to the situation presented in that case, denying plaintiffs' Second Remand Motion here would be a provident exercise of this Court's discretion because no "judicial economies [can] be achieved by declining to exercise supplemental jurisdiction" and plaintiffs' state law claims do not "raise[] unsettled questions" of Florida or other state law.  Id. at 307.

## **CONCLUSION**

For the reasons stated, the Second Remand Motion should be denied.

Dated: New York, New York
March 24, 2014

                    Respectfully submitted,

                    /s/ Seth M. Schwartz
                  Seth M. Schwartz (Seth.Schwartz@Skadden.com)
                  Jason C. Vigna (Jason.Vigna@Skadden.com)
                  John Boyle (John.Boyle@Skadden.com)
                  SKADDEN, ARPS, SLATE,
                    MEAGHER & FLOM LLP
                  Four Times Square
                  New York, New York 10036
                  (212) 735-3000

                  *Attorneys for Defendants*
                    *Tremont Partners, Inc. and*
                    *Tremont Group Holdings, Inc.*