UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | :<br>: Master File No.<br>: 08 Civ. 11117 (TPG) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This Document Relates to:                    :

SPECTRUM SELECT, L.P.,                  :

                                                                12 Civ. 9057 (TPG)
                              Plaintiff,        :

                                                                ECF CASES
              - against-                        :        Electronically Filed

                                                  :

TREMONT GROUP HOLDINGS, INC., *et al.*,
                                                  :
                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

[*Caption Continued on Following Pages*]


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF TREMONT'S
MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL**



                                        SKADDEN, ARPS, SLATE,
                                          MEAGHER & FLOM LLP
                                        Four Times Square
                                        New York, New York 10036
                                        (212) 735-3000

                                        *Attorneys for Defendants
                                          Tremont Partners, Inc. and
                                          Tremont Group Holdings, Inc.*

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                 :
ALBERT ANIKSTEIN, *et al.*,
                                                 :        12 Civ. 9058 (TPG)
                              Plaintiffs,
                                                 :
              - against-
                                                 :
TREMONT GROUP HOLDINGS, INC., *et al.*,
                                                 :
                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                 :
MICHAEL BECKER, *et al.*,
                                                 :        12 Civ. 9060 (TPG)
                              Plaintiffs,
                                                 :
              - against-
                                                 :
TREMONT GROUP HOLDINGS, INC., *et al.*,
                                                 :
                              Defendants.
                                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                 :
ALAN BILGORE, *et al.*,
                                                 :        12 Civ. 9061 (TPG)
                              Plaintiffs,
                                                 :
              - against-
                                                 :
TREMONT GROUP HOLDINGS, INC., *et al.*,
                                                 :
                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

------------------------------- x

KARASEL II, L.P.,                           :

                            Plaintiff,          :           12 Civ. 9062 (TPG)

              - against-          :

TREMONT GROUP HOLDINGS, INC., *et al.,* :

                        Defendants.

------------------------------- x

                            :

SPECTRUM SELECT II, L.P. and

SPECTRUM EQUITIES, L.P.,                     :           12 Civ. 9063 (TPG)

                       Plaintiffs,        :

             - against-          :

TREMONT GROUP HOLDINGS, INC., *et al.,* :

                        Defendants.  :

------------------------------- x

                            :

ROBERT COCCHI, *et al.,*

                            :           12 Civ. 9064 (TPG)

                     Plaintiffs,        :

                            :

             - against-          :

TREMONT GROUP HOLDINGS, INC., *et al.,*

                            :

                        Defendants.

------------------------------- x

**<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ....................................................................................... ii

ARGUMENT ......................................................................................................... 1

THE COURT SHOULD CERTIFY AN INTERLOCUTORY APPEAL ...................................... 1

    A.    The Language of SLUSA ...................................................................... 2

    B.    Relevant Supreme Court Precedent on "Ownership Interest" ................... 3

    C.    Delaware Law Is Inapposite in This Context ......................................... 4

    D.    At a Minimum, the Applicability of SLUSA Presents a Difficult Legal Issue of First Impression in the Second Circuit ............................................. 7

CONCLUSION ...................................................................................................... 8

## <u>TABLE OF AUTHORITIES</u>

### CASES

Baum v. Investors Diversified Services, Inc.,
    286 F. Supp. 914 (N.D. Ill. 1968), <u>aff'd</u> 409 F.2d 872 (7th Cir. 1969)...............................4

In re Bernard L. Madoff Investment Securities LLC,
    708 F.3d 422 (2d Cir. 2013)..........................................................................................5

Boeckman v. A.G. Edwards, Inc.,
    461 F. Supp. 2d 801 (S.D. Ill. 2006)............................................................................4

Burks v. Lasker,
    441 U.S. 471 (1979).....................................................................................................4

California Public Employees' Retirement System v. Worldcom, Inc.,
    368 F.3d 86 (2d Cir. 2004)........................................................................................1, 2

Chadbourne & Parke LLP v. Troice,
    134 S. Ct. 1058 (2014)..........................................................................................2, 3, 5

In re Harbinger Capital Partners Funds Investors Litigation
    12 Civ. 1244, 2014 U.S. Dist. LEXIS 64504 (S.D.N.Y. Apr. 30, 2014)....................1, 5, 7

