UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | : | Master File No. 08 Civ. 11117 (TPG) |
| This Document Relates to: | : | |
| SPECTRUM SELECT, L.P., Plaintiff, | : | 12 Civ. 9057 (TPG) |
| - against- | : | ECF CASES Electronically Filed |
| TREMONT GROUP HOLDINGS, INC., *et al.*, Defendants. | : | |

[*Caption Continued on Following Pages*]

**MEMORANDUM OF LAW IN SUPPORT OF TREMONT'S MOTION FOR: (A) RELIEF FROM THE OPINION OF THIS COURT DATED APRIL 14, 2014, AND <u>(B) LIMITED RELIEF FROM THE STAY ENTERED ON MAY 22, 2014</u>**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

*Attorneys for Defendants Tremont Partners, Inc. and Tremont Group Holdings, Inc.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ALBERT ANIKSTEIN, *et al.*,

Plaintiffs,

- against-

TREMONT GROUP HOLDINGS, INC., *et al.*,

Defendants.

12 Civ. 9058 (TPG)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MICHAEL BECKER, *et al.*,

Plaintiffs,

- against-

TREMONT GROUP HOLDINGS, INC., *et al.*,

Defendants.

12 Civ. 9060 (TPG)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ALAN BILGORE, *et al.*,

Plaintiffs,

- against-

TREMONT GROUP HOLDINGS, INC., *et al.*,

Defendants.

12 Civ. 9061 (TPG)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

KARASEL II, L.P., : 12 Civ. 9062 (TPG)

Plaintiff, :

- against- :

TREMONT GROUP HOLDINGS, INC., *et al.*, :

Defendants. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SPECTRUM SELECT II, L.P. and SPECTRUM EQUITIES, L.P., : 12 Civ. 9063 (TPG)

Plaintiffs, :

- against- :

TREMONT GROUP HOLDINGS, INC., *et al.*, :

Defendants. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ROBERT COCCHI, *et al.*, : 12 Civ. 9064 (TPG)

Plaintiffs, :

- against- :

TREMONT GROUP HOLDINGS, INC., *et al.*, :

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ........................................................................................................................2

THE 4/14 OPINION SHOULD BE SET ASIDE IN LIGHT OF *HERALD II*..............................2

A. The Court Can and Should Reconsider the 4/14 Opinion......................................2

B. *Herald I* and The *Troice* Decision ...........................................................................2

C. *Herald II*.........................................................................................................................4

D. *Herald* Is Virtually on All Fours...............................................................................4

CONCLUSION......................................................................................................................9

**TABLE OF AUTHORITIES**

**CASES**


Baum v. Investors Diversified Services, Inc.,
286 F. Supp. 914 (N.D. Ill. 1968) ........ 7

In re Bernard L. Madoff Investment Securities LLC,
708 F.3d 422 (2d Cir. 2013) ........ 5

Boeckman v. A.G. Edwards, Inc.,
461 F. Supp. 2d 801 (S.D. Ill. 2006) ........ 7

Burks v. Lasker,
441 U.S. 471 (1979) ........ 7

Chadbourne & Parke LLP v. Troice,
134 S. Ct. 1058 (2014) ........ 1, 3, 6

In re Harbinger Capital Partners Funds Investor Litigation,
12 Civ. 1244, 2014 WL 1870791 (S.D.N.Y. Apr. 30, 2014) ........ 8

In re Herald, Primeo & Thema Securities Litigation,
09 Civ. 289, 2011 WL 5928952 (S.D.N.Y. Nov. 29, 2011) ........ 2

In re Herald, Primeo & Thema,
730 F.3d 113 (2d Cir. 2013) ........ 1, 2, 5

In re Herald, Primeo & Thema,
Nos. 12-156-cv(L), 12-162-cv(Con), 2014 WL 2199774 (2d Cir. May 28, 2014) 1, 2, 4, 6, 9

Investment Company Institute v. Camp,
274 F. Supp. 624, 628 (D.D.C. 1967) ........ 7

Janus Capital Group, Inc. v. First Derivative Traders,
131 S. Ct. 2296 (2011) ........ 7

Lawson v. FMR LLC,
134 S. Ct. 1158 (2014) ........ 7

Massachusetts Mutual Life Insurance Co. v. Certain Underwriters at Lloyd's of London,
C.A. No. 4791-VCL, 2010 WL 2929552 (Del. Ch. July 23, 2010) ........ 5

SEC v. Pentagon Capital Management PLC,
844 F. Supp. 2d 377(S.D.N.Y. 2012) ........ 7

