# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

FIRM/AFFILIATE OFFICES
-----
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
-----
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

DIRECT DIAL
212-735-2710
DIRECT FAX
917-777-2710

July 23, 2014

**BY HAND AND VIA ECF**

Honorable Thomas P. Griesa
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re: *Spectrum Select, L.P. v. Tremont Group Holdings, Inc.*, 12 Civ. 9057 (TPG); *Anikstein v. Tremont Group Holdings, Inc.*, 12 Civ. 9058 (TPG); *Becker v. Tremont Group Holdings, Inc.*, 12 Civ. 9060 (TPG); *Bilgore v. Tremont Group Holdings, Inc.*, 12 Civ. 9061 (TPG); *Karasel II, L.P. v. Tremont Group Holdings, Inc.*, 12 Civ. 9062 (TPG); *Spectrum Select II, L.P. v. Tremont Group Holdings, Inc.*, 12 Civ. 9063 (TPG); *Cocchi v. Tremont Group Holdings, Inc.*, 12 Civ. 9064 (TPG)

Dear Judge Griesa:

On behalf of the Tremont Defendants, we write to apprise the Court of an opinion recently issued in the action captioned In re Harbinger Capital Partners Funds Investor Litigation, 12 Civ. 1244, 2014 U.S. Dist. LEXIS 94018 (S.D.N.Y. July 7, 2014). We submit that Harbinger bears directly on Tremont's pending motion to reinstate this Court's Order dismissing plaintiffs' state law claims pursuant to SLUSA. (See Spectrum Select v. Tremont Group Holdings, Inc., 12 Civ. 9057 (TPG), Docket Nos. 189, 195, 197.)

In Harbinger, Judge Nathan addressed the applicability of SLUSA to state law claims asserted by hedge fund investors in light of the Second Circuit's decision in In re Herald, Primeo & Thema, No. 12-156-cv, 2014 WL 2199774 (2d Cir. May 28, 2014) ("Herald II"). In that connection, the court summarized as follows the Second Circuit's reasoning for distinguishing Chadbourne & Parke LLP v. Troice, 134 S. Ct. 1058 (2014), and for finding that SLUSA barred the state law claims of Madoff feeder fund investors:

> In [Herald II], . . . the panel stated that the Supreme Court's ruling [in Troice] confirm[ed] the logic and holding of its earlier opinion. Herald II, 2014 WL 2199774, at *1. The dispositive fact in Troice, the panel indicated, was that in purchasing CDs from Stanford Bank, the plaintiffs were "not seeking, *directly or indirectly*, to purchase covered securities." Id. (emphasis added). By contrast,

Honorable Thomas P. Griesa
July 23, 2014
Page 2

>Madoff's victims made "attempted investments in covered securities, albeit through feeder funds." Id. at *2. In drawing this distinction, the Second Circuit unmistakably adopted a broad reading of Troice under which even an indirect ownership interest in covered securities—for instance, the interest conveyed by an investment in a feeder fund—triggers SLUSA preclusion.

2014 U.S. Dist. LEXIS 94018, at *9.

Notably, the Harbinger court rejected the argument, also advanced by plaintiffs here, that the plaintiff hedge fund investors "'could not have been trying to take an ownership interest in covered securities' because Delaware law, under which the funds are organized, provides that a limited partner has 'no interest in specific limited partnership property.'" Id. at *10. As explained by the Harbinger court, the Second Circuit in Herald II did not look to state law to define "ownership interest," but rather, "employed a functional approach," which "turn[ed] on the purpose of a plaintiff's investment" – i.e., SLUSA applied where "Madoff victims 'tried to take . . . an ownership position' in covered securities by investing in the feeder funds," because "one invests in a hedge fund to gain exposure to the assets held by the hedge fund." Id. at *10-11 (citation omitted).

A copy of the Harbinger decision is attached to this letter.

