UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ x
IN RE TREMONT SECURITIES LAW,     :
STATE LAW AND INSURANCE      :   Master File No.:
LITIGATION                       :   08 Civ. 11117 (TPG)
                                  :
------------------------------------------------------ x   **JURY TRIAL DEMANDED**
This Document Relates to:  All Actions   :
                                  :   "**ECF Case**"
------------------------------------------------------ X

## MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF NET SETTLEMENT FUND PLAN OF ALLOCATION AND <u>SCHEDULING MOTION FOR DISTRIBUTION</u>

EC.57309.1

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 2

FACTUAL BACKGROUND ................................................................................................... 4

    A.    The Settlement ............................................................................................... 4

          The Net Settlement Fund ............................................................................... 4

    B.    The Claims Administration ............................................................................ 6

          1.    The Claims Administrator Properly Provided Notice and Claims Materials to the Class ................................................................................. 6

          2.    Claims Processing .............................................................................. 7

ARGUMENT ....................................................................................................................... 9

I.    THE NET SETTLEMENT FUND PLAN OF ALLOCATION SHOULD BE APPROVED ............................................................................................................... 9

    A.    The Net Investment Method is Appropriate for Calculating Recognized Claims .. 9

    B.    Courts Repeatedly Use the Net Investment Method to Distribute Assets Recovered from Ponzi Schemes ............................................................................ 9

    C.    Parties in Other Madoff-Related Matters Have Applied the Net Investment Method to Distribute Assets from Settlement Agreements .................................. 12

    D.    The Only Court that Appears to Have Applied the Last Statement Method to Distribute Assets Recovered from a Ponzi Scheme Applied the Net Investment Method in a Subsequent Proceeding ................................................................. 13

II.    THE COURT SHOULD APPROVE THE ADMINISTRATIVE DETERMINATIONS BY THE CLAIMS ADMINISTRATOR WITH RESPECT TO PROCESSING NET SETTLEMENT FUND PROOFS OF CLAIM ................................................................ 14

III.    THE COURT SHOULD APPROVE THE PROPOSED MOTION SCHEDULE FOR DISTRIBUTION OF THE NET SETTLEMENT FUND ................................................ 14

CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Aaron v. McQuaid (In re Global Grounds Greenery, LLC)*,
  No. 2:08-ap-00317-RJH, 2008 WL 4793747 (Bankr. D. Ariz. Nov. 4, 2008) ...................... 12

*Anwar v. Fairfield Greenwich Limited*,
  No. 1:09-cv-118 (VM)(FM) (S.D.N.Y. Mar. 25, 2013) ........................................................ 12

*Beacon Assocs. Mgmt. Corp. v. Beacon Assocs. LLC I*,
  725 F. Supp. 2d 451 (S.D.N.Y. 2010)........................................................................... 9, 13, 14

*CFTC v. CapitalStreet Fin., LLC*,
  No. 3:09cv387-RJC-DCK, 2010 WL 2572349 (W.D.N.C. June 18, 2010) .......................... 11

*CFTC v. Walsh*,
  712 F.3d 735 (2d Cir. 2013)................................................................................................... 14

*Community First Bank v. First United Funding, LLC*,
  822 N.W.2d 306 (Minn. Ct. App. 2012) ................................................................................ 14

*In re Beacon Assocs. Litig.*,
  No. 09Civ777(CM), 2013 WL 2450960, (S.D.N.Y. May 9, 2013)........................................ 13

*In re Bernard L. Madoff Inv. Sec. LLC*,
  424 B.R. 122 (Bankr. S.D.N.Y. 2010),
  *aff'd*, 654 F.3d 229 (2d Cir. 2011) ...................................................................................... 10

*In re Bernard L. Madoff Inv. Sec. LLC*,
  654 F.3d 229 (2d Cir. 2011)........................................................................................ 10, 11, 13

*In re Deluca*,
  950 N.Y.S.2d 722 (Table), 2012 WL 1232995 (Sur. Ct. Mar. 30, 2012)............................. 14

*In re New Times Sec. Servs., Inc.*,
  371 F.3d 68 (2d Cir. 2004).................................................................................................... 11

*In re New Times Sec. Servs., Inc.*,
  463 F.3d 125 (2d Cir. 2006).................................................................................................. 11

*In re Pearlman*,
  484 B.R. 241 (Bankr. M.D. Fla. 2012) ........................................................................... 11, 14

