UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
IN RE TREMONT SECURITIES LAW     :
STATE LAW AND INSURANCE        :     Master File No.
LITIGATION                            :     08-cv-11117 (TPG)
                                    :

------------------------------------------------x     **JURY TRIAL DEMANDED**
                                  :
This Document Relates to:  All Actions     :     **"ECF CASE"**
                                  :
------------------------------------------------x

## CORRECTED[1] RESPONSE BY ACM IN OPPOSITION TO MOTION FOR APPROVAL OF DISTRIBUTION OF NET SETTLEMENT FUND

Christopher A. Jarvinen, Esq.
cjarvinen@bergersingerman.com
Paul Steven Singerman
singerman@bergersingerman.com
Ilyse M. Homer
ihomer@bergersingerman.com
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone:  (305) 755-9500
Facsimile:  (305) 714-4340

*Counsel for Austin Capital BMP Fund, LLC*

---

[1] Corrected solely for the purpose of reflecting the pending pro hac vice admissions of Paul Steven Singerman and Ilyse Homer.

6277881-9

# TABLE OF CONTENTS

Preliminary Statement..............................................................................................................1

Summary of Argument In Support of Opposition to
Second Notice/Motion for Distribution of NSF...............................................................5

Discovery is Appropriate Prior to Determining Whether to Approve
the Second Notice/Motion for Distribution of NSF.........................................................7

Legal Argument In Support of Opposition to
Second Notice/Motion for Distributino of NSF...............................................................9

Conclusion ...........................................................................................................................11

Austin Capital BMP Fund, LLC ("ACM"), one of the Settling Class Members[2], through undersigned counsel, files this response in opposition to the *Notice of Motion by Settling Class Plaintiffs for Approval of Distribution of Net Settlement Fund* [ECF No. 1003] filed on February 27, 2015 (the "Second Notice/Motion for Distribution of NSF") and the accompanying *Memorandum in Support of Motion for Approval of Distribution of Net Settlement Fund* [ECF No. 1004] (the "2/27/15 Memorandum")[3].  In support if its response in opposition to the Second Notice/Motion for Distribution of NSF, ACM states:

## PRELIMINARY STATEMENT

On April 5, 2011, this Court issued an *Order Directing Notice and Setting Final Fairness Hearing in Connection with Motion for Approval of Proposed Settlement and Motion for Attorneys' Fees and Expenses* [ECF No. 419] (the "2011 Notice Order"), in which the Court, among other things, ordered that the Settlement Class receive notice of any motion for final approval of a proposed settlement approving the NSF and set a deadline for filing proofs of claim to participate in the NSF as August 31, 2011.  In the 2011 Notice Order, this Court was very mindful of the importance of establishing the Settlement Class and specifically stated that any Settlement Class Member who opted-out "shall not be able to participate in any distribution from the Net Settlement Fund . . ." The 2011 Notice Order gave parties who opted out of the Settlement (including the Opt-Out Plaintiffs, as defined below) an opportunity to revoke their

---

[2] Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Stipulation of Partial Settlement (the "Settlement") approved by the Court on August 19, 2011.
[3] Notably, neither the Second Notice/Motion for Distribution of NSF nor the 2/27/15 Memorandum was served on the Settlement Class Members, all of whose claims will be diluted if this Court grants readmission of the Opt-Out Plaintiffs (as defined herein).  While these documents were posted on www.tremontlitgiationsettlements.com, this Court should take notice that all of the Settlement Class Members may not be aware of the relief sought therein.

6277881-9

decision to opt-out of the Settlement prior to the Fairness Hearing which was held in August of 2011, nearly four years ago.

During the course of over 3 years since the filing of the Settlement, Entwistle & Capucci, LLP ("Lead Counsel"), and several interested parties, have engaged in a mediation before retired U.S. District Judge Layn Phillips (the "Mediator). The mediation has included numerous telephonic sessions with some or all of the mediation participants and in-person mediation sessions in New York on July 28th and 29th, 2014 (the "Mediation"). One result of the mediation efforts was agreement among all interested parties regarding the form and substance of the NSF plan of allocation.  Nowhere, however, was there any reference to, or discussion regarding the 146 additional parties who had opted out of the Settlement ("Opt-Out Plaintiffs") and for whom Lead Counsel is now seeking readmission.

