UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | : **Master File No.:**<br>: **08-cv-11117 (TPG)**<br>:<br>:<br>: **ECF CASE** |
| This Document Relates To:<br>All Actions | :<br>:<br>:<br>: |

**MEMORANDUM OF LAW OF CALABRESE PARTIES AND BOSTON CLASS MEMBERS GROUP IN PARTIAL OPPOSITION TO MOTION FOR APPROVAL OF DISTRIBUTION OF NET SETTLEMENT FUND**

ORLOFF, LOWENBACH, STIFELMAN
& SIEGEL, P.A.
101 Eisenhower Parkway, Ste. 400
Roseland, New Jersey  07068-1097
(973) 622-6200
Attorneys for Class Members Antonio Calabrese, Stephen Calabrese, Calco Plating, Inc., Lawrence J. Rothschild, Richard A. Scherr, Family Swimmers, L.P., Arthur Simons, Paul Funk, Joseph Ludwig, Judith Ludwig, Stuart Levey, Deborah Levey, Levey Fishman Trust, Nicholas P. Kardasis IRA, and Jean-Marc Chouraqui

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT..................................................................................... 1

RELEVANT BACKGROUND ....................................................................................... 3

LEGAL ARGUMENT ..................................................................................................... 9

   I.    READMISSION OF THE RECONSIDERING OPT-OUTS WOULD HARM THE SETTLEMENT CLASS WITHOUT PROVIDING ANY KNOWN COUNTERVAILING BENEFIT ........................................................... 9

   II.   READMISSION OF THE RECONSIDERING OPT-OUTS IS FUNDAMENTALLY UNFAIR TO CLASS MEMBERS WHO DID NOT OPT OUT ....................................................................................... 122

CONCLUSION ............................................................................................................ 144

# TABLE OF AUTHORITIES

**PAGE**

## CASES

Beecher v. Able,
  575 F.2d 1010 (2d Cir. 1978) ................................................................................ 12

Grant v. Bethlehem Steel Corp.,
  823 F.2d 20 (2d Cir. 1987) .............................................................................. 8, 12

In re Citigroup Inc. Securities Litigation,
  965 F.Supp.2d 369 (S.D.N.Y. 2013) ..................................................................... 8

Martens v. Smith Barney, Inc.,
  191 F.R.D. 54 (S.D.N.Y. 2000) ........................................................................... 13

Plummer v. Chemical Bank,
  668 F.2d 654 (2d Cir. 1982) ............................................................................ 8, 11

Ryan v. Dow Chemical Co.,
  781 F.Supp. 902 (E.D.N.Y. 1991), aff'd, 996 F.2d 1425 (2d Cir. 1993) ................ 8

Valente v. Pepsico, Inc.,
  89 F.R.D. 352 (D.Del. 1981) ............................................................................... 13

# MEMORANDUM OF LAW OF CALABRESE PARTIES AND BOSTON CLASS MEMBERS GROUP IN PARTIAL OPPOSITION TO MOTION FOR APPROVAL OF DISTRIBUTION OF NET SETTLEMENT FUND

[Emphasis Ours Unless Otherwise Noted]

Class members Antonio Calabrese, Stephen Calabrese and Calco Painting, Inc. (collectively the "Calabreses" or "Calabrese Parties") and class members Lawrence J. Rothschild, Richard A. Scherr, Family Swimmers, L.P., Arthur Simons, Paul Funk, Joseph Ludwig, Judith Ludwig, Stuart Levey, Deborah Levey, Levey Fishman Trust, Nicholas P. Kardasis IRA, and Jean-Marc Chouraqui ("Boston Class Members Group") submit this Memorandum in partial opposition to the Motion for Approval of Distribution of the Net Settlement Fund to Authorized Claimants filed by Lead Counsel in this action ("Motion to Approve Distribution"). [ECF No. 1003].

## PRELIMINARY STATEMENT

Lead Counsel moves for permission to commence distribution of the proceeds of the Settlement[1] to members of the Settlement Class. The Calabrese Parties and the Boston Class Members Group oppose that portion of the motion which seeks the readmission to the Settlement Class of 146 parties who had previously voluntarily excluded themselves from it. The motion papers reveal that, as a direct effect of this readmission, the Claims Administrator would need to set aside 20% of the fund previously available to the Settlement Class members for possible payment to the readmitted parties.

