UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE  TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | Master File No: 08 Civ. 11117 (TPG) **JURY TRIAL DEMANDED** |
| This Document Relates to:  All Actions | "**ECF Case**" |

**THE TREMONT FUND OBJECTORS' REPLY TO
OBJECTIONS FILED BY CERTAIN RYE MEDIATION INSIDERS AT
ECF NUMBERS 1012, 1019 AND 1021**

LAW OFFICE OF VINCENT T. GRESHAM

2870 Peachtree Road, #204
Atlanta, Georgia 30305
Tel:  (404) 281-2762
gresham05@comcast.net
*Counsel for the Tremont Fund Objectors*

TABLE OF CONTENTS

Page

INTRODUCTION                                                                    1

FACTS                                                                          2

ARGUMENT                                                                       2

    A.  The Rye Insider Objectors And Tremont Fund Objectors
    Agree On The Importance Of Class Notice                                 3

    B.  The Rye Insider Objectors And Tremont Fund Objectors
    Agree That LC Should Be Required To Disclose Information
    Needed To Understand Allocation Decisions                               4

    C.  The Rye Insider Objectors And Tremont Fund Objectors
    Agree That Allocation Decisions Regarding The FDA And NSF
    Are Linked                                                              5

    D.  Based On New Information From The Rye Insider Objectors,
    It Is Clear That Mediation Secrecy Is Harmful To The Allocation
    Process                                                                  6

    E.  Based On New Information From The Rye Insider Objectors,
    It Is Clear That Mediation Does Not Cure Lack Of Adequate
    Representation For Tremont Fund Investors                                7

    F.  Based On New Information From The Rye Insider Objectors,
    LC's Statements To This Court To Obtain Approval Of The $15
    Million Giveaway Conflict With Statements Made By LC To
    The Rye Insider Objectors                                               9

CONCLUSION                                                                    10

## INTRODUCTION

The Tremont Fund Objectors[1] respectfully reply to the objections made by four large Rye Fund mediation insider groups (the "Rye Insider Objectors" or "Insiders")[2] because these objections contain key information about secret mediation proceedings not previously available.

The Insiders apparently thought that they controlled the secretive allocation mediation, and thought that it was being used for their sole advantage at the expense of the Class as a whole. Essentially, they now object to what they perceive as a Lead Counsel ("LC") double-cross when LC secretly negotiated with Defendants and another group of mediation insiders (i.e., the "Opt-Out Plaintiffs") to shift $15 million of the Class' money to benefit Defendants and the non-Class member Opt-Out Plaintiffs. This is the "$15 Million Giveaway" raised by the Tremont Fund Objectors. This reply responds to the Rye Insider Objectors' new arguments and to the new information that they--as Insiders--have that was not available to the Tremont Fund Objectors.

The Rye Insider Objectors are both right and wrong. They are absolutely right to complain about LC's secret negotiations, refusal to provide information, lack of transparency and failure to notify the Class, with respect to the $15 Million Giveaway. However, they are absolutely wrong when they seek to take advantage of those same procedural shenanigans to obtain the NSF-POA with its numerous Rye Fund biased and *special-benefit* provisions for

---

[1] The Tremont Fund Objectors are described in the Tremont Fund Objectors' Objection (ECF-1022) (hereinafter "TFO") at footnote 1.

[2] Collins Capital Investments LLC, investment manager for Collins Capital Master Fund I, LP and Collins Capital Master Fund II, LP (collectively "Collins Capital") filed an objection at ECF-1012; Austin Capital BMP Fund, LLC ("ACM") filed at ECF-1019; and two other groups the "Calabrese Parties" and "Boston Class Members Group" filed another objection at ECF-1021.

The Rye Insider Objectors are all large Rye Fund investors: "The Calabrese Parties… [and] Boston Class Members Group are investors in various Rye Funds…" (ECF-1021/8, i.e., document number 1021 at page 8 based on page numbers in the ECF header) "Collins Capital is the second largest claimant in the [Rye] Prime Fund…" (ECF-1013-1/2). Although Austin did not disclose their investments in its objection, its complaint states "Austin Capital invested in Rye Select Prime Fund…" (See 09-md-02075-TGP ECF-51/29-¶63).

themselves at the expense of the Class as a whole.  In short, the Rye Insider Objectors only want

fair play for the large insiders participating in LC's *invitation-only* mediation, and no one else.

In contrast the Tremont Fund Objectors assert that all allocation decisions, negotiations

and information should be transparent and fair to all, and that the Class as a whole should be

adequately represented, notified of all allocation decisions and given the opportunity to object.

