UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | Master File No: 08 Civ. 11117 (TPG) **JURY TRIAL DEMANDED** |
| This Document Relates to: All Actions | "ECF Case" |

## THE TREMONT FUND OBJECTORS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO FILE A SUR-REPLY

The Tremont Fund Objectors[1] respectfully seek this Court's permission to file a short 6 page sur-reply addressing new facts and new arguments that Lead Counsel ("LC") disclosed and made for the first time in their Reply (ECF-1029) for the reasons set forth below.

### ARGUMENT

**1. A Sur-Reply Is Necessitated By The Unusual Procedures that LC Are Using In Connection With Allocation Decisions**

While in ordinary litigation the need for a sur-reply rarely arises, this is not ordinary litigation. This involves objections to a plan of allocation in the context of a class action. Here all plan of allocation decisions were reached in secret mediation proceedings with the only participants being a small group of large investors whom LC personally invited to participate. The secrecy denies ordinary class members, like the Tremont Fund Objectors, information about allocation decisions. Moreover, here the normal class action procedural steps concerning how plans of allocation are presented to the class and approved were shortcutted by LC.

---

[1] The Tremont Fund Objectors are George Turner, Bindler Living Trust, Madelyn Haines, William J Millard Trust, Stella Ruggiano Trust, and Paul Zamrowski. Their objection is at ECF-1022.

1

Normally class members are provided a court approved class notice with disclosures sufficient to enable class members to understand the plan of allocation. Objectors can use the objective information in the court approved class notice in drafting their objections. Moreover, if new information comes to light after they file their objection a class member can typically inform the court of it in the fairness hearing. Here, there was no court approved class notice concerning the NSF-POA or any other allocation decision, nor is a fairness hearing scheduled.

Without the benefits of court approved class notice the only information the Tremont Fund Objectors have about allocations and the secret mediation proceedings concerning allocations is what the participants in these secret mediation proceedings include in their own filings. Thus, when the Tremont Objectors filed their objection, they did not have much of the information that has subsequently been included in filings by the mediation participants. Consequently each time a mediation participant discloses new material information about these secret allocation proceedings, the Tremont Fund Objectors seek to respond, see, e.g., the Tremont Fund Objectors' reply to the Rye Insider Objectors (ECF-1030).

LC's reply contains new arguments and new information that the Tremont Fund Objectors did not previously have. In one instance, the new information used by LC in one of their new arguments was information that a Tremont Fund Objector had sought, but was refused. It is unfair for LC to use in reply information that was denied to the Tremont Fund Objectors.

Due to unusual degree of secrecy and the shortcutting of established class procedures, the Tremont Fund Objectors can *only* respond to new information about allocation after the mediation insiders dribble it out in their various filings. LC's Reply contains such new information justifying the filing of the short Sur-Reply attached hereto as Exhibit A.

"[C]ourts have broad discretion to consider arguments in a sur-reply," *Newton v. City of New York,* 738 F.Supp.2d 397, 417 n. 11 (S.D.N.Y.2010), particularly when new arguments are put forth in a reply brief. *See, e.g., Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.,* 767 F.Supp. 1220, 1235 (S.D.N.Y.1991). A Proposed Order granting permission and instructing the clerk of court to file the sur-reply is attached as <u>Exhibit B</u>. The specific new arguments and new information LC raised in their reply are set forth below.

**2.  LC's Reply For The First Time Includes New Calculations By The Claims Administrator Which LC Uses To Make A New Class Notice Argument**

Neither LC's filings of 2/27/2015 nor 12/15/2014 include or discuss calculations allegedly performed by the Claims Administrator that LC include in their Reply as the lynchpin of a new class notice argument. In their Reply, LC for the first time disclose that the Claims Administrator "advises that after readmission of the Settling Plaintiffs, the NSF Settlement Class is projected to receive a *pro rata* recovery of 4.59% of a participant's net losses." (ECF-1029/10). This projection was not in any previously filed information. When one Tremont Fund Objector attempted to obtain information about projected recoveries, the Claims Administrator declined to tell him "what percentage of losses [he] might recover." (See Turner Declaration at ECF-1023-1/3-¶6).

