**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
IN RE TREMONT SECURITIES LAW, : Master File No.:
STATE LAW, and INSURANCE : 08 Civ. 11117 (TPG)
LITIGATION :
                                                   : **OPPOSITION OF LEHMAN**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x **BROTHERS FINANCE AG TO**
                                                   : **MOTION FOR APPROVAL OF**
This Document Relates to:  All Actions : **DISTRIBUTION OF THE NET**
                                                   : **SETTLEMENT FUND**
                                                   :
                                                   : ECF CASE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x Electronically Filed

**TABLE OF CONTENTS**

**Pages**

**PRELIMINARY STATEMENT** ................................................................................................. 1

**FACTUAL BACKGROUND** ..................................................................................................... 2

**ARGUMENT** .............................................................................................................................. 7

    I.   The LBF-subscribed Shares Were Improperly Classified as Shares Acquired by a Swap Counterparty ................................................................................................................ 7

    II.  This Court Should Order the Reclassification of the Portion of Claim Number 1000500 Attributable to the LBF-Subscribed Shares ........................................................................ 9

**CONCLUSION** ......................................................................................................................... 10

**PRELIMINARY STATEMENT**

Lehman Brothers Finance AG in Liquidation ("LBF") is a Swiss corporation in liquidation (bankruptcy). The court-appointed Liquidator which controls LBF, Pricewaterhouse Coopers AG Zurich ("PwC AG Zurich"), is obligated to protect the interests of LBF's creditors and marshal LBF's assets for their benefit. *See* Affidavit of Christiana Suhr Brunner, filed herewith ("Brunner Aff."), ¶¶ 1, 3. In order to further these goals, LBF has filed a claim in this class action, and LBF respectfully submits this opposition to the Motion for Approval of Distribution of the Net Settlement Fund (the "Motion") in order to correct an apparent error on the part of the Claims Administrator and Settling Class Counsel. Specifically, 20,492.2907 Class D shares that LBF purchased in the Rye Select Broad Market Portfolio Limited Fund (the "LBF-subscribed Shares") have been incorrectly classified as shares acquired by a Swap Counterparty and thus will be subject to a 99% discount if the Motion is approved. LBF, however, did not enter into a swap transaction with the Rye Funds or the Tremont Funds. As a result, LBF is not a "Swap Counterparty" as that term is defined in the Net Settlement Fund Plan of Allocation (the "Plan").

Before seeking the Court's assistance, LBF attempted to correct this classification error, which concerns approximately 27.4% of claim number 1000500. But the Claims Administrator, Garden City Group ("GCG"), and counsel for the Settling Class to which GCG directed LBF, Entwistle & Cappucci ("E&C"), have so far refused to reclassify the LBF-subscribed Shares or provide LBF with any credible explanation of why the LBF-subscribed Shares should be classified as those of a Swap Counterparty. As discussed below, GCG as well as E&C, Hagens Berman Sobol Shapiro LLP, and Bernstein Liebhard LLP (the "Settling Class Counsel") appear to have improperly conflated LBF (a Swiss entity in bankruptcy) with LBF's former U.S-based

affiliate, Lehman Brothers Special Financing Inc. ("LBSF"), which is a separate entity.  LBF does not dispute that LBSF – in contrast to LBF – may have entered into a Swap Transaction, and LBF does not challenge the portion of claim number 1000500 relating to the shares subscribed by LBSF.

The intervention LBF requests from the Court is narrow:  LBF raises no challenge to the Plan, nor does LBF object to the definition of Swap Counterparty contained therein.  Rather, LBF respectfully requests that the Motion should not be granted unless and until that portion of LBF's claim which has been incorrectly classified as subject to the definition of "Swap Counterparty" is reclassified as a Recognized Claim not subject to any discount applicable to Swap Counterparties.  In light of the nature of LBF's Opposition, which relates to facts and circumstances that are unique to LBF, such reclassification will not have any impact on the classification of any other claims in this case and will serve to further the fair administration of the Plan.

## FACTUAL BACKGROUND

This Action was commenced on December 22, 2008.  *See* [Dkt. No. 1].  On December 15, 2014, Settling Class Counsel made their Motion for Approval of Net Settlement Fund Plan of Allocation and Scheduling Motion for Distribution ("Motion for Approval of the Plan").  *See* [Dkt. No. 987].  On December 22, 2014, the Court entered an order granting the Motion for Approval of the Plan.  *See* [Dkt. No. 994].

