UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
IN RE TREMONT SECURITIES LAW, STATE  :
LAW AND INSURANCE LITIGATION         :   Master File No.:  08 Civ. 11117 (TPG)
                                     :
---------------------------------------------------------   x
This Document Relates to:  All Actions  :
                                     :
                                     :
------------------------------------------------------------------x

# SETTLING CLASS PLAINTIFFS' REPLY MEMORANDUM
# OF LAW IN RESPONSE TO OPPOSITION OF LEHMAN BROTHERS FINANCE

Settling Class Plaintiffs respectfully submit this memorandum in reply to the Opposition of Lehman Brothers Finance AG ("LBF") to Motion for Approval of the Distribution of the Net Settlement Fund ("LBF Opposition") (ECF No. 1037).

There is no dispute that LBF made three purchases of Class D Shares totaling 20,492.2907 Class D shares in the Rye Select Broad Market Portfolio Limited Fund (the "Broad Market Portfolio Fund" or "Reference Entity"), that those purchases constitute $23,476,358 of LBF's total claim for shares purchased in the Broad Market Portfolio Fund by all affiliated Lehman entities (out of a total amount of $85,726,317), and that the balance of its $85,726,317 claim ($62,249,959) is a Swap Counter Party-related transaction.  The dispute before the Court is focused on LBF's effort to artificially break out a portion of the Lehman-related purchases from the fully integrated Lehman Swap Counter Party transaction.  LBF's efforts to artificially split up the integrated Lehman Swap Counter Party transaction into its component parts ignores the economic realities of the transaction, and flies in the face of the Lehman Examiner's Report, relevant transaction records and related documentation.  For those reasons and the reasons discussed more fully below, the Court should deny LBF's limited objection and affirm the

EC.58417.1

determination made by Lead Counsel in consultation with the claims administrator, Garden City Group, Inc. ("GCG"), that LBF is a Swap Counter Party, as defined in the Court-approved Net Settlement Fund Plan of Allocation ("NSF POA") (ECF No. 988-1).

## RELEVANT FACTS

The previously approved and now final NSF POA memorializes an agreement that was judicially recognized in connection with the underlying class action settlement by which claims filed by Swap Counter Parties are discounted by 99% in connection with the NSF only.  ECF No. 988-1 at 4.  The NSF POA defines a Swap Counter Party as any "party that entered into a swap transaction or similar arrangement with any of the Rye Funds or Tremont Funds in order to provide said Funds with a leveraged return." *Id.* at 3.  LBF is clearly "a party that entered into a swap or similar arrangement" in that LBF and its affiliate, Lehman Brothers Special Financing Inc. ("LBSF"), operated as part of a single integrated company -- Lehman Brothers Holdings Inc. ("Lehman Holdings") -- which entered into swap transactions with Rye Select Broad Market XL Portfolio Limited (the "XL Portfolio Fund") in order to provide leverage to investors in the XL Portfolio Fund.

The Bankruptcy Examiner for the dissolution of Lehman Holdings made several observations regarding the integrated nature of the Lehman Holdings swap structure, including concluding in his Report to the Bankruptcy Court that "LBSF could not have survived as a stand-alone entity" and was used "as a swap counterparty for trades originating at other Lehman entities."  Volume 5 of the Report of Anton R. Valukas, Bankruptcy Examiner for Lehman Brothers Holdings Inc., at 1979 ("Examiner's Report"), attached to the Declaration of Andrew J. Entwistle ("AJE Dec.") as Exhibit 1.  Consistent with this integrated structure, Lehman Holdings entered into a swap agreement with the XL Portfolio Fund on November 5, 2007 ("Swap

Agreement") that was structured through Lehman Holdings affiliated entities LBF and LBSF as follows: the XL Portfolio Fund posted $27.5 million in collateral with LBSF and obligated LBSF to pay the XL Portfolio Fund an amount equal to three times the return this money would earn if it was invested in the Broad Market Portfolio Fund.  AJE Dec. Exhibit 2 at 1; AJE Dec. Exhibit 4.  LBSF and LBF hedged the XL Portfolio Fund related swap payment obligation by investing a total of $83 million directly in the Broad Market Portfolio Fund's Class D shares (*i.e.*, the return on LBF's and LBSF's $83 million investment in the Broad Market Portfolio Fund would cover the three times return on the $27.5 million due under the Swap Agreement).[1]  The Class D shares of the Broad Market Portfolio Fund, like those purchased by LBF and LBSF, were only purchased by entities that entered into a swap transaction with the XL Portfolio Fund in order to hedge the counter party's exposure from the swaps.  *See* AJE Dec. Exhibit 5; AJE Dec. Exhibit 6.

