UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ x

IN RE TREMONT SECURITIES LAW,   :
STATE LAW AND INSURANCE        :    Master File No.:
LITIGATION                       :    08 Civ. 11117 (TPG)
                                   :

------------------------------------------------------ x   **JURY TRIAL DEMANDED**

This Document Relates to:  All Actions   :

                                   :    "ECF Case"

------------------------------------------------------ X

### JOINT DECLARATION OF ANDREW J. ENTWISTLE, REED R. KATHREIN AND JEFFREY M. HABER IN SUPPORT OF PLAINTIFFS' SETTLEMENT CLASS COUNSEL'S MOTION FOR APPROVAL OF FUND DISTRIBUTION ACCOUNT PLAN OF ALLOCATION, DISTRIBUTION PROCEDURES, ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

### (The "Joint Fund Distribution Account Declaration")

Andrew J. Entwistle and Jeffrey M. Haber, admitted to practice law in the State of New York and this Court, and Reed R. Kathrein,[1] admitted *pro hac vice* in the above-captioned actions (the "Actions"),[2] hereby declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1.       The Court-approval of the Stipulation governing the Settlement of the Actions charged Plaintiffs' Settlement Class Counsel ("Class Counsel"), among other things, with the responsibility for the defense of the Settlement, the ongoing prosecution of certain related actions, the defense of the related settlement of the Madoff Trustee litigation, which is the primary funding source for the FDA, the development of plans of allocation ("POAs") for the

---

[1] Andrew J. Entwistle is a partner in the law firm of Entwistle & Cappucci LLP, Co-Lead Counsel in the consolidated State Law Actions, Reed R. Kathrein is a partner in the law firm of Hagens Berman Sobol Shapiro LLP, Co-Lead Counsel in the consolidated State Law Actions, and Jeffrey M. Haber is a partner in the law firm of Bernstein Liebhard LLP, Lead Counsel in the consolidated Securities Law Actions.

[2] Defined terms have the same meaning as set forth in the Stipulation of Partial Settlement, dated February 25, 2011 (ECF No. 392-1) (the "Stipulation").

Net Settlement Fund ("NSF") and the Fund Distribution Account ("FDA"), and supervising and directing the administration, calculation and distribution of the FDA to Fund Distribution Claimants.  *See*, *e.g.*, Stipulation ¶ 5.1 and relevant portions of the Final Judgment and Order of Dismissal with Prejudice Regarding Settlement and Rules 23 and 23.1.  ECF No. 604.  We respectfully submit this joint declaration in support of Class Counsel's *Motion for Approval of Fund Distribution Account Plan of Allocation, Distribution Procedures, Attorneys' Fees and Reimbursement of Expenses* (the "Motion").  We have personal knowledge of the matters pertaining to the Actions for which we serve as Class Counsel, as described herein, and are competent to testify with respect thereto.

## I.    Procedural History

2.    The Actions arise from the collapse of Bernard L. Madoff Investment Securities ("BLMIS") in December of 2008.  Investors in the Rye and Tremont Funds filed several putative class actions and derivative complaints against the Defendants, alleging violations of state and federal law.

3.    On March 26, 2009, the Court created three separate groups of consolidated actions, the Securities Actions, the State Law Actions and the Insurance Actions, consolidated specific cases within each group and assigned a master caption of *In re Tremont Securities Law, State Law and Insurance Litigation,* Master File No. 08 CIV. 11117 (TPG).  The Court also consolidated several other actions alleging substantially similar facts and asserting similar legal theories against the Defendants.

4.    Plaintiffs filed amended complaints in the Actions and certain Defendants moved for dismissal on May 20, 2009.  While dismissal was pending, the parties discussed possible settlement of the Actions.

