IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION<br><br>This Document Relates To:<br><br>All Actions | MASTER FILE NO.:<br>08 CIV. 11117 (TPG) |

**AFFIDAVIT OF STEPHEN J. CIRAMI IN SUPPORT OF MOTION FOR APPROVAL OF FUND DISTRIBUTION ACCOUNT PLAN OF ALLOCATION, DISTRIBUTION TO FUND DISTRIBUTION CLAIMANTS AND REIMBURSEMENT OF EXPENSES**

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NASSAU     )

STEPHEN J. CIRAMI, being duly sworn, deposes and says:

1. I am the Senior Vice President of Operations for Garden City Group, LLC ("GCG").[1] Pursuant to the Court's April 5, 2011 Order Directing Notice and Setting Final Hearing in Connection with Motion for Approval of Proposed Settlement and Motion for Attorneys' Fees and Expenses (the "Notice Order"), GCG was authorized to act as the Notice and Claims Administrator and Insurance Notice and Clams Administrator in connection with the settlement of the above-captioned actions (the "Actions"). The following statements are based on my knowledge and information provided by other experienced GCG employees working under my supervision.

---

[1] Please note that The Garden City Group, Inc. is now Garden City Group, LLC.

2. The Settlement of these Actions created two separate funds which provide a recovery for certain investors in various Rye and Tremont Funds.[2] The Fund Distribution Account Plan of Allocation (the "FDA POA") provides a recovery for Fund Distribution Claimants defined as follows:

> Any limited partner or shareholder invested in Eligible Securities of any Eligible Hedge Fund as of December 11, 2008 or its successors pursuant to any merger or other business combination or by valid assignment (including secondary market purchasers of such claims), who is entitled under the Stipulation and this FDA POA to share in the disbursement of the Fund Distribution Account. Only those Fund Distribution Claimants who suffered a net loss on their investments in Eligible Securities (determined separately for each Eligible Hedge Fund in which the Fund Distribution Claimant invested), are entitled to a payment from the Fund Distribution Account. Only Fund Distribution Claimants who were limited partners or shareholders as of December 11, 2008, or their successors pursuant to any merger or other business combination or by valid assignment (including secondary market purchasers of such claims), may be entitled to a Disbursement from the Fund Distribution Account. For the avoidance of doubt, any person who purchased an interest in an Eligible Hedge Fund after December 11, 2008, shall receive distributions on account of such interest based on the net equity investment of the person who held such interest as of December 11, 2008. Nothing herein is intended to affect the Loan Agreements or the Claim Participation Agreement.

This definition also applies herein.

3. The Fund Distribution Account ("FDA") is comprised of all funds remaining in the Rye and Tremont Funds after they settled the claims of the Madoff Bankruptcy Trustee ("Trustee"), plus 100% of any SIPC Recovery these Funds receive from that Trustee.

4. A hearing was held on August 8, 2011 to consider whether the Settlement should be granted final approval by the Court. By its Final Judgment and Order of Dismissal with Prejudice Regarding Settlement and Rules 23 and 23.1, dated August 19, 2011, this Court

---

[2] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in the Stipulation of Partial Settlement, dated as of February 23, 2011 (the "Stipulation").

approved the Settlement as fair, reasonable and adequate. Various appeals followed, the last of which was only recently resolved on October 6, 2014.

## DISSEMINATION OF NOTICE AND PROOF OF CLAIM AND RELEASE

5. As more fully described in the Affidavit of Jose C. Fraga Regarding the Mailing of the Notice, Insurance Notice, Plans of Allocation, Proofs of Claim and Publication of the Summary Notice, dated May 4, 2011, and the Supplemental Affidavit of Jose C. Fraga Regarding the Mailing of the Notice, Insurance Notice, Plans of Allocation, Proofs of Claim and Exclusion Requests Received, dated May 25, 2011, GCG mailed (i) *the Notice of Pendency of Consolidated Actions, Motion for Final Approval of Proposed Settlement, Hearing on Proposed Settlement, and Motion for Attorneys' Fees and Expenses* (the "Notice"); (ii) the *Net Settlement Fund Plan of Allocation* and the *Fund Distribution Account Plan of Allocation* (together, "Plans of Allocation"); and (iii) the *Proof of Claim and Release* (the "Proof of Claim" and collectively with the Notice and Plans of the Allocation, the "Claim Packet") to potential Settlement Class Members commencing on April 13, 2011.

