UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------- x

IN RE TREMONT SECURITIES LAW,
STATE LAW AND INSURANCE
LITIGATION

:
:
:
:
:

Master File No.:
08 Civ. 11117 (TPG)

----------------------------------------------------- x

**JURY TRIAL DEMANDED**

This Document Relates to:  All Actions

:
:
:

"**ECF Case**"

----------------------------------------------------- X


# PLAINTIFFS' SETTLEMENT CLASS COUNSEL'S MEMORANDUM OF LAW IN OPPOSITION TO FUTURESELECT'S MOTION TO CERTIFY FDA SUBCLASSES AND APPOINT SEPARATE FDA SUBCLASS COUNSEL

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

RELEVANT FACTS ............................................................................................................... 3

ARGUMENT ......................................................................................................................... 8

    A.    The Court Has Twice Denied Investor Requests for Subclasses and Should
           Similarly Deny FutureSelect's Request ................................................................. 8

    B.    The Mediation Process Has Ensured the Same Structural Fairness and
           Adequate Representation of Fund Distribution Claimants That
           FutureSelect Requests .......................................................................................... 9

    C.    *In Re Literary Works* Does Not Mandate Court Appointment Of
           Subclasses And No "Fundamental Conflict" Among Fund Distribution
           Claimants Exists ................................................................................................. 10

CONCLUSION ..................................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997)...................................................................................................... 14

*Charron v. Wiener*,
  731 F.3d 241, 253 (2d Cir. 2013),
  *cert denied, sub nom. Suarez v. Charron,*
  134 S. Ct. 1941 (2014)...................................................................................................... 9

*In re Cendant Corp. Sec. Litig.*,
  109 F. Supp. 2d 235 (D.N.J. 2000)
  *aff'd*, 264 F.3d 201 (2001)............................................................................................. 11

*In re Domestic Air Transp. Antitrust Litig.*,
  148 F.R.D. 297 (N.D. Ga. 1993)...................................................................................... 10

*In re Ins. Brokerage Antitrust Litig.*,
  No. 04-5184 (FSH), 2007 WL 542227, 17 (D.N.J. Feb 16, 2007)
  *aff'd,* 579 F.3d 241, 270 (3rd Cir. 2009)....................................................................... 13

*In re Literary Works in Electronic Databases Copyright Litigation*,
  654 F.3d 242 (2011)........................................................................................ 3, 10, 11, 12

*Prefontaine v. Research in Motion Ltd.*,
  No. 11 Civ. 4068(RJS), 2012 WL 104770, 2 (S.D.N.Y. Jan. 5, 2012)..................................... 11

## PRELIMINARY STATEMENT

Plaintiffs' Settlement Class Counsel ("Class Counsel") respectfully submit this memorandum in opposition to *FutureSelect Prime Advisor II LLC, the Merriwell Fund L.P. and Telesis IIW, LLC's*[1] *Motion Concerning the $1.5 Billion Fund Distribution Account (FDA) to [1] Certify FDA Subclasses and [2] Appoint Separate FDA Subclass Counsel* (ECF No. 1076), filed on June 25, 2015 ("FutureSelect's Motion for FDA Subclasses" or "Motion").

FutureSelect's request for the appointment of subclasses in connection with the Fund Distribution Account ("FDA") Plan of Allocation ("POA") ignores the fact that the FDA POA is not a settlement.  Rather, it is a proposal to allocate money received in connection with two long since final settlements -- the Settlement of the Tremont-related claims here (which directly impacted the structure of the FDA and set forth various requirements related to the operation of that account) and the related Madoff Trustee Settlement (the proceeds of which are the principal funding source for the FDA).  Similarly ignored is that the Court twice rejected requests for subclasses (*see* Class Counsel's June 29, 2015 letter to the Court (ECF No. 1078)) and the fact that many of the same issues raised here were raised and disposed of during approval of the Settlement or addressed during the appellate process.  The time for FutureSelect to raise these issues was during the approval process for the Settlement.  Having failed to raise this issue at that

