UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE TREMONT SECURITIES LAW,   Master File No.
STATE LAW AND INSURANCE         08 Civ. 11117 (TPG)
LITIGATION

ECF Case

_____/

## FUTURESELECT FUNDS' REPLY ON MOTION TO CERTIFY SUBCLASSES AND APPOINT SEPARATE FDA SUBCLASS COUNSEL

FutureSelect here replies to Class Counsel's opposition to the motion under *In re Literary Works*, 654 F.3d 242 (2d Cir. 2011) to [1] Certify Subclasses and [2] Appoint Separate Counsel for those Subclasses ("*Literary Works* Motion").

The *Literary Works* Motion—which is based on the Second Circuit's requirement that subclasses with a "fundamental conflict" be separately represented—would not be necessary if the Fund Distribution Account ("FDA") were to be divided equitably, *pro rata* among all net losers in the defendant Tremont funds. That is, there would be no "fundamental conflict" if all net loser investors in the Tremont funds were to receive their *pro rata* share of the FDA. That is the allocation proposed in the "INVESTOR POA" (ECF 1083-1) now pending before the Court.

The *Literary Works* Motion would also not be necessary if Class Counsel had not misrepresented to this Court that he would himself pursue an equitable "fair share" distribution among net loser investors. That is, if Class Counsel's promises that "every limited partner in the Rye funds will receive their share of what's left after the Madoff trustee litigation" (ECF 552 (6/1/11) Tr. at 29:16-19) and that "you will get your share of settlement money, which will flow to you as long as you're a net loser" (*id.* at 29:22-25) actually proved true, there would be no need for the subclasses required under *Literary Works*.

But that is not what happened. In his recently-submitted FORTRESS POA (ECF 1089-

1

1), Class Counsel proposes to treat *differently* Subclasses of Tremont investors who were *equally* impacted by Tremont's gross negligence. Notwithstanding that every Tremont investor lost money because of the *same* alleged malfeasance on the part of Tremont, Class Counsel has abandoned his promise of equal treatment and *created* a fundamental conflict. Thus, Class Counsel now proposes the FORTRESS POA in which particular Subclasses of Tremont investors stand to gain more than 10 times the recovery of other investors like FutureSelect.

That proposal *confirms* the "fundamental conflict" present here: whether the FDA will be divided *pro rata* among all net loser investors (per the INVESTORS POA), or on a "fund by fund" basis depending upon the Subclass of funds to which investors belong (per the FORTRESS POA). Class Counsel's proposal of widely disparate treatment, and his admission *now* that different Subclasses of investors "in each of the Rye Funds made very different types of investments with very different risk profiles" (Opp. at 13) underscore the need for separate counsel to argue the allocation implications of these fundamental differences.

Class Counsel's variety pack of arguments designed to avoid *Literary Works*—including standing, waiver, harmless error or even, improbably, that this class action is no longer subject to the Federal Rules of Civil Procedure—do nothing to diminish the fundamental conflict requiring grant of this Motion. FutureSelect respectfully requests—if the Court is not prepared to adopt an equitable, *pro rata* allocation of the FDA consistent with the INVESTOR POA and eliminate fundamentally conflicting interests—that this *Literary Works* Motion be granted.

## ARGUMENT

The essential holding of *Literary Works* is that "[o]nly the creation of sub-classes, and the advocacy of an attorney representing each subclass, can ensure that the interests of that particular subgroup are in fact adequately represented." *Literary Works*, 654 F.3d at 252. This abiding

2

truth is undimmed by Class Counsel's battery of disingenuous and conflicting arguments:

I.    *Literary Works* Applies to <u>Allocations</u> as Well as Settlements

Class Counsel first argues that the *Literary Works* Motion is inapt because "the FDA POA is not a settlement" but instead a "proposal to allocate" money received in settlement. Opp. at 1. This is nonsense, at law and in logic.

*Literary Works* itself raised an <u>allocation</u> issue and not a <u>settlement</u> issue. That is, in *Literary Works*, the Second Circuit considered a settlement that had already been approved by the trial court, exactly as here. *Literary Works*, 654 F.3d at 247. At issue, as here, was whether subclasses were adequately represented in the determination of the <u>allocation</u> of proceeds pursuant to a settlement. When the Second Circuit asked how "the value of any subgroup of claims be properly assessed without independent counsel pressing its most compelling case" and concluded that <u>it could not,</u> its concern was not overall fairness of the <u>settlement,</u> but of the <u>allocation</u> among Subclasses. *Id.* at 253,

