UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
IN RE TREMONT SECURITIES LAW, STATE    :    Master File No.
 LAW AND INSURANCE LITIGATION          :    No. 08 CV 11117 (TPG)
                                       :
                                       :    ECF CASE
-------------------------------------------------------------X

**MEMORANDUM OF SOLA LTD ET AL.
IN SUPPORT OF CLASS COUNSEL'S MOTION FOR APPROVAL OF FUND
DISTRIBUTION ACCOUNT PLAN OF ALLOCATION AND
IN OPPOSITION TO FUTURESELECT'S MOTION**

SOLA Ltd, Solus Core Opportunities Master Fund Ltd, Solus Recovery Fund II Master LP, Solus Recovery LH Fund LP, Ultra Master Ltd, Halcyon Loan Trading Fund LLC, and BMIS Funding I, LLC (collectively, the "Undersigned Investors") respectfully submit this Memorandum in support of the Motion of Plaintiffs' Settlement Class Counsel ("Class Counsel") to approve Class Counsel's Plan of Allocation for the Fund Distribution Account ("FDA") [ECF No. 1088] and in opposition to the motion of FutureSelect Prime Advisor II LLC, The Merriwell Fund, L.P., and Telesis IIW, LLC (collectively, "FutureSelect") to approve FutureSelect's proposed Plan of Allocation for the FDA [ECF No. 1082].

The Undersigned Investors are all class members that have invested in Rye Select Broad Market Fund, L.P. ("Rye Onshore"). The Undersigned Investors adopt and join in the arguments of HSBC Bank plc ("HSBC"), SPCP Group, LLC ("SPCP"), Royal Bank of Scotland, N.V. ("RBS"), and Dolos X LLC, Dolos XI LLC, and Dolos XII LLC (collectively, "Dolos")—all of which support Class Counsel's Plan of Allocation and oppose FutureSelect's—but submit this separate memorandum to elaborate on two points.

First, it is essential to appreciate that Class Counsel's plan (incorrectly and misleadingly termed the "Fortress POA" by FutureSelect) is the closest thing there is or ever will be to a

consensus approach. Class Counsel's plan represents a mediation-forged compromise on the part of a great many parties, including the Undersigned Investors, which gave up value relative to their formal legal rights in the interest of reaching a resolution.

Second, FutureSelect's plan (which FutureSelect dubs, again highly misleadingly, the "Investor POA") would improperly obliterate the claims of anyone who (as the Undersigned Investors did) acquired their investments in the Rye feeder funds on the secondary market. FutureSelect's plan limits the definition of "Fund Distribution Claimant" to "only" those "who were limited partners or shareholders [of the Rye/Tremont feeder funds] as of December 11, 2008." *See* ECF No. 1083-1, at 3, ¶ A.8. (Class Counsel's plan, by contrast, properly defines a "Fund Distribution Claimant" to include feeder fund investors as of December 11, 2008 *and their assignees*. *See* ECF No. 1089-1, at 3, ¶ A.9.) In addition, FutureSelect would distribute the FDA according to each claimant's "Net Investment," defined as the difference between that claimant's own contributions to and redemptions from the feeder funds *as of December 11, 2008*. *See* ECF No. 1083-1, at 2-4, ¶¶ A.1., A.9., A.10., B.2., B.3. Under that approach, anyone who acquired an interest in a feeder fund after December 11, 2008—which is to say via transfer or assignment on the secondary market—would recover nothing.

That is manifestly the wrong result. Virtually all complex financial restructurings feature robust trading of claims between entities willing to participate in a restructuring process and those seeking a quick and certain exit from their investments. The restructuring process has been able to develop in this manner in part thanks to black-letter law that assignees can sue—and collect—on a legal claim that originally belonged to someone else. *See, e.g.*, *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 285 (2008) ("[C]ourts have long founds ways to allow

assignees to bring suit . . . ."); N.Y. Gen. Oblig. L. § 13-101 ("Any claim or demand can be transferred," with exceptions not relevant here).

Relatedly, where a debt or ownership interest in a corporate entity is at issue, the general rule is that legal claims associated with the instrument do not depend on who holds it—or on whether the current holder itself originally suffered injury in connection with the instrument. *See, e.g.*, N.Y. Gen. Oblig. L. § 13-107 ("Unless expressly reserved in writing, a transfer of any bond shall vest in the transferee all claims or demands of the transferrer . . . ."); *Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 97 N.Y.2d 456, 461 (2002) (holding there is no requirement that transferee of bond have suffered injury in order to bring the same claims that the transferor could have asserted, as "the buyer of a bond receives exactly the same 'claims or demands' as the seller held before the transfer"); *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 152-53 (2d. Cir. 1995) (recognizing transfer of cause of action, "consistent with the general trend in New York toward adopting principles of free assignability of claims").

