UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | Master File No. 08 Civ. 11117 (TPG) <br><br> ECF Case |

**RESPONSE OF HSBC BANK PLC
IN OPPOSITION TO FUTURESELECT PRIME ADVISOR II LLC'S
MOTION FOR APPROVAL OF INVESTOR FUND DISTRIBUTION ACCOUNT
PLAN OF ALLOCATION AND IN SUPPORT OF CLASS COUNSEL'S MOTION
FOR APPROVAL OF FUND DISTRIBUTION ACCOUNT PLAN OF ALLOCATION**

HSBC Bank plc ("HSBC") is a class member that suffered a net loss of $580.3 million through its investments in Rye Select Broad Market Fund L.P. ("Rye Onshore" or "Broad Market") and Rye Select Broad Market Portfolio Limited ("Rye Offshore" or "Portfolio Limited"). HSBC also holds a first-priority security interest in all interests held by Rye Select Broad Market XL Fund L.P. ("XL") in Rye Onshore, entitling it to any recovery related to those interests. HSBC respectfully submits this memorandum in opposition to the Motion of FutureSelect Prime Advisor II LLC, The Merriwell Fund, L.P., and Telesis IIW, LLC (collectively, "FutureSelect")[1] for Approval of the Investor Fund Distribution Account Plan of Allocation (the "FutureSelect Motion") and in support of the Motion of Plaintiffs' Settlement Class Counsel ("Class Counsel") for Approval of the Fund Distribution Account Plan of Allocation and Distribution Procedures (the "Class Counsel Motion"). HSBC adopts and joins the arguments in Dolos X LLC, Dolos XI LLC, and Dolos XII LLC's Response, but submits this separate memorandum to elaborate on several points.

## PRELIMINARY STATEMENT

For more than a year, HSBC and other investors in the Rye and Tremont Funds[2] (the "Funds"), with the assistance of Class Counsel and a mediator, retired U.S. District Court Judge Layn R. Phillips, have been engaged in mediation to determine how the proceeds from the Fund Distribution Account ("FDA") should be allocated. With that mediation process now complete, investors holding the vast majority of net equity in the Funds have agreed the FDA should be distributed according to the allocation proposal submitted by Class Counsel in the Class Counsel Motion (the "Consensus Proposal"). That proposal includes equitable compromises while respecting legal realities, including that three Rye Funds—Rye Onshore, Rye Offshore, and Rye

---

[1] FutureSelect Prime Advisor II LLC, The Merriwell Fund, L.P., and Telesis IIW, LLC are all managed by the same investment manager, FutureSelect Portfolio Management.

[2] All capitalized terms not defined herein shall have the meanings ascribed in the Class Counsel Motion.

1

Select Broad Market Insurance Fund, L.P. ("Rye Insurance")—are the only Funds legally entitled to the proceeds funding the FDA, which have been or will be paid by the Bernard L. Madoff Investment Securities ("BMIS") Trustee on account of those three funds' allowed claims against the BMIS estate.  The Consensus Proposal is thus consistent with the court-approved settlement agreement in which the BMIS Trustee allowed Rye Onshore, Rye Offshore, and Rye Insurance's claims, which specifically provided that any distributions on those claims would be made to those Funds and "*their* investors"—*not* investors in any (much less all) other Funds. Nonetheless, as explained in the Class Counsel Motion, the mediation process resulted in a compromise whereby investors in other Funds also will receive a recovery on their losses from the funds belonging to Rye Onshore, Rye Offshore, and Rye Insurance, despite having no legal entitlement to share in any distribution from the allowed claims of those three funds.

