UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE TREMONT SECURITIES LAW,
STATE LAW AND INSURANCE LITIGATION

Master File No. 08 Civ. 11117 (TPG)

**SPCP GROUP, LLC'S MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF SETTLEMENT CLASS COUNSEL'S MOTION FOR
APPROVAL OF FUND DISTRIBUTION ACCOUNT PLAN OF ALLOCATION,
AND IN OPPOSITION TO FUTURESELECT'S MOTION FOR APPROVAL OF
<u>INVESTOR FUND DISTRIBUTION ACCOUNT PLAN OF ALLOCATION</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ........................................................................................................................ 4

    I.      Class Counsel's FDA Plan of Allocation Should Be Approved........................... 4

          A.     The "SIPC Claim" Allocation Is Reasonable ................................................5

          B.     The "Virtual SIPC Claim" Allocation Is Reasonable ..................................7

          C.     The "XL Priority Allocation" Is Reasonable ...............................................8

    II.     FutureSelect's Motion Should Be Denied ........................................................... 8

          A.     The FDA Is Not A "Class Action Settlement" Fund ...................................9

          B.     The Settlement Agreement Does Not Support FutureSelect's Position ....10

          C.     Prior Madoff Cases Do Not Support FutureSelect's Position ..................11

          D.     *Literary Works* Does Not Support FutureSelect's Position ......................11

CONCLUSION.................................................................................................................... 14

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Antibiotic Antitrust Actions*,
   333 F. Supp. 296 (S.D.N.Y. 1971), *aff'd*, 450 F.2d 1119 (2d Cir. 1971) .............12

*In re Bernard L. Madoff Inv. Sec. LLC*,
   654 F.3d 229 (2d Cir. 2011), *cert. dismissed*, 132 S. Ct. 2712,
   *and cert. denied*, 133 S. Ct. 24 (2012) ....................................................6, 8, 11

*In re Bernard L. Madoff Inv. Sec. LLC*,
   708 F.3d 422 (2d Cir. 2013) ........................................................................6

*In re Bernard L. Madoff Inv. Sec. LLC*,
   No. 11 CV 7330, 2012 WL 2497270 (S.D.N.Y. June 27, 2012) ..............................5

*In re Cendant Corp. Sec. Litig.*,
   109 F. Supp. 2d 235 (D.N.J. 2000) ...................................................................9

*Chavarria* v. *N.Y. Airport Serv., LLC*,
   875 F. Supp. 2d 164 (E.D.N.Y. 2012) ...............................................................4

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) .......................................................................4

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) .......................................................................4

*In re Literary Works in Electronic Databases Copyright Litig.*,
   654 F.3d 242 (2d Cir. 2011).................................................................11, 12, 13

*Maley* v. *Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)..................................................................4

*Meridian Horizon Fund, L.P.* v. *Tremont Grp. Holdings, Inc.*,
   No. 09 Civ. 3708, 2012 WL 4049953 (S.D.N.Y. Sept. 14, 2012)............................6

*In re Pet Food Prods. Liab. Litig.*,
   629 F.3d 333 (3d Cir. 2010)..............................................................................13

*Picard* v. *Tremont Grp. Holdings., Inc.*,
   Adv. Pro. No. 10-05310 (Bankr. S.D.N.Y.)................................................. passim

*Sec. Investor Prot. Corp.* v. *Bernard L. Madoff Inv. Sec. LLC*,
   505 B.R. 135 (S.D.N.Y. 2013)...........................................................................6

*In re Sturm, Ruger & Co., Inc. Sec. Litig.*,
    No. 3:09-cv-1293, 2012 WL 3589610 (D. Conn. Aug. 20, 2012)........................................4, 5

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008).......................................................................................4

*In re Tremont Sec. Law, State Law, and Ins. Litig.*,
    No. 08 Civ. 11117, 2013 WL 5179064 (S.D.N.Y. Sept. 16, 2013)...........................................6

*In re Tremont Sec. Law, State Law and Ins. Litig.*,
    No. 08 Civ. 11117, 2014 WL 1465713 (S.D.N.Y. Apr. 14, 2014).............................................6

