UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
IN RE TREMONT SECURITIES LAW, STATE   :   Master File No.
LAW AND INSURANCE LITIGATION          :   No. 08 CV 11117 (TPG)
                                      :
                                      :   ECF CASE
---------------------------------------------------------------X

**MEMORANDUM OF THE ROYAL BANK OF SCOTLAND N.V.
IN SUPPORT OF CLASS COUNSEL'S MOTION FOR APPROVAL OF FUND
DISTRIBUTION ACCOUNT PLAN OF ALLOCATION AND
IN OPPOSITION TO MICHAEL S. MARTIN'S MOTION**

The Royal Bank of Scotland N.V. (formerly known as ABN AMRO Bank N.V.) ("RBS") is a Settlement Class Member and Fund Distribution Claimant that suffered a net loss of $1.04 billion through its investments in Rye Select Broad Market Fund, L.P. ("Rye Onshore") and Rye Select Broad Market Portfolio Limited ("Rye Offshore"). RBS respectfully submits this memorandum in support of the Fund Distribution Account ("FDA") Plan of Allocation of the Plaintiffs' Settlement Class Counsel (Dkt. No. 1088) (the "Consensus PoA"), and in opposition to the Motion of Michael S. Martin for Approval of the Martin Fund Distribution Account Plan of Allocation (the "Martin Motion").

RBS joins and adopts the arguments in opposition to the Martin Motion in the memoranda of SPCP Group, LLC and Dolos X LLC, Dolos XI LLC, Dolos XII LLC, but writes separately to correct a number of mischaracterizations advanced by the Martin Motion.

To begin, the investor group supporting the Consensus PoA does not, as the Martin Motion mistakenly avers, "consist primarily of Fortress and other hedge funds that acquired their interests at a sharp discount in the secondary market after BLMIS collapsed [that] thus will earn substantial profits on their interests if the [Consensus PoA] is approved." (Martin Motion at 12 (emphasis omitted).) Quite the contrary, the Consensus PoA embodies a negotiated compromise

reached at the end of more than a year of arduous and complex mediation led by retired United Stated District Judge Layn R. Phillips and, as a result of great efforts expended in that mediation, now enjoys the support of a broad group of very differently situated investors. That group includes some, like RBS, that hold claims of a size comparable to or greater than those of Fortress and its affiliated funds.

Nor did all or even a majority of the Rye and Tremont investors that participated in the mediation and now support the Consensus PoA purchase their interests in the secondary market. Though the Martin Motion takes great pains to stress that Mr. Martin was a "'victim' of Madoff [who] invested in Rye and Tremont Funds before Madoff's fraud was disclosed," (Martin Motion at 12 (emphasis omitted)), the very same is true of a great number of the Consensus PoA's supporters including, in particular, RBS.

Specifically, RBS has held the same Rye fund interests for which it now seeks recovery under the FDA since before 2008, and suffered catastrophic losses on those investments when the BLMIS fraud was revealed. In the 2006-2007 time period, RBS entered into two total return swaps ("TRS's") with two Tremont-sponsored special purpose vehicles, Rye Select Broad Market XL Fund LP and Rye Select Broad Market XL Fund LP/Portfolio Limited (the "XL Funds"). Those TRS's were designed to offer the XL funds a leveraged exposure to Rye Select Broad Market Fund, LP ("Rye Onshore") and Rye Select Broad Market Portfolio Limited ("Rye Offshore"), respectively. As contemplated by the terms of the TRS's, RBS hedged its exposure to those instruments by making subscription investments in Rye Onshore and Rye Offshore in amounts that would offset the leverage being provided to the XL funds. Under those off-setting hedges, RBS held subscription investments in Rye Onshore and Rye Offshore purchased for hundreds of millions of dollars, but which were rendered worthless when the BLMIS fraud was discovered. As such, the Martin Motion's assertion that the Consensus PoA has been designed

to benefit so-called "vultures" over "victims" is patently incorrect—the losses suffered by RBS were direct and egregious in scale, and even under the best possible outcome will not be fully compensated in the FDA distribution process.

Indeed, even cursory scrutiny of the distribution mechanics proposed in Mr. Martin's plan of allocation (the "Martin PoA") is sufficient to put the lie to its claim to champion the interests of actual "victims."  In the first instance, the Martin PoA's proposed "priority allocation" would do nothing more than redistribute money away from "victims" invested in Rye Onshore and Rye Offshore toward those holding interests in funds that were not even customers of BLMIS—like Tremont Opportunity Fund II ("TOF II"), the fund in which Mr. Martin invested.  Not only would this fail to benefit "victims" at the expense of so-called "vultures," it would transgress both the spirit and express terms of the settlement between the BLMIS Trustee and the Rye and Tremont funds (the "Settlement Agreement"), which was so ordered by the United States Bankruptcy Court for the Southern District of New York and then affirmed by this Court.  That Settlement Agreement, in exchange for discharging the Rye and Tremont funds from clawback liability, granted allowed claims against the bankruptcy estate to only three funds—Rye Onshore, Rye Offshore, and Rye Select Broad Market Insurance Fund, L.P. ("Rye Insurance").  According to the terms of the Settlement Agreement, the monies received in connection with those allowed claims (which fund the FDA) are to be "allocated among Broad Market Fund [Rye Onshore], Portfolio Limited [Rye Offshore], Rye Insurance, and their respective partners and/or investors," and not to other "net winner" funds or those like TOF II, which are ineligible to receive allowed claims under the Securities Investor Protection Act because they were not customers of BLMIS.

Given these facts, RBS initially advocated and continues to hold the view that investors in funds other than the three with allowed claims—Rye Onshore, Rye Offshore and Rye

Insurance—hold no legal entitlement to distributions from the FDA.  Nonetheless, through more than a year of mediation, RBS was convinced to lend its support to the Consensus Proposal, which permits a measure of recovery to investors in other Tremont funds that more than fairly reflects those other funds' contributions to the Settlement Agreement.  Mr. Martin's suggestion that the Consensus PoA does nothing more than maximize profits for Rye Onshore and Rye Offshore investors like Fortress is just false—quite the opposite, the Consensus PoA grants distributions to other funds' investors that, but for the successful mediation process and painful compromise, RBS and other similarly situated parties would have litigated to prevent.

## CONCLUSION

Great efforts were expended to reach the compromise reflected in Class Counsel's Consensus PoA, which RBS understands is supported by the vast majority of mediation participants.  Mr. Martin's motion in support of his own, alternative Plan of Allocation seeks to derail that hard-fought compromise based on little more than mischaracterizations of its supporters and the nature and purpose of the FDA itself.  As such, RBS requests that the Court deny the Martin Motion and enter an order approving the Consensus PoA.

Dated:   New York, New York
         July 30, 2015

                              Respectfully submitted,

                              /Michael S. Feldberg____  _____
                              Michael S. Feldberg
                              ALLEN & OVERY LLP
                              1221 Avenue of the Americas
                              New York, NY 10020
                              212-610-6300

                              michael.feldberg@allenovery.com

                              *Counsel for The Royal Bank of Scotland N.V.*