UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | Master File No. 08 Civ. 11117 (TPG) |

**SPCP GROUP, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO MICHAEL S. MARTIN'S MOTION FOR APPROVAL OF MARTIN FUND DISTRIBUTION ACCOUNT PLAN OF ALLOCATION, CERTIFICATION OF SUBCLASS WITH INDEPENDENT COUNSEL, DISCLOSURE OF ALL AGREEMENTS MADE IN CONNECTION WITH THE PLAN OF ALLOCATION SUBMITTED BY CLASS COUNSEL, AND <u>LIMITED POST-JUDGMENT DISCOVERY AND EVIDENTIARY HEARING</u>**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT...................................................................................................................................4

    I.     Class Counsel's FDA Plan Of Allocation Should Be Approved.............................4

          A.     The "SIPC Claim" Allocation Is Reasonable ..............................................5

          B.     The "Virtual SIPC Claim" Allocation Is Reasonable .................................6

          C.     The "XL Priority Allocation" Is Reasonable ..............................................8

    II.    Martin's Motion Should Be Denied...........................................................................8

          A.     There Is No Merit To Martin's Proposed "Priority Allocations" ................9

          B.     There Is No Merit To Martin's "*Pro Rata*" Proposal ...............................10

          C.     There Is No Merit To Martin's "Subclass" Motion ..................................11

CONCLUSION................................................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Antibiotic Antitrust Actions*,
   333 F. Supp. 296 (S.D.N.Y. 1971),
   *aff'd,* 450 F.2d 1119 (2d Cir. 1971)..................................................................................12

*In re Bernard L. Madoff Inv. Sec. LLC*,
   654 F.3d 229 (2d Cir. 2011), *cert. dismissed*, 132 S. Ct. 2712,
   *and cert. denied*, 133 S. Ct. 24 (2012) ................................................................................6

*In re Bernard L. Madoff Inv. Sec. LLC*,
   708 F.3d 422 (2d Cir. 2013)..................................................................................................6

*In re Bernard L. Madoff Inv. Sec. LLC*,
   No. 11 CV 7330, 2012 WL 2497270 (S.D.N.Y. June 27, 2012).................................5, 9, 10

*CFTC* v. *Walsh*,
   712 F.3d 735 (2d Cir. 2013)................................................................................................11

*Chavarria* v. *N.Y. Airport Serv., LLC*,
   875 F. Supp. 2d 164 (E.D.N.Y. 2012) ..................................................................................4

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000)............................................................................................4

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ..........................................................................................4

*In re Literary Works in Electronic Databases Copyright Litig.*,
   654 F.3d 242 (2d Cir. 2011)....................................................................................11, 12, 13

*Maley* v. *Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)...................................................................................4

*In re Pet Food Prods. Liab. Litig.*,
   629 F.3d 333 (3d Cir. 2010)................................................................................................13

*Picard* v. *Tremont Grp. Holdings., Inc.*,
   Adv. Pro. No. 10-05310 (Bankr. S.D.N.Y.).................................................................. passim

*SEC* v. *Byers*,
   637 F. Supp. 2d 166 (S.D.N.Y. 2009),
   *aff'd sub nom. SEC* v. *Malek*, 397 F. App'x 711 (2d Cir. 2010) .......................................10, 11

*SEC* v. *Credit Bancorp, Ltd.*,
   290 F.3d 80 (2d Cir. 2002) ............................................................................................. 10

*In re Sturm, Ruger & Co., Inc. Sec. Litig.*,
   No. 3:09-cv-1293, 2012 WL 3589610 (D. Conn. Aug. 20, 2012) ................................. 4, 5

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ............................................................................... 4

*In re Tremont Sec. Law, State Law & Ins. Litig.*,
   542 F. App'x 43 (2d Cir. 2013) ......................................................................................... 7

*United States* v. *Ovid*,
   No. 09-CR-216, 2012 WL 2087084 (E.D.N.Y. June 8, 2012) ........................................ 11

