UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | Master File No.<br>08 Civ. 11117 (TPG)<br><br>ECF Case |

**RESPONSE OF HSBC BANK PLC IN OPPOSITION TO**
**MICHAEL S. MARTIN'S MOTION FOR APPROVAL OF**
**MARTIN FUND DISTRIBUTION ACCOUNT PLAN OF ALLOCATION**

HSBC Bank plc ("HSBC") is a class member that suffered a net loss of $580.3 million through its investments in Rye Select Broad Market Fund L.P. ("Rye Onshore") and Rye Select Broad Market Portfolio Limited ("Rye Offshore"). HSBC also holds a first-priority security interest in all interests held by Rye Select Broad Market XL Fund L.P. ("XL") in Rye Onshore, entitling HSBC to any recovery related to those interests. HSBC respectfully submits this memorandum in opposition to the Motion of Michael S. Martin for Approval of the Martin Fund Distribution Account Plan of Allocation (the "Martin Motion").

HSBC adopts and joins the arguments of Dolos X LLC, Dolos XI LLC, and Dolos XII LLC in their response to the Martin Motion. HSBC also respectfully refers the Court to its response to FutureSelect's motion to approve its plan of allocation [Dkt. No. 1121] (the "HSBC FutureSelect Response"), which applies with equal force to the Martin Motion. HSBC submits this additional memorandum principally to address several additional reasons why this Court should deny that Motion.[1]

---

[1] HSBC also opposes Mr. Martin's Motions for Certification of Subclass with Independent Counsel, Disclosure of All Agreements Made in Connection with the Plan of Allocation Submitted by Class Counsel, and Limited Post-Judgment Discovery and Scheduling of an Evidentiary Hearing, and HSBC adopts the arguments in the Responses of SPCP Group, LLC and Dolos X LLC, Dolos XI LLC, and Dolos XII LLC with respect to those motions.

At bottom, the plan proposed in the Martin Motion (the "Martin Proposal"[2]) is similar to—and suffers from many of the same flaws as— the FutureSelect Proposal.[3] Like the FutureSelect Proposal, the Martin Proposal provides for a pro rata distribution of the FDA among investors regardless of whether they were invested in "net loser" or "net winner" Funds or whether those Funds even invested into BMIS. As already extensively described in the HSBC FutureSelect Response and other investors' oppositions to the FutureSelect Proposal,[4] such a distribution scheme is inconsistent with the court-approved Trustee Settlement, in which the Trustee granted claims against the BMIS estate only to Rye Onshore, Rye Offshore, and Rye Insurance, the three "net loser" Funds that invested into BMIS. It also is precluded by Second Circuit precedent that only "net loser" funds that directly invested in BMIS may recover in bankruptcy. Moreover, a pro rata distribution scheme improperly disregards the separate corporate forms of the respective Funds, each of which made different investment decisions, had different levels and kinds of exposure to BMIS, held different assets, and had different investors. The pro rata allocation in the Martin Proposal is based not in law or equity, but in Mr. Martin's efforts to maximize his own recovery, since the only Fund in which he invested—Tremont Opportunity Fund II ("TOF II")—was not directly invested in BMIS, did not receive an allowed claim, and has no right to any recovery from the FDA, except to the extent it would be entitled to

---

[2] The Martin Proposal is attached as Exhibit A to the Declaration of J. Elazar Fruchter in support of the Martin Motion.

[3] All capitalized terms not defined herein shall have the meanings ascribed in the HSBC FutureSelect Response or, if not defined therein, the Class Counsel Motion.

[4] *See, e.g.*, HSBC FutureSelect Response at 4-5; Dolos FutureSelect Response [Dkt. No. 1118] at 16-17; SPCP Group LLC's FutureSelect Response [Dkt. No. 1125] at 10-11; Class Counsel FutureSelect Response [Dkt. No. 1123] at 9-11.

recovery as a result of its Cross-Investments into Funds with allowed claims against the BMIS estate.[5]

The Martin Proposal, like the FutureSelect Proposal, also fails to recognize HSBC's first-priority continuing security interest in "all rights (contractual or otherwise whether constituting general intangibles or investment property or other financial assets) constituting, arising under, connected with, or in any way related to" XL's investment in Rye Onshore (the "Collateral"), which includes any distribution from the FDA on account of those interests, as explained in the HSBC FutureSelect Response. *See* HSBC FutureSelect Response at 8-9. Whereas section B.23 of the Consensus Proposal explicitly preserves HSBC's rights to the Collateral, the Martin Proposal contains no such provision and thus would deprive HBSC of its legal rights.

