# EXHIBIT A

# MARTIN PLAN OF ALLOCATION
# FOR THE FUND DISTRIBUTION ACCOUNT

**A.     Introduction**

The purpose of this Fund Distribution Account Plan of Allocation ("Martin FDA POA") is to establish a reasonable, fair and equitable method of distributing the money remaining in the Fund Distribution Account established under Section 1.19 of the Stipulation (as defined below) (after payment of any Court-approved attorneys' fees and expenses associated with administration of the FDA) to Fund Distribution Claimants (as defined below).

**B.     Definitions**

All capitalized terms in this POA shall have the definitions set forth below:

1. "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York.

2. "BLMIS" means Bernard L. Madoff Investment Securities LLC.

3. "Claims Administrator" means The Garden City Group, Inc.

4. "Contributing Tremont Funds" means Tremont Market Neutral Fund L.P. "TMNF"); Tremont Market Neutral Fund II, L.P. ("TMNF II"); Tremont Opportunity Fund II L.P. ("TOF II"); and Tremont Opportunity Fund III L.P. ("TOF III").

5. "Contribution" means any amount paid on or before December 11, 2008 by a Fund Distribution Claimant to an Eligible Hedge Fund for, or in connection with ownership of, an Eligible Security.

6. "Court" means the United States District Court for the Southern District of New York.

7. "Disbursement" means the amount payable to a Fund Distribution Claimant from the FDA under Section C below.

8. "Eligible Carrier" means one of the following insurance carriers that invested in Eligible Hedge Funds:  (a) New York Life; (b) Metropolitan Life Insurance Company; (c) John Hancock Variable Life; (d) General American; (e) Pacific Life Insurance Company; (f) Hartford Life Insurance Company; (g) Pruco Life Insurance Company; (h) Security Life of Denver; (i) AIG Life Insurance Company; (j) Sun Life (SLF) Assurance Company; (k) Scottish Annuity and Life; (l) Nationwide Life; (m) New England Life Insurance Company; (n) Acadia Life Limited; (o) The Scottish Annuity Life Insurance Co. (Cayman) Ltd.; (p) AGL Life Assurance Company; (q) BF&M Life Insurance Company Limited; and (r) The Scottish Annuity and Life Insurance Company (Bermuda) Ltd.  Each Eligible

Carrier shall be considered a Fund Distribution Claimant for all purposes in this POA. "Eligible Policyholder" is an owner of a variable universal life insurance policy or deferred variable annuity policy that was issued by an Eligible Carrier.

9. "Eligible Hedge Funds" means:

   - Rye Select Broad Market Fund, L.P. ("Rye Onshore");
   - Rye Select Broad Market XL Fund, L.P. ("XL");
   - Rye Select Broad Market Prime Fund, L.P. ("Prime");
   - Rye Select Broad Market Insurance Fund, L.P. ("Rye Insurance");
   - Rye Select Broad Market Insurance Portfolio, LDC (but only with respect to INTAC Independent Technical Analysis Centre Ltd., LifeInvest Opportunity Fund, LDC, Scottish Annuity Company (Cayman) Limited, The Scottish Annuity and Life Insurance Company (Bermuda) Ltd. and The Scottish Annuity Life Insurance Co. (Cayman) Ltd.);
   - Rye Select Broad Market Portfolio Limited ("Rye Offshore");
   - Rye Select Broad Market XL Portfolio Limited;
   - Broad Market XL Holdings Limited;
   - Tremont Market Neutral Fund L.P. ("TMNF");
   - Tremont Market Neutral Fund II, L.P. ("TMNF II");
   - Tremont Market Neutral Fund Limited;
   - Tremont Opportunity Fund Limited;
   - Tremont Opportunity Fund II L.P. ("TOF II");
   - Tremont Opportunity Fund III L.P. ("TOF III");
   - Tremont Arbitrage Fund, L.P.;
   - Tremont Arbitrage Fund-Ireland; and
   - Tremont Strategic Insurance Fund, L.P.

10. "Eligible Securities" means limited partnership interests or shares purchased by Fund Distribution Claimants in Eligible Hedge Funds on or before December 11, 2008.

11. "Fund Distribution Account" or "FDA" means the account created under Section 1.19 of the Stipulation to hold funds for the benefit of Fund Distribution Claimants.

12. "Fund Distribution Claimant" means any current limited partner or shareholder of an Eligible Hedge Fund that either (i) invested in Eligible Securities of such Eligible Hedge Fund on or before December 11, 2008, by way of a Contribution (an "Original Investor"), or (ii) acquired Eligible Securities of an Eligible Hedge Fund from an Original Investor by gift, assignment, inheritance or operation of law.

