EXHIBIT A
(Questions This Court Should Ask)

Why didn't Judge Phillips provide a declaration in support of the FDA-POA?

How much are Defendants' Affiliates expected to recover from the FDA-POA?

How much of the Net Settlement Fund did Defendants' Affiliates receive?

All communications to or from those selling interests in any Fund to or from any Insider at any time after the Settlement was agreed upon in February, 2011.

Where are the declarations from lead plaintiffs showing that they support the FDA-POA and LCs' additional fee request?

Did any lead plaintiff personally attend mediation?

Have any of the lead plaintiffs sold to secondary market purchasers?

Did the Proofs of Claim signed by any Swap-Counterparty voluntarily release all claims against all Settling Funds?

How is the $800,000 additional claim described at 1089/16 allocated between Rye Onshore and Rye Offshore?

What were the terms of the Fortress Loans to Rye Onshore and Rye Offshore?

What assurances does the Court have that the "wide range of confidential documents detailing specific financial information for the Funds and the individual investors therein…" (1089/20) was not in fact used to facilitate secondary market purchasers from class members?

What assurance does the Court or Investors have that the information Tremont provided to the Claims Administrator (1089/24) was correct?  Neither the Court nor Investors ever saw it.

LC request 3% of all Madoff-Trustee amounts; however, the ultimate amount of those payments are unknown.  Shouldn't there be a fee cap?

Were LCs' fees discussed at mediation?

Did LC negotiate their fee request with any mediation participant?

1

That portion of LCs' contracts with Westlaw/Lexis showing which databases are included in their monthly plan, along with that portion of LCs' bills from Westlaw/Lexis showing $123,630.55 of out-of-pocket payments for research not within the plan.