UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
                                        :

IN RE TREMONT SECURITIES LAW, STATE  :
LAW AND INSURANCE LITIGATION         :    Master File No.:
                                          :    08 Civ. 11117 (TPG)
                                          :
------------------------------------------------------- x
This Document Relates to:  All Actions     x    **JURY TRIAL DEMANDED**
                                          :
                                          :    **ECF Case**
------------------------------------------------------- x

### DECLARATION OF LAYN R. PHILLIPS IN SUPPORT OF MOTION FOR APPROVAL OF FUND DISTRIBUTION ACCOUNT PLAN OF ALLOCATION

I, LAYN R. PHILLIPS, declare:

1.      I submit this declaration in connection with the motion of Plaintiffs' Settlement

Class Counsel ("Class Counsel") to approve Class Counsel's Plan of Allocation ("PoA") for the

Fund Distribution Account (the "FDA Consensus PoA") (ECF 1088), and to address the motion

of Michael S. Martin ("Martin") to approve his PoA for the Fund Distribution Account ("FDA")

(ECF 1093) and Martin's opposition to the FDA Consensus PoA (ECF 1146).  I am submitting a

declaration in order to address, in particular, Mr. Martin's and his counsel's (i) suggestion that I

do not believe the FDA Consensus PoA to be fair and reasonable (I believe it is fair and

reasonable), or to have been "the product of hard-fought arm's-length negotiation" (to my

knowledge it was the product of such negotiation), and (ii) request for discovery into the

mediation process, which violates the strict and express oral and written confidentiality

conditions that I set and that all parties to the mediation, including Martin's counsel, agreed to at

the outset of and throughout the mediation, and on which all participants were entitled to rely.

### A.    My Background

2.      I am a former U.S. District Judge of the U.S. District Court for the Western

District of Oklahoma, Oklahoma City.  I am currently the Chief Executive Officer of Phillips

ADR, where I specialize in alternative dispute resolution.  I am a member of the bars of Oklahoma, Texas, California and the District of Columbia.

3.     A true and correct copy of my curriculum vitae is attached hereto as Exhibit A.

4.     A considerable amount of my professional time is devoted to serving as a mediator and arbitrator in connection with complex cases like this one.  I have over twenty years of dispute resolution experience, having conducted thousands of mediations and settlement conferences in all types of litigation, including complex class actions, securities fraud actions and shareholder derivative actions, many of which involved mediated allocation proceedings of some type.  For each of the past few years, I have resolved several billion dollars of claims and settlements involving hundreds of parties.  Without in any way waiving the mediation privilege, I make this declaration based on my personal knowledge and am competent to testify as to the matters set forth herein.

5.     As stated in my previous declaration in support of the Motion for Approval of the Net Settlement Fund Plan of Allocation (ECF No. 989) (the "NSF Declaration"), I was initially selected by plaintiffs to serve as mediator regarding the disbursement of funds recovered for investors as a result of the settlement of the above-captioned actions (the "Actions"), including the most appropriate PoAs for distribution of both the Net Settlement Fund ("NSF") and the FDA.

6.     I am familiar with the factual and legal issues involved in the Actions and the oral and written submissions provided by the entities and groups who expressed a desire to participate in post-fairness hearing mediation ("Interested Parties" or "Parties").  I am also familiar with the process by which the parties negotiated the FDA PoA.  In my capacity as the independent mediator, I presided over the lengthy and highly contentious mediation negotiations among the

2

more than two dozen Interested Parties regarding the disbursement of the NSF and the FDA, including (i) a two-day, in-person mediation session – involving all-party and "break out" discussions, and including Mr. Martin's counsel – which was held on July 28th and 29th, 2014 in New York City; (ii) a mediation session with one of the Interested Parties in January 2015 in New York City; and (iii) an additional full mediation session among representatives of more than a dozen Interested Parties – involving all-party and "break out" discussions, and including Mr. Martin's counsel – on May 8, 2015, also in New York City.  I also presided over numerous bi-lateral and multi-party conference calls and informal meetings between and among various Interested Parties and Class Counsel throughout the mediation process.  The all-party and break-out mediation sessions and informal discussions provided multiple opportunities for Interested Parties to air their concerns and to discuss those concerns with Class Counsel and the proponents of opposing viewpoints and to get various participants to modify or compromise their positions. I also encouraged Interested Parties to try to resolve their disputes and positions among themselves, bi-laterally or multi-laterally, in negotiations to reach agreements *inter se* in which I was not personally involved.  I can express no opinion on any such agreements that were reached without my participation, albeit with my encouragement.

