UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____               │
│ DATE FILED:  9/14/15             │
└─────────────────────────────────┘
```

IN RE TREMONT SECURITIES LAW,
STATE    LAW    AND    INSURANCE
LITIGATION

08-cv-11117

**OPINION**

Before the court is a motion to approve the distribution of certain money recovered for the benefit of a class of Madoff investors (the "Settling Class"). Counsel for the Settling Class ("Class Counsel") moves to distribute the money according to a particular Plan of Allocation.

Several parties have objected to Class Counsel's Plan of Allocation. One objector, investor George S. Martin, has also moved the court to approve an alternative Plan of Allocation, and to certify subclasses and order disclosure of certain materials.

Class Counsel's motion to approve its Plan of Allocation is approved. All objections are overruled, and the motion of objector Martin is denied.

### Case History

The court assumes familiarity with the extensive record in this case. Nevertheless, a recapitulation is in order.

Defendants in this case are the Tremont funds and related entities. Plaintiffs are investors, or their successors in interest, who suffered because defendants invested their funds with Bernard Madoff.

On March 26, 2009, the court entered an order creating three groups of consolidated actions against defendants: the Securities Actions, the State Law Actions, and the Insurance Actions.

On February 25, 2011, following mediation by retired District Judge Layn R. Phillips, plaintiffs and defendants signed a Stipulation of Partial Settlement. (See Dkt. No. 392-1, 2011 Stipulation.) On August 19, 2011, after two fairness hearings, this court signed an order and final judgment dismissing plaintiffs' claims pursuant to the settlement. That settlement (the "Class Settlement") has now survived appeal. See In re Tremont Sec. Law, State Law, & Ins. Litig., No. 11-4030 (2d Cir. Apr. 3, 2014), cert. denied, 135 S. Ct. 270 (2014).

Pursuant to the Class Settlement, two vehicles were created to facilitate the compensation of plaintiffs. The first vehicle, the Net Settlement Fund ("NSF"), housed a class action settlement recovery of $100 million, minus certain recoveries and expenses. After a thorough hearing, the court approved a Plan of Allocation for the NSF in an order and accompanying opinion dated June 5, 2015. (Dkt. No. 1072, June 5, 2015 Opinion.) The order permitted the distribution of the NSF to members of the Settling Class. The distribution of the NSF commenced in July 2015.

2

The second vehicle created pursuant to the Class Settlement, known as the Fund Distribution Account ("FDA"), is now at issue. The FDA consists principally of assets paid by the SIPA Trustee for the liquidation of Madoff's firm (the "Madoff Trustee") to particular funds controlled by the Tremont defendants, called the Rye funds. These assets come to the Rye funds in connection with a separate settlement (the "Trustee Settlement") approved in 2011 by the U.S. Bankruptcy Court for the Southern District of New York. See Picard v. Tremont Grp. Holdings, Inc., Adv. Pro. No. 10-05310 (Bankr. S.D.N.Y. Sept. 22, 2011). The Trustee Settlement permitted three Rye funds to make valuable claims ("SIPA claims")[1] against the Madoff estate, and the FDA provides a mechanism for eligible claimants to receive a portion of the money obtained through those claims. Eligible claimants to the FDA are not identical to members of the Settling Class, although the groups overlap substantially.

The current size of the net recovery to all FDA claimants is approximately $650 million. (Class Counsel Joint Decl. ¶ 47.) However, this amount will grow over time as more money is recovered by the Madoff Trustee and paid against customer claims. The expectations of the market for Madoff customer claims suggest that the ultimate recovery to FDA claimants will grow to approximately $1.446 billion.

Class Counsel now asks the court to approve a Plan of Allocation for the FDA. Class Counsel's Plan of Allocation distinguishes between investors in

---

[1] See Securities Investor Protection Act (SIPA), 15 U.S.C. § 78aaa-*lll.*

different funds so that investors in some funds will receive a substantial recovery from the FDA while investors in other funds will receive little or nothing. The reasons for allocating the FDA in this manner relate to the structure of the Trustee Settlement and the mediation process that resulted in Class Counsel's Plan of Allocation. And these distinctions are, in large part, the source of the objections to Class Counsel's Plan of Allocation. Additional background concerning the Trustee Settlement and the mediation process is therefore warranted.

