Gruesa, J.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ECF CASE

------------------------------------------------------x
IN RE TREMONT SECURITIES LAW, :
STATE LAW AND INSURANCE : Master File No.:
LITIGATION : 08 Civ. 11117 (TPG)
 :
------------------------------------------------------x
This Document Relates to: All Actions :
 :
------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/16/15

# [PROPOSED] ORDER AND FINAL JUDGMENT GRANTING PLAINTIFFS' SETTLEMENT CLASS COUNSEL'S MOTION FOR APPROVAL OF FUND DISTRIBUTION ACCOUNT PLAN OF ALLOCATION, DISTRIBUTION PROCEDURES, ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

Plaintiffs' Settlement Class Counsel ("Class Counsel") filed a motion with this Court (the "Motion") for an order approving the Consensus Fund Distribution Account ("FDA") Plan of Allocation ("FDA POA"), as amended, distribution procedures, attorneys' fees and reimbursement of expenses in the above-captioned actions (the "Actions"); and the Court having considered all the submissions and arguments in support of the Motion, including the Affidavit of Stephen J. Cirami of the Garden City Group, LLC ("GCG"), with exhibits (the "Cirami FDA Affidavit"), the Joint Declaration of Andrew J. Entwistle, Reed R. Kathrein and Jeffrey M. Haber, with exhibits, the Supplemental Joint Declaration of Andrew J. Entwistle, Reed R. Kathrein and Jeffrey M. Haber, with exhibits, the Declaration of Andrew J. Entwistle in Further Support of the Motion, with exhibits, the Declaration of Layn Philips, the Memorandum in Support of Motion for Approval of Fund Distribution Account Plan of Allocation, Distribution to Fund Distribution Claimants, Attorneys' Fees and Reimbursement of Expenses and the Memorandum in Further Support of Motion for Approval of Fund Distribution Account Plan of Allocation, Distribution to Fund Distribution Claimants, Attorneys' Fees and Reimbursement of Expenses; and the Court having considered the responses to the Motion filed by various

1

investors; and the Court having conducted a hearing on August 24, 2015 in which the Court heard arguments on the Motion; and the Court having issued its Opinion, dated September 14, 2015 (ECF No. 1184);

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. This Order and Final Judgment incorporates by reference the definitions in the Consensus FDA POA, as amended, Stipulation of Partial Settlement, dated as of February 23, 2011 (ECF No. 392-1) (the "Stipulation"), and any additional definitions in the Cirami FDA Affidavit, and all terms used herein shall have the meanings as set forth in the Stipulation, the Consensus FDA POA, as amended, and the Cirami FDA Affidavit.

2. This Court has jurisdiction over the subject matter of the Actions and over all parties to the Actions, including the Fund Distribution Claimants.

3. The portion of Class Counsel's Motion seeking approval of the Consensus FDA POA, as amended, attached hereto as Exhibit A, is **GRANTED**;

4. The portion of Class Counsel's Motion seeking approval of the administrative determinations by GCG with respect to calculating Fund Distribution Claimants' disbursements, the creation of the FDA Reserve, the claims resolution and related procedures described in the Cirami FDA Affidavit, the Initial Disbursement of the unreserved portion of the FDA to Fund Distribution Claimants, and the Further Disbursement and Unclaimed Balance procedures, with remaining balance after all Further Disbursements, if any, to be disbursed equally to the American National Red Cross and American Cancer Society, Inc., as appropriate, is **GRANTED**;

5. The portion of Class Counsel's Motion seeking attorneys' fees and the reimbursement of expenses is **GRANTED** as follows:

      a.     Class Counsel is awarded 3% of the current FDA and all future amounts deposited into the FDA (excluding: (i) the amounts used to repay the loan taken out by the two Rye Funds to complete the settlement with the Madoff Trustee; and (ii) the XL Priority Allocation) which may be paid on entry of this Order and Judgment and without further application to the Court, however, such award shall not exceed 2.5 times Class Counsel's lodestar, to be determined at the time of any subsequent FDA recoveries;

      b.     Class Counsel is reimbursed for $975,322.56 in total out-of-pocket costs and expenses that were reasonably and necessarily incurred in respect of post-May 6, 2011 litigation and related activities; and

      c.     To the extent any award of attorneys' fees and expenses to Class Counsel is paid before this Order and Judgment becomes Final, Class Counsel shall repay to the FDA the amounts so paid, plus accrued interest at the same rate as earned on the FDA, if and when, as a result of any appeal and/or further proceedings, or successful collateral attack, any fee or expense award is modified or reversed, or for any other reason this Order and Final Judgment does not become Final.