Investment Company Institute v. Camp,
    274 F. Supp. 624 (D.D.C. 1967), <u>rev'd on other grounds sub nom.</u> <u>National</u>
    <u>Association of Securities Dealers v. SEC</u>, 420 F.2d 83 (D.C. Cir. 1969), <u>rev'd sub</u>
    <u>nom.</u> <u>Investment Company Institute v. Camp</u>, 401 U.S. 617 (1971)...................................4

Janus Capital Group, Inc. v. First Derivative Traders,
    131 S. Ct. 2296 (2011)................................................................................................4

Lawson v. FMR LLC,
    134 S. Ct. 1158 (2014)................................................................................................3

In re Lloyd's American Trust Fund Litigation,
    96 Civ. 1262, 1997 WL 458739 (S.D.N.Y. Aug. 12, 1997)..............................................1

Massachusetts Mutual Life Insurance Co. v. Certain Underwriters at Lloyd's of London,
    C.A. No. 4791-VCL, 2010 WL 2929552 (Del. Ch. July 23, 2010)....................................5

Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,
    547 U.S. 71 (2006)............................................................................5

SEC v. Pentagon Capital Management PLC,
    844 F. Supp. 2d 377(S.D.N.Y. 2012), aff'd in part and vacated in part on other
    grounds, 725 F.3d 279 (2d Cir. 2013)....................................................3

## STATUTES

15 U.S.C. § 78aaa, *et seq.* ......................................................................4

28 U.S.C. § 1292(b) ...........................................................................1, 2

Del. Code Ann. tit. 6, § 17-701 (West 2011)......................................................4

## MISCELLANEOUS

Ann Lipton, *The* Troice *Cases – Questions Answered and Unanswered*, Bus. L. Prof Blog
    (Mar. 1, 2014), http://lawprofessors.typepad.com/business_law/2014/03/the-troice-
    cases-questions-answered-and-unanswered.html ................................................6

Defendants Tremont Partners, Inc. and Tremont Group Holdings, Inc. ("Tremont") respectfully submit this reply memorandum of law in further support of their motion for an order certifying an interlocutory appeal to the United States Court of Appeals for the Second Circuit pursuant to 28 U.S.C. § 1292(b).

## ARGUMENT

## THE COURT SHOULD
## CERTIFY AN INTERLOCUTORY APPEAL

In their Opposition Brief, plaintiffs do not dispute that two of the three prerequisites for certifying an interlocutory appeal are satisfied here:  (i) this Court's Opinion "involves a controlling question of law," and (ii) "an immediate appeal . . . may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292 (b).  Plaintiffs do argue, however, that Tremont's application should be denied because, according to plaintiffs, there is no substantial ground for difference of opinion regarding the application of SLUSA to their state law claims.  (Opp'n at 3-7.)  This contention is demonstrably erroneous and should be rejected.

The "difference of opinion" prong is satisfied when:  (1) the issue for review is one of first impression for the Second Circuit *and* (2) (a) resolution of the issue will impact the outcome of other pending cases, California Public Employees' Retirement System v. Worldcom, Inc., 368 F.3d 86, 90 (2d Cir. 2004), or (b) the "issue is particularly difficult."  In re Lloyd's Am. Trust Fund Litig., 96 Civ. 1262, 1997 WL 458739, at *5 (S.D.N.Y. Aug. 12, 1997).  Here, there is no dispute that application of SLUSA to the Madoff cases post-Troice is an issue of first impression in the Second Circuit.  There also is no dispute that resolution of the issue will affect the outcome of several pending Madoff cases and a number of other similar actions involving indirect investments in covered securities through financial intermediaries unaffiliated with Tremont.  See e.g., In re Harbinger Capital Partners Funds Investors Litig., 12 Civ. 1244, 2014 U.S.

1

Dist. LEXIS 64504, at *5 (S.D.N.Y. Apr. 30, 2014) (staying determination of SLUSA preclusion of hedge fund investor claims).  By itself, the undisputed existence of an issue of first impression potentially dispositive of other pending actions is sufficient to satisfy the "difference of opinion" prong of Section 1292(b).  See Worldcom, 368 F.3d at 90.