Shervington v. Village of Piermont,
732 F. Supp. 2d 423 (S.D.N.Y. 2010) ........ 2

In re Tremont Securities Law, State Law & Insurance Litigation,
08 Civ. 11117, 2013 WL 4730263 (S.D.N.Y. Sept. 3, 2013) .............................................. 1

In re Tremont Securities Law, State Law & Insurance Litigation,
08 Civ. 11117, 2014 WL 1465713 (S.D.N.Y. Apr. 14, 2014) .............................................. 1

**STATUTES AND RULES**

15 U.S.C. § 78aaa .............................................. 5

15 U.S.C. § 78bb(f) .............................................. 1

Fed. R. Civ. P. 54(b) .............................................. 2

Del. Code Ann. tit. 6, § 17-701 (West 2011) .............................................. 5

## PRELIMINARY STATEMENT

Defendants Tremont Partners, Inc. and Tremont Group Holdings, Inc. (together, "Tremont") respectfully submit this memorandum of law in support of their motion for an order: (a) lifting the extant stay of these cases (the "Stay") so that this Court may decide this motion, and (b) setting aside the opinion of this Court dated April 14, 2014 (the "4/14 Opinion"[1]). The 4/14 Opinion granted in part plaintiffs' motion for reconsideration of this Court's earlier decision (the "Original Opinion"[2]) dismissing plaintiffs' state law claims pursuant to the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 78bb(f). The Court entered the Stay pursuant to its Order dated May 22, 2014 granting Tremont's motion to certify an interlocutory appeal from the 4/14 Opinion and staying these cases pending resolution of that appeal.

Shortly after this Court issued the 4/14 Opinion and entered the Stay, the Second Circuit released its ruling in In re Herald, Primeo & Thema, Nos. 12-156-cv(L), 12-162-cv(Con), 2014 WL 2199774 (2d Cir. May 28, 2014) ("Herald II"), which denied a petition for rehearing of its decision dismissing state law claims substantially similar to those asserted by plaintiffs in this case, *i.e.*, claims of misrepresentation arising out of investments in hedge funds with exposure to Bernard Madoff and his firm, Bernard L. Madoff Investment Securities LLC ("Madoff Securities"). See In re Herald, Primeo & Thema, 730 F.3d 112 (2d Cir. 2013) ("Herald I").

In Herald II, the Second Circuit rejected plaintiffs' contention that Herald I no longer remained good law following the Supreme Court's decision in Chadbourne & Parke LLP v. Troice, 134 S. Ct. 1058 (2014). Indeed, the Second Circuit found that Troice "confirms the logic and holding" of Herald I. Herald II, 2014 WL 2199774, at *1. As explained by the court, paraphrasing Troice, Madoff feeder fund investors, such as plaintiffs here, were victims of

---

[1] In re Tremont Sec. Law, State Law & Ins. Litig., 08 Civ. 11117, 2014 WL 1465713 (S.D.N.Y. Apr. 14, 2014).

[2] In re Tremont Sec. Law, State Law & Ins. Litig., 08 Civ. 11117, 2013 WL 4730263 (S.D.N.Y. Sept. 3, 2013).

Madoff's fraud who "'tried to take . . . an ownership position in . . . covered securities,'" thereby satisfying SLUSA's "in connection with" requirement. Herald II, 2014 WL 2199774, at *2.

Because there is no material difference between the facts of this case and those presented in Herald, Tremont submits that Herald I and Herald II compel the conclusion that this Court properly dismissed plaintiffs' state law claims pursuant to SLUSA in its Original Opinion. Moreover, a finding by this Court that Tremont is correct on this point would moot Tremont's interlocutory appeal from the 4/14 Opinion. Accordingly, Tremont further submits that this Court should lift the Stay to resolve this motion and vacate the 4/14 Opinion in light of Herald II.

## ARGUMENT

## THE 4/14 OPINION SHOULD BE SET ASIDE IN LIGHT OF *HERALD II*

### A. The Court Can and Should Reconsider the 4/14 Opinion

This Court may "reconsider a prior decision at any time before the entry of final judgment" pursuant to Rule 54(b) of the Federal Rules of Civil Procedure and "the inherent power of the court." Shervington v. Village of Piermont, 732 F. Supp. 2d 423, 425 (S.D.N.Y. 2010). One of the "major grounds justifying reconsideration [is] an intervening change of controlling law." Id. (citing Virgin Atl. Airways Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992). As shown below, the Second Circuit's decision in Herald II is an intervening change of controlling law warranting reconsideration of the 4/14 Opinion and entry of an order setting it aside.