Respectfully submitted,

Seth M. Schwartz

Attachment

cc: All counsel of record (via ECF)



# In re HARBINGER CAPITAL PARTNERS FUNDS INVESTOR LITIGATION

## 12 Civ. 1244 (AJN)

## UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

### 2014 U.S. Dist. LEXIS 94018

### July 7, 2014, Decided
### July 7, 2014, Filed

**PRIOR HISTORY:** *In re Harbinger Capital Partners Funds Investor Litig., 2013 U.S. Dist. LEXIS 142268 (S.D.N.Y., Sept. 30, 2013)*

**COUNSEL:** [*1] For Lili Schad, Individually and on Behalf of All Others Similarly Situated, and derivatively on behalf of Harbinger Capital Partners Fund I, L.P., Harbinger Capital Fund II, L.P., Harbinger Capital Partners Special Situation Fund L.P., Harbinger Capital Partners Offshor, Plaintiff: Jacob H. Zamansky, LEAD ATTORNEY, Kevin Dugald Galbraith, Zamansky & Associates LLC, New York, NY; Steven E. Fineman, LEAD ATTORNEY, Daniel Patrick Chiplock, Nicholas R. Diamand, Lieff Cabraser Heimann & Bernstein, LLP, New York, NY; Amanda Marjorie Steiner, Girard Gibbs LLP, San Francisco, CA; Christina H. C. Sharp, Daniel Charles Girard, PRO HAC VICE, Jonathan K. Levine, Girard Gibbs LLP, San Francisco, CA; David A. Straite, Kaplan Fox & Kilsheimer, LLP, New York, NY; Edward H. Glenn , Jr., Zamansky & Associates, L.L.C., New York, NY; Samuel Ethan Bonderoff, Paul, Weiss, Rifkind, Wharton & Garrison LLP (NY), New York, NY.

For Anil Bhardwaj, Individually and on Behalf of All Others Similarly Situated, and derivatively on behalf of Harbinger Capital Partners Fund I, L.P., Harbinger Capital Fund II, L.P., Harbinger Capital Partners Special Situation Fund L.P., Harbinger Capital Partners Offshor, Plaintiff: [*2] Steven E. Fineman, LEAD ATTORNEY, Daniel Patrick Chiplock, Nicholas R. Diamand, Lieff Cabraser Heimann & Bernstein, LLP, New York, NY; David A. Straite, Kaplan Fox & Kilsheimer, LLP, New York, NY; Edward H. Glenn , Jr., Jacob H. Zamansky, Kevin Dugald Galbraith, Zamansky & Associates, L.L.C., New York, NY.

For The Edward M. Armfield Sr. Foundation, Inc., Randall Lang, Klein Family Partnership L.P., Plaintiffs: Jacob H. Zamansky, LEAD ATTORNEY, Kevin Dugald Galbraith, Edward H. Glenn , Jr., Zamansky & Associates LLC, New York, NY; Steven E. Fineman, LEAD ATTORNEY, Lieff Cabraser Heimann & Bernstein, LLP, New York, NY; Daniel Patrick Chiplock, Nicholas R. Diamand, Lieff Cabraser Heimann & Bernstein, LLP, New York, NY; Samuel Ethan Bonderoff, Paul, Weiss, Rifkind, Wharton & Garrison LLP (NY), New York, NY.

For Harbinger Capital Partners LLC, Harbinger Holdings, LLC, Philip A. Falcone, Defendants: Daniel J. Leffell, Leslie Gordon Fagen, LEAD ATTORNEYS, Leslie Gordon, Steven Craig Herzog, Paul, Weiss, Rifkind, Wharton & Garrison LLP (NY), New York, NY.

For Harbinger Capital Partners GP, L.L.C., Harbinger Capital Partners Special Situations GP, L.L.C., Harbinger Capital Partners Special Situations [*3] Offshore GP, L.L.C., Defendants: Daniel J. Leffell, Leslie Gordon Fagen, LEAD ATTORNEYS, Steven Craig Herzog, Paul, Weiss, Rifkind, Wharton & Garrison LLP (NY), New York, NY.

For Harbinger Capital Partners Fund I, L.P., a Delaware limited partnership, Harbinger Capital Partners Special Situation Fund L.P., a Delaware limited partnership, Harbinger Capital Partners Special Situations Offshore Fund LP, Nominal Defendants: Gregory A. Clarick,

Isaac Berkman Zaur, Nicole L. Gueron, Clarick Gueron Reisbaum LLP, NEW YORK, NY.