*In re Tremont Sec. Law, State Law, & Ins. Litig.*,
No. 11-4022 (2d Cir. Oct. 24, 2012) ........................................................................... 6

*In re Tremont Sec. Law, State Law, & Ins. Litig.*,
No. 11-4030 (2d Cir. Apr. 24, 2012) ........................................................................... 6

*In re Tremont Sec. Law, State Law, & Ins. Litig.*,
No. 11-4030 (2d Cir. Aug. 4, 2014) ............................................................................ 6

*In re Tremont Sec. Law, State Law, & Ins. Litig.*,
No. 11-4030 (2d Cir. Mar. 13, 2013) ........................................................................... 6

*Picard v. Maxam Absolute Return Fund, L.P.*,
No. 10-05342 (Bankr. S.D.N.Y. September 17, 2013) ............................................... 12

*SEC v. Byers*,
637 F. Supp. 2d 166 (S.D.N.Y. 2009) ........................................................................ 11

*SEC v. Illarramendi*,
No. 3:11cv78(JBA), 2013 WL 6385036, (D. Conn. Dec. 6, 2013) ...................... 11, 14

*Shapiro v. JPMorgan Chase & Co.*,
No. 11 Civ. 8331(CM), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ...................... 12

**Rules**

Fed. R. Civ. P. 23 .......................................................................................................... 2

Fed. R. Civ. P. 23(a) ...................................................................................................... 5

Fed. R. Civ. P. 23(b)(3) ................................................................................................. 5

Fed. R. Civ. P. 23.1 ....................................................................................................... 2

EC.57309.1

Settling Class Plaintiffs[1] respectfully submit this Memorandum in support of their Motion for Approval of the Net Settlement Fund Plan of Allocation and Scheduling Motion for Distribution to Authorized Claimants.[2]  The Motion is supported by the accompanying Affidavit of Stephen J. Cirami of The Garden City Group, Inc. (the "Claims Administrator" or "GCG"), sworn to on December 5, 2014, with exhibit (the "Cirami Aff."), the Affidavit of Jose C. Fraga of CGC, sworn to on May 4, 2011, with exhibits (ECF No. 443-2) ("Fraga Aff."), the Supplemental Affidavit of Jose C. Fraga, sworn to on May 25, 2011, with exhibits (ECF No. 521-1) ("Supplemental Fraga Aff."), and the Declaration of the Hon. Layn R. Phillips, dated December 1, 2014, with exhibit ("Phillips Decl.").  Settling Class Plaintiffs respectfully request that the Court enter the [Proposed] Order submitted concurrently herewith approving the Net Settlement Fund ("NSF") Plan of Allocation ("NSF POA"), a copy of which is attached hereto as Exhibit A, and scheduling a motion for distribution.

---

[1] The Settling Class Plaintiffs include:  (i) Arthur E. Lange Revocable Trust, Arthur C. Lange, Neal J. Polan, HFM Charitable Remainder Trust, Eastham Capital Appreciation Fund LP and NPV Positive Corp. for the State Law Actions; (ii) Arthur M. Brainson (on behalf of the Arthur M. Brainson IRA R/O), Yvette Finkelstein and Group Defined Pension Plan & Trust for the Securities Subclass; and (iii) Chateau Fiduciare, S.A., as Trustee of the Map Trust, The Geoffrey Rabie Credit Shelter Trust, the Joanne Brenda Rabie Credit Shelter Trust, the Harriet Rutter Klein Revocable Trust and the Matthew L. Klein Irrevocable Family Trust for the Insurance Subclass.  Capitalized terms not defined herein shall have the meanings attributed to them in the Stipulation.

[2] Pursuant to paragraph 1.4 of the Stipulation of Partial Settlement, dated as of February 23, 2011 (the "Stipulation"), an "Authorized Claimant" is any "Settlement Class Member entitled to disbursement from the Net Settlement Fund pursuant to the Plan of Allocation."

## PRELIMINARY STATEMENT

On April 5, 2011, the Court issued an Order Directing Notice and Setting Final Fairness Hearing in Connection With Motion for Approval of Proposed Settlement and Motion for Attorneys' Fees and Expenses (the "Notice Order"), in which the Court, among other things, ordered that the Settlement Class receive the Notice of Pendency of Consolidated Actions, Motion for Final Approval of Proposed Settlement, Hearing on Proposed Settlement and Motion for Attorneys' Fees and Expenses (the "Notice").  On June 28, 2011, the Court issued an Order Approving Issuance of Supplemental Notice (the "Supplemental Notice Order"), in which the Court, among other things, approved mailing to the Class of the Supplemental Notice of Pendency of Consolidated Actions and Hearing on Motion for Final Approval of Proposed Settlement, Motion for Final Approval of Plans of Allocation and Motion for Attorneys' Fees and Expenses (the "Supplemental Notice").