In fact, as a result of these negotiations and the agreement reached at the Mediation, on December 15, 2014, Settling Class Plaintiffs filed a *Notice of Motion by Settling Class Plaintiffs for Approval of Net Settlement Fund Plan of Allocation and Scheduling Motion for Distribution* [ECF No. 987] (the "First Notice/Motion for Distribution of NSF").   The First Notice/Motion for Distribution of NSF referenced an *Affidavit of Stephen J. Cirami in Support of Motion for Approval of the Net Settlement Fund Plan of Allocation and Scheduling of Motion for Distribution* [ECF No. 990], the *Affidavit of Jose C. Fraga Regarding the Mailing of the Notice, Insurance Notice, Plans of Allocation, Proofs of Claim and Publication of the Summary Notice* [ECF No. 443-2], the *Supplemental Affidavit of Jose C. Fraga Regarding the Mailing of the Notice, Insurance Notice, Plans of Allocation, Proofs of Claim and Exclusion Requests Received* [ECF No. 521-1] and the *Declaration of Layn R. Phillips in Support of the Motion for Approval of the Net Settlement Fund Plan of Allocation* [ECF No. 989] (the "Phillips Declaration") and

2

sought approval of distribution of the NSF.  No reference is made to the Opt-Out Plaintiffs in the First Notice/Motion for Distribution of NSF or the affidavits and declaration.

On December 22, 2014, the Court entered the proposed order attached to the First Notice/Motion for Distribution of NSF entitled *Order Granting Settling Class Plaintiff's Motion for Approval of Net Settlement Fund Plan of Allocation and Scheduling Motion for Distribution* [ECF No. 994] (the "12/22/14 Order").

Pursuant to the 12/22/14 Order, the NSF plan of allocation submitted with the First Notice/Motion of Distribution of NSF was approved.  Notably, the "approved" NSF did not include the Opt-Out Plaintiffs[4].  Also, notably, the 12/22/14 Order was entered after the Court considered, among other things, the Phillips Declaration, which does not even refer to the possibility that Opt-Out Plaintiffs could be readmitted to the Settlement Class.[5]

The 12/22/14 Order had the following deadlines:  (i) by January 30, 2015, the Settling Class Plaintiffs were required to move for distribution of the NSF; (ii) by February 27, 2015, opposing papers to the motion were required to be filed; and (iii) by March 13, 2015 replies to the responses, if any, were to be filed.

On the January 30, 2015, Lead Counsel submitted a letter to the Court requesting modification of the motion schedule to extend (i) the January 30, 2015 deadline to February 17, 2015; (ii) opposing papers were to be filed by March 17, 2015, and (iii) replies by March 31, 2015.

---

[4] The Second Notice/Motion for Distribution of NSF confuses the description of parties by failing to distinguish the Opt-Out Plaintiffs and simply defines them as part of the Settling Plaintiffs.
[5] As set forth more specifically herein, the Second Notice/Motion for Distribution of NSF was submitted without an affidavit from the Mediator.  The Phillips Declaration was only submitted in support of the First Notice/Motion for Distribution of the NSF, which did not provide for re-admission of the Opt-Out Plaintiffs.

3

On February 17, 2015, the Settling Class Plaintiffs requested a second extension and modification of the motion schedule with the following proposed deadlines:  (i) by February 27, 2015, the Second Class Plaintiffs were required to file a motion for approval of distribution of NSF; (ii) by March 27, 2015 opposing papers to the motion are required to be filed; and (iii) by April 10, 2015 replies to responses, if any, are to be filed.  The reason for this extension was that the claims administrator needed more time to perform calculations regarding claims and proposed distributions.  Nowhere did Lead Counsel mention ongoing negotiations with the Opt-Out Plaintiffs let alone the possibility of a request for readmission of the Opt-Out Plaintiffs.

On February 27, 2015, the Settling Class Plaintiffs filed the Second Notice/Motion for Distribution of NSF (again, a hearing is contemplated in the body of the Second Notice/Motion for Distribution of NSF), with the 2/27/15 Memorandum.  In support of approval of the Second Notice/Motion for Distribution of NSF, Settling Class Plaintiffs submitted only an affidavit from the noticing agent, *Affidavit of Stephanie Amin-Giwner in Support of Motion for Approval of Distribution of the Net Settlement Fund* [ECF No. 1005].