---

[1] Capitalized terms, where not defined, are carried over from Lead Counsel's brief in support of the Motion to Approve Distribution [ECF No. 1004], the "Settling Plaintiffs'" Joinder [1006] and the Stipulation of Partial Settlement, dated as of February 23, 2011 (the "Stipulation"). [ECF No. 392-1].

This severe dilution of the existing Settlement Class members comes with no countervailing benefits to the Class. Lead Counsel's arguments that the separate settlement achieved by the group of opt-outs seeking readmission with the Settling Defendants (which settlement includes Settling Defendants' consent to the opt-outs' instant request for readmission) will somehow benefit the class is without support. The impact of these opt-outs' settlement on the Settlement Class is, in fact, incapable of being evaluated because certain provisions of that settlement are being treated as confidential and are hidden from the other Settlement Class members and the Court. Indeed, if the separate settlement involves a separate payment by the Settling Defendants to the would-be readmitted opt-outs, it is grossly unfair to the Settlement Class, who will suffer a dilution in their supposedly "safe," predictable recovery without being able to share in the separate settlement's benefits.

While Lead Counsel seems to suggest that granting this motion will somehow conduce to the progress of a currently ongoing mediation over the allocation of the separate Fund Distribution Account, this argument is equally devoid of support. If this motion came as part of a global Fund Distribution Account agreement that provided true and equitable benefits to all members of the Settlement Class and other investors, the view of this motion might be different. As it is, readmission would confer a one-sided and unwarranted benefit on a particular group of opt-outs.

Allowing certain opt-outs to be readmitted to the class almost four years after their supposedly final exclusion is fundamentally unfair to the other class members, who did not have the opportunity of reaping the benefits of being both in and out of the

Settlement Class.  It is inimical to the class action process and should not be tolerated by the Court.  For these reasons, the Court should deny that portion of the motion which seeks the readmission to the Settlement Class of the 146 parties who had previously excluded themselves therefrom.

## **RELEVANT BACKGROUND**

On April 13, 2011, the Claims Administrator commenced the mailing of the Settlement approval and class certification Notice to potential members of the State Law Subclass and Securities Subclass of the Settlement Class in this class action. [ECF No. 438, ¶¶ 103, 108].[2]  The Notice advised all potential members of the relevant subclasses — most investors in the so-called Rye Funds and Tremont Funds marketed by Tremont Group Holdings, Inc. ("Tremont") — of the Settlement and its pending approval. [ECF No. 438-2, Exh. A, ¶3].  It set forth the salient benefit of the Settlement available only to the members of the Settlement Class: payment from a $100 million settlement fund created by the Settling Defendants. [ECF No. 438-2, Exh. A, ¶9].  Specifically, the fund, referred to as the "Net Settlement Fund" after the deduction of attorneys' fees and other expenses, [Id. at ¶10], would only be accessible to "State Law Subclass Members and Securities Subclass Members." [Id. at ¶9].  Notice recipients were given a choice to "exclude themselves" from the Settlement Class, [Id. at ¶7], whereupon, the notice made clear, they would no longer be Members of the Settlement Class or the relevant Subclasses. [Id. at ¶6].

---

[2] The Settlement Class and its Subclasses were defined in this Court's Notice Order of April 5, 2011. [ECF No. 419; see also ECF No. 554 n.5].

-3-

The Notice made clear that those who "excluded themselves" would not be eligible to receive any payment from the Net Settlement Fund: **"If you ask to be excluded, you will not get any payment from the Net Settlement Fund."** [Id. at ¶15]. On the other hand, they would "be able to sue (or continue to sue) the Settling Defendants or Released Parties in the future." [Id.]. However, according to the Notice, Lead Counsel estimated that the recovery in the event of prevailing on the merits on all the claims advanced by the class would, on average, be no more than 5.7% of the total losses sustained by investors in Tremont's funds, before attorneys' fees, the same as the average percentage recovery that was projected to be achieved by Settlement Class members by participating in the $100 million fund. [Id. at p. 3-4 (Summary Notice)]. In addition, Lead Counsel explained that claims against defendants "involved legally challenging and, in some cases, novel, issues of state and securities law" and would face a number of "hurdles." [ECF No. 438, ¶¶ 65, 70; see also ¶¶ 71-80]. Indeed, Lead Counsel noted that "more than half a dozen similar lawsuits ha[d] been dismissed in the Southern District of New York." [ECF No. 438, ¶9].