## FACTS

The Rye Insider Objectors' submissions highlight the Tremont Fund Objectors' previous

complaints about the lack of information.  (TFO-Facts).  The questions asked by the Collins

Capital about the $15 Million Giveaway (ECF-1013-1) are similar to unanswered questions

regarding all allocation decisions that the Tremont Fund Objectors identified.  (TFO-3-7).

Even with respect to the limited issues concerning the $15 Million Giveaway, the

mediation insiders various descriptions of the secret mediation proceedings do not jibe.

According to one insider, there is a "consensus" proposal for the FDA-POA.[3]  Others deny any

consensus.[4]  Some attendees claim the $15 Million Giveaway was part of the mediation,[5] others

claim it was not.[6]  These conflicting statements further demonstrate the lack of an evidentiary

basis supporting allocation decisions as previously noted by the Tremont Fund Objectors.

---

[3] Opt-Out Plaintiffs' agreement "will bring total support for Lead Counsel's Consensus Proposal to approximately 90 percent of all Rye and Tremont net investment."  (ECF-1006/3).

[4] "[A]lthough they have fully participated in the mediation, the Calabrese Parties and the Boston Class Members Group are not aware of any "consensus proposal" for the allocation of the Fund Distribution Account.  In fact, there are several competing proposals…"  (ECF-1021/10).

[5] ECF-1006/3 ("[T]he mediation has also led Lead Counsel, the Tremont Defendants, and the Settling Plaintiffs to agree in principle to the Settling Plaintiffs' readmission to the settlement class in exchange for the Settling Plaintiffs support of a FDA POA proposal currently under discussion by Lead Counsel that responds to various equitable concerns that Lead Counsel has advanced and secures broad participation ('the Consensus Proposal')."

[6] ECF-1019/7.  ("The Opt-Out Plaintiffs' Joinder is disingenuous to the extent it implies or seeks for this Court to believe that the Mediator was involved in the [$15 Million Giveaway]").

**ARGUMENT**

The Rye Insider Objectors complain about many of the same things as the Tremont Fund Objectors, specifically lack of class notice, LC's secrecy and refusal to disclose basic information, and general lack of transparency.  The main difference between the Rye Insider Objectors and the Tremont Fund Objectors is that the Rye Insider Objectors <u>only</u> object to those failures in the context of the $15 Million Giveaway, but they do not complain about the same procedural failures in the context of the NSF-POA that contains Rye Fund biased and *special-benefit* provisions benefitting mediation insiders, such as the Rye Insider Objectors.

**A.  The Rye Insider Objectors And Tremont Fund Objectors Agree On The Importance Of Class Notice**

The Tremont Fund Objectors argue that the Class should be provided with notice, a right to object and a fairness hearing.  (TFO-8-10).  The Rye Insider Objectors also complain about the lack of Class notice.  For example, Rye Insider Objector ACM acknowledges that the Class was not given notice of the $15 Million Giveaway,[7] opines that "the pleadings filed on 2/27/15 should have been served directly on the Settlement Class Members…" (ECF-1019/6-7) and urges "this Court [to] take notice that all of the Settlement Class Members may not be aware of the relief sought."  (*Id.*-2).  Rye Insider Objector Collins Capital stated it was "very concerned by the fact that Class Counsel made this proposal without first notifying the Settlement Class…" (ECF-1013-1/2) and noted that LC's "Motion does not provide information sufficient for Collins Capital and other members of the Settlement Class to understand how this agreement will inure to their benefit or assess whether the purported benefits outweigh the clear prejudice."  (*Id.* at 3).

---

[7] Rye Insider Objector ACM states "neither the Second Notice/Motion for Distribution of NSF nor the 2/27/15 Memorandum was served on the Settlement Class Members…"  (ECF-1019/3-fn.-2).  "Despite the proposed readmission's significance to the Settlement Class Members, Lead Counsel failed to distribute the Second Notice/Motion for Distribution of NSF or the 2/27/2015 Memorandum to those Settlement Class Members."  (ECF-1019/6).

Although both Collins and ACM object to the Class being kept in the dark about the $15 Million Giveaway, both are silent about the equally wrong act of keeping the Class in the dark about the NSF-POA.  This is disappointing because the Rye Insider Objectors provided new information demonstrating that the Class had even less notice of the December, 2014 filing of the NSF-POA than it did of the March, 2015 filing containing the $15 Million Giveaway.[8]

The Tremont Fund Objectors agree with the Rye Insider Objectors that the Class should be notified of the $15 Million Giveaway; however, they believe the Class should have notice of and an opportunity to object to <u>all</u> allocation decisions for both the FDA and NSF, including the Rye Fund biased and *special-benefit* provisions currently in the NSF-POA.  (TFO-13-20).