Now, LC includes this percentage of loss projection for the first time in their Reply. The Tremont Fund Objectors recognized the importance of this information and sought to use it in their objection, but it was denied them. Now that LC have used this information in their reply, the Tremont Fund Objectors should be allowed to respond, particularly in light of the fact that LC's new class notice argument both misrepresents the language and calculation methods in the 2011 class notice. (See Sur-Reply attached as <u>Exhibit A</u> at pages 1-3).

**3. LC's Reply For The First Time Attacks The Standing Of All Tremont Fund Objectors**

LC's filings of 2/27/2015 do not mention anything about the standing of any class member to object to allocations, nor do they mention any of the Tremont Fund Objectors. In their new argument, LC do not contest, or even comment upon, the evidentiary basis for standing set forth in the Tremont Fund Objectors' declarations filed with their Objection, i.e., that they all filed valid proofs of claim and are thus claimants of the NSF, and all claimants under the FDA based on their current status as investors in two Tremont Funds. (See declarations of Tremont Fund Objectors at ECF-1023-1 and 1023-2). Nor do LC point to any communication from the Claims Administrator rejecting any their claims in whole or in part. (ECF-597-1/17-§13, ECF-1005-¶¶13-14). Instead, LC makes a new argument based on misrepresentations. Because LC's new argument includes new misrepresentations, it could not have been anticipated and the Tremont Fund Objectors should be allowed to refute it with the truth. See Sur-Reply at 3-5.

**4. LC's Reply Includes New Information About Secret Mediation Proceedings That The Tremont Fund Objectors Were Not Aware Of And Which Is Material To Their Objections**

As noted, the Tremont Fund Objectors are unique among those who have filed in support or opposition to allocation decisions reached in secret mediation proceedings, because other filers were mediation insiders. In their filings the mediation insiders selectively disclose information that they, as mediation insiders, have which supports their various positions, while proclaiming that everything else about mediation must remain secret.

In LC's reply, LC discuss for the first time that there are undisclosed benefits the Opt-Out Plaintiffs are receiving for rejoining the Settlement Class (ECF-1029/12), but argue that it is none of the Court's and Class' business what those secret terms are. As discussed in the Sur-Reply at page 6, many courts have held that the receipt of additional consideration is fatal to an opt-out's attempt to be readmitted to a settlement class and all courts investigate additional

consideration.  Because this new admission was not disclosed in LC's original filings as it should have been, the Tremont Fund Objectors should be allowed to argue in their Sur-Reply that the Opt-Out Plaintiffs' receipt of additional consideration is fatal to their attempt to be readmitted to the Class.  (See Sur-Reply page 5-6).

## CONCLUSION

The Tremont Fund Objectors should be allowed to file the Sur-Reply attached as <u>Exhibit A</u> to address new arguments and new facts in LC's Reply, and respectfully request that this Court enter the Order attached as <u>Exhibit B</u>.

Dated:  4/12/2015                    Respectfully submitted,

                                       LAW OFFICE OF VINCENT T. GRESHAM

                                       <u>/s/ Vincent T. Gresham</u>
                                       Vincent T. Gresham
                                       2870 Peachtree Road, #204
                                       Atlanta, Georgia 30305
                                       Tel:  (404) 281-2762
                                       gresham05@comcast.net
                                       *Counsel for the Tremont Fund Objectors*

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | Master File No:<br>08 Civ. 11117 (TPG)<br><br>**JURY TRIAL DEMANDED** |
| This Document Relates to: All Actions | "**ECF Case**" |

**THE TREMONT FUND OBJECTORS' SUR-REPLY**

LAW OFFICE OF VINCENT T. GRESHAM

2870 Peachtree Road, #204
Atlanta, Georgia 30305
Tel: (404) 281-2762
gresham05@comcast.net
*Counsel for the Tremont Fund Objectors*

The Tremont Fund Objectors file this sur-reply to address new facts and new arguments raised in LC's Reply (ECF-1029) concerning: (a) class notice, (b) standing, and (c) special benefits received by the Opt-Out Plaintiffs.

## A. New Facts And New Arguments In LC's Reply Argument Concerning Class Notice

LC claim that "even with the readmission of Settling Plaintiffs, the NSF Settlement Class is projected to receive more than the estimated recovery provided in the notice sent to NSF Settlement Class members. The notice projected a *pro rata* recovery of 4% of net losses after deduction of fees and expenses." (ECF-1029/10). For the first time LC asserts that "[t]he Claims Administrator advises that after readmission of the Settling Plaintiffs, the NSF Settlement Class is projected to receive a *pro rata* recovery of 4.59% of a participant's net losses."[1] (*Id.*)

This 4.59% recovery was not disclosed in LC's previous filings. Moreover, when Tremont Fund Objector George Turner called the Claims Administrator seeking information about his percentage of recovery; he was told that the Claims Administrator did not know the percentage of recovery. (ECF-1023-1/3-¶6.) Yet when LC desired to include a percentage of recovery argument in their Reply, this information was disclosed for the first time.