The Plan that the Court approved defines a Swap Counterparty as "a party that entered into a swap transaction or similar arrangement with any of the Rye Funds or Tremont Funds in order to provide said Funds with a leveraged return." [Dkt. No. 988-1] at 3.  The Plan provides that "[t]he Recognized Claim for a Swap Counterparty shall be determined by the same

2

methodology [applied to other Recognized Claims], subject to a discount factor of 99%." *Id*. at 4. The Plan also notes that "[t]he Court reserved jurisdiction to . . . allow, disallow, or adjust any Authorized Claimant's claim to ensure a fair and equitable disbursement of settlement funds." *Id*. at 5.

The Court's order granting Settling Class Counsel's Motion for Approval of the Plan set a briefing schedule for the instant Motion. *See* [Dkt. No. 994]. E&C subsequently sought, and obtained, two extensions to file that Motion. *See* [Dkt. Nos. 999, 1001].

On February 2, 2015, more than five weeks after the Court granted the Motion for Approval of the Plan, GCG sent out a one-page Notification of Claim letter (the "Notification"), in which it stated that LBF had "been identified as a 'Swap Counterparty,'" and as such its claim would be "subject to a discount factor of 99%." Declaration of Robert L. Meyerhoff, filed herewith ("Meyerhoff Decl."), Ex. A.[1] The Notification, which was generically directed to "[c]laimant," requested that the "claimant" call GCG with "any questions regarding this letter." *Id*. The Notification provided no basis for or evidence in support of the classification of the entirety of claim number 1000500 as that of a Swap Counterparty, instead merely referring the claimant to the definition of Swap Counterparty provided in the Plan. *Id*.

---

[1] While the Notification directed LBF to contact GCG, GCG has represented to this Court that Settling Class Counsel had a role in making the erroneous determination that the LBF-subscribed Shares were shares acquired by a Swap Counterparty. *See* Affidavit of Stephanie Amin-Giwner in Support of Motion for Approval of Distribution of the Net Settlement Fund, filed February 27, 2015 [Dkt. No. 1005], ¶ 8 ("GCG worked with Lead Counsel to identify all claims that were filed by Swap Counterparties to ensure that the 99% discount factor was properly applied. To that end, Lead Counsel provided GCG with a list of Swap Counterparties . . . . After review by Lead Counsel and Counsel for Defendants, *Lead Counsel provided GCG with a list of six Swap Counterparties Claimants whose Recognized Claims are subject to the 99% discount factor*.") (emphasis added).

3

On March 19, 2015, counsel for LBF contacted GCG and explained that it was LBF's position that at least a portion of LBF's claim had been incorrectly classified as that of a Swap Counterparty.  *Id*. at ¶ 3.  GCG did not inform LBF's counsel of the basis of GCG and Settling Class Counsel's classification of the entirety of LBF's claim as that of a Swap Counterparty, instead telling LBF's counsel that Settling Class Counsel would reach out to LBF's counsel directly.  *Id*. at ¶ 4.  On March 27, 2015, E&C contacted LBF's counsel and left a voicemail message, but neither in that message nor during subsequent conversations did E&C provide a substantive rationale for the classification of the entirety of LBF's claim as that of a Swap Counterparty, nor did E&C provide any evidence to support that classification.  *Id*. at ¶ 5.

In fact, LBF did not enter into any swap transaction or similar arrangement with the Rye Select Broad Market Portfolio Limited Fund (the "Fund"), the Rye Select Broad Market XL Portfolio Limited (the "XL Fund"), or any of the other Rye funds (collectively, the "Rye Funds") to provide any of the Rye Funds with a leveraged return.  Affidavit of Oliver Singh, filed herewith ("Singh Aff."), ¶ 11.  In fact, LBF never entered into a swap transaction with any of the Rye Funds at all.  *Id*. at ¶ 12.  Rather, LBF made three purchases of Class D Shares in the Fund during the spring and summer of 2008.  *Id*. at ¶¶ 3-5.  In total, LBF purchased, and today is the beneficial owner of, 20,492.2907 Class D shares in the Fund through those three purchases, to which $23,476,358 of LBF's claim (out of a total amount of $85,726,317) can be attributed.  *See id*. at ¶¶ 6, 9 & Ex. D (email chain including (a) an email dated November 5, 2012, containing a table of allocation prepared by Tremont Group Holdings, Inc., which operated the Fund (the "Tremont Table"), and (b) an email dated January 13, 2015, in which GCG confirmed that claims evidenced in that table of allocation in the amount of $85,226,317 and $500,000 had been accepted and were in good standing).  None of those purchases were made pursuant to the terms

4

of a swap agreement entered into by LBF with any of the Rye Funds.  *Id*.  It is for that portion of the claim only that LBF requests reclassification.