All of the Swap Counter Party hedge investments by LBF and LBSF are contained on the same claim form filed by "Somers Dublin LTD A/C KBC A/C pledged to Lehman Brothers Finance S.A." ("Claim Form").  AJE Dec. Exhibit 7.  The Swap Counter Party hedge investments reflected on the Claim Form include:  LBF's hedge in the Broad Market Portfolio Fund on March 20, 2008 for $15,000,000 (13,383.049 Class D shares) (ECF No. 1040-1 at 2); LBF's April 14, 2008 hedge in the Broad Market Portfolio Fund in the amount of $7,500,000 (6,676.6743 Class D shares); LBF's August 12, 2008 hedge in the Broad Market Portfolio Fund in the amount of $500,000 (432.5674 Class D shares) (ECF No. 1040-2 at 2; ECF No. 1040-3 at 2); and LBSF's hedges in the Broad Market Portfolio Fund of $30,000,000 each on November 9, 2007 (27,366.4257 Class D shares) and January 18, 2008 (26,981.4797 Class D Shares) (the

---

[1] The Swap Agreement was also guaranteed by Lehman Holdings at the time of the investment, pursuant to an agreement, dated November 5, 2007.  AJE Dec. Exhibit 3.

"Claim"). ECF No. 1038-2 at 2; ECF No. 1038-3 at 2.

Additional transactions in June 2008 underscore the integrated nature of the Lehman Holdings/LBF/LBSF Swap Counter Party hedge transactions in the Broad Market Portfolio Fund. On June 1, 2008, the shares owned by LBF and LBSF "were re-registered . . . to Somers Dublin Ltd. A/C KBC a/c Pledged to Lehman Brothers Finance S.A." ECF No. 1040-4 at 3. As a result of this re-registration, LBSF was able to transfer its shares of the Broad Market Portfolio Fund to an account under LBF's name, making LBF the beneficial owner of those shares. *Id*.; ECF No. 1037 at 8; ECF No. 1040 at 1-2.

Lead Counsel, in consultation with the Tremont defendants and GCG, thus determined that LBF and LBSF, as part of the same integrated Swap Counter Party transaction, are *both* Swap Counter Parties. Accordingly, on February 2, 2015, GCG sent written notification to the representative listed on the Claim Form, Nicola David of KBC Financial Products Ltd. ("KBC"), stating that the entire Claim would be treated as a Swap Counter Party claim. ECF No. 1038-1 at 2. Shortly thereafter, on February 13, 2015, Lead Counsel contacted Mr. David's colleague at KBC, Jatin Tosar, by telephone and reiterated this determination, explaining the grounds upon which it was made. AJE Dec. Exhibit 8. That same day, Mr. Tosar communicated to Lead Counsel via email that "[a]fter reviewing internally, the beneficial owner is actually a Lehman entity (they are the counterparty to a transaction with KBC). We have provided the information we received from the claims administrator and it is now with Lehman to determine." *Id*. In response, Lead Counsel stated they would "proceed under the assumption that the claimant is swap counter party" and advised that "[i]f Lehman disputes this determination, ***it must notify us by close of business today***." *Id*. (emphasis added). Having heard nothing more from any party

on this issue, Lead Counsel filed the Distribution Motion two weeks later on February 27, 2015. ECF No. 1003; ECF No. 1038 at 1.

On March 19, 2015, more than six weeks after GCG's notification that the Claim would be treated as a Swap Counter Party claim, and over a month after Lead Counsel had asked for notification of any dispute, LBF contended for the first time that it was no longer affiliated with LBSF, and never signed a swap agreement with the XL Portfolio Fund.  However, LBF ignores the fact that it was affiliated with LBSF and Lehman Holdings at all relevant times prior to the Madoff Bankruptcy, including when the integrated Swap Transaction was entered into between Lehman and the XL Portfolio Fund.  LBF also ignores the fact that Lehman Holdings operated as a single-integrated company during the operative Class Period, and ignores the fact that LBF's investments in the Broad Market Portfolio Fund were part of a single-unified investment transaction that included the Swap Agreement itself and the related hedges.  Put another way, it is simply not relevant that LBF and LBSF may no longer be affiliated when they were, in fact, affiliated at the time the integrated Swap Counter Party transaction was made; just as it is not relevant that LBF did not sign the Swap Agreement when LBF admittedly made hedging investments in the Broad Market Portfolio Fund that were used to hedge the Swap Counter Party transaction at issue here.