2

5.      The parties began informal settlement discussions in November of 2009, when Class Counsel met with Tremont to discuss Defendants' assets and other potential sources of recovery.  After further hard-fought discussions and an additional in-person meeting, the parties entered into mediation, engaging retired U.S. District Court Judge Layn R. Phillips as a mediator (the "Mediator" or "Judge Phillips") in an attempt to reach a settlement.  Through this mediation, on March 18, 2010, the parties reached a settlement in principle, which they reduced to a memorandum of understanding setting forth the principal terms of their agreement.  Resolution of open issues and vigorous negotiations over the structure, and related efforts to achieve resolution of the Madoff Bankruptcy Trustee (the "Trustee") litigation (the "Trustee Settlement"), delayed submission of the Stipulation until February 25, 2011.

6.      On May 4, 2011, Class Counsel filed a motion asking the Court to enter an order approving the Settlement, plans of allocation and an initial request for fees and expenses through May 6, 2011.  ECF No. 440.  The Court subsequently held hearings on June 1, 2011 and August 8, 2011 regarding approval of the Settlement, the plans of allocation and the request for fees and expenses.  At the August 8, 2011 hearing, we agreed to postpone consideration and resolution of all issues regarding the NSF and FDA plans of allocation until a later date.  Class Counsel also agreed with the Court to work to create as broad a consensus as possible with respect to the relevant plans of allocation and to defer the second half of their global fee request (which was payable out of the FDA).  The Court approved the Settlement on August 19, 2011.  The Settlement stands as one of the largest involving Madoff feeder fund investors.

7.      The Court-approved Settlement of the Actions established two separate funds:  (i) the NSF (i.e., the gross settlement paid by Defendants plus certain recoveries and less taxes, fees and expenses); and (ii) the FDA, which is structured as a pour over account that is designed to

EC.58912.1

receive, allocate and distribute all of the assets remaining in the Rye Funds, including cash and claims that were recognized as part of Trustee Settlement.  As discussed more fully in papers and proceedings on the approval of the Settlement, Class Counsel worked closely with the Defendants and the Madoff Trustee to structure the Trustee Settlement that benefitted Fund Distribution Claimants by preserving and recognizing almost $3 billion in claims in the Madoff bankruptcy.  Like the Settlement of these Actions, the Trustee Settlement was also successfully defended on appeal.  To date, over $650 million in proceeds have flowed into the FDA after repayment of the loan from Fortress Group LLC and related entities ("Fortress") that partially funded the Trustee Settlement.

8.     Only those investors in the Rye and Tremont Funds who were included in the definition of the Settlement Class could recover from the NSF.  The Settlement also provided that limited partners or shareholders invested in Eligible Securities of any Eligible Hedge Fund as of December 11, 2008 or its successors pursuant to any merger or other business combination or by valid assignment (including secondary market purchase of such claims) are Fund Distribution Claimants and, as such, are eligible to share in the FDA.

9.     Following approval of the Settlement that created the FDA and NSF, multiple objectors vigorously appealed both the Settlement and the Trustee Settlement, which Class Counsel successfully defended.  In that capacity, we addressed multiple legal and factual arguments contained in thousands of pages of filings concerning subject matter jurisdiction, the adequacy of the Settlement Class Representatives and Lead Plaintiffs, class certification and the overall fairness of the Settlement and Trustee Settlement, all of which required extensive research and drafting of legal memoranda.

4

10.     The defense of the Settlement and Trustee Settlement necessarily involved numerous rounds of briefing on motions to dismiss the appeals, related post-approval motions in the District Court, appellate briefing and arguments in multiple courts, a motion for reconsideration of the Second Circuit's dismissal, a motion to vacate the Second Circuit's judgment affirming the Settlement, a motion for reconsideration of the Circuit's decision and a petition for *Writ of Certiorari* before the U.S. Supreme Court, as well as oral argument before the Second Circuit and related negotiations, strategic discussions and legal and factual analyses concerning each of the foregoing issues.