6. Pursuant to the Notice Order, GCG Communications, the media division of GCG, caused the *Summary Notice of Pendency of Consolidated Actions, Motion for Final Approval of Proposed Settlement, Hearing on Proposed Settlement and Motion for Attorneys' Fees and Expenses* (the "Summary Notice") to be published on April 15, 2011 in *Investor's Business Daily*.

7. As more fully described in the Affidavit of Jose C. Fraga Regarding the Mailing of the Supplemental Notice, Notice, and Proofs of Claim dated July 29, 2011, pursuant to the Court's June 28, 2011 Order Approving Issuance of Supplemental Notice (the "Supplemental Notice Order"), the Court approved mailing of the *Supplemental Notice of Pendency of*

*Consolidated Actions and Hearing on Motion for Final Approval of Proposed Settlement, Motion for Final Approval of Plans of Allocation and Motion for Attorneys' Fees and Expenses* (the "Supplemental Notice") to the Class.

8.     Pursuant to the Supplemental Notice Order, GCG was responsible for disseminating the Supplemental Notice, the Notice, and an updated Proof of Claim (collectively with the Supplemental Notice and Notice, the "Supplemental Claim Packet"). On June 29, 2011, 5,172 Supplemental Claim Packets were disseminated by first-class mail; 2,844 to potential Settlement Class Members and 2,328 to the names and addresses of brokerage firms, banks, institutions and other nominees listed in GCG's proprietary database of nominees as of that date.

## PROCEDURES FOLLOWED IN PROCESSING FDA CLAIMS

9.     Before processing the FDA claims, GCG created a database dedicated to the FDA by customizing its proprietary database management software to accommodate the specifics of the FDA POA, which included developing various computer programs and screens for entry of Fund Distribution Claimants' identifying and transactional information and developing a proprietary "calculation module" that would calculate the Net Investment and Eligible Hedge Fund Allocation Interest as defined in the FDA POA.

10.    GCG's programming staff is in the process of designing and implementing, and the Quality Assurance team has and will test, the following programs for this administration: (i) data entry screens that store claim information (including all transactional data for each Fund Distribution Claimant); (ii) a calculation program to analyze the transactional data for all claims and calculate each Fund Distribution Claimant's Net Investment based on the FDA POA; (iii) programs to generate various reports throughout and at the conclusion of the administration,

including lists of all eligible and ineligible claims; and (iv) programs that calculate Fund Distribution Claimants' distribution amounts by determining the *pro ration* factor for the FDA, and applying it to the claimants' Net Investment as calculated above.

**Processing the Tremont Data Spreadsheets**

11.  GCG was provided one spreadsheet that contained information regarding Fund Distribution Claimants' contributions and redemptions and the ending balance of the eight Rye Funds for each month from the inception of each Fund through December 31, 2008. GCG also received spreadsheets that contained information regarding the Fund Distribution Claimants' contributions and redemptions and ending balance in each of the nine Tremont Funds through December 1, 2008. Plaintiffs' Settlement Class Counsel ("Class Counsel") also provided GCG with a list of investors in the Eligible Hedge Funds as of December 2008. GCG worked with Class Counsel to determine those investors who are eligible to receive payment from the FDA.

12.  GCG has identified approximately 1,200 accounts invested in the Eligible Hedge Funds for processing and determination pursuant to the FDA POA. In that regard, GCG has already processed and determined 734 claims in connection with the NSF and those same determinations will be used in connection with the FDA (with the exception that the step-up adjustments and swap-related discounts do not apply in the context of the FDA). However, pursuant to the Notice Order and as set forth in the Notice, Fund Distribution Claimants had the option, but were not required, to file a Proof of Claim form in order to be eligible to receive a distribution from the FDA. Therefore, processing and determination of those Fund Distribution Claimants who did not file claim forms in connection with the NSF are currently in progress.