---

[1] FutureSelect Prime Advisor II LLC, the Merriwell Fund L.P. and Telesis IIW, LLC are collectively referred to herein as "FutureSelect."

time (despite having made unrelated objections), FutureSelect is properly foreclosed from raising it now.[2]

FutureSelect wholly disregards the Mediation process and all related submissions and discussions, led by Judge Phillips and Class Counsel -- and that FutureSelect was an active participant in the Mediation.  The Court charged Class Counsel with the responsibility of creating a process designed to allow interested parties and prior objectors an opportunity to advocate their concerns and points of view, and then to work to build as broad a consensus as possible for a Net Settlement Fund ("NSF") and an FDA plan of allocation.  Class Counsel and the Mediator oversaw a process where every interested party and prior objector -- including FutureSelect -- had a full opportunity to discuss their points of view, both in full group sessions and in small group sessions, in calls, meetings and through submissions.  Simply stated, the Mediation process provided the very structural fairness that FutureSelect now argues can only be achieved by subclasses.

Put another way, even if one were to accept the baseless notion that groups of Fund Distribution Claimants required separate court-appointed representation (as opposed to the representation of their choice, which is what occurred during the Mediation), we would end up exactly where we are now -- with an FDA plan of allocation proposed by Class Counsel following a Mediation process involving vigorous advocacy by skilled counsel on behalf of sophisticated clients invested in the various Funds.  The only difference would be that payments

---

[2] Here note that FutureSelect invested only in the Rye Select Broad Market XL Fund, L.P. (the "XL Fund") and Rye Select Broad Market Prime Fund, L.P. (the "Prime Fund") and, thus, should not be understood to have standing to speak for any investor not in those Funds.  In this regard, we note that several Settlement Class Representatives also invested in those Funds as did a number of other participants in the mediation (the "Mediation") of the FDA POA, before retired United States District Judge Layn Phillips ("Judge Phillips" or the "Mediator").

to Fund Distribution Claimants would be unnecessarily delayed and their recovery would be reduced by the additional legal fees charged by each of the subclass counsel.

FutureSelect's reliance on *In re Literary Works in Electronic Databases Copyright Litigation*, 654 F.3d 242 (2011) is also misplaced as that case is factually and procedurally distinct from this litigation in important ways which demonstrate that no fundamental conflicts exist among the Fund Distribution Claimants and subclasses are unnecessary.  Moreover, as described in Class Counsel's recently filed memorandum ("Memorandum in Support of FDA POA") (ECF No. 1089) in support of our motion for approval of the FDA POA and related distribution procedures (the "FDA Approval Motion") (ECF No. 1088), FutureSelect and any other Fund Distribution Claimants may come before the Court to comment on, support or object to the FDA POA in connection with that motion.  For these reasons and those discussed below, the Court should deny FutureSelect's Motion.

## RELEVANT FACTS

As discussed in our Memorandum in Support of FDA POA, following the collapse of Bernard L. Madoff Investment Securities ("BLMIS") in December of 2008, investors in the Rye Funds and Tremont Funds (collectively, the "Rye and Tremont Funds" or "Funds") filed several putative class action and derivative complaints against the Defendants, alleging violations of state and federal law.  On March 26, 2009, the Court entered an order that:  (i) created three separate groups of consolidated actions;[3] (ii) consolidated specific cases within each group; and (iii) assigned a master caption of *In re Tremont Securities Law, State Law and Insurance Litigation,* Master File No. 08 CIV. 11117 (TPG).

During the consolidation process, Madelyn Haines and Paul Zamrowski, the plaintiffs in

---

[3] The three groups were the Securities Actions, the State Law Actions and the Insurance Actions.