Accordingly, at law, *Literary Works* applies with equal force to <u>allocations</u> of settlement monies as to the settlements themselves. *See, e.g., See* 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 3.31 (4th ed. 2002) ("When the class members . . . have potential conflicts regarding the nature of the relief or the division of a monetary award, the court may avoid the potential conflict by creating subclasses."); *Torres v. Toback, Bernstein & Reiss LLP*, 2014 WL 988480 (E.D.N.Y. Mar. 14, 2014), at *8 (Report and Recommendation adopted in relevant part by *Torres v. Toback, Bernstein & Reiss LLP*, 2014 WL 1330957 (E.D.N.Y. March 31, 2014) ("[T]he court's decision was motivated by a concern that the proposed settlements award implicated '<u>essential allocation decisions</u>,' and that without the benefit of independent representation for each subclass, these decisions could not be made fairly."); *Safeco Ins. Co. of*

*Am. v. Am. Intern. Group, Inc.*, 710 F.3d 754 (7th Cir. 2013) ("Representation of a class by one plaintiff or one group of plaintiffs is inadequate under Fed. R. Civ. P. 23(a)(4), (g)(4) if there is a potential dispute between factions within the class <u>over allocation of settlement proceeds</u>.") (emphases added).

These decisions make sense. The allocation decisions are <u>more</u> vital to Subclasses, and Class Counsel cannot avoid *Literary Works* scrutiny simply by segregating the Settlement and "essential allocation decisions." *Literary Works* applies.

## II.     *Literary Works* Applies to the <u>Fundamental Conflict</u> in Allocations Here

Not only are *Literary Works'* protections applicable to allocations generally, they are applicable to the "fundamental conflict" among Subclasses of Tremont investors here in determining an appropriate allocation of the FDA.

While broadly declaring that "no fundamental conflicts exist among the Fund Distribution Claimants" (Opp. at 3), Class Counsel admits the *factual bases* that create the fundamental conflict. Class Counsel concedes that "investors in each of the Rye Funds made <u>very different types of investments</u> with <u>very different risk profiles</u>," and describes the differing assets that each of the Rye Funds contributed into the FDA or to the Trustee Settlements or the varying "credit for Cross Investments" to which different funds are entitled. Opp. at 13.[1] Those facts account for why Class Counsel proposes vastly different allocations to different Tremont investors.

But those same facts describe why there is a fundamental conflict among Subclasses of Tremont investors. "It is axiomatic that a putative representative cannot adequately protect the

---

[1] Whether different Tremont investments actually had "different risk profiles" (Opp. at 13) is subject to debate that would start with what "different risk profiles" even means. However, to the extent Class Counsel argues that there are meaningful differences among Subclasses of Tremont investors that impact to what they are entitled under the FDA, he is confirming exactly the facts that trigger *Literary Works*.

class if his interests are <u>antagonistic to or in conflict with</u> the objectives of those he purports to represent," *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 102 (E.D.N.Y. 2012) (quoting 7A Charles Alan Wright et al., <u>Federal Practice and Procedure</u> § 1768 (3d ed. 2011)), which is what happens when investors argue about how different investment types, contributions to settlement, and cross investments should increase their share, and decrease that of other investors. The conflict is inherent and fundamental. *See also Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) ("[A]bsent class members will suffer if their representative is <u>preoccupied with defenses unique to it</u>."); *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000) ("[A] class cannot be certified when its members have opposing interests or when it consists of members who <u>benefit from the same acts alleged to be harmful to other members of the class</u>.") (emphases added).

Class Counsel's various attempts to distinguish or minimize *Literary Works* range from garden variety diversion to full-on hubris. *First*, that "the FDA POA is not a settlement" (Opp. at 13) is irrelevant as there is no meaningful distinction between a settlement and an allocation of settlement proceeds. *See Literary Works*, *supra*. *Second*, it is not the *fact* that "some investors recover more than others" that triggers the need for Subclass representation. Opp. at 12. Both in *Literary Works* and here, it is that the <u>extent</u> to which different, conflicted Subclasses recover different amounts that requires independent counsel in determining how much different Subclasses will recover. *Finally*, Class Counsel's claim that "Federal Rule of Civil Procedure 23 does not apply to the FDA portion of the Settlement" (Opp. at 11) is inconsistent with his own actions, the Settlement of the case, and his application for attorney fees. Class Counsel only *exists* as a function of Rule 23—he is not entitled to declare without authority or precedent when and to what portions of these proceedings the Federal Rules apply.

### III. The Court Has <u>Never</u> Denied a *Literary Works* Request for Subclasses and FutureSelect is Not "Foreclosed" From Making One

Class Counsel next claims that the *Literary Works* Motion has already been "rejected" twice in connection with the Settlement of this action. Opp. at 1, 8 (citing ECF 7, 481, 489, 490, 491, 568-6). That is false and, in fact, impossible.