Here, the Undersigned Investors hold limited partnership interests in the Rye Onshore fund that once belonged to "original" Madoff investors. As such, the Undersigned Investors have stepped into the shoes of those original holders and must be treated exactly as they would be for purposes of allocating the FDA. There are special reasons to honor these principles here. The FDA is being used to distribute the assets of—in effect, to liquidate—the Rye funds. It is for good reason that the bankruptcy regime expressly allows a creditor's claim on a debtor's estate to be sold to another. *See* Fed. R. Bankr. P. 3001(e). The Third Circuit has explained the value of this practice:

> Creditors holding claims against an entity who has filed a Chapter 11 petition sometimes face a risky and lengthy bankruptcy process. To avoid this risk and expense, a creditor may look to sell its claim, a practice permitted under the bankruptcy rules. By selling its claim, a risk averse creditor can opt out of the bankruptcy process and obtain an

3

>immediate, albeit discounted, payment on the debt it is owed. Claim purchasers buy these claims and hope to receive a distribution from the debtor's estate in excess of the price paid.

*In re KB Toys Inc.*, 736 F.3d 247, 249 (3d Cir. 2013) (internal citations omitted); *accord In re Kreisler*, 546 F.3d 863, 864 (7th Cir. 2008) ("Claims trading allows creditors to opt out of the bankruptcy system, trading an uncertain future payment for an immediate one, so long as they can find a purchaser. The purchaser essentially becomes an investor in the bankruptcy estate, betting that the future payout will eventually be more than the claim's purchase price.").

In this case, what the Undersigned Investors and other after-market purchasers of interests in the Rye funds have done is no different from what any purchaser of claims does in a liquidation proceeding. These purchasers have made it possible for Rye fund investors victimized by Madoff's fraud to receive a quick and certain recovery, even as these purchasers assumed, in place of the original investors, the risk and expense of negotiating the process of allocating the Rye funds' assets.[1]

Were the Court to adopt FutureSelect's reasoning, the decision would upset claims-trading markets in not only this, but other financial restructurings. There is nothing to be said for a result that would make it harder for future claimants unwilling or unable to navigate complex, lengthy and often expensive restructuring proceedings to receive quick and certain value. *Cf. NML Capital, Ltd. v. Republic of Argentina*, 2012 WL 5895786, at *4 (S.D.N.Y. Nov. 21, 2012) ("In accepting the exchange offers of thirty cents on the dollar, the exchange bondholders

---

[1] It is worth noting that what FutureSelect disparages as "speculative purchase from actual Tremont victims" is exactly the kind of after-market activity that has been recognized, approved, and facilitated by the Madoff Trustee and the Bankruptcy Court. At the Trustee's request, the Bankruptcy Court issued an order establishing procedures for transferring claims on the Madoff estate. *See* Order Granting Trustee's Motion for an Order Establishing Procedures for the Assignment of Allowed Claims, *SIPC v. BLMIS LLC*, Adv. Pro. No. 08-1789 (Bankr. S.D.N.Y. Nov. 10, 2010).

bargained for certainty and the avoidance of the burden and risk of litigating their rights on the FAA Bonds. However, they knew full well that other owners of FAA Bonds were seeking to obtain full payment of the amounts due on such bonds through persisting in the litigation. . . . The exchange bondholders made the choice not to pursue the route which plaintiffs have pursued."), *aff'd*, 727 F.3d 230 (2d Cir. 2013).

## CONCLUSION

For the foregoing reasons and those set forth in the Memoranda of HSBC, SPCP, RBS, and Dolos, the Court should approve the Plan of Allocation submitted by Class Counsel and reject the Plan of Allocation submitted by FutureSelect.

Dated:  New York, New York
        July 23, 2015

Respectfully submitted,

| WILLKIE, FARR & GALLAGHER LLP | MILBANK, TWEED, HADLEY & McCLOY LLP |
|---|---|
| By: /s/ Joseph G. Minias | By: /s/ Daniel M. Perry |
| Joseph G. Minias<br>787 Seventh Avenue<br>New York, NY 10019-6099<br>Tel: 212-728-8200<br>(jminias@willkie.com) | Daniel M. Perry<br>Daniel R. Walfish<br>28 Liberty Street<br>New York, NY 10005<br>212-530-5000<br>(dperry@milbank.com) |
| *Counsel for SOLA Ltd, Solus Core Opportunities Master Fund Ltd, Solus Recovery Fund II Master LP, Solus Recovery LH Fund LP, Ultra Master Ltd and Halcyon Loan Trading Fund LLC* | *Counsel for BMIS Funding I, LLC* |