In contrast, FutureSelect has introduced a self-serving proposal (the "FutureSelect Proposal") that completely disregards the legal distinctions between the various Funds and their investors' rights, as well as the fact that Rye Onshore, Rye Offshore, and Rye Insurance are the only Funds with allowed BMIS claims.  It purports to allocate the FDA to all investors regardless of what Fund they invested in and what their respective rights to recover from the FDA actually are.  In order to provide FutureSelect with the highest recovery possible, it ignores the legal rights of all other claimants.  Lacking any legal foundation for its proposal, FutureSelect resorts to rhetoric and name-calling, falsely claiming that the Consensus Proposal does not embody consensus of any "actual Tremont victims" but instead reflects the desires of "a single Madoff profiteer."  This is simply false.  In fact, it is the FutureSelect Proposal that has failed to attract support from other investors, much less the support of a majority of interests or Class Counsel.

The FutureSelect Proposal not only prejudices all investors in Funds that are entitled to

benefit from the Trustee Settlement, but it prejudices HSBC in particular. HSBC and XL, another Rye Fund, were parties to a swap transaction that was secured by XL's limited partnership interests in Rye Onshore, and their agreement provided that, upon XL's default (which has occurred), HSBC would have "all rights" to those interests. This includes the right to any recovery from the FDA predicated on XL's interests in Rye Onshore. Unlike the Consensus Proposal, which specifically preserves (without confirming) HSBC's rights with respect to these interests, the FutureSelect Proposal would disregard XL's investment in Rye Onshore entirely, unfairly and illegally stripping HSBC of its collateral rights. The Court should reject FutureSelect's self-serving efforts to undermine a plan of allocation that garnered wide support after extensive mediation. This is especially true because there is no legal basis for FutureSelect's claimed entitlement and its proposal would unjustifiably interfere with the clear legal rights of other parties in interest, such as HSBC.

## ARGUMENT

### I. Unlike the FutureSelect Proposal, the Consensus Proposal Respects the Parties' Legal Rights While Embodying Compromises Reached During an Extensive Mediation That Resulted in an Equitable Allocation

The vast majority of the FDA consists of funds paid by the BMIS Trustee on account of Rye Onshore, Rye Offshore, and Rye Insurance's allowed claims against the BMIS estate. The BMIS Trustee allowed the claims from these three funds (and *only* these three funds) as part of a court-approved July 25, 2011 settlement of its litigation against the Funds, various Tremont affiliates, and dozens of BMIS-invested funds managed by the Tremont group. *See Picard v. Tremont Group Holdings, Inc. et al.*, No. 10-5310-brl (Bankr. S.D.N.Y.) ("*Picard v. Tremont*"), Motion to Approve Compromise, Ex. A (Settlement Agreement) (Dkt. No. 17-1) ("Trustee Settlement"). The Trustee Settlement specifically provided that "all payments received from the Trustee" with respect to the claims allowed for Rye Onshore, Rye Offshore, and Rye Insurance

3

would be allocated exclusively "among Broad Market Fund, Portfolio Limited, Rye Insurance, and *their* respective partners and/or investors." Trustee Settlement ¶ 5c.ii (emphasis added); *see also Picard v. Tremont*, Bench Memorandum and Order Granting Trustee's Motion for Entry of Order Approving Agreement (Dkt. No. 38-1) ("Order Approving Trustee Settlement").

Rye Onshore, Rye Offshore, and Rye Insurance are "net loser" Funds that took less money out of BMIS than they put in. HSBC itself lost $426.2 million in Rye Onshore and $154.1 million in Rye Offshore. In contrast, other Funds that invested into BMIS were "net winner" Funds that took *more* money out of BMIS than they put in. This includes Rye Select Broad Market Prime Fund L.P. ("Prime"), in which FutureSelect was invested. Still other Funds (like XL, in which FutureSelect also chose to invest) did not invest directly with BMIS at all. Therefore, XL's rights to recovery, which have been pledged to HSBC, are derivative of any recovery by Rye Onshore. The Trustee Settlement's exclusive allowance of claims only for the three directly invested "net loser" Funds—as well as the provision that recovery on those claims must be allocated to those three funds and/or their investors—is consistent with the Second Circuit's conclusion that only "net loser" funds may recover in bankruptcy. *See In re BMIS*, 654 F.3d 229, 238 (2d Cir. 2011) (holding that, as a matter of law, claims against the BMIS estate should be measured by investors' net investment in BMIS); *see also In re BMIS*, 779 F.3d 74, 78 (2d Cir. 2015) (same).[3] Accordingly, only investors in Rye Onshore, Rye Offshore, and Rye Insurance have a legal right to the FDA funds flowing from BMIS distributions.