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 0165, 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ........................................4, 5

*In re Warner Chilcott Ltd. Sec. Litig.*,
    No. 06 Civ. 11515, 2009 WL 2025160 (S.D.N.Y. July 10, 2009) ...........................................4

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)......................................................................................4

SPCP Group, LLC respectfully submits this memorandum of law in support of Plaintiff Settlement Class Counsel's Motion For Approval of Fund Distribution Account Plan of Allocation (ECF No. 1088), and in opposition to FutureSelect Prime Advisor II LLC's ("FutureSelect") motion to approve its own purported plan of allocation (ECF No. 1082).[1]

SPCP Group, LLC is a Settlement Class Member and Fund Distribution Claimant, as defined in the Stipulation of Partial Settlement (ECF No. 392-1), which holds $395 million of aggregate claims in Rye Select Broad Market Fund, L.P. ("Rye Onshore"), Rye Select Broad Market Portfolio Limited Fund ("Rye Offshore"), and Rye Select Broad Market XL Fund, L.P. ("XL Fund").  SPCP Group, LLC is managed by Silver Point Capital, L.P., a registered investment adviser.

## PRELIMINARY STATEMENT

Nearly four years after this Court approved a Settlement creating the Fund Distribution Account ("FDA"), and after more than a year of mediation supervised by retired U.S. District Court Judge Layn R. Phillips to negotiate a compromise on the FDA Plan of Allocation, Class Counsel has proposed a Plan of Allocation that enjoys broad support from an overwhelming majority of aggregate net ownership interests in the FDA, addresses the legitimate interests of all investors, and easily meets the standard of judicial review.

The Settlement approved by this Court on August 19, 2011 established two funds with substantially different purposes:  (1) the Net Settlement Fund ("NSF"), which holds proceeds paid in settlement of claims brought by Plaintiffs against the Tremont Defendants in class action litigation, and (2) the FDA, which seeks to distribute assets remaining in the Rye and Tremont Funds after a settlement of clawback claims brought by the Securities Investor

---

[1]   SPCP Group, LLC also adopts the facts and arguments presented in the memoranda of law submitted today by Dolos X LLC, Dolos XI LLC, Dolos XII LLC, and SOLA Ltd et al. (ECF Nos. 1118, 1112.)

Protection Act ("SIPA") Trustee in the Madoff bankruptcy *outside* of the Tremont class action. (ECF No. 392-1 ¶¶ 1.19, 1.50, 2.20-2.23; ECF No. 604; ECF No. 1089 at 16; ECF No. 1090 ¶ 7.) The SIPA Trustee Settlement awarded nearly $3 billion in bankruptcy claims to three Rye Funds that were direct customers of Madoff and sustained net losses on their investments: Rye Onshore, Rye Offshore, and Rye Select Broad Market Insurance Fund, L.P. ("Rye Insurance"). Consistent with legal principles applicable to Ponzi schemes, SIPA, and the Madoff bankruptcy, the Trustee Settlement did not allocate claims to any other Fund—including the XL Fund, which was not a direct Madoff customer, or Rye Select Broad Market Prime Fund, L.P. (the "Prime Fund"), which was a "net winner" on its Madoff investments.

Class Counsel's Plan of Allocation for the FDA represents a reasonable and carefully negotiated compromise. Consistent with the Madoff bankruptcy claims awarded to Rye Onshore, Rye Offshore, and Rye Insurance, the FDA Plan recognizes a "SIPC Claim" for those three Funds. However, it redistributes a substantial amount of the assets awarded to those three Funds in the Madoff bankruptcy to Funds that were "net winners" in Madoff or were not Madoff customers at all. To do so, Class Counsel's FDA Plan creates "Virtual SIPC Claims" for investors in all Funds that contributed to the FDA at the same percentage awarded in the bankruptcy proceedings to Rye Onshore and Rye Offshore for the cash those two Funds contributed to the Trustee Settlement. In addition, Class Counsel's Plan provides a "Priority Allocation" for investors in the XL Fund in recognition of the fact that XL is the only Fund that contributed cash directly to the FDA pursuant to the Settlement Agreement in this action. The Virtual SIPC Claims and Priority Allocation created for investors in the Prime and XL Funds who have no bankruptcy claim as a matter of law do not come out of thin air; they come at the

direct expense of investors who were net losers in net loser Funds, and who have made every effort to resolve this FDA dispute by agreeing to the compromise proposed by Class Counsel.