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 0165, 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) .................................. 4, 5

*In re Warner Chilcott Ltd. Sec. Litig.*,
   No. 06 Civ. 11515, 2009 WL 2025160 (S.D.N.Y. July 10, 2009) .................................... 4

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) ............................................................................... 4

SPCP Group, LLC respectfully submits this memorandum of law in opposition to Michael S. Martin's motion to approve his purported plan of allocation, for certification of a putative subclass, and for other relief (ECF No. 1093).[1]

SPCP Group, LLC is a Settlement Class Member and Fund Distribution Claimant, as defined in the Stipulation of Partial Settlement (ECF No. 392-1), which holds $395 million of aggregate claims in Rye Select Broad Market Fund, L.P. ("Rye Onshore"), Rye Select Broad Market Portfolio Limited Fund ("Rye Offshore"), and Rye Select Broad Market XL Fund, L.P. ("XL Fund"). SPCP Group, LLC is managed by Silver Point Capital, L.P., a registered investment adviser.

## PRELIMINARY STATEMENT

Nearly four years after this Court approved a Settlement creating the Fund Distribution Account ("FDA"), and after more than a year of mediation supervised by retired U.S. District Court Judge Layn R. Phillips to negotiate a compromise on the FDA Plan of Allocation, Class Counsel has proposed a Plan of Allocation that enjoys broad support from an overwhelming majority of aggregate net ownership interests in the FDA, addresses the legitimate interests of all investors, and easily meets the standard of judicial review. Michael Martin's proposed plan of allocation does none of those things.

The Settlement approved by this Court on August 19, 2011, established two funds with substantially different purposes: (1) the Net Settlement Fund ("NSF"), which holds proceeds paid in settlement of claims brought by Plaintiffs against the Tremont Defendants in

---

[1] SPCP Group, LLC also adopts the facts and arguments submitted in opposition to Martin's motion by Dolos X LLC, Dolos XI LLC, and Dolos XII LLC. (ECF Nos. 1129-30.) Unless otherwise stated, all references to "ECF" Numbers in this memorandum relate to *In re Tremont Securities Law, State Law & Insurance Litigation*, Master File No. 08 Civ. 11117 (TPG).

1

class action litigation, and (2) the FDA, which seeks to distribute assets remaining in the Rye and Tremont Funds after a settlement of clawback claims brought by the Securities Investor Protection Act ("SIPA") Trustee in the Madoff bankruptcy *outside* of the Tremont class action. (ECF No. 392-1 ¶¶ 1.19, 1.50, 2.20-2.23; ECF No. 604; ECF No. 1089 at 16-17; ECF No. 1090 ¶ 7.)  The SIPA Trustee Settlement awarded nearly $3 billion in bankruptcy claims to three Rye Funds that were direct customers of Madoff and sustained net losses on their investments:  Rye Onshore, Rye Offshore, and Rye Select Broad Market Insurance Fund, L.P. ("Rye Insurance"). That Settlement and recognition of Allowed Claims was approved by Order of the Court. Pursuant to legal principles applicable to Ponzi schemes, SIPA, and the Madoff bankruptcy, the Trustee Settlement did not allow claims as to any other Fund—including the Tremont Funds.

Class Counsel's Plan of Allocation for the FDA represents a reasonable and carefully negotiated compromise.  Consistent with the Madoff bankruptcy claims awarded by Court Order to Rye Onshore, Rye Offshore, and Rye Insurance, the FDA Plan recognizes a "SIPC Claim" for those three Funds.  However, based upon mediation concessions secured by Class Counsel, it redistributes a substantial amount of the assets awarded to those three Funds in the Madoff bankruptcy to other Funds (such as the Tremont Funds) that were not Madoff customers at all.  To do so, Class Counsel's FDA Plan creates "Virtual SIPC Claims" for all Funds that contributed to the FDA at the same percentage awarded in the bankruptcy to Rye Onshore and Rye Offshore for the cash those two Funds contributed to the Trustee Settlement. These "Virtual SIPC Claims" come at the expense of investors who were net losers in net loser Rye Funds that—unlike the Tremont Funds—were 100% invested in Madoff directly.