The Martin Proposal differs from the FutureSelect proposal in two significant ways, both of which make the proposal even more objectionable. First, the Martin Proposal provides that each Fund that contributed to the Trustee Settlement and in return received a full release from the Trustee—regardless of whether it was a "net winner" or "net loser" and whether it even invested with BMIS—would receive a full, "off the top" priority reimbursement of its contribution to the Trustee Settlement from the FDA. Martin Motion at 7-8. This feature again ignores that the FDA consists of funds paid by the BMIS Trustee on account of Rye Onshore's, Rye Offshore's, and Rye Insurance's allowed claims; neither "net winner" Funds nor Funds that did not directly invest with BMIS have a right to receive *any* recovery from the FDA, much less a priority recovery. In the court-approved Trustee Settlement, the Trustee explicitly recognized the contributions of directly-invested "net loser" Funds by granting them 502(h) claims equal to 80%

---

[5] No such recovery would be available as a result of a Cross-Investment in which TOF II did not have a net loss, nor would recovery be available with respect to XL's investment in Rye Onshore, to which HSBC holds all rights.

of their respective contributions, but did *not* grant similar claims to "net winner" Funds or indirectly-invested Funds that contributed to the Trustee Settlement.

Again, this feature of the Martin Proposal is apparently motivated by Mr. Martin's desire to increase his own recovery. TOF II contributed only $7.7 million in assets to the Trustee Settlement, but in exchange, it received a release of more than $30 million in Trustee clawback claims. Not satisfied with the significant benefit that TOF II already received as part of the Trustee Settlement, Mr. Martin has proposed a plan that would allow him to benefit from the full reimbursement of the $7.7 million TOF II contribution, despite having no legal right to do so. Inconsistently and even more egregiously, the Martin Proposal would provide the investors in Rye Onshore and Rye Offshore no enhanced recovery for the $650 million that those Funds contributed to the Trustee Settlement after receiving loans from Fortress Investment Group, LLC. Although the Martin Proposal purports to treat all settlement contributors equally, it in fact discriminates against investors in the two Funds that contributed the most to achieve the Trustee Settlement.

Following the lengthy mediation process, and in the interest of compromise, HSBC and other investors in the Rye Onshore, Rye Offshore, and Rye Insurance Funds have agreed to a provision of the Consensus Proposal that treats these indirectly-invested and "net winner" Funds as if they *were* granted 502(h) claims equal to 80% of their contributions, giving them a "Virtual SIPC Claim" that will entitle them to recover from the FDA on account of that claim. Thus, the Consensus Proposal takes money that rightfully belongs to the investors in Rye Onshore, Rye Offshore, and Rye Insurance and places other Funds, and thus their investors, on a similar footing. This concession more than adequately compensates these Funds for their contributions

and satisfies any concerns truly motivated by equity.[6] The Martin Proposal, on the other hand, is simply an unprincipled attempt by Mr. Martin to maximize his own recovery at the expense of others.

The second way that the Martin Proposal differs from the FutureSelect Proposal is in its bizarre approach to calculating individual investors' net losses for the purposes of a pro rata allocation and distribution. The Martin Proposal provides that an investor's net gains in one Fund "do not offset [its] Net Losses in other [Funds]." Martin Proposal at 5. Thus, if an investor had a gain of $50 million in a "net winner" Fund, and only a $10 million loss in a different "net winner" Fund, but no investment at all in Rye Onshore, Rye Offshore, or Rye Insurance (the three "net loser" Funds that received claims against the BMIS estate), that investor would be entitled to both a priority recovery and a pro rata recovery from the FDA despite being an overall "net winner" with no actual entitlement to any payment. In addition to having no basis in law or in equity, this aspect of the Martin Proposal can hardly be considered a "reasonable, fair and equitable method" for allocating and distributing the FDA. *See* Martin Proposal at 1.

## CONCLUSION

Like the FutureSelect Proposal, the Martin Proposal unlawfully and self-servingly allocates the FDA to investors in "net winner" Funds and fails to preserve HSBC's rights to its Collateral. The two significant features that distinguish the Martin Proposal from the FutureSelect Proposal—its priority reimbursement of certain Funds' contributions to the Trustee Settlement and exclusion of net gains when making a pro rata allocation—make this proposal

---

[6] Mr. Martin, like FutureSelect, appeals to rhetoric instead of law to oppose the Consensus Proposal in favor of his own, claiming "upon information and belief" that the Consensus Proposal "favors 'vulture' funds over Madoff victims" by dispersing the majority of proceeds to hedge funds that acquired their interests from actual "Madoff victims." Martin Motion at 1. However, as explained in HSBC's and other investors' prior briefs, these assertions are both irrelevant and untrue. HSBC alone suffered a net loss of $580.3 million of its own money through investments in the Funds, which it made prior to BMIS's collapse.

even more unlawful and inequitable. Accordingly, HSBC respectfully requests that the Court deny the Martin Motion and grant such other and further relief as it deems just and proper.

Dated: New York, New York
       July 30, 2015

                                      Respectfully submitted,

                                      CLEARY GOTTLIEB STEEN & HAMILTON LLP

                                      By: */s/ Thomas J. Moloney*

                                      Thomas J. Moloney
                                      Joaquin P. Terceño
                                      Daniel D. Queen
                                      S. Ellie Norton
                                      One Liberty Plaza
                                      New York, New York 10006
                                      T: 212-225-2460
                                      F: 212-225-3999
                                      (tmoloney@cgsh.com)

                                      *Attorneys for HSBC Bank plc*