Only those Fund Distribution Claimants who suffered a Net Loss on their investment in an Eligible Hedge Fund are entitled to a Disbursement from the FDA with respect to such investment. Fund Distribution Claimants who realized a Net Gain on their investment in an Eligible Hedge Fund are <u>not</u> entitled to a

Disbursement from the FDA with respect to such investment. Where a Fund Distribution Claimant has investments in more than one Eligible Hedge Fund, the Net Loss or Net Gain of such Fund Distribution Claimant with respect to each such Eligible Hedge Fund shall be determined on a Fund-by-Fund basis without offset (i.e., if such Fund Distribution Claimant had Net Gains with respect to investments in certain Eligible Hedge Funds, and Net Losses with respect to investments in other Eligible Hedge Funds, the Net Gains shall not offset the Net Losses in connection with calculating such Fund Distribution Claimant's Recognized Claim).

Any Fund Distribution Claimant that acquired an Eligible Security in an Eligible Hedge Fund after December 11, 2008, shall receive Disbursements based on the Net Loss of the limited partner or shareholder who held such Eligible Security as of December 11, 2008.

13. "Net Gain" means the amount by which the Redemptions of a Fund Distribution Claimant from an Eligible Hedge Fund exceeded the Contributions of such Fund Distribution Claimant to such Eligible Hedge Fund, calculated as of December 11, 2008.

14. "Net Loss" means the amount by which the Contributions of a Fund Distribution Claimant to an Eligible Hedge Fund exceeded the Redemptions of such Fund Distribution Claimant from such Eligible Hedge Fund, calculated as of December 11, 2008.

15. "POA" means this Plan of Allocation.

16. "Priority Allocation" means the following amounts allocated to each of the Priority Entitled Funds (as defined below) on a priority basis (i.e., "off-the-top") from the FDA prior to any Disbursement of any funds from the FDA to any Fund Distribution Claimants: Rye Onshore ($7,500,000), Rye Offshore ($204,944,000), Prime ($35,666,000), TOF III ($51,403,840), TOF II ($7,637,210), TMNF II ($18,152,500), TMNF ($4,470,300), and XL ($32,409,239) (which amounts are equal to the amounts contributed by each of the Priority Entitled Funds to either the Trustee Settlement or the FDA from their remaining assets as of July 25, 2011).

17. "Priority Claim" means a Fund Distribution Claimant's *pro rata* share, if any, of the Priority Allocation granted hereunder to a Priority Entitled Fund. Such Priority Claim shall be calculated with respect to a Priority Entitled Fund in which such Fund Distribution Claimant was invested by multiplying the Priority Allocation of such Priority Entitled Fund by a fraction, the numerator of which is the Net Loss, if any, that such Fund Distribution Claimant suffered with respect to such Priority Entitled Fund, and the denominator is the sum total of all Net Losses suffered by all Fund Distribution Claimants with respect to such Priority Entitled Fund.

Thus, for example, if a Fund Distribution Claimant suffered a Net Loss of $1 million with respect to Rye Onshore (i.e., its Contributions to Rye Onshore exceeded its Redemptions from Rye Onshore by $1 million), and hypothetically, the

3

total Net Losses suffered by all Fund Distribution Claimants with respect to Rye Onshore is $100 million, then such Fund Distribution Claimant would be entitled to 1% (i.e., $1 million/$100 million) of the Priority Allocation of $7,500,000 allocated to Rye Onshore under Section B.16 above, or $75,000.

18. "Priority Entitled Funds" means: Rye Onshore, Rye Offshore, Prime, XL and the Contributing Tremont Funds.

19. "Recognized Claim" means the sum total of a Fund Distribution Claimant's Net Losses with respect to all Eligible Hedge Funds in which such Fund Distribution Claimant was invested via ownership of Eligible Securities. A Fund Distribution Claimant's Recognized Claim is not the actual amount a Fund Distribution Claimant will recover from the FDA, but rather is used by the Claims Administrator solely to determine the Disbursement to which the Fund Distribution Claimant is entitled from the FDA under Section C below, provided that Disbursements to a Fund Distribution Claimant shall not exceed such Fund Distribution Claimant's Recognized Claim.

20. "Redemption" means any amount withdrawn on or before December 11, 2008 by a Fund Distribution Claimant from an Eligible Hedge Fund in connection with ownership of an Eligible Security.

21. "Rye Funds" means the Eligible Hedge Funds listed in Section 1.52 of the Stipulation.