7.      Based upon my review of the materials, submissions and arguments of counsel presented in advance of and during the mediation, as well as the quality and effect of advocacy during the mediation, I can also verify that the representation provided by counsel for each of the parties was of the highest caliber.

**B.      Confidentiality And The July 2014 Mediation Sessions Regarding the Plans of Allocation**

**(1)      Confidentiality**

8.     Martin's description and discussion of the nature and limits on the confidentiality conditions and ground rules set by me, as agreed to by all of the Interested Parties, including Martin's counsel, is incomplete and therefore inaccurate.  In particular, Martin contends that my confidentiality limitations were limited to Rule 408 of the Federal Rules of Evidence; and he references only the written short-form confidentiality agreement that I require all parties to sign at the beginning of the mediation, from which he selectively quotes.  Martin omits the further confidentiality conditions and ground rules I set *orally*, and to which all parties and counsel (including Mr. Martin's counsel) were required to and did agree, at the outset of the first mediation session, as a condition to being allowed to participate.  As counsel for Dolos X LLC, Dolos XI LLC and Dolos XII LLC (collectively, "Dolos") has previously explained to the Court, every participant in the mediation was instructed by me, and was required to agree, that the entire mediation process and all communications, negotiations and agreements pursuant thereto were covered with a complete cloak of confidentiality and must remain confidential, including in particular, being off limits from discovery, court papers, arguments or other Court proceedings, absent further agreement by the parties.  Every mediation participant was entitled to rely on such ground rules and conditions, which I have been routinely stating orally at the outset of the mediations I have conducted over the past twenty years.  Moreover, the written Mediation Confidentiality Agreement, which Martin references and that I required all participants to sign, further provided, *inter alia*: "no statement made during the course of the mediation or any materials generated for the purpose of the mediation may be offered into evidence, disseminated, published in any way, or otherwise publicly disclosed."  July 1, 2015 Ltr. From I. Warren to Court (ECF 1081).

9.     I specifically advised the Parties at the mediation that while I was not the presiding trial judge, I would help anyone who found it necessary to enforce the confidentiality protections by advising this Court of our agreement in the event that any participant attempted to breach these oral and written ground rules and conditions.  I say this routinely at mediations because I want everyone to be comfortable and candid in expressing their positions and negotiating and reaching agreements to resolve their disputes bi-laterally and multi-laterally, in an effort to avoid or minimize objections to what hopefully would be a resolution supported by a consensus of participants.

### (2)     The July 2014 Mediation Sessions

10.     During the July 2014 mediation, I engaged in numerous discussions with Class Counsel and representatives of the various Interested Parties (including Mr. Martin's counsel) in group and private break-out meetings.  Through these discussions and my review of the submissions of the Interested Parties, I gained an understanding of the positions of the various Parties, including Martin, the relative strengths and weaknesses of those positions, and the effects of continued litigation over distribution of the FDA.  While Class Counsel were present during many of the sessions with Interested Parties, I also met with various Parties and their counsel, outside the presence of Class Counsel.

11.     At each of the July 2014 mediation sessions, the Parties vigorously (at times, stridently) advocated their quite disparate positions regarding the appropriate FDA PoA, which also provided an opportunity for the various Parties to ask and answer questions of each other. To generate consensus among the Parties, I devoted part of the mediation to describing the Parties' opposing positions and encouraged potential compromises, which certain participants expressed a willingness to make or explore.

12.     As I stated in my NSF Declaration, the July mediation sessions were highly productive. The majority of the discussions among the Parties concerned the FDA POA and, while the Parties did not reach a consensus at that time on the FDA (as opposed to the NSF), the mediation provided a clear path forward for continued negotiations.