### The Trustee Settlement and the SIPA Claims

On December 15, 2008, the Madoff Trustee was appointed to liquidate the business of Madoff's brokerage under section 5(b)(3) of SIPA. Pursuant to section 78eee(a)(4)(A) of SIPA, the Securities and Exchange Commission consented to a combination of its action with an action by the Securities Investor Protection Corporation ("SIPC") to recover losses for Madoff customers. In the resulting SIPA proceeding, four Rye funds (Madoff-exposed hedge funds controlled by the Tremont defendants) filed SIPA customer claims seeking compensation from the Madoff Trustee for their losses in the Ponzi scheme.

On December 7, 2010, the Madoff Trustee filed claims against the Tremont defendants seeking to recover $2.1 billion in transfers from Madoff. The latter claims might have wiped out any possibility of gains to plaintiffs through the FDA by depleting all resources at defendants' disposal and negating any recovery from the Madoff Trustee. The Class Settlement in this case helped facilitate the Trustee Settlement, which resolved those claims against defendants.

Pursuant to the Trustee Settlement, numerous Tremont and Rye funds contributed a total of approximately $1 billion to the Madoff Trustee. In exchange, the Madoff Trustee waived a total of $2.1 billion in liability for all the settling funds. Additionally, the settlement conclusively allowed valuable SIPA customer claims to three Rye funds: Rye Onshore ($1.6 billion), Rye Offshore ($498 million), and Rye Insurance ($40 million). (Dkt. No. 1130-7, Trustee Settlement ¶ 5.) Further, the Rye Onshore and Rye Offshore funds received increases in the amount of claims, pursuant to 11 U.S.C. § 502(h), corresponding to 80% of the $1 billion contribution to the Trustee Settlement ($800 million). (Id.)

Thus, the total amount of the three Rye funds' SIPA claims is nearly $3 billion. These claims, which have already been paid in part but will likely never be paid in full, are the source of the bulk of the money in the FDA.[2]

Different settling funds contributed to the $1 billion Trustee payment in different ways and in different amounts. First, money remaining in various Rye and Tremont funds' accounts furnished approximately $350 million. The majority of that amount came from the Rye funds' accounts, while about $94 million came from the accounts of the various Tremont funds. (Dkt. No. 1089, Class Counsel Mot. at 5.)

An additional $650 million (rounding out the $1 billion payment to the Madoff Trustee) came from a loan provided by Fortress Investment Group and

---

[2] The only other source of money in the FDA is a special direct contribution of $36 million by the Rye XL fund. (Dkt. No. 1161, Class Counsel Reply Ex. B.)

taken out jointly by the aforementioned three Rye funds—Rye Onshore, Rye Offshore, and Rye Insurance.  (Id. at 11.)

### The Mediation

Over the course of between one and two years, through mediation sessions conducted by retired District Judge Layn Phillips, Class Counsel negotiated various compromises and secured the support of a large majority of FDA claimants for its proposed Plan of Allocation.  The resolution of disputes through that mediation has streamlined what might otherwise have been a far more complex litigation.

The participants entered into mediation on an understanding of strict confidentiality.  Several objectors now seek to disturb that confidentiality and argue that either the court or the public should review the mediation proceedings.  Other parties, writing in support of Class Counsel, urge the court to preserve the confidentiality.

Judge Phillips has submitted a declaration stating that he believes that the confidentiality of the mediation should not be disturbed, the mediation was fair, and Class Counsel's Plan of Allocation represents a reasonable compromise of competing interests and risks.  (See Phillips Decl. at ¶¶ 20-22.)

## I.   Class Counsel's Motion to Approve its Plan of Allocation for the FDA

Class Counsel's Plan of Allocation for the FDA can be summarized as follows.  First, a priority allocation of more than $32 million will be made from

the FDA to the Rye XL fund.[3]  The Rye XL fund is situated differently from other funds receiving money from the FDA because it contributed cash directly to the FDA in connection with the Trustee Settlement.  Class Counsel stresses that the priority allocation is therefore justified.[4]  All claims besides the priority allocation enjoy equal priority.