6.     The objections filed in response to the Motion are **OVERRULED**;

7.     The motion for approval of a plan of allocation, certification of a subclass and discovery filed by Michael S. Martin (ECF No. 1093) is **DENIED**; and

8.     The provisions of this Order and Final Judgment at par. 3, par. 4, par. 5, par. 6 and par. 7 are independent of each other, and an appeal from any one (or more) of par. 3, par. 4, par. 5, par. 6 and par. 7 shall not impact the effectiveness of the others. Moreover, Class Counsel are hereby authorized to determine and proceed to distribute, in accordance with the Consensus FDA

POA, as amended, and Distribution Plan and this Order and Final judgment, any portion of the FDA that is not directly impacted by any appeals. This distribution shall proceed regardless of the pendency of any appeal. The purpose of this provision is to assure the expeditious distribution of the FDA and, in particular, to assure that one or more self-interested investors do not seek to hold up the distribution of the FDA through post-judgment proceedings, including but not limited to an appeal of this Order and Final Judgment.

9. Payments to Fund Distribution Claimants by GCG pursuant to the Consensus FDA POA, as amended, and Distribution Plan shall be conclusive against all Fund Distribution Claimants. No Person shall have any claim against Class Counsel or GCG based upon disbursements or determinations made substantially in accordance with the Consensus FDA POA, as amended, and Distribution Plan or orders of this Court, except in the case of fraud or willful misconduct.

10. The Court retains jurisdiction over the Actions and all parties thereto, including the Fund Distribution Claimants and over any further application or matter that may arise herein.

11. The Court expressly finds and determines that no just reason exists for delay in entering final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure with respect to this Order and Final Judgment. The Clerk is respectfully directed to close the motions listed at docket numbers 1054, 1076, 1082, 1088 and 1093 in this case, and to enter this Order and Final Judgment.

Dated: New York, New York
September 16, 2015

SO ORDERED

HONORABLE THOMAS P. GRIESA
UNITED STATES DISTRICT JUDGE

# EXHIBIT A

## FUND DISTRIBUTION ACCOUNT PLAN OF ALLOCATION

### A.  Preliminary Matters

The purpose of this Fund Distribution Account Plan of Allocation ("Plan of Allocation," "FDA POA" or "Plan") is to establish a reasonable, fair and equitable method of allocating for the benefit of and distributing to Fund Distribution Claimants the money remaining in the Fund Distribution Account ("FDA"). This FDA POA is the product of countless hours of discussions, calls and meetings in a mediation context over almost two years.

The Claims Administrator will distribute all money remaining in the FDA after payment of Court approved attorney's fees and expenses and the costs associated with the administration of the FDA and this FDA POA.

The Claims Administrator will determine the Eligible Hedge Fund Allocated Interest for each Eligible Hedge Fund by adding together any SIPC Claim, Virtual SIPC Claim and Cross Investments, and, for XL only, the XL Priority Allocation that is related to each Eligible Hedge Fund. The Claims Administrator will then calculate the Net Investment of each Fund Distribution Claimant in each Eligible Hedge Fund and then apply such Net Investment to determine the pro rata share of each Fund Distribution Claimant in each such Eligible Hedge Fund's Allocated Interest in the FDA. This process is described in greater detail in Section C below.

### B.  Principles and Definitions

This FDA POA is based on the following principles and definitions (listed alphabetically), among others contained in the Stipulation:

1. "Cross Investments" means any prior investment by any Eligible Hedge Fund in another Eligible Hedge Fund. All Cross Investments are preserved in the sense that the net amount of each such Cross Investment will form the basis of an allocation of FDA Funds for the benefit of Fund Distribution Claimants previously invested in Eligible Hedge Funds that held such Cross Investments. Allocation of Cross Investments will be made on a net basis.

2. "Contribution" is the amount paid on or before December 11, 2008 by an authorized Fund Distribution Claimant to an Eligible Hedge Fund for an Eligible Security.

3. "Court" means the United States District Court for the Southern District of New York.