       Undaunted, plaintiffs oppose Tremont's application on the ground that, in their view, there can be no substantial difference of opinion regarding the question of whether plaintiffs "'acquire[d] any ownership interest in covered securities.'"  (Opp'n at 3 (quoting Opinion at 7).)  According to plaintiffs, the conclusion that they needed to, but did not, acquire such an interest "is firmly grounded in SLUSA itself, in Supreme Court precedent, and in governing Delaware law." (Id. at 4.)  This argument fails to withstand analysis.

    **A.**    **The Language of SLUSA**

       Plaintiffs identify no language in SLUSA addressing the question of who must acquire or attempt to acquire an ownership interest in covered securities to trigger SLUSA preclusion.  There is, in fact, no such language in the statute.  The Supreme Court raised and addressed the issue for the first time in Troice, but did so without relying on any statutory language. See Chadbourne & Parke LLP v. Troice, 134 S. Ct. 1058, 1066-67 (2014).  Rather, it relied on case law to conclude that a prerequisite to SLUSA preclusion is an allegation that a victim of fraud acquired or attempted to acquire an ownership interest in a covered security.  See id.  Under that precedent, the Court stated, a misrepresentation is made "in connection with" the purchase or sale of a security when it involves "victims who took, tried to take . . . or who maintained *an ownership interest* in [securities]." Id. at 1066 (emphasis in original).  The Court provided no guidance, however, for determining the circumstances in which a victim may be deemed to have acquired the requisite "ownership interest." See generally Troice, 134 S. Ct. 1058.

B.      **Relevant Supreme Court Precedent on "Ownership Interest"**

As noted above, nothing in <u>Troice</u> addresses the question of what it means to acquire an ownership interest in a covered security, much less addresses the precise issue presented here – namely, whether an indirect ownership interest in covered securities satisfies SLUSA's "in connection with" requirement.  The <u>Troice</u> opinion does cite with approval, however, a number of cases holding that the "in connection with" requirement is satisfied where a plaintiff claims that alleged misrepresentations "were material to a [securities] transaction . . . by or *on behalf of* someone other than the fraudster."  <u>Id.</u> at 1069 (emphasis added).  At a minimum, when considered in conjunction with other pertinent Supreme Court precedent, this portion of the <u>Troice</u> opinion supports the conclusion that SLUSA's "in connection with" requirement is satisfied where, as here, an individual investor takes or tries to take an indirect ownership interest in covered securities by investing in a pooled investment vehicle such as a hedge fund.  In other words, when an investment fund purchases covered securities on behalf of fund investors who are victims of an alleged fraud, the victims have an ownership interest in those securities sufficient to trigger SLUSA preclusion.

As the Supreme Court repeatedly has recognized, investment funds are in the business of buying and selling securities on behalf of their respective investors, who have an indirect, undivided ownership interest in those securities and any other assets of the fund.  In one of the most recent Supreme Court decisions touching on this subject, the Court observed that investment advisers such as Tremont manage in the aggregate "$14.7 trillion *on behalf of* nearly 94 million investors."  <u>Lawson v. FMR LLC</u>, 134 S. Ct. 1158, 1171 (2014) (emphasis added); <u>see also</u> <u>SEC v. Pentagon Capital Mgmt. PLC</u>, 844 F. Supp. 2d 377, 383 (S.D.N.Y. 2012) ("Mutual funds are investment companies whose sole purpose is to invest in securities *on behalf of* their shareholders" (emphasis added)), <u>aff'd in part and vacated in part on other grounds</u>, 725 F.3d 279 (2d Cir. 2013).  And where, as here, investment advisers are managing pooled investment vehicles