### B. *Herald I* and The *Troice* Decision

The Second Circuit decided Herald I before the Supreme Court decided Troice. Herald I affirmed a decision of the district court holding that "Madoff's announced intention to purchase covered securities (*i.e.*, stocks and options) for the benefit of Funds in which Plaintiffs invested satisfies the requirement [for SLUSA preclusion] that Plaintiffs' [state law] claims . . . were made 'in connection with the purchase or sale of a covered security.'" In re Herald, Primeo &

Thema Sec. Litig., 09 Civ. 289, 2011 WL 5928952, at *8 (S.D.N.Y. Nov. 29, 2011) (citation omitted), aff'd sub nom. In re Herald, Primeo & Thema, 730 F.3d 112 (2d Cir. 2013), reh'g denied, Nos. 12-156-cv(L), 12-162-cv(Con.), 2014 WL 2199774 (2d Cir. May 28, 2014).

Troice was a fundamentally different case because, unlike the plaintiff hedge fund investors in Herald, the Troice plaintiffs were holders of certificates of deposit ("CDs") marketed as "safe" investments backed by assets, including covered securities, owned solely by the bank that issued the CDs. In Troice, the Supreme Court considered whether the alleged purchase of covered securities by the defendant bank, the alleged "fraudster," satisfied SLUSA's "in connection with" requirement. The Court answered that question in the negative, holding that SLUSA requires a transaction in covered securities "by or *on behalf of* someone other than the fraudster." Troice, 134 S. Ct. at 1069 (emphasis added). As explained by the Court:

> [T]he "someone" making that decision to purchase or sell must be a party *other than the fraudster*. If the *only party* who decides to buy or sell a covered security as a result of a lie *is the liar*, that is not a "connection" that matters.
>
> . . . [A] fraud [is] "in connection with" a purchase or sale of a [covered] security [when it] involve[s] victims who took, *who tried to take*, who divested themselves of, who tried to divest themselves of, or who maintained *an ownership interest* in financial instruments that fall within the relevant statutory definition.

Id. at 1066 (first through fourth emphases added).

Applying these principles, the Supreme Court found that the plaintiffs' state law claims were not precluded by SLUSA because: (a) the *only* party alleged to have purchased covered securities was the fraudster, *i.e.*, the defendant bank, and (b) the bank acted solely "*for itself*," not plaintiffs, who were holders of CDs – uncovered debt securities – with no ownership interest in covered securities. Troice, 134 S. Ct. at 1071. In contrast, in this case and in Herald, Madoff allegedly purchased covered securities *not* for his own account but rather, on behalf of

others, including the hedge funds that maintained customer accounts with Madoff Securities and the investors in those funds.

**C. *Herald II***

The Second Circuit considered the impact of Troice in Herald II after the plaintiffs filed a petition for rehearing and rehearing en banc. The Second Circuit denied the petition for panel rehearing in Herald II, finding that Troice did not undermine the "logic and holding" of Herald I. As explained by the Court:

> . . . The plaintiffs in Troice were not seeking, directly or indirectly, to purchase covered securities. Thus, a plaintiff in Troice was entirely distinguishable from "a victim who took, *tried to take*, or maintained an ownership position in the statutorily relevant securities through 'purchases' or 'sales' induced by the fraud."
>
> Madoff Securities, by contrast, fraudulently induced attempted investments in covered securities, albeit through feeder funds (not alleged in the instant complaints as anything other than intermediaries), and the defendant banks [in Herald] are alleged to have furthered that scheme. Madoff Securities' victims thus "tried to take . . . an ownership position in the statutorily relevant securities," *i.e.*, covered securities. That Madoff Securities (a Ponzi scheme) fraudulently failed to follow through on its promise to place the investments in covered securities does not in any respect remove this case from the ambit of SLUSA as defined in Troice.

Herald II, 2014 WL 2199774, at *1-2 (citations omitted) (second alteration in original).

Here, as in Herald, Madoff fraudulently induced attempted investments in covered securities by the Rye Funds (described in the complaints as "conduits" to Madoff, see, e.g., Cocchi Compl. ¶ 2), which tried to make those investments on behalf of plaintiffs and the Rye Funds' other investors. Thus, here too, Madoff's victims "tried to take an ownership position" in covered securities, thereby satisfying SLUSA's "in connection with" requirement. Herald II, 2014 WL 2199774, at *2.