**JUDGES:** ALISON J. NATHAN, United States District Judge.

**OPINION BY:** ALISON J. NATHAN

**OPINION**

MEMORANDUM & ORDER

ALISON J. NATHAN, District Judge:

Plaintiffs have moved for reconsideration of those portions of the Court's September 30, 2013 opinion dismissing certain of their claims as precluded by the Securities Litigation Uniform Standards Act ("SLUSA"), *15 U.S.C. § 78bb(f)*. On April 30, 2014, following oral argument, the Court announced that it would reserve decision on the motion until the Second Circuit issued a decision addressing the implications of *Chadbourne & Parke LLP v. Troice, 134 S. Ct. 1058, 188 L. Ed. 2d 88 (2014)*. The Second Circuit recently issued such a decision. *In re Herald, Primeo, and Thema, Nos. 12-156-cv (L), 12-162, ___ F.3d ___, 2014 U.S. App. LEXIS 9871, 2014 WL 2199774 (2d Cir. May 28, 2014)* [*4] ("*Herald II*"). Having reviewed that opinion and the parties' submissions addressing it, the Court denies Plaintiffs' motion for reconsideration for the reasons set forth below.

This opinion assumes familiarity with the facts of this case from the Court's earlier opinions. Briefly, Plaintiffs in this putative class action invested in a family of hedge funds managed by entities affiliated with Defendants Philip Falcone and Harbinger Capital Partners LLC. Their core allegations are that Defendants made various misrepresentations and omissions about the funds' investment in SkyTerra Communications, Inc. ("SkyTerra"). With respect to these allegations, Plaintiffs' legal theory is that Defendants' misrepresentations and omissions induced investors to hold, rather than sell, their investments in the Harbinger funds. These "holder" claims may be brought only under state law. *See Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 95 S. Ct. 1917, 44 L. Ed. 2d 539 (1975).*[1]

> 1 In addition to bringing these holder claims, Plaintiffs also allege that Defendants' misrepresentations and omissions induced them to invest in the Harbinger funds. *E.g.*, 4AC ¶¶ 245, [*5] 249-50. Some of Plaintiffs' SkyTerra-related claims arguably fall in this "inducement" category, in the sense that Plaintiffs were allegedly induced to invest in the funds by representations that were only shown to be false by the funds' SkyTerra investment (such as representations about the funds' investment strategies and risk management practices). The Court recognizes, however, that the parties dispute precisely what claims are "predicated on" Defendants' investment in SkyTerra and thus precluded under the Court's September 30 opinion. Dkt. No. 125 at 25-26. Regardless, as discussed in the text, SLUSA does not draw distinctions between holder claims and inducement claims; the important point is that many of Plaintiffs' SkyTerra-related class claims can only be brought, if at all, under state law.

As relevant here, SLUSA precludes any class action brought under state law by "any private party alleging . . . a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." *15 U.S.C. § 78bb(f)(1)*. A security is a "covered security" if it is "listed, or authorized for listing, on a national securities exchange." *15 U.S.C. §§ 78bb(f)(5)(E),* [*6] *77r(b)(1)*. In the September 30 opinion, this Court held that SLUSA precluded Plaintiffs' claims related to the SkyTerra investment because Defendants' alleged misrepresentations and omissions were made "in connection with" the funds' purchases of covered SkyTerra stock. This conclusion rested largely on *In re Herald, Primeo, and Thema, 730 F.3d 112 (2d Cir. 2013) ("Herald I")*, in which the Second Circuit held that SLUSA precluded claims against certain banks for aiding and abetting Bernard Madoff's Ponzi scheme, despite the fact that the plaintiffs bought shares in Madoff feeder funds, not covered securities. In this case too, it was enough that Plaintiffs' claims were "predicated on Defendants' role in a scheme involving covered securities." Dkt. No. 125 at 25-26. The fact that Plaintiffs purchased interests in hedge funds, and not covered securities, was not relevant.

*Troice*, too, centered on SLUSA's "in connection with" requirement. The plaintiffs, victims of Allen Stanford's Ponzi scheme, purchased certificates of deposit ("CDs") issued by Stanford Bank, which promised a high, fixed rate of return purportedly generated by investing in marketable securities but actually produced [*7] by selling more CDs to investors. The Supreme Court held that these claims were not precluded because the plaintiffs themselves bought CDs, not covered securities. *Troice, 134 S. Ct. at 1071-72*. In moving for reconsideration, Plaintiffs point to language in *Troice* stating that "[a] fraudulent misrepresentation or omission is not made 'in connection with' . . . a 'purchase or sale of a covered security' unless it is material to a decision by one or more individuals (other than the fraudster) to buy or to sell a 'covered security.'" *Troice, 134 S. Ct. at 1066*. In this case, no one other than a fraudster bought or sold

any covered securities as a result of Defendants' misrepresentations and omissions.