Since then, Plaintiffs' Settlement Class Counsel and the Claims Administrator have worked diligently to provide notice to the Class (*see* Cirami Aff., Fraga Aff. and Supplemental Fraga Aff.) and to administer the Settlement consistent with the Stipulation and the Court's August 19, 2011 Final Judgment and Order of Dismissal with Prejudice Regarding Settlement and Rules 23 and 23.1 (the "Final Approval Order").  (ECF No. 604.)

Various appeals were filed. The last appeal was resolved on October 6, 2014, when the United States Supreme Court denied the Petition by Madelyn Haines and Paul Zamrowski for a *Writ of Certiorari*.

Between October 2012 and the present, Lead Counsel spoke or met with scores of interested persons in order to understand and address the positions of all parties involved regarding the protocol for disbursement of funds recovered for investors as a result of the

2

Settlement, including the most appropriate Plans of Allocation ("POAs") applicable to the NSF and the Fund Distribution Account ("FDA").

On April 30, 2014, Lead Counsel disseminated to interested persons expressing a desire to participate post-Fairness Hearing ("Interested Parties") a memorandum regarding the proposed POAs and related distribution issues, inviting comments from such Interested Parties.  In response, we received submissions from 11 individuals and groups.  Lead Counsel and several Interested Parties also participated in extensive mediation before retired U.S. District Court Judge Layn R. Phillips (the "Mediator") on July 28th and 29th, 2014 (the "Mediation"),[3] during which consensus was reached among all Interested Parties as to the language of the NSF POA. Phillips Decl. at ¶ 11.

With regard to the FDA POA, a full consensus among all Interested Parties has not yet been reached.  However, we continue to work toward a mutually agreeable arrangement through ongoing mediated discussions and the exchange of relevant information.  It is anticipated that if a consensus is to be reached—and we are not saying that a consensus is either likely or possible— Class Counsel and the Mediator feel that several additional months of discussions will be necessary.  We expect to report back to the Court within several months with an update on the ongoing mediated FDA POA discussions.

Given that there is a consensus now on the NSF POA, we believe that is it best to move forward with that approval and distribution, so that the long delayed distribution of the NSF to the victims here can occur expeditiously.

---

[3] Because of the confidential nature of the Mediation, and the agreement among the participants to the Mediation to maintain the confidentiality of the negotiations, the specific issues raised and positions of the attendees are not disclosed in this memorandum.

3

Accordingly, Plaintiffs' Settlement Class Counsel respectfully request that the Court enter the proposed Order submitted herewith approving the NSF POA and scheduling a motion for distribution of the NSF.

## FACTUAL BACKGROUND

### A.    The Settlement

### The Net Settlement Fund

The Settlement provides for, among other things, the creation of a fund consisting of $100 million in cash ("Initial Settlement Amount") together with the Fidelity Bond Recovery, the Remaining Tremont Funds and any recovery from the assigned claims, plus interest (the "Gross Settlement Fund").  Stipulation ¶ 1.20.

The Gross Settlement Fund has been reduced over time by the payment of Settlement notice and administration fees and expenses ($334,999.17, Cirami Aff. at ¶35), Taxes and Tax Expenses ($242,954.91) and the Fee and Expense Award allowed by the Court (Stipulation ¶ 5.2; ECF No. 603), the remaining balance being the "Net Settlement Fund" or "NSF". *Id.* at ¶ 1.35. The current cash balance of the Net Settlement Fund, including accrued interest and the addition of a net recovery from the Fidelity Bond Litigation, is $74,777,526.03.[4]  Assuming the Court grants the current application, this amount (less any reserve for anticipated further administrative expenses, Taxes and Tax Expenses) will be available for distribution to Settlement Class

---

[4] The Settlement provided that recovery, net of fees and expenses and the 8.2% allocation to the insurance action, from the NSF's 50% interest in the Fidelity Bond Recovery and from any assigned claim would be added to the NSF.  In addition to the net settlements from the Fidelity Bond Recovery, Plaintiffs' Settlement Class Counsel litigated the assigned claim against the accountants for certain of the Rye Funds to a final resolution adverse to the Settlement Class after a lengthy hearing before a 3-judge arbitration panel, consisting of former United States District Judges John Martin and Layn Phillips and former United States Court of Appeals Judge James Robertson.  The assigned claim against Bank of New York Mellon, the former fund administrator for certain of the Rye Funds, was also dismissed and is on appeal.