In sub (ii) of the Second Notice/Motion for Distribution of NSF and on page 9 of the 2/27/15 Memorandum, Settling Class Plaintiffs make casual reference, for the first time, to a "proposal" for readmission of the Opt-Out Plaintiffs (described by the Lead Counsel as the Settling Plaintiffs).  Despite the proposed readmission's significance to the Settlement Class Members, Lead Counsel failed to distribute the Second Notice/Motion for Distribution of NSF or the 2/27/2015 Memorandum to those  Settlement Class Members.  While those pleadings were posted on the Tremont website, readmission of the Opt-Out Plaintiffs was not part of the previously proposed NSF which was approved by this Court in the 12/22/14 Order.  As a result,

6277881-9

the pleadings filed on 2/27/15 should have been served directly on the Settlement Class Members.

On March 20, 2015, the Opt-Out Plaintiffs filed the *Settling Plaintiffs Joinder in the Settling Class Plaintiffs' Motion for Approval of Distribution of Net Settlement Fund* (the "Opt-Out Plaintiffs' Joinder"). The Opt-Out Plaintiffs' Joinder is disingenuous to the extent it implies or seeks for this Court to believe that the Mediator was involved in the proposal for readmission.[6] It also inaccurately states that the "Consensus Proposal" (which is anything but a general consensus), brings total support for Lead Counsel's proposal to 90 percent of all Rye and Tremont net investment.

### SUMMARY OF ARGUMENT IN SUPPORT OF OPPOSITION TO SECOND NOTICE/MOTION FOR DISTRIBUTION OF NSF

The proposed readmission of the Opt-Out Plaintiffs has a material and adverse impact on the distributions payable to ACM and other Settlement Class Members. Lead Counsel is proposing to pay 20% of the NSF – up to $15 million – to Opt-Out Plaintiffs who have waived all rights to recover from the NSF. This proposal is not the agreement that Lead counsel and the Settlement Class Members reached at the Mediation. It is not the agreement that is reflected in the First Notice/Motion for Distribution of NSF. Given Lead Counsel's representation that there is now only $75 million remaining in the NSF, this 20 percent dilution is significant.

ACM had no knowledge of the terms of the settlement resulting in the filing of the Second Notice/Motion for Distribution of NSF and was not noticed by Lead Counsel of the fact or substance of any discussions between Lead Counsel and the Opt-Out Plaintiffs. Upon information and belief, other large NSF claimants, including Collins Capital, were similarly

---

[6] Like in the Second Notice/Motion for Distribution of NSF, the Opt-Out Plaintiffs' Joinder also confuses the description of parties by failing to distinguish the Opt-Out Plaintiffs and simply defines them as part of the Settling Plaintiffs.

5

excluded from the settlement discussions and process between Lead Counsel and the Opt-Out Plaintiffs. Further, ACM has confirmed that the Mediator was not involved in any such settlement discussions. This is in stark contrast to the circumstances surrounding the filing of the First Notice/Motion for Distribution of NSF. Then, the Mediator was actively involved in the process and the First Notice/Motion for Distribution of NSF was supported by the Phillips Declaration. Here there is no declaration from the Mediator supporting the Second Notice/Motion for Distribution of NSF.

Business representatives of ACM and its undersigned counsel have requested information from Lead Counsel regarding the circumstances surrounding the settlement with the Opt-Out Plaintiffs, the role of other NSF claimants in the settlement process and a copy of the settlement agreement. Lead Counsel has refused to provide a copy of the settlement agreement to ACM and has refused to answer other fundamental questions ACM has asked. In addition, Lead Counsel has advised ACM that notwithstanding representations in the Second Notice/Motion for Distribution of NSF regarding the possible additional funds that may flow through to the NSF or the FDA by virtue of the cessation of litigation between the Opt-Out Plaintiffs and Tremont, in fact there will not be any material funds flowing through to the NSF or the FDA as a result of the settlement with the Opt-Out Plaintiffs. *See* page 10 of the 2/27/15 Memorandum where Lead Counsel represents that readmission of the Opt-Out Plaintiffs "brings to a close substantial opt-out litigation that is otherwise using valuable Tremont resources which, under the Class Settlement, to the extent remaining would flow to the Class post administration and wind up." Yet, nowhere does Lead Counsel offer any information to evaluate or qualify this supposed benefit or the merits of any such litigation.