The Notice set a deadline of May 11, 2011 to submit a request for exclusion. [Id., ¶15]. It let the recipients understand that if they submitted an exclusion request, they would "not be entitled to receive any of the benefits of the Settlement."[3]

---

[3] The one exception to this was the entitlement to "potential payment from the Fund Distribution Account," [ECF No. 438, ¶18], a separate fund open to all investors in Rye Funds and Tremont Funds and consisting chiefly of the proceeds obtained by those funds in the Madoff Trustee Proceedings. [Id. ¶9]

[ECF No. 438, ¶18].  **The Notice did not provide for, or imply, the possibility of returning to the Settlement Class after requesting an exclusion.**[4]

The Calabrese Parties are investors in various Rye Funds, with total net losses among them of approximately $12,185,000, across all investments.  The Boston Class Members Group are investors in various Rye Funds, with total net losses among them of approximately $7,500,000, across all investments.  Having considered the alternatives, the Calabrese Parties and the Boston Class Members Group chose to remain in the Settlement Class and forego the possibility of suing the Settling Defendants, in exchange for retaining the benefits of the Settlement, chiefly the eligibility for payment from the Net Settlement Fund.  [ECF No. 604-2].  A number of Tremont Funds and Rye Funds investors did exclude themselves, including 148 members of the so-called Ross & Orenstein Group.  [ECF No. 604-2, p.2].

On August 19, 2011, the Court certified the Settlement Class.  [ECF No. 604, ¶3].  The parties who had requested exclusion from the Settlement Class were definitively determined to be excluded from it.  [ECF No. 604, ¶¶ 3(d), 20].  In particular, the Court ruled **that such excluded parties "may not make any claim with respect to or receive any benefit from the Settlement."**[5]

The Motion to Approve Distribution seeks the "readmission to the Settlement Class" of 146 parties who had previously voluntarily excluded themselves

---

[4] The Supplemental Notice did instruct that those who had filed a request for exclusion but "wish[ed] to rejoin the Settlement Class" could "request" to do so, which request was committed to the "discretion" of the Settlement Class and the Settling Defendants.  **The Supplemental Notice set a firm deadline of August 1, 2011 for submitting such a request.**  [ECF No. 554, Exh. A, p.2].

[5] With the exception of possible payments from the Fund Distribution Account.

-5-

from the class ("Reconsidering Opt-outs"). [ECF No. 1004, p.1]. The proposed NSF distribution whose approval is sought by the instant motion contains a provision for the claims on the Net Settlement Fund expected to be made by the Reconsidering Opt-outs upon readmission:

> Since these parties have not yet submitted formal Proofs of Claim the processing for those Claims, which are referred to herein as the "Claims-in-Process," has not yet been completed. However, [Claims Administrator] GCG did a preliminary review of [the Reconsidering Opt-outs'] claims information that was shared with counsel for the [Reconsidering Opt-outs]. [GCG] is also informed by Lead Counsel **that Counsel for the Settling Plaintiffs' agreed in princip[le] to the NSF Reserve.** [ECF No. 1005, ¶24].
>
> More specifically:
>
> [NSF] Authorized Claimants … will be paid 80% of their Distribution Amount. **The remaining 20% of their payments will be held in reserve (the "NSF Reserve") to address any Claims-in-Process that ultimately are determined to be eligible to participate in the Settlement**, and for any other contingencies that may arise. [See ECF No. 1005, ¶29(b)(3)].

In other words, **as a direct result of the planned readmission of the Reconsidering Opt-outs, the NSF payouts to the existing Settlement Class members will be reduced by 20%.** This is not unexpected, given that aggregate amount of the Reconsidering Opt-outs' net losses could be in the hundreds of millions of dollars[6] versus the aggregate amount of recognized net losses of existing Settlement Class members totaling $1,342,929,318.99 so far.[7] Due to the establishment of the 20% reserve, the

---

[6] Examining the most recent complaint in Cocchi v. Tremont Group Holdings, Inc., one of the separate Reconsidering Opt-out actions, alone reveals tens of millions of dollars in claimed losses. [See 12-Cv.-9057 (TPG), ECF No. 99-1].
[7] Given the presumed size of the Reconsidering Opt-outs' losses, it is highly doubtful that any of the 20% reserve would be returned to the existing members of the Settlement Class in any subsequent distributions.

payout to the Settlement Class would be reduced from approximately $75 million to approximately $60 million.  [ECF No. 1004, p.4, 10].