**B.  The Rye Insider Objectors And Tremont Fund Objectors Agree That LC Should Be Required To Disclose Information Needed To Understand Allocation Decisions**

The Tremont Fund Objectors argue that Court and Class should be provided with sufficient information to understand the allocation decisions made.  (TFO-13-20).  The Rye Insider Objectors also complain about the lack of information.

With respect to the $15 Million Giveaway, Rye Insider Objector ACM complains that LC provided them "no knowledge of the terms of the settlement" and that "large NSF claimants… were… excluded from the settlement discussions and process between Lead Counsel and the Opt-Out Plaintiffs."  (ECF-1019/7-8).  They further state that they "requested information from Lead Counsel regarding the circumstances surrounding the settlement with the Opt-Out Plaintiffs, the role of other NSF claimants in the settlement process and a copy of the settlement

---

[8] The Rye Insiders disclose that some of the 2/27/2015 allocation filings were posted on *tremontlitigationsettlements.com*.  (ECF-1019/6).  As the Tremont Fund Objectors noted <u>nothing</u> relating to the current allocation proceedings was posted on the *Home Page*, *Plan of Allocation Page*, or *Important Dates Page*.  (TFO-4).  However, some 2/27/2015 filings were included in a list of 2011 documents on the Important Case Documents Page.  Notably, none of LC's 12/15/2014 filings, nor the 12/22/2014 NSF-POA order for the Securities and State Subclasses were posted on *tremontlitigationsettlements.com,* thus concealing the same from the Class.

agreement" but that "Lead Counsel… refused to provide a copy of the settlement agreement… and has refused to answer other fundamental questions…"  (ECF-1019/8).  Another Rye Insider Objector complains, "Class Counsel and the Opt-Out Plaintiffs have declined to provide *any* details – now or in the future – about what the Opt-Out Plaintiffs will recover from the Net Settlement Fund and the Tremont Defendants."  (ECF-1012/14).

Rye Insider Objector Collins Capital correctly observes that:

> This lack of transparency goes against assurances Class Counsel made at the Fairness Hearing that it would come to the Court with "all of the administrative determinations relating to allocations" and allow "any fund claimant" to "make an objection to how the funds were allocated…or any other issue related to the distribution of the proceeds" – all of which would be done "under the court's continuing jurisdiction."  *See* Fairness Hr'g Tr. at 36:2-15, 66:18-67:1.  [ECF-1012/14].

The Tremont Fund Objectors agree with the Rye Insider Objectors that this Court should require LC to provide sufficient information to enable <u>all</u> Class members to understand, evaluate and object to allocation decisions such as the $15 Million Giveaway.  The Tremont Fund Objectors, however, would not limit such disclosures to just the $15 Million Giveaway, but believe the Class should have sufficient information to understand and object to <u>all</u> NSF and FDA allocation decisions made, including the Rye Fund biased and *special-benefit* provisions included in the NSF-POA specially benefitting the Rye Insider Objectors.  (TFO-13-20).

## C.  The Rye Insider Objectors And Tremont Fund Objectors Agree That Allocation Decisions Regarding The FDA And NSF Are Linked

The Tremont Fund Objectors argue that the allocations of the NSF and FDA are linked and should be decided together.  (TFO-10-13).  The Rye Insider Objectors also acknowledge linkage of NSF and FDA issues.  For example, Rye Insider Objector ACM argues that $15 Million Giveaway should not be approved because "the Settling Parties are still in the midst of negotiation regarding resolution of the FDA… and it is unclear what, if any effect this proposal,

will have on the FDA." (ECF-2011/11). Another Rye Insider Objector acknowledges the $15 Million Giveaway cannot be fairly evaluated without seeing the FDA-POA: "If this motion came as part of a global Fund Distribution Account agreement that provided true and equitable benefits to all members of the Settlement Class and other investors, the view of this motion might be different." (ECF-1021/5). Collins Capital also acknowledges linkage in its (still unanswered) question to LC: "Do the terms of the agreement with the Opt-Out Plaintiffs guarantee them a certain payout from the FDA? If so, what are those terms?" (ECF-1013-1/1).

Collins Capital also notes the impact of LC's secretive actions on the FDA process: "If Class Counsel is endorsing such a drastic change to an agreement previously reached on the Net Settlement Fund after the fact, how is the Settlement Class able to trust that the same will not happen following a mediation on the Fund Distribution Account?" (ECF-1012/15).