LC's new argument in their reply about the 2011 class notice both misstates how recovery was calculated in the 2011 class notice and the language used regarding projections.

## 1. Class Notice Estimate <u>Excluded</u> The Fidelity Bond Recovery

According to LC, "the NSF Settlement Class is receiving more than even the *pro rata* recovery projected in the notice of settlement, making it impossible that they could suffer any prejudice from readmission of the Settling Plaintiffs…" (ECF-1029/9). However, that isn't true

---

[1] Like almost everything else about allocations, there is no evidentiary support for this 4.59% figure. LC simply assert that they were told this number by the Claims Administrator. There is no declaration or affidavit from the Claims Administrator confirming this figure or providing any information how it was calculated.

because the 2011 class notice explicitly informed the Class that the 4% estimate did not include the Fidelity Bond Recovery.  The 2011 class notice states:

> Significantly, the estimated percentage of recovered losses assumes that no additional monies will be added to the Gross Settlement Fund from… the Fidelity Bond Recovery. Any actual recoveries added to the Gross Settlement Fund from those sources will increase the estimated percentage of recovered losses.  (ECF-597-1/10).

The "net Fidelity Bond recoveries of $13,167,573.56, [and] the total NSF amounts to $75,002,526.03."  (ECF-1029/13).  Thus, the Fidelity Bond recovery is 16.33% of the total NSF.

Because the 4% minimum in the 2011 class notice excluded the Fidelity Bond Recovery, it must also be excluded from LC's calculations.  Excluding the Fidelity Bond Recovery, Class' the recovery is only be 3.85%, an amount below the 4% minimum.  Contrary to LC's new reply argument, readmission of the Opt-Out Plaintiffs results in the Class being paid less than the 4% minimum set forth in the 2011 class notice and further demonstrates prejudice to the Class.

**2.  The Class Notice Stated Class Member Recoveries Would Be Increased By Opt-Outs**

LC cites numerous cases supporting a generic argument that in some cases, readmission doesn't prejudice class members because they had no reason to rely to their detriment on others' decisions to opt-out.  (ECF-1029/8-10).  While in the generic case this may perhaps be true, in this specific case the 2011 class notice specifically informed the Class that their own individual recoveries would increase if the number of claimants decreased.  As per the Class Notice:

> The estimated percentage of recovered losses further assumes that all Settlement Class Members who purchased such securities timely submit valid Proofs of Claim seeking a payment from the Net Settlement Fund.  The number of Settlement Class Members who submit claims varies widely from case to case, and historically is less than 100%.  **If some Settlement Class Members do not submit claims, your actual recovery could be more than the estimated average amount.**

(emphasis added) (ECF-597-1/10).  Here many "Settlement Class Members" opted out and thus were not eligible to submit claims against the NSF.  This language in the 2011 class notice was

there to induce reasonable reliance by Class members, specifically to induce them stay in the Class and refrain from objecting to the low recovery in hopes that others would opt-out, thus increasing Class member recoveries.  Moreover, in this particular case, long before the 7/22/2011 deadline to object to the Settlement (ECF-597-1/6) it was publicly known that there were a large number of opt outs:  "THE COURT:  But I have never had in my experience a class action settlement where there has been this much objection and as many people requesting an exclusion."  (6/1/2011 Hearing Transcript at page 80).

LC's generic reply argument regarding reliance ignores that in this specific case the 2011 class notice induced reliance by informing Class members to expect an <u>increase</u> in their recovery if they stayed in the Class while others opted out.  To the extent the out-of-date 2011 class notice proves anything, it proves that the Class members were induced to rely on the statement that if the size of the Class *decreased*, then each individual Class member recovery would *increase*, and that readmission of the Opt-Out Plaintiffs causes material harm to existing Class members who relied on the class notice to their detriment.