LBF is also the beneficial owner of an additional 54,347.9054 Class D shares in the Fund (the "LBSF-subscribed Shares").  Singh Aff., ¶ 7.  LBSF purchased the LBSF-subscribed Shares through Minutemen Park Cayman Ltd. ("Minutemen Park"), a Cayman Islands vehicle utilized by LBSF, on November 1, 2007 and January 1, 2008.  *Id*. at ¶ 8.  LBF and LBSF are separate and distinct entities.  Brunner Aff., ¶ 11.  LBSF is a U.S. entity, which is controlled by Lehman Brothers Holdings Inc.  *Id*.  As Liquidator of LBF, PwC AG Zurich does not take direction from LBSF or LBHI, nor does PwC AG Zurich report to LBSF or LBHI, except to the extent that the Liquidator takes direction from and/or reports to creditors of LBF (which include LBHI) in the Swiss Bankruptcy.  *Id*.  Since December 22, 2008 (the date the Swiss bankruptcy proceedings for LBF commenced), at the latest, control over LBF has been vested in PwC AG Zurich, not LBF's board of directors or LBHI.  *Id*. at ¶ 12.  Thus, LBF and LBSF are no longer under common control, and therefore not affiliates, as of that date (if not earlier).  *Id*.

It is LBF's understanding that the LBSF-subscribed Shares were purchased so that LBSF could enter into a swap transaction with the XL Fund around November 2007 to provide investors in the XL Fund with a leveraged return, which LBSF did in fact enter.  Singh Aff., ¶ 10.  LBF does not seek reclassification of those 54,347.9054 LBSF-subscribed shares, to which $62,249,958 of LBF's claim can be attributed.  *See* Singh Aff., ¶ 9 & Ex. D.  For the Court's convenience, below is a chart which summarizes the transactions described above and how these shares should be treated under the Plan:

5

| Summary of Claim Number 1000500 | | | | |
|---|---|---|---|---|
| Subscriber[2] | Purchase Date | Shares Purchased | Proper Classification Under Plan | Total NAV on Last Account Statement |
| LBSF (through Minutemen Park) | November 1, 2007 | 27,366.4257 | Swap Counterparty (subject to 99% discount) | $62,249,958 |
| LBSF (through Minutemen Park) | January 1, 2008 | 26,981.4797 | Swap Counterparty (subject to 99% discount) | |
| LBF | March 1, 2008 | 13,383.0490 | Recognized Claim Not Subject to 99% Discount | $23,476,358[3] |
| LBF | April 1, 2008 | 6,676.6743 | Recognized Claim Not Subject to 99% Discount | |
| LBF | Aug 1, 2008 | 432.5672 | Recognized Claim Not Subject to 99% Discount | |

*See id*. at Exs. A-C; Meyerhoff Decl., Exs. B & C.

Because Settling Class Counsel and GCG refused to correct their misclassification of the portion of LBF's claim attributable to the LBF-subscribed Shares, on April 10, 2015, LBF submitted a letter to the Court requesting permission to file an opposition to the Motion, seeking the narrow relief sought herein (*i.e.*, reclassification of the LBF-subscribed Shares). *See* [Dkt. No. 1028]. On April 14, 2015, the Court granted LBF's request to file such an opposition. *See* [Dkt. No. 1034].

---

[2] As reflected in the Tremont Table (Singh Aff., Ex. D), all LBF-subscribed shares and LBSF-subscribed shares were registered to an account with Somers Dublin Ltd. (Ireland) as of June 2008. Claim number 1000500 covers all of these shares. The registered owner of the account filed claim number 1000500 on behalf of LBF, which is the beneficial owner of these shares (as well as the other assets held in the Somers Dublin account).

[3] This amount corresponds to the June 1, 2008 entry on the Tremont Table for $22,976,358, plus the August 1, 2008 entry on the Tremont Table for $500,000.

6

**ARGUMENT**

I.   <u>The LBF-subscribed Shares Were Improperly Classified as Shares Acquired by a Swap Counterparty</u>

In the class action context, "a settlement agreement . . . is a contract between the parties, and should be interpreted accordingly." *Waldman ex rel. Elliot Waldman Pension Trust v. Riedinger*, 423 F.3d 145, 148-49 (2d Cir. 2005); *see also In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 118 (S.D.N.Y. 2010) ("It is well established that settlement agreements are contracts and must therefore be construed according to general principles of contract law. When interpreting unambiguous contracts, the terms must be afforded their plain meaning.") (internal citation omitted). The definition of Swap Counterparty in the Plan is unambiguous: A Swap Counterparty is defined as "a party that entered into a swap transaction or similar arrangement with any of the Rye Funds or Tremont Funds in order to provide said Funds with a leveraged return." Plan at 3.