## ARGUMENT

A. **Lehman Brothers Finance And The Admitted Swap Counter Party Lehman Brothers Special Finance Were Closely Related Affiliates In An Integrated Company At The Time Of The Investment In The Portfolio Fund**

In its Opposition, LBF contends that it has been unaffiliated with LBSF since December 22, 2008, and thus argues that LBF's transactions in the XL Portfolio Fund should be treated separately from LBSF's transactions.  ECF No. 1037 at 7.  However, LBF implicitly concedes that *prior to December 22, 2008* and during the operative Class Period, LBF and LBSF were in

5

fact affiliates, under common ownership and control of Lehman Holdings.[2] *Id*.; *see also* LBSF Bankruptcy Petition at 4, Bankr. S.D.N.Y. Oct. 3, 2008, at 4, attached to AJE Dec. as Exhibit 9 (describing LBF as an "affiliate"); *In re Lehman Brothers Finance AG, In Liquidation, a/k/a Lehman Brothers Finance SA, in Liquidation* 09-10583-scc, Joint Dec. of Pascal Portman and Christiana Suhr Brunner, Bankr. S.D.N.Y Feb.10, 2009, at ¶6, attached to AJE Dec. as Exhibit 10 (hereinafter, "LBF Bankruptcy Dec."); AJE Dec. Exhibit 11 at 2.[3]

According to the Examiner's Report, Lehman Holdings "operated as an integrated company" and presented itself to the public as *one entity* -- "Lehman Brothers." Examiner's Report, Vol. 5 at 1967. As a single integrated company, Lehman Holdings would *often use multiple entities* to structure a single transaction for tax or regulatory reasons. *Id*. Moreover, "LBHI and LBI generally directed and managed the operations of the entire organization," "hired, employed and compensated most Lehman employees" and "[m]ost entities shared at least some common officers and directors." *Id*. at 1968. Accordingly, the investments in the Broad Market Portfolio Fund and the XL Portfolio Fund under the names of individual Lehman Holdings entities are actually the investments of a single company.

As LBF stated in its declaration filed in its U.S. bankruptcy proceedings, "LBF's business has been *interconnected* with the business of other Lehman Brothers entities, and LBF has been partially *dependent on services provided by other Lehman Brothers group companies*." LBF Bankruptcy Dec. at ¶8 (emphasis added). In addition, the Examiner's Report states that LBF is "highly integrated into the rest of the Lehman organization" and that it relied on the data systems

---

[2] LBF is a direct subsidiary of Lehman Holdings, while LBSF is a subsidiary of Lehman Brothers Inc. ("LBI"), which is itself a subsidiary of Lehman Holdings.

[3] According to LBF, LBF and LBSF were affiliated until December 22, 2008, which is shortly after Bernard L. Madoff Investment Securities LLC collapsed on December 11, 2008. ECF No. 1037 at 8; ECF No. 1039-2-3; ECF No. 1040-1; ECF No. 1040-2; ECF No. 1040-3; ECF No. 1040-4; Exhibit (Swap Agreement).

6

and employees from other groups to process and book transactions. Examiner's Report, Vol. 5 at 1985. PricewaterhouseCoopers, AG Zurich ("PWC"), the appointed liquidators of LBF, further indicated that LBF was unable to operate independently from other Lehman Holdings entities and, in that regard, described how "PWC first had to build up a completely new oganisation (sic) and infrastructure" to liquidate LBF. PricewaterhouseCoopers, AG Zurich, *First Report of PricewaterhouseCoopers, AG Zurich, as Appointed Liquidators to the Creditors of Lehman Brothers Special Finance S.A., Zurich, in Liquidation*, Sept. 25, 2009, attached to AJE Dec. as Exhibit 12 at 3.

The Examiner also found that "LBSF could not have survived as a stand-alone entity" and was used "as a swap counterparty for trades originating at other Lehman entities." Examiner's Report, Vol. 5 at 1979-80. Since LBF and LBSF did not exist as stand-alone entities, and operated as a single integrated company within Lehman Holdings during the Class Period, the transactions of LBF and LBSF in the XL Portfolio Fund and Broad Market Portfolio Fund should be treated as those of Lehman Holdings as a whole. Accordingly, the determination that LBF is a Swap Counter Party should be upheld and LBF's investments in Broad Market Portfolio Fund should be discounted by 99%.

**B.     Under the Court-Approved NSF POA, Lehman Brothers Finance Did Not Need to Sign a Swap Agreement to be Considered a Swap Counter Party**

LBF admits that the definition of a Swap Counter Party in the NSF POA is "unambiguous." ECF No. 1037 at 9. LBF is correct. The NSF POA defines a Swap Counter Party as a "party that entered into a swap *transaction* or similar arrangement with any of the Rye Funds or Tremont Funds in order to provide said Funds with a leveraged return." No. 988-1 at 3 (emphasis added). However, LBF erroneously asserts that "[b]ecause LBF did not enter into a swap *agreement* with the Rye Funds or Tremont Funds, it is not a swap counterparty." ECF No.