11.     In the bankruptcy context, we participated in strategic discussions with the Trustee and counsel for Defendants, performed legal research and drafted various legal memoranda in opposition to a complex set of objections to the Trustee Settlement filed by a formidable group of institutional investors that purchased interests in the Rye Select Broad Market XL Fund, L.P. (the "XL Fund") and Rye Select Broad Market Prime Fund, L.P. (the "Prime Fund").  The objections contended, among other things, that the proposed allocation of Section 502(h) credits to the Rye Select Broad Market Fund, L.P. ("Rye Onshore") and the Rye Select Broad Market Portfolio Limited ("Rye Offshore") was inequitable, and that adversary claims against Tremont and various bank defendants were unfairly released.  The Bankruptcy Court overruled those objections, finding the allocation to Rye Onshore and Rye Offshore was appropriate, the adversary claims were properly released and, thus, the Trustee Settlement was a complete, good faith compromise of the Trustee's claims.  The objectors appealed that decision to the District Court and Class Counsel were actively involved in the appeal, working directly with the Trustee and Counsel for Defendants on various research assignments and legal

5

memoranda.  The District Court ultimately found that the appellants lacked standing to challenge the Trustee Settlement and, on that basis, dismissed the appeal.

## II.    The Mediation Process

12.    During the appellate process and thereafter, Class Counsel worked diligently to address the various issues regarding the proposed plans of allocation.  We engaged in countless telephone discussions and in-person meetings with scores of investors in the various Rye and Tremont Funds regarding the terms of the Settlement, the operation of the NSF and FDA, the plans of allocation, anticipated distribution of the NSF and FDA and various other procedural issues and developments.  These communications regularly required the review and analysis of extensive underlying transactional documents, structural documents regarding the Rye and Tremont Funds, swap transaction documents in connection with the XL Fund and related materials that impacted the issues raised during these often extended discussions.  At the same time, we continued to investigate, develop and prosecute related claims that could potentially lead to further recovery for investors.

13.    We also worked extensively with prior objectors and various interested parties who invested in one or more of the Rye and Tremont Funds and who had expressed a desire to participate post-Fairness Hearing ("Interested Parties") through mediation (the "Mediation") before Judge Phillips in an attempt to achieve a consensus on the allocation of the NSF and the FDA.  Following these discussions, we developed an allocation protocol ("Allocation Protocol") (attached as Exhibit B to the memorandum of law in support of this Motion) that laid out the process by which we would work with all Interested Parties and former objectors through mediation and mediation-related activities to attempt to build a consensus on an NSF POA and an FDA POA.

6

14.     In or about April of 2014, Class Counsel circulated the Allocation Protocol to those persons and entities that either objected or appeared at the Fairness Hearing or otherwise expressed a desire to participate in the development of NSF and FDA POAs.  As part of the Allocation Protocol, we solicited comments on a proposed NSF plan of allocation and comments or related proposals for an FDA plan of allocation that would be discussed in various Mediation-related calls and during large group Mediation sessions that ultimately took place on July 28 and 29, 2014.

15.     We received various inquiries regarding the confidentiality of the proposed plans of allocation and related materials that would be submitted by Interested Parties.  We advised the Interested Parties by memorandum that all Mediation submissions would be viewed solely by Class Counsel and the Mediator, and that the submissions and other Mediation documents would be considered confidential material, consistent with the Model Standards of Conduct for Mediators.  Thereafter, we received submissions from eleven groups of investors, most of which included multiple investors or financial institutions.  After reviewing and analyzing those submissions, we invited supplemental submissions regarding certain issues to ensure that all issues could be fully addressed during the July Mediation sessions.

16.     Certain Interested Parties also requested detailed data which Class Counsel and Tremont agreed to provide to every participant under a confidentiality agreement related to the Mediation.  The Mediation-related materials provided included a wide range of confidential documents detailing specific financial information for the Funds and the individual investors therein.  All receiving parties agreed to hold that information under strict confidentiality and solely for the purpose of the Mediation.