13.  It appears there may be incomplete data for approximately ten accounts out of approximately 1,200. Class Counsel and GCG are working with Tremont in an effort to obtain

additional information. In addition, data for certain other Funds is reported in various foreign currencies that requires GCG to manually convert those currencies into US dollars. GCG has spent a significant amount of time analyzing and preparing the data in these spreadsheets, but has not yet completed this work, which is ongoing.

**Calculation of Net Investment and Eligible Fund Allocation Interest**

14. After GCG has complete investor information for all of the Eligible Hedge Funds and has completed its analysis of that information, GCG will calculate the Net Investment for each FDA claim. In order to do so, first GCG will total all contributions made in a single Fund and will then total all redemptions made from that same Fund. The total contributions less the total redemptions will be the Net Investment for that claim. Pursuant to the FDA POA, there is no netting between Eligible Hedge Funds for the same Fund Distribution Claimant; therefore, the Net Investment is calculated separately for each Eligible Hedge Fund regardless of the number of Eligible Hedge Funds in which a Fund Distribution Claimant invested. Based on the data provided by Tremont, GCG has preliminarily calculated the Net Investment for certain FDA Claims that pertain to investments in the eight Rye Funds.[3] A list of those claim numbers and the preliminary Net Investment amount is attached hereto as Exhibit A.

15. Once GCG has completed the work described above and calculated the Net Investment for each FDA claim, GCG will then calculate the Eligible Hedge Fund Allocated interest for each Eligible Hedge Fund pursuant to the FDA POA.

**Claim Resolution Plan**

16. Unlike Fund Distribution Claimants that submitted Proofs of Claim, Fund Distribution Claimants that did not submit claim forms have not had notice of GCG's

---

[3] These calculations are preliminary based on the work that GCG has performed to date and are subject to change.

determination regarding their claim(s) or an opportunity to raise questions in connection with those determinations.  In order to provide all Fund Distribution Claimants with an opportunity to dispute GCG's determinations as to their claims, Class Counsel has directed GCG to send a letter to each Fund Distribution Claimant (who have not previously filed a Proof of Claim) providing the Net Investment for each Eligible Hedge Fund in which the claimant invested.  These letters will give the Fund Distribution Claimant 30 days to dispute the Net Investment as calculated by GCG.  If the Fund Distribution Claimant does not dispute GCG's determinations within the 30 day period, those determinations will be final.

17. If the Fund Distribution Claimant disputes the Net Investment as calculated by GCG, GCG will review the claim and, in consultation with Class Counsel, will review the necessary data and make a final determination ("Final Determination").  GCG will then notify the Fund Distribution Claimant of the Final Determination.  The Fund Distribution Claimant will have seven days to dispute the Final Determination from the date the Final Determination is mailed.  Any remaining disputed determinations will be presented to the Court for review and determination.

## DISTRIBUTION PLAN FOR THE FUND DISTRIBUTION ACCOUNT

18. Once all Final Determinations have been made, GCG recommends the following Distribution Plan and will undertake the following tasks:  (i) calculate the *pro rata* distribution amounts from the FDA by comparing the Fund Distribution Claimant's Net Investment in each Eligible Hedge Fund to the total Net Investments of all Fund Distribution Claimants in that Eligible Hedge Fund, and then compare this amount to the total dollar value of the FDA allocated to the Eligible Hedge Fund pursuant to the procedures set forth in the FDA POA; (ii) prepare checks and check registers, and mail checks by prepaid first class mail; (iii) issue

replacement checks upon request by payee; and (iv) answer inquiries about claim calculation and checks.

19.     GCG will conduct a distribution (the "Initial Disbursement") of the FDA. GCG suggests, after consultation with Class Counsel, that 95% of the FDA be applied to the Initial Disbursement and the remaining 5% of the FDA be held as a reserve in order to address any unanticipated contingencies such as paying any remaining taxes due on interest earned by the FDA or paying any adjustments to claims for good cause shown, if necessary (the "FDA Reserve"). The FDA Reserve would be increased upon the authority and direction of Class Counsel to the extent that there are unprocessed claims or disputed claims at the time of such distribution.