*Haines v. Massachusetts Mutual Life Ins. Co.*, 09-cv-5441-TPG (S.D.N.Y. July 7, 2009), argued

that because Lead Plaintiffs did not invest in the Tremont Market Neutral Fund, L.P. and

Tremont Market Neutral Fund II, L.P. (collectively, the "Tremont Market Neutral Funds"), they

lacked the "undivided loyalty" necessary to negotiate a settlement with the Defendants on behalf

of those Funds and, thus, subclasses of investors were necessary. *Haines v. Massachusetts*

*Mutual Life Ins. Co.*, 09-cv-5441-TPG (S.D.N.Y. July 7, 2009) (ECF No. 7 at 6, 24). In

opposition, Lead Plaintiffs argued that they properly represented absent Class Members and that

subclasses were unnecessary. ECF No. 236 at 23, 25, 26 ("Meyer should not be appointed lead

plaintiff for a class of investors in the Tremont [Market Neutral] Funds, because the class here

already covers those investors, and their interests are adequately being protected by Lead

Plaintiffs"). The Court agreed with Lead Plaintiffs and consolidated the *Haines* action case with

the above-captioned actions (the "Actions") without appointing any subclasses, thus rejecting the

argument that Lead Plaintiffs did not adequately represent the Class. ECF No. 314.

The parties reached an agreement in principle to settle the Actions on March 18, 2010.

On May 4, 2011, Class Counsel filed their motions seeking approval of the Settlement and

proposed plans of allocation. The Settlement of the Actions created two separate funds

providing recovery for eligible investors in the Rye and Tremont Funds. The first of the two

Settlement funds, the NSF, is a class action settlement fund available only to Class Members,

and the second is the FDA, available to the limited partners or shareholders of the eligible Rye

and Tremont Funds or their successors pursuant to any merger or other business combination or

by valid assignment. Stipulation ¶1.53, ¶4; ¶1.18.

Sixteen groups of investors filed oppositions to the Settlement and proposed plans of

allocation. ECF Nos. 459; 462; 463; 464; 465; 468; 470; 472; 478; 481; 486; 489; 490; 491;

568-6.[4]  Certain members of those groups opted out of the NSF and a number of groups argued

the Court was required to appoint subclasses of investors based upon the different Funds.  *See*

ECF No. 604 at 8-9 (stating that limited partners in the Rye and Tremont Funds had a right to

object to the Settlement even if they opted out of the NSF).  While FutureSelect objected to the

Settlement at that time, it did not argue in its objection that subclasses were required, or that the

FDA plan of allocation proposed at that time was unfair.  ECF No. 459 (stating its objections and

joining the objection of another Fund Distribution Claimant (ECF No. 462)).  This fact alone is

fatal to the FutureSelect application.

One group of objectors to the Settlement consisted of three banks that were Swap

Counterparties[5] with the XL Fund.  Under the NSF POA, the claims of Swap Counterparties

were discounted by 99%.  ECF No. 988-1 at 3.  This group argued that Settlement Class

Representatives and Lead Plaintiffs did not adequately represent the interests of Swap

Counterparties because the 99% discount rendered their interests "fundamentally antagonistic."

ECF No. 481 at 13-15.  Another objector who invested in the XL Fund and Rye Select Broad

Market Fund, L.P. ("Rye Onshore") claimed that subclasses were necessary because Class

Counsel could not adequately represent all of the various Funds due to intra-class conflicts.  ECF

No. 489 at 25-29.  Two other objectors joined in this opposition, one who invested in the XL

Fund (ECF No. 490) and one who invested in the Prime Fund (ECF No. 491).  Finally, Madelyn

Haines and Paul Zamrowski renewed their arguments regarding subclasses and on that basis,

among others, objected to the Settlement.  ECF no. 568-6.  Haines and Zamrowski argued that

---

[4] We note that not all of the oppositions were filed via ECF.

[5] The NSF defines a "Swap Counterparty" as "a party that entered into a swap transaction or similar arrangement with any of the Rye Funds or Tremont Funds in order to provide said Funds with a leveraged return."  ECF No. 988-1 at 3.

intra-class conflicts prevented the Court from approving the proposed Settlement. *See* ECF No. 1078-2.