This Court has never had *Literary Works* briefed or argued, and never had a request for Subclasses pursuant to it. All briefing and hearings concerning the Settlement occurred *prior* to the August 11, 2011 decision in *In re Literary Works*, in some cases *years* before the decision. *See* ECF 7, 481, 489, 490, 491, 568-6 (proceedings occurring prior to August 11, 2011). Accordingly, this Court has *never* denied a request for subclasses under *Literary Works*, nor commented on the issue at bar here: whether allocation interests among different Subclasses of Tremont investors require, under *Literary Works*, the appointment of separate counsel.[2]

Nor was the "time for FutureSelect to raise these issues . . . during the approval process for the Settlement." Opp. at 1-2. Class Counsel's suggestion that FutureSelect is "foreclosed from raising it now" (*id.*) is not only wrong as a matter of law because he just filed his proposed FORTRESS POA that differentiates among Tremont investors, but because it expressly contradicts his representations to the Court.

FutureSelect opted out of the Settlement and, as opt-outs, were formally and repeatedly

---

[2] Class Counsel's citations do not suggest otherwise. EFC No. 490 and 491 are not challenges to the adequacy of representation, and ECF 568 does not even mention adequacy. The balance of the objections, in addition to being made without the benefit of the Second Circuit's direction in *Literary Works*, do not concern "fundamental conflicts" related to whether investors can participate in the FDA at all or else go to deficiencies in the foundational pleadings in the case. *See, e.g.*, ECF No. 7, *Hanes v. Massachusetts Mutual Life Ins. Co.*, 09-cv-5441-TPG (S.D.N.Y. July 7, 2009) (challenging deficiencies in the lead plaintiff and counsel's initial application having nothing to do with fundamental conflicts in allocation of the FDA); ECF No. 481 and 489 (noting class differences unrelated to the "fundamental conflict" among net loser recovery and net loser *fund* recovery).

told that they had no standing to object to the Settlement. That is:

- *The Settlement notice prohibited objection for opt-outs.* See Notice Re: Settlement, Item 15 (ECF 127-2) ("How Do I Exclude Myself From The Settlement? . . . If you ask to be excluded, . . . <u>you cannot object to the settlement</u>.").

- *Class Counsel repeatedly argued that FutureSelect had no standing to object to the Settlement.* See, e.g., ECF 552 (6/1/11 Tr.) at 48:1-3 ("MR. ENTWISTLE: . . . Each of those have all sought exclusion from the settlement and, as a result, have no standing to object to the settlement."); *Id.* at 48:23-24 ("MR. ENTWISTLE: . . . "[N]o excluded objector has standing to make an objection to the settlement.").

Class Counsel cannot be heard to argue *both* that FutureSelect has no right to object *and* that the failure to make an objection until now waives its right to object.

Moreover, the need for subclasses can arise at any point in a class action and "the Court has the right to require subclassing if fundamental conflicts do in fact arise . . . Subclasses can be created after an initial grant of class certification," *Natchitoches Parish Hosp. Serv. Dist. v. Tyco Internat'l, Ltd.*, 247 F.R.D. 253, 269 (D. Mass. 2008), and "may be later addressed by the creation of subclasses." *In re Miller Indus., Inc. Sec. Litig.*, 186 F.R.D. 680, 687 (N.D. Ga. 1999). *See also In re Orthopedic Bone Screw Products Liab. Litig.*, 176 F.R.D. 158, 176 (E.D. Pa. 1997) (noting that the court could either create subclasses <u>at the time of distribution</u> or decertify the class at that point).[3]

---

[3] Additionally, and regardless of when the need for Subclasses arose, the "distinct procedural posture of this litigation" certainly does not preclude the Court from evaluating *Literary Works*, as Class Counsel suggests. Opp. at 11. Class Counsel's cases confirm as much. *Prefontaine v. Research in Motion Ltd.*, 2012 WL 104770 (S.D.N.Y. Jan 5, 2012) does not prohibit a *Literary Works* analysis at the allocation stage, but instead holds that an in-depth analysis of adequacy is not appropriate <u>at the outset</u> when selecting a lead plaintiff because "only a preliminary showing of adequacy is required." *Id* at *2. The Court actually suggested that it would be appropriate to defer the issue until later, as in this case, when "subclasses or separate representatives could be appointed, if necessary, as the litigation progresses." *Id.*

Accordingly, even if the Court *had* determined—based on facts before it in 2009 or 2011—that no subclasses were required *at that point*, it is permitted (and, in fact, obliged) to revisit the issue upon the demonstration of a fundamental conflict among Subclasses.

### IV. Class Counsel Has <u>Created</u> the Need for *Literary Works* Subclasses

Relatedly, Class Counsel's claim that a request for subclasses was "twice rejected in this litigation in 2009 and 2011" (Opp. at 8) ignores an essential fact: by proposing <u>in 2015</u> to treat similarly situated litigants differently, Class Counsel has *created* a fundamental conflict and the corresponding need for separate Subclasses, separately represented.