---

[3] FutureSelect argues that "neither the Madoff Trustee nor the Madoff Bankruptcy Court has ever distinguished among *Tremont* fund investors, and the Department of Justice has confirmed that distinction as meaningless." FutureSelect Br. at 3. Yet the single legal citation that FutureSelect provides for this proposition, *In re BMIS*, 654 F.3d 229, 238 (2d Cir. 2011), does not even mention the Tremont or Rye Funds, and in fact confirms that only "net loser" entities and individuals that invested directly into BMIS are entitled to a recovery from the BMIS Trustee. FutureSelect also cites the definition of "victim" on the Madoff Victim Fund website, which states that if "you lost [your money] due to the collapse of [BMIS], you are a victim." FutureSelect Br. at 3. While that definition may be relevant for the purposes of making a claim to the Madoff Victim Fund—which FutureSelect is free to do—it has absolutely no legal bearing with respect to a recovery from the BMIS estate in bankruptcy or from the FDA.

4

Indeed, when the BMIS Trustee sought approval of the Trustee Settlement, the Bankruptcy Court explicitly recognized this exact point. A group of Prime and XL investors—just like FutureSelect—objected to that settlement, arguing that the allowance of claims for Rye Onshore, Rye Offshore, and Rye Insurance, but not "net winner" Funds, would lead to inequitable results. In doing so, those investors specifically acknowledged that the Tremont Settlement "precludes a reallocation of BLMIS recoveries among investors in Settling Funds other than [Broad] Market Fund, Portfolio Limited and Rye Insurance." *Picard v. Tremont*, Reply Br. in Support of Objections Filed by Prime Fund and XL LP (Dkt. No. 36) at 11. The Bankruptcy Court overruled these objections and approved the Trustee Settlement, holding that it was "legally incorrect" for "net winner" Funds to receive a recovery under Section 502(h) of the U.S. Bankruptcy Code. Order Approving Trustee Settlement at 5.

FutureSelect's proposed plan of allocation would ignore the Trustee Settlement and its legal implications, instead allocating the FDA to individual investors regardless of the fact that they invested in net-winner Funds. In doing so, it seeks to violate the terms of that court-approved Settlement, which (as Prime and XL investors already have acknowledged) "precludes a reallocation of BLMIS recoveries" to investors in "net winner" Funds.[4]

FutureSelect's proposal also completely disregards the corporate form of the Funds. Each Fund is a separate legal entity with its own governing documents, investment objectives, strategies, risk profiles, assets—and investors. The mere fact that the Tremont group managed all of the Funds is not a reason to disregard the Funds' corporate separateness, commingle their

---

[4] FutureSelect ignores the Trustee Settlement and instead relies upon the definition of "Fund Distribution Claimant" in the Stipulation of Partial Settlement approved by this Court on August 19, 2011 (the "<u>Tremont Settlement</u>"). That definition's reference to Fund Distribution Claimants' "entitle[ment] to receive a disbursement from the Fund Distribution Account" necessarily depends upon the plan of allocation approved by the Court, as described in paragraphs 2.23 and 25 of the Tremont Settlement—the determination of which is explicitly reserved for a later decision by the Court.

assets, and treat their investors as if they were exactly the same. Investors like FutureSelect made informed decisions to invest in specific Funds (e.g., XL, which invested in synthetic derivatives, not BMIS) and cannot now demand to be treated as if they had decided differently. Rye Onshore, Rye Offshore, and Rye Insurance's allowed claims are assets of those funds that only their investors—not Tremont investors generally—have the right to recover.