While that compromise is generous to investors in the Prime and XL Funds, Class Counsel's FDA Plan of Allocation is supported by a rational basis. It gives a reasonable degree of deference to the Trustee Settlement in the Madoff bankruptcy proceedings that funds the bulk of the FDA, respects the basic corporate structure of legally and functionally distinct Funds, preserves cross investments among the Funds, and treats similarly situated investors similarly.

Nevertheless, one investor in the Prime and XL Funds that opted out of the Tremont class action—FutureSelect—seeks to increase the windfall it would receive under Class Counsel's FDA Plan of Allocation. Rather than determining investor net loss on a "Fund-by-Fund basis" consistent with a liquidation of the relevant Funds (ECF No. 1089-1 ¶ B11), FutureSelect proposes to divide the FDA *pro rata* among all investors who had a net loss in any Rye or Tremont Fund—regardless of whether that Fund contributed anything to the Trustee Settlement, regardless of whether that Fund was a "net winner" in Madoff, and regardless of whether that Fund was even a customer of Madoff. (ECF No. 1083-1.) FutureSelect's proposal to pool all of the assets of the Rye and Tremont Funds for *pro rata* distribution is inconsistent with: (a) the purpose of the FDA to wind down Funds with separate corporate structures, segregated assets, and distinct groups of investors, (b) the clear and unambiguous terms of the Trustee Settlement approved by the Madoff Bankruptcy Court to allow claims for three Funds exclusively, and (c) the principle that similarly situated investors should be treated similarly. As explained further below, none of the arguments advanced by FutureSelect for its purported plan of allocation has legal or equitable merit.

Accordingly, Class Counsel's FDA Plan of Allocation should be approved and FutureSelect's motion should be denied.

## ARGUMENT

## I.

## <u>Class Counsel's FDA Plan of Allocation Should Be Approved</u>

Class Counsel's Plan of Allocation meets the applicable standard of review.  A plan of allocation proposed by class counsel warrants approval when it is "fair and adequate." *See In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012).  Such a plan "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515, 2009 WL 2025160, at *2-3 (S.D.N.Y. July 10, 2009); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005); *Maley* v. *Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002).  In determining whether a plan of allocation is fair and reasonable, courts "look primarily to the opinion" of class counsel, and give plaintiff counsel's conclusion "great weight."  *See Chavarria* v. *N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 175 (E.D.N.Y. 2012) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997)); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 0165, 2007 WL 4115809, at *13 (S.D.N.Y. Nov. 7, 2007).

A "reasonable" plan of allocation may address the "relative strength and values of different categories of claims."  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008); *see also In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000) (plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable).  "'There is no rule that settlements benefit all class members equally.'"  *In re Sturm, Ruger & Co., Inc. Sec. Litig.*, No. 3:09-cv-1293, 2012 WL 3589610, at *8 (D. Conn. Aug. 20,

2012) (quoting *Veeco*, 2007 WL 4115809, at *13).  Under this standard, Class Counsel's FDA

Plan of Allocation is reasonable and should be approved.

> A.    The "SIPC Claim" Allocation Is Reasonable

First, Class Counsel's Plan of Allocation recognizes that the principal source of

funding for the FDA consists of nearly $3 billion in SIPC claims that the Madoff bankruptcy

proceedings "conclusively allowed" with respect to only three Rye Funds and their investors.

*See Picard* v. *Tremont Grp. Holdings., Inc.*, Adv. Pro. No. 10-05310 (Bankr. S.D.N.Y.)