While Class Counsel's FDA Plan of Allocation is generous to investors in the Tremont Funds, it is supported by a rational basis.  It gives a reasonable degree of deference to

the Trustee Settlement in the Madoff bankruptcy proceedings that funds the bulk of the FDA, substantially respects the separate legal status, ownership interests, and assets of distinct Funds, preserves all cross investments among the Funds, and treats similarly situated investors similarly.

Nevertheless, Martin seeks to increase the windfall he would already receive under Class Counsel's FDA Plan of Allocation. Martin invested in a single Tremont Fund, known as Tremont Opportunity Fund II L.P. ("TOF II"). (ECF No. 1095 at 18.) Although TOF II did not invest directly in Madoff and lacks any entitlement to share in the bankruptcy proceeds, Martin rejected Tremont's tender of his $40,257 Madoff-related economic loss (*id.* at 21) in order to propose a radical alternative to Class Counsel's Consensus Plan of Allocation for the FDA. Martin seeks to: (1) first reimburse all contributions made by any Rye or Tremont Fund to the Trustee Settlement "off the top," while discounting the contributions of Rye Onshore and Rye Offshore by roughly 75%; and then (2) distribute the balance of the FDA to investors in all of the Rye and Tremont Funds *pro rata*, further significantly diluting the Allowed Claims of Rye Onshore and Rye Offshore. (*Id.* at 2-3, 8.)

Martin's proposal to award a priority distribution to the Tremont Funds, followed by pooling all of the remaining assets of the Rye and Tremont Funds for *pro rata* distribution, is consistent only with maximizing his own recovery. Martin's proposal is internally inconsistent because it purports to respect Fund structure, the Trustee Settlement, and the avoidance of "unjust enrichment" when it comes to returning 100% of the monies contributed to the FDA by the Tremont Fund in which he invested, but casts those principles aside once Martin's Fund has recovered all of its money "off the top." Martin's proposal is also inconsistent with: (a) the purpose of the FDA to wind down Funds with separate corporate structures, segregated assets, and distinct groups of investors, (b) the clear and unambiguous terms of the Trustee Settlement

3

approved by the Madoff Bankruptcy Court to allow claims for three Funds exclusively, and (c) the legal and equitable principle that similarly situated investors should be treated similarly.

Accordingly, Martin's motion should be denied, and Class Counsel's FDA Plan of Allocation should be approved.

## ARGUMENT

### I.

### Class Counsel's FDA Plan Of Allocation Should Be Approved

Class Counsel's Plan of Allocation meets the applicable standard of review. A plan of allocation proposed by class counsel warrants approval when it is "fair and adequate." *See In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012). Such a plan "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515, 2009 WL 2025160, at *2-3 (S.D.N.Y. July 10, 2009); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005); *Maley* v. *Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002). In determining whether a plan of allocation is fair and reasonable, courts "look primarily to the opinion" of class counsel, and give plaintiff counsel's conclusion "great weight." *Chavarria* v. *N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 175 (E.D.N.Y. 2012) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997)); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 0165, 2007 WL 4115809, at *13 (S.D.N.Y. Nov. 7, 2007).

A "reasonable" plan of allocation may address the "relative strength and values of different categories of claims." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008); *see also In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000) (plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable). "'There is no rule that settlements benefit all class members equally.'" *In re Sturm,*

4

*Ruger & Co., Inc. Sec. Litig.*, No. 3:09-cv-1293, 2012 WL 3589610, at *8 (D. Conn. Aug. 20, 2012) (quoting *Veeco*, 2007 WL 4115809, at *13).  Under this standard, Class Counsel's FDA Plan of Allocation is reasonable and should be approved.