22. "Stipulation" means the Stipulation of Partial Settlement in *In re Tremont Securities Law, State Law and Insurance Litigation* (08 Civ. 11117 (TPG)) dated February 23, 2011, and approved by the Court by order, dated August 19, 2011. (ECF 392-1).

23. "Tremont" means Tremont Group Holdings, Inc., as defined in Section 1.64 of the Stipulation.

24. "Tremont Funds" means the Eligible Hedge Funds identified in Section 1.65 of the Stipulation.

25. "Trustee" means Irving H. Picard, as trustee for the liquidation of the business of BLMIS.

26. "Trustee Complaint" means the complaint filed by the Trustee against Tremont, the Rye Funds, the Tremont Funds, and other defendants in the bankruptcy proceeding for BLMIS, captioned *Picard v. Tremont Holdings, Inc., et al.*, Adv. Pro No. 10-05310 (BRL).

27. "Trustee Settlement" means the Settlement Agreement, dated July 25, 2011, settling the adversary proceeding commenced by the filing of the Trustee Complaint.

4

C.     **Disbursements from the Fund Distribution Account**

After determining the Disbursement(s) from the FDA to which each Fund Distribution Claimant is entitled, the Claims Administrator shall disburse the funds in the FDA as follows:

(i) first, pay all Priority Claims in full directly to Fund Distribution Claimants entitled to such Priority Claims in accordance with Section B.17 above; and then

(ii) second, pay each Fund Distribution Claimant a Disbursement in an amount determined by multiplying the balance remaining in the FDA (after payment in full of all Priority Claims) by a fraction, the numerator of which is such Fund Distribution Claimant's Recognized Claim, and the denominator of which is the sum total of all Recognized Claims of all Fund Distribution Claimants; provided that no Fund Distribution Claimant shall receive more than its Recognized Claim.

Thus, for example, if a Fund Distribution Claimant had a Net Loss of $20,000,000 with respect to Rye Onshore, a Net Loss of $10,000,000 with respect to Rye Offshore, and a Net Gain of $50,000,000 with respect to Prime, then such Fund Distribution Claimant's total Net Losses across all Eligible Hedge Funds in which such Fund Distribution Claimant was invested is $30,000,000 (since Net Gains in Eligible Hedge Funds do not offset Net Losses in other Eligible Hedge Funds), and its Recognized Claim is $30,000,000 (i.e., the sum of all Net Losses). Thereafter, if hypothetically, (i) the balance remaining in the FDA <u>after payment in full of all Priority Claims</u> is $1 billion, and (ii) the sum total of all Recognized Claims of all Fund Distribution Claimants is $3 billion, then such Fund Distribution Claimant would be entitled to 1% (i.e., $30 million/$3 billion) of the balance remaining in the FDA, or $10 million (i.e., 1% of $1 billion).

Eligible Policyholders will be paid by their Eligible Carrier out of the Eligible Carrier's Disbursement based on a methodology to be determined by the Eligible Carrier.

Determinations by the Claims Administrator and Disbursements made pursuant to this POA above shall be conclusive against all Fund Distribution Claimants. No person shall have any claim against the Settling Plaintiffs, Plaintiffs' Settlement Counsel or the Claims Administrator based on Disbursements, determinations or claim rejections made substantially in accordance with this POA or further orders of the Court, except in the case of fraud or willful misconduct.  No person shall have any claim under any circumstances against the Released Parties based on any Disbursements, determinations or claim rejections or the design, terms or implementation of this POA.

If there is any balance remaining in the FDA (whether by reason of unclaimed funds, tax refunds, uncashed checks, or otherwise), at a date one hundred eighty (180) days from the later of (a) the date on which the Court enters an order directing the FDA to be disbursed to Fund Distribution Claimants, or (b) the date the Settlement is final and becomes fully effective, then Plaintiffs' Settlement Counsel shall, upon approval of the Court, disburse such balance among Fund Distribution Claimants as many times as is necessary, in a manner consistent with this POA, until each Fund Distribution Claimant has received its

Recognized Claim (but no greater than its Recognized Claim) as calculated under this POA.  If Plaintiffs' Settlement Counsel determines that it is not cost-effective to conduct such further disbursement, or following such further disbursement any balance still remains in the FDA, Plaintiffs' Settlement Counsel shall, with the consent of the State Law and Securities Plaintiffs and upon approval of the Court, and without further notice to the State Law Subclass and Securities Subclass Members, cause the remaining balance to be disbursed *cy pres*.