C.     **Subsequent Discussions and May 2015 Mediation Sessions Regarding the FDA Plan of Allocation**

13.     Subsequent to the July 2014 mediation sessions, and as the parties had by then had the opportunity to express their own views and to hear others' arguments and suggestions, I requested that the Interested Parties submit their proposals in writing. Over the course of the next several months, various detailed proposals were submitted.

14.     Aided by these submissions and in an attempt to obtain consensus regarding the FDA PoA, I had numerous telephone calls and meetings outside the mediation sessions with Interested Parties and Class Counsel. During those calls and meetings, the Parties elaborated on their concerns, commented on their own and others' proposals, and worked with Class Counsel to negotiate certain terms of a possible FDA PoA. The discussions primarily focused on the issues that remained after the July mediation sessions, and we attempted to find ways – and I encouraged the individual parties to continue to negotiate bilaterally, multi-laterally and even without my involvement – to resolve their issues, so that the maximum consensus on a FDA PoA could be reached.

15.     In January 2015, Class Counsel and I had a private session with one of the Interested Parties, wherein we discussed their proposed version of the FDA PoA (which I thereafter circulated to all participants), as well as alternative versions. I also had subsequent discussions with various Interested Parties, during which they further elaborated on their positions.

16.    In a final effort to determine if a consensus could be reached, on March 4, 2015, I contacted additional Interested Parties who had yet to resolve their concerns and positions regarding the FDA PoA. I inquired whether each Party believed there was an impasse or if a mediated settlement was feasible; and if so, whether the Parties were interested in participating in another mediation session.

17.    I received many positive responses from Parties who, though advocating quite divergent positions, supported having an additional mediation session. In light of those responses, I determined that another session would be productive and scheduled it for May 8, 2015. Prior to that session, Class Counsel circulated to the Parties a proposed "consensus" FDA PoA, which further attempted to adequately address the issues identified during the ongoing mediation and set forth Class Counsel's position on compromise as to those remaining issues.

18.    The May 8, 2015 mediation session was conducted in the same manner as the sessions held in July 2014. The mediation began with a joint session attended by the Parties, Class Counsel and I. I first reminded everyone, including Martin's counsel, of the mediation confidentiality conditions by which all were bound. No one objected. Class Counsel then explained their proposed "Consensus FDA POA." Interested Parties were encouraged to – and vigorously did – state their positions regarding the proposed PoA and asked questions about it. Thereafter, Class Counsel and I held individual break-out meetings with various Interested Parties, wherein each Party could (and did) voice their concerns and Class Counsel could (and did) attempt to reach consensus on the terms of the FDA PoA.

19.    The May 8, 2015 mediation session was highly productive; it achieved substantial consensus (albeit not unanimity) from the mediation process, and Class Counsel thereafter submitted its proposed FDA Consensus PoA.

20.     I have continued my efforts, including further bilateral mediations over which I presided, and others over which I did not, to get Interested Parties to resolve their still-outstanding issues, with the goal of achieving consensus, and given the number of parties who were coming to resolution around the FDA Consensus PoA proposed by class counsel, avoiding or minimizing objections to the proposal by Class Counsel, even after counter proposals and objections to that proposal were filed.  On those occasions where I participated, it was typically at the request of a specific party or parties.  Many of these efforts have been successful.

21.     Martin incorrectly suggests in court filings that I do not believe Class Counsel's proposed FDA Consensus PoA to be fair because I had submitted an affidavit in support of Class Counsel's application for approval of their proposed *NSF* PoA as being fair and reasonable, but had not submitted one in support of Class Counsel's application for approval of their FDA Consensus PoA.  *See* Memorandum of Law in Support of Motion of Michael S. Martin for Approval of Martin Fund Distribution Account Plan of Allocation (ECF 1095) at 20 n.10 ("Notably, Judge Phillips did not submit an affirmation in connection with Class Counsel's submission of the CC FDA POA, as he did in connection with Class Counsel's submission of the Net Settlement Fund Plan of Allocation . . . which highlights the lack of consensus concerning the CC FDA POA."); Memorandum of Law of Michael S. Martin in Opposition to (I) the Plan of Allocation Submitted by Class Counsel and (II) Class Counsel's Proposed Order (ECF 1146) at 1 ("[T]he mediator did not file a declaration in support of the CC FDA POA urging its approval as 'the product of hard-fought, arm's-length negotiations.'").  Martin's suggestions and inferences are flat-out incorrect, and I can confirm that Martin's counsel made no attempt to contact me about these representations or the inferences he was asking the Court to draw from them, prior to