Class Counsel's Plan of Allocation also creates a category of FDA claims called "virtual SIPC claims."  The virtual SIPC claims represent concessions to investors in funds that did not receive money pursuant to section 502(h) under the Trustee Settlement, even though they contributed to the payment to the Madoff Trustee.  In recognition of that apparently unfair situation, the virtual SIPC claims entitle the contributing funds to the same benefit enjoyed by the Rye Onshore and Rye Offshore funds through their section 502(h) compensation. Namely, the virtual SIPC claims are worth 80% of their holders' contributions to the Madoff Trustee.  This means that if the Madoff Trustee paid 100% on all claims, the funds receiving virtual SIPC claims under this Plan of Allocation would recover 80% of their contribution to the Trustee Settlement.  Investors in the Rye funds, writing in support of Class Counsel's Plan of Allocation, note that

---

[3] It should be noted that before even reaching the FDA, money from the Rye funds' SIPC claims has already been applied to pay off the $650 million Fortress Investment Group loan taken out by Rye Onshore, Rye Offshore, and Rye Insurance.  Thus all the money in the FDA is net of that loan repayment.

[4] There is a further issue concerning HSBC's entitlement to Rye XL's priority allocation.  HSBC has contended that, pursuant to certain swap agreements it entered into with the Rye XL fund, it is entitled to the Rye XL priority allocation as collateral.  However, this issue has now been resolved through a mutually satisfactory agreement between Class Counsel and HSBC that will allow Rye XL investors to receive a substantial part of the priority allocation.

they opposed the creation of virtual SIPC claims in mediation, but ultimately agreed to the compromise. (Dkt. No. 1118, Dolos Mem. at 3.)

With equal priority to the virtual SIPC claims, the money from the SIPA claims assigned to the Rye Onshore, Rye Offshore, and Rye Insurance funds will be distributed to those funds. However, these allocations shall be adjusted to reflect all cross-investments between the funds. For example, certain Tremont funds made investments in Rye funds. Thus, substantial moneys from the Rye Funds' claims will be allocated to various Tremont funds in recognition of their cross-investments. (Dkt. No. 1089, Class Counsel Mot. at 5.)

The result of the plan of allocation is that Rye Onshore, Rye Offshore, and Rye Insurance will receive about 97% of the moneys in the FDA for distribution to their investors.

Once the moneys have been allocated to the appropriate funds, claimants to the FDA will receive a *pro rata* share of each fund's portion of the FDA according to their net investment in the relevant fund. The Garden City Group, the same Claims Administrator that has handled other phases of this litigation, will handle the administrative determination of individual FDA claimants' entitlements.

Class Counsel also seeks a fee of three percent of the net FDA recovery, plus nearly $1 million in expenses. Three percent of the current net FDA recovery amounts to about $18.7 million. That fee is roughly equivalent to Class Counsel's claimed lodestar fee multiplied by 1.09, based upon over 25,000 hours of claimed legal work. However, the Madoff Trustee will almost certainly make

8

very substantial additional payments to the FDA in the future, thus increasing Class Counsel's percentage-basis fee considerably.  In the event that the FDA recovery grows very substantially, Class Counsel proposes to cap its lodestar multiple at 2.5.  Even with a lodestar multiple capped at 2.5, Class Counsel's fee could conceivably climb well above $40 million if the Madoff Trustee makes the maximum possible payments.

The court has received numerous submissions in support of Class Counsel's motion, and numerous submissions in opposition.  The objections contest the fairness of the Plan of Allocation as well as the size of Class Counsel's fee.  One objector, George S. Martin, has also moved for an alternative plan of allocation, as well as related relief including disclosure of mediation materials and certification of subclasses.

## Discussion

The court reviews Class Counsel's Plan of Allocation similarly to how it would review the fairness of an actual settlement.  A plan of allocation must be fair, reasonable, and adequate.  See In re IMAX Sec. Litig., 283 F.R.D. 178, 192 (S.D.N.Y. 2012); In re WorldCom, Inc. Sec. Litig., 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).  "As a general rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information."  In re Citigroup Inc. Sec. Litig., 965 F. Supp. 2d 369, 385 (S.D.N.Y. 2013) (quoting In re PaineWebber Ltd. P'ships Litig., 171 F.R.D. 104, 133 (S.D.N.Y. 1997)).  "When formulated by competent and experienced counsel, a

plan for allocation of net settlement proceeds need have only a reasonable, rational basis." In re IMAX Sec. Litig., 283 F.R.D. at 192 (quoting In re Telik, Inc. Sec. Litig., 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008)) (quotation marks omitted). Moreover, a reasonable plan may consider the relative strength and values of different categories of claims. In re Lloyd's Am. Trust Fund Litig., No. 96 Civ. 1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002).