4. "Disbursement" is the amount to be paid to a Fund Distribution Claimant from the FDA.

1

5. "Eligible Carrier" is one of the following insurance carriers that invested in Eligible Hedge Funds: (a) New York Life Insurance and Annuity Corporation; (b) Metropolitan Life Insurance Company; (c) John Hancock Life Insurance Company (U.S.A.); (d) General American Life Insurance Company; (e) Pacific Life Insurance Company; (f) Hartford Life Insurance Company; (g) Pruco Life Insurance Company; (h) Security Life of Denver; (i) AIG Life Insurance Company; (j) Delaware Life Insurance Company (f/k/a Sun Life Assurance Company of Canada (U.S.)); (k) Scottish Annuity and Life; (l) Nationwide Life Insurance Company; (m) New England Life Insurance Company; (n) Acadia Life Limited; (o) The Scottish Annuity Life Insurance Co. (Cayman) Ltd.; (p) Lifeinvest Opportunity Fund LDC; (q) AGL Life Assurance Company; (r) BF&M Life Insurance Company Limited; and (s) The Scottish Annuity and Life Insurance Company (Bermuda) Ltd. Each Eligible Carrier shall be considered a Fund Distribution Claimant for all purposes in this Plan of Allocation. "Eligible Policyholder" is an owner of a variable universal life insurance policy or deferred variable annuity policy that was issued by an Eligible Carrier.

6. "Eligible Hedge Funds" shall mean:

- Rye Select Broad Market Fund, L.P. ("Rye Onshore");
- Rye Select Broad Market XL Fund, L.P. ("XL");
- Rye Select Broad Market Prime Fund, L.P. ("Prime");
- Rye Select Broad Market Insurance Fund, L.P. ("Rye Insurance");
- Rye Select Broad Market Insurance Portfolio, LDC (but only with respect to INTAC Independent Technical Analysis Centre Ltd., LifeInvest Opportunity Fund, LDC, Scottish Annuity Company (Cayman) Limited, The Scottish Annuity and Life Insurance Company (Bermuda) Ltd. and The Scottish Annuity Life Insurance Co. (Cayman) Ltd.);
- Rye Select Broad Market Portfolio Limited ("Rye Offshore");
- Rye Select Broad Market XL Portfolio Limited;
- Broad Market XL Holdings Limited;
- Tremont Market Neutral Fund L.P.;
- Tremont Market Neutral Fund II, L.P.;
- Tremont Market Neutral Fund Limited;
- Tremont Opportunity Fund Limited;
- Tremont Opportunity Fund II L.P.;
- Tremont Opportunity Fund III L.P.;
- Tremont Arbitrage Fund, L.P.;
- Tremont Arbitrage Fund-Ireland; and
- Tremont Strategic Insurance Fund, L.P.

7. "Eligible Hedge Fund Allocated Interest" means the sum of any SIPC Claim, Virtual SIPC Claim and Cross Investments (and, for XL only, the XL Priority Allocation) that is related to each Eligible Hedge Fund.

8. "Eligible Securities" means the limited partnership interests or shares purchased by Fund Distribution Claimants (as defined in paragraph 8 below) in Eligible Hedge Funds on or before December 11, 2008.

9. "Fund Distribution Claimant" means any limited partner or shareholder invested in Eligible Securities of any Eligible Hedge Fund as of December 11, 2008 or its successors pursuant to any merger or other business combination or by valid assignment (including secondary market purchasers of such claims), who is entitled under the Stipulation and this FDA POA to share in the disbursement of the Fund Distribution Account. Only those Fund Distribution Claimants who suffered a net loss on their investments in Eligible Securities (determined separately for each Eligible Hedge Fund in which the Fund Distribution Claimant invested), are entitled to a payment from the Fund Distribution Account. Only Fund Distribution Claimants who were limited partners or shareholders as of December 11, 2008, or their successors pursuant to any merger or other business combination or by valid assignment (including secondary market purchasers of such claims), may be entitled to a Disbursement from the Fund Distribution Account. For the avoidance of doubt, any person who purchased an interest in an Eligible Hedge Fund after December 11, 2008, shall receive distributions on account of such interest based on the net equity investment of the person who held such interest as of December 11, 2008. Nothing herein is intended to affect the Loan Agreements or the Claim Participation Agreement.