3

(such as mutual or hedge funds) on behalf of their investors, those vehicles have "*no* assets apart from those *owned by the investors*." Janus Capital Grp., Inc. v. First Derivative Traders, 131 S. Ct. 2296, 2299 (2011) (Thomas, J., concurring) (emphasis added).  As explained by the Supreme Court in Burks v. Lasker, 441 U.S. 471 (1979), "[a] mutual fund is a pool of assets, consisting primarily of portfolio securities, and *belonging to the individual investors* holding [mutual fund] shares." Id. at 480 (emphasis added).  As these cases demonstrate, the Supreme Court repeatedly has recognized that the individual investors in investment funds have an ownership interest in the securities purchased and sold by the funds on their behalf.  See also Boeckman v. A.G. Edwards, Inc., 461 F. Supp. 2d 801, 803 (S.D. Ill. 2006) (securities issued by funds to their investors "'represent an undivided interest in the fund's assets'" (citation omitted)); Baum v. Investors Diversified Servs., Inc., 286 F. Supp. 914, 917 (N.D. Ill. 1968) (each share issued by a fund "represents an undivided interest in the total portfolio of the mutual fund company"), aff'd 409 F.2d 872 (7th Cir. 1969); Investment Co. Inst. v. Camp, 274 F. Supp. 624, 628 (D.D.C. 1967) (mutual fund securities "represent an undivided interest in the fund's assets"), rev'd on other grounds sub nom. National Assoc. of Sec. Dealers v. SEC, 420 F.2d 83 (D.C. Cir. 1969), rev'd sub nom. Investment Co. Inst. v. Camp, 401 U.S. 617 (1971).

### C.     Delaware Law Is Inapposite in This Context

As plaintiffs observe, when an investment fund is organized as a limited partnership under Delaware law, the law of Delaware provides that fund investors do not hold title to the partnership's assets and thus do not directly own them.  (See Opp'n at 4 ("'[a] partner has *no interest* in specific limited partnership property'" (quoting Del. Code Ann. tit. 6, §17-701 (West 2011) (emphasis added)).)  As a result, fund investors may lack certain rights or privileges belonging to the funds as record owners of the assets.  For example, under the Securities Investor Protection Act of 1970 ("SIPA"), 15 U.S.C. § 78aaa, *et seq.*, the funds, *not* fund investors, are

deemed to be the "customers" of the broker-dealers who buy and sell securities on behalf of the funds. In re Bernard L. Madoff Inv. Sec. LLC, 708 F.3d 422, 427 (2d Cir. 2013) (Opp'n at 4). In the same vein, the funds, *not* fund investors, are entitled to coverage under insurance policies that name the funds, *not* fund investors, as insureds. See Massachusetts Mut. Life Ins. Co. v. Certain Underwriters at Lloyd's of London, C.A. No. 4791-VCL, 2010 WL 2929552, at *7-8 (Del. Ch. July 23, 2010) (Opp'n at 5). The contours of partnership property rights under state law, however, have nothing to do with SLUSA. Indeed, state law rules pertaining to direct ownership of fund assets are irrelevant to the question of whether a fund investor's indirect ownership interest in covered securities held by the fund satisfies SLUSA's "in connection with" requirement.

Under the pertinent precedent construing and applying the federal securities laws, a fund investor's indirect ownership interest in the assets of the fund will trigger SLUSA preclusion consistent with the parameters set by the Supreme Court in Dabit and Troice. The allegation that a fund investor invested in a fund based on a false representation that the fund would acquire covered securities on behalf of its investors plainly constitutes an allegation of deception coinciding with a covered securities transaction by or *on behalf of anyone* other than the fraudster. See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 85 (2006); Troice, 134 S. Ct. at 1066, 1067, 1069. As one court recently has explained:

> [L]anguage in Troice suggests that a claim is precluded under SLUSA whenever there is someone other than the fraudster "who took, who tried to take, who divested themselves of, who tried to divest themselves of, or who maintained *an ownership interest* in" covered securities. In dissent, Justice Kennedy read the phrase "ownership interest" as a gesture at the plaintiffs' argument that the Stanford CDs were distinguishable from the Madoff feeder fund investments because the former, unlike the latter, gave investors no "ownership interest" in securities purchased by the fraudster. . . .
>
> This reading also has a certain intuitive plausibility. If federal securities laws address themselves chiefly to investors involved in the "taking or dissolving of ownership positions," [Troice, 134 S. Ct. at 1067] (majority opinion), then they might logically extend to any fraud that induces a victim to buy or sell – or hold –

an investment based on a misperception of the value of the covered securities underlying that investment.  From this perspective, whether that investment involves owning actual covered securities, or instead buying into a vehicle whose sole purpose is to provide exposure to those securities, would not seem relevant.