**D. *Herald* Is Virtually on All Fours**

Plaintiffs have indicated they will attempt to distinguish Herald on the facts. They contend that the decision turned on a factor absent here: the direct purchase of covered securities

by "innocent" offshore feeder funds victimized by Madoff's fraud. Plaintiffs argue that this case is different from Herald in that regard because their complaints accused the Rye Funds of fraud, thereby transforming the Funds into "fraudsters" whose purchases and sales cannot satisfy the "in connection with" requirement under Troice.[3] According to plaintiffs, the only victims here were Rye Fund investors who purportedly acquired ownership interests solely in uncovered securities – limited partnership interests in the Funds – which do not trigger SLUSA preclusion. As for the latter contention, plaintiffs maintain that their position is supported by Delaware law and the Second Circuit's decision in In re Bernard L. Madoff Investment Securities LLC, 708 F.3d 422 (2d Cir. 2013). There is, however, no merit to this assertion.

When hedge funds such as the Rye Funds are organized as limited partnerships under Delaware law, the law of Delaware provides that fund investors do not hold title to the partnerships' assets and thus do not directly own them. See Del. Code Ann. tit. 6, § 17-701 (West 2011) ("A partner has no interest in specific limited partnership property."). As a result, fund investors may lack certain rights or privileges belonging to the funds as record owners of the assets. For example, under the Securities Investor Protection Act of 1970 ("SIPA"), 15 U.S.C. § 78aaa, the funds, *not* fund investors, are deemed to be the "customers" of the broker-dealers who buy and sell securities on behalf of the funds. See In re Bernard L. Madoff Inv. Sec., 708 F.3d at 427. In the same vein, the funds, *not* fund investors, are entitled to coverage under insurance policies that name the funds, *not* fund investors, as insureds. See Massachusetts Mut. Life Ins. Co. v. Certain Underwriters at Lloyd's of London, C.A. No. 4791-VCL, 2010 WL 2929552, at *7-8 (Del. Ch. July 23, 2010). The contours of partnership property rights under state law, however, have little to do

[3] In reality, the Herald plaintiffs made nearly identical allegations, claiming that the funds themselves made numerous misrepresentations in their offering memoranda. See Herald I, 730 F.3d at 116. (See also Complaint attached to the accompanying transmittal declaration of Jason C. Vigna as Exhibit A.)

with SLUSA or, more specifically, the question of whether a fund investor's indirect ownership interest in covered securities held by the fund satisfies SLUSA's "in connection with" requirement.

As a threshold matter, the Supreme Court's decision in Troice did not attempt to define the meaning of "ownership interest" for SLUSA purposes. Rather, it was undisputed in Troice that the defendant bank alone had the requisite interest because it purchased the covered securities at issue solely "*for itself*." 134 S. Ct. at 1071. The Troice Court did, however, cite with approval cases holding that the "in connection with" requirement is satisfied where a plaintiff claims alleged misrepresentations "were material to a [securities] transaction . . . by or *on behalf of* someone other than the fraudster." Id. at 1069 (emphasis added). When considered in conjunction with other pertinent precedent, this portion of Troice supports the conclusion that SLUSA's "in connection with" requirement is satisfied where, as here, an individual investor takes or tries to take an indirect ownership interest in covered securities by investing in a pooled investment vehicle such as a hedge fund that buys and sells securities.

In Herald, for example, the Second Circuit recognized that an attempt to invest indirectly in covered securities through a hedge fund satisfies SLUSA's "in connection with" requirement. Indeed, the court distinguished Troice in part on the ground that the plaintiffs in that case "were not seeking, directly or *indirectly*, to purchase covered securities." Herald II, 2014 WL 2199774, at *1 (emphasis added). Moreover, the Herald plaintiffs alleged, as plaintiffs do here, that the funds were mere intermediaries that funneled plaintiffs' capital to Madoff for investment. See id. at *2. Thus, in Herald, the "Madoff Securities' victims" who "'tried to take . . . an ownership position in . . . covered securities'" included the plaintiff investors in the intermediary feeder funds, and their effort to indirectly purchase securities through those funds satisfied SLUSA's "in connection with" requirement. Id. (citation omitted).