But two other elements of Justice Breyer's majority opinion undermine the crisp standard that Plaintiffs emphasize. First, the majority clarified that it was not overruling *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 126 S. Ct. 1503, 164 L. Ed. 2d 179 (2006)*, which held that SLUSA precludes claims premised on a victim's *holding* covered securities--not just buying or selling them--because of a fraudster's misrepresentation or omission. *See Troice, 134 S. Ct. at 1066*. Second, Justice Breyer suggested that [*8] a claim is precluded if there is someone other than the fraudster "who took, who tried to take, who divested themselves of, who tried to divest themselves of, or who maintained *an ownership interest* in" covered securities. *Id.* (emphasis in original). The phrase "ownership interest" arguably implies that even an indirect investment in a covered security--"such as when a victim has 'some interest in the defendant's supposed portfolio'"--is enough to trigger preclusion. *Id. at 1080* (Kennedy, J., dissenting) (quoting Brief of Respondents at 16, *Troice, 134 S. Ct. 1058, 188 L. Ed. 2d 88* (Nos. 12-79, 12-86, 12-88)). Urging this broader reading, Defendants argue that their misrepresentations and omissions induced Plaintiffs to hold, through their investments in the Harbinger funds, "ownership interests" in the funds' assets, which included covered securities. Def. Opp. at 9. After concluding that both Plaintiffs' and Defendants' readings of *Troice* were plausible, this Court reluctantly decided to await guidance from the Second Circuit. Dkt. No. 189.

*Herald II*, in which the Second Circuit denied reconsideration of *Herald I*, vindicates Defendants' reading of *Troice* and is binding on this Court. In a short per curiam [*9] opinion, the panel stated that "the Supreme Court's ruling confirms the logic and holding of its earlier opinion. *Herald II, 2014 U.S. App. LEXIS 9871, 2014 WL 2199774, at *1*. The dispositive fact in *Troice*, the panel indicated, was that in purchasing CDs from Stanford Bank, the plaintiffs were "not seeking, *directly or indirectly*, to purchase covered securities." *Id.* (emphasis added). By contrast, Madoff's victims made "attempted investments in covered securities, albeit through feeder funds." *2014 U.S. App. LEXIS 9871, [WL] at *2*. In drawing this distinction, the Second Circuit unmistakably adopted a broad reading of *Troice* under which even an indirect ownership interest in covered securities--for instance, the interest conveyed by an investment in a feeder fund--triggers SLUSA preclusion. So if a victim brings a state law class action alleging that a fraudster induced her to hold even an indirect investment in a covered security--that is, if she "maintained an ownership interest" in that covered security because of an alleged misrepresentation or omission, *Troice, 134 S. Ct. at 1066* (emphasis omitted)--her claim is also precluded. That is the fate of Plaintiffs' claims, which allege that Defendants' misrepresentations and omissions induced [*10] them to hold hedge fund investments that, like the Madoff feeder fund investments in *Herald*, conveyed an indirect ownership interest in covered securities (in this case, SkyTerra stock).

Plaintiffs' arguments to the contrary are not persuasive. Plaintiffs claim that investors in the Harbinger funds "could not have been trying to take an ownership interest in covered securities" because Delaware law, under which the funds are organized, provides that a limited partner has "no interest in specific limited partnership property." Dkt. No. 190 at 2 (quoting *6 Del. C. § 17-701*) (emphasis and internal quotation mark omitted). But if Plaintiffs' argument were a basis for avoiding SLUSA preclusion, one would expect the *Herald II* court to have undertaken a detailed analysis of whether, under the governing corporate law,[2] the Madoff feeder funds conveyed to their investors an interest in the property owned by the funds. Such an analysis does not appear in the Second Circuit's opinion. Instead, the court employed a functional approach that appeared to turn on the purpose of a plaintiff's investment. *See Herald II, 2014 U.S. App. LEXIS 9871, 2014 WL 2199774, at *2* (stating that the Madoff victims "tried to take . . . an ownership [*11] position" in covered securities by investing in the feeder funds). Under this approach, Plaintiffs resemble Madoff feeder-fund investors more than they do the *Troice* plaintiffs; one invests in a hedge fund to gain exposure to the assets held by the hedge fund. And while it is true that Plaintiffs' claims center on their *holding* of an indirect ownership interest, rather than an *attempt to take* such an interest, that distinction is irrelevant under *Troice* and *Dabit*. *See Troice, 134 S. Ct. at 1067* (characterizing prior cases as finding preclusion when a victim "took, tried to take, *or maintained* an ownership position" in covered securities (emphasis added)).