Members who are not otherwise excluded from the Class and who have submitted a valid Proof of Claim and Release Form (the "Proof of Claim" or "Claim") to the Claims Administrator – *i.e.*, Authorized Claimants.  Each Authorized Claimant shall be allocated a percentage of the NSF based upon the NSF POA and the relationship that each Authorized Claimant's Claim bears to the total of all Authorized Claimants' Claims.

To effectuate the Settlement set forth in the Stipulation, the Court entered the Notice Order and Supplemental Notice Order:  (i) preliminarily certifying the Class under Fed. R. Civ. P. 23(a) and (b)(3) for the purposes of the Settlement; (ii) approving the Notice, Summary Notice and Supplemental Notice; (iii) approving the Claims Administrator; (iv) directing that the Notice and Supplemental Notice be given to the Class; and (v) scheduling a hearing to consider whether to grant final approval of the Settlement and Plaintiffs' Settlement Class Counsel's request for an award of attorneys' fees and reimbursement of expenses (the "Fairness Hearing").

On May 4, 2011, Plaintiffs' Settlement Class Counsel filed a motion requesting that the Court enter an order approving the Settlement, including the POAs submitted at that time with respect to the NSF and the FDA.  The Court subsequently held a hearing on June 1, 2011 and August 8, 2011 regarding approval of the Settlement.

At the August 8, 2011 hearing, Lead Counsel agreed to postpone the consideration and resolution of all issues regarding the POAs until a later date.  *See* Hr'g Tr. 66-67, Aug. 8, 2011, ECF No. 599.  Plaintiffs' Settlement Class Counsel explained that, at the later date, plaintiffs would make a new motion,[5] "presenting a plan of distribution to the court with notice to all fund distribution claimants and that any fund distribution claimant that wishes to object to the plan of

---

[5] Lead Counsel believe that the Court's prior ruling approving the Settlement's two-fund structure (the NSF and the FDA) sets the framework for two separate approval motions – one for the NSF POA and one for the FDA POA.

distribution is entitled to do so in the form of an opposition at that time when we know exactly what is being distributed and what allocations are being made." *Id.* at 36.

The Court subsequently entered its Final Approval Order on August 19, 2011.  (ECF No. 604.)

As noted, appeals from the Final Approval Order were filed by several parties, including Madelyn Haines and Paul Zamrowski.  One of those appeals was withdrawn[6], two were dismissed on motion before the United States Court of Appeals for the Second Circuit[7], and the Haines and Zamrowski appeal was dismissed by Summary Order of the United States Court of Appeals for the Second Circuit on April 3, 2014[8].  On October 6, 2014, Haines and Zamrowski's Petition for Certiorari was denied by the United States Supreme Court.

Thus, the Settlement is now final in all respects.

The Mediator concluded that the Net Settlement Fund Plan of Allocation being now proposed for approval "was the product of hard-fought, arm's-length negotiations by skilled, experienced and effective counsel" and urged "approval of all of its terms."  Phillips Dec. at ¶12.

Plaintiffs' Settlement Class Counsel respectfully ask that the Court approve the Net Settlement Fund Plan of Allocation, so that we can begin distribution of those funds to the Settlement Class.

**B.      The Claims Administration**

      **1.      The Claims Administrator Properly Provided Notice and Claims Materials to the Class**

On April 13, 2011, the Claims Administrator began mailing the Court-approved Notice, the Proof of Claim and the original Plan of Allocation (collectively, the "Claim Packet"), to

---

[6] *In re Tremont Sec. Law, State Law, & Ins. Litig.*, No. 11-4022 (2d Cir. Oct. 24, 2012).
[7] *In re Tremont Sec. Law, State Law, & Ins. Litig.*, No. 11-4030 (2d Cir. Apr. 24, 2012); *In re Tremont Sec. Law, State Law, & Ins. Litig.*, No. 11-4030 (2d Cir. Mar. 13, 2013).
[8] *In re Tremont Sec. Law, State Law, & Ins. Litig.*, No. 11-4030 (2d Cir. Aug. 4, 2014).