6

At the time the Mediator filed the Phillips Declaration in support of the NSF in December 2014, there was near unanimous support for the plan of distribution. By way of discussions among participants following the Mediation,  it is ACM's understanding that the vast majority of the Settlement Class Members who have eligible claims in the NSF and are participating in the Mediation discussions now oppose readmission to the Settlement Class of the Opt-Out Plaintiffs, all  146 of whom had previously opted out over four years ago. It is important to note that approximately 20% (based on claim amount) of the Settlement Class Members have filed oppositions to the readmission and  based on discussions with other Settlement Class Members, ACM asserts that as much as an additional 35% (also based on claim amount) of the Settlement Class Members oppose the readmission.

### DISCOVERY IS APPROPRIATE PRIOR TO DETERMINING WHETHER TO APPROVE SECOND NOTICE/MOTION FOR DISTRIBUTION OF NSF

While Lead Counsel asserts that the readmission of the Opt-Out Plaintiffs to the Settlement Class will benefit the Settlement Class, (pages 2, 3 and 10 of the 2/27/15 Memorandum), the Second Notice/Motion for Distribution of NSF does not provide information sufficient for ACM or other members of the Settlement Class to understand how this agreement will inure to their benefit or assess whether the purported benefits outweigh the clear prejudice. Collins Capital, another member of the Settlement Class, has requested in writing that Class Counsel provide it with basic information so that Collins and the other class members can better understand the impact of Lead Counsel's proposal. Lead Counsel replied that he would not provide a written response and stated that he believed his filing is sufficient.

The Second Notice/Motion for Distribution of NSF suggests that the agreement with the Opt-Out Plaintiffs will result in Settling Defendants contributing "valuable Tremont resources"

7

to the NSF, yet the motion is devoid of any information as to what amount of money the Settling Defendants will be adding to the NSF as a result of the settlement with the Opt-Out Plaintiffs.

In addition, the Second Notice/Motion for Distribution of NSF indicates that the agreement with the Opt-Out Plaintiffs will "streamline" the Mediation of the FDA plan of allocation; yet, nowhere in the Second Notice/Motion for Distribution of NSF is this point addressed with any detail or explanation.

The Second Notice/Motion for Distribution of NSF proposes that the payments to the Opt-Out Plaintiffs be made by creating a NSF Reserve, which will reflect 20 percent of the NSF's assets that would otherwise have been distributed to the Settlement Class Members.

The Second Notice/Motion for Distribution of NSF does not provide details about the amounts of the Opt-Out Plaintiffs' recognized claims. Without it, the Settlement Class cannot assess whether it is appropriate to set aside 20 percent of the NSF's assets for the NSF Reserve.

The Second Notice/Motion for Distribution of NSF proposes that the distributions to the Opt-Out Plaintiffs be made without Court supervision or approval.  This is particularly disturbing in light of Lead Counsel's refusal to make appropriate disclosures to the Settlement Class Members regarding the terms of the Settlement.

Finally, the Second Notice/Motion for Distribution of NSF is devoid of information about the amount of the net recovery from the Fidelity Bond Litigation that was added to the NSF.  The Second Notice/Motion for Distribution of NSF states that approximately $75 million remains in the NSF but the Settlement Class is not provided with a summary of what deductions have been taken from the NSF to date, including any attorneys' fees or costs.

At a minimum, this Court should adjourn ruling on approval of any distribution of the NSF in order to allow discovery into the facts and circumstances of the settlement with the Opt-

Out Plaintiffs, the parties involved in the settlement discussions and the concerns of Lead Counsel that have resulted in Lead Counsel making this settlement secret from Settlement Class Members to which Lead Counsel is a fiduciary. This is particularly important because, as this Court is aware, the Settling Parties are still in the midst of negotiation regarding resolution of the FDA (*see* the Opt-Out Plaintiffs' Joinder, p.1) and it is unclear what, if any effect this proposal, will have on the FDA.

In order to determine whether, in fact, the proposed NSF is truly in the best interest of all Settlement Class Members, this Court should allow ACM and other aggrieved Settlement Class Members to conduct discovery into these matters.  ACM reserves all rights to further object on the merits of the proposal once the discovery process is complete.