Because they had excluded themselves from the Settlement, these Reconsidering Opt-outs have been able to and have, until now, pursued a number of separate claims against the Settling Defendants, made possible by their having excluded themselves from the Settlement. [ECF No. 1006, p.1].  The readmission of the Reconsidering Opt-outs is being requested because the Reconsidering Opt-outs have allegedly "agreed in principle with [the Settling] Defendants and Lead Counsel to seek to opt back into the Settlement." [ECF No. 1004, p.3].  Apparently, this agreement comes as part of a larger settlement among the Reconsidering Opt-outs and the Settling Defendants, i.e. parties affiliated with Tremont, which will result in the dismissal of the Reconsidering Opt-outs' separate claims ("Reconsidering Opt-out Settlement"). [ECF No. 1006, p.2].

The only term of the Reconsidering Opt-out Settlement other than the readmission that is discussed either in Lead Counsel's motion papers or the Reconsidering Opt-outs' Joinder is the Reconsidering Opt-outs' accession to something called "Lead Counsel's Consensus Proposal" in the currently ongoing mediation regarding the allocation of the separate Fund Distribution Account.  [Id.].  However, no details of the "Consensus Proposal" are given.  In fact, although they have fully participated in the mediation, the Calabrese Parties and the Boston Class Members Group are not aware of any "consensus proposal" for the allocation of the Fund Distribution Account.  In fact, there are several competing proposals, which have been the subject of

vigorous debate for months. An second live mediation session is in the process of being scheduled. The proposals contain very different treatments and levels of recovery for investors in certain of the Rye Funds. While one "faction" in the mediation has long claimed the mantle of representing close to "90 percent of all Rye and Tremont net investment," [See ECF No. 1006, p.2], that number itself is subject to dispute because it disregards certain Rye Funds disfavored by that faction. Until the announcement of the Reconsidering Opt-out Settlement, the Reconsidering Opt-outs had appertained to an opposing faction in the mediation.[8]

No other term of the Reconsidering Opt-out Settlement is discussed in the motion papers. **In fact, the Reconsidering Opt-outs have advised Settlement Class members and others that the other terms of the Reconsidering Opt-out Settlement are confidential.** For example, the motion papers do not mention whether the Settling Defendants, i.e. the Tremont entities, are making any payment to the Reconsidering Opt-outs in consideration for the dismissal of their separate claims against the Settling Defendants.

---

[8] The foregoing discussion does not constitute waiver of mediation privilege. Rather it is meant to rebut Reconsidering Opt-outs' statements regarding a supposed "consensus proposal" and the allegedly positive effect of their settlement on the Fund Distribution Account mediation, without revealing any confidential particulars of the proposals exchanged in mediation.

## LEGAL ARGUMENT

I. **READMISSION OF THE RECONSIDERING OPT-OUTS WOULD HARM THE SETTLEMENT CLASS WITHOUT PROVIDING ANY KNOWN COUNTERVAILING BENEFIT**

The District Court charged with approving or administering a class action settlement has a "duty to protect the interests of absent class members." Plummer v. Chemical Bank, 668 F.2d 654, 659 n.4 (2d Cir. 1982). Indeed, it has been said that "[t]he district court had a fiduciary responsibility to the silent class members." Grant v. Bethlehem Steel Corp., 823 F.2d 20, 23 (2d Cir. 1987). Whenever the court is confronted with any request that would diminish or dilute the funds available to the class members, the court must inquire as to the benefit derived by the class in return. See e.g. In re Citigroup Inc. Securities Litigation, 965 F.Supp.2d 369, 390 (S.D.N.Y. 2013). Conversely, the court must avoid and forestall any developments in or relating to the class action that would harm class members. Ryan v. Dow Chemical Co., 781 F.Supp. 902, 915 (E.D.N.Y. 1991), aff'd, 996 F.2d 1425 (2d Cir. 1993).