The Tremont Fund Objectors agree with the Rye Insider Objectors that the $15 Million Giveaway cannot be understood or evaluated without also knowing the terms of the FDA-POA. Again, the Tremont Fund Objectors argue further that none of the allocations of the NSF can be fully evaluated or understood without also knowing the allocations of the FDA. (TFO-10-13).

## D. Based On New Information From The Rye Insider Objectors, It Is Clear That LC's Mediation Secrecy Is Harmful To The Allocation Process

The Tremont Fund Objectors argue that mediation secrecy is harmful and that LC's opaque mediation process does not offer sufficient protection to unrepresented members of the Class. (TFO-21-25). The Rye Insider Objectors provide an insider perspective on why mediation is not a substitute for the missing transparency or missing adequate representation.

For example, Rye Insider Objector Collins Capital complains that LC "has asserted that the 'mediation privilege' prevents it from sharing the terms of and discussions leading up to the agreement *even with other participants to the mediation and Class Counsel's clients…"* and

6

asserts that "the lack of transparency surrounding the agreement with the Opt-Out Plaintiffs…" is a reason for the Court to deny the request.  (ECF-1012/7).  Another Rye Insider observes that: "The impact of these opt-outs' settlement on the Settlement Class is, in fact, incapable of being evaluated because certain provisions of that settlement are being treated as confidential and are hidden from the other Settlement Class members and the Court."  (ECF-1021/5).

It cannot be forgotten that the Rye Insider Objectors were perfectly happy for LC to use mediation secrecy to prevent ordinary Class members from knowing why and how allocation decisions were being made with respect to the NSF-POA in December, 2014 which included the Rye biased and *special-benefit* provisions benefitting the Rye Insider Objectors.  However, they are now outraged that LC would now subject them to the same *no notice, no information* procedure suffered by ordinary Class members, like the Tremont Fund Objectors.

Irony aside, it is clear that LC's scheming with respect to the allocation of the NSF is already harming the FDA process.  For example, even some Insiders no longer trust LC's mediation process, necessitating that this allocation process for both the FDA and NSF be reformed to be transparent and inclusive.  As Rye Insider Objector Collins Capital observes, "Class Counsel's undefined deal with the Opt-Out Plaintiffs calls into question the integrity of the mediation process, in which Class Counsel has played a major role."  (ECF-1012/15).

Collins is right, unless the Court requires transparency and adequate representation there is no reason for Court or Class to trust the integrity of the current allocation process.

## E.  Based On New Information From The Rye Insider Objectors, It Is Clear That Mediation Does Not Cure Lack Of Adequate Representation For Tremont Fund Investors

The Rye Insider submissions show why the Tremont Fund investors need representation. Insiders talk in terms of "factions," proposing "very different treatments and levels of recovery for investors in certain of the Rye Funds."  (ECF-1021/11).  In short, in this secretive process

each "faction" is trying to grab all they can for themselves.  Rye Prime Investors seem to dominate mediation.  For example, Rye Insider Objectors Collins Capital is the second largest Rye Prime investor (see, fn.-2 above).  Not so coincidentally Rye Prime investors alone received a *special-benefit* of a Recognized Claim greater than their Net Investment.  (TFO-15-16).

The Rye Insider Objectors' submissions also illustrate the easily avoided nature of any protection provided by a privately hired mediator.  According to the Rye Insider Objectors, when LC wanted to reach a *special-benefits-deal* with the Opt-Outs, LC simply did so outside of mediation.  (ECF-1012/3, 1019/8).  Although the Rye Insider Objectors don't admit it, it is likely that some or all the *special-benefit-provisions* raised by the Tremont Fund Objectors were also negotiated outside of mediation, without the mediator being none the wiser.

But even if the *special-benefit-provisions* had been openly discussed among mediation participants, a mediator would not care about unfairness to those who did not attend mediation.  This mediator doesn't handle who is invited to mediation, he simply mediates for those who hire him.  (See Reply Declaration of Vincent T. Gresham filed concurrently herewith at ¶2).  Thus, a mediator doesn't fix the Tremont Fund investors lack of representation at mediation.

Nor are mediators infallible.  This mediator has found several settlements "fair" that Courts did not.  (*Id.* at ¶¶3-10)  Moreover, as a private, for profit businessman, this mediator does not seem to have ever criticized anyone who has hired him.  (*Id.* at ¶11-12).  If he has done so, then he should produce such declarations that would demonstrate his objectivity.