## B.  LC's New Arguments Regarding Standing

In their reply LC urge this Court to ignore the Tremont Fund Objectors' objections by casting doubt on their standing to object to allocations.  (LC call standing "doubtful" (ECF-1029/6) and further argue objectors "may not have standing"(ECF-1029/7) ).  This is a new argument because, most of the Tremont Fund Objectors had never been previously mentioned by LC in any allocation pleading, much less had their standing attacked.[2]

---

[2] LC's filings of 2/27/2015 do not mention anything about the standing of any class member to object to allocations, nor do they mention any of the Tremont Fund Objectors.  LC's filings of 12/15/2015 do not mention anything about the standing of class members to object to allocations, do not mention four of the Tremont Fund Objectors at all, and mentioned two others only in connection with a recitation of the historical background of various appeals to the settlement.  LC never raised any issue of standing in connection with allocations.

The undisputed evidence is clear that all Tremont Fund Objectors have standing as claimants. All submitted valid proofs of claim and thus have standing as claimants of the NSF and all are current investors in two Tremont Funds and also have standing as investor claimants of the FDA. See Declarations filed by each of Tremont Fund Objectors at ECF-1023-1 and 1023-2. LC point to no communications from the Claims Administrator rejecting any claim in whole or in part (ECF-597-1/17-§13, ECF-1005-¶¶13-14), there are none. See Tremont Fund Objector Declarations stating that none of them received any notices from the Claims Administrator. The Tremont Fund Objector uncontested declarations establish a firm evidentiary basis that each has standing as a claimant to both the NSF and FDA.

Instead of addressing the evidentiary basis for standing to object to *allocations*, LC's reply irrelevantly raises issues regarding standing to object to the *settlement*. Specifically, LC argue that because two Tremont Fund Objectors (Haines and Zamrowski) were found to have lost their standing to appeal the settlement during the course of their appeal of the settlement, somehow this negates the standing of all Tremont Fund Objectors to object to the separate issue of allocations. Obviously because LC's arguments apply to only two of the six Tremont Fund Objectors (ECF-1029-fn.-5), it is clear that all objections are made by at least four objectors with uncontested standing to do so. Thus these objections cannot be ignored as LC hope.

LC's arguments, which are based on misrepresentations of a Second Circuit opinion[3] and this Court's Final Judgement,[4] are in any even irrelevant because they incorrectly conflate

---

[3] LC claim that: "the Second Circuit concluded that Haines and Zamrowski lack standing in ongoing proceedings here..." (ECF-1029-fn.3). That statement can only be false because the "ongoing" allocation proceedings did not commence until 12/15/2014, months *after* the Second Circuit ruled. The Second Circuit did not rule on "ongoing proceedings" relating to allocations, but only whether the Haines/Zamrowski appeal of the settlement had become moot. Allocation standing is based only on whether an investor submitted a proof of claim and is thus a claimant of the NSF or is a current member in one of the Funds and thus is an claimant of the FDA.

[4] LC state that "[t]he Court has previously held on August 19, 2011 that Objectors Haines and Zamrowsky "lack standing" to pursue any such objections" citing the Final Judgment. (ECF-1029-fn.-16). However, the Final Judgement did not concern allocation issues. Moreover, it mentions no objector by name and merely says that of all

4

standing to object to the *settlement* with standing to object to *allocations*. None of the hundreds of claimants in this case currently has standing to object to the settlement, it is now final. In contrast, all of the hundreds of claimants currently have standing to object to allocation decisions. All Tremont Fund Objectors submitted declarations proving that they are claimants of the NSF and FDA. LC did not refute this. Thus, all of the Tremont Fund Objectors' have standing as claimants to object to any and all allocation decisions.

## C. New Admission Regarding Other Inducements To The Opt Out Plaintiffs

In their reply LC now claim: "The other mediated, confidential terms agreed to by the parties to facilitate resolution of the nine opt-out actions are simply not relevant to these proceedings and certainly do not provide a basis to disturb the sanctity of the mediation process." (ECF-1029/13). Because virtually every case relied upon by LC to justify readmission makes a point of showing that the readmitted opt outs were not receiving special benefits in addition to those received by other class members, the full disclosure of any special benefits that the Opt-Out Plaintiffs are receiving should have made in LC's 2/27/2015 filing. It was not.