LBF does not meet the definition of Swap Counterparty. LBF did not enter into a swap transaction or similar arrangement to provide the Rye Funds (or the Tremont Funds) with any such return, and the LBF-subscribed Shares were not purchased by a Swap Counterparty as defined by the Plan and relevant case law. A "swap is a contract between two parties ('counterparties') to exchange ('swap') cash flows at specified intervals, calculated by reference to an index." *In re Thrifty Oil Co.*, 249 B.R. 537, 539-540 (S.D. Cal. 2000); *see also In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 522 (S.D.N.Y. 2008) ("In a standard swap, a party agrees to pay a counterparty a fixed amount of money, and the counterparty agrees to pay the party a variable amount of money."). Because LBF did not enter into a swap agreement with the Rye Funds or the Tremont Funds, it is not a swap counterparty. *See* Singh Aff., ¶ 11. Nor can LBF be classified as a Swap Counterparty based on any agreement

7

between LBSF and the Rye Funds or Tremont Funds, because LBF and LBSF have not been under common control, and therefore have not been affiliates, since at least December 22, 2008 (if not earlier).  Brunner Aff., ¶ 12.

Courts in the Second Circuit regularly act to correct errors of the kind that affects LBF here.  In the *Waldman* case, the Second Circuit Court of Appeals reversed the district court's finding that the holders of certain types of shares were excluded from a class action settlement agreement, because the panel found that the district court had improperly "look[ed] beyond the plain meaning of the term 'common stock' when that term is unambiguous."  423 F.3d at 149. "Looking only at the face of the contract, as we must," the court in Waldman "perceive[d] no ambiguity in the term 'common stock' . . . [because] [t]he term's meaning is definite and readily ascertainable." *Id*.  Others courts have similarly rejected attempts to read ambiguities into the terms of class action settlements where no such ambiguities exist.  *See, e.g., Young v. IMO Indus., Inc.*, 541 F. Supp. 2d 433, 448-449 (D. Mass. 2008) ("The proposed interpretation to exclude [certain class members] . . . conflicts with the plain meaning of the definition of the term 'class' in the agreement."); *Jankowski v. Castaldi*, No. 01–CV–164 (KAM), 2010 WL 882867, at *5 (E.D.N.Y. Mar. 12, 2010) ("Where the terms of a settlement agreement are unambiguous, courts must take care not to alter or go beyond the express terms of the agreement.").

The facts here compel a similar result.  The term Swap Counterparty is clearly defined in the applicable agreement as "a party that entered into a swap transaction or similar arrangement . . . to provide . . . a leveraged return" (Plan at 4), and the plain meaning of a swap transaction involves a contract between two parties to "exchange cash flows" to provide such a return.  Since LBF entered into no such contract with any of the Rye Funds or Tremont Funds, the LBF-

subscribed shares should not be construed as purchased by a Swap Counterparty and subject to a 99% discount.

 II. This Court Should Order the Reclassification of the Portion of Claim Number 1000500 Attributable to the LBF-Subscribed Shares

The Court has the authority to order reclassification of the LBF-subscribed Shares as part of its consideration of this Motion. Specifically, this Court may enforce the terms of the Plan, including the definition of the term "Swap Counterparty," which, as discussed above, does not apply to the LBF-subscribed Shares. It is within a court's power to "direct[] the parties to apportion the settlement fund" in a "fair and reasonable way." *Peterson v. Mortg. Sources, Corp.*, Civil Action No. 08-2660-KHV, 2011 WL 3793963, at *8 (D. Kan. Aug. 25, 2011); *see also Dashingo v. Royal Carribean Cruises, Ltd.*, 312 F. Supp. 2d 440, 446-47 (S.D.N.Y. 2004) (holding that courts "have the equitable power to allocate the proceeds of a settlement fund among class members"); *Hammon v. Kelly*, 154 F.R.D. 11, 22 (D.D.C. 1994) (adjusting the distributions proposed by class counsel where class counsel "provided no rationale for denying some of the claims made by members of the class").

//

//

//

## **CONCLUSION**

For the foregoing reasons, LBF requests that this Court reclassify a $23,476,358 portion of claim number 1000500, representing the accepted amount of claim number 1000500 attributable to the LBF-subscribed Shares, as a Recognized Claim not subject to any discount applicable to Swap Counterparties.

Respectfully submitted,

Dated: April 17, 2015                              VENABLE LLP

By:    /s/ Kostas D. Katsiris
       Kostas D. Katsiris
       Edward A. Smith
       Robert L. Meyerhoff
       1270 Avenue of the Americas
       New York, NY 10020
       kdkatsiris@venable.com
       easmith@venable.com
       rlmeyerhoff@venable.com
       Tel.:  (212) 307-5500
       Fax:  (212) 307-5598

       *Attorneys for Lehman Brothers Finance AG in Liquidation*