7

1037 at 9 (emphasis added).  While LBF itself never signed a swap *agreement* with any of the Rye or Tremont Funds, its investments in the Broad Market Portfolio Fund are clearly tied to the Swap Agreement between Lehman Holdings, through LBSF, and the XL Portfolio Fund.  Given that LBF's transactions were made pursuant to the Swap Agreement, LBF must fall within the definition of a Swap Counter Party.

**C.     Lehman Brothers Finance And The Admitted Swap Counter Party Lehman Brothers Special Finance Are Related Through Their Investment Activities**

It is clear that the transactions of LBF and LBSF in the Broad Market Portfolio Fund and XL Portfolio Fund are related.  LBF admits it is now the beneficial owner of LBSF's investment in the Broad Market Portfolio Fund and, as discussed above, even filed claims for these investments on the same proof of claim form.  ECF No. 1040 at 2; AJE Dec. Exhibit 7.

Additionally, the offering documents for the XL Portfolio Fund clearly state that the affiliates of Swap Counter Parties are expected to invest in the Broad Market Portfolio Fund to hedge the risk of swap transactions.  AJE Dec. Exhibit 13, at iii-iv.  LBF's investments in the Broad Market Portfolio Fund were part of the hedge by Lehman Brothers to offset the risk created by LBSF's Swap Agreement (*i.e.*, the return on LBF's and LBSF's $83 million investment in the Broad Market Portfolio Fund covered the payments required by LBSF's Swap Agreement with the XL Portfolio Fund) and as such are precisely the type of Swap Counter Party "transaction or similar arrangement" to which the NSF POA 99% discount is directed.

Of course, the mere fact that LBF's Swap Counter Party hedge investments were made in Class D shares of the Broad Market Portfolio Fund -- a class of shares that were only made

8

available to and that were *only* purchased by Swap Counter Parties -- should in and of itself dispose of this issue.  AJE Dec. Exhibit 5; AJE Dec. Exhibit 6.[4]

Finally, the Examiner's Report states that LBF was restricted to the following activities so it could remain as an unregulated entity:

> execution of OTC derivatives (*i.e.*, options, forwards and swaps) on underlying assets or products; issuance of warrants and certificates; trading of securities and listed derivatives *only to the extent that it was hedging risk on its derivatives portfolio*; and securities borrowing and lending or repos *only when done with other Lehman entities and when related to the settlement or financing of securities hedging positions*. Examiners Report, Vol. 5 at 1984-85 (emphasis added).

This language indicates that LBF's investment in the Broad Market Portfolio Fund securities could only have been made in connection with derivatives, such as a swap agreement, or in connection with other Lehman entities, such as LBSF, to hedge a position.  Based upon these restrictions, it is clear that LBF's investments in the Broad Market Portfolio Fund were performed for the sole purpose of hedging the investments of LBSF pursuant to the Swap Agreement.

## **CONCLUSION**

For the foregoing reasons, the Court should reject the arguments set forth in the LBF Opposition and affirm the determination that LBF is a Swap Counter Party as defined in the Court-approved NSF POA.

---

[4] The inference that LBF's and LBSF's investments in the Broad Market Portfolio Fund are related is further supported by the collaboration of LBF and LBSF in other swap transactions.  *See In re Lehman Bros. Holding, Inc.*, 433 B.R. 101, 104 n.3 (Bankr. S.D.N.Y. 2010) *aff'd*, 445 B.R. 130 (S.D.N.Y. 2011).

Dated: May 21, 2015
New York, New York

**ENTWISTLE & CAPPUCCI LLP**

*/s/ Andrew J. Entwistle*
Andrew J. Entwistle
Arthur V. Nealon
Robert N. Cappucci
280 Park Avenue, 26th Floor West
New York, NY  10017
(212) 894-7200
(212) 894-7272 (fax)
aentwistle@entwistle-law.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**

*/s/ Reed R. Kathrein*
Reed R. Kathrein
Lee Gordon
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
(510) 725-3000
(510) 725-3001 (fax)
reed@hbsslaw.com

*Co-Lead Counsel for the State Law Actions*

**BERNSTEIN LIEBHARD LLP**

*/s/ Jeffrey M. Haber*
Jeffrey M. Haber
Stephanie M. Beige
10 East 40th Street
New York, NY  10016
(212) 779-1414
(212) 779-3218 (fax)
haber@bernlieb.com

*Lead Counsel for the Securities Actions*