EC.58912.1

17.     The July 2014 Mediation session was attended by investors in virtually all of the eligible Rye and Tremont Funds, represented by sophisticated counsel advocating their positions. Indeed, the Mediation attendees consisted of some of the largest and most sophisticated financial institutions in the country.  A large number of attendees each had more than $50 million at stake, multiple parties had more than $100 million at stake and some had in excess of $250 million at stake.  The Defendants did not participate in the Mediation, assuring that the process was free of any coercion, that it would remain solely in the hands of Class Counsel who were charged as fiduciaries for the FDA and the Fund Distribution Claimants, and in the hands of the various groups of Fund Distribution Claimants themselves.  As noted above, the Mediation was conducted under the watchful eye of Judge Phillips, who also conducted the mediation of the Settlement and acted as an arbitrator in related proceedings.  Judge Phillips is one of the most experienced and highly regarded mediators in the world and his presence ensured that every interested group had a full and complete opportunity (often multiple opportunities) to advocate for their respective self-interests.  Throughout, Class Counsel worked closely with Judge Phillips in a mediator-like role to assure the integrity of the process and to help build as broad a consensus as possible for each plan of allocation.  During the July 2014 Mediation session, which consisted of two full days, Class Counsel and the Mediator conducted numerous group sessions and individual sessions, in which the participants were able to express their views on various issues impacting the plans of allocation.

18.     Following numerous additional telephone discussions and in-person meetings in advance of the Mediation, Class Counsel were ultimately able to build a complete consensus for the proposed NSF POA among the Interested Parties during the July 2014 Mediation session. Accordingly, Class Counsel subsequently moved for approval of the NSF POA on December 15,

8

2014.  ECF No. 987.  There were no objections and the Court granted approval of the NSF POA on December 22, 2014.  ECF No. 994.

19.     Thereafter, on February 27, 2015, we moved for distribution of the NSF and, in connection with that motion, sought the Court's approval to readmit to the Settlement Class a group of investors who had previously opted out of the Settlement Class.  ECF No. 1003.  After considering supporting and opposing arguments, the Court subsequently approved distribution of the NSF and permitted the opt-outs to re-enter the Settlement Class.  ECF No.  1071.

20.     On March 4, 2015, at the request of Class Counsel, Judge Phillips contacted via e-mail the Interested Parties who had not yet resolved their disagreements regarding the consensus FDA plan of allocation under consideration.   Additional submissions were received by Judge Phillips and Class Counsel from various participants and on May 8, 2015, the Mediator, in conjunction with Class Counsel, conducted a further confidential in-person Mediation session.

21.     Through the numerous discussions, meetings, vigorous negotiations among sophisticated investors and their counsel, and the extensive Mediation sessions over approximately the past two years, Class Counsel ultimately obtained broad-based support for the proposed FDA POA of Rye and Tremont investors representing the vast majority of the aggregate net ownership interests in those Funds.  This Motion followed.

### III.     The FDA POA and Anticipated Distribution Process

**A.  The FDA POA**

22.     As discussed above, the proposed FDA POA is the result of extensive, arm's length, hard-fought negotiations among highly sophisticated parties represented by some of the most experienced and capable lawyers in the nation.  The parties all had substantial holdings in the various Rye and Tremont Funds, further assuring vigorous advocacy by holders in each of

9

the various groups before one of the most well-regarded Mediators in the world acting with the assistance of Class Counsel, who this Court charged with working through a process that would attempt to build as broad based a consensus as possible. The proposed FDA POA is a reflection of the mediated compromise of positions of the various Interested Parties hammered out over many, many months and countless hours of conversations and meetings. It is, very simply, the best result with the broadest consensus achievable under the circumstances, and it addresses all of the equitable concerns raised by Class Counsel or identified by others that are legitimately related to the allocation of the FDA assets.

23.     The method by which the proposed FDA POA allocates the funds in the FDA among the various Rye and Tremont Funds is reasonable and fair. It is consistent with the terms of the Trustee Settlement and Bankruptcy Court order approving that settlement, accords with Fund structure, preserves all Cross Investments between Funds (on a net basis) and treats on an equal footing all Funds participating in the Trustee Settlement by giving all Funds the equivalent 502 claim for their contribution to the Trustee Settlement. As such, the FDA POA is a fair and reasonable compromise. It is an outstanding recovery that will benefit all eligible Fund Distribution Claimants.