20.     GCG understands that all procedures performed with respect to the distribution of the FDA in connection with the validity of the FDA claims are subject to the supervision and direction of Class Counsel and the Court. To carry out such orders as the Court may issue with respect to the allocation and distribution of the FDA to Fund Distribution Claimants, GCG will first coordinate with Class Counsel to determine the amount remaining in the FDA after all fees and expenses authorized by this Court have been paid. Next, GCG will calculate the *pro rata* distribution amount for each FDA claim. The Fund Distribution Claimant's calculated *pro rata* share of the FDA will be the Claimant's "Distribution Amount."

21.     Fund Distribution Claimants with distribution amounts that calculate to less than $100 will be paid their full distribution amount ("Claims Paid in Full"), and such Claimants will get no additional payment in subsequent distributions of the FDA.

22.     Fund Distribution Claimants with distribution amounts that calculate to $100 or more will be paid 95% of their distribution amount for then-available funds in the FDA. The

remaining 5% of their payments will be held in the FDA Reserve as described in paragraph 19 above. To the extent the FDA Reserve is not depleted, the remainder will be distributed in the "Subsequent Distribution(s)" of the Fund Distribution Account, described below.

23.     Once the *pro rata* distribution amounts are determined for each FDA claim, entitlement reports applying the $10.00 minimum distribution amount will be run and reviewed to determine who is eligible to receive a distribution from the Fund Distribution Account and in what amount. Next, a check generation report will be run, and compared to the entitlement report. If the results are the same, checks will be printed. If the results are different, the items on the report will be compared and the errors corrected. Check files will be reviewed and compared to the entitlement report prior to printing checks. All check files have footer records that indicate the total number of checks and the total dollar amount of the checks. The footer records will be checked against the entitlement report totals and also against the sum of the detailed record check amounts in the actual file.

24.     GCG will then prepare checks for the cash distribution and registers of such distributions, and send the cash payments by prepaid first class mail,[4] after the list of Fund Distribution Claimants is compared to GCG's internal list of claimants that have been identified as potentially fraudulent filers. Finally, GCG will issue replacement payments for cash distributions upon request by payee, and will respond to inquiries about distribution amounts and Net Investment calculations.

25.     It may be expected that not all of the payments to be distributed to Fund Distribution Claimants will be cashed promptly. In order to encourage Fund Distribution Claimants to promptly cash their distributions and to avoid or reduce future expenses relating to

---

[4] GCG will honor requests for electronic transfers to the best of its ability.

unpaid distributions, all of the distribution checks will bear a notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED WITHIN 120 DAYS AFTER ISSUE DATE."

26. Fund Distribution Claimants who do not cash their distribution checks within the time allotted will irrevocably forfeit all recovery from the FDA for that distribution. The funds allocated to all such stale-dated checks will be available in Subsequent Distributions.

27. It is expected that subsequent distributions will occur as soon as practicable following the Final Order of this Court and following Subsequent Distributions by the Trustee flowing into the FDA. GCG, at the direction of Class Counsel, shall allocate the balance of the FDA, including any funds remaining from the initial disbursement as well as additional amounts provided by the Trustee, to Fund Distribution Claimants in an economical and equitable fashion. Consistent with the FDA POA, Class Counsel shall conduct Subsequent Distributions as many times as is necessary, in a manner consistent with the Plan of Allocation, until each Fund Distribution Claimant has received its Recognized Claim (but no greater than its Recognized Claim) as defined in the FDA POA. Any Authorized Claimant, who fails to cash two distribution checks, will not be eligible to participate in any further Subsequent Distributions.

28. If Class Counsel determines that it is not cost-effective to conduct such additional distributions, or following such additional distributions, any balance still remains in the FDA, Class Counsel will, without further notice to the State Law Subclass and Securities Subclass Members, cause the remaining balance to be disbursed *cy pres* to the American Red Cross and the American Cancer Society.

_____
Stephen J. Cirami

Sworn to before me this
10th day of July, 2015

_____
Notary Public

VANESSA M VIGILANTE
Notary Public, State of New York
No. 01VI6143817
Qualified in Nassau County
Commission Expires April 17, 2018