The Court held hearings on June 1, 2011 and August 8, 2011 regarding approval of the Settlement, the plans of allocation and the fee and expense application, and heard from several of the parties who filed oppositions, including those who requested subclasses. On August 19, 2011, the Court rejected the arguments of the objectors that intra-class conflicts existed which prevented Settlement Class Representatives and Lead Plaintiffs from adequately representing the Class, and approved the Settlement Class *without appointing subclasses*. ECF No. 604.[6]

Following the Court's approval of the Settlement, various objectors filed appeals. In April 2014, Class Counsel contacted persons who had objected to the Settlement or appeared at the Fairness Hearing, as well as other persons expressing a desire to participate post-Hearing,[7] provided those individuals with materials relating to the plans of allocation and solicited proposed plans (or related commentary) in advance of the two-day Mediation[8] that would take place in late July 2014. ECF No. 989 at ¶11. Class Counsel received submissions from eleven groups of investors, each of which raised various issues concerning the plans of allocation. After reviewing and analyzing those initial submissions, Class Counsel invited supplemental submissions to ensure a more complete discussion.

---

[6] At the August 8, 2011 hearing, Class Counsel agreed with the Court to postpone consideration and resolution of the plans of allocation until a later date and agreed with the Court to work to create as broad a consensus as possible with respect to the relevant plans of allocation. *See* Hr'g Tr. 36, 66-67, Aug. 8, 2011, ECF No. 599.

[7] Parties which expressed a desire to participate in the Mediation, even those who opted out of the NSF such as FutureSelect, were permitted to attend the Mediation and advocate for their positions regarding the various plans of allocation.

[8] For a full discussion of the Mediation process, we respectfully refer the Court to our Memorandum in Support of FDA POA. ECF No. 1089 at 18-21.

6

Investors in virtually all of the eligible Rye and Tremont Funds attended the July 2014 Mediation, including investors who *only* invested in the (i) Tremont Funds, (ii) the Prime Fund or (iii) the XL Fund.  FutureSelect invested in just two of those Funds, the Prime Fund and the XL Fund.  While there were a number of participants that also invested in those two Funds, it is important to note that two of the Settlement Class Representatives, Yvette Finkelstein and Eastham Capital Appreciation Fund, L.P., only invested in the Prime Fund, and another Settlement Class Representative, Arthur Lange,[9] had interests in only the Prime and XL Funds -- providing every assurance of fair and adequate representation of all Fund Distribution Claimants in the process.  After the July 2014 Mediation, Class Counsel held additional telephone discussions and in-person meetings with investors, both as a group and individually, and conducted an additional Mediation session on May 8, 2015.

Through the various discussions, meetings, vigorous negotiations among sophisticated counsel and investors and the extensive Mediation process, Class Counsel ultimately obtained broad-based support for the FDA POA[10] of the Rye and Tremont Fund investors representing the vast majority of the aggregate net ownership interests in those Funds.  ECF No. 1090 at ¶9.  In light of that support, Class Counsel subsequently filed their FDA Approval Motion.  In connection with that motion, Fund Distribution Claimants, including FutureSelect, will have the right to object to the FDA POA, propose alternatives and have a full opportunity to voice their objections at the upcoming hearing before the Court.

---

[9] Arthur Lange holds these interests personally and under the Arthur E. Lange Revocable Trust.

[10] The proposed FDA POA is discussed in depth in the Memorandum in Support of FDA POA. ECF No. 1089.

## ARGUMENT

### A. The Court Has Twice Denied Investor Requests for Subclasses and Should Similarly Deny FutureSelect's Request

FutureSelect's belated request for FDA subclasses is the same request that was twice rejected in this litigation, in 2009 and 2011. In the first instance, in connection consolidation of the Actions, Class Members Haines and Zamrowski moved to modify the Class definition, arguing that Lead Plaintiffs and their counsel did not adequately represent the Class Members who invested in the Tremont Market Neutral Funds. *Haines v. Massachusetts Mutual Life Ins. Co.*, 09-cv-5441-TPG (S.D.N.Y. July 7, 2009) (ECF No. 7 at 6, 24). The Court consolidated the case with the Actions without appointing any subclasses, thus rejecting the argument that Lead Plaintiffs did not adequately represent the Class. ECF No. 314.