Subclasses were not inherently necessary under *Literary Works* because, based on Class Counsel's misrepresentations in securing approval for the Settlement, all net loser investors were going to get "their share" of the FDA, *including the proceeds of the Madoff trustee litigation*. Thus, Class Counsel claimed:

- "MR. ENTWISTLE: . . . <u>[E]very limited partner in the Rye funds will receive their share of what's left after the Madoff trustee litigation is finished</u> and the winding up process is completed." ECF 552 (6/1/11) Tr. at 29:16-19.

- "MR. ENTWISTLE: . . . So the direct limited partners in the settling funds, the Rye Funds, <u>will receive their share from both accounts</u>." *Id.* at 30:6-7.

- "MR. ENTWISTLE: . . .<u>[I]f you are a net loser</u> and you were an investor or a limited partners in the funds, <u>you will get your share of settlement money</u>, which will flow to you as long as you're a net loser." *Id.* at 29:22-25.

- "THE COURT: . . . In other words, <u>the members of the class are people who were</u>

---

*In re Cendant Corp. Securities Litigation*, 109 F. Supp.2d 235 (D.N.J. 2000) simply has no application, as Class Counsel is merely citing <u>class counsel's</u> position and not the opinion of the Court. The Court gave no apparent weight to length of time, and certainly expressed no opinion that a *Literary Works* analysis is procedurally barred here.

losers? MR. ENTWISTLE: Losers, that's correct, your Honor." *Id.* at 25:23-25. Had Class Counsel honored these representations made to the Court in securing Settlement and proposed to divide the FDA equitably and *pro rata* among all "net losers" and "every limited partner," there would be no "fundamental conflict" under *Literary Works*.

Instead, however, beginning in 2014, Class Counsel began to champion a different approach, an approach suggested by (and greatly benefitting) Fortress. The resulting "FORTRESS POA" (ECF 1089-1) would allocate nearly 95% of the FDA to investor interests in Portfolio and Broad Market for the benefit, principally, of Fortress. *See* Fortress POA (ECF 1089-1 at 5). Investors in the remaining 15 funds—*including investors like FutureSelect who are actual victims that actually lost hundreds of millions of dollars*—would divide some 5% of the FDA. *Id.*

Class Counsel's shift from a *pro rata* approach on behalf of all net losers to a fund-by-fund approach is exactly the "intractable conflict [that] has arisen since" he last argued the Settlement to the Court. Opp. at 8. Class Counsel's claim now that a *Literary Works* Motion was already decided is even more specious, as any such decision would have been based on *his* erroneous representations. Had Class Counsel honored his promises to the Court that investors would get "their share," no fundamental conflict would have arisen and no Subclass would be necessary.

### V. *Literary Works'* Requirements Are Not Satisfied by Mediation or Class Counsel's Speculation About How Negotiations Would Have Happened

Finally, Class Counsel would cure the lack of Subclasses and Subclass counsel by the "structural protections" of mediation. Opp. at 9. That argument was expressly rejected in *Literary Works*.

In decertifying the class and vacating the settlement agreement, the Second Circuit n

*Literary Works* acknowledged that the settlement there "was the product of an intense, protracted, adversarial mediation, involving multiple parties and complex issues. The mediators were highly respected and capable, and their participation provided some assurance that the proceedings were free of collusion and undue pressure." *Literary Works*, 654 F.3d at 252. That mediation took *years,* but still did not provide the required protections of representation by separate Subclass counsel. *Id.*

So it is here. Even if it were true that investors in each of the funds "attended the mediation" and meaningfully participated on their own behalf, that as a matter of law cannot "further ensure that investors in those Funds were adequately represented." Opp. at 9. Class Counsel's rank speculation that *with* separate counsel, "we would simply end up exactly where we are now" blithely assumes the protections of *Literary Works* are unnecessary when the evidence points opposite. Class Counsel has abandoned the interests of *some* Subclasses in favor of the interests of *others* because there *was* a fundamental conflict and he had make a choice. That is precisely why Subclass counsel is necessary under *Literary Works*.

## CONCLUSION

For each of the foregoing reasons, FutureSelect respectfully requests that the *Literary Works* Motion be granted and that the Court designate Subclasses in conformance with the motion.

Dated: July 23, 2015

                Respectfully Submitted,

                THOMAS, ALEXANDER & FORRESTER LLP

                */s/ Mark Forrester*

                Mark Forrester, Esq. (admitted *pro hac vice*)
                14 27th Avenue
                Venice, California 90291
                Tel:  (310) 961-2536
                Fax:  (310) 526-6852
                Email:  markforrester@tafattorneys.com

                Attorneys for FutureSelect