That said, in order to achieve a broader consensus, Rye Onshore, Rye Offshore, and Rye Insurance investors, including HSBC, have agreed to share a portion of the recoveries to which they are legally entitled with other investors as part of the Consensus Proposal. That proposal recognizes the legal distinction between directly invested "net loser" Funds and other Funds by allocating most of the FDA proceeds to those who own them— investors in the "net loser" Funds that were granted allowed claims by the Bankruptcy Court—while at the same time reflecting hard-won compromises in favor of other investors in the Funds, including FutureSelect.[5]

## II.     The Consensus Proposal is a Carefully-Crafted Compromise Resulting from Extensive Mediation Proceedings

Beginning in October 2012—the year after the Tremont Settlement was approved by the Court, but while appeals of the Court's approval were still pending—Class Counsel "engaged in countless telephone discussions and in-person meetings, both as a group and individually, with scores of investors in the various Rye and Tremont Funds regarding … the plans of allocation, [and] anticipated distribution of the NSF and FDA." Class Counsel Motion at 13; *see also* Joint FDA Decl. at ¶¶ 12-21. Between May 2014 and May 2015, Tremont and Rye Fund investors, including HSBC, exchanged numerous written allocation proposals for the FDA and the NSF,

---

[5] FutureSelect devotes three pages of its brief to the proposition that its plan of allocation is "consistent with this Court's approval of the NSF POA." FutureSelect Br. at 8. Unlike the FDA, the funds in the Net Settlement Fund ("NSF") were comprised of recoveries from the Tremont defendants by virtue of Class Counsel's claims against those defendants in this litigation, not recoveries from the BMIS estate with respect to the "net loser" Funds' allowed claims. Therefore, distribution to all Tremont investors (regardless of which Funds they were invested in) was appropriate in that case. It is not appropriate here.

6

often accompanied by extensive memoranda describing the bases for these proposals. Class Counsel Motion at 13-15. In July 2014 and May 2015, various Tremont and Rye Fund investors—as well as Class Counsel and Judge Phillips—held extensive in-person meetings to negotiate a compromise among the various investors' positions and proposals. *Id.* Representatives of FutureSelect fully participated in these proceedings.

With this lengthy mediation process now largely complete, investors holding the vast majority of the aggregate net ownership interests in the Funds have agreed to the Consensus Proposal that Class Counsel has presented to the Court. *Id.* at 15. The broad consensus in favor of this proposal reflects the compromises made by HSBC and other parties throughout the mediation process. For instance, HSBC and certain other parties that invested in the Funds in connection with swap transactions agreed to a 99% discount on their claims in the NSF, ensuring that other investors (including investors in "net winner" Funds, such as FutureSelect) could receive a greater recovery from the NSF. *See* Net Settlement Fund Plan of Allocation at 4 (Dkt. No. 988-1). Likewise, despite the fact that HSBC and the investors in Rye Onshore, Rye Offshore, and Rye Insurance alone were granted the exclusive legal right to the distribution of FDA proceeds under the terms of the Trustee Settlement, HSBC and said investors have agreed to allow investors in other Funds to receive a sizable portions of the distribution from the FDA, calculated with reference to those Funds' respective payments to the BMIS Trustee as part of the Trustee Settlement. Class Counsel Motion at 17-18.

FutureSelect argues that the Consensus Proposal was submitted by Class Counsel "on behalf of Fortress," which "is not a victim of the Madoff fraud, but rather seeks to profit from it" through "speculative purchase from actual Tremont victims, assignment, agreement or otherwise." FutureSelect Br. at 2. Not only is this argument legally irrelevant, it is utterly false. HSBC,

which lost $580.3 million by investing in Rye Funds, and numerous other "actual" victims of the Madoff fraud who participated in the mediation, had significant input into and strongly support the Consensus Proposal. FutureSelect paints the Consensus Proposal as an "unfair, unlawful, illogical" allocation plan that "manipulate[s] [the FDA] to benefit a single Madoff profiteer" who has "threatened" or "bought out" all potential objectors, *id.* at 2, n.2, 4, but the reality is that the Consensus Proposal encompasses the agreement of a wide variety of investors following years of negotiations, advanced by Class Counsel in line with his fiduciary duty to act on behalf of all investors. It is the FutureSelect Proposal, supported by FutureSelect alone, that seeks to serve the greed of a single party—that even now is seeking separate recovery in litigation against Tremont and its auditors—without regard for legal rights or equitable treatment.