("*Picard*"), Dkt. Nos. 17-1 ¶ 5 and 38-1.[2]  Under the Court-approved Trustee Settlement, Rye

Onshore, Rye Offshore, and Rye Insurance (and only those Funds) received these claims in

exchange for the payment of nearly $1 billion in cash to the Madoff bankruptcy estate.  *See In re*

*Bernard L. Madoff Inv. Sec. LLC*, No. 11 CV 7330, 2012 WL 2497270, at *1 (S.D.N.Y. June 27,

2012); ECF No. 1089-1 ¶ B16.  Moreover, the SIPA Claims of Rye Onshore, Rye Offshore, and

Rye Insurance are the predominant source of funding for the FDA—without which there would

be no meaningful assets to distribute to *any* participant in the FDA.  (ECF No. 1089 at 11.)[3]  It is

entirely reasonable and rational for investors in these three Funds to receive credit in their FDA

distribution for assets they contributed to the FDA.  (ECF No. 1090 ¶ 25; ECF No. 1089 at 4.)

---

[2]    Section 5 of the Trustee Settlement Agreement in the bankruptcy proceedings provided:  (i)
Rye Onshore has a "conclusively allowed" claim of $1,647,687,625.00; (ii) Rye Offshore has
a "conclusively allowed" claim of $498,490,000.88; (iii) Rye Insurance has a "conclusively
allowed" claim of $40,000,000.00; and (iv) Rye Onshore and Rye Offshore have a Section
502(h) claim of $800,000,000.00.  In Section 5c of the Settlement Agreement, entitled
"Allocation to the Funds," the Tremont Defendants covenanted to "cause *all* payments
received from the Trustee in respect of the Total Allowed Claims Amount to be fairly and
equitably allocated among Broad Market Fund, Portfolio Limited, Rye Insurance, and *their*
respective partners and/or investors."  *Id.*, Dkt. No. 17-1 at ¶ 5 (emphasis added).

[3]    The FDA consists of "all funds remaining in the Rye and Tremont Funds after they settled
the claims of the Madoff Bankruptcy Trustee [ ], plus 100% of any SIPC Recovery these
Funds receive from that Trustee."  (ECF No. 1091 ¶ 3.)

Likewise, it is reasonable for investors in Funds other than Rye Onshore, Rye Offshore, and Rye Insurance not to receive SIPC Claims. Only "net loser" Funds are entitled to recover in the Madoff bankruptcy. *See In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 238 (2d Cir. 2011), *cert. dismissed*, 132 S. Ct. 2712, *and cert. denied*, 133 S. Ct. 24, 25 (2012). Whereas Rye Onshore and Rye Offshore suffered net losses in Madoff to the tune of over $2 billion, *see Picard*, Dkt. No. 38-1 at 5, the Prime Fund is a "net winner" that withdrew over $210 million more from Madoff than it invested. (*Picard*, Dkt. Nos. 17-1 at 4, 38-1 at 5, 39 at 33; ECF No. 1090 ¶ 25.) In other words, Prime profited from Madoff's Ponzi scheme at the expense of net losers, such as Rye Onshore and Rye Offshore.

Other Funds, such as the XL Fund, are not entitled to a SIPC Claim because they were not direct Madoff customers. *See In re Bernard L. Madoff Inv. Sec. LLC*, 708 F.3d 422, 427 (2d Cir. 2013) (SIPA claims belong only to direct Madoff customers). As this Court has repeatedly recognized, the "XL Fund was not directly managed by Madoff." *In re Tremont Sec. Law, State Law and Ins. Litig.*, No. 08 Civ. 11117, 2014 WL 1465713, at *1 (S.D.N.Y. Apr. 14, 2014); *see Meridian Horizon Fund, L.P.* v. *Tremont Grp. Holdings, Inc.*, No. 09 Civ. 3708, 2012 WL 4049953, at *1 (S.D.N.Y. Sept. 14, 2012) ("The XL Funds did not directly invest with Madoff."). Instead, the XL Fund used derivative swap contracts to "achieve a three-times leveraged return based upon the performance of the [Rye Select] Broad Market Fund." *In re Tremont Sec. Law, State Law, and Ins. Litig.*, No. 08 Civ. 11117, 2013 WL 5179064, at *1 (S.D.N.Y. Sept. 16, 2013); *see Sec. Investor Prot. Corp.* v. *Bernard L. Madoff Inv. Sec. LLC*, 505 B.R. 135, 140 (S.D.N.Y. 2013) (XL Fund was "a synthetic fund" that was triple-levered against "a hypothetical investment in Rye Select Broad Market Fund LP").