        A.        The "SIPC Claim" Allocation Is Reasonable

First, Class Counsel's Plan of Allocation recognizes that the principal source of funding for the FDA consists of nearly $3 billion in SIPC claims that the Madoff bankruptcy proceedings "conclusively allowed" in favor of *only* three Rye Funds and their investors.  *Picard v. Tremont Grp. Holdings., Inc.* ("*Picard*"), Adv. Pro. No. 10-05310 (Bankr. S.D.N.Y.), ECF Nos. 17-1 ¶ 5 and 38-1.[2]  Under the Court-approved Trustee Settlement, Rye Onshore, Rye Offshore, and Rye Insurance received these claims in exchange for the payment of nearly $1 billion to the Madoff bankruptcy estate.  *See In re Bernard L. Madoff Inv. Sec. LLC*, No. 11 CV 7330, 2012 WL 2497270, at *1 (S.D.N.Y. June 27, 2012); ECF No. 1089-1 ¶ B.16.  Moreover, the SIPC claims of Rye Onshore, Rye Offshore, and Rye Insurance are the predominant source of funding for the FDA—without which there would be no meaningful assets to distribute to *any* participant in the FDA.  (ECF No. 1089 at 11.)  It is entirely reasonable and rational for investors in these three Funds to receive credit in their FDA distribution for assets that they contributed to the FDA.  (ECF No. 1090 ¶ 25; ECF No. 1089 at 4.)

---

[2]    Section 5 of the Trustee Settlement Agreement in the Madoff bankruptcy proceedings provided:  (i) Rye Onshore has a "conclusively allowed" claim of $1,647,687,625.00; (ii) Rye Offshore has a "conclusively allowed" claim of $498,490,000.88; (iii) Rye Insurance has a "conclusively allowed" claim of $40,000,000.00; and (iv) Rye Onshore and Rye Offshore have a Section 502(h) claim of $800,000,000.00.  In Section 5c of the Settlement Agreement, entitled "Allocation to the Funds," the Tremont Defendants covenanted to "cause *all* payments received from the Trustee in respect of the Total Allowed Claims Amount to be fairly and equitably allocated among Broad Market Fund, Portfolio Limited, Rye Insurance, and *their* respective partners and/or investors."  *Id.*, ECF. No. 17-1 ¶ 5 (emphasis added).

Likewise, it is reasonable that investors in Funds other than Rye Onshore, Rye Offshore, and Rye Insurance did not receive SIPC claims. For example, the Tremont Funds are not entitled to a SIPC claim because they were not direct Madoff customers. (ECF No. 1090 ¶ 25; ECF No. 1123 at 9.) *See In re Bernard L. Madoff Inv. Sec. LLC*, 708 F.3d 422, 426-27 (2d Cir. 2013) (SIPC claims belong only to direct Madoff customers). Evidently recognizing this, the Tremont Funds did not even file a customer claim with the Trustee in the Madoff bankruptcy. (ECF No. 1123 at 5; *Picard*, ECF No. 17-1 at 9-10.)

Moreover, only "net loser" Funds are entitled to recover in the Madoff bankruptcy. *See In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 238 (2d Cir. 2011), *cert. dismissed*, 132 S. Ct. 2712, *and cert. denied*, 133 S. Ct. 24, 25 (2012). Whereas Rye Onshore and Rye Offshore suffered net losses in Madoff to the tune of over $2 billion, *see Picard*, ECF No. 38-1 at 5, Martin conspicuously does *not* claim that the TOF II Fund in which he invested was a net loser.[3]

In short, it is reasonable and appropriate for the FDA Plan of Allocation to recognize a SIPC Claim for investors in Rye Onshore, Rye Offshore, and Rye Insurance, particularly when that SIPC Claim represents only a fraction of the claim these Funds were "conclusively allowed" in the Madoff bankruptcy proceedings.