any of his filings with the Court.[1]  I did not believe it appropriate for me to comment while I was

still working on various resolutions and until I had seen and reviewed any and all objections to

the FDA Consensus PoA, competing proposals, etc.  Now that I have, including seeing Martin's,

I am comfortable stating that the FDA Consensus PoA is a fair and reasonable allocation

respecting the various factual and legal arguments, and further accommodating the parties'

various "equitable" arguments that were presented in previous negotiations.  For anyone who has

presided over allocation mediation proceedings, as I have for more than 20 years, there is no

such thing as a perfect allocation.  By their nature, agreed upon allocations permit those with

weak or untenable legal claims as a matter of fact and/or law to share, to at least some degree,

fairly and equitably in the final resolution.  In my view, the FDA Consensus PoA is a fair and

reasonable way to allocate the risks presented by this litigation, and to the extent Martin and

others are suggesting I thought otherwise, this is incorrect.

### D.    Conclusion

22.    Based on my first-hand observations, I can represent to the Court that I have no

reason whatsoever to believe that the FDA Consensus PoA was anything other than the product

of hard-fought, arm's-length negotiations by skilled, experienced and effective counsel.  In my

opinion, the FDA Consensus PoA reflects a fair and reasonable compromise of the risks

presented by this litigation.

---

[1] I note that counsel for the "Tremont Fund Objectors" (which did not participate in the mediation) suggests that the Court ask "[w]hy didn't Judge Phillips provide a declaration in support of the FDA-POA?"  This declaration answers that question, as well.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on August 17, 2015, at Newport Beach, California.

LAYN R. PHILLIPS
Former United States District Court Judge



### LAYN R. PHILLIPS

Layn R. Phillips, founder of Phillips ADR Enterprises (PADRE), is both a former United States Attorney and a former United States District Judge.

Judge Phillips joined the United States Attorney's office in Los Angeles in 1980 as an Assistant United States Attorney, serving as a federal prosecutor in the Central District of California for four years. During the Reagan administration, he returned to his home state of Oklahoma, where, at age 31, he was nominated to serve as a United States Attorney.

At age 34, he again was nominated by President Reagan to serve as a United States District Judge in Oklahoma City. During his four years on the bench, he presided over more than 140 federal trials in Oklahoma, New Mexico, and Texas. He also sat by designation on the United States Court of Appeals for the Tenth Circuit in Denver, Colorado, where he participated in numerous panel decisions and published multiple opinions.

For his years of commitment to public service, in 1989 he was named as one of the 10 Outstanding Young Americans by the U.S. Junior Chamber of Commerce. In 1991, he resigned from the federal bench and joined Irell & Manella, LLP where for 23 years he specialized in complex civil litigation, internal investigations, and alternative dispute resolution. As a result of his trial work, in 1997 Judge Phillips was elected into the American College of Trial Lawyers. He has the dual honor of being named by LawDragon in 2006 as one of the "Leading Judges in America" and as one of the "Leading Litigation Attorneys in America."

Judge Phillips received both his B.S. and J.D. from the University of Tulsa. He also completed two years of an LLM program at Georgetown University Law Center in the field of antitrust and economic regulation of industry.

Judge Phillips has also been inducted into the University of Tulsa Athletic Hall of Fame. He was a four-year letter winner in tennis, serving as the captain of the men's varsity team and winning the NCAA Missouri Valley Conference Championship at #1 singles. Judge Phillips has a passion for travel and has visited every continent. He currently resides in Laguna Beach, California, with his wife Kathryn. He has three grown children Amanda, Parker and Graham and a granddaughter, Stella.