### A. Submissions in Support of Class Counsel's Motion

It is significant that numerous investor groups and interested parties have written the court in support of Class Counsel's Plan of Allocation. These include:

- The Royal Bank of Scotland

- HSBC Bank

- A group of investors comprised of BMIS Funding I, LLC, Sola Ltd., Solus Core Opportunities Master Fund Ltd., Solus Recovery Fund II Master LP, Solus Recovery LH Fund LP, Ultra Master Ltd., and Halcyon Loan Trading Fund LLC

- SPCP Group

- Spectrum Equities, et al. (a group of former opt-out plaintiffs who were readmitted to the class pursuant to the court's June 5, 2015 order)

- The Dolos funds (significant beneficial owners of Rye funds associated with the Fortress Investment Group)

These parties emphasize that Class Counsel's Plan of Allocation is the fair result of arm's-length negotiation. In many cases, they have sacrificed their nominal interests in order to maximize support for a fair Plan of Allocation. These parties make clear that they oppose alternatives to Class Counsel's plan.

Numerous other parties have given Class Counsel oral permission to convey to the court their support of the Plan of Allocation.

### B. Objections to Class Counsel's Motion

The court has also received five submissions objecting to some aspect of Class Counsel's plan. The submissions come from:

- A group of eight individuals and trusts known as the "Tremont Fund Objectors"

- George S. Martin, an investor in two Tremont funds

- Antonio Calabrese, an investor who suffered losses through Bermuda Life Insurance Company annuity policies that were exposed to the Rye LDC fund

- Insurance company Philadelphia Life, whose customers suffered losses through Philadelphia Life's financial vehicles that were exposed to Rye and Tremont funds

- A group of life insurance companies who support Class Counsel's Plan of Allocation in all respects except that they object to the size of Class Counsel's fee

Class Counsel questions the standing of most of these objectors. Furthermore, it is significant that these objectors represent a very small portion of the interests at stake.

But regardless of their size and standing, the objectors fail to persuade that Class Counsel's plan is anything but fair, reasonable, and adequate. All objections are overruled for the reasons described below.

### 1.   Whether Class Counsel's Plan of Allocation Unjustifiably Disfavors Investors in Funds Other than Rye Onshore, Rye Offshore, and Rye Insurance

George S. Martin, Antonio Calabrese, and the Tremont Fund Objectors all observe that several funds other than Rye Onshore, Rye Offshore, and Rye

11

Insurance contributed significant moneys to the Madoff Trustee. Yet under Class Counsel's Plan of Allocation, the three Rye funds seem to receive a far superior "return" on the moneys they contributed to the Trustee Settlement.

The assertion that Class Counsel's plan disfavors certain funds raises the question of whether the different situations of the different funds justify the vastly different recoveries that Class Counsel's plan would allocate to them.

Class Counsel observes that the three Rye funds that receive the majority of the FDA are uniquely situated in several ways. First, compared to the three Rye funds, the allegedly disfavored funds had much lower exposure to Madoff's fraud, contributed less to the Trustee Settlement, were not direct Madoff customers—and in some cases were actually net winners in the Madoff fraud. Furthermore, the Madoff Trustee awarded SIPA claims—the main source of the funds in the FDA—only to the three Rye funds. It is also significant that the allegedly disfavored funds did not make their contribution to the Trustee Settlement *solely* in hopes of recovering from the FDA—they also received substantial liability releases in exchange for their contributions. Thus the Plan of Allocation's apparently superior treatment of the Rye fund investors' FDA claims is in fact neither preferential nor unreasonable.

Furthermore Judge Phillips has submitted a declaration strongly supporting Class Counsel's plan. He asserts that Class Counsel's Plan of Allocation "reflects a fair and reasonable compromise of the risks presented by this litigation." (Dkt. No. 1160, Phillips Decl. at ¶ 22.) He states further that he believes all parties' interests were adequately heard and represented at the

mediation: "Based on my first-hand observations, I can represent to the Court that I have no reason whatsoever to believe that [Class Counsel's Plan of Allocation] was anything other than the product of hard-fought, arm's length negotiations by skilled, experienced and effective counsel." (Id.)