10. "Fund Distribution Account" ("FDA") shall have the meaning ascribed in the Stipulation.

11. "Net Investment" is the difference between Contributions and Redemptions for each Fund Distribution Claimant (or Eligible Hedge Fund in the case of Cross Investments). Net Investment is determined separately for the investments in each Eligible Hedge Fund on a Fund-by-Fund basis. Where a Fund Distribution Claimant (or an Eligible Hedge Fund) has investments in more than one Eligible Hedge Fund, the investments within each Fund are netted against the investments within that Fund but they are not netted against gains or losses on investments in other Eligible Hedge Funds.

12. "Recognized Claim" is the Fund Distribution Claimant's Net Investment in each Eligible Hedge Fund.

13. "Redemption" is the amount withdrawn on or before December 11, 2008 by a Fund Distribution Claimant from an Eligible Hedge Fund based on ownership of an Eligible Security.

14. "Remaining Fund Proceeds" means (i) all amounts remaining in the Rye Funds (with the exception of the Liquidating Funds) after resolution of the Settling Funds' claims in or relating to the Madoff Trustee Proceedings; and (ii) all amounts the Tremont Funds would otherwise be entitled to from the Fund Distribution Account

under this Plan of Allocation as a result of the Tremont Funds' investments in the Rye Funds.

15. "Rye Funds" means (i) Rye Select Broad Market Fund, L.P.; (ii) Rye Select Broad Market XL Fund, L.P.; (iii) Rye Select Broad Market Prime Fund, L.P.; (iv) Rye Select Broad Market Insurance Fund, L.P.; (v) Rye Select Broad Market Portfolio Limited; (vi) Rye Select Broad Market XL Portfolio Limited; (vii) Broad Market XL Holdings Limited and (viii) Rye Select Broad Market Insurance Portfolio LDC (but solely with respect to INTACT Independent Technical Analysis Centre Ltd., LifeInvest Opportunity Fund, LDC, Scottish Annuity Company (Cayman) Limited, The Scottish Annuity and Life Insurance Company (Bermuda) Ltd. and The Scottish Annuity Life Insurance Co. (Cayman) Ltd.). The Settlement Agreement provides that all Remaining Fund Proceeds poured over into the FDA from the Settling Funds upon final approval of the Settlement. This includes any money received from the Madoff Trustee Settlement on or after that time.

16. "SIPC Claim" means the amount allocated under this FDA POA for the benefit of Fund Distribution Claimants invested in Eligible Hedge Funds with an allowed claim against the BLMIS estate as approved in *Picard v. Tremont Grp. Hldgs., Inc.*, Adv. Pro. No. 10-05310 (Bankr. S.D.N.Y) (See Dkt. Nos. 17-1 and 38-1). Rye Select Broad Market Fund, L.P, Rye Select Broad Market Portfolio Limited, and Rye Select Broad Market Insurance Fund, L.P. are the only Eligible Hedge Funds that have a SIPC Claim against the FDA assets. Rye Onshore, Rye Offshore and Rye Insurance each have a SIPC Claim because they contributed nearly $1 billion to the BLMIS Estate (including by taking out over $650 million in loans) in exchange for specific allowed claims in the BLMIS estate and a release of claims asserted by the BLMIS Trustee. For purposes of this FDA POA only, Rye Onshore's SIPC Claim is $1,879,426,564, Rye Offshore's SIPC Claim is $1,075,695,583 and Rye Insurance's SIPC Claim is $40,000,000.

17. "Stipulation" means the Stipulation of Partial Settlement in *In re Tremont Securities Law, State Law and Insurance Litigation* (08 Civ. 11117 (TPG)) dated February 23, 2011 and filed with the Court on February 25, 2011. Capitalized terms that are not defined herein will have the same meaning as in the Stipulation. In the event that the definition of a term in this Plan conflicts with a definition in the Stipulation, the definition in this Plan will control.

18. "Tremont Funds" means (i) Tremont Market Neutral Fund L.P.; (ii) Tremont Market Neutral Fund II, L.P.; (iii) Tremont Market Neutral Fund Limited; (iv) Tremont Opportunity Fund Limited; (v) Tremont Opportunity Fund II L.P.; (vi) Tremont Opportunity Fund III L.P.; (vii) Tremont Arbitrage Fund, L.P.; (viii) Tremont Arbitrage Fund-Ireland; and (ix) Tremont Strategic Insurance Fund, L.P.