In re Harbinger Capital, 2014 U.S. Dist. LEXIS 64504, at *8-10 (footnote omitted).

Even if plaintiffs' distinction between direct and indirect ownership had any legal significance under SLUSA, there still would remain substantial ground for difference of opinion regarding the application of SLUSA here.  As plaintiffs acknowledged in their state law complaints, the Rye Funds, Madoff's customers, were the direct owners of the covered securities Madoff purportedly purchased and sold on their behalf.  While plaintiffs contend in their Opposition Brief that the Rye Funds were "fraudsters" (Opp'n at 1), their state law complaints contained no allegation that the Rye Funds knew Madoff was running a Ponzi scheme or were aware he had failed to purchase and sell covered securities on behalf of the Funds as required under the operative agreements between the parties.  Consequently, plaintiffs' state law claims are barred by SLUSA even if a defrauded victim must be a direct owner of covered securities to satisfy the statute's "in connection with" requirement:

> [F]eeder fund investors' claims are not predicated on Madoff's misstatements (directly), but are predicated on the statements of the funds themselves.  Assuming that Madoff's misstatements to the funds are the relevant ones for the purposes of the Troice analysis (which courts have sometimes held, see In re Herald, Primeo & Thema Sec. Litig., 730 F.3d 112 (2d Cir. 2013); Barron v. Igolnikov, 09 Civ. 4471, 2010 U.S. Dist. LEXIS 22267 (S.D.N.Y. Mar. 10, 2010)), then under Troice, the [misrepresentation] claims of investors in Madoff feeder funds . . . *are precluded by SLUSA*, because the funds in which they invested. . . were told that Madoff would be buying covered securities directly on behalf of (some) fund.

Ann Lipton, The Troice *Cases - Questions Answered and Unanswered*, Bus. L. Prof Blog (Mar. 1, 2014), http://lawprofessors.typepad.com/business_law/2014/03/the-troice-cases-questions-answered-and-unanswered.html (emphasis added).

**D.      At a Minimum, the Applicability of SLUSA Presents a**
**Difficult Legal Issue of First Impression in the Second Circuit**

As the foregoing analysis shows, the application of SLUSA to plaintiffs' state law claims raises an issue of sufficient complexity to warrant certification of an interlocutory appeal. In a recent opinion addressing the reach of SLUSA in the wake of <u>Troice</u>, Judge Nathan opted to defer ruling on that issue pending issuance of the Second Circuit's anticipated decisions in two Madoff-related SLUSA cases *sub judice* before the appellate court, <u>In re Herald</u>, No. 12-156 and <u>In re Kingate Management Limited Litigation</u>, No. 11-1397.  <u>See</u> <u>In re Harbinger Capital</u>, 2014 U.S. Dist. LEXIS 64504, at *12-14.  Judge Nathan's decision to defer her ruling was premised on her analysis of the competing arguments pro and con for application of SLUSA in light of <u>Troice</u>. Based on that analysis, the court concluded that the issue is an inherently difficult one to resolve given the vagaries of <u>Troice</u>, making it impossible for the court to "predict the Second Circuit's decision making [in <u>In re Herald</u> and <u>In re Kingate</u>] with confidence."  <u>Id.</u> at *13.  The difficulties identified by Judge Nathan reinforce the conclusion that the SLUSA question presented in this case is one that merits interlocutory review.

## CONCLUSION

For the reasons stated above and in Tremont's Moving Brief, Tremont respectfully submits that this Court should grant Tremont's motion and enter an order certifying the SLUSA Preclusion Issue for interlocutory review by the Second Circuit.

Dated:  May 19, 2014
         New York, New York

Respectfully submitted,

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

By:  /s/ Seth M. Schwartz
     Seth M. Schwartz (Seth.Schwartz@Skadden.com)
     Jason C. Vigna (Jason.Vigna@Skadden.com)
     Four Times Square
     New York, New York 10036
     (212) 735-3000

     Attorneys for Defendants
     Tremont Partners, Inc. and
     Tremont Group Holdings, Inc.

8