The Second Circuit's analysis in Herald is in accord with applicable federal law recognizing that investment funds are in the business of buying and selling securities on behalf of their respective investors. In one of the most recent Supreme Court decisions touching on this subject, the Court observed that investment advisers such as Tremont manage in the aggregate "$14.7 trillion *on behalf of* nearly 94 million investors." Lawson v. FMR LLC, 134 S. Ct. 1158, 1171 (2014) (emphasis added); see also SEC v. Pentagon Capital Mgmt. PLC, 844 F. Supp. 2d 377, 383 (S.D.N.Y. 2012) ("'Mutual funds are investment companies whose sole purpose is to invest in securities *on behalf of* their shareholders.'" (quoting expert with approval) (emphasis added)), aff'd in part, vacated in part on other grounds, 725 F.3d 279 (2d Cir. 2013), pet. for cert. filed, No. 13-1142 (U.S. Mar. 19, 2014). Many of those investors invest through pooled investment vehicles, such as hedge funds and mutual funds, each of which "is a pool of assets, consisting primarily of portfolio securities, and *belonging to the individual investors* holding [fund] shares." Burks v. Lasker, 441 U.S. 471, 480 (1979) (emphasis added); see also Janus Capital Grp., Inc. v. First Derivative Traders, 131 S. Ct. 2296, 2299 (2011) (investment funds have "*no* assets apart from those *owned by the investors*" (emphasis added)). Thus, individual investors in investment funds plainly have an indirect ownership interest in the securities purchased and sold by the funds on their behalf. See Boeckman v. A.G. Edwards, Inc., 461 F. Supp. 2d 801, 803 (S.D. Ill. 2006) (securities issued by funds to their investors "'represent an undivided interest in the fund's assets'" (citation omitted)); Baum v. Investors Diversified Servs., Inc., 286 F. Supp. 914, 917 (N.D. Ill. 1968) (each share issued by a fund "represents an undivided interest in the total portfolio of the mutual fund company"), aff'd, 409 F.2d 872 (7th Cir. 1969); Investment Co. Inst. v. Camp, 274 F. Supp. 624, 628 (D.D.C. 1967) (mutual fund securities "represent an undivided interest in the fund's assets"), rev'd on other grounds sub nom. NASD v. SEC, 420 F.2d 83 (D.C. Cir. 1969), rev'd sub nom. Investment Co. Inst. v. Camp, 401 U.S. 617 (1971).

The indirect ownership interest fund investors have in the assets of a fund holding covered securities is sufficient to satisfy SLUSA's "in connection with" requirement. As one court recently observed:

> [L]anguage in Troice suggests that a claim is precluded under SLUSA whenever there is someone other than the fraudster "who took, who tried to take, who divested themselves of, who tried to divest themselves of, or who maintained *an ownership interest in*" covered securities. In dissent, Justice Kennedy read the phrase "ownership interest" as a gesture at the plaintiffs' argument that the Stanford CDs were distinguishable from Madoff feeder fund investments because the former, unlike the latter, gave investors no "ownership interest" in securities purchased by the fraudster. . . .
>
> This reading also has a certain intuitive plausibility. If federal securities laws address themselves chiefly to investors involved in "the taking or dissolving of ownership positions," [Troice, 134 S. Ct. at 1067] (majority opinion), then they might logically extend to any fraud that induces a victim to buy or sell – or hold – an investment based on a misperception of the value of the covered securities underlying that investment. From this perspective, whether that investment involves owning actual covered securities, or instead buying into a vehicle whose sole purpose is to provide exposure to those securities, would not seem relevant.

In re Harbinger Capital Partners Funds Investor Litig., 12 Civ. 1244, 2014 WL 1870791, at *2-3 (S.D.N.Y. Apr. 30, 2014) (footnote and citations omitted).

Not only are plaintiffs themselves victims of Madoff's fraud for purposes of SLUSA preclusion, but the Rye Funds are too. As plaintiffs acknowledged in their state law complaints, the Rye Funds, Madoff's customers, were the direct owners of the covered securities Madoff purportedly purchased and sold on their behalf. While plaintiffs alleged that the Funds' offering materials were false and misleading in certain respects, the complaints nowhere alleged that the Rye Funds knew Madoff was running a Ponzi scheme or were aware he had failed to purchase and sell covered securities on their behalf as required under the operative agreements between the parties. Consequently, under the allegations of plaintiffs' complaints, plaintiffs' state law claims therefore still would be barred by SLUSA even if a defrauded victim needed to be a direct owner of

covered securities to satisfy the statute's "in connection with" requirement (which, as shown in Herald II, the victim does not).

**CONCLUSION**

For the reasons stated above, Tremont respectfully requests that this Court lift the Stay and grant Tremont's motion to vacate the 4/14 Opinion.

Dated: June 3, 2014
New York, New York

Respectfully submitted,

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

By: /s/ Seth M. Schwartz
Seth M. Schwartz (Seth.Schwartz@Skadden.com)
Jason C. Vigna (Jason.Vigna@Skadden.com)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Defendants
Tremont Partners, Inc. and
Tremont Group Holdings, Inc.