> 2   The feeder funds at issue in *Herald* were organized under the law of Ireland, the Cayman Islands, and Luxembourg. *See Herald I, 730 F.3d at 116*.

Nor is it pertinent that the *Herald II* court described the Madoff feeder funds as mere "intermediaries." *2014 U.S. App. LEXIS 9871, 2014 WL 2199774, at *2*. Those feeder funds were not, as Plaintiffs argue, "'intermediaries' between plaintiffs and covered securities," in supposed contrast to the Harbinger funds, which Plaintiffs characterize as "independently-managed investment vehicles." Dkt. No. 190 at 2. In fact, the [*12] feeder funds were intermediaries between the plaintiffs and Bernard L. Madoff Investment Securities ("BLMIS"), which itself purported to employ a "trading strategy"

involving covered securities. *See Herald I, 730 F.3d at 118.* In other words, Madoff's victims did not simply invest in intermediaries that purchased covered securities; they invested in intermediaries that funneled money to a (purported) independently managed investment vehicle. In that respect, they are precisely analogous to the Plaintiffs in this case, who bought into "feeder" funds that in turn funneled money to the "master" funds through which Defendants actually bought and sold securities. Dkt. No. 125 at 3 (describing the Harbinger funds' "master-feeder" structure). Therefore, Plaintiffs' ownership interest in covered SkyTerra stock--which they allegedly held because of Defendants' misrepresentations and omissions--is no more remote than the interest that the *Herald* plaintiffs thought they were obtaining in the securities that BLMIS purportedly purchased.

Finally, the Court does not see how it is relevant that, in *Herald*, BLMIS purportedly invested *only* in covered securities, while the Harbinger funds invested in *both* [*13] "covered and uncovered securities." Dkt. No. 190 at 2. If Plaintiffs were alleging that they had tried to purchase ownership interests in the securities owned by the Harbinger funds but were thwarted by Defendants' unlawful conduct, preclusion might be triggered only if they thought the Harbinger funds were buying covered securities. (Even then, Plaintiffs' concession that the Harbinger funds invested at least partly in covered securities would appear to be sufficient.) But Plaintiffs do not allege a thwarted attempt to obtain an ownership interest in unidentified securities that might have been covered; they allege that they were induced to hold an ownership interest in a specific security--SkyTerra stock--that they concede is covered.

* * *

In short, *Herald II* affirms that *Herald I* remains binding precedent, and therefore defeats Plaintiffs' suggestion that the case law on which this Court's September 30 opinion relied has been sufficiently undermined to justify reconsideration. *See Maersk, Inc. v. Neewra, Inc., No. 05 Civ. 4356 (CM), 2010 U.S. Dist. LEXIS 69863, 2010 WL 2836134, at *16 (S.D.N.Y. July 9, 2010)* ("A motion for reconsideration will generally be denied unless the moving party can demonstrate an intervening [*14] change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."). Additionally, to the extent that the analysis in *Herald II* affects how *Herald I* should be understood in light of *Troice*, it provides scant support for Plaintiffs' argument that their SkyTerra-related claims are not precluded under SLUSA. To the contrary, it confirms the correctness of the September 30 opinion. For these reasons, Plaintiffs' motion for reconsideration is DENIED.

The Court hereby grants leave for Defendants to refile their motions to dismiss the Sixth Amended Complaint, which the Court administratively denied on April 30. The parties may simply refile the previously filed motions, oppositions, and replies simultaneously, and should do so by July 18. This order resolves Docket No. 177.

SO ORDERED.

Dated: July 7, 2014

New York, New York

/s/ Alison J. Nathan

ALISON J. NATHAN

United States District Judge