EC.57309.1

potential Settlement Class Members.  (*See* Cirami Aff. at ¶ 4.)  On April 15, 2011, pursuant to the Preliminary Approval Order, GCG also published the Summary Notice in *Investor's Business Daily*. (*See id*. at ¶ 5.)

Pursuant to the Court's June 28, 2011 Supplemental Notice Order, GCG was responsible for disseminating the Supplemental Notice, the Notice and an updated Proof of Claim (collectively with the Supplemental Notice and Notice, the "Supplemental Claim Packet").  On June 29, 2011, 5,172 Supplemental Claim Packets were disseminated by first-class mail:  2,844 to potential Settlement Class Members and 2,328 to the names and addresses of brokerage firms, banks, institutions and other nominees listed in GCG's proprietary database of nominees as of that date.  (*See* Cirami Aff. at ¶ 7.)

To help Settlement Class Members complete and submit Proofs of Claim to participate in the Settlement, the Claims Administrator established a website and a toll-free interactive voice response system in which Claimants could request a Supplemental Claim Packet, obtain general information about the Settlement, or obtain general assistance in completing their Proofs of Claim.  Claimants were also able to leave a message requesting to speak with a representative of the Claims Administrator, and the Claims Administrator returned such calls promptly.  (*Id.* at ¶ 8.)

### 2.    Claims Processing

Pursuant to the Stipulation and the Preliminary Approval Order, all Settlement Class Members wishing to participate in the Settlement were required to submit completed Proofs of Claim, as well as the documentation required to substantiate the transactions set forth in their Claims.  The Claims Administrator's work in receiving, reviewing, coding and categorizing

Claims is described in detail in paragraphs 9 through 19 of the Cirami Affidavit.  To date, the Claims Administrator has received 734 Claims.  (*See* Cirami Aff. at ¶ 20.)

As the Claims Administrator received Claims, it performed a detailed review of each Claim, including the supporting documentation submitted therewith, for completeness.  In general, the Claims Administrator's review identified:  (i) fully supported and valid Claims; and (ii) Claims that were partially or wholly deficient (collectively, "Deficient Claims").  (*See id.* at ¶¶ 12-15.)  In reviewing Claims, the Claims Administrator implemented and executed several measures designed to assure the quality of the process and to detect any fraudulent Claims.  These administrative protections are discussed in detail in paragraphs 10-19 of the Cirami Affidavit.

As with the administration of most class action settlements, a significant portion of the time spent administrating this Settlement was devoted to working with Claimants with Deficient Claims and providing them with sufficient notice and an opportunity to remedy such deficiencies (the "Deficiency Process").  (*See id.* at ¶¶ 20-25.)  Claim deficiencies typically result from missing documentation, incomplete transaction data, conflicting transaction data or the Claimant's failure to sign the Proof of Claim.  That process continues.

The Claims Administrator expects to complete its review and the deficiency process in January, 2015.  Cirami Aff. at ¶ 25. Once its review is complete, the Claims Administrator will contact those claimants whose claims remain deficient, advise them of the deficiency and work with them to help them cure their claims. The Claims Administrator will submit a supplemental affidavit reporting on its recommendations as to the disposition of the claims. (*See id.* at ¶¶24-25.)

The supplemental affidavit will be submitted in support of the prospective motion for distribution.

## ARGUMENT

I.   **THE NET SETTLEMENT FUND PLAN OF ALLOCATION SHOULD BE APPROVED**

A.   **The Net Investment Method is Appropriate for Calculating Recognized Claims**

Plaintiffs' Settlement Class Counsel believe that the "Net Investment Method," rather than the "Last Statement Method," is the most appropriate method in which to calculate each Authorized Claimant's *pro rata* share of the NSF.[9]   Accordingly, the NSF POA directs that each Authorized Claimant's *pro rata share* of the NSF be calculated based upon the Net Investment Method.  As described more fully below, all courts that have addressed this issue (except *Beacon Assocs. Mgmt. Corp. v. Beacon Assocs. LLC I*, ("*Beacon I")* 725 F. Supp. 2d 451 (S.D.N.Y. 2010), discussed below) agree that the Net Investment Method should be applied.