## LEGAL ARGUMENT IN SUPPORT OF OPPOSITION
## TO SECOND NOTICE/MOTION TO DISTRIBUTION OF NSF

"[S]ettlement negotiations and agreements are the products of long negotiations and difficult calculations. They are also, much like a party's decision to opt out of a settlement class, the products of highly skilled, experienced lawyers' reasoned decisions." *In re Cathode Ray Tub Antitrust Litig.*, No. 07-5944, at 7 (Apr. 1, 2014). Although parties may seek reconsideration of their strategic decision to opt out of a settlement class, such a request should only be permitted where (i) there is no prejudice to the settling class, and (ii) the party seeking to "opt-in" is not disrupting the class action process. *In re Moneygram, Inc. Int'l Securities Litigation*, 2011 WL 855311, at *2 (D. Minn. 2011).

In this case, the Opt-Out Plaintiffs had the ability to participate in the negotiations leading to the Settlement, but chose to forego that opportunity to pursue litigation against Tremont and other parties, with the expectation that they could achieve a better result through that litigation. Readmission of the Opt-Out Plaintiffs at this late date can only be the result of

9

gaming the class action process.  *Id.* at *3.  "A person joins—and withdraws from—a class settlements [sic] at his peril." *Id.*

Lead Counsel stresses the "benefit to the Class" of readmission of the Opt-Out Plaintiffs. This is somewhat ironic because it is critical that the Settlement Class Members be given an opportunity to determine for themselves what is in their best interest.  And this is even more poignant because Lead Counsel's obligation is to the existing Settlement Class Members and not to those who chose to opt out of a class action.  "[T]he compelling obligation of Lead Counsel in class action litigation is to the group which makes up the class.  Lead Counsel must be aware of and motivated by that which is in the maximum best interests of the class considered as a unit." *Parker v. Anderson*, 667 F.2d 1204, 1211 (5th Cir. 1982).

Further, it is clear that Lead Counsel has no fiduciary duty to the Opt-Out Plaintiffs. "[I]t is now generally agreed that the lawyer for a *certified* class represents all putative members of the class, at least until they elect to opt out of the class."  *Id.; In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 28 (D.C. Cir. 2000) (holding that parties who opt out of a class action lack standing to object to a class settlement); Vincent Johnson, *The Ethics of Communicating with Putative Class Members*, 17 Rev. Litig. 497, 505 (1998).[7]  One who formally opts out of a class action is not a class member and there is no fiduciary duty owed to that person or entity.  Lead Counsel's duty here is to the Settlement Class Members – not the Opt-Out Plaintiffs – and there is no reason why Lead Counsel should not be required to share with the Settlement Class Members the details of its negotiations and agreement with the Opt-Out Plaintiffs, which were purportedly made on behalf of the Settlement Class Members.  *See Piambino v. Bailey*, 757 F.2d

---

[7] Notably, Lead Counsel must act "in a manner consistent with his **fiduciary duty to each class member**." Nick Landsman-Roos, *Front-End Fiduciaries:  Precertification Duties and Class Conflict*, 65 Stan. Law Rev. 817, 827 (2013).  (emphasis added).

1112, 1144 (11th Cir. 1985) (Class counsel cannot "abandon the fiduciary role they assumed at will or by agreement. . . if prejudice to the members of the class they claimed to represent would result.") (internal citations omitted).

## CONCLUSION

For the reasons, stated herein, this Court should (i) grant the Settlement Class Members additional time to conduct discovery regarding the "settlement proposal" with the Opt-Out Plaintiffs and (ii) abate any ruling on a proposed distribution for the NSF, and in particular, any ruling on the proposed readmission to the Settlement Class of the Opt-Out Plaintiffs, until the completion of the discovery sought by ACM and a further hearing before this Court, or (iii) in the alternative, order that the NSF be distributed to those Settlement Class Members with approved claims immediately and without further delay and hold the 20 percent back pending further order of the Court.

Dated: March 27, 2015                     **BERGER SINGERMAN LLP**

*/s/ Christopher A. Jarvinen*
Christopher A. Jarvinen
cjarvinen@bergersingerman.com
Paul Steven Singerman *(Pro Hac Vice Admission Pending)*
singerman@bergersingerman.com
Ilyse M. Homer *(Pro Hac Vice Admission Pending)*
ihomer@bergersingerman.com
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone:  (305) 755-9500
Facsimile:  (305) 714-4340

*Counsel for Austin Capital BMP Fund, LLC*

6277881-9

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing document was served upon all parties registered to receive electronic notice through the Court's CM/ECF system on March 27, 2015.

/s/ *Christopher A. Jarvinen*
Christopher A. Jarvinen

12