Here, it is undeniable that existing Settlement Class members would be harmed by the readmission of the Reconsidering Opt-outs. Their NSF payouts would be immediately reduced by 20% by virtue of the establishment of a reserve for the benefit of the Reconsidering Opt-outs. [ECF No. 1005, ¶29(b)(3)]. Given the number of the Reconsidering Opt-outs and the presumed aggregate size of their claims, Settlement Class members may never see any of that 20% reserve again.[9]

---

[9] While the Reconsidering Opt-outs would, of course, benefit from this change, **they are not members of the Settlement Class.** [ECF No. 604, ¶¶ 3(d), 20].

Lead Counsel claims that readmission of the Reconsidering Opt-outs would benefit the class because it would "streamline" Fund Distribution Account mediation [ECF No. 1004, p.3], presumably because the consummation of the Reconsidering Opt-out Settlement would bring the Reconsidering Opt-outs on board with "Lead Counsel's Consensus Proposal." [ECF No. 1006, p.2]. However, as already noted, there is no evidence of any "consensus" in the Fund Distribution Account mediation. Indeed, Lead Counsel admits that "[w]ith regard to the FDA … a full consensus among all Interested Parties has not yet been reached." [See ECF No. 1004, p.3]. Mediation is ongoing, with robust differences of opinion. The fact that the Reconsidering Opt-outs have apparently changed "camps" in the Fund Distribution Account mediation is indicative of nothing. There is no evidence that the proposal to which the Reconsidering Opt-outs will now apparently adhere will actually benefit the Settlement Class as a whole.[10]

Lead Counsel also claims that the Reconsidering Opt-out Settlement (and hence the readmission of the Reconsidering Opt-outs) is a positive for the Settlement Class because it "brings to a close substantial opt out litigation that is otherwise using valuable Tremont resources which, under the Class Settlement … would flow to the Class post-administration and wind up." [Id.]. This is another instance of pure argument without a shred of support. The "Tremont resources" language must be a reference to the provision of the Settlement which would add any funds "remaining in Tremont Group

---

[10] The situation would be different if, indeed, a "global" Fund Distribution Account settlement existed. If readmission were proposed as part of such a settlement, and if such a settlement conferred tangible, quantifiable benefits on all members of the Settlement Class (rather than just a subset thereof), then readmission of nonmembers (and not just a particular, lucky subset thereof) into the Settlement Class might not be so offensive.

Holdings, Inc. after completion of the wind down of its and its subsidiaries' operations" to the $100 million settlement fund. [ECF No. 438-1, ¶1.51]. However, nothing in the motion papers, which otherwise provide significant detail regarding the Net Settlement Fund, indicates that Lead Counsel expects any funds to remain in Tremont Group Holdings, notwithstanding the Reconsidering Opt-out Settlement.

The argument regarding the conservation of "Tremont resources" is further undercut by the glaring omission of the other, "confidential" terms of the Reconsidering Opt-out Settlement. If the Reconsidering Opt-outs are to receive additional payments in consideration of their settlement, then the settlement might actually diminish the "Tremont resources," whatever they are. Moreover, the presence of such additional payments would make the Reconsidering Opt-out Settlement shockingly unfair to the Settlement Class, since it would mean that the Reconsidering Opt-outs are "dipping" into the fund belonging to the Settlement Class without at the same time sharing with the Settlement Class the separate payment they are receiving from the Tremont Defendants. Whatever the case, the purported benefit (or harm) of the proposed Reconsidering Opt-out readmission to the Settlement Class cannot be determined by the Court without the evaluation of the full terms of the Reconsidering Opt-out Settlement. Lead Counsel claims that settlement as a whole benefits the Settlement Class. The Court may not delegate its duty to the class members to Lead Counsel. <u>Plummer</u>, 668 F.2d at 659. The full terms of their settlement must be revealed if readmission of the Reconsidering Opt-outs is to be so much as considered.