Finally, a mediator is not the Class' guardian, this Court is.  (TFO-9).  As one sitting federal judge put it, "Mr. Phillips is a mediator paid to bring the parties to a settlement, not to measure the objective reasonableness of any agreement reached.  As such, his opinion does not substitute this Court's independent analysis…"  (*Id.* at ¶13).  Nor should it here.

**F.  Based On New Information From The Rye Insider Objectors, LC's Public Statements To This Court To Obtain Approval Of The $15 Million Giveaway Conflict With Private Statements Made By LC To The Rye Insider Objectors**

To this Court, LC stated that the $15 Million Giveaway would speed Tremont's payment of remaining funds.  (ECF-1004/5).  The Tremont Fund Objectors pointed out the irrationality of LC's time-value-of-money argument (i.e., incurring an immediate and certain $15 million loss today in hopes of receiving payment of some unknown amount a little sooner in the future (TFO-fn.13)).  Now the Rye Insider Objectors' inside information further disproves LC's argument.

In contrast to LC's statements to this Court, the Rye Insider Objectors claim to have obtained admissions from LC that any money from Tremont would be immaterial and even settlement with the Opt-Out Plaintiffs would not result in such money being paid any sooner.[9]

Simply put, LC's public statements to this Court conflict with private statements to the Rye Insider Objectors.  These conflicting accounts, demonstrate the need for both transparency and for the Tremont Fund Investors to be adequately represented in mediation proceedings, something that is missing from the current structure.  (TFO-21-25).  Moreover, these conflicting accounts also highlight the need for Class notice, objections and a fairness hearing where questions can be asked and one common answer given to this Court and all Class members.

---

[9] A Rye Insider Objector asked LC this question:  "The Motion suggests that the agreement with the Opt-Out Plaintiffs will result in Defendants contributing 'valuable Tremont resources' to the NSF.  What amount of money will Defendants be adding to the NSF because of the settlement with the Opt-Out Plaintiffs?"  (ECF-1013-1/1).

Although LC refused to reply in writing (ECF-1013-2/1), this Insider states "Class Counsel has admitted that any contribution by the Tremont Defendants to the settlement will be relatively immaterial."  (ECF-1012/12).  Another Insider states:  "Lead Counsel has advised ACM that notwithstanding representations in the Second Notice/Motion for Distribution of NSF regarding the possible additional funds that may flow through to the NSF or the FDA by virtue of the cessation of litigation between the Opt-Out Plaintiffs and Tremont, in fact there will not be any material funds flowing through to the NSF or the FDA…."  (ECF-1019/8).  Another Insider states "Class Counsel acknowledged that the agreement with the Opt-Out Plaintiffs *will not* resolve all of the opt-out litigation brought against the Tremont Defendants…"  (ECF-1012/12).

## CONCLUSION

By the time the Court reads this, it is likely that the Rye Insider Objectors and LC will have resolved their differences.  LC can cut *special-benefit* deals in the secret FDA-POA process for the benefit of the Rye Insider Objectors that can more than make up for their personal NSF losses from the $15 Million Giveaway.  Moreover, by working together with LC the Rye Insiders can continue to take advantage of those who are not represented at mediation, like Tremont Fund investors.  However, even if withdrawn, the Rye Insider submissions still shed light on the unfairness of the current secret allocation proceedings for both the NSF and POA.

As their submissions indicate, the Rye Insider Objectors have no problem keeping secret from the Class the NSF-POA's Rye bias and *special-benefi*t-provisions as well as the secret FDA-POA allocation proceedings.  However, with respect to the procedurally indistinguishable $15 Million Giveaway, the Insiders assert that cutting them out was "a blatant attempt to game the class-action system…"  (ECF-1012/13).  The Rye Insider Objectors are more correct than they admit because the secretive allocation proceedings for the NSF-POA, FDA-POA **and** $15 Million Giveaway, are **all** "blatant attempt[s] to game the class-action system."  The current allocation procedures are wrong because all Class members--not just a few large insiders--are entitled to representation, participation, and information with respect to all allocation decisions.

Dated:  4/10/2015

LAW OFFICE OF VINCENT T. GRESHAM

/s/ Vincent T. Gresham
Vincent T. Gresham
2870 Peachtree Road, #204
Atlanta, Georgia 30305
Tel:  (404) 281-2762
gresham05@comcast.net
*Counsel for the Tremont Fund Objectors*

10

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was forwarded to all counsel of record through the Court's CM/ECF system on April 10, 2015.

/s/ Vincent T. Gresham
Vincent T. Gresham