LC's belated admission that the Opt-Out Plaintiffs don't want to share equally with the Class, but rather they seek to exploit their opt-out status to be paid <u>more</u> than the Class as a whole is fatal to their attempt at readmission. The cases LC cite in their reply make clear that before allowing readmission to a class courts verify that the opt-outs seeking readmission are not receiving any special benefits not shared by the class as a whole.[5]

---

the various objections filed by all the various objectors the court found each of them to "lack standing, be deficient and/or to otherwise be without merit…." (ECF-604/22-¶39). The use of the word "or" defeats LC's argument because there were two other reasons for overruling an objection, deficiency and lack of merit. In fact, Haines' and Zamrowski's objections to the settlement were presented at the 8/11/2011 fairness hearing and this Court overruled each on the merits, without finding Haines or Zamrowski lacked standing. (8/11/2011 Hearing Trans. pages 68- 93).

[5] LC cited each of the following cases but omitted disclosing the language forbidding special benefits: *In re Urethane Antitrust Litig.,* 2008 U.S. Dist. LEXIS 100841, *27 (D. Kan. Dec. 12, 2008) *(*"Plaintiffs and 3M represent that 3M has not received any special benefit…."); *In re Electrical Carbon Products Antitrust Litig.,* 447 F. Supp. 2d 389, 397 (D.N.J. 2006) (the court permitted parties to opt back in to a settlement class finding that no

LC claim that *In re Electric Weld Steel Tubing Antitrust Litigation,* 1982 U.S. Dist. LEXIS 14069, 7-9 (E.D. Pa. June 30, 1982) the court rejected the "argument that it would be unfair to permit opt-out plaintiff to rejoin class and share in class settlement because it obtained 'additional settlement monies'…" (ECF-1029/13).  That isn't quite correct.  *Electric Weld* allowed readmission only after the opt-out had "adequately explained the additional funds which have been or will be paid to it by the defendants." (*Id.* at 8).  The explanation in *Electric Weld* was that the additional funds were for claims that the class did not share or assert. *Id.* at 3.  In contrast to LC's claim of irrelevance, the *Electric Weld* court thoroughly examined the special benefits and found a "reasonable explanation." *Id.* at 9.  Here no "reasonable explanation" has been proffered.  Instead, LC claim it is none of the Court's or Class' business, but it is.

## CONCLUSION

The new facts and new arguments based upon them in LC's Reply further demonstrate why the allocation process must be reformed to be transparent and inclusive and why all of LC's allocation proposals must be rejected.

Dated:  4/12/2015                              Respectfully submitted,

                                               LAW OFFICE OF VINCENT T. GRESHAM

                                               /s/ Vincent T. Gresham
                                               Vincent T. Gresham
                                               2870 Peachtree Road, #204
                                               Atlanta, Georgia 30305
                                               Tel:  (404) 281-2762
                                               gresham05@comcast.net
                                               *Counsel for the Tremont Fund Objectors*

---

special benefit had been conferred upon them.); *In re "Agent Orange" Prod. Liab. Litig.*, 689 F. Supp. 1250, 1261 (E.D.N.Y. 1988) (noting that reentry would allow opt outs to "share equally"); *In re Static Random Access Memory (Sram) Antitrust Litig.*, 2013 U.S. Dist. LEXIS 46375, 32-33 (N.D. Cal. Mar. 25, 2013) (request to rejoin class generally denied when opt-out was intended to squeeze additional settlement dollars from defendants).

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | Master File No: 08 Civ. 11117 (TPG) **JURY TRIAL DEMANDED** |
| This Document Relates to:  All Actions | "ECF Case" |

# [PROPOSED] ORDER ALLOWING SUR REPLY

This matter is before the Court on the *Motion for Leave to File Sur-Reply* (the "Motion") filed by George Turner, Bindler Living Trust, Madelyn Haines, William J Millard Trust, Stella Ruggiano Trust, and Paul Zamrowski (the "Tremont Fund Objectors") in this action.

Having fully considered the Motion, being duly advised as to the merits and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Tremont Fund Objectors' Motion is granted; and

2. The Clerk of the Court shall enter Exhibit A to the Motion on the docket in this proceeding.

ORDERED

Dated: New York, New York
_____, 2015

_____
HONORABLE THOMAS P. GRIESA
UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

      I certify that a true and correct copy of the foregoing document was forwarded to all counsel of record through the Court's CM/ECF system on April 12, 2014.

                                                        /s/ Vincent T. Gresham
                                                        Vincent T. Gresham