24.     Pursuant to the proposed FDA POA, each of the eligible Rye and Tremont Funds will receive an allocated interest in the FDA based upon the following components, as applicable: (i) SIPC Claims in the Madoff Bankruptcy proceedings or Virtual SIPC Claims based upon certain Funds' contributions to the Madoff Trustee Settlement; (ii) Cross Investments in other Funds; and (iii) for the XL Fund, the XL Priority Allocation, based upon the cash the XL Fund contributed to the FDA.

25.     With regard to the first component, three of the Rye Funds -- Rye Onshore, Rye

Offshore and Rye Select Broad Market Insurance Fund, L.P. ("Rye Insurance") -- have SIPC

Claims under the Trustee Settlement approved by the Bankruptcy Court, which the Trustee

granted in exchange for the nearly $1 billion contribution to the BLMIS estate (approximately

$650 million was from loans provided by Fund Distribution Claimant Fortress).  Those claims

and any proceeds therefrom were contributed to the FDA by those Funds and, therefore, it is

equitable and appropriate that investors in these Funds receive credit for the assets they

contributed to the FDA -- particularly since those assets are the primary source of funding for the

FDA.  Several Funds did not receive SIPC Claims either because they were net winners (e.g., the

Prime Fund) or because they did not directly invest in Madoff (e.g., the XL Fund and various

Tremont Funds).

26.     Several Funds also contributed cash directly to the Trustee Settlement, but did not

receive a SIPC Claim pursuant to that settlement.[3]  Under the proposed FDA POA, these Funds

will receive a Virtual SIPC Claim equal to 80% of the amount of their contribution to the Trustee

Settlement.  Class Counsel secured this compromise through the Mediation process, and the

percentage is equivalent to the 80% Section 502 claim recognized as part of the Trustee

Settlement for amounts contributed to the Trustee Settlement by the Rye Onshore and Rye

Offshore Funds.  This treatment is appropriate because it allows the investors in those Funds who

contributed to the Trustee Settlement to receive the benefit of their contributions on an

equivalent basis.

---

[3] These Funds include Tremont Market Neutral Fund L.P.; Tremont Market Neutral Fund II,
L.P.; Tremont Opportunity Fund II L.P.; and Tremont Opportunity Fund III L.P., the Prime
Fund.

EC.58912.1

27.    The FDA POA also preserves any Cross Investments by the Rye and Tremont

Funds on a net investment basis.[4]  This treatment of Cross Investments is appropriate as it gives

each Fund the proper credit for their Madoff losses.

28.    Lastly, the XL Priority Allocation is the priority distribution to XL Fund

Claimants of the first $32,409,239 from the FDA.  This amount is equal to the cash contribution

the XL Fund directly made to the FDA.  The XL Fund is the only Rye Fund that contributed

anything but a *de minimis* amount of cash to the FDA, so it is in a unique position that is fully

addressed by the XL Priority Allocation.[5]

**B.  Anticipated Distribution Plan**

29.    The proposed FDA distribution procedures are substantially similar to those the

Court previously approved for the NSF distribution, and many of the determinations the Claims

Administrator must make regarding distribution of the FDA are similar or the same

determinations that were made under the NSF distribution, especially in relation to Fund

Distribution Claimants who filed claim forms under the NSF.  The distribution plan and related

claim resolution procedures are described in detail in the Cirami Affidavit and will not be

repeated herein beyond noting Class Counsels' view that they are fair, reasonable and in the best

interests of all Fund Distribution Claimants eligible to share in the FDA.