In addition, as discussed above, several investors who objected to the Settlement[11] argued that the Court was required to appoint subclasses because of intra-class conflicts among investors in the various Funds. ECF No. 481 at 13-15; ECF No. 489 at 28-29; ECF No. 490; ECF No. 491; and ECF No. 568-6. The Court again rejected that argument, and approved the Settlement of the Actions without appointing subclasses. ECF No. 604. Just as the Court previously found that subclasses were unnecessary during the consolidation phase and Settlement approval process, the Court should deny FutureSelect's request for subclasses here. No intractable conflict among Class Members existed previously and FutureSelect has not pointed to any facts demonstrating that an intractable conflict among Fund Distribution Claimants has arisen since.

Equally significant is the fact that FutureSelect, an objector to the Settlement, did not include in its objection to the Settlement any request for the appointment of subclasses, though it

---

[11] We note that limited partners in the Rye and Tremont Funds had a right to object to the Settlement even if they opted out of the NSF. *See* ECF No. 604 at 8-9

certainly was entitled to do so.  FutureSelect also failed to take any appeal of the denial of its

objections -- the denial of which is long since final in all respects.  FutureSelect had its chance to

make these objections and having failed to do so in connection with the Settlement, it may not

make them here.

**B.   The Mediation Process Has Ensured the Same Structural Fairness and Adequate Representation of Fund Distribution Claimants That FutureSelect Requests**

FutureSelect's request for subclasses also rings hollow, as each of the subclasses it

requests were well-represented during the Mediation.  Indeed, the Mediation was attended by

investors who invested *only* in the XL Fund, the Prime Fund and the Tremont Funds, as well as

investors and groups of investors that invested in multiple Funds.  In fact, two of the Settlement

Class Representatives, Yvette Finkelstein and Eastham Capital Appreciation Fund, L.P., only

invested in the Prime Fund, and Settlement Class Representative Arthur Lange had interests in

only the Prime and XL Funds.

The fact that investors -- including the Settlement Class Representatives -- who attended

the Mediation invested in a single Rye Fund or group of Tremont Funds further ensures that

investors in those Funds were adequately represented.  FutureSelect's argument that these

investors merely advocated for their own personal benefit has no merit, as those investors could

only increase their recovery by advocating for the interests of all investors in their respective

Fund.  *See* ECF No. 1077 at 3.  FutureSelect has failed to point to any evidence to the contrary.

*See Charron v. Wiener*, 731 F.3d 241, 253 (2d Cir. 2013) (citing *Literary Works*), *cert denied*,

*sub nom. Suarez v. Charron,* 134 S. Ct. 1941 (2014) (finding subclasses unnecessary where there

was not strong evidence of inadequate representation).

Even if one were to accept FutureSelect's baseless notion that groups of Fund

Distribution Claimants required separate court-appointed representation (as opposed to the

9

representation of their choice, which is what occurred during the Mediation), we would simply end up exactly where we are now.  Were subclasses appointed, the following process would presumably ensue:  (i) Fund Distribution Claimants in each of the Funds would retain counsel and seek to have that counsel appointed by the Court -- presumably based on size of the relative investment in each Fund; (ii) counsel would develop a procedure for the submission of proposals and for group meetings regarding the proposed plans of allocation; (iii) individual and group discussions would take place; (iv) the parties would gather and attempt to mediate a consensus proposal; and (v) any party who was not satisfied with the consensus proposal would file an opposition with the Court at the appropriate time.  This is the exact process that Class Counsel described in its Allocation Protocol (ECF No. 1098-2) (other than the formality of actual subclasses) and the exact process followed in the Mediation and related meetings, calls and submissions used to develop the proposed FDA POA.  *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 341 (N.D. Ga. 1993) (denying a request for subclasses where the objector failed to prove inadequate representation or show the need for a subclass because the objector "availed itself of the objection process and vigorously represented the interest of the subclass that it seeks to certify" and where a subclass designation "would not improve [the objector's] position with regard to allocation").  If the Court appointed subclasses, the only difference would be that payments to Fund Distribution Claimants would be unduly delayed and their recovery would be reduced by the additional legal fees charged by each of the subclass counsel.