### III. The Plan of Allocation Adopted by the Court Should Make Any Distribution on Account of XL's Investment in Broad Market to HSBC, Which Holds "All Rights" to That Investment

FutureSelect's plan of allocation suffers from another fatal flaw: it fails to recognize XL's investment in Rye Onshore, in respect of which HSBC is entitled to any recovery.

On August 31, 2007, HSBC and XL entered into a total return swap transaction (the "Swap") that provided XL with the upside or downside return it would have received had it directly invested several times more than it did in Rye Onshore. To secure XL's obligations under the Swap, XL granted HSBC a first-priority continuing security interest in "all rights (contractual or otherwise whether constituting general intangibles or investment property or other financial assets) constituting, arising under, connected with, or in any way related to" XL's own limited partnership interests in Rye Onshore (the "Collateral"). The governing documents for the Swap stated that, upon XL's default, HSBC would "accede to all right of [XL]" in that Collateral. Further, Rye Onshore and XL agreed that, upon XL's default and HSBC's written notice to Rye Onshore, HSBC "shall have all rights in [XL's investment in Broad Market] . . .

8

without any further notice to or consent of [XL]."

All of this has come to pass. XL has defaulted, HSBC has provided the required written notice, and HSBC thus owns all rights related to XL's investment in Rye Onshore—including the right to receive any FDA distribution predicated on that investment.

Recognizing that HSBC's entitlement to XL's interests in Rye Onshore will reduce their potential recoveries, XL investors have challenged HSBC's exercise of its clear legal rights. In the interests of avoiding further drawn-out litigation and in the spirit of the successful mediation process, HSBC has been working with various XL investors and Class Counsel to reach an agreement with respect to the treatment of the Collateral under the FDA. Should those negotiations fail, HSBC stands ready to defend its legal right to the Collateral before this Court.

Pending such resolution, the FDA plan of allocation adopted by the Court must preserve HSBC's rights to the Collateral. The Consensus Proposal does precisely that, stating:

> [N]otwithstanding anything to the contrary in this [Consensus Proposal] or the [Tremont Settlement], if [HSBC] is determined to have enforceable rights to XL's Cross Investment in Rye Onshore, HSBC shall be treated as a Fund Distribution Claimant with respect to any FDA distributions calculated on the basis of XL's Cross-Investment in Rye Onshore and will be entitled to receive such distributions from the FDA to the extent of its enforceable rights therein.

Consensus Proposal § B.23. The FutureSelect Proposal, however, completely ignores HSBC's legal rights by disregarding XL's investment in Rye Onshore entirely. The Court should reject this attempt to strip HSBC of its valid lien rights, and to deprive all Rye Onshore, Rye Offshore, and Rye Insurance investors of the recovery to which they are legally entitled.

## CONCLUSION

For the reasons set forth herein, HSBC respectfully requests that the Court grant the Class Counsel Motion, deny the FutureSelect Motion, and grant such other and further relief as it deems just and proper.

Dated: New York, New York
July 23, 2015

        Respectfully submitted,

        CLEARY GOTTLIEB STEEN & HAMILTON LLP

        By: */s/ Thomas J. Moloney*

        Thomas J. Moloney
        Joaquin P. Terceño
        Daniel D. Queen
        S. Ellie Norton
        One Liberty Plaza
        New York, New York 10006
        T: 212-225-2460
        F: 212-225-3999
        (tmoloney@cgsh.com)

        *Attorneys for HSBC Bank plc*