In short, it is reasonable and appropriate for the FDA Plan of Allocation to recognize a SIPC Claim for investors in Rye Onshore, Rye Offshore, and Rye Insurance, particularly when that SIPC Claim represents only a fraction of the claim these Funds were "conclusively allowed" in the Madoff bankruptcy proceedings.

B.     The "Virtual SIPC Claim" Allocation Is Reasonable

Even though the Bankruptcy Court did not award any claim to the Prime or XL Funds, Class Counsel's Plan of Allocation grants a "Virtual SIPC Claim" to investors in these Funds equal to 80% of the cash they contributed to the FDA.  (ECF No. 1089-1 ¶ B20; ECF No. 1089 at 7 & n.10.)  This is the *same percentage* awarded to Rye Onshore and Rye Offshore in the Trustee Settlement under Section 502(h) of the Bankruptcy Code for the cash that they contributed.  (ECF No. 1089-1 ¶ B20; ECF No. 1090 ¶ 26.)  To fund the Virtual SIPC Claims, Class Counsel's FDA Plan of Allocation would dilute the bankruptcy claims of Rye Onshore, Rye Offshore, and Rye Insurance in order to redistribute substantial assets to investors in net winner Funds and non-Madoff customers.

In this sense, the Virtual SIPC Claim treats the Prime Fund better than Rye Onshore and Rye Offshore.  Whereas Rye Onshore and Rye Offshore contributed nearly $1 billion to the Trustee Settlement (and took out hundreds of millions of dollars in loans) to secure releases from clawback claims that benefitted all participants in the Settlement, the Prime Fund escaped exposure of nearly $1 billion in alleged fraudulent and preferential transfers by contributing only $35.6 million to the Settlement.  *See Picard*, Adv. Pro. No. 10-05310 (Bankr. S.D.N.Y.), Dkt. No. 17-1 at 7.

In addition to creating Virtual SIPC Claims, Class Counsel's Plan of Allocation recognizes all inter-Fund cross investments, such as Prime Fund's substantial investments in Rye

Onshore and the XL Fund, notwithstanding the fact that Prime was a "net winner" Fund.  (ECF No. 1090 ¶ 27 & n.4; ECF No. 1089 at 7, 22.)

            C.       <u>The "XL Priority Allocation" Is Reasonable</u>

        Class Counsel's FDA Plan of Allocation grants the XL Fund not merely a Virtual SIPC Claim, but also a "priority distribution" of the first $32.4 million allocated under the FDA—enabling the XL Fund to take all of the money that it contributed to the FDA "off the top." (ECF No. 1089-1 ¶ B22.)  The XL Fund (in which FutureSelect invested) will receive this accommodation even though it was not a Madoff customer, even though it was entitled to no bankruptcy claim, and even though it was a highly leveraged vehicle that took outsized risks relative to the other Funds (and stood to receive outsized rewards).  Class Counsel nonetheless proffers a basis for this distribution on the ground that XL is the only Fund that contributed cash directly to the FDA under the Settlement Agreement in this action, rather than through the Trustee Settlement in the Madoff bankruptcy.  (ECF No. 1090 ¶ 28; ECF No. 1089 at 18.)

        Because it gives some recognition to the Court-approved Trustee Settlement in the Madoff bankruptcy proceedings, respects Fund boundaries and background legal principles governing the corporate form, and treats similarly situated investors similarly, Class Counsel's FDA Plan of Allocation has a "reasonable, rational basis" and should be approved.