B.  The "Virtual SIPC Claim" Allocation Is Reasonable

Even though the Bankruptcy Court did not award any claim to the Tremont Funds that contributed to the Trustee Settlement, Class Counsel's mediation-derived Plan of Allocation grants a "Virtual SIPC Claim" to these Funds equal to 80% of the cash that they contributed,

---

[3]   According to Class Counsel, two Tremont Funds that contributed a combined $12 million to the Trustee Settlement were "net winners and, thus, by definition under the Settlement, are not eligible to participate in the FDA." (ECF No. 1123 at 6 n.8; ECF No. 1093-2, Ex. A ¶ B.16.)

creating a vehicle for recovery by their investors. (ECF No. 1089-1 ¶ B.20; ECF No. 1089 at 7 & n.10.) This is the *same percentage* awarded to Rye Onshore and Rye Offshore in the Trustee Settlement under Section 502(h) of the Bankruptcy Code for the cash that they contributed. (ECF No. 1089-1 ¶ B.20; ECF No. 1090 ¶ 26; ECF No. 1089 at 17-18 & n.14.) To fund the Virtual SIPC Claims, Class Counsel's FDA Plan of Allocation would dilute the bankruptcy claims of Rye Onshore, Rye Offshore, Rye Insurance, and their investors in order to redistribute substantial assets to investors in non-Madoff customers, such as the Tremont Funds. In addition to creating Virtual SIPC Claims, Class Counsel's Plan of Allocation preserves and recognizes inter-Fund cross investments, including those of the Tremont Funds. (ECF No. 1090 ¶ 27; ECF No. 1089 at 7, 17-18, 22.)

In this sense, the Virtual SIPC Claim treats the Tremont Funds better than Rye Onshore and Rye Offshore. Whereas certain Rye Funds contributed nearly $1 billion to the Trustee Settlement to secure releases from clawback claims that benefitted all participants in the Settlement, the Tremont Funds received the benefit of a complete release by collectively contributing just one-tenth of that amount to the Trustee Settlement (with Martin's Fund contributing less than one-tenth of that one-tenth). (ECF No. 1123 at 6 n.8; ECF No. 1089 at 4-5; ECF No. 1093-2, Ex. A ¶ B.16.) Moreover, whereas Rye Onshore and Rye Offshore were 100% invested in Madoff directly, the Tremont Funds had only *de minimis* indirect exposure to Madoff through cross investments in the Rye Funds. *See In re Tremont Sec. Law, State Law & Ins. Litig.*, 542 F. App'x 43, 46 (2d Cir. 2013); ECF No. 1123 at 12. For example, the TOF II Fund in which Martin invested had only a 6.5% exposure to Madoff through cross investments in Rye Onshore, Rye Select Broad Market Prime Fund, L.P. ("Prime"), and the XL Fund. (ECF No. 1089 at 4 n.8; ECF No. 1095 at 21.)

7

### C. The "XL Priority Allocation" Is Reasonable

Class Counsel's FDA Plan of Allocation grants the XL Fund a "priority distribution" of the first $32.4 million allocated under the FDA. (ECF No. 1089-1 ¶ B.22.) Class Counsel proffers a basis for this distribution on the ground that XL is the only Fund that contributed cash directly to the FDA under the Settlement Agreement in this action, rather than through the Trustee Settlement in the Madoff bankruptcy. (ECF No. 1090 ¶ 28; ECF No. 1089 at 18.) Martin does not dispute this fact, and his own proposed plan of allocation also grants a $32.4 million priority distribution to the XL Fund. (ECF No. 1093-2, Ex. A ¶ B.16).

\* \* \*

Because it gives some recognition to the Court-approved Trustee Settlement in the Madoff bankruptcy proceedings, respects Fund boundaries and legal principles governing corporate ownership rights, and treats similarly situated investors similarly, Class Counsel's FDA Plan of Allocation has a "reasonable, rational basis" and should be approved.