Class Counsel's allocation of the money in the FDA between the various funds is fair and reasonable. The objections are overruled.

### 2. Whether the Mediation Process was Adequate and Whether its Confidentiality Should be Disturbed

Several objectors argue that the mediation process did not afford them an adequate forum to represent their interests. They argue that the court should disturb the mediation's confidentiality and demand disclosure of agreements that were reached during that process.

Some objecting parties cite Federal Rule of Civil Procedure 23(e)(3), arguing that it requires Class Counsel to disclose the details of any deals made in the course of mediation. Id. ("The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.").

Judge Phillips explains in his declaration that he orally represented to the mediating parties that "all communications, negotiations and agreements pursuant to [the mediation] were covered with a complete cloak of confidentiality and must remain confidential," including in court papers and proceedings. (Phillips Decl. at ¶¶ 8-9.) He further represented to the parties that he would help maintain the confidentiality by advising the court of the agreement. (Id.)

It is safe to assume that the participants reached agreements during the mediation that were not made public, and that have not been described to the

court. But there is no reason to believe such agreements were collusive, especially in light of the court's conclusion that Class Counsel's Plan of Allocation allocates resources in a fair and reasonable manner that adequately respects the different situations of the different funds.

Furthermore, Federal Rule of Civil Procedure 23(e)(3) does not require the disclosure of all agreements made in a confidential mediation held to achieve consensus concerning the allocation of a fund like the FDA, whose essential structure was long ago established in a final settlement agreement. It is firmly within the court's discretion to uphold the confidentiality of this mediation and it is warranted under these circumstances.

It would have been preferable for the mediation to produce complete consensus as to the fairness of Class Counsel's plan. However, the objectors' criticism of the mediation is baseless. The mediation was overseen by a respected retired federal judge. It afforded the objectors an opportunity to advocate for different plans of allocation. They availed themselves of this opportunity. And indeed their advocacy resulted in meaningful concessions such as the virtual SIPC claims. Further, the mediation's confidentiality helped Class Counsel serve the best interests of the highest number of FDA claimants and beneficiaries.

Total consensus as to the Plan of Allocation may well have been impossible. Yet something nearly approaching consensus was achieved. Objections to the mediation process are overruled.

14

### 3.   Whether the Court Lacks Jurisdiction to Approve Class Counsel's Plan of Allocation

Objectors including Philadelphia Life and the Tremont Fund Objectors argue that the court lacks jurisdiction to approve a Plan of Allocation for the FDA for want of a case or controversy.  They also allege various other procedural defects, noting that the FDA was not itself initiated in a complaint, but rather was established pursuant to a settlement agreement.  They point out that, unlike a typical class action settlement fund, the FDA has claimants who are not members of the class and thus were not parties to the settlement agreement that created the FDA.

These arguments are meritless and were substantially rejected at the time of the Class Settlement in 2011.  (See Dkt. No. 599, Aug. 8, 2011 Hearing Tr. at 75-78.)  This court approved the FDA as an orderly way to preserve assets connected to the Class Settlement.  (Id. at 76.)  Since the finalization of that Settlement, nothing about the FDA has changed that might cast fresh doubt on its procedural propriety.  While it is admittedly a unique mechanism, the FDA arises from the derivative claims that Class Counsel included in its underlying complaint.  It was established pursuant to the Class Settlement—a matter properly before this court.  And that Settlement has survived vigorous challenges in both the District and Circuit courts.  Moreover, the settlement approval proceedings and the instant proceedings have provided an adequate opportunity for any interested party to argue that the FDA prejudices its interests.

These objections are overruled.

### 4.   Whether Class Counsel's Plan of Allocation Conflicts with the 2011 Stipulation

Objectors argue that Class Counsel's Plan of Allocation for the FDA conflicts with the terms of the 2011 Stipulation that created the FDA. (See Dkt. No. 392-1, 2011 Stipulation.)  Specifically, objectors argue that the stipulation created a framework in which investors in *all* settling funds would be entitled to receive distributions from the FDA.  (See id. at ¶¶ 1.18, 1.19, 1.50, 1.61, 2.20, and 2.21.)