19. "Tremont Fund of Funds" means those Tremont Funds that contributed to the Trustee Settlement and therefore have a Virtual SIPC Claim: Tremont Market

Neutral Fund L.P.; Tremont Market Neutral Fund II, L.P.; Tremont Opportunity Fund II L.P.; and Tremont Opportunity Fund III L.P.

20. "Virtual SIPC Claim" means a claim allocated for the benefit of Eligible Hedge Funds participating in the Madoff Trustee Settlement that did not receive a SIPC Claim. These include Prime and several of the Tremont Fund of Funds (Tremont Market Neutral Fund L.P.; Tremont Market Neutral Fund II, L.P.; Tremont Opportunity Fund II L.P.; and Tremont Opportunity Fund III L.P.). The Virtual SIPC Claim is equal to 80% of the amount contributed by such Eligible Hedge Funds to the Madoff Trustee Settlement plus any Remaining Funds in the form of cash contributed by such Eligible Hedge Funds to the FDA following Final Approval of the Settlement. Although such Eligible Hedge Funds were not granted allowed claims in the BLMIS estate under the Madoff Trustee Settlement and Court Order in *Picard v. Tremont Grp. Hldgs., Inc.*, Lead Counsel has secured, through the mediation process, for each such Eligible Hedge Fund a claim for 80% of the money it contributed to the settlement agreement with the BLMIS Trustee – the same percentage that Rye Onshore and Rye Offshore received as their allowed 502(h) claim against the BLMIS estate. The Virtual SIPC Claim allocable to the Rye Select Broad Market Prime Fund, L.P is $28,616,540 and the total of the other Virtual SIPC Claims allocable to the Tremont Fund of Funds is $65,331,081, as follows: $3,576,239 to Tremont Market Neutral Fund L.P.; $14,522,000 to Tremont Market Neutral Fund II, L.P.; $6,109,770 to Tremont Opportunity Fund II L.P.; and $41,123,071 to Tremont Opportunity Fund III L.P.

21. "XL Fund Distribution Claimant" means any Fund Distribution Claimant invested in Eligible Securities of XL as of December 11, 2008 or its successors pursuant to any merger or other business combination or by valid assignment (including secondary market purchasers of such claims).

22. "XL Priority Allocation" means a priority distribution to XL Fund Distribution Claimants of the first $32,409,239 allocated under this FDA POA and distributed from the FDA to Fund Distribution Claimants previously invested in XL. XL also has a Cross Investment in Rye Onshore in the amount of $184,500,000 the ("XL Cross Investment") on account of which certain funds will be allocated from the FDA (the "XL Cross-Investment FDA Recovery"). The XL Cross Investment is subject to HSBC's rights under its swap and collateral agreements with the XL Fund. The XL Fund, various XL Fund investors and HSBC disagreed as to HSBC's right to the XL Cross Investment. While not part of the XL Priority Allocation as defined in this paragraph 22, it has been agreed as part of the ongoing Mediation that the dispute between HSBC and the XL Fund over the rights to the XL Cross Investment has been resolved as follows:

(a) Fund Distribution Claimants previously invested in the XL Fund shall collectively receive $25,546,400 in the aggregate of the XL Cross-Investment FDA Recovery (the "XL Cross Investment Allocation") from the initial FDA distribution

arising from the XL Cross-Investment FDA Recovery. This XL Cross Investment Allocation shall be supplementary to the XL Priority Allocation of $32,409,239, and will result in a total allocation from the initial FDA distribution of $57,995,639 to Fund Distribution Claimants that were previously XL Fund investors—which amounts will be distributed pursuant to the terms of this FDA POA;

(b) The XL Cross Investment Allocation shall receive priority over any distribution of the XL Cross-Investment FDA Recovery made to HSBC. For the avoidance of doubt, HSBC shall not receive any of the XL Cross-Investment FDA Recovery until the XL Cross Investment Allocation has been distributed in its entirety to XL Fund Distribution Claimants;

(c) To the extent the first distribution from the FDA on account of the XL Cross-Investment is less than $25,546,400, the amount of any shortfall will be paid out of any other money due to HSBC out of the initial FDA Distribution;