B.   **Courts Repeatedly Use the Net Investment Method to Distribute Assets Recovered from Ponzi Schemes**

In the *Madoff* bankruptcy proceedings, the Bankruptcy Court and the Second Circuit determined that, under the Securities Investor Protection Act ("SIPA"), the Net Investment Method is the proper way to determine a customer's share of the assets remaining in Madoff's estate.  *In re Bernard L. Madoff Inv. Sec. LLC* ("*Madoff I*"), 424 B.R. 122, 143 (Bankr.

---

[9] The Net Investment Method and the Last Statement Method may be summarized as follows: The Net Investment Method provides an investor a recovery based on her net investment (*i.e.*, investment minus any withdrawals) as shown in her capital account.  Indeed, under the Net Investment Method, if an investor has withdrawn more money than she has invested, she is not entitled to any recovery (and may be liable to other investors for the excess of her withdrawals over her cash investments).  The Last Statement Method, on the other hand, provides an investor a recovery based on the value of her "investment" as shown in the last financial statement she received before the Ponzi scheme was uncovered.

S.D.N.Y. 2010), *aff'd*, 654 F.3d 229 (2d Cir. 2011).  In fact, the *Madoff* courts that have

considered the issue have repeatedly recognized that when a fund that invested solely in

Madoff's Ponzi scheme is liquidated and the fund does not have enough money to satisfy the

claims of all of its investors, the Net Investment Method allows *all* investors to receive a *pro*

*rata* share of their original investment and prevents certain investors from receiving (whether

based on actual withdrawals of funds or their accounts being credited with) fictitious profits at

the expense of other investors.  This principle applies equally here.

For example, in *Madoff*, the Second Circuit affirmed the decision of the Bankruptcy

Court to distribute, pursuant to SIPA, the assets of Madoff's estate using the Net Investment

Method.  In discussing why it chose to utilize the Net Investment Method -- and reject the Last

Statement Method -- the Second Circuit explained:

> Here, the profits recorded over time on the customer statements
> were after-the-fact constructs that were based on stock movements
> that had already taken place, were rigged to reflect a steady and
> upward trajectory in good times and bad, and were arbitrarily and
> unequally distributed among customers.  These facts provide
> powerful reasons for the Trustee's rejection of the Last Statement
> Method for calculating 'net equity.' In addition, if the Trustee had
> permitted the objecting claimants to recover based on their final
> account statements, this would have 'affect[ed] the limited amount
> available for distribution from the customer property fund.'  *The*
> *inequitable consequence of such a scheme would be that those*
> *who had already withdrawn cash deriving from imaginary profits*
> *in excess of their initial investment would derive additional benefit*
> *at the expense of those customers who had not withdrawn funds*
> *before the fraud was exposed.*

*In re Bernard L. Madoff Inv. Sec. LLC* ("*Madoff II*"), 654 F.3d 229, 238 (2d Cir. 2011) (emphasis

added) (citing *Madoff I,* 424 B.R. at 133).

In the *Madoff II* decision that the Second Circuit affirmed, the Bankruptcy

Court likewise explained:

> Customer property consists of a limited amount of funds that are available for distribution.  Any dollar paid to reimburse a fictitious profit is a dollar no longer available to pay claims for money actually invested.  *If the Last Statement Method were adopted, Net Winners would receive more favorable treatment by profiting from the principal investments of Net Losers, yielding an inequitable result.*"

*Madoff II*, 424 B.R. at 141 (emphasis added); *see also In re New Times Sec. Servs., Inc.*, 463 F.3d 125, 129-30 (2d Cir. 2006) ("[T]reating the fictitious paper profits as within the ambit of the customers' 'legitimate expectations' would lead to the absurdity of 'duped' investors reaping windfalls as a result of fraudulent promises made on fake securities.") (citing *In re New Times Sec. Servs., Inc.*, 371 F.3d 68, 87-88 (2d Cir. 2004)).