## II. READMISSION OF THE RECONSIDERING OPT-OUTS IS FUNDAMENTALLY UNFAIR TO CLASS MEMBERS WHO DID NOT OPT OUT

Aside from considerations of harm to the Settlement Class, readmission of should be denied to the Reconsidering Opt-outs based on the notions of fundamental fairness. The 2011 Notice presented the Settlement Class members with a difficult choice: (1) stay in the Settlement Class for a very modest recovery through the Net Settlement Fund;[11] **or** (2) take the risk of pursuing one's own litigation with "legally challenging …, novel, issues of state and securities law" and a number of "hurdles" and be barred from accessing the Net Settlement Fund. The Calabrese Parties and the Boston Class Members Group chose the former.

Neither the Notice nor the Court's order certifying the Settlement Class indicated or implied that one could **both** access the Net Settlement Fund **and** pursue separate litigation, in order to try to get a better deal. Yet, if they are readmitted, that is exactly what the Reconsidering Opt-outs will have done. This is egregious, particularly if the Reconsidering Opt-outs are to receive additional compensation from the Settling Defendants or other sources as part of the Reconsidering Opt-out Settlement. If this is the case, they will have pursued separate litigation with little downside risk (having the ability to opt back in); secured a recovery through the litigation; **and received an additional enhancement** of being allowed back into the Net Settlement Fund. Appallingly, in the process, they will have diluted and reduced the recovery of the

---

[11] With aggregate net losses of at least $1,342,929,318.99 and a likely payout of $60 million, the actual recovery to the Settlement Class members will actually be well below 5%.

Settlement Class members, who stayed in the Settlement Class for the precise reason of desiring a more secure, predictable recovery.

The Court's "fiduciary responsibility" to the members of the Settling Class, Grant, 823 F.2d at 23, will not brook such a result. The case of Valente v. Pepsico, Inc., 89 F.R.D. 352 (D. Del. 1981), is apposite here. There, as here, certain plaintiffs had opted out of a class and were subsequently excluded from a later settlement by express order of the Court. Despite this, some of the opt-outs submitted claims to the settlement fund. The court barred the claims, in keeping with the principle that plaintiffs in a class action setting "cannot 'sit on the sidelines'" forever, indefinitely extending their ability to opt in or out. Id. at 356. Citing to the rationale of Beecher v. Able, 575 F.2d 1010 (2d Cir. 1978), the court reasoned that a plaintiff who decides to opt out "assume[s] the risk" that the class action settlement might later prove attractive enough to make that plaintiff regret not having opted in. Id. at 357. Attractive or not, however, where the terms of the "settlement [provide] that opt-outs would be ineligible to file claims," and are confirmed by court order, the court will not allow claims by opt-outs. Id.

The same logic should be followed here. This is not a case where a plaintiff "misunderstood the effect on their claims of opting out of the class settlement" or where such a plaintiff's readmission would not materially affect the other class members. See e.g. Martens v. Smith Barney, Inc., 191 F.R.D. 54, 55 (S.D.N.Y. 2000). The Reconsidering Opt-outs took a calculated risk, betting that they could do better in litigation. The Settlement Class members took the opposite approach, opting for a predictable recovery. The Reconsidering Opt-outs should not be allowed to diminish that

-13-

recovery by taking for themselves a portion of the Net Settlement Fund to which they had given up any claims, just so they can "sweeten" their presumed secret deal with Tremont affiliates.

### CONCLUSION

For the foregoing reasons, Antonio Calabrese, Stephen Calabrese and Calco Painting, Inc. respectfully request that the Court deny that part of the Motion for Approval of Distribution of the Net Settlement Fund to Authorized Claimants which seeks the readmission into the Settlement Class of the group of 146 parties defined as "Settling Plaintiffs" in Lead Counsel's Memorandum of Law dated February 27, 2015 [ECF No. 1004, p.1] and in the "Settling Plaintiffs'" Joinder dated March 20, 2015. [ECF No. 1005, p.1]

Dated: March 27, 2015

Respectfully submitted,

ORLOFF, LOWENBACH, STIFELMAN
 & SIEGEL, P.A.
Attorneys for Attorneys for Class Members Antonio Calabrese, Stephen Calabrese, Calco Plating, Inc., Lawrence J. Rothschild, Richard A. Scherr, Family Swimmers, L.P., Arthur Simons, Paul Funk, Joseph Ludwig, Judith Ludwig, Stuart Levey, Deborah Levey, Levey Fishman Trust, Nicholas P. Kardasis IRA, and Jean-Marc Chouraqui

By: */s/ David Gorvitz*
    David Gorvitz