30.    Class Counsel likewise submit that the provisions in the proposed FDA

distribution plan that provide for (i) the FDA Reserve in order to address administrative

contingencies, and (ii) disposition of any unclaimed/un-cashed balance of the FDA to Fund

---

[4] For example, the Prime Fund invested in both Rye Onshore and the XL Fund and, thus,
receives credit for both of these investments under the FDA POA.

[5] Additionally, the XL Fund contributed the funds to the FDA despite the fact that it was not a
named defendant in the Trustee proceedings and received no release in consideration for its
payment.

EC.58912.1

Distribution Claimants to the extent they are cost-effective, with any final undistributed balance to be disbursed equally to the American National Red Cross and American Cancer Society, Inc., are also fair, reasonable and in the best interests of all Fund Distribution Claimants eligible to share in the FDA.

### IV.     The Requested Attorneys' Fees and Reimbursement of Expenses

31.     As is customary in common fund cases, Class Counsel are requesting a percentage of the FDA as payment for attorneys' fees, as well as reimbursement of expenses incurred in connection with the Settlement and Trustee Settlement generally, and in particular for their efforts following the initial fee application in May 2011 which resulted in a partial award from the NSF and deferral of a determination of Class Counsel's request for 3% of the FDA.

32.     At this time, Class Counsel renew their request for attorneys' fees in the amount of 3% of the FDA net of (i) the funds used to repay the loan the two Rye Funds took out to complete the settlement with the Madoff Trustee; and (ii) the funds that make up the XL Priority Allocation (the "FDA Net Recovery"), and including subsequent distributions, if any, from the Trustee Settlement.  Class Counsel also request reimbursement of $975,322.56 in total out-of-pocket charges, costs and expenses that were reasonably and necessarily paid and incurred in respect of the post-May 6, 2011 litigation and related activities.

33.     As set forth in the attached Declaration of Andrew J. Entwistle in Support of Award of Attorneys' Fees and Expenses ("Entwistle Fee Decl."), Declaration of Reed R. Kathrein in Support of Award of Attorneys' Fees and Reimbursement of Expenses ("Kathrein Fee Decl.") and Declaration of Jeffrey M. Haber in Support of Attorneys' Fees and Reimbursement of Expenses ("Haber Fee Decl."), submitted in support of the fee and expense request herein (Exhibits A, B and C, respectively), Class Counsel have collectively incurred a

13

lodestar of $15,988,621.75 for their post-May 6, 2011 work in connection with these and related proceedings.  This figure represents over 23,871.75 hours of work over the past four years.  Class Counsel performed all of this work on a contingent basis without any compensation.  Approval of the fee request, based upon the lodestar figure and given the $623 million current FDA Net Recovery, would constitute a multiplier of only approximately 1.17.

34.     The requested fee is reasonable when viewed in relation to the substantial recovery Class Counsel have obtained for the Fund Distribution Claimants and in light of:  (a) the tremendous amount of time and effort spent litigating this matter since its inception (and in particular since May 6, 2011); (b) the magnitude and complexity of the Actions and related Madoff Trustee litigation, including the unique complexities involved with litigating claims involving the hedge fund industry on behalf of investors who were defrauded by Madoff and the complex issues presented in connection with the NSF and FDA POAs; (c) the risk assumed by taking on a case with the legal challenges inherent in this and related proceedings including the risk the Madoff Trustee litigation could have wiped out any recovery for Fund Distribution Claimants absent the Trustee Settlement structured by Class Counsel, Defendants and the Madoff Trustee; (d) the task of litigating against some of the best firms in the country; (e) the reasonableness of the requested fee in relation to the overall benefit created and, in particular, the benefits flowing to Fund Distribution Claimants from the FDA, particularly considering that it constitutes a multiplier of only approximately 1.17 to the collective lodestar; (f) the public policy favoring the granting of reasonable attorneys' fees to attract qualified plaintiffs' counsel and encourage plaintiffs' counsel to undertake efforts to resolve common fund cases by reaching an agreement among the claimants; and (g) the comparison of the requested fee to Class Counsel's lodestar.