## C.  *In Re Literary Works* Does Not Mandate Court Appointment Of Subclasses And No "Fundamental Conflict" Among Fund Distribution Claimants Exists

In its Motion, FutureSelect primarily relies on the class certification decision in *Literary Works*, 654 F.3d at 242.  In that case, involving varying levels of copyright protection applicable to writings authored by class members, the plaintiffs and defendants reached a settlement

10

dividing claims into three categories, with the weakest category of claims receiving the least compensation. *Id.* at 245, 246. The Second Circuit found that the settlement violated Federal Rule of Civil Procedure 23(a)(4) because none of the representative plaintiffs adequately represented class members with the weakest category of claims. *Id.* at 254.

FutureSelect improperly analogizes the facts of *Literary Works* to the facts here. First, in *Literary Works*, the court addressed the issue of class certification at the settlement phase, whereas here, the Court approved the Settlement almost four years ago. *Id.* at 249. The distinct procedural posture of this litigation renders *Literary Works* inapplicable and demonstrates that FutureSelect's request is completely untimely. *See Prefontaine v. Research in Motion Ltd.*, No. 11 Civ. 4068(RJS), 2012 WL 104770, at *2 (S.D.N.Y. Jan. 5, 2012) (distinguishing *Literary Works* on the basis of its distinct procedural posture and finding no conflicts existed among class members and refusing to appoint subclasses); *see also In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235 (D.N.J. 2000) *aff'd*, 264 F.3d 201 (2001) (rejecting subclasses and noting that "[w]hat these objectors who seek subclasses fail to acknowledge is that this action has been proceeding as a class action for the past 20 months").

Moreover, *Literary Works* dealt with the issue of the adequacy of representation in the context of the allocation of a class action settlement fund, and the Second Circuit's holding was founded upon the requirements of Federal Rule of Civil Procedure 23. *Literary Works*, 654 F.3d at 254. Contrary to *Literary Works*, Federal Rule of Civil Procedure 23 does not apply to the FDA portion of the Settlement, as the Court never certified a class of Fund Distribution Claimants, nor was it required to do so. The only classes certified under Rule 23 in the Actions pertained to the NSF, from which FutureSelect excluded itself. *See* ECF No. 604. Even if Federal Rule of Civil Procedure 23 applied, the requirement of adequate representation was

clearly fulfilled by Settlement Class Representatives and Lead Plaintiffs as well as the Mediation process, as demonstrated above.  Thus, *Literary Works* does not require subclasses for the allocation of the FDA among Fund Distribution Claimants.

FutureSelect also mistakenly argues that because some investors recover more than others under the proposed FDA POA, there is a "fundamental conflict" among Fund Distribution Claimants.  ECF No. 1077 at 6.  However, the Second Circuit explicitly rejected this argument in *Literary Works* when it stated that the smaller recovery for the weakest category of claims was not evidence of inadequate representation.  *Literary Works*, 654 F.3d at 253.  The Second Circuit stated that these claims were clearly worth less than the other categories of claims, but found there was inadequate representation to fully evaluate the relative value of the weaker category of claims.  *Id*.  Here, however, Fund Distribution Claimants who *only* had investments in the Prime Fund, the XL Fund and the Tremont Funds attended the Mediation.  Throughout the Mediation process, these Claimants advocated their positions and sought to direct as much of the FDA as possible to their respective Fund in order to maximize their recovery.

FutureSelect also misstates the difference in recovery that Fund Distribution Claimants receive under the proposed FDA POA.[12]  FutureSelect's claim that the three Rye Funds in its proposed Category A subclass (Rye Onshore, Rye Offshore[13] and Rye Insurance[14]) receive 96.8% of the FDA is misleading and misstates how the proposed FDA POA allocates the funds

---

[12] As to FutureSelect's contention that Class Counsel mischaracterized the relative levels of recovery, we note that Class Counsel's statements were always oriented toward receipt by each Fund Distribution Claimant of its fair share based upon the relative equities and the contribution to the FDA of the respective Funds, which is fully consistent with the proposed FDA POA here. At no time did Class Counsel ever state that all Fund Distribution Claimants would somehow receive an equal share in the FDA as FutureSelect seems to imply.