## II.

## <u>FutureSelect's Motion Should Be Denied</u>

        In its competing motion, FutureSelect accepts that distributions from the FDA should be made only to individual investors who were "net losers" under the Net Investment Method, *see In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d at 238, but disagrees that net losses should be calculated "separately for each Eligible Hedge Fund in which the Fund Distribution Claimant invested." (ECF No. 1089-1 ¶ B9.)  Instead, FutureSelect seeks to commingle all

Eligible Hedge Fund assets into a single pool for distribution to all investors *as if* the FDA eviscerated the separate corporate structure of each Fund, effected a substantive consolidation of all of their assets (as well as eliminated their debt), and somehow decreed that investors in each of the Funds are all "similarly situated."  (ECF No. 1083 at 11.)  FutureSelect is wrong on the facts and the law.[4]

A.      The FDA Is Not A "Class Action Settlement" Fund

Most fundamentally, FutureSelect's plan of allocation errs by attempting to model the FDA on the NSF.  (ECF No. 1083 at 8-10.)  Although the NSF "did not distinguish among class members based on their Tremont investment vehicle," it is incorrect to assume that "[a]ll FDA 'class' plaintiffs would be treated the same."  (ECF No. 1083 at 1-3, 8.)  Under the Settlement Agreements in this case, compensation to the "class" was intended to come from the NSF—not the FDA.  There is no "FDA class."[5]

Whereas the NSF will distribute proceeds from the settlement of Plaintiffs' claims against the Tremont Defendants to all class members on a *pro rata* basis, the FDA effects a quasi-liquidation of the Rye and Tremont Funds by distributing assets remaining in each of those Funds to investors wholly apart from the Tremont Defendants' "misrepresentations, gross negligence, and malfeasance."  (ECF No. 1083 at 3; ECF No. 1089 at 3; ECF No. 392-1 ¶¶ 1.19,

---

[4]   FutureSelect's plan of allocation should not be reviewed under the standard applicable to Class Counsel, which alone has the fiduciary responsibility to propose a plan that is fair and equitable to all investors.  (ECF No. 604 ¶ 29.)  Rather, FutureSelect must demonstrate through an objection to Class Counsel's Plan of Allocation that that Plan is *un*reasonable. *See, e.g.*, *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 272 (D.N.J. 2000) (Courts will not invalidate class counsel's plan of allocation "where certain shareholders, seeking advantageous treatment, fail to demonstrate that on the whole the plan is unreasonable.").

[5]   FutureSelect's notion of an "FDA class" is belied by the fact that those who opted out of the class to pursue separate litigation against the Tremont Defendants—such as FutureSelect itself—can fully participate in the FDA.  (ECF No. 1083 at 3, 4 n.5, 8 n.8.)  *See FutureSelect Portfolio Mgmt., Inc.* v. *Tremont Grp. Holdings, Inc.,* 180 Wash.2d 954 (Wash. 2014).

1.50.)  Put differently, if the FDA had never been created, a wind down of the Rye and Tremont

Funds would have occurred outside of any Rule 23 class action pursuant to the Fund documents

and applicable law governing each of those legally distinct entities.  The FDA was designed to

serve as a vehicle for the orderly wind down of the Funds—not to seize assets that belong to

investors in particular Funds in order to redistribute them to investors in *other* funds simply

because they happen to have invested in the same fund complex.

        B.      The Settlement Agreement Does Not Support FutureSelect's Position

Next, FutureSelect asserts that "only" its proposed plan is "consistent with the

settlement agreement already approved by this Court."  (ECF No. 1083 at 5.)  The purported

basis for this claim is that Section 1.18 of the Settlement Agreement defines "Fund Distribution

Claimant" to mean "any limited partner or shareholder in any of the Settling Funds . . ., each of

which shall be entitled to receive a disbursement from the Fund Distribution Account."  (ECF

No. 392-1 at 12-13.)  But this does not suggest that FutureSelect's proposed plan of allocation is

any more consistent with the Settlement Agreement than Class Counsel's Plan of Allocation.