### II.

### Martin's Motion Should Be Denied

Martin concedes that the Trustee Settlement supplies "substantially all of the monies that will be disbursed from the FDA," and provides a "substantial benefit to <u>all</u> Rye and Tremont Fund investors." ECF No. 1095 at 7; *see also id.* at 2 ("[A]bsent those contributions, there would have been no deal with the Trustee, and thus no money to pay any recovery to investors."). Nonetheless, Martin insists that Class Counsel's priority allocation to the XL Fund does not go far enough, and must likewise be awarded to all of the Rye and Tremont Funds that contributed to the Trustee Settlement in order to avoid unjust enrichment to Funds that did not contribute to the Trustee Settlement. As explained below, Martin's proposed priority distributions would not solve the "unjust enrichment" problem, but only aggravate it.

8

        A.      <u>There Is No Merit To Martin's Proposed "Priority Allocations"</u>

Professing to respect Fund structure and the Trustee Settlement that principally funds the FDA, Martin seeks to take the following amounts "off-the-top" of the FDA and award them to the following Funds before any disbursement is made to any investor: "Rye Onshore ($7,500,000), Rye Offshore ($204,944,000), Prime ($35,666,000), TOF III ($51,403, 840), TOF II ($7,637,210), TMNF II ($18,152,500), TMNF ($4,470,300), and XL ($32,409, 239)." (ECF No. 1093-2, Ex. A ¶ B.16; ECF No. 1095 at 7.) Martin's proposal is unprincipled and unpersuasive.

First, Martin ignores that fact that the Trustee Settlement deliberately denied *any* allocation to the Tremont Funds. This is because, as Martin does not dispute, the Tremont Funds were not Madoff customers and had no bankruptcy claim as a matter of law. Indeed, we understand that two of the Tremont Funds that Martin seeks to represent were not only non-customers, but "net winners" as well. (ECF No. 1123 at 6 n.8; ECF No. 1093-2, Ex. A ¶ B.16.)

Second, despite purporting to return all of the monies contributed to the Trustee Settlement by the Rye and Tremont Funds, Martin discounts $650 million in contributions of Rye Onshore and Rye Offshore by ignoring the loans those two Funds incurred to finance a settlement that benefitted all of the Funds. As Martin acknowledges, those loans were secured by SIPC claims awarded in the Trustee Settlement to Rye Onshore and Rye Offshore. (ECF No. 1095 at 9.) Contrary to Martin's assertion, however, the fact that the SIPC recoveries poured over from the Trustee Settlement into the FDA does not mean that those assets "belonged to <u>all</u> Rye and Tremont Fund investors." (*Id.* at 9-10.) Nothing in the Trustee Settlement or the FDA suggests that SIPC claims "conclusively" awarded only to Rye Onshore and Rye Offshore in the Madoff bankruptcy should be shared equally with investors in Funds that have no SIPC claim. *See In re Bernard L. Madoff Inv. Sec. LLC*, No. 11 CV 7330, 2012 WL 2497270 (S.D.N.Y. June

9

27, 2012) (approving Trustee Settlement, and holding that the FDA did not give investors in Funds other than Rye Onshore and Rye Offshore a direct pecuniary interest in the SIPC claims).

### B. There Is No Merit To Martin's "*Pro Rata*" Proposal

Having trumpeted Fund structure and the Trustee Settlement as bases for a "priority distribution" to the Tremont Fund in which he invested, Martin jettisons those considerations when it comes to distributing the balance of the FDA after his "priority" distribution has been satisfied.  At that point, Martin seeks to commingle all Rye and Tremont Fund assets into a single pool for distribution to all investors as if the FDA eviscerated the separate corporate structure and ownership interests of each Fund, effected a substantive consolidation of all of their assets, eliminated their debt, and somehow decreed that investors who deliberately chose to invest in each of the very different Funds are all "similarly situated."