The 2011 Stipulation does not represent that assets in the FDA would be distributed in an equal way among claimants.  It indicates that the terms of the allocation will not be precisely settled in advance.  However, the 2011 Stipulation does state, at ¶ 1.18, that "any limited partner or shareholder in any of the Settling Funds . . . shall be entitled to receive a disbursement from the Fund Distribution Account."  This seems to be in tension with the fact that some funds' investors will receive no FDA disbursement.

Class Counsel avers that ¶ 1.18 was a statement of eligibility to receive a disbursement, not a promise that all partners or shareholders in the defendant funds would receive a disbursement.  And indeed, under Class Counsel's Plan of Allocation, the funds whose investors will receive no disbursement were either "net-winners" in Madoff's fraud, or had no exposure to Madoff's fraud.  Thus, Class Counsel's construction of ¶ 1.18 is persuasive, especially when weighed with the equitable arguments against providing disbursements to such funds' investors.

16

It is reasonable that the Plan of Allocation should result in substantial recoveries for investors in certain funds and no recoveries for investors in other funds that were either net winners in Madoff's fraud or had no Madoff exposure. The 2011 Stipulation did not indicate anything to the contrary. These objections are overruled.

### 5. Whether Class Counsel's Plan of Allocation Disfavors Nonparty Owners of Annuity Policies

Objector Antonio Calabrese contends that the FDA unjustifiably harms beneficial owners—like himself—of annuity policies that were invested in certain Rye and Tremont funds through insurance companies.

Calabrese chose to invest a Bermuda Life annuity policy in the Rye LDC fund. That Rye fund lost most of its money, and Calabrese consequently lost the value of his policy. However, he will not receive a disbursement from the FDA under Class Counsel's plan because the Rye LDC fund did not contribute any money to the Trustee Settlement. Calabrese contends that this is inequitable. He also contends that the FDA will serve scant purpose if, as Class Counsel's Plan of Allocation proposes, its money will flow almost solely to the actual holders of the SIPA claims that are the source of its money. He contends that this court assumed that the FDA would benefit all investors when it approved the fairness of the Class Settlement, and that Class Counsel made incorrect representations to that effect before this court.

Additionally, Calabrese finds it unjust that he is not treated as an "investor" entitled to make an FDA claim, pursuant to Class Counsel's definition. Where, as here, the insurance company does not pursue a claim on behalf of its

17

policyholders, the policyholders are left without a satisfactory remedy. Calabrese points out that some insurance companies could not have pursued claims on behalf of their policyholders because those insurance companies, as holders of an aggregated set of shares on behalf of their policyholders, were "net winners" in the Madoff scheme, even though some of their policyholders were individual losers.

It is well established in this case that the insurance companies, rather than policyholders, are the claimant-investors. It is therefore incumbent upon the insurance companies to defend the interests of their policyholders. And in fact numerous insurance companies participated in the mediation concerning the FDA. All but one of them (Philadelphia Life) declined to object to the substance of Class Counsel's plan. This objection is overruled.

## II.   **Class Counsel's Fee**

Class Counsel seeks a fee amounting to the lesser of three percent of the funds distributed through the FDA, or its hourly fees (lodestar) multiplied by 2.5. This formula would yield an immediate fee of about $18.7 million, or 1.09 times Class Counsel's lodestar. If the Madoff Trustee ultimately pays the $1.446 billion that the market expects, three percent of the recovery would likely exceed 2.5 times Class Counsel's lodestar, meaning that Class Counsel would receive 2.5 times its lodestar. This would likely amount to substantially more than $40 million.

To date, Class Counsel has performed over 25,000 hours of work in connection with the FDA. (Dkt. No. 1161, Class Counsel Reply at 35-36.) Class

Counsel has overseen the creation of the FDA, defended it in connection with the Class Settlement, arrived at the Plan of Allocation through mediation and extensive communication with numerous parties, worked with defendants to maximize the FDA recovery, and, not least, defended the Plan of Allocation in the present proceeding. Class Counsel emphasizes that there was risk involved in its work. First, there was risk in bringing the derivative claims that gave rise to the inclusion of the FDA as part of the Class Settlement. Though that risk has now passed, Class Counsel notes that it must still be understood as attendant to its work on the FDA, and that without this work funds other than the three Rye funds would not receive any benefit. Second, Class Counsel has faced certain risks in defending the Plan of Allocation against objectors.