(d) HSBC shall receive all remaining portions of the initial FDA distribution and any subsequent distributions related to the XL Cross-Investment FDA Recovery (the "HSBC XL Cross Investment Allocation") immediately after the XL Cross Investment Allocation has been distributed as provided herein , and shall be treated as a Fund Distribution Claimant with respect to the HSBC XL Cross Investment Allocation;

(e) the HSBC XL Cross Investment Allocation, once made in full, will fully satisfy HSBC's right or claim in or to the XL Priority Allocation and XL Cross Investment Allocation and otherwise be deemed to release and discharge the Settling Defendants, all current and former XL Fund Investors, and their parent companies, subsidiaries, and affiliates, together with their respective current and former principals, officers, directors, managers, advisers, shareholders, employees, agents, attorneys, accountants, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind, jointly and severally, from and against any and all claims, disputes, liabilities, suits, demands, liens, actions, proceedings and causes of action of every kind and nature, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, asserted or unasserted, accrued or unaccrued, which HSBC has or might claim to have with respect to the XL Fund, XL Priority Allocation, XL Cross Investment Allocation, XL Cross Investment and/or XL Cross-Investment FDA Recovery, provided, however, that nothing herein shall release any claims that HSBC may have to enforce the terms of this FDA POA or any Prior HSBC-XL Investor Settlements (as defined below);

(f) the XL Cross Investment Allocation, once made in full, will fully satisfy and otherwise be deemed to release and discharge HSBC and its parent companies, subsidiaries, affiliates, together with their respective current and former principals,

officers, directors, managers, advisers, shareholders, employees, agents, attorneys, accountants, predecessors, successors, assigns, heirs, administrators, executors, supervisors, and representatives of any kind, jointly and severally, from and against any and all claims, disputes, liabilities, suits, demands, liens, actions, proceedings and causes of action of every kind and nature, and from all damages, injuries, losses, contributions, indemnities, compensation, obligations, costs, attorneys' fees and expenses of whatever kind and character, whether past or present, known or unknown, fixed or contingent, whether in law or in equity, asserted or unasserted, accrued or unaccrued, that the XL Fund, the Settling Defendants, and/or their investors have or might claim to have with respect to the XL Fund, XL Priority Allocation, XL Cross Investment Allocation, XL Cross Investment and/or XL Cross-Investment FDA Recovery, provided, however, that nothing herein shall release any claims that the XL Fund and/or its investors may have to enforce the terms of this FDA POA or any Prior HSBC-XL Investor Settlements (as defined below);

(g) Notwithstanding any provision of this FDA POA, any settlements between HSBC and any XL Fund Distribution Claimants relating to the XL Cross-Investment and/or XL Cross-Investment FDA Recovery which were/are executed before the Court issues an order approving this FDA POA ("Prior HSBC-XL Investor Settlements") shall remain in full force and effect and shall not be superseded by this FDA POA;

(h) Any other amounts allocable to XL Fund Distribution Claimants under this plan (other than the XL Priority Allocation and the XL Cross Investment Allocation) will receive the same priority as all other distributions under this FDA POA.

### C. Disbursements from the Fund Distribution Account

The Claims Administrator will determine each Fund Distribution Claimant's pro rata share of the Fund Distribution Account with respect to each Eligible Hedge Fund's Allocated Interest by the following three-step-methodology: (1) the Claims Administrator will first determine the Eligible Hedge Fund Allocated Interest for each Eligible Hedge Fund by adding together any SIPC Claim, Virtual SIPC Claim, and Cross Investments (and, for XL only, the XL Priority Allocation) that is related to each Eligible Hedge Fund. For the avoidance of doubt, under this first step, the Claims Administrator will then cause the XL Priority Allocation to be satisfied and distributed to Fund Distribution Claimants who were previously invested in XL before any other distributions are made from the FDA. Once the XL Priority Allocation is satisfied, the Claims Administrator shall determine that (i) Rye Onshore has an Eligible Hedge Fund Allocated Interest equivalent to 75.25% of the remainder of the FDA, (ii) Rye Offshore has an Eligible Hedge Fund Allocated Interest equivalent to 20.00% of the remainder of the FDA, (iii) Rye Insurance has an Eligible Hedge Fund Allocated Interest equivalent to 1.76% of the remainder of the FDA, (iv) Prime has an Eligible Hedge Fund Allocated