Moreover, in many different liquidation and receivership proceedings, courts have used the Net Investment Method to distribute the remaining assets of a Ponzi scheme.  *See, e.g.*, *SEC v. Illarramendi*, No. 3:11cv78(JBA), 2013 WL 6385036, at *2 (D. Conn. Dec. 6, 2013) ("The Second Circuit has repeatedly endorsed the Net Investment Method in Ponzi schemes."); *CFTC v. CapitalStreet Fin., LLC*,  No. 3:09cv387-RJC-DCK, 2010 WL 2572349, at *1 (W.D.N.C. June 18, 2010) (affirming rejection of last statement method in Ponzi scheme because, "as a matter of equity, some of the similarly situated victims should not profit at the expense of the other victims"); *SEC v. Byers*, 637 F. Supp. 2d 166, 182 (S.D.N.Y. 2009) (approving receiver's plan to use Net Investment Method because it would "provide the greatest number of investors with the greatest recovery possible without inequitably rewarding some investors at the expense of others"); *In re Pearlman*, 484 B.R. 241, 244 (Bankr. M.D. Fla. 2012) ("The Court agrees with the rationales for accepting a net investment methodology instead of an account statement methodology. . . .  Because each and every dollar is obtained by fraud, allowing some investors to stand behind the Ponzi scheme fiction would condone it, to the detriment of other defrauded

11

investors, and carry it to a fantastic conclusion." (citations and internal quotations omitted));

*Aaron v. McQuaid (In re Global Grounds Greenery, LLC)*, No. 2:08-ap-00317-RJH, 2008 WL 4793747, at *1 (Bankr. D. Ariz. Nov. 4, 2008) (observing that the Net Investment Method is a "rule of law adopted by the Ninth Circuit for the benefit of all parties in interest in the estate in Ponzi cases").

### C.    Parties in Other Madoff-Related Matters Have Applied the Net Investment Method to Distribute Assets from Settlement Agreements

Private parties, in the context of litigating claims relating to Ponzi schemes, repeatedly have entered into settlement agreements that provide for a distribution of assets pursuant to the Net Investment Method.  For example, the court order approving the settlement in the Madoff-related matters captioned *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331(CM) (S.D.N.Y.), and *Hill v. JPMorgan Chase & Co.*, No. 11 Civ. 7961(CM) (S.D.N.Y.), provides for distribution of Madoff settlement proceeds pursuant to the Net Investment Method. *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331(CM), 2014 WL 1224666, at *12-13 (S.D.N.Y. Mar. 24, 2014).

In another Madoff-related matter, *Picard v. Maxam Absolute Return Fund, L.P.*, No. 10-05342 (Bankr. S.D.N.Y. September 17, 2013), the bankruptcy court approved a settlement agreement between the Trustee of the BLMIS estate (Irving Picard), on the one hand, and MARF LP and related entities (collectively, "MARF"), on the other, which used the Net Investment Method to distribute all proceeds.  *See also* Settlement Agreement, *Maxam* (August 26, 2013), ECF No. 111-6.

Similarly, in *Anwar v. Fairfield Greenwich Limited*, No. 1:09-cv-118 (VM)(FM) (S.D.N.Y. Mar. 25, 2013), the court approved a settlement between a BLMIS feeder fund and its investors, which adopts the Net Investment Method as the plan of allocation for distributing

12

assets to investors.  *See* Joint Decl. of Lead Counsel in Supp. of the Proposed Partial

Settlement & Fee & Expense Reqs. at 39, *Anwar* (Feb. 4, 2013), ECF No. 1038, *and Anwar*

slip op. at 11.

> **D.    The Only Court that Appears to Have Applied the Last Statement Method to
> Distribute Assets Recovered from a Ponzi Scheme Applied the Net
> Investment Method in a Subsequent Proceeding**

In *Beacon I*, Magistrate Judge Peck issued an injunction requiring a fund, Beacon

Associates LLC I, that (unlike here), was only partially invested in BLMIS, and instead had

other legitimate investments, to distribute most of its then-remaining assets to its investors

pursuant to the Last Statement Method.  However, *Beacon I* is distinguishable from the instant

matter for a variety of both precedential and fact-specific reasons.

First, *Beacon I* was decided *before* the Second Circuit's decision in *Madoff II*.  Thus, the

*Beacon I* court did not have the benefit of either the Second Circuit's holding, which expressly

adopted the Net Investment Method as the correct method for distributing assets recovered from

Madoff's Ponzi scheme; nor did the *Beacon I* court have the Second Circuit's reasoning, which

rejected the Last Statement Method as illogical and inequitable.  *See Madoff II*, 654 F.3d at 238.

The little support for the Last Statement Method that existed at the time *Beacon I* was decided

was called into serious doubt by the Second Circuit's subsequent *Madoff II* decision.