35.     Class Counsel submit the request for (i) attorneys' fees consisting of 3% of FDA Net Recovery and (ii) reimbursement of expenses in the amount of $975,322.56, measured by the criteria for awards of attorneys' fees and reimbursement of expenses in similar common fund cases and complex class actions, satisfies the relevant legal standards and should be approved by the Court as fair and reasonable.

## A.  Class Counsel's Time, Labor and Lodestar

36.     Class Counsel devoted more than 23,871.75 hours to the prosecution of this and related proceedings following the May 6, 2011 initial fee application, resulting in a lodestar of $15,988,621.75.  Moreover, we will spend additional time on further administration of the FDA, distribution and responding to any objections and appeals regarding the instant Motion.  We submit summaries of our hours, lodestar and expenses at Exhibits 1 and 2 to the Entwistle Fee Decl., Exhibits 1 and 2 to the Kathrein Fee Decl. and Exhibits 1 and 2 to the Haber Fee Decl. Class Counsel compiled their respective hours from contemporaneous time records maintained by their attorneys, paralegals and other professionals.

37.     Class Counsel conducted their post-May 6, 2011 work in a coordinated and well-organized fashion to ensure maximum efficiency.  All work was conducted in a manner minimizing unnecessary and/or duplicative work.

38.     The hours expended are also reasonable given the magnitude and complexity of the Actions generally, the defense of the Settlement and the related Trustee Settlement and, in particular, the complexity of structuring of the FDA and related Trustee Settlement and the development of the POAs.  Class Counsel reviewed an extensive amount of complex Rye and Tremont Fund investment documents and court filings to analyze and evaluate the positions of the Fund Distribution Claimants and recommend a plan of allocation that fairly and adequately allocates the FDA among the various Claimants.  We also performed research, drafted numerous

15

motions and memoranda of law, and reviewed and responded to opposition motions and memoranda in connection with appeals of the Settlement.  Additionally, we worked with the claims administrator, Garden City Group, LLC (the "Claims Administrator" or "GCG"), to oversee the administration of the FDA.  This work involved responding to inquiries of certain Claimants, explaining the investment data and proposed FDA POA, and crafting solutions for issues that arose regarding the administration and distribution of the FDA.

39.     To arrive at the lodestar, the hours Class Counsel expended were multiplied by each attorney's respective hourly rate.  The hourly rate applied in calculating the lodestar is the rate normally charged in the community where the attorneys practice.  We have attached to the declarations of Andrew J. Entwistle, Reed R. Kathrein and Jeffrey M. Haber the summaries of the lodestar and expenses incurred in the Actions relating to the FDA.  Given the complexities of the matter, the considerable skill and experience of counsel and the resources expended, Class Counsel believe the total amount of hours billed and the hourly rates charged are amply justified.

**B.  The Magnitude and Complexity of the Litigation Regarding the FDA**

40.     Virtually every aspect of this matter presented complex and substantial issues. Class Counsel negotiated extensively with the Defendants to obtain the Settlement containing the FDA, and sought to maximize the recovery of the Fund Distribution Claimants.  The work we performed to reach the Settlement necessarily involved understanding the complex legal and factual relationships among the various Rye and Tremont Funds, the assets remaining in those Funds, the potential recoveries of those Funds in related litigation and the Madoff Trustee's claims against the Rye and Tremont Funds.

41.     In working with the Defendants and the Trustee to structure the settlement of the Trustee's claims against the Rye and Tremont Funds, we also analyzed complex provisions of bankruptcy law, precedents regarding investor recovery in Ponzi schemes and the protections

16

under SIPC.  Our work in this regard substantively contributed to the ability of the three Rye

Funds to obtain an almost $3 billion dollar claim against the Madoff estate, which provided

substantially all of the funds available thus far for distribution from the FDA.