[13] Rye Select Broad Market Portfolio Limited.

[14] Rye Select Broad Marker Insurance Fund, L.P.

in the FDA.  *See* ECF No. 1077 at 6-7.  In making this argument, FutureSelect ignores the fact

that the proposed FDA POA gives Fund Distribution Claimants credit for contributions of assets

into the FDA by the Funds in which they were invested, credit for all Cross Investments by the

Funds in which they were invested and a credit for any contribution to the Trustee Settlement.

The quoted percentages do not take into account the value of the credit for Cross Investments

among the Rye and Tremont Funds.  ECF No. 1089-1 at 7.  These Cross Investments are

substantial -- for example, the XL Fund and the Prime Fund, among others, have net Cross

Investments in Rye Onshore; the Tremont Funds are all invested in the Rye Funds through Cross

Investments and, thus, all of their Madoff exposure comes through Cross Investments; and the

Prime Fund is the largest investor in the XL Fund.

   The simple fact is that investors in each of the Rye Funds made very different types of

investments with very different risk profiles.  The nature of those investments drove the Trustee

Settlement which, in turn, defined the assets each of the Rye Funds contributed into the FDA, as

required by the long-since approved FDA structure.  Put another way, all the FDA POA really

does is create a process to equitably distribute assets that were determined elsewhere (for the

most part, in the Trustee Settlement) in a manner consistent with the requirements of the FDA

structure (approved as part of the Settlement).  *See In re Ins. Brokerage Antitrust Litig.*, No. 04-

5184 (FSH), 2007 WL 542227, at *17, 18 (D.N.J. Feb 16, 2007) (rejecting a request for

subclasses and finding no intra-class conflicts existed where the only evidence offered in support

was that class members' recoveries differed under the plan of allocation") *aff'd,* 579 F.3d 241,

270-272 (3rd Cir. 2009).  Thus, unlike the settlement in *Literary Works*, the FDA POA is not a

settlement, it does not seek to determine who may or may not participate, and it does not seek to

determine the structure of the FDA or the assets contributed thereto.  The underlying Settlement

13

determined the FDA structure, defines Eligible Hedge Funds and Fund Distribution Claimants, among other things, and clearly describes the structure and operation of the FDA. *See Charron*, 731 F.3d at 251-53 (citing *Literary Works*) (finding subclasses unnecessary and no fundamental conflict among class members where "a settlement does not, by its terms, exclude any [claimant] from the claims process").

Nor is this case similar to *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997).  In *Amchem*, the settlement provided no recovery for certain claims and covered plaintiffs with distinct injuries (those with asbestos-related injuries and those with asbestos exposure only) in a context where the plaintiffs had no opportunity to speak for themselves.  *Amchem*, 521 U.S. at 604, 610-11.  Here, Fund Distribution Claimants have had numerous opportunities to make their voices heard during the Mediation, and may still object to the proposed FDA POA.

## CONCLUSION

For the foregoing reasons, the Court should reject FutureSelect's request for subclasses and deny its Motion in its entirety.

14

Dated: July 13, 2015
        New York, New York

**ENTWISTLE & CAPPUCCI LLP**

*/s/ Andrew J. Entwistle*
Andrew J. Entwistle
Arthur V. Nealon
Robert N. Cappucci
280 Park Avenue, 26th Floor West
New York, NY  10017
(212) 894-7200
(212) 894-7272 (fax)
aentwistle@entwistle-law.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**

*/s/ Reed R. Kathrein*
Reed R. Kathrein
Lee Gordon
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
(510) 725-3000
(510) 725-3001 (fax)
reed@hbsslaw.com

*Co-Lead Counsel for the State Law Actions*

**BERNSTEIN LIEBHARD LLP**

*/s/ Jeffrey M. Haber*
Jeffrey M. Haber
Stephanie M. Beige
10 East 40th Street
New York, NY  10016
(212) 779-1414
(212) 779-3218 (fax)
haber@bernlieb.com

*Lead Counsel for the Securities Actions*