*Both plans* entitle FutureSelect and other investors with net losses in the Prime and XL Funds to

"receive a disbursement from the Fund Distribution Account."

In any event, FutureSelect misreads the definition in Section 1.18 of the

Settlement Agreement.  The proposed Plans of Allocation—including FutureSelect's own plan

(ECF No. 1083-1 ¶ A8)—make clear that "Fund Distribution Claimant" is a descriptive term that

refers to any limited partner or shareholder "who is entitled" to a disbursement from the FDA.

(ECF No. 1089-1 ¶ B9.)  This definition does not prescribe that every investor in the Rye or

Tremont Funds *actually is* entitled to an FDA disbursement.  Under FutureSelect's reading of

Section 1.18, every "net winner" limited partner or shareholder of a Settling Fund would be

10

entitled to a disbursement from the FDA—an untenable position that neither FutureSelect nor

any other objector has advanced.

C.      Prior Madoff Cases Do Not Support FutureSelect's Position

FutureSelect claims that "only" its proposed plan of allocation is consistent with

other courts' treatment of Madoff victims.  (ECF No. 1083 at 7.)  The premise of FutureSelect's

position is that all net losers in a "subject investment" should be treated the same, and that the

"subject investment" here is a hypothetical indivisible family of Rye and Tremont Funds.  (*Id.*)

Again, however, no Fund Distribution Claimant invested in a commingled pool of Rye and

Tremont Funds.  Rather, each Fund Distribution Claimant (including FutureSelect) invested in a

particular Rye or Tremont Fund with its own fund structure, investment objectives, and assets.[6]

Moreover, FutureSelect acknowledges that the FDA includes "varying amounts of

cash and litigation assets contributed by different funds."  (*Id.* at 9.)  While FutureSelect seeks to

treat all investors in the Rye and Tremont Fund complex "*as if* they were similarly situated" (*id.*

at 11, 7) (emphasis added), the fact is that these Funds and their investors are *not* similarly

situated.  *See* Point I(A), *supra*.  Thus, far from being the "only" proposal that is consistent with

other courts' Madoff cases, FutureSelect's plan of allocation is inconsistent with those cases—

including the Madoff bankruptcy case.

D.      *Literary Works* Does Not Support FutureSelect's Position

Finally, FutureSelect contends that Class Counsel's FDA Plan of Allocation is

"flatly prohibited" by *In re Literary Works in Electronic Databases Copyright Litigation*, 654

F.3d 242 (2d Cir. 2011), a case in which class certification was vacated based on a "fundamental

---

[6]   FutureSelect insists that the Second Circuit has defined "the subject investment" here as an
      undifferentiated mass of "Tremont Funds."  *See* ECF No. 1083 at 7-8 (citing *In re Bernard L.
      Madoff Inv. Sec. LLC*, 654 F.3d at 238).  The Circuit did no such thing.

conflict" between subclasses.  (ECF No. 1083 at 10-11.)  *Literary Works* is easily distinguishable.

In the first place, the entire notion of subclasses is a red herring because the FDA Plan of Allocation is not a "class action" settlement subject to Federal Rule of Civil Procedure 23.  As explained above, the only "class" that the Court certified under Rule 23 pertained to the NSF—from which FutureSelect opted out.  (ECF Nos. 604, 604-2 Exclusion ## 5-1-5-4.)  And since there is no "FDA class," there can certainly be no requirement to certify FDA subclasses.

Second, none of the named plaintiffs in *Literary Works* held only the weakest category of claims ("Category C claims").  *Literary Works*, 654 F.3d at 251-52.  Here, however, two of the Settlement Class Representatives represented by Class Counsel invested *only* in the Prime Fund, and another Settlement Class Representative invested *only* in the Prime and XL Funds.  (ECF No. 1097 at 7, 9.)  In addition, the mediation proceedings here were attended by multiple institutional investors—including FutureSelect—that invested *only* in the Prime and/or XL Funds, and were *each* represented by their *own individual counsel*.  The instant motion practice provides yet further evidence of the vigorous representation these investors have each individually received with respect to the FDA as a supplement to that of Class Counsel.  In these circumstances, there is no comparison with the Category C class members in *Literary Works*.[7]