To support his pooling proposal, Martin states that there is a presumption in liquidations of a receivership estate that fund proceeds will be distributed to investors *pro rata*. (ECF No. 1095 at 6.)  Apart from invoking this argument selectively, Martin's citations stand for the very different proposition that a district court can, in its discretion, allow a *pro rata* distribution when:  (1) proposed by a receiver seeking to fashion a fair and equitable allocation, (2) the funds of the defrauded victims were "commingled," *and* (3) the victims are "similarly situated."  *See SEC* v. *Credit Bancorp, Ltd.*, 290 F.3d 80, 88-89 (2d Cir. 2002) (court had equitable discretion to approve receiver's *pro rata* distribution plan where "the funds of the defrauded victims were commingled and where victims were similar situated"); *SEC* v. *Byers*, 637 F. Supp. 2d 166, 176-77 (S.D.N.Y. 2009) (approving receiver's *pro rata* distribution plan where investor funds were "extensively commingled" and victims were "similarly situated," and stating that both factors "must be satisfied to approve a pro rata distribution"), *aff'd sub nom.*

*SEC* v. *Malek*, 397 F. App'x 711, 716 (2d Cir. 2010); *accord CFTC* v. *Walsh*, 712 F.3d 735, 741, 744-45, 750, 753-54 (2d Cir. 2013) (similar).

But here, none of those conditions is satisfied. First, after years of deliberation and consultation with all interested investors, Class Counsel has concluded that a *pro rata* plan would not be the most fair and equitable allocation under the facts of this case. Second, there is no suggestion by anyone that the Rye and Tremont Fund assets were "commingled." (ECF No. 1123 at 11.)[4] Third, as explained in Point I(A), the Rye and Tremont Fund investors are not "similarly situated." In these circumstances, a *pro rata* distribution is inappropriate under the "fundamental rules of property." *United States* v. *Ovid*, No. 09-CR-216, 2012 WL 2087084, at *8 (E.D.N.Y. June 8, 2012) (rejecting *pro rata* distribution where hedge funds were legally separate entities, there was no commingling of assets, and victims were not similarly situated).

In short, Martin provides no justification for interpreting the FDA as the basis for a freewheeling redistribution of assets among legally distinct Funds with segregated assets, simply because they happen to be affiliated with the same fund management complex.

C.     There Is No Merit To Martin's "Subclass" Motion

Finally, Martin asks the Court to: (1) certify a subclass of investors in four Tremont Funds, (2) appoint himself as representative of the Tremont subclass, and (3) appoint his own attorneys as counsel for the Tremont subclass. (ECF No. 1093.) Martin contends that this is required by *In re Literary Works in Electronic Databases Copyright Litigation*, 654 F.3d 242 (2d Cir. 2011), a case in which class certification was vacated based on a "fundamental conflict" between subclasses. (ECF No. 1095 at 19.) *Literary Works* neither mandates nor justifies the certification of a Tremont subclass.

---

[4]   Indeed, Martin's proposal that the FDA return to each Fund the precise amount that it contributed to the Trustee Settlement is antithetical to any suggestion of commingling.

First, the entire notion of subclasses is a red herring in the context of the FDA Plan of Allocation, which is not a "class action" settlement. Compensation to the "class" in these proceedings comes from the NSF—not the FDA. Conversely, those who opted out of the class are excluded from the NSF, but can participate in the FDA. (ECF No. 604 ¶ 20.) That is because the FDA effects a quasi-liquidation of the Rye and Tremont Funds by distributing assets remaining in each of those Funds independent of the claims Plaintiffs brought in the Tremont class action. (ECF No. 1089 at 3; ECF No. 392-1 ¶¶ 1.19, 1.50; ECF No. 1095 at 2, 4.) And since there is no "FDA class," there can certainly be no requirement to certify FDA subclasses.