Four objectors now contend that the fee Class Counsel seeks is inappropriate. The objectors frame their attack on Class Counsel's fee request in different ways, but their essential argument is the same: Class Counsel's fee is excessive because (i) there was little risk involved in the FDA recovery since it was not an adversarial recovery against defendants, and (2) Class Counsel already received substantial fees in connection with the distribution of the NSF.

The FDA is unusual because it is not a typical "common fund" recovered from defendants and distributed to a class of plaintiffs. The unique structure and sources of the FDA make it difficult to compare it to a typical class action recovery. Many lines of precedent concerning fee recovery are accordingly rendered inapplicable. Nonetheless, Class Counsel has obviously performed valuable and complex work in administering the FDA recovery and distribution.

Many parties have benefited, and Class Counsel is naturally entitled to compensation. See City of Providence v. Aeropostale, Inc., No. 11 Civ. 7132, 2014 WL 1883494, at *12 (S.D.N.Y May 9, 2014).

Ultimately Class Counsel's fee recovery is governed by the rule from Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 47 (2d Cir. 2000). Namely, the court must consider the number of hours reasonably billed by Class Counsel and apply to that total a multiplier depending on the following factors: (1) time and labor expended, (2) the magnitude and complexity of the litigation, (3) the risk of the litigation, (4) the quality of the representation, (5) the requested fee in relation to the settlement, and (6) public policy considerations. See id. A percentage-basis fee may be given, but it must be checked against the lodestar analysis above to ensure it is reasonable.

Many Goldberger factors militate in Class Counsel's favor. In its work on the FDA, Class Counsel has unquestionably put forth great labor. Furthermore, the litigation has been highly complex, involving a great deal of unsettled law, many parties, and a voluminous case history. Class Counsel has displayed great skill in managing these challenges. Objectors uncharitably characterize Class Counsel as mere "administrators" of the FDA. In fact, Class Counsel's driving role in structuring the FDA as part of the Class Settlement, and thereafter working to mediate conflicts and effect a fair and expedient distribution of the funds, has gone well beyond rote administration. In short, the allocation and distribution of the FDA is a complex matter of great importance to many parties, and Class Counsel has performed admirably. Thus,

20

the first, second, and fourth Goldberger factors suggest that a large fee is appropriate.

The fifth factor—the fee's relation to the settlement and public policy—is more difficult to evaluate, because the FDA is an unusual vehicle for the distribution of moneys recovered through bankruptcy and cannot be easily likened to a typical class action settlement recovery. Class Counsel's requested three percent is much smaller than the percentage typically requested as a fee. But that is to be expected because a proportion larger than three percent of the total FDA would amount to an inappropriate windfall. Class Counsel itself has apparently recognized that even three percent will become excessive if the size of the FDA grows considerably, and has accordingly capped the requested fee at a lodestar of 2.5. Still, a lodestar of 2.5 is at the high end of what courts in this Circuit are willing to award. See, e.g., In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., No. 02 MDL 1484, 2007 WL 313474 at *23 (S.D.N.Y. Feb. 1, 2007).

As to the sixth factor, it is clear that public policy is well served here by awarding a viable fee. Class Counsel has done excellent work in a case with widespread consequences.

The third Goldberger factor, the risk of the litigation, has been called "perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees." In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 2007 WL 313474 at *16 (citations and internal quotations omitted). This factor is largely covered by what has already been discussed in this opinion.

21

In short, this litigation involved unique practical and legal challenges. The outcome of Class Counsel's labor was never certain.

Weighing all these factors, the court concludes that substantial compensation is warranted, and the fee Class Counsel seeks is justified.

### Conclusion

The court finds Class Counsel's Plan of Allocation for the Fund Distribution Account to be fair, reasonable, and adequate. All objections are overruled. The motion of George S. Martin for an alternative Plan of Allocation and related relief is denied.

The court will enter an Order and Final Judgment, to be promptly submitted by Class Counsel, in accordance with this opinion. Upon entry of the Order and Final Judgment, the clerk is respectfully directed to close the motions listed at docket numbers 1054, 1076, 1082, 1088, and 1093 in this case, 08 Civ. 11117.

SO ORDERED.

Dated: New York, New York
      Sept. 14, 2015

Thomas P. Griesa
United States District Judge