Interest equivalent to .88% of the remainder of the FDA (plus the allocated value of its Cross Investments) and (v) the Tremont Fund of Funds collectively have an Eligible Hedge Fund Allocated Interest equivalent to 2.11% of the remainder of the FDA (plus the allocated value of each Fund's Cross Investments), which shall be allocated as follows:  0.115% to Tremont Market Neutral Fund L.P. (plus the allocated value of its Cross Investments); 0.469% to Tremont Market Neutral Fund II, L.P. (plus the allocated value of its Cross Investments); 0.197% to Tremont Opportunity Fund II L.P. (plus the allocated value of its Cross Investments); and 1.329% to Tremont Opportunity Fund III L.P. (plus the allocated value of its Cross Investments).  For the avoidance of doubt and for illustrative purposes, Prime would recover 0.88% of the FDA plus the allocated value of any Cross Investments.

(2)     The Claims Administrator will then calculate the Net Investment of each Fund Distribution Claimant in each Eligible Hedge Fund and then apply such Net Investment to determine the pro rata share each Fund Distribution Claimant has in each such Eligible Hedge Fund's Allocated Interest in the FDA.

(3)     The Claims Administrator will then make Disbursements directly to the Fund Distribution Claimants (including, with respect to the XL Cross-Investment FDA Recovery, HSBC) in accordance with the above calculations and paragraph B.22 above.

No Fund Distribution Claimant will receive more than it's Recognized Claim. Eligible Policyholders will be paid by their Eligible Carrier out of the Eligible Carrier's Disbursement based on a methodology to be determined by the Eligible Carrier.  For the International Fund Liquidations, distributions will be made at the direction of the Liquidators.

Determinations by the Notice and Claims Administrator and payments made pursuant to this Plan of Allocation above shall be conclusive against all Fund Distribution Claimants. No person shall have any claim against the Settling Plaintiffs, Plaintiffs' Settlement Counsel or the Notice and Claims Administrator based on Disbursements, determinations or claim rejections made substantially in accordance with this Plan or further orders of the Court, except in the case of fraud or willful misconduct.  No person shall have any claim under any circumstances against the Released Parties based on any Disbursements, determinations or claim rejections or the design, terms or implementation of this Plan. Distribution to Fund Distribution Claimants who previously failed to complete and file a valid and timely Proof of Claim form shall be determined solely on the basis of Tremont's records (and, in the case of the XL Cross-Investment FDA Recovery, paragraph B.22 above).

To the extent that the Court approves the Fund Distribution Plan of Allocation, the Fund Distribution Plan of Allocation will not be subject to further change as to any investor. Each Settling Fund shall use its best efforts to maximize the amount of the Remaining Fund Proceeds allocable to that Settling Fund, without regard to the identity or status of the Settling Fund's shareholders or limited partners, and shall distribute those Remaining

Fund Proceeds in accordance with the Fund Distribution Plan of Allocation, without regard to the identity or status of those shareholders or limited partners.

Except to the extent provided immediately above, the Court has reserved jurisdiction to modify, amend or alter the Plan of Allocation without further notice to anyone and it may allow, disallow or adjust any Fund Distribution Claimant's claim to ensure a fair and equitable distribution of the Fund Distribution Account.

If there is any balance remaining in the Fund Distribution Account (whether by reason of unclaimed funds, tax refunds, uncashed checks, or otherwise), at a date one hundred eighty (180) days from the later of (a) the date on which the Court enters an order directing the Fund Distribution Account to be disbursed to Fund Distribution Claimants, or (b) the date the Settlement is final and becomes fully effective, then Plaintiffs' Settlement Counsel shall, upon approval of the Court, disburse such balance among Fund Distribution Claimants as many times as is necessary, in a manner consistent with this Plan of Allocation, until each Fund Distribution Claimant has received its Recognized Claim (but no greater than its Recognized Claim) as defined in this Plan. If Plaintiffs' Settlement Counsel determines that it is not cost-effective to conduct such further disbursement, or following such further disbursement any balance still remains in the Fund Distribution Account, Plaintiffs' State Law and Securities Class Counsel shall, with the consent of the State Law and Securities Plaintiffs and upon approval of the Court, and without further notice to the State Law Subclass and Securities Subclass Members, cause the remaining balance to be disbursed *cy pres*.