Moreover, Judge McMahon, in *Beacon II*, subsequently approved a settlement

agreement that provides that Beacon investors will receive assets recovered from the Madoff

Trustee pursuant to a plan of allocation using the Net Investment Method.  *See In re Beacon*

*Assocs. Litig.* ("*Beacon II*"), No. 09 Civ. 777 (CM), 2013 WL 2450960, at *4 (S.D.N.Y. May 9,

2013) ("The court also approves the Plan of Allocation.") *and* Plan of Allocation at 5-6, *In re*

*JP Jeanneret Assocs.,* No. 09-cv-3907 (S.D.N.Y. Nov. 28, 2012), ECF No. 308 (providing that

13

investors in Beacon will receive distributions based on the Net Investment Method). Thus, *Beacon*, like every other case of which we are aware, now supports using the Net Investment Method to distribute assets recovered from a Ponzi scheme.[10]

Accordingly, Lead Counsel believe that application of the Net Investment Method for calculating Recognized Claims under the NSF POA is appropriate.

## II. THE COURT SHOULD APPROVE THE ADMINISTRATIVE DETERMINATIONS BY THE CLAIMS ADMINISTRATOR WITH RESPECT TO PROCESSING NET SETTLEMENT FUND PROOFS OF CLAIM

As set forth herein and in the Cirami Affidavit, the Claims Administrator has performed the administrative work necessary to process Proofs of Claim with respect to the Net Settlement Fund, consistent with the Court's prior orders.

Those administrative determinations should be approved.

As noted, the Claims Administrator expects to complete its processing of all 734 claims in January, 2015. Cirami Aff. at ¶ 25.

## III. THE COURT SHOULD APPROVE THE PROPOSED MOTION SCHEDULE FOR DISTRIBUTION OF THE NET SETTLEMENT FUND

Settling Class Plaintiffs propose expeditiously to move for distribution of the Net Settlement Fund, pursuant to the proposed Plan of Allocation.

Assuming that the Plan of Allocation is approved, Plaintiffs' Settlement Class Counsel are prepared to move for approval of distribution of the Net Settlement Fund on or before

---

[10] *See CFTC v. Walsh*, 712 F.3d 735, 754 (2d Cir. 2013) (approving receiver's plan to disallow distributions of "profit" in Ponzi scheme at the expense of victims who lost their principal investment); *Illarramendi*, 2013 WL 6385036, at *4 (approving Net Investment Method as the "superior method" for distributing recovery to victims of Ponzi scheme); *Pearlman*, 484 B.R. at 244 ("The Court agrees with the rationales for accepting a net investment methodology instead of the account statement methodology."); *In re Deluca*, 950 N.Y.S.2d 722 (Table), 2012 WL 1232995 (Sur. Ct. Mar. 30, 2012) (following Net Investment Method established in the Madoff case); *Community First Bank v. First United Funding, LLC*, 822 N.W.2d 306, 311 (Minn. Ct. App. 2012) ("We do not find *Beacon* persuasive.").

January 30, 2015.  We respectfully suggest that opposing papers be served by February 27, 2015 and reply papers by March 13, 2015.  See [Proposed] Order.

Thus, the long-delayed distribution of the Net Settlement Fund to the victims here can finally be made.

## CONCLUSION

For the foregoing reasons, Settling Class Plaintiffs respectfully request that the Court enter the [Proposed] Order Granting Settling Class Plaintiffs' Motion for Approval of Net Settlement Plan of Allocation and Scheduling Motion for Distribution.


Dated: December 15, 2014
        New York, New York

                                        **ENTWISTLE & CAPPUCCI LLP**

                                        */s/ Andrew J. Entwistle*
                                        Andrew J. Entwistle
                                        Arthur V. Nealon
                                        Robert N. Cappucci
                                        280 Park Avenue, 26th Floor West
                                        New York, NY  10017
                                        (212) 894-7200
                                        (212) 894-7272 (fax)
                                        aentwistle@entwistle-law.com

EC.57309.1

**HAGENS BERMAN SOBOL SHAPIRO LLP**

*/s/ Reed R. Kathrein*

Reed R. Kathrein
Lee Gordon
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
(510) 725-3000
(510) 725-3001 (fax)
reed@hbsslaw.com

*Co-Lead Counsel for the State Law Actions*


**BERNSTEIN LIEBHARD LLP**

*/s/ Jeffrey M. Haber*

Jeffrey M. Haber
Stephanie M. Beige
10 East 40th Street, 22nd Floor
New York, NY  10016
(212) 779-1414
(212) 779-3218 (fax)
haber@bernlieb.com

*Lead Counsel for the Securities Actions*

16