**C.  The Risks of the Proceedings**

42.     Class Counsel undertook a substantial risk bringing the derivative claims that

gave rise to the FDA portion of the Settlement, and in pursuing a resolution with the Madoff

Trustee in order assure a source of funds for the FDA on a wholly contingent-fee basis, knowing

they would likely be involved in litigation for several years in connection with Settlement, the

Trustee Settlement, related proceedings and the development of POAs.  The same risks that

attended the Settlement and the Trustee Settlement (as discussed more fully in the initial fee

application and approval order) are equally applicable to the Class counsel's post-May 6, 2011

work.

43.      We assumed the risks associated with pursuing the Actions and developing the

proposed FDA POA, and ultimately obtained an excellent result for Fund Distribution Claimants.

**D.  The Quality of the Representation**

44.     Class Counsel have extensive experience litigating complex cases in federal

courts.  This depth of expertise enabled us to successfully prosecute the Actions that ultimately

resulted in the creation of the FDA, all as described more fully in the initial fee application and

elsewhere herein.  We respectfully submit that the professional skill of the representation in this

case is beyond question and supports approval of the requested award.

**E.  The Relationship of the Requested Fee to the Total FDA**

45.     As further explained in the our memorandum in support of the instant Motion,

when compared with fee requests in similar common fund cases, our requested fee of 3% of the

FDA Net Recovery is consistent with fees awarded in similar cases of comparable value.

17

**F.  Public Policy Considerations**

46.     The requested fee award supports public policies of investor protection, encouraging well-qualified and efficient legal representation and the preservation of judicial resources through the private resolution of disputes.

**G.  Comparison of the Requested Fee and Class Counsel's Lodestar**

47.     As stated previously, Class Counsel have collectively incurred a lodestar of $15,988,621.75, representing 23,871.75 hours devoted to the post-May 6, 2011 prosecution of these and related proceedings.  The requested fee, if awarded, would constitute a multiplier of only 1.17 in relation to the current $623 million FDA Net Recovery.

48.     Without any assurance of obtaining compensation for their efforts, Class Counsel expended not only substantial time litigating the Actions, but also substantial resources.  For this additional reason, our fee request is justified and appropriate under a lodestar analysis.  As set forth in the memorandum accompanying this Motion, the fee request of 3% of the FDA Net Recovery is reasonable when cross-checked against the multiplier of approximately 1.17 obtained using the lodestar method.

**V.     CLASS COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND NECESSARY TO THE ACTIONS**

49.     We also request reimbursement of our litigation expenses billed at cost and paid and/or incurred while performing post-May 6, 2011 work in connection with this and related proceedings. The total litigation expenses for this period for which Class Counsel seek reimbursement are $975,322.56.  These expenses are detailed in the schedules attached to the Entwistle, Kathrein and Haber Fee Declarations and were necessary to the post-May 6, 2011 prosecution of this and related proceedings arising out of the Settlement and Trustee Settlement including the development of the FDA POA

18

## VI.    CONCLUSION

50.    Class Counsel respectfully request the Court approve the proposed FDA POA, distribution to Fund Distribution Claimants, an award of attorneys' fees in the amount of 3% of the FDA Net Recovery, as described above, and reimbursement of post-May 6, 2011 litigation expenses in the amount of $975,322.56.

EC.58912.1

51.     We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED this 10th day of July, 2015

_____
Andrew J. Entwistle

EXECUTED this 10th day of July, 2015

_____
Reed R. Kathrein

EXECUTED this 10th day of July, 2015

_____
Jeffrey M. Haber

20

51.     We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


EXECUTED this 10th day of July, 2015

                                    _____
                                    Andrew J. Entwistle


EXECUTED this 10th day of July, 2015

                                    _____
                                    Reed R. Kathrein


EXECUTED this 10th day of July, 2015

                                    _____
                                    Jeffrey M. Haber

EC.58912.1

51.     We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


EXECUTED this 10th day of July, 2015

_____
Andrew J. Entwistle


EXECUTED this 10th day of July, 2015

_____
Reed R. Kathrein


EXECUTED this 10th day of July, 2015

_____
Jeffrey M. Haber


20

EC.58912.1