Third, in addition to the lack of a structural conflict, there is no substantive conflict here either.  According to FutureSelect, a "fundamental conflict" between subclasses exists because certain investors "stand to gain more" under Class Counsel's Plan of Allocation

---

[7]    *See, e.g.*, *In re Antibiotic Antitrust Actions*, 333 F. Supp. 296, 298 (S.D.N.Y. 1971), *aff'd*, 450 F.2d 1119 (2d Cir. 1971) (noting "familiar doctrine of the federal courts that members of a class not present as parties to the litigation may be bound by the judgment where they are in fact adequately represented by parties who are present, *or where they actually participate in the conduct of the litigation*," and holding that plaintiffs were adequately represented by their own individual attorney who attended the settlement hearing) (emphasis in original).

than "other investors like FutureSelect."  (ECF No. 1083 at 11.)  However, since investors in the

various Rye and Tremont Funds have claims of dramatically different worth, differences in

settlement outcome do not suggest a "fundamental conflict."  *See Literary Works*, 654 F.3d at

253 ("That Category C claims recover less than Category A and B claims tells us little about

adequacy of representation, however, because the Category C claims individually are

indisputably worth less than Category B claims. . . .  It was not only appropriate but also

necessary for Category C claims to recover less than Category A and B claims."); *In re Pet Food

Prods. Liab. Litig.*, 629 F.3d 333, 347 (3d Cir. 2010) ("The fact that the settlement fund allocates

a larger percentage of the settlement to class members with [higher value] Claims does not

demonstrate a conflict between groups.  Instead, the different allocations reflect the relative

value of the different claims.").[8]  Nor has FutureSelect demonstrated, as in *Literary Works*, that

"the Settlement itself contains terms that illustrate a lack of adequate representation."  *Literary

Works*, 654 F.3d at 253-54.

       Last, whereas *Literary Works* involved a timely objection to a settlement

agreement by class members, FutureSelect opted out of the class action to pursue its currently

pending individual claims against the Defendants, and only now seeks the protection of subclass

representation in the context of the FDA Plan of Allocation (which is neither a class action nor a

settlement agreement).  The Settlement Agreement in this case has long since been finally

approved, as has the Trustee Settlement in the Madoff bankruptcy that predominantly funds the

FDA.  Moreover, FutureSelect could have made this same "subclass" argument in 2011 when it

objected to the settlement, when the Court certified a settlement class, and when *Literary Works*

---

[8]    In fact, as explained in Point I(B)-(C), the Prime and XL Funds will receive better treatment
under Class Counsel's FDA Plan of Allocation than Rye Onshore and Rye Offshore, and
substantially more than the Prime and XL Funds are entitled to as a matter of law.

13

was decided.  (ECF Nos. 459, 604.)  Indeed, Class Counsel had proposed a Fund-by-Fund

approach to the FDA in the *original* plan of allocation filed along with the Settlement in 2011.

(ECF No. 419-2, Exhibit 2 ¶¶ A, D, E; ECF No. 597-5, Exhibit 2 ¶¶ A, D, E.)  Yet, FutureSelect

waited four years before interjecting the subclass issue *after* the mediation in which it

participated to negotiate the FDA allocation did not turn out as hoped.  The Court should not

indulge FutureSelect's attempt to delay a long-awaited distribution to investors, re-do the entire

mediation, and further dilute the FDA with additional fees for "subclass" counsel when there has

been more than adequate representation all along.

## CONCLUSION

For the reasons stated above, SPCP Group, LLC respectfully requests that the

Court approve Class Counsel's FDA Plan of Allocation and deny FutureSelect's motion.

Dated:  New York, New York
        July 23, 2015

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP


By:   /s/ Walter Rieman
        Walter Rieman
        Daniel J. Juceam
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000
wrieman@paulweiss.com

*Attorneys for SPCP Group, LLC*

14