Second, none of the named plaintiffs in *Literary Works* held only the weakest category of claims ("Category C claims"), as to which a subclass was sought. *See Literary Works*, 654 F.3d at 251-52. Here, however, at least one Settlement Class Representative represented by Class Counsel—the Group Defined Pension Plan & Trust—invested *only* in the Tremont Funds. (ECF No. 604 ¶ 7; ECF No. 66 ¶ 10; ECF No. 381 ¶ 10.) In addition, the mediation proceedings here were attended by sophisticated investors (such as Martin) that invested only in the Tremont Funds, and were each represented by their *own individual counsel*. The instant motion practice provides yet further evidence of the vigorous representation Tremont investors have individually received with respect to the FDA as a supplement to that of Class Counsel and their Class Representative(s). In these circumstances, there is no comparison with the Category C class members in *Literary Works*.[5]

---

[5] *See, e.g.*, *In re Antibiotic Antitrust Actions*, 333 F. Supp. 296, 298 (S.D.N.Y. 1971) (noting "familiar doctrine of the federal courts that members of a class not present as parties to the litigation may be bound by the judgment where they are in fact adequately represented by parties who are present, *or where they actually participate in the conduct of the litigation*," and holding that plaintiffs were adequately represented by their own individual attorney who attended the settlement hearing), *aff'd*, 450 F.2d 1119 (2d Cir. 1971).

Third, in addition to the lack of a structural conflict, there is no substantive conflict here either. According to Martin, a "fundamental conflict" exists between subclasses because Class Counsel's FDA Plan presents a "lopsided allocation." (ECF No. 1095 at 20.) However, since investors in the various Rye and Tremont Funds have claims of dramatically different worth, differences in settlement outcome do not suggest a "fundamental conflict." *See Literary Works*, 654 F.3d at 253 ("That Category C claims recover less than Category A and B claims tells us little about adequacy of representation, however, because the Category C claims individually are indisputably worth less than Category B claims. . . . It was not only appropriate but also necessary for Category C claims to recover less than Category A and B claims."); *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 347 (3d Cir. 2010) ("The fact that the settlement fund allocates a larger percentage of the settlement to class members with [higher value] Claims does not demonstrate a conflict between groups. Instead, the different allocations reflect the relative value of the different claims.").[6] Nor has Martin demonstrated, as in *Literary Works*, that "the Settlement itself contains terms that illustrate a lack of adequate representation." *Literary Works*, 654 F.3d at 253-54.

Last, whereas *Literary Works* involved a timely objection to a settlement agreement, the Settlement Agreement in this case has long since been finally approved, as has the Trustee Settlement in the Madoff bankruptcy that predominantly funds the FDA. Moreover, Martin could have moved for "subclasses" in 2011 when the Court certified a settlement class and when *Literary Works* was decided. (ECF Nos. 459, 604.) Indeed, Class Counsel's original plan of allocation for the FDA filed with the Settlement in 2011 respected Fund boundaries and

---

[6] In fact, as explained in Point I(B), the Tremont Funds will receive better treatment under Class Counsel's FDA Plan of Allocation than Rye Onshore and Rye Offshore, and substantially more than they are entitled to as a matter of law.

13

did not allow any Tremont Fund to take money "off the top," as Martin now says is required. (ECF No. 419-2, Ex. 2 ¶¶ A, D, E; ECF No. 597-5, Ex. 2 ¶¶ A, D, E.) Yet Martin waited *four years* to interject the subclass issue, and until *after* the FDA allocation mediation in which he participated did not turn out as hoped. The Court should not indulge Martin's attempt to delay a long-awaited distribution to investors, re-do the entire mediation, and further dilute the FDA with additional fees for "subclass" counsel when there has been more than adequate representation all along.

## CONCLUSION

SPCP Group, LLC respectfully requests that the Court approve Class Counsel's FDA Plan of Allocation and deny Martin's motion in its entirety.

Dated:  New York, New York
        July 30, 2015

                            PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

                            By:  /s/ Walter Rieman
                                 Walter Rieman
                                 Daniel J. Juceam
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000
wrieman@paulweiss.com

*Attorneys for SPCP Group, LLC*